UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KURIAN DAVID, ET AL. | * | CIVIL ACTION NO. 2:08-CV-1220 |
| PLAINTIFFS | * | SECTION: "A" |
| VERSUS | * | MAGISTRATE: "3" |
| SIGNAL INTERNATIONAL, LLC, ET AL. | * | |
| DEFENDANTS | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
FILED ON BEHALF OF MALVERN C. BURNETT, LAW OFFICES OF MALVERN C.
BURNETT, A PROFESSIONAL LAW CORPORATION AND GULF COAST
IMMIGRATION LAW CENTER, L.L.C.**

**I.   BACKGROUND**

    **A.   Immigration Law Background**

        **(1)   General**

The Immigration and Nationality Act, 8 U.S.C. § 1001, et seq. ("INA") creates two broad classifications for persons seeking to enter the United States: immigrant and non-immigrant. A person is presumed to be an immigrant unless proved to fall within one of the classes of persons considered non-immigrants. 8 U.S.C. § 1184(b) (1994). "Unlike the lawful immigrant … who is admitted to the United States for permanent residence, the nonimmigrant may remain only for the duration of an authorized stay and engage only in those activities that are compatible with the specific nonimmigrant status given on entry." Charles Gordon, Stanley Mailman & Stephen Yale-Loehr, Immigration Law and Procedure § 12.01, at 12-4 (1997).

1

### (2) Non-Immigrant

Those seeking non-immigrant status must meet the requirements of a defined non-immigrant class to obtain a non-immigrant visa. 8 U.S.C. § 1201(a)(2) (1994).

Section 1101(a)(15) defines several classes of persons deemed non-immigrants. Among them are temporary workers who perform services which domestic workers are unavailable to perform. The statute provides:

> The term 'immigrant' means every alien except an alien who is within one of the following classes of non-immigrant aliens -
>
> an alien ... (ii)(b) having a residence in a foreign country which he has no intention of abandoning who is coming to temporarily to [sic] the United States to perform other temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country ....

8 U.S.C. § 1101(a)(15)(H)(ii)(b) (1994).

In addition, the INA defines certain classes of persons who cannot be admitted to the United States, whether as immigrants or non-immigrants, unless certain conditions are met. Those classes of persons include aliens who seek to enter the United States to perform any type of labor. The statute provides:

> [T]he following describes classes of excludable aliens who are ineligible to receive visas and who shall be excluded from admission into the United States:
>
> (5)(A)(i) Any alien who seeks to enter the United States for the purpose of performing skilled or unskilled labor is inadmissible, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that -
> (I) there are not sufficient workers who are able, willing, qualified ... and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and

2

> (II) the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed.

8 U.S.C. § 1182(a)(5)(A)(i) (1994).

Thus, an alien seeking temporary admission to perform work may be admitted only when the Secretary of Labor certifies that domestic workers are unavailable to perform such work and that the alien's admission would not adversely affect domestic workers.

These two provisions together -- the provision defining temporary workers who provide services for which domestic workers are unavailable as non-immigrants and the provision stating that such workers are not automatically excludable -- provide the Attorney General with the authority to admit temporarily alien workers upon the Secretary of Labor's certification. See. 8 U.S.C. § 1184(c) (1994).

The Secretary of Labor has promulgated regulations which establish the procedure for obtaining labor certifications. 20 C.F.R. § 655.0, et. seq. Aliens admitted to the United States for temporary employment in occupations other than agriculture, logging, or registered nursing are classified as "H-2B Workers." See 20 C.F.R. § 655.0 (1996); 8 C.F.R. § 214.2(h)(1)(i) (1997). Any employer seeking H-2B status for an employee must "consider available United States workers for the temporary services or labor, and shall offer terms and conditions of employment which are consistent with the nature of the occupation, activity and industry in the United States." 8 C.F.R. § 214.2(h)(6)(iii)(B). In making a certification determination, the Secretary of Labor, or a designee, must consider the employer's attempts to recruit domestic workers. 20 C.F.R. § 655.3(b). The Secretary of Labor may approve the application for labor certification if he or she finds that qualified domestic workers are unavailable, and that the terms

3

of the alien's employment will not adversely affect the wages and working conditions of domestic workers. 20 C.F.R. §§ 655.2-655.3.

