# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KURIAN DAVID, SONY VASUDEVAN SULEKHA, PALANY ANDI THANGAMANI, MARUGANANTHAM KANDHASAMY, HEMANT KHUTTAN, ANDREWS ISSAC PADAVEETTIYL, and DHANANJAYA KECHURU, on behalf of other similarly situated individuals, and SABULAL VIJAYAN, KRISHAN KUMAR, JACOB JOSEPH KADDAKKARAPPALLY, KULDEEP SINGH, AND THANASEKAR CHELLAPPAN, individually,<br><br>                              Plaintiffs,<br><br>          v.<br><br>SIGNAL INTERNATIONAL LLC, MALVERN C. BURNETT, GULF COAST IMMIGRATION LAW CENTER, L.L.C., LAW OFFICES OF MALVERN C. BURNETT, A.P.C., INDO-AMERI SOFT L.L.C., KURELLA RAO, J & M ASSOCIATES, INC. OF MISSISSIPPI, GLOBAL RESOURCES, INC., MICHAEL POL, SACHIN DEWAN, and DEWAN CONSULTANTS PVT. LTD. (a/k/a MEDTECH CONSULTANTS),<br><br>                              Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. 08-01220<br><br>Section A<br>Judge Zainey<br><br>Magistrate Section 3<br>Magistrate Knowles |

## AMENDED AND RESTATED CLAIMS AGAINST CO-DEFENDANTS (CROSS CLAIMS) AND THIRD PARTY DEFENDANT, ANSWER AND AFFIRMATIVE DEFENSES OF SIGNAL INTERNATIONAL, LLC TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant Signal International, LLC (hereafter "Signal"), while reserving all rights, respectfully hereby amends and restates its prior pleading in response to Plaintiffs' First Amended Complaint.

1

1.

CROSS CLAIMS AND THIRD PARTY CLAIM

Cross Claim Defendants

Made cross claim defendants herein are the "Recruiter Defendants," the "Legal Facilitator Defendants," and the "Labor Broker Defendants," all as defined and identified in plaintiffs' complaint.

2.

Third Party Defendant

Made third party defendant herein is Zito Companies, LLC, an Alaska corporation doing business in this District.

3.

Signal is in the business of providing construction services to the Gulf Coast oil and gas industry. After Hurricanes Katrina and Rita, there was a tremendous demand for the services Signal provides, due to extensive damage to offshore production facilities. But there was a serious shortage of necessary workers, such as skilled welders and pipefitters, due to the population displacements caused by hurricanes Katrina and Rita.

4.

Signal thus found itself in a double bind: the number of workers available to be hired had plummeted, and the demand for its services had greatly increased.

5.

In this setting, in 2006, cross claim defendant Michael Pol, president of defendant Global Resources, Inc., approached Signal with a proposal to provide the skilled labor needed by Signal from lawful foreign sources.

6.

Pol represented that he was president of cross claim defendant Global Resources, Inc.  He stated that he had contacts overseas and could obtain for Signal the workers it needed via temporary visas issued to foreign workers to allow Signal to employ what were termed "H-2B" workers.

7.

As Signal later found out, cross claim defendants Dewan Consultants Pvt. Ltd. aka Medtech Consultants, Sachin Dewan, Malvern C. Burnett, Gulf Coast Immigration Law Center, L.L.C., and the Law Offices of Malvern C. Burnett, A.P.C. were part of a team with Pol and his company.

8.

Signal had no experience with directly hiring foreign workers on H-2B visas, nor with the procedures required to obtain them, but it needed the workers and so, in reasonable reliance and trust of Pol, Global Resources, Inc., and the persons to whom Pol introduced them as part of the team – the Burnett cross claim defendants, and the other Recruiter cross claim defendants – Signal decided it would proceed to obtain the needed foreign workers.

9.

Pursuant to its decision to lawfully obtain temporary workers from abroad, Signal executed a contract with cross claim defendants Pol and Global Resources, Inc., which in turn supplied to Signal defendants Malvern C. Burnett, Gulf Coast Immigration Law Center, L.L.C., and the Law Offices of Malvern C. Burnett, A.P.C. (the Burnett cross claim defendants) for needed assistance.  Among other provisions, the contract stated:

-- "Global is in the business of assisting skilled Foreign Workers abroad, for a fee to be paid by the Foreign Workers, to find employment in the United States under the H-2B or I-140 "Permanent Resident" process." (page 1, paragraph 3);

-- "In entering this agreement, Signal relies on Global's experience and expertise in procuring foreign workers . . ." (page 5, paragraph 19);

-- "Global will provide all immigration documents for the selected Foreign Workers and an immigration attorney to file all proper documents for the 'H-2B' and/or 'permanent resident' process." (page 1, paragraph 2);

-- "Global will provide to Signal, at no charge, an Immigration Attorney to assist, advise and process the Signal requirements for migrating the skilled Foreign Workers, including but not limited to the filing and processing of any certification applications with the appropriate State Workforce Agency and USCIS." (page 1, paragraph 3);

-- "The Immigration Attorney assigned to provide such services to Signal shall owe a duty of loyalty to Signal." (pages 1-2, paragraph 3).

10.

Although the contract referred to both "H-2B and/or permanent residence" workers, cross claim defendants Pol and Global Resources represented to Signal that the workers to be assigned to Signal would be H-2B workers.  The H-2B temporary worker program permits U.S. employers to bring foreign workers on short-term temporary visas to meet labor needs when employers attest that they cannot find U.S. workers to perform the available jobs.  H-2B visas are non-immigrant visas, are only valid for work with the specific employer who petitioned for the visas, and do not provide portable and/or transferable employment authorization for the visa holders.

4

11.

The "Immigration Attorney" promised under the contract turned out to be the Burnett cross claim defendants.  The Burnett cross claim defendants held themselves out to be licensed attorneys in Mississippi and Louisiana with extensive experience in immigration law.  The engagement of the Burnett cross claimants explicitly required that the Burnett cross claim defendants follow all applicable laws and act in a lawful and ethical manner.

12.

Signal proceeded to follow the advice and instructions of cross claim defendants and to fill out various papers as they were told were needed for the recruitment of H-2B workers; and over a period of time, workers were provided to Signal.

13.

During the entire course of events herein, Signal relied on cross claim defendants to handle all matters properly and legally.  Signal relied on cross claim defendants' professed knowledge, skills, integrity and loyalty.  Signal relied as well on the contracts it executed with cross claim defendants, reasonably expecting that they would comply with their obligations therein.

14.

The foreign workers needed by Signal did eventually arrive, with appropriate H-2B visas, and were employed by Signal.

15.

 The foreign workers were housed by Signal in clean, safe, decent and adequate facility-centered housing, due to the acute post-Katrina housing shortage, and an experienced Indian chef was hired to oversee meal preparation and service.

16.

But what Signal did not know, and what Signal could not have known because it was deliberately concealed from Signal by the cross claim defendants, were the true facts relating to the process of bringing some of the workers for Signal and the arrangements among the cross claim defendants relating to same, and the various false promises and representations made to some of the prospective Signal workers regarding same.

17.

Apparently the truth, concealed from Signal, was that some of the foreign workers provided to Signal were promised, not simply H-2B temporary worker status, which would have required them to leave the United States when such visas expired, but were also falsely promised that within a short period of time, they would be processed and approved for a coveted "green card," which would allow the workers to permanently stay in the United States and to travel and work without restriction.  These workers, while still outside of the United States despite cross claim defendants' green card contracts with them, were charged additional fees to come to the United States on H-2B temporary worker visas for Signal; and as it turned out, some of them had been told that the H-2B process was a step on the way to obtaining a green card – which it most assuredly was not.

18.

Some other workers had been told that they could come to the United States and work for Signal and quickly obtain green cards while working for Signal, which was again untrue.

19.

Apparently these false misleading green card promises, and the representations that Signal would obtain green cards for the workers, came about in at least a couple of ways.  For

one, there were some workers who had paid the cross claim defendants for green card applications long before Signal even decided, in 2006, to bring workers over to this country on H-2B visas.  These workers had apparently paid money to the cross claim defendants in 2003 and 2004 on a promise that they would obtain green cards and become lawful permanent residents in this country within 18-24 months. By 2006, those promises were already long unfulfilled.  Cross claim defendants saw an opportunity, when Signal sought H-2B workers, to send these workers to the United States with a false promise that a job with Signal would be their opportunity to quickly obtain a green card -- even though cross claim defendants were at the same time telling Signal that it would be supplied with H-2B workers under temporary visas who would only be allowed to work and to stay in this country for a limited amount of time.

20.

Apparently there were other workers who were recruited by cross claim defendants after Signal sought H-2B workers.  These other workers were apparently told that work at Signal would allow them to quickly obtain green cards, even though cross claim defendants were at the same time telling Signal that it would be supplied with workers holding H-2B visas which were temporary non-immigrant visas and that the workers would only be allowed to work and to stay in this country for a limited amount of time.

21.

Signal did not participate in, nor did it otherwise, inducing the workers to come to this country by false promises relating to green cards.  H-2B visas confer only a temporary non-immigrant status which does not allow the bearers to adjust to lawful permanent resident status; applying for H-2B visas is fundamentally incompatible with applying for green cards. Unfortunately, this critical piece of information was not related to Signal by either Malvern

Burnett or Michael Pol.   Signal trusted that both Malvern C. Burnett and Michael Pol had provided it with accurate information on the legal immigration process for both the H-2B visas and green cards.   Signal was misled by these parties as to the specific procedures involved in applying for a green card, the time frame involved and the potential delays in obtaining green cards for the foreign workers.   At no time did Signal <u>ever</u> authorize any party to mislead any plaintiffs, employees or prospective employees.

22.

Although it was contrary to law and a violation of the workers' H-2B visa status to apply for green cards, it apparently was in the interests of cross claim defendants.   For the workers whose money had been taken by cross claim defendants in 2003 and 2004 with a promise that they would be lawful permanent residents of the United States within 18-24 months, Signal's request for workers gave the cross claim defendants an opportunity to at least get the workers into the United States. Because those workers were willing to go to the United States to work for Signal, it appeared to Signal that their request for H-2B workers was being fulfilled.

