Exhibit 56

Relevant pages from Deposition of Dr. Kurella Rao, taken
on September 11, 2008, in Kurian David, et al, v. Signal
International, LLC, et al., and relevant exhibits thereto

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

KURIAN DAVID, et al            CIVIL ACTION
                               NO. 08-cv-01220
          Plaintiffs,
VERSUS                         JUDGE ZAINEY

SIGNAL INTERNATIONAL, LLC      MAGISTRATE KNOWLES
et al,

          Defendants.

     *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

     Deposition of DR. KURELLA RAO, 2508 Gate
Circle Apartments, Apartment No. 22, Baton
Rouge, Louisiana, 70809, taken in the Law
Offices of Barrasso, Usdin, Kupperman, Freeman
& Sarver, 909 Poydras Street, Suite 2400, New
Orleans, Louisiana, 70112, on September 11th,
2008, at or about 9:15 a.m.

APPEARANCES:

     NEW ORLEANS WORKERS' CENTER FOR RACIAL
     JUSTICE
     By:  Jennifer J. Rosenbaum, Esquire
     803 Baronne Street
     New Orleans, Louisiana  70113
     (Counsel for Plaintiffs)

     SOUTHERN POVERTY LAW CENTER
     By:  Naomi Tsu, Esquire
     233 Peachtree Street, suite 2150
     Atlanta, Georgia  30303
     (Co-Counsel for Plaintiffs)

     BARRASSO, USDIN, KUPPERMAN, FREEMAN
     & SARVER
     By:  Stephen H. Kupperman, Esquire
     909 Poydras Street, Suite 2400
     New Orleans, Louisiana  70112
     (Counsel for Michael Pol and Global

Page 2

 1
           PORTEOUS, HAINKEL AND JOHNSON
 2         By:  Ralph R. Alexis, III, Esquire
           705 Carondelet Street
 3         New Orleans, Louisiana  70139-3774
           (Counsel for Burnett Defendants)
 4
           MIDDLEBERG, RIDDLE & GIANNA
 5         By:  Donald C. Douglas, Jr., Esquire
           201 St. Charles Avenue, 31st Floor
 6         New Orleans, Louisiana  70170-3100
           (Counsel for Signal International, LLC)
 7
           PAGE, MANNINO, PERESICH & MCDERMOTT
 8         By:  Michael E. Whitehead, Esquire
           759 Vieux Marche Mall
 9         Biloxi, Mississippi  39533
           (Counsel for J & M Associates Inc., of
10          Mississippi)

11         LAW OFFICES OF KEVIN K. GIPSON
           By:  Kevin K. Gipson, Esquire
12         3920 General DeGaulle Drive
           New Orleans, Louisiana  70114
13         (Counsel for Dr. Kurella Rao)

14
      REPORTED BY:
15
           Gail F. Mason, RPR
16         Certified Court Reporter
           Certificate No. 96004
17

18

19

20

21

22

23

24

25

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 3

```
 1                    I N D E X

 2

 3   Title Page  . . . . . . . . . . . . .    1

 4   Appearances . . . . . . . . . . . .    1,2

 5   Index   . . . . . . . . . . . . . .      3

 6   Stipulations of Counsel . . . . . . .    4

 7   EXAMINATION:

 8       By Ms. Rosenbaum . . . . . . . .     4

 9       By Mr. Shapiro . . . . . . . . .   110

10       By Mr. Kupperman . . . . . . . .   113

11       By Ms. Rosenbaum . . . . . . . .   117

12   EXHIBITS:

13       Rao No. 1 (receipt). . . . . . .    49
         Rao No. 2 (receipt) . . . . . . .   52
14       Rao No. 3 (receipt). . . . . . .    53
         Rao No. 4 (1/12/06 ltr). . . . . .  60
15       Rao No. 5 (1/2/04 ltr) . . . . . .  65
         Rao No. 6 (temp receipt) . . . . .  66
16       Rao No. 7 (10/15/04 ltr) . . . . .  72
         Rao No. 8 (7/1/05 e-mail). . . . .  74
17       Rao No. 9 (prom note). . . . . . .  76
         Rao No. 10 (receipts). . . . . . .  83
18       Rao No. 11 (agreement) . . . . . .  87
         Rao No. 12 (annexure). . . . . . .  90
19       Rao No. 13 (note). . . . . . . . .  94
         Rao No. 14 (advertisement) . . . .  99
20       Rao No. 15 (LSOS record) . . . . . 104
         Rao No. 16 (1st Interrog). . . . . 107
21       Rao No. 17 (1st Produc). . . . . . 108

22

23   Witness' Certificate. . . . . . . . . 126

24   Reporter's Certificate  . . . . . . . 127

25
```

Kurian David, et al v. Signal International, LLC, et al                              Dr. Kurella Rao

Page 4

```
 1                  S T I P U L A T I O N

 2

 3        It is stipulated and agreed by and between

 4   counsel for the parties hereto that the

 5   deposition of the aforementioned witness is

 6   hereby being taken pursuant to the Federal

 7   Rules of Civil Procedure for all purposes;

 8        That all formalities of signing, sealing,

 9   certification, and filing are hereby waived;

10        That all objections are to be considered

11   under the Federal Rules of Civil Procedure.

12                    *   *   *   *   *

13        (DR. KURELLA RAO, AFTER HAVING BEEN FIRST

14   DULY SWORN BY THE ABOVE-NAMED CERTIFIED COURT

15   REPORTER, WAS EXAMINED AND TESTIFIED AS

16   FOLLOWS:)

17   EXAMINATION BY MS. ROSENBAUM:

18        Q.  So would you state, Dr. Rao, your name

19   and address for the record, please.

20        A.  Okay.  Savasiva, S-A-V-A-S-I-V-A,

21   Savasiva, Rao, R-A-O, Rao, Kurella,

22   K-U-R-E-L-L-A.

23        Q.  And your address?

24        A.  2508 Gate Circle Apartments, Apartment

25   No. 22, Baton Rouge.  Zip code is 70809.
```

**[PAGE BREAK]**

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 24

1    phone from the United States --

2         A.  Yes.

3         Q.  -- before you went to India?

4         A.  Yes, yes.

5         Q.  When is the first time you remember

6    speaking with him on the phone?

