**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KURIAN DAVID,** *et al.*, | **Case No. 2:08-cv-1220** |
| **Plaintiffs,** | Section "A" |
| | Judge Zainey |
| **-against-** | Magistrate Judge Knowles |
| **SIGNAL INTERNATIONAL, LLC,** *et al.*, | Class Action |
| **Defendants.** | Collective Action |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT MICHAEL POL AND GLOBAL RESOURCES, INC.'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND
FAILURE TO PLEAD FRAUD WITH PARTICULARITY**

Plaintiffs Kurian David, Sony Vasudevan Sulekha, Palanyandi Thangamani, Muruganantham Kandhasamy, Hemant Khuttan, Padaveettiyil Issac Andrews and Kechuru Dhananjaya ("Plaintiffs"), by and through their undersigned counsel, hereby submit this Memorandum of Law in Opposition to Defendant Michael Pol and Global Resources, Inc.'s (collectively, the "Global Defendants") Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to Plead Fraud with Particularity.

**PRELIMINARY STATEMENT**

Michael Pol and Global Resources, Inc. (collectively, the "Global Defendants") bring a misguided Motion to Dismiss. They argue that they are not subject to this Court's jurisdiction and the venue in the Eastern District of Louisiana is improper. Specifically, they assert that they have no connection to Louisiana and none of the activities at issue took place in Louisiana. In addition, the Global Defendants baselessly assert that Plaintiffs failed to plead fraud with particularity.

1

Initially, the Global Defendants ignore the personal jurisdiction/venue provisions in Plaintiffs' Racketeer Influence and Corrupt Organizations Act ("RICO") claim.  RICO provides that only nationwide contacts, not contacts with the forum, are relevant in an action such as this.  As Mr. Pol admits in his Affidavit, the Global Defendants reside in Mississippi.

Even without RICO, the Global Defendants fail to realize that the fraudulent scheme at issue was centered on one key element:  securing permanent residency for Plaintiffs as represented, as opposed to merely obtaining temporary visas through the H-2B guest worker program.  Many Plaintiffs not only sold all their assets (including their wives' jewelry), but also plunged themselves deeply into debt to secure permanent residency in the United States.[1]  Had Defendants been truthful that Plaintiffs would only be provided *temporary* worker status in exchange for exorbitant fees, Plaintiffs would not have become the hapless victims of Defendants' scheme.

In any event, the H-2B/immigration process – the preparation of documents, the exchange of communications with the U.S. Department of Labor, the approval of applications – was conducted entirely through New Orleans, Louisiana.  Indeed, the Global Defendants themselves directed such activities into Louisiana by appointing their agent/immigration counsel, the Burnett Defendants,[2] to conduct the H-2B/immigration process which was critical to the Global Defendants' business and their role in the scheme.  Furthermore, because the Global Defendants failed to even attempt to controvert the general and RICO-based allegations in the FAC regarding their agency relationship with the Louisiana-based Burnett Defendants, the Court

---

[1] *See* Exhibits 1-7.
[2] Malvern Burnett, along with the defendant entities associated with him (Gulf Coast Immigration Law Center, LLC, and the Law Offices of Malvern C. Burnett, A.P.C. – *i.e.*, the "Legal Facilitator Defendants" in the FAC), are collectively referred to herein as the "Burnett Defendants."  *See* FAC, ¶¶ 44-48.  Defendants Sachin Dewan and Dewan Consultants, Pvt. Ltd., among the Recruiter Defendants, collectively will be referenced as the "Dewan Defendants."  *See* FAC, ¶¶ 36-38.  Defendants Indo-Amerisoft, LLC and its chairman and director Kurella Rao, the Labor Broker Defendants, collectively will be referenced as the "IAS/Rao Defendants."  *See* FAC, ¶¶ 50-51.

must accept all such allegations as true. Accordingly, the *uncontroverted* allegations in the FAC, along with substantial other evidence, show that, with respect to the very scheme and enterprise at issue, the Burnett Defendants, who reside and conduct substantial business in New Orleans, Louisiana, acted as the Global Defendants' agents. Thus, this Court has personal jurisdiction over the Global Defendants even under a traditional "contacts with forum" analysis.[3]

As explained above, the hub for the H-2B/immigration process was New Orleans – the location of the Global Defendants' agents, the Burnett Defendants. Thus, venue in the Eastern District of Louisiana is unquestionably proper.

Finally, the Global Defendants baselessly assert that Plaintiffs failed to allege the circumstances of their fraud claim with particularity. In actuality, the FAC and its attachments include specific allegations regarding the details of the Global Defendants' fraud on Plaintiffs, including that they recruited Plaintiffs from India and the United Arab Emirates by repeatedly misrepresenting to Plaintiffs that, if Plaintiffs agreed to pay thousands of dollars in fees to them for the privilege of working in the United States, Plaintiffs and their families would become eligible to receive green cards, and, further, that the process of obtaining the green cards would take no longer than two years. In addition, according to the FAC, Plaintiffs relied on the Global Defendants' misrepresentations, paid them thousands of dollars in fees for employment and immigration-related services, and suffered significant economic losses as a result of such fraud. In light of these and other detailed allegations of the fraud, the Global Defendants' Motion to Dismiss the fraud claim for lack of particularity is legally deficient and should be denied.

---

[3] Because this Court has jurisdiction over the Global Defendants with respect to the federal claims, this Court has pendent personal jurisdiction over the Global Defendants regarding the state claims.

## STATEMENT OF FACTS

Plaintiff class members are over 500 Indian workers who bring this action against several defendants, including the Global Defendants.  FAC, ¶¶ 1-8.  The defendants were involved in a scheme and enterprise to exploit and defraud Plaintiffs and other class members by fraudulently recruiting them to work in the United States and effectuating a broad scheme of psychological coercion through threats of serious harm, physical restraint, and use of the legal process to control Plaintiffs and other class members.  *Id.*

A.    **The Global Defendants' Role**

1.    **The Global Defendants Were The "Go-Between":  Providing Signal International, LLC ("Signal") Legal Workers Through Their Agent In Louisiana By Carrying Out A Fraudulent Scheme Against Unsuspecting Plaintiffs**

The Global Defendants sought out the Burnett Defendants' advice regarding the possibility "of doing business in the State of Louisiana" – *i.e.,* securing foreign labor for use in Louisiana through the acquisition of H-2B visas/non-immigrant work permits.  [Exhs. 22 (Burnett Depo., 58:11-59:2), 23 (Pol Depo., 80:6-82:8, 83:19-85:12).]  The Burnett Defendants are located and do business in New Orleans, Louisiana.  [Exhs. 8-12, 22 (Burnett Depo., 146:20-148:13; exhibit 3 attached thereto), 23 (Pol Depo., 104:4-13; 127:12-128:22; exhibits 8 and 10 attached thereto).]

The Global Defendants had another significant contact relating to this action: they met with the IAS/Rao Defendants – also located in Louisiana – to discuss optioning workers from the IAS/Rao Defendants for Signal as H-2B guest workers as an alternative to the failed permanent residency plan that the IAS/Rao Defendants had commenced.  [Exh. 24 (Rao Depo., 31:11-32:24).]  The Global Defendants communicated with the IAS/Rao Defendants by telephone and email to secure the Signal deal.  [Exhs. 24 (Rao Depo., 39:18-40:13, 119:16-

120:14), 23 (Pol Depo., 67:20-69:25), 26 (Answer to Plaintiff's First Set of Interrogatories by

Kurella Rao and Indo America Soft, LLC Rao Discovery Responses ("R-ROG"), Answer to

Interrogatory 1).]  The Global Defendants even met the IAS/Rao Defendants in a Louisiana hotel

to discuss the Signal deal.  [Exh. 24 (Rao Depo., 32:15-24).]  Thus, the Global Defendants

acquired the opportunity to place Plaintiffs in employment positions with Signal.

