```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
```

KURIAN DAVID, ET AL.                         CIVIL ACTION

VERSUS                                       NO: 08-1220

SIGNAL INTERNATIONAL, LLC,                   SECTION: "A" (3)
ET AL.

## ORDER AND REASONS

Before the Court are the following motions: **Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to Plead Fraud With Particularity (Rec. Doc. 66)** filed by defendants Global Resources, Inc. and Michael Pol, **Motion to Dismiss (Rec. Doc. 70)** filed by defendant Malvern C. Burnett, Gulf Coast Immigration Law Center, LLC, and Law Offices of Malvern C. Burnett, APC, **Motion to Dismiss or Alternatively to Transfer (Rec. Doc. 98)** filed by defendant J & M Associates, Inc. of Mississippi, and **Motion to Dismiss for Lack of Jurisdiction (Rec. Doc. 146)** filed by defendants Dewan Consultants Pvt. Ltd. and Sachin Dewan. All motions are opposed. The motions, set for

hearing on November 12, 2008, are before the Court on the briefs without oral argument.[1]

## I. BACKGROUND

Plaintiffs are a putative class of over 500 Indian men who secured visas to work in the United States for defendant Signal International, LLC in the aftermath of Hurricane Katrina.  Signal is in the business of providing construction services to the Gulf Coast oil and gas industry.

Plaintiffs allege that beginning in late 2003 defendants Dewan Consultants, Sachin Dewan, Global Resources, Inc. and Michael Pol placed advertisements in various newspapers across India and the United Arab Emirates seeking welders, fitters, and other marine fabrication workers on behalf of various U.S.-based companies.  The advertisements promised that qualified candidates could obtain legal permanent residence (green cards) and thereby legally and permanently immigrate to the United

---

[1] Oral argument has been requested by several of the defendants but the Court is not persuaded that oral argument would be helpful in deciding the issues presented.
    The Court directs counsel's attention to Local Rule 7.8.1E which imposes page limits for memoranda supporting/opposing a motion (25) and for replies (10), which are not accepted without leave of Court.  In conjunction with the instant motions the Court was very lenient with the parties in exceeding the page limits and filing surreplies.  However, the parties should note that the Court generally does not accept surreplies unless a compelling reason is given and in the future the Court intends to strictly enforce the page limits provided by the Local Rules.

States with their families.  The plaintiffs contend that they payed exorbitant fees to the defendants for recruitment, immigration processing, and travel.  Plaintiffs contend that unbeknownst to them they were never eligible to obtain the promised green cards and that once arriving in the United States they were subject to serious abuses and forced labor at Signal's labor camps in Pascagoula, Mississippi and in Orange, Texas.

     Plaintiff Kurian David's declaration is representative of the factual assertions made by the other plaintiffs.  (Rec. Doc. 174-3).  David is a citizen of India.  According to David, he saw a newspaper ad by Dewan Consultants while he was employed in Abu Dhabi.  In May 2006, David attended a seminar led by defendant Sachin Dewan with the assistance of defendant Malvern Burnett. David claims that at the seminar Dewan told the attendees that for 600,000 rupees plus costs, he could get the workers an employment-based green card in the United States.  The attendees were told that the money would be paid in three installments and that the money would cover Dewan's fee as well as fees for Burnett and Michael Pol.  Burnett is an attorney at law specializing in immigration matters, and Pol owns Global Resources, Inc., a company in the business of assisting U.S. companies in finding skilled labor to work at their facilities. David claims that Burnett spoke at the seminar and explained to

the potential recruitees how the green card process would work.

David took and passed a pipe fitter skills test. After successfully completing the skills test, David attended two additional group meetings, the second of which was led by Dewan and Burnett. Burnett explained the green card process once again and he and Dewan handed out contracts from Global Resources, Malvern Burnett, and Dewan Consultants, and an employment agreement for Signal International. A representative from Dewan's office helped the group to successfully fill out the forms.

