# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KURIAN DAVID, SONY VASUDEVAN SULEKHA, PALANYANDI THANGAMANI, MURUGANANTHAM KANDHASAMY, HEMANT KHUTTAN, PADAVEETTIYIL ISSAC ANDREWS, and KECHURU DHANANJAYA, on behalf of other similarly situated individuals, and SABULAL VIJAYAN, KRISHAN KUMAR, JACOB JOSEPH KADDAKKARAPPALLY, KULDEEP SINGH, and THANASEKAR CHELLAPPAN, individually,<br>Plaintiffs,<br><br>v.<br><br>SIGNAL INTERNATIONAL LLC, MALVERN C. BURNETT, GULF COAST IMMIGRATION LAW CENTER, L.L.C., LAW OFFICES OF MALVERN C. BURNETT, A.P.C., INDO-AMERI SOFT L.L.C., KURELLA RAO, J & M ASSOCIATES, INC. OF MISSISSIPPI, GLOBAL RESOURCES, INC., MICHAEL POL, SACHIN DEWAN, and DEWAN CONSULTANTS PVT. LTD. (a/k/a MEDTECH CONSULTANTS).<br>Defendants. | Case No. 2:08-cv-1220<br><br>Section "A"<br>Judge Zainey<br>Magistrate Judge Knowles<br><br>Class Action –<br>Collective Action |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER PRECLUDING INQUIRIES WITH AN *IN TERROREM* EFFECT**

Plaintiffs move the Court for relief pursuant to Fed. R. Civ. P. 26(c) protecting named Plaintiffs and putative class members from inquiries that have an inherently *in terrorem* effect. Specifically, Plaintiffs seek a Protective Order, in the form proposed herewith, prohibiting inquiry as to (1) the immigration status of any Plaintiff following termination of his employment with Defendant Signal International, LLC ("Signal"), (2) the current address or place of residence of any Plaintiff, and (3) the employers or

potential employers of any Plaintiff after termination of his employment with Defendant Signal.

As set forth in the accompanying Declaration of Alan Howard, during the mandatory meet and confer process, and in an attempt to avoid the need for this motion, Plaintiffs' counsel invited counsel for Defendant Signal[1] to articulate any conceivable relevance to questions concerning post-Signal immigration status, residence or employment – at the very least for issues related to the current phase of class certification discovery, if not for the merits of any claim or defense at issue in this litigation. That invitation was a sincere effort to understand Signal's position given the ample judicial authority protecting Plaintiffs from precisely these types of inquiries – especially in cases like this one involving labor-related statutory and common law claims. Courts presented with the issue have routinely granted protection from definitively oppressive discovery that outweighs any possible relevance.

The only responsive argument raised by Signal was that a Plaintiff representative's immigration status potentially bears on that Plaintiff's adequacy as a class representative, namely because a Plaintiff representative who is out of status may be subject to deportation and may be unavailable to testify at trial as a class representative. Unsurprisingly, Signal's counsel produced no supporting authority for this argument, which has been expressly rejected by numerous courts. Indeed, Signal's position would be tantamount to a license to mistreat illegal immigrant workers with effective immunity

---

[1] The potential need for the Protective Order was first raised by notices of depositions for the Plaintiff class representatives served by Defendant Signal. Thus, discussions concerning the matter initially were held with counsel for Signal, and their intent to pursue inquiries into these subjects necessitated the instant motion even before any conference with other defense counsel.

from civil class actions, as workers would be fearful of serving as class representatives and having their immigration status exposed.

## STATEMENT OF FACTS

Following Hurricane Katrina, and during the period from Fall 2006 through Spring 2007, Defendants engaged in a scheme to traffic more than 500 Indian workers, the Plaintiff class members, into the United States. Taking advantage of the federal government's H-2B guestworker program, Defendants recruited Plaintiffs to provide welding, pipefitting, and other marine fabrication work for Defendant Signal. Defendants made false promises to Plaintiffs that they would obtain green cards, as well as false representations concerning the accommodations and conditions at Signal, to entice Plaintiffs to pay certain Defendants exorbitant recruiting fees to come to the U.S. Upon arrival at Signal's facilities in Pascagoula, Mississippi and Orange, Texas, Plaintiffs were housed in cramped labor camps and subjected to substandard living and work conditions, as well as other abuses. The specific nature of these conditions and abuses, as well as details of the fraudulent scheme of which Plaintiffs were victims, are set forth in detail in the First Amended Complaint and will not be repeated here.

Given the amount of debt incurred by Plaintiffs to pay the exorbitant recruiting fees, and given the restrictions of the H-2B guestworker visas that mandate continued employment with the employer sponsoring those visas, Plaintiffs effectively had no choice but to continue working at Signal regardless of the conditions. For its part, Signal exploited Plaintiffs and their predicament by obtaining reduced-cost labor from a captive work force. Throughout 2007 and into 2008, however, individual Plaintiffs grew so

despondent at their situation at Signal that they abandoned their position at Signal even in the face of risk of severe economic and even legal repercussions.

The named Plaintiffs, individually and on behalf of similarly situated workers, commenced this action asserting federal statutory and common law claims against Signal and Signal's recruiters, agents, and attorneys operating in India, the United Arab Emirates, and the United States. Plaintiffs and other class members contend that Signal and the other Defendants violated Plaintiffs' rights, and those of individuals similarly situated, to be free from forced labor, involuntary servitude, and peonage in violation of the Thirteenth Amendment; its implementing statute, 18 U.S.C. § 1584; and the Trafficking Victims Protection Act of 2003, 18 U.S.C. §§ 1589, 1590. Furthermore, motivated by racial, anti-Indian, and/or anti-immigration prejudice, Defendants conspired to violate Plaintiffs' and class members' rights held pursuant to the Thirteenth Amendment.

Plaintiffs also contend that Defendants violated their rights and those of other class members by breaching various contracts, eliciting payments by means of fraudulent or negligent misrepresentations, and conducting a fraudulent operation and engaging in trafficking in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c),(d) ("RICO"). Plaintiffs and the other class members also contend that Signal violated their rights under 42 U.S.C. § 1981 to be free from a hostile work environment and free from discrimination based on race, national origin, and/or alienage status.

In addition, Plaintiffs have asserted against Defendant Signal collective claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, for Signal's

failure to compensate Plaintiffs for their recruitment fees, as well as unlawful wage deductions and failure to pay all applicable overtime wages.

The class representative Plaintiffs have previously moved the Court to certify a class for purposes of damages and injunctive and declaratory relief pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) consisting of all Indian H-2B guestworkers who were recruited by one or more Defendants and who traveled and/or were transported to the United States at any time from 2003 through the present under the auspices of H-2B visas assigned to Signal.

Defendant Signal has now noticed the depositions of the seven named Plaintiff representatives as part of class discovery. In anticipation of those depositions, Plaintiffs' counsel proposed to Signal's counsel a stipulation to restrict examination regarding Plaintiffs' post-Signal immigration status, residence and employment. Signal's counsel refused to consider any such stipulation, and this motion followed.[2]

## ARGUMENT

**A.   Plaintiffs Seek To Preclude Inherently *In Terrorem* and Irrelevant Inquiries.**

Pursuant to Fed. R. Civ. P. 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden . . . ." Fed. R. Civ. P. 26(c)(1). Such an order may include "forbidding inquiry into certain matters . . . ." Fed. R. Civ. P. 26(c)(1)(D). In the case of foreign workers, including foreign workers asserting federal statutory and state law claims on behalf of a putative class, as well as Plaintiffs asserting collective FLSA claims, the Plaintiff

---

[2] Because Plaintiffs' intent is not to delay in any way the depositions of the class representatives, Plaintiffs' counsel proposed – and Signal's counsel agreed – to proceed with the noticed depositions, and to defer examination as to the subjects of concern. If the instant motion is denied, those questions may then be asked and answered by deposition upon written questions.

5

workers' immigration status and related inquiries constitute precisely the type of oppressive discovery from which courts routinely provide absolute protection.

In *Flores v. Albertson's*, 2002 U.S. Dist. LEXIS 6717 (C.D. Cal. April 9, 2002), a case involving FLSA and state common law claims by a class of janitors employed at various California supermarket chains, the Court recognized that inquiry into the immigration status of Plaintiffs would have an *in terrorem* effect. Specifically, such inquiries, with their inherent threat of deportation, would have a chilling effect on Plaintiffs' rightful exercise of their legal rights. *Id.* at *20. *See also*, *Daniel Castellanos-Contreras v. Decatur Hotels, LLC*, No. 06-4340, slip op. at 21 (E.D. La. Oct. 22, 2007) (granting protective order prohibiting inquiry into immigration status in FLSA action). Moreover, protection was warranted given that "the immigration status of Plaintiffs was not relevant to any claim or defense." *Flores*, *supra*, at *15; *see also Galaviz-Zamora v. Brady Farms, Inc.*, 230 F.R.D. 499, 502 (S.D. Mich. 2005) ("Plaintiffs' immigration status is not relevant for purposes of standing or damages.") That is exactly the situation here.

Similarly, in *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 530 F. Supp. 2d 746, 750 (D. Md. 2008), the Court denied a motion to compel information identifying putative Plaintiff class members, such as addresses, social security numbers, drivers' licenses, etc., emphasizing "the real *in terrorem*" effect that identification and investigation of Plaintiffs, putative class members, and witnesses of unclear immigration status has on enforcement of FLSA. Indeed, the Court in *Montoya* concluded that "[t]o allow the immigration status of a class representative to be investigated – indeed to

require a representative to enjoy legal immigration status – would seriously undermine the effectiveness of the FLSA." *Id.*

This view has been echoed in the Fifth Circuit, where "it is well established that the protections of the Fair Labor Standards Act are applicable to citizens and aliens alike, and whether the alien is documented or undocumented is irrelevant." *In re Reyes*, 814 F. 2d 168, 170 (5th Cir. 1987). In fact, the Fifth Circuit Court of Appeals in *Reyes* was so concerned with the impropriety of a discovery order compelling disclosure of immigration information with "collateral wholly unrelated consequences" and unjustified and embarrassing "inquiry . . . into [Plaintiffs'] private lives," that the Court granted a writ of mandamus to hear the appeal and reverse that discovery order. *Id*. at 170.

The instant case, like *Reyes*, includes an FLSA claim, which mandates a comparable protection of Plaintiffs against questions about immigration status and other inquiries that could convey a threat of collateral consequences. The fact that Plaintiffs here have additional statutory and state law claims does not make inquiries into Plaintiffs' post-Signal immigration status, residence or employment any less threatening or any more relevant. Defendant Signal's purported pretext for not voluntarily refraining from such vexatious examination – namely that it might bear on the suitability of the named Plaintiffs to serve as class representatives – is simply unsupportable.

**B.      Immigration Status Has No Bearing On Suitability Of Class Representatives.**

The legal status of any named Plaintiff since leaving Signal, his current residence, and his employment since leaving Signal are all entirely irrelevant to his suitability as a class representative.

The Supreme Court itself has recognized the suitability of undocumented aliens to serve as class representatives. *McNary v.Haitian Refugee Center, Inc.*, 498 U.S. 479

(1991). This makes perfect sense, because if legal status were a pre-requisite to being a class representative, undocumented workers would effectively be barred from obtaining relief under our civil legal system. This result would directly conflict not only with specific statutes like the FLSA (*Montoya*, 530 F. Supp. 2d at 750), but with general principles that open our courts to undocumented persons who have suffered harm. *See, e.g.*, *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004) (affirming a protective order issued in Title VII action for discrimination brought by California factory workers, finding the protective order was necessary to prevent "the chilling effect that disclosure of plaintiffs' immigration status could have upon their ability to effectuate their rights.")

Courts routinely reject specific arguments concerning the suitability of class representatives out of legal status, including those to which Signal's counsel alluded during the meet and confer in this matter. For example, in *Martinez v. Mecca Farms, Inc.*, 213 F.R.D. 601, 606 (S.D. Fla. 2002), the court expressly rejected defendant's argument that typicality and adequacy of representation are impacted "because the named Plaintiffs could be subject to deportation or could be distracted by the possibility of deportation." Similarly, in *Galavis-Zamora v. Brady Farms*, *supra*, "the Court fail[ed] to discern the relevance of any Plaintiff's immigration status on his or her ability to adequately represent other class members." 230 F.R.D. at 502.

Nor does immigration status bear on any named Plaintiffs' credibility or fitness as a class representative. *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 87 (S.D.N.Y. 2001) (certifying a class of grocery delivery workers, and expressly rejecting defendant's argument that the immigration status of certain named plaintiffs impacted

their credibility or fitness to serve as class representatives.) As stated by the court in

*Galavis-Zamora v. Brady Farms*, *supra*:

> As for Defendants' argument that Plaintiffs' immigration status is relevant on the issue of credibility, the Court is likewise unpersuaded. While a witness' credibility is arguably always at issue, such does not mean that *unlimited* exploration on the subject is permitted. (Citation omitted.) Furthermore, the damage and prejudice which would result to Plaintiffs if discovery into their immigration status is permitted *far* outweighs whatever minimal legitimate value such material holds for Defendants.

230 F.R.D. at 502 (emphasis in original). Plaintiffs are skeptical of Defendants' ability to articulate any legitimate reason for the discovery that is the subject of this motion, let alone one that would justify the very real *in terrorem* impact on Plaintiffs.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully submit that a Protective Order is warranted, prohibiting inquiry by Defendants into any Plaintiffs' immigration status, residence, or employment or potential employment since terminating work with Defendant Signal.

Respectfully submitted,
Dated: January 29, 2009
         New Orleans, Louisiana

/s/ Alan B. Howard
Alan B. Howard (*pro hac vice*)
Dewey & LeBoeuf, L.L.P.
New York Bar No. 2136661
1301 Avenue of the Americas
New York, NY 10019
Direct: +1 212 259 8549
General: +1 212 259 8000
Fax: +1 212 649 9408

Sean Gorman (*pro hac vice*)
Texas Bar No. 08218100
S. Justin Warf (*pro hac vice*)
Texas Bar No. 24028109
Robert P. Wynne
Texas Bat No. 24060861
Dewey & LeBoeuf, L.L.P.
1000 Main Street, Suite 2550
Houston, Texas 77002
General: +1 713 287 2000
Fax: +1 713 445 2124

Vincent J. Davitt (*pro hac vice*)
California Bar No. 130649
Anita Jain (*pro hac vice*)
California Bar No. 192961
Dewey & LeBoeuf, L.L.P.
333 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-1530
Direct: +1 213 621 6023
General: +1 213 621 6000

Tushar J. Sheth, T.A. (*pro hac vice*)
New York State Bar Registration No. 4088902
Asian American Legal Defense and Education
    Fund
99 Hudson Street, 12th Floor
New York, NY 10013
Telephone: (212) 966-5932
Facsimile: (212) 966-4303
tsheth@aaldef.org

/s/ Tracie L. Washington
Tracie L. Washington, Esq.
Louisiana Bar No. 25925
Louisiana Justice Institute
1631 Elysian Fields
New Orleans, Louisiana 70117
Telephone: (504) 872-9134
Facsimile: (504) 872-9878
tracie@louisianajusticeinstitute.org
tlwesq@cox.net

Daniel Werner (*pro hac vice*)
New York State Bar Registration No. 3969839
Kristi L. Graunke, T.A. (*pro hac vice*)
Georgia Bar No. 305653
Naomi Tsu (*pro hac vice*)
California Bar No. 248599
Mary C. Bauer (*pro hac vice*)
Virginia Bar No. 31388
Morris S. Dees (*pro hac vice*)
Alabama Bar No. ASB-7003-E50M
Immigrant Justice Project
Southern Poverty Law Center
233 Peachtree Street, Suite 2150
Atlanta, GA 30303
Telephone: (404) 521-6700
Facsimile: (404) 221-5857
kgraunke@splcenter.org
mbauer@splcenter.org
daniel.werner@splcenter.org
naomi.tsu@splcenter.org

Chandra S. Bhatnagar (*pro hac vice*)
Staff Attorney
Human Rights Program
American Civil Liberties Union
125 Broad Street - 18th Floor
New York, NY 10004
212-519-7840
cbhatnagar@aclu.org

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **January 29, 2009**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Erin Casey Hangartner
Dominic Joseph Gianna
Donald C. Douglas, Jr.
Alan Dean Weinberger
Paul John Mirabile
Middleberg, Riddle & Gianna
201 St. Charles Avenue, 31st Floor
New Orleans, LA 70170-3100

Patricia Anne F. Bollman
Patricia Ann F. Bollman, Attorney at Law
3414 Canal St., Suite B
New Orleans, LA 70119

Ralph R. Alexis III, Esq.
PORTEOUS, HAINKEL AND JOHNSON, L.L.P.
704 CARONDELET STREET
NEW ORLEANS, LA 70130-3774

Kevin Kennedy Gipson
Law Office of Kevin K. Gipson
3920 General DeGaulle Dr.
New Orleans, LA 70114

Johanna Malbrough McMullan
Page, Mannino, Peresich & McDermott, PLLC
460 Briarwood Dr.
Suite 415
Jackson, MS 39206

Michael E. Whitehead
Page, Mannino, Peresich & McDermott
P. O. Box 289
Biloxi, MS 39533

Christy Harowski, Esq.
Stephen H. Kupperman
Barrasso Usdin Kupperman Freeman & Sarver
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112

Stephen H. Shapiro
Stephen H. Shapiro, Attorney at Law
200 Maine St.
Jefferson, LA 70121

John Christopher Person
Montgomery Barnett (New Orleans)
1100 Poydras St.
Suite 3200
New Orleans, LA 70163-3200


/s/ Robert P. Wynne
Robert P. Wynne