UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KURIAN DAVID, SONY VASUDEVAN SULEKHA, PALANY ANDI THANGAMANI, MARUGANANTHAM KANDHASAMY, HEMANT KHUTTAN, ANDREWS ISSAC PADAVEETTIYL, and DHANANJAYA KECHURU, on behalf of other similarly situated individuals, and SABULAL VIJAYAN, KRISHAN KUMAR, JACOB JOSEPH KADDAKKARAPPALLY, KULDEEP SINGH, AND THANASEKAR CHELLAPPAN, individually, <br><br>                  Plaintiffs, <br><br>   v. <br><br>SIGNAL INTERNATIONAL LLC, MALVERN C. BURNETT, GULF COAST IMMIGRATION LAW CENTER, L.L.C., LAW OFFICES OF MALVERN C. BURNETT, A.P.C., INDO-AMERI SOFT L.L.C., KURELLA RAO, J & M ASSOCIATES, INC. OF MISSISSIPPI, GLOBAL RESOURCES, INC., MICHAEL POL, SACHIN DEWAN, and DEWAN CONSULTANTS PVT. LTD. (a/k/a MEDTECH CONSULTANTS), <br><br>                  Defendants | Civ. No. 08-01220 <br><br> Section A <br> Judge Zainey <br><br> Magistrate Section 3 <br> Magistrate Knowles |

**MEMORANDUM OF DEFENDANT SIGNAL INTERNATIONAL, LLC,
IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER
CONCERNING CERTAIN DEPOSITION QUESTIONS**

**May it Please the Court:**

      Defendant Signal International, LLC, submits this memorandum and attachments in opposition to the "Motion for a Protective Order" (Doc. #315) filed by the plaintiffs. Signal contends that the motion is without merit and should be denied.

1

**1.     Unlike the authorities relied on by plaintiffs, this is not just a simple FLSA wage and hour case.**

The theory advanced by the plaintiffs is based on a line of cases which establish that FLSA wage and hour provisions apply to both legal and illegal workers and, as such, the immigration status of a plaintiff is not relevant. However, that claim is not being litigated at this time. The FLSA claims in this matter have been stayed by the Court by a consent motion of the parties pending the Fifth Circuit's decision in *Castellanos-Contrera v. Decatur Hotels*. *See* Consent Order, at p. 2 (Doc. # 282). This means that the parties recognize that these claims may never return, depending on what the Fifth Circuit does.

Importantly, the rule argued by the plaintiffs is not a rule of general application but rather one peculiar to FLSA wage and hour litigation. *See Castellanos-Contreras*, at 8, quoting *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987). That court explicitly noted that "[t]he court **must focus on the claims and defenses involved in the action**" before the Court to decide whether protection is warranted. *Castellanos-Contreras, supra*, at 7. This is because a question that might frighten a plaintiff unjustifiably in one context does not do so unjustifiably in a different context in which the question is relevant to a "material claim." *Castellanos-Contreras*, *supra*, at p. 8.

The numerous other claims made by the plaintiffs are ignored in their motion. These claims include civil RICO with mail fraud, wire fraud, and human trafficking as predicate acts; human trafficking claims; §1981 claims; §1985 claims; fraud claims; and breach of contract claims. Plaintiffs have not explained why the court should extend the rulings in the FLSA wage and hour cases to every one of their other purported class claims.

Conversely, in *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 122 S. Ct. 1275, 152 L. Ed.2d 271 (2002), the Supreme Court provided a reason why such a rule should not

be extended past the FSLA wage and hour realm.  In *Hoffman* the Supreme Court held that certain relief awarded to an undocumented alien who had never been legally authorized to work in the United States "is foreclosed by federal immigration policy, as expressed by Congress in the Immigration Reform and Control Act of 1986 (IRCA).  *Hoffman*, 535 U.S. at 140.  In reaching this point, the Supreme Court found "that awarding backpay to illegal aliens runs counter to policies underlying IRCA," that "awarding backpay in a case like this not only trivializes the immigration laws, it also condones and encourages future violations", and that it "would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations."  535 U.S. at 149, 150, and 151.

This case contains numerous claims which are greatly different than the FLSA wage and hour cases offered by plaintiffs.  The Supreme Court has explained that the policies underlying federal immigration laws must be given effect, and it would be contrary to *Hoffman Plastic* to apply the rule advanced by plaintiffs to all of the claims in this case.

**2.     The inquiries addressed by the proposed protective order are highly relevant.**

As the Court observed in *Castellanos-Contreras*, motions for protection generally turn on discovery relevance under Rule 26(b)(1); and Rule 26(b)(1) links discovery relevance to "the circumstances of the pending action." *Id.*, at 7 ("(T)he determination whether such information is discoverable because it is relevant to the claims and defenses depends on the circumstances of the pending action.'"), *quoting* Fed. Rule Civ. P. 26(b)(1) Advisory Committee's Note, 2000 amendments.

Relevance under Rule 26(b)(1) is "very broadly construed." 1 Moore's Fed. R. Pamphlet, § 26.5[1], *supra*. To prevent discovery from occurring, the Court must first find that the

discovery can have "no possible bearing on the case and is unlikely to lead to discoverable evidence. Indeed, in *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 350-354, 98 S. Ct. 2380, 57 L. Ed.2d 253 (1978), the Supreme Court stressed that discovery may be sought for "a variety of fact-oriented issues . . . that are not related to the merits," *see id*., 437 U.S. at 351, 98 S. Ct. at 2389, including "issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation." *See id.*, at n. 13.

The Court will soon consider whether this action can be certified. It is indisputable that the named plaintiffs cannot obtain certification without proving "typicality" and "adequacy" among the other Rule 23 factors. Importantly, "any potential conflict or antagonism between the class representatives and the interests of the absent class members will preclude certification of the class." 5 Moore's Federal Practice, *supra*, at § 23.24[1].  In addition, "[t]ypicality will not be present if the class representative's claim is subject to one or more unique defenses that likely will be central to the litigation." 5 Moore's Federal Practice, § 23.24[5], *supra*.

As a party defending against class certification, Signal is entitled to determine whether potential points of conflict or antagonism between the named plaintiffs and the absent class exist, or if the claims are subject to unique defenses. These include, but are not limited to, the following.

> *A class representative's current immigration status could create conflicts with putative class members who have a different status.*

Signal contends that the current immigration status of a class representative is directly relevant to whether he has a tangible conflict with the purported class. For example, consider some of the possible variations on the current immigration status of the class representatives. Among other things, he may: (a) have obtained a T-visa;[1] (b) have obtained a U-visa;[2] (c) applied for a T-Visa;[3] (d) applied for a U-visa;[4] (e) intends to apply for a T-visa; or (f) intends to apply for a U-visa. If any of these situations exist, the class representative's personal interests attached to that visa will put him in direct conflict with the members of the putative class who have not obtained and/or will not apply for such a visa.

Particularly, a finding in this case that the class representative was *not* a victim of trafficking or some other crime would work to prevent the class representative from obtaining the sought after T- or U-visa; as a result, his primary interest in this matter would be to obtain a finding that he was a victim of one of the criminal acts required to obtain a T- or U-visa. However, some of the remaining putative class members are already applicants for permanent residency ("green cards") through their employment or even marriage. Thus, they would have no interest in a finding of liability on the civil claims which correspond to the criminal acts required to obtain a T- or U-visa.

As such, the class representative could very well find himself in a position where he must offer evidence which is beneficial to his trafficking claims but is adverse to one or more of the other class claims.

---

[1] A T-visa provides non-immigrant status to victims of severe forms of trafficking in persons who have complied with a reasonable request for assistance in the investigation of prosecution of acts of trafficking in persons. 8 CFR §214.11.
[2] A U-visa provides non-immigrant status to victims of a qualifying criminal activity. 8 CFR §214.14.
[3] USCIS Form 914; *see also* 8 USC §245.23.
[4] USCIS Form 918. *see also* 8 USC §245.24.

An additional conflict between the class representative and the putative class members would occur in the settlement context. If a defendant or defendants offers to settle the trafficking claims without an admission of liability, the class representative can not agree to that settlement as doing so would have a direct negative impact on his own attempts to obtain a T- or U-visa; he needs a finding that he was a victim of trafficking or some other crime, and would have to litigate the claim to the end in the hopes of obtaining that finding. Thus, his interests would be adverse to those of the class who would lose the opportunity to enter into a potentially beneficial settlement of a dubious claim for no reason other than the class representative's personal interest.

Potential conflicts between the class representatives and the putative class members are relevent and a proper basis for inquiry. These conflicts may arise from the current immigration status of the class representatives. As such, Signal should be allowed to question the representatives on that issue.

*Potential dispositive defenses to the claims of the class representatives based on their current immigration status will show that their claims are not typical.*

Additionally, the current immigration status of the class representatives may directly impact viable defenses to the class representative's claims. This would make their claims or defenses not typical of those of the class.

For example, the Fifth Circuit's recent decision in *Rogers v. McDorman*, 521 F.3d 381, 386 (5th Cir. 2008), holds that "*in pari delicto* is a cognizable defense to civil RICO." This defense has been pled. The basis of that defense in this case is that some or all of the purported class representatives lied to government officials in order to obtain their visas.

It is settled law that persons who have lied to officers of the government to gain entry into the United States are inadmissible. *See, e.g.*, *Emokah v. Mukasey*, 523 F.3d 110, 113 n. 2 (2nd Cir. 2008) (citing statute and noting that aliens who willfully misrepresent material facts to

6

procure admission to United States are inadmissible). At the first deposition of a class representative, the class representative raised the 5th Amendment privilege against self-incrimination and refused to answer a question regarding whether or not he lied to the consulate during his visa application interview. *Exhibit A, deposition of Hemant Khuttan*, pp. 222-224 (attached). He is therefore now presumed to have violated the law during his consular interview and would be inadmissible as a result.

However, the government has the ability to waive certain problems with an otherwise inadmissible person pursuant to 8 USC 212(D)(13)(A) and/or (B). Whether or not this occurred and, if so, the basis for the waiver could have a direct impact on the *in pari delicto* defense. The viability and nature of a defense to a class representative's claims is relevant and Signal should be allowed to inquire into all aspects of that defense.

**3.    Whether an illegal alien has standing to bring the non-wage-and-hour claims is an issue that can not be decided in the abstract.**

An unanswered question in the wake of *Hoffman Plastic, supra*, is whether federal courts will allow inadmissible aliens who are also present in the country illegally to serve as class representatives in a civil RICO action predicated on claims of mail fraud, wire fraud, and/or human trafficking. Again, *Hoffman Plastic* held that a person working in this country illegally was not entitled to certain relief under the law, because of the goals and public policy embodied in the Immigration Reform and Control Act.[5] *Hoffman Plastic* now mandates that the courts be wary, as a matter of public policy, of actions that undermine the IRCA.

The public policy explained by the Supreme Court in *Hoffman Plastic* allows Signal to discover relevant information regarding the current immigration status of the class

---

[5] Compare this to *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596-97 n. 5, 73 S. Ct. 472, 477 n. 5, 97 L. Ed. 576 (1953), in which the United States Supreme Court announced that "once an alien *lawfully* enters and resides in this country he becomes invested with the rights guaranteed by the Constitution . . . Such rights include those protected by the First and the Fifth Amendments and by the due process clause of the Fourteenth Amendment."

representatives. A federal court can not decide this issue in the abstract; it must have a concrete controversy to do so, and as such Signal must be allowed to develop the evidence necessary to present this issue properly to the Court.

**4.     Any purported *in terrorem* effect of the questioning is unfounded.**

Plaintiffs have not articulated what they fear from having to disclose the information covered by the motion for protective order. It would appear that someone who is legally in the country right now would have nothing to fear from disclosing his current immigration status or place of employment; it is axiomatic, then, that only someone who is presently in the country illegally would fear disclosing this information to parties it has filed a lawsuit against.

However, even those purported class representatives who are currently present in this country illegally have no basis to argue that Signal will somehow use the knowledge of their status to their immediate detriment. Attached to this opposition is an extensive compilation of letters from Signal to the Immigration and Nationalization Service. *Exhibit B*. These letters were sent by Signal, the sponsoring employer of the workers, to the INS immediately when an H-2B worker absconded or was terminated. These letters informed the INS that the worker was no longer working in accordance with the terms of his visa and requested that his visa be revoked according to law. Thus, INS was put on notice many months, even years, ago that certain workers were no longer present in the country pursuant to the H-2B visas at issue in this litigation. The INS could act or not act as it saw fit on that information.

Thus, any fear that Signal or one of the other defendants would report the current immigration status of a class representative who is illegally (or legally, for that matter) in the country is of no moment, as Signal long ago informed INS that the worker was no longer employed pursuant to the requirements of his H-2B visa and the INS, as the governmental entity

which administers these things, knows full well what his current immigration status is. There is nothing Signal can learn about the current immigration status of a class representative and tell the INS that the INS already does not know.

**5.    Any purported *in terrorem* effect of the questioning is not supported by proper evidence.**

In addition, plaintiffs have provided this Court with no affidavit or other evidence to prove that they would be terrorized in this case by questions about their immigration status in view of the "circumstances of the pending action." *Castellanos-Contreras, supra*, at 7. Under the plain language of Rule 26(c), the burden is on the mover to show that there is "good cause" for a protective order. 6 Moore's Federal Practice, § 26.103 (Matthew Bender 3d ed.); *Castellanos-Contreras*, *supra*, at p. 8. It is useful to remember that in *In re Terra International, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998), the Fifth Circuit emphasized that this burden "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." (Citations omitted).

All that has been offered in support of the motion is plaintiffs' counsel own declaration. This declaration is not competent evidence and should be stricken or ignored by the Court.[6] Plaintiffs have not offered any personal evidence regarding the claimed *in terrorem* effect of the questions at issue.

In *Terra*, *supra*, the Fifth Circuit explained that a motion for protective order had to be supported by "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" and concluded that issuance of the protective order in that case

---

[6] *Johnson v. Guhl*, 91 F. Supp.2d 754, 765 (D.N.J. 2000), (a lawyer's declaration containing legal conclusions "will be ignored."); *In re Hanford Nuclear Reservation Litig.*, 894 F. Supp. 1436, 1439 n. 4 (E.D.Wash. 1995) (a lawyer's opinions and legal conclusions are not the proper subject-matter of an affidavit); *Strine v. Marion Central School District*, 280 F. Supp.2d 75, 79 n. 3 (W.D.N.Y. 2003) ("[a]n attorney's affidavit that is not based on personal knowledge carries no weight . . .").

"constituted a clear abuse of discretion" as it was not properly supported. *Id*. Consistent with this, the present motion should be denied.

**6.    Conclusion**

Plaintiffs base their motion only on a limitation that has developed in a line of wage and hour cases. They have not explained why that limitation applies equally to all of the other claims being made here. Beyond that, the Supreme Court in *Hoffman Plastic* has suggested that a plaintiff's immigration status is relevant to both his ability to bring a claim and the nature of relief he may obtain.

The current immigration status of the class representatives may create conflicts with the interests of the putative class members both in the presentation of evidence and in the potential resolution of the various claims. Additionally, the defenses available to the claims of the class representatives may well be impacted by their current status. This makes the inquiry into their current immigration status highly relevant.

The plaintiffs have not provided any evidence of what *in terrorem* effect the questions might cause and, in fact, the INS has long since been aware of their immigration status. There is no basis on which to support the granting of the protective order sought by the plaintiffs. Because this case is in discovery, Signal should not be prevented from investigating each representative's immigration history and status. The motion should be denied.

Plaintiffs have made little, if any, argument regarding the ability of the defendants to inquire into a witness's employment history or residence. Signal has addressed those aspects as best it could in light of that, and contends the motion should be denied on those points as well.

In *Castellanos-Contreras*, after revealing its concern about the inadvertent disclosure of immigration status information, this Court wrote,

> The discovery will be subject to a confidentiality order preventing the defendants from using the plaintiffs' immigration information for any purpose other than conducting this litigation . . . If the parties are unable to agree on the form of such an order, they shall submit separate proposals.

*Castellanos-Contreras*, *supra*, at 21.

Signal is agreeable to similar protection.

                      Respectfully submitted,

                      */s/ Donald C. Douglas, Jr.*
                      Erin Casey Hangartner, No. 24768 (T.A.)
                      Dominic J. Gianna, No. 6063
                      Paul J. Mirabile, No. 9668
                      Donald C. Douglas, Jr., No. 22338
                      Alan Dean Weinberger, No. 13331
                      Middleberg, Riddle & Gianna
                      201 St. Charles Avenue, 31st Floor
                      New Orleans, LA 70170
                      Telephone (504) 525-7200
                      Fax (504) 581-5983


                      /s/ *Patricia A. Bollman*
                      Patricia A. Bollman, La. Bar 17563
                      A Professional Law Corporation
                      Post Office Box 13707
                      New Orleans, LA   70185
                      Telephone:  (504) 218-5887
                      Facsimile:   (504) 304-0890
                      patricia@bollmanfirm.com

                      *Counsel for Signal International, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to non-CM/ECF participants.

/s/ *Donald C. Douglas, Jr.*