## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KURIAN DAVID, ET AL.** | * | **CIVIL ACTION** |
| | * | |
| **PLAINTIFFS** | * | **NUMBER:  08-1220** |
| | * | |
| **VERSUS** | * | **SECTION: "A"** |
| | * | |
| **SIGNAL INTERNATIONAL, LLC, ET AL.** | * | **MAGISTRATE: "3"** |
| | * | |
| **DEFENDANTS** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\* \* \* \*

### MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES FILED ON BEHALF OF MALVERN C. BURNETT, GULF COAST IMMIGRATION LAW CENTER, L.L.C. AND LAW OFFICES OF MALVERN C. BURNETT, A PROFESSIONAL LAW CORPORATION

**NOW INTO COURT**, through undersigned counsel, come **MALVERN C. BURNETT** ("Burnett"), **GULF COAST IMMIGRATION LAW CENTER, L.L.C.** ("GCILC"), and the **LAW OFFICES OF MALVERN C. BURNETT, A.P.L.C.** ("LOMCB") (hereinafter collectively referred to as the "Burnett Defendants"), who submit this Memorandum in Opposition to Plaintiffs' Motion to Compel Discovery Responses Withheld Through Improper Assertions of Attorney-Client Privilege and Work Product Protection[1] ("Motion to Compel").

---

[1] *See* Plaintiffs' Motion to Compel Discovery Responses Withheld Through Improper Assertions of Attorney-Client Privilege and Work Product Protection (Rec. Doc. 434).

## I.   THE PLAINTIFFS' MOTION IS (OR SOON WILL BE) LARGELY MOOT

### A.   Background

#### (1)   Procedural History

On or about November 4, 2008 plaintiffs propounded to the Burnett Defendants 51 Requests for Production.  On or about December 22, 2008, the Burnett Defendants responded to plaintiffs' requests.  In those responses, the Burnett Defendants largely objected *inter alia* to the requests as to overbreadth, vagueness, duplication and failure to be tailored to the specific discovery issues as limited by this court, i.e. beyond class or jurisdictional discovery.

Examples of this can be found in Requests No. 41 - 43, to-wit:

**REQUEST FOR PRODUCTION NO. 41:**

41.    Please produce all documents, canceled checks, receipts, and other writings evidencing or tending to evidence the payment by you of any sums to any motel or hotel operator, landlord, or other person, entity, agency, or company, for living facilities provided to any H-2B workers, including the Plaintiffs, you employed between August 29, 2005 and the present.

**RESPONSE:**

This request is objected to.  See response to Request for Production No. 40.  *And further responding, without waiving said objection, upon information and belief it is averred that there are no such documents in the possession of Respondents.*

**REQUESTS FOR PRODUCTION NO. 42:**

42.    Please produce all documents and correspondence related to each instance in which you have been reviewed, inspected, interviewed, examined, investigated, cited, warned, prosecuted, or have been the subject of any finding or action by the United States Department of Labor, a state employment service or state Department of Labor, or other agency of state, federal, or local government, related to compliance with any laws concerning employment.

2

**RESPONSE:**

This request is objected to.  It is vague and ambiguous.  In addition, the request exceeds the scope of discovery permitted by the Court at this stage of proceedings, i.e. jurisdictional and class issues.  Moreover, it is vexatious.

**REQUEST FOR PRODUCTION NO. 43:**

43.     Please produce all organizational charts for Burnett Defendants including, but not limited to, any and all documents evidencing or tending to evidence the jobs and other responsibilities of officers and/or directors of Burnett Defendants, whether said documents were prepared by you or any other individual, corporation, partnership, association, agency or other legal entity.

**RESPONSE:**

This request is objected to.  See response for Requests for Production No. 42.

Accordingly, the plaintiffs' statement at pp. 2-3 of their memorandum that "as of the date of this filing, Burnett has produced fewer than 50 pages of documents" is misleading.  In fact, the number of documents produced to-date by the Burnett Defendants is the result of the propounding by plaintiffs of such improper requests as set forth above and also largely due to the fact that the Burnett Defendants did not have any documents responsive to a particular request.  See, for example, Exhibit "A," Response To Request For Production Nos. 1, 2, 18, 19, 20, 21, 22, 23, 24, 25, 31, 32, 37, 38, 40 and 41.

In response to approximately 13 requests, the Burnett Defendants included the objection of attorney-client or work product privilege.  See, for example, Exhibit "A," Response to Requests Nos. 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15, 16 and 46.  It is noted that this cautionary objection sometimes related to Indian workers who are not named plaintiffs or Fair Labor Standards Act ("FLSA") consenters.  See, for example, Exhibit "A," Response to Requests Nos.

3

6, 12, 13 and 14.

> **(2)   Counsel for Plaintiffs and Burnett Defendants Have Met To Discuss and Attempt to Resolve Discovery Issues**

Counsel for plaintiffs and for the Burnett Defendants have met to discuss discovery issues and undersigned counsel believes that these issues can be resolved amicably.   In fact, although not at issue in this motion, other than the issue of correspondence among co-defendants, it is believed that all discovery issues between the Burnett Defendants and the plaintiffs have been resolved.   For the last several weeks, documents have been in the process of redaction of personal information.   The first disks containing those redacted documents should go out tomorrow, May 20, 2009, via Federal Express.   Others will follow shortly thereafter.   The issue of the production of any correspondence that may exist by and between LOMCB and any co-defendants and involving Signal H-2B workers is currently being addressed.   As set forth hereinafter, at least one co-defendant (Pol/Global Resources) has waived any potential attorney-client privilege, thus partially mooting this motion.   In addition, undersigned counsel have indicated infra that they are aware of no attorney-client privilege involving Signal H-2B workers existing between LOMCB and co-defendant Sachin Dewan and Dewan Consultants.   This moots the crime-fraud issue as to those defendants.   Efforts will continue to be made to arrive at an amicable resolution – although that may not occur before the hearing date of May 27, 2009.

> **B.   Origin of the Assertion of Attorney-Client Privilege**

At the outset, it should be noted that attorney-client and work product privilege objections were generally made in connection with other objections because plaintiffs' requests

were worded so objectionably.  For example, see Exhibit "A," Request for Production No. 11

and Response, to-wit:

**REQUEST FOR PRODUCTION NO. 11:**

11.     Please produce all documents constituting, referencing, reflecting or
regarding communications between you and any other defendant in this action at
any time relating to workers who eventually entered the United States on H-2B
visas procured by Signal, including Plaintiffs.

**RESPONSE:**

This request is objected to as vague and overly broad, particularly in view
of its overbreadth in terms of its lack of time period.   It is a "catch-all" request.
Furthermore, to the extent, other than with respect to Signal, this request requests
documents from any client of any Respondent, the request is objected to on the
grounds of attorney-client and work product privilege.  Furthermore, the request
is in no way tailored to the limitation of discovery to class and jurisdiction.  Upon
information and belief, any documents relating to Signal are being produced by
Signal.  Moreover, respondents do not know the name of each and every worker
who "eventually entered the United States on H-2B visas procured by Signal."

It should also be noted that the Burnett Defendants' first asserted the attorney-client

privilege during the deposition of Mr. Burnett taken on September 10, 2008 for the purpose of

discovery limited to personal jurisdiction.   Prior to the events at issue, deposition testimony

supported that Mr. Burnett, through the Law Office of Malvern C. Burnett ("LOMCB"), had

attorney-client relationships with Michael Pol and his company Global Resources, Inc., with

J&M Associates of Mississippi, Inc. and with Dr. Kurella Rao and his company, Indo-Ameri

Soft, LLC. [2]   This led Mr. Burnett to be very cautious so as not to violate any possible attorney-

client privilege or work product privilege.   Accordingly, in his deposition, Burnett asserted the

---

[2] *See* Deposition of Michael Pol attached hereto as Exhibit "B," pages 30:6 – 30:20; 87:23 – 88:1; 135:6 – 137:22,
*See* Deposition of Dr. Kurella Rao attached hereto as Exhibit "C," pages 15:1 – 16:2 and 57:15 – 60:11.  *See*
Deposition of Malvern C. Burnett, et al., attached hereto as Exhibit "D," page 140.

attorney-client privilege out of an abundance of caution.  (Ex. D, p. 43, ll. 1-14.)  Indeed, at the time, counsel for Michael Pol and Global Resources (p. 47, ll. 13-24; p. 54, ll. 1-20; p. 148, ll. 6-11) asserted attorney-client privilege out of an abundance of caution, and naturally, as a result, Mr. Burnett respected that assertion, and thereafter continued that cautious approach to the extent the privilege might be applicable to production of any documents.  *Id.*  (Of course, this is now a moot issue.)  Similarly, J&M asserted the privilege as to any documents except as to those documents relating to immigration documents filed on behalf of any named plaintiffs or FLSA consenters.  (It is believed that this will be a moot issue, also, as soon as a disk is transmitted to plaintiffs' counsel within the next two days.)  Accordingly, Mr. Burnett asserted the attorney-client privilege and work product doctrine solely out of an abundance of caution in responding to the plaintiffs' request for production.

Plaintiffs filed their *Motion to Compel Discovery Responses Withheld Through Improper Assertions of Attorney-Client Privilege and Work Product Doctrine* on April 28, 2009.  In their motion, plaintiffs request that this Court pierce any alleged attorney-client or work product objections that may exist between the Burnett Defendants and co-defendants, Pol, Dewan, J&M, and Rao.[3]  (It is believed that only an issue as to communications with Rao remains.)  In their motion, plaintiffs do not discuss individual discovery requests and the corresponding responses or answers with the kind of specificity that would enable the Burnett Defendants to fully respond.  Instead, plaintiffs simply group defendants' responses to all fifty-one requests, despite

---

[3] *See* Plaintiffs' Motion to Compel Discovery Responses Withheld Through Improper Assertions of Attorney-Client Privilege and Work Product Protection (Rec. Doc. 434).

the fact that most do not concern their relationship with the aforementioned co-defendants, and argue broadly that the Burnett Defendants' objections on the basis of attorney-client privilege and invocation of the work product doctrine were improper.

As set forth hereinafter, this issue is somewhat moot and may be completely resolved in the near future.

**C.     Mootness**

**(1)     Signal**

Signal has never asserted attorney-client privilege and the Burnett Defendants have always been agreeable to permitting inspection and copying of any documents in its care, custody or control relating to Signal.  In fact, the Burnett Defendants were under the impression that Signal was going to make a production that included all of the files pertaining to Signal. See, for example, Ex. "A," Response to Request No. 1.  Signal has now made such a production. In addition, although it has taken a great deal of time to redact the records of Law Offices of Malvern C. Burnett, it is expected that the redacted Signal documents maintained by LOMCB will be forwarded this date to counsel for plaintiffs and all other counsel.

**(2)     J&M**

J&M initially asserted the attorney-client privilege and thus restricted the Burnett Defendants' initial production of J&M documents was limited to named plaintiffs and/or FLSA consenters.  See, for example, Exhibit "A," Response to Request for Production of Documents No. 6.  Since the initial production, a number of other workers have filed FLSA consents, and J&M has recently released any privilege insofar as any immigration documents relating to any of

those additional workers.  Upon information and belief, plaintiffs' counsel, in a meeting with undersigned counsel, agreed to accept this production in satisfaction of plaintiffs' request as to J&M documents maintained by LOMCB.  These documents had to be redacted and are now being copied to a disk which will be forwarded in the next two (2) days to attorneys for plaintiffs.

As far as any application of the crime-fraud exception, it is noted that none of the alleged evidence plaintiffs assert in their motion mentions J&M.

### (3)    Michael Pol and Global

Michael Pol and Global have now waived any potential attorney-client privilege as to any documents or communications with Burnett.  This moots any crime-fraud issues as to these defendants.

### (4)    Sachin Dewan and Dewan Consultants

Undersigned counsel for the Burnett Defendants are unaware of any attorney-client relationship between Burnett and Sachin Dewan and Dewan Consultants which might be related to this case.  This moots any crime-fraud issues as to these defendants.

### (5)    Kurella Rao and Indo-Ameri Soft, LLC

The position of Kurella Rao concerning attorney-client privilege is not known at this time.  As the Court is aware, for some period of time Mr. Rao has not been represented by counsel.  As soon as counsel is obtained, this issue will be addressed.

The Burnett Defendants do not oppose reasonable discovery; however, reasonableness depends on the facts and circumstances surrounding a particular case; plaintiffs should not be

entitled to fish through the files of an attorney and his law corporation simply because they have

filed suit.  Furthermore, this suit is still in the pre-class certification state and, in accordance with

the Court's Minute Entry of October 24, 2008,[4] discovery, at this point in the proceedings, is

limited to jurisdictional and class certification issues only.  Many of plaintiffs' requests were not

only overly broad and irrelevant, they were also imprecise or vague.  In that situation, it is likely

that a complete search and response would include some information subject to the privilege

asserted by the Burnett Defendants.  Plaintiffs' requests were not limited as directed by the

Court; therefore, the Burnett Defendants properly responded by asserting specific and proper

objections.  Because of the overreaching and vague nature of many of plaintiffs' requests, the

Burnett Defendants cannot specifically identify the documents with which plaintiffs' have an

interest.

Because the Burnett Defendants' responses and asserted objections are proper

considering the nature and breadth of Plaintiffs' discovery requests, and because the plaintiffs

have not met their burden of establishing the application of the crime-fraud exception, the

Motion to Compel should be denied.

## II.   IN ANY EVENT, PLAINTIFFS HAVE FAILED TO MAKE A SUFFICIENT SHOWING TO INVOKE THE CRIME-FRAUD EXCEPTION TO ATTORNEY-CLIENT PRIVILEGE

### A.   General Standards

No matter how broadly the rules are interpreted, pre-trial discovery is not without limits

and may not be used as a fishing expedition. See *In re Time Warner, Inc.,* 9 F.3d 259, 263 (2d

---

[4] *See* Minute Entry dated October 24, 2006 (Rec. Doc. 227).

Cir. 1993); *Zuk v. Eastern Pa. Psychiatric Inst. of the Med. College*, 103 F.3d 294, 299 (3d Cir. 1996). The purpose of discovery is to assist a party in proving a claim he reasonably believes to be viable without discovery. See *Micro-Motion, Inc. v. Kane Steel Co., Inc.* 894 F.2d 1318, 1327 (Fed. Cir. 1990).

The Federal Rules of Civil Procedure permit parties to obtain discovery regarding any matter, <u>not</u> <u>privileged</u>, that is relevant to the claim or defense of any party. Fed. R. Civ. Pro. 26(b)(1) (emphasis added).

> **B.      Plaintiffs Have Failed to Meet Their Burden In Establishing The Application of the Crime-Fraud Exception to Any Communications Between Burnett and Any Co-Defendants With Whom He Had An Attorney-Client Relationship**

It is a long established rule of common law that an attorney is not permitted, and cannot be compelled, to testify or divulge information as to communications made to the attorney in his or her professional capacity by his or her client unless the client consents. 12 Fed. Proc. L. Ed. §33:302. The attorney-client privilege relates to communications made to a member of the bar or subordinate, in confidence, for the purpose of securing legal advice, assistance, or representation. *Perkins v. Gregg County, Texas*, 891 F.Supp. 361 (E.D. Texas, 1995).  The privilege is based upon two related premises: (1) that an attorney needs to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out; and (2) that privilege is necessary to encourage clients to make full disclosure to their attorneys. *Id.* at 363. As such, the assertion of privileges is strictly construed because privileges impede full and free discovery of the truth. *Energy Capital Corp. v. U.S.*, 45 Fed.Cl. 481 (Ct. of Fed. Claims 2000)

citing *Eureka Financial Corp. v. Hartford Accident & Indem. Co.,* 136 F.R.D. 179, 183 (E.D. Cal. 1991).

The Fifth Circuit in *In re Grand Jury Proceedings*, 517 F.2d 666 (5th Cir. 1975) enunciated the requirements necessary to assert the attorney-client privilege as follows:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the]member of a bar or a court, or his subordinate and (b) in connection with this communication is acting as lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceedings, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* at 670.

The burden of proof regarding a privilege's applicability rests on the party invoking it. *Perkins*, 891 F. Supp. at 363, citing *Hodges, Grant & Kaufmann v. U.S.*, 768 F.2d 719 (5th Cir. 1985).  Once the privilege has been established, the burden shifts to the other party to prove any applicable exceptions. *Id.* See discussion *infra* regarding the circumstances of the attorney-client relationships at issue.

While Plaintiffs have argued that neither the Burnett Defendants nor their potential clients have satisfied the requisite burden to prove the existence of an attorney-client relationship, it is clear from the testimony cited herein that Pol, J & M and Rao were each, at some point in time, clients of LOMCB.  Plaintiffs further argue that the attorney-client relationship is non-existent based upon the fact that no attorney retainers have been produced. Plaintiffs, however, are mistaken in their belief that a retainer is necessary to secure an attorney-

client relationship.   Despite, their correct recitation of the elements necessary to define the attorney-client privilege, as provide in *In re Grand Jury Proceedings*, plaintiffs have somehow interpreted same to imply the necessity of some sort of contract between the attorney and client in order to secure this relationship.   The existence of a retainer is not necessary to meet the burden of proof requisite in showing that an attorney-client privilege applies and, even without production of attorney-client retainers, the Burnett Defendants have met their burden.

### C.   The Crime-Fraud Exception is Inapplicable to the Burnett Defendants' Claim of Attorney-Client Privilege and Their Invocation of the Work Product Doctrine

Since the attorney-client privilege has the effect of withholding relevant information from the fact finder, it applies only where necessary to achieve its purpose. *U.S. v. Zolin*, 491 U.S. 554 (1989) citing *Fisher v. U.S.*, 425 U.S. 391 (1976).  The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection – the centrality of open client and attorney communication to the proper functioning of our adversary system of justice ceases to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing. *U.S. v. Zolin*, 491 U.S. 554 , 562 (1989) citing *Clark v U.S.* , 289 U.S. 1 (1933).

It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the seal of secrecy between the lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud. *U.S. v. Zolin*, 491 U.S. 554 (1989).

It is settled that confidential communications from client to attorney are not privileged if the court concludes the evidence warrants a finding that the communications were made for the

purpose of obtaining aid in the commission of future criminal acts. *United States v. Calvert*, 523 F.2d 895, (8th Cir. 1975). In applying this exception to the doctrine of privilege, it is the **client's purpose** which is controlling. *Id*. at 909 (emphasis added). The attorney need not have been aware that the client harbored an improper purpose. Because both the legal advice and the privilege are for the benefit of the client, it is the client's knowledge and intent that are relevant. *In re Napster, Inc. Copyright Litigation*, 479 F.3d 1078, 1090 (9th Cir. 2007).

To demonstrate the applicability of the crime-fraud exception, the proposing party must make a *prima facie* showing that a sufficiently serious crime or fraud occurred to defeat the privilege. Second, the proposing party must establish some relation between the communications at issue and the *prima facie* violation. *Id*. It is a sufficient showing if the discovering party presents evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed when the communications and/or work product were prepared. To void the privilege, there must be something to give color to the charge; there must be *prima facie* evidence that it has some foundation in fact. *United States v. Fisher*, 2009 WL 963680 (E.D. Mich. 2009) (citing *Clark v. U.S.*, 289 U.S. 1 (1933)). In fact, it has been held that in order to establish the application of the crime-fraud exception, the moving party must carry his or its burden of proof by a preponderance of evidence. The plaintiffs have completely failed to do that here.

The plaintiffs assert that they have established a *prima facie* case for fraud, supporting application of the crime-fraud exception. In support, they point to declarations of various

workers attached to the plaintiffs' Motion to Certify Class.  They contend that the declarations support the following:

> 1. The Defendants, working as a team, misrepresented to Plaintiffs that they would obtain permanent legal status in the U.S.

> 2. The Defendants, working as a team, misrepresented to Plaintiffs their ability to bring their families to live with them in the U.S.

> 3. The Defendants, working as a team, misrepresented to Plaintiffs the accommodation, food, and working conditions that would be provided to them.

> 4. The Defendants, working as a team, collected significant sums of money from Plaintiffs who relied on the veracity of these misrepresentations.

> 5. The Defendants, working as a team, exploited plaintiffs and subjected them to substandard living conditions, which Plaintiffs were effectively forced to endure because of the enormous debts they had incurred, and with the false promises of obtaining permanent residency in the U.S.

It is submitted that at this junction it is premature for the Court to make such a determination.  There have been depositions of the plaintiffs and certain other workers (deposed by Signal).  No depositions of any defendants have occurred.  These charges are mere allegations!

Furthermore, in contrast to the plaintiffs' assertions, consider the following sworn testimony from the deposition of Ramesh Gunishetti, one of the Signal H-2B workers which portrays a totally different picture, to-wit:

> Q.    When you left India to come to the United States, you knew you were coming on a H2B visa, did you not?

> A.    Yes.

Q.      And when you were in India getting ready to come to the United States, you understood that it is the United States government, not Signal, not Malvern Burnett, not anyone else, who decides whether or not to grant you an H2B visa; is that not correct?

A.      Yes.

Q.      And when you were coming over here to the United States from India, you understood that if the first – if the H2B visa was granted, then Signal could ask for a couple of more extensions; is that correct?

A.      Yes.

Q.      And it would be up to the United States government to grant those extensions or not, correct?

A.      That's what – after I came back, I saw that – how long my second – first extension has took.

Q.      But before you came over here, you knew that it was the United States government that would decide that?

A.      Yeah, giving a visa.

Q.      Yes.

A.      Yes.

Q.      And you knew that Malvern Burnett or the Law Office of Malvern Burnett did the legal work for your H2B visa, correct?

A.      Yes.

Q.      And Mr. Burnett did the legal work to get the first extension, also, did he not?

A.      No.  He filed and I came to know through management that he filed an extension for us.

Q.      Correct.  That's – that's correct.  And when you were coming over here from India, it was your understanding that after the H2B process was over, that then Mr. Burnett and – Signal would sponsor you for a – strike that.

        When you were in India and you were getting ready to come over here, it was your understanding that after the H2B process was over, Signal would then sponsor you for a green card?

A.      What the agent told, like H2B process, going to get an extension and extension and automatically the green card process.

Q.      But the green card process couldn't begin until after the H2B process.

A.      After I came back, after I was here, I came to know that to the attorneys.

Q.      Okay.  And as a matter of fact, you've testified that Signal has applied for a permanent labor certification for you, correct?

A.      Correct.

Q.      And will sponsor you for a green card –

A.      Yes.

Q.      -- correct?  And you're going to go back to India and wait.

A.      Yes.

Q.      And that's fine with you?

A.      Fine.

Q.      Ramesh, you've testified that coming here to work for Signal has been a good experience, correct?

A.      Yes.

Q.      And you've made much more money working for Signal than you've ever made working for any other company.

A.      Correct.

Q.      I'm not a – I know neither one of us are mathematicians, but it almost seems that you've made more money working for Signal the last two years than all your other foreign work combined.  Is that almost correct?

A.      Yes.

MR. HOWARD:

        Objection to form.

EXAMINATION BY MR. ALEXIS:

Q.      And because of all the money you've made, your family is very happy.

A.      Yes.

Q.      And your wife is very happy.

A.      Yes.

Q.      And because you work for Signal, you've been able to buy two flats in India.

A.      Yes.

Q.      And that makes you very happy.

A.      Yes.

Q.      And your wife very happy.

A.      Yes.

Q.      And you've been able to send more money home to India than you've ever been able to send before.

A.      Yes.

Q.      And that makes you happy.

A.      Yes.

Q.      And it makes your wife happy.

A.      Yes.

Q.      I don't even have to ask you that the jewelry that you bought also makes your wife very happy.  I said, I don't even – I don't even have to say that the jewelry you bought your wife makes her very happy.

A.      Yes.  Every – every men's wife like jewelry.

Q.      All wives.

A.      Gold jewelry.

Q.      So, coming here to work for Signal has worked out very good for you and your family.

A.      Yes.

Q.      And your life and their life is better because you came here.

MR. HOWARD:

        Object to the form.

A.      Yes.

EXAMINATION BY MR. ALEXIS:

Q.      And Mr. Burnett was part of that success that you've had, was he not?

A.      Yes.

(See Exhibit "E," Deposition of Ramesh Gunisetti, p. 830, ll. 17-25, p. 831-834, p. 835, ll. 1 – 16)

Unlike Mr. Gunisetti and others like him, the declarants submitted by plaintiffs' counsel all made the decision to quit.  Their decision not to make coming to the United States the golden opportunity it was doesn't evidence fraud on the part of any of the defendants.

Ironically, having accused Mr. Burnett and his co-defendants of fraud, the plaintiffs are still in this country and have so far obtained a Protective Order prohibiting defendants from ever inquiring as to their present immigration status, i.e. legal or illegal or their work history.  It is obvious that the named plaintiffs and many of the putative class members do not have legal immigration status and yet are continuing to work in the United States.

Another chink in plaintiffs' argument is exhibited by Exhibit "F."  Putative class representative Issac Andrews Padaveettiyil contends he was promised a "green card"; however, Exhibit "F," a document from J&M's file, shows that an I-140 was filed on his behalf in June 2007.  Similarly, Exhibit "G," another document from J&M's file, shows that an I-140 was filed on behalf of individual plaintiff Jacob Joseph Kadakkarappally in June 2007.  The United States government decides whether and when to issue a so-called "green card" in response to the filing of an I-140, not any of the defendants.

### D.  Plaintiffs Have Not Met the Requisite Burden of Proof for *In Camera* Review of Documents

Rule 104(a) provides: "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court. … In making its determination it is not bound by the rules of evidence except those with respect to privileges." *U.S. v. Zolin*, 491 U.S. 554, 565 (1989).  Rule 1101(c) provides:

Then rule with respect to privileges applies at all stages of all actions, cases and proceedings. *U.S. v. Zolin*, 491 U.S. 554, 565-66 (1989).

There is no reason to permit opponents of the privilege to engage in groundless fishing expeditions with the district court as their unwitting agents. *U.S. v. Zolin*, 491 U.S. 554 (1989).

Before engaging in an *in camera* review to determine the applicability of the crime-fraud exception, "the judge should require a showing of a factual basis adequate to support good faith belief by a reasonable person" that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies. *U.S. v. Zolin*, 491 U.S. 554, 572 (1989). The court should make the decision of whether to allow the *in camera* review in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case - of the alleged privileged information, and the likelihood that the evidence produced through the *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception is applicable. *U.S. v. Zolin*, 491 U.S. 554, 572 (1989).

Considering the evidence to-date that there has certainly been no fraud, it is submitted that the plaintiffs have not even met their burden with respect to the implementation of an *in camera* review of disputed documents by the Court.

### E.    At No Time Was Burnett a Business Partner to Pol, Rao, and/or J&M

The attorney-client privilege is triggered only by a client's request for legal, as contrasted with business, advise and is "limited to communications made to attorneys solely for the purpose of the corporation seeking legal advice and its counsel rendering it." *Energy Capital Corp. v.*

*United States*, 45 Fed.Cl. 481 (Ct. of Fed. Claims 2000) citing *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037 (2d Cir. 1984).   Thus, information does not become privileged simply because it came from counsel, and when documents or correspondence are created pursuant to business matters, they must be disclosed. *Energy Capital Corp. v. United States*, 45 Fed.Cl. 481 (Ct. of Fed. Claims 2000) citing *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.,* 152 F.R.D. 132, 137 (N.D. Ill. 1993).

Plaintiffs have argued that the relationship between the Burnett Defendants and Pol and Rao was one of business partnership, thereby negating any claim of attorney-client privilege.   In support of their allegations, Plaintiffs have cited specific deposition testimony given by both Pol and Rao.   Plaintiffs argue that Pol and Rao both admitted that Burnett was a part of their recruitment processes and helped to further the business enterprise.[5]   Plaintiffs' argument, however, falls flat.   At no time was there an agreement between the Burnett Defendants and/or Pol or Rao to form or enter into business together.   Burnett did not enter into a business venture with any of his co-defendants and worked solely to provide legal services to the numerous H-2B workers recruited from India and the companies which recruited them.[6]   No evidence, including the plaintiffs' assertion that Burnett addressed groups in India or UAE, supports that Burnett was acting in any other capacity than an immigration attorney.

---

[5] *See* Plaintiffs' Motion to Compel Discovery Responses Withheld Through Improper Assertions of Attorney-Client Privilege and Work Product Protection (Rec. Doc. 434, pages 4 and7) citing Deposition of Michael Pol, pages 80-82 and Deposition of Kurella Rao, pages 22-28.

[6] *See* Deposition of Malvern Burnett, pages 75-76 and 88-89, attached hereto as Exhibit "D".

## III.     CONCLUSION

As a result of meetings by and between counsel for the Burnett Defendants and plaintiffs' counsel, and waivers of any alleged attorney-client privilege by co-defendants, or determination that no attorney-client relationship existed as to the matter at issue, it is believed that all discovery disputes between the Burnett Defendants and the plaintiffs have or will be resolved. (Since Dr. Rao has just now been advised to hire an additional attorney, the issues as to Dr. Rao may linger.)

In any event, it is submitted that the plaintiffs have not met their burden for the implementation of the crime-fraud exception to attorney-client privilege.  Nor have they met their burden to invoke an *in camera* inspection by this Court of any disputed documents.

Further, although not at issue with respect to plaintiffs' Motion to Compel, the other objections made in response to the plaintiffs' request for production of documents are continued to be maintained.

<div style="margin-left: 40%;">

Respectfully submitted,

**/S/ RALPH R. ALEXIS, III (LA Bar No. 2379)**
**GLENN B. ADAMS (LA Bar No.2316)**
**MICHAEL J. MADERE (LA Bar No. 29961)**
**DENIA S. AIYEGBUSI (LA Bar No. 31549)**
Porteous, Hainkel and Johnson, LLP
704 Carondelet Street
New Orleans, LA 70130
Telephone: (504)581-3838
Facsimile: (504) 581-4069
E-mail:  ralexis@phjlaw.com
       gadams@phjlaw.com
       mmadere@phjlaw.com
       dsylve@phjlaw.com

</div>

*Counsel for Defendant Malvern C. Burnett, Gulf*
*Coast Immigration Law Center, L.L.C. and Law*
*Offices of Malvern C. Burnett, A.P.L.C.*

## CERTIFICATE OF SERVICE

I do hereby certify that on this 19th day of May, 2009 a copy of the above and foregoing pleading was filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record unless indicated otherwise.

**/S/ RALPH R. ALEXIS, III**