**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

_____

| | | |
|---|---|---|
| KURIAN DAVID, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:08-cv-1220 |
| | ) | |
| | ) | Section "A" |
| v. | ) | Judge Zainey |
| | ) | Magistrate Judge Knowles |
| | ) | |
| SIGNAL INTERNATIONAL, LLC, et al., | ) | Class Action – |
| | ) | Collective Action |
| Defendants. | ) | |

_____ )

## PLAINTIFFS' OPPOSITION TO RULE 72 OBJECTIONS FILED BY SIGNAL INTERNATIONAL LLC AND THE BURNETT DEFENDANTS

### PRELIMINARY STATEMENT

Defendants Signal International, LLC ("Signal") and Malvern Burnett and related entities (the "Burnett" Defendants) challenge a discovery order issued by Magistrate Judge Knowles pursuant to Fed. R. Civ. P. 26(c), protecting the Plaintiff class of foreign workers in this case from inherently intimidating inquiries concerning their current legal status, their current residence or their employment after leaving Signal.  After two rounds of briefing and oral argument, Magistrate Judge Knowles issued a comprehensive and carefully reasoned 22-page opinion, concluding, *inter alia*, that the inquiries at issue would have an *in terrorem* effect on Plaintiffs, chilling their willingness to participate in the legal process, and that Plaintiffs' post-Signal legal status, residence and employment are of no cognizable relevance to any element of Plaintiffs' trafficking, FLSA, RICO or other claims in this case, or any defense thereto. Defendants have offered no credible counter-argument to any of Magistrate Judge Knowles'

findings, let alone established the clear error necessary to overturn a discovery order so soundly within his discretion.

## STATEMENT OF FACTS

Details concerning the underlying allegations of this action have been presented to the Court previously in pleadings and oppositions to dispositive motions, and will not be repeated here. With respect to the matter giving rise to the instant Objections, after Defendant Signal noticed the depositions of the named class representatives to commence in February 2009, Plaintiffs' counsel requested of counsel for Signal that they not inquire into Plaintiffs' post-Signal immigration status, residence, or employment, on the grounds that those are irrelevant and inherently intimidating questions. Signal declined that request, and gave only the pretextual rationale that a putative class representative's immigration status potentially bears on that Plaintiff's adequacy to serve as a class representative. Even when provided with ample authority that its position has been uniformly rejected by courts addressing that adequacy argument, and offering no contrary authority, Signal refused to accept any voluntary limitations on its inquiries. Thus, Plaintiffs moved for a Protective Order precluding inquiry into Plaintiffs' current immigration status, employment after they left Signal's employment, or questions that could reveal their current places of residence.[1]  (Rec. Doc. 315, Plaintiffs' Motion; Rec. Doc. 367 at 6, Magistrate Judge Knowles' Order).

---

[1]     Signal's Memorandum in support of its Objections is misleading from the start to the extent that it contends that Plaintiffs' "motion [for a protective order] sought to prevent the Defendants from asking the purported class representatives anything about their immigration status, employment history, or where they reside during their depositions."  (Rec. Doc. 424-1 at 2, Signal Mem.)  In fact, at their depositions, the putative class representatives answered extensive questions on these matters as they related to all times prior to their leaving Signal. The Protective Order concerns only Plaintiffs' *current* immigration status, *current* address, and employment since leaving Signal, all of which, as Magistrate Judge Knowles correctly found, are irrelevant to any claim or defense in this case.  (Rec. Doc. 367 at 12, 17, 19)

Signal also offers a far-fetched interpretation of Magistrate Judge Knowles' ruling as preventing Signal from "interacting" with workers outside the context of the litigation.  (Rec. Doc. 424-1 at 22)  Such a restriction was not part of Plaintiffs' underlying Motion, and it is not part of the Order to which Signal objects.

In considering Plaintiffs' Motion, Magistrate Judge Knowles appropriately "balance[d] the legitimate discovery needs of Defendants to defend against certification as a class action and collective action and the real *in terrorem* effect that identification and investigation of Plaintiffs, putative class members, and witnesses of unknown immigration status has on the enforcement of FLSA and other federal statutes." (Rec. Doc. 367 at 18)  He found that nothing that happened after termination of Plaintiffs' employment at Signal had any material relevance to any claim or defense at issue. (*Id.* at 13)  He found that Defendants can defend themselves against class certification without information concerning Plaintiffs' current immigration status, current addresses, or post-Signal employment information. (*Id.* at 18)  He further found that even if there were some conceivable relevance of the information sought, it would be outweighed by the chilling effect on Plaintiffs' participation in the lawsuit. (*Id.* at 12)

Notwithstanding the carefully considered and well-reasoned ruling of Magistrate Judge Knowles, and without coming close to meeting the high burden established by Fed. R. Civ. P. 72, Defendants Signal and Burnett filed the instant Objections to that Order.  Signal's rejection of Plaintiffs' initial proposal, necessitating motion practice, and Defendants' refusal now to accept a reasonable and limited Order, is reflective of an ongoing strategy to create an intimidating climate that dissuades Plaintiffs and putative class members from actively supporting this litigation.

## ARGUMENT

### I.   RULE 72(a) SETS A HIGH BURDEN, ESPECIALLY FOR OVERTURNING DISCOVERY ORDERS.

Pursuant to Fed. R. Civ. P. 72, a district judge shall defer to the decision of a magistrate judge unless he finds that the  magistrate judge's order was clearly erroneous or contrary to the law:  "The district judge to whom the case is assigned shall consider such objections and shall

modify or set aside any portion of the magistrate judge's order found to be *clearly erroneous or contrary to the law*."  (emphasis added.); *see also Asset Funding Group, LLC v. Adams & Reese, LLP*, 2008 WL 4186884, at *3 (E.D.La. Sept. 09, 2008) ("The district court is required to defer to a Magistrate Judge's ruling unless it was clearly erroneous or contrary to law."); *Porter v. Waller*, 2007 WL 686967, at *2 (S.D.Miss. March 05, 2007) ("the ruling of a magistrate judge is reviewed under a deferential standard"); *Bogan v. Moore*, 55 F. Supp. 2d 597, 599 (S.D.Miss. July 06, 1999) (same).

The Supreme Court has stated that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *U.S. v. United States Gypsum Co.*, 333 U.S. 264, 395 (1948).  An order is "contrary to law" where "it fails to apply or misapplies relevant statutes, case law, or rules of procedure."  *Ordemann v. Unidentified Party*, 2008 WL 695253, at *1 (E.D.La., March 12, 2008).  Together, the two clauses in Rule 72 set a high bar requiring that the "District Court…affirm the decision of the Magistrate Judge unless, based on all of the evidence, the court is left with a definite and firm conviction that the magistrate judge made a mistake."  *Moody v. Callon Petroleum Operating Co.,* 37 F. Supp. 2d 805, 807 (E.D.La.1999).

Moreover, a district court shall afford a magistrate judge's decision even greater deference where, as in the instant case, at issue is a non-dispositive, discovery-related ruling. *See Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995) (discovery motions are non-dispositive and subject to a "clearly erroneous or contrary to law" standard of review by the district court); *Johnson v. Big Lots Stores, Inc*., 253 F.R.D. 381, 394 (E.D. La. 2008); *Hunter v. Goodwill Indus. SELA, Inc.*, 2007 U.S. Dist. LEXIS 45185, at *4 (E.D. La. June 21, 2007) ("Federal law affords a magistrate judge broad discretion in the resolution of non-dispositive pretrial matters."); *Recinos-*

4

*Recinos v. Express Forestry, Inc.*, 2006 WL 3388485, at *1 (E.D.La. Nov. 20, 2006) ("Matters concerning discovery generally are considered non-dispositive to the litigation."); *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 2006 U.S. Dist. LEXIS 10280, at * 10 (E.D. La. Feb. 17, 2006).  This principle is particularly applicable where, as in the instant case, a magistrate judge has been actively involved in the discovery process and is extremely knowledgeable about the proceedings.  *See Sherman v. Harrah's New Orleans Casino*, 2008 WL 3914970, at *3 (E.D.La. August 20, 2008) (upholding magistrate's decision where "Magistrate Judge…was intimately familiar with the details surrounding the parties' discovery dispute. The record clearly reflects that the Magistrate conducted numerous hearings and reviewed extensive briefing before ruling on Plaintiff's motion.").

Indeed, given that the Order to which Defendants have made their Rule 72 Objections is a Protective Order, issued pursuant to Fed. R. Civ. P. 26(c), which expressly authorizes the Court to use its discretion to prevent oppressive discovery, deference to that Order is especially warranted.  *See Millennium Mktg. Group, LLC v. United States*, 2008 U.S. Dist. LEXIS 75115, at *11 (S.D. Tex. Sept. 29, 2008) (reviewing issuance of protective order for clear error); *Frees, Inc. v. McMillian*, 2007 U.S. Dist. LEXIS 32736, at * 9 (W.D. La. May 1, 2007) (ruling that a magistrate's "Memorandum Order and Protective Order … were not clearly erroneous or contrary to law … [because Defendants failed to] cite[] binding jurisprudence in support of their positions.").  The question is not whether another Magistrate Judge would have made a different decision if presented with the same arguments, but whether Magistrate Judge Knowles abused his discretion in granting the Protective Order. *See Hunter v. Goodwill Indus. SELA, Inc.*, 2007 U.S. Dist. LEXIS 45185, at *4-5 (E.D. La. June 21, 2007) (finding no clear error even where other judge in same court came to different conclusion on substantially the same issue).  This is

clearly not the case, and Defendants Signal and Burnett have not come close to meeting the standard for overturning the Protective Order issued in this case.

## II.      DEFENDANTS HAVE OFFERED NO NEW, PERSUASIVE OR EVEN LEGITIMATE ARGUMENTS TO SET ASIDE THE PROTECTIVE ORDER.

As Magistrate Judge Knowles recognized, the chilling effect of "[a]llowing Defendants' inquiry into current [immigration] status under [the circumstances presented in this case] has a potential to invite abuse by employers and to undermine the goals of federal labor statutes." (Rec. Doc. 367 at 19)  His holding is consistent with the posture of this case, in which Plaintiffs have brought a lawsuit claiming that Defendants engaged in a scheme to entice Plaintiffs to pay exorbitant recruiting fees with false promises of permanent residency in the United States; to traffic Plaintiffs by exploiting the federal government's H-2B guestworker program and effectively binding Plaintiffs to the employ of Defendant Signal; and to compound Plaintiffs' predicament by subjecting Plaintiffs to sub-standard and discriminatory living and working conditions and, most importantly for purposes of this motion, by threatening Plaintiffs with deportation if they complained.  His holding is also consistent with the ample decisions of other courts issuing similar protective orders in labor cases.  *See, e.g., Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1065 (9th Cir. 2004) (affirming issuance of protective order on the ground that "[g]ranting employers the right to inquire into workers' immigration status in cases like this would allow them to raise implicitly the threat of deportation and criminal prosecution every time a worker, documented or undocumented, reports illegal practices or files a Title VII action"); *EEOC v. First Wireless Group, Inc.,* No. 03-CV-4990, 2007 U.S. Dist. LEXIS 11893, at*8 (E.D.N.Y. Feb. 20, 2007); *Potluri v. Yalamanchili*, No. 06-13517, 2007 U.S. Dist. LEXIS 64906, at *2 (E.D. Mich. Sept. 4, 2007) ; *Lozano v. City of Hazleton*, 496 F. Supp. 2d 477, 513-514 (M.D. Pa.

2007); *Recinos-Recinos v. Express Foresty, Inc.*, 2006 U.S. Dist. LEXIS 2510, at *43-45 (E.D. La. Jan. 24, 2006).

As is clear from Magistrate Judge Knowles' discussion of the "Contentions of the Parties," Signal and Burnett previously submitted to Magistrate Judge Knowles virtually all of the arguments contained in their Objections.  (Rec. Doc. 367 at 5-11)  He considered them, and properly rejected them.  Defendants' rehashing of their arguments in these Objections improperly subvert the deference traditionally given to the Magistrate Judge.

## 1.     Defendants' Attempts to Establish Any Relevance to the Precluded Areas of Inquiry Are Unavailing.

Defendants offer no real argument that the areas of inquiry now precluded by the Protective Order would have no intimidating effect on Plaintiffs – nor could they given the settled authority on the issue.[2]  Instead, Defendants offer mainly two arguments to contest Magistrate Judge Knowles' finding that the subject inquiries are of no cognizable relevance to this case.  First, Defendants argue that the Protective Order impairs their ability to present an *in pari delicto* defense.  Second, Defendants assert that the protected information is potentially relevant to the issue of damages.  Neither of these arguments has any support in fact or law.

### a.     The Protective Order does not impact any *in pari delicto* defense.

Defendants complain that the Protective Order somehow bars them from inquiring into statements Plaintiffs made to consular officials for the purpose of entering the United States in 2006-07.[3]  This argument again disingenuously ignores the temporal limitation of Magistrate Judge Knowles' Order.  Defendants have been and remain free to inquire into Plaintiffs' conduct

---

[2]     *See, e.g., Castellanos-Contreras v. Decatur Hotels, LLC*, No. 06-4340, slip op. at 21 (E.D. La. Oct. 22, 2007; *Flores v. Albertson's*, 2002 U.S. Dist. LEXIS 6717 (C.D. Cal. Apr. 9, 2002); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 530 F. Supp. 2d 746, 750 (D. Md. 2008).
[3]     Burnett's brief includes no reasoning in support of its *in pari delicto* argument, but simply makes a conclusory assertions that Plaintiffs' immigration status is relevant.  (Rec. Doc. 426 at 10)  This does not satisfy Rule 72's high standard.  *See Frees, Inc. v. McMillian*, 2007 U.S. Dist. LEXIS 32736 at * 9 (W.D. La. May 1, 2007).

occurring prior to the termination of their work with Signal.  This includes Plaintiffs' U.S.

consulate interviews, which apparently comprise the basis for Defendants' *in pari delicto*

defense.  In fact, at each class representative's deposition, Signal's counsel asked Plaintiff about

his consulate interview, and Plaintiffs' counsel permitted those questions, instructing the witness

not to answer only when a Fifth Amendment privilege was invoked, not because of the

Protective Order.  (Padaveettiyl Dep. at 91:18-94:15, Ex. A to Declaration of Tushar J. Sheth,

attached hereto; Khuttan Dep. at 287:2-20, Ex. B to Sheth Decl.; Thangamani Dep. at 316:1-24,

Ex. C to Sheth Decl.; Sulekha Dep. at 177:7-24, Ex. D to Sheth Decl.; David Dep. at 402:18-

414:8, Ex. E to Sheth Decl.)

Defendants' *in pari delicto* argument is disingenuous for another reason, and Plaintiffs

have no doubt it has been asserted not as a legitimate basis to overturn the Protective Order, but

as an underhanded attempt to discredit Plaintiffs before this Court.  Specifically, Signal

characterize Plaintiffs' conduct with respect to their consulate interviews as follows:  "The

testimony of most of the purported class representatives demonstrated that they actively,

knowingly, and voluntarily conspired and/or lied to United States consular officials about the

terms of their potential employment in the United States in order to fraudulently enter the United

States on temporary work visas.".  (Rec. Doc. 424-1 at 2)  Defendants instructed Plaintiffs to

respond to questions posed by consulate officials with Defendants' specific – albeit false –

answers.  These instructions were given by Defendants who had already taken Plaintiffs' life

savings, held Plaintiffs' passports, and threatened to return neither their money nor their

documents if Plaintiff failed to follow Defendants' instructions.  Indeed, those instructions were

to lie, including about how much money Plaintiffs had paid to Defendants.  (Khuttan Dep. at

281:20-283:19, Ex. B to Sheth Decl.)  Moreover, as revealed by documents recently produced by

Defendant Signal, it was Signal (and Defendant Burnett) who apparently lied – without any

coercion – to the United States government about the terms of employment of Plaintiffs.  At the

same time Defendants Signal and Burnett were representing to Plaintiffs that they would receive

permanent residency and employment, Signal Vice President Bill Bingle, in a document prepared

by Burnett, swore under oath to the United States government that Signal's need for the foreign

workers was for only ten months.  (Signal U.S. DOL Application for Alien Employment

Certification at BURNETT-CY-00362., Ex. F to Sheth Decl.)

Magistrate Judge Knowles expressly recognized that Defendants' *in pari delicto*

arguments were red herrings.  (Rec. Doc. 367 at 19)  Current immigration status is not at issue

with regard to statements Plaintiffs made to enter the country in 2006 and 2007; and to the extent

Defendants are suggesting that if Plaintiffs are out of status post-termination from Signal that

would somehow support an *in pari delicto* defense, Defendants' argument would effectively

preclude any illegal alien from bringing any legal claim.  That is clearly not the law.  *See e.g.*,

*Plyler v. Doe*, 457 U.S. 202, 210 (1982) (finding that the U.S. Constitution affords aliens equal

protection of the laws regardless of immigration status).  As Magistrate Judge Knowles found:

"Allowing inquiry into plaintiffs' post-termination status under these circumstances is

tantamount to a categorical ruling  precluding foreign nationals from any protection against the

type of abuses alleged."  (Rec. Doc. 367 at 19)

### b.    Plaintiffs' post-Signal immigration status does not bear on the issue of  damages.

Defendants' second purported relevance argument relates to mitigation of damages.[4]  Namely,

Defendants posit that if any Plaintiff obtained a green card from another source after leaving

Signal, that would somehow mitigate the damages owed by Defendants to Plaintiffs for

---

[4]    Burnett joins Signal's argument.  (Rec. Doc. 426-2 at 11-12)

Defendants' failure to fulfill their promise to obtain green cards for Plaintiffs.  While such an argument might have some plausibility in a case where a party was seeking a certain measure of expectation damages, it has no plausible place in this case.

Plaintiffs here are seeking the actual damages they suffered which, for the breach of promise of a green card, include the approximately $12,000 – $15,000 that each Plaintiff paid under agreements with Defendants to provide permanent, employment-based residency visas in the United States.  Even if one or more of the Plaintiffs were somehow able to have obtained a green card after leaving Signal and through no effort of Signal or any other Defendants, those Plaintiffs would still be entitled to the entire amount they paid to Defendants for the promise that was not kept.  Defendants' mitigation argument simply does not apply.

Defendants also note, correctly, that Plaintiffs seek, as a component of damages, interest they paid on debt assumed to make the payments required by Defendants (and made in reliance on Defendants' misrepresentations).  Defendants thus contend that they should be allowed to inquire about "Plaintiffs' ability to earn money now and retire the very debt they are claiming is an element of their damages in this lawsuit."  (Rec. Doc. 424-1 at 19)  In fact, this is a specious argument:  The Protective Order does not prohibit questions about Plaintiffs' debt, including the amount of debt Plaintiffs have been able to retire, even after leaving Signal, and Defendants have received deposition answers to those very questions.  (Khuttan Dep. at 433:12-435:7, Ex. B to Sheth Decl.; Thangamani Dep. at 417:19-432:12, Ex. C to Sheth Decl.; Sulekha Dep. at 335:5-339:6, Ex. D to Sheth Decl.; David Dep. at 474:2-476:14, Ex. E to Sheth Decl.)  The Protective Order merely prohibits inquiry into the identity of any possible post-Signal employers.

Defendant Burnett's final argument on damages relies on the misplaced belief that because one Judge found employment history relevant in one case then it must follow that

Magistrate Judge Knowles clearly erred in ruling it irrelevant in *this* case.  (Rec. Doc. 426-2 at 10 (citing to *Galaviz-Zamora v. Brady Farms, Inc.*, 230 F.R.D. 499 (W.D. Mich. Sept. 23, 2005)).  Burnett misunderstands the "clear error" standard.  *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Hunter*, 2007 U.S. Dist. LEXIS 45185, at *4 ("Federal law affords a magistrate judge broad discretion in the resolution of non-dispositive pretrial matters.").  Burnett's assertion that the Rule 26(c) standard was not met, (Rec. Doc. 426-2 at 11), overlooks Magistrate Judge Knowles' amply supported finding that in this case the information sought to be protected is "both irrelevant and prejudicial."  (Rec. Doc. 367 at 16; *see also id.* at 17-19)

### 2.  None of Defendants' Additional Arguments Has Any Merit.

Defendants' additional arguments for overturning the Protective Order are all unsupported, and were properly considered and rejected by Magistrate Judge Knowles.

### a.  Plaintiffs' immigration status does not bear on their standing to bring claims

Signal's argument that Plaintiffs may not be able to pursue certain claims and elements of damages due to immigration status falls short of the Rule 72 standard.  Rather than supporting a position, with authorities, that Magistrate Judge Knowles' ruling is clearly erroneous, Signal simply posits – without any support at all – that immigration status "may" have a potential impact on Plaintiffs' ability to pursue claims.  (Rec. Doc. 424-1 at 8-9)

Even were this motion not brought pursuant to Rule 72, Signal's argument would be ineffectual.  Signal has not identified a single claim in this case in which any Plaintiff's standing is limited by his immigration status.  Unable to identify why immigration status might be relevant, Signal instead relies on *Hoffman Plastics Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002), which held only that the National Labor Relations Board ("NLRB") lacked authority to remedy an illegal firing of an undocumented worker with reinstatement with backpay "for years

11

of work not performed." *Id.* at 149.  Plaintiffs here seek neither reinstatement nor backpay for work not performed, and they bring no claims before the NLRB.  Magistrate Judge Knowles' finding, that "[t]he *Hoffman* case is inapposite," (Rec. Doc. 367 at 14), is consistent with nearly every courts' analysis of *Hoffman* in situations where plaintiffs seek compensation for the terms and conditions of work actually performed and wrongs actually suffered.  (*See id.* at 14-15 and n. 32 (citing cases))

In fact, Signal's invocation of *Hoffman* also runs counter to the protections Congress enacted in creating the broad remedies contemplated in the FLSA, RICO,[5] anti-trafficking,[6] and civil rights protections, all afforded without regard to immigration status.  Absent access to U.S. courts, foreign workers would be uniquely vulnerable to abuse.  Faced with the question of whether to protect such Plaintiffs from inquiries as to immigration status post-*Hoffman*, most courts have found that public policy mandates the granting of a protective order such as that requested by Plaintiffs.  *See, e.g., EEOC v. City of Joliet*, 239 F.R.D. 490, 492 (N.D. Ill. 2006) (granting protective order on immigration status on the ground that "safeguarding the rights of such [undocumented] workers to enforce laws such as Title VII will, in effect, strengthen our immigration laws by removing one of the main motivations for hiring undocumented workers in the first place").  Magistrate Judge Knowles was well within his discretion and well supported in finding *Hoffman Plastics* inapposite.

---

[5]     The remedial purpose of the RICO was articulated by the U.S. Supreme Court in *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 498 (1985) ("RICO is to be liberally construed to effectuate its remedial purposes").

[6]     Congress addressed this paradigm when it passed the Trafficking Victims Protection Act of 2000 ("TVPA"), finding that:

> Existing laws often fail to protect victims of trafficking, and because victims are often illegal immigrants in the destination country, they are repeatedly punished more harshly than the traffickers themselves.. . . Victims of severe forms of trafficking should not be inappropriately incarcerated, fined, or otherwise penalized solely for unlawful acts committed as a direct result of being trafficked, such as using false documents, entering the country without documentation, or working without documentation.

22 U.S.C. § 7101(17) and (19).  Plaintiffs bring claims under the TVPA against most Defendants in this action.

**b.**      **Immigration status does not impact adequacy or typicality of a
class representative.**

Defendants' arguments on adequacy of a class representative ignore the Fifth Circuit's
standard and are symptomatic of Defendants' lack of understanding of what constitutes an
adequate representative.  For example, counsel for Signal spent hours at the depositions of the
class representatives asking these welders and pipe-fitters entirely irrelevant questions such as
their definitions of "involuntary servitude" and "racketeering".  (Padaveettiyl Dep. at 84:25-91:6,
Ex. A to Sheth Decl; Khuttan Dep. at 62:21-65:2, Ex. B to Sheth Decl.; Thangamani Dep. at
63:10-69:19, Ex. C to Sheth Decl.; Sulekha Dep. at 74:19-79:16, Ex. D to Sheth Decl.; David
Dep. at 197:13-201:20, Ex. E to Sheth Decl.)  Drafting a complaint and identifying appropriate
claims from the facts is what these workers retained lawyers to do.  As Magistrate Judge
Knowles correctly observed:  "As to the adequacy of representation, this is a question primarily
dependent on the lack of conflict between the named Plaintiff and putative class members and
the resources and skills of counsel, not the characteristics of the representative Plaintiff."  (Rec.
Doc. 367 at 18); *see also James*, 254 F.3d at 571 ("Differences between named Plaintiffs and
class members render the named Plaintiffs inadequate representatives only if those differences
create conflicts between the named Plaintiffs' interests and the class members' interests.");
*Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472, 479 (E.D. La. 2006) (finding
Plaintiffs adequate based on absence of conflict between representatives and class members).

Defendants have tried to surmise a conflict among Plaintiffs that could bear on adequacy,
but that conflict is a fiction.  Namely, Signal suggests that the T-visa or U-visa process in which
Defendants allege one or more Plaintiffs may be engaged could impact or be impacted by the
civil litigation.  This argument is simply wrong and misunderstands the T and U visa process.
Any disposition, including settlement, of this matter, would have no impact on the T or U visa

13

application process as applied to any individual Plaintiff.  In fact, the application for a T or U

visa is a wholly separate process conducted by the U.S. Citizenship and Immigration Service

("USCIS") having nothing to do with this lawsuit.  Even a cursory review of the relevant statutes

and accompanying regulations show that the outcome of a civil proceeding is not among the

factors to be considered by the USCIS in making a determination on a T[7] or U[8] visa application.

*See* 8 U.S.C. § 1101(a)(15)(T), 8 C.F.R. § 214.11 (T visa); 8 U.S.C. § 1101(a)(15)(U), 8 C.F.R.

§ 214.14 (U visa).

Correlatively, allowing in civil litigation the question of whether any Plaintiff has applied

for T or U visa relief would inherently subvert the purpose of those visas and undermine law

enforcement efforts to investigate human trafficking and other crimes.  Because both visas

require the existence of a law enforcement investigation or prosecution, requiring disclosure of

the existence of T visa applications necessarily has the effect of disclosing the existence of a law

enforcement investigation.  If T and U visa applications were discoverable, this would have the

perverse result of turning a program designed to allow immigrant crime victims to assist law

enforcement investigations into a program that necessarily discloses the existence of such an

investigation.  This would run contrary to the public interest in maintaining the confidentiality of

law enforcement investigations.  *See, e.g., Cotton v. Privatebank & Trust Co.*, 235 F. Supp. 2d

809, 815 (N.D. Ill. 2002) (release of suspicious activity report in civil litigation "could

---

[7]     The T visa is only available where *the Secretary of Homeland Security and the Attorney General* determine that the alien has been a victim of a severe form of trafficking, is physically present in the United States on account of such trafficking, has complied with reasonable requests for assistance from law enforcement investigating or prosecuting trafficking-related crimes, and would suffer extreme hardship upon removal from the United States.  *See* 8 U.S.C. § 1101(a)(15)(T)(i).  Cooperation with a *criminal* investigation or prosecution is mandatory for T visa applicants.  Participation in, or the success of, a *civil* action is entirely immaterial to the T visa application process.

[8]     To be eligible for U visa relief, an alien (1) must have "suffered substantial physical or mental abuse as a result of having been a victim of criminal activity" enumerated by the Act; (2) must "possess[] information" concerning the qualifying criminal activity; and (3) must have "been helpful, is being helpful, or is likely to be helpful" in the investigation or prosecution of the qualifying criminal act.  *See* 8 U.S.C. § 1101(a)(15)(U)(i).  As with T visas, there must be a law enforcement investigation for an applicant to be eligible for U visa relief, although the investigation may be "at the very early stages."  72 Fed. Reg. 53019.  Once again, a civil action is irrelevant to U visa relief.

compromise an ongoing law enforcement investigation [or] tip off a criminal wishing to evade detection"); *G-69 v. Degnan*, 130 F.R.D. 339, 344 (D.N.J. 1990) (document properly withheld where it would reveal the existence of a law enforcement investigation).[9]  Finally, regardless of the immigration status of the putative class representatives, and regardless of whether they have applied for, or been granted, a T or U visa, their interests in advancing the claims in this case will not differ from the interests of the putative class members.

Without citing case law in support, Defendant Burnett additionally asserts that Plaintiffs' immigration status may destroy the necessary element of typicality for class representation. (Rec. Doc. 426-2 at 9)  This is a misguided argument to make on a Rule 72 standard given the Fifth Circuit's low threshold to show typicality.  *See, e.g., James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) ("[T]he test for typicality is not demanding.").  Plaintiffs allege that Defendants lured them into a common scheme to defraud them with promises of green cards and then to exploit their labor, and those common elements suffice for typicality.  *See Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993) (finding typicality satisfied by allegations that Defendants' supervisors in different plants used "similar discriminatory employment practices"); *Stoffels v. SBC Communs., Inc.*, 238 F.R.D. 446, 453 (W.D. Tex. 2006) (finding typical claims where named Plaintiffs alleged the same legal and remedial theories on behalf of themselves and other class members)[10]

Finally, Signal argues that non-resident Plaintiffs may have trouble appearing for proceedings in this case, and therefore may be inadequate class representatives, although Signal

---

[9]    Indeed, U visa regulations generally prohibit federal agencies themselves from disclosing any information relating to a U visa petition.  *See* 8 C.F.R. § 214.14(e).

[10]   Burnett also asserts that Plaintiffs have placed their "current immigration status into question" by defining the class as "Indian men recruited … with the promise of receiving employment-based legal permanent residency." (Rec. Doc. 426-2 at 9)  However, the Protective Order does not cover the immigration promises made during Plaintiffs' recruitment, nor does it bar Defendants from seeking information about Plaintiffs' immigration status while they were at Signal.  (Rec. Doc. 367)

acknowledges that it has no authority for this argument.  (Rec. Doc. 424-1 at 9)  To the contrary,

as Magistrate Judge Knowles noted, it is well-established that undocumented migrants can be

adequate class representatives.  (Rec. Doc. 367 at 12-13); *see also McNary v. Haitian Refugee*

*Center, Inc.*, 498 U.S. 479 (1991) (affirming finding of jurisdiction over class action brought by

undocumented migrants); *Martinez v. Mecca Farms, Inc.*, 213 F.R.D. 601, 606 (S.D. Fla. 2002)

(rejecting adequacy arguments based on named representatives' immigration status).  Further,

Signal's hypothesis is belied by the record in this case.  Named Plaintiffs have appeared and sat

for 14 days of depositions in New Orleans without complaint or problems related to Plaintiffs'

availability.

### c.      Defendants' credibility argument is a red herring.

Signal argues that inquiries regarding Plaintiffs' current immigration status are necessary

to test their credibility is unavailing.  The Protective Order leaves plenty of room for Defendants

to test Plaintiffs' credibility on truly relevant issues, prior to and during their time at Signal.

Each proposed class representative[11] has submitted to a deposition that lasted two to four days.

At these depositions, Plaintiffs freely answered questions on every subject necessary to prove or

defend the claims in this case, including their recruitment, time at Signal, and personal

backgrounds.  Defendants' broad argument would effectively prevent undocumented migrants

from protecting their workplace rights.  This is not the law and would create a perverse incentive

for unethical employers to hire and mistreat undocumented workers.  *See Ansoumana v.*

*Gristede's Operating Corp.*, 201 F.R.D. 81, 87 (S.D.N.Y. 2001) (immigration status not relevant

to credibility); *Galavais-Zamora*, 230 F.R.D. at 502 (same).

---

[11]     One proposed class representative, Dhananjaya Kechuru, has not sat for deposition pending determination of the status of Defendants Kurella Rao and Indo-Ameri Soft LLC.

**d.      The chilling effect of reasonable fears of detention and deportation is not limited to the FLSA context.**

Defendants incorrectly assert that Magistrate Judge Knowles' ruling improperly extends a wage-and-hour Fair Labor Standards Act ("FLSA") rule.  (Rec. Doc. 424-1 at 12; Rec. Doc. 426-2 at 6-8)  Defendants are mistaken in two ways.  First, this case *is* a FLSA case:  Plaintiffs seek unpaid minimum and overtime wages under the FLSA.  (Rec. Doc. 47 at ¶¶ 358-365, 1st Am Compl.)  Second, in actions involving additional, non-FLSA claims, such as this case, several courts have recognized the *in terrorem* effect posed by inquiries into immigration status (and the backdoor approach through employment status) on any undocumented workers.  *See, e.g., Topo v. Dhir*, 210 F.R.D. 76 (S.D.N.Y 2002) (trafficking and involuntary servitude); *see also* Rivera, 364 F.3d at 1057 (violations of Title VII); *First Wireless Group, Inc.,* 2007 U.S. Dist. LEXIS 11893, at *8 (Title VII); *Potluri*, 2007 U.S. Dist. LEXIS 64906, at *2 (breach of contract); *Lozano*, 496 F. Supp. 2d at 513-514 (42 U.S.C. § 1981 and Fair Housing Act); *EEOC v. City of Joliet*, 239 F.R.D. 490, 493 (N.D. Ill. 2006) (Title VII); *Flores v. Albertsons, Inc.*, 2002 U.S. Dist. LEXIS 6171 (C.D. Cal. Apr. 9, 2002) (breach of contract and fraud); *Romero v. Boyd Bros. Transp. Co., Inc.*, 1994 U.S. Dist. LEXIS 8609, at *7 (W.D. Va. 1994) (tort).  These courts realized, as has Magistrate Judge Knowles, that the inquiries at issue here are inherently threatening.  Nothing about any of these cases is peculiar to the cause of action, other than these are the types of abuses that foreign workers often face.  All of these cases turn not on the cause of action, but on the situation of the plaintiff.  In this case, the inquiries are particularly threatening because, as the workers have alleged, Defendants have already threatened them with deportation when workers complained about conditions at Signal.  It is axiomatic that an immigrant who is out of status reasonably fears that a visit by Immigration and Customs Enforcement ("ICE") agents would follow any revelation of his current immigration status,

physical location, and any current employment information.  Signal's assertion that ICE already

knows these details of Plaintiffs' immigration status is just wrong.

### III.   MAGISTRATE JUDGE KNOWLES PROPERLY CONSIDERED THE EVIDENTIARY RECORD IN THIS CASE.

Signal contends that Magistrate Judge Knowles incorrectly sought out evidence from

elsewhere in the record to support his ruling and that doing so is "an improper exercise of the

limited ability of a court to take judicial notice under Federal Rule of Evidence 201."  The mere

fact that this argument is even raised by Signal is misleading as courts have recognized that

questioning related to immigration status where it is not relevant to any claim *inherently* results

in an *in terrorem* effect.  *See Topo*, 210 F.R.D. at 78.  Magistrate Knowles treatment of evidence

from elsewhere in the record is of no consequence as no evidentiary showing was required.

Indeed, if the Court were to require such a showing, Plaintiffs would be placed in the impossible

position of submitting sworn declarations containing the very information that Plaintiffs are

seeking the Court's protection from having to provide.

Moreover, Signal's attempt to use judicial notice to assert that Magistrate Judge

Knowles' decision was clearly erroneous or contrary to law evidences its misunderstanding of

the judicial notice doctrine.  The problems related to taking judicial notice usually arise when the

court is being asked to accept the veracity of arguments, disputed facts, and one party's opinion

of how a matter of public record should be interpreted.  The court may take judicial notice of the

existence of the matters of public record.  *Sims v. Dow Chemical Co.* Slip Copy, 2009 WL

722302, at *5 (M.D. La, 2009), *citing U.S. v. Southern California Edison, Co.*, 300 F.Supp.2d

964, 974-76 (E.D.Cal.2004).  In *Dow,* the Court, in deciding whether there was an improper

joinder warranting a remand, judicially noticed the following from a similar case in which a

remand was warranted: the original state court petition, the parties' memoranda offered in

support of and in opposition to the motion to remand, and the court's ruling on the motion. The *Dow* court then considered those filings and its applicability to the matter it was adjudicating.

Magistrate Judge Knowles' application of judicial notice was more limited than even that of the Court in *Dow*. Magistrate Judge Knowles merely took "judicial notice" of sworn declarations filed in the same case. Further, as in *Dow*, Magistrate Judge Knowles did not take judicial notice of previous determinations of the veracity of those declarations, he merely noticed their existence. More specifically, Magistrate Judge Knowles was well within his authority to draw from sworn declarations already included in the court record to determine whether questioning Plaintiffs' immigration status and current residence would terrorize them and "chill any inclination they may have had to prosecute any claims." (Rec. Doc. 367 at 21) The conclusions that he drew did not arise under the doctrine of judicial notice, but rather under his own reasoned interpretation of the declarations. Magistrate Judge Knowles' application of the declarations is neither an error nor contrary to law. Rather, it is well within the parameters available to a Magistrate in arriving at a fair and reasoned conclusion.

Signal cites only one decision, *Knutson v. Allis-Chalmers Corp.,* 358 F. Supp. 2d 983 (D. Nev. 2005), for its "judicial notice" argument. Not only is the substance of the documents in that Nevada district court case of significantly lesser probity than in the instant case, but also the *Knutson* court explicitly stated that "[t]he Court may take judicial notice of its own records, records of inferior Courts and records on file with the Court." 358 F. Supp. 2d. at 989. While the *Knutson* court declined to take judicial notice of purported facts, that decision certainly does not prohibit a court from drawing upon filings in the court record for the purpose of considering the Plaintiffs' mindset, which is the critical element of an *in terrorem* finding. In other words, the *Knutson* decision does not stand for the proposition that sworn declarations already in the case

19

record cannot be relied upon by a magistrate in adjudicating a pre-trial discovery matter.  Absent

even one decision on point to support its judicial notice argument, Signal does not come close to

making the required showing that Magistrate Judge Knowles acted in clear error or contrary to

the law.

Signal, relying on Rule 201(e) of the Federal Rules of Evidence, further argues that even

if it were correct for Magistrate Judge Knowles to use "information *sua sponte* that was not

submitted with a motion and base his ruling on it, he erred by not providing the Defendants with

notice of this effort and an opportunity to rebut the information on which he was basing his

ruling."  (Rec. Doc. 424-1 at 19)  In making this argument, Signal misstates both the law and the

facts.  When a court does not give advance warning that judicial notice will be taken, a party may

request to be heard after the judicial notice has been taken. Fed. Rules of Ev. R. 201(e). Given

that Rule 201(e) specifically contemplates the situation in which parties are not given advance

warning of a court taking judicial notice, it simply cannot be an error, as Signal asserts, for a

court to fail to give advance warning.  As to misstating the facts, Signal characterizes Magistrate

Judge Knowles as *basing* his decision on these sworn declarations.  Magistrate Judge Knowles'

ruling indicates a litany of other considerations supporting his conclusion, such as the prejudice

of allowing discovery of Plaintiffs' current immigration status far outweighing its probative

value and the inapplicability of *Hoffman Plastic Compounds, Inc. v NLRB* 535 U.S. 137 (2002),

a case which Signal relies upon heavily.

Perhaps most revealing and indicative of the lack of merit to Defendants' Objections,

Signal has taken this opportunity to preview for the Court its defenses on the merits of the case.

Thus, in response to Magistrate Judge Knowles' observation that he finds it "difficult to imagine

a predicament more dire" than the one faced by Plaintiffs as described in their sworn

20

declarations, (Rec. Doc. 367 at 20), Signal protests for three pages its version of events.  Of course, Magistrate Judge Knowles' observation – which happens to be entirely  correct[12] – was not the basis of his decision, but was part of the context from which he properly inferred the *in terrorem* impact of the inquiries from which Plaintiffs were seeking protection.  To the extent Defendants, in their briefing before Magistrate Judge Knowles questioned (as they continue to do in their Objections) whether Plaintiffs should really be so concerned with testifying under oath about their current legal status, or providing information that would disclose their current place of employment or residence, Plaintiffs' description of their exploitation by Defendants and their "dire predicament" helped Magistrate Judge Knowles answer that question.

---

[12]   To the extent Signal has addressed the merits, it appears that its principal defense to the false representations made to Plaintiffs about green cards, the exorbitant fees Plaintiffs were charged, and their exploitation in cramped labor camps at Signal will be that the wages Plaintiffs earned (for the <u>work</u> they performed) somehow made up for any and all wrongdoing by Defendants.  (Rec. Doc. 424-1 at 9)

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully submit that Defendants' Objections to Magistrate Judge Knowles' ruling on the Protective Order be denied.  The decision should not be overturned.

Submitted this 19th day of May, 2009

/s/ Tushar Sheth
Tushar J. Sheth (*pro hac vice*)
New York Bar No. 4088902
Asian American Legal Defense and
Education Fund
99 Hudson Street, 12th Floor
New York, New York 10013
Telephone: (212) 966-5932
Facsimile: (212) 966-4303
tsheth@aaldef.org


Alan B. Howard, T.A. (*pro hac vice*)
Dewey & LeBoeuf LLP
New York Bar No. 2136661
1301 Avenue of the Americas
New York, NY 10019
Direct: (212) 259-8549
General: (212) 259-8000
Facsimile: (212) 649-9408

Sean Gorman (*pro hac vice*)
Texas Bar No. 0821810
S. Justin Warf (*pro hac vice*)
Texas Bar No. 24028109
Robert P. Wynne
Texas Bar No. 24060861
Dewey & LeBoeuf LLP
1000 Main Street, Suite 2550
Houston, Texas 77002
General: (713) 287-2000
Facsimile: (713) 445-2124

/s/ Naomi Tsu
Naomi Tsu (*pro hac vice*)
California Bar No. 248599
Daniel Werner (*pro hac vice*)
New York Bar No. 3969839
Kristi L. Graunke (*pro hac vice*)
Georgia Bar No. 305653
Mary C. Bauer (*pro hac vice*)
Virginia Bar No. 21388
Morris S. Dees (*pro hac vice*)
Alabama Bar No. ADB-7003-E50M
Immigrant Justice Project
Southern Poverty Law Center
233 Peachtree Street, Suite 2150
Atlanta, Georgia 30303
Telephone: (404) 521-6700
Facsimile: (404) 221-5857
kgraunke@splcenter.org
mbauer@splcenter.org
daniel.werner@splcenter.org
Naomi.tsu@splcenter.org


Jennifer Jean Rosenbaum
New Orleans Workers' Center for Racial Justice
803 Baronne St.
New Orleans , LA 70113
(615) 423-0152
Email: jjrosenbaum@post.harvard.edu

## CERTIFICATE OF SERVICE

      I, Tushar J. Sheth, do hereby certify that I served on this day, May 19, 2009, via ECF true and correct copies of the attached motion on counsel for Defendants:

Middleberg, Riddle & Gianna
201 St. Charles Ave., 31st Floor
New Orleans, LA 70170-3100

Porteous, Hainkel & Johnson
704 Carondelet St.
New Orleans, LA 70130-3774

Briskman & Binion, PC
P. O. Box 43
Mobile , AL 36601

Barrasso Usdin Kupperman Freeman & Sarver, LLC
LL&E Tower
909 Poydras St., Suite 2400
New Orleans, LA 70112

Stephen H. Shapiro, Esquire
200 Maine Street
Jefferson, LA  70121

      I further certify that the attached motion has been sent by first class mail, properly addressed and with postage pre-paid to:

Kurella Rao
Indo-Ameri Soft, LLC
Post Office Box 740037
New Orleans, LA 70174

and

Kurella Rao
Indo-Ameri Soft, LLC
2508 Gate Circle, Apt. 22
Baton Rouge, LA  70809-1029

                        _____/s/ Tushar J. Sheth_____
                               Tushar J. Sheth