## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KURIAN DAVID, ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                          **NO. 08-1220**

**SIGNAL INTERNATIONAL, LLC, ET AL.**                **SECTION "A" (3)**

### ORDER

On December 16, 2009, and after oral hearing, this Court took under advisement Plaintiffs'
Motion to Compel Production of Documents and Deposition Testimony; or Alternatively for
Reconsideration of the Court's Order Denying Plaintiffs' Motion to Compel [Doc. #580]. For the
following reasons, the Court GRANTS the motion in part and DENIES the motion in part.

### I.        Background

Plaintiffs filed their complaint on behalf of a putative class that consists of over 500 Indian
men whom defendants allegedly trafficked into the United States through the federal government's
H-2B guestworker1visa program in violation of putative class plaintiffs' rights to be free from
forced labor, involuntary servitude and peonage under the Thirteenth Amendment and 18 U.S.C. §
1854. Additionally, plaintiffs claim violations of the Trafficking Victims Protection Act of 2003,
18 U.S.C. §§ 1589-90 ("TVPA") and violations of their rights under 42 U.S.C. § 1981 to be free
from a hostile work environment and discrimination based on race, national origin, and/or alienage
status, all of the foregoing in violation of the Racketeer Influenced and Corrupt Organizations Act,

18 U.S.C. § 1962( c)-(d) ("RICO"). [Doc. #1].  On October 1, 2008, putative class plaintiffs filed their motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3). [Doc. # 165].

The putative class of over 500 Indian men secured visas to work in the United States for defendant Signal International, L.L.C. ("Signal") in the aftermath of Hurricane Katrina.  Signal provides construction services to the Gulf Coast oil and gas industry.  Plaintiffs allege that beginning in late 2003, defendants Dewan Consultants and Sachin Dewan ("the Dewan defendants"), Global Resources, Inc. and Michael Pol ("the Global defendants") and Dr. Kurella Rao and Indo-Amerisoft, L.L.C. ("IAS") placed advertisements in various newspapers across India and the United Arab Emirates, which advertisements sought welders, fitters and other marine fabrication workers on behalf of various U.S.-based companies.  The advertisements promised that qualified candidates could obtain legal permanent residence (green cards) and thereby legally and permanently immigrate to the United States with their families.  Plaintiffs contend that they paid exorbitant fees to defendants for recruitment, immigration processing and travel.  Plaintiffs maintain that unbeknownst to them, they were never eligible to obtain the promised green cards and that, upon arrival in the United States, defendants subjected them to serious abuses and forced labor at Signal's labor camps in Pascagoula, Mississippi and in Orange, Texas.

Putative class representative David Kurian's factual assertions are representative of those of the other plaintiffs. [Doc. #174-3].  The allegations are as follows.  According to David, a citizen of India, he saw a newspaper advertisement by Dewan Consultants while employed in Abu Dhabi. In May 2006, David attended a seminar led by defendant Sachin Dewan with the assistance of

defendant Malvern Burnett of the Law Offices of Malvern C. Burnett, A.P.L.C. ("the Burnett defendants"). David claims that, at the seminar, Dewan told the attendees that for 600,000 rupees (over $12,000.00) plus costs, he could obtain an employment-based green card in the United States. The attendees were told that the money would be paid in three installments and that the money would cover Dewan's fee as well as the fees for Burnett and Michael Pol. Burnett is an attorney at law who specializes in immigration matters, and Pol owns Global Resources, Inc., a company that helps American companies find skilled labor to work at their facilities. David claims that Burnett spoke at the seminar and explained to the potential recruitees how the green card process would work.

David took and passed the pipe-fitter skills test. David then attended two additional group meetings, the second of which was led by Dewan and Burnett. Burnett explained the green card process once again, and he and Dewan handed out contracts from Global Resources, Burnett, and Dewan Consultants and an employment form for Signal. A representative from Dewan's office helped the group to fill out the forms.

In June and August 2006, David made installment payments at Dewan's office, which included checks made payable to Burnett and Pol. In late August 2006, David attended a meeting in Dubai, where Dewan and Burnett told the workers that before their visas would expire, the green cards would be approved. At a subsequent meeting, Dewan and Burnett gave the workers instructions on how to answer questions from the American consular officers during their visa interviews. Dewan and Burnett allegedly instructed the workers not to reveal how much money they had paid for the recruitment fees and not to mention the green cards.

The consulate officials took David's passport and, at the behest of Dewan Consultants, the passport was returned directly to Dewan's office. According to David, Dewan refused to return his passport until he made the final installment payment to Dewan and paid for medical testing to be performed by a physician chosen by Dewan.

In February 2007, David made the final payment with checks made payable to Dewan, Burnett and Pol. David claims that he was then rushed to sign forms written in English that he could not understand, and it was only upon signing these forms and making the final installment payment that Dewan finally returned his passport. During this process, David saw other workers try to back out and have their money returned, but someone from Dewan Consultants would then threaten to destroy their passports in retaliation. David contends that he and his wife sold many of their personal belongings to raise the money necessary to pay Dewan, Burnett and Pol.

On February 16, 2007, David arrived at Signal's labor camp in Orange, Texas where he signed a number of additional employment forms. David claims that he later learned that the forms allowed Signal to take deductions from his salary for food and accommodations and that Signal required the workers to open an account with a specific bank where their paychecks would be deposited. David charges that the living conditions and food at Signal were horrible and that the Indian workers were told that even if they left, they would be charged the daily rate of room and board.

David claims that the Indian workers were searched by guards when they would come and go from the camp and that guards would sometimes come into the living quarters at night to search workers' belongings. According to David, the workers began to get sick because of the

overcrowded conditions. Signal also required the workers to purchase all of their own tools. David claims that the workers were relegated to performing all of the dangerous and dirty work inside of the ships and that the American workers were not required to do such work.

According to David, when the workers complained, Signal made more promises about the green cards and threatened that if the workers continued to complain, they would be deported and not receive the promised visas. David continued to work under conditions that he characterizes as horrible because he was afraid of the consequences of leaving, given that he had incurred so much debt to raise the money to come to the United States.

## II.     The Instant Motion

The instant motion concerns defendant Dr. Kurella Rao, who allegedly aided other defendants to recruit the Indian workers. Specifically, the motion addresses whether Rao has waived the attorney-client privilege as to communications between himself and the Burnett defendants, the immigration attorneys who allegedly facilitated the recruitment of the putative class. Outlined below are the various parties' contentions.

### 1.     Plaintiffs

Plaintiffs argue that Rao seeks to reinstate a privilege that he has already expressly waived. Specifically, plaintiffs ask the Court to (1) find that Rao has waived the attorney-client privilege, order the Burnett defendants to produce all documents reflecting communications with Rao and order Rao to appear for a second deposition at his expense; or (2) if the Court determines that Rao did not waive the privilege, reconsider the Court's earlier order denying as moot plaintiffs' motion to compel documents improperly withheld under the attorney-client privilege.

Plaintiffs argue that on May 6, 2009, Rao expressly stated to two of plaintiffs' attorneys, Chandra Bhatnagar and Naomi Tsu, that he was expressly waiving the attorney-client privilege as to the Burnett defendants. At a June 24, 2009 hearing on plaintiffs' earlier motion to compel, plaintiffs' counsel stated that they thought that all of the defendants had waived the privilege. Plaintiffs note that at that hearing, Rao made no effort to disagree with plaintiffs' counsel's statement. Accordingly, this Court then denied as moot plaintiffs' motion to compel production of documents improperly withheld under the attorney-client privilege.

Plaintiffs then scheduled the deposition of Rao. At the September 2009 deposition, Rao indicated that he had never waived the attorney-client privilege and that he would continue to assert it during the deposition. Rao indicated that he had stated that he was not waiving the privilege at the June 2009 hearing, but plaintiffs argue that the transcript belies this statement. Rao did not answer questions at the deposition concerning attorneys' fees paid to the Burnett defendants.[1] On the same day of the deposition, the Burnett defendants served a privilege log on plaintiffs, which listed seven documents withheld based on Rao's assertion of privilege.

Plaintiffs argue that Rao waived the privilege on the phone to Bhatnagar and Tsu. Plaintiffs also assert that Rao had every opportunity to enforce his privilege at the June 2009 hearing, and he failed to do so. Citing case law from other circuits, plaintiffs maintain that it is axiomatic that once a party has waived the attorney-client privilege, he may not later re-assert it to block discovery. Accordingly, plaintiff asks this Court to find that Rao has waived the attorney-client privilege.

---

[1] The Court notes that this information is not privileged in any event. *Estate of J. Edgar Monroe v. Bottle Rock Power Corp.*, Civ. A. No. 03-2682, 2004 WL 737463, at *11 (E.D. La. Apr. 2, 2004) (Knowles, M.J.).

Alternatively, plaintiffs ask the Court to reconsider its earlier order – denying as moot plaintiffs' motion to compel documents improperly withheld under the attorney-client privilege – in the event the Court finds that Rao did not waive the privilege. Citing Federal Rule of Civil Procedure 60(b)(1), plaintiffs assert that the Court may reconsider its order when the order arose out of a mistake by a party or by the Court. Believing that all defendants had waived the attorney-client privilege, according to plaintiffs, is just such a mistake.

Lastly, plaintiffs ask that the Burnett defendants produce all documents listed in their September 17, 2009 privilege log (if the Court determines that Rao waived the attorney-client privilege). Plaintiffs further ask the Court to order Rao to sit for a second deposition at his expense.

## 2. Signal

Signal asserts that Rao waived the attorney-client privilege as well as the privilege of IAS (Rao's now-defunct corporation) at his earlier September 11, 2008 deposition when he testified about the content of conversations protected by the privilege. Signal also contends that Rao further waived the privilege when he produced privileged communications through responses to plaintiffs' initial and second discovery requests.

Signal notes that at the September 11, 2008 deposition – when Rao was represented by counsel – Rao's counsel explicitly explained to Rao that he did not have to testify as to any communication between himself and the Burnett defendants. Rao indicated to counsel that he understood. Notwithstanding the warning, Rao testified about privileged communications with the Burnett defendants. Signal cites three instances at the September 2008 deposition when Rao testified as to privileged communications. Later, counsel for Rao withdrew. Rao has since indicated

to the Court and to all parties that he intends to represent himself. Signal notes that after counsel's withdrawal, Rao produced e-mail communications sent to him and the Dewan defendants by the Burnett defendants.

During the September 2009 deposition, the parties discussed this Court's June 24, 2009 hearing. Rao stated that he had informed the Court that he did not intend to waive the attorney-client privilege. Signal asserts that the transcript speaks for itself and that Rao said little to nothing at the hearing.

At the September 2009 deposition, Rao asserted the privilege for some – but not all – testimony. Signal notes that counsel for the Burnett defendants – Ralph Alexis – indicated that he had telephoned Rao the night before the deposition, during which call Rao had indicated that he had never waived the privilege. As questioning continued at the deposition, however, Rao continued to disclose confidential communications that he had had with the Burnett defendants. The parties then contacted this Court, and this Court ordered the parties to steer clear of any privileged communications and fully brief the issue. Still, and even though they attempted to steer clear of any questions that might educe a privileged answer, Rao testified as to confidential communications between himself and the Burnett defendants – even after other counsel attempted to stop him.

Signal first argues that Rao has wholly failed to meet his burden in demonstrating that the communications that he seeks to protect are even privileged. Accordingly, Signal argues, all relevant information should be produced. Even were the Court to determine that the attorney-client privilege applies, however, Signal asserts that Rao has waived it. Citing Fifth Circuit case law, Signal maintains that courts have consistently found the privilege waived after a party publicizes

evidence of the communications to the attorney or when the party fails to assert it. Signal argues that Rao cannot use the privilege as a sword rather than a shield, disclosing information only when he thinks that it may damage another defendant and claiming privilege when he thinks the information may harm him.

Signal also claims that Rao waived IAS's privilege.[2] Signal notes that a corporate representative may waive the privilege of the corporation on the same grounds as if it were an individual. Signal notes that Rao is an intelligent man who is incredibly proficient in the English language and that, considering his duties as chairperson of IAS and his education and work experience, the Court should discredit his argument that he is unaware of the privilege and its extent.

Addressing any possible "inadvertent disclosure" argument, Signal maintains that Rao has failed to meet his burden under Federal Rule of Evidence 502 and the case law because he has never sought to remedy the error (*i.e.*, he has never sought return of the e-mails).

Lastly, Signal addresses Rao's self-representation. While Signal notes that Rao has the right to represent himself, it also notes that the local rules of this Court and the case law are unsympathetic to *pro se* plaintiffs when they are required to understand the rules of the Court.

### 3. The Burnett Defendants

The Burnett defendants take no position on the alleged waiver by Rao of the attorney-client privilege. They seek only to confirm to the Court that they have withheld documents in a good faith reliance on Rao's position that he did not waive it.

---

[2]        IAS is currently unrepresented, and the District Court has struck all of its defenses as it failed to obtain counsel per that Court's earlier order.

Hearkening back to the earlier motion to compel and their opposition (the subject of the June 24, 2009 hearing), the Burnett defendants incorporate their arguments that the crime-fraud exception to the attorney-client privilege does not apply here.

### 4.     Dr. Rao's Opposition

Rao argues that at the September 2009 deposition, counsel for plaintiffs asked very confusing and broad questions.  Inadvertently, he admits that he offered privileged information because he does not understand the boundaries of the attorney-client privilege.  He admits that he made mistakes in the absence of an attorney.

He also admits that he sent a few documents to counsel for plaintiffs that may be protected by the attorney-client privilege.  After the production, counsel for plaintiffs called and asked him if he was waiving the privilege.  Rao states that he told them that he was not waiving the privilege. Counsel for plaintiffs sent him a document to sign that would indicate the waiver, and he did not sign it.  Rao asserts that no one has ever explained the attorney-client privilege to him.

Rao argues that, at the June 2009 hearing, he was only a passive listener and did not participate.  Accordingly, he neither waived nor re-asserted the privilege.    He asks the Court to pardon him for his ignorance and to protect his rights.

### 5.     Signal's Reply

Signal notes that Rao fails to challenge any legal argument advanced by it or plaintiffs. Signal argues that Rao's opposition is a thinly-disguised attempt to seek sympathy from the Court. Signal states that if the questions at the September 2009 deposition were confusing and broad, he should have sought clarification.  In any event, Signal notes that he fails to provide any examples

of such confusing and broad questions to the Court.

Signal also reiterates the fact that Rao's counsel had earlier explained the parameters of the privilege to him at the September 2008 deposition. Signal maintains that Rao's argument that he knows nothing of the privilege lacks merit. Signal argues that Rao had a duty as chairperson of IAS to educate himself about the privilege.

As to Rao's claim of mistakes at the depositions, Signal reiterates its argument that he took no reasonable steps to rectify the error, as required under the federal rules and case law.

## III. Analysis

The attorney-client privilege exists to encourage clients to be candid with their attorneys. *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982). The privilege protects only confidential communications of the client to the attorney. *Id.* at 538 nn. 8, 9. "'[D]isclosure of any significant portion of a confidential communication waives the privilege as to the whole.'" *Id.* at 538 (quoting *United States v. Davis*, 636 F.2d 1028, 1043 n. 18 (5th Cir. 1981)). The confidentiality of a client's communications may be compromised either through the publication of evidence of the communications themselves or through the publication of evidence of attorney statements or documents that disclose the client's confidential communications. *In re Sealed Case*, 877 F.2d 976, 979 (D.C. Cir. 1989). In addition, a party may waive the attorney-client privilege when it fails to assert the privilege when privileged information is sought. *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999).

*Nguyen* is on all fours with the factual circumstances here. There, Excel Corporation ("Excel") both (1) failed to assert the attorney-client privilege when privileged information was

sought, and (2) selectively disclosed confidential communications. *Id.* at 206-07. Because Excel failed to assert the privilege when opposing counsel asked questions that went to the substance of confidential communications, the Fifth Circuit upheld the district court's finding of waiver. *Id.* at 206. Even though Excel raised some privilege-based objections, it failed to do so in the face of all questions designed to elicit information about privileged communications. *Id.* at 206-07. In addition, the Fifth Circuit upheld the lower court on the alternative ground that Excel had selectively disclosed confidential communications. *Id.* at 207. When relayed to a third party that is not rendering legal services on the client's behalf, a communication is no longer confidential, and thus it falls outside of the reaches of the privilege. *Id.* Therefore, a client implicitly waives the attorney-client privilege by testifying about portions of the attorney-client communication. *Id.* The Fifth Circuit rejected as "too little, too late" counsel's later objections. *Id.* at 208.

The Court finds that *Nguyen* supports the conclusion that Rao has waived the privilege here. (For these same reasons, Rao has waived IAS's privilege as well.) Rao has both (1) failed to assert the attorney-client privilege when privileged information was sought, and (2) selectively disclosed confidential communications. The Court finds that on at least two occasions during his September 2008 deposition, Rao selectively disclosed the substance of confidential communications that he had had with the Burnett defendants. (Exs. F & G, attached to Signal's Mem. Concerning the Waiver of the Attorney-Client Privilege by Defendant, Dr. Kurella Rao.) In addition, the Court finds that Rao produced confidential e-mail communications between himself and the Burnett defendants. (Ex. L & G, attached to Signal's Mem. Concerning the Waiver of the Attorney-Client Privilege by Defendant, Dr. Kurella Rao.) All of this disclosure occurred after Rao's former counsel explained

to him that he did not have to testify to anything that he had told his attorney. (Ex. D, attached to Signal's Mem. Concerning the Waiver of the Attorney-Client Privilege by Defendant, Dr. Kurella Rao.) Moreover, Rao selectively invoked the attorney-client privilege at his September 2009 deposition, testifying at times to confidential communications between himself and the Burnett defendants. (Ex. Q, attached to Signal's Mem. Concerning the Waiver of the Attorney-Client Privilege by Defendant, Dr. Kurella Rao.) Under the facts and the holding of *Nguyen*, Rao has waived the attorney-client privilege.

Rao's argument that he made "mistakes" at the depositions and the production of the e-mail communications (that amount to "inadvertent disclosures") is of little aid to him. In *Alldread v. City of Granada*, 988 F.2d 1425, 1434 (5th Cir. 1993), the Fifth Circuit adopted a five-part test to determine whether the inadvertent disclosure of confidential communications will lead to waiver. The court instructed this Court to analyze: (1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness. Rao has never moved to rectify his error. He has never sought the return of the confidential e-mail communications, and he has never tried to rectify or to withdraw any of the selective disclosures that occurred at his deposition. In addition, both Rao's counsel of record at his first deposition and several other counsel at his second deposition warned him about answering questions about his communications with the Burnett defendants, yet he continued to selectively disclose some of the confidential communications. In other words, precautions – in the form of his own counsel and other counsel of record – were reasonable and designed not to elicit such testimony. Yet Rao failed to follow their advice.

Accordingly, any argument by Rao that he inadvertently disclosed confidential communications and did not thereby waive the attorney-client privilege lacks merit.

## IV.    Conclusion

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion to Compel Production of Documents and Deposition Testimony; or Alternatively for Reconsideration of the Court's Order Denying Plaintiffs' Motion to Compel [Doc. #580], in that the Court finds that Dr. Kurella Rao has waived the attorney-client privilege as to the Burnett defendants.   The Court has reviewed *in camera* the documents that are at issue here and ORDERS the Burnett defendants to produce to plaintiffs the following:  Documents Bates-stamped Burnett_Rao 00001 through 00008 and 00011, 00012, 00013 and 00014. While not all of these documents are explicit communications between the Burnett defendants and Rao, they are documents that concern Rao and/or IAS that are in the Burnett defendants' possession and allegedly protected by the privilege between the Burnett defendants and Rao.  The Court's *in camera* review reveals that documents Bates-stamped 00009 and 00010 are privileged on the ground that such documents appear to be communications between another attorney and a wholly different party.

The Court DENIES the motion to the extent plaintiffs seek reconsideration of this Court's June 24, 2009 Minute Entry.  The Court also DENIES WITHOUT PREJUDICE plaintiffs' request that Rao attend another deposition at his expense.  The Court finds that plaintiffs may propound further interrogatories, requests for production and requests for admission on Rao to obtain the information that they seek.  If, at a later date, plaintiffs are unable to obtain all of the information that they seek, and it appears to the Court that another deposition is necessary, the Court will

reconsider plaintiffs' request on proper motion.

New Orleans, Louisiana, this 28th day of December, 2009.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**