UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KURIAN DAVID, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-1220** |
| **SIGNAL INTERNATIONAL, LLC, ET AL.** | **SECTION "A" (3)** |

**ORDER**

On June 30, 2010, and after oral hearing, this Court took under advisement Plaintiffs' Motion for a Finding of Contempt Against Signal International, L.L.C., for an Order Compelling Immediate Full Production of Documents and for an Order Requiring Signal International, L.L.C. to Remove Improper Redactions from Produced Documents [Doc. #723]. For the following reasons, the Court GRANTS the motion in part and DENIES the motion in part.

**I.      Background**

Plaintiffs filed their complaint on behalf of a putative class that consists of over 500 Indian men whom defendants allegedly trafficked into the United States through the federal government's H-2B guestworker1visa program in violation of putative class plaintiffs' rights to be free from forced labor, involuntary servitude and peonage under the Thirteenth Amendment and 18 U.S.C. § 1854. Additionally, plaintiffs claim violations of the Trafficking Victims Protection Act of 2003, 18 U.S.C. §§ 1589-90 ("TVPA") and violations of their rights under 42 U.S.C. § 1981 to be free from a hostile work environment and discrimination based on race, national origin, and/or alienage

status, all of the foregoing in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962( c)-(d) ("RICO"). [Doc. #1]. On October 1, 2008, putative class plaintiffs filed their motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3). [Doc. # 165].

The putative class of over 500 Indian men secured visas to work in the United States for defendant Signal International, L.L.C. ("Signal") in the aftermath of Hurricane Katrina. Signal provides construction services to the Gulf Coast oil and gas industry. Plaintiffs allege that beginning in late 2003, defendants Dewan Consultants and Sachin Dewan ("the Dewan defendants"), Global Resources, Inc. and Michael Pol ("the Global defendants") and Dr. Kurella Rao and Indo-Amerisoft, L.L.C. ("IAS") placed advertisements in various newspapers across India and the United Arab Emirates, which advertisements sought welders, fitters and other marine fabrication workers on behalf of various U.S.-based companies. The advertisements promised that qualified candidates could obtain legal permanent residence (green cards) and thereby legally and permanently immigrate to the United States with their families. Plaintiffs contend that they paid exorbitant fees to defendants for recruitment, immigration processing and travel. Plaintiffs maintain that unbeknownst to them, they were never eligible to obtain the promised green cards and that, upon arrival in the United States, defendants subjected them to serious abuses and forced labor at Signal's labor camps in Pascagoula, Mississippi and in Orange, Texas.

Putative class representative David Kurian's factual assertions are representative of those of the other plaintiffs. [Doc. #174-3]. The allegations are as follows. According to David, a citizen of India, he saw a newspaper advertisement by Dewan Consultants while employed in Abu Dhabi.

2

In May 2006, David attended a seminar led by defendant Sachin Dewan with the assistance of defendant Malvern Burnett of the Law Offices of Malvern C. Burnett, A.P.L.C. ("the Burnett defendants"). David claims that, at the seminar, Dewan told the attendees that for 600,000 rupees (over $12,000.00) plus costs, he could obtain an employment-based green card in the United States. The attendees were told that the money would be paid in three installments and that the money would cover Dewan's fee as well as the fees for Burnett and Michael Pol. Burnett is an attorney at law who specializes in immigration matters, and Pol owns Global Resources, Inc., a company that helps American companies find skilled labor to work at their facilities. David claims that Burnett spoke at the seminar and explained to the potential recruitees how the green card process would work.

David took and passed the pipe-fitter skills test. David then attended two additional group meetings, the second of which was led by Dewan and Burnett. Burnett explained the green card process once again, and he and Dewan handed out contracts from Global Resources, Burnett, and Dewan Consultants and an employment form for Signal. A representative from Dewan's office helped the group to fill out the forms.

In June and August 2006, David made installment payments at Dewan's office, which included checks made payable to Burnett and Pol. In late August 2006, David attended a meeting in Dubai, where Dewan and Burnett told the workers that before their visas would expire, the green cards would be approved. At a subsequent meeting, Dewan and Burnett gave the workers instructions on how to answer questions from the American consular officers during their visa interviews. Dewan and Burnett allegedly instructed the workers not to reveal how much money they

had paid for the recruitment fees and not to mention the green cards.

The consulate officials took David's passport and, at the behest of Dewan Consultants, the passport was returned directly to Dewan's office. According to David, Dewan refused to return his passport until he made the final installment payment to Dewan and paid for medical testing to be performed by a physician chosen by Dewan.

In February 2007, David made the final payment with checks made payable to Dewan, Burnett and Pol. David claims that he was then rushed to sign forms written in English that he could not understand, and it was only upon signing these forms and making the final installment payment that Dewan finally returned his passport. During this process, David saw other workers try to back out and have their money returned, but someone from Dewan Consultants would then threaten to destroy their passports in retaliation. David contends that he and his wife sold many of their personal belongings to raise the money necessary to pay Dewan, Burnett and Pol.

On February 16, 2007, David arrived at Signal's labor camp in Orange, Texas where he signed a number of additional employment forms. David claims that he later learned that the forms allowed Signal to take deductions from his salary for food and accommodations and that Signal required the workers to open an account with a specific bank where their paychecks would be deposited. David charges that the living conditions and food at Signal were horrible and that the Indian workers were told that even if they left, they would be charged the daily rate of room and board.

David claims that the Indian workers were searched by guards when they would come and go from the camp and that guards would sometimes come into the living quarters at night to search

4

workers' belongings. According to David, the workers began to get sick because of the overcrowded conditions. Signal also required the workers to purchase all of their own tools. David claims that the workers were relegated to performing all of the dangerous and dirty work inside of the ships and that the American workers were not required to do such work.

According to David, when the workers complained, Signal made more promises about the green cards and threatened that if the workers continued to complain, they would be deported and not receive the promised visas. David continued to work under conditions that he characterizes as horrible because he was afraid of the consequences of leaving, given that he had incurred so much debt to raise the money to come to the United States.

## II. The Parties' Contentions

### 1. Plaintiffs

Plaintiffs ask the Court for an order (1) sanctioning Signal for failing to meet the latest discovery deadline set by this Court (March 22, 2010); (2) compelling Signal to complete immediately its production; and (3) to produce its redacted documents in unredacted form. Signal redacted approximately 11,956 documents, only 80 of which are redacted on the ground of attorney-client privilege.

Plaintiffs correctly argue that Signal bears the burden here. Plaintiffs contend that Signal's principal failing is that most of the underlying bases for redaction do not exist by law or without a protective order, which Signal has not sought.

Plaintiffs first argue that Signal may not redact on the ground of a proprietary/confidential privilege because it has no protective order. Fed. R. Civ. P. 26(c)(1)(g); *Occidental Chem. Corp.*

*v. La. Pub. Serv. Comm'n*, No. 06-894, 2008 U.S. Dis. LEXIS, at *7 (M.D. La. Feb. 29, 2008). Signal has noted that confidentiality agreements with third parties do not allow it to disclose some documents. Plaintiffs argue that for such an argument to succeed, Signal must demonstrate that disclosure will cause an identifiable and significant harm to its competitive and financial position. *Id.* at *7-8. Signal allegedly has not done so.

Signal redacted over 11,000 documents on the ground of personal information. Plaintiffs do not take issue with the documents redacted on the ground of identifying information: Signal employee passport numbers, social security numbers, dates and places of birth, spousal information, visa expiry dates, home addresses, telephone numbers, drivers' license numbers and familial information. Pointing to e-mails that Signal produced in redacted form and then accidentally in unredacted form, plaintiffs note that Signal has redacted words like "Puerto Ricans," "NGC" and "modules." Accidents like this, plaintiffs contend, demonstrate Signal's haphazard redactions. Many of these redactions are in Signal's responsive business records. Plaintiffs argue that that is another sign that Signal is redacting improperly.

Plaintiffs argue that to redact on the ground of relevancy, Signal must obtain a protective order from the Court. Plaintiffs note that Signal has argued that some of the documents that it redacted on the ground of personal information may have been redacted on the ground of relevancy. But plaintiffs contend that Signal can not change a privilege claim once it realizes that it needs a protective order.

To remedy many of these issues, especially those concerning the proprietary/business confidentiality privilege, plaintiffs have offered to enter a confidentiality order, but Signal has

steadfastly refused on the ground that someone on plaintiffs' side has already produced some documents to the media.

Plaintiffs allege that Signal has violated this Court's order and failed to finish production and therefore seek sanctions.

In their supplemental memorandum filed pursuant to Order of this Court, plaintiffs note that many of the redactions reveal past and present Signal executives' and managers' personal reflections on the H-2B program, the Man Camp where the putative class was housed and Signal's labor needs. Plaintiffs submit one set of documents to the Court to reflect a sampling of documents that they do not contend were improperly redacted. These are documents – Exhibit A – that clearly reflect that the redacted lines are personal and identifying information. Exhibit B is a set of documents that plaintiffs argue cast serious doubt over the contention that the redacted lines are personal information. For the most part, these are e-mail exchanges between Signal personnel as well as e-mail exchanges between Signal and co-defendants. Some of these documents are also Excel spreadsheets and, in one case, the diary of personal reflections by a camp manager. Exhibit C consists of samples of documents for which Signal has asserted a proprietary or business confidentiality privilege.

**2.      Signal**

Signal first argues that plaintiffs' motion is profoundly dilatory. Allegedly, plaintiffs have never raised the issue of Signal's redactions before, after 21 months of rolling production. Signal argues that should the Court grant the motion now, it would take approximately eight months to review the documents again to gauge whether some were improperly redacted.

Signal notes that when it first received the discovery requests, it completed two separate electronic data sweeps in Mississippi, Alabama and Texas, which culled all potentially responsive e-mails. Plaintiffs then consented to a rolling production of the documents. Signal has since completed 19 rolling productions, the first occurring only four days after service of the discovery requests. During this rolling production, plaintiffs occasionally sought clarification of certain redactions. In some instances, Signal even restored the document to its original condition. Plaintiffs never asked Signal to stop redacting.

Signal initially withheld approximately 30,000 documents on the ground of privilege. Signal then decided to conduct a second-tier review. The review revealed that some documents that had initially been withheld needed to be produced. All documents produced after this Court's March 22, 2010 deadline, Signal contends, were subject to the second-tier review.

Signal argues that it is entitled to its fees and costs under Federal Rule of Civil Procedure 37 because plaintiffs' argument that Signal needed a protective order to assert a proprietary privilege is meritless. Signal first notes that under Rule 26, a party "may" move for a protective order. Signal also argues that under *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241 (2004), the Supreme Court intimated that protection for confidential information, including information of a business nature, is available under Rule 26(b)(2) in addition to Rule 26(c). Signal argues that *Intel* thus supports its view that Rule 26(b)(2)(C) is powerful enough to shield business secrets and other confidential information from discovery without prior judicial intervention, contrary to the view of Rule 26(c) advanced by plaintiffs.

During discovery, Signal notes that it often delivered evidence to plaintiffs to support an

objection or redaction. Signal notes that the 2000 Advisory Committee notes state that discovery is initially a "party-controlled" process. Plaintiffs should thus not reproach Signal for failing to obtain prior judicial sanction to assert a valid privilege. Signal notes that even plaintiffs, in their memorandum, noted that Signal produced many e-mails that were clearly responsive to the discovery requests.

Signal contends that the present motion is the product of a change in the nature of discovery, one that has frequently caused federal courts profound concern. The 2006 Advisory Committee notes fully recognize the risks surrounding the "information explosion" with e-discovery. The Committee stated that courts should caution against undue intrusiveness. Signal argues that the motion to compel should be denied because it has been judicious and proportional in its production.

Signal notes that the case law on which plaintiffs rely is out-dated and invalid in that it was decided before the 2006 amendments to the federal rules. The new rules, Signal contends, are more concerned with a balance between a plaintiff's requirements and a defendant's rights. Indeed, Signal points to a leading federal treatise that notes that the 2000 amendments had already significantly narrowed the scope of discovery. Signal contends that under the new rules, motions to compel might not be granted even if the moving party shows that the material sought is relevant. The proportionality and good faith requirements are now significant restrictions on the enforceability of discovery probes. Motions to compel may now be denied if the party opposing discovery demonstrates that the burden of the discovery outweighs its benefits under the criteria of Rule 26(b)(2)(C)(iii). Signal contends that plaintiffs wholly fail to explain the nexus between the evidence of which they were allegedly deprived and their claims.

9

Signal argues that its production was judicious and proportional rather than slanted. Signal also notes that it has lessened the burden on this Court by redacting the documents instead of asking the Court to review 12,000 documents.

Signal also contends that plaintiffs have waived the pending motion given that they have never objected to the redactions until now. Under Fifth Circuit case law, waiver may be found when the delay is prejudicial. Signal contends that the prejudice is self-evident given that 21 months of production have passed. Signal argues that no party demanding over 12,000 documents sight unseen can argue that this is not a wild goose chase and fishing expedition. Signal notes that this Court has held that discovery has limits, especially here, when the Court has limited the discovery to class certification. Signal notes that there may be isolated instances of error but that is to be expected in a project this massive.

Lastly, Signal argues that the Court should deny the motion for contempt because Signal has never violated outright an express order of this Court. Signal again notes that only production subjected to the second-tier review occurred after the Court's deadline of March 22, 2010. Signal argues that plaintiffs have not genuinely been aggrieved, and that any violation was technical and *de minimis*.

### 3. Plaintiffs' Reply

Plaintiffs reply that they only filed the instant motion in June due to Signal's alleged misrepresentations as to when it would ultimately complete production. Plaintiffs argue that they needed to wait until Signal completed production before challenging all redactions.

Plaintiffs argue that there is no right to unilaterally redact documents without a court order.

Plaintiffs contend that Rule 26(b)(2)(C)(iii) only authorizes a court to allow a party to redact. Plaintiff contend that Signal's reliance on *Intel* and Rule 26(b)(2)(C)(iii) is misplaced given that neither the opinion nor the rule contemplates giving parties the power to unilaterally redact.

Plaintiffs assert that Signal's discussion of the 2006 e-discovery amendments is irrelevant because the amendments do not discuss the issue here: whether Signal may unilaterally redact documents. Plaintiffs dispute Signal's claim of prejudice. Plaintiffs assert that they will be able to narrow their request to less than 3,000 documents, not including the 19th wave of production that has only recently arrived.

## III.  Analysis

After oral argument and a review of the documents submitted for *in camera* inspection and given the massive scope of the production in this lawsuit, the Court finds that the only solution here is an equitable one. Given plaintiffs' representation that they can reduce the disputed documents to less than 3,000 documents, the Court finds that the motion may be granted in part. The Court thus orders plaintiffs to cull the approximately 3,000 documents, send them to Signal, and the Court orders Signal to verify that those documents were properly redacted based on the identifying factors mentioned above (*i.e.*, social security numbers, address information and the like). The Court also specifically finds that the identifying factors mentioned above includes **any** personal information on behalf of any party or non-party.[1]

Given plaintiffs' example and the Court's own review of the documents, Signal has over-

---

[1] At the oral hearing, the parties discussed an e-mail exchange in which a non-party discussed his marital problems. This Order specifically finds such information to be properly redacted.

redacted at times. The Court finds that redaction based on words such as "Puerto Ricans," "NGC" and "modules" are not proper redactions. The class certification hearing is August 18, 2010, and Signal should be able to complete such a task before then. The Court makes no finding of contempt against Signal, however, and specifically finds that Signal has ethically and judiciously performed what can only be deemed a hugely-massive production of documents.

With regard to those documents redacted and/or withheld on the ground of a proprietary or business confidentiality privilege, the Court orders the parties to again meet and confer to fashion an appropriate protective order. Given Signal's representation -- and the Court is aware that this fact is hotly contested -- that an opposing party may have released documents to the media, the Court reminds the parties of the severe sanctions that it will impose for violations of such an order.

**IV.    Conclusion**

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' Motion for a Finding of Contempt Against Signal International, L.L.C., for an Order Compelling Immediate Full Production of Documents and for an Order Requiring Signal International, L.L.C. to Remove Improper Redactions from Produced Documents [Doc. #723]. The Court denies any requests for fees associated with the filing of the instant motion.

New Orleans, Louisiana, this 6th day of July, 2010.

_____
**DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE**