**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**KURIAN DAVID, ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                         **NO. 08-1220**

**SIGNAL INTERNATIONAL, L.L.C., ET AL.**          **SECTION "A" (3)**

**ORDER**

On October 20, 2010, the Motion for New Trial and/or Reconsideration of Discovery Order Pursuant to FRCP 59(e) Filed on Behalf of Signal International, L.L.C. [Doc. #863], the Motion to Enforce Order of the Court Pursuant to Rule 37 of Federal Rules of Civil Procedure [Doc. #868] and the Motion for a Protective Order [Doc. #869] came on for oral hearing before the undersigned. Present were Daniel Werner on behalf of plaintiffs, Alan Weinberger, Erin Hangartner, Hal Ungar and Patricia Bollman on behalf of defendant Signal International L.L.C. ("Signal"), Ralph Alexis on behalf of the Burnett defendants and Stephen Shapiro on behalf of the Dewan defendants. Having reviewed the motion, the memoranda, the case law and the parties' oral argument, the Court rules as follows.

**I.       Background**

This Court has detailed the factual background of this lawsuit in numerous opinions and will not repeat it here. [Doc. #854].

**II.      Motion for New Trial and/or Reconsideration of Discovery Order Pursuant to FRCP 59(e) Filed on Behalf of Signal International, L.L.C. [Doc. #863]**

Signal asks the Court to reconsider its earlier order in which the Court granted in part Signal's motion to compel and ordered plaintiffs to produce the sworn statements/affidavits attached to their T- and U-visa applications but not the applications themselves. [Doc. #854]. Signal asks the Court to reconsider its order and to order plaintiffs to produce the entire unredacted visa applications. Signal repeats its arguments from its earlier motion to compel [Doc. #778], which are generally reiterated below:

At a Rule 37.1 conference, plaintiffs objected to the production of the visa applications on the ground that such production would violate 8 U.S.C. § 1367, which provides that the Attorney General, any official or employee of the Department of Justice, the Secretary of Homeland Security, the Secretary of State, or any employees or officials of these departments may not disclose any information relating to an alien who is the beneficiary of a T- or a U-visa. Subsection (b)(3) provides that Section 1367 shall not be construed as preventing disclosure of information in connection with judicial review of a determination in a manner that protects the confidentiality of the information.

Signal argues that this is the perfect case for judicial review of the allegations reported in the New York Times.[1] Noting that plaintiffs cited *Hawke v. United States Department of Homeland Security*, 2008 U.S. Dist. LEXIS 87603, *3 (N.D. Cal. Sept. 29, 2008), as support for their Section 1367 argument, Signal distinguishes the case, arguing that no agency is involved here and no agency has asserted the Section 1367 privilege. Signal also argues that *Hawke* concerned only the

---

[1] Signal refers to a recent New York Times article that intimated that an agency of the federal government had determined that the trafficking claims against Signal are valid.

2

protection of battered women.  Signal further contends that no law forbids the applicant from sharing the information with others when a federal court deems disclosure appropriate.  Citing *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953), Signal argues that the Supreme Court has emphasized that a privilege like that in Section 1367 belongs only to the government and not to private parties such as plaintiffs.

Signal contends that it is engaged in a two-front war, one in this forum and one in the press.  Citing another article in the *High Plains Reader*, Signal asserts that the article was explicitly based on T-visa applications.  Signal argues that the citation in the article to the T-visa application proves that plaintiffs have shared such applications with the media.  Signal argues that plaintiffs have thus waived any privilege by opening the door.  Citing case law from this Court and the Fifth Circuit, Signal contends that the law underlying the waiver of the attorney-client and/or work-product privileges applies equally to Section 1367, and, given that plaintiffs produced the applications to the press, all privileges have been waived.

Signal argues that it is entitled to the unredacted applications on the ground of fairness and that Signal's due process rights to a fair hearing require that the documents be produced.  Signal contends that plaintiffs will use the documents to burnish their claims and further argues that bias and prejudice taint the applications in that plaintiffs have allegedly exaggerated their claims to allow their wives and children to also remain in this country.

Signal asserts that the applications are rife with misstatements and inaccuracies. Signal then quotes several statements from the initial sworn statements of several putative class representatives and notes that the later deposition testimony of the same putative class representatives conflicts with

the earlier statements.

Lastly, Signal contends that the Court can not deny it access to the applications as impeachment evidence.  Signal argues that it has demonstrated the bias and corruption rooted in the self-evident, overwhelming temptation to fabricate or to exaggerate evidence to gain entry to this country for oneself and one's wife and children.

In opposition, plaintiffs note that this Court has already twice rejected Signal's arguments [Doc. #324 & #854], and the District Court has once upheld this Court's earlier finding [Doc. #476]. Citing case law, plaintiffs assert that Signal has wholly failed to meet its burden under Federal Rule of Civil Procedure Rule 59 for reconsideration of this Court's earlier order because Signal can not demonstrate an intervening change in the controlling law, the availability of evidence not previously available, the need to correct a clear error of law or fact or to prevent a manifest injustice.  Plaintiffs contend that Signal merely reiterates its earlier arguments in the motion for reconsideration and that courts routinely deny motions to reconsider when the party simply repeats earlier arguments. Indeed, plaintiffs cite one case in which the court ordered a party to show cause why a motion to reconsider that simply repeated earlier arguments was not a sanctionable violation under Federal Rule of Civil Procedure 11(b).  *See Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990).

Plaintiffs note that this Court has already rejected Signal's due process argument.  Plaintiffs also argue that Signal's contention that T-visa applications do not indicate the immigration status of a particular immigrant is logically flawed.  Plaintiffs stress that the applications necessarily disclose the person's immigration status because the immigrant must disclose the grounds for

4

inadmissibility.

Plaintiffs also contend that Signal's accusations that plaintiffs committed perjury here are baseless.  They argue that if Signal had evidence of the falsity of which it accuses them, it could have and should have produced the evidence to this Court under seal.   Plaintiffs contend that Signal's accusations are flagrant attempts to intimidate plaintiffs.  They argue that the *in terrorem* effect of putting confidential information in Signal's hands is all too evident here.

The Federal Rules of Civil Procedure ("Rules") do not formally recognize a motion to reconsider.  *Pryor v. United States Postal Serv.*, 769 F.2d 281, 285 (5th Cir. 1985).  However, the Fifth Circuit treats motions to reconsider as either motions to alter or amend judgment pursuant to Rule 59(e) or motions for relief from judgment pursuant to Rule 60, depending on when the motion is filed.  *Lavespere v. Niagra Machine & Tools Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).  A motion for reconsideration is analyzed under Rule 59(e) if it is served within 28 days of the court's ruling; otherwise, it is analyzed under Rule 60(b) if it is served after that time.  *Id.*  Here, Signal filed its motion for reconsideration within 28 days of the Court's order, and the motion is thus properly considered under Rule 59(e).

Courts in this district apply Rule 59(e) to motions to reconsider non-dispositive pre-trial rulings.  *See Harveston v. Falcon Workover Co., Inc.*, Civ. A. 96-4172, 1998 WL 166209, (E.D. La. Apr. 8, 1998) (analyzing motion to reconsider trial continuance under Rule 59(e)); *Freeport-McMoran Sulphur, L.L.C. v. Mike Mullen Energy Equip. Res.*, Civ. A. 03-1496, 2004 WL 1488665 (E.D. La. June 30, 2004) (analyzing under Rule 59(e) motion to reconsider court's ruling as to privileged documents).

5

Under Rule 59(e), a court's reconsideration of a prior order is an extraordinary remedy that should be used only sparingly and not to re-litigate old matters, raise new arguments, or present evidence that should have been raised in the earlier motion. *See Karim v. Finch Shipping Co.*, 111 F. Supp. 2d 783, 784 (E.D. La. 2000). A court may entertain a motion for reconsideration if the moving party demonstrates (1) newly discovered or previously unavailable evidence, (2) that the motion is necessary to correct a manifest error of fact or law, (3) that the motion is necessary to prevent manifest injustice, or (4) that the motion is justified by an intervening change in the controlling law. *Gregg v. Weeks Marine, Inc.*, Civ. A. 99-1586, 2000 WL 802865, at * 2 (E.D. La. May 26, 2000).

Here, Signal has not demonstrated (1) newly discovered or previously unavailable evidence, (2) that the motion is necessary to correct a manifest error of fact or law, (3) that the motion is necessary to prevent manifest injustice, or (4) that the motion is justified by an intervening change in the controlling law. Indeed, and as plaintiffs correctly note, Signal merely re-hashes its earlier arguments, which is not proper in a motion to reconsider. Signal seeks to re-litigate the arguments that it raised in its earlier motion to compel and that this Court has already rejected. Accordingly, the Court denies the motion.

## III.   Motion to Enforce Order of the Court Pursuant to Rule 37 of Federal Rules of Civil Procedure [Doc. #868] and the Motion for a Protective Order [Doc. #869]

These two motions are basically mirror images of each other, and the Court will accordingly address them in tandem.

Signal asks the Court to enforce its Order dated August 26, 2010 [Doc. #854], in which this

6

Court ordered plaintiffs to produce the sworn statements attached to their T- and/or U-visa applications. After the 14 days to object to the order had run, Signal contacted plaintiffs to seek a date certain by which plaintiffs would produce the statements. Plaintiffs informed Signal that they would request a protective order from the Court. Signal asks the Court to order production no later than seven days from the date of the oral hearing on this motion.

Signal argues that plaintiffs have waived their right to object to the order because they did not object within 14 days and they did not file a motion to reconsider within 28 days pursuant to Federal Rules of Civil Procedure 72(b)(2) and 59, respectively. In the earlier order, the Court noted in the "Parties' Contentions" section that plaintiffs asked the Court to include the T- and/or U- visa applications under the protective order currently in place if the Court ordered production. Because the Court did not explicitly hold so, Signal contends that this Court has already rejected plaintiffs' request to include the documents under the current protective order. Signal asks the Court to sanction plaintiffs for failure to comply with this Court's order.

Plaintiffs note that the compromise that they suggested at the oral hearing on the motion to compel was to produce redacted versions of the sworn affidavits attached to their T- and/or U-visa applications and that the affidavits be included under the current protective order. Citing language from the Court's order, in which the Court rejected disclosure of plaintiffs' current immigration status, plaintiffs argue that they may redact any information that may disclose such status.

Plaintiffs assert that this Court did not address whether the sworn statements should be subject to a protective order. Thus, they contend, there was nothing to appeal to the District Court. Plaintiffs do not oppose production of the affidavits but merely seek to redact information that is

7

irrelevant to this action and production of which would have an *in terrorem* effect on plaintiffs. They also seek protection from disclosure to anyone outside the litigation.

In their motion for a protective order, plaintiffs seek to redact the affidavits to exclude information identifying family members, residences before employment at Signal, residences of plaintiffs' family members, any address or employment information protected from disclosure by the Court's April 2, 2009 protective order, cooperation with law enforcement, grounds for inadmissibility and prior crimes. Plaintiffs ask the Court to enter the protective order attached to their motion.

Plaintiffs note that the Court was quiet on whether the affidavits are subject to the protective order because the earlier motion addressed only the T- and/or U-visa applications. Plaintiffs contend that it is axiomatic that sub-parts of the visa applications – the affidavits – should not be disclosed outside of this litigation because such disclosure would strike paralyzing fear in the plaintiffs sufficient to chill any inclination that they may have to prosecute their claims. Plaintiffs also contend that federal law mandates that T- and/or U-visa applications remain confidential. *See* 8 U.S.C. § 1367. Plaintiffs assert that subjecting the information to civil discovery discourages the candor that is critical for the government's adjudication of the applications. For example, plaintiffs contend, discovery of prior crimes hands the alleged human traffickers the perfect tool for retaliation against plaintiffs. They remind the Court that Signal noted at the oral hearing that it was ethically obligated to turn such information over to the government.

Plaintiffs contend that Signal has all but admitted that it will turn such information over to the media. They note that the proposed protective order allows Signal to apply to the Court to order

8

the release of such information.  Plaintiffs do not simply want Signal turning over such information to the media "with wild abandon."

Signal argues that plaintiffs have not shown good cause under Rule 26(c) for a protective order.  Signal contends that plaintiffs can not show good cause because issuance of the protective order that they seek conflicts with the government's responsibility to police fraud in conjunction with the visa applications.  Citing the regulations that govern T- and U-visas, Signal notes that the government may revoke the visas if they are obtained by fraud.  Signal asserts that this implies a federal policy interest in discovering information that relates potentially to a decision to revoke. Signal thus contends that this Court can not protect falsehoods.  Signal argues that it has assembled an impressive record of false and greatly exaggerated statements.

Signal asserts that requiring it to seek permission to provide these statements to the government flies in the face of federal policy, the "pillars" of statutory construction and Supreme Court precedent.  Signal also argues that such a process would be expensive, given that plaintiffs would oppose any such motion.  Lastly, Signal contends that plaintiffs have made no showing of how revelation of their own misstatements to the government will cause them annoyance, embarrassment, oppression or undue burden or expense as required under Rule 26(c).  Signal argues that general *in terrorem* assertions are not particular and specific demonstrations of fact as required under Rule 26.

Signal contends that Federal Rule of Evidence 803(8) also requires denial of plaintiffs' motion.   Rule 803(8) creates an exception to the hearsay rule by allowing into evidence factual findings resulting from an investigation made pursuant to authority granted by law, unless the source

9

of the information or other circumstances indicate a lack of trustworthiness.  Signal asserts that plaintiffs will use this exception to introduce at trial the government's findings as to their T- and/or U-visa applications.  Because Signal bears the burden to demonstrate untrustworthiness under Rule 803(8), Signal argues that it is entitled to the unredacted copies of the visa applications.  Signal contends that the sworn statements will demonstrate that the applicant knowingly lied to the government.

Lastly, Signal reasserts its argument that only the government has a right to assert the privilege in 8 U.S.C. § 1367.  Signal asserts that this Court's earlier order created a new federal privilege under Section 1367.  Signal contends that this Court's earlier order implicitly held that Section 1367 creates a privilege that protects T- and U-visa applications from disclosure.[2]

In reply, plaintiffs stress that Signal overtly seeks to turn the government's visa application process into an adversarial proceeding where the alleged trafficker has full right to review a trafficking victim's visa application and seek revocation or even criminal sanctions simply because the trafficker disagrees with the victim's statement.  Plaintiffs contend that Signal's only motivation here is retaliation.  They argue that no due process issue exists here because Signal will have all it needs when it receives the redacted affidavits.  Plaintiffs assert that Signal has now acknowledged that it will use these affidavits to initiate an extrajudicial process to punish the class representatives.

Plaintiffs argue that Signal's assertion that it is entitled to the government's factual findings is irrelevant.  First, plaintiffs claim that the government issues no findings as to the visa applications.

---

[2]        Signal raised this argument in its motion for reconsideration as well, but the Court addresses it here.

The applicant allegedly simply receives notice that he has received a visa.  Second, plaintiffs will not use any such findings at the class-certification hearing and will stipulate to such.  With regard to the merits hearing, plaintiffs contend that they can not now – even before class certification – stipulate that they will not use any potential findings in the trial of this matter.  Plaintiffs allege that the parties can re-visit the issue at that time.

Contrary to Signal's argument, plaintiffs contend that this Court created no new privilege under 8 U.S.C. § 1367.  Plaintiffs assert that the Court merely entered a protective order to prevent harassment, oppression and undue burden.  Citing a litany of case law, plaintiffs note that numerous federal courts have prevented disclosure of immigration status outside the context of cases under the Fair Labor Standards Act.

Lastly, plaintiffs note that as to alleged crimes that they may have committed, they are completely within their rights to have invoked the Fifth Amendment.  Plaintiffs contend that Signal may not make an end-run around the Fifth Amendment by seeking details of alleged crimes in the visa applications.

For the following reasons, the Court grants in part the motion to enforce and grants the motion for a protective order.  Plaintiffs have certainly demonstrated good cause under Rule 26(c) for a protective order and to redact the requested information.  This Court has already held twice – and been upheld once in holding – that the disclosure of the information that Signal seeks would create an *in terrorem* effect on plaintiffs.  Courts frequently grant protective orders to protect an immigrant's current immigration status.  In *Topo v. Dhir*, for example, the court noted:

Plaintiff asserts that by seeking information on her immigration status, defendants

11

are attempting to exploit the discovery process in an attempt to threaten plaintiff's continued prosecution of her claims. The court need not find such ominous undertones in defendant's discovery requests. Plaintiff's fears of her immigration status deterring further prosecution of her claims are well-founded. Courts have generally recognized the in terrorem effect of inquiring into a party's immigration status when irrelevant to any material claim. In particular, courts have noted that allowing parties to inquire about the immigration status of other parties, when not relevant, would present a "danger of intimidation [that] would inhibit plaintiffs in pursuing their rights." *Liu v. Donna Karan International, Inc.*, 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002) (citations omitted). Were plaintiff's immigration status relevant to prove a material aspect of the defense, a protective order would not be appropriate. However, when the question of a party's immigration status only goes to a collateral issue, as in this case, the protective order becomes necessary as "[i]t is entirely likely that any undocumented [litigant] forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face ... potential deportation." *Flores v. Albertsons Inc.*, 2002 WL 1163623, *5 (C.D. Cal. 2002). Although the cases addressing this issue typically relate to the Fair Labor Standards Act, the underlying principle is still the same. When the potential for abuse of procedure is high, the Court can and should act within its discretion to limit the discovery process, even if relevancy is determined. The court finds, however, for the reasons listed below that, at best, plaintiff's immigration status is a collateral issue not relevant to any material aspect of the case.

210 F.R.D. 76, 78 (S.D.N.Y. 2002).  Here, plaintiff's immigration status is a collateral issue and does not go the merits of Signal's defense.  For example, this Court can not fathom in what way any of plaintiffs' alleged prior crimes would be relevant to the issues in this suit.  Plaintiffs have so far given Signal no statements as to alleged prior crimes so there can be no inconsistency between what plaintiffs have told Signal and what they have told the government.  Given that plaintiffs have invoked the Fifth Amendment before, Signal will not be able to use evidence of prior crimes to impeach plaintiffs at the class-certification hearing.  In addition, the grounds for inadmissibility are irrelevant to any claim or defense here.  The reasons why a particular plaintiff may be inadmissible to this country will not impact any evidence submitted at the hearing.  Further, any information on

family members who are not parties to this lawsuit is clearly irrelevant.

Signal seeks to compare the statements that plaintiffs have made to it to the statements that plaintiffs have made to the government.  The Court finds that Signal will be able to do so with the redacted statements.   Signal will have all of the factual underpinnings of the statements necessary to mount any potential defense. The redacted statements will reveal what plaintiffs told the government concerning their alleged detention at the alleged labor camps.  Signal is entitled to no more.

The Court rejects Signal's argument that the Court has created a new privilege under 8 U.S.C. § 1367.  The Court never addressed Section 1367 in its earlier order and never created a privilege therein.  As plaintiffs correctly note, this Court, as it does today, simply issued a protective order to prevent harassment and oppression of plaintiffs under Rule 26.[3]

This Court also finds that plaintiffs did not need to object to this Court's earlier Order within 14 days or to file a motion for reconsideration within 28 days.  This Court never explicitly addressed whether the production of the affidavits were covered by the protective order in place here.  Because this Court did not address it, there was nothing for plaintiffs to appeal.  Signal reads too much into this Court's earlier Order, presuming that the Court's silence meant rejection of plaintiffs' argument.  While this Court recognizes that on appeal, an appellate court may generally conclude that silence

---

[3]     This Court also rejects any reliance on *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953), to support the argument that the government may only assert the alleged privilege under Section 1367.  The *Reynolds* Court never addressed Section 1367.

13

is an implicit rejection of an argument,[4] this Court's order is not yet on appeal, and this Court did not reject plaintiffs' argument.  In initially ruling on the motion to compel, the Court simply failed to clarify whether the protective order -- or a similar one -- prevents the disclosure of the affidavits and permits their redaction.[5]

IV.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion for New Trial and/or Reconsideration of Discovery Order Pursuant to FRCP 59(e) Filed on Behalf of Signal International, L.L.C. [Doc. #863] is DENIED.

**IT IS FURTHER ORDERED** that the Motion to Enforce Order of the Court Pursuant to Rule 37 of Federal Rules of Civil Procedure [Doc. #868] is GRANTED IN PART, in that plaintiffs shall produce to Signal the redacted affidavits attached to their T- and U-visa applications no later than ten (10) days from the date of this order.  In all other respects, the motion is DENIED.

**IT IS FURTHER ORDERED** that the Motion for a Protective Order [Doc. #869] is GRANTED.  The Clerk of Court is directed to file into the record the protective order attached to plaintiffs' motion.

New Orleans, Louisiana, this 5th day of November, 2010.

---

[4]    *See, e.g., Davis v. Barber*, 853 F.2d 1418 (7th Cir. 1988) (noting that the appellate court could recognize the state court's silence as a *sub silentio* rejection of petitioner's argument).

[5]    With regard to Signal's argument that Federal Rule of Evidence 803(8) will allow plaintiffs to introduce any alleged governmental factual findings at the hearing, the Court finds the argument moot.  Plaintiffs have stipulated that they will not use any such alleged findings at the hearing on class certification.  As to whether Rule 803(8) will allow any such admissibility at the potential trial of this matter, the argument is premature and better addressed by the Court that tries the suit.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**