UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KURIAN DAVID, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-1220** |
| **SIGNAL INTERNATIONAL, L.L.C., ET AL.** | **SECTION "A" (3)** |

**ORDER**

On November 10, 2010, Plaintiffs' Motion for Leave to File Second Amended Complaint [Doc. #876] and defendant J&M Associates of Mississippi, Inc.'s Motion to Strike [Doc. #922] came on for oral hearing before the undersigned. Present were Hugh Sandler on behalf of plaintiffs, Erin Hangartner on behalf of defendant Signal International L.L.C., Glenn Adams on behalf of the Burnett defendants and James Curenton on behalf of defendant J&M Associates of Mississippi, Inc. ("J&M Associates" or "defendant"). After the oral hearing, the Court took the motions under advisement and allowed the parties to file supplemental memoranda.[1] Having reviewed the motion, the memoranda, the case law and the parties' oral argument, the Court rules as follows.

**I.    Background**

This Court has detailed the factual background of this lawsuit in numerous opinions and will not repeat it here. [Doc. #854].

**II.   Plaintiffs' Motion for Leave to File Second Amended Complaint**

---

[1]    Because the Court allowed the parties to file supplemental memoranda and because J&M recognized that the supplemental memoranda rendered moot its Motion to Strike, the Court dismissed its Motion to Strike without prejudice as moot. [Doc. #937].

Plaintiffs seek to amend their complaint to add J & M Marine & Industrial, L.L.C. ("J&M Marine") and Billy R. Wilks, personally, as defendants in this suit in solido with J & M Associates. The parties deposed Wilks in January 2010. At the deposition, plaintiffs learned that (1) Wilks had formed J&M Marine to escape liability in a lawsuit against J&M Associates unrelated to this one and (2) J&M Associates is now a dormant corporation with no assets and liability over $300,000.00.

Plaintiffs move for leave to amend under Rule 15, asking the Court to grant leave freely. Plaintiffs contend that J&M Marine and Wilks will suffer no prejudice because they have been on notice of this litigation since service of this lawsuit on J&M Associates.

Plaintiffs argue that a successor corporation is liable for the debts of its predecessor under the "continuity of enterprise" doctrine. To satisfy the requirements of the doctrine, plaintiffs cite the deposition testimony of Wilks in which he admitted that the primary purpose for the creation of J&M Marine was to evade litigation pending against J&M Associates and that J&M Marine would continue the work that had been, since its inception, under the purview of J&M Associates. Plaintiffs allege that: (1) Nicole Homel-Tellier, Wilks' assistant, whose only job was to follow the immigration applications filed by the Burnett defendants, transferred from J&M Associates to J&M Marine; (2) Wilks became the supervisor of J&M Marine; (3) J&M Associates and J&M Marine have the same principal place of business – Wilks' residence; (4) the entities engage in the same work, recruiting laborers; (5) both entities share the J&M initials; (6) J&M Marine absorbed the goodwill of J&M Associates; and (7) Wilks stated that he expected the workers who were J&M Associates' green card candidates would ultimately work under J&M Marine's H2B visa program.

2

Plaintiffs also argue that Wilks is the alter ego of J&M Associates. Citing the factors to pierce the corporate veil, plaintiffs argue that Wilks absolutely controlled J&M Associates, his sons only playing a *de minimis* role in the company's acts. Citing to a reference by Wilks' counsel during hie deposition, plaintiffs assert that even counsel admitted that there is no difference between Wilks and J&M Associates. Plaintiffs also assert that Wilks merely moved the work from J&M Associates to J&M Marine. Plaintiffs note that Wilks incorporated J&M Associates, controlled it, and both shared the same principal place of business, Wilks' residence.

Plaintiffs contend that an amendment "relates back" to the original complaint when the party to be added is the alter ego of a named party. Plaintiffs also argue that the Fifth Circuit has recognized that there is no statute-of-limitations defense when the original pleading was timely and gave proper notice of the conduct at issue.

Plaintiffs also assert that the amendment is timely. Pointing to the massive scope of discovery and documents in this suit, plaintiffs contend that timeliness is a function of the complexity of the suit and the progression of discovery. Plaintiffs note that they only learned of the dormancy of J&M Associates at the deposition of Wilks in January 2010 and of J&M Associates' debt and defunct existence in a May 2010 letter to the Court from Wilks.

Plaintiffs lastly argue that granting leave to amend will avoid an inequitable result. J&M Associates has allegedly effectively abandoned the litigation. It has allegedly not attended settlement conferences and has filed no witness or exhibit lists. Its last filing (apart from the opposition here) was allegedly 20 months ago.

**III.    J&M Associates' Opposition**

J&M Associates notes that plaintiffs assert against it only three of their 13 claims, for violations of the civil Racketeer Influenced and Corrupt Organization Act ("RICO"), for fraud and negligent misrepresentation and for breach of contract. Citing case law that addresses Federal Rule of Civil Procedure 12, J&M Associates argues that the amended allegations do not satisfy the pleading standards under the rule. J&M Associates contends that the amended complaint does not set forth detailed factual allegations but mere legal conclusions, *i.e.*, that Wilks is the alter ego of J&M Associates. Defendant contends that the facts that plaintiffs set forth in their amended complaint and the memorandum in support of their motion fall short of Rule 12's pleading standard. J&M Associates notes that plaintiffs do not seek to assert a new cause of action against it but merely seek to substitute Wilks and J&M Marine in place of J&M Associates. Defendant argues that plaintiffs have not alleged sufficient facts to pierce the corporate veil.

J&M Associates also contends that plaintiffs are time-barred from amending their complaint. It asserts that because it is a Mississippi corporation with its principal place of business in Mississippi, Mississippi law applies. J&M Associates outlines Mississippi law on piercing the corporate veil. It then outlines Mississippi law on the statute of limitations on plaintiffs' claims and contends that plaintiffs' claims have prescribed.

J&M Associates attempts to distinguish the case law that plaintiffs cite to support their argument that the amended complaint relates back to the original complaint because Wilks and J&M Associates are alter egos. J&M Associates contends that plaintiffs have wholly failed to allege facts that support the argument that Wilks is defendant's alter ego.

J&M Associates also contests plaintiffs' claim that Wilks and J&M Marine were ever on

notice of the claims here. It contends that they were never put on notice of alter-ego or veil-piercing claims. Contrary to its earlier assertion, J&M Associates then asserts that plaintiffs attempt to state an entirely new claim against Wilks and J&M Marine.

J&M Associates also notes that it has participated in this suit. Defendant only retained current counsel in June 2010, two days before the settlement conference. J&M Associates asserts that plaintiffs can not question its legal strategy in this suit.

**IV.     Plaintiff's Reply**

In their reply, plaintiffs first claim that the fact that J&M Associates is the only party opposing their motion supports their argument that Wilks and J&M Associates are alter egos. Plaintiffs wonder why a purportedly independent company would not want to diffuse plaintiffs' claims across more independent defendants.

In response to defendant's argument that plaintiffs fail to meet the pleading standards of Rule 12, plaintiffs provide revised paragraphs in a new amended complaint that add to those paragraphs proposed in the amended complaint attached to their original motion. The proposed paragraphs address the particularities of the alter-ego doctrine and successorship allegations in greater detail. The proposed paragraphs track closely the facts relative to the alter-ego doctrine that plaintiffs outlined in their memorandum in support of their motion.

Plaintiffs argue that Mississippi law does not apply here because this is not a diversity suit. Plaintiffs invoked this Court's jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under Section 1367(a). Plaintiffs note that their federal civil trafficking claims arise under 18 U.S.C. § 1595(a), the RICO claims arise under 18 U.S.C. § 1964(c), their civil rights claims arise under 28

U.S.C. § 1343, and their Fair Labor Standards Act claims arise under 29 U.S.C. § 216(b). Citing case law, plaintiffs contend that the Fifth Circuit applies the federal common law of the alter-ego doctrine in suits such as this one given that courts generally apply federal and state cases interchangeably because the federal common-law doctrine is so similar to that of the states. Pointing to *Liberty Mutual Insurance Co. v. Hoffman*, 765 So. 2d 564 (Miss. Ct. App. 2000), plaintiffs contend that even a Mississippi court affirmed an alter-ego conclusion under a test similar to that under federal common law.

Fearing that this Court may adopt the alternate Mississippi alter-ego test, plaintiffs argue that they meet even those three requirements. First, plaintiffs contend that they have demonstrated some frustration of contractual expectations regarding the party to whom they looked for performance. Second, plaintiffs argue that they have demonstrated that Wilks has disregarded corporate formalities on occasion. Lastly, plaintiffs note that they have adequately pleaded fraud with particularity given the District Court's denial of defendants' motion to dismiss on this ground. [Doc. #288].

Plaintiffs thus argue that J&M Associates' defense on the ground of the statue of limitations is superfluous and moot. Plaintiffs argue that as long as the pleadings adequately *allege* an alter-ego relationship between Wilks and J&M Associates, the proposed amended complaint relates back to the original complaint, and a statute-of-limitations affirmative defense must fail.

## V.    The Supplemental Memoranda

In their supplemental memoranda, plaintiffs address the timeliness of the filing of the motion to amend, the relationship of the alleged alter ego and the wrongs at issue here and the ripeness of

plaintiffs' RICO claims. In its supplemental memoranda, J&M sets out each paragraph that plaintiffs seek to add to their complaint and argues that each paragraph is no more than conclusory allegations with no factual support. J&M contends that the proposed paragraphs still fail the pleading requirements of *Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). J&M also repeats its argument that the Mississippi law of statute of limitations applies here and not federal common law. Thus, J&M contends, plaintiffs' claims have prescribed, and any amendment would be futile.

**VI.   Law and Analysis**

Because no scheduling order yet exists in this suit, Federal Rule of Civil Procedure 15 applies to plaintiff's motion. Rule 15(a) of the Federal Rules of Civil Procedure provides that, after a responsive pleading has been served, a party may amend its pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Rule 15(a) evinces a bias in favor of granting leave to amend, absent substantial reason for denying leave. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597-98 (5th Cir. 1981).

In deciding whether to grant leave to file an amended pleading, the court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, and the futility of amendment. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that granting "leave to amend is by no means automatic"); *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1150 (5th Cir. 1990)).

7

Nothing before the Court suggests that any of these factors weighs in favor of denying leave to amend. Plaintiffs only learned in January and then May 2010 that J&M Associates is now a near-defunct corporation and heavily in debt and that Wilks had incorporated J&M Marine. Moreover, Wilks and J&M Marine can demonstrate no prejudice given that Wilks – at least since his deposition in January 2010 – has known of the allegations in this lawsuit and can not now claim ignorance of the claims against him and his corporations. While Wilks and J&M Marine argue prejudice in that they were unaware of any alter-ego or veil-piercing arguments, such argument is of no moment. Wilks and J&M Marine have been aware of the underlying allegations for some time now. How plaintiffs attempt to prove such allegations may change throughout the lawsuit, and Wilks and J&M Marine need not know of such strategy since the outset of the litigation.

If plaintiffs can demonstrate that Wilks, J&M Marine and J&M Associates are alter egos, plaintiffs' amended complaint "relates back" to the filing of the original complaint, and any affirmative defense based on a statute of limitations must fail. *See Rodriguez v. East-West Apparel, Inc.*, 35 F.3d 560, 1994 WL 499725, *1 (5th Cir. Aug. 23, 1994). Whether plaintiffs can demonstrate that the entities are alter egos is a merits-based determination for the District Court. This Court need only concern itself with whether the factual allegations in the amended complaint are sufficient to *allege* that the entities are alter egos, and the Court finds so.

To prove an alter-ego relationship in which a successor corporation may be held liable for the debts of a predecessor corporation, the Fifth Circuit has noted its approval of the "continuity of

enterprise" theory. *See Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 175 (5th Cir. 1985).[2] The continuity of enterprise theory is in the nature of an expansion of the mere continuance exception to the rule of non-liability. *Id.* Factors that are typically taken into account to determine whether there is a continuity of enterprise are: (1) retention of the same employees; (2) retention of the same supervisory personnel; (3) retention of the same production facilities in the same physical location; (4) production of the same product; (5) retention of the same name; (6) continuity of assets; (7) continuity of general business operations; and (8) whether the successor holds itself out as the continuation of the previous enterprise. *Id.*

As noted above, plaintiffs allege that: (1) Nicole Homel-Tellier, Wilks' assistant, whose only job was to follow the immigration applications filed by the Burnett defendants, transferred to J&M Marine; (2) Wilks became the supervisor of J&M Marine; (3) J&M Associates and J&M Marine

---

[2] The Court rejects J&M Associates' argument that Mississippi law applies here. This is not a diversity suit but a suit solidly grounded in federal law. This Court has found no law to support defendant's argument that Mississippi law applies because defendant is a Mississippi corporation with its principal place of business in Mississippi. Even were this a diversity suit, that is not the sole test to determine controlling state law. Moreover, even were the Court to hold otherwise, the Court notes that *Mozingo* – on which this Court relies – was a diversity suit in which the Fifth Circuit applied Mississippi law. *Mozingo*, 752 F.2d at 173.

Moreover, state and federal alter-ego tests in the Fifth Circuit are viewed as interchangeable and either can apply in a federal question case. *See Chao v. Occupational Safety and Health Review Comm'n*, 401 F.3d 355 (5th Cir. 2005) (refraining from discussing "whether state or federal alter ego law applies in this administrative case not arising under diversity jurisdiction" because "state and federal alter ego tests are essentially the same"); *Century Hotels v. United States*, 952 F.2d 107, 110 n.4 (5th Cir. 1992) ( "State and federal alter ego tests are essentially the same. Our non-diversity alter ego cases rarely state whether a state or federal standard controls, and apply state and federal cases interchangeably."); *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 690 n.6 (5th Cir. 1985) ("Here, we find no need to determine whether a uniform federal alter ego rule is required, since the federal and state alter ego tests are essentially the same. Our non-diversity alter ego cases have rarely stated whether they were applying a federal or state standard, and have cited federal and state cases interchangeably.").

have the same principal place of business – Wilks' residence; (4) the entities engage in the same work, recruiting laborers; (5) both entities share the J&M initials; (6) J&M Marine absorbed the goodwill of J&M Associates; and (7) Wilks stated that he expected the workers who were J&M Associates' green card candidates would ultimately work under J&M Marine's H2B visa program. Wilks and J&M Marine present the Court with no evidence to counter such allegations. Accordingly, and only for purposes of amending the complaint, the Court finds that plaintiffs have sufficiently alleged facts relative to the continuity of enterprise theory. Whether they are or not alter egos need be determined by the District Court on a motion based on the merits.

The Court also finds that plaintiffs have alleged sufficient facts relative to their theory that Wilks is the alter ego of J&M Associates. To determine whether Wilks and J&M Associates are alter egos, a court will consider the following factors:

> (1) the parent and the subsidiary have common stock ownership;
> (2) the parent and the subsidiary have common directors or officers;
> (3) the parent and the subsidiary have common business departments;
> (4) the parent and the subsidiary file consolidated financial statements and tax returns;
> (5) the parent finances the subsidiary;
> (6) the parent caused the incorporation of the subsidiary;
> (7) the subsidiary operates with grossly inadequate capital;
> (8) the parent pays the salaries and other expenses of the subsidiary;
> (9) the subsidiary receives no business except that given to it by the parent;
> (10) the parent uses the subsidiary's property as its own;
> (11) the daily operations of the two corporations are not kept separate; and
> (12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings.

*United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691-92 (5th Cir. 1993).[3]  Even a cursory

---

[3] The Court recognizes that *Jon-T* was a suit to impose liability on a subsidiary corporation for the actions of its parent corporation. However, in the typical corporate veil piercing

review of plaintiffs' proposed paragraphs reveals that plaintiffs' allegations address, at a minimum, factors two, three, five, six, seven, eight, eleven and twelve.  The resolution of alter-ego issues must be based on a consideration of "the totality of the circumstances"; there is "no litmus test." *Id.* at 694.  Accordingly, none of the factors is dispositive, and a party need not even address all of the factors to establish that alter egos exist. Whether Wilks and J&M Associates are alter egos is a merits determination for the District Court.  For the purposes of the motion to amend, the Court finds that plaintiffs have adequately pleaded factual allegations to amend their complaint.[4]

## VII.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** that  Plaintiffs' Motion for Leave to File Second Amended Complaint [Doc. #876] is GRANTED.

New Orleans, Louisiana, this 23rd day of November, 2010.

---

scenario, the corporate veil is pierced such that individual shareholders can be held liable for corporate acts.  *Maiz v. Virani*, 311 F.3d 334, 346 n.11 (5th Cir.2002).

[4]   The Court also rejects any argument that an applicable statute of limitations may bar plaintiffs' amendment. *See Stanley v. Trinchard*, Civ. A. No. 2-1235, 2010 WL 3168113, *4 (E.D. La. Aug. 9, 2010) ("[T]he Federal Rules of Civil Procedure, rather than the Louisiana rules, govern whether plaintiff's claims relate back. Because Rule 15(c)(B) permits a party to amend a pleading *despite an applicable statute of limitations* in situations where the parties to litigation have been sufficiently put on notice of facts and claims which may give rise to future, related claims, it is not relevant whether a Louisiana court would permit plaintiff's fraud claims to relate back to plaintiff's original pleading." (emphasis added) (citations and  quotations omitted)).
Moreover, the Court recognizes that although a finding of fraud is not essential in tort cases, "in contract cases, fraud is an essential element of an alter ego finding."*Jon-T*, 768 F.2d at 692.  While this is generally a tort case, the Court finds that plaintiffs have adequately pleaded fraud here, given the District Court's Order dated December 8, 2008 [Doc. #288], which held that plaintiffs here had pleaded fraud with particularity.

_____
**DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE**