# AFFIDAVIT

STATE OF MISSISSIPPI

COUNTY OF JACKSON

I, Ronald W. Schnoor, being duly sworn, deposes and says:

1. I am the Chief Operating Officer, for Signal International, LLC ("Signal"), in Pascagoula, Mississippi and Orange, Texas.

2. This affidavit is based on my personal knowledge. I am a resident of Jackson County, I am over 21 years of age and I am competent to make this affidavit.

3. As a result of my position at Signal, as Chief Operating Officer, I am qualified to make the following assertions regarding Signal's confidential financial information, which Signal considers its trade secrets.

4. Signal is a private corporation; Signal's trade secrets are not public information.

5. Signal's financial information, i.e., its trade secrets, are a combination of economic analysis and strategic planning to ensure an economic advantage in the Gulf Coast's marine and fabrication industry.

6. Only Signal's Officers and Directors are privy to Signal's trade secrets.

7. Signal's trade secrets that are memorialized on paper are maintained in secure file cabinets in order to protect this information from unauthorized viewers.

8. Signal's trade secrets are extremely valuable, as their development and use is responsible for Signal's financial success within the marine and fabrication industry.

9. Signal's trade secrets are a result of a concentrated research and development

effort.

10. Signal has invested millions of dollars in the development of its trade secrets.

11. Signal's trade secrets are held closely and are not, nor have they ever been, for sale.

12. The marine and fabrication industry is a highly competitive industry on the Gulf Coast.

13. Competition in the marine and fabrication industry calls for innovative economic techniques and strategies; Signal's trade secrets enable it to compete within the industry.

14. If competitors were to learn Signal's trade secrets, they could easily interfere with Signal's ongoing business operations.

15. If competitors were to learn Signal's forecasts for future production, they could easily adjust their production targets to frustrate Signal's plans.

16. If competitors were to learn Signal's marketing plans it would be detrimental to Signal, for it would Signal's competitors unfair advantage in negotiating contracts.

17. If competitors were to learn Signal's competitive prices, they could adjust their prices accordingly in order to undercut Signal's prices and harm its sales.

18. If competitors were to learn Signal's costs, they would know the outer limits at which Signal could no longer compete, and force Signal into financial ruin.

19. If competitors were to learn Signal's competitive prices, costs, and the identity of Signals suppliers and certain customers, they could easily manipulate the market and drive Signal out of business, e.g., by targeting and soliciting Signal's

suppliers and certain customers, and offering more money to suppliers and lower prices to customers.

20. Signal's trade secrets have taken years to develop, and as such, it would take a competitor years of trial and error, and a considerable financial investment to develop similar information.

21. If competitors were allowed access to Signal's trade secrets, they could easily bypass these developmental steps, thus gaining an unfair advantage by free-riding off of Signal's trade secrets, thus causing harm to Signal's competitive stance.

*[signature]*
**RONALD W. SCHNOOR**
**CHIEF OPERATING OFFICER**
**SIGNAL INTERNATIONAL**

Sworn to before me this
11th day of Feb., 2011.

*[signature]*
Notary Public

*[Notary seal: STATE OF MISSISSIPPI, LESLEY POOLE, NOTARY PUBLIC, ID No. 80875, Commission Expires April 12, 2014, JACKSON COUNTY]*