UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KURIAN DAVID, ET AL.                                      CIVIL ACTION

VERSUS                                                   NO. 08-1220

SIGNAL INTERNATIONAL, L.L.C, ET AL.                      SECTION  "E" (3)

ORDER

On September 5, 2012, Plaintiff's Motion for Leave to File Third Amended Complaint [Doc. #1199] came on for oral hearing before the undersigned.  Present were Chandra Bhaunagar, Daniel Werner and Hugh Sandler on behalf of plaintiffs, Erin Hangartner, Hal Ungar and Paul Mirabile on behalf of defendant Signal International, L.L.C., and Stephen Shapiro on behalf of the Dewan defendants.  After the oral hearing, the Court took the motion under advisement.  Having reviewed the motion, the opposition, the case law and the parties' oral argument, the Court rules as follows.

I.      Background

Plaintiffs filed their complaint on behalf of a putative class, allegedly consisting of over 500 Indian men whom defendants allegedly trafficked into the United States through the federal government's H-2B guestworker visa program in violation of putative class plaintiffs' rights, including their right to be free from forced labor, involuntary servitude, and peonage under the Thirteenth Amendment and 18 U.S.C. § 1854.  Additionally, plaintiffs claim violations of the Trafficking Victims Protection Act of 2003, 18 U.S.C. §§ 1589-90 ("TVPA") and violations of their

rights under 42 U.S.C. § 1981 to be free from a hostile work environment and discrimination based on race, national origin, and/or alienage status, all of the foregoing in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)-(d) ("RICO"). [Doc. #1]. On October 1, 2008, putative class plaintiffs filed their motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3). [Doc. # 165].

The putative class of over 500 Indian men secured visas to work in the United States for Signal International, LLC in the aftermath of Hurricane Katrina.  Signal provides construction services to the Gulf Coast oil and gas industry.  Plaintiffs allege that beginning in late 2003, defendants Dewan Consultants, Sachin Dewan, Global Resources, Inc., and Michael Pol placed advertisements in various newspapers across India and the United Arab Emirates, which advertisements sought welders, fitters, and other marine fabrication workers on behalf of various U.S.-based companies.  The advertisements promised that qualified candidates could obtain legal permanent residence (green cards) and thereby legally and permanently immigrate to the United States with their families. Plaintiffs contend that they paid exorbitant fees to the defendants for recruitment, immigration processing, and travel.  Plaintiffs contend that unbeknownst to them, they were never eligible to obtain the promised green cards and that, upon arrival in the United States, defendants subjected them to serious abuses and forced labor at Signal's labor camps in Pascagoula, MS. and in Orange, TX.

Putative class representative David Kurian's factual assertions are representative of those made by other plaintiffs. (Doc. #174-3).  According to David, a citizen of India, he saw a newspaper ad by Dewan Consultants while employed in Abu Dhabi.  In May 2006, David attended a seminar led by defendant Sachin Dewan with the assistance of defendant Malvern Burnett.  David claims that

at the seminar, Dewan told the attendees that for 600,000 rupees ($12,334.49) plus costs, he could get an employment-based green card in the United States.   The attendees were told that the money would be paid in three installments and that the money would cover Dewan's fee as well as fees for Burnett and Michael Pol.  Burnett is an attorney at law who specializes in immigration matters, and Pol owns Global Resources, Inc., a company that helps U.S. companies find skilled labor to work at their facilities.   David claims that Burnett spoke at the seminar and explained to the potential recruitees how the green card process would work.

David took and passed the pipe-fitter skills test.  David then attended two additional group meetings, the second of which was led by Dewan and Burnett.  Burnett explained the green card process once again ,and he and Dewan handed out contracts from Global Resources, Inc., Malvern Burnett, and Dewan Consultants, and an employment form for Signal International.  A representative from Dewan's office helped the group to fill out the forms.

In June and August 2006, David made installment payments at Dewan's office, which included checks made payable to Burnett and Pol.  In late August 2006, David attended a meeting in Dubai where Dewan and Burnett told the workers that before their visas would expire, the green cards would be approved.   At a subsequent meeting, Dewan and Burnett gave the workers instructions on how to answer questions from the U.S. consular officers during their visa interviews. Dewan and Burnett allegedly instructed the workers not to reveal how much money they had paid for the recruitment fees and not to mention the green cards.

The consulate officials took David's passport and at the behest of Dewan Consultants, the passport was returned directly to Dewan's office.  According to David, Dewan refused to return his passport until he made the final installment payment to Dewan and paid for medical testing to be

3

performed by a physician chosen by Dewan.

In February 2007, David made the final payment with checks made payable to Dewan, Burnett, and Pol.  David claims that he was then rushed to sign forms written in English that he could not understand, and it was only upon signing these forms and making the final installment payment that Dewan finally returned his passport.  During this process, David saw other workers try to back out and have their money returned but that someone from Dewan Consultants had threatened to destroy their passports in retaliation.  David contends that he and his wife sold many of their personal belongings to raise the money necessary to pay Dewan, Burnett, and Pol.

On February 16, 2007, David arrived at Signal's labor camp in Orange, Texas where he signed a number of additional employment forms.  David claims that he later learned that the forms permitted Signal to take deductions from his salary for food and accommodations and that Signal required the workers to open an account with a specific bank where their paychecks would be deposited.  David charges that the living conditions and food at Signal were horrible and that the Indian workers were told that even if they left, they would be charged the daily rate of room and board.

David claims that the Indian workers were searched by guards when they would come and go from camp and that guards would sometimes come into the living quarters at night to search workers' belongings.  According to David, the workers began to get sick because of the overcrowded conditions, and Signal required the workers to purchase all of their own tools.  David claims that the workers were relegated to performing all of the dangerous and dirty work inside of the ships and that the American workers were not required to do such work.

According to David, when the workers complained, Signal made more promises about the

4

green cards and threatened that if the workers continued to complain, they would be deported and not receive the promised visas.  David continued to work under conditions that he characterizes as horrible because he was afraid of the consequences of leaving, given that he had incurred so much debt to raise the money to come to the United States.

Another declarant, Sony Sulekha made similar claims about conditions in Pascagoula. (Doc. #174-4).  Sulekha compared the facility to a jail.  He claimed that on one occasion when employees complained about the conditions, a Signal employee came with security guards and locked several Indian workers in a room, one of which allegedly attempted suicide following the incident.

## II.    The Parties' Contentions

### A.    Plaintiffs

Plaintiffs propose to make the following amendments to their pleading in this case:

(a) removal of the class action allegations in light of the District Court's January 3, 2012 decision denying plaintiffs' class certification motion;
(b) removing the plaintiffs' demands for injunctive relief;
(c) adding additional specific allegations of third-party fraud further supporting plaintiffs' theory of defendants' RICO liability pursuant to *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008);
(d) adding the current defendants Malvern C. Burnett ("Burnett"), Law Offices of Malvern C. Burnett, A.P.C. and Gulf Coast Immigration Law Center, L.L.C. (collectively, the "Legal Facilitator Defendants") as additional defendants on plaintiffs' trafficking claim (Count 1), based upon discovery during the class certification phase evidencing the Legal Facilitator Defendants' involvement in the trafficking activities;
(e) supplementing the allegations in support of plaintiffs' claim under the Fair Labors Standards Act ("FLSA") (Count 7) to detail the specific violations of the FLSA; and
(f) updating the RICO fraud chart addendum to plaintiffs' pleading (Rec. Doc. 45) to include specific allegations for the individual claims of the seven named plaintiffs who had previously been suing in a representative capacity (plaintiffs David, Sulekha, Thangamani, Kandhasamy, Khuttan, Andrews, and Dhananjaya) to conform the addendum to the facts adduced during the course of prior discovery on class certification issues, and to incorporate specific fraud allegations of the other five plaintiffs (Vijayan, Kumar, Kadakkarappally, Singh, and Chellappan).

Plaintiffs first note that the District Court denied an earlier motion to file a third amended complaint as moot because it determined that plaintiffs had sufficiently pleaded their RICO claims. After transfer to Judge Morgan, the District Court ordered plaintiffs to move to amend by August 3, 2012.

Citing Rule 15, plaintiffs ask the Court to grant leave freely because justice so requires. Plaintiffs note that the amendment seeks to delete the class-action allegations and the request for injunctive relief, which in no way prejudices defendants.

Plaintiffs also seek to add specific allegations that detail defendants' knowingly fraudulent representations to the government on the visa applications. Plaintiffs argue that the detailed allegations merely elaborate their claims under the already-existing RICO count. Plaintiffs maintain that defendants have long known of plaintiffs' reliance on *Bridge*, recognizing that the District Court has already held that defendants are "well aware" of plaintiffs' fraudulent misrepresentation claims. Plaintiffs argue that defendants will have adequate time to conduct discovery on the allegations before trial.

Plaintiffs argue that the joinder of the Legal Facilitator Defendants as additional defendants on plaintiffs' trafficking claim merely joins existing defendants as additional defendants on an existing claim. Plaintiffs contend that the facts that support adding the Legal Facilitator Defendants were developed during discovery and the depositions of such defendants.

With regard to the proposed amendment to their FLSA claim, plaintiffs note that Signal asked them to add further specific allegations to support the claim but now objects. With regard to their fraud and RICO claims, plaintiffs note that numerous defendants moved to dismiss them on the ground that plaintiffs failed to plead fraud with particularity. Now that plaintiffs seek to add

6

particularity, defendants objects.

### B.    Defendant Signal's Opposition

Signal first notes that it does not object to the amendment to the FLSA claim.  Signal also notes that it does not object to the deletion of the class-action allegations.

Signal opposes the addition of the new plaintiffs.  Citing case law, Signal contends that after the denial of class certification, an amended complaint of mass joinder is improper.  Signal argues that the Court must consider the specific joinder requirements of Rule 20 with regard to the individual plaintiffs.  Signal contends that because each plaintiff's claim must be analyzed individually, the motion must be denied.  Signal contends that each "individual plaintiff in this action is a unique, factual island."  Citing the amended complaint, Signal contends that each new plaintiff presents a unique factual situation.  Signal argues that the claims of the new plaintiffs do not arise from the same series of transactions.

### C.    Plaintiff's Reply

Plaintiffs first note that the amended complaint seeks to add no new plaintiffs.  They contend that they named all 12 plaintiffs in the original complaint filed over four years ago.  Thus, they assert, the case law on which Signal relies with regard to joinder under Rule 20 is inapposite.  Plaintiffs argue that Signal uses its opposition to reinforce its motion to sever, currently pending before the District Court.  Plaintiff contends that no defendant, including Signal, opposes the substance of the amendment.  Citing the amended complaint, plaintiffs note the similarities between the factual allegations of all 12 plaintiffs.  Plaintiffs maintain that the similarities weigh in favor of denying severance.  Plaintiffs note that the District Court recognized that common issues existed even though it denied class certification.

### III.     Law and Analysis

With regard to removal of the class action allegations in light of the District Court's January 3, 2012 decision denying plaintiffs' class certification motion and supplementing the allegations in support of plaintiffs' claim under the FLSA, the motions is GRANTED AS UNOPPOSED.  No party opposes these two facets of the amended complaint.

With regard to the remainder of the amended complaint, the motion is GRANTED.  Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Thus, the "mandate" of Rule 15(a) should be heeded: Leave should be freely given. *Foman v. Davis*, 317 U.S. 178, 182 (1962).  However, leave to amend a complaint is by no means automatic. *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999) (citing *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992)).  Leave to amend lies wholly within the sound discretion of the district court and may be denied when a motion to amend is colored by undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendment, undue prejudice to the opposing party, or futility of the amendment. *Foman*, 317 U.S. at 182; *Little*, 952 F.2d at 846; *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985).

Signal has failed to demonstrate that any of the factors that weigh against granting leave to amend apply here.  Signal has presented no evidence to support undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendment, undue prejudice to the opposing party, or futility of the amendment.  Indeed, the District Court ordered plaintiffs to file any amendment no later than August 3, 2012, and plaintiffs timely did so.  No discovery deadline, pre-trial conference or trial is scheduled in this lawsuit, and Signal can demonstrate no prejudice.

As plaintiffs correctly note, Signal essentially argues severance here, which is the subject

of a motion pending before the District Court. Because the amended complaint seeks to add no new plaintiffs, all of the case law on which Signal relies is inapposite, and Federal Rule of Civil Procedure 20 is inapplicable here. For example, in *Martinez v. Haleas*, the District Court granted a motion to dismiss a first amended complaint in which the main plaintiff Martinez sought to *join 12 additional plaintiffs*. No. 07 C 6112, 2010 WL 1337555, *1 (N.D. Ill. Mar. 30, 2010). In *Hinson v. Norwest Financial South Carolina, Inc.*, the Fourth Circuit Court of Appeals held that it was proper for the District Court to analyze Rule 20 when considering whether to amend a complaint to *add additional plaintiffs*. 239 F.3d 611, 618 (4th Cir. 2001). And in *Cunningham v. Flowers*, the court held that "when a court is faced with a motion to amend that seeks to *join additional plaintiffs*, the court must consider not only the liberal amendment provisions of Rule 15(a), but also the 'more specific joinder provisions of Rule 20(a).'" 218 F.R.D. 453 454 (D. Md. 2003).

The Court is not faced with such a situation here. Plaintiffs' amended complaint seeks to add no new or additional plaintiffs. All 12 plaintiffs have been present since the inception of this lawsuit, whether in a representative or an individual capacity. Under the case law, any analysis of Rule 20 is necessary only when an amended complaint seeks to add additional plaintiffs. That is not present here. Whether plaintiff's' claims should be severed is the subject of a pending motion before the District Court and bears not on any determination to grant leave to amend their complaint.

## IV.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion for Leave to File Third Amended Complaint [Doc. #1199] is GRANTED.

New Orleans, Louisiana, this 21st day of September, 2012.

9

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**