# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**KURIAN DAVID, et al.**                    **CIVIL ACTION**
    **Plaintiffs**

**VERSUS**                                   **No. 08-1220**

**SIGNAL INTERNATIONAL, LLC, et al.,**       **SECTION "E"**
    **Defendants**


**Related Cases:**


**EQUAL EMPLOYMENT OPPORTUNITY**             **CIVIL ACTION**
**COMMISSION,**
    **Plaintiff**

**VERSUS**                                   **No. 12-557**

**SIGNAL INTERNATIONAL, LLC, et al.,**       **SECTION "E"**
    **Defendants**


**LAKSHMANAN PONNAYAN ACHARI, et al.,**      **CIVIL ACTION**
    **Plaintiffs**

**VERSUS**                                   **No. 13-6218**
                                              **(c/w 13-6219, 13-6220,**
                                             **13-6221, 14-732)**

**SIGNAL INTERNATIONAL, LLC, et al.,**       **SECTION "E"**
    **Defendants**


**Applies To:** *David v. Signal* **(08-1220)**

## ORDER AND REASONS

Before the Court is a 12(c) Motion for Partial Judgment on the Pleadings[1] and a

---

[1] R. Doc. 1431.

12(b)(6) Motion to Dismiss,[2] both filed by Signal International, LLC ("Signal"), as well as a 12(c) Motion for Partial Judgment on the Pleadings filed by Burnett.[3] Plaintiffs oppose all of the motions.[4] Considering the briefs, the record, and the parties arguments at oral argument, the court rules as follows.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are twelve citizens of India who secured H-2B visas to work in the United States for Signal in the aftermath of Hurricane Katrina. Plaintiffs allege the Defendants[5] recruited them to work as temporary workers for Signal and forced them to pay inbound travel expenses, visa expenses, and other recruiting expenses. Plaintiffs allege they were induced by Defendants to pay such sums because Defendants knowingly made false promises and representations regarding "the nature and terms and conditions of the immigration and work opportunities offered."[6] Plaintiffs also claim they were discriminated against and subjected to forced labor as welders, pipefitters, and marine fabrication workers at Signal's facilities in Pascagoula, Mississippi and Orange, Texas. Once Plaintiffs arrived at Signal facilities in the United States, Plaintiffs claim Signal forced the workers to live in deplorable conditions and used various tactics to compel the Plaintiffs to continue working for Signal.

---

[2]R. Doc. 1594.

[3]R. Doc. 1582. The Court uses "Burnett" to collectively refer to the following defendants: Malvern C. Burnett, the Gulf Coast Immigration Law Center, LLC and the Law Offices of Malvern C. Burnett, APC.

[4]R. Doc. 1491; R. Doc. 1602; R. Doc. 1598.

[5]The defendants include: Signal, Malvern Burnett, Gulf Coast Immigration Center, LLC, The Law Offices of Malvern C. Burnett, APC, J&M Associates, Inc., J&M Marine, Inc., Billy Wilks, Global Resources, Inc., Dewan Consultants, Pvt., and Sachin Dewan. Plaintiffs allege all defendants were involved in the scheme to recruit Plaintiffs to work in the United States.

[6]R. Doc. 1706, p. 30.

Plaintiffs allege Signal and Burnett violated the Trafficking Victims Protection Act of 2003 ("TVPRA")(15 U.S.C. § 1589), the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1962, *et seq.*), and the Klu Klux Klan Act (42 U.S.C. § 1985).[7] Plaintiffs claim Signal violated the Civil Rights Act of 1866 (42 U.S.C. § 1981) ("Section 1981") and the Fair Labor Standards Act ("FLSA")(29 U.S.C. § 201, *et seq.*).[8] Additionally, Plaintiffs bring claims against Signal and Burnett for fraud, negligent misrepresentation, and breach of contract under state law.

Signal filed a 12(c) Motion for Partial Judgment on the Pleadings seeking to dismiss Plaintiffs' state law claims, claim for recruitment fees under Section 1981, and claim for recruitment fees, inbound travel expenses, and visa expenses under FLSA contained in Plaintiffs' third amended complaint.[9] The Court thereafter ordered Plaintiffs to file fourth and fifth amended complaints to clarify their causes of action and to state which law their state law claims arise under.[10] After Plaintiffs filed their fifth amended complaint, Signal filed a 12(b)(6) Motion to Partially Dismiss Plaintiffs' state law claims, putting forth the same arguments as its Rule 12(c) motion, and additionally asking the Court to decline to exercise jurisdiction over Plaintiffs' state law claims.[11] Burnett filed a Rule 12(c) Motion for Partial Judgment on the Pleadings seeking to dismiss the TVPRA, RICO, and the Klu Klux Klan Act claims in Plaintiffs' fourth amended complaint, as well as Plaintiffs' state law

---

[7] R. Doc. 1706, pp. 56-71, 116-118.

[8] R. Doc. 1706, pp. 71-73.

[9] R. Doc. 1431.

[10] R. Doc. 1518; R. Doc. 1584.

[11] R. Doc. 1594.

claims for fraud and negligent misrepresentation.[12]

Plaintiffs then sought and obtained leave to file a sixth amended complaint to add various Signal entities as defendants.[13] In Plaintiffs' sixth amended complaint, they do not seek recruitment fees under Section 1981. Plaintiffs seek "compensatory damages for the deprivation of Plaintiffs' civil rights *during their time in Signal's Pascagoula, Mississippi and/or Orange, Texas employment up to the point at which each Plaintiffs' employment at Signal was terminated.*"[14] Plaintiffs do not pray for compensatory damages related to the recruitment fees they incurred prior to or after working at Signal under Section 1981. Accordingly, Signal's 12(c) Motion for Judgment on the Pleadings seeking dismissal of Plaintiffs' claim for recruitment fees under Section 1981 is **DENIED AS MOOT.** However, with respect to the remaining issues raised in both Signal's and Burnett's motions, the amended complaints have not rendered any of those issues moot. Accordingly, the Court will rule on each motion in turn.

## STANDARD OF LAW

Signal and Burnett's motions under Rule 12(b)(6) and Rule 12(c) are governed by the same legal standard. The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 528 (5th Cir. 2004). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim

---

[12]R. Doc. 1582.

[13]R. Doc. 1706.

[14]R. Doc. 1706, p. 73 (emphasis added).

4

that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007);

*Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). As the Fifth Circuit explained in

*Gonzales v. Kay*:

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 128 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929). "A Claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - that the pleader is entitled to relief." *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

The Court cannot look beyond the factual allegations in the pleadings to determine

whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.

1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the Plaintiffs'

complaint, the Court must accept all well-pleaded facts as true and liberally construe all

factual allegations in the light most favorable to the Plaintiffs. *Spivey*, 197 F.3d at 774;

*Lowrey v. Tex A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate

when the complaint 'on its face show[s] a bar to relief." *Cutrer v. McMillan*, 308 F. App'x

819, 820 (5th Cir. 2009) (per curiam) (unpublished) (quoting *Clark v. Amoco Prod. Co.*,

794 F.2d 967, 970 (5th Cir. 1986)).  A court may grant a motion for judgment on the

pleadings when no genuine issues of material fact remain and the case can be decided as a

matter of law.  *Erickson v. Pardus*, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).

## ANALYSIS

### A. Signal's Motion for Partial Judgment on the Pleadings Under Rule 12(c)[15]

Signal seeks dismissal of Plaintiffs' claims for recruitment fees, visa expenses, and travel expenses, asserting these fees and expenses are not recoverable under FLSA.[16]

In their complaint, Plaintiffs claim Signal violated FLSA by failing to pay Plaintiffs the applicable minimum wage as a result of Signal's unlawful deductions from Plaintiffs' wages for travel expenses, visa expenses, and recruitment expenses, all of which were allegedly paid entirely by Plaintiffs for the benefit or convenience of Signal.[17] Under FLSA, "wage" is defined as both cash wages and "the reasonable cost ... to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m). The court in *Rivera v. Brickman Group, Ltd.* explained how the FLSA minimum wage is calculated in light of an employer's deductions:

> In other words, when the employer pays for "board, lodging, or other facilities," it may add the costs of those facilities to the cash wage for purposes of complying with the FLSA minimum. The Department of Labor has stipulated that an employer may not count as "other facilities" goods or services that are "primarily for the benefit or convenience of the employer," 29 C.F.R. § 531.3(d)(1), and, as a corollary, has provided that employers may not pass along to employees expenses for such goods or services, 29 C.F.R. § 531.35. If an employer does pass along such an expense, then the expense is deducted from the cash wage to determine compliance with the FLSA minimum.

2008 WL 81570 at *7 (E.D. Pa. Jan. 7, 2008).

Plaintiffs pray for reimbursement of travel expenses, visa expenses, and recruitment

---

[15]R. Doc. 1431.

[16]R. Doc. 1431, p. 7. Signal also argues Louisiana's choice of law rules require dismissal of Plaintiffs' state law claims. The Court will address this argument in reference to Signal's 12(b)(6) motion to dismiss discussed below.

[17]R. Doc. 1706, pp. 115-116.

expenses, arguing these sums were "primarily for the benefit" of Signal and therefore those expenses must be deducted from Plaintiffs' wages to determine whether a minimum wage was paid under FLSA.[18] Signal, on the other hand, argues the Fifth Circuit's decision in *Castellanos-Contreras v. Decatur Hotels, LLC* holds that Plaintiffs are not entitled to be reimbursed for those sums under FLSA. 622 F.3d 393 (5th Cir. 2010).

In *Decatur Hotels*, a group of foreign workers brought to the United States under H-2B visas sued their employer, a hotel operator. The workers sought to recover from the employer their travel expenses, visa fees, and recruitment payments, arguing such sums must be deducted from the first week's wage before calculating whether a minimum wage, under the FLSA, was paid. Asserting that the deductions took their pay below minimum wage, the workers sued their employer under FLSA to be reimbursed for such expenses.

On appeal from the district court's order granting in part the workers' summary judgment motion and denying the employer's summary judgment motion, the Fifth Circuit addressed whether each category for which the workers claimed reimbursement - inbound travel expenses, visa expenses, and recruitment expenses - should be deducted from the workers' first week's wage under FLSA. The Fifth Circuit held that no statute or regulation expressly required an employer to deduct the cost of inbound travel expenses or visa expenses before determining whether a minimum wage was paid. *Id.* at 400. As such, the workers were not entitled to be reimbursed for such expenses as a matter of law. *Id.* Accordingly, to the extent Signal seeks to dismiss Plaintiffs' FLSA claim for inbound travel and visa expenses, Signal's motion is granted.

With respect to recruitment fees, *Decatur Hotels* held the employer "was not required to reimburse the workers for the fees they paid [recruiters]" because the workers

---

[18]R. Doc. 1706, p. 116.

had not put forth any "evidence to support the concept that [the employer] required recruitment fees to be paid to the [recruiters] or that it required the workers to use these recruiters to apply." *Id*. at 403. The Fifth Circuit distinguished *Brickman*, which held the costs of recruitment fees were found to be "primarily for the benefit of the employer," and that the employer was not allowed to pass those costs along to the employees to the extent that doing so reduced their wages below the FLSA minimum. 2008 WL. 81570 at *14. The *Brickman* court based its decision on the fact that the employees had no choice but to go through the employer's recruiters. *Id*. at *13. The Fifth Circuit in *Decatur Hotels* found the employer and the workers shared the recruitment expenses which were "apportioned to each party appropriately." *Id*. at 404. As such, the workers did not demonstrate the recruitment fees were "primarily for the benefit" of their employer so those fees were not to be deducted before calculating whether a minimum wage was paid under FLSA. *Id*.

The Fifth Circuit's determination that recruitment expenses were not reimbursable in *Decatur Hotels* was based on the lack of evidence put forth by the plaintiffs at the summary judgment stage to show: 1) the employer required the workers to pay recruiters or, 2) that the employer required the workers to use recruiters. *Id*. at 403. Accordingly, *Decatur Hotels* leaves open the possibility for a plaintiff to recover recruitment fees under FLSA if he or she can show the employer required the employee to use a recruiter and to pay the recruiter.

Unlike *Decatur Hotels*, this Court must only determine whether the factual allegations in the complaint support Plaintiffs' claim for recruitment fees under FLSA. In deciding a Rule 12(b)(6) or Rule 12(c) motion, the Court cannot look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey*, 197 F.3d at 774. Based on facts alleged in Plaintiffs' sixth amended complaint, taken as true,

8

Plaintiffs have stated a claim for recruitment fees under the FLSA because Plaintiffs allege Signal required them to pay recruiters and Signal required the Plaintiffs to use recruiters.[19] As such, Plaintiffs have adequately stated a claim for recruitment fees under FLSA. Signal's request to dismiss Plaintiffs' claim for recruitment fees under FLSA is denied.

## B. Signal's 12(b)(6) Motion[20]

After Plaintiffs' filed their fifth amended complaint, Signal filed a Motion to Partially Dismiss for Failure to State a Claim under Rule 12(b)(6) seeking dismissal of Plaintiffs' state law claims to the extent they are alternatively based on the state law of Mississippi or Texas.[21]  Signal does not seek dismissal of claims based on Indian law. Signal argues Plaintiffs' claims under the laws of Texas or Mississippi should be dismissed because under Louisiana's choice-of-law rules, the law of India will apply to these claims and as a result, application of the law of Texas or Mississippi would be extraterritorial. Signal contends these claims are implausible under the laws of Texas and Mississippi due to their extraterritorial nature.   Alternatively, Signal asks the Court to decline to exercise jurisdiction over Plaintiffs' state law claims.

### 1. Dismissal of State Law Claims

Plaintiffs bring claims of fraud, negligent misrepresentation, and breach of contract under state law alleging the Defendants made "untrue statements ... regarding the nature and terms and conditions of applications and opportunities for immigration status and

---

[19]R. Doc. 1706, p. 42.

[20]R. Doc. 1594.

[21]Signal's 12(c) Motion for Partial Judgment on the Pleadings also requested dismissal of Plaintiffs' state law claims. *See* R. Doc. 1431.

employment in the United States."[22] Plaintiffs allege Defendants broke promises and misrepresented the availability of work and immigration opportunities after Plaintiffs paid exorbitant "recruitment fees" to the Defendants for processing immigration documents. Plaintiffs bring these state law claims under Indian law, Mississippi law, or Texas law depending upon the Plaintiff, the defendant, and the actions complained of, and sometimes alternatively. Signal believes the Court should dismiss Plaintiffs' state law claims because Plaintiffs' claims require the application of "the law of another country."[23]

Signal's argument is misplaced. Signal has failed to cite a single case or statute demonstrating a Louisiana court, or any court, would dismiss Plaintiffs' claims merely because they arise from events occurring abroad.[24] Louisiana's choice-of-law rules are used to determine the law to be applied in any given case, and by themselves, do not provide a basis for dismissing Plaintiffs' state law claims. Louisiana's choice-of-law rules define "state" law to include the law of "any foreign country or territorial subdivision thereof that has its own system of law." La. Civ. Code art. 3516.  Indeed, a federal court may apply foreign law to pendant state law claims. *See e.g. McGee v. Arkel Int'l LLC*, 671 F.3d 539 (5th Cir. 2012). As Signal has noted, choice of law is a legal question to be decided by the Court. The Court has not determined the law to be applied to the state law claims made in this case. As a result, the Court will not dismiss the state law claims based on extraterritoriality.

---

[22]R. Doc. 1706, p. 79.

[23]R. Doc. 1431, p. 19.

[24]Because this Court has federal question jurisdiction and is exercising supplemental jurisdiction over Plaintiffs' state law claims, the Court must apply the law of the state in which it sits, Louisiana. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Court must also apply Louisiana's choice of law rules. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). At this juncture, the parties have not fully briefed, nor has the Court determined, which law applies to Plaintiffs' state law claims based on Louisiana's choice of law rules.

Signal's motion, insofar as it seeks to dismiss Plaintiffs' state law claims, is denied.

## 2. Supplemental Jurisdiction

Signal also asks the Court to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. Under 28 U.S.C. § 1367(c)(1), "district courts may decline to exercise supplemental jurisdiction over a claim ... if the claim raises a novel or complex issue of state law." Signal argues the Court should decline to exercise supplemental jurisdiction because Plaintiffs' complaint alleges their state law claims under Indian law, Texas law, and Mississippi law in the alternative. Signal also asks the Court to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims because, if Indian law applies, differences in Indian law will require additional depositions and research which would undermine judicial economy, convenience, and fairness. [25]

Under 28 U.S.C. 1367(c), a district court may decline to exercise supplemental jurisdiction over state law claims when: "(1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." Additionally, the Fifth Circuit has identified "the common law factors of judicial economy, convenience, fairness, and comity" as relevant in evaluating whether supplemental jurisdiction should be declined. *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

Contrary to Signal's assertions, Plaintiffs' state law claims are not so "complex" as

---

[25]During discovery, "one, maybe two" Plaintiffs asserted the Fifth Amendment at their depositions. R. Doc. 1549-1, p. 18. Signal argues differences between the Fifth Amendment and India's right to be free from self incrimination warrant re-deposing these Plaintiffs.

to warrant the Court's declining to exercise supplemental jurisdiction. At present, Plaintiffs' state law claims are pled under Indian law, Texas law, and Mississippi law, and sometimes in the alternative. The fact that the claims are pled in the alternative does not render them complex. Once the parties fully brief, and the Court decides, which law applies to which state law claim, Signal's fears of complexity will be abated. Signal has not pointed to any provision of state law which is so "novel" or "complex" as to warrant declining the exercise of supplemental jurisdiction under 28 U.S.C. 1367(c). Furthermore, Plaintiffs' state law claims do not predominate over their federal law claims and none of the other grounds for declining to exercise supplemental jurisdiction under 28 U.S.C. 1367(c) are applicable.

Even if the Court ultimately decides Indian law applies to some or all claims, Signal has failed to show the application of Indian law by this Court undermines judicial economy, convenience, or fairness. The parties have ample time to research any applicable provisions of Indian law prior to the trial date. Further, Signal has not persuaded the Court additional depositions are warranted if Indian law applies. This Court has exercised supplemental jurisdiction over Plaintiffs' state law claims since this case was filed in March, 2008. Indeed, the common law factors of judicial economy, convenience, fairness, and comity weigh in *favor* of continuing to exercise supplemental jurisdiction over Plaintiffs' state law claims. Forcing the Plaintiffs' to bring their state law claims in state court, and thereby forcing Signal to defend these claims in a different forum at this time would be a waste of the judicial resources already expended. This Court's exercise of supplemental jurisdiction over Plaintiffs' state law claims is proper.

## C. Burnett's 12(c) Motion for Partial Judgment on the Pleadings[26]

Burnett moves to dismiss Plaintiffs' claims under TVPA, RICO, and the Klu Klux

---

[26] R. Doc. 1582.

Klan Act, as well as Plaintiffs' fraud and negligent misrepresentation claims under state law.[27] Burnett argues Plaintiffs' complaint does not contain sufficient factual material to support those claims, and Plaintiffs have failed to adequately plead fraud under Rule 9. Burnett also asserts Plaintiffs have failed to state a claim with respect to their state law claims because they are grounded in events occurring abroad.

### 1. Sufficiency of Factual Material Alleged

#### a. TVPA

Burnett argues Plaintiffs' complaint lacks factual allegations sufficient to state a claim under the TVPA.  Burnett contends Plaintiffs do not allege that Burnett ever forced Plaintiffs to work for Signal or ever threatened any Plaintiff with deportation if they refused to continue working for Signal. Burnett believes he provided legal and necessary immigration services to allow Plaintiffs to enter the United States.

Plaintiffs' complaints include two related claims under the TVPA: a claim for forced labor under 18 U.S.C. § 1589 ("Section 1589"), and a claim for trafficking under 18 U.S.C. § 1590 ("Section 1590"). Plaintiffs' bring suit under 18 U.S.C. § 1595 ("Section 1595"), which allows an individual who is a victim of a violation under the TVPA to bring a civil action against anyone who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person know or should have known has engaged in an act in violation of [the TVPA]." 18 U.S.C. § 1595.

Section 1589 prohibits anyone who "knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means: (1) by

---

[27]R. Doc. 1582. Burnett does not seek dismissal of Plaintiffs' breach of contract claim under state law. *See* R. Doc. 1582-1, p. 2, n. 1. Burnett's motion seeks to dismiss the claims made in Plaintiffs' fourth amended complaint. However, Plaintiffs sought and obtained leave to file a fifth and sixth amended complaint after Burnett filed his motion. Because the factual allegations in Plaintiffs' fifth and sixth amended complaints are identical to those alleged in the fourth amended complaint, the Court will address Burnett's arguments as they relate to those amended complaints.

means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or restraint." 18 U.S.C. § 1589.

In Plaintiffs' sixth amended complaint and RICO fraud chart, plaintiffs allege Burnett entered into joint venture agreements with other defendants to place advertisements and conduct seminars in Indian cities to recruit workers for Signal, promising permanent residency (green cards) in the United States.[28] Plaintiffs claim Burnett knowingly promised them green cards, even though they were ineligible, in order to induce Plaintiffs to pay large fees to travel and work in the United States.[29] Plaintiffs allege with great detail Burnett's role in their recruitment: his alleged false advertisement of green cards and permanent residency, his alleged misrepresentations to the workers and U.S. government officials, and his collaborated efforts with Signal to discourage the workers from organizing and to ensure the workers continued to work at Signal without complaint.[30] In March 2007, Plaintiffs allege Burnett, in collaboration with Signal, threatened Plaintiffs not to take legal action against Signal, and instructed Plaintiffs "they could depend only on Signal to maintain their H-2B immigration status and pursue their green card applications."[31] Burnett is identified specifically in 187 paragraphs in the fifth amended

---

[28] R. Doc. 1706, pp. 19-30.

[29] *Id.* at p. 29.

[30] R. Doc. 1706, pp. 27-49.

[31] R. Doc. 1706, p. 49.

complaint and 298 times in the RICO fraud chart.[32] Plaintiffs allegations are sufficient to state a claim under Section 1589(a)(2) for using "serious harm" to obtain Plaintiffs' labor.

Under Section 1589(c)(2), "serious harm" includes financial harm "that is sufficiently serious ... to compel a reasonable person .. to perform or to continue performing labor services in order to avoid incurring that harm." Courts have found that threats of being in debt and being unable to repay those debts constitutes "serious harm" sufficient to survive a motion to dismiss. *See Nunag-Tanedo v. East Baton Rouge Parish School Bd.*, 790 F. Supp. 2d 1134 (C.D. Cal. 2011); *Panwar v. Access Therapies, Inc.*, 2013 WL 5486783 (S.D. Ind. Sept. 30, 2013). Because Plaintiffs have alleged Burnett induced them into incurring substantial debts and Plaintiffs were compelled to continue working to repay those debts, Plaintiffs' complaints contain sufficient facts to state a claim under Section 1589(a)(2).

Plaintiffs also allege a trafficking claim under Section 1590 of the TVPA. Section 1590 provides a claim against any person who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter..." 18 U.S.C. § 1590. The violations of Section 1589 are included in the chapter for violations of Section 1590. Thus, because Plaintiffs have alleged Burnett unlawfully recruited them in violation of Section 1589, Plaintiffs also have pled sufficient facts to state a claim under Section 1590 against Burnett. *See Nunag-Tanedo*, 790 F. Supp. 2d at 1147 ("Plaintiffs have sufficiently alleged that Defendants are involved in a fraudulent scheme involving forced labor, and with the intentional nature of this matter Plaintiffs have also sufficiently alleged that Defendants recruited, transported, and provided Plaintiffs for that forced labor.").

In sum, Plaintiffs' claims under the TVPA are sufficiently supported by factual

---

[32]The substantive allegations in Plaintiffs' sixth amended complaint are identical to those alleged in Plaintiffs' fifth amended complaint. Plaintiffs' sought and obtained leave to file the sixth amended complaint only to add certain Signal entities as named defendants.

allegations in the complaint. Burnett insists his actions were not "illegal nor illicit" and his representations were "a correct and proper statement of both the law and the climate with the United States Citizenship and Immigration Services (USCIS)."[33] However, Burnett's disagreement with the version of the facts alleged in Plaintiffs' complaint is insufficient to support a Rule 12(c) motion. The Court must accept all factual allegations in Plaintiffs' complaints as true, and Burnett has failed to point to any authority to demonstrate Plaintiffs' claims under the TVPA should be dismissed. Accordingly, the Court denies Burnett's request to dismiss Plaintiffs' TVPA claims.

### b. RICO

Burnett asserts Plaintiffs' RICO claim is not supported by sufficient factual material. RICO imposes criminal and civil liability upon those who engage in certain "prohibited activities" which are listed in 18 U.S.C. § 1962 (a) through (c). Each prohibited activity includes, as one necessary element, proof either of "a pattern of racketeering activity" or of "collection of an unlawful debt." Regardless of which subsection the plaintiff relies upon, all RICO claims under § 1962 have three common elements: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).

The statute specifically defines "racketeering activity"[34] and a "pattern of racketeering activity" requires at least two acts of racketeering, the last of which must have occurred within ten years of the first. 18 U.S.C. § 1961(5). Private individuals who are injured by criminal RICO activity may recover damages in a civil action. 18 U.S.C. § 1964(c).

---

[33]R. Doc. 1582, pp. 12-13.

[34]"Racketeering activity" includes offenses indictable under the provisions of Title 18 of the United States Code covering section 1341 (relating to mail fraud) and section 1343 (relating to wire fraud). 18 U.S.C. 1961(1).

Plaintiffs allege Defendants, including Burnett, were a part of three distinct enterprises during various stages of the Plaintiffs' recruitment.

Plaintiffs have adequately pled a RICO enterprise and a continuing pattern of racketeering activity. The complaint, supported by the RICO Fraud Chart, is replete with communications sufficient to support the alleged predicate acts of mail fraud, wire fraud, involuntary servitude, and forced labor. Further, this Court already denied a similar motion filed by Burnett seeking to dismiss Plaintiffs' RICO claims.[35] The Court is not persuaded it should reach a contrary decision when Plaintiffs' factual allegations have not altered since this Court's previous decision.

### c. Klu Klux Klan Act

Burnett asserts Plaintiffs' complaint fails to allege sufficient facts to state a claim under the Klu Klux Klan Act (42 U.S.C. § 1985(3)). In their fourth claim for relief, Plaintiffs allege Burnett conspired with Signal and other defendants to deprive Plaintiffs of their Thirteenth Amendment rights in violation of the Klu Klux Klan Act based upon their alleged confinement at Signal's facilities.[36] Individual Plaintiffs Vijayan, Kadakkarapally, Singh, Kumar, and Chellappan allege the same cause of action in the fifteenth claim for relief based on their alleged detention on March 9, 2007.[37] Burnett argues there are no facts alleged indicating he was involved in the Plaintiffs' detention and there is no indication from Plaintiffs' complaint that Burnett was involved in any conspiracy.

To state a claim under 42 U.S.C. § 1985(3), Plaintiffs must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, either directly or indirectly,

---

[35]R. Doc. 288.

[36]R. Doc. 1706, p. 75.

[37]R. Doc. 1706, p. 119. On March 9, 2007, Vijayan, Kadakkarapally, Singh, Kumar, and Chellappan allege they were detained for several hours after Vijayan had attempted suicide. R. Doc. 1706, pp. 50-52.

a person or class of persons of the equal protection of laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Suttles v. U.S. Postal Serv.*, 927 F. Supp. 990, 1000-01 (S.D. Tex. 1996)(citing *United Bhd of Carpenters & Joners of Am. v. Scott*, 463 U.S. 825, 828-29 (1983)).

Contrary to Burnett's argument, Plaintiffs have sufficiently pled causes of action under the Klu Klux Klan Act against Burnett. Plaintiffs allege Signal and Burnett "reached an agreement regarding steps that they would take to discourage further worker organization efforts ... and to prevent the Indian H-2B workforce from exercising their legal rights."[38] Plaintiffs further allege Burnett attended a meeting at Signal's facilities on March 8, 2007, and Burnett "told the workers that they were ineligible for other kinds of immigration relief and could depend only on Signal to maintain their H-2B immigration status and pursue their green card applications."[39] Plaintiffs claim Signal personnel and Burnett reached agreement about "what should be said" at various meetings with the Indian H-2B workers, and Signal personnel told the workers that Signal would sponsor their green cards if they stayed at Signal and "obeyed Signal's rules."[40] The Court finds the facts alleged in Plaintiffs' complaint sufficient to state a claim under the Klu Klux Klan Act for Plaintiffs fourth and fifteenth claims for relief. The facts pled demonstrate a relationship between Signal and Burnett, as well as Burnett's involvement in the Plaintiffs' alleged detention at Signal's facilities. Accordingly, Burnett's motion to dismiss is denied insofar as he seeks to dismiss Plaintiffs' claims under the Klu Klux Klan Act.

---

[38]R. Doc. 1706, pp. 47-48.

[39]R. Doc. 1706, p. 49.

[40]R. Doc. 1706, p. 54.

### d. State Law Claims

Burnett also argues Plaintiffs' complaint fails to state a claim for relief for fraud and negligent misrepresentation. Burnett concedes that the portion of Plaintiffs' complaint concerning Plaintiffs' recruitment does contain factual assertions and not merely legal conclusions, but Burnett argues those factual allegations do not comply with Rule 9(b) for alleging fraud with particularity.[41]

To state a claim for fraud under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Technologies*, 302 F.3d 552, 564-65 (5th Cir. 2002). Plaintiffs allege Burnett promised, via emails and statements made in person, to obtain green cards for the Plaintiffs.[42] Plaintiffs allege Burnett failed to disclose the truth that applying for a green card is "fundamentally incompatible" with applying for the H-2B visas used by the Plaintiffs to work at Signal.[43] Plaintiffs' RICO Fraud Chart, accompanying the sixth amended complaint, adequately details with specificity Burnett's representations made in meetings and communications with the Plaintiffs. The Court finds Plaintiffs have satisfied Rule 9(b)'s requirement of pleading fraud with particularity. Plaintiffs' state law claims of fraud and negligent misrepresentation are adequately supported by factual allegations in the

---

[41]R. Doc. 1582-1, p. 28.

[42]*See, e.g.* R. Doc. 1706-1, pp. 13, 38, 65. (Plaintiffs' RICO Fraud Chart).

[43]R. Doc. 1706, p. 30.

complaint and the RICO Fraud Chart. Burnett's motion is denied insofar as he seeks dismissal of Plaintiffs' state law claims based on Rule 9(b).[44]

### 2. Extraterritoriality

Burnett also moves to dismiss Plaintiffs' fraud and negligent misrepresentation claims by briefly arguing those state law claims are implausible because they arise from events abroad. Burnett asserts Plaintiffs' state law claims should be dismissed because they do not "implicate Louisiana, Mississippi, or Texas law."[45]

For the reasons set forth above, Burnett's motion, to the extent it seeks dismissal of Plaintiffs' state law claims because Indian law may apply, is denied.

### CONCLUSION

For the above-stated reasons, Signal's 12(c) Motion for Partial Judgment on the pleadings is **GRANTED IN PART** and **DENIED IN PART**. To the extent Signal seeks dismissal of Plaintiffs' claim for recruitment fees under FLSA, Signal's motion is **DENIED.** To the extent Signal seeks dismissal of Plaintiffs' claim for recruitment fees under Section 1981, Signal's motion is **DENIED AS MOOT.** To the extent Signal seeks dismissal of Plaintiffs' claim for inbound travel and visa expenses under FLSA, Signal's motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Signal's 12(b)(6) Motion to Partially Dismiss Plaintiffs' state law claims be and hereby is **DENIED** for the reasons set forth above.

---

[44]The Court notes that it has previously denied a similar motion to dismiss Plaintiffs' claims for failure to plead fraud with particularity. *See* R. Doc. 288, p. 13.

[45]R. Doc. 1582-1, p. 31.

**IT IS FURTHER ORDERED** that Burnett's Rule 12(c) Motion for Partial Judgment on the Pleadings be and hereby is **DENIED** for the reasons set forth above.

**New Orleans, Louisiana, this 12th day of August, 2014.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**