09:50:07

1        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF LOUISIANA
2

3    ****************************************************************

4    KURIAN DAVID, ET AL.

5                              CIVIL ACTION NO. 08-1220
     VERSUS                    SECTION "E"
6                              NEW ORLEANS, LOUISIANA
                               TUESDAY, APRIL 29, 2014, 10:00 A.M.
7

8    SIGNAL INTERNATIONAL,
     LLC, ET AL.

9

10   RELATED CASES:

11

12   EQUAL EMPLOYMENT
     OPPORTUNITY COMMISSION

13

14   VERSUS                    CIVIL ACTION NO. 12-557

15   SIGNAL INTERNATIONAL,
     LLC, ET AL.

16

17

18   LAKSHMANAN PONNAYAN ACHARI,
     ET AL.

19

20   VERSUS                    CIVIL ACTION NO. 13-6218
                               C/W 13-6219, 13-6220,
21                                 13-6221, 14-732

22
     SIGNAL INTERNATIONAL, LLC, ET AL
23

24
     APPLIES TO:  ALL CASES
25
     ****************************************************************

                       **OFFICIAL TRANSCRIPT**

1                           TRANSCRIPT OF PROCEEDINGS
                    HEARD BEFORE THE HONORABLE SUSIE MORGAN
2                        UNITED STATES DISTRICT JUDGE

3

4       APPEARANCES:

5

6       FOR THE PLAINTIFFS:        SOUTHERN POVERTY LAW CENTER
                                   IMMIGRANT JUSTICE PROJECT
7                                  BY:  DANIEL WERNER, ESQ.
                                        THOMAS FRIZTSCHE, ESQ.
8                                  233 PEACHTREE STREET NE
                                   ATLANTA GA  30303
9

10
                                   CROWELL & MORING
11                                 BY:  ALAN HOWARD, ESQ.
                                   590 MADISON AVENUE
12                                 NEW YORK NY  10022

13

14                                 GORDON ARATA MCCOLLAM
                                   DUPLANTIS & EAGAN
15                                 BY:  GREGORY GRIMSAL, ESQ.
                                   201 ST. CHARLES AVENUE, SUITE 4000
16                                 NEW ORLEANS LA  70170

17

18                                 LAYTHAM & WATKINS
                                   BY:  DANIEL D. ADAMS, ESQ
19                                 885 THIRD AVENUE
                                   NEW YORK NY  10022
20

21
                                   SKADDEN ARPS SLATE
22                                 MEAGHER & FLOM
                                   BY:  EBEN COLBY, ESQ.
23                                      JACOB WALKER, ESQ.
                                   ONE BEACON STREET
24                                 BOSTON MA  02108

25

                              **OFFICIAL TRANSCRIPT**

```
1    APPEARANCES CONTINUED:

2

3
                              MCDERMOTT WILL & EMERY
4                             BY:  SCOTT CLARK, ESQ.
                              1000 LOUISIANA STREET, SUITE 3900
5                             HOUSTON TX  77002

6

7                             MANATT PHELPS & PHILLIPS
                              BY:  STEPHEN RAPTIS, ESQ.
8                             700  12TH STREET NW, SUITE 1100
                              WASHINGTON DC  20005
9

10
                              LAW OFFICE OF TIM CERNIGLIA
11                            BY:  TIM CERNIGLIA, ESQ.
                              1521 ST. CHARLES AVENUE
12                            NEW ORLEANS LA  70130

13

14
     FOR THE DEFENDANTS:      HANGARTNER RYDBERG
15                            TERRELL & HART
                              BY:  ERIN CASEY HANGARTNER, ESQ.
16                                 ALAN D. WEINBERGER, ESQ.
                                   ELHAM RABBANI, ESQ.
17                                 BRIAN ROUX, ESQ.
                              ONE SHELL SQUARE
18                            701 POYDRAS STREET, SUITE 310
                              NEW ORLEANS LA  70139
19

20
                              PATRICIA BOLLMAN
21                            ATTORNEYS AT LAW
                              P.O.  BOX 13707
22                            NEW ORLEANS LA  70185

23

24

25

                         OFFICIAL TRANSCRIPT
```

1    APPEARANCES CONTINUED:

2

3    OFFICIAL COURT REPORTER:   CATHY PEPPER, CRR, RMR, CCR
                                CERTIFIED REALTIME REPORTER
4                               REGISTERED MERIT REPORTER
                                500 POYDRAS STREET, ROOM HB406
5                               NEW ORLEANS LA  70130
                                (504) 589-7779
6                               Cathy_Pepper@laed.uscourts.gov

7

8    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**OFFICIAL TRANSCRIPT**

1                          **I N D E X**

2

3    <u>ITEMS</u>                                              <u>PAGE</u>

4

5    THE ISSUE OF WHETHER THE PLAINTIFFS STATE LAW CLAIMS

6    IN THE *ACHARI* CASES ARE TIMELY......................    8

7    MR. CERNIGLIA........................................    8

8    MR. WALKER...........................................   12

9    MR. CERNIGLIA........................................   16

10   MR. WALKER...........................................   18

11   ARGUMENT ON THE ISSUE OF WHETHER OR NOT THE

12   PLAINTIFF COMPLAINTS IN THE *ACHARI* CASES AND THE

13   *DAVID* CASE CONTAIN SUFFICIENT FACTS TO SURVIVE THE

14   RULE 12(B)(6) AND RULE 12(C) MOTIONS.................   19

15   MR. CERNIGLIA........................................   19

16   MR. FRITZSCHE........................................   27

17   RICO CLAIM...........................................   31

18   1985 CLAIM...........................................   32

19   MOTION TO DISMISS THE FRAUD AND NEGLIGENT

20   MISREPRESENTATIONS CLAIMS............................   33

21   MR. WALKER...........................................   33

22   MR. ADAMS............................................   35

23   RULE 12(C) MOTION....................................   35

24   MR. CERNIGLIA........................................   38

25   WHETHER THE PLAINTIFFS' CLAIMS IN THE *ACHARI* CASES ..   39

                      **OFFICIAL TRANSCRIPT**

1   AND THE *DAVID* CASE ARE PLAUSIBLE GIVEN THAT SOME OF

2   THE EVENTS GIVING RISE TO THOSE CLAIMS OCCURRED

3   ABROAD, .........................................

4   WHETHER THIS COURT SHOULD EXERCISE SUPPLEMENT

5   JURISDICTION UNDER 28 U.S.C. § 1367(C)(1) OVER

6   PLAINTIFFS' STATE LAW CLAIMS........................ 39

7   MR. WEINBERGER...................................... 39

8   MR. CERNIGLIA....................................... 46

9   MR. HOWARD.......................................... 49

10  MR. WEINBERGER...................................... 62

11  MR. RAPTIS.......................................... 72

12  MR. CERNIGLIA....................................... 72

13  MR. HOWARD.......................................... 73

14  MR. RAPTIS.......................................... 76

15  MR. WEINBERGER...................................... 81

16  MR. CERNIGLIA....................................... 87

17  MR. RAPTIS.......................................... 89

18  MR. WEINBERGER...................................... 90

19

10:00:39 20

10:03:16 21

10:03:16 22

23

24

25

**OFFICIAL TRANSCRIPT**

| | | |
|---|---|---|
| 10:03:16 | 1 | **P-R-O-C-E-E-D-I-N-G-S** |
| 09:50:07 | 2 | TUESDAY, APRIL 29, 2014 |
| 09:50:07 | 3 | M O R N I N G   S E S S I O N |
| 09:50:07 | 4 | (COURT CALLED TO ORDER) |
| 09:50:07 | 5 | |
| 10:12:07 | 6 | |
| 10:12:07 | 7 | THE DEPUTY CLERK:  All rise.  Civil Action 08-1220 and |
| 10:12:12 | 8 | related matters.  *Kurian David v Signal International*.  Would |
| 10:12:16 | 9 | counsel please make your appearances for the record. |
| 10:12:18 | 10 | MR. WEINBERGER:  If Your Honor please, Alan Weinberger |
| 10:12:21 | 11 | on behalf of *Signal*. |
| 10:12:24 | 12 | MR. CERNIGLIA:  Tim Cerniglia on behalf of the *Burnett* |
| 10:12:28 | 13 | defendants. |
| 10:12:30 | 14 | MR. WALKER:  Jacob Walker on behalf of the *Chakkiyattil* |
| 10:12:34 | 15 | plaintiffs. |
| 10:12:36 | 16 | MR. HOWARD:  Alan Howard on behalf of the *David* |
| 10:12:37 | 17 | plaintiffs. |
| 10:12:38 | 18 | MR. FRITZSCHE:  Tom Fritzsche on behalf of the *David* |
| 10:12:40 | 19 | plaintiffs. |
| 10:12:41 | 20 | MR. ADAMS:  Daniel Adams on behalf of the *Achari* |
| 10:12:45 | 21 | plaintiffs. |
| 10:12:45 | 22 | MR. RAPTIS:  Stephen Raptis on behalf of the *Achari* |
| 10:12:49 | 23 | plaintiffs. |
| 10:12:50 | 24 | THE COURT:  I want everybody to make an appearance.  If |
| 10:12:53 | 25 | you're here, make an appearance. |

10:12:56 1          MR. CLARK:  Scott Clark on behalf of the *Krishnakutty*

10:12:58 2     plaintiffs.

10:12:59 3          MR. COLBY:  Eben Colby on behalf of the *Chakkiyattil*

10:12:34 4     plaintiffs.

10:13:04 5          THE COURT:  We missed some people over there.

10:13:04 6          MS. BOLLMAN:  Patricia Bollman on behalf of

10:13:07 7     *Signal International*.

10:13:08 8          MS. HANGARTNER:  Good morning, Your Honor.  Erin Casey

10:13:09 9     Hangartner on behalf of *Signal International*.

10:13:11 10          MR. RABBANI:  Elham Rabbani on behalf of

10:13:14 11     *Signal International*.

10:13:15 12          MR. ROUX:  Good morning, Your Honor.  Bryan Roux on

10:13:16 13     behalf of *Signal International*.

10:13:18 14          THE COURT:  All right.  Well, welcome to all of you.  I

10:13:22 15     sent you an order where I tried to group the arguments that we

10:13:29 16     are going to be having today, and to tell you how much time you

10:13:34 17     would have, and I understand that you all have communicated

10:13:37 18     with the court deputy who will be arguing the various motions;

10:13:42 19     so, we'll start with the issue of whether the plaintiffs state

10:13:48 20     law claims in the *Achari* cases are timely.

10:13:53 21          MR. CERNIGLIA:  Good morning, Your Honor.  Tim

10:13:55 22     Cerniglia.

10:13:56 23               This Court has just the responsibility on that

10:14:01 24     issue to determine what the Mississippi Supreme Court would do,

10:14:09 25     not whether you consider it to be correct or whether you

**OFFICIAL TRANSCRIPT**

10:14:12 1   consider it to be equitable, but just based on their

10:14:16 2   jurisprudence, what would they do.

10:14:21 3          The Mississippi Supreme Court has specifically

10:14:24 4   stated that no state class actions are recognized.  They don't

10:14:28 5   like them.  One of the reasons they don't like them is because

10:14:31 6   they drag on and on and on.

10:14:33 7          Now, so the question is going to be what effect

10:14:39 8   does a class action in a federal court in another state for

10:14:48 9   nonmembers, just putative members never named, have on a state

10:14:54 10  claim under Mississippi law.

10:14:56 11         The United States Supreme Court has said that you

10:14:59 12  need to simply -- if a claim would be barred from an individual

10:15:04 13  in the state then it's barred in federal court.  Just the fact

10:15:10 14  that it's in federal court doesn't all of a sudden give him

10:15:13 15  greater rights than if he just filed suit in the state.

10:15:16 16         What would Mississippi do?  One, they don't like

10:15:20 17  class actions.  Number two, what is the position of a putative

10:15:27 18  member akin to in Louisiana, I mean in Mississippi?  It would

10:15:30 19  be akin to a case being dismissed without prejudice.  They have

10:15:34 20  a right -- all putative members have a right to go file their

10:15:40 21  own individual suits.

10:15:43 22         The Mississippi Supreme Court has specifically

10:15:45 23  stated in those situations where a case has been dismissed

10:15:48 24  without prejudice, it has no effect on tolling of the statute

10:15:52 25  of limitations.

10:15:55  1          Now, we submit that the Mississippi Supreme Court

10:15:58  2  would not now give greater rights to an unnamed plaintiff whose

10:16:06  3  case is essentially dismissed without prejudice in another case

10:16:12  4  in another court in another state.  They would not give that

10:16:17  5  person greater rights than they give an individual who has

10:16:21  6  filed and named in a petition in the State of Mississippi who

10:16:27  7  is dismissed and told them it's dismissed without prejudice for

10:16:30  8  whatever reason, file again.

10:16:32  9          We submit that understand Mississippi law, they

10:16:41 10  would follow Louisiana, which specifically that's the only

10:16:43 11  state that has specifically -- the Supreme Court has

10:16:47 12  specifically stated that cross jurisdictional tolling for a

10:16:52 13  nonputative member have no effect on the statute of

10:16:54 14  limitations.

10:16:55 15          An appellate court in Texas has said the same

10:16:58 16  thing, and the Fifth Circuit has said, yeah, we agree with the

10:17:01 17  district court that that's what the Supreme Court of Texas

10:17:04 18  would likely do.

10:17:05 19          We submit, based on the fact that -- and the

10:17:09 20  Supreme Court is the one that said there is no class actions at

10:17:14 21  all under state law; so, to them, a class action is a foreign

10:17:22 22  concept, one they don't like, and we submit that it would be no

10:17:26 23  different than as if a plaintiff -- a putative member had

10:17:32 24  simply been dismissed without prejudice, in which case it has

10:17:35 25  no effect on the statute of limitations.  They should have,

**OFFICIAL TRANSCRIPT**

10:17:40 1   right then and there, immediately filed a claim -- their state

10:17:48 2   claims.

10:17:48 3          They argue 28:1367(d).  Two things on that.

10:17:56 4   First it's a 30-day tolling, but that applies to the plaintiffs

10:18:01 5   or the parties in a lawsuit.  That has no application on

10:18:08 6   nonparties that were not a member of the *David* case, now filing

10:18:12 7   a separate action all together.  They stand in the same

10:18:16 8   position as any resident of Mississippi filing a lawsuit in

10:18:21 9   Mississippi.  If it's barred there, it's barred here.

10:18:25 10     THE COURT:  Can you remember, I believe I had seen this

10:18:30 11   before and I read it in some of the pleadings, that there is an

10:18:33 12   agreement among the parties that while the class action was

10:18:36 13   pending that prescription was tolled -- while the motions to

10:18:42 14   certify class action.

10:18:43 15     MR. CERNIGLIA:  There was a, predates me, there was a

10:18:49 16   motion, and there was no opposition to the motion.  I don't

10:18:54 17   believe that, first, even if they would have opposed it and

10:18:58 18   even the judge would have ruled, that would have been void

10:19:05 19   ab initio.

10:19:05 20          The court has no authority, agreement or no

10:19:07 21   agreement, Judge Zainey had no authority to toll a state action

10:19:13 22   that has not yet been filed.  The United States Supreme Court.

10:19:17 23   Simply they do not have the authority to override the state

10:19:21 24   law.

10:19:22 25          Second, I don't believe that simply a counsel, an

**OFFICIAL TRANSCRIPT**

10:19:29  1   attorney in another case not opposing a motion will be the

10:19:35  2   equivalent of a judicial acknowledgment or, would be in

10:19:41  3   Louisiana, a waiving of the statute of the limitations.  There

10:19:48  4   is no indication in the -- no objection that anyone would

10:19:56  5   intend to knowingly, voluntarily waive any statute of

10:20:00  6   limitations.

10:20:02  7        THE COURT:  Was there an order issued as a result of

10:20:05  8   the --

10:20:05  9        MR. CERNIGLIA:  That order was issued that simply said,

10:20:08 10   as I recall, it would be tolled for 120 days until such time as

10:20:14 11   the decision was filed.

10:20:18 12        THE COURT:  120 days after.

10:20:20 13        MR. CERNIGLIA:  120 days after.  And that's still --

10:20:23 14   even if that applies, if it does not apply, the clock, it just

10:20:27 15   stopped.  It didn't start over again.  It just stopped for that

10:20:30 16   time period.

10:20:32 17             But I submit irrespectively that order can't

10:20:36 18   affect state law, and under state law, the clock, the statute

10:20:44 19   of limitations was never tolled, period.

10:20:47 20        THE DEPUTY CLERK:  You have three minutes.

10:20:50 21        MR. CERNIGLIA:  I'm finished.

10:20:51 22        THE COURT:  Thank you.

10:20:53 23        MR. WALKER:  Thank you, Your Honor.  Jacob Walker on

10:12:34 24   behalf of the *Chakkiyattil* plaintiffs.  I'm actually speaking

10:21:03 25   on behalf of all of the *Achari* plaintiffs on this issue.

**OFFICIAL TRANSCRIPT**

10:21:06  1          I want to deal first with the issue that he was

10:21:08  2  discussing, which is the order in the *David* class action where

10:21:12  3  there was not just an opposition but Mr. Burnett's prior

10:21:17  4  counsel consented to the tolling of the state law claims during

10:21:21  5  the pendency of the class action, and he did so for the

10:21:25  6  absentee class members.

10:21:27  7          I have both the motion that was made that

10:21:31  8  indicated that Mr. Burnett's counsel consented to this motion

10:21:35  9  and the order itself.  If you would like, I could I provide a

10:21:38 10  copy.

10:21:38 11          THE COURT:  I've seen it.  I just couldn't remember.

10:21:41 12  We have it.

10:21:42 13          MR. WALKER:  Those orders very clearly indicate that

10:21:45 14  Mr. Burnett's prior counsel consented to the tolling of the

10:21:53 15  state law claims, and in our motion papers we do show that when

10:21:56 16  you apply that tolling, even under the most conservative date

10:21:59 17  which Mr. Burnett says that plaintiff should have discovered

10:22:02 18  that they had claims, that the statute of limitations would

10:22:05 19  have extended into April of this year, and so our filing of the

10:22:09 20  state law claims were timely in that regard.

10:22:11 21          So we also argue three other reasons why the

10:22:16 22  statute of limitations issue -- why we're right on the statute

10:22:20 23  of limitations issue.  I don't think you need to get to either

10:22:22 24  of those three based on the consent, but I want to address the

10:22:25 25  issue about Mississippi law.

**OFFICIAL TRANSCRIPT**

10:22:26  1          The Mississippi -- it's true that there are not

10:22:29  2     statutes in Mississippi, but Mississippi does have a savings

10:22:33  3     statute, and that savings statute provides for one year tolling

10:22:35  4     of claims for dismissals for a matter of forum.

10:22:38  5          And I think the fundamental disagreement between

10:22:42  6     our side and Mr. Burnett is whether or not a denial of class

10:22:47  7     certification is adjudication on the merits or is, instead, a

10:22:52  8     matter of forum.  If it's a matter of forum, which we contend

10:22:54  9     that it is, it is not a determination that the plaintiffs'

10:22:58 10     claims did not have any validity, but it's simply just a

10:23:00 11     determination that procedurally they can't go forward in a

10:23:03 12     class action mechanism, that even though it is the case that

10:23:06 13     Mississippi doesn't have class action, the Mississippi

10:23:08 14     Supreme Court had said that this is a highly remedial statute,

10:23:12 15     that it should be applied liberally, and that it would apply in

10:23:16 16     a case such as this.

10:23:17 17          We also acknowledge that the Fifth Circuit has

10:23:22 18     not addressed the issue of 1367(d) tolling in this context.

10:23:26 19     The Sixth Circuit has agreed that the spirit of 1367(d)

10:23:34 20     indicates that a court that is exercising supplemental

10:23:38 21     jurisdiction on claims, that the class -- class certification

10:23:41 22     that absentee class members should also be entitled to the

10:23:44 23     tolling under 1367(d); so, under any of these three arguments,

10:23:48 24     I think we would win on the statute of limitations issue.

10:23:51 25          Finally, even getting past all those three, we

10:23:54  1   would also contend that it's simply too early to make a

10:23:56  2   determination about when each individual plaintiff in each of

10:23:59  3   our individual cases could have discovered that they had

10:24:04  4   claims.  The -- Mr. Burnett used that as, perhaps, the time at

10:24:10  5   which they left Signal's facilities, but in Mr. Burnett's

10:24:14  6   prior -- counsel for Mr. Burnett has previously argued that

10:24:17  7   Mr. Burnett continued to provide services to the plaintiffs

10:24:19  8   even after they had left *Signal*, and so the time at which they

10:24:22  9   discovered that there had -- they had been lied to, that there

10:24:26 10   were misrepresentations, that their contracts had been

10:24:28 11   breached, it's a fact intensive inquiry, and at this stage, at

10:24:32 12   the motion to dismiss stage it's simply too early on a

10:24:35 13   plaintiff-by-plaintiff basis when precisely the period started

10:24:37 14   to run.

10:24:38 15          THE COURT:  If you -- the earliest possible date could

10:24:43 16   be when they left their employment with *Signal*.  Is that the

10:24:46 17   same date for everyone or is that different?

10:24:48 18          MR. WALKER:  It's different for everyone.  It's similar

10:24:51 19   for many but not for all.

10:24:53 20          THE COURT:  But pretty close in time.

10:24:55 21          MR. WALKER:  Close in time and it's also, that's the

10:24:57 22   fairest to Mr. Burnett.  So if you agree with that the tolling

10:25:02 23   period was -- that it was tolled based on his consent or you

10:25:06 24   agree on either of the other two issues, we've done the math

10:25:09 25   assuming the date that is the most favorable to Mr. Burnett and

**OFFICIAL TRANSCRIPT**

10:25:13 1  still could show that each of our claims have been filed in a

10:25:16 2  timely way.

10:25:16 3      THE COURT:  I'm going to give Mr. Cerniglia a chance to

10:25:21 4  give me whether he agrees with that or not when you're finished

10:25:25 5  with your argument.

10:25:26 6      MR. WALKER:  Sure.  And unless you have other

10:25:29 7  questions, I think that that answers.  I'm happy to -- I know

10:25:31 8  that you said that you had the motion and the order, I'm happy

10:25:35 9  to give a copy to Mr. Cerniglia if he would like to see it, but

10:25:39 10 it does state quite clearly that there was consent and that it

10:25:42 11 does toll absentee, that it's a voluntary act taken by the

10:25:46 12 party.  In fact, my understanding is it was taken because there

10:25:49 13 was an issue about whether or not to consider the state claims

10:25:53 14 during the class action -- during the class certification

10:25:56 15 process.

10:25:58 16     THE COURT:  Whether or not they would be filed --

10:25:59 17     MR. WALKER:  Whether or not they would be part of the

10:26:01 18 class action, and there was an agreement among all parties to

10:26:04 19 jettison those claims as part of a class certification process,

10:26:06 20 but as part of that agreement, all of the parties consented to

10:26:09 21 this tolling.

10:26:10 22     THE COURT:  All right.  Thank you.  Mr. Cerniglia.

10:26:14 23     MR. CERNIGLIA:  Your Honor, on the timing issue, at

10:26:24 24 most it's just going to be a tolling from the date Judge Zainey

10:26:28 25 denied the motion for rehearing.  But, again, and to that

**OFFICIAL TRANSCRIPT**

10:26:36  1    extent then it may become necessary, if you believe that the

10:26:41  2    judge has the authority to override state law, it may then be

10:26:50  3    necessary what each individual knew or should have known.

10:26:52  4         THE COURT:  If you agree that the earliest possible

10:26:56  5    date would be the date that the plaintiff left *Signal*, that

10:27:00  6    would be the most favorable to you, or do you agree --

10:27:03  7         MR. CERNIGLIA:  No, I don't think that is necessarily

10:27:04  8    the date according to their complaint, according to --

10:27:07  9         THE COURT:  It could be a date before they even left

10:27:09 10    there.

10:27:09 11         MR. CERNIGLIA:  Plenty of them did, a lot -- you see,

10:27:13 12    that's one of the problems with the complaint is they grouped

10:27:16 13    the word *plaintiffs*.  Most all of these complainants simply cut

10:27:21 14    and pasted from the original class action so they just

10:27:25 15    continued to use the word *plaintiffs* in general.

10:27:27 16         But if you read through all of them, a lot of

10:27:30 17    them state that there were, despite all of this, they were

10:27:36 18    forced to remain there, even though other people had been

10:27:43 19    thrown out or there was a particular meeting in which some

10:27:48 20    people were allegedly detained and going to be deported.  That

10:27:53 21    would likely be the extent that any of them knew the earliest

10:27:56 22    date, especially not if they just -- if they stayed for

10:28:01 23    whatever reason and then later decided to leave or be

10:28:05 24    terminated.  I don't think that the date they leave is

10:28:08 25    necessarily --

**OFFICIAL TRANSCRIPT**

10:28:09  1        THE COURT:  [Speaking simultaneously]  Not leaving the

10:28:10  2  country but the date they left Signal's employment.

10:28:13  3        MR. CERNIGLIA:  The allegations in the complaint

10:28:18  4  suggests that they knew, but despite their knowledge they felt

10:28:23  5  compelled to stay but they had knowledge; so, I don't know that

10:28:26  6  that is necessarily the most compelling date.

10:28:30  7              And on the tolling, Mississippi tolling statute,

10:28:35  8  that applies to individuals, named plaintiffs in a lawsuit in

10:28:42  9  Mississippi.  These -- this whole issue involves unnamed

10:28:47 10  putative members.

10:28:49 11        THE COURT:  Thank you.  Mr. Walker, do you want to

10:28:51 12  respond?

10:28:52 13        MR. WALKER:  Sure, just two quick points, Your Honor.

10:28:54 14  First, I just draw your attention to page 20 of our original

10:28:58 15  opposition where we do the math to show that the statute of

10:29:01 16  limitations would have run on April 17th of this year, just a

10:29:04 17  few days ago, based on what I believe to be the date that

10:29:06 18  Mr. Burnett was arguing in his original motions.  That's on

10:29:09 19  page 20 of our original opposition.

10:29:11 20              On the class action tolling, the

10:29:14 21  cross-jurisdictional class action tolling point, this is not a

10:29:17 22  case where you have a plaintiff who's off in California, who is

10:29:20 23  late and is untimely but then is searching throughout the

10:29:24 24  country for a class action so they can argue that there has

10:29:27 25  been tolling.  These are known plaintiffs, an ascertainable

                              **OFFICIAL TRANSCRIPT**

10:29:32  1   number of people.

10:29:32  2           Mr. Burnett has been on notice of who these

10:29:35  3   people have been since the initial class action was filed.

10:29:38  4   This is not a situation where you have -- the

10:29:42  5   cross-jurisdictional class action tolling cases that

10:29:45  6   Mr. Burnett reefs to are cases where it is a large consumer

10:29:50  7   class action of an identified number of people.  This is a very

10:29:55  8   different situation.  Thank you.

10:29:57  9       THE COURT:  All right.  Thank you.

10:29:58 10           Now we will have argument on the issue of whether

10:30:04 11   or not the plaintiff complaints in the *Achari* cases and the

10:30:08 12   *David* case contain sufficient facts to survive the

10:30:11 13   Rule 12(b)(6) and Rule 12(c) motions.  I believe Mr. Cerniglia

10:30:17 14   is going to argue.

10:30:19 15       MR. CERNIGLIA:  Once again, Your Honor, I think this

10:30:36 16   court can take a lot of guidance from not only the fact cases

10:30:39 17   before the United States Supreme Court but also some of the

10:30:45 18   cases have been before other courts.

10:30:49 19           If we start off with the -- I think it's conceded

10:30:58 20   and, perhaps, quoted all the time, but it has to be

10:31:03 21   plausible -- a plausible cause of action or a stated --

10:31:12 22   plausibly stated claims of relief, and that the conclusions to

10:31:21 23   counsel are certainly not sufficient.

10:31:26 24           If we start off to say let's use the two causes

10:31:35 25   of action against the Burnett defendants for the Klu Klux Klan

**OFFICIAL TRANSCRIPT**

10:31:41 1    Act.  That is just all conclusions.  There is not any facts

10:31:48 2    that state -- that any action by Mr. Burnett constitutes a

10:31:59 3    violation or deprivation of some rights guaranteed by the

10:32:05 4    13th Amendment, and the claim that this is -- that they were --

10:32:12 5    his actions were motivated because of anti-immigrant,

10:32:17 6    anti-Indian animus.  That's just a conclusion which actually is

10:32:25 7    sort of contradictory.

10:32:27 8              An immigration lawyer who they -- in the petition

10:32:30 9    said they have done -- or in the complaint have said that they

10:32:34 10   actually filed the original H-2B visas to get them into the

10:32:40 11   country and, for a number of them, did the extensions, that's

10:32:44 12   certainly contradictory to somebody who is anti-Indian or

10:32:49 13   anti-immigrant animus.

10:32:53 14             As important in the *Ashcroft* case, the actual

10:33:00 15   allegation against *Ashcroft* and alleged that *Mueller*, that's

10:33:21 16   the name I was looking for, says that *Ashcroft* was the

10:33:27 17   principal architect of this insidious policy.  That policy

10:33:31 18   being willfully and maliciously agreed to subject the harsh

10:33:36 19   conditions of confinement solely on account of race.  *Mueller*

10:33:41 20   was instrumental in adopting and executing that policy.

10:33:45 21             This quote's from the actual complaint that the

10:33:48 22   United States Supreme Court looked at.  And they said, "These

10:33:54 23   assertions amount to nothing more than a formalistic recitation

10:33:59 24   of elements for a constitutional discrimination claim."  That's

10:34:02 25   all we have here.

**OFFICIAL TRANSCRIPT**

10:34:03  1          There are their conclusions that some actions,

10:34:08  2   and no actions specifically identified to Mr. Burnett, that

10:34:12  3   deprived him of any life, liberty, or right to the

10:34:18  4   13th Amendment of the United States Constitution.  He makes a

10:34:21  5   statement that he's done that but never shows any facts that he

10:34:25  6   did.  Then they say, "Well, this is discriminatory because he's

10:34:28  7   got animus toward Indians and immigrants."  That's nothing more

10:34:36  8   than having *Ashcroft* in a conclusion of counsel who has no

10:34:41  9   effect.

10:34:41 10          If you go from there to the trafficking,

10:34:47 11   trafficking, peonage and slavery, there is no -- all of the

10:34:52 12   allegations are fact, established -- Mr. Burnett established

10:34:58 13   this.  One, he was hired as an attorney; two, he filed

10:35:00 14   documents as an attorney that allowed him to get into the

10:35:05 15   United States, and he did that working for *Signal* as an

10:35:05 16   attorney.

10:35:18 17          And the Fifth Circuit said that it's not a thing

10:35:20 18   wrong with having it under those then regulations, to have the

10:35:24 19   immigrants pay the travel fees, the recruitment fees.  I don't

10:35:29 20   know if they said *legal fees*, but it would certainly fall

10:35:31 21   within that same category.

10:35:33 22          So -- and in immigration law, you always have to

10:35:38 23   state that you are representing the petitioner.  That is who

10:35:41 24   you filed the petition for, whether it be *Signal* or whichever

10:35:45 25   person is sponsoring.

**OFFICIAL TRANSCRIPT**

10:35:47  1          For all of the allegations against Mr. Burnett

10:35:51  2   dealing with -- anything dealing with immigration establish

10:35:54  3   only that he acted as an attorney.  That would subject any

10:36:01  4   attorney working for any corporate client or any individual to

10:36:04  5   always be lumped in as well -- you conspired.  You are part and

10:36:09  6   parcel of everything that transpired afterwards.  And that is

10:36:15  7   conclusion and that is not -- it's time now to start really

10:36:21  8   weeding out claims and not pushing the envelope for superficial

10:36:26  9   and extra-technical interpretations.

10:36:29 10          The *Zavala v Walmart* case.  That's the

10:36:36 11   Third Circuit.  They looked at it just frankly.  What is

10:36:39 12   trafficking?  What does that mean?  What is slavery?  What is

10:36:42 13   peonage?  What was it meant for?

10:36:44 14          I'm not getting involved in what took place or

10:36:48 15   didn't take place at the *Signal* facilities; however,

10:36:53 16   Mr. Burnett had nothing to do with that.  He did not employ

10:36:56 17   them.  He did not -- you know, they -- once again, they make a

10:37:01 18   statement but they use all the terminology -- recruit, harbor,

10:37:05 19   traffic, etcetera.  There is no allegation that he did anything

10:37:08 20   other than act as the attorney to get them here.

10:37:12 21          In fact, I know of another case -- this

10:37:16 22   particular case or *David* case where they cited the *East Baton*

10:37:24 23   *Rouge Parish* case where they brought in Philippines to teach

10:37:28 24   English.  The same allegations.  If I'm not mistaken, it's the

10:37:33 25   same Southern Poverty Law Center.  The suit against the

                              **OFFICIAL TRANSCRIPT**

10:37:38 1    attorney was separated out and went up to the Ninth Circuit.

10:37:41 2    The Ninth Circuit went to great extent, although they didn't

10:37:45 3    rule on it, on the *Noerr-Pennington* defense that, you know,

10:37:50 4    they have a right to do things as an attorney.

10:37:52 5         THE COURT:  The what defense?

10:37:52 6         MR. CERNIGLIA:  It's the *Noerr-Pennington* defense I

10:37:55 7    believe is the name of it.  I have alleged it as a defense in

10:37:58 8    our most recent aspect.

10:38:00 9         The point is that that case that they cited dealt

10:38:04 10   with the recruits.  We're now talking about what did

10:38:08 11   Mr. Burnett do to traffic?  He didn't traffic.  He represented

10:38:13 12   people who come here.

10:38:14 13        They go to great lengths to say that *Signal* had a

10:38:20 14   meeting here.  *Signal* threatened them with this.  They felt

10:38:26 15   that *Signal* was going to do, you know, this to them or that to

10:38:30 16   them in the labor camp.  They were subjected to, you know,

10:38:35 17   these terrible conditions.

10:38:37 18        Once again, in the *Zavala* case in Walmart, it may

10:38:43 19   be harsh conditions but doesn't amount to trafficking.  Burnett

10:38:46 20   is a step removed from that.  There is an allegation that he

10:38:49 21   came to the meeting and stated a legal opinion.  That is --

10:38:54 22   your best chance is to finish this process the way it was

10:38:58 23   started.  H-2B visa, extend it, and then file when the time

10:39:02 24   comes for permanent residency.  That is not a conspiracy.

10:39:08 25        In the *Barry* case, the Texas district court says

**OFFICIAL TRANSCRIPT**

10:39:14  1   that they haven't shown anything other than the groups of

10:39:20  2   people working together.  That's all this petition has shown,

10:39:25  3   this complaint has shown is that, yeah, we have -- it's kind of

10:39:29  4   hard to do anything as an attorney without being in contact

10:39:34  5   with anybody and everybody that you have to deal with.

10:39:37  6              That doesn't make it mail fraud, it doesn't make

10:39:39  7   it wire fraud, it doesn't make it fraudulent at all, and it

10:39:42  8   certainly doesn't mean that you've done anything to traffic

10:39:44  9   people into the -- into the United States.  No specific

10:39:50 10   allegations of fact against Mr. Burnett that would amount to

10:39:54 11   any type of peonage, slavery, forced labor or trafficking,

10:39:58 12   especially not was intended.

10:40:01 13              Now, if we go to the RICO claims, the same

10:40:06 14   arguments apply to the, quote, pattern of racketeering and

10:40:10 15   trafficking.

10:40:12 16              Mail fraud and wire fraud.  Their entire chart

10:40:18 17   says only that there was correspondence, various correspondence

10:40:22 18   between them.  Telephone discussions between.  Same thing in

10:40:29 19   their petition.

10:40:31 20              If we back up to what is mail fraud or what is

10:40:34 21   fraud in mail fraud and wire fraud.  And that is a scheme or an

10:40:45 22   orifice or a device to defraud, to take money from individuals.

10:40:52 23   I would submit to start off with that there is no showing that

10:40:55 24   there is any scheme to, quote, defraud, i.e., I'm going to sell

10:41:01 25   you the Golden Gate Bridge.  It shows that there was money paid

**OFFICIAL TRANSCRIPT**

10:41:05 1   for services rendered.

10:41:11 2         Mail fraud does not mean that now you are

10:41:12 3   dissatisfied with the product you purchased or you are

10:41:15 4   dissatisfied with the service that you agreed to or you are

10:41:18 5   dissatisfied with the price that you agreed to pay.  The point

10:41:21 6   is money was paid; services were rendered.  They have alleged

10:41:26 7   that their complaint.  They said that he filled out all the

10:41:30 8   stuff, got them here.

10:41:32 9         It says that he did file extensions on behalf of

10:41:36 10   *Signal* for a number of them, those that didn't leave.  Of

10:41:40 11   course, you can't file an extension for somebody that leaves.

10:41:44 12      THE DEPUTY CLERK:  You have four minutes.

10:41:48 13      MR. CERNIGLIA:  So there is no allegation of fact, and

10:41:52 14   fraud has to be specific -- when, where, how?  When did these

10:41:58 15   people meet?  What was the discussion?  Look, Joe, this is what

10:42:02 16   we're going to do.  We're going to get this money from these

10:42:04 17   guys, send them this file, get their money and take off.  They

10:42:09 18   made nothing like that.

10:42:11 19         What they are doing is, once again, pushing the

10:42:13 20   envelope on the technical, hypertechnical interpretations, and

10:42:17 21   it's their hypertechnical interpretation that, oh, that has to

10:42:22 22   include because we didn't like the services we got.  There was

10:42:24 23   no intent to file it.  Although, once they leave, how can you

10:42:29 24   follow through?

10:42:30 25         The point is that there is no facts alleged as

**OFFICIAL TRANSCRIPT**

10:42:35 1  required by Rule 9 for fraud, wire fraud, mail fraud, even

10:42:40 2  fraudulent misrepresentations against Mr. Burnett, that

10:42:44 3  anything he said or did had the intent to defraud, i.e., take

10:42:52 4  money from somebody, not to take money for value of services

10:42:56 5  provided.

10:42:56 6        Maybe they don't like how much they paid;

10:42:58 7  although, the amount that they have alleged up to, I think,

10:43:02 8  3,500 for most of them -- occasionally I saw 5,000, a lot of

10:43:07 9  them 1500, that's not much for an immigration lawyer to file

10:43:11 10  for somebody -- does not even approach to shock the conscious

10:43:16 11  of some agreed-to fee.

10:43:18 12        The point being is that what they have alleged

10:43:21 13  are for services rendered and fees paid.  That does not equate

10:43:26 14  with an intent to defraud.  So I would like to submit that they

10:43:30 15  have not stated anything under Rule 9 that would show an intent

10:43:36 16  to defraud these people.

10:43:38 17        The others -- the remaining allegations I have is

10:43:46 18  the misrepresentation.  Same argument as to that, is that there

10:43:48 19  is no allegation factually with what was misrepresented.  The

10:43:53 20  rest of it, though, deals with, in *David*, it deals with whether

10:44:03 21  or not it belongs -- it was a tort committed in India or in the

10:44:07 22  United States.  I think that's set for the next set.  So I'll

10:44:12 23  skip over that.  I think that's all.

10:44:18 24      THE COURT:  Does he have some time left in case he

10:44:20 25  wants to respond?

**OFFICIAL TRANSCRIPT**

10:44:20  1      THE DEPUTY CLERK:  Yes, about a minute and a half.

10:44:28  2      MR. FRITZSCHE:  Thank you.  Your Honor.  Tom Fritzsche

10:44:33  3  for the *David* plaintiffs.

10:44:34  4          So the issues presented before the Court by

10:44:39  5  Mr. Burnett were originally alleged in response to our fourth

10:44:42  6  amended complaint, and we've agreed with Mr. Burnett that he

10:44:45  7  could apply those arguments to the fifth amended complaint

10:44:49  8  which otherwise would have rooted those arguments, just for

10:44:51  9  clarity sake.  And it appears that Mr. Burnett is continuing to

10:44:55 10  reassert all the same arguments he raised to rebut the fourth

10:45:00 11  amended complaint.

10:45:00 12      THE COURT:  What was the difference between the fourth

10:45:04 13  and fifth amended complaints?

10:45:05 14      MR. FRITZSCHE:  The primary difference was, Your Honor,

10:45:07 15  for the common law claim or the state law claims we identified

10:45:10 16  the different jurisdictions whose laws could apply in the

10:45:14 17  alternative to those claims.

10:45:17 18          So Mr. Burnett says that we've pled no facts that

10:45:22 19  support the claims that he's identified -- the trafficking

10:45:25 20  claim, the RICO claim, the 1985 claim, and the fraud and

10:45:30 21  negligent misrepresentation claims.  But this case is nothing

10:45:33 22  like *Ashcroft v Iqbal*.  We've pled hundreds of facts.  And

10:45:40 23  Mr. Burnett, in fact, agrees with many of those facts and

10:45:43 24  doesn't dispute what happened in many instances.

10:45:46 25          He argues generally that we've lumped Mr. Burnett

**OFFICIAL TRANSCRIPT**

10:45:51  1    in with the full group of defendants and haven't identified

10:45:56  2    what he specifically did, but we've specified what his precise

10:46:00  3    role was in formulating the scheme and in taking a series of

10:46:04  4    actions to further the scheme to traffic the plaintiffs into

10:46:07  5    the United States and subject them to forced labor, and I'll

10:46:09  6    come back to those facts to give some examples in a moment.

10:46:12  7             The case that he cites with regard to -- I'll

10:46:17  8    address the trafficking claim first.  The case he cites with

10:46:20  9    regard to the trafficking claims, *Zavala* v Walmart, has

10:46:24 10    actually three problems.  First, it was actually under a

10:46:27 11    different statute.  It was under 18 U.S.C. § 1584, which sets

10:46:32 12    out the standard for involuntary servitude as a predicate act

10:46:36 13    for a RICO claim.

10:46:37 14             Now, our trafficking claims are under

10:46:42 15    Sections 1589 and 1590 for forced labor and trafficking.  And

10:46:46 16    among other things, they recognize the abuse of legal process

10:46:50 17    as a factor that could subject someone to forced labor and

10:46:54 18    trafficking.

10:46:55 19             The second problem is that, so, Mr. Burnett --

10:47:01 20    the *Zavala* case says that the threat of deportation or adverse

10:47:05 21    immigration alone is not enough to arise to the level of forced

10:47:11 22    labor.  However, other cases say that even under some

10:47:14 23    circumstances that could be enough, even without any of the

10:47:16 24    other facts that we've alleged.  One such case is *Kiwanuka v*

10:47:22 25    *Bakilana*, which is a 2012 case from the District of Washington,

10:47:25 1    DC.  They found that threats of deportation to the plaintiff

10:47:29 2    was sufficient to set forth a trafficking claim.

10:47:32 3              The third problem, as I mentioned before, is that

10:47:34 4    we're not saying that the only actions Mr. Burnett took that

10:47:39 5    contributed to our clients' trafficking was his threat in

10:47:43 6    Mississippi that they would be deported and suffer adverse

10:47:47 7    immigration consequences if they complained about hazardous and

10:47:52 8    discriminatory conditions at Signal's man camps.

10:47:56 9              We've alleged many other facts.  And just

10:47:58 10   starting from the beginning, Mr. Burnett had joint venture

10:48:02 11   agreements with many of the other defendants, Michael Pol at

10:48:05 12   Global Resources, and Sachin Dewan, that lead to this entire

10:48:10 13   scheme of moving forward.

10:48:11 14             Now, Mr. Burnett repeatedly, as we've set forth

10:48:14 15   in hundreds of paragraphs in our RICO fraud chart attached to

10:48:18 16   the complaint, represented the plaintiffs in person and in

10:48:21 17   writing that they would receive green cards, when he knew that

10:48:25 18   they could not receive green cards under the terms he promised.

10:48:30 19   And he used those misrepresentations to induce them to pay huge

10:48:34 20   sums of money, between 10,000 and $25,000 split among the

10:48:39 21   defendants, of which, in most cases, Mr. Burnett received a

10:48:43 22   third of the total payments.

10:48:44 23             He received the money, and when some workers

10:48:49 24   requested refunds, that was -- refunds were not available for

10:48:52 25   that money.  But now he wants to say that he's not responsible

**OFFICIAL TRANSCRIPT**

10:48:56 1    for anything that happened by the group of codefendants

10:48:59 2    involved in the scheme when he was receiving the money all

10:49:01 3    along.

10:49:01 4         Now, the threat of deep indebtedness from these

10:49:07 5    payments to Mr. Burnett and the other defendants was a major

10:49:09 6    factor in preventing the plaintiffs from being able to leave

10:49:12 7    *Signal*.  It's a major factor that subjected them to forced

10:49:16 8    labor, and numerous cases identify that as a source of

10:49:20 9    coercion, including the *Penawar* case from the Southern District

10:49:24 10   of Indiana in 2013.

10:49:26 11        Now, some of Mr. Burnett's other acts in

10:49:29 12   furtherance of the trafficking scheme that we've pled in detail

10:49:32 13   are advising *Signal* to make misrepresentations to the U.S.

10:49:36 14   government about the duration for which they needed to bring in

10:49:40 15   the workers from India, to say that it would be for just

10:49:45 16   nine months or so instead of for two to three years, which was

10:49:48 17   their intention.  And then similarly, advising workers to make

10:49:54 18   misrepresentations to the U.S. consulate about the amount of

10:49:57 19   money that they paid him and about the green cards that he

10:50:02 20   promised he would file for them.

10:50:04 21        So Mr. Burnett says that we've alleged nothing

10:50:07 22   that suggests that he had any intent to defraud; yet, he goes

10:50:11 23   to both sides here, both the employer and the employees, and

10:50:16 24   says, "Don't tell the government how much I'm being paid for

10:50:19 25   this.  Don't tell the government how long we're intending to

**OFFICIAL TRANSCRIPT**

10:50:21 1   bring the workers here for."

10:50:26 2        THE COURT:  Is that defrauding the government as

10:50:28 3   opposed to defrauding your clients?

10:50:30 4        MR. FRITZSCHE:  Yes, Your Honor, and that is part of

10:50:32 5   the -- that is pertinent to the RICO fraud claims, that fraud

10:50:38 6   on the government is pertinent there.

10:50:41 7           And then finally, just coming back to when

10:50:45 8   workers were in the United States, Mr. Burnett went out of his

10:50:49 9   way to make sure that the workers stayed in Signal's man camps.

10:50:53 10  He came and repeated what Mr. Burnett now says was just advice,

10:50:58 11  but he said that if you complain or if you have any -- if you

10:51:02 12  see any problems with the conditions at Signal's man camps or

10:51:06 13  you talk to lawyers or participate in work organizing efforts,

10:51:12 14  you'll be deported, and you won't get your H-2B visas extended.

10:51:18 15          So to sum up, we've identified hundreds of

10:51:21 16  specific actions that Mr. Burnett took in furtherance of the

10:51:26 17  scheme.

10:51:26 18          So I'm going to move next to the RICO claim.  And

10:51:29 19  so this is a claim that actually Mr. Burnett is relitigating

10:51:33 20  where this exact same motion was denied before, December of

10:51:37 21  2008.  It's a Document 288 from December 8, 2008.  And the

10:51:44 22  Court said in response to a motion from Melvin Burnett, the

10:51:48 23  Court held, "Plaintiffs have adequately pled a RICO enterprise

10:51:52 24  and a continuing pattern of racketeering activity.  The

10:51:55 25  complaint, as bolstered by the record, is replete with

**OFFICIAL TRANSCRIPT**

10:51:59  1    communications sufficient to support the alleged predicate acts

10:52:01  2    of mail and wire fraud.  And then, further, the scheme that

10:52:05  3    plaintiffs alleged could not have succeeded without the

10:52:08  4    participation of all defendants who clearly comprised an

10:52:13  5    enterprise for pleading purposes."

10:52:15  6              So this issue has actually already been decided

10:52:18  7    by this court on facts that we've pled and on the same legal

10:52:24  8    arguments that Mr. Burnett has raised.  But even if -- and

10:52:28  9    Mr. Burnett hasn't given a reason why the Court should decide

10:52:31 10    differently now, but even if the Court were inclined to revisit

10:52:35 11    it, many of the same facts that I've already discussed to the

10:52:40 12    Court had been pled in detail as to what Mr. Burnett's roles,

10:52:43 13    including --

10:52:44 14              THE DEPUTY CLERK:  You have two minutes.

10:52:45 15              MR. FRITZSCHE:  Thank you.

10:52:46 16              -- including using wire and mail to defraud the

10:52:50 17    U.S. government and to also make misrepresentations to the

10:52:54 18    workers, sending information and documents to such as Dewan and

10:53:00 19    Michael Pol in furtherance of the scheme and ultimately

10:53:04 20    submitting false immigration documents to the U.S. Department

10:53:08 21    of Labor.

10:53:08 22              So moving on to the 1985 claim, the primary

10:53:16 23    element, I think, that Mr. Burnett takes issue with is the --

10:53:20 24    depriving the plaintiffs of equal protection section of the

10:53:24 25    1985 claim, and we would like to point the Court to the threats

OFFICIAL TRANSCRIPT

10:53:27  1   that were made only to the Indian workers, who were the only

10:53:32  2   workers subject to the man camp conditions where Mr. Burnett

10:53:35  3   went out of his way to, in person, tell the workers that they

10:53:39  4   needed to stay with *Signal*, they shouldn't complain, and they

10:53:44  5   shouldn't talk to other lawyers about what was happening at the

10:53:46  6   man camps.

10:53:47  7           And then finally, on Mr. Burnett's motion to

10:53:56  8   dismiss the fraud and negligent misrepresentations claims,

10:54:01  9   again, this is a claim that the Court upheld in 2008 against

10:54:04 10   the motion to dismiss from Mr. Burnett, and, again, he doesn't

10:54:08 11   give any reasons why the Court should decide differently now.

10:54:12 12           And, again, the facts show Mr. Burnett's knowing

10:54:14 13   participation in fraud such as promising legally incompatible

10:54:19 14   immigration benefits to the plaintiffs for which he charged and

10:54:22 15   received huge fees and then telling the plaintiffs that the

10:54:25 16   green card process was moving forward at certain points when

10:54:29 17   nothing as of yet had been filed by Mr. Burnett,

10:54:35 18   misrepresenting the length of the application process and,

10:54:37 19   again, coming to Mississippi in person to threaten the workers

10:54:41 20   with the consequences if they -- if they complained about the

10:54:45 21   conditions in Signal's camps.

10:54:48 22           Thank you very much, Your Honor.

10:54:51 23       THE COURT:  Thank you.

10:54:55 24       MR. WALKER:  Your Honor, Jacob Walker again on behalf

10:54:58 25   of the *Chakkiyattil* plaintiffs.  Procedurally here, I'll speak

**OFFICIAL TRANSCRIPT**

10:55:02  1   for all four of the *Achari* cases.  There are two things to draw

10:55:06  2   your attention to.

10:55:06  3           My colleague, Daniel Adams, who represents the

10:55:09  4   *Achari* plaintiffs, also would like to speak briefly about the

10:55:13  5   12(c) motion which applies only to his case, and one of the

10:55:17  6   four cases, the *Krishnakutty* case, has some claims that are not

10:55:20  7   present in the other three.  Those claims have been addressed

10:55:23  8   by the arguments of *David* counsel; so, I believe that those

10:55:27  9   plaintiffs will stand on those arguments, and all of the *Achari*

10:55:31  10  plaintiffs will stand, for the most, part on the arguments made

10:55:34  11  by *David* counsel.

10:55:35  12          I do just want to draw your attention to two

10:55:38  13  things.  Mr. Burnett's 12(b)(6) motion against all of the

10:55:43  14  *Achari* plaintiffs never amounted to a proper motion to dismiss.

10:55:46  15  He takes issue with the facts that are alleged.

10:55:50  16          His general thesis is that he was only acting as

10:55:54  17  a loyal and good immigration lawyer, but that question, I

10:55:58  18  question whether that's what he was doing; but, instead, he was

10:56:01  19  a participant in this trafficking scheme is a question of fact.

10:56:04  20  And there are numerous facts in each of the four complaints.

10:56:10  21          Mr. Burnett looks to the summary of each of the

10:56:15  22  claims to say that the statements in the complaints are

10:56:20  23  summary, but he ignores the hundreds and hundreds of paragraphs

10:56:22  24  that precede those claims.  There is a number of very specific

10:56:29  25  allegations about Mr. Burnett in each of the four complaints.

**OFFICIAL TRANSCRIPT**

10:56:31  1          We allege that Mr. Burnett told plaintiffs they

10:56:34  2   would receive a green card, when he knew that they would only

10:56:36  3   be getting temporary visas.  We allege that he told them that

10:56:41  4   their H-2B visas would be converted when they got to the

10:56:44  5   United States, when he knew this was false.

10:56:46  6          We allege that he charged fees that he knew

10:56:49  7   *Signal* had been responsible for.  We allege that he held onto

10:56:53  8   some plaintiffs' passports until they paid him fees.  We allege

10:56:57  9   very specifically that he contracted to file green card

10:57:00 10   applications knowing that they weren't even a possible thing to

10:57:02 11   do in exchange for extra fees.  We allege that he knew that

10:57:06 12   *Signal* used him as a coercive threat.

10:57:09 13          So our complaints are replete with numerous

10:57:12 14   allegations very specific to Mr. Burnett.  And for all of the

10:57:14 15   reasons that my colleagues who represent *David* counsel put

10:57:18 16   forward, we believe that more than adequately state a claim.

10:57:21 17          We'll address the foreign law issue on the state

10:57:25 18   common claims in the next part of the argument, but unless

10:57:27 19   there are other questions, we'll stand on those arguments.

10:57:29 20          THE COURT:  That's fine.  Thank you.

10:57:33 21          MR. ADAMS:  Your Honor, Daniel Adams on behalf of the

10:57:39 22   *Achari* plaintiffs, speaking with respect solely to Burnett's

10:57:43 23   Rule 12(c) motion against the *Achari* action.

10:57:46 24          As with Mr. Walker, we will rest largely on the

10:57:50 25   arguments that has been presented already.  There is

                          **OFFICIAL TRANSCRIPT**

10:57:53 1  substantial overlap between Burnett and the 12(b) and 12(c)

10:57:57 2  motions.

10:57:57 3       I would like to make two quick points.  First,

10:57:59 4  this court need not consider Mr. Burnett's Rule 12(c) motion

10:58:04 5  procedurally improper.  He already has a Rule 12(b) motion

10:58:08 6  before the Court.  Rule 12 is designed to promote efficiency

10:58:12 7  and provide a single omnibus motion, pre-answer motion raising

10:58:18 8  all of their objections and defenses.

10:58:19 9       We understood that was the Court's direction to

10:58:21 10  the defendant to clarify what motions to dismiss were pending,

10:58:25 11  but Burnett took that opportunity to file a motion to dismiss

10:58:30 12  against all of the cases and, as indicated in the caption and

10:58:33 13  in the motion and in the memo of law, clearly filed a motion to

10:58:37 14  dismiss the *Achari* action as well.

10:58:39 15       If there was any doubt, he didn't file a

10:58:42 16  clarification of intent confirming, once again, he was, indeed,

10:58:45 17  willing to dismiss all of the cases pending in Mississippi.

10:58:48 18       So because Mr. Burnett already has the 12(b)

10:58:51 19  motion pending before the Court, his 12(c) motion is

10:58:55 20  duplicative and improper and should be disregarded.

10:58:59 21       Turning to the substance, I would just like to

10:59:00 22  echo one point and respond to one point Mr. Cerniglia raised

10:59:04 23  regarding Mr. Burnett's intent, and he says that all

10:59:09 24  Mr. Burnett was doing was providing money or was -- I believe

10:59:14 25  his words were *money paid for services rendered*.  Plaintiffs

**OFFICIAL TRANSCRIPT**

10:59:17 1   are complaining about the services that Mr. Burnett received --

10:59:21 2   provided; however, there are specific allegation in the

10:59:25 3   complaint not only that address Mr. Burnett's actions and

10:59:28 4   fraudulent conduct toward the plaintiffs but also his

10:59:32 5   fraudulent intent.

10:59:33 6          Most of those have already been identified by

10:59:35 7   counsel and I won't repeat them here.  The one that I would

10:59:39 8   just emphasize and point out to the Court is that if, in fact,

10:59:43 9   Mr. Burnett were providing legal services for the fees he was

10:59:46 10  demanding, one would expect those legal fees would be uniform.

10:59:49 11         Mr. Burnett is providing the same H-2B visa

10:59:55 12  applications for all of the plaintiffs; and, yet, the complaint

10:59:57 13  documents that each plaintiff was quoted different prices and

11:00:00 14  at different times they paid different amounts.  And even when

11:00:03 15  certain plaintiffs said, "Oh, well, you're charging too much.

11:00:05 16  I can't pay that amount," the defendant would say, "Well, if

11:00:08 17  you can pay just a little bit less, that's okay."

11:00:11 18         It's a classic hallmark of fraud where these fees

11:00:15 19  bore absolutely no relation to the legal work that Mr. Burnett

11:00:19 20  was providing to the plaintiffs.  He provided receipts for

11:00:22 21  employment-based permanent residency visa processing, knowing

11:00:26 22  full well that he was never going to process them for H2Bs or

11:00:29 23  green cards but was instead providing temporary visas.

11:00:34 24         So for all of the reasons that have been stated

11:00:35 25  before, there are many allegations that show Mr. Burnett's

**OFFICIAL TRANSCRIPT**

11:00:39  1  intent with respect to the plaintiffs, but it's simply

11:00:42  2  certainly, considering a plausible inference from the

11:00:46  3  allegations of the complaint, it's certainly plausible that

11:00:48  4  Mr. Burnett had a fraudulent intent to defraud all of the

11:00:51  5  plaintiffs.  Thank you.

11:00:58  6       MR. CERNIGLIA:  Briefly, Your Honor, the problem with

11:00:59  7  both complaints and with these arguments is that it does not

11:01:03  8  bear a relationship to the words spoken in the complaint.  This

11:01:10  9  is their interpretation of what they said.  I ask you to look

11:01:12  10 at the complaint.

11:01:13  11       First, for example, we have made numerous

11:01:16  12 allegations Mr. Burnett held passports.  If you read very

11:01:21  13 carefully, the only one that ever withheld passports was

11:01:25  14 Sachin Dewan.  Mr. Burnett wasn't even there.  Allegations that

11:01:29  15 made all these representations.  You're going to get this;

11:01:34  16 you're going to get that.  Once again, it's just lumped all

11:01:37  17 together.  Legal facilitator defendants and recruiter

11:01:40  18 defendants and also Michael Pol was one of them, but didn't say

11:01:43  19 how or who and what was said by Mr. Burnett.

11:01:47  20       When you look at what -- and same thing with the

11:01:53  21 threats of deportation.  The only statement I could find

11:02:00  22 attributable to Mr. Burnett at any of the *Signal* camps, when he

11:02:04  23 was asked by *Signal* to come make a presentation, and he said --

11:02:09  24 I think I put it in my memo.  The allegations is that he told

11:02:14  25 them that their best chance was to stay the course with *Signal*.

**OFFICIAL TRANSCRIPT**

11:02:20 1   That's an opinion.  That is certainly not we're going to deport

11:02:24 2   you.

11:02:25 3          So -- and the statement in the *Zavala* case I

11:02:31 4   think was equally applicable.  It's not going to be, well,

11:02:33 5   these words in this statute mean this and the exact same words

11:02:36 6   in this statute mean something different.

11:02:39 7          THE DEPUTY CLERK:  Your time is up.

11:02:41 8          MR. CERNIGLIA:  Look at the complaint, Your Honor.  If

11:02:44 9   they said Mr. Burnett said or did, it's either lumped together.

11:02:47 10  Look at what exactly he did.

11:02:48 11         THE COURT:  Thank you, Mr. Cerniglia.

11:02:51 12         All right.  Now we're going to hear argument on

11:02:57 13  the issue of whether the plaintiffs' claims in the *Achari* cases

11:03:01 14  and the *David* case are plausible given that some of the events

11:03:04 15  giving rise to those claims occurred abroad, and during this

11:03:08 16  time, *Signal* may also argue the issue of whether this court

11:03:13 17  should exercise supplement jurisdiction under 28 U.S.C. §

11:03:16 18  1367(c)(1) over plaintiffs' state law claims.

11:03:21 19         MR. WEINBERGER:  Good morning, Your Honor.

11:03:23 20  Alan Weinberger on behalf of *Signal*.  Your Honor, I want to

11:03:26 21  read something to you in connection with the jurisdictional

11:03:30 22  question.  It's not entirely clear for me -- to me from their

11:03:36 23  brief whether they've suggested to the Court that I've ever

11:03:41 24  argued that you lacked the power to adjudicate these claims.

11:03:45 25  I've never said that.  That's not my contention.  We know

**OFFICIAL TRANSCRIPT**

11:03:49 1   better than that.  Of course you have the power.  The question

11:03:51 2   is whether you should.

11:03:53 3          Now, this new complaint they filed, as you may

11:04:00 4   know, is really an extraordinary document.  This is the first

11:04:03 5   time -- you know, we have been here for five -- which reminds

11:04:07 6   me, Your Honor, the fraud on the government point that you

11:04:10 7   raised earlier, that was a very, very, very big part of a class

11:04:15 8   certification argument, Judge, and you will find it much

11:04:18 9   addressed in the *David* decision.

11:04:19 10          Let me get back to the question of supplemental

11:04:23 11   jurisdiction.  So now the claim --

11:04:25 12       THE COURT:  When you're talking about *their complaint*

11:04:27 13   or are you talking about the *David* case?

11:04:29 14       MR. WEINBERGER:  Yes, Your Honor.

11:04:31 15          Let's talk *Achari* for a second because here is

11:04:34 16   the situation that you're facing.  You will not find, in all

11:04:38 17   the federal law, you will not find a single decision that holds

11:04:43 18   that when cases are transferred under the first filed rule, the

11:04:49 19   state law or the law that applies to choose law is the law of

11:04:54 20   the transferor court.  As you know, that is clear in 1404(a)

11:04:59 21   practice.  Well settled.

11:05:01 22          But, you know, if you look at the United States

11:05:03 23   Supreme Court cases that talk about why that's true, what you

11:05:08 24   find is that it's a very 1404(a) oriented analysis.  Basically

11:05:14 25   the Supreme Court of the United States said that we want the

**OFFICIAL TRANSCRIPT**

11:05:17 1  law of the transferor court on choice of law to govern what

11:05:23 2  transfer happens because we don't want people to game the

11:05:26 3  system.  We don't want this to be some kind of game.

11:05:29 4       The first filed rule is all about the way federal

11:05:33 5  courts organize themselves.  Now, think for a moment.  They are

11:05:36 6  very upset that I said this stuff hurts the head, which, by the

11:05:42 7  way, I didn't say it hurts the Court's head.  I said it hurts

11:05:46 8  my head.

11:05:47 9       Think about this situation.  The *Achari* cases,

11:05:49 10 Your Honor, are, by definition -- by definition -- cases that

11:05:53 11 contain wipers that worked in Mississippi.  The five guys that

11:05:57 12 you're going to try in January all worked in Mississippi.  Do

11:06:01 13 you know what they want you to do?  This is where they now are.

11:06:05 14 They want you, ideally, to apply Indian law to the five guys in

11:06:11 15 Louisiana for trial originally in Louisiana by virtue of the

11:06:15 16 *David* complaint.

11:06:16 17      They want you to use -- for all I know the Court

11:06:19 18 was taught by Professor Symeonides.  He wants you to use that

11:06:24 19 regime to work through all of the choice of law permutations to

11:06:30 20 deal with the five *David* guys that are going to get tried in

11:06:34 21 January.  They have always been here; so, it's clear that

11:06:37 22 Louisiana choice of law law [verbatim] applies to them.

11:06:40 23      Now, the *Achari* plaintiffs, if I said to you that

11:06:43 24 you should apply the civil code to figure out what law applies

11:06:48 25 to the common law claims of the plaintiffs that were

**OFFICIAL TRANSCRIPT**

11:06:52  1    transferred here from Mississippi, they would be very troubled

11:06:55  2    by that.  And they would argue that that's a wrong thing for

11:06:59  3    you to do.

11:06:59  4            Let's assume for a moment that that's true.  What

11:07:03  5    you end up doing is you take the same population of people and,

11:07:08  6    in theory, you present their common law claims to the jury but

11:07:12  7    using different legal symptoms.  Some guys get Mississippi;

11:07:17  8    other guys, in their ideal world, get Indian law.  Does that

11:07:20  9    make sense?

11:07:21 10            You don't need to worry about whether it makes

11:07:23 11    sense, Judge, because this is what you begin to see.  They deny

11:07:26 12    this, of course, but this is complicated stuff, and when stuff

11:07:30 13    is complicated, 1367(c)(1) tells you that you don't have to do

11:07:36 14    it if you don't want to.

11:07:38 15            Now, they make a very, very lengthy argument

11:07:41 16    that, of course, you should do all the pendant common law

11:07:47 17    claims because they've been here for years.  Well, that's a

11:07:50 18    legal decision for you to make.  They just changed their

11:07:52 19    complaint.  The complaint they are talking about now is just

11:07:55 20    days old.  You haven't been familiar with that complaint.  You

11:08:00 21    haven't done anything with regard to that structure.

11:08:03 22            The problems that you face now you're facing

11:08:07 23    because they decided to do something in early April.  So the

11:08:12 24    idea that you've been with this litigation so long that the

11:08:16 25    Fifth Circuit would say that it's an abuse of discretion for

**OFFICIAL TRANSCRIPT**

43

you to let go of those claims makes no sense, and I'm confident that the Fifth Circuit would say that because this complaint is so new and the problems associated with it are so new.

THE COURT:  Is the new part of it the fact that they now allege that it's Indian law instead of Mississippi law?

MR. WEINBERGER:  But, Judge, it would be simple if they said it was only Indian law, but they don't say that, do they? They say, well, we think it's Indian law and we want it to be Indian law, but if it's not, we want it to be Mississippi law, and, oh, by the way, if it's not that or maybe if it is even, for these Texas guys over here, it's Texas law, but, you know, then there is the negligent misrepresentation permutation and then there is the breach of contract permutation.

You know, maybe the most powerful thing that I said in the brief that I wrote -- and I'm going to sit down in a moment because I don't repeat things that I say in briefs, but virtually everything they say I said I didn't say or if they say I didn't say it, I actually did.  You'll see that in the brief.

I said, you know, how would you try this?  How would you charge a jury to do all this law choosing if you needed to do that?  And whether they said it directly or not, of course, what they said is, "Well, you're not ever going to have to worry about that because it doesn't ever raise to that or rise to that level of problem or fact finder or whatever."

11:09:45  1          You know, when they wrote a brief in response to

11:09:48  2     a motion for judgment on the pleadings with regard to the

11:09:50  3     fourth complaint, I think it was, this is what these lawyers

11:09:54  4     said.  Mind you, they said it in the wrong place because it's

11:09:57  5     12(b)(6) practice, and that's determined by the face of the

11:10:00  6     complaint, but they, themselves, on the question of fact

11:10:07  7     finding or facts that could be choice of law sensitive, which

11:10:10  8     they say, no problem, they, themselves, wrote the following,

11:10:14  9     with a couple of inserts from me:  "All of these events, and

11:10:19 10     many others occurring in the United States, will be part of the

11:10:24 11     parties' choice of law motion practice."  So they envision some

11:10:30 12     big motion practice.

11:10:31 13          "Due, they wrote this, "Due to the

11:10:38 14     interjurisdictional nature of these events, plaintiffs request

11:10:42 15     the opportunity to brief the choice of law questions using," in

11:10:49 16     brackets, my word, *discovery*, "discovery," Your Honor, facts,

11:10:56 17     "the plaintiffs believe adequately flesh out the choice of law

11:11:01 18     factors."

11:11:01 19          Would you be surprised if I came in here and

11:11:06 20     said, "Your Honor, I've written in a brief the question of what

11:11:11 21     law governs this legal question," but when it's driven by

11:11:17 22     facts, which they say it is, I say to you all day long, you got

11:11:21 23     to allow the jury to --

11:11:23 24          THE COURT:  What if they are not contested?  What if

11:11:27 25     there are undisputed facts?  If you all disagree about how to

**OFFICIAL TRANSCRIPT**

11:11:32  1    apply it, what the law is, but the facts are undisputed.

11:11:36  2            MR. WEINBERGER:  I'm going to sit down now with the

11:11:38  3    request that the Court asks whoever stands up in a minute this

11:11:41  4    question:  How exactly is the Court going to do this?  How are

11:11:45  5    you going to figure out which mole you're going to whack?  How

11:11:51  6    exactly are we going to work through whether this is Indian law

11:11:56  7    or, alternatively, Mississippi law or, alternatively, Texas

11:12:02  8    law, and maybe not negligent misrepresentation law because, as

11:12:08  9    I understand it, if you accept the argument that Indian law

11:12:11 10    applies, then they don't want to do anything else so they are

11:12:15 11    done.  But if you don't want to do Indian law, then there is a

11:12:18 12    bunch of other law.

11:12:19 13            THE COURT:  Do you believe that -- and I want the

11:12:23 14    plaintiffs' lawyers to respond to this too -- there are some,

11:12:28 15    talking about *David* now, there are -- the *Achari* cases, it's

11:12:34 16    all Mississippi?

11:12:35 17            MR. WEINBERGER:  Right.

11:12:35 18            THE COURT:  And in the *David* case --

11:12:37 19            MR. WEINBERGER:  Well, maybe.

11:12:38 20            THE COURT:  -- there are some plaintiffs who -- their

11:12:45 21    claims would be under Mississippi law because they worked in

11:12:48 22    the Mississippi facility, and some plaintiffs, they would

11:12:52 23    either be under Mississippi or Indian, and some would be under

11:12:55 24    Texas or Indian, and there is not any overlap; so, the issue is

11:13:00 25    are the claims under Mississippi or Indian or Texas or Indian?

**OFFICIAL TRANSCRIPT**

11:13:07 1        MR. WEINBERGER:  But, Your Honor, the situation you are

11:13:09 2   facing at this very instant is that you have plaintiffs who

11:13:15 3   worked in Mississippi that you're going to try in January that

11:13:18 4   they want to try under Indian law.  The guy standing next to

11:13:24 5   him, who is represented by the other guys who came here from

11:13:27 6   Mississippi, they are going to stand up in a second and say,

11:13:30 7   "It's as plain as the nose on your face that Mississippi law

11:13:35 8   applies to those claims."

11:13:37 9        You're supposed to present to the

11:13:40 10  Eastern District of Louisiana jurors some Mississippi

11:13:43 11  plaintiffs under Indian law and other Mississippi plaintiffs

11:13:48 12  under Mississippi law.  I maintain that doesn't make sense, and

11:13:52 13  it doesn't make sense so much that you get to say, "I'm not

11:13:56 14  going to do it."  And I'll reserve my time, Your Honor.

11:14:03 15       THE COURT:  Mr. Cerniglia.  We're going to let

11:14:08 16  Mr. Cerniglia argue first.

11:14:10 17       MR. CERNIGLIA:  Your Honor, I believe the only claim

11:14:12 18  that I have they filed a motion on is the state-based negligent

11:14:19 19  misrepresentation claim.  Of course, at the time I filed they

11:14:24 20  had not yet filed their fifth amended complaint.  I doubt I

11:14:29 21  would have addressed the issue of Indian law because that's

11:14:32 22  going to take some time to figure out exactly where we are and

11:14:36 23  what's going on with that, but the point today is we need to

11:14:40 24  start culling out issues that are not going to be before the

11:14:46 25  Court, should not be before the Court, etcetera.

**OFFICIAL TRANSCRIPT**

11:14:49 1           The negligent misrepresentation claim under state

11:14:54 2  law should not -- is not a plausible claim for relief here

11:15:01 3  under state misrepresentation law, even federal common law.

11:15:10 4  State common law -- state law, and I guess in Mississippi it

11:15:15 5  would be state common law, and federal law are almost

11:15:19 6  identical.

11:15:19 7            It takes a statement which the plaintiff relied

11:15:29 8  to his detriment.  Detrimental reliance on a statement.  So you

11:15:35 9  take that as our starting point.  Where were all of the

11:15:42 10  statements made -- what was the detrimental reliance that they

11:15:48 11  are alleging?  They had to pay money.  They paid it in India.

11:15:53 12  They had to hock the family farm, sell jewelry, borrow money,

11:16:01 13  all of that.  Done in India.  They had to get on a plane to

11:16:05 14  come to the United States.  That was one of the things they

11:16:08 15  allege.  That is -- they actually boarded the plane in India.

11:16:14 16            The statements that they alleged that were made,

11:16:21 17  if you start off, once again, only as to Burnett, you'll see

11:16:27 18  that all the representations are simply defendants, legal

11:16:34 19  facilitator defendants and recruiter defendants.

11:16:36 20            You will also note that it was always being

11:16:39 21  interpreted.  There are different paragraphs that Sachin Dewan

11:16:44 22  spoke in, I don't know the dialect, spoke in one dialect, and

11:16:49 23  it was being interpreted into another dialect.  So we don't

11:16:52 24  know exactly what statements were made by Mr. Burnett because

11:16:56 25  there is no allegation for that.

**OFFICIAL TRANSCRIPT**

11:16:57 1          Now, fraud requires that.  But first, where was

11:17:00 2    it made?  In India.  So the fraudulent or the tortious conduct

11:17:11 3    is in India.  Detriment that was suffered was in India, and the

11:17:19 4    place all the plaintiffs were located at the time they relied

11:17:21 5    on these statements were in India.

11:17:24 6          There is only the tangential relationship is

11:17:28 7    that, well, they ended up in the United States based on these

11:17:32 8    statements, and they didn't like the conditions they were in.

11:17:37 9    But there is no allegation, no statement that Mr. Burnett said,

11:17:43 10   "And you are going to be well taken care of.  You're going to

11:17:46 11   have cars at your availability.  You're going to have the best

11:17:50 12   food available.  You're going to have everything you want."  No

11:17:54 13   statement to that effect.  There is occasional inference to

11:17:58 14   that that Dewan says such a thing.

11:18:01 15         The point is that there is nothing that happened

11:18:04 16   in the United States to their detriment that was because of

11:18:09 17   anything Mr. Burnett said in India.  So as to Mr. Burnett, the

11:18:16 18   conduct was in India, the damages were suffered in India,

11:18:19 19   suffered by Indians then residing and citizens of India, and

11:18:24 20   the action that they took were all in India.  It's just very

11:18:30 21   tangential for a negligent misrepresentation for it to be --

11:18:36 22   any state law to apply.

11:18:38 23         On top of that, applying federal procedural law,

11:18:43 24   there is no factual allegations as to Mr. Burnett personally of

11:18:51 25   what statements were actually fraudulent on which they relied

11:18:56  1     to their detriment.

11:18:57  2              So two things:  One, they have not followed

11:19:01  3     Rule 9, but even if they had everything on fraudulent happen in

11:19:05  4     India, state law and federal law cannot apply to those claims.

11:19:10  5     Whether Indian law does, I think we'll be crossing that bridge

11:19:15  6     on whether it applies.  I believe it more probably should.  The

11:19:19  7     question is whether it should apply in this case.  I think

11:19:21  8     we'll get to that later.

11:19:22  9              THE COURT:  Thank you.

11:19:26 10              MR. HOWARD:  Good morning, Your Honor.  Alan Howard on

11:19:33 11     behalf of the *David* plaintiffs.

11:19:35 12              There was a reference before to Whack-a-Mole, and

11:19:39 13     I kind of feel that's my role here because I don't know what

11:19:43 14     gopher is popping up out of what hole on these issues.

11:19:47 15              Just to respond to Mr. Cerniglia, we now seem to

11:19:50 16     be rearguing what was decided in December of 2008 about the

11:19:54 17     adequacy of pleading with respect to the negligent

11:19:58 18     misrepresentation claims.  We've passed that and my colleague,

11:20:01 19     Mr. Fritzsche, already went through lots of specific

11:20:04 20     allegations because of Mr. Burnett.

11:20:06 21              I also seem to hear him saying, well, since

11:20:07 22     Indian law would apply, that's not really a state law claim,

11:20:10 23     and that's kind where we kicked off this exercise, and that was

11:20:15 24     with Signal's motion.

11:20:16 25              Mr. Weinberger said today that he never, ever,

**OFFICIAL TRANSCRIPT**

11:20:20 1  ever said that this court doesn't have the authority to

11:20:24 2  adjudicate foreign law claims.  Well, that's precisely what

11:20:28 3  *Signal* said in its original motion that they brought.  At

11:20:31 4  page 8, they said that under Louisiana choice of law rules,

11:20:38 5  state law claims cannot include claims that have to be decided

11:20:41 6  under foreign law, and so that rendered them implausible.  That

11:20:45 7  was what started this whole exercise.

11:20:49 8        THE COURT:  I do recall that conversation.

11:20:55 9        MR. HOWARD:  Absolutely.  And they relied on *Magee*, a

11:20:57 10 Fifth Circuit case, to say there is no authority; whereas, as

11:21:00 11 we pointed out in the status conference, *Magee* stands for quite

11:21:04 12 the opposite.

11:21:05 13       *Magee*, the Fifth Circuit case, for a tort that

11:21:09 14 incurred entirely in Iraq could be adjudicated by a district

11:21:13 15 court here in the U.S.  Applying Rule 44.1, the Federal Rules

11:21:18 16 provide a precise mechanism for the application of foreign law,

11:21:22 17 and the Fifth Circuit remanded to the district court to apply

11:21:26 18 Iraqi law to the tort claim, and that tort incurred entirely

11:21:30 19 extraterritorially.

11:21:32 20       Not only that, but in *Magee* they cited to

11:21:36 21 Louisiana Code 3516, which expressly states that state, for

11:21:43 22 purposes of the part of the code dealing with choice of law,

11:21:46 23 includes foreign jurisdictions.

11:21:51 24       THE COURT:  Wasn't there some language in the *Magee*

11:21:54 25 case about it had -- an extraordinary circumstance, maybe the

**OFFICIAL TRANSCRIPT**

11:21:58  1   claim could not be brought anywhere else?  Do you recall that

11:22:01  2   because --

11:22:03  3       MR. HOWARD:  [Speaking simultaneously] That was part of

11:22:04  4   kind of when they were talking about Rule 441 and also a kind

11:22:08  5   of a forum non conveniens analysis which federal courts go

11:22:13  6   through all of the time, choice of law being one of the

11:22:16  7   elements, the adequacy of alternative forum being one of the

11:22:20  8   elements.

11:22:20  9       But what *Magee* stands for indisputably is that

11:22:24  10  federal courts have the authority to adjudicate claims

11:22:29  11  according to foreign law, and that was the original premise of

11:22:33  12  Signal's motion and it was ill founded.

11:22:35  13      But then it morphed into something different.  It

11:22:41  14  morphed into, well, when we're talking about plausibility,

11:22:45  15  we're talking about the plausibility of the pleading if it were

11:22:49  16  to be under foreign law.  And that's when the Court said, "Okay

11:22:52  17  I'll give you that opportunity to address that," but to do that

11:22:55  18  you need to know which law applies.

11:22:58  19      THE COURT:  Tell me, I want to be very practical about

11:23:02  20  this and try to work my way through it.  The trial that we have

11:23:06  21  scheduled, the five plaintiffs in the *David* case, the

11:23:11  22  nonfederal statutory claim, what are those and what law are

11:23:16  23  they under?

11:23:17  24      MR. HOWARD:  They are the -- well, it's a little bit

11:23:23  25  complicated in the sense that there is some that don't apply to

**OFFICIAL TRANSCRIPT**

11:23:26  1   all five.  There are a lot that arise out of that March 9th

11:23:30  2   incident, so you have the false imprisonment claims and the

11:23:34  3   assault and battery claims and those things.  Those are all

11:23:36  4   Mississippi law that occurred in Mississippi.

11:23:36  5          THE COURT:  Right.

11:23:39  6          MR. HOWARD:  We're talking about the breach of contract

11:23:41  7   and the misrepresentation claims, so the fraud and breach of

11:23:48  8   contract claims, and we take the position that India law would

11:23:51  9   apply to those.

11:23:52 10          Now, why did we have to plead it in the

11:23:55 11   alternative?  And that was because of this exercise that

11:23:59 12   Signal's ill-founded motion launched us on, which is to end up

11:24:03 13   having to do this as a matter of pleading as opposed to, as we

11:24:08 14   were suggesting, a matter of choice of law briefing.

11:24:11 15          What happened is you've got the pleading and then

11:24:12 16   later in the case, after discovery, you do briefing to

11:24:16 17   decide -- we'll let the Court decide which body of law would

11:24:19 18   apply, and Your Honor would rule India law applies.  Fine,

11:24:24 19   that's it.

11:24:25 20          THE COURT:  You're planning on filing a motion for

11:24:27 21   partial summary judgment on the choice of law issue?

11:24:32 22          MR. HOWARD:  Well, now we're taking the position that

11:24:34 23   it would be Indian law that would apply, and there doesn't seem

11:24:39 24   to be opposition from *Signal*.  I think their view is India law

11:24:43 25   applies as well.

**OFFICIAL TRANSCRIPT**

11:24:44 1          The reason we had to plead in it the alternative

11:24:46 2     is what if they oppose that, it led to some briefing, and then

11:24:50 3     the Court decides, well, India law doesn't apply.  Then we're

11:24:54 4     left without a cause of action.

11:24:56 5          So we're not anticipating that you have to charge

11:24:58 6     the jury that this piece of this claim is India law, this piece

11:25:01 7     of this claim is Mississippi law, this piece is Texas.  It's

11:25:04 8     pled in the alternative under Rule 8, but there will only be

11:25:10 9     only one body of law on which you will be charging a jury.

11:25:14 10         If it's Indian law, it very simple -- it's

11:25:17 11    virtually indistinguishable on breach of contract and the

11:25:19 12    misrepresentation claims.  The courts do it all the time in the

11:25:23 13    U.S. applying India law.

11:25:25 14         THE COURT:  Is it a two-step process that first we want

11:25:29 15    to know whether *Signal* agrees that India law would apply?  And

11:25:33 16    then I think the second step, though, is *Signal* says, "Since

11:25:38 17    it's India law, you can't bring it here."

11:25:42 18         MR. HOWARD:  That's the point.  They jumped ahead

11:25:45 19    there.  I think we're past that point in the sense that they

11:25:48 20    are now conceding you have authority, but that was the original

11:25:50 21    motion was that you didn't.  Now they are saying you don't have

11:25:52 22    the capacity to handle foreign law.  It's too complex.

11:25:59 23         THE COURT:  So it's a question whether I should

11:26:04 24    exercise supplemental jurisdiction over the claims under Indian

11:26:05 25    law.

11:26:05  1            MR. HOWARD:  Correct.

11:26:10  2            We pointed out, Your Honor, that there were only

11:26:12  3    four circumstances for a court to decline to exercise

11:26:15  4    supplemental jurisdiction -- clearly not present here since the

11:26:18  5    federal claims have been dismissed.  The state claims

11:26:22  6    predominate under exceptional circumstances.

11:26:26  7            One is complexity but it's the complexity of the

11:26:29  8    issues at law, not the complexity of the case.  And here, for

11:26:34  9    example, if it was just Mississippi law applying breach of

11:26:37 10    contract or torts, there would be no complexity.  India law

11:26:41 11    doesn't change that because the elements are almost identical.

11:26:48 12            THE COURT:  Say that again, what you say it's

11:26:49 13    complexity of --

11:26:51 14            MR. HOWARD:  Under the circumstances it's the

11:26:54 15    complexity of the case.

11:26:55 16            THE COURT:  I guess, in this case, whether we get into

11:26:59 17    those state law claims or not, we have all those complex

11:27:02 18    issues.

11:27:03 19            MR. HOWARD:  Correct.  They are there.  The state law

11:27:06 20    does not really change that, and they are saying, "Well, how

11:27:08 21    will you charge the jury?"  Well, *Signal* concedes if it's India

11:27:13 22    law you would charge the jury with the India law that will

11:27:16 23    provide you the information for the jury instructions.  Courts

11:27:18 24    have done it.  We've cited several cases that adjudicate

11:27:22 25    according to India law.  It's quite straightforward.  It really

**OFFICIAL TRANSCRIPT**

11:27:26  1    doesn't make it complex.

11:27:28  2           And I will point out, Your Honor, it's become

11:27:31  3    kind of the decision of the day -- Document 288, which was

11:27:35  4    Judge Zainey's decision in 2008, December -- states just this

11:27:44  5    issue is part of a motion by Mr. Burnett, which was whether he

11:27:48  6    should exercise -- in this court, in this case -- should

11:27:51  7    exercise a supplemental jurisdiction under 1367.

11:27:56  8           And he said, "Neither justice nor judicial

11:27:59  9    economy would be served by forcing the plaintiffs to fracture

11:28:03 10    their claims across multiple forums to reach the various

11:28:07 11    defendants."  It's a law of this case already that that precise

11:28:09 12    issue has been denied, and what I'm saying here is the fact

11:28:14 13    that we were actually now compelled to state which law applies

11:28:19 14    in the alternative as an exercise in response to a misguided

11:28:24 15    motion to start with that this court didn't have the authority

11:28:27 16    to adjudicate foreign claims should not now be the basis to

11:28:33 17    say, "Oh, now they've made it so complex for us, my head hurts.

11:28:37 18    We can't handle this.  You should dismiss on that basis."

11:28:40 19    There is no grounds in the 1367 to dismiss.  That issue has

11:28:44 20    been decided before.

11:28:46 21           I do want to touch on one thing that was

11:28:49 22    mentioned in their brief as well since the briefs are before

11:28:54 23    you; and that is, whether now our plaintiffs would have to come

11:28:58 24    back for a third deposition as a result of India law applying.

11:29:04 25           And we take the position that that is entirely

**OFFICIAL TRANSCRIPT**

11:29:07 1    improper.  There is no need.  It was *Signal* itself, back last

11:29:13 2    November, that first raised the suggestion that they thought

11:29:15 3    India law would apply.  All the depositions of the plaintiffs

11:29:19 4    were taken months after that; so, they had the opportunity to

11:29:23 5    ask any question, if they could think of one, that that they

11:29:28 6    would ask differently if India law applies versus U.S. law

11:29:32 7    applies, and as I said, the elements are the same.  The

11:29:32 8    questions at deposition are the same.

11:29:36 9         They have raised the same issue that they raised

11:29:38 10   during the status conference, which is, well, India law has a

11:29:41 11   different system with respect to self-incrimination.  The

11:29:46 12   privilege against self-incrimination, since certain plaintiffs

11:29:49 13   took the Fifth Amendment in response to certain questions --

11:29:53 14   although in the merits states, I think, it was only a couple of

11:29:56 15   them -- they don't have that right under India law, and that,

11:30:00 16   too, I think, is misguided.

11:30:02 17        For a witness to be asked a question under oath

11:30:04 18   in the United States where the answer might subject them to

11:30:08 19   criminal prosecution under U.S. law, they have a constitutional

11:30:11 20   right, and that doesn't matter whether the substance of the

11:30:17 21   civil -- that the civil law that apply the underlying claims is

11:30:23 22   India law or U.S.  law.  They have that right and that wouldn't

11:30:26 23   change.

11:30:26 24        If there are any questions that *Signal* could

11:30:29 25   conceive of that would be different because of the body of law,

11:30:32 1   I'm sure they could submit them in writing and get answers, but

11:30:35 2   to harass these people and make them come back to New Orleans

11:30:39 3   for a third time to give depositions on this basis would be

11:30:42 4   improper.

11:30:43 5         THE COURT:  Well, I think I said if we get to that

11:30:44 6   point in the status conference, that if that came up, that I

11:30:48 7   wanted whoever wanted to redepose the person to tell me what

11:30:52 8   the questions are and why they are different.  There has to be

11:30:56 9   some showing because I agree, we can't keep bringing these

11:31:02 10  people back.

11:31:03 11        MR. HOWARD:  I appreciate that, Your Honor.

11:31:04 12              One last thing.  It's not on the argument agenda

11:31:07 13  today.  I'm not really sure the status.  The original motion

11:31:14 14  that was filed by *Signal* in which they argued that the fact

11:31:19 15  that these state laws had to be adjudicated under foreign law

11:31:23 16  made them implausible on their face was accompanied by two

11:31:27 17  other motions.  One was on 1981 saying that we could not

11:31:33 18  recover recruiting fees.  We said that was moot because we

11:31:37 19  never asked for recruiting fees as part of our 1981 claim.

11:31:41 20              The second or the third piece of that motion was

11:31:46 21  as a matter of pleading that our Fair Labor Standards Act

11:31:51 22  claims should be dismissed, our FLSA claims.

11:31:55 23              Now, when the motion morphed into -- the *David*

11:32:06 24  plaintiffs' statements law applies, and then I neglected to say

11:32:10 25  before, I think the notion of this motion -- no pun intended

**OFFICIAL TRANSCRIPT**

11:32:14 1    there -- was to give *Signal* the opportunity to say that, okay,

11:32:17 2    once the plaintiffs say what law applies, that it's Indian law,

11:32:20 3    now you can have the opportunity to say that, well, that claim

11:32:23 4    is implausible as a matter of Indian law because they haven't

11:32:28 5    pled element X or Y.

11:32:30 6              That was the whole reason we had to do that

11:32:32 7    exercise of laying all this law out.  And they come back with a

11:32:36 8    motion and they don't make that claim.  They don't make that

11:32:38 9    contention.  They never once say, "Well, as a matter of Indian

11:32:43 10   law, they can't establish a breach of contract claim."  They

11:32:49 11   can't establish a breach of negligence claim.

11:32:52 12             They have made it now too complex for this.  The

11:32:55 13   head hurts.  The Court doesn't have the capacity.  You should

11:32:57 14   dismiss it for that reason.  They have not said anywhere in

11:33:00 15   their papers that any of our pleadings are inadequate as a

11:33:02 16   matter of Indian law or any other body of law.

11:33:05 17             So -- but in that briefing that occurred after

11:33:10 18   our fifth amended complaint was filed, there was no mention of

11:33:14 19   the FLSA claim.  I'm concerned, though, that it's still

11:33:19 20   technically on the books, so to speak, and before you for

11:33:23 21   decision.

11:33:23 22             Now, we responded in the briefing to point out

11:33:26 23   why we thought that as a matter of pleading that their motion

11:33:30 24   was meritless because it's based entirely on the *Decatur Hotels*

11:33:38 25   Fifth Circuit decision.  That *Decatur Hotels* decision had some

**OFFICIAL TRANSCRIPT**

11:33:41  1  specific factual circumstances and specific exceptions.

11:33:46  2          Just to step back to what *Decatur Hotels* said,

11:33:49  3  the Fifth Circuit said that under FLSA you cannot collect

11:33:53  4  recruiting fees, and we have this FLSA claim for recruiting

11:33:58  5  fees.

11:33:58  6          And in the *Decatur Hotels* case, there was no

11:34:03  7  mandated use of the recruiters who were charging the fees, and

11:34:07  8  both the employer and the recruiter were sharing the fees; so,

11:34:12  9  it was kind of a kickback scheme analysis that was done by the

11:34:16 10  Fifth Circuit.

11:34:17 11          And there was what was called the *Brickman*

11:34:21 12  *exception* so that if you have a situation like our case where

11:34:25 13  our plaintiffs were required to use the recruiters hired by

11:34:30 14  *Signal* and whom we paid the money and where all of that money

11:34:36 15  went entirely into the recruiters' pockets, *Decatur Hotels*

11:34:41 16  doesn't apply.  So we think because of those factual

11:34:43 17  allegations as a matter of pleading it's clearly subject to

11:34:46 18  dismissal.

11:34:47 19      THE COURT:  But you're not asking for attorney fees

11:34:49 20  anyway.

11:34:50 21      MR. HOWARD:  Not under 1981 but under FSLA we are.

11:34:55 22  There are some other fees we're asking for there, but the

11:34:58 23  recruiting fees are the big chunk.

11:35:00 24          The concern we have now, is, and we've raised

11:35:03 25  this with the Court before, that it's a very unusual dynamic we

**OFFICIAL TRANSCRIPT**

11:35:09  1    have in this case, where the *David* case is not just the 12

11:35:14  2    individual plaintiffs but numerous workers who filed consents

11:35:18  3    to sue under the Fair Labor Standards Act.

11:35:21  4           We had a conference with Your Honor months ago

11:35:24  5    last fall in which we raised this issue.  We raised the concern

11:35:29  6    and said that, you know, what we would ideally like to do now

11:35:32  7    that many of those individuals have filed their own individual

11:35:35  8    claims represented by the plaintiff of the counsel here today,

11:35:39  9    is kind of take the FLSA claims, their consent to sue, out of

11:35:46 10    *David* and marry them back up with the claims they brought in

11:35:50 11    the other cases.

11:35:51 12           The only concern about that is technically if you

11:35:53 13    take them out of *David*, there is an argument that they would

11:35:55 14    lose the benefit of the tolling that they've had; so, we

11:35:58 15    thought the ideal scenario would be for Your Honor to say, "You

11:36:03 16    know what, they are tolled.  This is efficiency.  This makes

11:36:06 17    sense.  I don't want to deal with these FLSA claims here if

11:36:10 18    they are being dealt with all of the other claims, the federal

11:36:12 19    and state claims in other cases."  But you understandably said

11:36:16 20    that you didn't feel that you had the authority to tell judges

11:36:18 21    in other cases to accept tolling.  That would be their

11:36:22 22    decision.

11:36:23 23           Well, now the Mississippi cases have been

11:36:26 24    transferred back and consolidated to you.  You're kind of that

11:36:29 25    other judge for the Mississippi cases, but we still have the

**OFFICIAL TRANSCRIPT**

11:36:33  1    issue of the Texas cases.  There are a couple of cases still in

11:36:36  2    Texas where that problem would still exist.

11:36:39  3             THE DEPUTY CLERK:  You have three minutes.

11:36:41  4             MR. HOWARD:  There is an alternative mechanism which

11:36:43  5    was, you know, some adjudication that there would be no claims

11:36:48  6    splitting risk by having the FLSA claims handled in this case,

11:36:53  7    in the *David* case, and the other claims of those individuals

11:36:57  8    handled in their individual cases either before you on a

11:37:04  9    consolidated basis or in Texas.

11:37:07 10             It's a complex issue.  In one of our conferences

11:37:11 11    *Signal* even said that, you know, they concede that -- conceding

11:37:15 12    there is no claims splitting issue, I think that would require

11:37:17 13    some kind of stipulation.  I've reached out to counsel over the

11:37:20 14    last few weeks but got no response, of the idea of that

11:37:25 15    stipulation.

11:37:25 16             What I'm asking of the Court, though, is, you

11:37:29 17    know, our view under the law is that we would win this motion

11:37:32 18    on the FLSA claim because we have adequately alleged facts that

11:37:38 19    came out of the *Decatur Hotels* decision but within the

11:37:43 20    *Decatur Hotels* exception, that we think that that FLSA issue as

11:37:48 21    a matter of law should be dealt on a summary judgment issue.

11:37:51 22             Let's brief it on the facts of this case and go

11:37:53 23    up to the Fifth Circuit and have them decide, yes, you are

11:37:57 24    under *Decatur Hotels* or, no, you're not; you're within the

11:38:01 25    exception.

                              **OFFICIAL TRANSCRIPT**

11:38:01  1          The one thing we are understandably concerned

11:38:05  2   about is having an adjudication against us on a motion on a

11:38:08  3   pleading before this potential claims splitting or alternative

11:38:13  4   tolling issue has been parsed out because, you know, we don't

11:38:19  5   want *Signal* to come in and argue, "Oh, look, we won our motion

11:38:23  6   to dismiss on the FLSA claims.  You guys in Texas and

11:38:28  7   Mississippi, you're out of luck because it's claims splitting,

11:38:33  8   and you can't go forward with your claims.

11:38:35  9          So we ask Your Honor if you're giving any thought

11:38:38  10  to entertaining that motion on the merit as opposed to

11:38:43  11  referring into a summary judgment kind of pleading, that we be

11:38:46  12  given the opportunity to be heard in trying to work it out with

11:38:49  13  the other cases before that happens.

11:38:50  14          THE COURT:  All right.  I understand.

11:38:53  15          MR. HOWARD:  Thank you, Your Honor.

11:38:54  16          THE COURT:  Mr. Weinberger, do you want to respond?

11:39:00  17  Maybe it would be simpler for all of us if you separate your

11:39:04  18  arguments.

11:39:04  19          MR. WEINBERGER:  Yeah, I have a lot to say obviously.

11:39:07  20          Let's start with the FLSA stuff.  When I briefed

11:39:11  21  that issue in response to their brief, the reply memoranda,

11:39:14  22  what I said was, actually, that he and I have argument over

11:39:17  23  what *Decatur* says, Judge.  He thinks it's limited to its facts.

11:39:21  24  I said, "No, it's not.  Somebody has to interpret *Decatur*."

11:39:24  25  It's very simple.

**OFFICIAL TRANSCRIPT**

11:39:25 1          Let me get next to the FLSA issue.  Your Honor,

11:39:28 2  he's presented them incorrectly.  We know exactly what we're

11:39:32 3  doing with regard to the FLSA stuff.  Those people came here.

11:39:36 4  They filed consents to sue here.  They are here.  They are

11:39:40 5  already here.  They are not going anywhere.

11:39:41 6          They are only going to go someplace if you

11:39:45 7  reverse yourself and change your idea about the motion that

11:39:47 8  they filed months ago, to send those FLSA claims somewhere

11:39:55 9  else.  They want you to reverse the first filed rule and send

11:39:58 10 cases that are here elsewhere.

11:39:59 11         Mr. Howard didn't talk to you about the fact that

11:40:02 12 their new complaint that's just a couple of weeks old, I

11:40:05 13 believe Mr. Howard will correct me if I'm wrong, continues to

11:40:09 14 say, "We want you to create a collective action to hold all

11:40:14 15 those FLSA claims."  Is that not right, Mr. Howard?

11:40:19 16         MR. HOWARD:  Would you like an answer to that?

11:40:20 17         MR. WEINBERGER:  Yes, I would.

11:40:21 18         THE COURT:  No.

11:40:21 19         MR. WEINBERGER:  Sorry.

11:40:22 20         THE COURT:  You're going to talk to me.

11:40:23 21         MR. WEINBERGER:  Sorry, Your Honor.  I believe that's

11:40:24 22 what they said they want, so there is no problem.  Those people

11:40:28 23 are here.  They've always been here; so, that's not an issue.

11:40:31 24         Now, Your Honor, I never, ever, ever said to any

11:40:39 25 judge anywhere that judges lacked power to try supplemental

**OFFICIAL TRANSCRIPT**

11:40:46 1   claims.  Never.  My argument was always --

11:40:51 2         THE COURT:  Let me be sure.  I want to make sure I get

11:40:57 3   answers to the questions, and then if you have anything else to

11:40:59 4   say, you can.

11:41:00 5         MR. WEINBERGER:  Absolutely, Your Honor.

11:41:02 6         THE COURT:  Does *Signal* agree that these claims are

11:41:10 7   under, breach of contract or fraud, that those claims should be

11:41:15 8   claims under Indian law?

11:41:16 9         MR. WEINBERGER:  We don't know.  They've just been

11:41:19 10  raised.  Your Honor, those claims have just been made.

11:41:23 11  Mr. Howard says I've known about Indian law forever.  I should

11:41:28 12  have questioned witnesses about that.

11:41:29 13         Your Honor, well, 15(b)(1) of the Federal Rules

11:41:33 14  of Civil Procedure says that I have a right to take the

11:41:37 15  position that an issue isn't in a lawsuit until the plaintiff

11:41:40 16  puts it in it.  These cases have never involved Indian law.  No

11:41:45 17  one ever pled Indian law before.

11:41:48 18         Regarding the Fifth Amendment argument that he

11:41:51 19  makes, there is no issue because these people are in the

11:41:54 20  United States, and they can invoke the Fifth Amendment.  Do you

11:41:59 21  know what he's not talking to you about?  He's not talking to

11:42:02 22  you about *Erie*.

11:42:02 23         THE COURT:  Don't I remember that *Signal* said that,

11:42:07 24  well, these claims are not -- because they are not made under

11:42:11 25  any state's law -- any state of the United States law, they are

11:42:15  1   not plausible?

11:42:17  2        MR. WEINBERGER:  No, Your Honor, what we said was these

11:42:20  3   people pleaded that their common law claims are based on state

11:42:25  4   law.  They don't link them to any particular state, but they do

11:42:30  5   say they are based on state law.

11:42:32  6        We said that if you look at these facts, these

11:42:37  7   overwhelmingly foreign facts, we, *Signal*, argue that the

11:42:42  8   Supreme Court of each of these states -- Mississippi, Texas,

11:42:46  9   for example -- would say, "We don't have an interest in

11:42:50 10   applying our law to these claims."

11:42:52 11        And do you know why we don't?  We don't because

11:42:57 12   the gist of what he's saying is that -- and Judge Zainey

11:43:04 13   actually captured this point in the class certification

11:43:07 14   opinion -- he said that when somebody talked to one of those

11:43:13 15   plaintiffs in India months before they arrived in the

11:43:17 16   United States, those interactions, those transactions,

11:43:22 17   Your Honor, were governed in India by Texas law.

11:43:27 18        THE COURT:  So are you -- since you're saying all these

11:43:31 19   things happened in India, so it would be Indian law, which is

11:43:35 20   what the plaintiffs also believe, that these claims for breach

11:43:41 21   of contract and fraud should be under Indian law, and that's

11:43:43 22   what I hear you saying.

11:43:46 23        He said it's not Mississippi, for example, the

11:43:49 24   first five, because these things didn't happen in Mississippi,

11:43:52 25   and the only other choice could be Indian law.

11:43:57 1            MR. WEINBERGER:  Right.  But, but Your Honor, Indian

11:44:04 2       law was never pled before.

11:44:05 3            THE COURT:  Well, but it has been now, so --

11:44:07 4            MR. WEINBERGER:  For the very first time.

11:44:09 5            THE COURT:  My question to you, though, isn't that what

11:44:14 6       you have argued before, that it should be the law of India?

11:44:17 7            MR. WEINBERGER:  No.  No.  It's not what I've argued.

11:44:19 8       What I've argued is that the claims that were pled were not

11:44:25 9       plausible based on the law that they were essentially saying

11:44:29 10      they were based on.

11:44:30 11           THE COURT:  Okay.  All right.  So *Signal* is not

11:44:33 12      prepared at this point to agree that the law of India applies

11:44:37 13      to those claims.  How do you suggest that that decision be

11:44:43 14      made?

11:44:43 15           MR. WEINBERGER:  Well --

11:44:44 16           THE COURT:  Wouldn't it be by summary judgment, partial

11:44:48 17      summary judgment?

11:44:49 18           MR. WEINBERGER:  Yes, but there is a problem there,

11:44:53 19      Your Honor, because Your Honor is so loathe to allow me to

11:44:57 20      depose these people again on the basis of an entirely new

11:45:01 21      complaint.

11:45:02 22                Now, one of the things that I did in the brief --

11:45:04 23           THE COURT:  Well, you know, if I decided it was the law

11:45:07 24      of India and you could point out to me a question or series of

11:45:12 25      questions that you didn't get to ask, then I would find a way

**OFFICIAL TRANSCRIPT**

11:45:15 1     for you to get those answers.

11:45:17 2         MR. WEINBERGER:  I did.  I did it in a brief, Judge.

11:45:19 3     What I pointed out --

11:45:20 4         THE COURT:  But my point is procedurally the way we

11:45:23 5     would handle this is that there would be a motion for partial

11:45:32 6     summary judgment on the question of law.  I would decide.  If I

11:45:35 7     decided it's the law of India and then you would file a motion

11:45:40 8     for leave of court to redepose the plaintiff, and you would

11:45:44 9     say, "Judge, this is why, because now it's the law of India

11:45:47 10    applies, I would have wanted to ask these questions."

11:45:52 11        MR. WEINBERGER:  Yeah.  Your Honor, you see, the thing

11:45:54 12    is I would say that's backward.  I would say that I need to

11:45:59 13    do -- they said it.  They said that this is all fact sensitive

11:46:03 14    stuff.

11:46:04 15        THE COURT:  Look, these people have been deposed twice

11:46:06 16    for many hours, and I'm not -- I believe that everyone knows

11:46:11 17    enough about the facts, about what happened to know whether

11:46:15 18    it's the law of Mississippi or Texas or India.  So accept that

11:46:23 19    that we're not redeposing these people before I decide what law

11:46:26 20    applies.  But if I -- after I decide, if you think that you

11:46:30 21    need to ask some more questions, then you'll file a motion for

11:46:35 22    leave of court and we'll deal with it.

11:46:37 23        MR. WEINBERGER:  All right, Your Honor.  Because I

11:46:39 24    pointed out that there is something in the pleading of Indian

11:46:43 25    law that is different from what's pled about Mississippi and

**OFFICIAL TRANSCRIPT**

| | | |
|---|---|---|
| 11:46:49 | 1 | Texas law that is an example of something that we've never |
| 11:46:52 | 2 | gotten to talk to these people about.  And then there is that |
| 11:46:56 | 3 | Fifth Amendment issue which implicates, and I would at least, |
| 11:47:00 | 4 | you know -- |
| 11:47:00 | 5 | THE COURT:  You would ask for leave of court to address |
| 11:47:04 | 6 | that issue.  If they apply the Fifth Amendment and you think |
| 11:47:07 | 7 | they shouldn't have been able to under Indian law -- |
| 11:47:11 | 8 | MR. WEINBERGER:  [Speaking simultaneously] So I could |
| 11:47:12 | 9 | brief that. |
| 11:47:13 | 10 | THE COURT:  Right.  I'm perfectly willing to listen to |
| 11:47:16 | 11 | those arguments because I'm not trying to be unfair to your |
| 11:47:20 | 12 | client. |
| 11:47:20 | 13 | MR. WEINBERGER:  No, of course. |
| 11:47:22 | 14 | THE COURT:  But I guess as far as the motion that's |
| 11:47:26 | 15 | pending right now -- |
| 11:47:28 | 16 | MR. WEINBERGER:  Can I talk about that for one second? |
| 11:47:30 | 17 | THE COURT:  Let me see if there is something else.  So |
| 11:47:33 | 18 | if we -- do you agree that the issue is, if we get past the |
| 11:47:40 | 19 | which law applies, we just assume for sake of argument that |
| 11:47:44 | 20 | it's Indian law, that the issue that I would also have to |
| 11:47:49 | 21 | decide is should the Court exercise supplemental jurisdiction |
| 11:47:53 | 22 | over the claims under Indian law -- |
| 11:47:53 | 23 | MR. WEINBERGER:  Correct. |
| 11:47:55 | 24 | THE COURT:  -- and is it your position that if I were |
| 11:47:57 | 25 | going to defer that decision to summary judgment practice that |

**OFFICIAL TRANSCRIPT**

I would also have to defer the question of whether I should exercise supplemental jurisdiction, because what you argument is, if it's Indian law, that's complex, and so you need to know, Judge, which law it's going to be before you make that decision?

MR. WEINBERGER:  My response to that, Your Honor, is in a couple of parts.  Mr. Howard has talked about fact that there are a lot of pendant state law claims in the *David* complaint that we've never moved about.  The reason for that, Your Honor, is that they concern facts that occurred in the United States.  Those are not in issue.  I want to make that point.  There is some pendant state law claims no one is worried about.  That is point one.

Point two:  We're focused now on fraud, negligence, and breach of contract.  In their complaint what they want is all of those claims tried on the basis of Indian law.

What I've suggested to Your Honor is simply that Your Honor has the discretion under 1367(c)(1) to look at the issues that flow from applying that law in this court and say, "You know what, it's sort of complicated enough.  I don't really want to do that," and I've suggested a couple of two or three reasons why you should think about that.

One is the incongruity of having individuals who were employed in Mississippi in the Mississippi shipyard, the

11:49:35 1  incongruity of having their exact same claims presented under

11:49:41 2  different legal systems.  That's one thing.

11:49:44 3           Another thing is --

11:49:44 4       THE COURT:  But who are you talking about?  For

11:49:46 5  example, the first *David* case, all of the plaintiffs worked in

11:49:53 6  Mississippi.

11:49:53 7       MR. WEINBERGER:  Correct.

11:49:54 8       THE COURT:  But the plaintiffs say that all of their

11:49:58 9  nonfederal statutory claims are under Indian law.

11:50:02 10      MR. WEINBERGER:  Or at least somewhat.  Maybe not all

11:50:05 11 of them because there are some people that want to argue about

11:50:08 12 intentional infliction of emotional distress.

11:50:11 13      THE COURT:  That's the detention -- the detaining

11:50:16 14 people.  All right.  Yes.  I remember that.

11:50:17 15      MR. WEINBERGER:  Put that aside, Judge.

11:50:19 16      THE COURT:  We know that's under Mississippi law.

11:50:21 17      MR. WEINBERGER:  No issue there.  My beef -- my beef is

11:50:25 18 with claims that have facts that occurred in India

11:50:31 19 overwhelmingly.

11:50:34 20      THE COURT:  You know, the question I asked Mr. Howard

11:50:38 21 was, "As far as complexity, don't we have all of those issues

11:50:43 22 anyway trying to rest the case?"  We going to have to get into

11:50:47 23 all of these complex relationships and actions.

11:50:51 24           And so I guess I can see when you have a main

11:50:56 25 claim and it's this set of facts and this body of law, and

**OFFICIAL TRANSCRIPT**

11:51:00  1    someone wants to bring in a supplemental jurisdiction over

11:51:05  2    something that introduces this whole set of new complex issues,

11:51:11  3    and the Court might say, "No, I'm not going to do that.  I'm

11:51:15  4    going to stick with this main claim."  But in this case, I

11:51:19  5    think I'm going to have to get into everything to decide what

11:51:23  6    clearly is going to be decided in this forum --

11:51:26  7          MR. WEINBERGER:  [Speaking simultaneously] And I don't

11:51:27  8    deny that.  Your Honor, I want you to understand, we're on the

11:51:30  9    same page about the fact that those facts are the same facts.

11:51:36 10    But let me at least expose you, Your Honor, to a complex

11:51:43 11    question that arises under Indian law that could, could

11:51:49 12    motivate you to say, "Not going to do it."

11:51:52 13          Here it is:  Mr. Howard said, "When I walk up to

11:51:57 14    a guy and I say, 'Isn't it true that you lied to consular

11:52:02 15    officials in India so that you could come here?'"  He goes, "I

11:52:07 16    invoke the Fifth Amendment.  I don't have to answer that."

11:52:10 17          According to Mr. Howard, that's a perfectly

11:52:13 18    appropriate thing for that guy to do, and you should say,

11:52:16 19    "That's absolutely right.  Fifth Amendment applies.  You don't

11:52:20 20    have to incriminate yourself."  Your Honor, my argument is,

11:52:25 21    Wrong, wrong, wrong, wrong, wrong.

11:52:29 22          Just as *Erie* would cause you to say, if you were

11:52:37 23    arguing about state law, "Hey, wait a minute, wait a minute.

11:52:42 24    Mr. Weinberger asked that witness to answer a question that's

11:52:46 25    going to determine whether he gets to recover as a matter of

11:52:49  1    law.  He lied about that.  He can't recover.  He has to answer

11:52:54  2    that question because it's case determinative."  That's what

11:52:59  3    *Erie* does.

11:53:00  4                    He'll say, "No, no, no.  You know the way we do

11:53:03  5    that?  The jury gets to think about that and infer that he

11:53:10  6    would have given the bad answers."

11:53:12  7            THE COURT:  Mr. Weinberger, I need to take a break.  I

11:53:16  8    need to talk to my clerk for a second, and then what we need to

11:53:19  9    do is let him -- let's see, who else was going to argue?

11:53:28 10    Mr. Raptis, do you have a response to that?

11:53:31 11            MR. CERNIGLIA:  I have just very briefly.

11:53:33 12            THE COURT:  Okay.  Hold on and we'll let you do that.

11:53:37 13    Then we're going to let, is it Mr. Raptis, who is going to

11:53:39 14    argue and then we'll let you respond again, Mr. Weinberger.

11:53:45 15            MR. RAPTIS:  Thank you, Your Honor.  Could I be allowed

11:53:48 16    to make two points to you?

11:53:49 17            THE COURT:  Yes, I'll let you reply.  You can argue

11:53:51 18    first and then Mr. Howard.  All right.  So, Mr. Cerniglia

11:54:15 19    you're going to make two points briefly.

11:54:17 20            MR. CERNIGLIA:  Anyway, a couple of things.  I am not

11:54:24 21    at this stage able to say that India or Mississippi law applies

11:54:30 22    to a breach of contract claims.  And the only reason for that

11:54:34 23    is that the contracts that have been introduced have a

11:54:40 24    provision that they would be governed by either Indian law or

11:54:46 25    Mississippi law, if applicable.

**OFFICIAL TRANSCRIPT**

11:54:51 1          The contracts were entered into in India, but I

11:54:56 2    believe they had performance in Mississippi; so, I don't know

11:55:02 3    that that is necessarily Indian law.  Maybe it's both.  I'm not

11:55:07 4    sure; so, I'm not taking any position on that whatsoever.

11:55:12 5          I'm only taking a position that a lot of

11:55:17 6    statements -- we've crossed this bridge before on the negligent

11:55:20 7    misrepresentation on the law of the case.  My understanding of

11:55:23 8    the law of the case is the district court judge can always

11:55:27 9    change its mind.  It's after the appellate court has ruled one

11:55:32 10   way or the other that the law of the case comes back down.

11:55:35 11         Be that as it may, I'm only saying that based on

11:55:38 12   the fourth and fifth amended complaint for negligent

11:55:43 13   misrepresentation, tortious conduct, the actions taken, and

11:55:48 14   victims were all Indian, and I think that state law cannot

11:55:52 15   apply to negligent misrepresentation.

11:55:56 16         THE COURT:  Mr. Howard.

11:56:01 17         MR. HOWARD:  Thank you, Your Honor.

11:56:02 18         First of all, with respect to the fifth amended

11:56:05 19   complaint, including the FLSA claims on behalf of all the

11:56:09 20   parties that consent to sue, of course it does because,

11:56:12 21   otherwise, we would have been voluntarily giving up those

11:56:15 22   claims.  The fifth amended complaint superseded all the prior

11:56:20 23   ones.  We had to preserve those claims.  That doesn't mean

11:56:23 24   we're not interested in resolving the issues as I described it.

11:56:29 25         The counsel for both *Signal* now and for

**OFFICIAL TRANSCRIPT**

11:56:34  1    Mr. Burnett say they don't know which law applies.  Well, the

11:56:42  2    factual allegations of the complaint haven't changed.  They've

11:56:45  3    stayed much the same.

11:56:46  4         What we went through the excesses to do, because

11:56:49  5    of the original motion that said that foreign law would render

11:56:53  6    these implausible, is to state our best assessment based on the

11:56:59  7    factual record of which law would apply under the Louisiana

11:57:03  8    choice of law analysis.

11:57:05  9         That makes it different than the *Achari*

11:57:09 10    plaintiffs and the other who said Mississippi law applied

11:57:11 11    because those cases were filed in Mississippi.  So you have the

11:57:15 12    Mississippi choice of law analysis, and that's why you could

11:57:17 13    have a distinction when their cases go to trial that they would

11:57:22 14    be Mississippi law; whereas, ours would end up being Indian

11:57:26 15    law.

11:57:26 16         I want to make another thing absolutely clear.

11:57:29 17    Mr. Weinberger repeatedly said today, "What we want.  What we

11:57:34 18    plaintiffs want."  What we want is the appropriate law to

11:57:37 19    apply.  If the Court determines that is Mississippi law for our

11:57:41 20    guys, we're perfectly fine with that.  There is no meaningful

11:57:46 21    distinction between Mississippi law and Indian law in these

11:57:49 22    claims.

11:57:49 23         We were asked and we responded to the Court's

11:57:53 24    request that we give our best choice of law analysis in a

11:57:57 25    vacuum and put that into a complaint, which is what we did.

**OFFICIAL TRANSCRIPT**

11:58:00 1   And we have a hierarchy that, based on our analysis, we believe

11:58:05 2   it would be Indian law, not that we want it to be Indian law;

11:58:08 3   secondarily, if it's not, it would be Mississippi as an

11:58:12 4   alternative, or for the Texas guys Texas.

11:58:15 5         But if *Signal* were to come and say, "You know,

11:58:17 6   we've looked at it, we think it's Mississippi law," and that

11:58:21 7   makes it cleaner and better and easier, we'll be fine.

11:58:25 8         THE COURT:  Well, the reason we got to this issue was

11:58:28 9   we were talking about a 12(b)(6) motion, you have to argue that

11:58:34 10  the claim is implausible under some law, and I said, "Maybe

11:58:38 11  they need to be able to know which law it is."  Well, I assume

11:58:42 12  now they are arguing that it's implausible under Indian or

11:58:47 13  Mississippi law.

11:58:49 14        MR. HOWARD:  They are not arguing that.  They have not

11:58:51 15  made an argument in their brief that under either body of law

11:58:54 16  there is some missing element.

11:58:58 17        THE COURT:  I guess that's what I expected would

11:59:00 18  happen.

11:59:00 19        MR. HOWARD:  Well, I think that's what we all expected

11:59:03 20  the exercise was to give them the opportunity to do.  Quite

11:59:07 21  frankly, I didn't expect that to actually be their argument

11:59:10 22  because I knew our pleadings were adequately pled under either

11:59:14 23  body of law, as they continue to be.

11:59:16 24        So, yes, now we move to the next stage, and I

11:59:19 25  don't know if it's a matter of the summary judgment as you

**OFFICIAL TRANSCRIPT**

11:59:21 1   envision it or some other kind of briefing.  Just have the side

11:59:27 2   brief what they think their applicable body of law is, which is

11:59:31 3   your particular choice of law process, and it may be that the

11:59:33 4   parties are in agreement, because, again, I think it's a

11:59:37 5   distinction without a difference.

11:59:38 6          When you look at these, they are simple claims.

11:59:40 7   They are simple tort-based claims, simple breach of contract

11:59:44 8   claims with the elements, and we've given you the case law in

11:59:47 9   our briefs, where Indian law elements are identical to U.S. or

11:59:54 10  Mississippi law.  I don't think at the end of the day that's

11:59:56 11  going to matter.

11:59:56 12         I wanted to clarify, though, this isn't a matter

11:59:59 13  of what we want.  We're not trying to make this case more

12:00:03 14  complex for you.  I think the state law claims are the simple

12:00:08 15  tail and the dog, and we decide which law applies, the elements

12:00:11 16  are elements, you charge the jury with those elements, and they

12:00:14 17  make the decision.

12:00:16 18         THE COURT:  Okay.

12:00:17 19         MR. HOWARD:  Thank you, Your Honor.

12:00:18 20         THE COURT:  Let's hear from Mr. Raptis.

12:00:23 21         MR. RAPTIS:  Good morning, Your Honor.  Stephen Raptis

12:00:26 22  for the *Devassy* plaintiffs, but I'll be speaking on behalf of

12:00:30 23  all of the *Achari* plaintiffs this morning.

12:00:33 24         And, Your Honor, we would adopt Mr. Allan's

12:00:37 25  arguments with the vast majority of everything that he said

**OFFICIAL TRANSCRIPT**

12:00:40  1   this morning.  So what I'm going to try to do is keep my

12:00:43  2   comments brief because, frankly, there is so much overlap

12:00:46  3   between these motions, you don't want to hear the same argument

12:00:50  4   twice, Your Honor.  I don't think that's useful to you.

12:00:52  5          So what I'm going to try to do is hit a couple of

12:00:56  6   points that maybe weren't stressed earlier and to talk about

12:00:59  7   where there are a couple of differences here between the *Achari*

12:01:04  8   plaintiffs and the *David* plaintiffs, sort where we think that

12:01:07  9   changes the analysis a little bit.

12:01:09 10          And we would agree with Mr. Howard that the

12:01:14 11   argument that we have been asked to respond to has moved

12:01:17 12   around.  It's been a moving target.  It's been challenging in

12:01:20 13   that respect.  So what I'm going to try to do today is address

12:01:25 14   them both to the extent that I can and do it fairly quickly so

12:01:30 15   that we can all have a, hopefully, a lunch break.

12:01:33 16          As to the argument that we heard this morning

12:01:38 17   that applies, arguably, to *David*, where Mississippi law may

12:01:45 18   apply, Texas law may apply, or Indian law may apply with

12:01:49 19   respect to the same plaintiffs, I would point out that with

12:01:54 20   respect to *Achari* that just doesn't apply.  We only have

12:01:58 21   Mississippi plaintiffs, Your Honor, and it's been our position

12:02:01 22   all along that Mississippi law applies.

12:02:04 23          And the premise, the factual premise of the

12:02:10 24   initial brief that was filed by *Signal* is the dependent state

12:02:18 25   law claims originate overwhelmingly in foreign facts, and for

**OFFICIAL TRANSCRIPT**

12:02:22  1    all the reasons that are in our briefs, Your Honor -- I won't

12:02:25  2    go through all of them here -- that's just -- that's just wrong

12:02:30  3    when you look at the facts as we've pled them.

12:02:35  4             In fact, the opposite is true.  I mean, even a

12:02:38  5    cursory review of the various *Achari* complaints, you'll see

12:02:43  6    that those facts are really overwhelmingly based on events that

12:02:49  7    occurred in the U.S.

12:02:52  8             But even if that weren't the case, Your Honor,

12:02:55  9    and even if we did this choice of law analysis that I think we

12:03:00  10   all agree needs to be done -- although we would say, you know,

12:03:04  11   it will be done down the road in the briefing that you and

12:03:08  12   Mr. Howard were just discussing -- but even if we could make a

12:03:11  13   determination today that the facts really pointed toward India,

12:03:16  14   well, that just means that Indian law applies to these claims.

12:03:19  15   It doesn't mean that you throw out all the claims under

12:03:23  16   12(b)(6).

12:03:24  17            There are just no cases anywhere that say that

12:03:28  18   that's the analysis that the Court does, because it's a little

12:03:32  19   bit more complicated that Indian law applies.  First, we would

12:03:35  20   say that it's not more complicated.  We agree completely with

12:03:40  21   *David* on that, and we've cited cases in our brief that say

12:03:43  22   exactly that, where courts have looked at Indian law and said,

12:03:47  23   "Look, there are really no differences here."  We have, you

12:03:49  24   know, a body of law that has its origins, essentially, in the

12:03:55  25   same place and that these claims at the end of the day really

mirror each other largely.

We would also note, too, that federal courts and state courts apply foreign law all the time.  That's nothing unusual, you know.  It happens all the time and we've cited those cases in our brief as well.

We've also cited a number of cases, including in the Fifth Circuit, where federal courts have applied the law of other jurisdictions.  And if you look at document number 222 on the docket at page 4 and 5, that's where we cite those cases in our brief.

We would also note that U.S. federal courts exercise pendant jurisdiction over claims that are controlled by foreign law all the time.  Federal courts do that all the time, and there you could look at the same document on page 6 for that -- for the cases cited there.

And so what we think, Your Honor, admittedly, we respectfully submit, Your Honor, what we think *Signal* is trying to do here is to tell the Court, "You really should refrain from doing anything here because Indian law is going to be so complicated.  It's doesn't look like U.S. law, and you're just going to spend all your time trying to sort all these complexities of Indian law out."  But they haven't told you what's different about Indian law, and we've told you what's the same about Indian law.  And other courts have been in the same spot you've been in, Your Honor, and they've applied

12:05:48  1    Indian law.  We've cited those cases to you with, frankly, no

12:05:52  2    problem.

12:05:54  3              So for that reason as well, even putting aside

12:05:58  4    the fact in *Achari* we don't have these complications of

12:06:04  5    additional state law that may apply, that's just not a factor

12:06:07  6    here, Your Honor.

12:06:07  7         THE COURT:  How do you see facts being different in

12:06:11  8    your case so that it's clear that Mississippi law applies, as

12:06:17  9    opposed to the *David* case where the plaintiffs think that

12:06:21 10    Indian law applies?  These are all people who worked at the

12:06:24 11    facility in Mississippi.

12:06:31 12         MR. RAPTIS:  Your Honor, I have not studied how the

12:06:36 13    *David* plaintiffs came to the conclusion that Indian law applies

12:06:38 14    in their claims, and I could let Mr. Howard speak to that, but

12:06:40 15    I can tell from you that from our perspective, we have done the

12:06:44 16    analysis looking at these claims, all of them, and we came to

12:06:47 17    the conclusion that Mississippi law applies, but their

12:06:49 18    plaintiffs may have different facts, and I really don't want to

12:06:52 19    opine on that, Your Honor.

12:06:53 20         THE COURT:  Is it because you applied the Mississippi

12:06:58 21    choice of law analysis and Mr. Howard applied the Louisiana

12:07:02 22    choice of law analysis?

12:07:05 23         MR. RAPTIS:  I think that's correct, Your Honor; but,

12:07:07 24    again, I'll let him speak to his plaintiffs.

12:07:08 25         THE COURT:  Okay.

**OFFICIAL TRANSCRIPT**

12:07:11  1        MR. RAPTIS:  So that's really largely what we had to

12:07:14  2   say, Your Honor, unless you have any other questions.

12:07:16  3        THE COURT:  I'll let you reserve some time in case you

12:07:19  4   wanted to respond to Mr. Weinberger.

12:07:22  5        MR. RAPTIS:  Thank you, Your Honor.

12:07:23  6        THE COURT:  Go ahead.

12:07:24  7        MR. WEINBERGER:  Thank you, Your Honor.

12:07:25  8             Your Honor, at the very open of page three of our

12:07:29  9   latest brief we say, "What we're doing in here is we're moving

12:07:34 10   to dismiss on the basis of Rule 12(b)(6) the alternative

12:07:39 11   Mississippi and Texas law."  We said in our brief that we we're

12:07:43 12   not talking about Indian law right now.  We just got that.

12:07:45 13        THE COURT:  Let me ask you a question.

12:07:47 14        MR. WEINBERGER:  Absolutely, Judge.  Ask way.

12:07:50 15        THE COURT:  Does *Signal* agree that Mississippi law

12:07:52 16   applies in the *Achari* cases?

12:07:56 17        MR. WEINBERGER:  No, Your Honor.  We've argued that it

12:08:00 18   doesn't.  That's --

12:08:01 19        THE COURT:  But you don't know.  You just don't know

12:08:04 20   yet.

12:08:04 21        MR. WEINBERGER:  Your Honor, I want to frame this

12:08:06 22   response as perfectly as I can.  What we said a lot is that we

12:08:13 23   argue that the *Erie* judgment that the Court needs to make is

12:08:23 24   that the Mississippi Supreme Court would say that the people

12:08:28 25   who were recruited in India and have a problem with the

**OFFICIAL TRANSCRIPT**

12:08:33 1  transactions that they engaged in in India should look at law

12:08:40 2  other than Mississippi law to resolve their issues, whatever

12:08:43 3  they are, under common law.

12:08:46 4          We haven't expressed opinions, Your Honor, about

12:08:49 5  exactly what things ought to be.  What we've instead said is

12:08:53 6  it's not this plausibly.

12:08:59 7          I want to emphasize to the Court as vehemently as

12:09:03 8  I can that one of the things that we think that *Iqbal* and

12:09:09 9  *Bell Atlantic* said over and over and over again, something that

12:09:13 10 you focus on -- you focus on, Judge Morgan -- repeatedly, which

12:09:18 11 is, in order for me to resolve a Rule 12(b)(6) motion, I need

12:09:23 12 to understand what you think your right to relief is, because I

12:09:28 13 can only measure the plausibility of your claim against the

12:09:31 14 right to relief.

12:09:32 15         But I say the same thing, Judge, and I've been

12:09:34 16 saying it for four years, or three years, which is, using

12:09:40 17 Mississippi as the benchmark, this doesn't work.  That's what I

12:09:44 18 said to the *Achari* plaintiffs.  The Mississippi Supreme Court

12:09:49 19 would say -- *Erie* drives me to think; *Claxton* drives me to say

12:09:57 20 *Erie*.  What would the Mississippi Supreme Court say?  It would

12:10:00 21 say -- I say, Judge, looking at the *Achari* plaintiffs, looking

12:10:04 22 at all of those plaintiffs that were transferred to you from

12:10:06 23 Mississippi, the Mississippi Supreme Court would say, "Those

12:10:11 24 transactions don't concern Mississippi.  They concern somebody

12:10:16 25 else," and they stop there.

**OFFICIAL TRANSCRIPT**

12:10:16  1          THE COURT:  So your argument is now, since it's not

12:10:21  2     under Mississippi law, I should grant a 12(b)(6) under the --

12:10:26  3     over those claims to the extent they are based on Mississippi

12:10:29  4     law?

12:10:31  5          MR. WEINBERGER:  Correct.

12:10:31  6          THE COURT:  It doesn't mean that the claims are

12:10:32  7     dismissed --

12:10:33  8          MR. WEINBERGER:  Correct.

12:10:33  9          THE COURT:  -- that they could still be under Indian

12:10:37 10     law.

12:10:37 11          MR. WEINBERGER:  Correct.  Go amend.

12:10:38 12          THE COURT:  Is it that you think that they haven't met

12:10:41 13     the elements of a claim for breach of contract and fraud under

12:10:46 14     Mississippi law or you just think Mississippi law doesn't

12:10:50 15     apply?  I guess --

12:10:52 16          MR. WEINBERGER:  The latter.

12:10:55 17          THE COURT:  That you don't even get to if it did apply,

12:10:58 18     would they have a claim under Louisiana --

12:10:59 19          MR. WEINBERGER:  [Speaking simultaneously] It's prior.

12:11:01 20     It's prior.  Professor Simon Eades (spelled phonetically), when

12:11:05 21     he wrote all of his *Law Review* articles and comments, he took

12:11:09 22     the extraterritoriality idea that I use all the time and when

12:11:14 23     he wrote about what he was doing when he was creating the Code

12:11:18 24     articles, he said, "I think of this as spatial.  It's a spatial

12:11:23 25     thing."  Right at the threshold.

                              **OFFICIAL TRANSCRIPT**

12:11:25  1          What I have been saying for years is Texas and

12:11:29  2     Mississippi would say, "This stuff doesn't involve us.  You're

12:11:37  3     complaining about a guy that came to India, or an Indian guy,

12:11:41  4     which is worse, who said a bunch of stuff to you that wasn't

12:11:46  5     true in India, and you're from India, why are you claiming that

12:11:49  6     Mississippi cares?"

12:11:50  7          THE COURT:  Is *Signal* making an argument now that --

12:11:54  8     are you even making the argument that the claims are not

12:11:59  9     plausible under India or Mississippi law?

12:12:03 10          MR. WEINBERGER:  I'm saying they are not plausible

12:12:05 11     under Mississippi law.  My latest motion, Judge, all based on

12:12:10 12     3543, says that you don't need to decide where the wrongful

12:12:16 13     conduct occurred because the article says you go where the

12:12:19 14     injury occurred if certain things are true and I briefed that

12:12:22 15     and I won't rehash what.

12:12:24 16          On the issue of Indian law, Judge, we just

12:12:28 17     know --

12:12:29 18          THE COURT:  What it that -- what element of Mississippi

12:12:34 19     law have they failed to allege?  What makes it not plausible?

12:12:40 20     What are the elements in Mississippi for breach of contract and

12:12:44 21     fraud that the plaintiffs in *Achari* have not pled, or *David*?

12:12:49 22          MR. WEINBERGER:  It's what they did plead.  It isn't

12:12:53 23     what they didn't plead.  It's what they did plead.

12:12:54 24          THE COURT:  Okay.  What is it that they did plead that

12:12:56 25     means they don't have a claim under Mississippi law?

**OFFICIAL TRANSCRIPT**

12:12:58  1          MR. WEINBERGER:  Hi, I'm a guy from Mumbai, and these

12:13:04  2   people came to India and spoke to me in India.  I'm an Indian

12:13:08  3   national, and they made all these false statements to me in

12:13:11  4   India.  They did all these things to me in India.

12:13:15  5          THE COURT:  Okay.  Let's just do this:  Assume that I

12:13:22  6   decide that Mississippi law applies, and you're now making the

12:13:26  7   argument that the claim should be dismissed under 12(b)(6)

12:13:30  8   because they are not plausible under Mississippi law.

12:13:33  9          MR. WEINBERGER:  Correct.

12:13:34 10          THE COURT:  What is it?  Now, I've already made the

12:13:37 11   decision I'm applying Mississippi law.  I'm just saying this as

12:13:40 12   a hypothetical.  If I've decided that --

12:13:43 13          MR. WEINBERGER:  [Speaking simultaneously] My argument

12:13:43 14   is over if you find that Mississippi law is valid.

12:13:47 15          THE COURT:  Then they have pled --

12:13:48 16          MR. WEINBERGER:  [Speaking simultaneously] They are in

12:13:49 17   court.  We're done.

12:13:50 18          THE COURT:  And on the other hand, if I decide that

12:13:54 19   Indian law applies, do you believe that the claims are not

12:13:59 20   plausible under Indian -- the law of India?

12:14:02 21          MR. WEINBERGER:  I don't know yet.

12:14:03 22          THE COURT:  Do you know what the elements are?

12:14:07 23          MR. WEINBERGER:  [Speaking simultaneously] I know one.

12:14:09 24   I know one thing that's brand new that they have never pled

12:14:13 25   before, which they presumably pled because it's a function of

**OFFICIAL TRANSCRIPT**

12:14:16  1    Indian law for them to do it.

12:14:18  2              Judge, this is footnote 16 in my brief, or

12:14:26  3    actually it's -- yes, 16, referring to paragraph 386, the fifth

12:14:39  4    amended complaint.  This is under their Indian law thing,

12:14:41  5    Judge.  Plaintiffs plead, "Defendants engaged in these acts of

12:14:49  6    deliberate deception in order to take unfair advantage of

12:14:54  7    plaintiffs and to gain from plaintiffs' loss."

12:14:57  8              Let's assume for the sake of argument, *arguendo*,

12:15:02  9    that they pled that because that's an essential element of a

12:15:07 10    fraud claim in India.  Now, you're asking me if Indian law

12:15:13 11    applies.

12:15:13 12         THE COURT:  Now, I've said if you assume that I made

12:15:16 13    that decision, does *Signal* then argue that the claim is not

12:15:23 14    plausible under Indian law because they failed to make

12:15:27 15    allegations?

12:15:27 16         MR. WEINBERGER:  Oh, I'm sorry.  If the Court concludes

12:15:31 17    that Indian law does apply, are we done?

12:15:34 18         THE COURT:  Is that -- are you still arguing that you

12:15:38 19    should prevail on a Rule 12(b)(6)?

12:15:42 20         MR. WEINBERGER:  I haven't argued -- Your Honor, I

12:15:46 21    haven't made a Rule 12(b)(6) argument with regard to Indian

12:15:49 22    law.  That's what the brief says, "We make no argument

12:15:52 23    concerning the dismissal at this time of Indian law claims."

12:15:55 24    We're just not there yet.

12:15:56 25              We are simply focusing still on the idea that

**OFFICIAL TRANSCRIPT**

12:16:00  1    these people who write a complaint, virtually the first word of

12:16:05  2    which is, "We were recruited in India," that those people think

12:16:08  3    they have state law claims to make.  That's our issue.  That's

12:16:11  4    the issue that we focused on, Judge.

12:16:18  5         THE COURT:  All right.  Is there anything else you want

12:16:19  6    to --

12:16:19  7         MR. WEINBERGER:  [Speaking simultaneously] No, Judge.

12:16:21  8              One thing, sorry.  3543.  Just to reemphasize

12:16:28  9    this point.  There seems to be some confusion about what we're

12:16:31 10    doing.  I want to be very, very clear about something, Judge.

12:16:34 11    The motion that we filed last relative to the fifth amended

12:16:38 12    complaint under Rule 12(b)(6) does move on the basis of the

12:16:43 13    Louisiana Civil Code articles relating to conn (spelled

12:16:47 14    phonetically) for the dismissal of the alternative theories of

12:16:52 15    liability for fraud, negligence and breach of contract under

12:16:55 16    Texas and Mississippi law on the ground that they are not

12:17:00 17    plausible when those claims are studied through the lens of the

12:17:04 18    Code.  Judge, we've briefed it.  I don't need to go there.

12:17:08 19              Thank you, Judge.

12:17:08 20         THE COURT:  Let me see Mr. Cerniglia before we --

12:17:12 21         MR. CERNIGLIA:  Yeah.  I think that perhaps we've got

12:17:17 22    it now in the position to address, because the fifth amended

12:17:22 23    complaint and the *Achari* complaint are very specific.  There

12:17:26 24    are causes of action under Mississippi law, causes -- and *David*

12:17:32 25    causes of action under Indian law, causes of action under Texas

law.

As to only misrepresentation -- once again, I'm not sure of contracts because of what I said before -- but on misrepresentation, it's not plausible that they have alleged, number one, because everything occurred in India.

Number two, and this I have not yet filed a motion for Indian law, but I believe that the same analogy applies.  I don't believe that if you take the factual allegations, assuming that the laws are exactly the same, that if you take the exact factual allegations, there are no specific facts of representations, under Rule 9, representations made specifically by Mr. Burnett -- not by through an interpreter, not by somebody else -- to each individual plaintiff.

Once again, they have lumped now the plaintiffs, and they have lumped plaintiffs in.  It's not part of the case -- part of these motions because it would be evidence, but in the deposition one of the witnesses, he testified, "I never talked to Mr. Burnett about any visas ever."  He wasn't there for this.  He wasn't there for that.  And that's true for many of them.  He was there for some.  He was there not for others.

The point is as to Mr. Burnett as to the named plaintiffs, throughout the complaint there are no specific allegations of what was said, when it was said, and how that constitutes a intent to defraud by taking money as opposed to a

12:19:17 1    payment of fees for services.

12:19:20 2           So that argument portion of my motion would apply

12:19:26 3    to Indian law, but I don't think they are specific enough to

12:19:29 4    establish a cause of action as opposed to conclusions.  But

12:19:35 5    each of the complaints that have specifically now said cause of

12:19:38 6    action under Mississippi law, that's not plausible because it

12:19:43 7    didn't happen.  Mississippi would not apply.  Same thing for

12:19:48 8    Louisiana, same thing for Texas.

12:19:50 9           THE COURT:  All right.  Thank you.

12:19:51 10          Mr. Raptis.

12:19:52 11          MR. RAPTIS:  Thank you, Your Honor.

12:19:56 12          So I'll just address *Signal*, Your Honor.  We just

12:19:59 13   heard from Signal's counsel.  They just conceded this is a

12:20:05 14   Rule 12(b)(6) motion and that if Mississippi applies, they said

12:20:09 15   "We're done.  We're in court."  So if Mississippi law applies,

12:20:13 16   Your Honor, there is no dispute that we're done, that their

12:20:16 17   12(b) motion fails.

12:20:18 18          Now, on Indian law they said, "Well, we haven't

12:20:22 19   analyzed Indian law."  Well, they certainly had the chance to

12:20:24 20   do that, Your Honor.  I mean, that's what a 12(b)(6) motion is

12:20:26 21   for.  They could have laid out if Mississippi law applies, here

12:20:30 22   is why they haven't pled what would meet that standard.  They

12:20:35 23   could have done that for Indian law too and they didn't,

12:20:38 24   Your Honor.  They had their chance and they didn't do it.  They

12:20:41 25   can't win.

**OFFICIAL TRANSCRIPT**

12:20:41  1          Thank you, Your Honor.

12:20:43  2          THE COURT:  One word.  Or a few words.

12:20:48  3          MR. WEINBERGER:  Your Honor, the response to that

12:20:49  4   argument is in the Federal Rules.  I'm the defendant.  I do not

12:20:55  5   need to deal with issues that aren't pled.  That's why

12:20:59  6   Rule 15(b)(1) exists.

12:21:03  7          Thank you, Your Honor.

12:21:04  8          THE COURT:  All right.  We've got a status conference

12:21:07  9   at 1 o'clock.  I am just wondering, we won't all fit in my

12:21:14 10   conference room; so, we'll do it in the courtroom.

12:21:18 11          And I wanted to let you all know that one of the

12:21:20 12   Texas plaintiffs' lawyers contacted us about whether she could

12:21:27 13   participate or at least listen.  I asked Judge Hawthorne to

12:21:32 14   notify all the plaintiffs' lawyers in Texas that if they wanted

12:21:36 15   to listen in they could, because apparently they thought that

12:21:42 16   some of the issues that we were discussing about discovery

12:21:45 17   might affect them.

12:21:46 18          As you all know, I've encouraged you to try to

12:21:49 19   work with the Texas counsel; so, I am perfectly happy with them

12:21:53 20   listening, and if they need to make a comment or ask a question

12:21:57 21   that's okay, too.  I just wanted to let you know that they were

12:22:01 22   notified about 11 o'clock, I guess, and I'm not sure who will

12:22:04 23   call in, but they were given the opportunity.

12:22:08 24          So we'll come back at 1 o'clock, and I'll have a

12:22:14 25   few issues to kind of follow up some things that we have been

                              **OFFICIAL TRANSCRIPT**

12:22:16 1   working on that I just want to see where you are.  I'm sure

12:22:20 2   that you all will have some things that you want to discuss as

12:22:23 3   always; so, I'll see you at 1 o'clock.

12:22:36 4         VOICES:  Thank you, Your Honor.

12:22:36 5         THE COURT:  There is an attorney conference room on

12:22:37 6   this floor in the Hale Boggs Building, and my staff will

12:22:43 7   communicate with you.  They will have Cokes and snacks.  In

12:22:45 8   case you all don't have time to get anything else, you've at

12:22:47 9   least got time to get a snack.

10         (WHEREUPON, at 12:22 p.m., the proceedings were

11   concluded.)

12                     *   *   *

13

14                  REPORTER'S CERTIFICATE

15

16         I, Cathy Pepper, Certified Realtime Reporter, Registered
Merit Reporter, Certified Court Reporter in and for the State

17   of Louisiana, Official Court Reporter for the United States
District Court, Eastern District of Louisiana, do hereby

18   certify that the foregoing is a true and correct transcript to
the best of my ability and understanding from the record of the

19   proceedings in the above-entitled and numbered matter.

20                  *s/Cathy Pepper*

21                  Cathy Pepper, CRR, RMR, CCR
Certified Realtime Reporter

22                  Registered Merit Reporter
Official Court Reporter

23                  United States District Court
Cathy_Pepper@laed.uscourts.gov

24

25

**OFFICIAL TRANSCRIPT**