UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KURIAN DAVID, et al.**<br>    Plaintiffs | CIVIL ACTION |
| **VERSUS** | No. 08-1220 |
| **SIGNAL INTERNATIONAL, LLC, et al.,**<br>    Defendants | SECTION "E" |
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**<br>    Plaintiff | CIVIL ACTION |
| **VERSUS** | No. 12-557 |
| **SIGNAL INTERNATIONAL, LLC, et al.,**<br>    Defendants | SECTION "E" |
| **LAKSHMANAN PONNAYAN ACHARI, et al.,**<br>    Plaintiffs | CIVIL ACTION |
| **VERSUS** | No. 13-6218<br> (c/w 13-6219, 13-6220, 13-6221, 14-732, 14-1818) |
| **SIGNAL INTERNATIONAL, LLC, et al.,**<br>    Defendants | SECTION "E" |

**Applies To:**
*David v. Signal*
**(No. 08-1220)**

1

**ORDER**

Before the Court is Signal's Motion for Partial Summary Judgment on Plaintiffs' First Claim for Relief under the Trafficking Victims Protection Reauthorization Act ("TVPA").[1]  Signal appears to seek summary judgment on three grounds:[2] (1) the TVPA claims are extraterritorial; (2) financial harm is a not a component of "serious harm" under the pre-amendment version of the TVPA; and (3) there is no evidence of the requisite scienter to support a TVPA claim.

I.   Extraterritoriality

On December 23, 2008, Congress amended the TVPA to provide federal courts with extraterritorial jurisdiction over certain claims.[3]  Signal argues the 2008 amendment is not retroactive.  Accordingly, Plaintiffs' claims are governed by the pre-amendment version of the TVPA, which Signal argues is restricted to "purely domestic" trafficking claims.   Signal contends Plaintiffs' claims are extraterritorial, because they rely extensively on events that occurred outside the United States.  Accordingly, Signal argues the claims are not cognizable as a matter of law.

The Court need not decide whether the amendment to the TVPA was retroactive, because Plaintiffs' claims are not extraterritorial.  As one court has observed: "the TVPA is not applied extraterritorially when it addresses trafficking people *into* the United States to perform forced labor here, even if done by means of threats of serious harm in

---

[1] R. Doc. 1871.  In light of a recent voluntary dismissal, Plaintiffs have clarified their only remaining trafficking claim against Signal falls under Section 1589 of the TVPA. R. Doc. 1942, p. 4. n.4.
[2] Signal's brief is prolix and often difficult to follow.
[3] *See* 18 U.S.C. § 1596.

part made elsewhere."[4]  Moreover, courts regularly entertain suits under the pre-amendment TPVA alleging trafficking into the United States from a foreign country.[5]

Although certain elements of the alleged trafficking scheme occurred abroad, "the focus and the touchstone of the territoriality inquiry of the TVPA is where the forced labor occurred and to where the victims were trafficked, and not from where the victims were trafficked or whether some of the means used to compel the labor occurred abroad."[6]  It is undisputed that Plaintiffs were trafficked from India to the United States and performed labor for Signal while in the United States.

These facts distinguish this case from others in which courts have dismissed pre-amendment TVPA claims as extraterritorial.  In those cases, the alleged trafficking occurred outside the United States.[7]  For example, in *Adhikari v. Daoud & Partners*—cited heavily in Signal's brief—the plaintiffs alleged a scheme to traffic workers from Nepal to Iraq.[8]

II.     Financial Harm as "Serious Harm"

The pre-amendment version of Section 1589 of the TVPA proscribed the knowing provision of labor by "threats of serious harm to, or physical restraint against, [the victim].[9]  The new version of Section 1589 reads similarly and prohibits the knowing provision of labor by "means of serious harm or threats of serious harm to [the

---

[4] *Tanedo v. E. Baton Rouge Parish Sch. Bd.*, No. SA CV10–01172 JAK (MLGx), 2012 WL 5378742, at *6 (C.D. Cal. Aug. 27, 2012) (emphasis in original).
[5] *See, e.g.*, *United States v. Dann*, 652 F.3d 1160 (9th Cir. 2011); *United States v. Bradley*, 390 F.3d 145 (1st Cir. 2004); *United States v. Calimlim*, 53 F.3d 706 (2008); *United States v. Sabhnani*, 599 F.3d 215 (2d Cir. 2010).
[6] *Tanedo*, 2012 WL 5378742, at *6.
[7] *See, e.g.*, *Naattah v. Bush*, 541 F. Supp. 2d 223 (D. D.C. 2008); *John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988 (S.D. Ind. 2007).
[8] 994 F. Supp. 2d 831, 832 (S.D. Tex. 2014).
[9] 18 U.S.C. § 1589(1) (2000).

3

victim]."[10] Unlike pre-amendment Section 1589, the new version contains a broad definition of "serious harm," which includes "financial" harm.[11] Signal argues the addition of this definition demonstrates that "serious harm" under pre-amendment Section 1589 did not include financial harm. The Court disagrees for multiple reasons.

First, Signal's argument belies the plain language of the statute. That the pre-amendment version distinguished between "serious harm" and "physical restraint" suggests "Congress intended that serious harm not be limited to physical harm, and instead include at least some non-physical harm, *e.g.*, financial harm."[12] Moreover, "[s]tandard definitions of 'harm' do not restrict the term to physical harm, but also encompass economic injury."[13] Second, the legislative history suggests Congress intended pre-amendment Section 1589 to cover a "broad array of harms," such as causing the victim to believe he or she would face "bankruptcy in their home country."[14] Third, at least two courts have squarely held that "financial harm was cognizable as serious harm prior to the December 23, 2008 amendment."[15] This Court joins their lead and holds that serious harm under pre-amendment Section 1589 includes financial harm.

III. <u>Scienter</u>

In order to prevail under pre-amendment Section 1589, a plaintiff must prove the defendant knowingly provided or obtained labor in one of three ways:

> (1) by threats of serious harm to, or physical restraint against, that person or another person;

---

[10] 18 U.S.C. § 1589(a)(1).
[11] 18 U.S.C. § 1589(c)(1).
[12] *Tanedo*, 2012 WL 5378742, at *5; *see also United States v. Sou*, No. 09-00345 SOM, 2011 WL 3207625, at *3 (D. Haw. July 26, 2011).
[13] *Sou*, 2011 WL 3207625, at *4.
[14] *Tanedo*, 2012 WL 5378742, at *4 (quoting H.R. Conf. Rep. No. 106–939, at 101 (2000)).
[15] *See id.* at *2; *Sou*, 2011 WL 3207625, at *3—5.

>   (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or
>   (3) by means of the abuse or threatened abuse of law or the legal process[.][16]

Signal argues there is no evidence it acted with the requisite intent. The Court disagrees. Plaintiffs have introduced evidence from which a jury could infer Signal knowingly threatened immigration consequences in order to maintain its labor force.[17] Plaintiffs have also introduced evidence tending to establish Signal was aware its workers had limited financial resources and intentionally leveraged this situation to its advantage.[18] Accordingly, there are genuine issues of material fact, which preclude the entry of summary judgment.

For the reasons previously stated;

**IT IS ORDERED** that the Motion is **DENIED** in its entirety.

**New Orleans, Louisiana, this 6th day of January, 2015.**

*(signature)*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[16] 18 U.S.C. § 1589 (2000).

[17] The threat of immigration sanctions constitutes "abuse of the law or legal process" under pre-amendment Section 1589(3). *See United States v. Calimlim*, 538 F.3d 706, 713 (7th Cir. 2008) ("[T]he immigration laws do not aim to help employers retain secret employees by threats of deportation, and so their 'warnings' about the consequences were . . . an abuse of the legal process."); *Dann*, 652 F.3d at 1172 (finding serious harm where defendant "intended to inspire two related immigration fears in [the victim]: that she would be forced to leave the country or that she would not be able to leave the country because she had no documents."); *Augir v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 444 (E.D. N.Y. 2013) ("The threat of deportation alone may support a claim for forced labor."); *Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011) (finding serious harm where defendants threatened "to fire Plaintiffs, sue them, allow their visas to expire, or deport them over various issues that generally concerned complaints about living conditions and pay.").

[18] *See Dann*, 652 F.3d at 1171 ("For an immigrant without access to a bank account and not a dollar to her name, a juror could conclude that the failure to pay her—and thus the lack of money to leave or live—was sufficiently serious to compel [her] to continue working.").