## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KURIAN DAVID, et al.**<br>        **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **No. 08-1220** |
| **SIGNAL INTERNATIONAL, LLC, et al.,**<br>        **Defendants** | **SECTION "E"** |
| **EQUAL EMPLOYMENT OPPORTUNITY**<br>**COMMISSION,**<br>        **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **No. 12-557** |
| **SIGNAL INTERNATIONAL, LLC, et al.,**<br>        **Defendants** | **SECTION "E"** |
| **LAKSHMANAN PONNAYAN ACHARI, et al.,**<br>        **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **No. 13-6218**<br> **(c/w 13-6219, 13-6220,**<br>**13-6221, 14-732, 14-**<br>**1818)** |
| **SIGNAL INTERNATIONAL, LLC, et al.,**<br>        **Defendants** | **SECTION "E"** |

**Applies To:**
***David v. Signal***
**(No. 08-1220)**

## **ORDER**

Before the Court is Signal's Motion to Exclude the Expert Testimony of Dr. Pablo Stewart.[1] Dr. Stewart's report opines: (1) the Signal Man Camp shared significant and unhealthy attributes with overcrowded correctional facilities; (2) the Man Camp's overcrowded living conditions caused the Plaintiffs' emotional and mental distress and likely caused/exacerbated some of the physical ailments they experienced during the time; and (3) the prison-like and overcrowded living conditions had a psychologically coercive effect on Plaintiffs and contributed to the climate of fear that rendered the Plaintiffs feeling helpless and powerless to leave Signal. Signal seeks to exclude the expert testimony of Dr. Stewart because it is unreliable, unpublished, and untested.

The Federal Rules of Evidence permit an expert witness with "scientific, technical or other specialized knowledge" to testify if such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," so long as "the testimony is based upon sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case."[2]  Courts, as "gatekeepers," are tasked with making a preliminary assessment whether expert testimony is both reliable and relevant.[3] The trial judge is afforded broad latitude in making such expert testimony determinations.[4]

In *Daubert*, the Supreme Court discussed the trial judge's obligation to ensure expert testimony is reliable:

> The subject of an expert's testimony must be "scientific . . . knowledge."
> The adjective "scientific" implies a grounding in the methods and

---

[1] R. Doc. 1825.
[2] Fed. R. Evid. 702.
[3] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)).
[4] *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999).

procedures of science. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation. . . . . [I]n order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation—*i.e.*, "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.[5]

Additionally, the expert testimony must be relevant, "not simply in the sense that all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue."[6] Another aspect of relevancy under Rule 702 is whether the expert testimony is sufficiently tied to the facts of the case.[7] "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."[8]

As Plaintiffs' expert, Plaintiffs carry the burden of proving by a preponderance of the evidence that Dr. Stewart's testimony satisfies Rule 702.[9] Signal does not deny Dr. Stewart is qualified as an expert witness to testify about prison overcrowding; however, Signal argues Plaintiffs have not met their burden of proving Dr. Stewart has reliably applied the principles and methods underlying his conclusions to the facts of the case, as required under Rule 702.[10] Signal's main objection is that there is no reliable basis for extrapolation between the impact of overcrowded prisons on prisoners and the impact of overcrowded employee housing on an industrial site on the employees that live there. Signal argues any such extrapolation is not grounded in scientific methods and procedures, and because this comparison underlies all three of Dr. Stewart's opinions, Dr. Stewart should not be permitted to testify at trial.

---

[5] *Daubert v. Merrell Dow Pharm.*, Inc., 509 U.S. 579, 589–90 (1993) (quoting Fed. R. Evid. 702).
[6] *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).
[7] *See* Fed. R. Evid. 702.
[8] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). *See also Daubert*, 509 U.S. at 591 (describing "fit").
[9] *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[10] Fed. R. Evid. 702.

3

Plaintiffs respond arguing that under the Federal Rules of Evidence, Dr. Stewart need not have a particular expertise in the specific fact pattern presented, in this case employment housing overcrowding, so long as he has a general expertise in the area of overcrowding. Plaintiffs contend Dr. Stewart is an expert in working with overcrowded systems and has been certified as an expert in overcrowding by a number of federal courts. However, Plaintiffs fail to mention that his certification as an expert in those courts has been as an expert in *prison* overcrowding—not in overcrowding and its effects generally. This distinction is important.[11] Notably, Dr. Stewart at his deposition refers to himself as "a psychiatric expert with special expertise in prisons and overcrowded conditions in prisons."

Dr. Stewart's first opinion is that Signal's man camp shared significant and unhealthy attributes with the overcrowded correctional facilities he has examined. Even if the prison and man camp share significant attributes with respect to overcrowding, the Court is more troubled with the significant attributes they do not share.[12] The effects overcrowding in prisons has on prisoners are not necessarily the same as those overcrowding in employee housing on an industrial site has on employees living in that housing. Dr. Stewart even admits he is "not aware of any methodological basis that can be used to compare housing for workers and housing in prison" or of any literature that states it is valid to compare the two. In this case, there are too great of analytical gaps between Dr. Stewart's expertise in prison overcrowding and his opinions offered on overcrowding at the man camp. Because Plaintiffs have not demonstrated the appropriate relevance, or "fit," between Mr. Stewart's opinion and the facts of this case,

---

[11] If he were instead an expert about overcrowding in housing, generally, Plaintiffs' argument would be more persuasive.

[12] The Court finds this comparison of the man camp to a prison especially troubling because of potential prejudice in stating the camp shared significant similarities with prisons.

Plaintiffs have failed to meet their burden of proving Mr. Stewart's testimony about the man camp's alleged overcrowding is reliable and relevant.[13]

Additionally, Dr. Stewart's second opinion that the man camp's overcrowding was the cause of Plaintiffs' emotional and mental distress also lacks reliability and relevance for the same reasons as expressed above. Dr. Stewart's expertise relates to prison overcrowding, and Plaintiffs have not demonstrated that Dr. Stewart's expertise in the mental effects of prison overcrowding "fit" with those of employment housing overcrowding. Importantly, Dr. Stewart admits in his deposition that he neither made a formal medical diagnosis as to any of the Plaintiffs nor spoke with any of the Plaintiffs, let alone examined them. His opinion as to the cause of their emotional and mental distress lacks a foundation of sufficient facts or data. Dr. Stewart's third opinion that the overcrowding at the man camp had a "psychologically coercive effect" on Plaintiffs lacks reliability and relevance. Such testimony is not within Dr. Stewart's expertise. Further, his lack of an examination of the Plaintiffs and his failure to make a medical diagnosis as to any of them undercuts his competence to testify as to the coercive effect on the Plaintiffs and the fear they experienced.

Accordingly;

**IT IS ORDERED** that the Motion is **GRANTED**.  Dr. Stewart will not be permitted to testify at trial.

**New Orleans, Louisiana, this _10th_ day of January, 2015.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[13] *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591 (1993); *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).