# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KURIAN DAVID, et al.** | **CIVIL ACTION** |
| **Plaintiffs** | |
| | |
| **VERSUS** | **No. 08-1220** |
| | |
| **SIGNAL INTERNATIONAL, LLC, et al.,** | **SECTION "E"** |
| **Defendants** | |
| | |
| **Related Cases:** | |
| | |
| **EQUAL EMPLOYMENT OPPORTUNITY** | **CIVIL ACTION** |
| **COMMISSION,** | |
| **Plaintiff** | |
| | |
| **VERSUS** | **No. 12-557** |
| | |
| **SIGNAL INTERNATIONAL, LLC,** | **SECTION "E"** |
| **Defendant** | |
| | |
| **LAKSHMANAN PONNAYAN ACHARI, et al.,** | **CIVIL ACTION** |
| **Plaintiffs** | |
| | |
| **VERSUS** | **No. 13-6218** |
| | **(c/w 13-6219, 13-6220,** |
| **SIGNAL INTERNATIONAL, LLC, et al.,** | **13-6221, 14-732, 14-1818)** |
| | |
| **SECTION "E"** | |

**Applies To:**   *David v. Signal* **(08-1220)**

---

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR FINAL CERTIFICATION OF THE FAIR LABOR STANDARDS ACT COLLECTIVE ACTION

---

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iii

I.   PROCEDURAL HISTORY .................................................................................... 1

II.  FACTS ..................................................................................................................... 2

III. LEGAL STANDARD ............................................................................................. 6

IV.  ARGUMENT ........................................................................................................... 7

    A.   Plaintiffs Suffered Violations Caused by Signal's Common Policies. ........................... 7

        1.   Recruitment Fees ................................................................................................. 8

            a.   Plaintiffs' and Opt-in Plaintiffs' Recruitment Fees Were for the Primary Benefit of Signal. .................................................................................................. 9

            b.   Plaintiffs and Opt-in Plaintiffs Were Harmed by Signal's Policy of Not Reimbursing Them for Recruitment Fees. ................................................................ 11

        2.   Shop Supplies/Tools ......................................................................................... 12

        3.   Housing Deductions .......................................................................................... 13

        4.   Safety Bonuses .................................................................................................. 16

    B.   Defendants' Defenses Are Universal to All Plaintiffs. .................................................. 17

    C.   Fairness and Efficiency Require Final Certification of the Collective Action .............. 19

V.   CONCLUSION ...................................................................................................... 20

# **TABLE OF AUTHORITIES**

## **CASES**

Anderson v. Mt. Clemens Pottery Co.,
   328 U.S. 680 (1946) .......................................................................................... 18

Arriaga v. Florida Pac. Farms, L.L.C.,
   305 F.3d 1228 (11th Cir. 2002) ........................................................................ 12

Baroni v. BellSouth Telecomms., Inc.,
   No. CIV.A. 02-009, 2004 WL 1687434 (E.D. La. July 27, 2004) ........................... 7

Basco v. Wal-Mart Stores, Inc.,
   No. CIV.A. 00-3184, 2004 WL 1497709 (E.D. La. July 2, 2004) ........................... 17

Caro-Galvan v. Curtis Richardson, Inc.,
   993 F.2d 1500 (11th Cir. 1993) ........................................................................ 13

Castellanos-Contreras v. Decatur Hotels, LLC,
   622 F.3d 393 (5th Cir. 2010) ............................................................................. 9

Chellen v. John Pickle Co.,
   446 F. Supp. 2d 1247 (N.D. Okla. 2006) ......................................................... 14

Clark v. Centene Co. of Texas, L.P.,
   No. A-12-CA-174-SS, 2014 WL 4385412 (W.D. Tex. Sept. 3, 2014) ................ 12, 16, 17, 19

David v. Signal International, LLC,
   No. CIV.A. 08-1220, 2014 WL 4063875 (E.D. La. Aug. 12, 2014) .............................. passim

Desert Palace, Inc. v. Costa,
   539 U.S. 90, 123 S. Ct. 2148, 156 L.Ed.2d 84 (2003) ........................................ 6

Donohue v. Francis Servs., Inc.,
   No. CIV.A. 04-170, 2004 WL 1161366 (E.D. La. May 24, 2004) ......................... 16

Falcon v. Starbucks Corp.,
   580 F. Supp. 2d 528 (S.D. Tex. 2008) ............................................................... 8

Garcia v. Frog Island Seafood, Inc.,
   644 F. Supp. 2d 696 (E.D.N.C. 2009) .................................................... 12, 14, 15

Gaxiola v. Williams Seafood of Arapahoe, Inc.,
   776 F. Supp. 2d 117 (E.D.N.C. 2011) ............................................................... 11

Hoffman-La Roche, Inc. v. Sperling,
   493 U.S. 165 (1989) ......................................................................................... 6

Kaluom v. Stolt Offshore, Inc.,
    474 F. Supp. 2d 866 (S.D. Tex. 2007) ................................................................................. 7

Lima v. Int'l Catastrophe Solutions, Inc.,
    493 F. Supp. 2d 793 (E.D. La. 2007) ................................................................................. 6

Lusardi v. Zerox Corp.,
    122 F.R.D. 463 (D.N.J.1988) ............................................................................................. 6

Maynor v. Dow Chem. Co.,
    671 F. Supp. 2d 902 (S.D. Tex. 2009) ...................................................................... 8, 18, 19

Mooney v. Aramco Services, Co.,
    54 F.3d 1207 (5th Cir.1995) ............................................................................................... 6

Moreau v. Klevenhagen,
    956 F.2d 516 (5th Cir.1992) ............................................................................................. 18

Ojeda-Sanchez v. Bland,
    No. 608CV096, 2009 WL 3851623 (S.D. Ga. Nov. 17, 2009) ....................................... 11

Prejean v. O'Brien's Response Management, Inc.,
    No. CIV.A. 12-1045, 2013 WL 5960674 (E.D. La. Nov. 6, 2013) ................................. 6

Reich v. Circle C. Investments, Inc.,
    998 F.2d 324 (5th Cir.1993) ............................................................................................... 6

Roussell v. Brinker Int'l, Inc.,
    441 F. App'x 222, 226 (5th Cir. 2011) ........................................................................ 7, 20

Shultz v. Hinojosa,
    432 F.2d 259 (5th Cir. 1970) ........................................................................................... 12

White v. Integrated Elec. Technologies, Inc.,
    No. 12-359, 2013 WL 2903070 (E.D. La. June 13, 2013) ............................................... 6

White v. NTC Transp., Inc.,
    No. 4:11CV007-SA-JMV, 2013 WL 5874566 (N.D. Miss. Oct. 31, 2013) ..................... 7

Wischnewsky v. Coastal Gulf & Int'l, Inc.,
    No. CIV.A. 12-2277, 2013 WL 1867119 (E.D. La. May 2, 2013) ................................. 8

## STATUTORY AUTHORITIES

29 U.S.C. § 203(m) ................................................................................................................ 9, 13

29 U.S.C. § 207(a)(1) .................................................................................................................. 16

29 U.S.C. § 207(e) ........................................................................................................................ 16

29 U.S.C. § 216(b) .................................................................................................................... 5, 7

iv

29 U.S.C. §§ 201-219 .................................................................................................. 1

## RULES AND REGULATIONS

22 C.F.R. § 40.1(l)(1) (2010) ...................................................................................... 9

29 C.F.R. § 531.3 ........................................................................................................ 15

29 C.F.R. § 531.3(d)(2) ............................................................................................... 12

29 C.F.R. § 531.31 ...................................................................................................... 13

29 C.F.R. § 531.32(a) ............................................................................................ 12, 13

29 C.F.R. § 531.36(b) ................................................................................................. 12

29 C.F.R. § 531.37 ...................................................................................................... 12

29 C.F.R. § 778.107 .................................................................................................... 16

29 C.F.R. § 778.208 .................................................................................................... 16

Fed. R. Civ. P. 23 ................................................................................................ 1, 7, 11

The Plaintiffs hereby file this memorandum of law in support of their Motion for Final Certification of their Thirteenth Claim for Relief as a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219.  <u>See</u> Doc. 1706 (Pls' Sixth Am. Compl. ¶¶ 531-541). Plaintiffs file their final certification motion and accompanying memorandum of law pursuant to the Court's December 15, 2014 Order (Doc. 1982).

## I.  PROCEDURAL HISTORY

Plaintiffs filed this action as a class action pursuant to Federal Rule of Civil Procedure 23 for certain statutory and common law claims and as a collective action for claims brought under the Fair Labor Standards Act ("FLSA").  The FLSA collective action claims address the violations of the FLSA minimum and overtime wage requirements committed by Defendant Signal International, L.L.C. ("Signal"). <u>See</u> Doc. 1706 (Pls' Sixth Am. Compl. ¶¶ 531-541). Plaintiffs alleged they suffered FLSA violations resulting from Signal's <u>de facto</u> and actual deductions from their wages for recruitment fees, inbound travel and visa expenses, tools, and housing.  <u>See id.</u>  Between March 2008 and July 2011, a total of 372 Opt-in Plaintiffs, in addition to the 12 named <u>David</u> Plaintiffs, submitted and did not subsequently withdraw FLSA Consent to Sue forms in <u>David</u>.  <u>See</u> Jan. 13, 2015 Decl. of Meredith Stewart ¶ 2 ("Stewart Decl."), Ex. A (Chart of Consent to Sue Forms Submitted in <u>David</u>).

In 2012, this Court denied Plaintiffs' motion for Rule 23 class certification of their non-FLSA claims, Doc. 1117, resulting in the former putative class members seeking individual representation for those claims. The former putative class members/Opt-in Plaintiffs, however, remained plaintiffs in <u>David</u> exclusively for purposes of the FLSA collective action claims.

On November 6, 2013, Signal sought dismissal of Plaintiffs' FLSA claims related to recruitment fees and inbound travel and visa expenses. Doc. 1431 (Signal's Partial Mot. for J. on the Pleadings).  On August 12, 2014, the Court granted in part and denied in part Signal's

motion, ruling that the FLSA permits recovery of recruitment fees under certain circumstances, but does not allow for reimbursement of inbound travel and visa expenses.  See David v. Signal Int'l, LLC, No. CIV.A. 08-1220, 2014 WL 4063875, at *4 (E.D. La. Aug. 12, 2014).

On October 27, 2014, Plaintiffs and Signal filed cross motions for summary judgment on the FLSA claims.  See Docs. 1848-1, 1845.  Plaintiffs sought summary judgment on Signal's liability for Plaintiffs' recruitment fees and tools expenses under the FLSA.  Docs. 1848-1, 1848-2.  Signal's motion sought dismissal of Plaintiffs' FLSA claims in their entirety on the grounds that Plaintiffs failed to file for conditional certification of their collective action.  See Doc. 1845-1.  On December 15, 2014, this Court denied Signal's motion for partial summary judgment and ordered Plaintiffs to move for final certification.  Doc. 1982. The Court also ruled it would defer its decision on Plaintiffs' summary judgment motion until the Court decides certification.  See id. Finally, the Court ruled the FLSA claims would not be tried in the upcoming David trial.  See id.

## II.  FACTS

Plaintiffs and Opt-in Plaintiffs are Indian nationals who worked as welders and pipe fitters on H-2B visas for Signal International between 2006 and 2008.[1]  Plaintiffs were recruited in India by a conglomerate run by three men: Mississippi-based recruiter Global Resources, Inc. ("Global") and its principal, Michael Pol (collectively "Pol"); Mumbai, India, and Dubai, United Arab Emirates-based recruiter Dewan Consultants Pvt. and its principal, Sachin Dewan (collectively "Dewan"), and New Orleans-based law firms Gulf Coast Immigration Law Center, L.L.C. and the Law Offices of Malvern C. Burnett, A.P.C. and their principal, Malvern C. Burnett (collectively "Burnett") (all recruiters are collectively referred to herein as the "Recruitment Conglomerate").  In April 2006, Signal entered into a contract with Pol on behalf

---

[1]     The facts underlying Plaintiffs' FLSA claims are described more fully in Plaintiffs' papers seeking summary judgment on Signal's FLSA liability.  Docs. 1848-1, 1848-2.

of his company Global for the recruitment of foreign workers wherein Global would be responsible for all costs related to the recruitment and transportation of the workers.  Stewart Decl. ¶ 2, Ex. B ("Skilled Worker Recruitment Agreement") ("SWRA").  Pursuant to that agreement, Pol hired Burnett, an immigration attorney, to help with the immigration filings "at no charge" to Signal.  See id. at 1.  Global, and later Signal, hired Dewan Consultants Pvt. Ltd. and issued to Dewan a power of attorney to coordinate the local recruitment efforts in India and Dubai.  Stewart Decl. ¶ 2, Exs. C (June 19, 2006 notarized letter designating Dewan Consultants Pvt. Ltd. as Signal's "recruiting agent in India"), D (June 16, 2006 Notarized Letter re: Acquisition of Skilled Workers for H2B/Permanent Residence to the USA), E (Aug. 3, 2006 Power of Attorney, Signal to Dewan Consultants).  Signal did not pay any recruitment fees to the Recruitment Conglomerate for their services. Stewart Decl. ¶ 2, Exs. F (Excerpts, June 19, 2014 Dep. of Chris Cunningham), G (Excerpts, Oct. 9, 2009 Dep. of Sachin Dewan) ("2009 Dewan Dep.).

The Plaintiffs and Opt-in Plaintiffs were required to use the services of Signal's designated recruiters – Pol, Burnett, and Dewan – to secure employment at Signal. See Doc. 1918-3, ¶ 18 (Signal's Statement of Contested Facts in Opp. to Pls.' FLSA Mot. for Summ. J.) (admitting that Plaintiffs and Opt-in Plaintiffs were required to use the Recruitment Conglomerate); Doc. 1748, ¶ 167 (Signal's Answer) ("Signal admits that it hired only those workers recruited by the Legal Facilitator Defendants and Recruiter Defendants because it relied on their expertise, knowledge, and experience."); see also Doc. 1848-1, ¶ 18 (collecting evidence establishing that Signal required Plaintiffs to use the Recruitment Conglomerate).  To avail themselves of these recruitment services, every Plaintiff and Opt-in Plaintiff had to pay fees to the Recruitment Conglomerate.  See Stewart Decl. ¶ 2, Ex. H-RR (Copies of check(s) from

3

Plaintiffs and Opt-in Plaintiffs or correspondence from Sachin Dewan to Pol and/or Burnett enclosing check(s)); Jan. 13, 2105 Decl. of Daniel Werner ¶ 2(a),(b) ("Werner Decl."), Exs. 1-2 (Chart of fees paid by Plaintiffs and Opt-in Plaintiffs to Burnett and Pol). All Plaintiffs and Opt-in Plaintiffs paid at least $2,000 to Dewan and $1,000 to Pol for recruitment services after the Signal recruitment had begun, though the amount they paid varied and generally exceeded the $3,000 minimum. Stewart Decl. ¶ 2, Exs. SS (Nov. 19, 2014 Decl. of Sachin Dewan) ("2014 Dewan Decl."), TT (Excerpts, Nov. 12, 2009 Dep. of Michal Pol, at 373:16-20) ("2009 Pol Dep."), UU-DDD (Decls. from Opt-in Plaintiffs regarding recruitment fees) ("Opt-in Pls.' Decls."); Werner Decl. ¶ 2(a),(b), Exs. 1-2. Throughout the recruitment process, Signal understood that Global Resources would charge the Plaintiffs and Opt-in Plaintiffs, at a minimum, a recruitment fee of $2,000 to $3,000 each. Stewart Decl. ¶ 2, Exs. EEE (Nov. 20, 2006 John Sanders' Handwritten Notes), FFF (July 24, 2014 Decl. of Michael Pol), GGG (Nov. 22, 2006 Letter from Schnoor to Pol), HHH (Nov. 27, 2006 letter from Pol to Schnoor); III (Excerpts, Dec. 16, 2009 Dep. of Ronald Schnoor 27:13-28:8) ("2009 Schnoor Dep."). Even after Signal learned of the exorbitant fees that Burnett and Dewan were charging workers, it still opted to engage Burnett's and Dewan's services to recruit more H-2B workers. Stewart Decl. ¶ 2, Exs. III (2009 Schnoor Dep. 118:19-120:21), JJJ (Excerpts, June 17, 2014 Dep. of Richard Marler 204:6-17) ("2014 Marler Dep."), KKK (Dec. 1, 2006 Letter from Ronald Schnoor to Burnett), LLL (Nov. 30, 2006 – Jan. 4, 2007 Email String between Signal and Dewan Consultants).

Plaintiffs and Opt-in Plaintiffs began arriving in the United States to work for Signal in October 2006. Plaintiffs and Opt-in Plaintiffs all worked at Signal's facilities in Pascagoula, Mississippi and Orange, Texas, and they all lived in Signal man camps in those respective

locations.  All Plaintiffs and Opt-in Plaintiffs were subject to identical employment, deduction, and housing policies. Stewart Decl. ¶ 2, Ex. MMM (Excerpts, Sept. 28, 2009 R. 30(b)(6) Dep. of Tracey Binion, 30:3-31:16) ("2009 Binion Dep.").  The Signal policies and/or practices relevant to this motion that covered the Plaintiffs and Opt-in Plaintiffs are the following:

(1) Signal's policy of not reimbursing any of the Plaintiffs' or Opt-in Plaintiffs' recruitment fees before the conclusion of the first work week (or at all).  See Doc. 1918-3, ¶ 27.

(2) Signal's policy of deducting amounts from the Plaintiffs' and Opt-in Plaintiffs' wages for tools. Stewart Decl. ¶ 2, Ex. MMM (2009 Binion Dep. 31:4-14).

(3) Signal's policy of deducting amounts from Plaintiffs' and Opt-in Plaintiffs' wages for room and board in the man camps.  Stewart Decl. ¶ 2, Ex. NNN (Excerpts, Oct. 28, 2009 Dep. of William Bingle 125:6-17) ("2009 Bingle Dep.").

(4) Signal's safety bonus policy. Stewart Decl. ¶ 2, Ex. OOO (Excerpts, June 24, 2014 Dep. of Pat Killeen) ("2014 Killeen Dep.").

These four Signal policies were common to the class and caused the Plaintiffs' and Opt-in Plaintiffs' wages to fall below the federal minimum of $5.15 per hour and cut into overtime premiums of the Plaintiffs who worked more than 40 hours in a workweek.  Werner Decl. ¶ 2(c), Ex. 3 (Chart of Deductions from Pls.' and Opt-in Pls.' Wages and Resulting FLSA Violations).[2]

---

[2] The "Total Recruitment Expenses" column in Exhibit 3 (Chart of Deductions from Pls.' and Opt-in Pls.' Wages and Resulting FLSA Violations) is based on available direct evidence of payments gathered from Exhibits H-RR and from Dewan's and Pol's testimony about the minimum fees they charged to workers for Signal recruitment ($2,000 and $1,000, respectively). See Werner Decl. ¶ 2(a),(b),(c). Exhibit 3 is not based on the amounts listed in Exhibits UU-DDD (Opt-in Pls.' Decls.); therefore, some of the individual recruitment amounts listed in those exhibits be greater than from those listed in Exhibit 3.

### III.    LEGAL STANDARD

The FLSA authorizes plaintiffs seeking relief under its minimum wage and overtime provisions to bring a "collective action" on behalf of similarly situated employees. 29 U.S.C. § 216(b). The collective action mechanism promotes efficient resolution of similar claims in one action and advances the broad "remedial" purpose of the FLSA.  See e.g., Reich v. Circle C. Investments, Inc., 998 F.2d 324, 329 (5th Cir.1993) (recognizing FLSA's remedial purposes); see also Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989) (noting benefits of efficiency for parallel Age Discrimination in Employment Act (ADEA) collective action mechanism).

The Fifth Circuit Court of appeals has not adopted a test for establishing "similarly situated" for purposes of collective action certification, but district courts in the circuit have embraced the method set forth in Lusardi v. Zerox Corp., 122 F.R.D. 463 (D.N.J.1988).  See, e.g., Prejean v. O'Brien's Response Mgmt., Inc., No. CIV.A. 12-1045, 2013 WL 5960674, at *4 (E.D. La. Nov. 6, 2013) (citing cases); White v. Integrated Elec. Technologies, Inc., No. 12-359, 2013 WL 2903070, at *3 (E.D. La. June 13, 2013) (same).  Under Lusardi, the similarly situated analysis proceeds in two phases.  At the first phase, the court makes the "similarly situated" determination based on the pleadings and affidavits to conditionally certify the class for the purposes of sending notice to the potential class members.  See Lima v. Int'l Catastrophe Solutions, Inc., 493 F. Supp. 2d 793, 797-98 (E.D. La. 2007) (citing Mooney v. Aramco Services, Co., 54 F.3d 1207, 1213–14 (5th Cir.1995), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148, 156 L.Ed.2d 84 (2003)).  Conditional certification is "not a procedural requirement for FLSA collective action" but "is merely a 'useful case management tool for district court[s] to employ in appropriate cases.'" Doc. 1982 (citing cases).  During the conditional certification phase, the plaintiffs' burden to prove they are similarly situated is "fairly lenient." See Lima, 493 F. Supp. 2d at 797-98.

6

The second step of certification is generally triggered by defendant's motion to decertify the collective action, whereby the court applies a stricter standard to determine if the opt-in plaintiffs are similarly situated.  See id.; Kaluom v. Stolt Offshore, Inc., 474 F. Supp. 2d 866, 874 (S.D. Tex. 2007) (discussing plaintiffs' heightened evidentiary burden).  Though the plaintiffs' burden is higher at the second stage, "the "similarly situated" requirement of § 216(b) is still considerably less stringent than the commonality requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure."  White v. NTC Transp., Inc., No. 4:11CV007-SA-JMV, 2013 WL 5874566, at *2 (N.D. Miss. Oct. 31, 2013) (denying motion for decertification). [3]

Courts analyzing certification at the post-discovery phase consider the following three factors to determine whether the plaintiffs are similarly situated: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations."  Baroni v. BellSouth Telecomms., Inc., No. CIV.A. 02-009, 2004 WL 1687434, at *11 (E.D. La. July 27, 2004); see also Roussell v. Brinker Int'l, Inc., 441 F. App'x 222, 226 (5th Cir. 2011) (affirming district court decision that relied on the three factors for the second-stage "similarly situated" analysis). As discussed below, Plaintiffs are similarly situated to the Opt-in Plaintiffs under this three-factor analysis for purposes of final certification of their FLSA collective action.

## IV.   ARGUMENT

### A.  Plaintiffs Suffered Violations Caused by Signal's Common Policies.

Plaintiffs and Opt-in Plaintiffs are similarly situated because they were subject to identical policies and procedures that resulted in FLSA violations during their employment at

---

[3] The Court ordered Plaintiffs to proceed under the heightened evidentiary standard imposed in the second-phase of the certification analysis.  Doc. 1982.

Signal.  In these circumstances – where plaintiffs allege a common policy or plan – courts in the Fifth Circuit often find the factual and employment settings of the plaintiffs are sufficiently similar for purposes of § 216(b). See, e.g., Roussell, 441 F. App'x at 226-27 (finding no abuse of discretion when district court denied decertification motion because plaintiffs established a common pattern with respect to the opt-ins); White, 2013 WL 5874566, at *4 (denying defendant's motion to decertify where plaintiffs established they were affected by the defendant's universally applicable policies); Maynor v. Dow Chem. Co., 671 F. Supp. 2d 902, 931 (S.D. Tex. 2009) (noting in decision denying decertification that "[t]he presence of a common policy, plan, or practice affecting all class members, although not necessarily required, is helpful to showing a similar factual setting."); Falcon v. Starbucks Corp., 580 F. Supp. 2d 528, 540 (S.D. Tex. 2008) (finding plaintiffs meet the first factor of the second-phase similarly situated analysis because they were harmed by common policies); see also Wischnewsky v. Coastal Gulf & Int'l, Inc., No. CIV.A. 12-2277, 2013 WL 1867119, at *4 (E.D. La. May 2, 2013) (noting that "courts have held that the plaintiffs must allege facts sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law" to establish they are similarly situated).

Plaintiffs were all employed as H-2B welders and pipe fitters for Signal and were all subject to the same employment, deduction, and housing policies during the relevant time period. Four Signal policies in particular resulted in violations of Plaintiffs' and Opt-in Plaintiffs' rights under the FLSA: (1) Signal's failure to reimburse the workers for recruitment fees; (2) Signal's deductions for required tools and equipment; (3) Signal's deductions for the man camps; and (4) Signal's safety bonus program.  These uniform policies led to class-wide FLSA violations.

### 1.   Recruitment Fees

Plaintiffs and Opt-in Plaintiffs were all subject to Signal's unlawful policy of failing to reimburse them for the fees they paid to the Recruitment Conglomerate.

###### a. Plaintiffs' and Opt-in Plaintiffs' Recruitment Fees Were for the Primary Benefit of Signal.

Plaintiffs are entitled to reimbursement of recruitment fees to the extent they caused their first week's wages to fall below the minimum wage if those fees were for the primary benefit of Signal.  See David, 2014 WL 4063875, at *4; see also 29 U.S.C. § 203(m).  This Court has determined that the recruitment fees were for the primary benefit of Signal if Signal (1) required Plaintiffs to use the Recruitment Conglomerate and (2) required Plaintiffs to pay fees to the Recruitment Conglomerate.  See David, 2014 WL 4063875, at *4 (listing factors to determine whether the recruitment fees were for the primary benefit of Signal under the FLSA).[4]

With respect to the first factor in the primary benefit analysis, it is undisputed that Signal required all Plaintiffs and Opt-in Plaintiffs to rely on the services of Signal's designated recruiters – Pol, Burnett, and Dewan – to obtain employment at Signal.  See Docs. 1918-3, ¶ 18, 1748, ¶ 167; Stewart Decl. ¶ 2, Exs. UU-DDD (Opt-in Pls.' Decls.). [5]

---

[4]       Plaintiffs discuss the "primary benefit" analysis more thoroughly in their summary judgment motion on Signal's FLSA liability.  See Docs. 1848, 1848-1, 1848-2.

[5]       Signal admits that Plaintiffs were required to use Signal's designated recruiters, but disputes that Burnett's fees may be characterized as recruitment fees and instead insists they were legal fees for visa processing. See Docs. 1918-3, ¶ 18, 1918-2, at 17-18.  In the Fifth Circuit, workers cannot recover the cost of the "employee side of the visa application process," as defined in 22 C.F.R. § 40.1(l)(1) (2010).  See Castellanos-Contreras v. Decatur Hotels, LLC, 622 F.3d 393, 400 (5th Cir. 2010). Here, however, Signal acknowledged that workers would be paying not only their "side of the visa application process," but also Signal's side of the process as well. See, e.g., Stewart Decl. ¶2, Ex. KKK (Signal confirming that Burnett's "fees and costs incurred in representing Signal in this matter will be billed to and paid by the skilled foreign workers") (emphasis added).  Burnett's fees are thus clearly recoverable.  Cf. Decatur Hotels, 622 F.3d at 400 (denying worker's right to recover visa fees when the employer "paid its own fees for the employer side of the process").  In any event, the resolution of this issue has no

9

The second factor of the primary benefit analysis is also satisfied because Plaintiffs and Opt-in Plaintiffs were required to pay fees to the Recruitment Conglomerate.  Signal paid nothing for the recruitment and placement of the Plaintiffs and Opt-in Plaintiffs and instead shifted to them the entire cost of recruitment.  See Stewart Decl. ¶ 2, Exs. F, G.  Signal knew the Recruitment Conglomerate's recruitment program relied on this cost shifting to the workers. Signal's recruitment agreement with Pol stipulated that Global Resources would secure H-2B workers for Signal "at no cost" to Signal. Stewart Decl. ¶ 2, Ex. B.  Meanwhile, Signal knew that during the recruitment process in 2006, Global was charging workers a minimum of between $2,000 and $3,000 in fees.  Stewart Decl. ¶ 2, Exs. EEE, FFF, GGG, HHH, III (2009 Schnoor Dep. 27:13-28:8).  Indeed, Signal's Senior Vice President, Ronald Schnoor, agreed that $3,000 was a "reasonable" recruitment fee.  Stewart Decl. ¶ 2, Ex. III (2009 Schnoor Dep. 27:16-28:11). Even after Signal discovered that Burnett and Dewan were also charging excessive fees over and above the $3,000 "reasonable" recruitment fee, it still engaged them to continue recruiting H-2B workers for Signal's benefit.  Stewart Decl. ¶ 2, Exs. III (Schnoor Dep. 118:12-14), JJJ (2014 Marler Dep. 204:6-17), KKK, LLL.

Plaintiffs and Opt-in Plaintiffs paid thousands of dollars in recruitment fees to the Recruitment Conglomerate.  Stewart Decl. ¶ 2, Exs. H-RR; Werner Decl. ¶ 2(a),(b), Exs. 1-2. Although the amounts that the Plaintiffs and Opt-in Plaintiffs paid vary, they all paid at least $2,000 to Dewan and $1,000 to Pol in pure recruitment fees (e.g., excluding visa and transportation fees) after the Signal recruitment started.  See Stewart Decl. ¶ 2, Exs. SS (Dewan

---

bearing on the similarly situated analysis because, even if the Court determines that Plaintiffs and Opt-in Plaintiffs cannot recover the fees they paid to Burnett, the mandatory $3,000 that Plaintiffs paid to Dewan and Pol alone caused a FLSA violation.  See infra Section IV.A.1.b.

Decl.), TT (2009 Pol Dep. 373:16-20), UU-DDD (Opt-in Pls.' Decls.).[6]  The consistency in the

minimum amount of recruitment fees they paid, and the FLSA violations those fees uniformly

caused, establishes that Plaintiffs and Opt-in Plaintiffs are similarly situated.  Cf. Gaxiola v.

Williams Seafood of Arapahoe, Inc., 776 F. Supp. 2d 117, 130-31 (E.D.N.C. 2011) (certifying

class of H-2B migrant workers alleging FLSA violation for failure to reimburse pre-employment

expenses under more strict Rule 23 standard despite "differences in the specific costs borne by

the workers and the manner in which those costs were paid").

   b.  *Plaintiffs and Opt-in Plaintiffs Were Harmed by Signal's Policy of Not*
       *Reimbursing Them for Recruitment Fees.*

Signal's policy of not reimbursing Plaintiffs for recruitment fees resulted in a class-wide

FLSA violation that is amenable to a resolution on a class-wide basis. See, e.g., Gaxiola, 776 F.

Supp. 2d at 130-31; Ojeda-Sanchez v. Bland, No. 608CV096, 2009 WL 3851623, at *1-2 (S.D.

Ga. Nov. 17, 2009) (certifying collective action of H-2A migrant workers who alleged

inadequate reimbursement under FLSA).

It is undisputed that Signal did not reimburse the Plaintiffs and Opt-in Plaintiffs the

recruitment fees they paid to the Recruitment Conglomerate for the opportunity to work at

Signal.  See Doc. 1918-3, ¶ 27. The recruitment fees caused the Plaintiffs' and Opt-in Plaintiffs'

wages to fall below the federal minimum wage of $5.15 per hour and the applicable overtime

wage for work performed over 40 hours per workweek.  Werner Decl. ¶ 2(c), Ex. 3.  The only

issue remaining is how much money the Plaintiffs and Opt-in Plaintiffs are owed, which relates

---

[6] The evidence establishes that Plaintiffs and Opt-in Plaintiffs in fact paid well over this $3,000 minimum.  Werner Decl. ¶ 2(c), Ex. 3; Stewart Decl. ¶ 2, Exs. UU-DDD (Opt-in Pls.' Decls.). Plaintiffs seek recovery of all of the recruitment fees they paid to the Recruitment Conglomerate to the extent those fees lowered the Plaintiffs first work-week's wages below the federal minimum and overtime wage.  For certification purposes, however, what matters is that all Plaintiffs and Opt-in Plaintiffs paid at least $3,000 for Signal-specific recruitment and this amount alone was sufficient to cause class-wide FLSA violations. Werner Decl. ¶ 2(c), Ex. 3.

to damages and therefore has no bearing on certification.  See Clark v. Centene Co. of Texas,

L.P., No. A-12-CA-174-SS, 2014 WL 4385412, at *14 (W.D. Tex. Sept. 3, 2014) (denying

decertification motion in part because differences in amount of money owed goes to damages,

not liability).[7]

   **2.   Tools**

   Plaintiffs and Opt-in Plaintiffs are similarly situated because they collectively suffered a

FLSA violation as a result of Signal's undisputed policy to deduct the cost of tools from their

wages.  Under the FLSA, an employer may not deduct from an employee's wages costs incurred

primarily for the employer's benefit if the deductions drive wages below the minimum wage.

See Arriaga v. Florida Pac. Farms, L.L.C., 305 F.3d 1228, 1236 (11th Cir. 2002); see also Shultz

v. Hinojosa, 432 F.2d 259, 266-67 (5th Cir. 1970) (employer who furnished butchers with knives

could not deduct the cost of knives from minimum wages). "Tools of the trade and other

materials and services incidental to carrying on the employer's business" are considered for the

primary benefit of the employer and may not be deducted to the extent they lower the workers'

wages below the applicable minimum and/or overtime wage.   29 C.F.R. § 531.3(d)(2); 29

C.F.R. § 531.37; see also Garcia v. Frog Island Seafood, Inc., 644 F. Supp. 2d 696, 708

(E.D.N.C. 2009) (citing 29 C.F.R. § 531.36(b)).

   Signal deducted tools from Plaintiffs' and Opt-in Plaintiffs' wages ranging from $79.00

to $427.24 per workweek.  Werner Decl. ¶ 2(c), Ex. 3 (showing tool deductions in first work

week only).  The tools were "tools of the trade" that are incidental to Signal's business. See

Shultz, 432 F.2d at 266-67; 29 C.F.R. § 531.32(a).  The Plaintiffs' and Opt-in Plaintiffs' costs for

_____

[7] In Plaintiffs' summary judgment brief on Signal's FLSA liability, Plaintiffs set out the
methodology for establishing Signal's liability for recruitment fees for the class based on a
straightforward mathematical calculation.  See Doc. 1848-2, at 15-19.

the tools were not expenses the workers would have incurred in the ordinary course of life.  See
29 C.F.R. § 531.32(a).  Alone and/or coupled with the de facto deductions for recruitment fees,
the tools deductions brought Plaintiffs' and Opt-in Plaintiffs' wages below the minimum wage
(and overtime wages for the Plaintiffs and Opt-in Plaintiffs who worked more than 40 hours in
the first work week).  Signal admits that it did not reimburse the Plaintiffs or Opt-in Plaintiffs for
tools expenses, Doc. 1918-3, ¶ 27, and that this practice was unlawful, see Stewart Decl. ¶ 2, Ex.
PPP (Excerpts, June 25, 2014 R. 30(b)(6) Dep. of Tracey Binion, 744:11-14) (". . . .[W]e were
not supposed to even charge for tools").

Because the Plaintiffs and Opt-in Plaintiffs are similarly situated, and the only question is
how much money they are owed as a result of Signal's unlawful tool deduction policy. This issue
can be easily determined by using Signal's payroll records and requires no individualized
evidence.

### 3.  Housing Deductions

Plaintiffs and Opt-in Plaintiffs are also similarly situated because they were all subject to
Signal's policy of making mandatory wage deductions for room and board at the man camps
from Plaintiffs' and Opt-in Plaintiffs' wages.

An employer may count as part of his/her minimum wage payment the reasonable cost of
board, lodging, and other similar facilities furnished to the employee if those facilities are
customarily furnished to the employee.  See 29 U.S.C. § 203(m); 29 C.F.R. § 531.31.  When the
cost of such facilitates is not "reasonable" or when the housing is provided in violation of
federal, state, or local law, the employer may not credit the housing cost towards its FLSA wage
obligations.  See 29 C.F.R. § 531.31; see also Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d
1500, 1513 (11th Cir. 1993) (employer must prove cost is reasonable to receive a credit); Garcia,

13

644 F. Supp. 2d at 712 (holding employer could not claim the costs of H-2B worker housing toward the minimum wage when the housing was furnished in violation of state law); Chellen v. John Pickle Co., 446 F. Supp. 2d 1247, 1257 (N.D. Okla. 2006) (finding employer could not have an offset against FLSA wages for housing costs of Indian H-2B worker housing in part because the housing was sub-standard).

Plaintiffs and Opt-in Plaintiffs lived in a Signal man camp in either Texas or Mississippi. Stewart Decl. ¶ 2, Ex. MMM (2009 Binion Dep. 57:4-7).  Signal required them all to pay $35.00 per day for room and board.  Stewart Decl. ¶ 2, Ex. NNN (2009 Bingle Dep. 125:6-17).  Signal's policy of deducting the cost of the man camp from all of the Plaintiffs' and Opt-in Plaintiffs' wages resulted in a minimum wage violation on a class-wide basis for two reasons: (1) the man camps were provided in violation of federal law and (1) the housing costs were not reasonable because Signal profited off of the man camps.

Wage deductions for the Signal man camp housing resulted in class-wide FLSA violations because the housing was furnished in violation of federal law.  See Garcia, 644 F. Supp. 2d at 712.  The Texas and Mississippi man camps both had 24 feet by 36 feet pre-fabricated trailers with four showers and two toilets that housed up to 24 workers.  Compare Stewart Decl. ¶ 2, Ex. QQQ (Blueprints of Mississippi man camp) with (Stewart Decl. ¶ 2, Ex. RRR (Blueprint of Texas man camp).  Plaintiffs allege that both man camps violated the Occupational Safety and Health Act ("OSHA") in identical ways.  Compare Stewart Decl. ¶ 2, Ex. SSS (Report of Pls.' OSHA Expert Clyde Payne submitted in David) ("David OSHA Report") with Stewart Decl. ¶ 2, Ex. TTT (Report of Pls.' Expert Clyde Payne submitted in

Samuel) ("Samuel OSHA Report").[8]  For example, both man camps violated OSHA because of the overcrowded sleeping areas, the proximity of the bunk beds, the number of toilets, the cleanliness of the bathrooms, and the unhygienic food facilities.  Compare Samuel Report ¶ 29 with David Report ¶ 30.  Because Signal furnished the man camps in violation of OSHA, its policy of deducting amounts from workers' wages for that housing resulted in a FLSA violation. See Garcia, 644 F. Supp. 2d at 712.

Signal also profited off of the man camps; therefore, the housing cost deductions were not reasonable under § 203(m), resulting in class-wide FLSA violations. 29 C.F.R. § 531.3 ("Reasonable cost does not include a profit to the employer or to any affiliated person.").  After reviewing Signal's financial records, Plaintiffs' financial expert, Robert S. Maness, concluded that Signal made substantial profit from the workers' room and board payments.  See Stewart Decl., Ex. UUU (Expert Report of Pls.' Expert Robert Maness submitted in David, ¶¶ 57-62) (discussing the profits that Signal made off of the Texas and Mississippi man camps).  Mr. Maness opined that Signal made a profit of $730,000 in 2007 alone. See id. at ¶ 61.   Chris Cunningham, Signal Chief Financial Officer, even admitted the man camps were a "profit center." See Stewart Decl. ¶ 2, Ex. VVV (Feb. 2007 Email String from Chris Cunningham about Man Camps). As such, Signal's policy of deducting from each worker the full $35.00 per day for room and board violated the FLSA.

The issue of whether Signal's uniform deduction policy violated its minimum wage and overtime obligations, either because the housing cost was not reasonable or because the housing

---

[8]     The Court excluded Mr. Payne from testifying during the David trial because his opinions were not relevant to the trial claims (Doc. 2132).  Mr. Payne's opinions regarding the OSHA violations at the man camps remain relevant to Plaintiffs' FLSA claims.

was provided in violation of federal law, can be resolved on a class-wide basis.  The only issue in dispute is how much money the Plaintiffs are owed for the housing overpayment.

### 4.  Safety Bonuses

All Plaintiffs and Opt-in Plaintiffs were also subject to Signal's policy of incorrectly calculating the safety bonuses with respect to the regular rate of pay for overtime purposes. Overtime pay is calculated by adding one and one half to an employee's "regular rate" of pay. 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.107.  FLSA defines "regular rate" to include "all remuneration for employment." 29 U.S.C. § 207(e). When an employee receives a discretionary bonus, that bonus "must be totaled with other earnings to determine the regular rate on which overtime pay must be based." 29 C.F.R. § 778.208.

All Plaintiffs and Opt-in Plaintiffs were eligible for safety bonuses.  Doc. 1748, ¶ 188. Signal's bonuses were not discretionary, yet Signal did not correctly include those bonuses with respect to the workers' regular rate of pay for overtime purposes.  Stewart Decl. ¶ 2, Ex. OOO (2014 Killeen Dep. 461:21-462:11).  The result was that Plaintiffs and Opt-in Plaintiffs did not receive proper overtime wages during the weeks they received a safety bonus and worked overtime.  Plaintiffs and Opt-in Plaintiffs are therefore similarly situated with respect to their FLSA safety bonus claim.  See Donohue v. Francis Servs., Inc., No. CIV.A. 04-170, 2004 WL 1161366, at *2 (E.D. La. May 24, 2004) (conditionally certifying class of individuals with overtime claims based on bonuses). As with the other aspects of Plaintiffs' FLSA claims, the only remaining issue with respect to the safety bonus policy is how much money they are owed, which has no bearing on certification. See Clark, 2014 WL 4385412, at *14 (holding that "evidence concerning how many overtime hours each Plaintiff worked is relevant only to damages, not liability, and therefore does not require decertification").

16

**B. Defendants' Defenses Are Universal to All Plaintiffs.**

Plaintiffs and Opt-in Plaintiffs allege they are victims of four policies that applied uniformly to all H-2B workers at Signal. Signal does not deny these policies existed and applied to all the H-2B workers. Cf. Doc. 1748, at 4 (Signal claiming it has no liability for "all policies and practices instituted by Signal with regard to the Indian Workers' recruitment, employment, and deductions" because they were instituted in good faith). Indeed, none of Signal's defenses even remotely implicates the circumstances of specific Plaintiffs. See Basco v. Wal-Mart Stores, Inc., No. CIV.A. 00-3184, 2004 WL 1497709, at *5 (E.D. La. July 2, 2004) (noting that "a court can foreclose a plaintiff's right to proceed collectively only if 'the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.'") (citation omitted).

Signal's defense to Plaintiffs' recruitment fees claim is evidence that Plaintiffs are similarly situated. Signal sought dismissal of Plaintiffs' recruitment fees claim on the basis that they are not entitled to reimbursement for those fees under the FLSA, confirming that the ruling on whether Plaintiffs may recover recruitment fees will apply equally to all Plaintiffs and Opt-in Plaintiffs. Doc. 1431.[9] Signal's position is "wholly inconsistent, and substantially undercut[s] the force of [Signal's]" argument that the workers are not similarly situated. See Clark, 2014 WL 4385412, at *13 (denying decertification and holding that defendant's summary judgment motion calling for dismissal of all plaintiffs' claims is proof the workers are similarly situated).

Signal's remaining defenses to Plaintiffs' recruitment fees claim also do not require any Plaintiff-specific inquiries. Signal claims Plaintiffs lack records of their recruitment fees, but

_____

[9]     Plaintiffs and Defendants disagree about whether recruitment fees are recoverable under the FLSA in the Fifth Circuit, and whether, if they are recoverable, the fees were for the primary benefit of Signal. Compare Doc. 1848-2 (Pls.' Mot. For Summ. J. on FLSA Liability) with Doc. 1918-2 (Defs.' Opp. To Pls.' Mot. For Summ J. on FLSA Liability).

any alleged lack of records is not a barrier to certification especially when, as is the case here, there is ample testimony confirming that workers paid considerable recruitment fees for Signal recruitment.  See Maynor, 671 F. Supp. 2d at 933 (holding that needing to rely on worker testimony due to lack of records to establish the FLSA violation is not a reason to decertify the class); see also Moreau v. Klevenhagen, 956 F.2d 516, 522–23 (5th Cir.1992) (remanding FLSA case to district court to allow deputy sheriffs to testify to amount of unpaid training hours). Plaintiffs may prove their FLSA damages by way of "just and reasonable" inference, including through representative testimony. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946); Albanil v. Coast 2 Coast, Inc., 444 F. App'x 788, 806 (5th Cir. 2011).  Here, Plaintiffs have offered sufficient evidence and testimony that is representative of the class, see, e.g., Stewart Decl. ¶ 2, Exs. H-RR (evidence of worker recruitment payments), UU-DDD (Opt-in Pls.' Decls.), as well as testimony from the recruiters themselves regarding the minimum fee they charged the workers for recruitment, SS (2014 Dewan Decl.), TT (2009 Pol Dep. 373:16-20).  This evidence establishes that all Plaintiffs and Opt-in Plaintiffs paid Signal-specific recruitment fees that caused a FLSA violation.  See Werner Decl. ¶ 2(c), Ex. 3.

Signal has asserted that some, unidentified "leadermen" did not pay fees to Burnett and that the Plaintiffs who were recruited originally for J&M and Indo-Amerisoft ("IAS") did not pay fees for Signal recruitment.  See Docs. 1981-3, ¶ 17 (leadermen); 1845-1, at 7 (J&M and IAS fees).  Even if Signal could support these assertions, which it cannot and have not, they would not defeat the instant certification motion.  All Plaintiffs and Opt-in Plaintiffs suffered a FLSA violation as a result of the minimum $2,000 universal fee to Dewan and the minimum $1,000 universal fee to Pol for Signal recruitment.  Werner Decl. ¶ 2(c), Ex. 3.  The only issue is

how much money they are owed, and variances in Plaintiffs' and Opt-in Plaintiffs' damages amounts are not a barrier to certification.  See Clark, 2014 WL 4385412, at *14.

Signal's defenses to Plaintiffs' housing and tools claims likewise do not require individualized treatment.  Signal concedes that the H-2B workers from India were subject to the housing and tools deductions.  Stewart Decl. ¶ 2, Ex. MMM (2009 Binion Dep. 31:4-14).  If the Court finds those deductions are unlawful, then the only question will be how much money Plaintiffs and Opt-in Plaintiffs are owed for overpaying for tools and housing.

Signal also contends that OSHA did not apply to the man camps, and even if it did, the alleged differences between the Texas and Mississippi man camps render certification inappropriate. Whether OSHA applied to the man camps is a question of law, the resolution of which will apply equally to both locations (and, in turn, to all Plaintiffs' and Opt-in Plaintiffs' housing-related FLSA claims).  Should the court determine that one camp was compliant and the other was not, thus effectively finding Signal liable for FLSA violations for only the Plaintiffs living in the non-compliant camp, then this group may be divided into a subclass.  Subclasses are an acceptable method for addressing differences among groups within the class. Maynor, 671 F. Supp. 2d at 937 (denying motion to decertify when subclasses may adequately deal with any individualized aspects of plaintiffs' claims).  "In short, the common issues predominate and [any] 'individualized' liability issues apply to groups of plaintiffs and can be resolved on that basis." See id. at 935.

### C.  Fairness and Efficiency Require Final Certification of the Collective Action

The Court has already acknowledged that "[a] resolution of all of the opt-ins' FLSA claims in a collective manner is the most efficient way to adjudicate their claims."  See David, 2013 WL 5740318, at *2 (denying transfer of FLSA claims to other pending Signal cases because doing so "would undermine rather than promote judicial economy").

19

Nor will collective adjudication of Plaintiffs' claims cause Signal any prejudice.  The record in <u>David</u> on the FLSA claims is extensive, including multiple days of depositions, interrogatories, requests for production, and requests for admission of the named Plaintiffs. Given that Plaintiffs and Opt-in Plaintiffs were subject to the same unlawful policies, the named Plaintiffs' representative testimony (as well as evidence and testimony from some of the Opt-in Plaintiffs, <u>see, e.g.</u>, Exs. UU-DDD) provides sufficient evidence to determine Signal's FLSA liability.  <u>See</u> <u>Albanil</u>, 444 F. App'x at 806.  Even if the named Plaintiffs' testimony were not sufficient, which it is, Signal has had the benefit of conducting discovery, including taking depositions of some of the Opt-in Plaintiffs in the <u>Achari</u> consolidated cases and in <u>Samuel</u> and <u>Joseph</u>.  Finally, all eligible Opt-in Plaintiffs have already opted in to the case, removing the possibility of any prejudice to Signal stemming from of late-filed opt-ins.

Thus, because "[s]ection 216(b) collective actions are intended 'to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer," the claims of the 12 named Plaintiffs and the 372 Opt-in Plaintiffs should be permitted to proceed collectively. <u>See</u> <u>Roussell</u>, 441 F. App'x at 227 (citations omitted).

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs' respectfully request the Court grant their Motion for Final Certification of their claims for minimum wage and overtime violations under the FLSA.

Respectfully submitted this 13th day of January, 2015,

**_s/ Meredith B. Stewart_**
Meredith B. Stewart
Louisiana Bar No. 34109
Southern Poverty Law Center
1055 St. Charles Ave., # 505
New Orleans, LA 70130
504-486-8982
Fax: 504-486-8947
meredith.stewart@splcenter.org

Kristi L. Graunke (*pro hac vice*)
Georgia Bar No. 305653
Naomi Tsu (*pro hac vice*)
Georgia Bar No. 507612
Daniel Werner (*pro hac vice*)
Georgia Bar No. 422070
Immigrant Justice Project
Southern Poverty Law Center
1989 College Avenue NE
Atlanta, Georgia 30317
Telephone: (404) 521-6700
Facsimile: (404) 221-5857
naomi.tsu@splcenter.org
kristi.graunke@splcenter.org
daniel.werner@splcenter.org

Anjali J. Nair (*pro hac vice*)
Alabama Bar No. 1160K42Y
Southern Poverty Law Center
400 Washington Ave.
Montgomery, AL 36104
334-956-8255
Facsimile: 334-956-8481
anjali.nair@splcenter.org

Alan B. Howard, T.A. (*pro hac vice*)
New York Bar No. 2173268
Hugh Sandler (*pro hac vice*)
New York Bar No. 4712584
Melia Amal Bouhabib (*pro hac vice*)
New York Bar No. 4878468.
Chiemi Suzuki (*pro hac vice*)
New York Bar No. 4330569
Crowell & Moring, LLP
590 Madison Ave.
New York, NY 10022

**_s/ Tracie L. Washington_**
Tracie L. Washington, Esq.
Louisiana Bar No. 25925
Louisiana Justice Institute
1631 Elysian Fields Avenue
New Orleans, Louisiana 70117
Telephone:  504.872.9134
Facsimile:  504.872.9878
tracie@LouisianaJusticeInstitute.org
tlwesq@cox.net

Ivy O. Suriyopas (*pro hac vice*)
New York Bar No. 4406385
Asian American Legal Defense
and Education Fund
99 Hudson Street, 12th Floor
New York, NY  10013
Telephone: (212)966-5932
isuriyopas@aaldef.org

Joseph Bjarnson (*pro hac vice*)
New York Bar No. 4774055
Sahn Ward Coschignano & Baker
333 Earle Ovington Blvd., # 601
Uniondale, NY 11553
516-228-1300
jbjarnson@swcblaw.com

Chandra S. Bhatnagar (*pro hac vice*)
New York Bar No. 4136966
Human Rights Program
American Civil Liberties Union
125 Broad Street – 18th Floor
New York, New York 10004
Telephone: (212) 519-7840
cbhatnagar@aclu.org

21

212-803-4042
ahoward@crowell.com
hsandler@crowell.com
abouhabib@crowell.com
csuzuki@crowell.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January, 2015, I filed the foregoing document using the Court's Electronic Case Filing system, which will provide service on counsel for all ECF-registered parties.

I further certify that the attached has been deposited in a U.S. Mail receptacle for delivery by first class mail, properly addressed and with postage pre-paid to:

Global Resources, Inc.
13 Herring Road
Beaumont, MS 39423

Indo-Ameri Soft L.L.C.
c/o Kevin K. Gipson, Esquire (bankruptcy counsel)
3920 General DeGaulle Drive
New Orleans, LA 70114

Kurella Rao
c/o Kevin K. Gipson, Esquire (bankruptcy counsel)
3920 General DeGaulle Drive
New Orleans, LA 70114

Billy Wilks,
J&M Assoc of Mississippi
J&M Marine & Industrial
9136 Heather Lane
Moss Point MS 39562.

*s/ Meredith B. Stewart*
Meredith B. Stewart

23