```
 1              IN THE UNITED STATES DISTRICT COURT FOR

 2                 THE EASTERN DISTRICT OF LOUISIANA

 3                          AT NEW ORLEANS

 4   KURIAN DAVID, et al.,                  )
                                            )
 5                  Plaintiffs,             )
                                            )
 6           v.                             ) Case No. 08-1220 "E"
                                            ) February 21, 2014
 7   SIGNAL INTERNATIONAL, LLC, et al.,     ) Status Conference
                                            )
 8                  Defendants.             )
     _____   )
 9   Related Cases:                         )
                                            )
10   EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,)
                                            )
11                  Plaintiffs,             )
                                            )
12   V.                                     ) Case No. 12-557 "E"
                                            )
13   SIGNAL INTERNATIONAL, LLC, et al.,     )
                                            )
14                  Defendants.             )
     _____   )
15   LAKSHMANN PONNAYAN ACHARI, et al.,     )
                                            )
16                  Plaintiff,              )
                                            )
17   V.                                     ) Case No. 13-6218 "E"
                                            )
18   SIGNAL INTERNATIONAL, LLC, et al.,     )
                                            )
19                  Defendants.             )
                                            )
20   Applies to:  ALL CASES                 )
     _____   )
21

22
                       TRANSCRIPT OF PROCEEDINGS
23
                 BEFORE THE HONORABLE SUSIE MORGAN
24
                    UNITED STATES DISTRICT JUDGE
25
```

```
 1                              SUSAN A. ZIELIE, RMR, FCRR
                                Official Court Reporter
 2                              HB-275
                                500 Poydras Street
 3                              New Orleans, Louisiana 70130
                                susan_zielie@laed.uscourts.gov
 4                              laedcourtreporter@gmail.com
                                504.589.7781
 5

 6            Proceedings Recorded by Computer-aided Stenography.

 7
                                 APPEARANCES:
 8

 9   For Plaintiffs 08-1220/      ALAN HOWARD, ESQ.
        12-557 Intervenors:       Crowell & Moring, LLP
10                                590 Madison Avenue
                                  New York NY 10022
11                                212.803.4021

12   For Plaintiffs SPLC 08-1220/
        12-557 Intervenors:       DANIEL WERNER, ESQ.
13                                TOM FRITZSCHE, ESQ.                03:53PM
                                  ANJALI NAIR, ESQ.                  03:53PM
14                                Southern Poverty Law Center
                                  Immigrant Justice Project
15                                233 Peachtree Street NE
                                  Atlanta GA 30303
16                                404.521.6700

17   For Plaintiff Achari:        GREG GRIMSAL, ESQ.
                                  Gordon Arata McCollam Duplantis
18                                  & Eagan
                                  201 St. Charles Avenue
19                                Suite 4000
                                  New Orleans LA 70170-4000
20                                504.582.1111

21                                STEPHEN RAPTIS, ESQ.
                                  Manatt Phelps & Phillips
22                                700 12th Street NW
                                  Suite 1100
23                                Washington DC 20005
                                  202.585.6500

24

25
```

```
 1   APPEARANCE - 2

 2                                   EBEN COLBY, ESQ.
                                     Skadden Arps Slate Meagher
 3                                     & Flom, LLP
                                     One Beacon Street
 4                                   Boston MA 02108
                                     617.573.4800
 5

 6   For the EEOC:                   JULIE BEAN, ESQ.
                                     GERALD MILLER, ESQ.
 7                                   US Equal Employment
                                       Opportunity Commission
 8                                   1130 22nd Street South
                                     Suite 2000
 9                                   Birmingham AL 35205
                                     205.212.2067
10

11   For Defendant Signal:          ERIN CASEY HANGARTNER, ESQ.
                                     ELHAM RABBANI, ESQ,
12                                   BRIAN ROUX, ESQ.
                                     Hangartner Rydberg Terrell
13                                     & Hart, LLC
                                     One Shell Square
14                                   701 Poydras Street
                                     Suite 310
15                                   New Orleans LA 70139

16                                   PATRICIA BOLLMAN, ESQ.
                                     Patricia Bollman, APLC
17                                   PO Box 13707
                                     New Orleans LA 70185
18

19   For Defendant/Cross            STEPHEN SHAPIRO, ESQ.
     Defendant Dewan:               Stephen Shapiro, ESQ.
20                                   700 Camp Street
                                     New Orleans LA 70130
21                                   504.309.8442

22   For Defendant Burnett:         TIM CERNIGLIA, ESQ.
                                     Law office of Tim Cerniglia
23                                   1521 St. Charles Avenue
                                     New Orleans LA 70130
24                                   504.586.0555
                                                              10:48AM
25                                                            10:48AM
```

```
 1              NEW ORLEANS, LOUISIANA; FRIDAY, FEBRUARY 21, 2014    10:48AM

 2                          4:00 P.M.                               10:48AM

 3         THE COURT:  Hello?  Anybody there?                       04:08PM

 4         MR. HOWARD:  Alan Howard, Your Honor.                    04:08PM

 5         THE COURT:  Must all be on mute.                         04:08PM

 6             So let's go around the room and identify yourself    04:08PM

 7    for the record.                                               04:08PM

 8         MR. WERNER:  Good afternoon, Your Honor.  Daniel Werner  04:08PM

 9    for the plaintiffs and plaintiff intervenors.                 04:08PM

10             Tom Fritzsche and Anjali Nair are going to be        04:08PM

11    here.  I believe are stuck in traffic, but will be here       04:08PM

12    momentarily.                                                  04:09PM

13         MR. HARRIS:  Good afternoon.  Chris Harris for the       04:09PM

14    Achari plaintiffs.                                            04:09PM

15         MR. GRIMSAL:  Greg Grimsal for the Gordon Arati firm,    04:09PM

16    also for the Achari plaintiffs in all four cases.            04:09PM

17         MR. SHAPIRO:  Steve Shapiro.                             04:09PM

18         MR. CERNIGLIA:  Tim Cerniglia for the Dewan defendant.   04:09PM

19         MS. BEAN:  Julie Bean for the EEOC.                      04:09PM

20         MR. BOWLER:  Gerald Bowler for EEOC.                     04:09PM

21         MS. BOLLMAN:  Patricia Bollman for Signal.               04:09PM

22         MR. WEINBERGER:  Alan Weinberger for Signal.             04:09PM

23         MS. HANGARTNER:  Erin Hangartner for Signal.             04:09PM

24         THE COURT:  On the phone, we have Alan Howard,           04:09PM

25    Elizabeth Rowland for Achari; Anika Jones for EEOC; Eben Colby 04:09PM
```

| | | |
|---|---|---|
| 1 | for Chakkiyatil; John Low for Krisnhakutty; Steven Raptis, | 04:09PM |
| 2 | Devassy; Brian Roux, Signal; Chuck Kellner, who is Signal. | 04:10PM |
| 3 | MS. HANGARTNER:  D4.  Signal. | 04:10PM |
| 4 | THE COURT:  Signal's SEI consultant. | 04:10PM |
| 5 | MS. HANGARTNER:  Yes. | 04:10PM |
| 6 | THE COURT:  Jill Klemann, who is Signal's ESI | 04:10PM |
| 7 | consultant. | 04:10PM |
| 8 | And Tom O'Connor for David, ESI consultant. | 04:10PM |
| 9 | We have a list of things to talk about and see if | 04:10PM |
| 10 | you all have any other issues that we need to talk about. | 04:10PM |
| 11 | The first thing I wanted to know is the -- I | 04:10PM |
| 12 | signed the order for the protocol for the electronic discovery | 04:11PM |
| 13 | and the clawback agreement.  So I wanted to know what has | 04:11PM |
| 14 | happened since that time.  Has there been some production? | 04:11PM |
| 15 | MS. HANGARTNER:  There has not been any production. | 04:11PM |
| 16 | Brian, are you online? | 04:11PM |
| 17 | MR. ROUX:  Yes, I am on the line. | 04:11PM |
| 18 | MS. HANGARTNER:  Do you want to take it from here, | 04:11PM |
| 19 | Brian? | 04:11PM |
| 20 | MR. ROUX:  So we've completed the ingestion with D4 for | 04:11PM |
| 21 | all remaining email and the initial circumstances.  D4 will be | 04:11PM |
| 22 | producing a sample of that data, both for other IT purposes and | 04:11PM |
| 23 | so we can do an export format for the plaintiffs to determine | 04:11PM |
| 24 | that that is what they are requesting. | 04:11PM |
| 25 | Once that is begun, we'll be producing the emails | 04:11PM |

1   that are on the Achari list but have not triggered the defensive   04:11PM

2   severance.  And that's where we are as of this afternoon.   04:11PM

3            Correct me if I'm wrong, Chuck.   04:11PM

4         MR. KELLNER:  As far as the productions are concerned,   04:12PM

5   that's where we are.   04:12PM

6            In addition to that, Tom O'Connor and I had met to   04:12PM

7   discuss a protocol in producing from the client's enterprise   04:12PM

8   planning resource system.  We're going to spend some time   04:12PM

9   interviewing our business and IT clients and then get back to   04:12PM

10  them with the kinds of data that we can produce from the ERP and   04:12PM

11  then we'll select from there.   04:12PM

12        THE COURT:  So is there general agreement that this is   04:12PM

13  proceeding according to the plan, the protocol?   04:12PM

14        MR. WERNER:  Yes, Your Honor.   04:12PM

15        MS. BEAN:  Well, Your Honor, if I could be heard.   04:12PM

16            We've asked that the IT representatives for   04:12PM

17  Signal and for the plaintiff intervenors communicate with our   04:12PM

18  ESI guy.  And, they've communicated, and he knows to explain to   04:12PM

19  them that he wants to be part of the discussion.  And, so, other   04:13PM

20  than that ...   04:13PM

21        THE COURT:  About the ERP?   04:13PM

22        MS. BEAN:  Yes.  And ESI matters generally.  But   04:13PM

23  definitely about the ERP.   04:13PM

24        THE COURT:  And has there been any discussion since   04:13PM

25  last we talked about this with the Texas counsel?   04:13PM

1       MS. HANGARTNER:  No, Your Honor.  We have filed a          04:13PM

2  motion for a stay in Texas, and we got a final judgment from   04:13PM

3  Judge Crone denying the motion to transfer.                    04:13PM

4       MS. BEAN:  So we're off to the Fifth Circuit.             04:13PM

5       MS. HANGARTNER:  We have included them as you'd asked,    04:13PM

6  but we have not had -- they have not participated in           04:13PM

7  depositions.                                                   04:13PM

8       THE COURT:  And haven't given you any feedback about      04:13PM

9  the ESI plans?                                                 04:13PM

10       MS. HANGARTNER:  No, Your Honor.                          04:13PM

11       THE COURT:  Well, at least you made the effort and        04:13PM

12  tried to work with them.                                       04:13PM

13            With respect to the production of documents to the   04:14PM

14  Achari plaintiffs, I signed a protective order and I just took 04:14PM

15  out that paragraph that was causing the problem, thinking that 04:14PM

16  that would then allow you to produce the Sig-P documents.      04:14PM

17       MS. HANGARTNER:  Yes, Your Honor.                         04:14PM

18       THE COURT:  Has that been done?                           04:14PM

19       MS. HANGARTNER:  I believe you've received Sig-P from     04:14PM

20  Brian Bagnetto from my office?                                 04:14PM

21       MR. CERNIGLIA:  I don't believe they were sent to me     04:14PM

22  directly.                                                      04:14PM

23       MS. ROWLAND:  Elizabeth Rowland for the Achari            04:14PM

24  plaintiffs.  We've received those.                            04:14PM

25       THE COURT:  So that's progress.  You all at least have    04:14PM

1     those documents.                                                  04:14PM

2             MR. CERNIGLIA:  Yes.                                      04:14PM

3             THE COURT:  I did an order telling the plaintiffs in      04:15PM

4     the David case, and the Achari plaintiffs, to file the           04:15PM

5     complaints.  And you all asked for extensions to March 3rd, and  04:15PM

6     I signed those orders.  And the reason I did that is because, in 04:15PM

7     looking at the protective orders and all these other things that 04:15PM

8     I'm looking at, it was not -- I was having -- it was not that    04:15PM

9     clear to me in all cases what claims were being made against     04:15PM

10    which defendants and what the basis of the cause of actions      04:15PM

11    were.  And so I thought, okay, let's -- for right now, let's get 04:15PM

12    this straight.  And --                                           04:16PM

13            Greg?                                                     04:16PM

14            MR. GRIMSAL:  If I could just ask a question?  And I      04:16PM

15    wish to pose this academically.                                  04:16PM

16            If one of the plaintiffs believes in good faith          04:16PM

17    that the complaint on file addresses those concerns adequately,  04:16PM

18    should they just go with that, or do a pro-forma?                04:16PM

19            THE COURT:  Are you sure you did everything I wanted?     04:16PM

20            MR. GRIMSAL:  I think you just answered my question.      04:16PM

21    Thank you.                                                       04:16PM

22            THE COURT:  So go back and look at it again.             04:16PM

23            MR. GRIMSAL:  Thank you.                                  04:16PM

24            THE COURT:  I want you to be very specific.  Because it   04:16PM

25    will help me a lot now and in the future and make this -- I      04:16PM

```
1    think it will clarify things.  And we're at the point where we    04:16PM
2    should be able to do that.                                        04:16PM
3            MR. GRIMSAL:  Thank you, Judge.                           04:16PM
4            MR. WERNER:  Just to clarify, you're not seeking us to    04:16PM
5    specify the amounts of damages?                                   04:16PM
6            THE COURT:  No.                                           04:17PM
7            MS. BEAN:  But just what the specific claims are for      04:17PM
8    damages and against whom?                                         04:17PM
9            THE COURT:  And what the basis is.                        04:17PM
10               And one thing I want you to look at is your state     04:17PM
11   law claims, for example.  What is it that you're asking for over  04:17PM
12   for what period of time.  Tell me that, too.  So I can figure     04:17PM
13   out and the defendants will know.  Maybe it will resolve some     04:17PM
14   issues, if everybody understands exactly what you're --           04:17PM
15           MR. GRIMSAL:  It will have an interior effect.            04:17PM
16           THE COURT:  I hope not.                                   04:17PM
17           MS. HANGARTNER:  Your Honor, does that include the RICO   04:17PM
18   fraud charge to be amended as well?  David has a RICO fraud       04:17PM
19   charge.                                                           04:17PM
20           MS. BEAN:  One of the four Mississippi cases.             04:17PM
21           THE COURT:  Well, if it's in your claim, then you have    04:17PM
22   to be sure you're very specific about it.  I don't remember       04:17PM
23   looking at those specifically, but whatever was in your          04:17PM
24   complaint.  So I'm assuming I'll get those in a week or so, or    04:18PM
25   maybe two weeks.                                                  04:18PM
```

1   The big issue I guess today is the trial dates.                       04:18PM

2   Let me ask you, before we go to that, the                            04:18PM

3   deposition that you had this week, you had four days.                04:18PM

4   MS. HANGARTNER:  Yes.                                                04:18PM

5   THE COURT:  Did that turn out to be sufficient?                      04:18PM

6   MS. HANGARTNER:  I believe they are finished.  Everyone              04:18PM

7   jumped into their cars and everyone headed over here as fast as      04:18PM

8   they could.  Some faster and more successful than others.            04:18PM

9   THE COURT:  Why didn't they all walk?                               04:18PM

10  MS. BOLLMAN:  Because we were in Metairie in my office.             04:18PM

11  MR. CERNIGLIA:  I believe there is an issue with those             04:19PM

12  depositions.                                                         04:19PM

13  THE COURT:  You're going to have to do it by motion,               04:19PM

14  because Lon told me about the issue which sounded like it's a        04:19PM

15  document you have.                                                   04:19PM

16  MR. CERNIGLIA:  It's a document I have.                             04:19PM

17  THE COURT:  And is there any dispute about whether this            04:19PM

18  is the one that was filled out for this plaintiff?                   04:19PM

19  MR. CERNIGLIA:  No.                                                 04:19PM

20  The issue is this.  The complaint alleges                            04:19PM

21  misrepresentation and failure of my client to do certain things.    04:19PM

22  My client did that.  He in fact filed I-140 applications for         04:19PM

23  whom of these plaintiffs that have gone to trial, and this is        04:19PM

24  after he found out they were terminated.  He scrambled to keep       04:19PM

25  them in the United States legally and did everything he could.       04:19PM

1    My question to you was:  Well, what is the

2  problem, didn't my client do everything he could legally?  I

3  mean, everything he could to keep them legally in the United

4  States?

5         He was instructed not to answer because that would

6  go into immigration status post-Signal.

7         I say:  No, it is an allegation that my client did

8  not do something that he did, and I have a right to say that he

9  did do it.

10         THE COURT:  Have you done written discovery about that?

11         MR. CERNIGLIA:  I have.  And they refused to answer all

12  of my interrogatories.

13         We have a hearing in front of Judge Knowles.  I've

14  also asked for production of documents along those lines, and

15  they refused to produce most of those on the grounds that it's

16  the same thing as the interrogatory asked.

17         THE COURT:  So why don't we see how that works out and

18  maybe it will get resolved.  Because it does sound to me like

19  it's different from the immigration.

20         MR. CERNIGLIA:  It's what my client did.

21         THE COURT:  The affidavit and the whole immigration

22  process.  Your client did it, you have it.  It's a question

23  of --

24         MR. CERNIGLIA:  He fulfilled the contract of what he

25  promised.

1        THE COURT:  Guess what you're asking is did your client    04:21PM

2   do this.                                                         04:21PM

3        MR. CERNIGLIA:  They wouldn't let him answer.               04:21PM

4        MR. FRITZSCHE:  You got an answer to that question.         04:21PM

5            The question that we would not allow our client to      04:21PM

6   answer that ended the deposition was:  The reason you needed     04:21PM

7   this information or you needed this application was in order to  04:21PM

8   stay legal in the United States, because otherwise you would be  04:21PM

9   deported, wasn't that the case?                                  04:21PM

10           So that's the question directly about our client's      04:21PM

11  immigration status at the time that we objected, because we      04:21PM

12  think that that's clearly forbidden by the protective order.     04:21PM

13  Mr. Cerniglia already had a chance to establish what was filed   04:21PM

14  or not filed.                                                    04:21PM

15       THE COURT:  So it's not a question of whether this was      04:21PM

16  filed; it's follow-up questions about illegal status?           04:21PM

17       MR. CERNIGLIA:  It has nothing to do with the present       04:21PM

18  status.  None whatsoever, Your Honor.  It only has to do with my 04:22PM

19  client fulfilling what he said he would do.                      04:22PM

20       THE COURT:  The question he said you want to ask really     04:22PM

21  didn't have anything to do with that either.                     04:22PM

22       MR. CERNIGLIA:  That's exactly what it had to do with.      04:22PM

23       THE COURT:  You see how your discovery motion practice      04:22PM

24  goes with Judge Knowles and then whether that resolves the       04:22PM

25  issue.                                                           04:22PM

1          MR. CERNIGLIA:  I think what will resolve the issue is          04:22PM

2    not that so much as we're asking -- you have to recall that my          04:22PM

3    client's an immigration lawyer in India.  He executed a number          04:22PM

4    of contracts and a lot of different things happened.  Part of          04:22PM

5    their allegations for misrepresentation and breach of contract          04:22PM

6    is that my client did not keep his promise of filing for green          04:22PM

7    cards.  My client was following exactly the precise what he was          04:22PM

8    supposed to do.  When things got messed up, when a number of the          04:23PM

9    plaintiffs either quit, left or were terminated, my client then          04:23PM

10   put into motion the things to do, him, necessary to keep them.          04:23PM

11   To file the I-140s and everything they had planned, he was          04:23PM

12   trying to do it.  They have alleged in this complaint that he          04:23PM

13   never did that; he made promises and he never kept his promises.          04:23PM

14   But he did.          04:23PM

15          And I should be allowed to establish that your          04:23PM

16   allegation in your complaint was false because I did it.          04:23PM

17          THE COURT:  But you may not ever get a plaintiff to say          04:23PM

18   at a deposition that my allegation is false.          04:23PM

19          But that's not your job.  Your job is to ask him          04:23PM

20   did this happen, do you agree this happened.          04:23PM

21          MR. CERNIGLIA:  Yes, that's right.          04:23PM

22          THE COURT:  And I don't understand what the next          04:23PM

23   question that had to do:  Well, he did do that because if you          04:23PM

24   didn't you'd be illegal, what's that got to do with it?          04:24PM

25          MR. CERNIGLIA:  What it has to do with this, Your          04:24PM

1      Honor, the way the question was originally phrased was you                04:24PM

2      needed this I-140 filed.                                                  04:24PM

3            THE COURT:  But why do you have to ask him that?                    04:24PM

4      That's a legal argument.  Why don't you just ask him did this             04:24PM

5      happen.  You're asking this plaintiff about the facts.                    04:24PM

6                  So I don't like people trying to make their legal            04:24PM

7      arguments by making the plaintiffs make it for them, so you all           04:24PM

8      try to stick to the facts in your deposition.                             04:24PM

9                  But if you, after you get through with your motion            04:24PM

10     practice, if you think you haven't gotten what you need, then             04:24PM

11     you need to file something.  And then, that way, I'll have the            04:24PM

12     transcript in front of me and I'll have your argument in front            04:24PM

13     of me.                                                                    04:24PM

14            MR. CERNIGLIA:  When the case is tried, just as an                 04:24PM

15     example, Your Honor -- and I'm not trying to be -- I'm being              04:24PM

16     argumentative but I'm trying not to be.  The point is, the                04:24PM

17     overall allegations and claims to the jury is that my client             04:24PM

18     left these people out to dry.  That's the long and short of it.           04:25PM

19     As a result, that they've got nothing but headaches and                   04:25PM

20     promises.                                                                 04:25PM

21                  My client's defense to that is that, no, that's              04:25PM

22     false, I did certain things, I did x, y and z, and they knew he           04:25PM

23     was doing x, y and z.                                                     04:25PM

24            THE COURT:  Those are facts.  Those are facts.                     04:25PM

25            MR. CERNIGLIA:  But, when I asked when he would say,               04:25PM

1   well, you know, you didn't -- if the I-140 got denied, that's of   04:25PM

2   no consequence.   04:25PM

3           My question was:  Why did you need it appealed?   04:25PM

4   Because he signed an agreement for my client to represent him on   04:25PM

5   the appeal, and that was one of the lines of questions that they   04:25PM

6   refused to ask.   04:25PM

7           And the answer is:  Because I know I needed him to   04:25PM

8   file these documents for him to stay in the United States.   04:25PM

9           So it shows that my client is trying.  If the jury   04:25PM

10  gets the picture, because of the way that they presented the   04:25PM

11  class, that my client has just left them out to dry, instead of   04:26PM

12  doing everything he can --   04:26PM

13          THE COURT:  But your client is going to be there to   04:26PM

14  testify:  I did do these things.   04:26PM

15          MR. CERNIGLIA:  And I need to show that he did it with   04:26PM

16  them -- I have a right for them to say that.   04:26PM

17          THE COURT:  But I think he admitted that these things   04:26PM

18  were done; correct?   04:26PM

19          MR. FRITZSCHE:  That's correct.  I don't think we   04:26PM

20  should be arguing necessarily about it, but I think sort of the   04:26PM

21  legal question may be, would be, was the understanding that   04:26PM

22  these applications be filed at what time.   04:26PM

23          So the clients' concerns is not necessarily were   04:26PM

24  they ever filed.  But I think that's all factual questions that   04:26PM

25  I think have been answered.  So the reason why we asserted   04:26PM

1   protective, or with regard to certain questions, was simply          04:26PM

2   because Mr. Cerniglia was going beyond those factual questions        04:26PM

3   that related to the argument that he's making now.                    04:26PM

4        THE COURT:  We're not going to resolve this today so           04:26PM

5   let's talk about things we can resolve.                               04:26PM

6             I think there's a question in the EEOC case, the           04:27PM

7   scheduling order, to move the discovery deposition deadline; is       04:27PM

8   that right?                                                           04:27PM

9        MS. BEAN:  Yes, Your Honor.                                     04:27PM

10            And we actually did come up with a plan.  We're            04:27PM

11  assuming the Court -- if the Court were not to move the trial         04:27PM

12  dates, then the order that's there, to me, is about as good as        04:27PM

13  we can get.  It's a lot to do in a very short period of time.         04:27PM

14  So we've come up with a plan.  I think that if the Court were to      04:27PM

15  keep that date, most of the dates can stay the same except for        04:27PM

16  giving one additional month for fact and deposition discovery.        04:27PM

17       THE COURT:  It says somebody asked to change the trial          04:28PM

18  date?                                                                 04:28PM

19       MS. BEAN:  No.                                                   04:28PM

20       THE COURT:  So we've got an EEOC phase trial date of            04:28PM

21  June 1, 2015.                                                         04:28PM

22       MS. BEAN:  Yes.                                                  04:28PM

23       THE COURT:  And so the date that you want to change is          04:28PM

24  the end -- is September 30, 2014?                                     04:28PM

25       MS. BEAN:  I actually would suggest that we shift the           04:28PM

1    July 31, 2014 witness and exhibit list date and then shift    04:28PM

2    everything forward a month.  And we can obtain an extra month    04:28PM

3    by, in my opinion, combining two activities that are on the    04:28PM

4    calender, to no prejudice to any party, in my opinion.    04:28PM

5         THE COURT:  What are they?    04:28PM

6         MS. BEAN:  Those are the expert witness, the deadlines    04:28PM

7    for the expert witness reports.  Right now, the Court has the    04:28PM

8    plaintiffs submitting a report in October, on October 31st, and    04:28PM

9    then the defendants submitting a report on November 28th.  And    04:29PM

10   then we have a rebuttal date of December 17th.    04:29PM

11        We would propose that all parties submit their    04:29PM

12   expert witness reports on October 31st.    04:29PM

13        THE COURT:  Well, the reason I didn't give the    04:29PM

14   defendants a rebuttal time is because they're going to get yours    04:29PM

15   first.  Then they'll respond.  And then you'll get to rebut.    04:29PM

16        MS. BEAN:  I'm suggesting, instead, that everybody    04:29PM

17   submit an expert witness report on the same date and all parties    04:29PM

18   have the same date to respond to each parties' report.    04:29PM

19        THE COURT:  I'm not going back.  I've got too much to    04:29PM

20   decide in this case.    04:29PM

21        MS. BEAN:  I thought that was just a simple way to keep    04:29PM

22   things on track.    04:29PM

23        THE COURT:  We'll look at the dates.    04:29PM

24        Does anybody have any objection to the adjustment    04:30PM

25   that Julie suggested where we move everything back a month?  And    04:30PM

1  that will mean at some point I'll move some dates closer

2  together, but I think we've got sufficient time to make that

3  work.

4          MS. HANGARTNER:  I guess my question, though, is how

5  then does that affect the parallel track with David and EEOC?

6          THE COURT:  Let's see.  I didn't know how close it was.

7          MS. BEAN:  I didn't know there was a parallel track.

8          MS. HANGARTNER:  Some things are calendered at the same

9  cutoff.

10          THE COURT:  I wanted you to do your discovery together

11  as much as you could.  So we'll look at that.  We'll try to see

12  how it fits with the David case and just move the deadlines back

13  a bit.  We can look at that.  But I will look at the David case

14  while we're doing that.

15          MS. HANGARTNER:  But they would still remain staggered

16  instead of at the same time?

17          THE COURT:  Whatever we were doing before, I'll try to

18  do again.

19          MS. HANGARTNER:  Actually, I was going to ask Your

20  Honor if it would be possible to extend the expert deadline

21  until --

22          THE COURT:  Which case are we talking about?

23          MS. HANGARTNER:  David.

24          They're due, the names of the experts are due

25  right now April 1.  But, since we're still deposing plaintiffs,

04:30PM
04:30PM
04:30PM
04:30PM
04:30PM
04:30PM
04:30PM
04:30PM
04:30PM
04:30PM
04:30PM
04:30PM
04:30PM
04:30PM
04:31PM
04:31PM
04:31PM
04:31PM
04:31PM
04:31PM
04:31PM
04:31PM
04:31PM
04:31PM
04:31PM

1    we'd like just maybe an additional maybe three, four weeks.    04:31PM

2          THE COURT:  Well, I already -- first off, you all told    04:31PM

3    me there weren't going to be a lot of experts.    04:31PM

4          MS. HANGARTNER:  I don't think there's going to be a    04:31PM

5    very large amount.  But some of the things that some of these    04:31PM

6    individuals are saying are making us wonder if we don't need to    04:31PM

7    add potentially an additional expert.    04:31PM

8          THE COURT:  I'm not going to do that.  I have already    04:31PM

9    changed the David dates and I've already suppressed them.  So    04:31PM

10   you all know enough about this to know if you need experts so    04:32PM

11   I'm not going to do that.    04:32PM

12          But I will look at the EEOC calender.  But I'm not    04:32PM

13   going to do this a lot.  We did David, I'm going to do it for    04:32PM

14   the EEOC.  But it will drive all of us crazy if we keep    04:32PM

15   changing.    04:32PM

16          MS. BEAN:  Your Honor, when I initially said that we    04:32PM

17   were not asking that the trial date be moved, that was my    04:32PM

18   opinion as part of the proposal I made, that we could make that    04:32PM

19   date up by combining the expert witness report deadlines.  But,    04:32PM

20   if the Court is not going to do that but in fact is going to    04:32PM

21   shift some dates, and I think that they do have to be shifted,    04:32PM

22   the discovery dates, the expert witness dates -- I think that we    04:32PM

23   do need to move the trial date.    04:32PM

24          THE COURT:  I'm not going to do that.  There's plenty    04:32PM

25   of time in here.  I built in a lot of time in the beginning    04:33PM

20

```
1   because I knew that these things would happen, it's inevitable.    04:33PM
2   So, no, I'm not doing that.  This is an incredibly long runway.    04:33PM
3              The trial dates.  I've looked at what the Achari        04:33PM
4   plaintiffs suggested and I've looked at your Texas trial dates.    04:33PM
5              On the Texas dates, I saw two set on August 7th;        04:33PM
6   is that right?                                                     04:33PM
7        MS. HANGARTNER:  I believe one is a -- no, I don't            04:33PM
8   believe so.                                                        04:33PM
9              Hold on.                                                04:33PM
10        THE COURT:  I have two for Judge Crone on August 7th.        04:33PM
11        MS. HANGARTNER:  Right.  That's how Judge Crone does         04:33PM
12   her docket.  And, in the other court in Texas, we have set trial  04:34PM
13   dates.                                                            04:34PM
14        THE COURT:  Which is December 7th.  And Judge Clark --       04:34PM
15        MS. HANGARTNER:  Correct.                                    04:34PM
16              So we have seven settings between EDLA and Texas.      04:34PM
17   Right now, we have seven -- five solid settings.  And a total of  04:34PM
18   seven settings in both -- in all of the matters combined.         04:34PM
19        THE COURT:  What does it mean that she put two cases on      04:34PM
20   August 7th?                                                       04:34PM
21        MS. HANGARTNER:  The magistrate did that.  I believe it      04:34PM
22   is for a final pretrial, and then she decides whether or not you  04:34PM
23   need to go to trial.                                              04:34PM
24              We have not been able to meet with Judge Crone         04:34PM
25   yet.                                                              04:34PM
```

1        MS. BOLLMAN:  They do tell you, Your Honor, that you          04:34PM

2   have to appear ready to go to trial.  If she tells you after the   04:34PM

3   pretrial that she's going to start, then they'll start.           04:34PM

4        THE COURT:  I must look good.                                 04:34PM

5        MS. HANGARTNER:  Why do you think we're frantically           04:34PM

6   trying to get those cases here?                                    04:34PM

7        THE COURT:  I give a real trial date.                         04:34PM

8             So we don't know what will happen in August in           04:34PM

9   Texas.                                                             04:35PM

10        MS. HANGARTNER:  No, Your Honor.                             04:35PM

11        THE COURT:  The dates that I have are the David first        04:35PM

12   five plaintiffs January 12; the EEOC Phase 1 June 1; and then we  04:35PM

13   have December 7th.  So that's three fixed trial dates.            04:35PM

14             What else are you --                                    04:35PM

15        MS. BOWMAN:  We have April and August also.                  04:35PM

16        MS. HANGARTNER:  April and August.                          04:35PM

17        THE COURT:  In Texas.                                        04:35PM

18        MS. HANGARTNER:  In Texas.  Those were recently set.  I      04:35PM

19   had forwarded those to you.                                       04:35PM

20             We had three additional status conferences I            04:35PM

21   believe about ten days ago.                                       04:35PM

22        THE COURT:  So now Texas in April and Texas in August.       04:35PM

23        MR. HARRIS:  Which one is in August?                         04:35PM

24        THE COURT:  The Texas case.                                  04:35PM

25        MS. HANGARTNER:  March, Matthew and Magthan.  And then       04:35PM

1   Caballa in December.                                          04:36PM

2           MR. HARRIS:  December, the only one with the fixed    04:36PM

3   date.  The August ones are --                                04:36PM

4           MS. HANGARTNER:  Are docket calls.                    04:36PM

5               Then we have the EEOC in June.  We have Joseph    04:36PM

6   April 13th in Texas.                                         04:36PM

7           THE COURT:  Is that a fixed date?                     04:36PM

8           MS. HANGARTNER:  That is a fixed date, that is a set  04:36PM

9   date.  That's Judge Clark.                                   04:36PM

10          THE COURT:  So, January, you have a set date with me. 04:36PM

11  April 13th, you have a set date with Judge Clark.            04:36PM

12          MS. HANGARTNER:  Yes, Your Honor.                     04:36PM

13          THE COURT:  June 1, you have a set date with me.      04:36PM

14          MS. HANGARTNER:  Correct.                             04:36PM

15          THE COURT:  And then December 7th.                    04:36PM

16          MS. HANGARTNER:  And then, August, we have those two. 04:36PM

17  When they'll go to trial, we don't know.                     04:36PM

18              And then December 7th.                            04:36PM

19          THE COURT:  And that's a set date.                    04:36PM

20          MS. HANGARTNER:  Yes, that's a set date.              04:36PM

21          THE COURT:  I still only count five set dates.  Four  04:36PM

22  set.                                                         04:37PM

23          MS. HANGARTNER:  I'm sorry, four set.                 04:37PM

24          THE COURT:  Before you came in and told me about this 04:37PM

25  April 13th date, I was thinking, well, that's kind of a period 04:37PM

1    that maybe we could set something else here.  But now you've got                04:37PM

2    something set in Texas.  So this is difficult.                                  04:37PM

3              Maybe there's something in the fall where I could                     04:37PM

4    set one more thing, maybe in October.  Because I guess it's,                    04:37PM

5    realistically, we can't have Signal have twelve cases set for                   04:38PM

6    trial next year.  I'd like to, but I just don't think that's                    04:38PM

7    feasible.                                                                        04:38PM

8              MR. HARRIS:  Your Honor, if I could be heard on that.                  04:38PM

9              I understand it's a burden on defendants' counsel,                     04:38PM

10   but it's the burden of their choosing by having                                 04:38PM

11   post-certification where they can hire additional counsel.  My                  04:38PM

12   clients and the schedule they are proposing won't get a trial                   04:38PM

13   date until 2018.  And then they've proposed twenty different                    04:38PM

14   trials that they say will take a month.  Some of my clients                     04:38PM

15   won't be heard until 2018 or 2019.  I would really like to find                 04:38PM

16   a way to at least have our first trial in 2015.  I think there's                04:38PM

17   a way to fit it in.  We don't know that these August dates are                  04:38PM

18   an actual date that will happen.  I know what we had proposed is                04:39PM

19   to schedule an Achari trial, the first one in July.  And I think                04:39PM

20   that fits in your schedule.  And I imagine that the Texas judge                 04:39PM

21   would be accommodating if they're still concluding the first                    04:39PM

22   trial.                                                                           04:39PM

23             MS. HANGARTNER:  Unfortunately, I do not believe that                 04:39PM

24   the Texas judges are going to be accommodating at all.  That is                 04:39PM

25   not the message that has been sent through the magistrate.                      04:39PM

1      MR. HARRIS:  It may be a burden that you face then, but    04:39PM

2  we need to get some remedy to allow our plaintiffs to be heard.    04:39PM

3      MS. HANGARTNER:  I understand that.  I'm not saying    04:39PM

4  it's necessarily a burden on counsel, it's a burden on all of    04:39PM

5  our witnesses as well.    04:39PM

6      MR. HARRIS:  I'm sure we can accommodate the witnesses'    04:39PM

7  scheduled so they don't have to be in two places at once.    04:39PM

8      THE COURT:  But do they have to testify at a trial    04:39PM

9  every month for the whole year.    04:39PM

10      MR. CERNIGLIA:  Your Honor, I'm a single solo    04:39PM

11  practitioner doing this as a favor for Mal because malpractice    04:39PM

12  insurance has been totally exhausted defending the case.  So he    04:40PM

13  has no more insurance.  So, I'm doing the best I can, and I    04:40PM

14  can't be in two places.  So it's not an answer, to be in two    04:40PM

15  places.  The law is the law.  If you're not entitled to class    04:40PM

16  certification, you're not entitled to class certification.    04:40PM

17          I personally believe that you all are trying to    04:40PM

18  punish the plaintiffs and the Court for denying class    04:40PM

19  certification.    04:40PM

20      THE COURT:  Both sides have the right to litigate their    04:40PM

21  case.  That's just the way it is.    04:40PM

22      MR. CERNIGLIA:  I agree with that.  But we can't be --    04:40PM

23      MS. HANGARTNER:  And all we did was avail ourselves of    04:40PM

24  the law.    04:40PM

25      MR. HARRIS:  We are where we are now.  I think we're    04:40PM

1   trying to find a solution as efficient as we can.  I don't think          04:40PM

2   finding a solution in 2014 is a sufficient answer.  We need to            04:40PM

3   come up with a process to minimize the number of trials, to               04:41PM

4   start them as soon as we can.                                             04:41PM

5            THE COURT:  How long do you think in the trials that             04:41PM

6   each plaintiff's testimony will take?                                     04:41PM

7            MR. HARRIS:  We thought a lot about that.  I think, the          04:41PM

8   initial trial, it will take a little bit longer.                          04:41PM

9            But, speaking just for the Achari plaintiffs, by                 04:41PM

10  the time our trial happens, we will at least have had the first           04:41PM

11  David trial and may have or may not have had the first EEOC               04:41PM

12  trial by then.  So I think the issue should have been somewhat            04:41PM

13  narrowed at that point.                                                   04:41PM

14           What we have proposed is to have trials of sixteen               04:41PM

15  plaintiffs each.  The way, the cases are -- the plaintiffs in             04:41PM

16  each case are at the same facility and for the most part have             04:41PM

17  undergone a similar factual situation.  So I don't -- I think             04:41PM

18  the first few witnesses may take some time.  But, after that, I           04:41PM

19  think the factual background will be established and the                   04:41PM

20  witnesses should go pretty quickly.  So I don't think sixteen             04:42PM

21  plaintiff witnesses will actually take that long.  Probably fit           04:42PM

22  three in a day.                                                           04:42PM

23           There are other witnesses that aren't the                        04:42PM

24  plaintiffs, but those are going to be duplicated at each trial            04:42PM

25  for the most part.  So, the fewer number of trials we can do,             04:42PM

1    the more efficiently we'll get this through for everyone.              04:42PM

2            THE COURT:  My concern, though, is how long it will             04:42PM

3    take.                                                                   04:42PM

4            MR. HARRIS:  We estimate the first trial will be about          04:42PM

5    a month.  We think, in addition to the fact that each witnesses        04:42PM

6    should be going more quickly as the Court and the jury are more        04:42PM

7    familiar with the story, we also think that deposition                 04:42PM

8    transcripts and testimony can be used to minimize the time spent       04:42PM

9    in the courtroom.  So I think a month.  The first one might be         04:42PM

10   slightly longer than that.  I think the subsequent ones could be       04:42PM

11   shorter than that because I think the issue will be narrower and       04:42PM

12   narrower as we go along.                                               04:42PM

13           MS. HANGARTNER:  With all due respective, I have to            04:42PM

14   disagree.  I've been on the case for six years; and, with the          04:42PM

15   translators, it is an issue.  And you have the different               04:43PM

16   dialects so you're going to be swapping out translators.  I           04:43PM

17   think it's very speculative that you're going to be able to put        04:43PM

18   on three of your witnesses in one day.  It's an impossibility.        04:43PM

19           And you can say that you would like for your                   04:43PM

20   clients to then potentially testify via video deposition, but         04:43PM

21   that may not be our choice.                                            04:43PM

22           MR. HARRIS:  I am not committing you to it.  I just            04:43PM

23   think you may decide that that's an efficient way to go.              04:43PM

24           MS. HANGARTNER:  My personal opinion is, could we use         04:43PM

25   David as a litmus test to see where we are and how long things        04:43PM

| | | |
|---|---|---|
| 1 | actually take? | 04:43PM |
| 2 | But, to say that we can try sixteen plaintiffs in | 04:43PM |
| 3 | one month, it's just -- it's an impossibility, I believe. | 04:43PM |
| 4 | MR. WEINBERGER:  Your Honor, have you reflected on the | 04:44PM |
| 5 | number of theories of liability that have been tried as well? | 04:44PM |
| 6 | THE COURT:  And it's not just one defendant. | 04:44PM |
| 7 | MR. WEINBERGER:  If I may speak, Your Honor. | 04:44PM |
| 8 | And, certainly, my colleague from Latham Watkins | 04:44PM |
| 9 | knows this.  Federal judges do this all the time.  There are | 04:44PM |
| 10 | lots of things that we can write about and talk about that can | 04:44PM |
| 11 | achieve -- that's why this book exists, that's what it was | 04:44PM |
| 12 | written to do. | 04:44PM |
| 13 | For example, if you consolidated these cases, we | 04:44PM |
| 14 | can choose plaintiffs in sort of a serial process.  Think of | 04:44PM |
| 15 | MDLs.  Choose people from different areas, different looks, | 04:44PM |
| 16 | different issues. | 04:44PM |
| 17 | This is not the time to do this obviously, Judge, | 04:44PM |
| 18 | but there is so much that we can talk to you about to get things | 04:44PM |
| 19 | narrowed, to get things done efficiently. | 04:44PM |
| 20 | THE COURT:  I was thinking about some of the factual | 04:44PM |
| 21 | disputes, and I hoped you all were going to reach some | 04:44PM |
| 22 | stipulations on some things so that not everything has to be | 04:45PM |
| 23 | tried. | 04:45PM |
| 24 | MR. WEINBERGER:  Your Honor, we can eliminate issues. | 04:45PM |
| 25 | I can talk to you forever. | 04:45PM |

1       THE COURT:  We're going to get to a point at which some

2  things will be eliminated by motion practice.

3       MS. HANGARTNER:  Correct.

4       THE COURT:  I'm hoping that this process of you all

5  going back and looking at your clients and being very specific

6  may lead you to -- I don't have any idea about this because I

7  don't know enough about the merits at this point, but maybe

8  there will be some things you decide you don't want to pursue,

9  or not against certain defendants.  I mean, use this as an

10  opportunity to yourself to think about what your causal facts

11  are, whether you need to pursue everything or whether you need

12  to pursue the things that you really can succeed on, you feel

13  like your strong suit.

14       MR. WEINBERGER:  Can we talk for one second about an

15  incredibly concrete example?  David obviously contains a RICO

16  case.  The Fifth Circuit itself has described a RICO case as

17  essentially a monster to deal with.  A RICO case, the fifth

18  circuit itself, has said is a monster to deal with.  The pattern

19  instruction alone is one of the most daunting texts you can

20  read.

21           One of the things the plaintiff could decide to do

22  is consider the way they behaved.  Some actions contain RICO

23  theories, some do not.  They could, as a group, decide to

24  abandon the RICO themes, focus on the TPVA alone and simplify

25  the Court's life tremendously.

1      MR. HARRIS:  Your Honor, speaking for the Achari case, 04:46PM

2  we did not bring a RICO claim.  We did try to simplify the 04:46PM

3  issues before the Court. 04:46PM

4          What we've proposed on behalf of plaintiffs is 04:46PM

5  have the trial be a group of Achari plaintiffs.  I think it will 04:46PM

6  be as narrow a trial as possible.  All were situated in the same 04:47PM

7  camp in Mississippi.  I don't think we're going to have a huge 04:47PM

8  number of divergent issues among the plaintiffs.  So we really 04:47PM

9  think it would aid the process to get a trial date in 2015.  I 04:47PM

10  think that's what's going to get the people to think about the 04:47PM

11  issues.  Still wishing that we have a class action on our part 04:47PM

12  or some mechanism on the defendant's part hasn't achieved us 04:47PM

13  anything. 04:47PM

14      MS. HANGARTNER:  But you are going to have very 04:47PM

15  divergent stories once it comes to recruiting interests, and 04:47PM

16  that's going to be Mr. Cerniglia and Mr. Shapiro.  But it will 04:47PM

17  be widely divergent when it come to the claims in India. 04:47PM

18      MR. HARRIS:  There were some different themes, but I 04:47PM

19  don't think it's going to be a huge issue. 04:48PM

20      MR. CERNIGLIA:  That will depend a lot on what 04:48PM

21  plaintiffs you choose.  For example, Mr. Burnett was not at a 04:48PM

22  lot of the meetings.  And so, things that may or may not have 04:48PM

23  been said, you're going to be confusing the jury if you bring in 04:48PM

24  he's here, but now he's here, but he's there but not there.  It 04:48PM

25  depends on how you group them together.  If you don't, it could 04:48PM

1    be very complicated.                                              04:48PM

2         THE COURT:  Are you trying to identify the ones that        04:48PM

3    have had the most similar experience?                            04:48PM

4         MR. HARRIS:  We have proposed a list of sixteen             04:48PM

5    plaintiffs who would be the most compatible at trial.  So yes,   04:48PM

6    Your Honor, we are trying to do that.                            04:48PM

7         MR. WEINBERGER:  Point of order, is counsel actually        04:48PM

8    suggesting that the Court would try sixteen plaintiffs at a      04:48PM

9    time?                                                            04:48PM

10        THE COURT:  He is suggesting.                               04:48PM

11        MR. WEINBERGER:  Sorry, Your Honor.                         04:49PM

12        MR. HARRIS:  Otherwise, we would have ninety trials,        04:49PM

13   and we need do this efficiently.                                 04:49PM

14        THE COURT:  In the Achari plaintiff's proposal, you         04:49PM

15   don't start any trial dates until July.                          04:49PM

16             And then, one of the things you said was, on page      04:49PM

17   three, because document discovery in the consolidated cases is   04:49PM

18   unlikely to be completed by the scheduled dates of those         04:49PM

19   depositions, that you would be permitted for good cause to       04:49PM

20   recall people.                                                   04:49PM

21             And I think that made me start thinking about I        04:49PM

22   wanted to better understand what the discovery -- what the plan  04:49PM

23   is about depositions.  I know we have May and June, second half  04:49PM

24   of May and June for Signal.                                      04:50PM

25        MS. HANGARTNER:  Correct.                                   04:50PM

1    THE COURT:  And what else -- how many of the David

2  plaintiffs have been deposed already?

3    MS. HANGARTNER:  We have two remaining at the end of

4  March.  One witness tomorrow and Sunday and Monday.  And then

5  two remaining named plaintiffs in David at the end of March.

6    MR. WERNER:  Right.

7    So, to be clear, the gentleman who is being

8  deposed this weekend is a witness, but one of the five

9  plaintiffs.

10    MR. WINBERGER:  So three remain to be deposed.  Two --

11    MS. HANGARTNER:  We finished the third one today, or

12  you finished the third one today.  And then there are two

13  remaining plaintiffs.

14    THE COURT:  All right.

15    And then who are the other witnesses who'll be

16  deposed for the David case?  Are there any additional

17  depositions needed in David?

18    MR. WERNER:  That the David plaintiffs will be taking

19  of defendants?  Yes, Your Honor.

20    THE COURT:  Is it all Signal people?  Is there anybody

21  besides the Signal people?

22    MR. WERNER:  Well, there are.  And we need to revisit

23  with Mr. Shapiro this issue of depositions.  Some of the Dewan

24  consultant employees in India and as I understand it -- and this

25  was awhile ago -- but Mr. Shapiro even mentioned the possibility

1    of one or two or possibly having Mr. Dewan sitting for a          04:51PM

2    deposition.  I'm not sure if that's still on the table.          04:51PM

3          MR. SHAPIRO:  I'd like that to be on the table because     04:51PM

4    the deposition that we had was very rushed and the               04:51PM

5    circumstances, as you know, were a little bit unusual.  I might  04:51PM

6    like to revisit that a little bit.                               04:51PM

7          THE COURT:  But he's your client; right?  So you           04:52PM

8    wouldn't be deposing him.                                        04:52PM

9          MR. SHAPIRO:  Understood.  But there are certain things    04:52PM

10   that I would like clarification on.                              04:52PM

11         THE COURT:  You want them to know what his testimony       04:52PM

12   will be?                                                         04:52PM

13         MR. SHAPIRO:  Well, I don't know.                          04:52PM

14             One of the problems we had is that the deposition      04:52PM

15   -- we went half way around the world.  The deposition was       04:52PM

16   scheduled for two days.  And, everyone worked together to try to 04:52PM

17   work this out, and it was difficult because we had to start in   04:52PM

18   India at 3:00 o'clock in the afternoon and we didn't finish      04:52PM

19   until midnight.  And talk about a worn-out client and a worn-out 04:52PM

20   counsel for client, who was ill at the time with a horrible case 04:52PM

21   of the flu.  The circumstances were difficult.  Of course, we    04:52PM

22   had people --                                                    04:53PM

23         THE COURT:  But he's going to come testify at trial;       04:53PM

24   right?                                                           04:53PM

25         MR. SHAPIRO:  I believe so.                                04:53PM

1    THE COURT:  So you want him to be deposed?  He's your

2  client.

3    MR. SHAPIRO:  Um-hum.

4    THE COURT:  I still don't understand.  Usually, it's

5  the other side that deposes your client.  You know what his

6  testimony is, you don't need to depose him to know.

7    MR. SHAPIRO:  No.

8      The plaintiffs think they have enough.  That's

9  fine.  Maybe we don't need to.

10    MR. WERNER:  We see the need to depose some of the

11  Dewan consultant employees.  I don't think we need to re-depose

12  Mr. Dewan.

13    THE COURT:  And you all will go to India to depose the

14  Dewan consultants.

15    MR. WERNER:  Employees, yes.

16    THE COURT:  So they're employees.

17    MR. WERNER:  Employees and former employees.

18    MR. SHAPIRO:  Your Honor, what I was suggesting is

19  that, I understand the procedure and I understand that

20  plaintiffs took Mr. Dewan's deposition for class certification

21  purposes, and I felt that I did not have sufficient time because

22  plaintiffs monopolized nearly all the time.

23    THE COURT:  But you're not going to be hindered by that

24  and having him testify at trial.  Just because they didn't ask a

25  question doesn't mean he can't testify about something.  I don't

04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:53PM
04:54PM
04:54PM
04:54PM
04:54PM
04:54PM

```
 1    understand.                                                    04:54PM

 2          MR. SHAPIRO:  I guess what I was trying to say is I was  04:54PM

 3    trying to clear up some of his testimony and I felt like I     04:54PM

 4    didn't have sufficient time to do so.                          04:54PM

 5          THE COURT:  You just tell him what it is that you think  04:54PM

 6    he's going to testify to and then they'll know.  And, if that  04:54PM

 7    figures into your settlement discussions, whatever, that's fine.04:54PM

 8    If it comes to summary judgment, you can do affidavits.        04:54PM

 9          It's unusual for you to be saying -- insisting on        04:54PM

10    him being deposed again.                                       04:54PM

11          MR. SHAPIRO:  I understand that.                         04:54PM

12          THE COURT:  So let me get back to what we were talking   04:55PM

13    about.                                                         04:55PM

14          The depositions that need to be taken, so you said       04:55PM

15    Dewan consultants in India.  And anyone else who the plaintiffs 04:55PM

16    want to depose?                                                04:55PM

17          MR. HOWARD:  Your Honor, there -- Alan Howard for the    04:55PM

18    David plaintiffs.  There may be a handful of third-party       04:55PM

19    depositions.  In particular, I'm thinking of security guards   04:55PM

20    from -- the former security guards of the Swetland firm which  04:55PM

21    was hired by Signal for the events of March 9, 2007.          04:55PM

22          THE COURT:  And they're in Mississippi?                  04:55PM

23          MR. HOWARD:  Ones I'm aware of, yes, they're in          04:55PM

24    Mississippi.                                                   04:55PM

25          THE COURT:  All right.                                   04:55PM
```

35

```
 1            What about Mr. Cerniglia's client?          04:55PM

 2       MR. WERNER:  We deposed Mr. Burnett.            04:56PM

 3       MR. CERNIGLIA:  For four days.                  04:56PM

 4       MR. WERNER:  And one of the other attorneys in his   04:56PM

 5  office.                                              04:56PM

 6            I don't anticipate needing any other depositions   04:56PM

 7  from his firm.                                       04:56PM

 8       MS. HANGARTNER:  Signal does.                   04:56PM

 9       THE COURT:  Is your answer with respect to the EEOC   04:56PM

10  case the same, or was this just for David?  Are there additional   04:56PM

11  people you would want to depose for the Signal case?  Not for   04:56PM

12  the -- the EEOC case?                                04:56PM

13       MR. WERNER:  The only defendant of course in the EEOC   04:56PM

14  case is Signal.  So there may be -- I think some of this is   04:56PM

15  going to be duplicative of, I imagine, who the EEOC is going to   04:56PM

16  want to depose.  Some people related to the housing, the   04:56PM

17  construction of the housing, the permitting of the housing,   04:56PM

18  things like that.  But I believe that's something that's already   04:56PM

19  contemplated for the EEOC.                           04:56PM

20       MS. HANGARTNER:  Didn't you want to depose a   04:57PM

21  number of vendors?                                   04:57PM

22       MS. BEAN:  Yes.                                 04:57PM

23       MS. HANGARTNER:  Who came out of the Orange or   04:57PM

24  Pascagoula --                                        04:57PM

25       MS. BEAN:  Yes.                                 04:57PM
```

1    We'll potentially be deposing the vendors in

2  Texas.  The government officials and employees in Texas and

3  Mississippi.  Possibly legislative folks in Mississippi and

4  Texas.  Also former Signal employees.

5    When the Court says that we're going to do Signal

6  depositions in May and June, is the Court talking about 30(b)(6)

7  and the individual Signal employees who were designated as

8  30(b)(6)?  Because I could foresee that taking all of May and

9  June, but we may have additional Signal employees who are not

10  designated.  And so I didn't know if the Court was putting that

11  group in May and June.

12    THE COURT:  I guess what I -- I definitely want it to

13  be 30(b)(6) and anyone who was designated as a 30(b)(6).  The

14  individual deposition would also be taken at that time.  I

15  didn't know whether you would have time to do other Signal

16  employees or not.  I guess it depends on how much.

17    MS. BEAN:  It's hard for me to envision only because of

18  the number of parties involved in the case and the Court saying

19  that everybody is doing all the 30(b)(6)s at one time, and the

20  Court had said that we can start with our depositions first on

21  all of them.  I just can't see that being concluded in May and

22  June, given the number of parties.  Unless, when we do our

23  30(b)(6), and maybe we cover so much ground and everybody is

24  satisfied.  But I don't want to speak for everybody.  It just

25  seems like a lot to do in May and June.  So I just envision the

04:57PM
04:57PM
04:57PM
04:57PM
04:57PM
04:57PM
04:57PM
04:57PM
04:57PM
04:58PM
04:58PM
04:58PM
04:58PM
04:58PM
04:58PM
04:58PM
04:58PM
04:58PM
04:58PM
04:58PM
04:58PM
04:58PM
04:58PM
04:58PM
04:59PM

```
 1   30(b)(6) and the designees in May and June.  Maybe we do more,     04:59PM

 2   depends on how it goes.                                            04:59PM

 3           THE COURT:  Well, you all see how your scheduling goes.    04:59PM

 4   And, if you can do more and get it done, great.                    04:59PM

 5           MS. HANGARTNER:  Is there still the possibility that --     04:59PM

 6   I know that it wouldn't necessarily be one solid attorney, but     04:59PM

 7   that one plaintiff group could take the lead in each one?  So,     04:59PM

 8   in other words, each of the different plaintiff groups aren't      04:59PM

 9   asking the same question of Dick Marler over and over again.       04:59PM

10           THE COURT:  If that happens, I want somebody to call       04:59PM

11   me.  Because that is not what I -- I do not want everybody to      04:59PM

12   approach this like nothing happened before.  Don't go over the     04:59PM

13   same ground.  You all talk.  The ones who are all on the same      04:59PM

14   side, talk and try to coordinate.  Don't go over and over.  I      04:59PM

15   know there will be some of that, that's to be expected.  But, if   05:00PM

16   you find that people are just starting over at the beginning       05:00PM

17   like the two days that just happened never happened, somebody      05:00PM

18   call me.                                                           05:00PM

19           MS. HANGARTNER:  And I think it would help if -- I         05:00PM

20   mean, just a suggestion.  But, if someone from each of the         05:00PM

21   groups could at least participate by phone, so you're             05:00PM

22   understanding -- I mean, Southern Poverty, the David plaintiff     05:00PM

23   and plaintiff intervenors always have someone there to cover the  05:00PM

24   ground.  But I think that may make things run a little more        05:00PM

25   smoothly as well.                                                  05:00PM
```

1    THE COURT:  If you want to ask questions, you need to          05:00PM

2  be listening to either be there or be on the phone so that you    05:00PM

3  know what's already been covered and pay attention.  Don't have   05:00PM

4  the phone on and be asleep.  Make sure you don't have to go over  05:00PM

5  the same territory.                                               05:01PM

6    MR. WERNER:  This has been an issue in Signal's                 05:01PM

7  depositions of the plaintiffs that have happened thus far in the  05:01PM

8  merits phase where they've duplicated a tremendous amount of      05:01PM

9  testimony that they gave during the class certificate phase, and  05:01PM

10  we've tried to streamline the process.                           05:01PM

11    THE COURT:  Yeah.  I don't want you to do that either.         05:01PM

12  You have to treat each other the way you want to be treated.  Do 05:01PM

13  not do that to either side.                                      05:01PM

14         And, Erin, you can't come in here and ask them not        05:01PM

15  to do it if you're doing it.  I don't know who is doing what     05:01PM

16  because I don't read the depositions; but, if I have to get into 05:01PM

17  that level of detail, I will.  So just don't do it.  Every time  05:01PM

18  you have the urge, just remember that you want to treat them the 05:01PM

19  way you want them to treat you.                                  05:01PM

20    MS. HANGARTNER:  I respectfully disagree.                      05:01PM

21    THE COURT:  I understand, but just think about it.            05:01PM

22    MS. HANGARTNER:  Absolutely, Your Honor.                       05:02PM

23    THE COURT:  Take a second and let's try to make this          05:02PM

24  work for everybody, because you don't want me to get to that     05:02PM

25  level of detail.  And, if I do, by the time I see you, I'll be   05:02PM

1    very angry because I had to get in that level of detail and find          05:02PM

2    out, yes, he is telling the truth, you had asked all these                05:02PM

3    questions.  Just as an example.                                           05:02PM

4          MS. HANGARTNER:  I understand.  I didn't take it                    05:02PM

5    personally, Your Honor.                                                   05:02PM

6          THE COURT:  So just keep that in mind on both sides.                05:02PM

7          MS. BEAN:  Your Honor, just drilling down to the                    05:02PM

8    structure of the depositions a little more, I'm talking about             05:02PM

9    the May and June deps, I know that the other plaintiffs were              05:02PM

10   present in some of our earlier discussions where the Court had            05:02PM

11   indicated that the EEOC we would take our depositions first.  So          05:02PM

12   what I envision --                                                        05:02PM

13         THE COURT:  You know, what you told me was we can't be              05:02PM

14   at all the deposition at all times.  Who has -- there's a minute          05:02PM

15   entry where somebody said something like that, but I'm not sure.          05:02PM

16   I think you said in one where you weren't planning to be there            05:03PM

17   the whole time.                                                           05:03PM

18          So, if you're going to the depositions and you are                 05:03PM

19   going to be there the entire time, then I don't think it's fair           05:03PM

20   for you to go first every time.  So you need to talk to your              05:03PM

21   other counsel.                                                            05:03PM

22         MS. BEAN:  Your Honor, this is why it's unfair.  The                05:03PM

23   EEOC was brought into this case linked with the plaintiffs and            05:03PM

24   the parties over our objection.  We have a single case and a              05:03PM

25   very narrow case.                                                         05:03PM

1      THE COURT:  Now we're all here, we're deposing the same      05:03PM

2  people.  They get to say things, they don't want you in their      05:03PM

3  case.      05:03PM

4      MS. BEAN:  No.  It's a different circumstance.      05:03PM

5      THE COURT:  Look, I'm telling you, the reason that I      05:03PM

6  said that you could go first in some cases was because you said      05:03PM

7  we can't go to all these depositions and stay throughout the      05:03PM

8  deposition.  But, if you're going and you're staying through the      05:03PM

9  deposition, then you have to share with the other people and you      05:03PM

10  all cooperate.      05:03PM

11      MS. BEAN:  Your Honor, they have claims far in excess      05:04PM

12  of the claims that we have.  They have the base level --      05:04PM

13      THE COURT:  Are you going to the depositions and you're      05:04PM

14  going to stay?      05:04PM

15      MS. BEAN:  Certainly, any dep that we're taking, we're      05:04PM

16  going to go.  For example, we've already noticed a 30(b)(6) dep,      05:04PM

17  we've given over a 30(b)(6) notice, we will supplement it.      05:04PM

18      My understanding -- and, if the Court is changing      05:04PM

19  that, I'd ask the Court to just make me clear about that -- is      05:04PM

20  that, when we go into that 30(b)(6), that we're going to take      05:04PM

21  our 30(b)(6) deposition first and that the other parties would      05:04PM

22  follow, if they so choose, secondarily.      05:04PM

23      THE COURT:  What I'm telling you -- you said to me the      05:04PM

24  poor EEOC and the United States government can't go to all these      05:04PM

25  depositions and so we can't wait until everybody else goes      05:04PM

1    through and then be at the end.  And I said, well, if there are                05:04PM

2    depositions where you're not going to stay the whole time and so               05:04PM

3    you're just going to go ask your questions and leave, then you                  05:04PM

4    can go first.                                                                   05:05PM

5              MS. BEAN:  That's what's going to be.  I did not say                  05:05PM

6    anything different.                                                             05:05PM

7              THE COURT:  Like, here, it's the fourth day of the                   05:05PM

8    deposition and maybe you're here because we had this status                     05:05PM

9    conference but you stayed the whole deposition.  No, so you                     05:05PM

10   haven't been here the whole deposition.                                         05:05PM

11             MS. BEAN:  No.  And, frankly, we would not.  I mean,                  05:05PM

12   we've got a handful of lawyers working our case.  There again is                05:05PM

13   another lawsuit with a whole bunch of other claims in it.  I                    05:05PM

14   thought that was the point, we could come in and stay at our                    05:05PM

15   deposition.                                                                     05:05PM

16             THE COURT:  It sounds like your topics are broader than               05:05PM

17   these.                                                                          05:05PM

18             MS. BEAN:  No, they're not.                                           05:05PM

19             THE COURT:  Because you've got all the housing and the                05:05PM

20   permits and all that.                                                           05:05PM

21             MS. BEAN:  Our deposition is centralized to what                      05:05PM

22   happened at the camps.  The other plaintiffs' depositions -- and                05:05PM

23   I'm not saying they're solely there.  I'm simply saying that,                   05:05PM

24   for us to have to sit through, for example, days and hours of                   05:05PM

25   depositions about events that happened in India with the                        05:06PM

42

```
 1   individual --                                                    05:06PM

 2            THE COURT:  But that won't be at a Signal deposition.   05:06PM

 3            MS. BEAN:  I don't know that, and maybe it won't be.    05:06PM

 4            THE COURT:  If that becomes a problem, that -- if you   05:06PM

 5   all object to the EEOC going first and it becomes a problem      05:06PM

 6   because they are taking too long and you're not getting your     05:06PM

 7   chance or you have those kinds of issues, then let me know.      05:06PM

 8   Because I'm not saying carte blanche you get to go first every   05:06PM

 9   time and you get to take as much as time as you want to and      05:06PM

10   everybody else just shares the time that is left.  So you're     05:06PM

11   going to have to cooperate with them.                           05:06PM

12            MS. BEAN:  So what are you saying then?  Because it     05:06PM

13   sounds like you are saying different from what you previously    05:06PM

14   said.  So, for our planning purposes --                         05:06PM

15            THE COURT:  I'm beginning to get annoyed about this.    05:06PM

16            MS. BEAN:  I'm sorry about that, Your Honor.  But what  05:06PM

17   are we supposed to do at this point, is what I'm asking.         05:06PM

18            THE COURT:  The number one -- the number one thing you  05:07PM

19   need to think about is that you all have to work together and    05:07PM

20   that you cannot come in and say:  I always go first and I get as 05:07PM

21   much time as I want.  Because that's not going to be fair to     05:07PM

22   everybody else.                                                 05:07PM

23            So what -- if there are depositions where you are       05:07PM

24   not planning to go and stay the whole time, then you need -- I   05:07PM

25   think the best thing for you to do would be to send a notice to  05:07PM
```

1    everybody else in these cases and say the deposition of X is          05:07PM

2    coming up, we are not planning to stay the whole time, so the         05:07PM

3    judge said if that's the case that we can go first, this             05:07PM

4    deposition is going to last three days and we think the time         05:07PM

5    we'll need, we'll commit to, will only take X hours, whatever.       05:07PM

6    So that everybody else can know how it's going to work and           05:07PM

7    whether that seems fair and you all can talk about it.  And, if      05:08PM

8    somebody has a problem, then you'll call me.                         05:08PM

9              But as far as, if the EEOC has the idea that it's          05:08PM

10   going to be top dog in every deposition and get to run the show,     05:08PM

11   you're not.  If there are depositions where you're going on,         05:08PM

12   you're going to stay the whole time, like these Signal 30(b)(6)      05:08PM

13   depositions, then you all just need to talk to each other and       05:08PM

14   decide for each one who is going to take the lead.                   05:08PM

15        MS. BEAN:  Well, Your Honor, I'm going to say for the           05:08PM

16   record, when it comes to EEOC's 30(b)(6) depositions, the EEOC      05:08PM

17   is going to take the lead in that dep.  I don't know if that's a     05:08PM

18   problem with anyone.                                                 05:08PM

19        THE COURT:  This is going to be Signal's                        05:08PM

20   responsibility.  You're going to have all the 30(b)(6) notices.      05:08PM

21        MS. HANGARTNER:  Yes.                                           05:08PM

22        THE COURT:  And you're going to have to look at all of          05:08PM

23   them and say, okay, for maybe this one, the stipulation, if you      05:09PM

24   could say, all right, everybody's 30(b)(6) on this topic and        05:09PM

25   they're all segregated, it's every 30(b)(6) about housing           05:09PM

44

```
1   facilities, we're designating Mr. X for all those.  So everybody    05:09PM
2   has -- you're not the only 30(b)(6) that designated this person.    05:09PM
3   So you will all need to talk to your co-counsel and say:  All       05:09PM
4   right, should we decide that we'll take the lead on this one and    05:09PM
5   you take the lead on that one.  You know, you all are just going    05:09PM
6   to have to work it out.                                             05:09PM
7              Now, probably, it's going to be more complicated         05:09PM
8   because you'll say:  Okay, EEOC's 30(b)(6) on topics 1 through      05:09PM
9   10, it's Mr. X, and on 11 through 20 it's Mr. Y, and Mr. Y is       05:09PM
10  also going to do yours.  So you'll have to do a spreadsheet --      05:09PM
11             MR. HANGARTNER:  Flowchart, something.                   05:10PM
12             MR. BOWMAN:  Yes.                                        05:10PM
13             MS. HANGARTNER:  Yes.                                    05:10PM
14             THE COURT:  -- that will say these are the common        05:10PM
15  topics from everybody's 30(b)(6) that Mr. X will testify about.     05:10PM
16             MS. HANGARTNER:  And I think there will be a number of   05:10PM
17  areas that is complete overlapping, housing facility, worksite,    05:10PM
18  things like that.  So there may be more than one designee.  But    05:10PM
19  all of those designees will highly likely relate to all of the     05:10PM
20  30(b)(6)s noticed.                                                  05:10PM
21             THE COURT:  So every plaintiff in the EEOC will have a   05:10PM
22  30(b)(6) but that that person is responsive to.                    05:10PM
23             MS. HANGARTNER:  I believe so.                           05:10PM
24             THE COURT:  So that's why you all have to cooperate to   05:10PM
25  see who will take the lead.                                        05:10PM
```

1              If you're not going to stay there the whole time, 05:10PM

2   then you need to tell them that and say:  So I think that means 05:10PM

3   Judge Morgan said we could get in, do our thing and get out.  If 05:10PM

4   you're going to be there the whole time, then you're just in the 05:11PM

5   mix with the rest of them and you all have to cooperate. 05:11PM

6        MR. WERNER:  Judge, we've, I think, coordinated very 05:11PM

7   well with the EEOC in the past.  I'm sure we can figure out 05:11PM

8   something. 05:11PM

9        THE COURT:  That's right.  I hope I don't have to hear 05:11PM

10  about it at all. 05:11PM

11       MS. HANGARTNER:  Your Honor, were you considering 05:11PM

12  placing any time limits or day limits on the depositions of the 05:11PM

13  Signal employees and management? 05:11PM

14       THE COURT:  It's hard to do in a vacuum.  What I think 05:11PM

15  is, when you get the 30(b)(6) notices and do your spreadsheets, 05:11PM

16  then you all need to talk and say we think this -- what do you 05:11PM

17  think plaintiffs, how long do you think it's going to take now 05:11PM

18  that you've seen who we designated.  And then, if you all can't 05:11PM

19  reach an agreement about that, then come talk to me.  But the 05:11PM

20  first step would be do your spreadsheet, have a discussion, see 05:11PM

21  if you all can agree.  And build in a little flexibility. 05:12PM

22       MS. HANGARTNER:  Sure. 05:12PM

23       THE COURT:  But, if that approach does not work, then 05:12PM

24  we'll talk about it. 05:12PM

25            And, let's see, when are your notices -- maybe we 05:12PM

1   have a scheduling conference anyway around then.                       05:12PM

2          MS. HANGARTNER:  We have until April 22nd to identify           05:12PM

3   the 30(b)(6) designees.                                                05:12PM

4          THE COURT:  We don't have a status conference.                  05:12PM

5          We have a status conference on April 30th.  So that's           05:13PM

6   good timing.                                                           05:13PM

7              Well, once you send them your designees, then you           05:13PM

8   all will start talking about, okay, how long will this take.           05:13PM

9   And, if you all can't reach agreement about how to do the              05:13PM

10  scheduling, then we'll talk about it on April 30th.                    05:13PM

11         MS. HANGARTNER:  Then we'll take our flowchart up there         05:13PM

12  to the wall.                                                           05:13PM

13         THE COURT:  So the reason I was asking you about                05:13PM

14  depositions is to think about the Achari plaintiffs.  And what         05:13PM

15  made me think about it is that you didn't have anything                05:13PM

16  scheduled until July.                                                  05:13PM

17         MR. HARRIS:  I can explain that thinking there.                 05:13PM

18             So I understand we will participate in the                  05:14PM

19  affirmative discovery that the other plaintiffs are taking, and        05:14PM

20  we're getting documents now.  And, as soon as we can, we'll            05:14PM

21  start participating in them.  And I think the result of that is        05:14PM

22  our affirmative discovery will largely be completed with the           05:14PM

23  other plaintiffs completing theirs.  There may be some                 05:14PM

24  additional issues other people do; but, for the most part, we'll       05:14PM

25  be done in July.                                                       05:14PM

1          So the remainder of the fact depositions we

2   scheduled was to let the defendants depose the plaintiffs so we

3   had proposed a schedule that would allow them to take these

4   depositions through the end of November.  It's a lot of

5   plaintiffs but we've got to get through them somehow.

6          If they can think they can do it quicker, great.

7   We would be fine with an earlier trial date than the July date

8   we had scheduled, we'd proposed.  But we'd proposed that just

9   because it fit in with the EEOC.  If there is an available

10  earlier slot, I'm sure we could stip to that as well.

11          THE COURT:  So is there a lot of --

12          MR. HARRIS:  They're all at the Mississippi facility.

13  My forty-seven plaintiffs are all at the Mississippi facility.

14  The other three consolidated cases are at different locations.

15  So there's another approximately forty plaintiffs who are at

16  different locations.

17          We had proposed a single fact cutoff for the four

18  consolidated cases for the end of November to try and get those

19  out of the calender, and then we would fit in the trials as soon

20  as we could.

21          THE COURT:  So that all the plaintiffs in all the

22  Mississippi cases would have to be deposed by November 28th?

23          MR. HARRIS:  Yes.

24          THE COURT:  Isn't that like 200 people?

25          MR. HARRIS:  It's about ninety.

05:14PM
05:14PM
05:14PM
05:14PM
05:14PM
05:14PM
05:14PM
05:14PM
05:14PM
05:14PM
05:15PM
05:15PM
05:15PM
05:15PM
05:15PM
05:15PM
05:15PM
05:15PM
05:15PM
05:15PM
05:15PM
05:15PM
05:15PM
05:15PM
05:15PM

1          THE COURT:  Why am I thinking --                    05:15PM

2          MR. WERNER:  Because there's 200 in the Texas.      05:15PM

3          MR. HARRIS:  It is a lot.  I think we might have to  05:16PM

4    double-track.                                             05:16PM

5          MR. CERNIGLIA:  That's not possible, necessarily.   05:16PM

6          MR. HARRIS:  Well, if the affirmative discovery is  05:16PM

7    largely completed in July, that still leaves August, September,  05:16PM

8    October, November.  Four months.                          05:16PM

9          THE COURT:  What if you, in each of the cases, you  05:16PM

10   designated the people who would be in the first trial?  So, in  05:16PM

11   the David case, we're just deposing the people who were in the  05:16PM

12   first trial right now, so that you wouldn't be trying to depose  05:16PM

13   everybody?                                                05:16PM

14         MR. HARRIS:  That's a possibility.  I mean, the      05:16PM

15   defendants won't say who they want to depose.  We will before  05:16PM

16   then have identified who'll be in the first trial, I think.  So  05:16PM

17   I guess a possibility -- it would facilitate an earlier trial  05:16PM

18   date -- is to depose the first.                           05:16PM

19         THE COURT:  The people who would be in the first trial  05:16PM

20   in each case.                                             05:16PM

21         MS. HANGARTNER:  I think that kind of brings us back to  05:16PM

22   the hiccup that we had at the David case, because we would  05:17PM

23   obviously like as defendants to have a voice in the mix of who  05:17PM

24   would be tried, instead of just allowing the plaintiffs to pick  05:17PM

25   their best sixteen.                                       05:17PM

```
 1          MR. HARRIS:  If I could address that.                    05:17PM
 2              Because, for the Achari plaintiffs and the other     05:17PM
 3   plaintiffs, this is not your representative trial.  We're past  05:17PM
 4   that.  These are actual lawsuits on behalf of individual        05:17PM
 5   plaintiffs.  So it's not really up to the defendants to pick who 05:17PM
 6   is suing them when.                                             05:17PM
 7          THE COURT:  Well, what we end up trying to do in the     05:17PM
 8   David case was find as similar as we could so that it would     05:17PM
 9   reduce the number of issues and witnesses, which I'd like to do 05:17PM
10   in the Mississippi cases as well.                               05:17PM
11              And I guess -- this is the way I want to start.      05:17PM
12   That you'll designate who you think -- and let's say ten.  You  05:18PM
13   pick ten plaintiffs who you would designate for the first trial 05:18PM
14   and tell Signal, the defendants.  So, if you're picking them    05:18PM
15   because they have similar circumstances, they ought to see that, 05:18PM
16   too.  And maybe you all ought to have a discussion, talk about  05:18PM
17   why you picked these ten people.  And then, if you can agree on 05:18PM
18   them, let me know.  If you can't agree, let me know.  Because I 05:18PM
19   think, if you're picking them because of similar characteristics 05:18PM
20   and you say, no, they are not similar, then that's one thing.   05:18PM
21   But if you just -- you know, we'll have to see why you disagree 05:18PM
22   about why those ten would be the right ten on the lists.        05:19PM
23          MS. ROWLAND:  Elizabeth Rowland for the Achari           05:19PM
24   plaintiffs.                                                     05:19PM
25              The plaintiff group in the four cases were given     05:19PM
```

1    to different firms based on commonalities in their recruitment                05:19PM

2    situations.  So there should already be a fair amount of                      05:19PM

3    similarities between the groups.  Narrowing it down should not                05:19PM

4    be a problem.                                                                 05:19PM

5            THE COURT:  If you did that, then could it be ready for               05:19PM

6    trial earlier?                                                                05:19PM

7                And the reason I'm asking is because maybe I would                05:19PM

8    give you -- I'll slot a trial date in here.  I can't let the                  05:19PM

9    Texas cases rule everything I do.  I've got to keep my cases                  05:19PM

10   moving, too.  If I don't do anything here, they'll keep taking                05:19PM

11   dates.  So I want to protect some dates.                                      05:19PM

12           MR. HARRIS:  To answer your question, yes.  We'll be                  05:19PM

13   available whenever you're able to set a date for trial, yes.                  05:20PM

14           MS. HANGARTNER:  I guess my concern, though, is                       05:20PM

15   obviously from Signal's point of view we are really splitting up              05:20PM

16   resources and really causing some problems.  But obviously, from             05:20PM

17   Mr. Shapiro and Mr. Cerniglia, they physically can't be in two               05:20PM

18   places at the same time.                                                     05:20PM

19           THE COURT:  I'm not going to set them on the exact same              05:20PM

20   dates.                                                                        05:20PM

21           MS. BEAN:  Your Honor, can EEOC be heard further on                   05:20PM

22   some deposition issues?                                                       05:20PM

23           MR. CERNIGLIA:  Why don't we try to resolve this before              05:20PM

24   we jump off.                                                                  05:20PM

25           THE COURT:  So I'm going to put in the minute entry                   05:20PM

1    that the plaintiffs -- how long would it take you to pick your          05:20PM

2    ten?  It will be ten in each case.                                       05:20PM

3            MR. HARRIS:  We can do it by next Friday.                        05:21PM

4            THE COURT:  So we've got a week for the plaintiffs in            05:21PM

5    each of the Achari cases to notify the defendants of the ten            05:21PM

6    individuals they would propose be in the first trial.                   05:21PM

7            And then Signal is going to look at that; and,                   05:21PM

8    within a week, you're going to let them know whether you agree.         05:21PM

9            MS. HANGARTNER:  Because of the Mardi Gras holiday,             05:21PM

10   could I just have like ten days instead of a week, Your Honor?         05:21PM

11           THE COURT:  Are we running up on Mardi Gras at that            05:21PM

12   point?  Okay.                                                            05:21PM

13           MR. GRIMSAL:  Your Honor, I believe there are only             05:21PM

14   thirty plaintiffs.  Would it be a problem in doing all of those        05:21PM

15   at one pop?                                                              05:21PM

16           THE COURT:  Yeah, let's do that.  We'll see how it             05:21PM

17   goes.  We may all hate ourselves for it.                                05:22PM

18           MR. FRITZSCHE:  Thank you.                                      03:53PM

19           THE COURT:  So this will be a week for all to tell            05:22PM

20   Signal.                                                                  05:22PM

21           Is somebody on the phone for all the Achari cases?             05:22PM

22   So you all are hearing this.  I'm talking about all the Achari         05:22PM

23   cases, not just the actual Achari.  You've got a week to tell          05:22PM

24   the defendants who your first ten plaintiffs would be.  Except         05:22PM

25   for Devassy, because we'll just assume it's all 13-678.                 05:22PM

1     And then Signal will have ten days to let you know

2  whether or not they agree or have any objection, legitimate.

3  Not just on the basis of we don't think they're similar or

4  logistically it's not a good idea.

5     MR. GRIMSAL:  Your Honor, to be clear, in Krishnakutty,

6  there are only two plaintiffs.  So this ten plaintiff rule will

7  only apply to two of the cases.  It's not the Achari case and

8  the Krishnakutty case.

9     THE COURT:  So that makes it easier.

10    MR. WEINBERGER:  Your Honor, may I ask you a question?

11    THE COURT:  Sure.

12    MR. WEINBERGER:  The objection that we would lodge is

13 to the idea that these persons can be tried at the same time.

14 Is that what you have in mind, Judge?

15    THE COURT:  The plaintiffs.

16    MR. WEINBERGER:  They're going to designate these

17 persons that they propose to be tried together.

18     What you want us to talk to you about is whether

19 we think these people can feasibly be tried together?

20    THE COURT:  Yes.

21    MR. WEINBERGER:  Thank you, Judge.

22    THE COURT:  I know that maybe you wouldn't prefer it,

23 but I'm not having ninety trials.  So we've got to do some

24 things.

25    MR. WEINBERGER:  I absolutely understand what you want,

1    Your Honor.                                                    05:23PM

2            With one caveat, if I may.  Would you allow us to      05:23PM

3    provide you with a document, five pages, four pages, three    05:24PM

4    pages, suggesting ways to manage this trial, all of it?  A way 05:24PM

5    to manage this litigation, globally, Your Honor?              05:24PM

6         THE COURT:  You know who you should talk to first is     05:24PM

7    your co-counsel about it.                                     05:24PM

8         MR. WEINBERGER:  All right, yes.                         05:24PM

9         THE COURT:  Because we've been through some of this,     05:24PM

10   can it be a class action, can it be consolidated.  We've been 05:24PM

11   talking about this for a long time.  And that's why I finally 05:24PM

12   just said, okay, we are just going to have some trials.  If we 05:24PM

13   can't work this out in a more efficient way, then we're going to 05:24PM

14   go to trial.                                                  05:24PM

15        MR. HOWARD:  This is Alan Howard.  I would just like to  05:24PM

16   be heard for a moment, because you should have some context here 05:24PM

17   that before the class certification motion was fully briefed and 05:24PM

18   decided we had extensive conversations with counsel for Signal 05:24PM

19   about just that proposition, as to whether we would find an   05:24PM

20   alternative agreed-upon kind of bellwether bifurcated system  05:25PM

21   with representative plaintiffs but not in the class context.  05:25PM

22   And, we went and tried to work that out, and were unable to come 05:25PM

23   to an agreement with Signal.  So now, six years later, now that 05:25PM

24   all these individual cases have been filed that are being set 05:25PM

25   for trial dates, for that issue to come back on the table, I  05:25PM

1    think is improper at this time.  And, I agree with Your Honor,        05:25PM

2    we've just got to move on and try these cases as it's set up.         05:25PM

3            THE COURT:  It never hurts, if they have something they       05:25PM

4    want to suggest, I'm not saying they can't do that.  But I'm not      05:25PM

5    going to stop what I'm doing.                                         05:25PM

6            So, in the request for the scheduling order on                05:25PM

7    page three, where you're saying because document discovery is         05:25PM

8    unlikely to be completed before the scheduled dates of those          05:26PM

9    depositions, I guess that was the other thing.  What I want is        05:26PM

10   for you all to participate in all the depositions and not to          05:26PM

11   have to do it again.  And so I didn't want you to get -- I don't      05:26PM

12   know that I'm going to leave this language in here, but I             05:26PM

13   certainly didn't want any of the people in the Achari cases to        05:26PM

14   get the false security that they weren't expected to participate     05:26PM

15   and that they would get a second chance at all these                  05:26PM

16   depositions.  Because that's definitely not what I want to            05:26PM

17   happen.  So I guess --                                                05:26PM

18           MR. HARRIS:  We certainly understand that we're not           05:26PM

19   being afforded a second chance.  I would just like a little           05:26PM

20   leeway if something comes up and it occurs that a document we         05:26PM

21   weren't given by the time the deposition occurred that we could       05:26PM

22   come back to the Court and under a particular circumstance and        05:27PM

23   ask for flexibility there.  Because we are just getting the           05:27PM

24   production back.                                                      05:27PM

25           THE COURT:  But now I think you've gotten the Sig-P           05:27PM

1    documents.                                                      05:27PM

2            MR. HARRIS:  Yes.                                        05:27PM

3            THE COURT:  You're going to be on the same schedule for 05:27PM

4    the electronic discovery.  And so -- and, if you're getting the 05:27PM

5    Sig-P documents now, you've got some time before these          05:27PM

6    depositions are going to occur.                                 05:27PM

7                So I probably will change your language to be        05:27PM

8    stricter, that it would only be if you had a court order on good 05:27PM

9    cause shown and you showed the Court why you couldn't have done 05:27PM

10   it before.                                                      05:27PM

11           MR. HARRIS:  That's fine, Your Honor.  That's all we're 05:27PM

12   asking.  That's fine.                                           05:27PM

13           THE COURT:  There's something else I wanted to ask you  05:27PM

14   about.                                                          05:27PM

15               Well, there's this issue of how many plaintiffs.    05:27PM

16   But we're going to try the ten plaintiffs in the two cases,     05:28PM

17   thirteen in Devassy and two in the Krisnhakutty.  And so I can  05:28PM

18   resolve that.                                                   05:28PM

19               So, next year, we've got a trial in January, trial  05:28PM

20   in April in Texas and a trial in June.                          05:28PM

21               So, you know, how did you pick the July 13th date   05:28PM

22   for the Achari?                                                 05:28PM

23           MR. HARRIS:  Only based on our understanding that the   05:28PM

24   EEOC wanted to have their trial before we turned to the Achari  05:28PM

25   cases and have it the next available date.  We would be ready   05:28PM

```
 1    before then.  We would be ready in the period between the       05:29PM
 2    January David and the June EEOC trial or whenever fits your      05:29PM
 3    schedule.                                                        05:29PM
 4              THE COURT:  So July 13th.                              05:29PM
 5              Why didn't you go to the Monday before that?  Is       05:29PM
 6    there a reason?                                                  05:29PM
 7              MR. HARRIS:  That, I don't remember.                   05:29PM
 8              THE COURT:  So that's what I think I'll do.            05:29PM
 9              But July 13th might be -- the problem is that's        05:29PM
10    getting too close to August.  So I think maybe I'll back that up 05:29PM
11    a week.                                                          05:29PM
12              MR. HARRIS:  May have been because of July 4th.        05:29PM
13              THE COURT:  But then you would think the Monday after  05:29PM
14    July 4th, whatever that is.                                      05:29PM
15              Who's got a calender?                                  05:29PM
16              MS. HANGARTNER:  I guess my concern is, Your Honor,    05:29PM
17    that would mean that we're rolling straight from the EEOC in the 05:29PM
18    entire month of June into another month in July.  And then      05:29PM
19    Signal and the Dewan/Burnett defendants would be rolling        05:29PM
20    directly into August.                                           05:30PM
21              THE COURT:  I'm as horrified as you are.              05:30PM
22              MS. HANGARTNER:  I'm scared.                           05:30PM
23              THE COURT:  Me, too.                                   05:30PM
24              MS. HANGARTNER:  I just don't see how we --            05:30PM
25              THE COURT:  What's the Monday after July 4th?          05:30PM
```

1          MR. HOWARD:  July 7th.                                    05:30PM

2          THE COURT:  So who knows what's going to happen.  But     05:30PM

3   we're going to set some trial dates and you all are going to     05:30PM

4   have to staff up or whatever it takes.                           05:30PM

5          So we've got -- and then I'm not going to set any         05:30PM

6   of the other trial dates at this point, but everybody will have  05:30PM

7   a trial date.                                                    05:30PM

8          We'll have to come back later and set the rest of         05:30PM

9   the David plaintiffs, phase two in the EEOC, all these other.    05:30PM

10         MS. HANGARTNER:  What was the date again, Your Honor?      05:30PM

11         THE COURT:  July 7th.                                     05:30PM

12         MS. BOLLMAN:  That's a Tuesday.  The 3rd should be the     05:31PM

13   holiday before the Saturday.                                    05:31PM

14         THE COURT:  That's going to be great.  You will be here    05:31PM

15   on the 4th of July, preparing.  It's very pleasant here.        05:31PM

16         MS. HANGARTNER:  We'll have a barbecue at my house.        05:31PM

17         THE COURT:  All right.                                    05:31PM

18         Julie, did you want to talk about depositions?            05:31PM

19         MS. BEAN:  Yeah.  I want to go back -- and the reason      05:31PM

20   this is really important for us, Your Honor -- I'm not trying    05:31PM

21   get the Court upset -- but we've got to take care of this now.   05:31PM

22   Because, if we don't, we're going to come back to it.  I'd      05:31PM

23   rather resolve it here.                                         05:31PM

24         We're prepping for our deps now, and we were              05:31PM

25   prepping initially with the understanding that we were going to  05:31PM

1    take our 30(b)(6) first and go through it.  I understand where          05:31PM

2    the Court is now on that.  But, as part of that discussion,            05:31PM

3    defendant said something, and I just need some clarity on it,          05:31PM

4    and we can maybe resolve it if there's a dispute.                      05:32PM

5             We anticipate taking our dep, for example, our                05:32PM

6    30(b)(6) dep in an order that we choose subject area wise.  So         05:32PM

7    we've got fifteen subject areas, and that's how we're going to         05:32PM

8    proceed.  Assuming then that Signal will designate whoever             05:32PM

9    Signal wants to answer that -- and I just want to make sure that       05:32PM

10   I was not hearing anything different and so I want some clarity.       05:32PM

11           THE COURT:  If you have fifteen topics, Signal might           05:32PM

12   designate someone for half of those and somebody else for the         05:32PM

13   others, and that's their prerogative.                                 05:32PM

14           MS. BEAN:  Who they designate?  I don't care at all.          05:32PM

15           THE COURT:  And you can't switch back and forth from          05:32PM

16   one witness to another just because you have them in a certain        05:32PM

17   order.  That witness, if it's like 1, 3, 7, 8, 9, if that             05:32PM

18   attorney is up to ask that witness those questions.                   05:32PM

19           MS. BEAN:  What we had envisioned is precisely what the       05:33PM

20   Court is saying that we can't do, and I'd just like some              05:33PM

21   clarity, is that we want to order the substance of our dep the        05:33PM

22   way that we choose to, as opposed to how and when Signal makes        05:33PM

23   its designees available.  And so is the Court saying something        05:33PM

24   different?                                                             05:33PM

25           THE COURT:  I think it's going to be complicated.  When       05:33PM

1    they get all these different deposition notices and they do          05:33PM

2    their spreadsheet, what if something is first on yours and it's       05:33PM

3    fifth on theirs?                                                      05:33PM

4              I think you all are going to have to look at, when          05:33PM

5    you see all the deposition notices and Signal does the                05:33PM

6    spreadsheet and tells you who the designees are, and work             05:33PM

7    together on that.  But you understand what I'm saying?  It's          05:33PM

8    just not going to be very simple.                                     05:33PM

9              I guess, are you saying I want to take a person             05:33PM

10   first who takes these topics and then --                             05:33PM

11        MS. BEAN:  No.  I'm mainly talking about a 30(b)(6) and          05:34PM

12   how we prepare theory wise to move forward within the single         05:34PM

13   30(b)(6) deposition.  We'd like to do it in an order and manner       05:34PM

14   of our choosing, as opposed to an order and manner of how Signal      05:34PM

15   chooses to produce witnesses.  So the driver, in our opinion,        05:34PM

16   should be how we want to take our dep, as opposed to how or who       05:34PM

17   Signal wants to produce and when.                                     05:34PM

18        THE COURT:  Well, you know what, you all -- if you were          05:34PM

19   in one case and had one 30(b)(6) and one witness, this would be      05:34PM

20   simple.  But you've got these different cases and different           05:34PM

21   parties, and they're going to be different 30(b)(6) notices to       05:34PM

22   Signal.  And Signal is going to do the spreadsheet and then          05:34PM

23   they're going to get with their witnesses and they're going to       05:34PM

24   figure out when people are available.  And you all are just          05:34PM

25   going to have to deal with it.  It's not going to be as pretty       05:34PM

```
 1   as I'd like for it to be, is my prediction.  But, you know,      05:35PM
 2   lawyers have to do that all the time.  You have to take this     05:35PM
 3   segment and this segment, and then you have to put the whole     05:35PM
 4   picture together when you're getting ready for trial.  But I      05:35PM
 5   think it's going to be a big task for Signal to take all these   05:35PM
 6   depositions, break it down into topics, figure out who the right 05:35PM
 7   person is, do all the scheduling for these people.  But that's   05:35PM
 8   what they are going to have to do.  And I don't think that the   05:35PM
 9   plaintiffs are going to be able to dictate you have to give me   05:35PM
10   this person first and then you have to give me that person.      05:35PM
11   It's going to be hard enough for them to get it together and do  05:35PM
12   all the scheduling as it is.                                     05:35PM
13               Is that what you're asking?                         05:35PM
14        MS. BEAN:  That is.                                        05:35PM
15               And that's the type of prejudice that we view is    05:35PM
16   flowing from our being forced to proceed with the other         05:36PM
17   plaintiffs.                                                     05:36PM
18               One other matter.  Can we resolve the location of   05:36PM
19   the 30(b)(6) deps?  What the parties anticipate where these     05:36PM
20   depositions would take place?                                   05:36PM
21        MS. HANGARTNER:  I don't think we've even begun those      05:36PM
22   discussions necessarily.  I would think --                      05:36PM
23        THE COURT:  Where is Signal's headquarters?               05:36PM
24        MS. HANGARTNER:  They have the headquarters in Mobile,    05:36PM
25   a yard in Pascagoula and a yard in Orange.                      05:36PM
```

1          THE COURT:  Are most of the lawyers here in New Orleans   05:36PM

2   and most of the witnesses in Mobile?   05:36PM

3          MS. HANGARTNER:  Most of the witnesses are actually in   05:36PM

4   Pascagoula.   05:36PM

5          THE COURT:  Let's do them in New Orleans.   05:36PM

6          MS. HANGARTNER:  Okay.   05:36PM

7          THE COURT:  Is that what everybody would prefer?  Is   05:36PM

8   that where most people are?  It's easier to get here than it is   05:36PM

9   Pascagoula.  So let's do them in New Orleans.   05:36PM

10          MS. HANGARTNER:  That's fine, Your Honor.   05:36PM

11          THE COURT:  Unless all the parties agree otherwise.   05:37PM

12          Would you send me your proposed scheduling order,   05:37PM

13   send it to Lon in Word, so we can make changes to it?   05:37PM

14          MR. HARRIS:  Yes.   05:37PM

15          THE COURT:  So we've covered the things I had on my   05:37PM

16   list.   05:37PM

17          MR. WERNER:  Your Honor, can I just raise, just going   05:37PM

18   back to this?  This just occurred to me, going back to the   05:37PM

19   amending of the complaint with respect to damages.   05:37PM

20          I hadn't thought about the impact of the   05:37PM

21   bankruptcy, and there is a motion for relief from the automatic   05:37PM

22   stay that's pending in front of the bankruptcy court.   05:37PM

23          THE COURT:  Is he in every case?   05:37PM

24          MR. WERNER:  He individually is not in the consolidated   05:37PM

25   Achari case because the stay was already in effect, as I   05:37PM

1   understand it, when the plaintiff filed their suit.  And he's      05:37PM

2   stayed as to our cases.      05:38PM

3              Global Resources, which is his corporation, is not      05:38PM

4   in bankruptcy or proceeding against it.  We have a status      05:38PM

5   conference next Thursday in the bankruptcy court in Gulf Port.      05:38PM

6   I don't know if the judge will be ruling from the bench on the      05:38PM

7   stay with the motion at that time or if it will come later.  But      05:38PM

8   that may impact the timing.  If the stay is lifted against      05:38PM

9   Michael Pol, then we'll probably have to come back.  If the stay      05:38PM

10  is lifted after the new March 3rd deadline, we may have to come      05:38PM

11  back and then specify damages against him.  I just wanted to      05:38PM

12  bring that to the Court's attention.      05:38PM

13             THE COURT:  Well, that's something you can't control.      05:38PM

14             All right.  Good.  Well, thank you all.      05:38PM

15        MS. BEAN:  Your Honor, I had one small additional thing      05:38PM

16  from EEOC, and this is more memorializing what's the      05:38PM

17  understanding between EEOC and Signal.  I just want it to come      05:38PM

18  to closure.  And that is, we've asked that Signal give us the      05:38PM

19  deposition exhibits from the class depositions.  And I talked      05:39PM

20  with Erin before the meeting, before this meeting.  She      05:39PM

21  indicated she would give it to us.  And I just want a date, if      05:39PM

22  we could get that.      05:39PM

23        MS. HANGARTNER:  I really need to check with Brian,      05:39PM

24  only because Brian's been at the depositions, and I'm not sure      05:39PM

25  how big the binders are.      05:39PM

```
 1              MS. BOLLMAN:  Thousands of documents.           05:39PM

 2              MS. HANGARTNER:  It's like five or six big binders.  05:39PM

 3              MS. BOLLMAN:  I think it's more than that, but yeah.  05:39PM

 4   Maybe seven or eight.                                     05:39PM

 5              MR. SHAPIRO:  Can you put it all on disc?       05:39PM

 6              MS. HANGARTNER:  I'm not sure.  Let me check with  05:39PM

 7   Carol, the court reporter.                                05:39PM

 8              I just had a few things, if you don't mind.  The  05:39PM

 9   T- and U-visa issue, the temporary order, that may affect the  05:39PM

10   number of depositions that we take as well.              05:40PM

11              THE COURT:  Didn't really ask you who all you want to  05:40PM

12   depose when I was making my list.                         05:40PM

13              MS. HANGARTNER:  Right.                         05:40PM

14              THE COURT:  Who does Signal want to depose?     05:40PM

15              MS. HANGARTNER:  I think we've probably got about ten  05:40PM

16   individuals from the plaintiff's witness list.  However, if --  05:40PM

17              MR. WEINBERGER:  We would certainly want all the  05:40PM

18   spouses.  If there were no interarum orders, it would certainly  05:40PM

19   be Katie Bidore.  If you think about it, these people are making  05:40PM

20   -- for example, with regard to some of their claims, I was  05:40PM

21   reading a Tenth Circuit decision today.  The Section 1595 civil  05:40PM

22   remedy TVPA provides an avenue to the recovery of compensatory  05:40PM

23   and punitive damage.  Well, you can imagine how much discovery  05:40PM

24   we would ordinarily want to pursue in an ordinary case to  05:41PM

25   determine for all of these individuals what those damages are.  05:41PM
```

1    Spouses would be at the top of the list, of course.                05:41PM

2         THE COURT:  So have you deposed any -- no spouses have         05:41PM

3    been deposed?                                                      05:41PM

4         MR. WEINBERGER:  By definition, it's forbidden.  It's         05:41PM

5    forbidden.  And that's just starters.                              05:41PM

6         THE COURT:  All right.                                        05:41PM

7              Anybody else with the orders that have been in           05:41PM

8    place right now?                                                   05:41PM

9         MS. HANGARTNER:  That would be manageable, probably           05:41PM

10   about ten to fifteen.                                              05:41PM

11        THE COURT:  Okay.                                             05:41PM

12             And plus the plaintiff, obviously.                       05:41PM

13        MS. HANGARTNER:  Correct.                                     05:41PM

14        THE COURT:  I was just trying to get a feel whether           05:41PM

15   this was doable during 2014 if we limit the number of             05:41PM

16   plaintiffs.  It sounds like it is.  It sounds like a lot, but it   05:41PM

17   sounds like a lawyers' bonanza.  So I think it's doable.  Maybe    05:42PM

18   not all lawyers, but some lawyers.                                 05:42PM

19        MR. WEINBERGER:  Your Honor, do you have any sense for         05:42PM

20   timeline regarding the protective orders issue and Achari?        05:42PM

21        THE COURT:  No.  That's one of the reasons I wanted the       05:42PM

22   amended complaints.                                                05:42PM

23             Then what I'll try to do is just read everything         05:42PM

24   and get a more holistic understanding of everything, all the       05:42PM

25   orders that are in place.                                          05:42PM

```
 1            MR. WEINBERGER:  We have an obligation to be candid to     05:42PM
 2   you, absolute obligation.                                          05:42PM
 3            MS. BEAN:  Counsel, could you speak up?  Just, at the      05:42PM
 4   end, your voice drops sometimes and I can't hear you.              05:42PM
 5            MR. WEINBERGER:  Your Honor, it is certain if the Court    05:42PM
 6   enters interarum orders for Achari and David, we will be           05:42PM
 7   required to move the Court to stay all of the litigation.          05:42PM
 8                 The Court will deny that order, of course.           05:42PM
 9                 We will go to the Fifth Circuit, ask them for a      05:43PM
10   stay.  Do all the stuff we could do there.                        05:43PM
11            THE COURT:  That's fine.  I understand that.              05:43PM
12            MR. WEINBERGER:  Of course.                               05:43PM
13            THE COURT:  That's perfectly fine.                        05:43PM
14            MS. HANGARTNER:  I just have a few quick things.          05:43PM
15                 We have found in these depositions that counsel,     05:43PM
16   the deponent, the court reporter, in the afternoon, need another   05:43PM
17   break.  If that's okay.  I know that you had mandated the          05:43PM
18   fifteen minutes, but we had talked through it and everyone         05:43PM
19   agreed.  So we are going to be requesting an IME for Sony          05:43PM
20   Vasudevan Sulekha, and I'll work with you to get dates on that.    05:43PM
21            MR. CERNIGLIA:  This was an issue that developed.  I      05:43PM
22   don't now how it's important, especially for trial.  There were    05:43PM
23   objections to the translation.  And that gets very complicated.    05:43PM
24   The plaintiff's translator objected, and only when they felt it    05:43PM
25   of substance.  But that's what makes it very important.  They      05:43PM
```

1  would object when they thought it was of substance to the          05:43PM

2  translation that was given by the -- I guess you all call him       05:44PM

3  the official translator.  And there's no way the court reporter     05:44PM

4  can copy down the Indian dialect.  And so --                        05:44PM

5              THE COURT:  Is there a recording also?                  05:44PM

6              MS. HANGARTNER:  Yeah, video.  Video and audio.         05:44PM

7              THE COURT:  So all you can do at this point is put it    05:44PM

8  on the record.                                                      05:44PM

9              MR. CERNIGLIA:  That's what I believe --                05:44PM

10             THE COURT:  If it becomes a critical issue for trial,   05:44PM

11  then maybe you all will do a motion in limine or something like    05:44PM

12  that.                                                              05:44PM

13             MR. CERNIGLIA:  The only reason I raise it -- and that  05:44PM

14  was the only thing I can try to do today on the record -- is I     05:44PM

15  think that -- and it could work the other way, too.  When it       05:44PM

16  comes time for questions of their witnesses, if somebody thinks    05:44PM

17  that something's been translated improperly, there ought to be     05:44PM

18  at least the statement as to why they think this is a word or is   05:44PM

19  it a phrase.  So, for those that are non -- that have no           05:44PM

20  interpreter working for them, we at least we have a record of      05:45PM

21  it.                                                                05:45PM

22             THE COURT:  Maybe, if there's an objection             05:45PM

23  contemporaneously, you all can clarify things right then.         05:45PM

24             MR. CERNIGLIA:  As to what the word is.                05:45PM

25             THE COURT:  And, you know, cure the objection.         05:45PM

1          But, if not, at least you've noted it.                    05:45PM

2          MR. CERNIGLIA:  And I can't imagine what's going to       05:45PM

3   happen in trial.                                                 05:45PM

4          MR. WERNER:  Your Honor, just the history of this is      05:45PM

5   that we, in the early depositions, we had tried to kind of       05:45PM

6   engage in this process of objecting to interpretation and then   05:45PM

7   working it out.  And where we end up, because that kind of       05:45PM

8   disrupts the flow of the deposition, we just stated very         05:45PM

9   succinctly on the record objection to translation or objection  05:45PM

10  to interpretation.  That kind of served as a marker when we're   05:45PM

11  reviewing the transcripts with our client, if there's an error   05:45PM

12  that needed to be corrected before signing, that that was        05:45PM

13  something we could go back to.  And that seems like a succinct   05:45PM

14  way to handle it.                                                05:45PM

15         MR. SHAPIRO:  But there should be an explanation as to    05:45PM

16  why there was a problem, what is problematic about the           05:46PM

17  translation.                                                     05:46PM

18         MS. BOLLMAN:  But the issue with that is, when we tried   05:46PM

19  it, Your Honor -- and Steve and Tim weren't at the beginning of  05:46PM

20  the deposition -- is that a lot of times the explanation that    05:46PM

21  their translator provides to truly explain it, they speak --     05:46PM

22  have to speak some of the words in their language, in that       05:46PM

23  dialect.  And the court reporter can't take it down.  So then    05:46PM

24  she objected because she said I can't certify this record if I   05:46PM

25  can't write the words down.  So that's when we talked about it   05:46PM

1  and decided that for the most part we're just going with -- just          05:46PM

2  saying objection, translation.  And, if the person asking the              05:46PM

3  questions felt like it was a critical question, then we would go           05:46PM

4  off-record and try to resolve and then go back on and maybe                05:46PM

5  change our question a little bit or whatever.  We just found               05:46PM

6  that it worked the best.  It's a tricky situation when you're              05:46PM

7  doing it there.                                                            05:46PM

8        THE COURT:  You can't have the arguing about the                     05:46PM

9  translating taking up all the --                                           05:46PM

10       MR. CERNIGLIA:  Probably not going to affect me                       05:47PM

11 whatsoever because I'm very limited in my participation.  But              05:47PM

12 especially if it gets to something that was said or allegedly             05:47PM

13 said in India and the two Indians can't agree on what was said.           05:47PM

14       THE COURT:  If it's something critical, then that's                   05:47PM

15 probably a good idea.  Maybe say what it is and then go off the            05:47PM

16 record and talk about it.                                                  05:47PM

17       MR. SHAPIRO:  It doesn't necessarily need to be on the                05:47PM

18 record, and that would solve the problem of putting words in              05:47PM

19 Malayalam.                                                                 05:47PM

20       THE COURT:  But it can't be every question that's a                   05:47PM

21 critical question.  It has to be rare.                                     05:47PM

22            Or, in the Chinese Drywall cases, Judge Fallon                   05:47PM

23 ended up going to China to be in the depositions because the              05:47PM

24 first round of depositions were totally worthless, it was all             05:47PM

25 argument between the lawyers and the translators.                         05:47PM

1        MS. HANGARTNER:  You can come to India with us.        05:48PM

2        THE COURT:  Thank you, but no thank you.  I'm sure it's        05:48PM

3    a fascinating place, but I would be sick the entire time.        05:48PM

4        MS. HANGARTNER:  I just have one last thing and because        05:48PM

5    I want to be completely transparent.  My law partner, Lance        05:48PM

6    Rydberg, is interviewing, has interviewed for a position helping        05:48PM

7    him directly.  He interviewed an individual by the name of        05:48PM

8    Mitchell Hosencome.  Lance, Mr. Rydberg, wanted to get Mitchell        05:48PM

9    in today, offer him a position.  Then it came to my attention        05:48PM

10   that he used to work at Phelps, and I believe worked either with        05:48PM

11   you or in your -- in a department where you were working.  And I        05:48PM

12   didn't want to take the chance that that would cause an issue        05:48PM

13   down the road.        05:48PM

14       THE COURT:  Of course I didn't know anything about        05:48PM

15   these cases when I was at Phelps.  I have nothing to do with        05:48PM

16   Phelps, so it wouldn't cause me a problem.        05:48PM

17       MS. BOLLMAN:  He's not working on our case?        05:48PM

18       MS. HANGARTNER:  He may be assigned some very limited        05:48PM

19   research.  Well, he may be.        05:49PM

20       THE COURT:  Is there an issue because I know him that        05:49PM

21   there would be a problem for him to be on this case?        05:49PM

22           You know what?  You know what?  I am recusing        05:49PM

23   myself from Phelps' cases through April.  Because I started        05:49PM

24   here in April, and that would be the end of my two years.  So if        05:49PM

25   he --        05:49PM

1      MS. HANGARTNER:  He no longer works for Phelps.          05:49PM

2      THE COURT:  But he was there when I was there.           05:49PM

3           I don't know.  One way you could handle this is     05:49PM

4  not have him do anything on this case until April.           05:49PM

5      MS. HANGARTNER:  Is that okay with everyone here?        05:49PM

6      MS. BEAN:  Just so I'm clear on the record about Your    05:49PM

7  Honor's relationship with the person, what is it again?      05:49PM

8      THE COURT:  He was an associate at Phelps when I was a   05:49PM

9  partner there almost two years ago.  When I left, he was still  05:49PM

10  there.  But of course we had nothing to do with this case.   05:49PM

11           Then I left, and then subsequently he left, and    05:50PM

12  he's going to work for one of the firms.  So I don't see a    05:50PM

13  problem with that.                                           05:50PM

14      MS. BEAN:  Thank you.                                    05:50PM

15      MS. HANGARTNER:  So that would be April 1st.            05:50PM

16      THE COURT:  My automatic recusal of any Phelps cases,   05:50PM

17  not just somebody who worked at Phelps but Phelps cases, ends at  05:50PM

18  the end of March.                                            05:50PM

19      MS. HANGARTNER:  And, again, I just wanted to be        05:50PM

20  transparent about that.                                      05:50PM

21      MR. SHAPIRO:  Your Honor, can I make a really wild      05:50PM

22  out-of-the-world suggestion?  But I just want to ask one time,  05:50PM

23  is there any chance that Your Honor can appoint a special master  05:50PM

24  to somehow try to get us involved in settlement discussions?  I  05:50PM

25  don't know if a special master -- I know the magistrate gets  05:50PM

1    involved.  But a special -- and a special master is a unique          05:50PM

2    kind of referee.                                                      05:50PM

3            THE COURT:  The problem with that would be you all            05:51PM

4    would have to pay for it.  I mean, you're already paying a lot        05:51PM

5    already.  If somebody wants to suggest that -- I don't know if        05:51PM

6    we do that for settlement purposes, like appointing a private         05:51PM

7    mediator.                                                             05:51PM

8            MS. HANGARTNER:  I've never heard of that.  I've not          05:51PM

9    heard of a special master for settlement.                            05:51PM

10           MR. WERNER:  Mediation can be ordered, obviously.             05:51PM

11           THE COURT:  I would certainly, if there's any chance          05:51PM

12   for you all to get together to mediate, I would definitely            05:51PM

13   suggest that and encourage everybody.                                 05:51PM

14           MR. GRIMSAL:  As long as we're asking wild questions          05:51PM

15   out of the blue, do any your colleagues, any of the other            05:51PM

16   Article IIIs, do that sort of mediation in cases like this?           05:51PM

17   Could you ask one of your colleagues to do it?                        05:52PM

18           THE COURT:  As opposed to a magistrate judge?                 05:52PM

19           MR. GRIMSAL:  Correct.                                        05:52PM

20           THE COURT:  Not to my knowledge.  I mean, we really           05:52PM

21   rely on the magistrate judges to do that.  But they do it more        05:52PM

22   than we do.  They're probably better at it than we are.               05:52PM

23           The problem with this case is I'm not going to ask           05:52PM

24   an Article III judge if they'll get educated about this case.         05:52PM

25   But there is a magistrate judge who -- Judge Knowles -- and he        05:52PM

1    knows a lot about the case.  He'd be perfect.        05:52PM

2             MR. GRIMSAL:  I mean no disrespect at all.   05:52PM

3             THE COURT:  Look, I understand.             05:52PM

4             MR. CERNIGLIA:  We got to get Texas here, too, though.  05:52PM

5             MS. HANGARTNER:  Exactly.                   05:52PM

6             THE COURT:  All right.  Well, good.  I'll see you all  05:52PM

7    before you know it.                                 05:52PM

8             MS. HANGARTNER:  Time will fly.             05:52PM

9                  (5:54 p.m., proceedings concluded.)    05:53PM

10

11

12                       CERTIFICATE

13

14

           I, Susan A. Zielie, Official Court Reporter, do hereby
15    certify that the foregoing transcript is correct.

16

17                            /S/ SUSAN A. ZIELIE, FCRR

18                            _____
                                  Susan A. Zielie, FCRR
19

20

21

22

23

24

25

| / |
|---|

**/S** [1] - 72:17

| 0 |
|---|

**02108** [1] - 2:20
**08-1220** [3] - 1:6, 2:3, 2:6

| 1 |
|---|

**1** [7] - 16:21, 18:25, 21:12, 22:13, 44:8, 58:17
**10** [1] - 44:9
**10022** [1] - 2:4
**11** [1] - 44:9
**1100** [1] - 2:16
**1130** [1] - 3:5
**12** [1] - 21:12
**12-557** [3] - 1:7, 2:3, 2:6
**12th** [1] - 2:16
**13-6218** [1] - 1:7
**13-678** [1] - 51:25
**13707** [1] - 3:14
**13th** [6] - 22:6, 22:11, 22:25, 55:21, 56:4, 56:9
**1521** [1] - 3:20
**1595** [1] - 63:21
**17th** [1] - 17:10
**1st** [1] - 70:15

| 2 |
|---|

**2** [1] - 3:1
**20** [1] - 44:9
**200** [2] - 47:24, 48:2
**2000** [1] - 3:5
**20005** [1] - 2:17
**2007** [1] - 34:21
**201** [1] - 2:12
**2014** [6] - 1:7, 4:1, 16:24, 17:1, 25:2, 64:15
**2015** [3] - 16:21, 23:16, 29:9
**2018** [2] - 23:13, 23:15
**2019** [1] - 23:15
**202.585.6500** [1] - 2:17
**205.212.2067** [1] - 3:6
**21** [2] - 1:7, 4:1
**212.803.4021** [1] - 2:5
**22nd** [2] - 3:5, 46:2
**233** [1] - 2:9
**28th** [2] - 17:9, 47:22

| 3 |
|---|

**3** [1] - 58:17
**30** [1] - 16:24
**30(b)(6** [27] - 36:6, 36:8, 36:13, 36:23, 37:1, 40:16, 40:17, 40:20, 40:21, 43:12, 43:16, 43:20, 43:24, 43:25, 44:2, 44:8, 44:15, 44:22, 45:15, 46:3, 58:1, 58:6, 59:11, 59:13, 59:19, 59:21, 60:19
**30(b)(6)** [1] - 36:13
**30(b)(6)s** [2] - 36:19, 44:20
**30303** [1] - 2:9
**30th** [2] - 46:5, 46:10
**31** [1] - 17:1
**310** [1] - 3:11
**31st** [2] - 17:8, 17:12
**35205** [1] - 3:4
**3:00** [1] - 32:18
**3rd** [3] - 8:5, 57:12, 62:10

| 4 |
|---|

**4000** [1] - 2:13
**404.521.6700** [1] - 2:10
**406** [1] - 1:21
**4:00** [1] - 4:2
**4th** [4] - 56:12, 56:14, 56:25, 57:15

| 5 |
|---|

**500** [1] - 1:21
**504.309.8442** [1] - 3:18
**504.582.1111** [1] - 2:14
**504.586.0555** [1] - 3:21
**504.589.7781** [1] - 1:23
**590** [1] - 2:4
**5:54** [1] - 72:9

| 6 |
|---|

**617.573.4800** [1] - 2:21

| 7 |
|---|

**7** [1] - 58:17
**700** [2] - 2:16, 3:17

**701** [1] - 3:11
**70130** [3] - 1:22, 3:17, 3:20
**70139** [1] - 3:12
**70170-4000** [1] - 2:13
**70185** [1] - 3:14
**7th** [9] - 20:5, 20:10, 20:14, 20:20, 21:13, 22:15, 22:18, 57:1, 57:11

| 8 |
|---|

**8** [1] - 58:17

| 9 |
|---|

**9** [2] - 34:21, 58:17

| A |
|---|

**abandon** [1] - 28:24
**able** [5] - 9:2, 20:24, 26:17, 50:13, 60:9
**absolute** [1] - 65:2
**absolutely** [2] - 38:22, 52:25
**academically** [1] - 8:15
**accommodate** [1] - 24:6
**accommodating** [2] - 23:21, 23:24
**according** [1] - 6:13
**Achari** [28] - 2:11, 4:14, 4:16, 4:25, 6:1, 7:14, 7:23, 8:4, 20:3, 23:19, 25:9, 29:1, 29:5, 30:14, 46:14, 49:2, 49:23, 51:5, 51:21, 51:22, 51:23, 52:7, 54:13, 55:22, 55:24, 61:25, 64:20, 65:6
**achieve** [1] - 27:11
**achieved** [1] - 29:12
**action** [2] - 29:11, 53:10
**actions** [2] - 8:10, 28:22
**activities** [1] - 17:3
**actual** [3] - 23:18, 49:4, 51:23
**add** [1] - 19:7
**addition** [2] - 6:6, 26:5
**additional** [10] - 16:16, 19:1, 19:7, 21:20, 23:11, 31:16, 35:10, 36:9, 46:24, 62:15

**address** [1] - 49:1
**addresses** [1] - 8:17
**adequately** [1] - 8:17
**adjustment** [1] - 17:24
**admitted** [1] - 15:17
**affect** [3] - 18:5, 63:9, 68:10
**affidavit** [1] - 11:21
**affidavits** [1] - 34:8
**afforded** [1] - 54:19
**afternoon** [5] - 4:8, 4:13, 6:2, 32:18, 65:16
**ago** [3] - 21:21, 31:25, 70:9
**agree** [10] - 13:20, 24:22, 45:21, 49:17, 49:18, 51:8, 52:2, 54:1, 61:11, 68:13
**agreed** [2] - 53:20, 65:19
**agreed-upon** [1] - 53:20
**agreement** [6] - 5:13, 6:12, 15:4, 45:19, 46:9, 53:23
**aid** [1] - 29:9
**aided** [1] - 1:25
**AL** [1] - 3:6
**al** [2] - 1:4, 1:7
**ALAN** [1] - 2:3
**Alan** [5] - 4:4, 4:22, 4:24, 34:17, 53:15
**allegation** [3] - 11:7, 13:16, 13:18
**allegations** [2] - 13:5, 14:17
**alleged** [1] - 13:12
**allegedly** [1] - 68:12
**alleges** [1] - 10:20
**allow** [5] - 7:16, 12:5, 24:2, 47:3, 53:2
**allowed** [1] - 13:15
**allowing** [1] - 48:24
**almost** [1] - 70:9
**alone** [2] - 28:19, 28:24
**alternative** [1] - 53:20
**amended** [2] - 9:18, 64:22
**amending** [1] - 61:19
**amount** [3] - 19:5, 38:8, 50:2
**amounts** [1] - 9:5
**angry** [1] - 39:1
**Anika** [1] - 4:25
**ANJALI** [1] - 2:7
**Anjali** [1] - 4:10
**annoyed** [1] - 42:15

**answer** [11] - 11:5, 11:11, 12:3, 12:4, 12:6, 15:7, 24:14, 25:2, 35:9, 50:12, 58:9
**answered** [2] - 8:20, 15:25
**anticipate** [3] - 35:6, 58:5, 60:19
**anyway** [1] - 46:1
**APLC** [1] - 3:13
**appeal** [1] - 15:5
**appealed** [1] - 15:3
**appear** [1] - 21:2
**APPEARANCE** [1] - 3:1
**APPEARANCES** [1] - 2:1
**application** [1] - 12:7
**applications** [2] - 10:22, 15:22
**apply** [1] - 52:7
**appoint** [1] - 70:23
**appointing** [1] - 71:6
**approach** [2] - 37:12, 45:23
**April** [15] - 18:25, 21:15, 21:16, 21:22, 22:6, 22:11, 22:25, 46:2, 46:5, 46:10, 55:20, 69:23, 69:24, 70:4, 70:15
**Arata** [1] - 2:11
**Arati** [1] - 4:15
**area** [1] - 58:6
**areas** [3] - 27:15, 44:17, 58:7
**arguing** [2] - 15:20, 68:8
**argument** [4] - 14:4, 14:12, 16:3, 68:25
**argumentative** [1] - 14:16
**arguments** [1] - 14:7
**Arps** [1] - 2:19
**Article** [2] - 71:16, 71:24
**asleep** [1] - 38:4
**asserted** [1] - 15:25
**assigned** [1] - 69:18
**associate** [1] - 70:8
**assume** [1] - 51:25
**assuming** [3] - 9:24, 16:11, 58:8
**AT** [1] - 1:3
**Atlanta** [1] - 2:9
**attention** [3] - 38:3, 62:12, 69:9
**attorney** [2] - 37:6, 58:18

attorneys [1] - 35:4
audio [1] - 66:6
August [14] - 20:5, 20:10, 20:20, 21:8, 21:15, 21:16, 21:22, 21:23, 22:3, 22:16, 23:17, 48:7, 56:10, 56:20
automatic [2] - 61:21, 70:16
avail [1] - 24:23
available [5] - 47:9, 50:13, 55:25, 58:23, 59:24
Avenue [3] - 2:4, 2:12, 3:20
avenue [1] - 63:22
aware [1] - 34:23
awhile [1] - 31:25

## B

background [1] - 25:19
Bagnetto [1] - 7:20
bankruptcy [4] - 61:21, 61:22, 62:4, 62:5
barbecue [1] - 57:16
base [1] - 40:12
based [2] - 50:1, 55:23
basis [3] - 8:10, 9:9, 52:3
Beacon [1] - 2:20
Bean [1] - 4:19
BEAN [42] - 3:3, 4:19, 6:15, 6:22, 7:4, 9:7, 9:20, 16:9, 16:19, 16:22, 16:25, 17:6, 17:16, 17:21, 18:7, 19:16, 35:22, 35:25, 36:17, 39:7, 39:22, 40:4, 40:11, 40:15, 41:5, 41:11, 41:18, 41:21, 42:3, 42:12, 42:16, 43:15, 50:21, 57:19, 58:14, 58:19, 59:11, 60:14, 62:15, 65:3, 70:6, 70:14
becomes [3] - 42:4, 42:5, 66:10
BEFORE [1] - 1:12
beginning [4] - 19:25, 37:16, 42:15, 67:19
begun [2] - 5:25, 60:21
behalf [2] - 29:4, 49:4
behaved [1] - 28:22
believes [1] - 8:16
bellwether [1] - 53:20

bench [1] - 62:6
best [4] - 24:13, 42:25, 48:25, 68:6
better [2] - 30:22, 71:22
between [5] - 20:16, 50:3, 56:1, 62:17, 68:25
beyond [1] - 16:2
Bidore [1] - 63:19
bifurcated [1] - 53:20
big [4] - 10:1, 60:5, 62:25, 63:2
binders [2] - 62:25, 63:2
Birmingham [1] - 3:6
bit [5] - 18:13, 25:8, 32:5, 32:6, 68:5
blanche [1] - 42:8
blue [1] - 71:15
BOLLMAN [9] - 3:13, 4:21, 10:10, 21:1, 57:12, 63:1, 63:3, 67:18, 69:17
Bollman [2] - 3:13, 4:21
bonanza [1] - 64:17
book [1] - 27:11
Boston [1] - 2:20
BOWLER [1] - 4:20
Bowler [1] - 4:20
BOWMAN [2] - 21:15, 44:12
Box [1] - 3:14
breach [1] - 13:5
break [2] - 60:6, 65:17
Brian [5] - 5:2, 5:16, 5:19, 7:20, 62:23
BRIAN [1] - 3:9
Brian's [1] - 62:24
briefed [1] - 53:17
bring [3] - 29:2, 29:23, 62:12
brings [1] - 48:21
broader [1] - 41:16
brought [1] - 39:23
build [1] - 45:21
built [1] - 19:25
bunch [1] - 41:13
burden [5] - 23:9, 23:10, 24:1, 24:4
Burnett [3] - 3:19, 29:21, 35:2
business [1] - 6:9

## C

Caballa [1] - 22:1
calender [4] - 17:4, 19:12, 47:19, 56:15

calendered [1] - 18:8
Camp [1] - 3:17
camp [1] - 29:7
camps [1] - 41:22
candid [1] - 65:1
cannot [1] - 42:20
cards [1] - 13:7
care [2] - 57:21, 58:14
Carol [1] - 63:7
cars [1] - 10:7
carte [1] - 42:8
case [48] - 8:4, 12:9, 14:14, 16:6, 17:20, 18:12, 18:13, 18:22, 21:24, 24:12, 24:21, 25:16, 26:14, 28:16, 28:17, 29:1, 31:16, 32:20, 35:10, 35:11, 35:12, 35:14, 36:18, 39:23, 39:24, 39:25, 40:3, 41:12, 43:3, 48:11, 48:20, 48:22, 49:8, 51:2, 52:7, 52:8, 59:19, 61:23, 61:25, 63:24, 69:17, 69:21, 70:4, 70:10, 71:23, 71:24, 72:1
Case [1] - 1:6
cases [36] - 4:16, 8:9, 9:20, 20:19, 21:6, 23:5, 25:15, 27:13, 30:17, 40:6, 43:1, 47:14, 47:18, 47:22, 48:9, 49:10, 49:25, 50:9, 51:5, 51:21, 51:23, 52:7, 53:24, 54:2, 54:13, 55:16, 55:25, 59:20, 62:2, 68:22, 69:15, 69:23, 70:16, 70:17, 71:16
CASEY [1] - 3:8
causal [1] - 28:10
causing [2] - 7:15, 50:16
caveat [1] - 53:2
Center [1] - 2:8
centralized [1] - 41:21
CERNIGLIA [32] - 3:19, 4:18, 7:21, 8:2, 10:11, 10:16, 10:19, 11:11, 11:20, 11:24, 12:3, 12:17, 12:22, 13:1, 13:21, 13:25, 14:14, 14:25, 15:15, 24:10, 24:22, 29:20, 35:3, 48:5, 50:23, 65:21, 66:9, 66:13, 66:24, 67:2, 68:10, 72:4
Cerniglia [6] - 3:19,

4:18, 12:13, 16:2, 29:16, 50:17
Cerniglia's [1] - 35:1
certain [7] - 10:21, 14:22, 16:1, 28:9, 32:9, 58:16, 65:5
certainly [7] - 27:8, 40:15, 54:13, 54:18, 63:17, 63:18, 71:11
CERTIFICATE [1] - 72:12
certificate [1] - 38:9
certification [6] - 23:11, 24:16, 24:19, 33:20, 53:17
certify [2] - 67:24, 72:15
Chakkiyatil [1] - 5:1
chance [7] - 12:13, 42:7, 54:15, 54:19, 69:12, 70:23, 71:11
change [4] - 16:17, 16:23, 55:7, 68:5
changed [1] - 19:9
changes [1] - 61:13
changing [2] - 19:15, 40:18
characteristics [1] - 49:19
charge [2] - 9:18, 9:19
Charles [2] - 2:12, 3:20
check [2] - 62:23, 63:6
China [1] - 68:23
Chinese [1] - 68:22
choice [1] - 26:21
choose [6] - 27:14, 27:15, 29:21, 40:22, 58:6, 58:22
chooses [1] - 59:15
choosing [2] - 23:10, 59:14
Chris [1] - 4:13
Chuck [2] - 5:2, 6:3
circuit [1] - 28:18
Circuit [4] - 7:4, 28:16, 63:21, 65:9
circumstance [2] - 40:4, 54:22
circumstances [4] - 5:21, 32:5, 32:21, 49:15
civil [1] - 63:21
claim [2] - 9:21, 29:2
claims [9] - 8:9, 9:7, 9:11, 14:17, 29:17, 40:11, 40:12, 41:13, 63:20
clarification [1] - 32:10

clarify [3] - 9:1, 9:4, 66:23
clarity [3] - 58:3, 58:10, 58:21
Clark [3] - 20:14, 22:9, 22:11
class [11] - 15:11, 24:15, 24:16, 24:18, 29:11, 33:20, 38:9, 53:10, 53:17, 53:21, 62:19
clawback [1] - 5:13
clear [6] - 8:9, 31:7, 34:3, 40:19, 52:5, 70:6
clearly [1] - 12:12
client [24] - 10:21, 10:22, 11:2, 11:7, 11:20, 11:22, 12:1, 12:5, 12:19, 13:6, 13:7, 13:9, 14:17, 15:4, 15:9, 15:11, 15:13, 32:7, 32:19, 32:20, 33:2, 33:5, 35:1, 67:11
client's [4] - 6:7, 12:10, 13:3, 14:21
clients [5] - 6:9, 23:12, 23:14, 26:20, 28:5
clients' [1] - 15:23
close [2] - 18:6, 56:10
closer [1] - 18:1
closure [1] - 62:18
co [2] - 44:3, 53:7
co-counsel [2] - 44:3, 53:7
COLBY [1] - 2:18
Colby [1] - 4:25
colleague [1] - 27:8
colleagues [2] - 71:15, 71:17
combined [1] - 20:18
combining [2] - 17:3, 19:19
coming [1] - 43:2
Commission [1] - 3:4
commit [1] - 43:5
committing [1] - 26:22
common [1] - 44:14
commonalities [1] - 50:1
communicate [1] - 6:17
communicated [1] - 6:18
compatible [1] - 30:5
compensatory [1] - 63:22
complaint [6] - 8:17, 9:24, 10:20, 13:12,

13:16, 61:19
**complaints** [2] - 8:5, 64:22
**complete** [1] - 44:17
**completed** [5] - 5:20, 30:18, 46:22, 48:7, 54:8
**completely** [1] - 69:5
**completing** [1] - 46:23
**complicated** [4] - 30:1, 44:7, 58:25, 65:23
**Computer** [1] - 1:25
**Computer-aided** [1] - 1:25
**concern** [3] - 26:2, 50:14, 56:16
**concerned** [1] - 6:4
**concerns** [2] - 8:17, 15:23
**concluded** [2] - 36:21, 72:9
**concluding** [1] - 23:21
**concrete** [1] - 28:15
**Conference** [1] - 1:8
**conference** [5] - 41:9, 46:1, 46:4, 46:5, 62:5
**conferences** [1] - 21:20
**confusing** [1] - 29:23
**consequence** [1] - 15:2
**consider** [1] - 28:22
**considering** [1] - 45:11
**consolidated** [6] - 27:13, 30:17, 47:14, 47:18, 53:10, 61:24
**construction** [1] - 35:17
**consultant** [5] - 5:4, 5:7, 5:8, 31:24, 33:11
**consultants** [2] - 33:14, 34:15
**contain** [1] - 28:22
**contains** [1] - 28:15
**contemplated** [1] - 35:19
**contemporaneously** [1] - 66:23
**context** [2] - 53:16, 53:21
**contract** [2] - 11:24, 13:5
**contracts** [1] - 13:4
**control** [1] - 62:13
**conversations** [1] - 53:18

**cooperate** [4] - 40:10, 42:11, 44:24, 45:5
**coordinate** [1] - 37:14
**coordinated** [1] - 45:6
**copy** [1] - 66:4
**corporation** [1] - 62:3
**correct** [10] - 6:3, 15:18, 15:19, 20:15, 22:14, 28:3, 30:25, 64:13, 71:19, 72:15
**corrected** [1] - 67:12
**counsel** [12] - 6:25, 23:9, 23:11, 24:4, 30:7, 32:20, 39:21, 44:3, 53:7, 53:18, 65:3, 65:15
**count** [1] - 22:21
**course** [7] - 32:21, 35:13, 64:1, 65:8, 65:12, 69:14, 70:10
**court** [8] - 20:12, 55:8, 61:22, 62:5, 63:7, 65:16, 66:3, 67:23
**COURT** [202] - 1:1, 4:3, 4:5, 4:24, 5:4, 5:6, 6:12, 6:21, 6:24, 7:8, 7:11, 7:18, 7:25, 8:3, 8:19, 8:22, 8:24, 9:6, 9:9, 9:16, 9:21, 10:5, 10:9, 10:13, 10:17, 11:10, 11:17, 11:21, 12:1, 12:15, 12:20, 12:23, 13:17, 13:22, 14:3, 14:24, 15:13, 15:17, 16:4, 16:17, 16:20, 16:23, 17:5, 17:13, 17:19, 17:23, 18:6, 18:10, 18:17, 18:22, 19:2, 19:8, 19:24, 20:10, 20:14, 20:19, 21:4, 21:7, 21:11, 21:17, 21:22, 21:24, 22:7, 22:10, 22:13, 22:15, 22:19, 22:21, 22:24, 24:8, 24:20, 25:5, 26:2, 27:6, 27:20, 28:1, 28:4, 30:2, 30:10, 30:14, 31:1, 31:14, 31:20, 32:7, 32:11, 32:23, 33:1, 33:4, 33:13, 33:16, 33:23, 34:5, 34:12, 34:22, 34:25, 35:9, 36:12, 37:3, 37:10, 38:1, 38:11, 38:21, 38:23, 39:6, 39:13, 40:1, 40:5, 40:13, 40:23, 41:7, 41:16, 41:19, 42:2, 42:4,

42:15, 42:18, 43:19, 43:22, 44:14, 44:21, 44:24, 45:9, 45:14, 45:23, 46:4, 46:13, 47:11, 47:21, 47:24, 48:1, 48:9, 48:19, 49:7, 50:5, 50:19, 50:25, 51:4, 51:11, 51:16, 51:19, 52:9, 52:11, 52:15, 52:20, 52:22, 53:6, 53:9, 54:3, 54:25, 55:3, 55:13, 56:4, 56:8, 56:13, 56:21, 56:23, 56:25, 57:2, 57:11, 57:14, 57:17, 58:11, 58:15, 58:25, 59:18, 60:23, 61:1, 61:5, 61:7, 61:11, 61:15, 61:23, 62:13, 63:11, 63:14, 64:2, 64:6, 64:11, 64:14, 64:21, 65:11, 65:13, 66:5, 66:7, 66:10, 66:22, 66:25, 68:8, 68:14, 68:20, 69:2, 69:14, 69:20, 70:2, 70:8, 70:16, 71:3, 71:11, 71:18, 71:20, 72:3, 72:6
**Court** [28] - 1:20, 16:11, 16:14, 17:7, 19:20, 24:18, 26:6, 29:3, 30:8, 36:5, 36:6, 36:10, 36:18, 36:20, 39:10, 40:18, 40:19, 54:22, 55:9, 57:21, 58:2, 58:20, 58:23, 65:5, 65:7, 65:8, 72:14
**Court's** [2] - 28:25, 62:12
**courtroom** [1] - 26:9
**cover** [1] - 36:23, 37:23
**covered** [2] - 38:3, 61:15
**crazy** [1] - 19:14
**critical** [4] - 66:10, 68:3, 68:14, 68:21
**Crone** [4] - 7:3, 20:10, 20:11, 20:24
**Crowell** [1] - 2:3
**cure** [1] - 66:25
**cutoff** [2] - 18:9, 47:17

---

# D

**D4** [3] - 5:3, 5:20, 5:21
**damage** [1] - 63:23

**damages** [5] - 9:5, 9:8, 61:19, 62:11, 63:25
**Daniel** [1] - 4:8
**DANIEL** [1] - 2:6
**data** [2] - 5:22, 6:10
**date** [35] - 16:15, 16:18, 16:20, 16:23, 17:1, 17:10, 17:17, 17:18, 19:17, 19:19, 19:23, 21:7, 22:3, 22:7, 22:8, 22:9, 22:10, 22:11, 22:13, 22:19, 22:20, 22:25, 23:13, 23:18, 29:9, 47:7, 48:18, 50:8, 50:13, 55:21, 55:25, 57:7, 57:10, 62:21
**dates** [27] - 10:1, 16:12, 16:15, 17:23, 18:1, 19:9, 19:21, 19:22, 20:3, 20:4, 20:5, 20:13, 21:11, 21:13, 22:21, 23:17, 30:15, 30:18, 50:11, 50:20, 53:25, 54:8, 57:3, 57:6, 65:20
**daunting** [1] - 28:19
**David** [27] - 5:8, 8:4, 9:18, 18:5, 18:12, 18:13, 18:23, 19:9, 19:13, 21:11, 25:11, 26:25, 28:15, 31:1, 31:5, 31:16, 31:17, 31:18, 34:18, 35:10, 37:22, 48:11, 48:22, 49:8, 56:2, 57:9, 65:6
**DAVID** [1] - 1:4
**days** [9] - 10:3, 21:21, 32:16, 35:3, 37:17, 41:24, 43:4, 51:10, 52:1
**DC** [1] - 2:17
**deadline** [3] - 16:7, 18:20, 62:10
**deadlines** [3] - 17:6, 18:12, 19:19
**deal** [3] - 28:17, 28:18, 59:25
**December** [7] - 17:10, 20:14, 21:13, 22:1, 22:2, 22:15, 22:18
**decide** [7] - 17:20, 26:23, 28:8, 28:21, 28:23, 43:14, 44:4
**decided** [2] - 53:18, 68:1
**decides** [1] - 20:22
**decision** [1] - 63:21

**defendant** [4] - 4:18, 27:6, 35:13, 58:3
**Defendant** [4] - 1:8, 3:8, 3:16, 3:19
**defendant's** [1] - 29:12
**Defendant/Cross** [1] - 3:16
**defendants** [14] - 8:10, 9:13, 17:9, 17:14, 28:9, 31:19, 47:2, 48:15, 48:23, 49:5, 49:14, 51:5, 51:24, 56:19
**defendants'** [1] - 23:9
**defending** [1] - 24:12
**defense** [1] - 14:21
**defensive** [1] - 6:1
**definitely** [4] - 6:23, 36:12, 54:16, 71:12
**definition** [1] - 64:4
**denied** [1] - 15:1
**deny** [1] - 65:8
**denying** [2] - 7:3, 24:18
**dep** [7] - 40:15, 40:16, 43:17, 58:5, 58:6, 58:21, 59:16
**department** [1] - 69:11
**deponent** [1] - 65:16
**deported** [1] - 12:9
**depose** [14] - 33:6, 33:10, 33:11, 33:13, 34:16, 35:11, 35:16, 35:20, 47:2, 48:12, 48:15, 48:18, 63:12, 63:14
**deposed** [10] - 31:2, 31:8, 31:10, 31:16, 33:1, 34:10, 35:2, 47:22, 64:2, 64:3
**deposes** [1] - 33:5
**deposing** [5] - 18:25, 32:8, 36:1, 40:1, 48:11
**deposition** [35] - 10:3, 12:6, 13:18, 14:8, 16:7, 16:16, 26:7, 26:20, 32:2, 32:4, 32:14, 32:15, 33:20, 36:14, 39:14, 40:8, 40:9, 40:21, 41:8, 41:9, 41:10, 41:15, 41:21, 42:2, 43:1, 43:4, 43:10, 50:22, 54:21, 59:1, 59:5, 59:13, 62:19, 67:8, 67:20
**depositions** [44] - 7:7, 10:12, 30:19, 30:23,

disc [1] - 63:5
discovery [15] - 5:12,
11:10, 12:23, 16:7,
16:16, 18:10, 19:22,
30:17, 30:22, 46:19,
46:22, 48:6, 54:7,
55:4, 63:23
discuss [1] - 6:7
discussion [5] - 6:19,
6:24, 45:20, 49:16,
58:2
discussions [4] -
34:7, 39:10, 60:22,
70:24
dispute [2] - 10:17,
58:4
disputes [1] - 27:21
disrespect [1] - 72:2
disrupts [1] - 67:8
DISTRICT [3] - 1:1,
1:2, 1:13
divergent [3] - 29:8,
29:15, 29:17
doable [2] - 64:15,
64:17
docket [2] - 20:12,
22:4
document [6] - 10:15,
10:16, 30:17, 53:3,
54:7, 54:20
documents [9] - 7:13,
7:16, 8:1, 11:14,
15:8, 46:20, 55:1,
55:5, 63:1
dog [1] - 43:10
done [7] - 7:18, 11:10,
15:18, 27:19, 37:4,
46:25, 55:9
double [1] - 48:4
double-track [1] -
48:4
down [7] - 39:7, 50:3,
60:6, 66:4, 67:23,
67:25, 69:13
drilling [1] - 39:7
drive [1] - 19:14
driver [1] - 59:15
drops [1] - 65:4
dry [2] - 14:18, 15:11
Drywall [1] - 68:22
due [1] - 18:24, 26:13
Duplantis [1] - 2:11
duplicated [2] - 25:24,
38:8
duplicative [1] - 35:15
during [2] - 38:9,
64:15

31:17, 31:23, 34:14,
34:19, 35:6, 36:6,
36:20, 38:7, 38:16,
39:8, 39:11, 39:18,
40:7, 40:13, 40:25,
41:2, 41:22, 41:25,
42:23, 43:11, 43:13,
43:16, 45:12, 46:14,
47:1, 47:4, 54:9,
54:10, 54:16, 55:6,
57:18, 60:6, 60:20,
62:19, 62:24, 63:10,
65:15, 67:5, 68:23,
68:24
deps [3] - 39:9, 57:24,
60:19
described [1] - 28:16
designate [6] - 49:12,
49:13, 52:16, 58:8,
58:12, 58:14
designated [6] - 36:7,
36:10, 36:13, 44:2,
45:18, 48:10
designating [1] - 44:1
designee [1] - 44:18
designees [6] - 37:1,
44:19, 46:3, 46:7,
58:23, 59:6
detail [3] - 38:17,
38:25, 39:1
determine [2] - 5:23,
63:25
Devassy [3] - 5:2,
51:25, 55:17
developed [1] - 65:21
Dewan [8] - 3:16,
4:18, 31:23, 32:1,
33:11, 33:12, 33:14,
34:15
Dewan's [1] - 33:20
Dewan/Burnett [1] -
56:19
dialect [2] - 66:4,
67:23
dialects [1] - 26:16
Dick [1] - 37:9
dictate [1] - 60:9
different [21] - 11:19,
13:4, 23:13, 26:15,
27:15, 27:16, 29:18,
37:8, 40:4, 41:6,
42:13, 47:14, 47:16,
50:1, 58:10, 58:24,
59:1, 59:20, 59:21
difficult [3] - 23:2,
32:17, 32:21
directly [4] - 7:22,
12:10, 56:20, 69:7
disagree [3] - 26:14,
38:20, 49:21

# E

Eagan [1] - 2:12
early [1] - 67:5
easier [2] - 52:9, 61:8
EASTERN [1] - 1:2
Eben [1] - 4:25
EBEN [1] - 2:18
EDLA [1] - 20:16
educated [1] - 71:24
EEOC [33] - 3:3, 4:19,
4:20, 4:25, 16:6,
16:20, 18:5, 19:12,
19:14, 21:12, 22:5,
25:11, 35:9, 35:12,
35:13, 35:15, 35:19,
39:11, 39:23, 40:24,
42:5, 43:9, 43:16,
44:21, 45:7, 47:9,
50:21, 55:24, 56:2,
56:17, 57:9, 62:16,
62:17
EEOC's [2] - 43:16,
44:8
effect [2] - 9:15, 61:25
efficient [3] - 25:1,
26:23, 53:13
efficiently [3] - 26:1,
27:19, 30:13
effort [1] - 7:11
eight [1] - 63:4
either [6] - 12:21,
13:9, 38:2, 38:11,
38:13, 69:10
electronic [2] - 5:12,
55:4
ELHAM [1] - 3:8
eliminate [1] - 27:24
eliminated [1] - 28:2
Elizabeth [3] - 4:25,
7:23, 49:23
email [1] - 5:21
emails [1] - 5:25
employees [12] -
31:24, 33:11, 33:15,
33:16, 33:17, 36:2,
36:4, 36:7, 36:9,
36:16, 45:13
Employment [1] - 3:4
encourage [1] - 71:13
end [11] - 16:24, 31:3,
31:5, 41:1, 47:4,
47:18, 49:7, 65:4,
67:7, 69:24, 70:18
ended [2] - 12:6,
68:23
ends [1] - 70:17
engage [1] - 67:6
enterprise [1] - 6:7
enters [1] - 65:6

entire [3] - 39:19,
56:18, 69:3
entitled [2] - 24:15,
24:16
entry [2] - 39:15,
50:25
envision [3] - 36:17,
36:25, 39:12
envisioned [1] - 58:19
Equal [1] - 3:4
Erin [3] - 4:23, 38:14,
62:20
ERIN [1] - 3:8
ERP [3] - 6:10, 6:21,
6:23
error [1] - 67:11
ESI [5] - 5:6, 5:8, 6:18,
6:22, 7:9
especially [2] - 65:22,
68:12
ESQ [16] - 2:3, 2:6,
2:7, 2:7, 2:11, 2:15,
2:18, 3:3, 3:3, 3:8,
3:8, 3:9, 3:13, 3:16,
3:16, 3:19
essentially [1] - 28:17
establish [2] - 12:13,
13:15
established [1] -
25:19
estimate [1] - 26:4
et [2] - 1:4, 1:7
events [2] - 34:21,
41:25
exact [1] - 50:19
exactly [4] - 9:14,
12:22, 13:7, 72:5
example [10] - 9:11,
14:15, 27:13, 28:15,
29:21, 39:3, 40:16,
41:24, 58:5, 63:20
except [2] - 16:15,
51:24
excess [1] - 40:11
executed [1] - 13:3
exhausted [1] - 24:12
exhibit [1] - 17:1
exhibits [1] - 62:19
exists [1] - 27:11
expected [2] - 37:15,
54:14
experience [1] - 30:3
expert [8] - 17:6, 17:7,
17:12, 17:17, 18:20,
19:7, 19:19, 19:22
experts [3] - 18:24,
19:3, 19:10
explain [2] - 6:18,
46:17, 67:21
explanation [2] -

67:15, 67:20
export [1] - 5:23
extend [1] - 18:20
extensions [1] - 8:5
extensive [1] - 53:18
extra [1] - 17:2

# F

face [1] - 24:1
facilitate [1] - 48:17
facilities [1] - 44:1
facility [4] - 25:16,
44:17, 47:12, 47:13
fact [6] - 10:22, 16:16,
19:20, 26:5, 47:1,
47:17
facts [5] - 14:5, 14:8,
14:24, 28:10
factual [5] - 15:24,
16:2, 25:17, 25:19,
27:20
failure [1] - 10:21
fair [4] - 39:19, 42:21,
43:7, 50:2
faith [1] - 8:16
fall [1] - 23:3
Fallon [1] - 68:22
false [4] - 13:16,
13:18, 14:22, 54:14
familiar [1] - 26:7
far [4] - 6:4, 38:7,
40:11, 43:9
fascinating [1] - 69:3
fast [1] - 10:7
faster [1] - 10:8
favor [1] - 24:11
FCRR [3] - 1:20,
72:17, 72:18
feasible [1] - 23:7
feasibly [1] - 52:19
FEBRUARY [1] - 4:1
February [1] - 1:7
federal [1] - 27:9
feedback [1] - 7:8
felt [4] - 33:21, 34:3,
65:24, 68:3
few [3] - 25:18, 63:8,
65:14
fewer [1] - 25:25
fifteen [4] - 58:7,
58:11, 64:10, 65:18
Fifth [3] - 7:4, 28:16,
65:9
fifth [2] - 28:17, 59:3
figure [4] - 9:12, 45:7,
59:24, 60:6
figures [1] - 34:7
file [5] - 8:4, 8:17,
13:11, 14:11, 15:8

**filed** [10] - 7:1, 10:22, 12:13, 12:14, 12:16, 14:2, 15:22, 15:24, 53:24, 62:1
**filing** [1] - 13:6
**filled** [1] - 10:18
**final** [2] - 7:2, 20:22
**finally** [1] - 53:11
**fine** [8] - 33:9, 34:7, 47:7, 55:11, 55:12, 61:10, 65:11, 65:13
**finish** [1] - 32:18
**finished** [3] - 10:6, 31:11, 31:12
**firm** [3] - 4:15, 34:20, 35:7
**firms** [2] - 50:1, 70:12
**first** [37] - 5:11, 17:15, 19:2, 21:11, 23:16, 23:19, 23:21, 25:10, 25:11, 25:18, 26:4, 26:9, 36:20, 39:11, 39:20, 40:6, 40:21, 41:4, 42:5, 42:8, 42:20, 43:3, 45:20, 48:10, 48:12, 48:16, 48:18, 48:19, 49:13, 51:6, 51:24, 53:6, 58:1, 59:2, 59:10, 60:10, 68:24
**fit** [4] - 23:17, 25:21, 47:9, 47:19
**fits** [3] - 18:12, 23:20, 56:2
**five** [6] - 20:17, 21:12, 22:21, 31:8, 53:3, 63:2
**fixed** [4] - 21:13, 22:2, 22:7, 22:8
**flexibility** [2] - 45:21, 54:23
**Flom** [1] - 2:19
**flow** [1] - 67:8
**flowchart** [2] - 44:11, 46:11
**flowing** [1] - 60:16
**flu** [1] - 32:21
**fly** [1] - 72:8
**focus** [1] - 28:24
**folks** [1] - 36:3
**follow** [2] - 12:16, 40:22
**follow-up** [1] - 12:16
**following** [1] - 13:7
**FOR** [1] - 1:1
**forbidden** [3] - 12:12, 64:4, 64:5
**forced** [1] - 60:16
**foregoing** [1] - 72:15
**foresee** [1] - 36:8

**forever** [1] - 27:25
**forma** [1] - 8:18
**format** [1] - 5:23
**former** [3] - 33:17, 34:20, 36:4
**forth** [1] - 58:15
**forty** [2] - 47:13, 47:15
**forty-seven** [1] - 47:13
**forward** [2] - 17:2, 59:12
**forwarded** [1] - 21:19
**four** [4] - 4:16, 9:20, 10:3, 19:1, 22:21, 22:23, 35:3, 47:7, 48:8, 49:25, 53:3
**fourth** [1] - 41:7
**frankly** [1] - 41:11
**frantically** [1] - 21:5
**fraud** [2] - 9:18
**Friday** [1] - 51:3
**FRIDAY** [1] - 4:1
**FRITZSCHE** [4] - 2:7, 12:4, 15:19, 51:18
**Fritzsche** [1] - 4:10
**front** [4] - 11:13, 14:12, 61:22
**fulfilled** [1] - 11:24
**fulfilling** [1] - 12:19
**fully** [1] - 53:17
**future** [1] - 8:25

## G

**GA** [1] - 2:9
**general** [1] - 6:12
**generally** [1] - 6:22
**gentleman** [1] - 31:7
**GERALD** [1] - 3:3
**Gerald** [1] - 4:20
**given** [6] - 7:8, 36:22, 40:17, 49:25, 54:21, 66:2
**global** [1] - 62:3
**globally** [1] - 53:5
**Gordon** [2] - 2:11, 4:15
**government** [2] - 36:2, 40:24
**Gras** [2] - 51:9, 51:11
**great** [3] - 37:4, 47:6, 57:14
**green** [1] - 13:6
**Greg** [2] - 4:15, 8:13
**GREG** [1] - 2:11
**Grimsal** [1] - 4:15
**GRIMSAL** [12] - 2:11, 4:15, 8:14, 8:20, 8:23, 9:3, 9:15, 51:13, 52:5, 71:14, 71:19, 72:2

**ground** [3] - 36:23, 37:13, 37:24
**grounds** [1] - 11:15
**group** [6] - 28:23, 29:5, 29:25, 36:11, 37:7, 49:25
**groups** [3] - 37:8, 37:21, 50:3
**guards** [2] - 34:19, 34:20
**guess** [15] - 10:1, 12:1, 18:4, 23:4, 34:2, 36:12, 36:16, 48:17, 49:11, 50:14, 54:9, 54:17, 56:16, 59:9, 66:2
**Gulf** [1] - 62:5
**guy** [1] - 6:18

## H

**half** [3] - 30:23, 32:15, 58:12
**handful** [2] - 34:18, 41:12
**handle** [2] - 67:14, 70:3
**HANGARTNER** [95] - 3:8, 4:23, 5:3, 5:5, 5:15, 5:18, 7:1, 7:5, 7:10, 7:17, 7:19, 9:17, 10:4, 10:6, 18:4, 18:8, 18:15, 18:19, 18:23, 19:4, 20:7, 20:11, 20:15, 20:21, 21:5, 21:10, 21:16, 21:18, 21:25, 22:4, 22:8, 22:12, 22:14, 22:16, 22:20, 22:23, 23:23, 24:3, 24:23, 26:13, 26:24, 28:3, 29:14, 30:25, 31:3, 31:11, 35:8, 35:20, 35:23, 37:5, 37:19, 38:20, 38:22, 39:4, 43:21, 44:11, 44:13, 44:16, 44:23, 45:11, 45:22, 46:2, 46:11, 48:21, 50:14, 51:9, 56:16, 56:22, 56:24, 57:10, 57:16, 60:21, 60:24, 61:3, 61:6, 61:10, 62:23, 63:2, 63:6, 63:13, 63:15, 64:9, 64:13, 65:14, 66:6, 69:1, 69:4, 69:18, 70:1, 70:5, 70:15, 70:19, 71:8, 72:5, 72:8
**Hangartner** [2] - 3:9,

4:23
**hard** [3] - 36:17, 45:14, 60:11
**HARRIS** [31] - 4:13, 21:23, 22:2, 23:8, 24:1, 24:6, 24:25, 25:7, 26:4, 26:22, 29:1, 29:18, 30:4, 30:12, 46:17, 47:12, 47:23, 47:25, 48:3, 48:6, 48:14, 49:1, 50:12, 51:3, 54:18, 55:2, 55:11, 55:23, 56:7, 56:12, 61:14
**Harris** [1] - 4:13
**Hart** [1] - 3:10
**hate** [1] - 51:17
**HB** [1] - 1:21
**headaches** [1] - 14:19
**headed** [1] - 10:7
**headquarters** [2] - 60:23, 60:24
**hear** [2] - 45:9, 65:4
**heard** [6] - 6:15, 23:8, 23:15, 24:2, 50:21, 53:16, 71:8, 71:9
**hearing** [3] - 11:13, 51:22, 58:10
**hello** [1] - 4:3
**help** [2] - 8:25, 37:19
**helping** [1] - 69:6
**hereby** [1] - 72:14
**hiccup** [1] - 48:22
**highly** [1] - 44:19
**hindered** [1] - 33:23
**hire** [1] - 23:11
**hired** [1] - 34:21
**history** [1] - 67:4
**hold** [1] - 20:9
**holiday** [2] - 51:9, 57:13
**holistic** [1] - 64:24
**Honor** [57] - 4:4, 4:8, 6:14, 6:15, 7:1, 7:10, 7:17, 9:17, 12:18, 14:1, 14:15, 16:9, 18:20, 19:16, 21:1, 21:10, 22:12, 23:8, 24:10, 27:4, 27:7, 27:24, 29:1, 30:6, 30:11, 31:19, 33:18, 34:17, 38:22, 39:5, 39:7, 39:22, 40:11, 42:16, 43:15, 45:11, 50:21, 51:10, 51:13, 52:5, 52:10, 53:1, 53:5, 54:1, 55:11, 56:16, 57:10, 57:20, 61:10, 61:17, 62:15, 64:19, 65:5, 67:4,

4:23
**Honor's** [1] - 70:7
**HONORABLE** [1] - 1:12
**hope** [2] - 9:16, 45:9
**hoped** [1] - 27:21
**hoping** [1] - 28:4
**horrible** [1] - 32:20
**horrified** [1] - 56:21
**Hosencome** [1] - 69:8
**hours** [2] - 41:24, 43:5
**house** [1] - 57:16
**housing** [6] - 35:16, 35:17, 41:19, 43:25, 44:17
**Howard** [4] - 4:4, 4:24, 34:17, 53:15
**HOWARD** [6] - 2:3, 4:4, 34:17, 34:23, 53:15, 57:1
**huge** [2] - 29:7, 29:19
**hum** [1] - 33:3
**hurts** [1] - 54:3

## I

**I-140** [3] - 10:22, 14:2, 15:1
**I-140s** [1] - 13:11
**idea** [5] - 28:6, 43:9, 52:4, 52:13, 68:15
**identified** [1] - 48:16
**identify** [3] - 4:6, 30:2, 46:2
**III** [1] - 71:24
**IIIs** [1] - 71:16
**ill** [1] - 32:20
**illegal** [2] - 12:16, 13:24
**imagine** [2] - 23:20, 35:15, 63:23, 67:2
**IME** [1] - 65:19
**Immigrant** [1] - 2:8
**immigration** [5] - 11:6, 11:19, 11:21, 12:11, 13:3
**impact** [2] - 61:20, 62:8
**important** [3] - 57:20, 65:22, 65:25
**impossibility** [2] - 26:18, 27:3
**improper** [1] - 54:1
**improperly** [1] - 66:17
**IN** [1] - 1:1
**include** [1] - 9:17
**included** [1] - 7:5
**incredibly** [2] - 20:2, 28:15
**India** [9] - 13:3, 29:17,

31:24, 32:18, 33:13, 34:15, 41:25, 68:13, 69:1
**Indian** [1] - 66:4
**Indians** [1] - 68:13
**indicated** [2] - 39:11, 62:21
**individual** [6] - 36:7, 36:14, 42:1, 49:4, 53:24, 69:7
**individually** [1] - 61:24
**individuals** [4] - 19:6, 51:6, 63:16, 63:25
**inevitable** [1] - 20:1
**information** [1] - 12:7
**ingestion** [1] - 5:20
**initial** [2] - 5:21, 25:8
**insisting** [1] - 34:9
**instead** [5] - 15:11, 17:16, 18:16, 48:24, 51:10
**instructed** [1] - 11:5
**instruction** [1] - 28:19
**insurance** [2] - 24:12, 24:13
**interarum** [2] - 63:18, 65:6
**interests** [1] - 29:15
**interior** [1] - 9:15
**INTERNATIONAL** [1] - 1:7
**interpretation** [2] - 67:6, 67:10
**interpreter** [1] - 66:20
**interrogatories** [1] - 11:12
**interrogatory** [1] - 11:16
**intervenors** [3] - 4:9, 6:17, 37:23
**Intervenors** [2] - 2:3, 2:6
**interviewed** [2] - 69:6, 69:7
**interviewing** [2] - 6:9, 69:6
**involved** [3] - 36:18, 70:24, 71:1
**issue** [21] - 10:1, 10:11, 10:14, 10:20, 12:25, 13:1, 25:12, 26:11, 26:15, 29:19, 31:23, 38:6, 53:25, 55:15, 63:9, 64:20, 65:21, 66:10, 67:18, 69:12, 69:20
**issues** [11] - 5:10, 9:14, 27:16, 27:24, 29:3, 29:8, 29:11,

42:7, 46:24, 49:9, 50:22
**IT** [3] - 5:22, 6:9, 6:16
**itself** [2] - 28:16, 28:18

**J**

**January** [4] - 21:12, 22:10, 55:19, 56:2
**Jill** [1] - 5:6
**job** [2] - 13:19
**John** [1] - 5:1
**Jones** [1] - 4:25
**Joseph** [1] - 22:5
**judge** [7] - 23:20, 43:3, 45:6, 62:6, 71:18, 71:24, 71:25
**Judge** [16] - 7:3, 9:3, 11:13, 12:24, 20:10, 20:11, 20:14, 20:24, 22:9, 22:11, 27:17, 45:3, 52:14, 52:21, 68:22, 71:25
**JUDGE** [1] - 1:13
**judges** [3] - 23:24, 27:9, 71:21
**judgment** [2] - 7:2, 34:8
**JULIE** [1] - 3:3
**Julie** [3] - 4:19, 17:25, 57:18
**July** [17] - 17:1, 23:19, 30:15, 46:16, 46:25, 47:7, 48:7, 55:21, 56:4, 56:9, 56:12, 56:14, 56:18, 56:25, 57:1, 57:11, 57:15
**jump** [1] - 50:24
**jumped** [1] - 10:7
**June** [16] - 16:21, 21:12, 22:5, 22:13, 30:23, 30:24, 36:6, 36:9, 36:11, 36:22, 36:25, 37:1, 39:9, 55:20, 56:2, 56:18
**jury** [4] - 14:17, 15:9, 26:6, 29:23
**Justice** [1] - 2:8

**K**

**Katie** [1] - 63:19
**keep** [10] - 10:24, 11:3, 13:6, 13:10, 16:15, 17:21, 19:14, 39:6, 50:9, 50:10
**Kellner** [1] - 5:2
**KELLNER** [1] - 6:4
**kept** [1] - 13:13
**kind** [7] - 22:25, 48:21,

53:20, 67:5, 67:7, 67:10, 71:2
**kinds** [2] - 6:10, 42:7
**Klemann** [1] - 5:6
**knowledge** [1] - 71:20
**Knowles** [3] - 11:13, 12:24, 71:25
**knows** [4] - 6:18, 27:9, 57:2, 72:1
**Krishnakutty** [2] - 52:5, 52:8
**Krisnhakutty** [2] - 5:1, 55:17
**KURIAN** [1] - 1:4

**L**

**LA** [5] - 2:13, 3:12, 3:14, 3:17, 3:20
**laedcourtreporter@ gmail.com** [1] - 1:23
**Lance** [1] - 69:5
**lance** [1] - 69:8
**language** [3] - 54:12, 55:7, 67:22
**large** [1] - 19:5
**largely** [2] - 46:22, 48:7
**last** [3] - 6:25, 43:4, 69:4
**Latham** [1] - 27:8
**law** [5] - 9:11, 24:15, 24:24, 69:5
**Law** [2] - 2:8, 3:19
**lawsuit** [1] - 41:13
**lawsuits** [1] - 49:4
**lawyer** [1] - 13:3
**lawyers** [6] - 41:12, 60:2, 61:1, 64:18, 68:25
**lawyers'** [1] - 64:17
**lead** [7] - 28:6, 37:7, 43:14, 43:17, 44:4, 44:5, 44:25
**least** [8] - 7:11, 7:25, 23:16, 25:10, 37:21, 66:18, 66:20, 67:1
**leave** [2] - 41:3, 54:12
**leaves** [1] - 48:7
**leeway** [1] - 54:20
**left** [7] - 13:9, 14:18, 15:11, 42:10, 70:9, 70:11
**legal** [4] - 12:8, 14:4, 14:6, 15:21
**legally** [3] - 10:25, 11:2, 11:3
**legislative** [1] - 36:3
**legitimate** [1] - 52:2
**level** [4] - 38:17,

38:25, 39:1, 40:12
**liability** [1] - 27:5
**life** [1] - 28:25
**lifted** [2] - 62:8, 62:10
**likely** [1] - 44:19
**limine** [1] - 66:11
**limit** [1] - 64:15
**limited** [2] - 68:11, 69:18
**limits** [1] - 45:12
**line** [1] - 5:17
**lines** [2] - 11:14, 15:5
**linked** [1] - 39:23
**list** [8] - 5:9, 6:1, 17:1, 30:4, 61:16, 63:12, 63:16, 64:1
**listening** [1] - 38:2
**lists** [1] - 49:22
**litigate** [1] - 24:20
**litigation** [2] - 53:5, 65:7
**litmus** [1] - 26:25
**LLC** [2] - 1:7, 3:10
**LLP** [2] - 2:3, 2:19
**location** [1] - 60:18
**locations** [2] - 47:14, 47:16
**lodge** [1] - 52:12
**logistically** [1] - 52:4
**Lon** [2] - 10:14, 61:13
**look** [13] - 8:22, 9:10, 17:23, 18:11, 18:13, 19:12, 21:4, 40:5, 43:22, 51:7, 59:4, 72:3
**looked** [2] - 20:3, 20:4
**looking** [4] - 8:7, 8:8, 9:23, 28:5
**looks** [1] - 27:15
**LOUISIANA** [2] - 1:2, 4:1
**Louisiana** [1] - 1:22
**Low** [1] - 5:1

**M**

**MA** [1] - 2:20
**Madison** [1] - 2:4
**magistrate** [6] - 20:21, 23:25, 70:25, 71:18, 71:21, 71:25
**Magthan** [1] - 21:25
**Mal** [1] - 24:11
**Malayalam** [1] - 68:19
**malpractice** [1] - 24:11
**manage** [2] - 53:4, 53:5
**manageable** [1] - 64:9
**management** [1] -

45:13
**Manatt** [1] - 2:15
**mandated** [1] - 65:17
**manner** [2] - 59:13, 59:14
**march** [1] - 21:25
**March** [6] - 8:5, 31:4, 31:5, 34:21, 62:10, 70:18
**Mardi** [2] - 51:9, 51:11
**marker** [1] - 67:10
**Marler** [1] - 37:9
**master** [4] - 70:23, 70:25, 71:1, 71:9
**matter** [1] - 60:18
**matters** [2] - 6:22, 20:18
**Matthew** [1] - 21:25
**McCollam** [1] - 2:11
**MDLs** [1] - 27:15
**Meagher** [1] - 2:19
**mean** [13] - 11:3, 18:1, 20:19, 28:9, 33:25, 37:20, 37:22, 41:11, 48:14, 56:17, 71:4, 71:20, 72:2
**means** [1] - 45:2
**mechanism** [1] - 29:12
**mediate** [1] - 71:12
**mediation** [2] - 71:10, 71:16
**mediator** [1] - 71:7
**meet** [1] - 20:24
**meeting** [2] - 62:20
**meetings** [1] - 29:22
**memorializing** [1] - 62:16
**mentioned** [1] - 31:25
**merits** [2] - 28:7, 38:8
**message** [1] - 23:25
**messed** [1] - 13:8
**met** [1] - 6:6
**Metairie** [1] - 10:10
**Michael** [1] - 62:9
**midnight** [1] - 32:19
**might** [5] - 26:9, 32:5, 48:3, 56:9, 58:11
**MILLER** [1] - 3:3
**mind** [3] - 39:6, 52:14, 63:8
**minimize** [2] - 25:3, 26:8
**minute** [2] - 39:14, 50:25
**minutes** [1] - 65:18
**misrepresentation** [2] - 10:21, 13:5
**Mississippi** [10] -

9:20, 29:7, 34:22,
34:24, 36:3, 47:12,
47:13, 47:22, 49:10
**Mitchell** [2] - 69:8
**mix** [2] - 45:5, 48:23
**Mobile** [2] - 60:24,
61:2
**moment** [1] - 53:16
**momentarily** [1] - 4:12
**Monday** [4] - 31:4,
56:5, 56:13, 56:25
**monopolized** [1] -
33:22
**monster** [2] - 28:17,
28:18
**month** [11] - 16:16,
17:2, 17:25, 23:14,
24:9, 26:5, 26:9,
27:3, 56:18
**months** [1] - 48:8
**MORGAN** [1] - 1:12
**Morgan** [1] - 45:3
**Moring** [1] - 2:3
**most** [13] - 11:15,
16:15, 25:16, 25:25,
28:19, 30:3, 30:5,
46:24, 61:1, 61:2,
61:3, 61:8, 68:1
**motion** [11] - 7:2, 7:3,
10:13, 12:23, 13:10,
14:9, 28:2, 53:17,
61:21, 62:7, 66:11
**move** [9] - 16:7, 16:11,
17:25, 18:1, 18:12,
19:23, 54:2, 59:12,
65:7
**moved** [1] - 19:17
**moving** [1] - 50:10
**MR** [140] - 4:4, 4:8,
4:13, 4:15, 4:17,
4:18, 4:20, 4:22,
5:17, 5:20, 6:4, 6:14,
7:21, 8:2, 8:14, 8:20,
8:23, 9:3, 9:4, 9:15,
10:11, 10:16, 10:19,
11:11, 11:20, 11:24,
12:3, 12:4, 12:17,
12:22, 13:1, 13:21,
13:25, 14:14, 14:25,
15:15, 15:19, 21:23,
22:2, 23:8, 24:1,
24:6, 24:10, 24:22,
24:25, 25:7, 26:4,
26:22, 27:4, 27:7,
27:24, 28:14, 29:1,
29:18, 29:20, 30:4,
30:7, 30:11, 30:12,
31:6, 31:10, 31:18,
31:22, 32:3, 32:9,
32:13, 32:25, 33:3,

33:7, 33:10, 33:15,
33:17, 33:18, 34:2,
34:11, 34:17, 34:23,
35:2, 35:3, 35:4,
35:13, 38:6, 44:11,
44:12, 45:6, 46:17,
47:12, 47:23, 47:25,
48:2, 48:3, 48:5,
48:6, 48:14, 49:1,
50:12, 50:23, 51:3,
51:13, 51:18, 52:5,
52:10, 52:12, 52:16,
52:21, 52:25, 53:8,
53:15, 54:18, 55:2,
55:11, 55:23, 56:7,
56:12, 57:1, 61:14,
61:17, 61:24, 63:5,
63:17, 64:4, 64:19,
65:1, 65:5, 65:12,
65:21, 66:9, 66:13,
66:24, 67:2, 67:4,
67:15, 68:10, 68:17,
70:21, 71:10, 71:14,
71:19, 72:2, 72:4
**MS** [145] - 4:19, 4:21,
4:23, 5:3, 5:5, 5:15,
5:18, 6:15, 6:22, 7:1,
7:4, 7:5, 7:10, 7:17,
7:19, 7:23, 9:7, 9:17,
9:20, 10:4, 10:6,
10:10, 16:9, 16:19,
16:22, 16:25, 17:6,
17:16, 17:21, 18:4,
18:7, 18:8, 18:15,
18:19, 18:23, 19:4,
19:16, 20:7, 20:11,
20:15, 20:21, 21:1,
21:5, 21:10, 21:15,
21:16, 21:18, 21:25,
22:4, 22:8, 22:12,
22:14, 22:16, 22:20,
22:23, 23:23, 24:3,
24:23, 26:13, 26:24,
28:3, 29:14, 30:25,
31:3, 31:11, 35:8,
35:20, 35:22, 35:23,
35:25, 36:17, 37:5,
37:19, 38:20, 38:22,
39:4, 39:7, 39:22,
40:4, 40:11, 40:15,
41:5, 41:11, 41:18,
41:21, 42:3, 42:12,
42:16, 43:15, 43:21,
44:13, 44:16, 44:23,
45:11, 45:22, 46:2,
46:11, 48:21, 49:23,
50:14, 50:21, 51:9,
56:16, 56:22, 56:24,
57:10, 57:12, 57:16,
57:19, 58:14, 58:19,
59:11, 60:14, 60:21,

60:24, 61:3, 61:6,
61:10, 62:15, 62:23,
63:1, 63:2, 63:3,
63:6, 63:13, 63:15,
64:9, 64:13, 65:3,
65:14, 66:6, 67:18,
69:1, 69:4, 69:17,
69:18, 70:1, 70:5,
70:6, 70:14, 70:15,
70:19, 71:8, 72:5,
72:8
**must** [4] - 4:5, 21:4
**mute** [1] - 4:5

# N

**NAIR** [1] - 2:7
**Nair** [1] - 4:10
**name** [1] - 69:7
**named** [1] - 31:5
**names** [1] - 18:24
**narrow** [2] - 29:6,
39:25
**narrowed** [2] - 25:13,
27:19
**narrower** [2] - 26:11,
26:12
**narrowing** [1] - 50:3
**NE** [1] - 2:9
**nearly** [1] - 33:22
**necessarily** [7] -
15:20, 15:23, 24:4,
37:6, 48:5, 60:22,
68:17
**necessary** [1] - 13:10
**need** [33] - 5:10,
14:10, 14:11, 15:3,
15:15, 19:6, 19:10,
19:23, 20:23, 24:2,
25:2, 28:11, 30:13,
31:22, 33:6, 33:9,
33:10, 33:11, 34:14,
38:1, 39:20, 42:19,
42:24, 43:5, 43:13,
44:3, 45:2, 45:16,
58:3, 62:23, 65:16,
68:17
**needed** [6] - 12:6,
12:7, 14:2, 15:7,
31:17, 67:12
**needing** [1] - 35:6
**never** [5] - 13:13,
37:17, 54:3, 71:8
**new** [1] - 62:10
**NEW** [2] - 1:3, 4:1
**New** [10] - 1:22, 2:4,
2:13, 3:12, 3:14,
3:17, 3:20, 61:1,
61:5, 61:9
**next** [6] - 13:22, 23:6,

51:3, 55:19, 55:25,
62:5
**ninety** [3] - 30:12,
47:25, 52:23
**non** [1] - 66:19
**none** [1] - 12:18
**noted** [1] - 67:1
**nothing** [5] - 12:17,
14:19, 37:12, 69:15,
70:10
**notice** [2] - 40:17,
42:25
**noticed** [2] - 40:16,
44:20
**notices** [6] - 43:20,
45:15, 45:25, 59:1,
59:5, 59:21
**notify** [1] - 51:5
**November** [5] - 17:9,
47:4, 47:18, 47:22,
48:8
**number** [15] - 13:3,
13:8, 25:3, 25:25,
27:5, 29:8, 35:21,
36:18, 36:22, 42:18,
44:16, 49:9, 63:10,
64:15
**NW** [1] - 2:16
**NY** [1] - 2:4

# O

**o'clock** [1] - 32:18
**O'Connor** [2] - 5:8, 6:6
**object** [2] - 42:5, 66:1
**objected** [3] - 12:11,
65:24, 67:24
**objecting** [1] - 66:17
**objection** [9] - 17:24,
39:24, 52:2, 52:12,
66:22, 66:25, 67:9,
68:2
**objections** [1] - 65:23
**obligation** [2] - 65:1,
65:2
**obtain** [1] - 17:2
**obviously** [7] - 27:17,
28:15, 48:23, 50:15,
50:16, 64:12, 71:10
**occur** [1] - 55:6
**occurred** [2] - 54:21,
61:18
**occurs** [1] - 54:20
**October** [5] - 17:8,
17:12, 23:4, 48:8
**OF** [2] - 1:2, 1:11
**off-record** [1] - 68:4
**offer** [1] - 69:9
**office** [4] - 3:19, 7:20,
10:10, 35:5

**official** [1] - 66:3
**Official** [2] - 1:20,
72:14
**officials** [1] - 36:2
**once** [4] - 5:25, 24:7,
29:15, 46:7
**one** [53] - 8:16, 9:10,
9:20, 10:18, 15:5,
16:16, 20:7, 21:23,
22:2, 23:4, 23:19,
26:9, 26:18, 27:3,
27:6, 28:14, 28:19,
28:21, 30:16, 31:4,
31:8, 31:11, 31:12,
32:1, 32:14, 35:4,
36:19, 37:6, 37:7,
39:16, 42:18, 43:14,
43:23, 44:4, 44:5,
44:18, 49:20, 51:15,
53:2, 58:16, 59:19,
60:18, 62:15, 64:21,
69:4, 70:3, 70:12,
70:22, 71:17
**One** [2] - 2:20, 3:10
**ones** [5] - 22:3, 26:10,
30:2, 34:23, 37:13
**online** [1] - 5:16
**opinion** [5] - 17:3,
17:4, 19:18, 26:24,
59:15
**opportunity** [1] -
28:10
**Opportunity** [1] - 3:4
**opposed** [4] - 58:22,
59:14, 59:16, 71:18
**Orange** [2] - 35:23,
60:25
**order** [18] - 5:12, 7:14,
8:3, 12:7, 12:12,
16:7, 16:12, 30:7,
54:6, 55:8, 58:6,
58:17, 58:21, 59:13,
59:14, 61:12, 63:9,
65:8
**ordered** [1] - 71:10
**orders** [7] - 8:6, 8:7,
63:18, 64:7, 64:20,
64:25, 65:6
**ordinarily** [1] - 63:24
**ordinary** [1] - 63:24
**originally** [1] - 14:1
**ORLEANS** [2] - 1:3,
4:1
**Orleans** [9] - 1:22,
2:13, 3:12, 3:14,
3:17, 3:20, 61:1,
61:5, 61:9
**otherwise** [3] - 12:8,
30:12, 61:11
**ought** [3] - 49:15,

49:16, 66:17
**ourselves** [2] - 24:23, 51:17
**out-of-the-world** [1] - 70:22
**overall** [1] - 14:17
**overlapping** [1] - 44:17

## P

**P.M** [1] - 4:2
**p.m** [1] - 72:9
**page** [2] - 30:16, 54:7
**pages** [3] - 53:3, 53:4
**paragraph** [1] - 7:15
**parallel** [2] - 18:5, 18:7
**part** [10] - 6:19, 13:4, 19:18, 25:16, 25:25, 29:11, 29:12, 46:24, 58:2, 68:1
**participate** [4] - 37:21, 46:18, 54:10, 54:14
**participated** [1] - 7:6
**participating** [1] - 46:21
**participation** [1] - 68:11
**particular** [2] - 34:19, 54:22
**parties** [9] - 17:11, 17:17, 36:18, 36:22, 39:24, 40:21, 59:21, 60:19, 61:11
**parties'** [1] - 17:18
**partner** [2] - 69:5, 70:9
**party** [2] - 17:4, 34:18
**Pascagoula** [4] - 35:24, 60:25, 61:4, 61:9
**past** [2] - 45:7, 49:3
**PATRICIA** [1] - 3:13
**Patricia** [2] - 3:13, 4:21
**pattern** [1] - 28:18
**pay** [2] - 38:3, 71:4
**paying** [1] - 71:4
**Peachtree** [1] - 2:9
**pending** [1] - 61:22
**people** [25] - 14:6, 14:18, 27:15, 29:10, 30:20, 31:20, 31:21, 32:22, 35:11, 35:16, 37:16, 40:2, 40:9, 46:24, 47:24, 48:10, 48:11, 48:19, 49:17, 52:19, 54:13, 59:24, 60:7, 61:8, 63:19
**perfect** [1] - 72:1

**perfectly** [1] - 65:13
**period** [4] - 9:12, 16:13, 22:25, 56:1
**permits** [1] - 41:20
**permitted** [1] - 30:19
**permitting** [1] - 35:17
**person** [8] - 44:2, 44:22, 59:9, 60:7, 60:10, 68:2, 70:7
**personal** [1] - 26:24
**personally** [2] - 24:17, 39:5
**persons** [2] - 52:13, 52:17
**Phase** [1] - 21:12
**phase** [4] - 16:20, 38:8, 38:9, 57:9
**Phelps** [9] - 2:15, 69:10, 69:15, 69:16, 70:1, 70:8, 70:16, 70:17
**Phelps'** [1] - 69:23
**Phillips** [1] - 2:15
**phone** [5] - 4:24, 37:21, 38:2, 38:4, 51:21
**phrase** [1] - 66:19
**phrased** [1] - 14:1
**physically** [1] - 50:17
**pick** [5] - 48:24, 49:5, 49:13, 51:1, 55:21
**picked** [1] - 49:17
**picking** [2] - 49:14, 49:19
**picture** [2] - 15:10, 60:4
**place** [4] - 60:20, 64:8, 64:25, 69:3
**places** [1] - 24:7, 24:14, 24:15, 50:18
**placing** [1] - 45:12
**plaintiff** [16] - 4:9, 6:17, 10:18, 13:17, 14:5, 25:21, 28:21, 37:7, 37:8, 37:22, 37:23, 44:21, 49:25, 52:6, 62:1, 64:12
**Plaintiff** [1] - 2:11
**plaintiff's** [4] - 25:6, 30:14, 63:16, 65:24
**Plaintiffs** [3] - 1:5, 2:3, 2:6
**plaintiffs** [7] - 4:9, 4:14, 4:16, 5:23, 7:14, 7:24, 8:3, 8:4, 8:16, 10:23, 13:9, 14:7, 17:8, 18:25, 20:4, 21:12, 24:2, 24:18, 25:9, 25:15, 25:24, 27:2, 27:14,

29:4, 29:5, 29:8, 29:21, 30:5, 30:8, 31:2, 31:5, 31:9, 31:13, 31:18, 33:8, 33:20, 33:22, 34:15, 34:18, 38:7, 39:9, 39:23, 45:17, 46:14, 46:19, 46:23, 47:2, 47:5, 47:13, 47:15, 47:21, 48:24, 49:2, 49:3, 49:5, 49:13, 49:24, 51:1, 51:4, 51:14, 51:24, 52:6, 52:15, 53:21, 55:15, 55:16, 57:9, 60:9, 60:17, 64:16
**plaintiffs'** [1] - 41:22
**plan** [4] - 6:13, 16:10, 16:14, 30:22
**planned** [1] - 13:11
**planning** [5] - 6:8, 39:16, 42:14, 42:24, 43:2
**plans** [1] - 7:9
**pleasant** [1] - 57:15
**plenty** [1] - 19:24
**plus** [1] - 64:12
**PO** [1] - 3:14
**point** [13] - 9:1, 14:16, 18:1, 25:13, 28:1, 28:7, 30:7, 41:14, 42:17, 50:15, 51:12, 57:6, 66:7
**Pol** [1] - 62:9
**poor** [1] - 40:24
**pop** [1] - 51:15
**Port** [1] - 62:5
**pose** [1] - 8:15
**position** [2] - 69:6, 69:9
**possibility** [4] - 31:25, 37:5, 48:14, 48:17
**possible** [3] - 18:20, 29:6, 48:5
**possibly** [2] - 32:1, 36:3
**post** [2] - 11:6, 23:11
**post-certification** [1] - 23:11
**post-Signal** [1] - 11:6
**potentially** [4] - 19:7, 26:20, 36:1
**Poverty** [2] - 2:8, 37:22
**Poydras** [2] - 1:21, 3:11
**practice** [3] - 12:23, 14:10, 28:2
**practitioner** [1] - 24:11

**precise** [1] - 13:7
**precisely** [1] - 58:19
**prediction** [1] - 60:1
**prefer** [2] - 52:22, 61:7
**prejudice** [2] - 17:4, 60:15
**prepare** [1] - 59:12
**preparing** [1] - 57:15
**prepping** [2] - 57:24, 57:25
**prerogative** [1] - 58:13
**present** [2] - 12:17, 39:10
**presented** [1] - 15:10
**pretrial** [2] - 20:22, 21:3
**pretty** [2] - 25:20, 59:25
**previously** [1] - 42:13
**private** [1] - 71:6
**pro** [1] - 8:18
**pro-forma** [1] - 8:18
**problem** [16] - 7:15, 11:2, 42:4, 42:5, 43:8, 43:18, 50:4, 51:14, 56:9, 67:16, 68:18, 69:16, 69:21, 70:13, 71:3, 71:23
**problematic** [1] - 67:16
**problems** [2] - 32:14, 50:16
**procedure** [1] - 33:19
**proceed** [2] - 58:8, 60:16
**proceeding** [2] - 6:13, 62:4
**PROCEEDINGS** [1] - 1:11
**proceedings** [1] - 72:9
**Proceedings** [1] - 1:25
**process** [7] - 11:22, 25:3, 27:14, 28:4, 29:9, 38:10, 67:6
**produce** [5] - 6:10, 7:16, 11:15, 59:15, 59:17
**producing** [3] - 5:22, 5:25, 6:7
**production** [5] - 5:14, 5:15, 7:13, 11:14, 54:24
**productions** [1] - 6:4
**progress** [1] - 7:25
**Project** [1] - 2:8
**promise** [1] - 13:6
**promised** [1] - 11:25
**promises** [2] - 13:13, 14:20

**proposal** [2] - 19:18, 30:14
**propose** [3] - 17:11, 51:6, 52:17
**proposed** [10] - 23:13, 23:18, 25:14, 29:4, 30:4, 47:3, 47:8, 47:17, 61:12
**proposing** [1] - 23:12
**proposition** [1] - 53:19
**protect** [1] - 50:11
**protective** [5] - 7:14, 8:7, 12:12, 16:1, 64:20
**protocol** [3] - 5:12, 6:7, 6:13
**provide** [1] - 53:3
**provides** [2] - 63:22, 67:21
**punish** [1] - 24:18
**punitive** [1] - 63:23
**purposes** [4] - 5:22, 33:21, 42:14, 71:6
**pursue** [4] - 28:8, 28:11, 28:12, 63:24
**put** [7] - 13:10, 20:19, 26:17, 50:25, 60:3, 63:5, 66:7
**putting** [2] - 36:10, 68:18

## Q

**questions** [12] - 12:16, 15:5, 15:24, 16:1, 16:2, 38:1, 39:3, 41:3, 58:18, 66:16, 68:3, 71:14
**quick** [1] - 65:14
**quicker** [1] - 47:6
**quickly** [2] - 25:20, 26:6
**quit** [1] - 13:9

## R

**RABBANI** [1] - 3:8
**raise** [2] - 61:17, 66:13
**RAPTIS** [1] - 2:15
**Raptis** [1] - 5:1
**rare** [1] - 68:21
**rather** [1] - 57:23
**re** [1] - 33:11
**re-depose** [1] - 33:11
**reach** [3] - 27:21, 45:19, 46:9
**read** [3] - 28:20, 38:16, 64:23
**reading** [1] - 63:21

ready [5] - 21:2, 50:5, 55:25, 56:1, 60:4
real [1] - 21:7
realistically [1] - 23:5
really [12] - 12:20, 23:15, 28:12, 29:8, 49:5, 50:15, 50:16, 57:20, 62:23, 63:11, 70:21, 71:20
reason [10] - 8:6, 12:6, 15:25, 17:13, 40:5, 46:13, 50:7, 56:6, 57:19, 66:13
reasons [1] - 64:21
rebut [1] - 17:15
rebuttal [2] - 17:10, 17:14
received [2] - 7:19, 7:24
recently [1] - 21:18
record [11] - 4:7, 43:16, 66:8, 66:14, 66:20, 67:9, 67:24, 68:4, 68:16, 68:18, 70:6
Recorded [1] - 1:25
recording [1] - 66:5
recovery [1] - 63:22
recruiting [1] - 29:15
recruitment [1] - 50:1
recusal [1] - 70:16
recusing [1] - 69:22
reduce [1] - 49:9
referee [1] - 71:2
reflected [1] - 27:4
refused [3] - 11:11, 11:15, 15:6
regard [2] - 16:1, 63:20
regarding [1] - 64:20
relate [1] - 44:19
related [2] - 16:3, 35:16
relationship [1] - 70:7
relief [1] - 61:21
rely [1] - 71:21
remain [2] - 18:15, 31:10
remainder [1] - 47:1
remaining [4] - 5:21, 31:3, 31:5, 31:13
remedy [2] - 24:2, 63:22
remember [3] - 9:22, 38:18, 56:7
report [5] - 17:8, 17:9, 17:17, 17:18, 19:19
reporter [4] - 63:7, 65:16, 66:3, 67:23
Reporter [2] - 1:20,

72:14
reports [2] - 17:7, 17:12
represent [1] - 15:4
representative [2] - 49:3, 53:21
representatives [1] - 6:16
request [1] - 54:6
requesting [2] - 5:24, 65:19
required [1] - 65:7
research [1] - 69:19
resolve [10] - 9:13, 13:1, 16:4, 16:5, 50:23, 55:18, 57:23, 58:4, 60:18, 68:4
resolved [1] - 11:18
resolves [1] - 12:24
resource [1] - 6:8
resources [1] - 50:16
Resources [1] - 62:3
respect [3] - 7:13, 35:9, 61:19
respectfully [1] - 38:20
respective [1] - 26:13
respond [2] - 17:15, 17:18
responsibility [1] - 43:20
responsive [1] - 44:22
rest [2] - 45:5, 57:8
result [2] - 14:19, 46:21
reviewing [1] - 67:11
revisit [2] - 31:22, 32:6
RICO [8] - 9:17, 9:18, 28:15, 28:16, 28:17, 28:22, 28:24, 29:2
RMR [1] - 1:20
road [1] - 69:13
rolling [2] - 56:17, 56:19
room [1] - 4:6
round [1] - 68:24
ROUX [3] - 3:9, 5:17, 5:20
Roux [1] - 5:2
ROWLAND [2] - 7:23, 49:23
Rowland [3] - 4:25, 7:23, 49:23
rule [2] - 50:9, 52:6
ruling [1] - 62:6
run [2] - 37:24, 43:10
running [1] - 51:11
runway [1] - 20:2
rushed [1] - 32:4

Rydberg [3] - 3:9, 69:6, 69:8

## S

sample [1] - 5:22
satisfied [1] - 36:24
Saturday [1] - 57:13
saw [1] - 20:5
scared [1] - 56:22
schedule [6] - 23:12, 23:19, 23:20, 47:3, 55:3, 56:3
scheduled [7] - 24:7, 30:18, 32:16, 46:16, 47:2, 47:8, 54:8
scheduling [4] - 16:7, 37:3, 46:1, 46:10, 54:6, 60:7, 60:12, 61:12
scrambled [1] - 10:24
second [5] - 28:14, 30:23, 38:23, 54:15, 54:19
secondarily [1] - 40:22
Section [1] - 63:21
security [3] - 34:19, 34:20, 54:14
see [20] - 5:9, 11:17, 12:23, 18:6, 18:11, 26:25, 33:10, 36:21, 37:3, 38:25, 44:25, 45:20, 45:25, 49:15, 49:21, 51:16, 56:24, 59:5, 70:12, 72:6
seeking [1] - 9:4
segment [2] - 60:3
segregated [1] - 43:25
SEI [1] - 5:4
select [1] - 6:11
send [4] - 42:25, 46:7, 61:12, 61:13
sense [1] - 64:19
sent [2] - 7:21, 23:25
September [2] - 16:24, 48:7
serial [1] - 27:14
served [1] - 67:10
set [23] - 20:5, 20:12, 21:18, 22:8, 22:10, 22:11, 22:13, 22:19, 22:20, 22:21, 22:22, 22:23, 23:1, 23:2, 23:4, 23:5, 50:13, 50:19, 53:24, 54:2, 57:3, 57:5, 57:8
settings [3] - 20:16, 20:17, 20:18
settlement [4] - 34:7,

70:24, 71:6, 71:9
seven [5] - 20:16, 20:17, 20:18, 47:13, 63:4
severance [1] - 6:2
Shapiro [3] - 3:16, 4:17, 29:16, 31:23, 31:25, 50:17
SHAPIRO [15] - 3:16, 4:17, 32:3, 32:9, 32:13, 32:25, 33:3, 33:7, 33:18, 34:2, 34:11, 63:5, 67:15, 68:17, 70:21
share [1] - 40:9
shares [1] - 42:10
Shell [1] - 3:10
shift [3] - 16:25, 17:1, 19:21
shifted [1] - 19:21
short [2] - 14:18, 16:13
shorter [1] - 26:11
show [2] - 15:15, 43:10
showed [1] - 55:9
shown [1] - 55:9
shows [1] - 15:9
sick [1] - 69:3
side [3] - 33:5, 37:14, 38:13
sides [2] - 24:20, 39:6
Sig [4] - 7:16, 7:19, 54:25, 55:5
Sig-P [4] - 7:16, 7:19, 54:25, 55:5
Signal [45] - 3:8, 4:21, 4:22, 4:23, 5:2, 5:3, 6:17, 11:6, 23:5, 30:24, 31:20, 31:21, 34:21, 35:8, 35:11, 35:14, 36:4, 36:5, 36:7, 36:9, 36:15, 42:2, 43:12, 45:13, 49:14, 51:7, 51:20, 52:1, 53:18, 53:23, 56:19, 58:8, 58:9, 58:11, 58:22, 59:5, 59:14, 59:17, 59:22, 60:5, 62:17, 62:18, 63:14
SIGNAL [1] - 1:7
Signal's [6] - 5:4, 5:6, 38:6, 43:19, 50:15, 60:23
signed [4] - 5:12, 7:14, 8:6, 15:4
signing [1] - 17:13
similar [7] - 25:17, 30:3, 49:8, 49:15,

49:19, 49:20, 52:3
similarities [1] - 50:3
simple [3] - 17:21, 59:8, 59:20
simplify [2] - 28:24, 29:2
simply [2] - 16:1, 41:23
single [4] - 24:10, 39:24, 47:17, 59:12
sit [1] - 41:24
sitting [1] - 32:1
situated [1] - 29:6
situation [2] - 25:17, 68:6
situations [1] - 50:2
six [3] - 26:14, 53:23, 63:2
sixteen [6] - 25:14, 25:20, 27:2, 30:4, 30:8, 48:25
Skadden [1] - 2:19
Slate [1] - 2:19
slightly [1] - 26:10
slot [2] - 47:10, 50:8
small [1] - 62:15
smoothly [1] - 37:25
solely [1] - 41:23
solid [2] - 20:17, 37:6
solo [1] - 24:10
solution [2] - 25:1, 25:2
solve [1] - 68:18
someone [3] - 37:20, 37:23, 58:12
something's [1] - 66:17
sometimes [1] - 65:4
somewhat [1] - 25:12
Sony [1] - 65:19
soon [3] - 25:4, 46:20, 47:19
sorry [3] - 22:23, 30:11, 42:16
sort [3] - 15:20, 27:14, 71:16
sound [1] - 11:18
sounded [1] - 10:14
sounds [5] - 41:16, 42:13, 64:16, 64:17
South [1] - 3:5
Southern [2] - 2:8, 37:22
speaking [2] - 25:9, 29:1
special [5] - 70:23, 70:25, 71:1, 71:9
specific [4] - 8:24, 9:7, 9:22, 28:5
specifically [1] - 9:23

**specify** [2] - 9:5, 62:11
**speculative** [1] - 26:17
**spend** [1] - 6:8
**spent** [1] - 26:8
**SPLC** [1] - 2:6
**splitting** [1] - 50:15
**spouses** [3] - 63:18, 64:1, 64:2
**spreadsheet** [5] - 44:10, 45:20, 59:2, 59:6, 59:22
**spreadsheets** [1] - 45:15
**Square** [1] - 3:10
**St** [2] - 2:12, 3:20
**staff** [1] - 57:4
**staggered** [1] - 18:15
**start** [10] - 21:3, 25:4, 30:15, 30:21, 32:17, 36:20, 46:8, 46:21, 49:11
**started** [1] - 69:23
**starters** [1] - 64:5
**starting** [1] - 37:16
**state** [1] - 9:10
**statement** [1] - 66:18
**States** [5] - 10:25, 11:4, 12:8, 15:8, 40:24
**STATES** [2] - 1:1, 1:13
**status** [9] - 11:6, 12:11, 12:16, 12:18, 21:20, 41:8, 46:4, 46:5, 62:4
**Status** [1] - 1:8
**stay** [19] - 7:2, 12:8, 15:8, 16:15, 40:7, 40:14, 41:2, 41:14, 42:24, 43:2, 43:12, 45:1, 61:22, 61:25, 62:7, 62:8, 62:9, 65:7, 65:10
**stayed** [2] - 41:9, 62:2
**staying** [1] - 40:8
**Stenography** [1] - 1:25
**step** [1] - 45:20
**Stephen** [1] - 3:16
**STEPHEN** [2] - 2:15, 3:16
**Steve** [2] - 4:17, 67:19
**Steven** [1] - 5:1
**stick** [1] - 14:8
**still** [10] - 18:15, 18:25, 22:21, 23:21, 29:11, 32:2, 33:4, 37:5, 48:7, 70:9
**stip** [1] - 47:10
**stipulation** [1] - 43:23
**stipulations** [1] -

27:22
**stop** [1] - 54:5
**stories** [1] - 29:15
**story** [1] - 26:7
**straight** [2] - 8:12, 56:17
**streamline** [1] - 38:10
**Street** [7] - 1:21, 2:9, 2:16, 2:20, 3:5, 3:11, 3:17
**stricter** [1] - 55:8
**strong** [1] - 28:13
**structure** [1] - 39:8
**stuck** [1] - 4:11
**stuff** [1] - 65:10
**subject** [2] - 58:6, 58:7
**submit** [2] - 17:11, 17:17
**submitting** [2] - 17:8, 17:9
**subsequent** [1] - 26:10
**subsequently** [1] - 70:11
**substance** [3] - 58:21, 65:25, 66:1
**succeed** [1] - 28:12
**successful** [1] - 10:8
**succinct** [1] - 67:13
**succinctly** [1] - 67:9
**sufficient** [5] - 10:5, 18:2, 25:2, 33:21, 34:4
**suggest** [4] - 16:25, 54:4, 71:5, 71:13
**suggested** [2] - 17:25, 20:4
**suggesting** [5] - 17:16, 30:8, 30:10, 33:18, 53:4
**suggestion** [2] - 37:20, 70:22
**suing** [1] - 49:6
**suit** [2] - 28:13, 62:1
**Suite** [4] - 2:13, 2:16, 3:5, 3:11
**Sulekha** [1] - 65:20
**summary** [1] - 34:8
**Sunday** [1] - 31:4
**supplement** [1] - 40:17
**supposed** [2] - 13:8, 42:17
**suppressed** [1] - 19:9
**Susan** [2] - 72:14, 72:18
**SUSAN** [2] - 1:20, 72:17
susan_zielie@laed.

**uscourts.gov** [1] - 1:22
**SUSIE** [1] - 1:12
**swapping** [1] - 26:16
**Swetland** [1] - 34:20
**switch** [1] - 58:15
**system** [2] - 6:8, 53:20

**T**

**table** [3] - 32:2, 32:3, 53:25
**task** [1] - 60:5
**temporary** [1] - 63:9
**ten** [16] - 21:21, 49:12, 49:13, 49:17, 49:22, 51:2, 51:5, 51:10, 51:24, 52:1, 52:6, 55:16, 63:15, 64:10
**Tenth** [1] - 63:21
**terminated** [2] - 10:24, 13:9
**Terrell** [1] - 3:9
**territory** [1] - 38:5
**test** [1] - 26:25
**testify** [8] - 15:14, 24:8, 26:20, 32:23, 33:24, 33:25, 34:6, 44:15
**testimony** [6] - 25:6, 26:8, 32:11, 33:6, 34:3, 38:9
**Texas** [23] - 6:25, 7:2, 20:4, 20:5, 20:12, 20:16, 21:9, 21:17, 21:18, 21:22, 21:24, 22:6, 23:2, 23:20, 23:24, 36:2, 36:4, 48:2, 50:9, 55:20, 72:4
**texts** [1] - 28:19
**THE** [204] - 1:1, 1:2, 1:12, 4:3, 4:5, 4:24, 5:4, 5:6, 6:12, 6:21, 6:24, 7:8, 7:11, 7:18, 7:25, 8:3, 8:19, 8:22, 8:24, 9:6, 9:9, 9:16, 9:21, 10:5, 10:9, 10:13, 10:17, 11:10, 11:17, 11:21, 12:1, 12:15, 12:20, 12:23, 13:17, 13:22, 14:3, 14:24, 15:13, 15:17, 16:4, 16:17, 16:20, 16:23, 17:5, 17:13, 17:19, 17:23, 18:6, 18:10, 18:17, 18:22, 19:2, 19:8, 19:24, 20:10, 20:14, 20:19, 21:4, 21:7, 21:11,

21:17, 21:22, 21:24, 22:7, 22:10, 22:13, 22:15, 22:19, 22:21, 22:24, 24:8, 24:20, 25:5, 26:2, 27:6, 27:20, 28:1, 28:4, 30:2, 30:10, 30:14, 31:1, 31:14, 31:20, 32:7, 32:11, 32:23, 33:1, 33:4, 33:13, 33:16, 33:23, 34:5, 34:12, 34:22, 34:25, 35:9, 36:12, 37:3, 37:10, 38:1, 38:11, 38:21, 38:23, 39:6, 39:13, 40:1, 40:5, 40:13, 40:23, 41:7, 41:16, 41:19, 42:2, 42:4, 42:15, 42:18, 43:19, 43:22, 44:14, 44:21, 44:24, 45:9, 45:14, 45:23, 46:4, 46:13, 47:11, 47:21, 47:24, 48:1, 48:9, 48:19, 49:7, 50:5, 50:19, 50:25, 51:4, 51:11, 51:16, 51:19, 52:9, 52:11, 52:15, 52:20, 52:22, 53:6, 53:9, 54:3, 54:25, 55:3, 55:13, 56:4, 56:8, 56:13, 56:21, 56:23, 56:25, 57:2, 57:11, 57:14, 57:17, 58:11, 58:15, 58:25, 59:18, 60:23, 61:1, 61:5, 61:7, 61:11, 61:15, 61:23, 62:13, 63:11, 63:14, 64:2, 64:6, 64:11, 64:14, 64:21, 65:11, 65:13, 66:5, 66:7, 66:10, 66:22, 66:25, 68:8, 68:14, 68:20, 69:2, 69:14, 69:20, 70:2, 70:8, 70:16, 71:3, 71:11, 71:18, 71:20, 72:3, 72:6
**theirs** [2] - 46:23, 59:3
**themes** [2] - 28:24, 29:18
**theories** [2] - 27:5, 28:23
**theory** [1] - 59:12
**they've** [4] - 6:18, 14:19, 23:13, 38:8
**thinking** [7] - 7:15, 22:25, 27:20, 30:21, 34:19, 46:17, 48:1
**thinks** [1] - 66:16

**third** [3] - 31:11, 31:12, 34:18
**third-party** [1] - 34:18
**thirteen** [1] - 55:17
**thirty** [1] - 51:14
**thousands** [1] - 63:1
**three** [11] - 19:1, 21:13, 21:20, 25:22, 26:18, 30:17, 31:10, 43:4, 47:14, 53:3, 54:7
**throughout** [1] - 40:7
**Thursday** [1] - 62:5
**TIM** [1] - 3:19
**Tim** [3] - 3:19, 4:18, 67:19
**timeline** [1] - 64:20
**timing** [2] - 46:6, 62:8
**today** [7] - 10:1, 16:4, 31:11, 31:12, 63:21, 66:14, 69:9
**together** [11] - 18:2, 18:10, 29:25, 32:16, 42:19, 52:17, 52:19, 59:7, 60:4, 60:11, 71:12
**Tom** [3] - 4:10, 5:8, 6:6
**TOM** [1] - 2:7
**tomorrow** [1] - 31:4
**took** [2] - 7:14, 33:20
**top** [2] - 43:10, 64:1
**topic** [1] - 43:24
**topics** [6] - 41:16, 44:8, 44:15, 58:11, 59:10, 60:6
**total** [1] - 20:17
**totally** [2] - 24:12, 68:24
**TPVA** [1] - 28:24
**track** [4] - 17:22, 18:5, 18:7, 48:4
**traffic** [1] - 4:11
**transcript** [2] - 14:12, 72:15
**TRANSCRIPT** [1] - 1:11
**transcripts** [2] - 26:8, 67:11
**transfer** [1] - 7:3
**translated** [1] - 66:17
**translating** [1] - 68:9
**translation** [5] - 65:23, 66:2, 67:9, 67:17, 68:2
**translator** [3] - 65:24, 66:3, 67:21
**translators** [3] - 26:15, 26:16, 68:25
**transparent** [2] - 69:5,

70:20
**treat** [3] - 38:12, 38:18, 38:19
**treated** [1] - 38:12
**tremendous** [1] - 38:8
**tremendously** [1] - 28:25
**trial** [61] - 10:1, 10:23, 16:11, 16:17, 16:20, 19:17, 19:23, 20:3, 20:4, 20:12, 20:23, 21:2, 21:7, 21:13, 22:17, 23:6, 23:12, 23:16, 23:19, 23:22, 24:8, 25:8, 25:10, 25:11, 25:12, 25:24, 26:4, 29:5, 29:6, 29:9, 30:5, 30:15, 32:23, 33:24, 47:7, 48:10, 48:12, 48:16, 48:17, 48:19, 49:3, 49:13, 50:6, 50:8, 50:13, 51:6, 53:4, 53:14, 53:25, 55:19, 55:20, 55:24, 56:2, 57:3, 57:6, 57:7, 60:4, 65:22, 66:10, 67:3
**trials** [9] - 23:14, 25:3, 25:5, 25:14, 25:25, 30:12, 47:19, 52:23, 53:12
**tricky** [1] - 68:6
**tried** [12] - 7:12, 14:14, 27:5, 27:23, 38:10, 48:24, 52:13, 52:17, 52:19, 53:22, 67:5, 67:18
**triggered** [1] - 6:1
**truly** [1] - 67:21
**truth** [1] - 39:2
**try** [17] - 14:8, 18:11, 18:17, 27:2, 29:2, 30:8, 32:16, 37:14, 38:23, 47:18, 50:23, 54:2, 55:16, 64:23, 66:14, 68:4, 70:24
**trying** [16] - 13:12, 14:6, 14:15, 14:16, 15:9, 21:6, 24:17, 25:1, 30:2, 30:6, 34:2, 34:3, 48:12, 49:7, 57:20, 64:14
**Tuesday** [1] - 57:12
**turn** [1] - 10:5
**turned** [1] - 55:24
**TVPA** [1] - 63:22
**twelve** [1] - 23:5
**twenty** [1] - 23:13
**two** [25] - 9:25, 17:3,

20:5, 20:10, 20:19, 22:16, 24:7, 24:14, 31:3, 31:5, 31:10, 31:12, 32:1, 32:16, 37:17, 50:17, 52:6, 52:7, 55:16, 55:17, 57:9, 68:13, 69:24, 70:9
**type** [1] - 60:15

## U

**U-visa** [1] - 63:9
**um-hum** [1] - 33:3
**unable** [1] - 53:22
**under** [1] - 54:22
**undergone** [1] - 25:17
**understood** [1] - 32:9
**unfair** [1] - 39:22
**unfortunately** [1] - 23:23
**unique** [1] - 71:1
**UNITED** [2] - 1:1, 1:13
**United** [5] - 10:25, 11:3, 12:8, 15:8, 40:24
**unless** [2] - 36:22, 61:11
**unlikely** [2] - 30:18, 54:8
**unusual** [2] - 32:5, 34:9
**up** [22] - 12:16, 13:8, 16:10, 16:14, 19:19, 25:3, 34:3, 43:2, 46:11, 49:5, 49:7, 50:15, 51:11, 54:2, 54:20, 56:10, 57:4, 58:18, 65:3, 67:7, 68:9, 68:23
**upset** [1] - 57:21
**urge** [1] - 38:18
**US** [1] - 3:4

## V

**vacuum** [1] - 45:14
**Vasudevan** [1] - 65:20
**vendors** [2] - 35:21, 36:1
**via** [1] - 26:20
**video** [3] - 26:20, 66:6
**view** [2] - 50:15, 60:15
**visa** [1] - 63:9
**voice** [2] - 48:23, 65:4

## W

**wait** [1] - 40:25
**walk** [1] - 10:9

**wall** [1] - 46:12
**wants** [4] - 6:19, 58:9, 59:17, 71:5
**Washington** [1] - 2:17
**Watkins** [1] - 27:8
**ways** [1] - 53:4
**week** [8] - 9:24, 10:3, 51:4, 51:8, 51:10, 51:19, 51:23, 56:11
**weekend** [1] - 31:8
**weeks** [2] - 9:25, 19:1
**WEINBERGER** [19] - 4:22, 27:4, 27:7, 27:24, 28:14, 30:7, 30:11, 52:10, 52:12, 52:16, 52:21, 52:25, 53:8, 63:17, 64:4, 64:19, 65:1, 65:5, 65:12
**Weinberger** [1] - 4:22
**WERNER** [20] - 2:6, 4:8, 6:14, 9:4, 31:6, 31:18, 31:22, 33:10, 33:15, 33:17, 35:2, 35:4, 35:13, 38:6, 45:6, 48:2, 61:17, 61:24, 67:4, 71:10
**Werner** [1] - 4:8
**whatsoever** [2] - 12:18, 68:11
**who'll** [2] - 31:15, 48:16
**whole** [13] - 11:21, 24:9, 39:17, 41:2, 41:9, 41:10, 41:13, 42:24, 43:2, 43:12, 45:1, 45:4, 60:3
**widely** [1] - 29:17
**wild** [2] - 70:21, 71:14
**WINBERGER** [1] - 31:10
**wise** [2] - 58:6, 59:12
**wish** [1] - 8:15
**wishing** [1] - 29:11
**witness** [14] - 17:1, 17:6, 17:7, 17:12, 17:17, 19:19, 19:22, 31:4, 31:8, 58:16, 58:17, 58:18, 59:19, 63:16
**witnesses** [14] - 24:5, 25:18, 25:20, 25:21, 25:23, 26:5, 26:18, 31:15, 49:9, 59:15, 59:23, 61:2, 61:3, 66:16
**witnesses'** [1] - 24:6
**wonder** [1] - 19:6
**Word** [1] - 61:13
**word** [2] - 66:18,

66:24
**words** [4] - 37:8, 67:22, 67:25, 68:18
**works** [2] - 11:17, 70:1
**worksite** [1] - 44:17
**world** [2] - 32:15, 70:22
**worn** [2] - 32:19
**worn-out** [2] - 32:19
**worthless** [1] - 68:24
**write** [2] - 67:10, 67:25
**written** [2] - 11:10, 27:12

## Y

**yard** [2] - 60:25
**year** [3] - 23:6, 24:9, 55:19
**years** [4] - 26:14, 53:23, 69:24, 70:9
**York** [1] - 2:4
**yourself** [2] - 4:6, 28:10

## Z

**Zielie** [2] - 72:14, 72:18
**ZIELIE** [2] - 1:20, 72:17