UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KURIAN DAVID, et al.**         Plaintiffs | **CIVIL ACTION** |
| **VERSUS** | **No. 08-1220** |
| **SIGNAL INTERNATIONAL, LLC, et al.,**         Defendants | **SECTION "E"** |
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**         Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **No. 12-557** |
| **SIGNAL INTERNATIONAL, LLC, et al.,**         Defendants | **SECTION "E"** |
| **LAKSHMANAN PONNAYAN ACHARI, et al.,**         Plaintiffs | **CIVIL ACTION** |
| **VERSUS** | **No. 13-6218**  (c/w 13-6219, 13-6220, 13-6221, 14-732, 14-1818) |
| **SIGNAL INTERNATIONAL, LLC, et al.,**         Defendants | **SECTION "E"** |

**Applies To:**
*David* **(08-1220)**

1

## **ORDER**

The Court previously ruled that Kevin Fox Gotham could opine on the availability of adequate housing for Signal workers, but only if that opinion is (1) based on reliable evidence, (2) relevant to a claim or defense in this case, and (3) confined to the appropriate geographic location during the appropriate time period.[1]  The Court deferred a ruling on admissibility until trial.

Signal intends to elicit the following opinions from Mr. Gotham "regarding the availability of housing in the three Mississippi coastal counties, including Jackson County, in late 2006 and in 2007:"

> (1) According to data gathered by FEMA and the Department of Homeland Security, along the three Mississippi counties fronting the Gulf of Mexico 80 percent of the rental stock and 64% of the homeowner stock sustained damage in Hurricane Katrina and Rita. All rental units in Hancock County, 43 percent of the rental units in Harrison County and 37 percent of the rental housing units in Harrison County were damaged to the point of being uninhabitable. 37 percent of the rental housing stock in Jackson County was rendered uninhabitable. (see pp 19-22 and Exhibit II of his expert report in David and authority cited).

> (2) The post-storm recovery and rebuilding of housing for low to moderate income individuals and of rental units was especially slow-citing data gathered by FEMA, HUD and the RAND Corporation (see pp 27-28 of his expert report in David).

> (3) Based on a report prepared for the Gulf Regional Planning Commission, by March 2007 the housing market was still weak and recovery was lagging. Housing supply had not reached the capacity to meet the demand for housing. This lack of supply resulted in an increase in the price of housing. (see pp 29-30 of Gotham's David report).[2]

---

[1] *See* R. Doc. 2045.
[2] R. Doc. 2168 (quoting Signal's proffer of Mr. Gotham's testimony).

Plaintiffs filed a memorandum of law, arguing this testimony is inadmissible for a variety of reasons, including failure to comply with the Court's previous order on the motion *in limine*.[3]  Plaintiffs reiterated this position during oral argument in open court on January 23, 2015.  Signal responded that Mr. Gotham's proposed testimony is consistent with the Court's ruling.

Of this proposed testimony, only one opinion even comes close to fitting within the parameters of the Court's ruling:  "37 percent of the rental housing stock in Jackson County was rendered uninhabitable."  Unlike the others, this opinion is confined to the relevant geographic area where the mancamp was located.  Crucially, however, the opinion is not tied to any time period, much less the relevant time period.  Any opinion regarding the state of housing stock during an undetermined time period will not help the jury determine the number of units available to the H2B workers *at the time Signal decided to build the mancamp.*

To the extent this opinion has any relevance at all, it usurps the role of the jury. Apparently, Gotham would express the opinion that, since 37% of the housing stock was uninhabitable, the available housing stock was necessarily decreased.  As the Court noted in its previous ruling, the deleterious effect of Hurricanes Katrina and Rita on the availability of housing is common knowledge to a jury in the Gulf South.[4]  Furthermore, the jury is no doubt aware that post-storm recovery was slow and that loss of housing caused housing costs to increase.

The jury has heard, and no doubt will continue to hear, testimony based on personal knowledge of Signal employees regarding housing availability in the relevant

---

[3] *See id.*

[4] The jury is fully capable of "using only their common sense and experience" to evaluate the evidence presented on this issue.  *See Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

geographic area during the relevant time period.   This testimony is more helpful to the jury than the opinions of an expert who opined on "the availability of housing in the Gulf Coast region," rather than the relevant geographic area, during "the years after Hurricane Katrina and Hurricane Rita," rather than the relevant time period.[5]

Accordingly;

**IT IS ORDERED** that Mr. Gotham is **EXCLUDED** and may not offer expert testimony at trial.

**New Orleans, Louisiana, this 24th day of January, 2015.**

*[signature: Susie Morgan]*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[5] *See* R. Doc. 1823-4, p. 11–12.