After obtaining a labor certification,[1] the employer must file a petition for an H-2B visa with the United States Citizenship and Immigration Services ("USCIS"). 8 C.F.R. § 214.2(h)(6)(iii)(E). If the petition is granted, the resulting H-2B visa may be valid for a period of up to one year. 8 C.F.R. § 214.2(h)(9)(iii)(B). Extensions of the H-2B visa require repetition of the certification process. Gordon, et al., *supra*, § 20.10(1), at 20-120.[2]

An alien H-2B worker may lawfully remain in the United States for a period of up to three (3) years without departing the United States. 8 C.F.R. § 214.2(h)(15)(ii)(C).

### (3) Immigrant

An alternate route to coming to the United States is through the traditional "immigrant visa." Under that process, an alien seeking to immigrate to the United States from a foreign country must obtain an immigrant visa from a U.S. consul stationed in that country. The consul will not consider any application for an immigrant visa unless the consul determines the applicant is *prima facie* qualified for admission to the United States as an immigrant. Heavy demand for the limited number of immigrant visas has resulted in backlogs, often entailing a wait period of several years, depending on his or her "priority date," which, in the case of aliens such as plaintiffs, would be the date on which the labor certification on their behalf, subsequently approved, was filed with the Department of Labor. Gordon, Mailman & Yale-Loehr, Immigration Law and Procedure § 31.03; 8 U.S.C. 1154.

---

[1] If the Secretary of Labor refuses to issue the certification, the regulations permit an applicant to submit countervailing evidence contesting the Secretary's decision directly to the INS. 8 C.F.R. § 214.2(h)(6)(iv).

[2] The foregoing description of the immigration process has been largely borrowed verbatim from District Judge Mukasey's analysis in his Opinion in United States, et al. v. Richard Dattner Architects, 972 F. Supp 738

4

**B.     General Comments**

The point needs to be made here that the Plaintiffs, by their own admission, were able to come to the United States using H-2B status and were able to obtain work making presumably better wages at Signal than would be available in their home country. The alternative would obviously have been to apply for immigrant status in their home country and wait for their visa applications to be processed. This truism is a factor to be borne in mind when considering the sufficiency of the plaintiffs' Complaint as set forth hereinafter. Moreover, Plaintiffs admit that, as part of the H-2B visa process, they met with United States Consular officials and were interviewed by those officials. Also, the Complaint does not allege facts concerning the present legal or illegal immigration status of any of the Plaintiffs or putative plaintiffs.

**C.     The Allegations of the First Amended Complaint**

The Complaint and First Amended Complaint allege that the plaintiffs are "Indian" nationals and former or current H-2B "guestworkers"[3] who were allegedly recruited from India and/or the United Arab Emirates "at various times between 2003 and the present." First Amended Complaint, ¶ 14. The Plaintiffs are grouped into Group I and Group II. Group I Plaintiffs were allegedly recruited in 2003, and Group II Plaintiffs were allegedly recruited in 2006. *Id.*, ¶ 19-27.

The Defendants are grouped into "The Employer Defendant," i.e. Signal International, L.L.C. ("Signal"); "The Recruiter Defendants," i.e. Global Resources, Inc. ("Global"), Michael Pol ("Pol"), Dewan Consultants Pvt. Ltd. (a/k/a Medtech Consultants) ("Dewan Consultants") and Sachin Dewan ("Dewan"); "The Legal Facilitator Defendants," i.e. Malvern C. Burnett

---

[3] As set forth above, there is no such nomenclature in U. S. immigration law.

("Burnett"), Gulf Coast Immigration Law Center L.L.C. ("GCILC") and Law Offices of Malvern C. Burnett, A.P.C. ("Burnett Law Offices"); and "The Labor Broker Defendants," i.e. Indo-Amerisoft, L.L.C., Kurella Rao ("Rao") and J & M Associates of Mississippi, Inc. ("J & M"). *Id.*, at ¶ 33; 34-43; 44-49; 50-53.

The Plaintiffs contend that they were recruited to work in the United States through advertisements which "promised that qualified candidates could obtain legal permanent residence (green cards) and thereby legally and permanently immigrate to the United States with their families." First Amended Complaint, ¶ 77-80. The Plaintiffs are allegedly welders, fitters, and marine fabrication workers. *Id.* The plaintiffs allege that they paid fees to The Recruiter Defendants and The Legal Facilitator Defendants "to obtain for the ... plaintiffs' work green cards enabling the ... plaintiffs to permanently and legally immigrate to the United States with their families." *Id.* ¶ 88. The Complaint further asserts that Signal applied for H-2B visas for the Plaintiffs, but the Plaintiffs complain that "Recruiter Defendants ... failed to disclose material facts regarding the H-2B visa, including the fact that H-2B visas confer only a temporary non-immigrant status which does not allow the bearer to adjust to permanent residency status and the fact that applying for H-2B visa status is fundamentally incompatible with simultaneously applying for a green card. *Id.*, at 122. In pertinent part, the Complaint further alleges that

> "Signal further authorized the Recruiter Defendants to represent that Signal would assume sponsorship of the pending and as-yet-unsuccessful green card applications on behalf of the Group I Plaintiffs and apply for at least two to three H-2B visa extensions on behalf of all Plaintiffs to allow them to remain in the United States working for Signal while the Group I Plaintiffs' green card applications were being processed.

The Complaint further alleges as follows:

>Legal Facilitator Defendants and Recruiter Defendants induced the Group II Plaintiffs to enter the green card contracts without intent to diligently pursue the Group II Plaintiffs' applications and without any basis whatsoever for representing, inter alia, that Defendant Signal had lawful long-term employment opportunities to provide the Group II Plaintiffs; that Defendant Signal could legally apply for numerous H-2B visa extensions to maintain the Group II Plaintiffs' presence in the United States; that working under an H-2B visa for Signal was not inconsistent with applying for permanent immigration status sponsored by Signal; that green card applications sponsored by Defendant Signal would be valid and bona fide under U.S. immigration law; and that such applications were likely to be successfully completed and approved within the promised timelines. *Id.*, ¶ 145.

The Plaintiffs, on behalf of themselves and a putative class, further allege that upon their arrival in the United States, the living and working conditions provided by Signal at Mississippi and Texas facilities were unacceptable and that certain actions taken against them by Signal constituted false imprisonment, assault and battery, and negligent and intentional infliction of emotional distress. *Id.*, at ¶ 182-258.

The Plaintiffs assert twelve (12) claims for relief. They include the so-called Legal Facilitator Defendants in only three (3) of them; namely, a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) (RICO);[4] fraud and misrepresentation[5] and breach of contract.[6] The plaintiffs do not allege their present immigration status.

## II.   STANDARDS APPLICABLE TO MOTION TO DISMISS

### A.   **Bell Atlantic Corp. v. Twombly**

In considering a Motion to Dismiss for failure to state a claim under Rule 12(b)(6), the

---

[4] The Second Claim For Relief, ¶¶ 271 - 318.
[5] The Fifth Claim For Relief, ¶¶ 339 - 350.

7

district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). That said, in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct 1955, 167 L.Ed.2d 929 (2007), the U. S. Supreme Court specifically rejected blind adherence to the longstanding maxim that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief …'" at 1969.[7] In Twombly, the Supreme Court held that Federal Rule of Civil Procedure 8(a) requires factual allegations sufficient "to raise a right to relief above the speculative level." Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face," Twombly, at 1974. The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and *a formulaic recitation of the elements of a cause of action will not do.*" Id. at 1964-65. Emphasis supplied. It is especially pertinent to this case that in Twombly the Supreme Court (there reviewing claims of conspiracy in a Sherman Anti-Trust Act case) held that alleging parallel conduct, without more, does not suggest conspiracy, and a conclusory allegation of agreement does not supply facts adequate to show illegality. 127 S. Ct. at 1972.

**B.     Heightened Pleadings Requirement**

Moreover, Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."[8]

---

[6] The Sixth Claim For Relief, ¶¶ 351 - 357.
[7] In fact, it can be fairly said that the Supreme Court has jettisoned that doctrine.
[8] The purpose of Rule 9(b) is three-fold. First, the rule ensures that plaintiff's allegations are specific enough to inform a defendant of the act of which the plaintiff complains thereby enabling the defendant to prepare an effective response and defense. Mitchell Energy Corp. v. Martin, 616 F.Supp. 924, 927 (S.D. Tex. 1985) (internal citations omitted). Second, Rule 9(b) eliminates those complaints filed merely as a pretext for discovery of unknown wrongs.

See also Old Time Enter., Inc. v. International Coffee Corp., 862 F.2d 1213, 1217 (5th Cir. 1989).

The heightened pleading standard is derived from concerns that unsubstantiated charges of fraud can irreparably damage a defendant's reputation. Ergonomic Lighting System, Inc. v. Commercial Petroleum Equipment, 2003 WL 22436101 (W.D Tex. 2003).

### III. THE PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM

#### A. General Discussion of RICO

The "RICO" statute declares in pertinent part that

> **(a)** It shall be unlawful for any person who has received any income derived, directly or indirectly, from **a pattern of racketeering activity** or through collection of an unlawful debt in which such person has participate as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce...
>
> **(b)** It shall be unlawful for any person through a **pattern of racketeering activity** or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control **of any enterprise** which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> **(c)** It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

---

*Id.* Third, the rule protects a defendant from unfounded charges of wrongdoing which injure his reputation and goodwill. *Id.*

9

> **(d)** It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section.

To show that the defendants violated the substantive RICO statute, plaintiff must therefore show

(1)  that the defendant(s)

(2)  through the commission of two or more acts

(3)  constituting a "pattern"

(4)  of "racketeering activity"

(5)  directly or indirectly invested in or maintained an interest in or participated in

(6)  an enterprise

(7)  the activities of which affected interstate or foreign commerce;

The Complaint fails to state a claim because at a minimum it fails to allege facts which would establish that Movers committed two or more predicate acts and/or that Movers engaged in any "racketeering activity" and/or that Movers engaged in a "pattern" of racketeering activity and/or that Movers invested in or maintained an interest in or participated in "an enterprise."

**B.    The Complaint Fails to Allege A Pattern**

To prove a "pattern of racketeering activity" a RICO plaintiff must allege and prove "at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity." See Tel-Phonic Services, Inc. v. TBS Intern, Inc., 975 F.2d 1134, 1140 (5th Cir. 1992). Thus, merely establishing the minimum number of predicates is not enough to establish a "pattern." *Id.*, at 1140.

10

Predicate acts for RICO violations are delineated in 18 U.S.C. and include for purposes of the instant case, mail fraud and wire fraud. When bringing claims under RICO based on the predicate acts of mail fraud or wire fraud, the underlying predicate acts must be pled with particularity pursuant to Fed. R. Civ. P. 9(b). See, for example, Joe N. Pratt Ins. v. Doane, 2008 WL 819011 (S.D. Tex. 2008). When determining whether a fraud claim should be dismissed for lack of particularity, "the Rule 9(b) standards require a party to plead with specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation as to why they are fraudulent. Plotkin v. IP Axess, Inc., 407 F.3d 690, 696 (5th Cir. 2005). Moreover, "[general] allegations, *which lump all defendants together* failing to segregate the alleged wrongdoing of one from those of another, do not meet the requirements of Rule 9(b)." Patel v. Holiday Hospitality Franchising, 172 F. Supp.2d 821, 824 (N.D. Tex. 2001). (Emphasis supplied.) A good example of this occurs at ¶ 83 of the First Amended Complaint, to-wit:

> Upon information and belief, prior to attending these meetings and testing sessions, *Labor Broker Defendants, Recruiter Defendants, and Legal Facilitator Defendants* conferred in and around the months of February, March, and April 2004 by phone, mail, fax and or e-mail to organize, plan, and coordinate the logistics and substantive content of these meetings and testing sessions. (Emphasis supplied.)

Another example of this occurs at ¶ 145

> *Legal Facilitator Defendants and Recruiter Defendants* induced Group II Plaintiffs to enter the green card contracts without intent to diligently pursue Group II Plaintiffs' applications and without any basis whatsoever for representing, *inter alia*, that defendant

11

>Signal had lawful long-term employment opportunities to provide Group II Plaintiffs; that Defendant Signal could legally apply for numerous H-2B visa extensions Group II Plaintiffs' presence in the United States; that working under an H-2B visa for Signal was not inconsistent with applying for permanent immigration status sponsored by Signal; that green card applications sponsored by Defendant Signal would be valid and bona fide under U.S. immigration law; and that such applications were likely to be successfully completed and approved within the promised timelines. (Emphasis supplied.)

Another representative example occurs at F30 of the Exhibit 1, Part 1 filed in response to the Court's RICO standing order, to-wit:

| **Mode of Communication** | **Participants** | **Details** |
|---|---|---|
| Mails, or telephone, fax, or electronic mail (wires) between New Orleans, Louisiana, Mississippi, Mumbai, India and/or Dubai UAE | Malvern C. Burnett, Burnett Law Offices, J & M Associates, Sachin Dewan, Dewan Consultants | Discussions and transmission of materials related to workers' green card applications sponsored by J & M Associates, Specific information regarding these communications is currently in the sole possession of Defendants. |

Thus, the plaintiffs' allegations fail to properly allege a "pattern" of racketeering activity.[9]

### C. The Complaint Fails to Allege Facts Which Support That There Was "An Enterprise"

The plaintiff also fails to allege facts which would establish the existence of an

---

9 We are mindful of the Fifth Circuit's decision in Abraham v. Singh, 480 F.3d 351 (5th Cir. 2007); however, each case stands on its own factual allegations. Moreover, the Court in Abraham obviously did not measure the allegations there by the standard enunciated in Bell Atlantic v. Twombly, (*supra*), because it commented more than

"enterprise." An "enterprise" has been defined as

> ...an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchial or consensual decision-making." Jennings v. Emry, 910 F.2d 1434, 1440 (7th Cir. 1990).

See Segreti v. Lome, 747 F.S. 484, 486 (N.D. Ill. 1990).

Moreover,

> The existence of an enterprise is established by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). While a plaintiff need not allege in his complaint information sufficient to prove the existence of an enterprise, a plaintiff must identify the enterprise. And, such identification must necessarily include details about the structure of the enterprise. See Jennings, 910 F.2d at 1439-1440, 1441. *Id.*

Needless to say, plaintiffs here do nothing more than make conclusory assertions of "an enterprise" (or three enterprises) and do not allege the existence of any ongoing organization with a decision-making capability.

Accordingly, for that reason as well, the Plaintiffs alleged RICO claims against Movers, should be dismissed.

## IV. THE COMPLAINT, AS AMENDED, FAILS TO STATE A CLAIM WITH RESPECT TO ALLEDGED STATE LAW CLAIMS

### A. State Law Claim For Fraudulent Inducement of Contract

Under Louisiana law, a claim for fraudulent inducement to contract requires the

---

once of the "liberal pleading standard" applicable. In addition, we submit that Rule 9 governs the instant matter.

13

following allegations: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract. Shelton v. Standard/700 Associates, 798 So.2d 60, 64 (La. 2001). A claim for fraudulent inducement must be pled with particularity, as required by Rule 9(b). Buford v. Howe, 10 F.3d 1184, 1298 (5th Cir. 1994).

Since the plaintiffs have failed to allege fraud with particularity, this claim should be dismissed for the reasons set forth above.

### B. State Law Claim for Breach of Contract

The Plaintiffs' State Law claim for breach of contract must similarly fail. The claim is vague. For example, the First Amended Complaint asserts that "Defendants breached their contracts by failing to comply with their binding promises regarding green cards and H-2B visa status." At best, the purported claim against Movers is one of detrimental reliance. In order to sufficiently allege such a claim for detrimental reliance under Louisiana law, the Plaintiffs must allege (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change in position to one's detriment because of the reliance. Orr v. Bancroft Bag, Inc., 687 So.2d 1068, 1070 (La.App. 2 Cir. 1997). The Plaintiffs must specify (and have not) what each individual defendant allegedly promised to do and specify what each individual defendant allegedly did not do.

## V. ALTERNATIVELY, ALL STATE LAW CLAIMS SHOULD BE DISMISSED WITHOUT PREJUDICE

Since there are no viable federal claims presented here as against Movers, this Court should decline supplemental jurisdiction over the plaintiffs' alleged claims against Movers which are based upon State law, in the event this Court does not dismiss those State-Law Claims as suggested *supra*.

There is ample authority for this Court to decline jurisdiction here. See, for example, Tinker v. DeMaria Porche-Auid, Inc., 632 F.2d 520 (5th Cir. 1980); 28 U.S.C. 1367 (3). This matter has only just begun; therefore, it is definitely in its "early stages" as contemplated under 28 U.S.C. 1367 (3). Furthermore, "substantial preparation" has not yet been undertaken with respect to any claims. Clearly, the dismissal of the federal claims here would create a classic situation where the Court's supplemental jurisdiction over any pendent State law claims against the defendants would not be warranted. See *Practice Commentary*, page 224, 26 U.S.C.A. 1367.

## VI. CONCLUSION

For the reasons set forth above, the Plaintiffs' Complaint, as amended, should be dismissed with prejudice. Alternatively, in the event the Federal Law claims are dismissed and the State Law claims are not, the State Law claims should be respectfully dismissed without prejudice.

Respectfully submitted,

**/S/ RALPH R. ALEXIS, III (LA BAR NO. 2379)**
**PORTEOUS, HAINKEL AND JOHNSON, LLP**
704 Carondelet Street
New Orleans, LA 70130
Phone: (504) 581-3838
Fax: (504) 581-4069
e-mail: ralexis@phjlaw.com
Attorney For Defendants: Malvern C.
Burnett, Law Offices Of Malvern C. Burnett,
A Professional Law Corporation and
Gulf Coast Immigration Law Center, L.L.C.

**CERTIFICATE OF SERVICE**

I do hereby certify that on May 21, 2008 a copy of the above and foregoing pleading was filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record unless indicated otherwise.

**/S/ RALPH R. ALEXIS, III**