23.

For the workers recruited in 2006 by cross claim defendants, the promise of a green card guaranteed them a supply of workers to send to Signal and guaranteed also that cross claim defendants would receive much higher payments from those workers than would have been the case had the workers been told that their only legal United States status would be as temporary workers, ineligible to seek green cards at that time.   For the workers too, the opportunity to get into the United States, regardless of the legal basis for being in the country, gave them the practical opportunity to find a way to stay in the United States, whether legally or not – as evidenced by the fact that whereas hundreds of workers have now left Signal, only five to

8

Signal's knowledge have returned to India, and the vast majority of them, apparently including some of the plaintiffs and alleged class members herein, remain in this country without legal status.   But cross claim defendants' actions set the stage for a host of problems and financial losses for Signal.

24.

Signal knew nothing of these representations, nor did Signal authorize or manifest to anyone that it was authorizing any improper or unlawful action to be taken on its behalf.  Signal did not participate in defrauding the plaintiffs.  Signal reasonably expected that immigration counsel, Malvern C. Burnett, would act lawfully, professionally and properly at all times.  Signal also believed that Global Resources would act lawfully, professionally and properly at all times pursuant to the contract which specifically states that Global has experience and expertise in procuring foreign workers and processing all documentation in compliance with U.S. immigration laws and regulations.  At no time did Signal ever authorize any party to mislead any plaintiffs', employees or prospective employees.

25.

Indeed, as to many of the workers who had signed green card contracts, the contracts had been signed before Signal even began the process of seeking foreign workers.

26.

All Signal knew was that it was told it was lawfully getting workers into this country on H-2B temporary visas.  If these fitters and welders were good employees, Signal believed it to be their option to apply for a green card.

9

27.

At no time, moreover, did Signal make any statement to any person employed by the United States or an agency of the United States that it knew to be untrue.

28.

Within weeks of the arrival of the first group of foreign workers at Signal, some of the workers inquired of Signal as to when they would be getting their green cards. Some of the workers who arrived subsequently made the same inquiry. Signal was surprised by these inquiries, as it knew nothing about any green card promises made to the workers. The workers were shocked and displeased by Signal's response to these inquiries.

29.

Subsequent inquiry by Signal of the workers revealed that some of the workers had paid what the workers considered to be great sums of money to the cross claim defendants in expectation of quickly receiving green cards in return.

30.

In an effort to provide some satisfaction to these workers, Signal, on these workers' behalf, requested that cross claim defendants refund a substantial portion of the money they had been paid by these workers, but the cross claim defendants refused. In response to their refusal, and believing that cross claim defendants Pol and Global had a major role in leading these workers to believe they would obtain green cards, Signal terminated its contract with Pol and Global.

31.

Continuing to be dissatisfied because their problem had not been addressed, some of the workers became agitated and left Signal as they were free to do, although they did not thereupon return to India as was legally required by their H-2B status.

32.

As time continued to pass and it became increasingly evident that nothing was being done or would be done by cross claim defendant, to obtain green cards for them, more workers continued to leave Signal, although again without returning to India as was legally required by their H-2B visa status.

33.

Most of the workers who left Signal absconded, i.e., they left Signal but did not thereupon return to India, in violation of the terms of their H-2B status.

34.

Signal believes that these workers left for a variety of reasons, some of them leaving for more than one reason, including the following:

a)  Some of the workers left Signal because of the cross claim defendants' failure to provide them with the promised employment-based green cards.

b)  Other workers apparently left because they had no intention of honoring the terms of their H-2B visas to start with, having come into the country on false pretenses.

c)  Some left because they had to leave to pursue green cards; these were the workers for whom the other defendants had made arrangements for cross claim defendants Indo-Amerisoft, LLC, Kurella Rao, and J & M Associates, Inc. of Mississippi, and third party defendant Zito Companies, LLC to sponsor green cards for them. Cross claim defendant Burnett, despite his duty of loyalty to his client Signal, was seeking employment-based green cards for some of the workers under the sponsorship of different clients of his (in concert with the other cross claim defendants and third

party defendant); these workers left Signal when they had to go to work for the sponsor/client in order to obtain their employment-based green cards.

d)   Some others left because they had no intention of complying with terms of their H-2B visas, having expected to become permanent residents.  Some of these persons had been instructed by the other cross claim defendants to state at their consular interviews that they did not intend to become lawful permanent residents of the United States, and were instructed as well not to state the true amount they had paid to the other defendants in order to come to the United States; the workers apparently followed these instructions.

e)   Some others left because they were dissatisfied with the accommodations provided by Signal.  These persons had been misled by the other cross claim defendants as to what they should expect when they arrived in this country and began working for Signal.

f)   Still others left because they were told or promised that if they left Signal, they could obtain green cards or other permanent residence status with the help of others. These workers were told, by parties other than Signal, that if they left Signal they could obtain green cards without pursuing the employment-based process, or by claiming that they were victims of trafficking.

35.

Most of the reasons that the workers left Signal prior to the expiration of their H-2B visas with Signal were the result of the wrongdoings and broken promises of the other cross claim defendants.

36.

As to most of these workers who left Signal, they would not have left but for the actions of cross claim defendants, the consequence of which was upset and anger and dissatisfaction among the workers.  Had the cross claim defendants kept their promises to Signal, they would have recruited H-2B workers who understood and accepted that they would be in this country for a limited period of time, earning money while working for a single employer.

37.

Signal's sole interest in hiring the foreign workers was to obtain the labor it needed for its work in a lawful manner.

38.

Plaintiffs' suit alleges that Signal was part of a scheme of wrongdoing directed to the foreign workers, but in fact Signal was a victim rather than a perpetrator.  The actions of the cross claim defendants and third-party defendant caused numerous workers to leave Signal.

39.

The result of these wrongful actions by the cross claim defendants, which include fraud and breach of contract and breach of duty of loyalty and good faith, has been damages to Signal.

40.

Had cross claim defendants not breached their agreements and other obligations, and had they acted in good faith, Signal would not have encountered these problems with some of their workers, nor would most of the workers have left Signal before the time allowed by their H-2B visas had expired.

41.

The consequence of the cross claim defendants' actions has been damages to Signal, financial and otherwise.  Instead of having direct employees consisting of H-2B workers, Signal has been required to use subcontract labor at greatly increased cost.  The amount of this loss has not been precisely calculated but is estimated at $10-15 million.  Signal has also suffered damage to its good name, reputation and standing in the community.

**Count 1**
**Fraud**
**Legal Facilitator Defendants, Recruiter Defendants**

42.

Signal re-alleges and incorporates the allegations in the preceding paragraphs.

43.

These cross claim defendants misrepresented material facts to Signal regarding their own actions and the status of the workers provided to Signal on H-2B visas.

44.

At the time they made the misrepresentations to Signal, these cross claim defendants knew the misrepresentations were false.

45.

Signal was ignorant of the falsity of the misrepresentations made to it by these cross claim defendants.

46.

These cross claim defendants made these misrepresentations to Signal with the intent to deceive Signal.

47.

Signal relied on the misrepresentations made to it by these cross claim defendants due to the professional and contractual relationships between Signal and these cross claim defendants.

48.

Signal has suffered substantial losses as a result of it relying on the misrepresentations of these cross claim defendants.

## Count 2
## Breach of Fiduciary Duty
## Legal Facilitator Defendants

49.

Signal re-alleges and incorporates the allegations in the preceding paragraphs.

50.

In addition to the allegations set out regarding the fraud perpetrated by these and other defendants in Count 1 above, these cross claim defendants have also breached their fiduciary duties to Signal.

51.

The attorney-client relationship between these defendants and Signal created a fiduciary duty owed by these cross claim defendants to Signal.

52.

The relationship between these cross claim defendants and Signal resulted in Signal placing substantial confidence in these defendants regarding the H-2B visa process and employment of foreign workers.

53.

These cross claim defendants were aware of the confidence placed in them by Signal and, in fact, took steps to cultivate and encourage that confidence.

54.

As a result of the confidence placed in these cross claim defendants by Signal, these cross claim defendants were able to and in fact did exercise influence over the actions of Signal regarding the H-2B worker program.

55.

These cross claim defendants breached the trust placed in them by Signal, by taking actions that were contrary to law and/or adverse to the interests of Signal.

56.

The actions of these cross claim defendants that were contrary to any law and/or adverse to the interests of Signal were all taken outside the limits of any authority granted to them by Signal.

**Count 3**
**Malpractice**
**Legal Facilitator Defendants**

57.

Signal re-alleges and incorporates the allegations in the preceding paragraphs.

58.

Signal intended to enter into an attorney-client relationship with these cross claim defendants, and believed it had done so, and in fact did so.

59.

Signal, in fact, had an attorney-client relationship with these cross claim defendants.

60.

Signal relied on the legal advice and counsel of these cross claim defendants to ensure that its recruitment of foreign workers and H-2B visa program was properly established and executed within all applicable laws.

61.

These cross claim defendants provided legal advice and counsel to Signal that was incorrect, adverse to Signal's interests, and in violation of their professional obligations and responsibilities to Signal.

62.

At the same time that these cross claim defendants were providing legal advice and counsel to Signal regarding bringing workers to Signal on H-2B visas, they were also representing others (Labor Broker Defendants/Cross Defendants and Third Party Defendant Zito) who competed with Signal for similar laborers. These cross defendants were assisting these parties in bringing some of the same foreign workers who worked for Signal on H-2B visas to work instead for these other parties (Labor Broker Defendants/Cross Defendants and Third Party Defendant Zito) as their employment-based green card sponsors. This was patently adverse to the interests of Signal.

63.

Signal has suffered substantial losses as a result of the actions and malpractice of these cross claim defendants.

**Count 4**
**Breach of Contract**
**Legal Facilitator Defendants, Recruiter Defendants**

64.

Signal re-alleges and incorporates the allegations in the preceding paragraphs.

65.

Signal entered into written contracts with each of these cross claim defendants.

66.

These cross claim defendants breached the terms of the contracts which existed between them and Signal.

67.

Signal has suffered damages as a direct result of the acts of these cross claim defendants which breached the contracts between them and Signal.

**Count 5**
**Breach of Contract**
**Legal Facilitator Defendants, Recruiter Defendants, Labor Broker Defendants**

68.

Signal re-alleges and incorporates the allegations in the preceding paragraphs.

69.

The workers who were brought to Signal on H-2B visas entered into written and/or verbal contracts and agreements with these cross claim defendants regarding the H-2B worker program.

70.

Signal was a third-party beneficiary of the written and/or verbal contracts and agreements entered into between each of these cross claim defendants and some of the individual workers brought to Signal on H-2B visas.

18

71.

These cross claim defendants breached the contracts entered into between them and some of the workers who participated in and were brought to Signal on H-2B visas.

72.

Signal has suffered damages as a direct result of the actions of these cross claim defendants which breached the written and/or verbal contracts and agreements entered into between these cross claim defendants and some of the individual workers provided to Signal by way of the H-2B worker program.

**Count 6**
**Unfair Trade Practices**
**Legal Facilitator Defendants, Recruiter Defendants**

73.

Signal re-alleges and incorporates the allegations in the preceding paragraphs.

74.

These cross claim defendants provided services related to the hiring of H-2B workers by employers in the United States.

75.

These cross claim defendants received compensation for the services they provided.

76.

Signal was a consumer of the services provided by these cross claim defendants.

77.

These cross claim defendants utilized unfair or deceptive acts or practices in their provision of the services to Signal.

78.

Signal suffered an ascertainable loss of money as a direct result of the unfair trade practices of these cross claim defendants.

**Count 7**
**Detrimental Reliance**
**Legal Facilitator Defendants, Recruiter Defendants**

79.

Signal re-alleges and incorporates the allegations in the preceding paragraphs.

80.

These cross claim defendants made numerous representations to Signal regarding the legality, effectiveness, and operation of their services in bringing H-2B workers to Signal.

81.

The representations to Signal were false and incorrect.

82.

Signal justifiably relied on the representations of these cross claim defendants, as these cross claim defendants had professional, contractual, and/or fiduciary relationships with Signal.

83.

Signal made detrimental changes to its position based on its reliance on the representations of these cross claim defendants, and suffered damages.

**Count 8**
**Tortious Interference with Contractual Relationship**
**Labor Broker Defendants and Third Party Defendant Zito Companies, LLC**

84.

Signal re-alleges and incorporates the allegations in the preceding paragraphs.

85.

Signal had contractual relationships with the employees provided to it by way of the H-2B worker program.

86.

The subjects of the contractual relationships were the employment of the workers by Signal, and their housing and board.

87.

These cross claim defendants and third party defendant intentionally and willfully took steps to interfere with the contractual relationships between the workers and Signal.

88.

The acts of these cross claim defendants and third party defendant were calculated to cause damage to Signal in its lawful business.

89.

The acts of these cross claim defendants and third party defendant were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of these cross claim defendants.

90.

Signal suffered actual loss and damage as a result of the acts of these cross claim defendants and third party defendant.

**Count 9**
**Indemnity**
**Defendant Global Resources, Inc.**

91.

Signal re-alleges and incorporates the allegations in the preceding paragraphs.

92.

Signal entered into a written contact with cross claim defendant Global Resources, Inc., as subsequently amended.

93.

The contract entered into between Signal and cross claim defendant Global includes provisions by which Global agrees to indemnify Signal against certain claims.

94.

The claims made by the original plaintiffs against Signal include the types of claims covered by the indemnity provisions of that contract.

95.

Global is obligated to indemnify Signal for any losses to Signal by the claims being made by the original plaintiffs.

**Count 10**
**Indemnity**
**All cross claim defendants**

96.

Signal re-alleges and incorporates the allegations in the preceding paragraphs.

97.

All cross claim defendants engaged in actions, as set forth above, which included intentional wrongdoing and/or knowing breach of contractual and/or fiduciary obligations.

98.

While Signal denies any and all wrongdoing or violations of law of any sort, if there was any wrongdoing or violations of law by Signal, it was minor and passive as compared to the major and active wrongdoing of cross claim defendants, and moreover was induced by the

wrongful actions of cross claim defendants. Signal did not actively or affirmatively participate in any wrongdoing. Additionally, some or all damages for which Signal may be liable (all such liability being denied by Signal) are of the type that would not have been incurred had cross claim defendants properly fulfilled their contractual obligations to Signal. Further, to any extent for which Signal may be legally responsible for the wrongful acts of cross claim defendants, which responsibility is denied, such wrongful actions were beyond and contrary to any authority granted by Signal; as a result, cross claim defendants owe indemnity to Signal, both implied contractual indemnity and implied equitable indemnity, for any amounts for which Signal may be cast in judgment.

## **DEFENSES**

99.

### First Defense

Plaintiffs' suit fails to state a claim in any regard, as to all counts.

100.

### Second Defense

Plaintiffs have failed to plead with the particularity required by Rule 9(b).

101.

### Third Defense

Some or all of plaintiffs' claims are barred by the applicable statute or statutes of limitation or peremption.

102.

<u>Fourth Defense</u>

The damages and injuries claimed to have been suffered were caused, in whole or in part, by the fault of plaintiffs themselves, either barring or reducing any right they might otherwise have to judgment herein.  This fault includes but is not limited to the fact that some of them had actual or constructive knowledge of the falsity or likely falsity of information and/or promises they were receiving from some of the defendants, and that they knowingly made false statements to officials in connection with their visa applications; they knew or should have known that they were engaged and participating in wrongdoing and/or conduct that carried with it the risk of exposure of their misrepresentations and the consequences thereof.  Further, some of the plaintiffs had ample reason to investigate the situation and failed to do so.

103.

<u>Fifth Defense</u>

The damages and injuries claimed to have been suffered were caused, in whole or in part, by parties other than Signal, for whom Signal had no responsibility.

104.

<u>Sixth Defense</u>

Any fault of Signal, which is denied, was merely passive, whereas the fault of parties for whom Signal is not responsible was active and/or intentional and/or grossly negligent, such that no judgment should be rendered against Signal, and alternatively, if judgment is rendered against Signal, there should be further judgment in favor of Signal and against all co-defendants jointly, severally, and in solido, fully indemnifying Signal.

105.

<u>Seventh Defense</u>

All actions of Signal were taken in good faith, and in reliance upon professional and/or other expert advice that was believed at the time to be sound, legal and proper, and Signal was fully entitled to rely on same and did not incur any liability thereby.

106.

<u>Eighth Defense</u>

Signal pleads herein its cross claims as defenses to plaintiffs' claims.

107.

<u>Ninth Defense</u>

Signal pleads estoppel and waiver and ratification by plaintiffs as to any and all claims.

108.

<u>Tenth Defense</u>

Signal pleads and incorporates herein by this reference all defenses asserted by the other defendants, at any time, to the extent not inconsistent with Signal's defenses and allegations and responses herein.

109.

<u>Twelfth Defense</u>

Any wrongful or illegal acts of any other defendants who had a relationship with Signal were the acts of independent contractors for whom Signal was not responsible; Signal did not direct these independent contractors how to accomplish their work; and Signal had no knowledge of, and did not condone, support, authorize or approve of, any such wrongful or illegal acts.

110.

Thirteenth Defense

Plaintiffs' claims are barred by their own illegal activities, including but not limited to entering the United States under false pretenses.

111.

Fourteenth Defense

Plaintiffs do not constitute a class of any sort; in each and every place where plaintiffs' complaint alleges that there exists a class or refers to a class or any persons as members of a class, such allegations are hereby denied.

112.

Fifteenth Defense

Plaintiffs suffered no damages, or no damages attributable to any actions or inactions or fault of Signal.

113.

Sixteenth Defense

Signal reserves the right, in the event that any class or subclass is certified or approved on any basis, to assert counterclaims against such class or subclass for the harm caused to Signal by the departure of alleged class members who had come to this country and accepted employment from Signal under false pretenses, and for any other reasons.

114.

Seventeenth Defense

Some or all plaintiffs lack standing or any legal right to bring some or all of the claims attempted to be asserted by plaintiffs.

115.

Eighteenth Defense

Plaintiffs' claims are barred or reduced by the doctrine *in pari delicto*. Plaintiffs concede that they deliberately and knowingly misled American consular officials in order to immigrate to the United States. Being *in pari delicto*, plaintiffs' claims under RICO are barred. As a result of their own conscious and knowing actions, plaintiffs bear at least substantially equal responsibility for the violations they seek to redress via RICO. Their own culpability was a cause-in-fact and a proximate cause of the alleged violations. Not only would none of the violations have occurred without this culpability, it was a direct rather than a remote cause of any alleged violations. Therefore, many if not all of the plaintiffs' claims are barred by their own delictual responsibility.

116.

Nineteenth Defense

Signal made no statement to any agency of the United States that was known to be false when made, nor did it authorize any person to do so.

117.

Twentieth Defense

Signal never intended to enlist any person in forced labor nor did Signal ever intend to engage in document fraud with regard to immigration or H-2B visas; at no time did Signal ever

threaten any person with the use of any law or legal process to secure their labor. At no time did Signal use physical violence against a person to secure their labor, or threaten to use physical or economic violence against others to secure the forced labor of a person.

118.

Twenty-First Defense

Signal never knowingly engaged in trafficking; at all times pertinent to this action, it believed that it had enlisted the help of persons or firms that would assist it in securing legal foreign employees. Signal did not employ any person believing that the person had entered this country illegally or that the person had entered this country unlawfully or for an unlawful purpose. Signal never knowingly employed a person who was in this country as the result of an unlawful scheme, nor did it ever knowingly do business with anyone engaged in trafficking or in the violation of United States immigration laws.

119.

Twenty-Second Defense

At no time through words, speech, actions or inactions did Signal knowingly or deliberately engage in conduct that manifested to anyone that Signal had authorized persons or firms with which it was associated to engage in fraud or deception or to violate any laws of the United States relating to immigration or entry into the United States.

120.

Twenty-Third Defense

At no time did Signal knowingly engage in a pattern of racketeering activity, engage with any enterprise involved in racketeering activity, promote the enterprise of any association engaged in racketeering activity, or threaten anyone with the continuation of, much less the

28

initiation of, any enterprise engaged in criminality. Signal is not, nor has it ever been, a company organized for any immoral, unlawful or illicit purpose. Signal has never knowingly used any unlawful tactic or practice to further its business interests or satisfy its business needs.

121.

Twenty-Fourth Defense

Signal never joined an enterprise that it knew to be engaged in unlawful activity nor did it ever intend to cause anyone to suffer loss to his property through the commission of an unlawful act perpetrated by someone with whom Signal was thought to be associated; if any agent or representative of Signal caused a person to suffer loss to his property as the result of any illegal act, or any predicate act, then said act or acts so committed by the said agent or representative was committed without Signal's knowledge, authority or agreement.

122.

Twenty-Fifth Defense

Signal has never sought to deceive anyone or to gain an advantage over anyone for any illicit or unlawful purpose. At all times pertinent to this action, whenever Signal engaged in an act that was designed to either secure foreign employees or to assist in their entry into the United States or designed to provide for their lodging, comfort or feeding, the act in which Signal was engaged was motivated by legitimate business need, reasonable belief in the propriety of the action or reasonable belief in the lawfulness of the action.

123.

Twenty-Sixth Defense

Signal, at all times pertinent to this action, lacked actual knowledge of the unlawfulness of any action committed by any person in any way affiliated with Signal. Signal neither ratified

nor acquiesced in any statements made by others that were inconsistent with law with regard to immigration matters. If a Signal employee was present when others who were not directly employed by Signal made statements that were not consistent with American law, it must be understood that the Signal employee who was present did not understand the legal significance of the statements others made. Such statements cannot be attributed to Signal.

124.

Twenty-Seventh Defense

Signal's reliance on the professed knowledge and expertise of others with regard to the hiring of foreign employees, a subject about which it knew little to nothing, was at all times reasonable and justifiable, and, to a significant degree, a matter to which it was drawn by compelling circumstances.

125.

Twenty-Eighth Defense

At all times Signal acted in the good faith belief in the propriety of its actions with regard to hiring foreign workers.

126.

Twenty-Ninth Defense

Signal denies that the Fair Labor Standards Act applies to plaintiffs.  Alternatively, if it does apply, some or all of plaintiffs' claims are barred by Fair Labor Standards Act preemption.

127.

Thirtieth Defense

Signal denies detaining anyone, as a matter of law. If Signal did detain a plaintiff or a member of the putative class, the detention was not unlawful but was rather believed, by Signal,

at the time, in good faith, to be required by federal immigration law and/or other laws. If any detention occurred, looking at the totality of the circumstances, the actions of Signal were therefore objectively reasonable in their nature, purpose, extent and duration.

128.

Thirty-First Defense

Since Signal never sought to deceive anyone, the allegation that it used the United States mails or other means of communication and commerce to perpetrate a fraud on any third person is without foundation. Similarly, it is false to contend that Signal used clandestine means to hide funds generated through fraudulent schemes, or that Signal engaged in travel to further fraudulent schemes. Signal did not engage in fraud. At all times relevant to this action, it reasonably and in good faith believed that it had associated itself with persons who would use only lawful means to secure skilled foreign employees for Signal.

129.

Thirty-Second Defense

18 U.S.C. § 1589 is vague and overbroad as written or as applied in this case and the facial vagueness of § 1589 impinges on the First Amendment. In addition, Signal alleges that the RICO "pattern" requirement as applied to Signal in this case is unconstitutional.

130.

Thirty-Third Defense

Signal took reasonable steps to prevent and promptly correct any illegal discrimination by the creation and implementation of applicable policies and procedures.  Further, Signal informed, educated, and trained its employees on the existence, contents, and use of those policies and

procedures.   The plaintiffs unreasonably failed to take advantage of the preventative and corrective measures Signal had in place to address any alleged illegal discrimination.

131.

Thirty-Fourth Defense

Signal was entitled to offset sums associated with providing food and lodging to plaintiffs because they primarily benefited plaintiffs, who could use the facilities and did use them independent of their work; moreover, they were necessary expenses in the wake of Katrina and were reasonable in amount and were agreed to by plaintiffs.

132.

Thirty-Fifth Defense

Signal believed in good faith that its treatment of plaintiffs under the Fair Labor Standards Act was lawful and correct.   Signal relied on its counsel, the Legal Facilitator Defendants, and relied as well on the advice of defendants Dewan and Dewan Consultants as to the best methods for addressing problems and issues.

133.

Thirty-Sixth Defense

Plaintiffs' reliance on actions and/or statements of the Recruiter Defendants and/or Legal Facilitator Defendants and/or Labor Broker Defendants was unreasonable and unjustified.

134.

Thirty-Seventh Defense

Any damages suffered by plaintiffs (all of which are denied) should be offset by the benefits and income they received from Signal.

32

135.

Thirty-Eighth Defense

Signal did not and does not mistreat plaintiffs.  Today, there are over 93 temporary workers working for Signal in its Pascagoula, MS location, and living in Signal accommodations.  As was the case with plaintiffs and the other workers who left, their $35 per diem contributes to the cost of lodging; three meals per day of catered Indian food prepared by a restaurateur who operates two Indian restaurants in New Orleans; laundry service that includes washing and folding; satellite television (featuring North and South India programming); internet access; transportation available 24 hours per day, 7 days a week to and from shopping areas, churches, medical appointments, and other local destinations of choice; free local telephone calls and access to long-distance services.

Contrary to false statements to the press about "slave labor," the average temporary worker at Signal earns $20.27 an hour plus overtime and bonuses, and Signal pays the workers at or above the local prevailing wage for fitters and welders established by the Mississippi Department of Labor.  In addition to their hourly wages, Signal provides all the temporary workers with the same benefits as other Signal workers, including health, vision, dental, and life insurance, sick and vacation pay, long-term disability, and participation in company matching savings programs.

136.

Thirty-ninth Defense

Signal denies that any other persons or parties were Signal's agents in any sense that would make Signal liable for any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any other parties were done without

any knowledge or authority of Signal and were done outside of the scope, beyond the scope, and contrary to the scope of any authority they may have been granted by Signal; Signal required and expected that all actions taken with respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary. At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal activity on Signal's behalf, and Signal denies all allegations to the contrary.

137.

Fortieth Defense

Signal did not participate in defrauding the plaintiffs. Signal reasonably expected that immigration counsel, Malvern C. Burnett, would act lawfully, professionally and properly at all times. Signal also believed that Global Resources would act lawfully, professionally and properly at all times pursuant to the contract which specifically states that Global has experience and expertise in procuring foreign workers and processing all documentation in compliance with U.S. immigration laws and regulations. Signal trusted that both Malvern C. Burnett and Michael Pol had provided it with accurate information on the legal immigration process for both the H-2B visas and green cards. Signal was misled by these parties as to the specific procedures involved in applying for a green card, the time frame involved and the potential delays in obtaining green cards for the foreign workers. At no time did Signal ever authorize any party to mislead any plaintiffs, employees or prospective employees.

34

## RESPONSES TO NUMBERED PARAGRAPHS
## OF PLAINTIFFS' COMPLAINT

### 138.

The allegations of paragraph 1 are denied.  Further answering, it is admitted that about 475 foreign welders and fitters were brought into the United States on H-2B visas at Signal's request, to Signal's understanding pursuant to contractual arrangements between Signal and Global Resources, Inc., and that they worked, for various periods of time, in skilled positions for Signal in Mississippi and Texas.

### 139.

To the extent that paragraph 2 alleges liability or wrongdoing or violations of law by Signal, same is denied.  Further answering, Signal denies that any other persons or parties were Signal's agents in any sense that would make Signal liable for any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any other parties were done without any knowledge or authority of Signal and were done outside of the scope, beyond the scope, and contrary to the scope of any authority they may have been granted by Signal; Signal required and expected that all actions taken with respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal activity on Signal's behalf, and Signal denies all allegations to the contrary.

### 140.

To the extent that paragraph 3 alleges liability or wrongdoing or violations of law by Signal, same is denied.   Further answering, Signal did not charge or receive from plaintiffs any

recruitment, immigration processing, travel or other fees.  Signal denies, for lack of knowledge sufficient to support a belief therein, that plaintiffs and other purported class members surrendered stable employment opportunities; in fact, it is believed that the plaintiffs and other purported class members were seeking employment.

141.

To the extent that paragraph 4 alleges liability or wrongdoing or violations of law by Signal, same is denied.  Further answering, Signal denies that any other persons or parties were Signal's agents in any sense that would make Signal liable for any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any other parties were done without any knowledge or authority of Signal and were done outside of the scope, beyond the scope, and contrary to the scope of any authority they may have been granted by Signal; Signal required and expected that all actions taken with respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal activity on Signal's behalf, and Signal denies all allegations to the contrary.

142.

The allegations of paragraph 5 are denied.

143.

The allegations of paragraph 6 are denied.

144.

The allegations of paragraph 7 are denied.

145.

The allegations of paragraph 8 are denied.

146.

The allegations of paragraph 9 are denied.

147.

The allegations of paragraph 10 are denied.

148.

The allegations of paragraph 11 are denied.

149.

The allegations of paragraph 12 are denied except to admit that the Burnett Defendants have offices in this District.

150.

The allegations of paragraph 13 are denied.

151.

It is admitted that plaintiffs are former H-2B workers for Signal.   The remaining allegations of paragraph 14 are denied.

152.

The allegations of paragraph 15 are denied for lack of information to support a belief therein.  Plaintiffs are not a protected class of any type.

153.

The allegations of paragraph 16 are denied, and denied as calling for a legal conclusion.

154.

It is admitted that plaintiffs were formerly employed by Signal.   The remaining allegations of paragraph 17 are denied.

155.

The allegations of paragraph 18 are denied.

156.

It is admitted that Kechuru worked at Signal's Orange, Texas facility.   The remaining allegations of paragraph 19 are denied.

157.

It is admitted that Padaveettiyl worked at Signal's Pascagoula, Mississippi facility.   The remaining allegations of paragraph 20 are denied.

158.

The allegations of paragraph 21 are admitted.

159.

It is admitted that David worked at Signal's Orange, Texas facility.   The remaining allegations of paragraph 22 are denied.

160.

It is admitted that Sulekha worked at Signal's Pascagoula, Mississippi facility.   The remaining allegations of paragraph 23 are denied.

161.

It is admitted that Kandhasamy worked at Signal's Orange, Texas facility.   The remaining allegations of paragraph 24 are denied.

162.

It is admitted that Thangamani worked at Signal's Pascagoula, Mississippi facility.  The remaining allegations of paragraph 25 are denied.

163.

It is admitted that Khuttan worked at Signal's Pascagoula, Mississippi facility.  The remaining allegations of paragraph 26 are denied.

164.

The allegations of paragraph 27 are admitted.

165.

It is admitted that Vijayan worked at Signal's Pascagoula, Mississippi facility.  The remaining allegations of paragraph 28 are denied.

166.

It is admitted that Kaddakkarappally worked at Signal's Pascagoula, Mississippi facility. The remaining allegations of paragraph 29 are denied.

167.

It is admitted that Chellappan worked at Signal's Pascagoula, Mississippi facility.  The remaining allegations of paragraph 30 are denied.

168.

It is admitted that Singh worked at Signal's Pascagoula, Mississippi facility.  The remaining allegations of paragraph 31 are denied.

169.

It is admitted that Kumar worked at Signal's Pascagoula, Mississippi facility.  The remaining allegations of paragraph 32 are denied.

170.

The allegations of paragraph 33 are admitted, except that it is an LLC, not a corporation.

171.

The allegations of paragraph 34 are admitted, except that the contacts of Global with New Orleans are unknown.

172.

The allegations of paragraph 35 are admitted, except that the contacts of Pol with New Orleans are unknown.

173.

It is admitted that it is an Indian entity of some sort; the remainder of paragraph 36 is denied for lack of information to support a belief therein.

174.

The allegations of paragraph 37 are admitted, except that the contacts of Dewan with New Orleans are unknown.

175.

The allegations of paragraph 38 are denied for lack of information to support a belief therein.

176.

The allegations of paragraph 39 are denied for lack of information to support a belief therein.

177.

The allegations of paragraph 40 are denied for lack of information to support a belief therein; Signal believes that they worked together.

178.

The allegations of paragraph 41 are denied for lack of information to support a belief therein.

179.

The allegations of paragraph 42 are denied for lack of information to support a belief therein.

180.

The allegations of paragraph 43 are admitted.

181.

The allegations of paragraph 44 are denied for lack of information to support a belief therein.

182.

The allegations of paragraph 45 are admitted.

183.

The allegations of paragraph 46 are admitted.

184.

The allegations of paragraph 47 are denied for lack of sufficient information to support a belief therein.

185.

The allegations of paragraph 48 are denied for lack of sufficient information to support a belief therein.

186.

The allegations of paragraph 49 are admitted.

187.

The allegations of paragraph 50 are admitted, except that it is not in good standing with the Secretary of State.

188.

The allegations of paragraph 51 are admitted, except that the contacts of Rao with New Orleans are unknown.

189.

The allegations of paragraph 52 are admitted, except that the contacts of J & M with New Orleans are unknown.

190.

The allegations of paragraph 53 are admitted.

191.

The allegations of paragraph 54 are denied.  Further answering, Signal denies that any other persons or parties were Signal's agents in any sense that would make Signal liable for any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any other parties were done without any knowledge or authority of Signal and were done outside of the scope, beyond the scope, and contrary to the scope of any authority they may have been granted by Signal; Signal required and expected that all actions taken with respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal activity on Signal's behalf, and Signal denies all allegations to the contrary.

192.

The allegations of paragraph 55 are denied.

193.

The allegations of paragraph 56 are denied.

194.

The allegations of paragraph 57 are denied.  It is admitted that some persons alleged to be members of plaintiff class are currently employed by Signal; and Signal retains all of its rights to communicate with any person.

195.

The allegations of paragraph 58 are denied for lack of information to support a belief therein.  Signal admits that it was engaged in commerce.

196.

The allegations of paragraph 59 are denied.

197.

The allegations of paragraph 60 are denied.

198.

The allegations of paragraph 61 are denied.

199.

The allegations of paragraph 62 are denied.

200.

The allegations of paragraph 63 are denied.

201.

The allegations of paragraph 64 are denied.

202.

The allegations of paragraph 65 are denied.

203.

The allegations of paragraph 66 are denied.

204.

The allegations of paragraph 67 are denied.

205.

The allegations of paragraph 68 are denied.

206.

The allegations of paragraph 69 are denied.

207.

The allegations of paragraph 70 are denied.

208.

The allegations of paragraph 71 are denied.

209.

The allegations of paragraph 72 are denied.

210.

The allegations of paragraph 73 are denied.

211.

The allegations of paragraph 74 are denied.

212.

The allegations of paragraph 75 are denied.

213.

The allegations of paragraph 76 are denied.

214.

The allegations of paragraph 77 are denied for lack of information sufficient to support a belief therein.  Signal does believe that said defendants acted in concert to recruit workers.

215.

The allegations of paragraph 78 are denied for lack of information sufficient to support a belief therein.  Signal does believe that said defendants acted in concert to recruit workers.

216.

The allegations of paragraph 79 are denied for lack of information sufficient to support a belief therein.  Signal does believe that said defendants acted in concert to recruit workers.

217.

The allegations of paragraph 80 are denied for lack of information sufficient to support a belief therein.  Signal does believe that said defendants promised that qualified candidates could obtain green cards.

218.

The allegations of paragraph 81 are denied for lack of information sufficient to support a belief therein.

219.

The allegations of paragraph 82 are denied for lack of information sufficient to support a belief therein.  Further answering, Signal denies all allegations of plaintiff's Exhibit 1 attached to its amended complaint to whatever extent they express or imply any wrongdoing by Signal or by

any party for whom Signal might be responsible.   Responses to specific allegations in said Exhibit 1 are attached hereto as Signal Exhibit 2.

220.

The allegations of paragraph 83 are denied for lack of information sufficient to support a belief therein.

221.

The allegations of paragraph 84 are denied for lack of information sufficient to support a belief therein.

222.

The allegations of paragraph 85 are denied for lack of information sufficient to support a belief therein.

223.

The allegations of paragraph 86 are denied for lack of information sufficient to support a belief therein.

224.

The allegations of paragraph 87 are denied for lack of information sufficient to support a belief therein.

225.

The allegations of paragraph 88 are denied for lack of information sufficient to support a belief therein.

226.

The allegations of paragraph 89 are denied for lack of information sufficient to support a belief therein.

227.

The allegations of paragraph 90 are denied for lack of information sufficient to support a belief therein.

228.

The allegations of paragraph 91 are denied for lack of information sufficient to support a belief therein.

229.

The allegations of paragraph 92 are denied for lack of information sufficient to support a belief therein.

230.

The allegations of paragraph 93 are denied for lack of information sufficient to support a belief therein.

231.

The allegations of paragraph 94 are denied for lack of information sufficient to support a belief therein.

232.

The allegations of paragraph 95 are denied for lack of information sufficient to support a belief therein.

233.

The allegations of paragraph 96 are denied for lack of information sufficient to support a belief therein.

234.

The allegations of paragraph 97 are denied for lack of information sufficient to support a belief therein.

235.

The allegations of paragraph 98 are denied for lack of information sufficient to support a belief therein.

236.

The allegations of paragraph 99 are denied for lack of information sufficient to support a belief therein.

237.

The allegations of paragraph 100 are denied for lack of information sufficient to support a belief therein.

238.

The allegations of paragraph 101 are denied for lack of information sufficient to support a belief therein.

239.

The allegations of paragraph 102 are denied for lack of information sufficient to support a belief therein.

240.

The allegations of paragraph 103 are denied for lack of information sufficient to support a belief therein.

241.

The allegations of paragraph 104 are denied for lack of information sufficient to support a belief therein.

242.

The allegations of paragraph 105 are denied for lack of information sufficient to support a belief therein.

243.

The allegations of paragraph 106 are admitted, except that they are not commonly known as guest workers, but rather as temporary workers.

244.

The allegations of paragraph 107 are admitted.

245.

The allegations of paragraph 108 are admitted, except that they are not commonly known as guest workers, but rather as temporary workers.

246.

The allegations of paragraph 109 are admitted.

247.

The allegations of paragraph 110 are admitted.

248.

The allegations of paragraph 111 are denied; the document speaks for itself and is the best evidence of its content.  Further answering, Signal denies that any other persons or parties were Signal's agents in any sense that would make Signal liable for any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any

other parties were done without any knowledge or authority of Signal and were done outside of the scope, beyond the scope, and contrary to the scope of any authority they may have been granted by Signal; Signal required and expected that all actions taken with respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal activity on Signal's behalf, and Signal denies all allegations to the contrary.

249.

The allegations of paragraph 112 are denied as vague and potentially misleading.  Any wrongful or illegal acts of any other defendants who had a relationship with Signal were the acts of independent contractors for whom Signal was not responsible; Signal had no knowledge of, and did not condone, support, or approve of any such acts.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.

250.

The allegations of paragraph 113 are denied as vague and potentially misleading.  Further answering, any wrongful or illegal acts of any other defendants who had a relationship with Signal were the acts of independent contractors for whom Signal was not responsible; Signal had no knowledge of, and did not condone, support, or approve of any such acts. At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any

inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.

251.

The allegations of paragraph 114 are denied.

252.

The allegations of paragraph 115 are denied.

253.

The allegations of paragraph 116 are denied.

254.

The allegations of paragraph 117 are denied for lack of sufficient information to support a belief in same.

255.

The allegations of paragraph 118 are denied for lack of sufficient information to support a belief in same.

256.

The allegations of paragraph 119 are denied for lack of sufficient information to support a belief in same.

257.

The allegations of paragraph 120 are denied for lack of sufficient information to support a belief in same.

258.

The allegations of paragraph 121 are denied.  Signal had no participation in any scheme to defraud or mislead plaintiffs or to commit any violation of law, and did not know that such was occurring.

259.

The allegations of paragraph 122 are denied for lack of information to support a belief therein. Further answering, Signal had no participation in any scheme to defraud or mislead plaintiffs or to commit any violation of law, and did not know that such was occurring. At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.

260.

The allegations of paragraph 123 are denied for lack of sufficient information to support a belief therein.  Further answering, Signal never agreed to transfer any pending green card applications to Signal, and did not authorize defendants to make any misrepresentations regarding same or regarding H-2B status.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.

261.

The allegations of paragraph 124 are denied for lack of information to support a belief therein.

262.

The allegations of paragraph 125 are denied for lack of information to support a belief therein.

263.

The allegations of paragraph 126 are denied for lack of information to support a belief therein.  Further answering, Signal made no misrepresentations or failures to disclose to

plaintiffs, and Signal did not authorize or have knowledge of same.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.

264.

The allegations of paragraph 127 are denied for lack of sufficient information to support a belief therein.  Further answering, Signal denies that any other parties were Signal's agents in any sense that would make Signal liable for any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any other parties were done without any knowledge or authority of Signal and were done outside of the scope, beyond the scope, and contrary to the scope of any authority they may have been granted by Signal; Signal required and expected that all actions taken with respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.

265.

The allegations of paragraph 128 are denied. Further answering, the Recruiter Defendants were independent contractors, and Signal did not tell them how to conduct their business.  It is denied that any other parties were Signal's agents in any sense that would make Signal liable for any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any other parties were done without any knowledge or authority of Signal

and were done outside of the scope, beyond the scope, and contrary to the scope of any authority they may have been granted by Signal; Signal required and expected that all actions taken with respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.

266.

The allegations of paragraph 129 are denied for lack of sufficient information to support a belief therein.

267.

The allegations of paragraph 130 are denied for lack of information sufficient to support a belief therein.  Further answering, Signal denies all allegations of Exhibit 1 to whatever extent they express or imply any wrongdoing by Signal or by any party for whom Signal might be responsible. Responses to specific allegations of plaintiffs are attached hereto as Signal Exhibit 2.

268.

The allegations of paragraph 131 are denied. Further answering, the Recruiter Defendants were independent contractors, and Signal did not tell them how to conduct their business.  It is denied that any other parties were Signal's agents in any sense that would make Signal liable for any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any other parties were done without any knowledge or authority of Signal and were done outside of the scope, beyond the scope, and contrary to the scope of any authority

54

they may have been granted by Signal; Signal required and expected that all actions taken with respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.

269.

The allegations of paragraph 132 are denied. Further answering, the Recruiter Defendants were independent contractors, and Signal did not tell them how to conduct their business.  It is denied that any other parties were Signal's agents in any sense that would make Signal liable for any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any other parties were done without any knowledge or authority of Signal and were done outside of the scope, beyond the scope, and contrary to the scope of any authority they may have been granted by Signal; Signal required and expected that all actions taken with respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.

270.

The allegations of paragraph 133 are denied. Further answering, the Recruiter Defendants were independent contractors, and Signal did not tell them how to conduct their business.  It is denied that any other parties were Signal's agents in any sense that would make Signal liable for

any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any other parties were done without any knowledge or authority of Signal and were done outside of the scope, beyond the scope, and contrary to the scope of any authority they may have been granted by Signal; Signal required and expected that all actions taken with respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.

271.

The allegations of paragraph 134 are denied. Further answering, the Recruiter Defendants were independent contractors, and Signal did not tell them how to conduct their business.  It is denied that any other parties were Signal's agents in any sense that would make Signal liable for any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any other parties were done without any knowledge or authority of Signal and were done outside of the scope, beyond the scope, and contrary to the scope of any authority they may have been granted by Signal; Signal required and expected that all actions taken with respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.   Signal did intend to apply for H-2B extensions; that task was entrusted to the Legal Facilitator cross claim defendants.

272.

The allegations of paragraph 135 are denied for lack of sufficient information to support a belief therein.  Further answering, the Recruiter Defendants were independent contractors, and Signal did not tell them how to conduct their business.  It is denied that any other parties were Signal's agents in any sense that would make Signal liable for any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any other parties were done without any knowledge or authority of Signal and were done outside of the scope, beyond the scope, and contrary to the scope of any authority they may have been granted by Signal; Signal required and expected that all actions taken with respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.

273.

The allegations of paragraph 136 are denied for lack of sufficient information to support a belief therein and because they are vague. Further answering, the Recruiter Defendants were independent contractors, and Signal did not tell them how to conduct their business.  It is denied that any other parties were Signal's agents in any sense that would make Signal liable for any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any other parties were done without any knowledge or authority of Signal and were done outside of the scope, beyond the scope, and contrary to the scope of any authority they may have been granted by Signal; Signal required and expected that all actions taken with

respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.

274.

The allegations of paragraph 137 are denied for lack of sufficient information to support a belief therein.

275.

The allegations of paragraph 138 are denied for lack of sufficient information to support a belief therein. Further answering, the Recruiter Defendants were independent contractors, and Signal did not tell them how to conduct their business.  It is denied that any other parties were Signal's agents in any sense that would make Signal liable for any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any other parties were done without any knowledge or authority of Signal and were done outside of the scope, beyond the scope, and contrary to the scope of any authority they may have been granted by Signal; Signal required and expected that all actions taken with respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.

276.

The allegations of paragraph 139 are denied for lack of sufficient information to support a belief therein.

277.

The allegations of paragraph 140 are denied for lack of sufficient information to support a belief therein.  Further answering, the Recruiter Defendants were independent contractors, and Signal did not tell them how to conduct their business.  It is denied that any other parties were Signal's agents in any sense that would make Signal liable for any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any other parties were done without any knowledge or authority of Signal and were done outside of the scope, beyond the scope, and contrary to the scope of any authority they may have been granted by Signal; Signal required and expected that all actions taken with respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.

278.

The allegations of paragraph 141 are denied for lack of sufficient information to support a belief therein.

279.

The allegations of paragraph 142 are denied for lack of sufficient information to support a belief therein.

280.

The allegations of paragraph 143 are denied for lack of sufficient information to support a belief therein.

281.

The allegations of paragraph 144 are denied for lack of sufficient information to support a belief therein.

282.

The allegations of paragraph 145 are denied for lack of sufficient information to support a belief therein.

283.

The allegations of paragraph 146 are denied for lack of sufficient information to support a belief therein.

284.

The allegations of paragraph 147 are denied for lack of sufficient information to support a belief therein.  Signal neither required nor received such payments from plaintiffs.

285.

The allegations of paragraph 148 are denied for lack of sufficient information to support a belief therein.

286.

The allegations of paragraph 149 are denied for lack of sufficient information to support a belief therein.

287.

The allegations of paragraph 150 are denied for lack of sufficient information to support a belief therein.

288.

The allegations of paragraph 151 are denied as vague due to the indeterminate meaning of the word "tests."

289.

The allegations of paragraph 152 are denied for lack of sufficient information to support a belief therein.

290.

The allegations of paragraph 153 are denied for lack of sufficient information to support a belief therein.

291.

The allegations of paragraph 154 are denied for lack of sufficient information to support a belief therein.

292.

The allegations of paragraph 155 are denied as vague and for lack of sufficient information to support a belief therein.

293.

The allegations of paragraph 156 are admitted.

294.

The allegations of paragraph 157 are denied for lack of sufficient information to support a belief therein.  It is admitted that plaintiffs came to the United States.

295.

The allegations of paragraph 158 are admitted.

296.

The allegations of paragraph 159 are admitted.

297.

The allegations of paragraph 160 are denied for lack of sufficient information to support a belief therein.  Further answering, Signal denies that any other parties were Signal's agents in any sense that would make Signal liable for any liability or wrongdoing or violations of law by any other parties; any liability or wrongdoing or violations of law by any other parties were done without any knowledge or authority of Signal and were done outside of the scope, beyond the scope, and contrary to the scope of any authority they may have been granted by Signal; Signal required and expected that all actions taken with respect to the plaintiffs would be done professionally and respectfully and lawfully and made no representations to any parties to the contrary.  At no time did Signal manifest to any third person, or to its alleged agents, through any word or deed, or any inaction, that the said third persons or alleged agents were authorized to engage in illegal or deceitful activity on Signal's behalf, and Signal denies all allegations to the contrary.

298.

The allegations of paragraph 161 are denied for lack of sufficient information to support a belief therein.

299.

The allegations of paragraph 162 are denied for lack of sufficient information to support a belief therein.

300.

The allegations of paragraph 163 are denied for lack of sufficient information to support a belief therein.

301.

The allegations of paragraph 164 are denied for lack of sufficient information to support a belief therein.

302.

The allegations of paragraph 165 are denied for lack of sufficient information to support a belief therein.

303.

The allegations of paragraph 166 are denied for lack of sufficient information to support a belief therein.

304.

The allegations of paragraph 167 are denied for lack of sufficient information to support a belief therein.

305.

The allegations of paragraph 168 are denied for lack of sufficient information to support a belief therein.

306.

The allegations of paragraph 169 are denied for lack of sufficient information to support a belief therein.

307.

The allegations of paragraph 170 are denied for lack of sufficient information to support a belief therein.

308.

The allegations of paragraph 171 are denied for lack of sufficient information to support a belief therein.

309.

The allegations of paragraph 172 are denied for lack of sufficient information to support a belief therein.

310.

The allegations of paragraph 173 are denied for lack of sufficient information to support a belief therein.

311.

The allegations of paragraph 174 are denied for lack of sufficient information to support a belief therein.

312.

The allegations of paragraph 175 are denied for lack of sufficient information to support a belief therein.

313.

The allegations of paragraph 176 are denied for lack of sufficient information to support a belief therein.

314.

The allegations of paragraph 177 are denied for lack of sufficient information to support a belief therein.

315.

The allegations of paragraph 178 are denied for lack of sufficient information to support a belief therein.

316.

The allegations of paragraph 179 are denied for lack of sufficient information to support a belief therein.

317.

The allegations of paragraph 180 are denied for lack of sufficient information to support a belief therein.  It is admitted that during these approximate time periods, approximately 490 foreign workers came to the United States.

318.

The allegations of paragraph 181 are denied because it is not known what plaintiffs mean by "instructions and arrangements."  Further answering, Signal admits that workers in those approximate numbers arrived at Signal's facilities in Mississippi and Texas.

319.

The allegations of paragraph 182 are denied.  Further answering, the housing was safe, clean, decent, sanitary, and adequate.   The housing was purchased from a reputable designer/manufacturer of such housing.

320.

The allegations of paragraph 183 are denied.  Further answering, the residences were not "labor camps," and use of that term is hereby denied as to every place such term or any variant thereof is used in plaintiffs' complaint.   The residences were located conveniently for the workers' access to the work they came to this country to do, and transportation was provided for them to other locations.  The fences were for security for the residents and their property.

321.

The allegations of paragraph 184 are denied as written.  The residences were not a labor camp.  The security guards were there to protect the workers' persons and property.  Further

answering, Signal admits that some of its security was provided by the Swetman Security company.

322.

The allegations of paragraph 185 are denied as written.  Any security procedures used were used for the safety and well-being of the worker residents.

323.

The allegations of paragraph 186 are denied as written.  Any security procedures used were used for the safety and well-being of the worker residents.

324.

The allegations of paragraph 187 are denied as inaccurate and misleading.  Further answering, the residences were not labor camps.  The housing was safe, clean, decent, sanitary, and adequate.  The housing was purchased from a reputable designer/manufacturer of such housing.

325.

The allegations of paragraph 188 are denied.  Further answering, the residences were not labor camps.  The housing was safe, clean, decent, sanitary, and adequate.  The housing was purchased from a reputable designer/manufacturer of such housing.

326.

The allegations of paragraph 189 are denied.  Further answering, the residences were not labor camps.  The housing was safe, clean, decent, sanitary, and adequate.  The housing was purchased from a reputable designer/manufacturer of such housing.  Signal made every reasonable effort to accommodate the workers' needs and preferences.

327.

The allegations of paragraph 190 are denied as misleading.  Searches were rare, limited, and done only in response to specific threats to the well-being and security of the workers.

328.

The allegations of paragraph 191 are denied.  Further answering, the workers generally took their meals at facilities provided by Signal, at regular times scheduled to accommodate the workers.  Such facilities were clean, decent, safe, sanitary, and adequate.

329.

The allegations of paragraph 192 are denied.  Further answering, the meals and accommodations were not substandard.  It is admitted that deductions were made, with the consent of plaintiffs.  Signal voluntarily reduced these deductions for some workers based on individual circumstances.

330.

The allegations of paragraph 193 are denied as misleading.  Further answering, the workers agreed to live on site.  The housing was not labor camps.  The housing was built because there was no other housing available due to hurricanes Katrina and Rita.

331.

The allegations of paragraph 194 are denied as misleading.  Further answering, housing was provided for the H-2B workers because they would not otherwise have had housing due to hurricanes Katrina and Rita.  The housing was not labor camps.  The workers agreed to live there.

332.

The allegations of paragraph 195 are denied.

333.

The allegations of paragraph 196 are denied.

334.

The allegations of paragraph 197 are admitted.  Further answering, Signal made all payments required by law, and even provided additional benefits not required by law.

335.

The allegations of paragraph 198 are admitted, except that the deductions were typically evenly divided between the second and third paychecks.

336.

The allegations of paragraph 199 are denied.  Further answering, it was not within Signal's power to deport anyone.  On appropriate occasions, Signal did remind workers that in order to comply with the terms of their H-2B visas, they would have to continue to work satisfactorily for Signal or return to India. This was not a threat and is not abuse; it was and is the law.  At no time did Signal ever knowingly and consciously seek to obtain the labor of anyone by means of abuse or threatened abuse of law or the legal process. On every occasion involving the discussion of law at a facility owned by Signal, Signal believed the discussion to be correct and justified.

337.

The allegations of paragraph 200 are denied.

338.

The allegations of paragraph 201 are denied.

339.

The allegations of paragraph 202 are denied.

340.

The allegations of paragraph 203 are denied.

341.

The allegations of paragraph 204 are denied for lack of sufficient information to support a belief therein.

342.

The allegations of paragraph 205 are denied.

343.

The allegations of paragraph 206 are denied.

344.

The allegations of paragraph 207 are denied.

345.

The allegations of paragraph 208 are denied.

346.

The allegations of paragraph 209 are denied for lack of information to support a belief therein.

347.

The allegations of paragraph 210 are denied for lack of information to support a belief therein.

348.

The allegations of paragraph 211 are denied for lack of information to support a belief therein.

349.

The allegations of paragraph 212 are denied for lack of information to support a belief therein.

350.

The allegations of paragraph 213 are admitted.

351.

The allegations of paragraph 214 are denied.

352.

The allegations of paragraph 215 are denied.

Further answering, as to the first sentence of paragraph 215, no threat had been made to bring an action against Signal.

As to the second sentence of paragraph 215: at this point in time some workers had absconded, and apparently some of those who had absconded had done so because it became apparent to them that the promises made to them by the other defendants that they could obtain green cards could not be fulfilled as promised by parties other than Signal. Further answering, some other workers were unhappy allegedly due to the failure of the other defendants to deliver green cards as the other defendants had promised. Moreover, Malvern Burnett had for the first time told workers in the presence of Signal that they could not obtain green cards at that time, due to their H-2B status. Signal then promised that it would do whatever it could lawfully do to help whoever among the remaining workers who had been likewise promised green cards, provided of course that said workers fulfilled and completed their obligations to Signal under the H-2B process.

353.

The allegations of paragraph 216 are denied.

354.

The allegations of paragraph 217 are denied.  Further answering, there were two unarmed security guards, and they went to try to locate eight workers who were to be discharged.

355.

The allegations of paragraph 218 are denied.

356.

The allegations of paragraph 219 are denied.  Further answering, there was no locked gate.  Some workers appeared to be curious, and some went to their usual assigned work.

357.

The allegations of paragraph 220 are denied.

358.

The allegations of paragraph 221 are denied.  Further answering, Signal made no threats.

359.

The allegations of paragraph 222 are denied.  Further answering, it is admitted that he said he was going to wash his hands.

360.

The allegations of paragraph 223 are denied for lack of information sufficient to support a belief therein.

361.

The allegations of paragraph 224 are denied.  Further answering, it is admitted that Vijayan was taken to a hospital.

362.

The allegations of paragraph 225 are denied.

363.

The allegations of paragraph 226 are denied.

364.

The allegations of paragraph 227 are denied.  Further answering, it was requested that Kadakkarappally remain inside the room for his own safety.  The security guards locked themselves in to keep the crowd out and to protect the facility.  The guards were concerned for their own safety.

365.

The allegations of paragraph 228 are denied.

366.

The allegations of paragraph 229 are denied.  Further answering, Signal admits that Singh absconded.

367.

The allegations of paragraph 230 are denied.  Further answering, Signal admits that Singh absconded.

368.

The allegations of paragraph 231 are denied.  Further answering, the security guards locked themselves in to keep the crowd out and to protect the facility.  The guards were concerned for their own safety.

369.

The allegations of paragraph 232 are denied.  Further answering, they were allowed to use the bathroom and to get something to drink, but they were also escorted for fear that they might hurt themselves as Vijayan did when he announced earlier that he was going to the bathroom to wash his hands.

370.

The allegations of paragraph 233 are denied, but it is admitted that the crowd was not allowed into the room.

371.

The allegations of paragraph 234 are denied.  It is admitted that some workers assembled there and that they were acting in an agitated fashion.

372.

The allegations of paragraph 235 are denied.  Further answering, they were allowed to use the bathroom before that time.  They were escorted for fear that they might hurt themselves as Vijayan did when he announced earlier that he was going to the bathroom to wash his hands.

373.

The allegations of paragraph 236 are admitted.

374.

The allegations of paragraph 237 are denied.

375.

The allegations of paragraph 238 are denied.  Further answering, Signal admits that some workers were there.  Plaintiffs were not being detained.  There were no demands that plaintiffs be "released."

376.

The allegations of paragraph 239 are denied.  Further answering, Signal asserts that they were never detained.

377.

The allegations of paragraph 240 are denied.

378.

The allegations of paragraph 241 are admitted, except that the residences were not labor camps.  Further answering, Signal introduced the workers to the bank so that the workers could consider choosing the safety and convenience of direct deposit.  Workers were not required to use this, and were not instructed that they were required to do this.

379.

The allegations of paragraph 242 are denied, except it is admitted that some of the workers utilized direct deposit.  Further answering, Signal had no access to or control over any worker's account.

380.

The allegations of paragraph 243 are denied for lack of information to support a belief therein.

381.

The allegations of paragraph 244 are denied.

382.

The allegations of paragraph 245 are denied for lack of information to support a belief therein.

383.

The allegations of paragraph 246 are denied for lack of information to support a belief therein.

384.

The allegations of paragraph 247 are denied.

385.

The allegations of paragraph 248 are denied.

386.

The allegations of paragraph 249 are denied.  Further answering, Signal admits it did speak with Burnett to obtain status reports on the H-2B extension petitions.

387.

The allegations of paragraph 250 are denied. Further answering, Signal admits there was a meeting at that approximate time.  As previously noted, Signal said that, to the degree that it lawfully could, it would seek to help remaining workers who had been likewise promised green cards. This, however, was provided the said workers fulfilled their obligations to Signal under their H-2B visas.  Signal did not threaten to terminate workers who held any meetings against Signal's "interest".

388.

The allegations of paragraph 251 are denied, except to admit that Burnett did discuss filing of H-2B extension petitions.

389.

The allegations of paragraph 252 are denied.  Further answering, Signal indicated that it would seek extensions where appropriate, and would help with green cards to the extent possible.

390.

The allegations of paragraph 253 are denied.

391.

The allegations of paragraph 254 are denied.

392.

The allegations of paragraph 255 are denied as misleading.  Further answering, although the visas had technically expired, the workers were not illegal or out of status as long as they continued to work for Signal, because H-2B extension petitions had been timely filed.  In any event, Signal had instructed Burnett to seek the extensions and reasonably relied on him to do so.

393.

The allegations of paragraph 256 are denied.

394.

The allegations of paragraph 257 are denied for lack of information to support a belief therein.  Further answering, Signal denies contracting with plaintiffs in India and the United Arab Emirates.  Signal received no money from any plaintiffs for green card and visa processing.  Signal never promised a green card to any person.

395.

The allegations of paragraph 258 are denied.  Further answering, Signal did not contract with anyone in India and the United Arab Emirates.

396.

In response to paragraph 259, Signal incorporates by this reference its responses herein to each and every allegation contained in the preceding paragraphs.

397.

The allegations of paragraph 260 are denied.

398.

The allegations of paragraph 261 are denied.

399.

The allegations of paragraph 262 are denied.

400.

The allegations of paragraph 263 are denied.

401.

The allegations of paragraph 264 are denied.

402.

The allegations of paragraph 265 are denied.

403.

The allegations of paragraph 266 are denied.

404.

The allegations of paragraph 267 are denied.

405.

The allegations of paragraph 268 are denied.

406.

The allegations of paragraph 269 are denied.

407.

The allegations of paragraph 270 are denied.

408.

In response to paragraph 271, Signal incorporates by this reference its responses herein to each and every allegation contained in the preceding paragraphs.

409.

The allegations of paragraph 272 are denied.

410.

The allegations of paragraph 273 are denied.

411.

The allegations of paragraph 274 are denied.

412.

The allegations of paragraph 275 are denied.

413.

The allegations of paragraph 276 are denied.

414.

The allegations of paragraph 277 are denied.

415.

The allegations of paragraph 278 are denied.

416.

The allegations of paragraph 279 are denied.

417.

The allegations of paragraph 280 are denied.

418.

The allegations of paragraph 281 are denied.

419.

The allegations of paragraph 282 are denied.

420.

The allegations of paragraph 283 are denied.

421.

The allegations of paragraph 284 are denied.

422.

The allegations of paragraph 285 are denied.

423.

The allegations of paragraph 286 are denied.

424.

The allegations of paragraph 287 are denied.

425.

The allegations of paragraph 288 are denied.

426.

The allegations of paragraph 289 are denied.

427.

The allegations of paragraph 290 are denied.

428.

The allegations of paragraph 291 are denied.

429.

The allegations of paragraph 292 are denied.

430.

The allegations of paragraph 293 are denied.

431.

The allegations of paragraph 294 are denied.

432.

The allegations of paragraph 295 are denied.

433.

The allegations of paragraph 296 are denied.

434.

The allegations of paragraph 297 are denied.

435.

The allegations of paragraph 298 are denied.

436.

The allegations of paragraph 299 are denied.

437.

The allegations of paragraph 300 are denied.

438.

The allegations of paragraph 301 are denied.

439.

The allegations of paragraph 302 are denied.

440.

The allegations of paragraph 303 are denied.

441.

The allegations of paragraph 304 are denied.

442.

The allegations of paragraph 305 are denied.

443.

The allegations of paragraph 306 are denied.

444.

The allegations of paragraph 307 are denied.

445.

The allegations of paragraph 308 are denied.

446.

The allegations of paragraph 309 are denied.

447.

The allegations of paragraph 310 are denied.

448.

The allegations of paragraph 311 are denied.

449.

The allegations of paragraph 312 are denied.

450.

The allegations of paragraph 313 are denied.

451.

The allegations of paragraph 314 are denied.

452.

The allegations of paragraph 315 are denied.

453.

The allegations of paragraph 316 are denied.

454.

The allegations of paragraph 317 are denied.

455.

The allegations of paragraph 318 are denied.

456.

In response to paragraph 319, Signal incorporates by this reference its responses herein to each and every allegation contained in the preceding paragraphs.

457.

The allegations of paragraph 320 are denied.

458.

The allegations of paragraph 321 are denied.

459.

The allegations of paragraph 322 are denied.

460.

The allegations of paragraph 323 are denied.

461.

The allegations of paragraph 324 are denied.

462.

The allegations of paragraph 325 are denied.

463.

The allegations of paragraph 326 are denied.

464.

The allegations of paragraph 327 are denied.

465.

The allegations of paragraph 328 are denied.

466.

The allegations of paragraph 329 are denied.

467.

The allegations of paragraph 330 are denied.

468.

The allegations of paragraph 331 are denied.

469.

In response to paragraph 332, Signal incorporates by this reference its responses herein to each and every allegation contained in the preceding paragraphs.

470.

The allegations of paragraph 333 are denied.

471.

The allegations of paragraph 334 are denied.

472.

The allegations of paragraph 335 are denied.

473.

The allegations of paragraph 336 are denied.

474.

The allegations of paragraph 337 are denied.

475.

The allegations of paragraph 338 are denied.

476.

In response to paragraph 339, Signal incorporates by this reference its responses herein to each and every allegation contained in the preceding paragraphs.

477.

The allegations of paragraph 340 are denied.

478.

The allegations of paragraph 341 are denied.

479.

The allegations of paragraph 342 are denied.

480.

The allegations of paragraph 343 are denied.

481.

The allegations of paragraph 344 are denied.

482.

The allegations of paragraph 345 are denied.

483.

The allegations of paragraph 346 are denied.

484.

The allegations of paragraph 347 are denied.

485.

The allegations of paragraph 348 are denied.

486.

The allegations of paragraph 349 are denied.

487.

The allegations of paragraph 350 are denied.

488.

In response to paragraph 351, Signal incorporates by this reference its responses herein to each and every allegation contained in the preceding paragraphs.

489.

The allegations of paragraph 352 are denied.

490.

The allegations of paragraph 353 are denied.

491.

The allegations of paragraph 354 are denied.

492.

The allegations of paragraph 355 are denied.

493.

The allegations of paragraph 356 are denied.

494.

The allegations of paragraph 357 are denied.

495.

In response to paragraph 358, Signal incorporates by this reference its responses herein to each and every allegation contained in the preceding paragraphs.

496.

The allegations of paragraph 359 are denied.

497.

The allegations of paragraph 360 are denied.

498.

The allegations of paragraph 361 are denied.

499.

The allegations of paragraph 362 are denied.

500.

The allegations of paragraph 363 are denied.

501.

The allegations of paragraph 364 are denied.

502.

The allegations of paragraph 365 are denied.

503.

In response to paragraph 366, Signal incorporates by this reference its responses herein to each and every allegation contained in the preceding paragraphs.

504.

The allegations of paragraph 367 are denied.

505.

The allegations of paragraph 368 are denied.

506.

The allegations of paragraph 369 are denied.

507.

The allegations of paragraph 370 are denied.

508.

The allegations of paragraph 371 are denied.

509.

In response to paragraph 372, Signal incorporates by this reference its responses herein to each and every allegation contained in the preceding paragraphs.

510.

The allegations of paragraph 373 are denied.

511.

The allegations of paragraph 374 are denied.

512.

The allegations of paragraph 375 are denied.

513.

The allegations of paragraph 376 are denied.

514.

The allegations of paragraph 377 are denied.

515.

The allegations of paragraph 378 are denied.

516.

The allegations of paragraph 379 are denied.

517.

In response to paragraph 380, Signal incorporates by this reference its responses herein to each and every allegation contained in the preceding paragraphs.

518.

The allegations of paragraph 381 are denied.

519.

The allegations of paragraph 382 are denied.

520.

The allegations of paragraph 383 are denied.

521.

The allegations of paragraph 384 are denied.

522.

The allegations of paragraph 385 are denied.

523.

In response to paragraph 386, Signal incorporates by this reference its responses herein to each and every allegation contained in the preceding paragraphs.

524.

The allegations of paragraph 387 are denied.

525.

The allegations of paragraph 388 are denied.

526.

The allegations of paragraph 389 are denied.

527.

The allegations of paragraph 390 are denied.

528.

The allegations of paragraph 391 are denied.

529.

The allegations of paragraph 392 are denied.

530.

The allegations of paragraph 393 are denied.

531.

In response to paragraph 394, Signal incorporates by this reference its responses herein to each and every allegation contained in the preceding paragraphs.

532.

The allegations of paragraph 395 are denied.

533.

The allegations of paragraph 396 are denied.

534.

The allegations of paragraph 397 are denied.

535.

The allegations of paragraph 398 are denied.

536.

The allegations of paragraph 399 are denied.

537.

The allegations of paragraph 400 are denied.

538.

In response to paragraph 401, Signal incorporates by this reference its responses herein to each and every allegation contained in the preceding paragraphs.

539.

The allegations of paragraph 402 are denied.

540.

The allegations of paragraph 403 are denied.

541.

The allegations of paragraph 404 are denied.

542.

The allegations of paragraph 405 are denied.

543.

The allegations of paragraph 406 are denied.

WHEREFORE, Signal prays that it be granted the damages and relief sought in its cross claims and third party claims, that all of plaintiffs' claims be dismissed with prejudice, that Signal be awarded all of its attorney fees and costs, and that this Court grant all other appropriate relief.

Respectfully submitted,

/s/ Erin Casey Hangartner
Dominic J. Gianna, La. Bar No. 6063
Paul J. Mirabile, La. Bar No. 9668
Donald C. Douglas, Jr., La. Bar No. 22338
Alan Dean Weinberger, La. Bar No. 13331
Erin Casey Hangartner, La. Bar No. 24768
Middleberg, Riddle & Gianna
201 St. Charles Avenue, 31st Floor
New Orleans, LA 70170
Telephone (504) 525-7200

Fax (504) 581-5983

and

/s/ Patricia A. Bollman
Patricia A. Bollman, La. Bar 17563
A Professional Law Corporation
Post Office Box 13707
New Orleans, LA   70185
Telephone:  (504) 218-5887
Facsimile:   (504) 304-0890
patricia@bollmanfirm.com

Counsel for Signal International, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to non-CM/ECF participants.


/s/ Erin Casey Hangartner
ERIN CASEY HANGARTNER

ND: 4815-6741-4018, v.  2