7         A.  2000 -- November '3,

8    November/December.  We have a back-and-forth

9    communications about recruitment, e-mails.  And

10   finally we agreed.

11        Q.  So what was the first step in that

12   negotiation?  How did you first start speaking

13   with him?

14        A.  First step was conduct seminars and

15   tell the workers who are interested to come to

16   the United States about this process of

17   permanent residency, Department of Labor

18   Step 1; I-140 Step 2; I-485 Step 3, the process

19   it takes, step-by-step, and then money

20   involved.  Whoever agrees for those terms and

21   conditions, they were recruited.  And they

22   should have first-class skills for welders as

23   well as fitters.

24        Q.  Okay.  And when you and Mr. Dewan were

25   first discussing whether to go -- whether to

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 25

1    have this business agreement, what was the

2    first step in that negotiation?

3        A.   First step --

4           BY MR. GIPSON:

5               Objection.  Venue and

6    jurisdiction issues.  This has nothing to do

7    with venue and jurisdiction.

8           BY MR. ALEXIS:

9               Same objection.

10          BY MR. SHAPIRO:

11              I'll join.

12          BY MR. GIPSON:

13              Unless I tell you not to answer,

14   you can go ahead and answer their question.

15   But I would, again, instruct you to answer

16   their question.  Please listen carefully to

17   their questions because you're really not

18   answering their questions.  You're giving these

19   narrative speeches that have nothing to do with

20   their questions most of the time.  Listen very

21   carefully to their question, answer their

22   question and this will go a lot faster.  I know

23   you want to tell them your story, but we're

24   here on some very limited issues today.

25          BY THE WITNESS:

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 26

1            Okay.

2         BY MS. ROSENBAUM:

3            Would you read back the last

4    question.

5            (WHEREUPON, THE REQUESTED PORTION

6    OF THE TRANSCRIPT WAS READ BACK BY THE COURT

7    REPORTER.)

8         BY THE WITNESS:

9            Entered into the business

10   agreement agreeable for both of us.  And he

11   agreed and I agreed, and we went into a

12   business agreement.  What is the big deal, I

13   don't know.  I'm sorry.

14   EXAMINATION BY MS. ROSENBAUM:

15      Q.  When you would call him on the phone

16   to discuss the agreement, where were you

17   calling from?

18      A.  I'm calling from my home all the time,

19   on my home cell phone or cell phone.

20      Q.  And where were you -- where was your

21   home at that time?

22      A.  Oh, at that time I was renting house

23   in South Causeway.

24      Q.  And when you were sending him e-mails,

25   what e-mail account were you using?

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 27

1      A.   Indo-AmeriSoft aol and also my

2   personal e-mail too.

3      Q.   And where would you send these e-mails

4   from usually?

5      A.   Sometimes if I -- if I am close to the

6   office, I will do from the office.  If not

7   close from the office, if I'm at home or at my

8   work, I have a laptop, and I will do that.  It

9   is not very specific.  Wherever it was

10  convenient to me at that time, I used to do it.

11     Q.   But is it accurate that you were

12  usually in New Orleans when you --

13     A.   Yes.

14     Q.   -- were sending these e-mail?  And

15  were there other people besides you and

16  Mr. Dewan and Mr. Burnett that were involved in

17  the recruitment of these workers?

18     A.   No.

19          BY MR. ALEXIS:

20              Excuse me.  I'm going to object

21  to the form of the question.

22          BY MR. SHAPIRO:

23              I'll join in that.

24          BY THE WITNESS:

25              No.

[PAGE BREAK]

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

1    EXAMINATION BY MS. ROSENBAUM:

2        Q.  So between those two trips, one in

3    2004 and one in 2006, did you stay in touch

4    with Mr. Dewan?

5        A.  Yes, by e-mail and sometimes telephone

6    calls.

7        Q.  And about how often would you say that

8    you --

9        A.  I cannot say how often.  When there

10   was candidate that give trouble to Sachin

11   Dewan, he will call me, Dr. Rao, what is the

12   process, how long is it going to take, they are

13   getting impatient.  So, hey, Burnett, is the

14   person who will advise us.  And he says a

15   couple more months.  There was some undue

16   delays in the system.  In the immigration

17   reform there were delays, so please bear with

18   us and tell the clients, the workers, to be

19   patient.

20       Q.  And what e-mail account were you using

21   at the time to communicate?

22       A.  Sivajinanna@aol.com and

23   IndoAmeriSoft.com.

24       Q.  And were you sending those e-mails and

25   make those telephone calls from New Orleans?

Kurian David, et al v. Signal International, LLC, et al                                      Dr. Kurella Rao

```
                                                        Page 36

    1        A.  Yes, ma'am.

    2        Q.  And how often would you say the

    3   workers were giving trouble to Sachin?  How

    4   often would that happen?

    5             BY MR. GIPSON:

    6                  Objection.

    7             BY MR. ALEXIS:

    8                  Objection to form.

    9             BY MR. GIPSON:

   10                  Answer if you know.

   11             BY THE WITNESS:

   12                  I don't know how often they go to

   13   his office and how often -- because when we

   14   tell them six months, sometimes the workers are

   15   more anxious in one month and they come and

   16   ask, hey, what happens to my process.  Sachin

   17   Dewan says -- so this is -- I don't know

   18   exactly, please.  That is not I have an answer

   19   for that.

   20   EXAMINATION BY MS. ROSENBAUM:

   21        Q.  And did anyone else at Indo-AmeriSoft

   22   communicate with Sachin Dewan?

   23        A.  No.

   24        Q.  And did anyone else at Indo-AmeriSoft

   25   communicate with Mr. Burnett?
```

[PAGE BREAK]

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 61

1       Q.  Did you discuss the -- this document

2    with Mr. Dewan as you prepared it?

3       A.  I think by telephone I said -- I

4    discussed with Mr. Dewan.

5       Q.  So would you look down at the bottom

6    under No. 2?

7       A.  Uh-huh (affirmative response.)

8       Q.  Will you read us that first sentence

9    there?

10      A.  Uh-huh (affirmative response.)  In

11   discussion with Mr. Sachin Dewan, we are

12   pleased to offer you a discount of $100 as a

13   gesture for your patience and wait during the

14   first process.  The second installment payable

15   to Indo-AmeriSoft, LLC, shall be now $2,650

16   instead of $2,759.

17              Yes, this was discussed with me

18   and Dewan, and I prepared this.

19      Q.  Did you discuss with anyone else about

20   preparing this besides Mr. Burnett and

21   Mr. Dewan?

22      A.  Oh, no.  No.

23      Q.  Okay.  And is this your signature?

24      A.  Yes, ma'am.

25      Q.  Okay.  And is this -- this information

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 62

1    on the letterhead, was this correct in 2006?

2         A.   2006, no.   That was letterhead

3    existing before.

4         Q.   Let me ask the question again.   At the

5    time this letter was sent --

6         A.   Okay.

7         Q.   -- was this information correct?

8         A.   Means on the left side of the page,

9    the offices, we're paying rent but non

10   functional offices.

11        Q.   Okay.   Well, is the information about

12   the Board of Directors, was it correct at the

13   time this letter was sent?

14        A.   Yes.

15        Q.   And how would you describe your

16   business relationship with Dewan Consultants?

17             BY MR. SHAPIRO:

18                  Object to the form.

19             BY THE WITNESS:

20                  Excellent.   Excellent

21   relationship.

22   EXAMINATION BY MS. ROSENBAUM:

23        Q.   And what was their responsibility in

24   the business relationship?

25             BY MR. SHAPIRO:

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 63

 1                   Object to the form.

 2              BY THE WITNESS:

 3                   Dewan Consultants

 4      responsibilities is to communicate with the

 5      candidates the process and make them wait,

 6      because Mr. Burnett is the one who advises me

 7      on how long this process is going to take.  And

 8      then he's the one who's talking to the local

 9      candidates at the local level, Dewan

10      Consultants.

11      EXAMINATION BY MS. ROSENBAUM:

12          Q.  And was it his responsibility also to

13      communicate that information about what was

14      going on at the local level to you?

15          A.  Yes.

16              BY MR. SHAPIRO:

17                   Objection.  I don't know when you

18      say "his," I'm not sure what you meant -- who

19      you're referring to.

20      EXAMINATION BY MS. ROSENBAUM:

21          Q.  Was it Dewan Consultant's

22      responsibility to communicate to you what was

23      happening at the local level, as you said?

24              BY MR. SHAPIRO:

25                   Object to the form.

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 64

1           BY THE WITNESS:
2               In this permanent residency
3    process, not beyond that.
4    EXAMINATION BY MS. ROSENBAUM:
5        Q.  And so how often would Dewan
6    Consultants give you updates?
7        A.  For sometime, no communication for
8    months.  If there is a need, yes, he will
9    communicate every day.  Same thing, me too.
10       Q.  And how was this letter given to
11   candidates?  Was it sent in the mail or handed
12   to them or what was the process?
13       A.  We sent it by e-mail and by post to
14   Sachin Dewan Consultants, and he will be
15   contact personally with the candidates.
16       Q.  And did you send it by post and e-mail
17   from New Orleans?
18       A.  Yes.
19       Q.  And was that distribution process,
20   sending documents from New Orleans to Mr. Dewan
21   by post and e-mail, was that the normal process
22   for distribution of documents or was that
23   special for this letter?
24           BY MR. SHAPIRO:
25               Object to form.

Kurian David, et al v. Signal International, LLC, et al                              Dr. Kurella Rao

Page 65

```
 1              BY THE WITNESS:

 2                  It is a communication process.

 3   Whether I'm in New Orleans, whether I'm in

 4   India, whether anywhere, if I need to

 5   communicate to him, I will communicate through

 6   an e-mail or by post.  Same thing, me too.

 7   EXAMINATION BY MS. ROSENBAUM:

 8       Q.  Did you send Mr. Burnett a copy of

 9   these letters when they went to the candidates?

10              BY MR. ALEXIS:

11                  Objection to the question.

12              BY THE WITNESS:

13                  No.

14                  (WHEREUPON, RAO NO. 5 WAS MARKED

15   FOR IDENTIFICATION PURPOSES.)

16              BY THE WITNESS:

17                  (Witness reviewed document.)

18   EXAMINATION BY MS. ROSENBAUM:

19       Q.  Have you seen this document?

20       A.  Yes, I have reviewed it.

21       Q.  Have you seen it before today?

22       A.  No.

23              BY MR. ALEXIS:

24                  I'm going to object to the line

25   of questioning on this, jurisdiction and venue.
```

**[PAGE BREAK]**

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 72

1    my supervision.

2                    (WHEREUPON, RAO NO. 7 WAS MARKED

3    FOR IDENTIFICATION PURPOSES.)

4            BY THE WITNESS:

5                    (Witness reviewed document.)

6    Yes, I have reviewed this document.

7    EXAMINATION BY MS. ROSENBAUM:

8        Q.   Have you seen it before today?

9        A.   Yes.

10           BY MR. ALEXIS:

11                   I'm going to object on the

12   grounds of jurisdiction and venue, to the whole

13   line of questioning.

14   EXAMINATION BY MS. ROSENBAUM:

15       Q.   When did you first see it?

16       A.   I cannot remember, but I have --

17   definitely knowledgeable about this document.

18       Q.   Can you explain to us what it is?

19       A.   This is returned to the candidates by

20   Mr. Burnett as my consultant immigration

21   attorney so that we will be able to exactly

22   tell the candidates through Sachin Dewan of

23   this process is, approximately how long it will

24   take, what are the delays in the process and

25   requesting cooperation from the candidates.

Kurian David, et al v. Signal International, LLC, et al                     Dr. Kurella Rao

Page 73

1       Q.  Did you ask Mr. Burnett to write this

2   letter on your behalf?

3       A.  When we discussed it, yes, Mr. Burnett

4   is -- is always advisable for you as the person

5   on immigration matters.  This will give less

6   credence to me as well as Mr. Sachin Dewan who

7   is there locally, and candidates will

8   definitely hear to you more than what I say and

9   what Dewan did tells.

10      Q.  So whose idea was it to write this

11  letter?

12          BY MR. ALEXIS:

13              Same objection.

14          BY THE WITNESS:

15              This letter was written by

16  Mr. Burnett explaining the process.  And letter

17  was sent to Sachin Dewan to distribute it to

18  the candidates.  So he might have returned I.

19  Do not know.  Fill the gap, Mister, and send it

20  to all candidates.

21  EXAMINATION BY MS. ROSENBAUM:

22      Q.  So you're not sure who wrote the names

23  of the candidates; is that right?

24      A.  No.

25      Q.  And do you know how it was sent to

Kurian David, et al v. Signal International, LLC, et al                                Dr. Kurella Rao

Page 74

 1   Mr. Dewan?

 2        A.  I do not know.  Maybe -- maybe mail.

 3   I don't know.

 4        Q.  And just to be clear, whose idea was

 5   it to -- whose idea was it to send this letter?

 6             BY MR. ALEXIS:

 7                  Same objection.  Also asked and

 8   answered.

 9             BY THE WITNESS:

10                  It is a collective idea, but

11   taking the expertise of Mr. Burnett.

12                  (WHEREUPON, RAO NO. 8 WAS MARKED

13   FOR IDENTIFICATION PURPOSES.)

14             BY THE WITNESS:

15                  (Witness reviewed document.)

16   Yes, I have reviewed this document.

17   EXAMINATION BY MS. ROSENBAUM:

18        Q.  Have you seen this e-mail before?

19        A.  Yes.

20        Q.  And can you explain to us what it is?

21        A.  This is the reply from Department of

22   Labor verifying that Dhananjaya Kechuru and I

23   -- I did the verification.  I sent copy to

24   Sachin Dewan by e-mail.  I got it through

25   e-mail from Department of Labor.  For their

Kurian David, et al v. Signal International, LLC, et al                          Dr. Kurella Rao

Page 75

1   knowledge and information to submit the

2   information to the candidates, I sent it to

3   Sachin Dewan.

4        Q.  And is that what you regularly did

5   when you got e-mails from the Department of

6   Labor?

7        A.  Yes.

8        Q.  And would you send that from your

9   office computer or your home computer?

10       A.  Most of the time from my home, my --

11  my laptop.

12       Q.  But you would be in New Orleans when

13  you sent them?

14       A.  Yes.

15       Q.  And did you have a list of e-mails of

16  the candidates to communicate directly with

17  them?

18       A.  I think we have a list in my computer

19  because each person verification, they came to

20  me and I verified, send them back to Department

21  of Labor.  And, finally, they approved and send

22  them back to me.

23       Q.  So did you also send this e-mail to

24  Mr. Kechuru --

25       A.  No --

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 76

1        Q.  -- himself directly?

2        A.  -- not to the candidates direct.  We

3   sent it to Sachin Dewan.  I and Sachin Dewan in

4   turn transmit the information to the

5   candidates.

6                   (WHEREUPON, RAO NO. 9 WAS MARKED

7   FOR IDENTIFICATION PURPOSES.)

8           BY THE WITNESS:

9               (Witness reviewed document.)

10  Yes, I have reviewed this and --

11          BY MR. GIPSON:

12              Hold on.  Let me look at my copy.

13  EXAMINATION BY MS. ROSENBAUM:

14      Q.  Have you seen this document before

15  today?

16      A.  Yes.

17      Q.  Can you explain to us what it is?

18          BY MR. ALEXIS:

19              Let me -- excuse me, Dr. Rao.

20          BY THE WITNESS:

21              I have prepared this document.

22          BY MR. ALEXIS:

23              Let me just object to this line

24  of questioning on the grounds that it doesn't

25  relate to jurisdiction and venue.

Kurian David, et al v. Signal International, LLC, et al                      Dr. Kurella Rao

Page 77

1            BY THE WITNESS:

2                 I could tell?

3            BY MR. GIPSON:

4                 Yes.

5            BY THE WITNESS:

6                 I have prepared this, and I

7   signed it.

8   EXAMINATION BY MS. ROSENBAUM:

9        Q.  Did anyone give you advice on writing

10  it?

11           BY MR. ALEXIS:

12                Same objection.

13           BY THE WITNESS:

14                Maybe Sachin to make couple of

15  clarifications.

16  EXAMINATION BY MS. ROSENBAUM:

17       Q.  Did you talk about this document with

18  Mr. Burnett?

19           BY THE WITNESS:

20                Same objection.

21           BY THE WITNESS:

22                Yes.

23  EXAMINATION BY MS. ROSENBAUM:

24       Q.  Did you prepare it in the United

25  States?

Kurian David, et al v. Signal International, LLC, et al                          Dr. Kurella Rao

Page 78

```
 1        A.  Yes.

 2        Q.  And in New Orleans?

 3        A.  Yes.

 4        Q.  And then what happened after you

 5   prepared it?

 6        A.  When we went for recruitment, we

 7   carried this and signed when we receive the

 8   money, sign, and gave it to Sachin Dewan to

 9   keep the original of candidates and get a copy.

10        Q.  And then did you bring copies back to

11   New Orleans?

12        A.  Yes.

13        Q.  Do you still have those copies?

14        A.  No.

15        Q.  Okay.  On the second page --

16        A.  Yes.

17        Q.  -- I just wanted to ask you about the

18   second page.

19        A.  Yes.

20        Q.  On the left where it says "witness."

21        A.  Uh-huh (affirmative response.)

22        Q.  Whose signature is that?

23        A.  This is for Sachin Dewan.

24        Q.  And on the right?

25        A.  My.
```

Page 79

1        Q.  Now, there's two signatures here,

2    right?

3        A.  At this time, my wife was -- happen to

4    be in the place, so she also signed because

5    Sachin Dewan said when wife is there you all

6    let her sign.

7        Q.  And were you all three in the same

8    place when you signed this?

9        A.  Yes.

10       Q.  So it was signed at the same time

11   together?

12       A.  Yes.

13       Q.  So the top signature is yours; is that

14   correct?

15       A.  Uh-huh (affirmative response.)

16       Q.  And the bottom signature is your wife?

17       A.  Yes.

18       Q.  And what's her name?

19       A.  Vijaya Rao.

20       Q.  Did she travel with you both times to

21   India --

22       A.  No.

23       Q.  -- when you went?  Did she travel the

24   first time or the second time?

25       A.  First time only for a part of the

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 80

 1    Mumbai.  So she -- she went to my hometown.

 2    She stayed a week with us, five days, three

 3    days.  And then during that time, Sachin

 4    insisted that she have to sign also because

 5    she's there.

 6         Q.  What other things did she do while she

 7    was there?

 8         A.  She went to see, visit -- visiting

 9    Bombay along with me.  And whatever -- she went

10    -- India is we -- we are originally from India,

11    so she would like to go maybe shopping, maybe

12    whatever she would like.

13         Q.  Did she go to meetings with you and

14    Mr. Dewan and candidates?

15         A.  One first time when we met, when he

16    came and brought us from the airport, we had a

17    casual talk, Mr. Burnett, his associate, his

18    assistant, we all spoke.  It's not an official

19    meeting.

20         Q.  So where were you all when this

21    document was signed?

22         A.  This is -- this place where this --

23    who it belongs to I don't know.  The state of

24    maybe Mumbai.

25         Q.  Was it a meeting or at an office?

Page 81

1          A.   It has a recruitment center, to

2     conduct seminar in a hotel, a hotel.  At that

3     time, if I am there, I will sign.  And I think

4     most of the time I'm there, but my wife is not

5     there most of the time.

6          Q.   And did she ever communicate with

7     Mr. Dewan directly --

8          A.   No.

9          Q.   -- about the recruitment process?

10         A.   No.  As a coincidental happening, for

11    his -- Mr. Sachin Dewan for his more security,

12    he wanted my wife to sign because she's there

13    available.  Maybe delivering, we carried all

14    those things to the hotel where she -- -- where

15    both of us were living and make her to sign,

16    but not at the office where we recruited.

17         Q.   Okay.  So this document, then it might

18    have been signed at the hotel; is that right?

19              BY MR. GIPSON:

20                   Objection to relevance.

21              BY THE WITNESS:

22                   My wife's signature --

23              BY MR. GIPSON:

24                   Go ahead.  Go ahead.

25              BY MR. KUPPERMAN:

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

                                                           Page 82

 1                    Objection with respect to

 2      jurisdiction and venue.

 3              BY THE WITNESS:

 4                    When I was there, Sachin and

 5      myself signed the document at the hotel of

 6      seminar recruitment place.  My wife might have

 7      signed it later on next day or evening when

 8      Sachin brought this bundle of papers for her to

 9      sign.

10      EXAMINATION BY MS. ROSENBAUM:

11          Q.  So I'm just trying to be clear.

12      Earlier you said that you were all in the same

13      place when they were signed.  Is that right or

14      is it --

15          A.  All meetings myself and Sachin, not my

16      wife necessarily.  This is for Sachin Dewan

17      wanted more security from both signatures, so I

18      said we have no problem.  So I asked my wife to

19      sign, and she signed.

20          Q.  Okay.  But she might have signed at a

21      later time?

22          A.  Yes.

23              BY MR. KUPPERMAN:

24                    Objection to form.

25              BY THE WITNESS:

[PAGE BREAK]

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 88

1       Q.  So who prepared this document?

2       A.  I prepared this document in

3   consultation, some minor modifications by

4   Sachin Dewan.  I mailed to him draft copy, he

5   made some changes, and I agreed on that and

6   reviewed by me and --

7       Q.  So did you prepare it in New Orleans?

8       A.  Yes, I prepared it in New Orleans.  Of

9   course, I consulted a corporate attorney.  I

10  forgot his name, but --

11      Q.  Did you consult with Mr. Burnett on

12  this document?

13          BY MR. ALEXIS:

14              Same objection.

15          BY THE WITNESS:

16              Unofficially, yes.

17  EXAMINATION BY MS. ROSENBAUM:

18      Q.  What does that -- what does

19  "unofficially" mean?

20          BY MR. ALEXIS:

21              Same objection.

22          BY THE WITNESS:

23              He's my immigration consultant.

24  He's responsibile to do the job with this

25  expertise as possible.  This agreement is

Page 89

1   between me and the candidates and Sachin Dewan

2   for the responsibilities.

3   EXAMINATION BY MS. ROSENBAUM:

4       Q.  So you said you drafted it here and

5   sent it to Sachin --

6       A.  Uh-huh (affirmative response.)

7       Q.  -- is that right?  How did you send it

8   to him?

9       A.  By e-mail, by post.

10      Q.  And then he sent you back a copy to

11  review with those changes?

12      A.  Yes.  And he had reviewed and asked

13  for changes.  Some I agreed, some I did not

14  agree.  And so we finally made it.

15      Q.  And did you talk with him on the phone

16  about the changes or did he send you --

17      A.  Yes, I spoke to him by telephone, by

18  e-mail and --

19      Q.  -- about the changes?

20      A.  -- we work to the best of the ability

21  to do the job good.  So he asked me -- he

22  suggested some changes, I made it.

23      Q.  And then who delivered this document

24  to the candidates?

25      A.  When I was there, I did recruitment

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

```
                                                        Page 90
   1    place.  I signed it.  Sachin signed it, and

   2    then given to Sachin.  He has given one copy or

   3    e-mail asking the candidate to sign it later

   4    on.  But there's no disagreement on this.

   5         Q.  So when you signed it, was the

   6    candidate present to sign it at the same time?

   7         A.  Some yes, some no.

   8         Q.  So about how many times did you send

   9    it back and forth to get the final copy?

  10         A.  Oh, maybe few days, before the -- as

  11    short as recruitment, we finalize this

  12    agreement.  Maybe few times.

  13         Q.  A few times you went back and forth?

  14         A.  (Witness nodded head up and down.)

  15         BY MR. GIPSON:

  16              Did you say two or a few?

  17         BY THE WITNESS:

  18              Few times.

  19         BY MR. GIPSON:

  20              And you needed a confirmation?

  21         BY THE WITNESS:

  22              Yes, yes, yes, yes.  I totally

  23    agree with this document.

  24              (WHEREUPON, RAO NO. 12 WAS MARKED

  25    FOR IDENTIFICATION PURPOSES.)
```

```
                                             Page 91

 1            BY THE WITNESS:

 2                 (Witness reviewed document.)

 3      EXAMINATION BY MS. ROSENBAUM:

 4            Q.  Have you seen this document before?

 5            A.  I reviewed this document, and I am

 6      knowledgeable about this document.

 7            Q.  Who drafted this document?

 8            A.  Under the consultation of Mr. Burnett,

 9      I drafted it.

10            Q.  And where were you when you drafted

11      it?

12            A.  Maybe at my work, maybe at home.

13            Q.  In New Orleans?

14            A.  In New Orleans.

15            Q.  And did you meet with Mr. Burnett in

16      his office to discuss it or talk to him --

17            A.  Yes.  I don't remember exactly, but I

18      -- he's expertise on immigration matters.  So

19      most of it through his consultation, I drafted

20      this.

21            Q.  And did you discuss it with Mr. Dewan?

22            A.  Yes.

23            Q.  And were those discussions in person

24      or --

25            A.  By telephone, by e-mail also.  I sent
```

Page 92

1    him, we are going to do this, so he sent very

2    good.

3        Q.  And do you remember the approximate

4    date when this was drafted?

5        A.  There is a date here, February 2000 --

6    can you make it?

7            BY MR. GIPSON:

8                It's hard to say.  2006?

9            BY THE WITNESS:

10               2006?

11           BY MR. GIPSON:

12               It's a 6 or an 8.

13           BY THE WITNESS:

14               Yeah, 200 -- maybe 2006 or '8.  I

15   don't remember.

16   EXAMINATION BY MS. ROSENBAUM:

17       Q.  And is this your signature --

18       A.  Yes.

19       Q.  -- on the right?  And what were the

20   circumstances when you signed it?

21           BY MR. ALEXIS:

22               Object to the form and also

23   jurisdiction and venue.

24           BY THE WITNESS:

25               The candidates are becoming

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 93

1    impatient, although the time that was given to

2    them originally two to three years has not been

3    finished.  So I consulted Mr. Burnett, and

4    Burnett advised me to form this and send it so

5    Sachin Dewan will, in turn, send it to the

6    candidates so that they will be able to --

7    better than they were before.

8    EXAMINATION BY MS. ROSENBAUM:

9        Q.  So when you -- so did you write the

10   names of the candidates --

11       A.  No.

12       Q.  -- on the line?

13       A.  No.

14       Q.  And when you signed it, was the name

15   of the candidate written on the line?

16       A.  No.

17       Q.  So when you signed it, it was a blank

18   form?

19       A.  Yes.

20       Q.  And then you sent the forms to Sachin?

21       A.  Basic trust, faith.

22       Q.  And then did he send you copies back?

23       A.  No.

24       Q.  And did you send it via post or

25   e-mail, do you remember?

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 94

1          A.   I think by e-mail or post both.

2          Q.   Did you --

3          A.   No, e-mail, I cannot send -- I'm

4    sorry.  I cannot send it by e-mail my

5    signature.  I put in blank my signature and

6    send it to him so that he will put the names

7    and give it to each and every person that was

8    in my list of permanent residency visas.

9          Q.   How many people were on your list?

10         A.   130.

11         Q.   Did you ever fax things to Sachin?

12         A.   (Indicated.)

13         Q.   Did you ever fax things to Mr. Dewan?

14         A.   Yes, I faxed from our office.  Office

15   has a fax.

16         Q.   So this was sent fax or mail because

17   it has the signature; is that right?

18         A.   Well, most probably by mail.  Maybe I

19   signed 100, 150 and send it to him for his use

20   with the good faith.

21         Q.   And you haven't seen a copy of that

22   since then?

23         A.   No.

24              (WHEREUPON, RAO NO. 13 WAS MARKED

25   FOR IDENTIFICATION PURPOSES.)

Kurian David, et al v. Signal International, LLC, et al                    Dr. Kurella Rao

Page 95

1            BY THE WITNESS:

2                (Witness reviewed document.)

3     Yes, I have reviewed this.

4     EXAMINATION BY MS. ROSENBAUM:

5         Q.  I actually want to ask one more

6     question about No. 12.

7         A.  Sure.

8         Q.  Did you discuss with Mr. Burnett how

9     this would be transmitted to the candidates?

10        A.  Yes.  To transmit the legal, lawful

11    authoritative information from Burnett.  I said

12    this is going to be transmitted to the -- to

13    the clients there who are a little bit

14    impatient.  So we did that.

15        Q.  And did you talk to him about how you

16    would send it to Mr. Dewan and Mr. Dewan would

17    distribute it?

18        A.  No.  It is my problem how to send this

19    to Dewan, not Mr. Burnett.  He only adviser to

20    me, a consultant adviser on immigration

21    matters.

22        Q.  And when you paid Mr. Burnett for his

23    services, did you transfer money directly from

24    your bank account to his or did you write him a

25    check?

**[PAGE BREAK]**

Kurian David, et al v. Signal International, LLC, et al                         Dr. Kurella Rao

Page 98

1    EXAMINATION BY MS. ROSENBAUM:

2         Q.  And how was it ultimately distributed

3    to candidates?

4         A.  When we went to the recruitment, I

5    signed and give it to them.

6         Q.  So did you send this document in the

7    mail to Mr. Dewan?

8         A.  Most of the time -- the date I'm not

9    sure.

10            BY MR. SHAPIRO:

11                Object to form.

12            BY THE WITNESS:

13                7/1/2004.  Yeah, this was all

14    given at one time of the recruitment, the

15    initial recruitment in 2004.

16    EXAMINATION BY MS. ROSENBAUM:

17        Q.  So then you prepared it before the

18    initial recruitment?

19        A.  Before -- I prepare all the documents,

20    document prepared before in consultation with

21    my corporate attorney and Dewan Consultants and

22    then some immigrant matters through in Burnett,

23    and I prepared it.

24        Q.  Okay.  And did you send versions of

25    this back and forth --

Kurian David, et al v. Signal International, LLC, et al                      Dr. Kurella Rao

Page 99

1          A.  Yes.

2          Q.  -- to Mr. Dewan?

3          A.  Yes.

4          Q.  Via e-mail or --

5          A.  Yeah, through e-mail.

6          Q.  Okay.

7                    (WHEREUPON, RAO NO. 14 WAS MARKED

8      FOR IDENTIFICATION PURPOSES.)

9               BY THE WITNESS:

10                   (Witness reviewed document.)

11     EXAMINATION BY MS. ROSENBAUM:

12         Q.  Have you seen this before?

13         A.  I have reviewed it.  I have seen once

14     in a newspaper advertisement.

15         Q.  Do you remember about what time that

16     was?

17         A.  Because we recruited in January 2004,

18     maybe two months before that or one month

19     before that.

20         Q.  Did you discuss the advertisements

21     that would be put in newspapers with anyone?

22         A.  I am not responsible for that part of

23     advertisement.  I am responsible give demand

24     letter how many I wanted, what kind of

25     qualifications they should have, what kind of

**[PAGE BREAK]**



# Dewan Consultants Pvt. Ltd.

708, Sagar Tech Plaza, Andheri - Kurla Road, Sakinaka Junction, Andheri (East), Mumbai - 400 072. India.
Tel. : +91 22 56941617 (4 Lines) • Fax : 5690 2077
E-mail : dewanexp@bol.net.in
Reg. No. : 3585/MUM/COM/1000+/2 ¼ /5926/2002

January 2, 2004

To,
Mr.V.V. Sabu Lal
Veluthedathu House,
CMC 27, Cherthala P.O.,
Alapuzha Dist,
Kerala 688 524
Tel: 0478 2814262

Dear Mr. Sabu Lal.,

With reference to your application made to us for the process of your **Permanent Residence Visa for United States of**
**America**. We are pleased to inform that you are eligible for the same and you are requested to meet the principals M/s.
Indo-Ameri Soft L.L.C – New Orleans, USA who will be accompanied by the US Immigration Attorney to complete
your initial paper work. The attorney shall be pleased to answer any of your queries during the meeting. We have
scheduled this meeting on 14th & 15th January in Mumbai and 21st to 25th January, 2004 in Cochin. A formal letter of
appointment will be sent to you in due course.

## *PLEASE CARRY ALL ORIGINALS + 3 SETS CLEAR ZEROX OF ALL DOCUMENTS MENTIONED BELOW WHILE MEETING THE PRINCIPALS & ATTORNEY:*

- PASSPORT
- BIRTH CERTIFICATE
- SSC / SSLC BOOK
- SCHOOL LEAVING CERTIFICATE
- ITI(NCVT) OR ANY TRADE CERTIFICATES / DIPLOMA
- ALL EXPERIENCE CERTIFICATE
- 6 COPIES OF COLOURED PHOTOGRAPHS (50MM X 50MM) RIGHT SIDE PROFILE WITH EAR VISIBLE, HEAD TO CHIN TO MEASURE 25MM, WHITE BACK GROUND
- BIOGRAPHICAL FORM DULY HAND WRITTEN
- IF YOU HAVE ANY DOCUMENT WHICH IS IN LANGUAGE OTHER THEN ENGLISH, PLEASE GET IT TRANSLATED IN ENGLISH FROM A RECOGNISED TRANSLATER AND ATTEST IT FROM PUBLIC NOTARY

## *IF YOU NEED TO APPLY FOR FAMILY VISA:*

- *BIRTH CERTIFICATE OF WIFE AND CHILDREN UNDER 21 YEARS*
- *MARRIAGE CERTIFICATE*

## *TERMS & CONDITION FOR PROGRAM:*

| | | |
|---|---|---|
| DURATION FOR COMPLETION OF PROCESS | : | 18 MONTHS |
| FIRST INSTALLMENT | : | 2750/- US $ IN THE NAME OF M/s. **INDO**-AMERI SOFT L.L.C PAYABLE – NEW ORLEANS – USA THIS AMOUNT IS PAYABLE DURING SIGING THE CONTRACT AND THE MEETING SCHEDULED WITH THE LAWYER. BEFORE APPLYING LABOR CERTIFICATION, THIS SHALL TAKE 3-6 MONTHS. |
| SECOND INSTALLMENT | : | 2750/- US $ IN THE NAME OF M/s. **INDO**-AMERI SOFT L.L.C PAYABLE – NEW ORLEANS – USA. IMMEDIATELY UPON APPROVAL OF LABOR CERTIFICATION AND BEFORE APPLYING FOR VISA PETITION I-140 & I 485, THIS SHALL TAKE AROUND 9 – 12 MONTHS |
| FINAL INSTALLMENT | : | 2750/- US $ IN THE NAME OF M/s. **INDO**-AMERI SOFT L.L.C PAYABLE – NEW ORLEANS – USA. IMMEDIATELY UPON RECEIVING VISA APPROVAL YOU WILL HAVE TO PAY THE LAST INSTALLMENT. |



PLAINTIFF'S
EXHIBIT
Rao 5

|                  |   |                                                                                                                                                                                              |
|------------------|---|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                  |   | PAYABLE – NEW ORLEANS – USA. IMMEDIATELY UPON RECEIVING VISA APPROVAL YOU WILL HAVE TO PAY THE LAST INSTALLMENT.                                                                               |
| **RECEIPTS**     | : | PROMISORY NOTES & RECEIPTS SHALL BE GIVEN FOR ALL PAYMENTS MADE TO THE PRINCIPALS                                                                                                             |
| **SALARY**       | : | 18 TO 20 US$ /HOUR 40 HOURS/WEEK                                                                                                                                                              |
| **PRESENT WORK** | : | CANDIDATES MAY CONTINUE WITH THEIR PRESENT JOBS UNTILL THEIR VISA IS READY.                                                                                                                   |

8% Service Tax will be applicable to all payments made to Dewan Consultants Pvt. Ltd.

Thanking you,
Yours truly,
For Dewan Consultants Pvt. Ltd.

**Sachin Dewan**
**Director**

ADRESS OF
M/s. INDO-AMERI SOFT L.L.C
3301 WEST ESPLANADE
AVENUE, SOUTH METAIRIE,
LA 70002

**[PAGE BREAK]**

Page 1 of 1

## Sachin Dewan

From:       <sivajinanna@aol.com>
To:         <sachin@dewanconsultants.com>
Sent:       Friday, July 01, 2005 8:39 PM
Subject:    Fwd: Permanent Application - Case Number C-05177-09696

-----Original Message-----
From: U.S Department of Labor - Application for Permanent Employment Certification - Verification
<PLC.HelpInt@dol.gov>
To: sivajinanna@aol.com
Sent: Mon, 27 Jun 2005 17:31:02 -0400
Subject: Permanent Application - Case Number C-05177-09696

To: INDO-AMERI SOFT, LLC
     kurella Rao
     3712 MacArthur Blvd.
     Suite 100-A
     New Orleans, LA 70114,
     UNITED STATES OF AMERICA.

Re: Case Number: C-05177-09696/ Received: 06/27/2005

- This e-mail is to verify that **INDO-AMERI SOFT, LLC** is sponsoring **DHANANJAYA KECHURU**
  for the full time position of **Welder**
- Please click on the link below, complete the questionnaire, and select the submit button when
  you are finished.
- If you do not complete the questionnaire within 7 days of the date the e-mail was generated,
  you will not be able to complete the questionnaire online, and you will be    contacted by a
  representative of DOL. This may delay processing of your application
- If you have any questions, email the PERM Help desk at PLC.Help@dol.gov

Link for questionnaire

If your email client program does not support HTML format, Please copy and paste the following url
in the browser.
http://www.plc.doleta.gov/eta_start.cfm?
actiontype=sponsorship&qrystr=376E756A6D063833786B636B657136223B37223837213C3021082



PLAINTIFF'S
EXHIBIT
Rao 8

**[PAGE BREAK]**

LF293-04
R293-04

## PROMISSORY NOTE (I)

Rs.1,25,000/- or
US $ 2750/-
Principal Amount

Dated: ___/____/2004
Month/ Day/ Year

FOR VALUE RECEIVED, the under signed here by jointly and severally promise to pay to the

Order of (Name of the applicant) KEEHURU DHADJANJAVA
The sum of (Amount in words) One Lakh Twenty Five Thousand Rupees only (Rs.1,25,000/-) or US Dollars Two Thousand Seven Hundred and Fifty Only (US$ 2750/-) together with interest at the rate of 7 % per annum on the principal amount.
Said sum will be paid in the manner following:

If Indo-Ameri Soft, L.L.C. doing business as Indo-Ameri Group, fails to file the Labor Certification Application (L.C.A), which is the first step in the process of U.S.A. Permanent Residency/ Green card, with in a reasonable time period and obtain approval of the LCA in Six to Nine months, (6-9 Months) from the date of receipt of the said money, the total amount shall be paid in US dollars as whole, at one time on demand.

No payments shall be made before the said Nine (9) Months.

If the Applicant Mr. KEEHURU DHADJANJAVA receives the above said Labor Certification Approval (L.C.A.) by or before Nine (9) Months, this Note has no value and shall be deemed to have expired automatically/suo motu.

If Indo-Ameri Soft, L.L.C / Indo-Ameri Group. FAILS its obligation,

This note may not be prepaid, at any time before Nine Months, in whole or in part. In case IAS fails to obtain the Labor Certification within Nine months, IAS shall refund all money collected from the applicants along with 7% interest from the date of receipt of payments.

This note shall at the option of any holder hereof be immediately due and payable upon the failure to make any payment due hereunder within two (2) weeks after the expiry of the said Nine (9) Months.



.....contd 2

(2)

In the event this note shall be in default, and placed with an attorney for collection, then the undersigned agrees to pay all reasonable attorney fees and costs of collection. All payments hereunder shall be made to such address as may from time to time be designated by any holder hereof

The undersigned and all other parties to this note, whether as endorsers, guarantors or sureties, agree to remain fully bound hereunder until this note is fully paid and waive demand, presentment and protest and all notices thereto and further agree to remain bound, not withstanding any extension, renewal, modification, waiver, or other indulgence by any holder or upon the discharge or release of any obligor hereunder or to this note, or upon the exchange, substitution, or release of any collateral granted as security for this note.

No modification or indulgence by any holder hereof shall be binding unless in writing; and any indulgence on any one occasion shall not be an indulgence for any other or future occasion. Any modification or change of terms, hereunder granted by any holder hereof, shall be valid and binding upon each of the undersigned, not withstanding the acknowledgment of any of the undersigned, and each of the undersigned does hereby irrevocably grant to each of the others a power of attorney to enter into any such modification on their behalf. The rights of any holder hereof shall be cumulative and not necessarily successive.

This note shall take effect as a sealed instrument and shall be construed, governed and enforced in accordance with laws of the State of the Maharashtra, India & State of Louisiana, USA. The undersigned hereby execute this note as principals and not as sureties.

Signed in the presence of:

_____
Witness
Mr. Sachin Dewan
Dewan Consultants Pvt.Ltd
Dated: ___/___/2004

_____
Borrower Dr.Kurella S Rao, MD.; MPH
Director/Chairman,
Indo-Ameri Soft, L.L.C /Indo-Ameri Group.
Dated: ___/___/2004