        The Global Defendants brought in the Dewan Defendants.  [Exh. 22 (Burnett

Depo., 128:17-129:3).]  The relationship between the two went back to 1996 and involved prior,

unrelated foreign worker projects.  [Exh. 23 (Pol Depo., 38:13-39:7, 60:24-61:3, 152:9-153:5,

154:1-16).]  The Global Defendants also worked with the Dewan Defendants in the vetting of

Plaintiffs, including the testing that was performed of the prospective workers, both in the United

States and abroad.  [Exh. 22 (Burnett Depo., 106:2-23, 126:13-16).]

        Eventually, the Global Defendants became the "go-between" among Signal and

the workers, and utilized their counsel the Burnett Defendants – located in New Orleans,

Louisiana – to provide H-2B/immigration services so that the Global Defendants could carry out

their recruitment/placement business.  [Exh. 22 (Burnett Depo., 81:1-10, 123:7-124:25).]

Indeed, Mr. Pol testified that Mr. Burnett's role in the recruitment of Plaintiffs was critical for

his business.  [Exh. 23 (Pol Depo., 133:22-134:6, 134:20-135:4).]  The Global Defendants paid

the Burnett Defendants for legal services rendered in 2005 and 2006 in relation to the Signal

project.  [Exh. 23 (Pol Depo., 123:10-126:20).]  As the go-between, the Global Defendants also

shared counsel with Signal and, obstensibly, the workers, for provision of immigration-related

information and services.

In its Answer, Signal asserts that, in 2006, it contracted with the Global Defendants to provide skilled workers needed by Signal.[4]  Signal asserts that "Pol informed Signal that it could obtain the needed workers through his contacts and the use of the federal government's 'H-2B' foreign worker program, which would provide skilled workers for Signal on a *temporary basis*."  [*Id.*] (emphasis added).  Signal eventually learned that the Global Defendants had already established a "team with Pol and his company" consisting of the Burnett and Dewan Defendants.  [*Id.*]

Though the Global Defendants purportedly promised to provide Signal with *temporary* workers, they represented to Plaintiffs that they were being recruited for a *permanent* residency program.  [Exhs. 2, 4-6, 8-12.]  In 2006, Mr. Pol attended several meetings with Plaintiffs in India and the United Arab Emirates for the purpose of recruiting Plaintiffs to work in the United States.  [FAC, ¶ 137.]  In addition, the Global Defendants represented to Plaintiffs that Plaintiffs could apply for and receive permanent legal residency status in the United States within two years of filing an application for residency, and also that Plaintiffs could obtain an H-2B visa during the period in which their permanent legal residency application was pending.  [FAC, Ex. 1 at 17.]

In the "Global Resources Services Agreement," the Global Defendants guaranteed workers an employment opportunity and stated that the Global Defendants "will present worker with a contract to sign on behalf of a US company . . . in the United States of America under the permanent resident (green card) program."  [Exhs. 8-12.]  Further, in India, Mr. Pol stood with Mr. Burnett, providing instructions and making representations regarding Plaintiffs' immigration process.  [*Id.*]  He also accepted payments from Plaintiffs.  [*See* Exhs. 2, 6.]

---

[4] *See* Signal's Claims Against Co-Defendants (Cross Claims) and Third Party Defendant, Answer and Affirmative Defenses of Signal International, LLC to Plaintiffs' First Amended Complaint ("Signal Answer"), p. 2.

In April 2006, the Global Defendants executed the "Global Resources, Inc. and Signal International, Inc. Skilled Worker Recruitment Agreement."  In it, the Global Defendants represent that they will provide all immigration documents, provide an immigration attorney to consult with Signal and be fully responsible for securing the legal entry of foreign workers into the United States:

> Global will provide all immigration documents for the selected Foreign Workers and an immigration attorney to file all proper documents for the 'H2B' and/or 'permanent resident' process. . . . Global will provide to Signal, at no charge, an Immigration Attorney to assist, advise and process the Signal requirements for migrating the skilled Foreign Workers, including but not limited to the filing and processing of any certification applications with the appropriate State Workforce Agency and USCIS. . . .  Global will provide Signal with copies of any and all immigration or employment documentation filed by or on behalf of Signal or any Foreign Worker employed by Signal pursuant to this Agreement . . . . Global will be responsible for all costs related to the recruitment, transportation and entry of the 'H2B' and/or 'permanent resident' skilled Foreign Workers to the US.  [Exh. 23 (Pol Depo., 127:12-128:22; exhibit 10 attached thereto).]

In other words, the success of the Global Defendants recruitment/placement activities hinged on their ability to bring *legal* workers into the United States for Signal.  In turn, that ability hinged on the H-2B/immigration legal services provided by their agents, the Burnett Defendants.

In connection with their representations, the Global Defendants provided Signal access to the Burnett Defendants to consult on H-2B/immigration requirements.  [Signal Answer, pp. 2-3; Exh. 22 (Burnett Depo., 63:22-64:24, 80:3-14).]  They also assisted Signal in the management of the workers once they arrived in the United States.  [Exh. 22 (Burnett Depo., 106:2-18, 127:17-130:4).]  On the other end, the Global Defendants likewise provided the workers access to the Burnett Defendants for legal immigration-related questions.[5]  [Exhs. 6-7;

---

[5] The Global Defendants incorrectly assert in their Motion that "[a]t no time did any plaintiff meet with any defendant in Louisiana."  [Motion, p. 10.]  To the contrary, after arriving in the United States, at least some

Exh. 22 (Burnett Depo., 137:12-138:23; 146:20-148:13; exhibit 3 attached thereto), 23 (Pol

Depo., 96:3-98:9; 104:4-13; exhibits 6 and 8 attached thereto).]

The Global Defendants spoke with the Burnett Defendants often about the H-

2B/immigration scheme related to the Signal project, and sporadically met the Burnett

Defendants in New Orleans.  [Exhs. 22 (Burnett Depo., 60:12-63:4, 85:20-87:7); 27 (Answer to

Plaintiff's First Request for Production of Documents by Michael Pol and Global Resources Inc.,

October 1, 2008 "PG-RFP," Bates# GR016-023, GR067-76).]

### 2. The Global Defendants' Longstanding Relationship With Louisiana And The Burnett Defendants

Defendant Michael Pol conducted and operated a business in Louisiana named

International Marine and Industrial Services, Inc. ("IMI").  [Exh. 23 (Pol Depo., 12:20-13:2).]

IMI provided labor to businesses in Louisiana, primarily to the Avondale Shipyard.  [Exh. 23

(Pol Depo., 25:23-26:2, 29:4-22, 48:5-13, 48:24 -49:23).]  Most of the workers at the Avondale

Shipyard were from outside the U.S.  [Exh. 23 (Pol Depo., 30:22-31:16; 34:15-35:17).]  The

Global Defendants purchased a building next to Avondale Shipyard in Louisiana in 1998.  [Exh.

23 (Pol Depo., 14:9-16:11).]  It appears that Lousiana officials were forced to conduct a sale of

the property – located in the Parish of Jefferson in the Eastern District – in 2007 after Mr. Pol

failed to pay taxes on it.  [Exh. 23 (Pol Depo., 15:5-25:6; exhibits 2 and 3 attached thereto).]

Michael Pol, in both his individual capacity and as a representative of one of his

entities, has used the Burnett Defendants for legal advice since 1996.  [Exhs. 22 (Burnett Depo.,

42:19-22, 49:9-12, 53:1-54:9, 59:16-60:11), 23 (Pol Depo., 70:16-74:25, 137:15-138:21).]  In

---

Plaintiffs, concerned about whether they would be permitted to stay in the United States permanently as the Global, Burnett, IAS/Rao and Dewan Defendants had represented, traveled to New Orleans, Louisiana to meet with Mr. Burnett.  [*See* Exhs. 6-7.]  Mr. Burnett charged a $100 fee for each meeting regarding immigration status.  [*Id.*]

1996, Mr. Burnett represented Mr. Pol in an automobile insurance matter after a collision in Louisiana.  [Exh. 23 (Pol Depo., 135:6-136:18).]

Mr. Burnett was again retained by the Global Defendants to assist with the placement of workers at the North American Shipyard in Louisiana.  [Exh. 23 (Pol Depo., 75:1-76:18).]  In fact, from 1996 to 2003, IMI/Mr. Pol supplied approximately 100 workers to the North American Shipyard in Louisiana.  [Exh. 23 (Pol Depo., 43:1-10).]

The Global Defendants have approached at least two companies in Louisiana – the most recent being in February 2008 – in connection with their desire to provide labor services in recent years.  [Exh. 23 (Pol Depo., 146:20-147:9, 149:1-151:2).]

### 3.    New Orleans, Louisiana:  Hub For All Immigration Activities

To accomplish the goals of their enterprise – *i.e.,* placing the workers in employment in the U.S. – the Global Defendants necessarily had to secure H-2B and/or other immigration documents for the workers.  All immigration-related activity was to be done through the hub of New Orleans, Louisiana, by the Burnett Defendants.  [Exhs. 13-17, 22 (Burnett Depo., 146:20-148:13; exhibit 3 attached thereto), 23 (Pol Depo., 104:4-13; 127:12-128:22; exhibits 8 and 10 attached thereto).]  In fact, all communications with the U.S. Department of Labor regarding Plaintiffs' H-2B/immigration documents were exchanged through New Orleans, Louisiana.  [Exhs. 13, 22 (Burnett Depo., 135:12-25, 136:1-25, 137:1-3; exhibit 1 attached thereto).]  Notably, the IAS/Rao Defendants also received emails from the Department of Labor in their New Orleans location and forwarded the emails to the Global Defendants.  [Exh. 24 (Rao Depo., 74:12-25, 75:1-25, 76:1-5; exhibit 8 attached thereto).]  On receipts to workers, the IAS/Rao Defendants wrote:  "Advance fees for the process of Permanent Residence Visa for New Orleans."  [Exh. 25 (Answer to Plaintiff's First Request for Production by Kurella Rao

("RFP"), exhibit 2 attached thereto).]  In addition, Mr. Burnett sent a letter, on his New Orleans

letterhead, to the workers providing an update on their green card applications.  [Exhs. 18-21.]

**B.      First Amended Complaint Allegations Against The Global Defendants**

Plaintiffs' FAC asserts claims against the Global Defendants under:  the

Trafficking Victims Protection Act of 2000 (18 U.S.C. §§ 1589 and 1590); the Racketeer

Influence and Corrupt Organizations Act ("RICO"; 18 U.S.C. § 1962(c) & (d)); the Ku Klux

Klan Act of 1871 (42 U.S.C. § 1985 and the Thirteenth Amendment); and common law claims

for fraud and negligent misrepresentation and breach of contract.  This Court has federal

question and supplemental jurisdiction over this action.  FAC, ¶¶ 10-11.

## ARGUMENT

**A.      Plaintiffs Need Only Establish A *Prima Facie* Case That Personal Jurisdiction Exists And All Uncontroverted Allegations In The Complaint Must Be Accepted As True.**

In response to a Federal Rule of Civil Procedure ("FRCP") 12 (b)(2) motion to

dismiss for lack of personal jurisdiction, plaintiff has the burden of establishing jurisdiction.

*Central Freight Lines Inc. v. APA Transportation Corporation*, 322 F.3d 376, 380 (5th Cir.

2003).  If the district court does not hold a full evidentiary hearing, the plaintiff need only meet

the low threshold of establishing a *prima facie* case that personal jurisdiction exists.  *See*

*Stripling v. Jordan Products Company*, 234 F.3d 863, 869 and n.8 (5th Cir. 2000); *Walk Haydel*

*& Associates, Inc. v. Coastal Power Production Co.,* 517 F.3d 235, 241 (5th Cir. 2008).

While a court may consider affidavits, interrogatories, depositions and other

discovery materials, it "*must accept as true the uncontroverted allegations in the complaint* and

resolve factual conflicts in favor of the plaintiff."  *Stripling*, 234 F.3d at 869 (emphasis added);

*Job v. APR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir. 1996).

Here, the Global Defendants have not attempted to controvert any allegations in the FAC relating to their agency relationships with the Louisiana-based Burnett Defendants. The Global Defendants do not dispute the allegation that "*[i]ndividually and through their agents, associates, attorneys, and/or employees, all Defendants have significant contacts with New Orleans, Louisiana.*" *Id*. at ¶ 55 (emphasis added). Nor do they controvert the fact that the defendants – including the Dewan Defendants, Burnett Defendants, IAS/Rao Defendants and Signal – constitute associations-in-fact, and thus RICO enterprises, with the meaning of 18 U.S.C. § 1964(4). FAC, ¶¶ 276-278. It is uncontroverted that these Defendants "conducted or participated in and/or conspired to conduct" the enterprise's common goal through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d), related by their common goal of furthering the specific racketeering activity of the enterprise. FAC, ¶¶ 279-294. Accordingly, these allegations from the FAC must be taken as true for purposes of the Global Defendants' Motion.

**B.**     **Personal Jurisdiction Exists Over The Global Defendants Based On Plaintiffs' RICO Claims.**

Here, Plaintiffs have alleged RICO claims against the Defendants, including the Global Defendants. FAC, ¶¶ 271-318. RICO, codified at 18 U.S.C. § 1965 *et seq.,* provides for nationwide service of process over RICO defendants.

Congress has authorized nationwide service of process on defendants as to claims arising under certain federal statutes, including RICO. When these federal statutes apply, so long as a properly served defendant has "minimum contacts" with the United States as a whole, that defendant may be subjected to personal jurisdiction in any federal district. *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1257 (5th Cir. 1994); *Bourassa v. Desrochers,* 938 F.2d 1056, 1058 (9th Cir. 1991). Thus, a defendant's "contacts" with the forum

state are not required.  *See Busch,* 11 F.3d at 1257; *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985).

Generally, for a district court to validly exercise personal jurisdiction over a non-resident defendant in this situation: (1) the federal statute must authorize service of process over the non-resident defendant; and (2) the service of process must comport with the Due Process Clause.  *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997).

Some courts hold that one defendant must be subject to personal jurisdiction where the action is pending, relying on 18 U.S.C. § 1965(b)'s language authorizing nationwide service on "other" parties where the "ends of justice" require their joinder.  *See Caldwell v. Palmetto State Sav. Bank of South Carolina*, 811 F.2d 916, 918 (5th Cir. 1987); *PT United Can Co., Ltd. v. Crown Cork & Seal, Co., Inc.*, 138 F.3d 65, 71 (2nd Cir. 1998).  Other courts hold that under 18 U.S.C. § 1965(d), which authorizes service of "other process in any judicial district in which the defendant is found," nationwide service of process is authorized on all defendants.  *See, e.g., Republic of Panama v. BCCI Holdings (Luxemburg) S.A.,* 119 F.3d 935, 942 (11th Cir. 1997).[6]

---

[6] 18 U.S.C. § 1965 provides:

(a)  Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such a person resides, is found, has an agent, or transacts his affairs.

(b)  In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

(c)  In any civil or criminal action or proceeding instituted by the United States under this chapter in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other judicial district, except that in any civil action or proceeding no such subpoena shall be issued for service upon any individual who resides in another district at a place more than one hundred miles from the place at which such court is held without the approval given by a judge of such court upon a showing of good cause.

(d)  All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

Regardless of the split in authority, this Court has personal jurisdiction over the Global Defendants based on Plaintiffs' RICO claims because other Defendants – *i.e.,* the Burnett and the IAS/Rao Defendants – are unquestionably subject to this Court's jurisdiction (and, notably, did not challenge it). The Burnett and the IAS/Rao Defendants are based in New Orleans, Louisiana.

Nor is there any legitimate argument over the fact that the Global Defendants have minimum contacts with the United States as a whole. *See Busch*, 11 F.3d at 1257 (the relevant inquiry is whether the defendants have sufficient minimum contacts with the United States). They are located in and conduct substantial business in Mississippi. [Pol Affidavit; Exh. 23 (Pol Depo., 5:4-5, 141:1-20).]

Finally, even assuming that § 1965(b) applies, nationwide service of process is permitted on "other" parties when "the ends of justice so require." *See Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231-32 (10th Cir. 2006) (a narrow construction of Section 1965(b) does not conform with the congressional directive to "liberally construe" the statute "to effectuate its remedial purposes."). Where there is *no* district in which personal jurisdiction can be established over *all* defendants, the "ends of justice" support jurisdiction. *Butcher's Union Local No 498 v. SDC Investment, Inc.,* 788 F.2d 535, 538-39 (9th Cir. 1986).

Here, as explained below in Section E regarding traditional notions of fair play and substantial justice, the "ends of justice" are clearly met by this Court's exercise of personal jurisdiction over the Global Defendants based on the federal statutory scheme. *See Busch,* 11 F.3d at 1158 ("Given that the relevant sovereign is the United States, it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing within the United States.").

**C.**     **This Court Has Personal Jurisdiction Over The Global Defendants.**

Even without RICO, this Court still has jurisdiction over the Global Defendants. When jurisdiction allegations are based on a federal question, such as here, FRCP 4(e) permits the district court to exercise personal jurisdiction over any defendant who is subject to the jurisdiction of the courts of the state in which it sits.  *Point Landing Inv. v. Omni Capital Int'l Ltd.,* 795 F.2d 415, 419 (5th Cir. 1986) (*en banc*).

Louisiana's long-arm statute provides that jurisdiction is proper to the fullest extent allowed by the United States Constitution.  LA R.S. 13:3201.  Thus, a court need only determine whether subjecting a non-resident defendant to a suit in Louisiana would "offend the *Due Process Clause of the 14th Amendment*."  *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999); *Pedelahore v. Astropark, Inc.,* 745 F.2d 346, 347-48 (5th Cir. 1984).

To satisfy due process concerns, a defendant must be given "fair warning" that a particular type of activity might subject him to the jurisdiction of a foreign forum.  *Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).  In the Fifth Circuit, this warning is satisfied, and personal jurisdiction is proper, when:  (i) the defendant has "minimum contacts" with the forum state, and (ii) the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Walk-Haydel & Associates,* 517 F.3d at 535; *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Burger King*, 471 U.S. 462, 473 (1985) (explaining that personal jurisdiction exists over parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state."); *Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374, 380 (5th Cir. 2002) ("As a voluntary member of the economic chain [whose activities gave rise to the claim], [defendant] purposely has availed itself of the privilege of conducting business in [the forum].").

14

"Minimum contacts" arise with either "general" or "specific" jurisdiction over the individual. *Bullion v. Gillespie,* 895 F.2d 213, 216 (5th Cir. 1993). Specific jurisdiction exists when the controversy is related to the defendant's contacts with the forum state. *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 411, fn. 8 (1984). "General jurisdiction is invoked where the nonresident defendant maintains 'continuous and systematic' contacts with the forum state." *Bullion,* 895 F.2d at 216 (internal citation omitted); *Burger King*, 471 U.S. at 472 (due process is satisfied if the non-resident defendant's purposeful contacts with the forum state are related to the causes of action).

1. **This Court Has Specific Jurisdiction Over The Global Defendants Because The Global Defendants Conducted Their Business Through Their Agent In Louisiana.**

   a. **The Global Defendants Purposefully Directed Their Activities Into Louisiana While Engaged In A Commercial, Profit-Oriented Enterprise.**

Specific jurisdiction exists when a non-resident defendant purposefully directs its activities at the forum state and the litigation results from alleged injuries related to those activities. *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.,* 517 F.3d 235, 243 (5th Cir. 2008) (holding that "the litigation relates to activities and omissions directed at Louisiana sufficient to confer specific jurisdiction"); *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 212 (5th Cir. 1999) (*prima facie* case for specific jurisdiction established where contacts included letters, faxes, and phone calls to forum because tortious nature of the directed activity constitutes purposeful availment); *Rossi v. Wohl*, 246 Fed.Appx. 856, 859 (5th Cir. 2007) (holding that plaintiff established *prima facie* case that non-resident defendants had minimum contacts with forum state because they purposefully directed their activities at forum state and litigation resulted from alleged injuries relating to those activities); *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (finding sufficient contacts to satisfy specific jurisdiction where

defendant participated in a telephone call with, and sent documents containing fraudulent misrepresentation to, the plaintiff in the forum state).

Even a single contact with the forum state can support specific jurisdiction and the non-resident defendant himself need not have set foot in the forum state's soil, so long as cause of action is related to such contact with the forum state. *Bullion*, 895 F.2d at 216; *Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 786 (5th Cir.1990) ("Even a single, substantial act directed toward the forum can support specific jurisdiction.").

Notably, "[c]ourts generally exercise specific jurisdiction over nonresident defendants that are engaged in commercial, profit-oriented enterprise." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 485 (5th Cir. 2008); *Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.,* 993 F.2d 1201, 1206 (5th Cir. 1993) (specific jurisdiction established where non-resident defendant engaged in 3-year buyer-seller relationship with corporation located in forum state and also engaged with another corporation located in forum state because the "parties had an ongoing business relationship, and [defendant's] contacts with the forum state were not fortuitous.").

Here, the Global Defendants purposefully directed their activities at Louisiana by using Louisiana as the hub for all H-2B/immigration activities. Moreover, this litigation relates to injuries Plaintiffs sustained as a result of many representations Defendants (including the Global Defendants) made regarding Plaintiffs' H-2B/immigration opportunities. Whereas a single contact with the forum state may suffice for specific jurisdiction, the Global Defendants embarked on a long course of H-2B/immigration activities, all based out of Louisiana. *See Bullion*, 895 F.2d at 216. Significantly, the Global Defendants have had longstanding relationships with at least some of the other Defendants (*i.e.,* the Burnett and Dewan Defendants) and were engaged in a "commercial, profit-oriented enterprise" relating to Plaintiffs, just as they

were in connection with other foreign worker programs.  As *Stroman Realty* explained, courts are more amenable to exercising specific jurisdiction in such cases.  At the very least, the Global Defendants' voluntary membership in the "economic chain" whose activities give rise to the claims indicates that they have availed themselves of the privilege of conducting business in Louisiana.  *See Nuovo Pignone*, 310 F.3d at 380.  In light of these many activities directed towards Louisiana, the Global Defendants' assertion that they are not subject to personal jurisdiction in Louisiana is, at best, disingenuous.

> **b.    The Global Defendants Are Subject To Specific Jurisdiction Because They Carried Out Their Business Through Their Agents, The Burnett Defendants.**

As the Fifth Circuit recognizes, specific jurisdiction may be established through the acts of an agent which binds a principal on jurisdictional issues, just as on other issues.  *See, e.g.*, *Product Promotions v. Cousteau*, 495 F.2d 483, 492 (5th Cir. 1974) (*overruled on other grounds Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03(1982)).  Courts have routinely held that non-resident defendants are subject to personal jurisdiction in the forum state through the conduct of their agents acting with either actual or apparent authority.  *See, e.g., Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) (personal jurisdiction may exist over non-resident defendant through acts of its agent); *Thompson v. Great Midwest Fur Co.*, 395 So. 2d 840, 843 (La. App. 1st Cir. 1981) (personal jurisdiction proper where apparent agent negotiated business for defendant in forum state); *Salley v. Colonial Marine Industries, Inc.*, 680 So. 2d 1242, 1249-50 (La. App. 4th Cir. 1996) (apparent agent's retention of lawyer on defendant's behalf subjected defendant to personal jurisdiction in forum state); *see also Stripling v. Guardian Energy Exploration Corp.*, 234 F.3d 863, 870 (5th Cir. 2000) (agent's execution of contract on defendant's behalf sufficient to establish personal jurisdiction over defendant); *Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978) (defendant

17

subject to personal jurisdiction based on agency relationship where "jurisdiction is sought over the parent corporation through its subsidiary's local activities"); *Moreno v. Poverty Point Produce, Inc.*, 243 F.R.D. 265, 271 (S.D. Tex. 2007) (personal jurisdiction over non-resident defendant proper where defendant's agent recruited migrant workers on defendant's behalf and at defendant's direction); *Villalobos v. North Carolina Growers Ass'n*, 42 F. Supp. 2d 131, 139-41 (D.P.R. 1999) (personal jurisdiction established where defendants' agents conducted telephone interviews with plaintiffs); *Capital Fin & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 80 (Tex. App. 2008) (personal jurisdiction may be supported by proof of agency relationship between non-resident defendant and resident of forum); *Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 733 (Tex. App. 2008) ("[i]n conducting a jurisdictional inquiry, an agent's contacts may be imputed to a principal to establish the requisite minimum contacts"); *Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 412-13 (Tex. App. 2008) (agent's contacts may be sufficient to confer personal jurisdiction upon non-resident defendant who has "right to dictate the means and details of the process by which an agent will accomplish the task").

"An agent is one who acts for and in the place of another by authority from the latter." *Anderson Window & Patio Co., Inc. v. Dumas*, 560 So. 2d 971, 975 (La. App. 4th Cir. 1990); *see also*, *Novamerican Steel, Inc. v. Delta Brands, Inc.*, 231 S.W.3d 499, 511 (Tex. App. 2007) (holding that an "agent is one who is authorized by a person or entity to transact business or manage some affair for the person or entity"); *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 549 (Tex. App. 2003); *Olympia Capital Assocs. v. Jackson*, 247 S.W.3d 399, 413 (Tex. App. 2008).  Agency may be express or apparent.  *Cooper Industries v. Tarmac Roofing System*, 276 F.3d 704, 709 (5th Cir. 2002); *Walker Ins. Servs.* 108 S.W.3d at 549

(holding that agency relationship does not depend on only the express appointment by the principal, but may be implied by the conduct of the parties).  Apparent authority is established when the principal acts or conducts in a way as to "give an innocent third party a reasonable belief that the agent had the authority to act for the principal and the third party reasonably relies on the manifested authority of the agent."  *Venable v. United States Fire Insurance Co.*, 829 So. 2d 1179, 1182-83 (La. App. 3d Cir. 2002).  Thus, an agent is "empowered to bind his principal in a transaction with a third person when the principal has made a manifestation to the third person, or to the community of which the third person is a member, that the agent is authorized to engage in the particular transaction, although the principal has not actually delegated this authority to the agent."  *Id.* at 1183.  In other words, apparent authority is established by the words and conducts of the parties, and it may be created even when there is no intention to do so.  *Id.*; *see also* Restatement (2d) of Agency, § 14N Comment A ("Most of the persons known as agents . . . are independent contractors as the term is used in the Restatement of this subject, since they are contractors but, although employed to perform services, are not subject to the control or right of control of the principal with respect to their physical conduct in the performance of the services.").

Notably, even if the Global Defendants had contended (which they did not) that the Louisiana-based Burnett Defendants were not their agents, the acts of these Louisiana defendants are nevertheless still imputed to the Global Defendants because they were ratified after the fact.  *See Wessels, Arnold & Henderson v. National Med. Waste, Inc.*, 65 F.3d 1427, 1433 (8th Cir. 1995).

As explained above, the Global Defendants did not controvert the general and RICO-related agency allegations in the FAC.  As such, those allegations are deemed true for

purposes of this Motion and, in turn, handily defeat the Global Defendants' assertion that this Court may not exercise personal jurisdiction over them: because they employed an agent in Louisiana to carry out the common scheme of the enterprise, personal jurisdiction is established as a matter of law.

Even otherwise, the relationship between the Louisiana-based Burnett Defendants and the Global Defendants clearly shows that the Global Defendants were using agents to carry out their business. The Global Defendants contracted with Signal to retain an "immigration attorney to file all proper documents for the 'H2B' and/or 'permanent resident' process" for the workers. They did so – by retaining the Burnett Defendants. In turn, the Burnett Defendants, at the Global Defendants' direction, processed the H-2B/immigration applications, thereby enabling the Global Defendants to place the workers in employment in the United States with Signal. Without such an agent, the Global Defendants would not have been able to carry out the goal of their business – foreign worker placement with Signal.

Moreover, the Global Defendants were aware that the entire H-2B/immigration process was taking place in New Orleans, Louisiana, through their agents. The Burnett Defendants, along with the IAS/Rao Defendants (both Louisiana residents), were the "point people" on the workers' H-2B/immigration documents. The Global Defendants kept in close touch – in person, by telephone, by email and by fax – with the Burnett Defendants in connection with the H-2B/immigration status. The Global Defendants even went to India to make direct representations to the workers and discuss the immigration process. The Global Defendants' use of Louisiana-based agents to carry out functions critical to their business is sufficient for personal jurisdiction purposes here. *Dickson Marine*, 179 F.3d at 338; *Stripling*, 234 F.3d at 870 *Moreno*, 243 F.R.D. at 271.

20

      2.      **This Court Has General Jurisdiction Over The Global Defendants.**

As mentioned, a non-resident defendant's "minimum contacts" with a forum state may be satisfied when a court has "general jurisdiction" over that non-resident defendant.  *See Bullion,* 895 F.2d at 216.  "General jurisdiction is invoked where the nonresident defendant maintains 'continuous and systematic' contacts with the forum state."  *Id.* at 216 (internal citation omitted).  When general jurisdiction exists over a nonresident defendant, personal jurisdiction over that defendant exists as to any cause of action, even if it is unrelated to the defendants' activities in the forum state.  *Perkins v. Benguet Consolidated Mining, Co.*, 342 U.S. 437, 445 (1952).

Here, the Global Defendants have had significant contacts with Louisiana – and with the Burnett Defendants who have repeatedly served as the Global Defendants' agent for over a decade.  Mr. Pol has operated a business in Louisiana, owned property in Louisiana (which Louisiana officials had to eventually sell), provided labor to businesses in Louisiana and supplied approximately 100 foreign workers to a shipyard in Louisiana over the course of a seven or eight year period (1996-2003).  Indeed, the Global Defendants continue to market their services into Louisiana, even as recently as February 2008.  Accordingly, this Court has general jurisdiction over the Global Defendants.

**D.**      <u>**This Court Has Pendent Jurisdiction Over The State Claims Asserted Against The Global Defendants.**</u>

This Court should exercise pendent personal jurisdiction over the state law claims in this action for two reasons.  First, this Court has applied the pendent personal jurisdiction doctrine where all such claims arise from a "common nucleus of operative fact."  *United States v. Grewell*, 1997 U.S. Dist. LEXIS 8957, *15 (applying pendent personal jurisdiction doctrine to state and federal claims of equity skimming and fraudulent transfer, noting "fraudulent transfer

claims form a substantial part of the equity skimming enterprise," adding that "it is apparent that they arise out of the same common nucleus of operative fact as the equity skimming claims"); *see also Rolls-Royce Corp. v. Heros, Inc.*, 2008 U.S. Dist. LEXIS 23476, *48 (N.D. Tex. 2008) (applying pendent personal jurisdiction to state law claims because "misappropriating a trade secret involves essentially the same conduct as the predicate act on which Rolls-Royce bases its RICO claims"); *Team Healthcare/Diagnostic Corp. v. Aetna Life Ins. Co.*, 2008 U.S. Dist. LEXIS 13428, *19-20 (N.D. Tex. 2008) (applying pendent personal jurisdiction doctrine because claims arising under ERISA, Texas Insurance Code, and common law breach of contract all arose out of denials of plaintiff's claims for medical services payment); *Newby v. Enron Corp. (In re Enron Corp. Secs)*, 465 F.Supp. 2d 687, 706, n.30 (S.D. Tex. 2006) (applying pendent personal jurisdiction doctrine where fraud claims arising under Securities Act of 1934 and state law fraud claims arose out of common nucleus of operative fact).

A claim arises out of a common nucleus of operative fact where "the facts giving rise to the claims are of the character that Plaintiff would ordinarily be expected to try them all in one judicial proceeding." *Team Healthcare/Diagnostic Corp.,* 2008 U.S. Dist. LEXIS 13428 at *19 (citations omitted). Furthermore, the claims should "substantially overlap" and "implicate the gravamen" of the federal claims and thus be "factually related to them." *Rolls-Royce Corp.,* 2008 U.S. Dist. LEXIS 23476, *49. Here, the common law breach of contract, fraud and misrepresentation claims regarding representations to Plaintiffs regarding green cards and H-2B visa status arise out of the common nucleus of operative fact that implicates the federal claims, particularly RICO and the Trafficking Victims Protection Act. FAC, ¶¶ 66, 352-55. Those federal statutes prohibit the very representations and coercion that are essential to the common law claims. Moreover, this Court should exercise pendent personal jurisdiction over the state

law claims in this action because of the need for judicial economy.  The Fifth Circuit has examined factors such as "judicial economy, convenience, and fairness to the litigants" when applying the doctrine.  *Team Healthcare/Diagnostic Corp.,* 2008 U.S. Dist. LEXIS 13428 at *19. Furthermore, so long as trying the state law claims impose "only a minimal burden to require the defendant to provide a defense on the factually-related state claim," they can be brought in under pendent personal jurisdiction.  *Id.*  In *Team Healthcare,* the court concluded that trying the federal and state law claims in a single lawsuit "promotes judicial efficiency, is convenient for the parties, and avoids piecemeal litigation."  Similarly here, trying the federal and state law claims together promotes judicial efficiency, is convenient for the parties and avoids piecemeal litigation based on the same facts.

**E.    The Exercise Of Personal Jurisdiction Over The Global Defendants Does Not Offend Traditional Notions Of Fair Play And Substantial Justice.**

The exercise of personal jurisdiction over a particular defendant must not "offend traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The factors for consideration are: the burden on the defendants; the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the more efficient resolution of controversies; and shared interest of the several states in furthering fundamental substantive social policy.  *Burger King*, 471 U.S. at 476-77.  Where appropriate, these considerations may be used to establish jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.  *Id.*

Here, some Plaintiffs were sent to work in Texas; others were sent to Mississippi. The common thread among all Plaintiffs is that their H-2B/immigration processing was through

the hub of Louisiana.  Therefore, Louisiana is the only forum where the most meaningful events and the core of the Global Defendants' scheme, common to all Plaintiffs, took place.

Here, the burden to the Global Defendants in litigating in Louisiana will not be significant.  In fact, they often visit New Orleans.  Moreover, they have marketed their services in Louisiana; they would not have done so if Louisiana were an inconvenient forum.

Furthermore, both Louisiana and the federal court system have a significant interest in adjudicating this dispute.  It may be interesting for the State of Louisiana to know that an immigration attorney, admitted to the Bar of the State of Louisiana, may have made fraudulent misrepresentations to foreign workers regarding immigration law.  Furthermore, the federal court system has an interest in adjudicated matters based on federal law, particularly those involving human trafficking and modern day slavery issues.  Notably, the Global Defendants' very business is to place foreign workers in the United States, including Louisiana, Mississippi and Texas.  If the Global Defendants' conduct is unlawful, they must be stopped through the injunctive relief Plaintiffs request before they victimize additional unsuspecting workers.  Significantly, this forum may be the only forum in which all Plaintiffs can have their claims heard at the same time.  If fractured, Plaintiffs may not be willing to proceed with this action.  [*See* Plaintiffs' Motion for Class Certification.]  Even if they were willing to proceed in multiple forums, the interests of the interstate judicial system would be compromised because multiple forums would be forced to consider the same issues based upon the same facts.  The exercise of personal jurisdiction here would not offend traditional notions of fair play and substantial justice; to the contrary, it would advance such notions.

**F.      This Court Is The Proper Venue For This Lawsuit.**

  **1.      Venue Is Proper Pursuant To RICO'S Special Venue Statute.**

   The Global Defendants' venue argument is without merit because they ignore RICO's special venue statute.  In particular, under 18 U.S.C. § 1965(a), a RICO action "may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."  *See, e.g., Eastman v. Initial Investments, Inc.,* 827 F.Supp. 336, 338 (E.D. Penn. 1993); *Cobra Partners L.P. v. Liegl*, 990 F.Supp. 332, 335 (S.D.N.Y. 1998) (RICO venue statute applies if defendant corporation is present, by its officers or agents carrying on its business, within district).[7]

   Here, Plaintiffs assert a RICO claim against Defendants, including the Global Defendants.  FAC, ¶¶ 271-318.  There is no dispute that, at a minimum, the Burnett and IAS/Rao Defendants all reside, are found, have agents, and transact affairs, in the Eastern District of Louisiana.  Indeed, in their RICO enterprises, these Louisiana-based Defendants acted as the agents for the remaining Defendants, including the Global Defendants.  *See* Sections B & C, *supra*.

   Finally, because venue is proper on Plaintiffs' RICO claim, "pendent venue" is proper on all other claims because they are closely related (indeed, intertwined) with Plaintiffs' RICO claim.  *See Pacer Global Logistics, Inc. v. National Passenger R.R. Corp.*, 272 F. Supp. 2d 784, 791 (E.D. Wis. 2003); *Beattie v. United States,* 765 F.2d 91, 100 (D.C. Cir. 1984) (when claims arise out of "common nucleus of operative facts, proper venue as to a federal claim can support venue as to other claims").

---

[7] The venue provisions found in § 1965(a) are not exclusive. Thus, the general venue statute discussed below (28 U.S.C. § 1391), including that actions may be venued where a substantial part of the events or omissions giving rise to the claim occurred, can also support venue in this District. *See Sunray Enterprises, Inc. v. David C. Bouza & Assoc., Inc.,* 606 F.Supp. 116, 119 (S.D. NY 1984).

For this reason alone, Defendants' venue attack fails.

**2.      Even Under General Venue Rules, The Eastern District Of Louisiana Is The Appropriate Venue.**

Under 28 U.S.C. § 1391(b), venue is generally proper:  (i) in the district in which a "substantial part of the events or omissions" on which the claim is based occurred; or (ii) if there is no district in which the suit may otherwise be brought, in the district "in which any defendant may be found" – "residual" venue.  28 USC § 1391(b)(2) & (3).[8]

**a.      A Substantial Part Of The Events Giving Rise To This Action Occurred In The Eastern District Of Louisiana.**

Where multiple defendants reside in different states, such as here, venue may be upheld by a showing that a "substantial part of the events or omissions" on which the claim is based occurred in the locality where the action is filed.  *See Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).  Notably, for purposes of § 1391, the "events or omissions" may occur in several districts, such as where wire and mail fraud is committed by defendant in one judicial

---

[8] Contrary to the Global Defendants' contention, 28 USC § 1391(b), as amended in 1990, should be construed liberally.  Under the current venue statute, the statutory standard for venue focuses primarily on the location where events occurred and less on the convenience to the defendant of being sued in a particular district, or his place of residence at the time the action is commenced.  *See, e.g., Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992) (noting that factors in *Leroy*, including convenience of defendants and location of evidence and witnesses, are most useful in distinguishing between two or more plausible venues; however, because new statute does not require district court to determine best venue, these factors are less significant); *see also American Trade Partners LP v. Importing Enterprises, Ltd.,* 757 F.Supp. 545, 557 (E.D. Penn. 1991) (determining that where defendant does not reside in district, appropriate venue hinges upon whether or not a "substantial part of the events or omissions giving rise to the claim occurred" under § 1391(b)).  The Global Defendants' reliance on *Olberding v. Illinois Cent. RR. Co.,* 346 U.S. 338 (1953) [Motion, p. 8] is misguided.  There, the venue analysis was premised upon now defunct provisions of § 1391, namely the requirement of residency.  *See Globe Glass & Mirror Co v. James H.*, 888 F.Supp. 768, 770 (E.D. La 1995) (noting that statutory language was replaced in 1990 to include "a judicial district where a substantial part of the events or omissions giving rise to the claim arose.").  Moreover, unlike here, *Olberding* was a diversity action where venue was analyzed under the former § 1391(a), the statutory language of which bears no relation to the current applicable statute, §1391(b).  Similarly, the Global Defendants have presented the strict statutory interpretation mandate set forth in *Leroy v. Great Western*, 443 U.S. 173, 184 (1979) [Motion, p. 8], out of context.  *Leroy* explained that the interpretation of § 1391(b) bears a degree of latitude when an action (such as this one) is geographically fragmented in terms of the location of persons and the occurrence of the disputed events.  In those instances, "a plaintiff may choose between two (or conceivably even more) districts that with approximately equal plausibility – in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant – may be assigned as the locus of the claim."  *Leroy,* 443 U.S. at 185.

district that may damage plaintiffs in another district.  *See Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 867 (2d Cir. 1992).

        Section 1391(b)(2) does not mandate that the majority of the "events or omissions" occurs, or that the events predominate, in the Eastern District.  Rather, only a "substantial part" of the event should occur in this District.  *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003) ("we do not ask which district among two . . . potential forums is the 'best' venue."); *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998) ("The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too.  Indeed, district A should not be disqualified even if it is shown that the activities in district B were more substantial, or even the most substantial.").

        Finally, to determine the location of a "substantial part" of the "events or omissions," courts look "not to a single triggering event prompting the action, but to the entire sequence of events underlying the claim."  *Uffner v. La Reunion Francaise, S.A.,* 244 F.3d 38, 42 (1st Cir. 2001); *First of Mich. Corp.*, 141 F.3d at 263.

        The Global Defendants' argument that "none of [sic] events giving rise to Plaintiffs' claims occurred in Louisiana" (Motion, p. 9) ignores the foregoing law and the substantial events and omissions in the Eastern District of Louisiana that have given rise to Plaintiffs' claims.  The Burnett and the IAS/Rao Defendants reside in the Eastern District.  Mr. Burnett's office was the central hub for all communications and documentation relevant to Defendants' scheme and enterprise.  The Global Defendants' ability to acquire H-2B visas, and the subsequent placement of Plaintiffs with jobs, were substantially facilitated in and through the New Orleans offices of the Burnett Defendants.  Additionally, because this action involves

multiple parties and therefore lends itself to a degree of complexity from an evidentiary standpoint, the Eastern District is where a significant amount of documentary evidence and witnesses are located and is, thus, the appropriate forum to hear the dispute.

> **b.**   **The Eastern District Of Louisiana Is A Convenient Forum For The Defendants To Defend This Action.**

While the Global Defendants reside in Mississippi, they have a history of conducting business in, and personally visiting, the Eastern District of Louisiana.  Mr. Pol lives in nearby Mississippi and has visited the Eastern District on numerous occasions.  He has also previously owned property in the Eastern District.  Most importantly, in furtherance of the subject scheme, the Global Defendants directed Plaintiffs and Signal to the Burnett Defendants located in the Eastern District.  To argue now that it would be inconvenient for the Global Defendants to defend this lawsuit runs counter to the demonstrable ease and frequency with which the Global Defendants have availed themselves of the opportunity to conduct affairs in the Eastern District.

> **3.**   **Alternatively, "Residual Venue" Lies With This Court.**

The Global Defendants do not attempt to suggest that any other venue is proper for this lawsuit.  In federal question cases, where there is no federal district in which the action "may otherwise be brought," residual venue lies in any district in which "any defendant may be found."  28 USC § 1391(b)(3).

This action involves multiple sets of Defendants from different states (two of which are based in the Eastern District) and one which resides in India.  Despite the Global Defendants' incorrect contentions that all events took place in India, Mississippi, and Texas, if the action were brought in any of these locales, numerous of the other Defendants would undoubtedly attempt to dismiss or transfer the action based on similar venue arguments made

here by the Global Defendants.  This is precisely the situation where the residual venue provisions should apply.

## G.   JUSTICE WILL BE SUBVERTED IF THE COURT DISMISSES THIS CASE UNDER 28 U.S.C. § 1406.

The Global Defendants baldly assert that "there is no injustice" if the Court takes the discretionary and drastic action of dismissing this lawsuit pursuant to 28 U.S.C. § 1406(a). [Motion, p. 10.]  Nothing could be further from the truth.  Dismissal of this lawsuit at this stage could effectively insulate all Defendants, including the Global Defendants, from liability for reprehensible and illegal actions that violate numerous federal statutes.  In sum, the Global Defendants are not inconvenienced by defending this suit in the Eastern District and to dismiss the action on these grounds would subvert justice.

## H.   PLAINTIFFS' FRAUD CLAIMS ARE PLEAD WITH SUFFICIENT PARTICULARITY

The Global Defendants contend that Plaintiffs' fraud claim should be dismissed for Plaintiffs' failure to plead with the particularity required by FRCP 9(b).  Rule 9(b) requires that a party alleging fraud must state with particularity the circumstances constituting fraud, other than the conditions of a defendant's mind, which may be alleged generally.  Fed. R. Civ. P. 9(b).  Plaintiffs have easily met their burden and the Global Defendants' Motion should be denied.

As an initial matter, the Global Defendants attack the FAC for its purported reliance on "group pleading," which, according to the Global Defendants, occurs when a plaintiff "categorizes defendants into groups" and alleges wrongdoing by the group, "without specificity as to any particular defendant."  [Motion, p. 11.]  This argument is spurious.  First, the group pleading doctrine applies in the context of securities litigation, not traditional fraud cases, and, in any event, is not present here.  The Fifth Circuit explained that group pleading occurs when a

plaintiff uses unattributed corporate statements – such as statements made in publicly filed documents – to attribute wrongdoing to individual defendants based solely on the corporate positions held by such individuals.  *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363 (5th Cir. 2004).  Under this doctrine, when a defendant is a company insider, the plaintiff is excused from pleadings facts that demonstrate an individual defendant's actual participation in a misleading corporate communication.  *Id.*

The Global Defendants' attempt to apply the "group pleading" doctrine in this context is unavailing.  In describing their claims, Plaintiffs identified Defendants as recruiters, legal facilitators, and labor brokers for reasons of efficiency and convenience, not because they are unaware of the source of the unlawful misrepresentations.  On the contrary, Plaintiffs have clearly alleged that Defendants Michael Pol and Sachin Dewan and their related entities (defined in the FAC as the "recruiter defendants") misrepresented the working conditions Plaintiffs would be forced to endure and further misrepresented that Plaintiffs would have the opportunity to apply for legal permanent resident status in the United States.[9]

More importantly, Plaintiffs' detailed allegations regarding the circumstances of the Global Defendants' fraud easily satisfies Rule 9(b)'s requirement that fraud be alleged with particularity.  The Global Defendants fail to even raise an argument that Plaintiffs failed to allege one or more of the elements of fraud.  Instead, the Global Defendants contend generally that Plaintiffs failed to state a claim because Plaintiffs failed to allege the "who, what, when, where, and how" of the fraud.  In support of their contentions, however, the Global Defendants only offer one example of a single allegation that the Global Defendants argue is too vague to be

---

[9] In fact, as defined by Plaintiffs, the only "recruiter defendants" are Michael Pol and Sachin Dewan and their respective companies.  Thus, each of the allegations against the "recruiters" is directed at Messrs. Pol and Dewan.  In addition, Plaintiffs have averred that, during the relevant period, Mr. Dewan acted as Mr. Pol's agent for the business of recruiting Indian laborers.  Therefore, even if the allegations against the "recruiters" could be read to be directed solely against Mr. Dewan, such allegations would also implicate Mr. Pol as Mr. Dewan's principal.

actionable.  In so doing, Defendants ignore countless other specific allegations of fraud against the Global Defendants.

For example, the FAC contains the following detailed allegations of the circumstances of the Global Defendants' fraud against Plaintiffs:

## GROUP I PLAINTIFFS

- Pol engaged in the business of recruiting workers from India for employment in the United States (FAC, ¶ 34);

- Pol and Defendant Sachin Dewan maintained a joint venture enterprise to recruit Plaintiffs for the purpose of providing labor and services to Defendant Signal, a U.S. corporation (FAC, ¶ 40);

- Dewan, a citizen of India, shared offices with Pol in India and Dubai, and acted as Pol's foreign agent for Pol's international recruiting business (FAC, ¶¶ 39, 41);

- In 2003 and 2004, Pol and Dewan placed advertisements in various newspapers in India and the United Arab Emirates seeking international laborers on behalf of J&M (FAC, ¶ 77);

- In 2003 and 2004, Pol and Dewan placed advertisements in various newspapers in India and the United Arab Emirates promising that respondents such as Plaintiffs could obtain legal permanent residence in the United States (FAC, ¶ 80);

- Between late 2003 and mid-2004, Pol and Dewan represented to Group I Plaintiffs that J&M was a reputable American company offering lawful employment opportunities to Plaintiffs (FAC, ¶ 88);

- Between late 2003 and mid-2004, Pol, Burnett and Dewan represented to Group I Plaintiffs that J&M would obtain green cards on behalf of Plaintiffs and Plaintiffs' families (FAC, ¶ 88);

- During the same period, Pol, Burnett, and Dewan promised to act diligently in obtaining green cards on behalf of Group I Plaintiffs (FAC, ¶ 90);

- On or about April 15, 2004, Pol represented that Defendant J&M Associates was a good company in California and would provide good accommodations for workers in the U.S. and good food (FAC, Ex. 1 at 5);

- In reliance on Pol's, Burnett's and Dewan's promises, Group I Plaintiffs spent their life savings, borrowed vast sums at high interest rates, and/or sold or mortgaged their homes and real property in order to pay thousands of dollars in fees to Pol, among others (FAC, ¶¶ 95-96);

31

- Pol induced Group I Plaintiffs to enter contracts with Defendants and pay thousands of dollars in fees to Defendants without intending to pursue Plaintiffs' green card applications (FAC, ¶ 94);

- By spring 2006, Group I Plaintiffs still had not received their green cards as promised by Pol, and Defendants had yet to refund Plaintiffs' payments to Defendants as promised by Pol (FAC, ¶¶ 103-04);

- As a result of Pol's intentional acts, Group I Plaintiffs suffered significant damages, including exorbitant fees paid for green cards immigration-related services; interest on debts assumed by Plaintiffs to pay such fees, and losses of personal and real property incurrent in reliance on J&M's fraudulent acts (FAC, ¶ 317).

## GROUP II PLAINTIFFS

- In 2006, Michael Pol attended several meetings with Group II Plaintiffs in India and the U.A.E. for the purpose of recruiting Plaintiffs to work in the United States (FAC, ¶ 137);

- Pol represented to Group II Plaintiffs that Plaintiffs' American employer would provide good accommodations and good food to Plaintiffs working in the United States (FAC, Ex. 1 at 5);

- Pol represented to Plaintiffs that Group II Plaintiffs could apply for and receive permanent legal residency status in the United States within two years (FAC, Ex. 1 at 17);

- On or about May 16, 2006, at a presentation, Pol represented to Group II Plaintiffs that it would take two years to get a green card, but they could get an H-2B visa earlier while the green card process was pending (FAC, Ex. 1 at 17);

- Pol joined in a presentation to workers advising them about permanent residency issues (FAC, Ex. 1 at 17);

- At a November 2006 meeting in the labor camp located in Pascagoula, Mississippi, Pol represented to Group II Plaintiffs that Defendant Signal could apply for an extension of their visas under the H-2B program if Plaintiffs were good workers (Compl Ex. 1 at 45);

- At a November 2006 meeting in the labor camp located in Pascagoula, Mississippi, Pol represented to Group II Plaintiffs that Defendant Signal could sponsor Plaintiffs' applications for permanent legal residency status if Plaintiffs were good workers (Compl Ex. 1 at 45);

- Pol induced Group II Plaintiffs to pay exorbitant fees for green cards and immigration-related services without intending to pursue applications for green cards on behalf of Plaintiffs (FAC, ¶ 145); and

- As a result of Pol's intentional acts, Group II Plaintiffs suffered significant damages, including exorbitant fees paid for green cards immigration-related services; interest on debts assumed by Plaintiffs to pay such fees, and losses of personal and real property incurrent in reliance on J&M's fraudulent acts (FAC, ¶ 317).

Unfortunately, after draining their life savings and incurring untold debt in order to pay thousands of dollars in fees to the Global Defendants for employment and green card-related services, Plaintiffs realized that the above representations were false, that the Global Defendants had not exercised diligence in seeking legal permanent resident status on behalf of Plaintiffs, and further that Plaintiffs were never eligible for legal permanent resident status through the H-2B visa program.

In light of the above allegations, the Global Defendants' contention that the FAC fails to provide notice of Plaintiffs' fraud claims is unfounded.  Plaintiffs' allegations against the Global Defendants clearly lay out the "who, what, when, and where" of the alleged fraud.  As a result, Plaintiffs pleaded the particular circumstances of the Global Defendants' fraud, Plaintiffs should be entitled to take discovery to obtain evidence in further support of their claims, and the Global Defendants' motion to dismiss Plaintiffs' fraud claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Global

Defendants' Motion to Dismiss be denied.

Respectfully submitted,

Dated: October 7, 2008
        New Orleans, Louisiana

| | |
|---|---|
| /s/ Tracie L. Washington | s/ Daniel Werner |
| Tracie L. Washington, Esq. | Daniel Werner (*pro hac vice*) |
| Louisiana Bar No. 25925 | New York State Bar Registration No. 3969839 |
| Louisiana Justice Institute | Kristi L. Graunke, T.A. (*pro hac vice*) |
| 1631 Elysian Fields | Georgia Bar No. 305653 |
| New Orleans, Louisiana 70117 | Naomi Tsu (*pro hac vice*) |
| Telephone: (504) 872-9134 | California Bar No. 248599 |
| Facsimile: (504) 872-9878 | Mary C. Bauer (*pro hac vice*) |
| tracie@louisianajusticeinstitute.org | Virginia Bar No. 31388 |
| tlwesq@cox.net | Morris S. Dees (*pro hac vice*) |
| | Alabama Bar No. ASB-7003-E50M |
| | Immigrant Justice Project |
| | Southern Poverty Law Center |
| | 233 Peachtree Street, Suite 2150 |
| | Atlanta, GA 30303 |
| | Telephone: (404) 521-6700 |
| | Facsimile: (404) 221-5857 |
| | kgraunke@splcenter.org |
| | mbauer@splcenter.org |
| | daniel.werner@splcenter.org |
| | naomi.tsu@splcenter.org |
| | |
| | /s/ Tushar J. Sheth |
| | Tushar J. Sheth, T.A. (*pro hac vice*) |
| | New York State Bar Registration No. 4088902 |
| | Asian American Legal Defense and Education Fund |
| | 99 Hudson Street, 12th Floor |
| | New York, NY 10013 |
| | Telephone: (212) 966-5932 |
| | Facsimile: (212) 966-4303 |
| | tsheth@aaldef.org |

/s/ Jennifer J. Rosenbaum
Jennifer J. Rosenbaum (*pro hac vice*)
Tennessee B.P.R. No. 022557
New Orleans Workers' Center for Racial Justice
803 Baronne St.
New Orleans, LA 70113
Telephone: (615) 423-0152
jjrosenbaum@post.harvard.edu

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **October 7, 2008**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Erin Casey Hangartner
Dominic Joseph Gianna
Donald C. Douglas, Jr.
Alan Dean Weinberger
Paul John Mirabile
Middleberg, Riddle & Gianna
201 St. Charles Avenue, 31st Floor
New Orleans, LA 70170-3100

Patricia Anne F. Bollman
Patricia Ann F. Bollman, Attorney at Law
3414 Canal St., Suite B
New Orleans, LA 70119

Ralph R. Alexis III, Esq.
Porteous, Hainkel and Johnson, L.L.P.
704 Carondelet Street
New Orleans, LA 70130-3774

Kevin Kennedy Gipson
Law Office of Kevin K. Gipson
3920 General DeGaulle Dr.
New Orleans, LA 70114

Johanna Malbrough McMullan
Page, Mannino, Peresich & McDermott, PLLC
460 Briarwood Dr.
Suite 415
Jackson, MS 39206

Michael E. Whitehead
Page, Mannino, Peresich & McDermott
P. O. Box 289
Biloxi, MS 39533

Christy Harowski, Esq.
Stephen H. Kupperman
Barrasso Usdin Kupperman Freeman & Sarver
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112

Stephen H. Shapiro
Stephen H. Shapiro, Attorney at Law
200 Maine St.
Jefferson, LA 70121

John Christopher Person
Montgomery Barnett (New Orleans)
1100 Poydras St.
Suite 3200
New Orleans, LA 70163-3200


_____/s/ Daniel Werner_____
Counsel for Plaintiffs


LA217748.7