In June and August 2006 David made installment payments at Dewan's office including checks made payable to Burnett and Pol. In late August 2006 David attended a meeting in Dubai where Dewan and Burnett told the workers that their visas had been applied for and that before those visas would expire the green cards would be approved. At a subsequent meeting Dewan and Burnett gave workers instructions on how to answer questions from the U.S. consular officers during their visa interviews. Dewan and Burnett allegedly instructed the workers not to reveal how much money they had paid for the recruitment fees and not to mention the green cards.

The consulate officials took David's passport and at the behest of Dewan Consultants the passport was returned directly to

Dewan's office. According to David, Dewan refused to return his passport until he made the final installment payment to Dewan and paid for medical testing to be performed by a physician chosen by Dewan.

In February 2007 David made the final payment with checks made payable to Dewan, Burnett, and Pol. David claims that he was then rushed to sign forms written in English that he could not understand and it was only upon signing these forms and making the final installment payment that Dewan finally returned his passport. During this process David saw other workers attempt to back out and have their money returned but that someone from Dewan Consultants had threatened to destroy their passports in retaliation. David contends that he and his wife sold many of their personal belongings to raise the money necessary to pay Dewan, Burnett, and Pol.

On February 15, 2007, David arrived at Signal's labor camp in Orange, Texas where he signed a number of additional employment forms. David claims that he later learned that the forms permitted Signal to take deductions from his salary for food and accommodations and that Signal required the workers to open an account with a specific bank where their paychecks would be deposited. David charges that the living conditions and food at Signal were horrible and that the Indian workers were told

that even if they left they would be charged the daily rate for room and board.

David claims that the Indian workers were searched by guards when they would come and go from the camp and that guards would sometimes come into the living quarters at night to search the workers' belongings.  According to David, the workers began to get sick because of the overcrowded conditions and Signal required the workers to purchase all of their own tools.  David claims that the Indian workers were relegated to doing all of the dangerous and dirty work inside of the ships and that the American workers were not required to do such work.

According to David when the workers complained Signal made more promises about green cards and threatened that if the workers continued to complain then they would be deported and not receive the promised visas.  David continued to work under conditions that he characterized as horrible because he was afraid of the consequences of leaving given that he had incurred so much debt to raise the money to come to the United States.

Another declarant, Sony Vasudevan Sulekha makes similar claims about the conditions at Signal's Pascagoula, Mississippi facility.  (Rec. Doc. 174-4).  Sulekha compared the facility to a jail.  Sulekha claims that on one occasion when employees complained about the conditions a Signal employee along with

security guards locked several Indian workers in a room. One of the workers allegedly attempted suicide following this incident.

Plaintiffs assert class action claims against Defendants arising from violations of their rights under the Victims of Trafficking and Violence Protection Act, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Civil Rights Act, and a host of other statutes. Several of the defendants have now moved to dismiss on various grounds.

**II. DISCUSSION**

    ***1. Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to Plead Fraud With Particularity (Rec. Doc. 66)***

Defendants Michael Pol and Global Resources, Inc. (sometimes collectively referred to as "the Global Defendants") move to dismiss them from this case for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The Global Defendants also move to dismiss the case in its entirety for improper venue and to dismiss Plaintiffs' fraud claims pursuant to Rule 9(b) for failure to plead those claims with particularity. The Global Defendants argue that they are not subject to personal jurisdiction in Louisiana because they do not live or work here, do not currently conduct business in this state, do not advertise here, do not maintain bank accounts here,

and directed no activities toward Louisiana.  Pol points out that all meetings that he had with Burnett pertaining to the plaintiffs occurred in Mississippi and not in Louisiana.

The Global Defendants also argue that venue is improper in this district because none of the events giving rise to Plaintiffs' claims occurred here.  The Global Defendants point out that all of the advertisements were published in India and all of the initial meetings, testing, and payment of money occurred in that country.  Further, all of the workers were employed in either Mississippi or Texas and no injury was sustained by any plaintiff in Louisiana.  The Global Defendants argue that Plaintiffs' claims have no connection to Louisiana whatsoever.

Finally, the Global Defendants argue that Plaintiffs' claims of fraud are subject to dismissal because Plaintiffs have engaged in group or "lump" pleading while failing to provide specific names and dates to support their claims of fraud.

In opposition, Plaintiffs argue that the H-2B immigration processing was an integral part of the Defendants' deceptive scheme and that the immigration work was done from defendant Burnett's law office here in Louisiana.  Further, Plaintiffs point out that RICO has its own venue and jurisdiction provisions which provide for nationwide service of process so long as one of

8

the defendants is properly before the court.  Plaintiffs contend that because co-defendants Burnett and Rao are subject to jurisdiction in Louisiana, then the other defendants are also subject to jurisdiction and venue in this forum.

In reply, the Global Defendants argue that they are subject to neither general nor specific personal jurisdiction in Louisiana and that the Fifth Circuit has never adopted the broad interpretation of RICO's venue and jurisdiction provisions that other circuits employ.  The Global Defendants argue that even under a broad interpretation the ends of justice do not require the exercise of jurisdiction in this forum.

>RICO's Venue and Process section provides in relevant part:
>
>(a) Any civil action or proceeding under this chapter against any person ***may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs***.
>
>(b) In any action under [civil RICO] in any district court of the United States ***in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof***.
>
>. . . .
>
>(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C.A. § 1965(a), (b), (d) (West 2000) (emphasis added). While most courts agree that § 1965 provides for nationwide service of process, courts have differed as to whether such process is attributable to § 1965(b) or (d). Rolls-Royce Corp. v. Heros, Inc., 576 F. Supp. 2d 765, 779 (N.D. Tex. 2008) (gathering circuit decisions). Regardless, § 1965 places limitations on nationwide service of process that do not exist in other nationwide service of process statutes. Id. (citing Hawkins v. Upjohn Co., 890 F. Supp. 601, 606 (E.D. Tex. 1994)). Most notably, the plaintiff must establish personal jurisdiction over at least one defendant under § 1965(a) before other non-resident defendants become subject to nationwide service of process. Id. (citing PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 71 (2d Cir. 1998); Hawkins, 890 F. Supp. at 606).

It is undisputed that at least one RICO defendant is subject to personal jurisdiction in Louisiana. Burnett maintains a law office in this state and a significant amount, if not all, of the immigration legal work necessary to bring Plaintiffs to this country was performed in Louisiana. The immigration legal work was performed by Burnett. Some plaintiffs also claim that Burnett charged them for additional legal services when they

consulted with him in his New Orleans office to ask about the status of their green cards. Burnett is clearly subject to both general and specific personal jurisdiction in this state. Because the action against Burnett is properly before this Court, § 1965(b) is triggered to give the Court jurisdiction over the other defendants who are part of the alleged RICO enterprise, including the Global Defendants. The Court in its discretion also will exercise pendant personal jurisdiction over the Global Defendants with respect to the non-RICO claims.

Moreover, the Court is persuaded that in this case the ends of justice require that all of the RICO defendants be brought before this Court. The scheme that Plaintiffs allege is one that took place in multiple countries and in multiple states. Neither justice nor judicial economy would be served by forcing the plaintiffs to fracture their claims across multiple forums to reach the various defendants. The various plaintiffs were recruited from various countries and did not necessarily work at the same Signal facilities but the common factor in all of their claims is that defendant Burnett performed the legal work for each of the plaintiffs to legally enter the United States to work for Signal. The potential prejudice to Plaintiffs in having their claims against the defendants split up far outweighs the inconvenience to the Global Defendants in having to defend this

lawsuit in Louisiana as opposed to our neighboring states of Mississippi and Texas.

The Global Defendants argue that the Fifth Circuit has never adopted the broad interpretation of RICO's venue and jurisdiction provisions that other circuits employ. This argument is not persuasive given that the issue has never been squarely before the Fifth Circuit. In <u>Caldwell v. Palmetto State Savings Bank</u>, the Fifth Circuit declined to apply RICO's nationwide service provisions but in that case none of the defendants conducted business in the forum state. 811 F.2d 916, 918 (5th Cir. 1987). Thus, the threshold requirement for application of § 1965 was not met. Nothing in that decision suggests that the Fifth Circuit would have parted with virtually every other circuit to decline to employ RICO's nationwide service provisions if the proper factual predicate had been met. The Court also notes that district courts in this circuit readily employ RICO's nationwide service of process. <u>See, e.g.</u>, <u>Rolls-Royce</u>, 576 F. Supp. 2d at 783; <u>Dale v. Frankel</u>, 131 F. Supp. 2d 852 (S.D. Miss. 2001).

Further, the application of § 1965(a) makes venue proper in this state because Burnett transacts business in Louisiana. Additionally, the Court cannot conclude that the immigration work necessary to bring Plaintiffs into the United States, which was performed in Louisiana, was not "a substantial part of the events

12

or omissions giving rise to" Plaintiffs' claims.  28 U.S.C.A. § 1391(b) (West 2006).

Finally, the Court finds that Plaintiffs have sufficiently pled their fraud claims so as to avoid dismissal.

For the foregoing reasons, the Global Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to Plead Fraud With Particularity is DENIED.

### 2.   *Motion to Dismiss on Behalf of Malvern C. Burnett, Law Offices of Malvern C. Burnett, APLC, and Gulf Coast Immigration Law Center, LLC (Rec. Doc. 70)*

Defendants Malvern C. Burnett, Law Offices of Malvern C. Burnett, APLC, and Gulf Coast Immigration Law Center, LLC (collectively "Burnett") move for dismissal arguing that Plaintiffs fail to state a claim under RICO.  Burnett argues that the complaint does not allege a pattern of racketeering activity or a RICO enterprise.  Burnett also moves for dismissal of Plaintiffs' state law contract claims arguing that none of those claims are pled with particularity.  Alternatively, and assuming that the Court were to dismiss all of the federal claims, Burnett urges the Court to decline to exercise supplemental jurisdiction over the pendant state law claims.

In opposition, Plaintiffs argue that they have alleged an association-in-fact enterprise consisting of all Defendants and

the U.S. consular officers in India. Plaintiffs contend that they have pled with sufficient particularity predicate acts of mail and wire fraud because Defendants used the mails and telephone and fax to further their fraudulent scheme. Plaintiffs argue that supplemental jurisdiction over their state law claims is appropriate because they have pled viable federal causes of action and the state law claims arise out of the same nucleus of facts.

The RICO statutory scheme is aimed at combating organized crime--RICO is located in Title 18 of the criminal code--and the Act imposes criminal and civil liability upon those who engage in certain "prohibited activities" which are listed in 18 U.S.C. § 1962 (a) through (c).[2] Each prohibited activity includes, as one

---

[2] The prohibited activities are:

**(a)** It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce . . . .

**(b)** It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or

14

necessary element, proof either of "a pattern of racketeering activity" or of "collection of an unlawful debt." Regardless of which subsection the plaintiff relies upon, all RICO claims under § 1962 have three common elements: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise. Abraham v. Singh, 480 F.3d 351, 355 (5th Cir. 2007) (quoting Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer, 90 F.3d 118, 122 (5th Cir. 1996)).

The statute specifically defines "racketeering activity"[3] and

---

indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**(c)** It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**(d)** It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C.A. § 1962 (a) - (c) (West 2000).

[3] "Racketeering activity" includes offenses indictable under the provisions of Title 18 of the United States Code covering section 1341 (relating to mail fraud) and section 1343 (relating to wire fraud). 18 U.S.C.A. § 1961(1) (West 2000).

a "pattern of racketeering activity" requires at minimum two acts of racketeering, the last of which must have occurred within ten years of the first. 18 U.S.C. § 1961(5); H.J.,Inc. v. N.W. Bell Tel. Co., 492 U.S. 229 (1989). Crimes not specified in § 1961 cannot support a RICO claim. Wit v. Firstar Corp., 879 F. Supp. 947, 960 (N.D. Iowa 1995). Private individuals who are injured by criminal RICO activity can recover damages in a civil action. 18 U.S.C. § 1964 (c).[4]

Plaintiffs have adequately pled a RICO enterprise and a continuing pattern of racketeering activity. The complaint, as bolstered by the record, is replete with communications sufficient to support the alleged predicate acts of mail and wire fraud.[5] The Court's conclusion is bolstered by the Fifth Circuit's decision in Abraham v. Singh which involved a similar

---

[4] The civil enforcement provision provides in relevant part:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

18 U.S.C.A. § 1964 (c) (West 2000).

[5] The Court makes no decision as to whether any other predicate acts might be applicable.

16

complaint by foreign workers against defendants who had brought them to the United States based on promises similar to those allegedly made in this case.  480 F.3d 351 (5th Cir. 2007).  As in that case, there is no reason to believe that the systematic victimization alleged in this case would not have continued indefinitely.  Id. at 356.  The scheme that Plaintiffs alleged could not have succeeded without the participation of all defendants who clearly compromise an enterprise for pleading purposes.  The Court finds that Plaintiffs have sufficiently pled their claims, including the contract claims, so as to avoid dismissal.

For the foregoing reasons, the Motion to Dismiss on Behalf of Malvern C. Burnett, Law Offices of Malvern C. Burnett, APLC, and Gulf Coast Immigration Law Center, LLC is DENIED.

> ### 3. *Defendant J & M & Associates, Inc. of Mississippi's Motion to Dismiss, and Alternatively, Motion to Transfer (Rec. Doc. 98)*[6]

Defendant J & M Associates, Inc. of Mississippi moves for dismissal for failure to state a claim and for failure to plead claims of fraud with particularity.  J & M argues that Plaintiffs

---

[6] Defendant J & M has withdrawn the portion of its motion challenging venue in the Eastern District of Louisiana and moving for a transfer of venue pursuant to 28 U.S.C. § 1404(a).  See Rec. Doc. 139.

have failed to plead any facts to support their allegations that J & M was a member of any RICO enterprise or what conduct would constitute a predicate act. J & M contends that the allegations made against it are conclusory.

The Court is persuaded that Plaintiffs have adequately pled their claims against J & M so as to withstand dismissal at this juncture. Defendant J & M & Associates, Inc. of Mississippi's Motion to Dismiss, and Alternatively, Motion to Transfer is therefore DENIED.

### 4. *Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. 146)*

Defendants Sachin Dewan and Dewan Consultants Pvt. Ltd. move to dismiss the claims against them for lack of personal jurisdiction. Defendants claim that they are subject to neither general nor specific jurisdiction in Louisiana.

As explained above, RICO has a special nationwide service of process provision. The relevant inquiry is whether the Dewan defendants have had minimum contacts with the United States, Rolls-Royce, 576 F. Supp. 2d at 782 (citing Busch v. Buchman, Buchman & O'Brien Law Firm, 11 F. 3d 1255, 1258 (5th Cir. 1994)). The Dewan Defendants played a crucial role in recruiting the plaintiffs for employment in this country. Much of the injury claimed by the plaintiffs was sustained in this country while

18

they worked at Signal's facilities.  As noted above, the action against Burnett is properly before this Court, so § 1965(b) is triggered to give the Court jurisdiction over the Dewan Defendants who are part of the alleged RICO enterprise and who clearly have minimum contacts with the United States.  The Court in its discretion will exercise pendant personal jurisdiction over the Dewan Defendants with respect to the non-RICO claims.  The Dewan Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to Plead Fraud With Particularity (Rec. Doc. 66)** filed by defendants Global Resources, Inc. and Michael Pol is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion to Dismiss (Rec. Doc. 70)** filed by defendant Malvern C. Burnett, Gulf Coast Immigration Law Center, LLC, and Law Offices of Malvern C. Burnett, APC is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion to Dismiss or Alternatively to Transfer (Rec. Doc. 98)** filed by defendant J & M Associates, Inc. of Mississippi is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion to Dismiss for Lack of**

**Jurisdiction (Rec. Doc. 146)** filed by defendants Dewan Consultants Pvt. Ltd. and Sachin Dewan is **DENIED**.

December 5, 2008

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE