1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF LOUISIANA

3

4

   KURIAN DAVID, et al.                Civil Action
5
   versus                              No. 08-1220
6
   SIGNAL INTERNATIONAL, LLC, et al.   Section E
7

8  Related Case:

9  EQUAL EMPLOYMENT                     Civil Action
   OPPORTUNITY COMMISSION
10                                      No. 12-557
   versus
11                                      Section E
   SIGNAL INTERNATIONAL, LLC, et al.
12

13 Related Case:

14 LAKSHMANAN PONNAYAN ACHARI, et al.  Civil Action

15                                     No. 13-6218

16 versus                             c/w 13-6219, 13-6220,
                                          13-6221, 14-732,
17                                        14-1818

18 SIGNAL INTERNATIONAL, LLC, et al.  Section E

19
   *Applies to:  All Cases*
20

21

22         TRANSCRIPT OF STATUS CONFERENCE
                HELD OCTOBER 30, 2014
23       BEFORE THE HONORABLE SUSIE MORGAN
             UNITED STATES DISTRICT JUDGE
24

25

1    Appearances:

2

3    For the *David* Plaintiffs:      Crowell & Moring, LLP
                                       BY:   ALAN B. HOWARD, ESQ.
                                             HUGH D. SANDLER, ESQ.
4                                      590 Madison Avenue
                                       New York, New York 10022
5

6    For the *David* Plaintiffs:      Southern Poverty Law Center
                                       BY:   DANIEL WERNER, ESQ.
7                                            NAOMI TSU, ESQ.
                                       233 Peachtree Street, Suite 2150
8                                      Atlanta, Georgia 30303

9

10   For the *David* Plaintiffs:      Southern Poverty Law Center
                                       BY:   MEREDITH B. STEWART, ESQ.
                                       1055 St. Charles Avenue, Suite 505
11                                     New Orleans, Louisiana 70130

12

13   For the *David* Plaintiffs:      The Louisiana Justice Institute
                                       BY:   TRACIE L. WASHINGTON, ESQ.
                                       1631 Elysian Fields Avenue
14                                     New Orleans, Louisiana 70117

15

16   For the *Achari* Plaintiffs:     Gordan Arata McCollam Duplantis
                                         & Eagan
                                       BY:   A. GREGORY GRIMSAL, ESQ.
17                                     201 St. Charles Avenue, Suite 4000
                                       New Orleans, Louisiana 70170

18

19   For the *Chakkiyattil*           Skadden Arps Slate Meagher
     Plaintiffs:                         & Flom, LLP
20                                     BY:   EBEN P. COLBY, ESQ.
                                       500 Boyslton Street
21                                     Boston, Massachusetts 02116

22

23   For the *Devassy*                Manatt Phelps & Phillips, LLP
     Plaintiffs:                       BY:   STEPHEN T. RAPTIS, ESQ.
                                       700 12th Street NW
24                                     Washington, DC  20005

25

 1    Appearances:

 2

 3    For the EEOC:                    U.S. Equal Opportunity
                                      Employment Commission
                                      BY:  JULIE STEPTOE BEAN, ESQ.
 4                                    1130 22nd Street South, Suite 2000
                                      Birmingham, Alabama 35205

 5

 6    For Signal                      Hangartner Rydberg & Terrell, LLC
       International, LLC:            BY:   ERIN CASEY HANGARTNER, ESQ.
 7                                          BRIAN C. ROUX, ESQ.
                                            ALAN D. WEINBERGER, ESQ.
 8                                          ELHAM RABBANI, ESQ.
                                            HAL D. UNGAR, ESQ.
 9                                          MITCHELL P. HASENKAMPF, ESQ.
                                      701 Poydras Street, Suite 310
10                                    New Orleans, Louisiana 70139

11

12    For Signal                      Patricia A. Bollman, APLC
       International, LLC:            BY:  PATRICIA A. BOLLMAN, ESQ.
                                      Post Office Box 13707
13                                    New Orleans, Louisiana 70185

14

15    For the Dewan                   STEPHEN H. SHAPIRO, ESQ.
       Defendants:                    700 Camp Street
                                      New Orleans, Louisiana 70130
16

17    For the Burnett                 Law Office of Timothy W. Cerniglia
       Defendants:                    BY:  TIMOTHY W. CERNIGLIA, ESQ.
18                                    1521 St. Charles Avenue
                                      New Orleans, Louisiana 70130

19

20    Official Court Reporter:        Toni Doyle Tusa, CCR, FCRR
                                      500 Poydras Street, Room B-275
21                                    New Orleans, Louisiana 70130
                                      (504) 589-7778
22

23

24    Proceedings recorded by mechanical stenography using
      computer-aided transcription software.

25

**PROCEEDINGS**

**(October 30, 2014)**

01:46:15  1

01:46:24  2

02:08:04  3    THE COURT:  Good afternoon.  Y'all have a seat.

02:08:08  4          We started to set up in the courtroom and

02:08:10  5    decided we like it better in here, but I'm not sure now.  If

02:08:25  6    you get warm, we will open that door too.  Let's go around the

02:08:38  7    table and say everybody who is here and who you represent.

02:08:44  8          MR. HOWARD:  Alan Howard from Crowell & Moring

02:08:45  9    representing the *David* plaintiffs.

02:08:48  10          MR. WERNER:  Daniel Werner from the Southern Poverty

02:08:49  11    Law Center for the *David* plaintiffs, the *EEOC* intervenors, and

02:08:54  12    the *Thomas* plaintiffs.

02:08:56  13          MS. TSU:  Naomi Tsu from the Southern Poverty Law

02:08:58  14    Center for the *David* plaintiffs.

02:09:00  15          MR. GRIMSAL:  Greg Grimsal from Gordon Arata for the

02:09:04  16    plaintiffs in the *Achari* consolidated cases.

02:09:07  17          MR. COLBY:  Eben Colby from Skadden Arps on behalf of

02:09:10  18    the *Chakkiyattil* plaintiffs.

02:09:12  19          MS. BEAN:  Julie Bean on behalf of the EEOC.

02:09:16  20          THE COURT:  Keep going.  I forgot something in my

02:09:17  21    office.

02:09:19  22          MR. SHAPIRO:  Steve Shapiro on behalf of the Dewan

02:09:21  23    defendants.

02:09:21  24          MR. CERNIGLIA:  Tim Cerniglia on behalf of the

02:09:23  25    Burnett defendants.

02:09:24  1          **MR. WEINBERGER:**  Alan Weinberger on behalf of the
02:09:27  2     Signal defendants.
02:09:29  3          **MR. ROUX:**  Brian Roux on behalf of Signal.
02:09:31  4          **MS. HANGARTNER:**  Erin Casey Hangartner on behalf of
02:09:33  5     Signal International.
02:09:36  6          **MS. BOLLMAN:**  Patricia Bollman on behalf of Signal.
02:09:38  7          **MR. UNGAR:**  Hal Ungar on behalf of the Signal
02:09:41  8     defendants.
02:09:43  9          **MR. RABBANI:**  Elham Rabbani on behalf of Signal.
02:09:45  10         **MR. HASENKAMPF:**  Mitch Hasenkampf on behalf of
02:09:46  11    Signal.
02:09:51  12         **MS. STEWART:**  Meredith Stewart on behalf of the *David*
02:09:53  13    plaintiffs, the *Thomas* plaintiffs, and the *EEOC* plaintiff
02:09:55  14    intervenors.
02:09:56  15         **MR. SANDLER:**  Hugh Sandler on behalf of the *David*
02:09:58  16    plaintiffs.
02:09:59  17         **MS. WASHINGTON:**  Tracie Washington, *David* plaintiffs.
02:10:06  18         **THE COURT:**  I put together an agenda to help me get
02:10:08  19    through all the things we need to talk about today and that's
02:10:11  20    why I asked you all to let me know.  I think that's a good
02:10:16  21    thing for us to do because, as you all know, every time at the
02:10:20  22    end of the conference things start coming up, and it's unfair
02:10:23  23    to your co-counsel and to me not to let people have a chance to
02:10:29  24    think about issues before we talk about them.
02:10:34  25              The first thing I have on my agenda is the

| | |
|---|---|
| 02:10:37 | 1 |
| 02:10:47 | 2 |
| 02:10:52 | 3 |
| 02:10:56 | 4 |
| 02:11:03 | 5 |
| 02:11:07 | 6 |
| 02:11:08 | 7 |
| 02:11:11 | 8 |
| 02:11:18 | 9 |
| 02:11:24 | 10 |
| 02:11:25 | 11 |
| 02:11:28 | 12 |
| 02:11:32 | 13 |
| 02:11:33 | 14 |
| 02:11:36 | 15 |
| 02:11:42 | 16 |
| 02:11:45 | 17 |
| 02:11:48 | 18 |
| 02:11:52 | 19 |
| 02:11:55 | 20 |
| 02:11:59 | 21 |
| 02:12:12 | 22 |
| 02:12:19 | 23 |
| 02:12:21 | 24 |
| 02:12:25 | 25 |

scheduling orders that we sent out to all of you.  What we did was take the most recent full version and then look to see if there have been any other minor changes.  We think we caught everything.  What I want to do is enter the scheduling orders that should be complete and up-to-date after today's status conference.

So did anybody have any questions or corrections?  We did separate ones for the -- first we did the *David v. Signal* case.  Any corrections or additions?

MR. HOWARD:  I didn't see anything, Your Honor, just other than the setting the new trial date for the remaining seven plaintiffs.  That seemed to be the only new addition.

THE COURT:  Okay.  So let's go through them first just in general and then we will go back to the trial date.

Any corrections or additions in *EEOC v. Signal*?

MS. BEAN:  One small one, Your Honor.  We are asking if you would allow us to serve our expert witness reports on Monday instead of tomorrow.  They are due tomorrow.

THE COURT:  Does anybody have any objection to that?

All right.  So we will change plaintiff expert reports delivered November 3.

Then the *Achari* scheduling order.

MS. HANGARTNER:  The only issue with *Achari* is we need an additional 10 days to take depositions.  There was a conflict with a translator and the plaintiffs --

| | |
|---|---|
| 02:12:27 | 1 |
| 02:12:32 | 2 |
| 02:12:34 | 3 |
| 02:12:38 | 4 |
| 02:12:42 | 5 |
| 02:12:46 | 6 |
| 02:12:48 | 7 |
| 02:12:51 | 8 |
| 02:12:54 | 9 |
| 02:12:57 | 10 |
| 02:12:59 | 11 |
| 02:13:00 | 12 |
| 02:13:06 | 13 |
| 02:13:09 | 14 |
| 02:13:11 | 15 |
| 02:13:17 | 16 |
| 02:13:23 | 17 |
| 02:13:29 | 18 |
| 02:13:33 | 19 |
| 02:13:36 | 20 |
| 02:13:40 | 21 |
| 02:13:40 | 22 |
| 02:13:42 | 23 |
| 02:13:45 | 24 |
| 02:13:46 | 25 |

1   **THE COURT:**  I think Patricia should do it.

2   **MS. BOLLMAN:**  We are asking for an additional 10 days

3   for discovery for the purposes of taking two *Achari* plaintiffs.

4   The *Achari* plaintiffs' counsel have consented to this.  We had

5   issues scheduling it with our translator's schedule, and then

6   one of the plaintiffs asked that we take his deposition out of

7   town because he was having some issues.  The only way we could

8   do that was to bump it to December.  So we need until

9   December 10 to complete those two depositions.

10   **THE COURT:**  So it was --

11   **MS. BOLLMAN:**  November 28, I believe.

12   **THE COURT:**  -- the 28th.  What are the names of the

13   two people who'll be deposed?

14   **MR. GRIMSAL:**  The names of the two witnesses, Judge,

15   are:  Jomon George, whose deposition is scheduled now, pursuant

16   to agreement of the parties, on December 7, 8, and 9; and the

17   second witness is Shaji Nanoo, whose deposition, again pursuant

18   to agreement of the parties, has been scheduled for December 3,

19   4, and 5.

20   Have I got that right, Patricia?

21   **MS. BOLLMAN:**  Correct.

22   **THE COURT:**  Any objection?

23   So we will add a special deadline for those two

24   depositions.

25   **MS. BOLLMAN:**  Thank you, Your Honor.

| | | |
|---|---|---|
| 02:13:48 | 1 | MR. GRIMSAL:  Thank you, Judge. |
| 02:13:49 | 2 | THE COURT:  Anything else? |
| 02:13:52 | 3 | Well, good job, Philip. |
| 02:13:58 | 4 | The *Thomas* case, we don't have any deadlines in |
| 02:14:07 | 5 | that case.  Who represents the *Thomas* -- |
| 02:14:11 | 6 | MR. WERNER:  Your Honor, it's myself and Meredith |
| 02:14:13 | 7 | Stewart. |
| 02:14:14 | 8 | THE COURT:  Hi, Meredith.  How are you? |
| 02:14:18 | 9 | MS. STEWART:  Hi. |
| 02:14:18 | 10 | THE COURT:  And there are 30 plaintiffs in that case. |
| 02:14:20 | 11 | MR. WERNER:  Yes, ma'am. |
| 02:14:22 | 12 | THE COURT:  So I had asked you all to send me the |
| 02:14:30 | 13 | list of trials that are scheduled anywhere, here or Texas. |
| 02:14:41 | 14 | THE JUDICIAL ASSISTANT:  Your Honor, we have a |
| 02:14:42 | 15 | late-comer, Steven Raptis. |
| 02:14:45 | 16 | THE COURT:  Hi.  How are you? |
| 02:14:46 | 17 | MR. RAPTIS:  Sorry, Your Honor.  The joys of air |
| 02:14:48 | 18 | travel. |
| 02:14:50 | 19 | THE COURT:  Steven, remind me who you represent. |
| 02:14:52 | 20 | MR. RAPTIS:  The *Devassy* plaintiffs. |
| 02:15:06 | 21 | THE COURT:  I know I have the list in here somewhere. |
| 02:15:15 | 22 | MR. HOWARD:  That's it. |
| 02:15:17 | 23 | THE COURT:  I was looking at July of 2016 to schedule |
| 02:15:23 | 24 | a trial in the *Thomas* case, and I thought one way to approach |
| 02:15:34 | 25 | this would be just pick a trial date today, and then we will do |

a scheduling order and send it with our regular kind of time periods.

I will get your thoughts about it.  Another idea would just be to pick a trial month so that you all can put it on your calendar, but wait until next year to send out a scheduling order.  I don't know if it makes much difference one way or the other.

Does anybody have any thoughts or reasons why it would be better to do it one way or another?

If you have got 30 plaintiffs, whatever, we can't do all those plaintiffs, but why don't I pick a trial date and then set a date for you all to talk about what kind of grouping would make sense.  If you all can communicate with each other and agree, then you let me know.  If you can't agree, then let me know what the disagreement is and we will figure it out at the next status conference.

In terms of a trial date -- I assume you all don't have anything on your 2016 calendars.

MR. CERNIGLIA:  I have on mine, Your Honor, June 1 -- and I might have put it in wrong -- as the *Devassy* trial date. I may have put it in wrong.

THE COURT:  Here on your list, Alan, it's May 2.

MR. HOWARD:  It's May 2, 2016.  I have a high school graduation in June of 2016, but that's not --

THE COURT:  Well, we are talking July.  Anybody who

02:18:05   1   says they just have no dates in July of 2016, we have a

02:18:10   2   problem.  So let's see.  July 4 is on a Sunday.  Let's start

02:18:18   3   July 12.  We'll assume what we have for the others of one

02:18:31   4   month, so we'll fill in the dates for that.

02:18:36   5            Let's see.  How long will it take you all to

02:18:39   6   tell me who you think the plaintiffs will be in the first

02:18:44   7   trial?

02:18:45   8            MR. WERNER:  I would need to talk to the Kaye Scholer

02:18:46   9   co-counsel, but I don't think it would necessarily take very

02:18:52  10   long.  I'm not sure it's critically important at this juncture

02:18:56  11   to do it quickly.

02:18:57  12            THE COURT:  No.  Why don't I say by December 31.

02:19:12  13            MR. CERNIGLIA:  How many plaintiffs are being tried

02:19:13  14   in the *Devassy* case?

02:19:16  15            MR. RAPTIS:  Thirteen.

02:19:19  16            MR. CERNIGLIA:  If that takes a month to do -- and it

02:19:22  17   seems like it would take probably a little bit longer than

02:19:23  18   *David* -- that's only going to give us a little bit longer

02:19:25  19   than -- 40 days to try and get ready.  It looks like things

02:19:34  20   will be coming up, motions and stuff like that.

02:19:38  21            THE COURT:  We are just going to set these and we are

02:19:40  22   going to see what happens.  You all are going to be experts at

02:19:46  23   this by then.  We are going to have decided everything that can

02:19:49  24   possibly be decided.

02:19:53  25            So *Thomas* is going to be July 12, and by

1    December 31 the names of the plaintiffs.

2          **MR. WERNER:**  Your Honor, how many plaintiffs should

3    we be aiming for to set for the first trial?

4          **THE COURT:**  10-ish unless there's -- like if there's

5    12 that are a great grouping, that would be fine too.

6          **MR. SHAPIRO:**  Are all the parties going to have some

7    input as to which plaintiffs are chosen?

8          **THE COURT:**  Yes.  I want you all to try to agree.

9    But if you can't, then tell me what the disagreement is and we

10   will talk about it at our next status conference and resolve

11   it.

12          *Achari*, we need to set trial dates for some

13   additional plaintiffs.  I'm going back to the beginning now.

14   So there are seven plaintiffs remaining in *Achari*.

15          **MR. HOWARD:**  Actually, that's *David*.

16          **THE COURT:**  *David*.  I do mean *David*.

17          I was thinking September.  I don't want the

18   Texas judges to think I'm hogging everything or to try to -- at

19   least you all have some time, and so would I, in between

20   trials.

21          I wonder what Labor Day is.  Isn't that the

22   first Monday, which would be September 5, so we don't want to

23   do it then.  Let's start September 12.

24          And then the *Achari* plaintiffs, there are 37

25   left.  I'm looking at November.  Again, we will need to decide

02:22:07  1    who those plaintiffs would be.

02:22:13  2              MR. ROUX:  Your Honor, is this November of 2016?

02:22:16  3              THE COURT:  Yes.

02:22:18  4                  So let's do that November 8, and by January 31

02:22:29  5    you all tell me who you think the plaintiffs would be.

02:22:41  6              MR. CERNIGLIA:  November 8, 2016, I believe, is going

02:22:43  7    to be the presidential Election Day voting.

02:22:49  8              THE COURT:  Tuesday, I guess, is November 9.

02:22:53  9              MR. CERNIGLIA:  I think you said the 8th?

02:22:54  10             THE COURT:  Isn't the 8th a Monday?

02:22:58  11             MR. CERNIGLIA:  No, it's Tuesday.

02:22:58  12             THE COURT:  You're right.  It would be November 7.

02:23:01  13   What if we started October 31, started the previous Monday?

02:23:11  14   Then we would just take off Election Day.  So let's make it

02:23:16  15   October 31.

02:23:32  16                 Then we have one more, *Chakkiyattil*.  So I guess

02:23:43  17   we would have to go to January of 2017.  This is ridiculous.  I

02:23:52  18   don't have that calendar.  Well, I do.  Let's put January 10.

02:24:10  19             MR. CERNIGLIA:  That's a Tuesday.  Do you want to

02:24:12  20   start on a Monday?

02:24:14  21             THE COURT:  Yes.  January 9.  You know what, I keep

02:24:16  22   thinking the first day they are showing is Sunday, but the

02:24:19  23   first day they are showing is Monday.  You know, some calendars

02:24:23  24   start Sunday and some start Monday.  So January 9.

02:24:29  25                 There is no rush to pick these plaintiffs, but

02:24:31  1   just so we will have a deadline in place, let's put by March 31

02:24:45  2   you all will tell me what group of plaintiffs you think they

02:24:50  3   will have.

02:24:56  4                   Anything else we need to do about that?  That

02:24:59  5   won't take care of everybody, but that's as far into the future

02:25:02  6   as we can see.  Anything else we need to talk about on that?

02:25:13  7         MR. GRIMSAL:  Judge, there is one other issue we

02:25:15  8   wanted to bring to the Court's attention and that regarded the

02:25:20  9   plaintiff-specific expert reports for attorneys' fees.  We were

02:25:25  10  a little bit unsure as to when you wanted the plaintiffs in the

02:25:33  11  *Achari* cases to submit those.

02:25:36  12                  We understood that in *David* they were to be

02:25:39  13  submitted after the trial.  We have been blithely assuming the

02:25:45  14  same rule was going to apply to our cases, but we thought it

02:25:50  15  would be a good thing, not only for us but for Signal as well,

02:25:53  16  to know whether that's going to be the case.

02:25:56  17        THE COURT:  So, in other words, if you prevail --

02:26:00  18        MR. GRIMSAL:  Right.

02:26:00  19        THE COURT:  -- your motion for attorneys' fees in all

02:26:01  20  the --

02:26:04  21        MR. GRIMSAL:  So we don't have to disclose attorneys'

02:26:07  22  fee experts until after the trial is the question.

02:26:10  23        THE COURT:  Right.  Any objection to that?

02:26:11  24                  So let's see.  Maybe in the scheduling order

02:26:18  25  that applies to all the consolidated cases -- we have

02:26:28   1   plaintiffs' expert reports and defendant expert reports in the

02:26:34   2   order that applies to all the consolidated cases.  So we could

02:26:38   3   put -- let's see.  How did we do it in the *David* case?  Did I

02:26:47   4   put it in the scheduling order or we just talked about it?

02:26:50   5           MR. WERNER:  I don't believe that was in the

02:26:51   6   scheduling order.

02:26:52   7           MR. HOWARD:  I don't think it made it into the

02:26:54   8   scheduling order.  That was just discussed at our last

02:26:56   9   conference.  We disclosed who our expert is.  You asked for

02:27:01   10  some discussion around the fee issue, which claims

02:27:07   11  automatically gave rise to fees, which ones were discretionary.

02:27:10   12  And it was in the context of that conversation that we agreed

02:27:14   13  that it would be premature, before we could even get the work

02:27:18   14  done for trial, to put in numbers and calculations unless and

02:27:21   15  until we prevail, but it never made it into the scheduling

02:27:25   16  order.

02:27:29   17          MR. COLBY:  In the *Achari* cases, Your Honor, we have

02:27:30   18  identified an expert.  So we are really just talking about when

02:27:33   19  the reports would be due.

02:27:40   20          THE COURT:  So I'm going to put in the *David* case

02:27:41   21  "excluding experts regarding attorney fees," and I will put

02:27:49   22  that in the consolidated cases also.  That will clarify that

02:28:04   23  you don't have to do that at this time.

02:28:06   24          MR. GRIMSAL:  Thank you, Judge.

02:28:09   25          THE COURT:  Anything else of that nature?

02:28:21    1          The trial plaintiffs in the *Achari* and the

02:28:25    2    *Chakkiyattil* cases -- the *Achari* plaintiffs, there was an

02:28:37    3    e-mail where you all told me who those plaintiffs were going to

02:28:40    4    be, and I think you gave them all a copy.  I realized I had

02:28:45    5    never put it on the record.  It was just in an e-mail and so I

02:28:51    6    wanted to clarify it.

02:28:53    7          THE LAW CLERK:  Take one.  There's only 10 of each

02:28:56    8    e-mail, so take one and pass if you need one.

02:29:08    9          THE COURT:  You all remember these e-mails well.  So

02:29:16   10    my plan is -- I did make a list and I attached the e-mails, and

02:29:23   11    I want to attach this to the minute entry for today.  So I want

02:29:28   12    to be sure everybody is in agreement.  It's *Achari* and

02:29:35   13    *Chakkiyattil*.

02:29:38   14          How does he say it?

02:29:42   15          MR. HOWARD:  Chakkiyattil.

02:30:03   16          THE COURT:  The e-mail is attached.  Anybody have any

02:30:33   17    corrections or have we correctly represented this?

02:30:39   18          So I'm going to attach the list I made and the

02:30:44   19    e-mails to the minute entry so that we will be clear about who

02:30:51   20    the plaintiffs are in those cases, and maybe we will refer to

02:30:57   21    that in the scheduling order.

02:31:05   22          The pending motions, let's see if there's

02:31:09   23    anything I want to talk about that's more fun than that before

02:31:13   24    we get to that.  I don't think so.

02:31:20   25          So we have the motion for the protective order

by Signal -- well, let me say first about the -- this has to do with the ESI documents that Signal claims are privileged, and so those have been provided to me and I'm in the process of reviewing that.  I don't have a decision yet.

That motion was not filed in the *Thomas* case, but I believe that I told you all at a status conference that the documents wouldn't be provided to *Thomas* either until this was decided, but that the other documents that the *Thomas* lawyers have access to were subject to all the protective orders and confidentiality agreements that are in place.  I think everybody is in agreement with that.

MR. WERNER:  Yes, ma'am.

THE COURT:  Signal wrote a letter to me that described how they selected the documents and that was sent to all of you.  So that's the basis of what I'm reviewing and trying to decide whether or not they should be privileged.  I haven't finished looking at that yet.

The motions for partial summary judgment on choice of law that were filed in the *David* and the *Achari* cases, those -- well, I've been looking at those in preparation for today just so we could at least discuss them in general and it maybe would be helpful to me.  What I tried to do was figure out where you all were in agreement.

I believe that everybody agrees that Louisiana choice of law rules apply.  Is that correct?

02:33:52    1          **MR. WEINBERGER:**  Your Honor, you had the *Ferens* issue

02:33:54    2   that you were dealing with.  So that would preclude --

02:33:55    3          **THE COURT:**  Well, the Louisiana choice of law rules,

02:33:58    4   though --

02:34:01    5          **MR. WEINBERGER:**  In *David* clearly.  The question was

02:34:04    6   in *Achari*, was it not, Judge?

02:34:06    7          **THE COURT:**  Well, it was in both.

02:34:09    8          **MR. WEINBERGER:**  Well, *David* was filed here, so the

02:34:10    9   application of Louisiana codal provisions on choice of law is

02:34:14   10   clear.  It was the cases that were transferred that gave rise

02:34:17   11   to the question concerning the *John Deere* case, Judge.

02:34:20   12          **THE COURT:**  Right.  And you all said it was -- didn't

02:34:22   13   Signal say that it's not a § 1404(a), it's --

02:34:27   14          **MR. WEINBERGER:**  Right.  We said that it's a

02:34:29   15   first-filed rule transfer, and for a variety of reasons we

02:34:34   16   explained the *John Deere* rule doesn't apply.  That was what we

02:34:37   17   said.

02:34:37   18          **THE COURT:**  So the Louisiana choice of law rules

02:34:39   19   would apply.  I don't have to apply Mississippi's law; instead

02:34:43   20   I apply Louisiana choice of law rules.

02:34:45   21          **MR. WEINBERGER:**  Assuming you agree, Judge, with our

02:34:46   22   view.

02:34:47   23          **THE COURT:**  I don't think anybody disagreed with that

02:34:50   24   concept.  So I'm asking, did anyone disagree that --

02:34:57   25          **MR. WEINBERGER:**  It's certainly the avowed position

02:34:59   1    of the transferred plaintiffs that Mississippi law governs the

02:35:03   2    choice of law analysis for the Mississippi cases.

02:35:08   3               MR. COLBY:  That's correct.

02:35:08   4               MR. WEINBERGER:  That is their avowed position,

02:35:08   5    Your Honor.

02:35:08   6               MR. COLBY:  Because the cases were filed in

02:35:10   7    Mississippi, Mississippi choice of law would govern that.

02:35:14   8               MR. WEINBERGER:  Indeed.

02:35:14   9               THE COURT:  As you can see, I have not read

02:35:18   10   everything fully.

02:35:19   11              MR. COLBY:  It's been a while since I have read them

02:35:21   12   myself, Your Honor.

02:35:21   13              THE COURT:  So let's stick with the *David* case.

02:35:23   14   Everybody agrees in *David*?

02:35:25   15              MR. WEINBERGER:  Absolutely, Your Honor.

02:35:28   16              MS. TSU:  That's right, Your Honor.

02:35:29   17              MR. WEINBERGER:  And even agrees that Indian law

02:35:32   18   applies to certain claims.

02:35:35   19              THE COURT:  Really, I guess I just need to talk about

02:35:36   20   the *David* case right now.  So in *David* I believe that Signal

02:35:41   21   and the plaintiffs agree that Indian law applies to --

02:35:48   22              MR. WEINBERGER:  Fraud and negligence.

02:35:49   23              THE COURT:  Let me say it the way I have it written

02:35:52   24   down.

02:35:53   25              MR. WEINBERGER:  Sorry, Your Honor.

02:35:53  1    **THE COURT:**  Fraud against Signal, Burnett, and Dewan;
02:35:57  2    fraudulent/negligent misrepresentation against Signal, Burnett,
02:36:02  3    and Dewan; and breach of contract against Burnett and Dewan but
02:36:09  4    not Signal.
02:36:13  5        **MS. TSU:**  Or J&M, Your Honor.
02:36:18  6        **THE COURT:**  Is that correct?
02:36:20  7        **MS. TSU:**  It's been a while since I read them,
02:36:23  8    Your Honor, but that is what I remember.
02:36:25  9        **MR. WEINBERGER:**  Yes, Your Honor.
02:36:34  10       **THE COURT:**  Now, do Burnett or Dewan disagree with
02:36:38  11   that?
02:36:38  12       **MR. CERNIGLIA:**  I don't think it's been shown that
02:36:40  13   there is a difference between Louisiana law and Indian law on
02:36:48  14   fraud or breach of contract.  From what they have submitted, I
02:36:55  15   don't know if it's even enough to make the determination.
02:36:58  16       Under the Fifth Circuit precedent interpreting
02:37:00  17   Louisiana choice of law and the Louisiana Supreme Court on
02:37:03  18   choice of law, that decision has to be made first if there is,
02:37:08  19   in fact, a difference, and I think it becomes important when it
02:37:13  20   comes time to charge the jury.
02:37:17  21       From what little I have seen of what was
02:37:20  22   submitted for the fraud and breach of contract, it was just a
02:37:23  23   written statute.  It does not seem to be different, fraud or
02:37:28  24   breach of statute, from Louisiana, and all of Louisiana's
02:37:33  25   jurisprudential interpretations would go along with it.  That's

something we all know about and can put our hands on.  That's
my position.

THE COURT:  Go ahead, Mr. Shapiro.

MR. SHAPIRO:  I agree with Mr. Cerniglia.  How do we
know what Indian law is and how to apply it?  Are we talking
about simply codal provisions of Indian law?  Are we talking
about the jurisprudence, the whole body of Indian law?  There
are states in India.  There is national.  We don't know, and
that's a very, very -- a jury is going to have to be instructed
on these things, and all the nuances need to come out.

MR. HOWARD:  I think, in the first instance, that we
did point out distinctions between Louisiana and Indian.  There
were some similarities between Indian law and Mississippi law
which led to our view that you could end up applying either one
without much distinction.

As far as Mr. Shapiro's question is concerned,
that's why we put in an expert on Indian law report.  This is
what's covered by Rule 44.1 in the Federal Rules, that
Your Honor can take notice of the expert's report.  You can do
your own research.  You can have a hearing.  You can really
address it in any way you want in order to make the
determination as to how to charge the jury on the elements of
the claims.  They are going to be very similar to what the
elements would be if we were charging under Mississippi law.
The breach of contract elements are very similar.  The fraud

1   elements are very similar.

2             We provided the other parties an exchange of

3   expert report.  We can provide the Court with an Indian law

4   expert's report which lays out what those elements are.

5             THE COURT:  It seems like there are two different

6   stages of this.  To go through the choice of law analysis, I

7   don't have to have the jury charges.  I just need to know that

8   the laws are different, so I have to go to the next stage.

9   When we get to charging the jury, then we will get very

10  particular about it.

11            Do you disagree with that statement?

12            MR. CERNIGLIA:  No, I agree with that statement,

13  Your Honor.  We do not need to do that at this stage, jury

14  charges at this time.

15            Just my concern is, is there a difference in --

16  it seemed when I read that -- of course, I read through it with

17  a thousand other things.  I didn't know that I really saw that

18  big a difference for fraud.

19            THE COURT:  I looked at one of the documents recently

20  and he said things like Indian law allows punitive damages.

21            MR. HOWARD:  Allows emotional distress damages for

22  fraud, allows certain things --

23            THE COURT:  There were some requirements for proving

24  a claim that were different.  So I did see --

25            MR. CERNIGLIA:  I remember the punitive damages.  I

02:40:41  1   guess I wasn't certain whether that's a part of fraud, but --

02:40:46  2       MR. HOWARD:  Under Indian law it is, and emotional

02:40:50  3   distress damages for fraud under Indian law is available.  So

02:40:54  4   there are significant --

02:40:56  5       MR. CERNIGLIA:  Was that statutory or was that a case

02:40:58  6   that your expert cited?

02:41:01  7       MR. HOWARD:  That, offhand, I don't know.  I would

02:41:02  8   have to go back and look at our expert's report.  You should

02:41:07  9   have received that.

02:41:08  10       MR. CERNIGLIA:  I did receive --

02:41:10  11       MR. SHAPIRO:  Which expert was that?

02:41:11  12       MR. HOWARD:  Is her name Sharma?  Sharma.

02:41:15  13       MR. CERNIGLIA:  I remember the punitive damages issue

02:41:17  14   and emotional, but I seem to recall it was a case being cited.

02:41:21  15   I'm not sure.

02:41:24  16       THE COURT:  Who else has an Indian law expert?  Does

02:41:27  17   Signal?

02:41:31  18       MR. WEINBERGER:  Not yet, Your Honor.

02:41:34  19       THE COURT:  Have you taken a position on whether

02:41:36  20   there are differences between Indian law and Louisiana or

02:41:40  21   Mississippi?

02:41:41  22       MR. WEINBERGER:  Yes, Your Honor.

02:41:43  23       THE COURT:  And your position is that there are

02:41:45  24   differences?

02:41:45  25       MR. WEINBERGER:  Yes.  There's a very fundamental

| | |
|---|---|
| 02:41:47 | 1 |
| 02:41:51 | 2 |
| 02:41:55 | 3 |
| 02:41:59 | 4 |
| 02:42:01 | 5 |
| 02:42:03 | 6 |
| 02:42:07 | 7 |
| 02:42:11 | 8 |
| 02:42:17 | 9 |
| 02:42:17 | 10 |
| 02:42:22 | 11 |
| 02:42:25 | 12 |
| 02:42:30 | 13 |
| 02:42:32 | 14 |
| 02:42:37 | 15 |
| 02:42:41 | 16 |
| 02:42:44 | 17 |
| 02:42:48 | 18 |
| 02:42:48 | 19 |
| 02:42:50 | 20 |
| 02:42:53 | 21 |
| 02:42:54 | 22 |
| 02:42:56 | 23 |
| 02:42:58 | 24 |
| 02:43:04 | 25 |

difference that can't be resolved.  The Indian Contract Act --
I'm not equipped to talk about whether the Indian Contract Act
applies in every state in India.  I have a sense that it may.
Whether it does or it doesn't, the --

MR. CERNIGLIA:  What about every state of India?

MR. WEINBERGER:  Correct.  What is absolutely clear
is that under the Indian Contract Act, as in the Louisiana
Civil Code, if a contract is *contra bonos mores*, there is no
contract.

Our argument is that it seems like the most
sensible thing in the world to take the position -- since it's
so obvious that the contract that's being used as a basis for a
common law claim against Signal in this case is obviously an
implied contract, there is no written contract, it seems the
most normal, sensible thing in the world to take the position
that the law that is applicable to the question of whether a
contract was formed in India is Indian law.  The reason why
it's different --

THE COURT:  You're talking about something different
than what I am.  I just want to know if you think the law is
different.

MR. WEINBERGER:  There is a very specific reason why
it's different, Judge.  In order to get to that question, one
has to consult Indian public policy.  Not Mississippi public
policy.  Not Louisiana public policy.  Indian public policy.

| | | |
|---|---|---|
| 02:43:08 | 1 | So it is innately different. |
| 02:43:10 | 2 | THE COURT:  If Indian law applies. |
| 02:43:13 | 3 | MR. WEINBERGER:  If Indian law applies. |
| 02:43:16 | 4 | THE COURT:  Are the laws about formation of contracts |
| 02:43:20 | 5 | different in India and Louisiana and Mississippi? |
| 02:43:24 | 6 | MR. WEINBERGER:  But, Your Honor, if the question of |
| 02:43:26 | 7 | whether a contract is formed turns, as it does under the Indian |
| 02:43:30 | 8 | Contract Act, on whether the contract violates the public |
| 02:43:33 | 9 | policy law of India, the question is sort of indigenous by |
| 02:43:38 | 10 | nature.  They are all interrelated. |
| 02:43:40 | 11 | THE COURT:  You're saying no matter whether it's |
| 02:43:42 | 12 | Louisiana or Mississippi, Louisiana and Mississippi would also |
| 02:43:44 | 13 | look to see whether the public policy of India is violated by |
| 02:43:52 | 14 | the formation of the contract? |
| 02:43:56 | 15 | MR. WEINBERGER:  Your Honor, I hadn't really thought |
| 02:43:58 | 16 | about whether Mississippi law would look at Indian law to |
| 02:44:01 | 17 | answer a question concerning Indian public policy to determine |
| 02:44:05 | 18 | whether a contract was formed in India. |
| 02:44:11 | 19 | THE COURT:  You're like one step down the road from |
| 02:44:14 | 20 | me.  Before you get to thinking about whether -- you first look |
| 02:44:19 | 21 | at the conflicts rules and say which law applies.  And then |
| 02:44:24 | 22 | when you pick that law, then you say, okay, and since it's |
| 02:44:28 | 23 | Indian law, part of the analysis is would it offend the |
| 02:44:36 | 24 | public -- |
| 02:44:37 | 25 | MR. WEINBERGER:  Your Honor, my response is that one |

02:44:40   1   of the reasons one knows that Indian law controls this issue is
02:44:46   2   because part of the analysis, the whole picture, has within it
02:44:53   3   this question of whether it would violate Indian public policy
02:45:00   4   to say that a contract was formed in India.  The entire claim
02:45:04   5   depends on the idea that an implied contract was formed with
02:45:08   6   Signal in India, Judge.  That's what the theory is.
02:45:15   7            MR. CERNIGLIA:  Can I just throw one more thing out
02:45:17   8   just as a clarification?  Everybody agrees that the choice of
02:45:23   9   law decision, Louisiana choice of law, whether it's a
02:45:28   10   difference or not, applies each to different claims separately.
02:45:32   11   In other words, just because the contract may be Indian, may be
02:45:35   12   different, doesn't mean that that automatically follows that
02:45:39   13   fraud is or any of your other claims.
02:45:40   14            MR. HOWARD:  You're talking just about the state
02:45:42   15   common law claims, obviously?
02:45:46   16            MR. CERNIGLIA:  Yes.  I'm not talking about --
02:45:46   17            MR. HOWARD:  I didn't know what you were saying about
02:45:46   18   all the claims.  I think, if I understand what you are saying,
02:45:49   19   that's correct.
02:45:52   20            MR. CERNIGLIA:  Okay.
02:45:52   21            THE COURT:  But you look at each one separately.
02:45:56   22            MR. CERNIGLIA:  Separately, yeah.  So my point is
02:45:57   23   that's the first thing for each one -- the first for each one
02:46:00   24   is:  Is there a difference?  And if there is, then you do the
02:46:04   25   analysis of which has the most contacts.  And that's going to

| | |
|---|---|
| 02:46:07 | 1 |
| 02:46:13 | 2 |
| 02:46:15 | 3 |
| 02:46:18 | 4 |
| 02:46:19 | 5 |
| 02:46:20 | 6 |
| 02:46:21 | 7 |
| 02:46:23 | 8 |
| 02:46:28 | 9 |
| 02:46:29 | 10 |
| 02:46:31 | 11 |
| 02:46:35 | 12 |
| 02:46:38 | 13 |
| 02:46:43 | 14 |
| 02:46:47 | 15 |
| 02:46:49 | 16 |
| 02:46:51 | 17 |
| 02:46:54 | 18 |
| 02:46:57 | 19 |
| 02:46:59 | 20 |
| 02:47:02 | 21 |
| 02:47:08 | 22 |
| 02:47:11 | 23 |
| 02:47:13 | 24 |
| 02:47:14 | 25 |

1  depend also -- the facts of contracts and fraud could be
2  different considerations.
3       THE COURT:  You're saying Alan only talked about
4  contract?
5       MR. CERNIGLIA:  Well, he was just talking about the
6  difference.
7       THE COURT:  The difference with contract law, and he
8  also has to distinguish fraud.  But one thing, he did make some
9  points about how the fraud --
10       MR. HOWARD:  Actually, I think I addressed the fraud
11  issue and not particularly the contract.  The contract claims,
12  I think we have a difference of view.  The contract claims, I
13  believe our view is Indian law applies only to contracts that
14  were formed in India, mainly with defendants Dewan and Burnett
15  because those were formed there.
16       The contracts with Signal, the offer of
17  employment was drafted in Mississippi.  The employment contract
18  was in Mississippi.  We are saying Mississippi law applies to
19  the contracts with Signal.
20       I'm not exactly sure what implied, in fact,
21  contract Mr. Weinberger was talking about that is governed in
22  India, but we have specific contract claims against Signal
23  based on Mississippi contracts.
24       THE COURT:  All right.
25       MR. HOWARD:  As far as the difference on the contract

02:47:17  1   like for choice of law analysis, I have to go back to the

02:47:19  2   papers and look at it, Your Honor.  I don't want to speculate.

02:47:24  3        MR. CERNIGLIA:  There's another problem that I'm not

02:47:25  4   in a position to be able to address, but all of the written

02:47:29  5   contracts specify a choice of a state of Indian law.  And as I

02:47:36  6   understand it, the state -- that India is pretty much the same

02:47:39  7   as the state and federal.  You have state laws and

02:47:43  8   jurisprudence and you have federal law.

02:47:47  9        MR. HOWARD:  I'm not sure that's right.

02:47:49  10        MR. CERNIGLIA:  I'm certainly not an expert, just

02:47:50  11  what I was told --

02:47:51  12        MR. HOWARD:  No, I'm not sure that's right about the

02:47:54  13  contracts, what they say.

02:47:55  14        MR. CERNIGLIA:  The contracts all say the state of

02:47:56  15  something.

02:47:57  16        MS. TSU:  Many of the contracts do say the State of

02:47:59  17  Maharashtra, India, or the County of Jackson, Mississippi.

02:48:05  18  However, our expert on Indian law does address that, and the

02:48:10  19  Indian Contract Act applies to the whole nation of India.

02:48:16  20  Individual states don't have their own contract law.  It's just

02:48:19  21  like the County of Jackson, Mississippi, doesn't have its own

02:48:23  22  contract law.  It is, in fact, ruled by the contract law of the

02:48:27  23  State of Mississippi.

02:48:30  24        MR. CERNIGLIA:  I understood the states of India

02:48:32  25  could have their own law just like the State of Louisiana has

| | |
|---|---|
| 02:48:35 | 1 |
| 02:48:38 | 2 |
| 02:48:42 | 3 |

1    its contract laws which are different from the State of

2    Mississippi contract laws and different from any federal common

3    law.

4              MS. TSU:  They may, indeed, on certain claims that

5    are not at issue in this case, but in terms of the -- if you

6    look at our Indian law expert, that might clarify it.

7              MR. HOWARD:  Would it be helpful for us to submit

8    that report to you, Your Honor?

9              THE COURT:  Well, I think what I would like is for

10   you within, say, a week from tomorrow -- whatever next Friday

11   is, November 7 -- give me a supplemental memo about what the

12   differences are so that we can satisfy that step of the

13   analysis, and attach the report to it.  Then anyone who wants

14   to respond to that will have a week to do that.  Then we will

15   either have established there are some differences or we won't.

16             MR. SANDLER:  For each cause of action?

17             THE COURT:  Yes, that you want me to go through the

18   conflicts analysis on.

19             MR. SHAPIRO:  Would that include jurisprudential

20   interpretation of the acts in India?

21             THE COURT:  Well, if that's the way they are

22   explaining why it's different, then it has to, whatever you

23   need to show for me to be satisfied that the laws are

24   different.

25             MR. WEINBERGER:  I wonder if I can --

| | |
|---|---|
| 02:50:10 | 1 |
| 02:50:19 | 2 |
| 02:50:22 | 3 |
| 02:50:25 | 4 |
| 02:50:29 | 5 |
| 02:50:31 | 6 |
| 02:50:33 | 7 |
| 02:50:37 | 8 |
| 02:50:41 | 9 |
| 02:50:44 | 10 |
| 02:50:47 | 11 |
| 02:50:51 | 12 |
| 02:50:55 | 13 |
| 02:50:58 | 14 |
| 02:50:59 | 15 |
| 02:51:06 | 16 |
| 02:51:10 | 17 |
| 02:51:11 | 18 |
| 02:51:12 | 19 |
| 02:51:14 | 20 |
| 02:51:16 | 21 |
| 02:51:17 | 22 |
| 02:51:22 | 23 |
| 02:51:27 | 24 |
| 02:51:29 | 25 |

1    **THE COURT:**  Let me make sure I am straight on where I
2    am, but at least we know we do have some agreement between
3    Signal and the plaintiffs.
4         I want to look at other things.  Are you moving
5    on to another topic?
6         **MR. WEINBERGER:**  I just wanted to put on the table
7    the question.  I wonder if the *David* plaintiffs can be asked,
8    in the document they are about to give you, to clarify one
9    central point.  Is it not true that the common law claim, the
10   breach of contract theory in the *David* complaint against
11   Signal, is based on an implied -- not a written contract, but
12   an implied contract?  If we could get that agreed to or
13   clarified, it might help.
14        **THE COURT:**  Well, let me ask that.  The breach of
15   contract claim against Signal and J&M, the plaintiffs say that
16   that's Mississippi law, right, breach of contract against
17   Signal and J&M?
18        **MR. HOWARD:**  Right.
19        **THE COURT:**  Mississippi.
20        All right.  The contracts that you're talking
21   about, what are they exactly?
22        **MR. HOWARD:**  They are actually employment contracts,
23   like the offer for the $18 per hour, the employment contracts
24   that were signed when they came.
25        **THE COURT:**  So both of those --

02:51:32   1          MR. HOWARD:  Those are signed in Mississippi or were
02:51:33   2    drafted in Mississippi.
02:51:35   3          THE COURT:  There are two different things.  One is
02:51:37   4    an offer of employment --
02:51:39   5          MR. HOWARD:  Correct, which they then came and then
02:51:40   6    it was reduced to an employment contract.
02:51:43   7          THE COURT:  All right.  So the offer of employment is
02:51:46   8    not a written contract?
02:51:47   9          MR. HOWARD:  No.  Well, it's a written offer.
02:51:51   10          MR. UNGAR:  This is Hal Ungar for Signal, Your Honor.
02:51:53   11    If they are referring to an offer letter, that wasn't a
02:51:56   12    document signed by any of the plaintiffs, one.  And, two,
02:51:59   13    Your Honor, to Signal, Signal reads the complaint as pled as
02:52:04   14    alleging that plaintiffs say there was a contract between
02:52:07   15    plaintiffs and Signal with a promise for a green card.  That is
02:52:10   16    the contract to which Signal refers when it talks about an
02:52:13   17    implied contract --
02:52:13   18          MR. WEINBERGER:  Formed in India.
02:52:16   19          MR. UNGAR:  -- because there's no written contract
02:52:16   20    that says that.
02:52:17   21          When we deposed the plaintiffs, I asked all of
02:52:19   22    them, "What contract are you talking about when you are
02:52:21   23    pursuing a breach of contract claim?"  They all said to me the
02:52:23   24    promise of permanent residency or the promise of a green card.
02:52:27   25          Then I say, "Well, are you talking about the

02:52:28    1    employment contract in the United States that you signed?"

02:52:31    2            Some say, "I don't know," and some say, "No,"

02:52:33    3    but they all said that a contract with Signal -- which Signal

02:52:38    4    opposes -- but a contract with Signal was the promise for a

02:52:41    5    green card, which doesn't exist in writing, so that must be the

02:52:43    6    implicit contract.

02:52:44    7            MR. HOWARD:  Well, part of it is also through the

02:52:46    8    contracts in writing that Signal is going to sponsor every one

02:52:50    9    of these workers for a green card is with Signal's agents.

02:52:54   10    Part of that is addressed, too, through our summary judgment

02:52:58   11    motion on agency.  So there we have a written contract, but

02:53:04   12    that one would be in India but with Signal's agent and, we

02:53:08   13    would say, with the authority to make that representation.

02:53:13   14            THE COURT:  Which contract is that?

02:53:14   15            MR. HOWARD:  So that's an Indian contract.  That's

02:53:16   16    one, for example, that --

02:53:17   17            THE COURT:  Between who and who?

02:53:19   18            MR. HOWARD:  Dewan, as Signal's agent, signed that

02:53:23   19    with each of the plaintiffs.

02:53:26   20            THE COURT:  What do you all refer to that document

02:53:28   21    as?

02:53:29   22            MR. UNGAR:  A contract between Dewan and the

02:53:31   23    plaintiffs, Your Honor.

02:53:31   24            MR. HOWARD:  But then there's also a similar one with

02:53:33   25    the attorney Malvern Burnett and that one, which was signed

| | |
|---|---|
| 02:53:37 | 1 |
| 02:53:40 | 2 |
| 02:53:42 | 3 |
| 02:53:43 | 4 |
| 02:53:43 | 5 |
| 02:53:46 | 6 |

1 with each of our plaintiffs --

2          MR. CERNIGLIA:  You're talking about the attorney

3 services agreement.

4          MR. HOWARD:  The attorney services agreement.

5          MR. CERNIGLIA:  That's the one that says either

6 Indian state or Mississippi --

7          MR. HOWARD:  Was that signed in India?

8          MS. HANGARTNER:  It was signed in India.

9          MR. UNGAR:  I'll state Signal did not say sign that

10 one either, Your Honor.

11          THE COURT:  So I have Dewan and plaintiffs' written

12 contract signed in India, and Dewan was the agent of Signal.

13          MR. HOWARD:  Correct.  Signal gave Dewan power of

14 attorney -- and this is, in our view, a central issue in this

15 case, and that's why we teed it up for summary judgment.

16          I know that Signal takes the position that

17 despite their acknowledgment that they engaged the recruiters

18 here, Michael Pol, and in India Mr. Dewan, and despite the fact

19 that they separately engaged Malvern Burnett as their attorney,

20 they say they were not authorized to make the promises of the

21 green card that Signal admits was a false promise.  That's why

22 they have cross-claimed against them.

23          Our view is, as a matter of express authority,

24 implicit authority, apparent authority, every other kind of

25 authority, that these were agents of Signal and Signal is bound

02:55:06  1    by their acts and representations.

02:55:09  2            THE COURT:  So your breach of contract claim against

02:55:13  3    Signal, one of them is based on this Dewan contract signed by

02:55:17  4    Dewan and the plaintiffs?

02:55:20  5            MR. HOWARD:  Correct.

02:55:21  6            THE COURT:  What's the next?

02:55:22  7            MR. HOWARD:  One is Burnett and the plaintiffs, the

02:55:25  8    same thing.

02:55:25  9            THE COURT:  All right.  Burnett --

02:55:25 10            MR. HOWARD:  And the same thing.  That attorney

02:55:26 11    services agreement that Burnett signed with the plaintiffs said

02:55:29 12    that basically Signal is going to sponsor you for a green --

02:55:33 13    actually, this one just says Burnett is going to get you green

02:55:36 14    cards within 24 months.

02:55:40 15            MR. UNGAR:  What's not clear, Your Honor -- some of

02:55:40 16    that is a misrepresentation.

02:55:43 17            THE COURT:  I'm just trying to be sure that we

02:55:44 18    clarify what context he is talking about.  This is not a

02:55:47 19    truth-finding mission right here.

02:55:50 20            MR. UNGAR:  Thank you, Your Honor.

02:55:52 21            THE COURT:  Is it your contention that Burnett was

02:55:53 22    also an agent of Signal?

02:55:55 23            MR. HOWARD:  Absolutely.

02:55:57 24            MR. CERNIGLIA:  That does raise a question, I guess,

02:55:58 25    is which agency law, Mississippi, Louisiana, or India?

02:56:06  1          MR. SANDLER:  We do a choice of law analysis for that
02:56:08  2   in our motion for summary judgment.
02:56:12  3          THE COURT:  Let me stay on track here.  You all want
02:56:14  4   to know what contracts they are talking about and so do I.  So
02:56:17  5   that's the second one.
02:56:19  6          What other contract claims against Signal?
02:56:22  7          MR. HOWARD:  I think there is a contract claim based
02:56:24  8   on the offer and then the employment agreement.
02:56:27  9          THE COURT:  Say that again.
02:56:29  10          MS. HANGARTNER:  Global.
02:56:29  11          MR. HOWARD:  Oh, the Global one too.
02:56:34  12          Your Honor, I don't want to miss some things,
02:56:37  13   and I know I'll get Hal looking at me if I'm speaking off the
02:56:41  14   top of my head wrong.  This is laid out in excruciating detail
02:56:47  15   in our agency summary judgment motion.  I think our Rule 56
02:56:52  16   statement there is 700-something paragraphs, but all with the
02:56:58  17   documents laid out.  Our view --
02:57:00  18          THE COURT:  If you are off a little, that's fine.
02:57:04  19   Hal is not ever going to come back and scream that you said
02:57:08  20   something wrong.  We are just trying to have a discussion
02:57:11  21   here --
02:57:11  22          MR. HOWARD:  No, I understand.
02:57:12  23          THE COURT:  -- so I can understand better what the
02:57:14  24   contract claims are.  So there apparently is also an agreement
02:57:17  25   between Global and the plaintiffs?

02:57:20 1    **MR. HOWARD:**  Right -- well, yes.  And there's also an

02:57:25 2    agreement Global with Signal with Burnett with Dewan that

02:57:32 3    formed the kind of agency partnership, if you will.

02:57:39 4         **THE COURT:**  As far as contract claims against Signal,

02:57:41 5    is there one based on the contract Global signed with the

02:57:47 6    plaintiffs because Global is an agency?

02:57:49 7         **MR. HOWARD:**  I'm going to defer to Naomi.

02:57:50 8         **MS. TSU:**  The Global contract is very similar

02:57:53 9    language to that of the Dewan and the Burnett contracts, so we

02:57:58 10   might be somewhat gilding the lily here.  But that was another

02:58:01 11   set of promises, that these agents would get green cards for

02:58:07 12   plaintiffs.

02:58:09 13        **THE COURT:**  Then what other contracts are there that

02:58:12 14   you're suing Signal on?

02:58:14 15        **MS. TSU:**  There's the other ones that Mr. Howard

02:58:18 16   referenced in terms of the offer letter.

02:58:23 17             And then I think you also mentioned the

02:58:25 18   employment agreement.

02:58:26 19        **MR. UNGAR:**  By "offer letter," you mean the letter

02:58:28 20   that was given to the plaintiffs in India or abroad before they

02:58:33 21   came to the United States?

02:58:33 22        **MR. HOWARD:**  Correct.

02:58:34 23        **MS. TSU:**  That's right.

02:58:34 24        **THE COURT:**  It was signed by Signal --

02:58:35 25        **MR. HOWARD:**  Correct.

02:58:35  1          **MS. TSU:**  That's right.

02:58:37  2          **MR. UNGAR:**  But not the plaintiffs.

02:58:39  3          **THE COURT:**  Is it directed to a plaintiff

02:58:40  4    individually?

02:58:41  5          **MR. HOWARD:**  Individually, yes.  Each plaintiff

02:58:44  6    individually received one.

02:58:47  7          **MR. UNGAR:**  Yes.

02:58:48  8          **MR. HOWARD:**  The promise in there isn't a green card.

02:58:50  9    The promise in there is an $18-an-hour wage.  And to the extent

02:58:57 10    that some of the workers then had their wages reduced when they

02:59:01 11    came to the U.S., that would be a breach.

02:59:04 12          **THE COURT:**  Okay.  Then the fifth one is the

02:59:07 13    employment agreement?

02:59:07 14          **MR. HOWARD:**  The employment agreement.  And I'm not

02:59:09 15    sure, as I sit here, what actual breaches we are saying.  Our

02:59:14 16    view of the employment agreement, we understand it was

02:59:17 17    termination at will and it was -- our view is it was a kind of

02:59:22 18    "sign or go back to India" situation.  So I don't think there's

02:59:25 19    any provisions in there we say that were breached.  So I don't

02:59:29 20    think that's a part of the breach of contract claim.  So I

02:59:32 21    might have misspoken.

02:59:36 22          **THE COURT:**  Okay.  So there is a contract but not

02:59:39 23    breached.

02:59:39 24          **MR. HOWARD:**  Correct.  It's relevant to some of our

02:59:44 25    other claims.

02:59:45　1　　　　　　**THE COURT:**  So your argument about the implied is

02:59:49　2　with respect to the offer letter?

02:59:51　3　　　　　　**MR. WEINBERGER:**  Yes, Your Honor, the question of

02:59:53　4　whether that letter led to the formation of a contract, as they

02:59:58　5　just indicated, between Signal and those plaintiffs in India.

03:00:04　6　The argument we make is that the law that's applicable to that

03:00:07　7　question is Indian law, Your Honor.

03:00:09　8　　　　　　　There is a specific aspect of that letter that,

03:00:13　9　to us, evokes the issue of public policy in India, which is an

03:00:19　10　issue that we are focused on, Your Honor.  That's why we care

03:00:21　11　about how this gets resolved.

03:00:26　12　　　　　　**THE COURT:**  Because the others, it's all Signal's

03:00:29　13　agents --

03:00:30　14　　　　　　**MR. WEINBERGER:**  That's the argument.

03:00:32　15　　　　　　**THE COURT:**  That they argue, right.

03:00:32　16　　　　　　**MR. WEINBERGER:**  That is the argument, Judge, yes, of

03:00:34　17　course.

03:00:34　18　　　　　　**THE COURT:**  So that fault rises or falls with whether

03:00:38　19　or not there was this agency relationship and what were they

03:00:41　20　authorized to do.  The other, about the offer letter, is Signal

03:00:46　21　itself, not an agent.

03:00:49　22　　　　　　**MR. WEINBERGER:**  Completely separate, but there is, I

03:00:50　23　might note, Judge, an issue that comes up here with regard to

03:00:55　24　choice of laws, which is we didn't brief -- they didn't brief

03:01:01　25　and we didn't brief the question of the law applicable to

03:01:05  1  resolving these agency issues.  That may or may not be

03:01:08  2  something you would like to get some briefing on.

03:01:10  3          MR. HOWARD:  We actually did brief it in our summary

03:01:12  4  judgment motion.

03:01:14  5          MR. WEINBERGER:  Which they just filed.

03:01:16  6          MS. HANGARTNER:  That was just filed, though.

03:01:16  7          THE COURT:  You haven't responded.

03:01:19  8          MR. UNGAR:  Your Honor, if I may, just for a moment,

03:01:21  9  an important point for Signal is that Signal did not contract

03:01:24  10  with any of the defendants in this case until 2006.  There were

03:01:29  11  contracts signed by the plaintiffs with Dewan, Pol, and Burnett

03:01:34  12  in 2003, 2004, 2005.

03:01:35  13          The plaintiffs are arguing that Signal somehow

03:01:40  14  authorized the execution of those contracts on their behalf.

03:01:42  15  So there is a line to be drawn between before Signal's

03:01:47  16  involvement and then Signal's involvement, and that's important

03:01:48  17  from Signal's perspective.

03:01:49  18          MR. HOWARD:  Just to respond, Your Honor, the

03:01:50  19  "somehow" isn't connected.  We are not arguing that somehow

03:01:55  20  they authorized the signature in 2003 or 2004.  We concede they

03:02:00  21  didn't even know those guys then.

03:02:02  22          What they did was they ratified it.  After

03:02:04  23  getting involved with them, they ratified the partnership and

03:02:08  24  the agency and the representations that had been made by

03:02:12  25  saying, "Okay.  We understand what you have told these workers

03:02:15   1   that you recruited in 2003, 2004.  We will still take them."

03:02:22   2             It's laid out again in our summary judgment.  I

03:02:25   3   don't want to argue that now.  I want them to have the

03:02:28   4   opportunity to brief.  But there is a ratification element to

03:02:30   5   the agency.

03:02:38   6             MR. UNGAR:  That's something about which we would

03:02:40   7   fight like crazy.

03:02:43   8             MR. HOWARD:  I have no doubt.

03:02:45   9             MS. TSU:  Your Honor, if I could briefly respond to

03:02:46   10  Mr. Weinberger's point about the offer letter being signed in

03:02:52   11  India or being given over in India.  That's true.  We don't

03:02:55   12  disagree that they were for the most part, if not entirely,

03:02:58   13  signed by Signal in India.

03:03:00   14            What we feel that this turns on is that under

03:03:04   15  Louisiana choice of law rules, the point of the contract

03:03:07   16  matters.  And, in fact, in the comments discussing it,

03:03:12   17  contracts, one of the examples says if, for example, the

03:03:16   18  contract at issue is an employment contract, the place where

03:03:19   19  the employment is to be carried out would weigh heavily in

03:03:23   20  terms of which state is most interested in this issue.

03:03:25   21            Here the offer letters are for employment, with

03:03:28   22  regard to these five trial plaintiffs, in Mississippi, and that

03:03:31   23  is one of the issues that we think weighs towards Mississippi

03:03:34   24  being the state there's most interest in, not to mention that

03:03:38   25  the contracts were drafted in Mississippi and signed by an

03:03:42  1    agent for the Mississippi corporation.

03:03:44  2         MR. WEINBERGER:  And we, of course, pointed out that

03:03:46  3    the Louisiana Civil Code articles make the point, Your Honor,

03:03:49  4    that when there is a question about formation, then there's

03:03:52  5    another analysis that applies.  It's all been briefed.  I don't

03:03:56  6    have to get into all of that here.

03:04:07  7         THE COURT:  The J&M, you all said Mississippi, and

03:04:12  8    they are not represented at this point.

03:04:19  9         MS. TSU:  Their contract, in fact, specifies either

03:04:22  10   Mississippi law or -- I think it also says Indian law.

03:04:28  11        THE COURT:  It didn't say how to apply that.  I think

03:04:31  12   you all made some arguments about that.

03:04:36  13             And then Signal argued that the law formation

03:04:40  14   should be Indian law, but with respect to performance it would

03:04:45  15   be Mississippi.

03:04:46  16        MR. WEINBERGER:  It makes sense, Judge.  I mean, when

03:04:48  17   they are physically in Mississippi and there is a dispute about

03:04:50  18   whether there was the kind of performance there should have

03:04:53  19   been between plaintiffs who are physically in Mississippi and

03:04:56  20   Signal which is in Mississippi, it makes sense to do that.

03:05:00  21             And then we referred to Professor Symeonides'

03:05:02  22   discussion of the French idea of *dépeçage*, or however you

03:05:07  23   pronounce that word, the idea that you subdivide these issues

03:05:10  24   if it's appropriate.  It's all briefed, Judge.

03:05:14  25        THE COURT:  What you're hoping is that Indian law

03:05:17  1   about formation of contracts is different from Louisiana law

03:05:27  2   and that under Indian law no contract would have been formed.

03:05:32  3        MR. WEINBERGER:  Again, Your Honor, to us it's

03:05:34  4   innately different because it's so local, and it's local

03:05:38  5   because it turns on a question of Indian public policy.

03:05:42  6        THE COURT:  Well, if you apply Indian law and then

03:05:46  7   part of that -- are you talking about the conflicts rule for

03:05:50  8   India deals with public policy or does -- whether a contract

03:05:55  9   was formed you also consider Indian law?

03:06:00  10       MR. WEINBERGER:  The latter, Your Honor.  The

03:06:01  11  question of whether a contract was, in fact, formed by virtue

03:06:05  12  of Indian law turns on an issue of --

03:06:08  13       THE COURT:  What is the Indian public policy against

03:06:10  14  this forming the contract?

03:06:12  15       MR. WEINBERGER:  As we would do in Louisiana, there

03:06:15  16  are issues of -- it's *contra bonos mores*.  It's against public

03:06:20  17  policy because there is an aspect to it that's immoral, which

03:06:23  18  gets us into --

03:06:23  19       THE COURT:  Which is what?  What aspect is immoral?

03:06:26  20       MR. WEINBERGER:  The fact that these people knew all

03:06:29  21  the time that they were going to make some misstatements to the

03:06:33  22  government of the United States when they were in India in

03:06:35  23  order to get to the United States in the first place.  They

03:06:37  24  always intended to do that.

03:06:39  25       THE COURT:  That the plaintiffs --

03:06:40  1          MR. WEINBERGER:  Yes.

03:06:41  2          THE COURT:  That it was immoral for the plaintiffs to

03:06:44  3   form these contracts because they intended to lie when they got

03:06:50  4   to the United States about --

03:06:52  5          MR. WEINBERGER:  No, in India.

03:06:53  6          MS. HANGARTNER:  In India.

03:06:55  7          MR. WEINBERGER:  In India.  Your Honor, the position

03:06:56  8   of Signal is that you cannot form a contract around an immoral

03:07:01  9   plan, that it violates Indian public policy in order to think

03:07:05  10  in those terms.

03:07:06  11         THE COURT:  What was the lie that the plaintiffs were

03:07:10  12  telling or planning to tell?

03:07:12  13         MR. WEINBERGER:  Part of this is in the class

03:07:14  14  certification decision, Judge.  The question was whether they

03:07:17  15  were going to be allowed to even come to the United States if

03:07:22  16  these individuals disclosed to the government that their hope

03:07:27  17  was that when they arrived in the United States they would

03:07:29  18  obtain green cards.  We have a significant body of law and

03:07:37  19  evidence to show the Court -- and again, this is in the class

03:07:40  20  certification decision -- that shows that they would not have

03:07:50  21  been allowed to leave India if they had disclosed to the

03:07:54  22  consulate that they were going to the United States in order to

03:07:56  23  get green cards.  They would never have left.

03:07:59  24              And, Your Honor, the offer letter that they rely

03:08:03  25  on in order to form a contract in India specifically said

03:08:07  1   assuming you can get out of India and to the United States

03:08:11  2   lawfully.  It said that.  So these are all bound up together,

03:08:16  3   Judge.

03:08:16  4              Your Honor, this is not the first time these

03:08:19  5   issues have arisen.  They have been around since this lawsuit

03:08:22  6   was filed, as Judge Zainey recognized when he wrote his

03:08:25  7   decision.

03:08:26  8         THE COURT:  Do you want to respond?

03:08:27  9         MR. HOWARD:  I'll respond because I think we need to

03:08:29  10  set the record straight a little bit about what facts we are

03:08:31  11  talking about here.

03:08:34  12             The workers -- and there is no debate about

03:08:37  13  this; Signal admits this in their cross claims -- were promised

03:08:40  14  green cards, and Signal says that was a false promise.  We have

03:08:44  15  those promises in writing from Mr. Dewan in an agreement with

03:08:49  16  every plaintiff.  "Signal shall sponsor every one of you for a

03:08:53  17  green card."

03:08:54  18             Signal says, "That promise was a false promise.

03:08:57  19  And Mr. Dewan, to whom we gave the power of attorney, wasn't

03:09:02  20  authorized to make that promise."

03:09:04  21             That's why they have cross-claimed against him.

03:09:07  22  When it was determined that the only way that the workers could

03:09:11  23  come to work for Signal in 2006 was on the H-2B temporary guest

03:09:17  24  worker visa, it created an issue because one of the criteria

03:09:22  25  for getting an H-2B guest worker visa is that you not have

03:09:26
03:09:31
03:09:36
03:09:39
03:09:43
03:09:49
03:09:49
03:09:52
03:09:55
03:09:59
03:10:03
03:10:10
03:10:16
03:10:20
03:10:25
03:10:27
03:10:32
03:10:40
03:10:41
03:10:46
03:10:50
03:10:53
03:10:56
03:11:01
03:11:05

1  what's called *immigrant intent*.  The person truly has to be

2  coming here to fill a temporary work need.

3            That's what the employer attests to the

4  government, that "We only have a temporary need for these

5  workers, and afterwards they are going to go back to their home

6  country."

7            And the worker has to go into the consulate and

8  when asked -- if asked "Do you have an intent to permanently

9  reside in the United States?" they have to say, "No."  If they

10  say, "Yes," there's a great risk that they don't get the visa.

11            In this situation the record is, with Signal's

12  knowledge, Mr. Burnett and Mr. Dewan's people were to coach

13  these workers:  "If you go into the consulate and if they ask

14  you whether you have an intent to get a green card, even though

15  we have made the promise you are going to get a green card,

16  even though that's what we charged you for, you can't tell the

17  consulate that."  That is what Mr. Weinberger is referring to.

18            **MS. HANGARTNER:**  With all due respect, Mr. Howard,

19  that is an oversimplification, and you're really stretching on

20  that one e-mail.

21            What Alan is saying and what the testimony has

22  been with his plaintiffs is that they knew when they were

23  processing that they could not say how much they paid.  They

24  could not say that they had intent to stay, which Mr. Howard

25  says is immigrant intent, which is true.

03:11:07  1        But they knew when they were going up to that

03:11:10  2   consulate that they couldn't tell the truth, that they had to

03:11:15  3   lie in order to pass through the consulate and get that H-2B

03:11:20  4   visa.  That's why a number of his clients had to plead the

03:11:24  5   Fifth during their depositions.

03:11:26  6        THE COURT:  The ones who testified about what they

03:11:31  7   said at the consulate and why they said it, did they say, "We

03:11:37  8   intended to stay in the United States.  We were coached not to

03:11:42  9   tell the consulate"?

03:11:44  10       MR. HOWARD:  Well, there's cases where they didn't

03:11:48  11  testify about what they actually said to the consulate.  The

03:11:52  12  record is that they were coached, and that's also a written

03:11:55  13  record.

03:11:56  14       And I may be making a lot of one e-mail, but

03:11:58  15  it's an e-mail from Michael Pol to Signal, the manager of the

03:12:04  16  man camp, saying, "We have to coach these guys what to say

03:12:09  17  because otherwise they will say the dumbest things.  If anyone

03:12:15  18  says that he expects to get a green card, he is a goner.  Even

03:12:18  19  though we will be filing for green cards for them, we can't

03:12:22  20  have them say that."  That may be one e-mail, but it's a

03:12:25  21  pretty --

03:12:26  22       MS. HANGARTNER:  And an individual testified under

03:12:29  23  oath that he never opened the e-mail.

03:12:32  24       MR. UNGAR:  And that's not what the e-mail said.

03:12:34  25       MS. HANGARTNER:  That's not what the e-mail said.

03:12:34  1    THE COURT:  You all stop.  We are going to get off
03:12:35  2  track here.  I'm just trying to understand what the argument
03:12:35  3  is.
03:12:36  4    MR. HOWARD:  I'm not going to argue the case here,
03:12:41  5  but I am responding to this issue of public policy, you know,
03:12:49  6  implied in fact contract point.  We will put in our brief what
03:12:55  7  we think the differences are next week for each of the
03:12:59  8  elements.  I think a lot of this gets simplified if we prevail,
03:13:05  9  which we think we will, on the summary judgment motion on
03:13:09  10  agency because then you are just dealing with the one set of
03:13:12  11  contracts from the agents and that's written.  There is no
03:13:17  12  implied in fact contract there.  It's the written promise.
03:13:22  13    MR. RABBANI:  Your Honor, if I may, this is Elham
03:13:22  14  Rabbani on behalf of Signal.
03:13:23  15        The agents that Mr. Howard is talking about is
03:13:25  16  an important point for Signal.  These are alleged agents that
03:13:31  17  Signal states overstepped their authority.  When he talks about
03:13:37  18  ratification, that's exactly why we have cross claims against
03:13:42  19  our alleged agents, because we had immigration counsel and
03:13:46  20  people that were supposedly experts in these fields giving us
03:13:50  21  advice; and that advice was false, and we relied on that
03:13:52  22  advice.
03:13:55  23    MR. CERNIGLIA:  Those are false allegations too.
03:13:57  24    THE COURT:  That helps me at least understand.
03:13:58  25        Did you want to say something, Mr. Shapiro?

03:13:59  1      **MR. SHAPIRO:**  No.  I just find it interesting that

03:14:02  2  both sides are doing a nice job in arguing the case right now

03:14:05  3  when we are trying to get to the issue of what laws are going

03:14:08  4  to apply.  Both sides are obviously thinking everything that

03:14:11  5  they say is gospel, and it's not.

03:14:14  6      **THE COURT:**  I know it's just argument.

03:14:18  7      **MR. SHAPIRO:**  Thank you.

03:14:22  8      **THE COURT:**  I don't know if I said this.  Also, the

03:14:24  9  plaintiffs say that the fraud and fraudulent misrepresentation

03:14:27  10  against J&M is Mississippi law.

03:14:31  11      Signal, I don't think -- have you taken a

03:14:32  12  position on that, the fraud claims against J&M?

03:14:34  13      **MR. WEINBERGER:**  Because it's J&M, we haven't,

03:14:37  14  Your Honor.

03:14:40  15      **THE COURT:**  I didn't think so.

03:14:42  16      Then the claims arising out of the March 9, 2007

03:14:45  17  incident, Signal and the plaintiffs agree that's Mississippi

03:14:52  18  law.  Do you all disagree with that?

03:14:54  19      **MR. CERNIGLIA:**  I have nothing to do with that.  I

03:14:55  20  agree with it, though.

03:15:01  21      **THE COURT:**  I thought I remembered that we weren't

03:15:05  22  trying those claims in January.  Frankly, I didn't even

03:15:10  23  remember that one of the plaintiffs was involved in that, but I

03:15:13  24  really thought I remembered that we weren't trying that.

03:15:17  25      **MR. HOWARD:**  Originally there was some discussion

1  about that, Your Honor, and then we said we weren't going to
2  try it.  And then there was discussion, "Well, it's still
3  relevant to all the other plaintiffs' claims because there's
4  the negligent infliction of emotional distress."
5          But also part of the abuse of process that we
6  allege as part of the forced labor really is built on what
7  happened, the events of March 9 and then the followup meeting
8  where Mr. Schnorr addressed the camp.
9          THE COURT:  I didn't mean that you couldn't talk
10  about it.  I just thought you weren't bringing the claim.
11          MR. HOWARD:  No, I know.  But then what happened was
12  one of the plaintiffs had to drop out, and then we were talking
13  about substituting a plaintiff in.  And we made the point that
14  this is the other plaintiff who was Mississippi-based, Jacob
15  Joseph, but he did have these individual claims for the March 9
16  incident; but since we had to address them anyway for the rest
17  of our claims, it wouldn't really complicate or add anything.
18  And you agreed, and agreed to have us put him in.  So this goes
19  back about two years.
20          So we have been doing all the discovery for
21  these claims.  That's why we even put in opposing summary
22  judgment motions on one of those claims for retaliation.  So
23  the parties totally understand that these claims have been in
24  and they're being tried in January.
25          THE COURT:  All right.

03:16:35  1          **MR. UNGAR:**  But only for one of the parties.

03:16:38  2          **MS. HANGARTNER:**  Only as to Jacob Joseph.

03:16:41  3          **MR. HOWARD:**  Jacob Joseph.

03:16:43  4          **MR. UNGAR:**  The remaining guys are in the other seven

03:16:44  5   that would be tried?

03:16:45  6          **MR. HOWARD:**  Correct.

03:16:45  7          **MS. HANGARTNER:**  And Sabulal?

03:16:46  8          **MR. HOWARD:**  Sabulal is a witness to the events.

03:16:50  9          **MS. HANGARTNER:**  Only a witness.

03:16:50  10         **MR. HOWARD:**  His claims are not being tried.

03:16:52  11         **MR. WEINBERGER:**  Your Honor, is there any chance that

03:16:53  12  you have had any sort of new thoughts about whether you want to

03:16:56  13  sever any of these claims?

03:16:58  14         **THE COURT:**  No.  We are not revisiting anything I

03:17:03  15  have decided, if I can remember it.  That's why somebody has to

03:17:07  16  remind me.

03:17:07  17         **MR. UNGAR:**  Your Honor, one question, a followup to

03:17:09  18  that question.  The pretrial order practice is going to ask us

03:17:11  19  to talk about severing quantum and liability, and I didn't know

03:17:15  20  if you had considered --

03:17:17  21         **THE COURT:**  No.

03:17:18  22         **MR. UNGAR:**  Okay.

03:17:19  23         **MR. WEINBERGER:**  Now everybody understands that the

03:17:20  24  FLSA is bifurcated, Judge.

03:17:24  25         **MS. HANGARTNER:**  Yes.

03:17:24  1    THE COURT:  Well, there are motions for summary

03:17:26  2    judgment pending.  I believe they are submitted.  I think all

03:17:33  3    the briefing is done.

03:17:35  4         Did you all end up agreeing there are no factual

03:17:38  5    disputes?  I haven't looked at those.

03:17:41  6         MR. WEINBERGER:  Not at all.  There are raging

03:17:43  7    factual disputes.

03:17:46  8         THE COURT:  Well, then, we will see.  I think the

03:17:49  9    thought originally was that if there weren't factual disputes

03:17:55  10   and it could be decided on summary judgment -- and maybe you

03:17:56  11   all think that there are no material factual disputes.

03:18:01  12        MR. HOWARD:  We think so.

03:18:02  13        THE COURT:  Maybe they will be decided.  If they are

03:18:04  14   not, I will have to figure out what to do with that.

03:18:08  15        MR. WEINBERGER:  Thank you, Your Honor.

03:18:20  16        THE COURT:  With respect to the *Achari* case -- I

03:18:24  17   guess the way I'm looking at this is I'm going to decide for

03:18:28  18   the choice of law for the five plaintiffs that are being tried

03:18:32  19   in January.  I hope that for the other *David* plaintiffs --

03:18:41  20   well, I guess there will be some differences because they are

03:18:44  21   in Texas.  So we will have to deal with that then.

03:18:48  22        I know you all briefed the *Achari* case, but I

03:18:52  23   think Signal has made the argument that it's premature because

03:18:59  24   all the plaintiff depositions are not complete.

03:19:02  25        MR. WEINBERGER:  Right.  That's what we said, Judge.

03:19:06   1          **THE COURT:**  When are those going to be complete?
03:19:07   2          **MR. WEINBERGER:**  The end of November, Judge -- early
03:19:10   3    December.
03:19:10   4          **MS. HANGARTNER:**  That's what we just --
03:19:13   5          **MR. GRIMSAL:**  December 9, Judge.
03:19:14   6          **THE COURT:**  So let's say if you all want to file a
03:19:19   7    supplemental memorandum after the depositions are complete that
03:19:25   8    you can do that by January 31.
03:19:30   9          **MR. WEINBERGER:**  Thank you, Judge.
03:19:35   10         **THE COURT:**  Anybody who wants to oppose it can do
03:19:38   11   that by -- let's see, what are our other dates?  I just don't
03:19:45   12   want to get too close.  What's the deadline for dispositive
03:19:53   13   motions?
03:20:00   14               It looks like April 16.  So I need to speed this
03:20:03   15   up, actually, I believe.  Let's say January 15.  Does somebody
03:20:10   16   have a calendar to know if that's a weekday?
03:20:13   17         **MR. WEINBERGER:**  That's fine, Judge.
03:20:19   18         **THE COURT:**  If you all want to respond, you can do it
03:20:21   19   by January 31.
03:20:26   20         **MR. HOWARD:**  That's the *Achari* claims?
03:20:26   21         **THE COURT:**  That's in *Achari*, for the plaintiffs in
03:20:29   22   the first trial, right?
03:20:37   23               Well, you all didn't do much briefing because
03:20:42   24   you said it's premature, so --
03:20:46   25         **MR. WEINBERGER:**  With one caveat, Judge.  We talked a

03:20:49  1  lot about the reason why we think the Court should conclude

03:20:56  2  that the *John Deere* case didn't apply and that, therefore,

03:21:03  3  Louisiana choice of law principles govern *Achari* as well.  So

03:21:07  4  we did talk about that a lot, but we didn't talk about the

03:21:10  5  evidence very much because we thought it wasn't ripe.

03:21:13  6       THE COURT:  All right.  The *Achari* plaintiffs say

03:21:14  7  that Mississippi choice of law rules apply because of the

03:21:18  8  *John Deere* case, or is there some other reason?  Because it

03:21:23  9  started in --

03:21:24  10       MR. COLBY:  Yes.

03:21:24  11       THE COURT:  -- Mississippi?

03:21:25  12       MR. COLBY:  Yes.

03:21:28  13       THE COURT:  What about this first-filed rule and

03:21:31  14  whether or not it applies in this case?  That's why it was

03:21:39  15  transferred, because the first case was filed here rather than

03:21:43  16  convenience of the parties?

03:21:43  17       MR. COLBY:  Right.  Our position is that that doesn't

03:21:45  18  impact the choice of law analysis.

03:21:49  19            I recall that there was a briefing about whether

03:21:53  20  or not § 1404 was mentioned in the order, Alan.

03:21:58  21       MR. WEINBERGER:  It wasn't.

03:21:59  22       MR. COLBY:  It wasn't?  So there was some briefing

03:22:01  23  about that.  Under either analysis, we have the same --

03:22:07  24       MR. WEINBERGER:  The very specific position advanced

03:22:10  25  by the *Achari* plaintiffs is that you must consider that

03:22:12    1   first-filed transfer won't affect it under § 1404 as a matter
03:22:17    2   of law.  That's the specific argument.
03:22:21    3           THE COURT:  So we'll wait and decide that when you
03:22:25    4   all do some additional briefing.  We will have enough to handle
03:22:28    5   between now and then.
03:22:31    6           All right.  As far as other dispositive motions,
03:22:37    7   I have that there are 12 *Daubert* motions that will be submitted
03:22:41    8   on October 5.
03:22:43    9           MR. HOWARD:  November?
03:22:44   10           THE COURT:  November 5.
03:22:47   11           There are 10 dispositive motions that will be
03:22:51   12   submitted on November 19.  There's one motion for sanctions
03:22:55   13   filed by the Burnett defendants against the plaintiffs that is
03:23:01   14   in front of Judge Knowles.
03:23:05   15           MR. CERNIGLIA:  Judge Knowles.  It's set for
03:23:07   16   argument.
03:23:07   17           THE COURT:  I'm going to leave that with
03:23:09   18   Judge Knowles.
03:23:11   19           And then the *David* plaintiffs have a motion to
03:23:13   20   compel that's in front of Judge Knowles.
03:23:20   21           MR. WERNER:  Yes.
03:23:27   22           MR. HOWARD:  The only thing I would ask with respect
03:23:28   23   to the -- and we put this on our list for discussion today, on
03:23:32   24   the sanctions motion, is that was filed without a
03:23:38   25   meet-and-confer and without a statement on it.  I know that

03:23:41  1   there's been a lot of attempts during the course.  We have a

03:23:45  2   specific view of compliance.

03:23:46  3           MR. CERNIGLIA:  It's also not -- you failed to comply

03:23:48  4   with an order.  It's in front of the judge now.

03:23:51  5           MR. HOWARD:  We'll argue we did comply with the

03:23:53  6   order.  If there's something you think is missing as to

03:23:56  7   particularity, we wanted to have the opportunity to work with

03:23:59  8   you to fix it, but you want to just -- okay.

03:24:02  9           THE COURT:  Well, before you file a motion for

03:24:04  10  sanctions, I think you ought to talk to the other --

03:24:07  11          MR. CERNIGLIA:  We did.  We tried.  We had e-mail

03:24:10  12  correspondence, and I told him --

03:24:11  13          I was willing to talk to you on Monday, and

03:24:13  14  nobody called me.  I did.  It was in an e-mail.

03:24:16  15          MR. WERNER:  We will gladly present those e-mails to

03:24:18  16  the Court, Your Honor.  That's not correct.

03:24:19  17          MR. CERNIGLIA:  Well, I have a copy of it for myself.

03:24:22  18          THE COURT:  What exactly is it?  Is there something

03:24:22  19  that can be fixed now?  Judge Knowles, he has a lot to do just

03:24:26  20  in this case, and if there are things you all can resolve --

03:24:27  21          MR. HOWARD:  Your Honor, I will let Mr. Cerniglia

03:24:31  22  speak to it.  Judge Knowles issued an order in August directing

03:24:34  23  that Mr. Cerniglia was entitled to understand what the evidence

03:24:37  24  was against his client, obviously, and we wanted to do that.

03:24:43  25  What he has asked for, though, is that -- for example, dozens

of depositions that Mr. Cerniglia chose not to attend, we need

to identify the page and line number of the testimony as it

supports each allegation in the case against him.  We don't

think that that's a burden that we need to bear.

What we did do is identify the documents that

support our claims against Mr. Burnett.  Now, we did give them,

without differentiation as to which request for production, but

that's the same practice that they followed when they gave us

documents.  That's been the practice in the case.  Nobody --

MR. CERNIGLIA:  Not talking about me.  Go ahead.

MR. HOWARD:  -- has given and said, "These documents

are in response to Request for Production No. 1.  These are in

response to No. 3."

THE COURT:  So this is more than just did they give

you certain documents.  This is the extent of what they are

required to identify.

MR. CERNIGLIA:  And how they respond.  We argued this

in front of Judge Knowles.  He knows exactly what I was looking

for, and it's not that I want page and line number.

Just as an example, what statements did these

people, the five going to trial, rely on by Mr. Burnett?  They

just said, "We rely on conspiracy and the statements of

everybody else," and they do a lot of generalities.

I specifically recall in the deposition of

Joseph Jacob asking, "Well, what did Mr. Burnett tell you?"

03:26:18   1          He said, "We didn't talk anything about visas.
03:26:20   2   We didn't talk anything about that."
03:26:20   3          So that's my point.  I want to know who, you
03:26:24   4   know, but not just, "Well, things were told to everybody," and
03:26:27   5   then the same thing with advertising.
03:26:30   6          THE COURT:  So you all argued this in front of
03:26:33   7   Judge Knowles.  He will have to decide it.
03:26:35   8          MR. CERNIGLIA:  I agree, Your Honor.
03:26:36   9          THE COURT:  It's not a particular document; it's how
03:26:41   10  specific you have to be.  And I will just have to let him --
03:26:46   11         MR. SANDLER:  The sanction, though, Your Honor, is to
03:26:48   12  strike all of our pleadings.
03:26:49   13         MR. CERNIGLIA:  No.  The sanction is just totally in
03:26:52   14  accordance with Federal Rule 37, that any portion that the
03:26:57   15  judge rules on, then you have time to provide that or else you
03:27:01   16  will then -- it will then be -- those parts of the pleadings
03:27:06   17  will be struck.  It's just following the Rules of Procedure.
03:27:09   18         THE COURT:  I don't want to hear any more about that.
03:27:11   19  I really don't.
03:27:12   20         MR. HOWARD:  I would just like to offer -- I'm
03:27:13   21  sitting here.  I think it's something I can work out with you.
03:27:16   22         MR. CERNIGLIA:  Well, then send it to me between now
03:27:19   23  and whenever you are going to do anything.
03:27:21   24         MR. HOWARD:  Well, this is why we need a
03:27:22   25  conversation, because I look at the papers and it says we need

03:27:26   1   to provide page and line of every deposition.

03:27:28   2                Now he is saying, well, we don't need to do

03:27:28   3   that.

03:27:29   4          MR. CERNIGLIA:  I did not say page and line.  I do

03:27:31   5   want to know who said what.

03:27:34   6          MR. HOWARD:  Well, that's something you and I could

03:27:37   7   work out.

03:27:38   8          THE COURT:  I would like for you all -- either if

03:27:40   9   there's time after this meeting today or tomorrow -- to talk.

03:27:44   10         MR. CERNIGLIA:  Tomorrow I can talk.

03:27:46   11         THE COURT:  Just do that for me.  If possible, you

03:27:49   12  can work it out; and if not, then Judge Knowles --

03:27:53   13         MR. CERNIGLIA:  Now, also, I'm more than happy to

03:27:56   14  talk.  I'm not going to be inflexible, but I'm going to want

03:28:03   15  what I need.

03:28:04   16               You must remember, right now I have motions I

03:28:07   17  have to respond to in this case against Signal, against you.  I

03:28:11   18  have five or six in Texas.  It's just me doing my own typing.

03:28:16   19  I can give you so much time, but I can't give you a lot.

03:28:20   20         THE COURT:  Well, it won't take that long if you all

03:28:22   21  can get together and try to work it out.

03:28:25   22         MR. CERNIGLIA:  No, it shouldn't.

03:28:27   23         THE COURT:  Then the EEOC has, you say, a motion for

03:28:34   24  notice about Signal's transfer, sale, or assignment of

03:28:39   25  property.  It was filed under seal.  It will be submitted on

03:28:43 1   November 5.  Then Signal's motion for sanctions regarding that

03:28:55 2   motion filed by the EEOC, that will be submitted on November 5,

03:29:00 3   and that's in front of me.

03:29:07 4           MR. UNGAR:  Your Honor, I thought the EEOC had asked

03:29:09 5   for more time for briefing on the motion for sanctions and that

03:29:11 6   it was extended to the 12th, I think.

03:29:17 7           MR. ROUX:  I think it's to the 11th.  You granted

03:29:18 8   them, I think, six additional days.

03:29:20 9           THE COURT:  That rings a bell.  Do you know if it's

03:29:22 10  the 11th or 12th?

03:29:24 11          MS. BOLLMAN:  It's the 12th.  It's a Wednesday.

03:29:26 12          MS. BEAN:  I'm not sure if it's the 11th or the 12th.

03:29:27 13          MS. BOLLMAN:  It's the 12th.

03:29:28 14          MS. HANGARTNER:  I think it's the 12th.

03:29:28 15          MS. BOLLMAN:  The 11th is a Tuesday.

03:29:30 16          MS. BEAN:  The Court granted us additional time to

03:29:34 17  file an opposition.

03:29:37 18          THE COURT:  Oh, we do have a note here that we

03:29:39 19  granted an extension until November 11.  That's Document 512 in

03:29:46 20  the *EEOC* case.

03:29:56 21          MR. HOWARD:  Your Honor, there is one timing issue

03:29:58 22  with respect to the summary judgment motions, because I think

03:30:01 23  you have gone past those.  You indicated in an order -- I think

03:30:06 24  that came out today or yesterday -- that two of Signal's

03:30:10 25  motions have to be resubmitted and that you would entertain, I

| | | |
|---|---|---|
| 03:30:14 | 1 | guess, giving us an extra week to respond because they won't be |
| 03:30:18 | 2 | fully filed until Monday. |
| 03:30:20 | 3 | THE COURT:  Right. |
| 03:30:20 | 4 | MR. HOWARD:  Is that your thinking on that?  Because |
| 03:30:22 | 5 | that would be fine with us. |
| 03:30:23 | 6 | THE COURT:  I think I gave you all a deadline to |
| 03:30:26 | 7 | refile the motions -- |
| 03:30:29 | 8 | MS. HANGARTNER:  Monday. |
| 03:30:29 | 9 | THE COURT:  -- Monday, and then I said I think I |
| 03:30:30 | 10 | would entertain a motion for leave to file a response.  Within |
| 03:30:35 | 11 | a week after they file their motion, if you want to respond to |
| 03:30:41 | 12 | it -- |
| 03:30:43 | 13 | MR. HOWARD:  Well, I guess what I'm wondering and I |
| 03:30:46 | 14 | thought it would be is rather than the original response date |
| 03:30:51 | 15 | to those motions, since they are now being resubmitted a week |
| 03:30:53 | 16 | late, we would just get an extra week for our oppositions to |
| 03:30:56 | 17 | those. |
| 03:30:56 | 18 | THE COURT:  Oh, that's right, because you haven't |
| 03:30:58 | 19 | filed any opposition. |
| 03:30:59 | 20 | MR. HOWARD:  We haven't filed any oppositions yet. |
| 03:31:03 | 21 | THE COURT:  I guess the issue is it's going to change |
| 03:31:06 | 22 | the date of submission. |
| 03:31:08 | 23 | MS. HANGARTNER:  Right. |
| 03:31:08 | 24 | MR. UNGAR:  So the scheduling order, Your Honor, has |
| 03:31:10 | 25 | that oppositions to dispositive motions are due November 11. |

03:31:13  1  So you set a date.

03:31:14  2        THE COURT:  So probably I didn't use the submission

03:31:18  3  date.  I just set dates.

03:31:19  4        MR. UNGAR:  Right.  Yes.

03:31:20  5        THE COURT:  Let's change that date to -- it was the

03:31:22  6  11th?

03:31:22  7        MR. UNGAR:  Yes, Your Honor.

03:31:25  8        THE COURT:  So we change it to the 18th.

03:31:26  9        MR. HOWARD:  For those two motions?

03:31:28  10        THE COURT:  Right.

03:31:32  11        MR. UNGAR:  Your Honor, also, you had talked about

03:31:34  12  submission dates for the *Daubert* motions, and oppositions are

03:31:37  13  due on those motions today; and replies are due, per the

03:31:41  14  scheduling order, on the 7th of November.  So that would be

03:31:49  15  after the November 5 submission date.

03:31:49  16        THE COURT:  Wait.  Now I'm getting confused.  I had

03:31:57  17  Signal resubmitting two dispositive motions by what date?

03:32:07  18        MR. WEINBERGER:  Monday --

03:32:07  19        THE COURT:  Which is November 3.

03:32:08  20        MR. WEINBERGER:  -- the 3rd.

03:32:12  21        THE COURT:  The responses to the dispositive motions

03:32:16  22  or the oppositions was going to be November 11.  But with

03:32:25  23  respect to the two resubmitted Signal motions, it will be

03:32:28  24  November 18.

03:32:31  25        Tell me what your point was about the other --

03:32:34    1    **MR. UNGAR:**  Yes, Your Honor.  You had talked about a
03:32:35    2    submission date for the motions to strike the experts, but the
03:32:38    3    scheduling order provides the reply deadline, the opposition --
03:32:40    4        **THE COURT:**  Let me find it.
03:32:45    5             Motions in limine regarding expert testimony,
03:32:47    6    October 17.
03:32:49    7        **MR. UNGAR:**  Right.  So the oppositions are due today
03:32:52    8    per the scheduling order, and the replies to those motions are
03:32:57    9    due November 7 per the scheduling order.  You had mentioned
03:32:59    10   before a submission date of November 5.  I'm just pointing out
03:33:01    11   that the schedule has replies due after that.
03:33:06    12       **THE COURT:**  Well, what I did, I really didn't use our
03:33:09    13   regular submission dates on these.  I just gave you dates.  Do
03:33:15    14   the pretrial motions in limine have anything to do with the
03:33:19    15   dispositive motions?  Are you trying to tie those together?
03:33:26    16       **MR. UNGAR:**  No, Your Honor.
03:33:27    17       **THE COURT:**  Are you saying I said the wrong date?
03:33:27    18       **MR. UNGAR:**  You had said before that the submission
03:33:27    19   date was the 5th.  I wanted just to point out to Your Honor
03:33:29    20   that there was a separate deadline in the order after that date
03:33:31    21   for replies.  Thank you.
03:33:34    22       **THE COURT:**  Okay.
03:33:35    23       **MS. BEAN:**  Your Honor, can we just briefly go back to
03:33:40    24   EEOC's motion issue?  I was not certain if you had finished it.
03:33:44    25   I know that we intend or have sought to file a reply brief to

03:33:50  1  Signal's -- a reply brief on the motion for notice, and I think
03:33:59  2  that request to file the reply may still be pending.  I'm not
03:34:03  3  certain if the Court ruled on it.
03:34:05  4          THE COURT:  How long ago was it?
03:34:07  5          MS. BEAN:  I believe we filed it last week or so.
03:34:09  6          THE COURT:  We will check it.  It probably should
03:34:11  7  have been signed, but we will check.
03:34:15  8          MS. BEAN:  We had hoped to file something next week.
03:34:19  9  I just wanted you to --
03:34:19  10          THE COURT:  So you didn't file it.  You just asked --
03:34:19  11          MS. BEAN:  We have not filed it yet, and our plan is
03:34:23  12  to file it next week.
03:34:24  13          THE COURT:  Well, usually what people do is file the
03:34:26  14  request for leave with the brief attached.  In other words, you
03:34:31  15  filed something requesting leave and requesting a date by which
03:34:35  16  you would file it?
03:34:36  17          MS. BEAN:  We did file something and, Your Honor, I
03:34:40  18  don't think we attached a reply.
03:34:41  19          THE COURT:  Okay.  So we will look at that.
03:34:43  20          MS. BEAN:  Thank you.
03:34:47  21          THE LAW CLERK:  It might have got marked deficient.
03:34:52  22          THE COURT:  Philip said it might have gotten marked
03:34:55  23  deficient.  So if that's correct, then there may be something
03:34:58  24  you need to do to fix it.
03:35:02  25          MS. BEAN:  All right.

|  |  |  |
|---|---|---|
| 03:35:08 | 1 | **THE COURT:** Someone brought up the Signal motion to |
| 03:35:11 | 2 | dismiss in the *Singh* case that was filed -- I believe it was |
| 03:35:16 | 3 | you, Greg -- in Mississippi before the case was transferred. |
| 03:35:28 | 4 | My thought is -- it doesn't show up as still |
| 03:35:33 | 5 | pending on my docket, and that's why I haven't done anything |
| 03:35:38 | 6 | with it -- that that motion should be refiled by Signal by |
| 03:35:45 | 7 | whatever deadline you have in the *Singh* case for filing motions |
| 03:35:50 | 8 | to dismiss. |
| 03:35:51 | 9 | **MS. HANGARTNER:** Okay. |
| 03:35:51 | 10 | **THE COURT:** Things have changed. |
| 03:35:52 | 11 | **MR. WEINBERGER:** It seems weird at this point, |
| 03:35:55 | 12 | frankly, Judge. You really decided the 12(b)(6) stuff already. |
| 03:35:58 | 13 | So we will take care of it. |
| 03:36:01 | 14 | **THE COURT:** It is not pending in my book at this |
| 03:36:05 | 15 | point. If you want to file -- |
| 03:36:05 | 16 | **MR. WEINBERGER:** It's academic. We will fix it, |
| 03:36:07 | 17 | Judge. |
| 03:36:08 | 18 | **MR. GRIMSAL:** For the record, I agree with |
| 03:36:10 | 19 | Mr. Weinberger. |
| 03:36:13 | 20 | **MR. WEINBERGER:** Very low stress, Judge. We will get |
| 03:36:15 | 21 | it resolved. |
| 03:36:16 | 22 | **THE COURT:** I just want you to know that it's not |
| 03:36:18 | 23 | pending as far as I'm concerned. |
| 03:36:19 | 24 | **MR. WEINBERGER:** Yes, Your Honor. Thank you, |
| 03:36:20 | 25 | Your Honor. |

03:36:22  1        **THE COURT:**  Okay.  In the *Thomas* case, I think I have

03:36:25  2    mentioned to you before the protective orders apply, and I'm

03:36:29  3    going to make that clear in this minute entry.  All my rulings

03:36:35  4    about the protective orders and what people have to produce and

03:36:40  5    don't produce, all that applies in the *Thomas* case.

03:36:43  6        **MR. WERNER:**  Yes.  We have all been going under that

03:36:48  7    assumption.

03:36:49  8        **THE COURT:**  The status of discovery.  I have that

03:36:50  9    fact discovery in *David* is closed.

03:36:52  10       **MR. HOWARD:**  Yes, ma'am.

03:36:53  11       **THE COURT:**  Yippy.

03:36:56  12       **MR. HOWARD:**  As is expert.

03:36:58  13       **THE COURT:**  That's good.

03:36:59  14       **MS. HANGARTNER:**  Correct.

03:37:04  15       **THE COURT:**  I have fact discovery in the *EEOC* closed

03:37:09  16    today.

03:37:10  17       **MS. BEAN:**  It does close today.  I think we have an

03:37:15  18    agreement that -- and Erin can tell me if we have an agreement.

03:37:20  19    We had some discovery outstanding most of the month of October

03:37:25  20    that Signal is just producing, along with some documents in

03:37:31  21    response to a subpoena we served.  So we have gotten most of

03:37:36  22    the documents.  I let Signal know, as a consequence of the

03:37:41  23    delay that happened, that it was quite possible that we would

03:37:44  24    have to take a few deps out of time if the Court would let us.

03:37:50  25            I think we have an agreement.  I'm not certain

03:37:52  1   that we are even going to take the deps.  We have to finish
03:37:56  2   reviewing the documents, and then we have a privilege log issue
03:38:05  3   that might result in us getting some more information if things
03:38:05  4   go our way.  But once we can resolve those, we will be able to
03:38:10  5   decide if we need to take maybe one or two more depositions
03:38:10  6   which we would like to take.
03:38:13  7          THE COURT:  For Signal.
03:38:15  8          MS. HANGARTNER:  I wouldn't necessarily have a
03:38:16  9   problem with it.  It depends on who the EEOC is going to move
03:38:20 10   to take.  Sorry, Judge.  We have turned over all of the
03:38:27 11   documents to the EEOC.  There's an issue right now about us
03:38:31 12   matching up the Bates to each particular discovery request.
03:38:38 13          The RSA subpoena, however, though -- I think
03:38:41 14   Ms. Bean at this point needs to deal with RSA and not with
03:38:45 15   Signal.  Signal has turned over the documents --
03:38:48 16          THE COURT:  Patricia, do you know about that?
03:38:50 17          MS. BOLLMAN:  No, no one has told us --
03:38:52 18          MR. HANGARTNER:  I'm the only one who --
03:38:54 19          MS. BEAN:  I can enunciate it, Erin.
03:38:55 20          THE COURT:  We need hand signals.  Write it all down
03:38:55 21   so everybody can read it.
03:39:01 22          MR. UNGAR:  Documents have been produced.  Signal's
03:39:02 23   position is that if there's issues with documents responsive to
03:39:03 24   the subpoena to RSA, that's an issue with the EEOC versus RSA
03:39:07 25   and not Signal.

03:39:08   1          **MS. BEAN:**  Yeah, and that doesn't work for EEOC.  The
03:39:12   2   Court would have to know the history of it.  I think if the
03:39:16   3   Court does, it would agree with us.  EEOC served a subpoena on
03:39:20   4   RSA.  RSA is Signal's --
03:39:24   5              Am I correct to say parent company?
03:39:28   6          **MS. HANGARTNER:**  That is utterly incorrect.
03:39:30   7          **MS. BEAN:**  Excuse me.  They have like a 51 percent
03:39:32   8   interest in Signal.  They are an Alabama company, and we served
03:39:37   9   a subpoena on them.  The first subpoena, they answered, talked
03:39:40  10   to us, said they had some documents, but they wanted us to
03:39:45  11   serve another subpoena to cover the scope of the documents they
03:39:49  12   had.  So we served another subpoena on RSA, and we never heard
03:39:56  13   from RSA again.
03:39:58  14              So there is one version of how things look that
03:40:02  15   RSA is in contempt of our subpoena and they have waived all of
03:40:08  16   their objections.  So that's one possible look.
03:40:12  17              What happened, in fact, is Signal, on the day
03:40:17  18   that RSA was supposed to respond to our subpoena, filed a
03:40:22  19   motion to quash.  We had a hearing with this Court, with
03:40:30  20   Your Honor, shortly thereafter, and we had a discussion about
03:40:34  21   the fact that we were trying to get these documents through
03:40:37  22   subpoena from RSA.
03:40:40  23              Counsel for Signal represented in a manner that
03:40:45  24   suggested to me -- and I believe to this Court -- that they had
03:40:50  25   some relationship with RSA.  I don't know if it was a

03:40:55  1  relationship between the attorneys for Signal and RSA or if it
03:40:59  2  was just RSA and Signal sort of holding hands.
03:41:04  3          But Signal argued RSA's position on the
03:41:08  4  substance of those motions, including that they contained
03:41:12  5  privileged material.  There was financial data that he didn't
03:41:16  6  want to disclose.  And the Court told Signal at that time,
03:41:19  7  "Well, just give EEOC everything that's not privileged."
03:41:26  8          Signal gave EEOC everything that was not
03:41:30  9  privileged.  Not RSA.  Signal.  The documents that were
03:41:34  10 produced had an RSA stamp on them.  So we got the documents.
03:41:40  11 We looked at them.  And then there were some assertions of
03:41:45  12 privilege.  We couldn't tell -- we couldn't make any sense of
03:41:49  13 them.  There was some e-mail.
03:41:52  14          As to every privilege assertion, Signal used the
03:41:55  15 same language.  It said something like *litigation stuff*.  I'll
03:41:59  16 just say it like that, litigation stuff.
03:42:04  17          The EEOC contacted Signal, who had given it the
03:42:07  18 documents, who it had talked with about the documents, who had
03:42:13  19 represented to this Court the argument that sounds like an RSA
03:42:18  20 argument.  And we said, "Look, let's have a telephone
03:42:21  21 conversation so we can figure out what this stuff is that you
03:42:24  22 all are holding back."
03:42:26  23          Signal then told us, "Okay.  Let's conference at
03:42:31  24 2:00, but let me get the person from RSA to sit in on the
03:42:36  25 telephone call because they are the ones who did the

03:42:39  1    redactions."

03:42:40  2                    I said, "Fine."

03:42:41  3                    The next thing I know, I get a communication

03:42:43  4    from Signal where Signal says, "We don't have anything to do

03:42:47  5    with this."

03:42:49  6            THE COURT:  Let me ask you.  Are these documents the

03:42:52  7    ones that you say you haven't gotten yet and you might need to

03:42:55  8    do some more depositions, or we are talking about another set

03:42:58  9    of documents?

03:42:59  10           MS. BEAN:  We are talking about two bodies.  Part of

03:43:02  11   it may be the documents that have already been produced.  They

03:43:06  12   may have to give us some Bates-stamped information and get them

03:43:09  13   signed and verified.  But the documents we have gotten and the

03:43:16  14   responses we have gotten to the discovery, we are looking at

03:43:17  15   that to see if we may need to take deps to come out of that.

03:43:21  16           THE COURT:  That issue, though, is all related to the

03:43:23  17   RSA documents?

03:43:25  18           MS. BEAN:  No.  The RSA documents are a whole other

03:43:29  19   set of documents, but both sets of documents are what we are

03:43:32  20   trying to get through to determine if we have to take these

03:43:35  21   additional deps.

03:43:37  22           THE COURT:  Okay.  So if that happens and you don't

03:43:42  23   get all the documents, you will have to do a motion to compel.

03:43:45  24   If you want to take additional depositions, then you will just

03:43:49  25   have to do a motion for leave of Court and explain why if you

03:43:53    1    don't agree.  If you all agree, then let me know.  That's one
03:43:55    2    thing.  But if you don't agree, then ask for leave of Court to
03:43:58    3    file a motion, and we will go from there.
03:44:02    4         MS. BEAN:  The one issue that we are facing -- and
03:44:04    5    this really is sort of why I brought it to the Court.  We would
03:44:10    6    ask this Court to tell Signal the way it told Signal, in
03:44:16    7    response to Signal's representations at our last status
03:44:19    8    conference, that they should give us the information related to
03:44:23    9    the privilege, explain why you're holding back these documents.
03:44:28   10    We are asking that the Court tell Signal to do that.
03:44:32   11         If the Court doesn't tell -- actually, that's
03:44:34   12    what we are asking for.  We are asking Signal to close this
03:44:38   13    thing out.
03:44:40   14         We weren't dealing with RSA.  We were dealing
03:44:42   15    with Signal through this entire thing.  And for Signal to come
03:44:46   16    at the end, for whatever interest it is of Signal's, and say,
03:44:50   17    "Oops.  We don't have anything to do with this," that's not
03:44:55   18    true.  RSA, as far as I'm concerned, has subjected itself to
03:44:59   19    the jurisdiction of this Court minimally, but Signal is their
03:45:03   20    representative in this case.  Because the alternative is we
03:45:07   21    will have to turn around and go to the state of Alabama and
03:45:11   22    move for a contempt action against RSA for not answering our
03:45:16   23    subpoena.
03:45:16   24         THE COURT:  Well, the situation is RSA is a majority
03:45:19   25    shareholder of Signal?

03:45:22   1      **MS. HANGARTNER:**  They are a creditor.  They are a

03:45:23   2  creditor.

03:45:23   3      **THE COURT:**  Well, now, she says they own 51 percent.

03:45:26   4      **MS. HANGARTNER:**  That's incorrect.  That's incorrect.

03:45:29   5      **MS. BEAN:**  I don't know that I'm incorrect about

03:45:31   6  that.  Is there anybody who has any better sense of that than I

03:45:34   7  am --

03:45:35   8      **MR. HOWARD:**  Chris Cunningham testified.

03:45:40   9      **MR. SANDLER:**  Chris Cunningham's testimony is clear.

03:45:40  10  The interest that RSA now has in Signal is 46 percent, but then

03:45:45  11  an additional 10 percent on executable warrants.

03:45:49  12      **THE COURT:**  On what?

03:45:50  13      **MR. SANDLER:**  On warrants which they can execute,

03:45:52  14  which require no further consideration, which gets them up to

03:45:56  15  56 percent, and that is the holding that they have over Signal.

03:45:58  16      **THE COURT:**  So they are 46 percent shareholder right

03:46:03  17  now?  Is that what you mean?

03:46:04  18      **MR. SANDLER:**  Yeah.  They hold a 46 percent interest.

03:46:07  19      **THE COURT:**  Not just as security, but they actually

03:46:10  20  are the shareholder?

03:46:13  21      **MS. HANGARTNER:**  No.

03:46:13  22      **MR. SANDLER:**  Signal is private, so --

03:46:16  23      **THE COURT:**  I'm sorry?

03:46:16  24      **MR. SANDLER:**  Signal is private.

03:46:16  25      **THE COURT:**  Okay.  But it still has shareholders.

03:46:19  1        **MR. SANDLER:**  Yeah, yeah, I know, but it's not the

03:46:20  2   security.  It's that they have invested in Signal.

03:46:24  3        **THE COURT:**  One thing is you can loan somebody money

03:46:26  4   and get stock as security for that loan.  There's another

03:46:29  5   situation where you pay the money to Signal or whoever and you

03:46:34  6   own the shares of stock, which is --

03:46:37  7        **MR. SANDLER:**  Right.  I think it's the latter.

03:46:37  8   That's my understanding.  But if that's not Signal's --

03:46:44  9        **MS. HANGARTNER:**  RSA is an arm's-length creditor and

03:46:46  10  they do not have -- let me make sure I say this right.  They

03:46:52  11  have an interest in Signal, but they do not own Signal.

03:46:56  12       **THE COURT:**  What do you mean, an interest but they

03:46:58  13  don't own?  They own stock or they don't own stock?  Do you

03:47:03  14  know?

03:47:04  15       **MR. ROUX:**  My understanding is that RSA --

03:47:10  16       **MS. HANGARTNER:**  RSA has two people from RSA who sit

03:47:13  17  on Signal's board, but RSA is not an owner of Signal per se.

03:47:18  18       **THE COURT:**  It doesn't own any Signal stock?

03:47:24  19       **MR. RABBANI:**  It's a creditor, Your Honor.

03:47:24  20       **MS. HANGARTNER:**  It is a creditor.

03:47:25  21       **THE COURT:**  Does it hold Signal stock as a security

03:47:28  22  for the debt?

03:47:30  23       **MS. BOLLMAN:**  It owns Signal stock.

03:47:33  24       **MS. HANGARTNER:**  It does own Signal stock.

03:47:34  25       **THE COURT:**  The 46 percent, as Chris Cunningham

03:47:37   1   testified, and then maybe they have 10 percent more as

03:47:40   2   security?  They can have a warrant on it.

03:47:43   3          MS. BOLLMAN:  Yes, an outstanding loan.

03:47:46   4          MR. SANDLER:  On a subsequent loan, they were issued

03:47:48   5   that 10 percent.

03:47:52   6          THE COURT:  So it's a separate entity from Signal.

03:47:55   7          MS. BEAN:  Your Honor, that would make sense to me

03:47:57   8   but for the fact that Signal did not come in here at our last

03:48:01   9   status conference and communicate to the Court as if RSA was a

03:48:07  10   separate entity.  They argued RSA's --

03:48:12  11          THE COURT:  Maybe the Signal lawyers shouldn't have

03:48:15  12   done that.  They should have been clear when they started out

03:48:19  13   this process, but they are now apparently trying to rectify

03:48:22  14   that situation.

03:48:24  15          MR. ROUX:  Your Honor, if I may, I think I can

03:48:25  16   clarify a little bit of the subpoena issue that we have had

03:48:30  17   with the EEOC.  Because certain members of RSA sit on Signal's

03:48:35  18   board, privileged information from Signal is in the board

03:48:39  19   members' possession.  So with regard to her subpoena, our

03:48:41  20   concern --

03:48:41  21          MS. BEAN:  It wasn't my subpoena.  It was EEOC's

03:48:44  22   subpoena.

03:48:45  23          THE COURT:  We know.

03:48:48  24          MR. ROUX:  With regard to EEOC's subpoena, our worry

03:48:51  25   was that privileged information that was withheld during our

03:48:54   1   ESI production would be sought through the subpoena of RSA.

03:48:58   2                    It presents a secondary problem, for any

03:49:00   3   information that RSA is going through that seems related to the

03:49:04   4   subpoena would have to first be reviewed by RSA to see if RSA

03:49:08   5   has a privilege to assert and then be subsequently reviewed by

03:49:12   6   Signal to see if Signal has a privilege to assert pursuant to

03:49:15   7   any information the board member may have acquired

03:49:20   8   confidentially about this litigation.

03:49:22   9                    That's the process that happened.  RSA reviewed

03:49:23   10   for privilege, then turned over to Signal, who reviewed for

03:49:26   11   Signal's privilege, and then turned over to EEOC.  I think that

03:49:30   12   more clearly states what happened rather than Ms. Bean's

03:49:34   13   explanation.

03:49:34   14                    THE COURT:  Well, does RSA have its own lawyer?

03:49:38   15                    MS. HANGARTNER:  Yes.

03:49:38   16                    MR. ROUX:  Yes.

03:49:39   17                    THE COURT:  Are there additional documents that are

03:49:40   18   being requested from RSA at this point?

03:49:43   19                    MS. HANGARTNER:  That's the same universe of

03:49:45   20   documents that RSA forwarded to me and then I passed on to

03:49:48   21   Ms. Bean.

03:49:49   22                    And it was the telephone status conference

03:49:52   23   Signal had filed a motion to quash basically saying that the

03:49:56   24   EEOC was putting the cart before the horse.  In other words,

03:50:00   25   there was no judgment, but they were trying to get into what

03:50:05   1 RSA's interest was in Signal.

03:50:09   2                So after we kind of talked about it and I

03:50:14   3 explained our position that there could potentially be

03:50:17   4 privileged information, you asked that I take a look at the

03:50:20   5 documents, redact for privilege, and then pass on to Ms. Bean.

03:50:23   6         THE COURT:  So you could give her some at least --

03:50:27   7         MS. HANGARTNER:  Correct, or facilitating as per your

03:50:30   8 order.

03:50:31   9         THE COURT:  Right.  So right now were some privileges

03:50:34   10 claimed by RSA and some privileges were claimed by Signal?

03:50:40   11         MR. ROUX:  Correct, Your Honor.

03:50:41   12         THE COURT:  All right.  So is RSA going to provide

03:50:45   13 the EEOC a privilege log, or have they done that?

03:50:50   14         MS. BEAN:  Yeah.  Let me be clear.  This is the first

03:50:52   15 I have ever heard that Signal asserted privilege, because they

03:50:55   16 are playing games.  It's Signal sometimes; it's RSA other

03:51:00   17 times.

03:51:00   18                We got a privilege log from Signal.  We got

03:51:04   19 documents from Signal that have privilege assertions in them,

03:51:07   20 but they do not distinguish between whether it's an RSA or

03:51:11   21 Signal privilege.  I have never heard that before.

03:51:14   22         THE COURT:  Are there some that were asserted by RSA

03:51:16   23 and some were asserted by Signal?

03:51:19   24         MR. ROUX:  There is privilege asserted by both.  The

03:51:22   25 specifics of the privilege log I am not familiar with because I

03:51:25  1    haven't dealt with that aspect.

03:51:26  2            **THE COURT:**  You tell RSA -- you apparently know

03:51:30  3    them -- that within two weeks I want them to give the EEOC a

03:51:34  4    privilege log on any privilege they claimed, and then I want

03:51:37  5    Signal to give a privilege log on anything it claimed.  And if

03:51:42  6    they are on both, if both of you claim privilege, then it

03:51:46  7    should be on both privilege logs.  RSA, if it says it's a

03:51:52  8    separate entity and it has its own lawyer, then it needs to be

03:51:58  9    very clear about that.

03:51:58  10           **MS. HANGARTNER:**  And that's why I'm leery to go back

03:52:02  11   to them, because I think there's now -- I think the EEOC is now

03:52:06  12   pushing that they are one and the same, and we are absolutely

03:52:09  13   unequivocally separate.  And I think that what Ms. Bean needs

03:52:13  14   to do, actually, is what she said before, is go to Mobile and

03:52:17  15   move to compel the RSA and not involve Signal.

03:52:22  16           **MS. BEAN:**  Well, no, that's not what we need to do.

03:52:25  17   We need to have you all respond to what the Court said.  And if

03:52:29  18   you all want to break it out, you break it out any way that you

03:52:34  19   choose to.

03:52:34  20           The only additional thing I would ask the Court

03:52:37  21   is -- the privilege assertions that somebody previously made

03:52:40  22   are sort of conclusory statements that read like "This has to

03:52:43  23   do with some litigation stuff."  I would ask the Court to at

03:52:47  24   least order Signal, on any privilege assertion that they make,

03:52:50  25   to give us a description of the content sufficient for us to

03:52:54   1   assess.  That's all we want to do.

03:52:56   2       THE COURT:  Well, Signal obviously -- you claim some

03:52:59   3   of these as privileged, so you have to comply with the Federal

03:53:01   4   Rules of Civil Procedure on your privilege log.  You know that.

03:53:06   5   I want somebody to tell RSA that I would like for them to do

03:53:16   6   that, too, within two weeks.

03:53:22   7       Nobody is going to hold it against you and say

03:53:25   8   it means that Signal and RSA are the same thing if you call the

03:53:30   9   lawyer and say, "Look, we had this status conference.  The

03:53:34  10   judge is making us do this and she wants you to do it," and

03:53:37  11   then let's see if they don't voluntarily do it.

03:53:40  12       MS. HANGARTNER:  Okay.  My fear, again, was just that

03:53:42  13   we're going to get crossways --

03:53:43  14       THE COURT:  You are just going to call and deliver

03:53:46  15   the message.

03:53:46  16       MS. HANGARTNER:  Yes, Your Honor.

03:53:46  17       THE COURT:  You are also going to deliver the message

03:53:48  18   that they need to have their own representation, and there

03:53:54  19   needs to be a bright line between them and Signal if that's

03:53:58  20   what your position is.

03:53:59  21       MS. HANGARTNER:  Yes, Your Honor.

03:54:00  22       MS. BEAN:  Just one final clarification for the

03:54:02  23   record.  When counsel suggests that EEOC's remedy is to go to

03:54:07  24   Alabama for a motion to compel, I don't want the record to

03:54:10  25   suggest that we view that as our alternative.  If we have to

1   go, we may very well move for contempt and sanctions and ask

2   for the production of everything because RSA claims it never

3   responded to our subpoena, that it was Signal.  There's a

4   record where RSA says, "We didn't give you anything.  It was

5   Signal."  So as far as I'm concerned, we have never heard from

6   RSA.  They are in contempt --

7          THE COURT:  What I want you to do when you talk to

8   them is say, "What the judge would like for you to do, if those

9   are your documents that were produced, is for you to

10  Bates-stamp them, acknowledge that those are your documents

11  even though they were produced by Signal, and we are

12  voluntarily giving you a privilege log," and then let's move

13  on.

14          If they won't do that, then Ms. Bean is going to

15  have to figure out what her remedy is, and I will leave that up

16  to her.  It just seems, if the documents have already been

17  produced and they are the RSA documents --

18          MS. HANGARTNER:  And they are one and the same.

19          THE COURT:  -- why not just say it and let's move on.

20  But if they won't, then she'll figure out what she needs to do.

21          MR. SANDLER:  Your Honor, if Signal takes a position

22  now, contrary to Cunningham's, their CFO's testimony, as to

23  RSA's stake in Signal, then can we have --

24          THE COURT:  Chris Cunningham is the Signal CFO?

25          MR. SANDLER:  He is the CFO of Signal International.

03:55:48   1            If they take a position now that contradicts his

03:55:54   2   testimony either this year or the testimony he gave in 2010,

03:55:56   3   then would we have a right to recall Mr. Cunningham?

03:56:01   4            MS. BOLLMAN:  We are not contesting his testimony.

03:56:05   5            MR. SANDLER:  I'm not clear what Signal is saying

03:56:07   6   right now about RSA's relationship to Signal.  We know what the

03:56:10   7   testimony says.  I'm not saying that you have.  But to the

03:56:13   8   extent that if he put in papers to that effect, then we would

03:56:17   9   probably want or we would at least like to consider the

03:56:20  10   possibility.

03:56:22  11            MS. HANGARTNER:  That's not an issue.

03:56:22  12            What I'm saying is Signal is not RSA and RSA is

03:56:25  13   not Signal from the perspective of the document requests.

03:56:32  14            THE COURT:  If one corporation owns shares in another

03:56:35  15   corporation, that does not make them the same, and we all know

03:56:38  16   that.

03:56:38  17            MS. BEAN:  I wouldn't have assumed that.  It was

03:56:40  18   Signal who advanced that and behaved that way.  And if they

03:56:43  19   want to flip it now --

03:56:46  20            MS. HANGARTNER:  We did not.

03:56:46  21            MS. BEAN:  -- however they want to flip it is fine.

03:56:46  22   I'm simply saying somebody has to give us documents with a

03:56:49  23   privilege log that describes what you are withholding

03:56:53  24   sufficient for us to be able to look at it, and that's what we

03:56:57  25   are asking for.  RSA never timely gave us that, according to

03:57:01  1   RSA.  Signal gave it to us.

03:57:04  2             THE COURT:  So we are going to let this play itself

03:57:07  3   out.  We are going to try to get it resolved.

03:57:10  4             MS. HANGARTNER:  Yes, Your Honor.

03:57:10  5             THE COURT:  I think that's all we can do, but you do

03:57:13  6   know you have two weeks to give her a privilege log from

03:57:17  7   Signal's perspective on these documents.

03:57:19  8             MS. HANGARTNER:  She already has a privilege log.

03:57:21  9             THE COURT:  But you are going to give her one that

03:57:23  10  complies with the rules.

03:57:25  11             MS. HANGARTNER:  Correct.

03:57:28  12             THE COURT:  The fact discovery in *Achari* closes -- I

03:57:32  13  have November 28.

03:57:38  14             With respect to *Thomas*, I think that I have

03:57:39  15  heard this before, but I just want to be sure.  When Signal

03:57:43  16  searched its documents for names of plaintiffs, the *Thomas*

03:57:46  17  plaintiffs were included?

03:57:51  18             MR. ROUX:  I had an e-mail with the representative

03:57:54  19  from the *Thomas* case that was on the conference call.  I don't

03:57:57  20  believe I have heard back from him.  Most of the names were

03:58:03  21  included.  All of the names had some part of their name

03:58:07  22  included.  I asked him if that was sufficient, and I haven't

03:58:11  23  heard back from them.

03:58:12  24             THE COURT:  Who is that?  Do you all remember the --

03:58:14  25             MR. WERNER:  Michael Bullerman from Kaye Scholer.

03:58:21    1        **THE COURT:**  Michael Bullerman.  All right.  Will you
03:58:22    2   communicate with him and ask him to respond to that e-mail
03:58:28    3   within a week.
03:58:38    4            Let's talk about some trial issues.  One issue
03:58:47    5   was whether you all have agreed on interpreters.
03:58:55    6        **MS. TSU:**  We have not yet agreed, really, because
03:58:58    7   there's been some problems with e-mail such that we haven't
03:59:01    8   actually talked.
03:59:03    9        **MS. HANGARTNER:**  I don't think we are going to have
03:59:04   10   an issue, though.
03:59:05   11        **MS. TSU:**  I don't think we are going to have an issue
03:59:06   12   either.
03:59:12   13            So the plaintiffs for trial, the first trial,
03:59:15   14   there are five.  Three of them speak Malayalam, one speaks
03:59:19   15   Tamil --
03:59:21   16        **THE COURT:**  What is the other one?
03:59:21   17        **MS. TSU:**  Tamil, T-A-M-I-L.  And one, his native
03:59:26   18   tongue is Hindi, but he testified in deposition almost
03:59:30   19   exclusively in English.
03:59:35   20            Is your position that you want to have Bhabha
03:59:38   21   interpret for Tamil and for Malayalam and then -- I'm sorry.  I
03:59:42   22   don't remember the name of your Indian interpreter.  Is that
03:59:46   23   your position?
03:59:47   24        **MS. BOLLMAN:**  Yes, that is our position.  And I can't
03:59:49   25   think of her name right now.

1    03:59:53    **THE COURT:**  So there's one interpreter who can do
2    03:59:55    both of those?
3    03:59:56    **MS. BOLLMAN:**  There's one interpreter who can do
4    04:00:00    Malayalam and Tamil, the same person, and then there's a
5    04:00:02    separate interpreter to do the Hindi.
6    04:00:08    **MR. UNGAR:**  The plaintiff who speaks Hindi, he didn't
7    04:00:10    really use the translator.
8    04:00:10    **MS. BOLLMAN:**  He never used the translator in his
9    04:00:10    deposition.
10   04:00:11    **MS. TSU:**  That's what we are saying.  He testified in
11   04:00:13    English in his deposition, and we are planning to have him
12   04:00:16    testify in English.  I can't remember whether he used the Hindi
13   04:00:19    interpreter at all.  She was kind of backup.
14   04:00:22    **MR. UNGAR:**  I don't think he did.
15   04:00:24    **MS. BOLLMAN:**  So do we need to bring her in for the
16   04:00:26    trial?
17   04:00:27    **MR. HOWARD:**  I would say probably not.
18   04:00:30    **MS. BOLLMAN:**  So we just need Tamil and Malayalam,
19   04:00:31    and that's Bhabha.
20   04:00:34    **MS. TSU:**  Our position is that we are fine with
21   04:00:35    Bhabha.  He is court-certified, if I remember correctly, and
22   04:00:40    it's important to us that we have a court-certified
23   04:00:41    interpreter.
24   04:00:44    The one hesitation we have about Bhabha is that
25   04:00:46    he makes mistakes at the beginning of interpreting.  So we

04:00:50    1   don't want him switching languages in a given day.  We want him
04:00:54    2   to be able to just be in Tamil or just be in Malayalam so he
04:00:57    3   can get his head around the language.  I understand it's quite
04:01:01    4   difficult to switch languages, and that makes sense to me.  So
04:01:04    5   that's our one caveat about having one person do --
04:01:06    6            THE COURT:  Well, you all work on that --
04:01:07    7            MS. TSU:  We can work on that together.
04:01:07    8            THE COURT:  But I can't guarantee you that that's
04:01:10    9   going to happen.  You can certainly plan the order in which you
04:01:18   10   present them to try to make that happen, like do the three
04:01:22   11   Malayalam.  I don't know if you are planning to put all the
04:01:27   12   plaintiffs on at one time or what, but try to group them
04:01:30   13   together.
04:01:30   14            Well, that's good.  So we just have --
04:01:32   15            MS. TSU:  We can look at that.  If we think there
04:01:37   16   will be any problems around that, we can talk to you if we need
04:01:37   17   a different Tamil interpreter, but we actually think that
04:01:39   18   Bhabha is more comfortable in Tamil.
04:02:00   19            MS. HANGARTNER:  I agree.
04:02:01   20            MS. TSU:  So we would like him for that.  I guess we
04:02:01   21   could talk if we needed a different Malayalam interpreter, but
04:02:01   22   I think we can work it out.
04:02:05   23            THE COURT:  What's his full name?
04:02:06   24            MS. TSU:  Can I e-mail it to you?
04:02:07   25            THE COURT:  Send us the name.

04:02:06  1    **MS. TSU:**  I will send you the name, yes.

04:02:13  2    **THE COURT:**  Okay.  Well, that's good.

04:02:14  3    How many attorneys do you think we are going to

04:02:16  4    have?  I'm worried about space in the courtroom.  You all have

04:02:21  5    seen the courtroom.  There are eight chairs around each table.

04:02:28  6    I assume we are going to have to have a table on the side for

04:02:33  7    your IT people.

04:02:37  8    **MR. HOWARD:**  Hopefully, if the technology exists, as

04:02:40  9    we heard --

04:02:40  10    Is it Cesyle?

04:02:43  11    **THE COURT:**  Cesyle, yes.

04:02:43  12    **MR. HOWARD:**  -- mention and we have -- Mr. Weinberger

04:02:45  13    asked if there's a wireless connection.  We have software, as

04:02:50  14    I'm told, you literally can bring in iPads and be calling up

04:02:56  15    exhibits off of iPads, which will link to the screens and

04:02:59  16    everything.

04:03:00  17    Beyond us -- we will probably have one graphics

04:03:05  18    guy.  We are not going to have a whole IT team, I think.

04:03:05  19    **THE COURT:**  I'm talking one person.  I don't know if

04:03:08  20    you all will have one --

04:03:10  21    **MR. HOWARD:**  But he might be backup, or Dan might be

04:03:12  22    doing it with us at counsel table.

04:03:13  23    **THE COURT:**  How many lawyers?

04:03:14  24    **MR. HOWARD:**  Well, we have a number of lawyers, I

04:03:16  25    think, who will be actively participating in the sense of

04:03:20  1   taking witnesses.  But I don't think we need to put everybody
04:03:22  2   at counsel table, if you will give us the flexibility to have
04:03:26  3   someone come in and make a guest appearance, so to speak.
04:03:29  4         Certainly in the beginning we would introduce
04:03:32  5   everyone to the jury and make sure, obviously, that the jury
04:03:34  6   doesn't know any of them.  But for sitting at counsel table, my
04:03:38  7   thinking was three or four attorneys and one of our clients.
04:03:41  8   And the client might rotate as well because I'm not sure we are
04:03:45  9   going to get anyone who is going to be able to be there for a
04:03:48  10  full month.  So we are really looking at five spots at counsel
04:03:52  11  table.
04:03:52  12        THE COURT:  And then a few lawyers not at counsel
04:03:58  13  table?
04:03:58  14        MR. HOWARD:  Yeah.  We are going to have people in
04:04:01  15  the courtroom, and there may be other of the workers and there
04:04:03  16  may be other counsel from some of the other --
04:04:07  17        THE COURT:  Well, what I'm trying to get a feel for
04:04:09  18  is whether we need another courtroom.  We have had cases where
04:04:14  19  we would have another courtroom where you could hear and --
04:04:19  20        MR. HOWARD:  Like an overflow?
04:04:20  21        THE COURT:  Like an overflow.
04:04:22  22        MR. HOWARD:  I don't know that we are going to have
04:04:23  23  that many people.
04:04:24  24        THE COURT:  We've done that in BP.  Well, you all
04:04:25  25  look in my courtroom.  There are only two rows of benches

04:04:28  1   behind the bar.

04:04:29  2           MR. HOWARD:  Oh, okay.

04:04:30  3           MS. HANGARTNER:  There's not that much --

04:04:32  4           THE COURT:  Space.  We could maybe put some more -- I

04:04:36  5   don't think that chairs will -- like another row of chairs

04:04:39  6   won't fit.  I can't ask anybody else for their courtroom for a

04:04:45  7   month unless it's like one that's not in use and it wouldn't --

04:04:50  8   I could only use that for an overflow.  It wouldn't have all

04:04:54  9   the technology.

04:04:55  10          MR. RABBANI:  Your Honor, is additional chairs around

04:04:57  11  counsel table an option or not?

04:04:58  12          THE COURT:  Well, there's just not that much room.

04:05:00  13  You can get eight people there, at the most.

04:05:04  14              How many lawyers --

04:05:05  15          MR. WEINBERGER:  To kind of drill down on this a

04:05:07  16  little bit, getting pretty granular about it, Judge, you have

04:05:10  17  obviously the chairs in front of the seating area.  Judge, it

04:05:14  18  seems to me that the real question is people coming in and out.

04:05:19  19  There would be a group -- two, three key people who would be at

04:05:21  20  counsel table all the time.  The trial would start.  Other

04:05:25  21  lawyers who will be involved in the process will be sitting at

04:05:28  22  the chairs in front of the seating area, maybe right there.

04:05:31  23              But the lawyer who opens will explain the

04:05:33  24  situation.  With your permission, it would be explained that

04:05:37  25  some lawyers will come in, not be there all the time --

04:05:39   1    **THE COURT:**  The jury doesn't care about that.  I care
04:05:43   2    about how much room you need, so that's my concern.  Of course,
04:05:47   3    we can't have constant people coming in and out because it's
04:05:54   4    distracting to the jury.  So for the morning, whatever, you are
04:05:57   5    going to have whoever you want there there.  We have some
04:06:00   6    chairs along the wall.  But it just gets tight.  You know, you
04:06:05   7    all have things with you, so --
04:06:07   8                    **MR. WEINBERGER:**  Sure.
04:06:08   9                    **MS. HANGARTNER:**  I think we may need an overflow --
04:06:10   10                   **MR. HOWARD:**  If you can reserve one, it makes sense.
04:06:16   11                   **THE COURT:**  I will have to be sure that we can get
04:06:17   12   audio there.  So that way, if you all have people who aren't
04:06:22   13   participating but they want to be able to hear, they can sit in
04:06:25   14   that other room.  They can work.  They can do whatever they
04:06:28   15   need to do.  So we will check on that.
04:06:31   16                   **MS. HANGARTNER:**  Thank you.
04:06:36   17                   **THE COURT:**  If you want daily transcripts or real
04:06:40   18   time, you need to contact Betty DiMarco, D-I-M-A-R-C-O, in the
04:06:46   19   clerk's office.
04:06:51   20                       You all already met Cesyle and talked to her
04:06:54   21   about courtroom technology.  You can contact her, and I do want
04:07:01   22   you all to do that.  Don't come in fumbling the first day and
04:07:06   23   don't -- you have to have a plan for exhibits.  If the person
04:07:16   24   on the stand needs exhibits, they need to have a book or they
04:07:19   25   need to have copies of the ones -- they might want to look at

04:07:23  1    the whole thing.  I don't like to put a witness in the position
04:07:26  2    of your asking them about something and they really want to see
04:07:30  3    the whole document and then you don't have one to give to them.
04:07:34  4    So those kinds of logistical things, just make sure that you
04:07:38  5    are prepared before you come so it goes as smoothly as
04:07:43  6    possible.
04:07:45  7         MS. HANGARTNER:  Can we make an appointment with her
04:07:49  8    to do a test run?
04:07:50  9         THE COURT:  Absolutely.  I want you to do that.  I
04:07:50  10   want everybody to --
04:07:52  11        MR. HOWARD:  She said she was leaving at 5:00 today
04:07:56  12   and we don't want to keep her, but I think we are back
04:07:57  13   December 17, pretrial conference.  We can maybe make time that
04:08:06  14   morning.
04:08:06  15             You guys are here all the time.  You could do it
04:08:06  16   anytime.
04:08:11  17        THE COURT:  We will tell her that you all are going
04:08:13  18   to contact her about coming in on December 17, anybody who
04:08:19  19   wants to, but everybody do it at some point.
04:08:22  20        MR. HOWARD:  I take it there's a screen that the jury
04:08:27  21   sees and then there's little screens on --
04:08:30  22        THE COURT:  You all can walk in there when you leave
04:08:32  23   here.  There are monitors everywhere, and there is also a big
04:08:35  24   screen that comes down on the wall.  So the jurors, the ones
04:08:39  25   who can see better at a distance can sometimes look up there;

04:08:42  1  and the ones who see better up close look at the small one.

04:08:48  2          Your exhibit list and your witness list are -- I

04:08:52  3  hope that you all just did that out of an abundance of caution

04:08:56  4  because there's no way that you can use -- how many?  Is it a

04:09:00  5  thousand exhibits?

04:09:01  6          MR. HOWARD:  We are going to be whittling that down

04:09:04  7  for December 1, absolutely.

04:09:08  8          MR. CERNIGLIA:  Your Honor, on that point, I had sent

04:09:10  9  this in an e-mail.  Steve and I have no possible way of opening

04:09:15  10  the documents that have been -- from electronic document

04:09:18  11  production.  They are under some TrueCrypt or some such

04:09:22  12  program.  My client has neither the financial ability to pay

04:09:27  13  for that -- I would never figure out how to use it.

04:09:30  14          I had suggested that every party, when they pare

04:09:35  15  down their final exhibit list, if they could make CDs or flash

04:09:40  16  drives in PDF form of each document they are going to use so I

04:09:46  17  can actually look at them and see it.

04:09:49  18          THE COURT:  What's Signal's position on how -- you

04:09:52  19  listed, I don't know, a big number of documents -- but what you

04:09:56  20  are actually going to end up with in terms of numbers of

04:10:01  21  exhibits?

04:10:01  22          MS. HANGARTNER:  We are not sure exactly the number.

04:10:03  23  Like Mr. Howard, we do plan on paring it down.

04:10:07  24          MR. UNGAR:  Substantially.

04:10:09  25          MS. HANGARTNER:  I think the issue is that I'm not

| | |
|---|---|
| 04:10:10 | 1 |
| 04:10:14 | 2 |

sure if we can -- can we take documents that are in native and
move it for a PDF?

        MR. ROUX:  We could facilitate that, but it would
take some time and we would have to have the final list of what
was going to be done.  It would incur costs as well for Signal.
But plaintiffs are also in a position to do the same for theirs
within the same system.  They will use the same system that we
do.

        THE COURT:  Mr. Cerniglia, you're asking for when
they -- when you are doing your pretrial order --

        MR. CERNIGLIA:  Yes.

        THE COURT:  -- and you have your list of exhibits
there, that you would like those exhibits in PDF.

        MR. CERNIGLIA:  Anything that I can open.

        MR. ROUX:  There would be a cost associated with
that.

        THE COURT:  You just can't use documents as exhibits
that you don't provide to the other party.

        MR. HOWARD:  Well, they have had them.

        THE COURT:  In a way that they can see them.  So you
just have to do that.  You cannot propose to introduce exhibits
if the other -- that your other parties can't see.

        MR. UNGAR:  We are going to be able to put them in
bench books for Your Honor and everything too.

        THE COURT:  At that point you are going to have to

04:11:22  1   have them in a scanned kind of format, since you are going to

04:11:27  2   do benchbooks for me and -- depending on how many they are.  So

04:11:29  3   you all need to talk to me about that.

04:11:33  4        MR. ROUX:  It occurs to me, for us to provide the

04:11:34  5   printed-out benchbooks, we are going to have to do the

04:11:38  6   conversion anyway.  So we could facilitate, and I'm sure

04:11:41  7   plaintiffs can do the same with the documents they intend to

04:11:43  8   use from their vendor.

04:11:45  9        MR. CERNIGLIA:  We can do the same.

04:11:47  10       MR. ROUX:  We can facilitate that.

04:11:49  11       THE COURT:  We have an agreement from the parties

04:11:53  12  that the list of exhibits that you put in the pretrial order,

04:11:55  13  you're going to make that available to the Dewan and Burnett

04:12:02  14  defendants in a readable, accessible format.

04:12:07  15       MR. SHAPIRO:  What deadline do we have for that?

04:12:11  16       MS. TSU:  December 12.

04:12:13  17       MR. SHAPIRO:  One month before trial.

04:12:15  18       MR. UNGAR:  That's the pretrial order.

04:12:16  19       THE COURT:  I want you all to look at the pretrial

04:12:19  20  notice.  I believe there's a -- of course, I know you all are

04:12:25  21  good lawyers, and there's so much that -- you are going to be

04:12:28  22  working on this before then.  To be able to submit your

04:12:32  23  pretrial order by the deadline, you're going to have to be

04:12:35  24  working with each other long before that to get it done.

04:12:40  25       MR. UNGAR:  Yes, your Honor.  Your notice says

1   10 days prior to submission, but this is a detailed order

2   that's going to require more time.

3         THE COURT:   Right.   Some people come in and they have

4   it done in 10 days.   You all are going to need a lot longer

5   than that.

6         MR. HOWARD:   In that regard I was looking through the

7   pretrial order and the different elements of it, and one of the

8   ones that seemed to be the potentially most onerous -- but it

9   really depends upon how detailed we are supposed to be --

10  concerns the disputed and undisputed statements of fact.   That

11  also will be impacted, obviously, by the summary judgment

12  motions.   But I don't anticipate that there will be resolution

13  on those by the 12th.   So we have to anticipate that, for

14  example, they are all denied and all the claims are in there.

15        I'm just curious as to your practice, as to how

16  granular you need us to get on what really the parties can

17  understand are the major areas of dispute and potentially areas

18  where we can stipulate to certain facts.   If we are at a

19  30,000-foot level or a 10,000-foot level, it's a lot easier

20  than --

21        THE COURT:   What you are trying to do is make sure

22  everybody understands, all of you.   Really, I don't usually get

23  involved in that.

24        MR. HOWARD:   Right.

25        THE COURT:   I look at what the undisputed facts are,

1  and sometimes those are -- and discuss whether we need

2  stipulations about some of that.  But it really is a

3  case-by-case basis.  You all have to -- you have to get it to

4  the degree necessary for there not to be any dispute about it.

5  Let's put it that way.

6      MR. HOWARD:  I'm anxious, if we can, to work out as

7  many undisputed facts that we can stipulate to.  And things

8  like authenticity of documents -- the case is going to be long

9  enough.  If I have to authenticate every document before

10  offering it into evidence and address points that should be

11  stipulated to, it's going to take forever.

12      MR. UNGAR:  We agree with everything Mr. Howard is

13  saying about that.  We want to work together to eliminate as

14  many undisputed facts as we can and work for a month and not

15  10 days on the pretrial order to get it as focused as it can be

16  for trial.  But it's going to be expensive in the sense that it

17  will cover every law that could apply and all of the claims.

18  So we will work together to make it as limited as it can be.

19      THE COURT:  You don't have to go overboard.  Be

20  reasonable about how you describe the undisputed facts and the

21  issues of law, but you have to strike that balance.  It has to

22  be enough that everybody understands what you are talking about

23  so nobody screams later, oh, you never said this, you never

24  brought this up.

25      MR. HOWARD:  It could be one, too, that in

04:15:38  1    conjunction with that process, to start early the jury
04:15:41  2    instruction process, because that's the ultimate end game for
04:15:47  3    these.  This is like a segue to get there, and if we can get to
04:15:52  4    an agreement on jury instructions and also an agreement on
04:15:55  5    where we disagree on jury instructions, I think the efforts
04:16:00  6    would probably be better served going right to that point.
04:16:04  7              THE COURT:  And that's something that I will actually
04:16:05  8    use.
04:16:05  9              MR. HOWARD:  Exactly.
04:16:05  10             MR. UNGAR:  We're happy to start with all of them.
04:16:07  11             MS. HANGARTNER:  Are you going to allow a jury
04:16:09  12   questionnaire?
04:16:10  13             THE COURT:  I have all this stuff on my agenda, so
04:16:11  14   let's not get out of order.
04:16:14  15             MS. HANGARTNER:  But you said the attorneys should
04:16:14  16   talk --
04:16:15  17             MR. HOWARD:  We should set kind of a working list.
04:16:18  18             Tim and Steve, I know you guys are kind of
04:16:21  19   stretched really thin.  I don't know the level of participation
04:16:25  20   you want or how you want to be included in that process.
04:16:29  21             MR. CERNIGLIA:  Just try and copy me on any e-mails,
04:16:32  22   but likely I'm just going to have to defer to the two
04:16:35  23   powerhouses and the law.  I will have very few, I'm sure,
04:16:41  24   things that I will be concerned about -- enough concerned about
04:16:45  25   that I can do the research.

04:16:48  1      **THE COURT:**  Let me say this.  Look at the pretrial
04:16:52  2  notice about the jury instructions.  What I expect you to do is
04:16:57  3  joint jury instructions from start to finish.  And the ones you
04:17:05  4  agree on, just put it there; and if you get to one you disagree
04:17:09  5  on, put your position, plaintiffs' position, defendants'
04:17:12  6  position, and a little bit of argument so I can just go
04:17:18  7  straight to those.
04:17:19  8      I think it's an excellent idea for you all to
04:17:21  9  start with the jury instructions in conjunction with your
04:17:26  10  preparing the pretrial order because what I usually do is at
04:17:33  11  the beginning of the case -- well, before the case even starts,
04:17:37  12  I have a deadline for you all to give me your joint jury
04:17:41  13  instructions.  And then during the case, we are going back and
04:17:44  14  forth revising, giving them back, having conferences to talk
04:17:50  15  about them.  Here we have a little longer time, but we have a
04:17:54  16  lot of complicated factors.
04:17:56  17      **MR. HOWARD:**  If it's at all possible, if we do it
04:17:58  18  early enough, my proposal and suggestion/request would be if we
04:18:05  19  could get some resolution on some of the jury instructions
04:18:09  20  before opening statements so in the opening we can use those as
04:18:13  21  a guideline as to what evidence we need to show, and these are
04:18:17  22  the elements of the cases, as you will be instructed at the end
04:18:20  23  of case, as opposed to having a moving target during the case.
04:18:24  24  I understand often the charging conference is sometime late in
04:18:28  25  the game.

04:18:29  1    THE COURT:  Sometimes it depends on what the evidence
04:18:31  2  was, so you can't decide.  But to the extent we can decide, we
04:18:35  3  can talk about it.
04:18:37  4    MR. SHAPIRO:  I would like to be included in the
04:18:40  5  process at all times.
04:18:45  6    THE COURT:  All the drafts need to be circulated to
04:18:47  7  all the attorneys in the case, obviously, and you all can
04:18:52  8  participate.
04:18:53  9    MR. SHAPIRO:  Mr. Howard asked what -- questioned
04:18:54  10  what level of participation do I want to have.  Mr. Cerniglia
04:18:58  11  gave you one -- I want to have more of an active role.  And I
04:19:04  12  agree with you.  We need to get to these jury instructions now
04:19:08  13  rather than later.
04:19:10  14    MR. CERNIGLIA:  Judge, do you have a set of -- I call
04:19:11  15  them standard jury instructions, expert witnesses, normal
04:19:17  16  witnesses.  Everybody's entitled to --
04:19:21  17    THE COURT:  Mostly Fifth Circuit jury instructions.
04:19:24  18    MR. CERNIGLIA:  So we can just leave those alone,
04:19:25  19  just --
04:19:25  20    THE COURT:  Well, no.  I want you to give me the
04:19:28  21  whole thing.
04:19:28  22    MR. CERNIGLIA:  Okay.
04:19:28  23    THE COURT:  But look at the Fifth Circuit
04:19:30  24  instructions.  You can look at other cases, jury cases I have
04:19:34  25  had.  What I get from you is going to be start to finish.  That

04:19:38   1   way the things -- I don't want to be getting standard kind of
04:19:44   2   instructions, one version from the plaintiff and one from the
04:19:48   3   defendant and I'm trying to decide what one word should change.
04:19:53   4   Just do the whole thing, but you can look at Fifth Circuit and
04:19:56   5   look at ones I have done before.  I haven't had a case just
04:20:00   6   like this.
04:20:03   7            MR. CERNIGLIA:  I've heard conflicting reports as to
04:20:04   8   whether those Fifth Circuit are actually Fifth Circuit.  I
04:20:11   9   think I saw a footnote a couple days ago "these are not
04:20:13  10   necessarily by us."
04:20:17  11            THE COURT:  Well, it's some committee that puts them
04:20:19  12   together, and it's no guarantee that -- but they try to use
04:20:23  13   Fifth Circuit cases.  Jury instruction by committee.
04:20:29  14            MR. HOWARD:  We will have our own committee.
04:20:34  15            MR. SHAPIRO:  Your Honor, what I'm envisioning is a
04:20:38  16   joint set of jury instructions with objections.  Say, if we
04:20:42  17   disagree on some language in one of the provisions, right
04:20:46  18   underneath it we put what our position is and why we want the
04:20:50  19   instruction that way.
04:20:50  20            THE COURT:  Right.  In other words, I have one
04:20:52  21   document.  I go, "Oh, they all agree on page 1 through 8.
04:20:56  22   Great."  Then I get to 9, and here's your version, your version
04:21:02  23   and argument citing cases about why your version is correct and
04:21:07  24   theirs is wrong or why their version isn't needed at all.
04:21:12  25            And then on the jury verdict form, we do the

04:21:15  1   same thing.  Sometimes people take entirely different
04:21:21  2   approaches, and there's no way to meld them.  If that's the
04:21:24  3   case, then you just make it one document, but it's basically
04:21:28  4   yours, yours, and yours.
04:21:30  5            Maybe this won't be a case where it's
04:21:32  6   simplified.  I don't know. I can't imagine that it won't be.
04:21:35  7   That's why it's so -- I'm always amazed when lawyers don't
04:21:42  8   spend enough time on the jury instructions and the jury verdict
04:21:46  9   form.  You do all this work, and that's the culmination of it.
04:21:49  10  So you need to pay attention to that and not have it be an
04:21:55  11  afterthought.
04:21:58  12            As far as what the claims are, one of the things
04:22:06  13  we talked about was the FLSA claims.  There are cross motions.
04:22:13  14  That may be taken care of on summary judgment; it may not.
04:22:17  15            I would like for somebody to tell me what the
04:22:19  16  other claims are so that I can be sure that I know what you
04:22:23  17  all -- you may say some of it depends on summary judgment.
04:22:27  18            **MR. HOWARD:**  And I do want to say, Your Honor, that
04:22:29  19  we are giving some serious consideration to withdrawing certain
04:22:37  20  claims to narrow and make this less complex on certain issues.
04:22:43  21  I haven't gotten authorization from our clients to do that, but
04:22:48  22  I can mention a couple instances where we are at least
04:22:52  23  contemplating it.
04:22:53  24            **THE COURT:**  Okay.
04:22:54  25            **MR. HOWARD:**  But with the team backing me up when I

| | |
|---|---|
| 04:22:58 | 1 |
| 04:23:04 | 2 |
| 04:23:10 | 3 |
| 04:23:16 | 4 |
| 04:23:21 | 5 |
| 04:23:24 | 6 |
| 04:23:26 | 7 |
| 04:23:34 | 8 |
| 04:23:35 | 9 |
| 04:23:37 | 10 |
| 04:23:39 | 11 |
| 04:23:42 | 12 |
| 04:23:43 | 13 |
| 04:23:47 | 14 |
| 04:23:48 | 15 |
| 04:23:50 | 16 |
| 04:23:52 | 17 |
| 04:23:54 | 18 |
| 04:23:56 | 19 |
| 04:24:00 | 20 |
| 04:24:03 | 21 |
| 04:24:08 | 22 |
| 04:24:10 | 23 |
| 04:24:10 | 24 |
| 04:24:11 | 25 |

miss one, I know that we have the TVPRA, the Trafficking

Victims Protection Act claims.  Now, under the TVPRA there are

a number of different claims; for example, § 1589 and § 1590,

which are the forced labor claims.  Those are --

MR. WEINBERGER:  Forced labor and trafficking.

MR. HOWARD:  And trafficking.  Those are staying in.

There are others, which are § 1583, § 1584, and § 1592.

MR. WEINBERGER:  But if you do that, will you get rid

of the § 1985 claim as well?

MR. HOWARD:  We are considering it.

MR. CERNIGLIA:  Say those again, Alan.  I didn't have

my glasses on.

MR. HOWARD:  When you say if I do that -- I haven't

even said it yet.  You're saying is, if we drop those other

three -- is that what you're saying?

MR. WEINBERGER:  Well, it wouldn't make any sense to

do one without doing the other because --

MR. HOWARD:  I know, but I hadn't said it yet.  I

feel like the guy in the commercial, in the iPhone

commercial.  Alan, you are inside my head.

THE COURT:  So they're § 1583, § 1584, and § 1592.

MR. HOWARD:  Correct.

THE COURT:  Which are what?

MR. HOWARD:  They are more traditional trafficking,

and then there's a document servitude --

04:24:15  1      **MR. WEINBERGER:**  Specifically, Your Honor, they are

04:24:16  2  slavery, involuntary servitude, and a kind of document fraud

04:24:22  3  associated with immigration issues.

04:24:25  4      **MS. TSU:**  Document servitude.

04:24:26  5      **MR. HOWARD:**  Document servitude is what it is called.

04:24:28  6  And we are contemplating dropping those three and leaving in --

04:24:31  7  making it a § 1589 and § 1590.

04:24:32  8      **MR. WEINBERGER:**  RICO as well?

04:24:34  9      **THE COURT:**  Wait, wait.  Don't interrupt him.  I

04:24:36  10  cannot hear what he is saying.

04:24:36  11      **MR. WEINBERGER:**  Sorry, Your Honor.

04:24:38  12      **THE COURT:**  You're considering dropping § 1583,

04:24:41  13  § 1584, and § 1592?

04:24:43  14      **MR. HOWARD:**  Correct.

04:24:47  15      **THE COURT:**  That would make it a what?

04:24:49  16      **MR. HOWARD:**  That would mean that the TVPR claims

04:24:52  17  would be exclusively focused on § 1589 and § 1590.

04:24:58  18          Have I missed anything?

04:25:01  19      **THE COURT:**  All right.

04:25:02  20      **MR. HOWARD:**  As Mr. Weinberger noted, there's also a

04:25:04  21  § 1985 claim, which is 42 U.S.C. § 1985.  We are contemplating

04:25:20  22  dropping that as well.

04:25:26  23      **THE COURT:**  Okay.

04:25:26  24      **MR. HOWARD:**  The other claims, there are RICO claims.

04:25:30  25  Those are staying in.

04:25:35    1        **MR. WERNER:**  Except with respect to --

04:25:35    2        **MR. HOWARD:**  Well, certain predicate acts would

04:25:37    3   obviously fall out based on there being -- if we drop some of

04:25:41    4   the elements of the TVPRA, they wouldn't be predicate acts for

04:25:46    5   the RICO claims, obviously.  So it would have to be --

04:25:49    6        **MR. WEINBERGER:**  Can we point out that this would

04:25:53    7   moot some of the summary judgment practice as well?

04:25:54    8        **MR. HOWARD:**  That's why -- we would let the judge --

04:25:55    9   no, there is some summary judgment practice --

04:25:56   10        **MR. WEINBERGER:**  Some things she may not have to

04:25:58   11   reach.

04:25:58   12        **MR. HOWARD:**  There's § 1985, right?

04:26:01   13        **MR. WEINBERGER:**  Yes.  I moved on that.  §§ 1583 and

04:26:05   14   1584 as well.  So let's relieve the judge of some of this --

04:26:07   15        **MR. HOWARD:**  Right.  So the point is --

04:26:09   16        **THE COURT:**  Yes.  When can you let me know?

04:26:13   17        **MR. HOWARD:**  Well, certainly by the time we would

04:26:14   18   have to oppose.  If we are not going to oppose, if we are going

04:26:19   19   to withdraw, we'll let you know.  I assume you are not going to

04:26:21   20   read them before you get the opposition.

04:26:25   21        **THE COURT:**  No.

04:26:25   22        **MR. WEINBERGER:**  Very reasonable.

04:26:31   23        **MR. HOWARD:**  Okay.  Thank you.

04:26:33   24        We have the common law type claims that are in

04:26:38   25   there:  the fraud, tort claims, intentional infliction of

| | | |
|---|---|---|
| 04:26:43 | 1 | emotional distress, the negligent infliction of emotional |
| 04:26:47 | 2 | distress.  We are revisiting on that, however. |
| 04:26:51 | 3 | MS. HANGARTNER:  Just the emotional distress -- |
| 04:26:52 | 4 | MR. HOWARD:  The negligent infliction of emotional |
| 04:26:57 | 5 | distress. |
| 04:26:58 | 6 | THE COURT:  The only one you are considering dropping |
| 04:27:01 | 7 | is negligent -- |
| 04:27:01 | 8 | MR. HOWARD:  Correct.  There is § 1981, the |
| 04:27:06 | 9 | discrimination claims.  Those are absolutely staying in.  We |
| 04:27:14 | 10 | have a retaliation claim on behalf of one plaintiff going to |
| 04:27:19 | 11 | trial in January, Mr. Kaddakkarappally, |
| 04:27:20 | 12 | K-A-D-D-A-K-K-A-R-A-P-P-A-L-L-Y.  There are cross motions for |
| 04:27:33 | 13 | summary judgment with respect to that claim. |
| 04:27:37 | 14 | The assault and battery claim is still on the |
| 04:27:42 | 15 | table.  Was there a motion made for that one? |
| 04:27:48 | 16 | MR. WERNER:  Signal filed a motion. |
| 04:27:49 | 17 | MR. HOWARD:  I haven't read that one yet. |
| 04:27:52 | 18 | MR. UNGAR:  That, too, is just one plaintiff going to |
| 04:27:54 | 19 | the first trial, correct? |
| 04:27:57 | 20 | MR. HOWARD:  Okay.  If it's the March 9 claim, then |
| 04:27:59 | 21 | that's just Jacob Joseph Kaddakkarappally, correct. |
| 04:28:06 | 22 | Now am I missing any?  False imprisonment.  And |
| 04:28:07 | 23 | that's Jacob Joseph Kaddakkarappally as well. |
| 04:28:11 | 24 | MR. UNGAR:  On the Civil Rights Act -- |
| 04:28:12 | 25 | MR. WERNER:  I understand.  False imprisonment stays. |

04:28:16   1          MR. HOWARD:  Well, we have § 1981.  That's
04:28:18   2   discrimination.
04:28:18   3          MR. UNGAR:  Discrimination.
04:28:18   4          MR. WERNER:  § 1985 is the --
04:28:20   5          MR. HOWARD:  Ku Klux Klan Act, and that's what --
04:28:22   6          THE COURT:  You did mention § 1981.
04:28:25   7          MR. HOWARD:  Correct.  That stays in.
04:28:28   8          TVPRA, RICO, § 1981 are the federal claims,
04:28:31   9   although we are going to clean up, as I said, some of the
04:28:34  10   elements.  § 1985 would be coming out -- again, subject to just
04:28:40  11   kind of giving you an alert that this is what is currently
04:28:43  12   being considered.
04:28:45  13          And then we have the common law claims and the
04:28:50  14   claims specific to our victim of the March 9 incidents.
04:29:12  15          FLSA is what you started with.  That's being
04:29:15  16   handled separately.  And I think whatever the case would be,
04:29:19  17   where it goes on summary judgment in the different motions --
04:29:22  18   these are similar claims with people who are not going to trial
04:29:27  19   in January.  So to try those FLSA claims for those six people
04:29:34  20   really -- or five people really wouldn't make sense.  We would
04:29:37  21   agree with Signal on that.
04:29:40  22          THE COURT:  I have on my list the claims arising out
04:29:43  23   of the March 9 incident were false imprisonment, intentional
04:29:49  24   and negligent infliction of emotional distress and breach of
04:29:54  25   contract.  Is there --

04:29:57  1      **MR. HOWARD:**  Assault and battery.

04:30:02  2      **THE COURT:**  Assault and battery.

04:30:02  3           Then there are other -- are the infliction of

04:30:04  4  mental distress claims only related to that, to that extent?

04:30:11  5      **MR. HOWARD:**  Yes.

04:30:14  6      **MR. WERNER:**  As a correction, Your Honor, the

04:30:15  7  contract claims are not part of the March 9 incident.  I

04:30:18  8  believe it's --

04:30:19  9      **THE COURT:**  Yeah.  I had a semicolon there.

04:30:24  10     **MS. TSU:**  Your Honor, it would be mooted if we ended

04:30:26  11 up dropping the § 1985 claims.  But there are two separate

04:30:30  12 ones.  One is specific to the March 9 plaintiffs, and one is to

04:30:32  13 the whole group.

04:30:45  14     **THE COURT:**  Did you list your breach of contract

04:30:46  15 claims?

04:30:47  16     **MR. HOWARD:**  I think I mentioned it under the heading

04:30:49  17 of the state law claims.  Breach of contract, fraud, and then I

04:30:55  18 got to the negligent misrepresentation and then to the March 9

04:31:00  19 claims.  So those would all be staying in.

04:31:17  20     **THE COURT:**  Does anybody else have any questions, any

04:31:19  21 other questions about that list?

04:31:29  22           The video depositions of the Indian parties, has

04:31:36  23 that been done, not done, resolved?

04:31:40  24     **MR. SHAPIRO:**  I believe this was an issue that

04:31:40  25 Mr. Howard wanted to take up today.

04:31:42  1      We looked into the cost associated with taking
04:31:48  2  these depositions and it is, frankly, prohibitive, so we have
04:31:55  3  opted not to.  We removed the names of the witnesses from the
04:31:58  4  will-call list, but we did put them on the may-call.  I think
04:32:02  5  that has created an issue for the plaintiffs.
04:32:07  6      MR. HOWARD:  It did, Your Honor.  We went through the
04:32:11  7  exercise where the Court gave a direction if they are going to
04:32:16  8  come to trial, we have to have the opportunity to depose them,
04:32:18  9  and then gave Mr. Shapiro the opportunity to choose.  Our
04:32:25  10  understanding when he did not -- for cost reasons or whatever,
04:32:29  11  declined to make these individuals available for deposition,
04:32:32  12  that gave us comfort that, based on our whole discussion, they
04:32:37  13  were not showing up at trial.
04:32:40  14      We don't think you can just move them from
04:32:44  15  will-call to a may-call list and leave open the potential of
04:32:47  16  bringing them to trial if we don't get the opportunity to
04:32:51  17  depose them.  That was the whole reason we went through the
04:32:54  18  exercise.  Our view is they are either not on any witness list
04:32:58  19  at all or we get the opportunity to depose them.
04:33:04  20      MR. SHAPIRO:  I understand what Mr. Howard is saying.
04:33:06  21  I guess we will just have to -- we have some logistical
04:33:10  22  problems with both of these witnesses, and we certainly are --
04:33:16  23  I guess that's where it becomes very challenging financially,
04:33:23  24  when you have a client who lives halfway around the world and
04:33:27  25  witnesses there.  My hope is that they would be able to come

04:33:30    1    for trial, but I just don't know at this time.

04:33:37    2           THE COURT:  You know what my position has been.  So

04:33:38    3    you have to govern yourself accordingly, and you can't bring

04:33:42    4    them the day before trial starts.

04:33:45    5           MR. SHAPIRO:  No, I understand.

04:33:47    6           THE COURT:  So if you try to do that or you try to

04:33:50    7    bring them to have them testify when they weren't made

04:33:52    8    available for deposition, you won't be able to.  So if you

04:33:56    9    still think you want to use them, immediately you have to deal

04:34:01   10    with this, or that ship has sailed.

04:34:05   11           MS. HANGARTNER:  Steve, maybe you and I should visit

04:34:08   12    the deposition of Solimon -- I'll talk to you afterwards.

04:34:17   13           MR. UNGAR:  Judge, Signal might be able to share in

04:34:20   14    the cost of some of those depositions because we want to take

04:34:23   15    them.

04:34:23   16           THE COURT:  Okay.  Well, good.

04:34:28   17           MR. SHAPIRO:  Signal may have -- Erin's office may

04:34:31   18    have the possibility of capturing the video.

04:34:34   19                But the recording is a problem, right, Brian?  I

04:34:40   20    don't want to take a video of a screen -- take a recording of

04:34:45   21    a --

04:34:47   22           MS. HANGARTNER:  That is true.

04:34:48   23           THE COURT:  You all talk about it offline, see if you

04:34:50   24    can --

04:34:54   25           MR. WERNER:  We would want to participate in these

discussions.

MR. CERNIGLIA:  Judge, would it be correct if somebody -- and this is for trial purposes.  Any of the parties list a will-call witness but sometime during the trial decide they are not going to call that person, would the other parties then have the opportunity -- do they have to be here?  For example, if they list people on a will-call list, and I rely on that so I don't send out any subpoenas -- typically courts require anybody you put on a will-call list, even if you end up not calling them, you still make them available for the other parties to call.

THE COURT:  Usually I go over things like that at the pretrial conference.

MR. CERNIGLIA:  Okay.  That will work.  I don't need to know before then.

THE COURT:  The next thing I had on my list is, when you all do filings in excess of 50 pages, the pretrial notice says that you are supposed to give us a binder that's tabbed with -- every exhibit has a tab, it has a table of contents.  Some of the pending motions, we do not have that.

The things that right now we need binders on are on the *Daubert* motions filed by the plaintiffs with respect to Ron McAlear; and the Burnett defendants, the *Daubert* motion with respect to Cyrus Mehta and Enrique Gonzalez; and on the dispositive motions filed by the plaintiffs, retaliation under

| | | |
|---|---|---|
| 04:36:41 | 1 | 42 U.S.C. § 1981, and violations of the FLSA. |
| 04:36:52 | 2 |      **MR. WERNER:** Your Honor, those are on the way right |
| 04:36:52 | 3 | now. Those are in the mail. |
| 04:36:54 | 4 |      **MS. TSU:** I think I got a notice saying the Court has |
| 04:36:56 | 5 | signed for a UPS delivery, which I assume are those. |
| 04:37:00 | 6 |      **THE COURT:** Good. All right. That's included, your |
| 04:37:04 | 7 | *Daubert* motion about Ron McAlear? |
| 04:37:05 | 8 |      **MS. TSU:** I will have to check on that. I had |
| 04:37:07 | 9 | thought that had already gone out, so I will have to circle |
| 04:37:11 | 10 | back. |
| 04:37:11 | 11 |      **THE COURT:** So for the Burnett defendants, it's |
| 04:37:12 | 12 | Document 1827. |
| 04:37:20 | 13 |      **MR. SHAPIRO:** I wonder if we could take a 10-minute |
| 04:37:22 | 14 | break. |
| 04:37:23 | 15 |      **THE COURT:** Sure. That's a good idea. It's 4:35. |
| 04:37:28 | 16 | We will come back at 4:45. |
| 04:37:43 | 17 |      (Recess.) |
| 04:50:33 | 18 |      **THE COURT:** We need Tina to talk about opinions. |
| 04:50:39 | 19 | Tina Flores, who's my judicial assistant, is the person who has |
| 04:50:44 | 20 | talked to West Publishing. I asked her to come in and explain |
| 04:50:50 | 21 | to you all what the situation is just so you will know. She |
| 04:50:55 | 22 | knows more about it than I do. |
| 04:51:00 | 23 |      While we are waiting for her to come in, when |
| 04:51:02 | 24 | you all do consent ex parte motions, you have to specifically |
| 04:51:07 | 25 | say in the motion -- represent that you talked to all opposing |

04:51:12  1  counsel and they don't oppose it or it's not a consent ex parte

04:51:16  2  motion.  Those things are slipping in, so please be careful.

04:51:22  3  When I read it and if you don't specifically represent that you

04:51:29  4  have done that, I don't know if you just forgot to say it or

04:51:31  5  they don't consent, and that means we have to contact them.

04:51:38  6          You all know Tina.

04:51:43  7          Tina, you sit right there.

04:51:46  8          THE JUDICIAL ASSISTANT:  Your Honor, I don't need to

04:51:49  9  sit.  I'm fine.

04:51:50  10          THE COURT:  If you'll tell us what the status is

04:51:51  11  right now.  Who did you communicate with?

04:51:52  12          THE JUDICIAL ASSISTANT:  So I contacted Westlaw and

04:51:54  13  Lexis after thoroughly searching the records for all of the

04:51:58  14  orders and opinions -- thank you very much.  Who was it that

04:52:02  15  sent us --

04:52:05  16          MS. BEAN:  EEOC.

04:52:07  17          THE JUDICIAL ASSISTANT:  I went through, got all the

04:52:10  18  orders and then called Westlaw, had them pull up their records

04:52:14  19  to see which ones they had and which ones they didn't, went

04:52:18  20  through and finally made contact with somebody who is going to

04:52:23  21  create a WestClip so that she is notified every time an opinion

04:52:27  22  is filed.  And I'm also going to e-mail her, so that way

04:52:31  23  there's a backup.  And the same thing for Lexis.

04:52:38  24          THE COURT:  The point is to make sure the caption is

04:52:41  25  correct in Westlaw.

04:52:44   1          THE JUDICIAL ASSISTANT:  That they are reading the

04:52:45   2   "applies to" line correctly.  Everything that's on the record

04:52:47   3   has been corrected.  Orders that were missing have been

04:52:51   4   applied.  So everything is up-to-date as of now.

04:52:55   5          THE COURT:  Thank you very much.

04:52:59   6          THE JUDICIAL ASSISTANT:  You're welcome.

04:53:05   7          THE COURT:  Some of the topics that were raised by

04:53:08   8   Alan Howard and also commented on by other people, the ones we

04:53:12   9   haven't covered yet, are trial-specific issues such as trial

04:53:20   10  witnesses, live versus deposition, and calling adverse

04:53:25   11  witnesses.  When you do the pretrial order, you will have to

04:53:28   12  list any witnesses who you intend to call, to use their

04:53:33   13  deposition.  And then there's also a time period by which

04:53:39   14  everyone has to say what portion of the deposition you want to

04:53:43   15  use; and if people want to object, then you will object, and

04:53:49   16  then I will have to rule on those objections.

04:53:52   17          Is that what you are thinking?

04:53:53   18          MR. HOWARD:  It was, but there was a particular

04:53:55   19  concern.  The last time we were together, you noted that you

04:54:01   20  were not prepared to allow the use of party depositions for

04:54:04   21  witnesses who would actually be appearing live.  There are

04:54:09   22  several witnesses on the may-call list of Signal.  I won't

04:54:13   23  know, presumably, until they get into their case whether they

04:54:16   24  are actually calling them live or not.  So I won't know whether

04:54:19   25  I need to put in their deposition testimony as part of my

04:54:23 1  affirmative case.

04:54:25 2             We also have at least one witness I know that we

04:54:29 3  would like to call adversely, put on affirmatively as part of

04:54:33 4  our case.  And if that's going to be someone they are going to

04:54:37 5  be calling live, what I would request is that person be made

04:54:39 6  available so we can call that person live, and then they can do

04:54:44 7  their entire direct with them as part of my case.  But since

04:54:47 8  I'm not going to be able to use the depositions, it puts me in

04:54:49 9  the position of asking for these things.

04:54:54 10       THE COURT:  With the first one, you said there are

04:54:56 11  people who you don't know whether they are going to be called

04:55:01 12  live in Signal's case.

04:55:02 13       MR. HOWARD:  Correct.

04:55:05 14       THE COURT:  Are they subject to subpoena power?

04:55:08 15       MR. HOWARD:  I think they are like 110 miles from the

04:55:13 16  court, but they're also -- we are talking, for example, the

04:55:15 17  CEO, Richard Marler.  We have a video deposition of him.  He is

04:55:22 18  on the may-call witness list.  If they are not going to call

04:55:25 19  Mr. Marler, clearly I'm going to want to play portions of his

04:55:30 20  video testimony.

04:55:34 21       THE COURT:  But to do that, you would have to show

04:55:36 22  why you didn't subpoena him to be here, which I assume he's --

04:55:40 23  I don't know where he is.

04:55:40 24       MR. HOWARD:  Or I could --

04:55:42 25       MR. WERNER:  Your Honor, as far as distance, I think

04:55:49  1   most of them, as the crow flies, they are in big part kind of

04:55:51  2   outside of the subpoena power.  So it would be a question of

04:55:54  3   whether Signal is going to call them.

04:55:59  4        THE COURT:  At this point there are people who Signal

04:56:01  5   has on their may-call witness list.  So I think you need --

04:56:04  6   whether it's on "may" or "will," I think you ought to put it on

04:56:09  7   whose deposition you want to use.  List them if you have

04:56:15  8   concerns that you can't subpoena them but you have a deposition

04:56:18  9   you would like to use.

04:56:20  10        At the pretrial conference, if Signal tells

04:56:25  11   me -- when we are going over who your witnesses are and who

04:56:28  12   your depositions are, and they say, "Oh, he's going to be

04:56:32  13   here," well, then you're representing you're going to make him

04:56:37  14   here, and I'm going to hold you to that.  You put them in the

04:56:42  15   pretrial order, and then we are going to discuss it at the

04:56:45  16   pretrial conference.

04:56:47  17        MR. HOWARD:  We may be able to reach agreement.  For

04:56:50  18   example, the person I would like to call adversely, they would

04:56:53  19   be willing because they get to put in all his testimony during

04:56:56  20   my case.

04:56:59  21        THE COURT:  The way that I usually handle that, if

04:57:03  22   it's the CEO of Signal and they say, "Well, he is our main

04:57:08  23   witness, and we want to put him on in our case," well, if you

04:57:11  24   call him adversely, I may let them defer and call them in their

04:57:17  25   case in chief.

04:57:19   1          MR. HOWARD:  That's fine.

04:57:19   2          THE COURT:  Other, more minor witnesses, I don't want

04:57:21   3   to have them up there twice.  I would rather, if they are here

04:57:24   4   and they go on the stand, then you all take them all at one

04:57:29   5   time.  But if there's certain key witnesses, your main

04:57:32   6   corporate representative or whatever that you want in your case

04:57:34   7   in chief, then we will talk about that.  I thought we should

04:57:41   8   talk about that at the pretrial conference too.

04:57:44   9          MS. HANGARTNER:  Just let me know.

04:57:45   10         THE COURT:  So you let them know who -- and it may be

04:57:49   11  somebody they say, "That's fine.  We will take them on direct

04:57:52   12  after you do it on cross."

04:57:55   13         MR. HOWARD:  Or if they want to defer.

04:57:57   14         THE COURT:  The problem with doing it any other way

04:57:59   15  is then you get into, well, they put him on, then they call him

04:58:02   16  on direct, and you get to cross, and they don't like that you

04:58:05   17  got to cross him twice, really.  And it's hard for me to

04:58:08   18  have --

04:58:09   19         MR. HOWARD:  It's going to be long enough, it will be

04:58:12   20  nice to just streamline the witnesses as we can.

04:58:14   21         THE COURT:  That person is probably going to be here

04:58:16   22  to testify and go home.  You don't want him to hang around for

04:58:20   23  two weeks.

04:58:22   24         MR. HOWARD:  The only other thing that I had on

04:58:27   25  there, on exhibit issues, in exchange of exhibits -- well, one

04:58:29   1   was the exchange which covered the point that Tim raised.

04:58:34   2   We've addressed that.

04:58:34   3          One other issue that's come up with respect to

04:58:36   4   exhibits is, understandably, in an abundance of caution, Signal

04:58:43   5   designated most of their production as confidential, even

04:58:47   6   routine e-mails.  Technically we are going to have to clear the

04:58:54   7   courtroom every time I want the introduce an exhibit.  How do

04:58:56   8   we deal with this?

04:58:56   9          THE COURT:  When you all get to the stage where you

04:58:58  10   have listed exhibits in the pretrial order so you've narrowed

04:59:02  11   it down, at that point look at the exhibits and see if there

04:59:05  12   are any that are truly confidential, and then let's discuss

04:59:11  13   those at the pretrial conference because it's likely that they

04:59:15  14   are not.  Number one, they are old.  What is it about these

04:59:20  15   documents that's confidential?  We just can't have the

04:59:24  16   courtroom cleared all the time or, you know, 10 times a day.  I

04:59:31  17   will assume that you will give that a hard look, and if there's

04:59:34  18   something that's really confidential, you will let me know.

04:59:37  19   Otherwise, they will just be public.

04:59:44  20          I wanted to mention to you that when you list

04:59:46  21   exhibits on the pretrial order, they all need to be specific

04:59:52  22   and they need to be by Bates numbers.  I looked at your exhibit

04:59:55  23   list, and I see that for most things you have listed them by

05:00:00  24   Bates numbers.  Continue that in the pretrial order.

05:00:04  25          I wondered about some things that did not have

05:00:07  1    Bates numbers, why they didn't.  It looked like they were
05:00:11  2    Signal documents or other people's documents.  Like here, I'm
05:00:17  3    on page 7 of Exhibit 1783, Exhibit 102, Binion, Tracey, not
05:00:28  4    Bates-stamped, and it says "Signal International, Texas, 2010,
05:00:32  5    Orientation Checklist."  Well, isn't that a Signal document?
05:00:36  6    Why doesn't it have a Bates number?
05:00:39  7             MS. HANGARTNER:  It should have a Bates number.
05:00:40  8             MR. UNGAR:  Whose is this, Your Honor?  Is that our
05:00:48  9    list?
05:00:49  10            THE COURT:  I'm not sure, but whoever must have
05:00:50  11   thought there was no Bates number.
05:00:52  12            MR. CERNIGLIA:  There were some documents that I had
05:00:54  13   copies of that were presented in depositions, or I got them
05:01:04  14   from Ralph Alexis, or different companies' documents.  But I
05:01:09  15   have no Bates number and I have no way I can figure out how
05:01:13  16   to -- I can make a copy of the document because I have it.
05:01:17  17            THE COURT:  Do you think that's one of the --
05:01:18  18            MR. CERNIGLIA:  I don't know if that's one -- that
05:01:19  19   one is certainly not mine, no.
05:01:22  20            MR. ROUX:  Your Honor, this looks like it was listed
05:01:24  21   as an exhibit in Tracey Binion's deposition.  Obviously through
05:01:28  22   the course of the depositions, we had a substantial number of
05:01:31  23   documents.  And I will admit I was a bit of a harpy about
05:01:35  24   getting the document numbers on the record, but there were, I
05:01:37  25   think, some documents that occurred at some points that may not

have had Bates numbers, when they were introduced, on the physical document.  But the document itself would have a corresponding control ID in the electronic version, but it may not have been -- some people have introduced exhibits at various points that didn't have it on the document so it couldn't be read into the record.  That might be the source of this --

THE COURT:  Whoever listed documents, when you put it -- if you want to list it in the pretrial order, it has to have a Bates number.  So you have to find out what the Bates number is.  Or if there's not one, you have to say, "Look, Signal, here, I have this in my file.  Do you have this with the Bates number?"  Or if not, let's put the next number, you know.  We just have to assign numbers.

MR. CERNIGLIA:  I can certainly put numbers on ones I have.  I don't mind taking the ones that I have -- there were a lot of them, they have a sticker on the bottom, like 698.  It's somebody's deposition exhibit, but I don't know whose.

MS. BOLLMAN:  It's a class deposition exhibit if it has that.

MR. CERNIGLIA:  I don't have a copy.  I have asked court reporters, "Anybody have a running compilation of the class exhibits?"

And most of the time, they say, "No, we don't have such a thing."

05:02:56     1          **MS. BOLLMAN:**  There is a running compilation.  Class

05:03:00     2     certification was done differently than merits.  For class

05:03:03     3     certification, for each person we took, we kept the numbers

05:03:09     4     going all the way to the end.  And the court reporter who did

05:03:12     5     it, which was Huffman & Robinson, kept a copy, and then we have

05:03:17     6     a copy --

05:03:18     7          **THE COURT:**  Of all the exhibits --

05:03:20     8          **MS. BOLLMAN:**  -- from beginning to end, 1 through

05:03:24     9     whatever.

05:03:24    10          **THE COURT:**  Would you provide that to --

05:03:25    11          **MS. BOLLMAN:**  I think a thousand and some.

05:03:25    12          **THE COURT:**  Well, provide that to Mr. Cerniglia or to

05:03:26    13     just everybody.

05:03:29    14          **MS. BEAN:**  I would like to have it.

05:03:31    15          **MR. HOWARD:**  I know we have one exhibit, which is the

05:03:32    16     video of the man camp.  I don't know if we Bates-numbered that.

05:03:37    17          **MR. CERNIGLIA:**  That was also done in some of the

05:03:38    18     merits depositions, too, where they used apparently a class

05:03:43    19     number, and they introduced it and became -- just whoever was

05:03:47    20     testifying, number such-and-such.

05:03:50    21          **THE COURT:**  There's another one --

05:03:53    22          **MR. UNGAR:**  I think, Your Honor --

05:03:54    23          Respectfully, Tim.

05:03:55    24          I don't think Tim is paying for transcripts for

05:03:57    25     the deposition.

05:03:58   1          MR. CERNIGLIA:  No, I'm not.

05:03:59   2          MR. UNGAR:  And that's why he is not getting the

05:04:02   3   exhibits.

05:04:03   4          THE COURT:  Provide him a copy of the list of

05:04:04   5   exhibits.

05:04:04   6          MS. BOLLMAN:  Just the list, not just a copy of all

05:04:07   7   1500.  Okay.

05:04:07   8          THE COURT:  Right.  The index of what all the

05:04:07   9   exhibits were.

05:04:09   10          MR. UNGAR:  Okay.  There's no index, but I believe it

05:04:13   11   can be created.

05:04:15   12          MS. BOLLMAN:  There's not an index.  I'm saying we

05:04:16   13   have a complete copy of it, from 1 through -- it goes into the

05:04:21   14   thousands.  And the court reporter did too.  That's how we did

05:04:25   15   it for class.  We kept them all -- from one deposition to the

05:04:28   16   other, the numbers running in sequential order.  And then the

05:04:33   17   court reporter had a complete copy of it.

05:04:35   18          THE COURT:  Do you have a hard copy?

05:04:37   19          MS. BOLLMAN:  Yes, I have a hard copy.

05:04:37   20          THE COURT:  Can't Mr. Cerniglia come sit down at your

05:04:40   21   office and look at it?

05:04:41   22          MS. BOLLMAN:  Yes, absolutely.

05:04:45   23          MS. BEAN:  Excuse me.  Do I understand that you said

05:04:47   24   you have a list, a running list?

05:04:50   25          MS. BOLLMAN:  No, no.  We have the actual printout in

05:04:53　1　binders, of 1 through -- it's into a thousand and some, of each

05:04:57　2　one in sequential order.

05:05:00　3　　　　　MR. SHAPIRO:  Are we going to get copies of that?

05:05:02　4　　　　　THE COURT:  If you want to pay for it, but if you

05:05:03　5　want to look at it --

05:05:04　6　　　　　MS. BOLLMAN:  If you want to pay for it, then I'd

05:05:05　7　send it out to a vendor to be done, which is the least

05:05:08　8　expensive way.  Or if you want to come to my office, just call

05:05:13　9　ahead so we know.  We will pull the binders.  You can sit in my

05:05:15　10　conference room.

05:05:17　11　　　　　MR. SHAPIRO:  Only if you have good snacks there.

05:05:28　12　　　　　THE COURT:  Technology during the trial, we talked

05:05:29　13　about you're going to talk to Cesyle.

05:05:33　14　　　　　Other logistics, are there other issues?  We

05:05:38　15　talked about how much room you need.

05:05:40　16　　　　　MR. HOWARD:  I think that's covered.

05:05:43　17　　　　　THE COURT:  Time limitations, were you thinking

05:05:43　18　about -- well, you know, that's a good question.  I think we

05:05:48　19　set aside a month, and so we can't have the plaintiffs' case

05:05:55　20　take three and a half weeks.  Usually it takes longer to do the

05:06:05　21　plaintiffs' case, and some of the witnesses are ones that would

05:06:08　22　be on the defendants'.

05:06:10　23　　　　　So why don't we say -- this would be my thought,

05:06:13　24　that we would set two and a half weeks -- two weeks plus, to

05:06:18　25　Wednesday at noon for the plaintiff to present its case in

1   chief, and then we go to the defendants.  That way it makes you

2   manage your time, and it's fairer to the defendants that we

3   don't --

4          MR. RABBANI:  Your Honor, I'm so sorry to interrupt.

5   Are you saying that Signal will get less time to put on its

6   defense than the plaintiffs will have to put on their case?

7          THE COURT:  I said I wanted the plaintiffs to be

8   through two and a half weeks in, and that leaves about two and

9   a half weeks.  But we also have to have time for rebuttal.  But

10  usually it takes the defense less time, frankly, because some

11  of the witnesses have already been called.

12         MS. BOLLMAN:  We have the cross claims too.

13         MR. HOWARD:  The other thing that I would mention

14  that supports your position, Your Honor, is we have five

15  plaintiffs plus one witness, one in English, so really six

16  witnesses in our case will have to be translated, and that

17  includes cross-examination as well.  So that's double the time

18  for six of the main witnesses.  That's going to add a few days,

19  at least, to our presentation.

20         MR. RABBANI:  Your Honor, is there any way that we

21  could perhaps get equal time here?

22         THE COURT:  We are going to work it out, but I'm

23  telling -- most of the time you don't even give the plaintiff a

24  deadline.  Then we are really at their mercy.  This is a good

25  thing that I am telling them they need to plan to get their

05:07:46   1   case put on within that period of time.  If we have to go to a

05:07:49   2   fifth week, a day or something --

05:07:51   3           MR. RABBANI:  You will entertain that perhaps?

05:07:53   4           THE COURT:  -- we will do that, but this is -- it's a

05:07:58   5   working model.  I am sympathetic to the fact that they have got

05:08:02   6   to have translators, and it just takes time and it's tedious.

05:08:10   7   That's something to try to keep us on track in terms of time

05:08:14   8   management.

05:08:15   9           MR. HOWARD:  Absolutely.  And it's also our intent

05:08:16  10   that each plaintiff needs to tell his story and get his day in

05:08:22  11   court.  Not to be completely repetitive about things, but we

05:08:24  12   would hope that would be the same on cross as well, and we can

05:08:28  13   not have to go through details five times.

05:08:34  14           THE COURT:  Not that I'm saying that the defendants

05:08:35  15   would do this, but if there was an abuse of their right to

05:08:38  16   cross and they took -- you take too much time, and that eats

05:08:42  17   too much into their time, then I will have to take that into

05:08:47  18   account.  In other words, your time on cross has to be

05:08:51  19   reasonable.  You have to cross, but you can't delay it so much

05:08:54  20   that you eat up all their time and then you say, "Oh, you don't

05:08:58  21   get to put on your other witnesses."  We have to be reasonable

05:09:03  22   and work our way through it.

05:09:05  23           MS. HANGARTNER:  What are your court hours daily?

05:09:08  24           THE COURT:  With a jury, I usually start at 8:30 and

05:09:12  25   go to 5:30 or 6:00, depending on if we are in the middle of a

witness.  I would stay longer and do more, but juries just get tired.

MS. HANGARTNER:  It's hard to pay attention.

MR. HOWARD:  Is this five days a week?

THE COURT:  Yes.  We will take a break in the morning.  We will take one at lunch.  We will take one in the afternoon.  They need to get up and move around and so do you all.

MR. SHAPIRO:  What's the farthest distance a juror might be coming from?

THE COURT:  We have lots of people from the North Shore.  We have people from Houma.

MR. SHAPIRO:  They want to get home at some point.

THE COURT:  Right.  It's an hour or more.

You know, what I sometimes do is wait and see who gets on the jury.  If they are all from around here, that's easier.  If they are from an hour away, then we may have to go 9:00 to 5:00 because it just takes time to get here.

MR. HOWARD:  Are you planning on an eight-person jury plus alternates?

THE COURT:  What we do, we will pick eight people for the jury and that way -- you only have to have six, so we will have two alternates.  Unless you all want more.  You need to request that, but that's ordinarily what we do.  Unless you all agree, it's unanimous.  So if we pick eight, we have two

05:10:43  1   alternates in case -- I might do more alternates because it's a
05:10:50  2   long trial.  I will have to think about that.  Whoever is left
05:10:53  3   at the end, they deliberate.  We just have to have six, but if
05:11:01  4   eight people are left or ten, then they will all ten
05:11:05  5   deliberate.
05:11:05  6           MR. HOWARD:  You don't tell them which ones are the
05:11:08  7   alternates until the end?
05:11:10  8           THE COURT:  No.
05:11:13  9           We probably should pick more than two alternates
05:11:15  10  in case somebody gets sick.
05:11:17  11          MR. HOWARD:  If we can't go below six.
05:11:20  12          I know Erin mentioned this earlier.  I had put
05:11:23  13  this down as well, the idea of a jury questionnaire.  We are
05:11:26  14  thinking like a one-and-a-half pager that maybe we can come to
05:11:31  15  some agreement on.  It might be a nice screening device for --
05:11:33  16          THE COURT:  We don't ordinarily do that.  It would be
05:11:38  17  an extra burden because in cases that are high profile, like
05:11:42  18  the BP cases or the Danziger Bridge, we have done jury
05:11:49  19  questionnaires.  But they bring the jury in, people in ahead of
05:11:51  20  the trial, and you screen them.  I don't think they are going
05:11:55  21  to want me to do that for this case when there's not been a lot
05:12:02  22  of publicity.  If there was, it was many years ago.  I don't
05:12:05  23  think anybody knows about the case.  So if you wanted a jury
05:12:07  24  questionnaire, you would have to file a motion and justify why
05:12:10  25  one was called for in this case.  But I will warn you that

05:12:14  1   ordinarily they are not.

05:12:16  2              Now, I am going to give you a chance to tell me

05:12:18  3   what questions you want to ask on voir dire.  I will ask the

05:12:27  4   questions, but you all get to tell me, "In addition to what you

05:12:31  5   usually ask, we think you should ask these questions."

05:12:36  6              What I will do during the trial, I will ask the

05:12:39  7   questions that I had on my list and the ones that you submitted

05:12:42  8   that I decided I wanted to ask.  And then I will call you up to

05:12:47  9   the bench and say, "Well, is there any followup you think I

05:12:51 10   need to ask a certain juror?"  Then I will ask those followup

05:12:57 11   questions.  Then I'll call you back to the bench to talk about

05:13:01 12   challenges for cause.  We'll deal with that.  We leave the

05:13:05 13   people in the venire.  We don't tell them.

05:13:09 14              But then you all will sit at your counsel table,

05:13:16 15   and Cesyle Nelson will go back and forth between you for your

05:13:22 16   peremptory challenges.  And you can do strike-backs.  I don't

05:13:28 17   care about that.  She will go from the plaintiff to the

05:13:31 18   defendant, just go back and forth until you have used your

05:13:34 19   challenges.  And then the first eight or ten, whatever, is our

05:13:38 20   jury.  Then when we take a break.  Usually I let the people who

05:13:44 21   weren't chosen leave.  The ones who were chosen might need to

05:13:48 22   call their boss, whatever, tell them the bad news.

05:13:51 23              MR. HOWARD:  So you literally put in a panel with the

05:13:54 24   eight or ten plus the number of challenges?

05:13:58 25              THE COURT:  Yeah.

05:13:59　1　　　　　　　**MR. HOWARD:**  Plus a few extra for cause, I guess.  Or

05:14:01　2　do you replace the ones for cause?

05:14:04　3　　　　　　　**THE COURT:**  Say we have 25 people.  I start with one,

05:14:09　4　and whoever on that list didn't get out for cause or on a

05:14:14　5　challenge, I just name the first eight and they are the jury.

05:14:18　6　　　　　　　**MR. HOWARD:**  No, I understand, but the total panel

05:14:20　7　then would account enough for some cause challenges as well as

05:14:23　8　some peremptories?

05:14:24　9　　　　　　　**THE COURT:**  Yeah, yeah.  We usually have 25 people, I

05:14:28　10　believe, in the jury venire.

05:14:31　11　　　　　　　**MR. HOWARD:**  How are you handling peremptory

05:14:32　12　challenges with the multiple parties here?  Is it plaintiffs

05:14:35　13　and defense are the same?

05:14:36　14　　　　　　　**THE COURT:**  Who has the cross claims?

05:14:39　15　　　　　　　**MR. CERNIGLIA:**  They have cross claims against me and

05:14:40　16　Steve.

05:14:41　17　　　　　　　**THE COURT:**  I am going to have to give all of them

05:14:42　18　some peremptory challenges.  Maybe I will give them three each

05:14:46　19　and give you six or something like that.

05:14:51　20　　　　　　　**MS. HANGARTNER:**  Signal three?

05:14:52　21　　　　　　　**THE COURT:**  Right.  Three defendants, three each.

05:14:55　22　And then I don't know if you need the equal number.  We would

05:15:02　23　have to have a big venire to -- I'm thinking about that, but

05:15:06　24　I'll do something.  I will give all of you challenges and give

05:15:12　25　you more than usual since they have so many.  We don't want

05:15:17  1    to -- it takes too long to do voir dire the more people you

05:15:22  2    have.

05:15:24  3             MR. HOWARD:  It doesn't take as long as in state

05:15:26  4    court.

05:15:27  5             THE COURT:  No, no.  It just seems like a long time

05:15:30  6    to me.  It will take us a morning.

05:15:35  7             MS. HANGARTNER:  So we can plan on opening statements

05:15:37  8    starting in the afternoon?

05:15:39  9             THE COURT:  Yeah.  You all give some thought to how

05:15:43  10   long you think you want for opening statements, and we will set

05:15:46  11   that at the pretrial conference.

05:15:53  12            Some witnesses on Dewan's may-call list, we

05:15:57  13   talked about that.

05:16:00  14            The plaintiffs also brought up the idea of a

05:16:04  15   potential global mediation in lieu of a Court-ordered

05:16:08  16   settlement conference.  I guess you mean with all the cases,

05:16:11  17   including the EEOC?  Is that --

05:16:14  18            MR. HOWARD:  Well, there was some discussion of

05:16:16  19   global of the private cases, not necessarily including the

05:16:20  20   EEOC.  My understanding is that one of the Texas judges, or it

05:16:26  21   might have been the magistrate in Texas, suggested mediation.

05:16:30  22   The parties -- not us, but actually Texas counsel but on

05:16:34  23   everybody's behalf, so we agreed to participate if it got off

05:16:37  24   the ground -- made an overture to Signal's counsel to engage in

05:16:44  25   this kind of mediation that was suggested by the Texas judge.

05:16:49  1          There's been some back and forth.  I'm not
05:16:51  2   exactly sure where it stands now and whether that will actually
05:16:55  3   happen.  But since we have to go to mediation or a settlement
05:16:59  4   conference before Magistrate Knowles, pursuant to your order,
05:17:03  5   in November, what I was thinking is just if we get
05:17:07  6   clarification that -- if this global mediation does occur,
05:17:14  7   could that take the place of the settlement conference?  I
05:17:20  8   personally think, with all due respect, that someone new, some
05:17:24  9   third party coming in, a neutral mediator coming in and hearing
05:17:32  10  the parties, may have some success.
05:17:35  11          THE COURT:  What's everybody else's thought?
05:17:38  12          MS. HANGARTNER:  It's Signal's position,
05:17:39  13  unfortunately, at this point that we are about $22 million
05:17:43  14  apart, so I'm not sure that mediation would necessarily be
05:17:47  15  fruitful.  And it's additionally our perspective that
05:17:53  16  Judge Knowles, knowing about the case, should be the person who
05:17:58  17  mediates it.
05:17:59  18          THE COURT:  I see there's an advantage to his knowing
05:18:02  19  about the case.
05:18:05  20          MS. HANGARTNER:  And not have to reteach --
05:18:07  21          MS. BEAN:  I can't hear, Erin.  Bless your heart.
05:18:12  22  I'm so sorry.
05:18:12  23          THE COURT:  Let Patricia speak.  She knows.
05:18:14  24          MS. BOLLMAN:  It's Signal's position that we are very
05:18:16  25  far apart at this point as far as numbers.  So they feel that

1   it's a waste of time and resources to pursue mediation at this

2   point and that Judge Knowles is in the best position.  He has

3   handled settlement discussions with us in the past, knows the

4   case.  Rather than having to reteach someone all the facts of

5   the case, that the best thing to do would be to go to

6   Judge Knowles.

7         **THE COURT:**  I understand that side.  The other side

8   would be that if you have somebody you are paying, they really

9   have more time to devote to it.  Judge Knowles has a lot of --

10  he can't take three days or whatever and do it exclusively,

11  although he might.  If he thought there was an end in sight, he

12  would probably say, yes, he would.

13        Well, is the judge in Texas -- he doesn't have

14  any more ability to order mediation than I do, unless they have

15  a local rule or something, but --

16        **MR. HOWARD:**  I wouldn't be surprised in Texas, but

17  not that I'm aware of.

18        Maybe because it's late in the day, I'm missing

19  something, but if it's futile to try to go for a global

20  settlement because we are too far apart, and even bringing in a

21  neutral mediator would never work, then I don't understand why

22  there's any consideration that it would be worth 10 minutes to

23  go to someone with whom I have a lot of respect but before whom

24  we have been numerous times with an inability to settle the

25  matter.  We have a lot of work to do to get ready for trial.

05:20:02   1   My own personal view is, if we are too far apart to actually
05:20:06   2   have a mediation to get somewhere meaningful with all the
05:20:08   3   parties, I would rather just not have the settlement conference
05:20:10   4   at all.
05:20:11   5          THE COURT:  Signal probably agrees with you.
05:20:14   6          MS. HANGARTNER:  We do.
05:20:14   7          THE COURT:  I guess the problem is that I told you
05:20:16   8   to.  That's your problem.
05:20:23   9              When is the next time we have a status
05:20:24   10  conference?
05:20:25   11         MR. UNGAR:  The pretrial conference, Your Honor.
05:20:27   12         MS. BEAN:  December 17 at 3:00 p.m.
05:20:31   13         THE COURT:  So is what you're requesting that I
05:20:36   14  relieve you of the requirement that you have a settlement
05:20:39   15  conference?
05:20:39   16         MR. HOWARD:  I guess at this point, yes.
05:20:42   17         THE COURT:  Well, gosh, I hate to do that because if
05:20:46   18  there's any hope --
05:20:50   19         MR. SHAPIRO:  I understand -- actually, I agree with
05:20:51   20  Mr. Howard.  Mediation is a good idea --
05:20:53   21         MR. CERNIGLIA:  I think mediation is the way to go
05:20:56   22  global, but you can't force them.
05:20:57   23         MR. SHAPIRO:  -- for the very reasons that Alan just
05:21:00   24  stated, but I guess the other part is going to be the cost and
05:21:03   25  the time.

05:21:05   1      **MR. HOWARD:**  I know one of the things that Signal

05:21:07   2   raised in response to the latest discussion of it was they

05:21:12   3   didn't want to pay half the cost of the mediator.  They decided

05:21:15   4   that there are 12 plaintiffs' firms, so it would be like 1/13

05:21:17   5   apiece, and we said okay.

05:21:21   6      **MS. HANGARTNER:**  We worked past that.

05:21:23   7      **MR. HOWARD:**  Oh, we're past that?

05:21:23   8      **MS. HANGARTNER:**  We worked past that.

05:21:23   9      **MR. HOWARD:**  That's why I said I'm kind of behind it.

05:21:26   10      **MS. BOLLMAN:**  I think the issue is money, that we are

05:21:28   11   so far apart that our client feels that it's futile and that

05:21:34   12   the plaintiffs don't want to counter to our last offer.  And

05:21:39   13   being at that point, the client feels strongly that it would be

05:21:43   14   a waste of time and money this close to trial when we're that

05:21:47   15   far apart.  And they're not willing -- they don't want to do

05:21:47   16   it.

05:21:48   17      **MR. UNGAR:**  The other issue being, to Signal, global

05:21:51   18   settlement includes the EEOC as well, and we would need it to

05:21:57   19   include the EEOC as well.

05:22:01   20      **MR. COLBY:**  I can address the "too far apart" issue.

05:22:04   21   On that, our perspective, I think, is -- speaking for the

05:22:09   22   plaintiffs, obviously.  Our perspective --

05:22:11   23      **THE COURT:**  Speak up a little bit.

05:22:13   24      **MR. COLBY:**  Maybe not even speaking for all of the

05:22:14   25   plaintiffs, our perspective is that if there was going to be a

05:22:20  1   back-and-forth on the amount, then in the mediation is the
05:22:25  2   appropriate place to have that.  And so our view was that it
05:22:31  3   didn't make a lot of sense to prenegotiate.  We should either
05:22:34  4   do a mediation or not, but not spend weeks or months back and
05:22:40  5   forth and then do a mediation.
05:22:42  6          So the opening demand and the opening offer are
05:22:46  7   sort of sitting there on the table.  I don't think anyone
05:22:50  8   pretends those are their last and final positions.  If we are
05:22:53  9   going to move beyond that, we thought mediation was the way to
05:22:56  10  go, but if there's not mutual interest --
05:22:58  11          MS. HANGARTNER:  There is mutual interest.  Please
05:23:02  12  don't get me wrong.  But $22 million, that's a gap which Signal
05:23:09  13  believes is too deep a gulf.
05:23:13  14          MR. HOWARD:  A lot bigger ones have been bridged, let
05:23:15  15  me tell you, at mediation.  It works.
05:23:17  16          MS. HANGARTNER:  Possibly by companies like IBM, who
05:23:20  17  have a deeper wallet.
05:23:23  18          MR. ROUX:  Your Honor, Signal has a concern with a
05:23:25  19  global settlement in that we are unsure that plaintiffs
05:23:28  20  actually have authority to settle on behalf of all of the
05:23:30  21  plaintiffs specifically because of some depositions that have
05:23:33  22  been taken in the Texas cases in which we have become aware
05:23:37  23  that the Texas plaintiffs have nearly no contact with their
05:23:41  24  counsel up until the point of deposition.  And so we are
05:23:43  25  concerned that not all counsel actually has settlement

05:23:46   1   authority to embark on a global settlement.

05:23:48   2           THE COURT:  I guess they would have to resolve that

05:23:51   3   before they showed up at the mediation.

05:23:55   4           MR. COLBY:  I think the way John explained it

05:23:58   5   captures it pretty well.  Just by virtue of the fact that we

05:24:01   6   have so many different plaintiffs we have to communicate with,

05:24:03   7   we can't pick up the phone and speak with a CEO or CFO.  We

05:24:09   8   would have to go into the mediation with the idea being that we

05:24:12   9   would get to a settlement that we would recommend to our

05:24:14  10   plaintiffs, but that's the best we could do under any

05:24:17  11   circumstances.

05:24:18  12           THE COURT:  What do you mean?  All your plaintiffs

05:24:19  13   are individuals, aren't they?

05:24:21  14           MR. COLBY:  Correct.  And so just as a practical

05:24:25  15   matter, if we are doing a mediation over one or two or three

05:24:29  16   days, it's very difficult to have real-time communication with

05:24:32  17   all of those plaintiffs.  So we would get to a -- if we got to

05:24:39  18   something -- the best we could do in a mediation -- we couldn't

05:24:43  19   do a last and final agreement, but we would make the

05:24:46  20   recommendation to our clients that they accept --

05:24:48  21           THE COURT:  You're saying it's more than that.

05:24:50  22           MR. ROUX:  The problem is that what we have

05:24:52  23   encountered in some of the Texas depositions is not only do the

05:24:57  24   plaintiffs not have contact to their counsel up until the point

05:25:01  25   that they're about to be deposed, in fact, many of them have

05:25:02  1  testified they haven't even met their lawyers until the day

05:25:05  2  before deposition.

05:25:05  3          But some of them, when called for deposition,

05:25:07  4  choose to dismiss their claims rather than bothering to miss a

05:25:11  5  day of work to go for a deposition.  In fact,

05:25:14  6  Magistrate Hawthorne had to order one of them to be deposed

05:25:19  7  after he just refused to show up and wanted to cycle out of the

05:25:23  8  initial set that were set for trial.

05:25:26  9          MS. HANGARTNER:  And he has not shown up.

05:25:26  10          MR. ROUX:  And he has not shown up.

05:25:29  11          They are also concerned with what Mr. Colby has

05:25:31  12  described.  Under that rubric, if one of the plaintiffs decides

05:25:34  13  he doesn't want to accept the settlement, then Signal has to go

05:25:38  14  forward anyway.  So it's really not effective and it's really

05:25:43  15  not conducive to anything really being resolved in a short time

05:25:47  16  period.

05:25:50  17          MR. RAPTIS:  Your Honor, I would disagree.  This is

05:25:53  18  Steve Raptis for the *Devassy* plaintiffs.  We have had

05:25:58  19  challenges with reaching our plaintiffs on an hour's notice,

05:26:01  20  but we can reach our plaintiffs if we have a couple days, which

05:26:05  21  is more reason why we would want to go ahead and have the

05:26:09  22  mediation sooner rather than later.  If we all have to get in

05:26:13  23  touch with our plaintiffs and get their sign-off two days

05:26:16  24  before trial, that's not going to work.  We need to do it

05:26:18  25  sooner than that, but we can do it.

1    05:26:18          Just because there are challenges to reaching
2    05:26:20    out to these plaintiffs who are understandably far-flung, work
3    05:26:26    long hours, that doesn't mean it can't be done or it shouldn't
4    05:26:29    be attempted.  That's just not a reason.
5    05:26:32          MS. HANGARTNER:  I don't think that's what Mr. Colby
6    05:26:34    is saying.
7    05:26:35          MR. COLBY:  What I'm suggesting is if we are sitting
8    05:26:36    around a table in a mediation and we have reached a point where
9    05:26:40    there's an agreement.  It can't necessarily be at that moment
10   05:26:46    the last and final word.
11   05:26:48          I think what John explained in his letter to you
12   05:26:49    was that we then have to go take that and get sign-off from our
13   05:26:54    clients.  That takes a little bit of time.
14   05:26:58          MS. HANGARTNER:  That's assuming, though, you are
15   05:26:59    going to get it.
16   05:27:02          MR. ROUX:  Your Honor, what I'm hearing is that they
17   05:27:05    intend to go into a mediation without settlement authority and
18   05:27:05    expect Signal to show up with settlement authority.  I don't
19   05:27:06    think that is appropriate.
20   05:27:09          THE COURT:  So you want them to go to their
21   05:27:12    plaintiffs and get the plaintiff to agree that if they get X
22   05:27:18    amount -- I guess I understand what the plaintiffs' lawyers are
23   05:27:22    saying, that's going to be very difficult, and this is just not
24   05:27:27    your typical situation.
25   05:27:28          If you all are interested in resolving it, then

05:27:30  1  you are just going to have to deal with the reality.  If you
05:27:34  2  want it to be like it is with two corporations, that's just not
05:27:39  3  going to happen.  I would encourage Signal to participate and
05:27:49  4  see if it would work.  Maybe it won't.
05:27:51  5          Now, is the EEOC willing to participate in
05:27:53  6  mediation?
05:27:56  7          MS. BEAN:  We are always willing to participate in
05:27:59  8  mediation, but we don't want to be wasteful about it.  We have
05:28:05  9  had some communications with Signal ourselves.  They are
05:28:08  10 nonresponsive.
05:28:10  11         Nothing coming from Signal suggests to me an
05:28:14  12 interest in settling, so I would have to see something in
05:28:17  13 advance.  If they are interested, we will show up, and that's
05:28:22  14 assuming that everybody else's posture is to get it resolved as
05:28:25  15 well.
05:28:25  16         We settle in the public interest.  We have to
05:28:27  17 have a consent decree.  We shared that with Signal.  So, yeah,
05:28:31  18 we are always interested, but we are not interested in wasting
05:28:34  19 time.  So if there are a bunch of barriers associated with the
05:28:38  20 plaintiffs and Signal, if they have some barriers, I think we
05:28:42  21 would rather not show up.  But if folks are serious and they
05:28:47  22 are going to do what they have to do, yeah, we'll show up.
05:28:50  23         If Signal's interested -- I'm a firm believer
05:28:53  24 that if Signal is interested in settling, Signal will reach
05:28:57  25 out.  That's when I will believe Signal is interested in

| | |
|---|---|
| 05:29:00 | 1 |
| 05:29:08 | 2 |
| 05:29:12 | 3 |
| 05:29:15 | 4 |
| 05:29:18 | 5 |
| 05:29:20 | 6 |
| 05:29:21 | 7 |
| 05:29:35 | 8 |
| 05:29:38 | 9 |
| 05:29:41 | 10 |
| 05:29:43 | 11 |
| 05:29:45 | 12 |
| 05:29:47 | 13 |
| 05:29:48 | 14 |
| 05:29:49 | 15 |
| 05:29:52 | 16 |
| 05:29:55 | 17 |
| 05:30:02 | 18 |
| 05:30:06 | 19 |
| 05:30:09 | 20 |
| 05:30:14 | 21 |
| 05:30:17 | 22 |
| 05:30:19 | 23 |
| 05:30:22 | 24 |
| 05:30:23 | 25 |

settling.  Forcing Signal to show up, us just showing up -- I believe, if they are interested, they will reach out, and they haven't done that.

THE COURT:  I'm not hearing much enthusiasm from the Signal side.

MS. HANGARTNER:  It's not that we don't have the enthusiasm.  There are multiple obstacles, one of which is the gulf, the money.  And then additionally the consent decree, that causes an issue for Signal.

THE COURT:  The fact that the EEOC has to have a consent decree.

MS. HANGARTNER:  And it needs to be public.

MS. BEAN:  I didn't hear.

THE COURT:  It has to be public.

MS. BEAN:  Oh, yeah, it absolutely has to be public.  That's why we exist.  We do what we do to inform the public and publicize to employers and to employees that we are here as a potential remedy, so everything that we do is public.

THE COURT:  Well, you know, if you have a trial and a verdict, that's going to be public too.

MR. RABBANI:  Not if Signal prevails.

THE COURT:  The allegations are going to be public.  We are not having a closed trial.

MR. RABBANI:  Absolutely.

THE COURT:  I guess through the course of the

litigation, because you have had exhibits sealed and things like that, there's been some protection; but like I said, at the trial that's not going to happen.

MS. HANGARTNER:  I certainly understand, Your Honor, at trial the allegations will come out.  But with the consent, it would take having Signal put basically on its website that it discriminated against individuals based on national origin.

MS. BEAN:  Erin --

MR. ROUX:  She is saying that the consent decree, part of it is unpalatable to Signal because it would require them to make public statements and place public banners, for lack of a better term, on its website and materials that indicate that it's guilty of the things the EEOC has accused it of.

MS. BEAN:  I have never seen a consent decree, anything like that before, so I don't know where you're getting your information from.  I have never seen a consent decree where a defendant admits it did anything wrong, so I don't know what you are saying.

THE COURT:  Maybe there's a lack of communication about that.

MS. BEAN:  I have sent them probably -- maybe in the early part of the year I sent them a very comprehensive -- and told them that we were open to negotiate, and I just haven't heard from them.

05:31:40  1          **MR. UNGAR:**  Your Honor, we reviewed that consent
05:31:40  2   decree.  That consent decree would be Signal stating that it
05:31:44  3   did the things that the EEOC says that we did.
05:31:46  4          **MS. BEAN:**  No, no.
05:31:47  5          **MR. UNGAR:**  Excuse me, Julie.
05:31:50  6          If we negotiated a settlement with the
05:31:52  7   plaintiffs, then we could sign the ordinary settlement document
05:31:55  8   that says we are giving you money but deny all liability.  And
05:31:57  9   that's not a world we can do with the EEOC, unless I'm wrong
05:32:00 10   and Julie says that we can do that.
05:32:01 11          **MS. BEAN:**  No.  First of all, we should talk.  If you
05:32:03 12   are truly interested, the consent decree I sent you and any
05:32:10 13   consent decree I ever would send everybody says everything is
05:32:12 14   open to talk.  So if you see something in the consent decree
05:32:16 15   that you don't like, if you see some money that you don't like,
05:32:18 16   it's called negotiation.  You all never answered, so --
05:32:26 17          **MS. HANGARTNER:**  You told us it was nonnegotiable.
05:32:29 18          **MS. BEAN:**  I sent you a consent decree and said it
05:32:32 19   was negotiable.  I never heard back from you all, period.
05:32:37 20          **MR. WERNER:**  Your Honor, just an idea.  I hope I'm
05:32:40 21   not overstepping.  One thought, I believe Your Honor does --
05:32:46 22   you obviously cannot order Texas to participate in a mediation,
05:32:53 23   but I believe you can order mediation.
05:32:56 24          **THE COURT:**  I can order you all to go to the
05:32:58 25   magistrate, but I don't believe I can order you to participate

| | | |
|---|---|---|
| 05:33:01 | 1 | in private mediation. |
| 05:33:05 | 2 | MR. WERNER:  Even the EDLA? |
| 05:33:06 | 3 | THE COURT:  I just don't think so. |
| 05:33:10 | 4 | MR. WERNER:  In other courts I've been in, the judge |
| 05:33:10 | 5 | sent -- |
| 05:33:10 | 6 | THE COURT:  Yeah, some people do.  I just don't think |
| 05:33:11 | 7 | we have -- even when they do it, I'm not sure they have the |
| 05:33:14 | 8 | ability to do it, but we don't even have a local rule that |
| 05:33:18 | 9 | says -- |
| 05:33:19 | 10 | MR. WERNER:  Fair enough. |
| 05:33:20 | 11 | THE COURT:  I would be happy to give it a shot and |
| 05:33:22 | 12 | order you all. |
| 05:33:24 | 13 | MR. WERNER:  What I was going to suggest, if |
| 05:33:25 | 14 | Your Honor did have the authority, is to order mediation.  If |
| 05:33:28 | 15 | Texas shows up, great; if not, then we will know early in the |
| 05:33:32 | 16 | mediation whether or not it's going to work.  And I think -- |
| 05:33:39 | 17 | THE COURT:  What's the status of your discussions in |
| 05:33:42 | 18 | Texas about the judge suggesting that you go to mediation?  Is |
| 05:33:46 | 19 | that over or is it still -- |
| 05:33:50 | 20 | MR. COLBY:  So we have been conferring with Texas |
| 05:33:54 | 21 | counsel and a few of the plaintiffs as a collective group. |
| 05:34:03 | 22 | THE COURT:  Speak up. |
| 05:34:03 | 23 | MR. COLBY:  What prompted the initial outreach by |
| 05:34:07 | 24 | John was not a specific order from a Texas judge.  It was, I |
| 05:34:12 | 25 | think, just a suggestion that the case might be appropriate for |

05:34:15  1    mediation.  And he didn't want to be in a position of having

05:34:20  2    the judge suggest that something would be a good idea and him

05:34:25  3    not having at least explored whether or not it was a good idea.

05:34:28  4              So he put together, I think, a fairly detailed

05:34:31  5    letter to Erin, and it included a lot of different things,

05:34:38  6    including a settlement demand.  Erin responded to that with a

05:34:47  7    counteroffer, and that's the state of the --

05:34:52  8         MS. HANGARTNER:  Actually, we have been able to go

05:34:56  9    two steps further.

05:34:57  10        MR. COLBY:  There have been some subsequent

05:34:59  11   discussions, I think, beyond those two letters, but not many.

05:35:03  12        MR. SHAPIRO:  Is that from John Fleming?

05:35:07  13        MR. COLBY:  Yes.

05:35:07  14        MR. SHAPIRO:  I didn't get any of that.

05:35:08  15        THE COURT:  I can certainly talk to the judge or the

05:35:10  16   magistrate judge in Texas -- and I do; you all should know that

05:35:13  17   we do talk -- and suggest to him that he order the Texas people

05:35:22  18   to at least participate in mediation with either both

05:35:29  19   magistrates at the same time or the magistrate judge here so

05:35:32  20   that we at least have all the players around the table.

05:35:36  21        MR. COLBY:  I guess what I'm saying is I don't think

05:35:36  22   it's necessary to order the Texas plaintiffs to participate in

05:35:39  23   a mediation.  I think, based on my conversations with John,

05:35:43  24   they are willing to do that.  He has made an effort to get that

05:35:47  25   off the ground.  He wrote a letter that included the settlement

05:35:50  1    demand, and he suggested a third-party mediator.

05:35:54  2              THE COURT:  I assume they also -- I can't order you

05:35:56  3    to go to private mediation, but I can order you to the

05:36:00  4    magistrate.  They would also participate in that.  I think

05:36:03  5    Judge Knowles -- if we said, "Look, the Texas parties want to

05:36:07  6    come, too, in an attempt to resolve it all," he would be happy

05:36:11  7    to have everybody here and participate.

05:36:13  8              MR. COLBY:  I believe that they would be willing to

05:36:14  9    do that, although I haven't put that specific question to them.

05:36:18  10             MR. ROUX:  Your Honor, just to restate Signal's

05:36:21  11   position, in conferring with our client, given the gulf of

05:36:25  12   money between the two sides, the client has kind of determined

05:36:29  13   that mediation would be fruitless and the time would be better

05:36:34  14   spent in preparation for trial.

05:36:35  15             So while hypothetically mediation is always

05:36:38  16   preferable, given two options that are mutually exclusive,

05:36:42  17   Signal prefers to use the time to prepare.

05:36:47  18             THE COURT:  Well, you have to tell your client that I

05:36:49  19   want them to do either private mediation or mediation with the

05:36:53  20   magistrate judge.  They are going to have to spend time to do

05:37:00  21   either one.

05:37:00  22             MS. HANGARTNER:  I definitely will, Judge.  Now, I

05:37:00  23   completely forgot what I was going to say.

05:37:08  24             MR. HOWARD:  While she is thinking, Your Honor, one

05:37:10  25   thing that I think has made it difficult even to get off the

ground in terms of settlement discussions before
Magistrate Knowles in the past is it has only been the lawyers.
Now, obviously we can't bring 300 individuals in.  We have to
do as Mr. Colby suggested, come up with something that we think
we can highly recommend to our clients.  But I think it would
be -- and we suggested in our mediation -- in John's mediation
letter that Mr. Marler, the CEO, and even a representative of
RSA as the majority shareholder --

        **MS. HANGARTNER:**  That's the issue.  Thank you.  Now
you made me remember what I was going to say.

        **MR. HOWARD:**  They took the position that RSA wasn't
part of that; they shouldn't be there.  Fine.  I can't make
them be there.  But I do think that a senior representative of
the client to hear firsthand some of the observations that --
and I would even be prepared to do what I have done in some
mediation sessions where it's not just shuttle diplomacy back
and forth.  In open court you kind of do a presentation and
say, "Here's the evidence."  It's almost like an opening
statement.  "This is what you are going to hear, and you are
going to hear this not just from me.  You are going to hear
this from Mr. Colby in *Chakkiyattil*.  You're going to hear this
from Mr. Raptis.  You are going to hear this in March, April,
June, July, August, December, January."

        You're spending, according to them, $4.5 million
a year in defense costs.  That was the testimony of Mr. Marler

05:38:50  1    or Mr. Cunningham, that they had reserved for just this trial,

05:38:54  2    and it seems silly.

05:38:59  3             Now, that's not an argument, that's not anything

05:39:02  4    that we have ever been able to make progress in front of

05:39:05  5    Judge Knowles before.  Now, things change.  I have to say my

05:39:12  6    understanding on the consent order was a little bit different,

05:39:15  7    too, but maybe there's room there that I wasn't even aware of.

05:39:22  8    But the bottom line is all the signals from Signal tell me my

05:39:34  9    time is better spent getting ready for trial.  That said, I

05:39:37  10   will show up.

05:39:39  11            THE COURT:  Do you all have a date with

05:39:43  12   Judge Knowles?  It's supposed to be done by November 17?

05:39:46  13            MR. WERNER:  November 30.

05:39:48  14            THE COURT:  You all should have gotten a date with

05:39:50  15   him by now, so y'all need to contact his office tomorrow.  I'm

05:39:56  16   going to call him in the morning, as well, and tell him to

05:40:00  17   expect a call, because I think you're going to have to have

05:40:05  18   more time than he usually allocates for these.

05:40:12  19            Who should be there from Signal?  I want

05:40:15  20   Mr. Marler to be there.  Are there other key players?

05:40:20  21            MS. HANGARTNER:  Actually, Mr. Cunningham is probably

05:40:22  22   the better person.  He is the CFO.  He has the checkbook.

05:40:26  23            THE COURT:  I want the CEO and the CFO there.

05:40:29  24            MR. UNGAR:  Mr. Cunningham was at the last one as

05:40:31  25   well, Your Honor.

05:40:32  1      **THE COURT:**  Marler, who is the CEO, and Cunningham,

05:40:37  2  who is the CFO, will attend.  I'm going to order it in all the

05:40:44  3  cases, so the EEOC will be there as well.

05:40:50  4      **MS. BEAN:**  I will say this, Your Honor.  If we are

05:40:53  5  going to do this, Signal probably needs to look at the consent

05:40:58  6  decree that we sent; and if they want to propose something, get

05:41:05  7  it to us in advance, not for us to walk in because it won't get

05:41:07  8  done that day.

05:41:09  9      **THE COURT:**  Absolutely.

05:41:11  10      **MS. HANGARTNER:**  I don't mean to be rude, but I just

05:41:13  11  want to -- because this is what I was going to say.  Everybody

05:41:17  12  needs to understand RSA is not coming to the table.

05:41:25  13      **MS. BOLLMAN:**  RSA is not coming to the table.

05:41:26  14      **MR. WERNER:**  That was taken off the table a long time

05:41:28  15  ago, so that's not --

05:41:31  16      **MR. CERNIGLIA:**  I need everybody to know that we need

05:41:33  17  to do this by the end of November.  It has to be before

05:41:36  18  November 12.  I'm out of the country from the 15th to

05:41:39  19  December 1.

05:41:43  20      **MS. BEAN:**  It has to be done by November 12?

05:41:45  21      **MR. CERNIGLIA:**  Well, the 12th is a Friday.

05:41:47  22      **MR. HOWARD:**  The 12th is a Wednesday.

05:41:47  23      **MS. BEAN:**  We can't do it by November 12.  It would

05:41:51  24  be useless --

05:42:01  25      **MR. WERNER:**  Is Danny Burser (phonetic) available?

05:42:03  1        MR. CERNIGLIA:  He can be, but he doesn't know
05:42:04  2   anything about the case.
05:42:06  3        THE COURT:  You're coming back the end of November?
05:42:10  4        MR. CERNIGLIA:  December 1.
05:42:11  5        THE COURT:  Maybe you can do at the beginning of
05:42:13  6   December.
05:42:14  7        MR. CERNIGLIA:  Absolutely.  I encourage it.  I'd
05:42:17  8   love to be there.  I want to be there.
05:42:18  9        THE COURT:  Who is going to talk to Judge Knowles
05:42:20  10  tomorrow?  I'm going to call him.
05:42:22  11        MS. HANGARTNER:  I can call him.
05:42:25  12        THE COURT:  I'll talk to him -- yes, that's a good
05:42:27  13  one.
05:42:36  14        MR. UNGAR:  Signal can contact Judge Knowles.
05:42:37  15        THE COURT:  I'm going to call him and get a feel from
05:42:39  16  him for what his schedule is like and tell him what the concept
05:42:43  17  is and see if he screams or jumps out the window.
05:42:49  18        MR. RABBANI:  Your Honor, just for clarification, the
05:42:51  19  last settlement conference before Judge Knowles, a Signal
05:42:54  20  representative was there with authority to settle.  Just for
05:42:56  21  your --
05:42:57  22        MR. HOWARD:  I apologize, then.  I must have missed
05:43:00  23  that because I don't think I've ever met Chris Cunningham.
05:43:01  24        MS. BOLLMAN:  He was there.
05:43:02  25        MR. HOWARD:  I don't know that I have ever met him.

05:43:03   1   Although if I recall correctly --

05:43:06   2           MS. BOLLMAN:  There was a separate meeting.

05:43:07   3           MR. HOWARD:  -- yeah, there was one settlement

05:43:08   4   conference where we didn't even see each other.

05:43:13   5           MS. BOLLMAN:  That was it.

05:43:14   6           MR. HOWARD:  There was never even a joint discussion

05:43:16   7   at the beginning.  We were sitting in a room, and basically

05:43:19   8   Judge Knowles came in and said, "Nothing I can do."

05:43:23   9           We flew down, sat there, and never even met

05:43:28   10  Signal.  So that's why I'm a little bit frustrated with the

05:43:32   11  concept of going through that process again and why I thought a

05:43:37   12  third-party mediator -- not that Judge Knowles is not objective

05:43:43   13  about this case, but someone who comes in knowing very little

05:43:48   14  about the case can be helpful sometimes.

05:43:50   15          THE COURT:  Just like a jury.

05:43:51   16          MR. HOWARD:  Exactly, but also knows something about

05:43:54   17  legal claims like a retired judge.  It can be very effective.

05:43:57   18          THE COURT:  I think from a time perspective it's

05:43:59   19  going to be -- it would be more effective and more likely to

05:44:05   20  succeed.  And if you are going to spend the time to do it,

05:44:08   21  which you are because I'm going to make you, then you might as

05:44:12   22  well do what's most effective.  Because this is a drop in the

05:44:15   23  bucket compared to what it's going to cost -- what it has cost

05:44:19   24  and will continue to cost.

05:44:22   25          Some things I want to happen, within a week I

1    05:44:24    want Signal to get back to the EEOC with their suggestions for

2    05:44:32    changes to the consent decree.

3    05:44:37               **MS. BEAN:**  I'll send it again.

4    05:44:42               **THE COURT:**  Then the second thing I want Signal to do

5    05:44:44    is talk to their client and tell the client that they are going

6    05:44:48    to have to participate in either private mediation or mediation

7    05:44:53    with Judge Knowles; and either way, it's going to take time,

8    05:44:57    but that the judge said it would be a lot more effective with

9    05:45:01    the private mediator and that I encourage them to do that.  You

10    05:45:11    need to tell Signal that, that they are going to do it either

11    05:45:15    way, but that in my opinion it would be much more effective

12    05:45:18    with the private mediator and that I encourage them to do that.

13    05:45:23    You're going to talk to him tomorrow about that.

14    05:45:28               Then the mediation, whoever it's with, is going

15    05:45:30    to take place by the end of the first week of December.

16    05:45:33    Anybody know when that is?

17    05:45:40               **MR. UNGAR:**  December 5 is a Friday.

18    05:45:43               **THE COURT:**  Okay.  By December 5.

19    05:45:48               This is going to be in all the cases that are in

20    05:45:52    Louisiana, that Signal is going to have Mr. Marler and

21    05:45:56    Mr. Cunningham there.

22    05:45:58               Who will the EEOC have there?

23    05:46:03               **MS. BEAN:**  Me.

24    05:46:06               **THE COURT:**  So that's all --

25    05:46:06               **MS. BEAN:**  I'll have settlement authority.  It's

05:46:08  1   possible the regional attorney would come, but the attorneys at
05:46:12  2   EEOC have settlement authority.
05:46:13  3           THE COURT:  About the plaintiffs, I was thinking
05:46:16  4   about whether each separate suit should have at least one
05:46:23  5   representative client there.
05:46:25  6           MR. HOWARD:  It would be very difficult to organize
05:46:28  7   that, Your Honor, because they are spread out all over and they
05:46:33  8   can't speak for their colleagues anyway.  They're individual
05:46:37  9   claims.  It's not like we have class reps and could have been
05:46:37  10  doing it that way.  And I think --
05:46:38  11          THE COURT:  Is Signal interested in having any of the
05:46:41  12  individual plaintiffs there?  Is there a value in that?
05:46:44  13          MS. HANGARTNER:  Can I think about that and let you
05:46:47  14  know?
05:46:48  15          THE COURT:  Let me know, because I'm going to put
05:46:51  16  something in the minute entry about it.
05:46:52  17          MS. HANGARTNER:  Right.
05:46:53  18          MR. SHAPIRO:  Your Honor, could we amend that
05:46:54  19  deadline from December 5 to December 3?  I ask that only
05:46:59  20  because I'm heading on a rare out-of-town trip on the 4th.
05:47:05  21          THE COURT:  Through December 3.
05:47:06  22          MR. HOWARD:  That puts a window basically of -- the
05:47:09  23  2nd and the 3rd are the only two days.
05:47:12  24          THE COURT:  That's true.
05:47:17  25                  When are you coming back?

05:47:18    1       **MR. SHAPIRO:**  I'm returning on the afternoon of the

05:47:21    2   8th.

05:47:22    3       **THE COURT:**  Are you going to be in the United States?

05:47:24    4       **MR. SHAPIRO:**  Yeah.  Lovely Boston.

05:47:28    5       **THE COURT:**  I can't deal with all your personal

05:47:31    6   issues.  So by December 5 you all are going to have to deal

05:47:35    7   with it.  Somebody has to -- something's got to give.

05:47:37    8       **MR. UNGAR:**  Your Honor, I think it would be helpful

05:47:39    9   to have a representative plaintiff from each of the trials.

05:47:42   10   For the same reason Mr. Howard said, it's different if you are

05:47:46   11   in the room and hear the presentation from the other side and

05:47:46   12   the impact of it.

05:47:48   13       **THE COURT:**  But the difference is you have somebody

05:47:50   14   who can decide for Signal.  This would be one person, who is a

05:47:54   15   drop in the bucket, so I don't really -- it's different.

05:47:58   16       **MR. RAPTIS:**  Most of our clients aren't English

05:48:00   17   speakers either.  They could sit there and listen to the whole

05:48:00   18   thing and not get anything out of it.

05:48:04   19       **THE COURT:**  I tend to agree.  If we had class

05:48:07   20   representatives, even, it would be better, but we don't.  We

05:48:10   21   have all these individual plaintiffs.

05:48:14   22       Is there anything else I need say about that?

05:48:19   23       **MR. COLBY:**  There was an issue just on the -- on the

05:48:19   24   plaintiffs there was an issue where we were dropping some

05:48:23   25   claims against -- or maybe it was in the bankruptcy against

05:48:27  1  Michael Pol.  We are able to turn around pretty quickly and

05:48:34  2  talk to our plaintiffs and make a recommendation.

05:48:36  3          Although at times there's some resistance to

05:48:39  4  dropping any claims against Michael Pol or something like that,

05:48:41  5  we are able to make a recommendation, and we got agreement on

05:48:45  6  that.  So I think --

05:48:49  7          THE COURT:  In other words, if the lawyers got

05:48:51  8  comfortable, you believe that you could make recommendations to

05:48:56  9  your clients that they would accept?

05:48:58  10          MR. COLBY:  I think, for the most part, yes.  I think

05:49:00  11  the answer is yes.  I would say again I can't make a 100

05:49:05  12  percent promise, but we have been able to move.

05:49:07  13          THE COURT:  I'm going to call the judge in Texas.

05:49:08  14  Who you deal with most is the magistrate judge, correct?

05:49:16  15          MR. WERNER:  We are not on any of the Texas cases.

05:49:20  16          MR. UNGAR:  Almost exclusively, Your Honor,

05:49:21  17  Magistrate Hawthorne.

05:49:23  18          THE COURT:  I will call him and see if he wants to

05:49:26  19  order them to participate in this or whether we offer it to

05:49:31  20  them or what, but that's the concept.  We are going to try to

05:49:35  21  have everybody represented.  Signal is going to let me know --

05:49:41  22  tomorrow is Friday -- maybe by Monday whether your client will

05:49:47  23  agree to private mediation.

05:49:50  24          MS. HANGARTNER:  Can I ask until Monday afternoon,

05:49:51  25  because I don't think I'm going to be able to talk to him

05:49:54  1  tomorrow.

05:49:55  2          **THE COURT:**  That's fine.  Let's say by the end of the

05:50:00  3  day Monday you'll let me know.

05:50:03  4          **MR. SANDLER:**  Will that be all the parties will learn

05:50:05  5  at that time or just the Court?

05:50:07  6          **THE COURT:**  About private mediation?  I guess you

05:50:08  7  could send an e-mail to everybody.  Send it to Philip and copy

05:50:13  8  everybody, and then we will all know.  What I hope is that they

05:50:17  9  will agree to participate.

05:50:19  10         I think you have already talked about how you

05:50:21  11 would share the cost, and that's not prohibitive in a case like

05:50:27  12 this.  It would be somebody who could devote the time to it to

05:50:34  13 make it more likely to be successful.  And it really is going

05:50:38  14 to be an imposition on Judge Knowles because it's going to take

05:50:45  15 some time.

05:50:46  16         **MR. HOWARD:**  This might take a couple days.

05:50:48  17         **THE COURT:**  Right, I would think so.

05:50:49  18         **MR. SHAPIRO:**  Your Honor, one thing I'm anticipating

05:50:51  19 is that if we do a mediation -- no offense to anybody -- I see

05:50:58  20 us not agreeing on the mediator.  Can you enter or could we

05:51:02  21 submit a list of names that you would order --

05:51:05  22         **THE COURT:**  You all try to agree first.  If you

05:51:07  23 don't, then that's the way we will do it.  We will have to do

05:51:11  24 that relatively quickly.  So you all be thinking about that,

05:51:15  25 that if we do have -- if Signal does agree, who you could

05:51:21  1    recommend.  Talk to each other and try to agree first.  I don't

05:51:24  2    know if you are going to find anybody who has done a case

05:51:27  3    exactly like this, but --

05:51:30  4              MS. BEAN:  We actually -- EEOC, because these are --

05:51:32  5    it's not unusual for us to have these types of cases also with

05:51:37  6    private plaintiffs in them.  So there are a body of mediators

05:51:41  7    who do it.

05:51:42  8              And just for the record, EEOC feels very

05:51:44  9    strongly that a private mediator would be more effective, would

05:51:48  10   help us the most.

05:51:50  11             THE COURT:  Well, can you send everyone else a list

05:51:53  12   of the private mediators you are aware of?  They can start

05:51:58  13   looking at them.

05:51:59  14             MS. BEAN:  Yes.

05:52:03  15             THE COURT:  I know you all know that it would be

05:52:06  16   better for everybody if you were able to resolve it.  I think

05:52:12  17   one reason we have been marching toward trial is because that

05:52:15  18   helps get people more serious about settlement.  You all have

05:52:18  19   certainly discovered everything possible in the world.  Now you

05:52:25  20   have the knowledge.  We know where we are.  We are having a

05:52:29  21   trial.  I promise you.

05:52:31  22             I think you have gotten the message I'm not

05:52:33  23   delaying the trial.  And we are going to have not just that

05:52:37  24   one.  If you don't settle before or after that one, then we are

05:52:41  25   going to have some more.  Even if it ruins my life and Philip's

| | | |
|---|---|---|
| 05:52:46 | 1 | life, because I expect it to ruin my life, but we are going to |
| 05:52:49 | 2 | have a trial. |
| 05:52:52 | 3 | MR. RAPTIS:  Your Honor, could we raise one thing |
| 05:52:55 | 4 | really quickly about the mediator?  I know, in mediations I've |
| 05:52:58 | 5 | been in in the past, I'll throw out mediators, and the other |
| 05:53:01 | 6 | side will automatically reject them because they'll assume that |
| 05:53:05 | 7 | they're biased toward me, for whatever reason, even if I've |
| 05:53:05 | 8 | never met that mediator.  Maybe if Your Honor made a couple |
| 05:53:08 | 9 | suggestions about private mediators. |
| 05:53:10 | 10 | THE COURT:  No. |
| 05:53:14 | 11 | MR. RAPTIS:  Not going to.  Okay. |
| 05:53:15 | 12 | MR. HOWARD:  We have all had experience with it.  We |
| 05:53:17 | 13 | can share names and a list, and I bet there's going to be |
| 05:53:21 | 14 | common names on the list. |
| 05:53:23 | 15 | MR. UNGAR:  I'm sure we are going to be able to |
| 05:53:25 | 16 | agree. |
| 05:53:32 | 17 | THE COURT:  Let me see if there are other things we |
| 05:53:32 | 18 | still need to talk about. |
| 05:53:32 | 19 | Alan, you also had -- no, I think that's the |
| 05:53:35 | 20 | last thing. |
| 05:53:36 | 21 | Then Mr. Cerniglia -- |
| 05:53:41 | 22 | MR. HOWARD:  I think we covered Tim's issue on the -- |
| 05:53:43 | 23 | THE COURT:  You're going to go look at the -- |
| 05:53:45 | 24 | MR. HOWARD:  -- exhibits. |
| 05:53:45 | 25 | MR. CERNIGLIA:  For those exhibits, yeah.  What I'm |

05:53:49  1   going to do is I'm going to take all the ones that I have and

05:53:52  2   try to match up the numbers.  I'm not going to look through

05:53:56  3   10,000 or 1,000 documents.

05:53:58  4           THE COURT:  Do those documents have Bates numbers on

05:54:01  5   them?

05:54:02  6           MS. BOLLMAN:  No.  They were all done before we did

05:54:03  7   this -- I mean, a lot of them have Bates numbers, but they are

05:54:06  8   not the --

05:54:10  9           MR. UNGAR:  The majority of the class depositions had

05:54:12  10  a different Bates scheme before we did the ESI documents.

05:54:17  11          THE COURT:  Do you have a way to correlate those

05:54:19  12  documents to the current documents?

05:54:25  13          MR. ROUX:  No.  That was actually one of the problems

05:54:26  14  that we had with the ESI production on the SIG-E native set,

05:54:30  15  because we couldn't match back the native document to the TIFF

05:54:34  16  version that was produced during class.  We couldn't tell which

05:54:37  17  documents were withheld during class for privilege and which

05:54:38  18  ones were produced and so had to do the privilege review of the

05:54:44  19  SIG-E natives all over again.  So we have no ability to match

05:54:46  20  them back.

05:54:46  21          But during the deposition both the SIG-P and

05:54:49  22  SIG-E documents from the class phase, as well as the reproduced

05:54:54  23  electronic versions, were used interchangeably.  So in some

05:54:57  24  cases we have duplicates of the same document in different

05:55:01  25  formats.

```
05:55:01   1          THE COURT:  You all created a monster, didn't you?
05:55:04   2          MR. WERNER:  Part of the culling down of the exhibit
05:55:07   3   list is sort of figuring out -- doing that de-duplication
05:55:10   4   process.
05:55:10   5          THE COURT:  The things we are doing at least to help
05:55:12   6   you are -- you are going to go look at those documents.  And
05:55:17   7   when they do the benchbooks, those are going to be hard copies
05:55:21   8   that you will be able to see.
05:55:24   9          MR. HOWARD:  We will give you a flash drive or
05:55:27  10   something that will have them all.
05:55:29  11          MR. CERNIGLIA:  Erin, you don't have to send me any
05:55:31  12   more of those discs.  I can't open them.
05:55:36  13          THE COURT:  I think on the Signal topics, the 10-day
05:55:40  14   extension for the discovery period in the Achari case, we
05:55:44  15   covered that.
05:55:47  16              Signal seeks guidance as to how the T and U
05:55:49  17   affidavits may be used in the David trial.
05:55:56  18          MR. WEINBERGER:  Yes, Your Honor.
05:55:58  19          THE COURT:  Explain to me what you mean.
05:56:02  20          MR. WEINBERGER:  Well, the way, in theory, it's going
05:56:04  21   to go is that the affidavit will be placed in front of the
05:56:07  22   witness.  He will be asked to tell us whether he recognizes the
05:56:11  23   document.  He will or he won't.  He will be cross-examined
05:56:14  24   either way.
05:56:15  25              And the next question is:  "So you applied for a
```

05:56:17  1   T visa?"   The question is whether that will be allowed.

05:56:22  2                  Then the related question would be:   "And was it

05:56:26  3   granted?"

05:56:26  4                  That kind of thing, Your Honor.

05:56:27  5              THE COURT:   Well, I think that's already been covered

05:56:29  6   in some of the rulings --

05:56:31  7              MR. WEINBERGER:   How?

05:56:31  8              THE COURT:   -- on the protective orders because you

05:56:35  9   weren't allowed to ask about the -- you got the affidavit, but

05:56:39  10  you didn't get the application.

05:56:41  11             MR. WEINBERGER:   But isn't that the point,

05:56:43  12  Your Honor?   The affidavit --

05:56:46  13             THE COURT:   The point is I have already decided that.

05:56:49  14  I may be wrong, and you may appeal and the Fifth Circuit might

05:56:54  15  reverse me, but I have already decided that you are not going

05:56:57  16  to go into the applications for the visas and all that.

05:57:01  17             MR. WEINBERGER:   Okay.   I understand.

05:57:02  18             THE COURT:   I feel like I have already said it.

05:57:05  19             MR. CERNIGLIA:   I have on there -- I wasn't sure

05:57:09  20  about, especially when it comes to amount of post Signal wages

05:57:15  21  that have been earned, that all that is discovery.   One thing,

05:57:21  22  in fact, even in the first case, as *Rivera* said, if the

05:57:26  23  defendants can find out for themselves, without asking, that's

05:57:30  24  fair game.

05:57:31  25                  So just the question is -- I'm mostly concerned

05:57:34
05:57:42
05:57:49
05:57:52
05:57:55
05:57:59
05:58:01
05:58:02
05:58:03
05:58:04
05:58:06
05:58:09
05:58:10
05:58:14
05:58:16
05:58:18
05:58:21
05:58:26
05:58:32
05:58:35
05:58:38
05:58:39
05:58:42
05:58:46
05:58:52

1  about earnings they have made.  If they are putting on in the
2  case, "Well, I had to borrow $15,000," nobody -- they could not
3  have expected to pay that back in 10 months.  If they did,
4  well, then that's fine; they say that.  But if they expected to
5  pay it back in three years and they stayed here for three
6  years, I should be able to ask, "How much did you earn in those
7  three years?"
8         THE COURT:  I think I have already ruled that you
9  couldn't --
10        MR. CERNIGLIA:  It was a discovery ruling.
11        THE COURT:  Have you discovered it some other way?
12        MR. CERNIGLIA:  No.  I think I have a right just to
13  ask them on the stand in front of the jury.  I think it's
14  relevant from a damages standpoint.
15        THE COURT:  I think I have already ruled on that too.
16  And I could be wrong about that, but I said they are not asking
17  for any damages for -- this is my recollection.  They are not
18  asking for damages post Signal, lost wages, and I ruled that
19  you couldn't ask them -- you couldn't discover what their post
20  Signal wages are.
21        MR. CERNIGLIA:  That's correct.
22        THE COURT:  And the reason is because it's -- number
23  one, it's not relevant.  And it's also the *in terrorem* effect.
24  So if it applied in discovery, it also applies at the trial.
25  Now, you all, if you want to clarify that, you might file a

05:58:55  1    motion in limine.

05:58:56  2            MR. HOWARD:  We don't need clarification.  We know

05:58:59  3    what you said.

05:59:00  4            THE COURT:  My belief, I've already ruled on those

05:59:04  5    things.

05:59:04  6            MR. CERNIGLIA:  Well, that's fine.  I do need to ask

05:59:05  7    you to clarify the record because there is a distinction

05:59:09  8    between a Rule 26 discovery order.  Especially, like I said,

05:59:11  9    the *Rivera* case itself said if they find out for themselves,

05:59:16  10   that's fair game.

05:59:17  11           The only thing I'm concerned about is they say,

05:59:22  12   "We are not looking for past wages after that," but part of

05:59:26  13   their allegations and they are going to seek for damages is "We

05:59:30  14   have to take out these loans, and we lost all that money."

05:59:35  15   They certainly could not have expected to pay it back in one

05:59:38  16   year.

05:59:39  17           THE COURT:  I don't understand the relevance of what

05:59:40  18   you are asking anyway.  If they --

05:59:43  19           MR. CERNIGLIA:  From detrimental reliance.  In other

05:59:45  20   words, "We came here and we had to borrow $15,000.  We had to

05:59:50  21   sell our family jewels.  We had to sell the family farm.  And

05:59:53  22   now it's all gone forever."

05:59:57  23           Well, if they, in fact, after they left Signal,

06:00:00  24   earned sufficient money to either pay off the note, reclaim the

06:00:05  25   jewelry, then there's been no detrimental reliance.  They have

06:00:10  1   not suffered the economic damages they are alleging.

06:00:13  2                Now, if they are not going to claim that, that's

06:00:16  3   one thing; but they are all saying, "We had to borrow this

06:00:20  4   money and now it's forever gone."  We should be able to ask

06:00:23  5   them --

06:00:25  6                THE COURT:  Don't they say, "What you promised to do

06:00:28  7   for the money was get me a green card, and you didn't do that"?

06:00:31  8                MR. CERNIGLIA:  That's not exactly correct,

06:00:32  9   Your Honor, and that's part of the thing.  If you buy into

06:00:35  10  that, that's one thing.  But even still, the Fifth Circuit said

06:00:39  11  future promises aren't enough for fraudulent misrepresentation.

06:00:44  12               The thing is there's been a lot of testimony

06:00:47  13  that, no, they knew exactly what they were doing.  They knew

06:00:51  14  they were going to come over on an H-2B first.  They were told

06:00:56  15  they would have to go back -- they might have to go back while

06:01:00  16  they waited for their sponsorship to become current, but the

06:01:05  17  point is they could earn money --

06:01:07  18               THE COURT:  But isn't that -- you're saying there was

06:01:09  19  no breach of contract?  So you don't even get to damages if

06:01:13  20  there's no breach.

06:01:14  21               MR. CERNIGLIA:  But also with a breach of contract or

06:01:17  22  fraudulent misrepresentation, damages are an essential part of

06:01:23  23  the claim itself.  The United States Supreme Court has said in

06:01:30  24  fraudulent misrepresentation, if there are no lost damages,

06:01:36  25  there is no claim.

06:01:39  1          THE COURT:  You all can respond to that.

06:01:47  2          MR. HOWARD:  Your Honor, let's take it as a practical

06:01:49  3    matter.  What Mr. Cerniglia is saying is "Well, after they left

06:01:55  4    Signal, if they had gone back to India, gone to Mexico, gone to

06:01:59  5    Canada, I want to know what wages they earned because they

06:02:03  6    would use those to pay back" -- well, he wouldn't say that.

06:02:05  7               But he is saying somehow they were earning wages

06:02:08  8    in the U.S.  Even though we defrauded them to get them to the

06:02:12  9    U.S., because they were able to earn wages, no thanks to us,

06:02:16  10   somewhere else, that somehow mitigates the damage, and that

06:02:21  11   doesn't make any sense at all.

06:02:23  12         MR. CERNIGLIA:  That's from the United States

06:02:24  13   Supreme Court.

06:02:25  14         THE COURT:  What you need to do is file a motion in

06:02:26  15   limine saying what testimony you think is admissible and how it

06:02:33  16   should be limited; that I limited it in this way, but it

06:02:39  17   doesn't carry through to the trial.  I don't know any other

06:02:42  18   vehicle to do it but by your doing a motion in limine by the

06:02:46  19   deadline.

06:02:51  20         MR. CERNIGLIA:  Didn't we pass that already?

06:02:52  21         MR. HOWARD:  No.

06:02:52  22         THE COURT:  No.

06:02:52  23         MR. HOWARD:  Not evidentiary motions in limine.

06:02:52  24         MR. ROUX:  Your Honor, Erin would like me to confirm

06:02:56  25   that you did order the *David* plaintiffs to give all affidavits,

06:02:59  1  the original and any supplemental produced to Signal.

06:03:03  2         THE COURT:  I did.

06:03:07  3         MS. HANGARTNER:  Do we have them?

06:03:12  4         MR. SANDLER:  The supplemental production of the

06:03:14  5  nonclass rep first 12, the *David* 12, the nonclass -- you first

06:03:19  6  got the class reps --

06:03:25  7         MR. ROUX:  I think it's the original ones that we're

06:03:26  8  talking about.

06:03:26  9         MR. UNGAR:  We don't have two different affidavits,

06:03:29  10 if there are different ones.

06:03:31  11        MR. WERNER:  If you only got one affidavit, then

06:03:34  12 there was no supplemental affidavit.

06:03:35  13        MR. UNGAR:  We have never received more than one

06:03:39  14 affidavit for any of the *David* plaintiffs.

06:03:39  15        THE COURT:  Will you check it tomorrow?

06:03:41  16        MR. SANDLER:  Sure, I will check.  What you got --

06:03:46  17 you have affidavits from all 12 *David*, right?

06:03:51  18        MR. UNGAR:  Yes, I believe so.

06:03:51  19        MR. SANDLER:  So what you are concerned about is that

06:03:52  20 you think some of the *David* plaintiffs put a supplemental

06:03:56  21 affidavit in to the government and you don't have those?

06:03:57  22        MR. ROUX:  No, we believe we have the supplemental

06:03:59  23 but don't have the original.

06:04:00  24        MS. HANGARTNER:  Some of them talk about --

06:04:03  25        MR. SANDLER:  Okay.  And that was arrived at in the

06:04:07  1   post initial production.  So the nonclass rep *David* plaintiffs,

06:04:11  2   is that issue arising there, or is that issue arising

06:04:15  3   throughout the --

06:04:17  4         MR. ROUX:  I think it's throughout because I think we

06:04:19  5   didn't get the original.  That's why we asked the Court to

06:04:21  6   order them in the first place.

06:04:22  7         MS. HANGARTNER:  Right.

06:04:23  8         MR. SANDLER:  When you deposed plaintiffs, like when

06:04:26  9   you deposed --

06:04:28  10        MR. UNGAR:  I used the only T visa affidavit we had.

06:04:31  11  There was one and that was it.

06:04:32  12        MR. SANDLER:  You suspect that there were other

06:04:33  13  supplementals?

06:04:35  14        MR. UNGAR:  Well, I know there were some originals

06:04:36  15  that we don't have because some of the ones that we have say

06:04:39  16  "supplemental" on the top, which means there's one that

06:04:40  17  preceded it that we don't have it.  Why don't you and I get

06:04:43  18  together on this.  We can talk about it to make sure we have

06:04:45  19  all the --

06:04:46  20        MR. WERNER:  We will figure it out.  Certainly we

06:04:48  21  didn't -- we understood --

06:04:48  22        MR. UNGAR:  Yeah, we'll figure it out.

06:04:49  23        MR. HOWARD:  Just for clarification -- and I think we

06:04:51  24  are on the same page as this -- we absolutely understand and I

06:04:55  25  thought we had fulfilled the obligation to provide those as

06:04:59  1  prior sworn statements that can be used for impeachment

06:05:02  2  purposes.  They cannot be used to then go to the next questions

06:05:07  3  postured by Mr. Weinberger as to the context in which those

06:05:11  4  affidavits were made or the results thereof.

06:05:12  5          THE COURT:  Right.  And they are not to be referred

06:05:14  6  to as "affidavits attached to your visa application."

06:05:20  7          MR. HOWARD:  "Did you submit an affidavit?"

06:05:25  8          THE COURT:  "Did you sign it?"

06:05:25  9          MS. HANGARTNER:  Is it your position, though, that

06:05:26  10 you get to argue to the jury that they got a T visa?

06:05:31  11         MR. HOWARD:  No.

06:05:31  12         MS. HANGARTNER:  Okay.

06:05:31  13         MR. HOWARD:  No.  If you open the door to it, then we

06:05:34  14 would have no choice, but I have said all along it all stays

06:05:40  15 out.  That's why I have always been surprised by your adamance

06:05:46  16 that we need to get into this because I would imagine that

06:05:50  17 would be something, assuming the ones that did get T visas, if

06:05:55  18 that were to come to the jury's attention, it would be

06:05:59  19 problematic for your case.  And why you are inviting that, I

06:06:03  20 have always found --

06:06:05  21         THE COURT:  Don't talk.

06:06:06  22         MR. HOWARD:  -- curious, but I think we are on the

06:06:10  23 same page, so I make that statement.  We can't ask those

06:06:11  24 questions either.

06:06:15  25         THE COURT:  I think for the EEOC we covered the

06:06:19  1    first -- I had Signal/RSA redaction of subpoena documents, and

06:06:23  2    we talked about that.  The possible depositions from late

06:06:26  3    discovery, we talked about.

06:06:29  4          There's an outstanding discovery order.  I can't

06:06:34  5    remember -- this is what Gerald Miller put on his --

06:06:37  6          MS. BEAN:  The Court granted our motion to compel,

06:06:40  7    and so the discovery that we are talking about, that we had

06:06:45  8    negotiated, the magistrate granted the motion to compel.  So

06:06:48  9    they have given us -- we had already negotiated, actually.  And

06:06:52  10   so they have probably given us less than the magistrate ordered

06:06:56  11   they give us.  So we just have to get some documents.  You all

06:06:57  12   have to sign them and get the Bates numbers.

06:07:01  13         MS. HANGARTNER:  We talked about that.

06:07:01  14         THE COURT:  So you got that.

06:07:03  15         We talked about an extension to Monday to serve

06:07:06  16   your expert reports.

06:07:07  17         MS. BEAN:  Yes.  Thank you, Your Honor.

06:07:09  18         THE COURT:  We have covered your issues.

06:07:11  19         Greg, what we talked about, the issue you

06:07:15  20   raised, the pending motion to dismiss the *Singh* complaint.

06:07:19  21         The next status conference in *David* -- it's the

06:07:23  22   pretrial conference on December 17 and it is set at 2:00.  And

06:07:30  23   then we have a status conference in *EEOC* and *Achari* set at

06:07:34  24   3:00.  Since these take so long, I thought that maybe we should

06:07:38  25   change the time, we start at noon, so that we are not here

1    until 7:00.

2            MR. SHAPIRO:  Can we order a pizza?

3            THE COURT:  Have an early lunch or bring enough to

4    share.  December 17, we will start at 12:00 noon.

5            We should have covered everybody's topics since

6    I gave you advance warning, but I will ask one time:  Is there

7    anything else that we need to talk about?

8            Good.  We will make changes and additions to the

9    scheduling orders and get those out.  We will get a minute

10   entry out eventually.  But you all have some things to do and

11   let us know about.

12           I really want to encourage your clients, though,

13   to participate, and to participate in private mediation, for a

14   lot of reasons, which I'm sure you can explain to them.  Thank

15   you.

16           (Proceedings adjourned.)

17                                    * * *

18                           __CERTIFICATE__

19           I, Toni Doyle Tusa, CCR, FCRR, Official Court
     Reporter for the United States District Court, Eastern District
20   of Louisiana, certify that the foregoing is a true and correct
     transcript, to the best of my ability and understanding, from
21   the record of proceedings in the above-entitled matter.

22

23

                                 _s/ Toni Doyle Tusa_
24                               Toni Doyle Tusa, CCR, FCRR
                                 Official Court Reporter

25

**$**

$15,000 [2] 156/2 157/20
$18 [2] 29/23 36/9
$18-an-hour [1] 36/9
$22 [2] 126/13 130/12
$22 million [2] 126/13 130/12
$4.5 [1] 141/24
$4.5 million [1] 141/24

**0**

02116 [1] 2/21
08-1220 [1] 1/5

**1**

1,000 [1] 153/3
1/13 [1] 129/4
10 [7] 6/24 7/2 7/9 12/18 15/7 53/11 156/3
10 days [3] 91/1 91/4 92/15
10 minutes [1] 127/22
10 percent [3] 70/11 72/1 72/5
10 times [1] 113/16
10,000 [1] 153/3
10,000-foot [1] 91/19
10-day [1] 154/13
10-ish [1] 11/4
10-minute [1] 107/13
100 [1] 149/11
10022 [1] 2/4
102 [1] 114/3
1055 [1] 2/10
11 [3] 58/19 59/25 60/22
110 [1] 110/15
1130 [1] 3/4
11th [5] 58/7 58/10 58/12 58/15 60/6
12 [14] 10/3 10/25 11/5 11/23 53/7 63/12 90/16 129/4 143/18 143/20 143/23 160/5 160/5 160/17
12-557 [1] 1/10
1220 [1] 1/5
12:00 [1] 164/4
12th [10] 2/23 58/6 58/10 58/11 58/12 58/13 58/14 91/13 143/21 143/22
13 [1] 129/4
13-6218 [1] 1/15
13-6219 [1] 1/16
13-6220 [1] 1/16
13-6221 [1] 1/16
13707 [1] 3/12
14-1818 [1] 1/17
14-732 [1] 1/16
1404 [3] 17/13 52/20 53/1
15 [1] 51/15
1500 [1] 117/7
1521 [1] 3/18
1583 [4] 98/7 98/21 99/12 100/13
1584 [4] 98/7 98/21 99/13 100/14
1589 [3] 98/3 99/7 99/17
1590 [3] 98/3 99/7 99/17
1592 [3] 98/7 98/21 99/13
15th [1] 143/18
16 [1] 51/14
1631 [1] 2/13
17 [7] 61/6 87/13 87/18 128/12 142/12 163/22 164/4
1783 [1] 114/3
18 [1] 60/24
1818 [1] 1/17
1827 [1] 107/12
18th [1] 60/8
19 [1] 53/12
1981 [5] 101/8 102/1 102/6 102/8 107/1

1985 [7] 98/9 99/21 99/21 100/12 102/4 102/10 103/13
2000 [1] 3/4

**2**

2000 [1] 3/4
20005 [1] 2/24
2003 [3] 38/12 38/20 39/1
2004 [3] 38/12 38/20 39/1
2005 [1] 38/12
2006 [2] 38/10 43/23
2007 [1] 47/16
201 [1] 2/17
2010 [2] 78/2 114/4
2014 [2] 1/22 4/2
2016 [7] 8/23 9/18 9/23 9/24 10/1 12/2 12/6
2017 [1] 12/17
2150 [1] 2/7
22nd [1] 3/4
233 [1] 2/7
24 [1] 33/14
25 [2] 124/3 124/9
26 [1] 157/8
275 [1] 3/20
28 [2] 7/11 79/13
28th [1] 7/12
2:00 [2] 67/24 163/22
2B [4] 43/23 43/25 45/3 158/14
2nd [1] 147/23

**3**

30 [5] 1/22 4/2 8/10 9/10 142/13
30,000-foot [1] 91/19
300 [1] 141/3
30303 [1] 2/8
31 [8] 10/12 11/1 12/4 12/13 12/15 13/1 51/8 51/19
310 [1] 3/9
35205 [1] 3/4
37 [2] 11/24 56/14
3:00 [1] 163/24
3:00 p.m [1] 128/12
3rd [2] 60/20 147/23

**4**

40 [1] 10/19
4000 [1] 2/17
42 [2] 99/21 107/1
44.1 [1] 20/18
46 percent [4] 70/10 70/16 70/18 71/25
4:35 [1] 107/15
4:45 [1] 107/16
4th [1] 147/20

**5**

50 [1] 106/17
500 [2] 2/20 3/20
504 [1] 3/21
505 [1] 2/10
51 [1] 70/3
51 percent [1] 66/7
512 [1] 58/19
557 [1] 1/10
56 [1] 34/15
56 percent [1] 70/15
589-7778 [1] 3/21
590 [1] 2/4
5:00 [1] 87/11
5:00 because [1] 121/18
5:30 [1] 120/25
5th [1] 61/19

**6**

6218 [1] 1/15

6219 [1] 1/16
6220 [1] 1/16
6221 [1] 1/16
698 [1] 115/17
6:00 [1] 120/25

**7**

700 [2] 2/23 3/15
700-something [1] 34/16
701 [1] 3/9
70117 [1] 2/14
70130 [4] 2/11 3/15 3/18 3/21
70139 [1] 3/10
70170 [1] 2/17
70185 [1] 3/13
732 [1] 1/16
7778 [1] 3/21
7:00 [1] 164/1
7th [1] 60/14

**8**

8:30 [1] 120/24
8th [3] 12/9 12/10 148/2

**9**

9:00 to [1] 121/18

**A**

ability [5] 88/12 127/14 138/8 153/19 164/20
able [25] 27/4 65/4 78/24 82/2 84/9 86/13 89/23 90/22 104/25 105/8 105/13 110/8 111/17 139/8 142/4 149/1 149/5 149/12 149/25 151/16 152/15 154/8 156/6 158/4 159/9
about [176]
above [1] 164/21
above-entitled [1] 164/21
abroad [1] 35/20
absolutely [14] 18/15 23/6 33/23 75/12 87/9 88/7 101/9 117/22 120/9 135/15 135/24 143/9 144/7 161/24
abundance [2] 88/3 113/4
abuse [2] 48/5 120/15
academic [1] 63/16
accept [3] 131/20 132/13 149/9
access [1] 16/9
accessible [1] 90/14
accordance [1] 56/14
according [2] 78/25 141/24
accordingly [1] 105/3
account [2] 120/18 124/7
accused [1] 136/13
ACHARI [27] 1/14 2/15 4/16 6/22 6/23 7/3 7/4 11/12 11/14 11/24 13/11 14/17 15/1 15/2 15/12 16/19 17/6 50/16 50/22 51/20 51/21 52/3 52/6 52/25 79/12 154/14 163/23
acknowledge [1] 77/10
acknowledgment [1] 32/17
acquired [1] 73/7
Act [8] 23/1 23/2 23/7 24/8 27/19 98/2 101/24 102/5
action [5] 1/4 1/9 1/14 28/16 69/22
active [1] 95/11
actively [1] 83/25
acts [4] 28/20 33/1 100/2 100/4
actual [2] 36/15 117/25
actually [29] 11/15 26/10 29/22 33/13 38/3 45/11 51/15 69/11 70/19 75/14 80/8 82/17 88/17 88/20 93/7 96/8 109/21 109/24 125/22 126/2 128/1 128/19 130/20 130/25 139/8 142/21

actually... [3]  151/4 153/13 163/9
adamance [1]  162/15
add [3]  7/23 48/17 119/18
addition [2]  6/12 123/4
additional [12]  6/24 7/2 11/13 53/4 58/8
 58/16 68/21 68/24 70/11 73/17 75/20
 85/10
additionally [2]  126/15 135/8
additions [3]  6/9 6/15 164/8
address [6]  20/21 27/4 27/18 48/16
 92/10 129/20
addressed [4]  26/10 31/10 48/8 113/2
adjourned [1]  164/16
admissible [1]  159/15
admit [1]  114/23
admits [3]  32/21 43/13 136/18
advance [3]  134/13 143/7 164/6
advanced [2]  52/24 78/18
advantage [1]  126/18
adverse [1]  109/10
adversely [3]  110/3 111/18 111/24
advertising [1]  56/5
advice [3]  46/21 46/21 46/22
affect [1]  53/1
affidavit [9]  154/21 155/9 155/12 160/11
 160/12 160/14 160/21 161/10 162/7
affidavits [6]  154/17 159/25 160/9
 160/17 162/4 162/6
affirmative [1]  110/1
affirmatively [1]  110/3
after [18]  6/5 13/13 13/22 38/22 51/7
 57/9 59/11 60/15 61/11 61/20 74/2
 108/13 112/12 132/7 151/24 157/12
 157/23 159/3
afternoon [5]  4/3 121/7 125/8 148/1
 149/24
afterthought [1]  97/11
afterwards [2]  44/5 105/12
again [14]  7/17 11/25 34/9 39/2 41/3
 42/19 66/13 76/12 98/11 102/10 145/11
 146/3 149/11 153/19
against [31]  19/1 19/2 19/3 23/13 26/22
 29/10 29/15 29/16 32/22 33/2 34/6 35/4
 41/13 41/16 43/21 46/18 47/10 47/12
 53/13 54/24 55/3 55/6 57/17 57/17
 69/22 76/7 124/15 136/7 148/25 148/25
 149/4
agency [10]  31/11 33/25 34/15 35/3
 35/6 37/19 38/1 38/24 39/5 46/10
agenda [3]  5/18 5/25 93/13
agent [6]  31/12 31/18 32/12 33/22 37/21
 40/1
agents [8]  31/9 32/25 35/11 37/13 46/11
 46/15 46/16 46/19
ago [4]  62/4 96/9 122/22 143/15
agree [31]  9/14 9/15 11/8 17/21 18/21
 20/4 21/12 47/17 47/20 56/8 63/18 66/3
 69/1 69/1 69/2 82/19 92/12 94/4 95/12
 96/21 102/21 121/25 128/19 133/21
 148/19 149/23 150/9 150/22 150/25
 151/1 152/16
agreed [7]  14/12 29/12 48/18 48/18 80/5
 80/6 125/23
agreeing [2]  50/4 150/20
agreement [28]  7/16 7/18 15/12 16/11
 16/23 29/2 32/3 32/4 33/11 34/8 34/24
 35/2 35/18 36/13 36/14 36/16 43/15
 64/18 64/18 64/25 90/11 93/4 93/4
 111/17 122/15 131/19 133/9 149/5
agreements [1]  16/10
agrees [5]  16/24 18/14 18/17 25/8 128/5

ahead [5]  20/3 55/10 118/9 122/19
 132/10
aided [1]  3/24
aiming [1]  11/3
air [1]  8/17
al [5]  1/4 1/6 1/11 1/14 1/18
Alabama [4]  3/4 66/8 69/21 76/24
ALAN [12]  2/3 3/7 4/8 5/1 9/22 26/3
 44/21 52/20 98/11 98/20 109/8 128/23
 152/19
alert [1]  102/11
Alexis [1]  114/14
all [231]
allegation [1]  55/3
allegations [4]  46/23 135/22 136/5
 157/13
allege [1]  48/6
alleged [2]  46/16 46/19
alleging [2]  30/14 158/1
allocates [1]  142/18
allow [3]  6/17 93/11 109/20
allowed [4]  42/15 42/21 155/1 155/9
allows [3]  21/20 21/21 21/22
almost [3]  80/18 141/18 149/16
alone [1]  95/18
along [4]  19/25 64/20 86/6 162/14
already [17]  63/12 68/11 77/16 79/8
 86/20 107/9 119/11 150/10 155/5
 155/13 155/15 155/18 156/8 156/15
 157/4 159/20 163/9
also [42]  14/22 24/12 26/1 26/8 31/7
 31/24 33/22 34/24 35/1 35/17 40/10
 41/9 45/12 47/8 48/5 54/3 57/13 60/11
 76/17 87/23 89/6 91/11 93/4 99/20
 108/22 109/8 109/13 110/2 110/16
 116/17 119/9 120/9 125/14 132/11
 140/2 140/4 145/16 151/5 152/19
 156/23 156/24 158/21
alternates [6]  121/20 121/23 122/1
 122/1 122/7 122/9
alternative [1]  69/20 76/25
although [5]  102/9 127/11 140/9 145/1
 149/3
always [7]  41/24 97/7 134/7 134/18
 140/15 162/15 162/20
am [12]  23/20 29/1 29/2 46/5 66/5 70/7
 74/25 101/22 119/25 120/5 123/2
 124/17
amazed [1]  97/7
amend [1]  147/18
amount [3]  130/1 133/22 155/20
analysis [12]  18/2 21/6 24/23 25/2 25/25
 27/1 28/13 28/18 34/1 40/5 52/18 52/23
another [15]  9/3 9/9 27/3 29/5 35/10
 40/5 66/11 66/18 68/8 71/4 78/14 84/18
 84/19 85/5 116/21
answer [2]  24/17 149/11
answered [2]  66/9 137/16
answering [1]  69/22
anticipate [2]  91/12 91/13
anticipating [1]  150/18
anxious [1]  92/6
any [62]  6/3 6/7 6/9 6/15 6/19 7/22 8/4
 9/8 13/23 15/16 20/21 25/13 28/2 30/12
 36/19 38/10 49/11 49/12 49/13 56/14
 56/18 59/19 59/20 67/12 70/6 71/18
 73/2 73/7 75/4 75/18 75/24 82/16 84/6
 92/4 93/21 98/16 101/22 103/20 103/20
 104/18 106/3 106/8 109/12 112/14
 113/12 119/20 123/9 127/14 127/22
 128/18 131/10 137/12 139/14 147/11
 149/4 149/15 154/11 156/17 159/11
 159/17 160/1 160/14

anybody [17]  6/7 6/19 9/8 9/25 15/16
 15/23 76/16 77/18 77/23 78/6 78/8 103/20
 106/9 115/22 122/23 146/16 150/19
 151/2
anyone [5]  17/24 28/13 45/17 84/9
 130/7
anything [28]  6/10 8/2 9/18 13/4 13/6
 14/25 15/23 48/17 49/14 56/1 56/2
 56/23 61/14 63/5 68/4 69/17 75/5 77/4
 89/14 99/18 132/15 136/16 136/18
 142/3 144/2 148/18 148/22 164/7
anytime [1]  87/16
anyway [5]  48/16 90/6 132/14 147/8
 157/18
anywhere [1]  8/13
apart [7]  126/14 126/25 127/20 128/1
 129/11 129/15 129/20
apiece [1]  129/5
APLC [1]  3/11
apologize [1]  144/22
apparent [1]  87/20
apparently [4]  34/24 72/13 75/2 116/18
appeal [1]  155/14
appearance [1]  84/3
Appearances [2]  2/1 3/1
appearing [1]  109/21
applicable [3]  23/16 37/6 37/25
application [3]  17/9 155/10 162/6
applications [1]  155/16
applied [3]  109/4 154/25 156/24
applies [18]  1/19 13/25 14/2 18/18 18/21
 23/3 24/2 24/3 24/21 25/10 26/13 26/18
 27/19 40/5 52/14 64/5 109/2 156/24
apply [14]  13/14 16/25 17/16 17/19
 17/19 17/20 20/5 40/11 41/6 47/4 52/2
 52/7 64/2 92/17
applying [1]  20/14
appointment [1]  87/7
approach [1]  8/24
approaches [1]  97/2
appropriate [4]  40/24 130/2 133/19
 138/25
April [2]  51/14 141/22
April 16 [1]  51/14
Arata [2]  2/15 4/15
are [403]
area [2]  85/17 85/22
areas [2]  91/17 91/17
aren't [4]  86/12 131/13 148/16 158/11
argue [5]  37/15 39/3 46/4 54/5 162/10
argued [5]  40/13 55/17 56/6 67/3 72/10
arguing [3]  38/13 38/19 47/2
argument [15]  23/10 37/1 37/6 37/14
 37/16 46/2 47/6 50/23 53/2 53/16 67/19
 67/20 94/6 96/23 142/3
arguments [1]  40/12
arisen [1]  43/5
arising [4]  47/16 102/22 161/2 161/2
arm's [1]  71/9
arm's-length [1]  71/9
around [16]  4/6 14/10 42/8 43/5 69/21
 82/3 82/16 83/5 85/10 104/24 112/22
 121/7 121/16 133/8 139/20 149/1
Arps [2]  2/19 4/17
arrived [2]  42/17 160/25
articles [1]  40/3
as [134]  5/21 9/20 11/7 13/5 13/6 13/10
 13/15 18/9 20/16 20/16 20/22 23/7
 23/12 24/7 25/8 26/25 26/25 27/5 27/7
 30/13 30/13 31/18 31/21 32/19 32/23
 35/4 35/4 36/3 37/4 41/15 43/6 48/6
 49/2 52/3 53/1 53/6 53/6 54/6 55/2 55/7
 55/20 63/4 63/23 63/23 64/12 64/22

# A

as... [88]  67/14 69/18 69/18 70/19 71/4
71/21 71/25 72/1 72/9 74/7 76/3 76/25
77/5 77/5 77/22 83/8 83/13 84/8 87/5
87/5 89/5 89/17 91/15 91/15 92/6 92/13
92/14 92/15 92/15 92/18 92/18 94/20
94/21 94/22 94/23 96/7 97/12 97/12
98/9 99/8 99/20 99/22 100/7 100/14
101/23 102/9 103/6 109/4 109/9 109/25
110/3 110/7 110/25 110/25 111/1
112/20 113/5 114/21 119/17 120/12
122/13 124/7 124/7 125/3 125/3 126/25
126/25 129/18 129/19 131/14 134/14
135/17 138/21 141/4 141/8 142/16
142/24 143/3 145/21 153/22 153/22
154/16 155/22 159/2 161/24 161/25
162/3 162/6
aside [1]  118/19
ask [30]  29/14 44/13 49/18 53/22 68/6
69/2 69/6 75/20 75/23 77/1 80/2 85/6
123/3 123/3 123/5 123/5 123/6 123/8
123/10 123/10 147/19 149/24 155/9
156/6 156/13 156/19 157/6 158/4
162/23 164/6
asked [19]  5/20 7/6 8/12 14/9 29/7
30/21 44/8 44/8 54/25 58/4 62/10 74/4
79/22 83/13 95/9 107/20 115/21 154/22
161/5
asking [6]  6/16 7/2 17/24 55/25 69/10
69/12 69/12 78/25 87/2 89/9 110/9
155/23 156/16 156/18 157/18
aspect [4]  37/8 41/17 41/19 75/1
assault [3]  101/14 103/1 103/2
assert [2]  73/5 73/6
asserted [4]  74/15 74/22 74/23 74/24
assertion [2]  67/14 75/24
assertions [3]  67/11 74/19 75/21
assess [1]  76/1
assign [1]  115/14
assignment [1]  57/24
assistant [1]  107/19
associated [4]  89/15 99/3 104/1 134/19
assume [9]  9/17 10/3 83/6 100/19 107/5
110/22 113/17 140/2 152/6
assumed [1]  78/17
assuming [6]  13/13 17/21 43/1 133/14
134/14 162/17
assumption [1]  64/7
at [151]  5/21 8/23 9/16 10/10 10/22
11/10 11/18 11/25 14/8 14/23 16/6
16/17 16/20 16/21 21/13 21/14 21/19
22/8 24/16 24/21 25/21 27/2 28/5 28/6
29/2 29/4 34/13 36/17 39/18 40/8 45/7
46/24 50/5 50/6 50/17 56/25 62/19
63/11 63/14 65/14 67/6 67/11 67/23
68/14 69/7 69/16 72/8 73/18 74/4 74/6
75/23 78/9 78/24 81/13 81/25 82/12
82/15 83/22 84/2 84/6 84/10 84/10
84/12 85/13 85/19 85/21 86/25 87/11
87/19 87/25 88/1 88/17 89/25 90/19
91/18 91/25 94/1 94/10 94/17 94/22
95/5 95/23 95/24 96/4 96/5 96/24 97/22
104/13 104/19 105/1 106/12 107/16
110/2 111/4 111/10 111/15 112/4 112/8
113/11 113/11 113/13 113/22 114/25
115/4 117/20 117/21 118/5 118/25
119/19 119/24 120/24 121/6 121/13
122/3 123/14 125/11 126/13 126/25
127/1 128/4 128/12 128/16 129/13
130/15 131/3 133/9 136/2 136/5 139/3
139/18 139/19 139/20 142/24 143/5
144/5 145/7 147/1 147/4 149/3 150/5
151/13 152/23 154/5 154/6 156/24
159/10 160/25 163/21 163/22 163/25
164/4
Atlanta [1]  2/8
attach [3]  15/11 15/18 28/13
attached [5]  15/10 15/16 62/14 62/18
162/6
attempt [1]  140/6
attempted [1]  133/4
attempts [1]  54/1
attend [2]  55/1 143/2
attention [4]  14/8 97/10 121/3 162/18
attests [1]  44/3
attorney [9]  14/21 31/25 32/2 32/4 32/14
32/19 33/10 43/19 147/1
attorneys [6]  67/1 83/3 84/7 93/15 95/7
147/1
attorneys' [3]  13/9 13/19 13/21
audio [1]  86/12
August [2]  54/22 141/23
authenticate [1]  92/9
authenticity [1]  92/8
authority [14]  31/13 32/23 32/24 32/24
32/25 46/17 130/20 131/1 133/17
133/18 138/14 144/20 146/25 147/2
authorization [1]  97/21
authorized [5]  32/20 37/20 38/14 38/20
43/20
automatically [3]  14/11 25/12 152/6
available [7]  22/3 90/13 104/11 105/8
106/10 110/6 143/25
Avenue [5]  2/4 2/10 2/13 2/17 3/18
avowed [2]  127/25 18/4
aware [4]  127/17 130/22 142/7 151/12
away [1]  121/17

# B

B-275 [1]  3/20
back [39]  6/14 11/13 22/8 27/1 34/19
36/18 44/5 48/19 61/23 67/22 69/9
75/10 79/20 79/23 87/12 94/13 94/14
107/10 107/16 123/11 123/15 123/18
126/1 130/1 130/4 137/19 141/16 144/3
146/1 147/25 153/15 153/20 156/3
156/5 157/15 158/15 158/15 159/4
159/6
back-and-forth [1]  130/1
backing [1]  97/25
backs [1]  123/16
backup [3]  81/13 83/21 108/23
bad [1]  123/22
balance [1]  92/21
bankruptcy [1]  148/25
banners [1]  136/11
bar [1]  85/1
barriers [2]  134/19 134/20
based [20]  26/23 29/11 33/3 34/7 35/5
48/14 100/3 104/12 136/7 139/23
basically [6]  33/12 73/23 97/3 136/6
145/7 147/22
basis [3]  16/15 23/12 92/3
Bates [20]  65/12 68/12 77/10 113/22
113/24 114/1 114/4 114/6 114/7 114/11
114/15 115/1 115/10 115/10 115/13
116/16 153/4 153/7 153/10 163/12
Bates-numbered [1]  116/16
Bates-stamp [1]  77/10
Bates-stamped [2]  68/12 114/4
battery [3]  101/14 103/1 103/2
be [280]
BEAN [7]  3/3 4/19 65/14 73/21 74/5
75/13 77/14
Bean's [1]  73/12

bear [1]  55/4
bearing [1]  54/20
becampbell [1]  2/19
because [85]  5/21 7/7 18/6 25/2 25/11
26/15 30/19 35/6 37/12 41/4 41/5 41/17
42/3 43/9 43/24 45/17 46/10 46/19
47/13 48/3 50/20 50/23 51/23 52/5 52/7
52/8 52/15 56/25 58/22 59/1 59/4 59/18
67/25 69/20 72/17 74/15 74/25 75/11
77/2 80/6 84/8 86/3 88/4 93/2 94/10
98/17 105/14 111/19 113/13 114/16
119/10 121/18 122/1 122/17 127/18
127/20 128/17 130/21 133/1 136/1
136/10 142/17 143/7 143/11 144/23
145/21 145/22 147/7 147/15 147/20
149/25 150/14 151/4 151/17 152/1
152/6 153/15 155/8 156/22 157/7 159/5
159/9 161/4 161/15 162/16
become [2]  130/22 158/16
becomes [2]  19/19 104/23
been [55]  6/3 7/18 13/13 16/3 16/20
18/11 19/7 19/12 38/24 40/5 40/19 41/2
42/21 43/5 44/22 48/20 48/23 54/1 55/9
62/7 64/6 65/22 68/11 72/12 77/16 80/7
88/10 103/23 105/2 109/3 109/3 115/4
119/11 122/21 125/21 126/1 127/24
130/14 130/22 136/2 138/4 138/20
139/8 139/10 141/2 142/4 147/9 149/12
151/17 152/5 155/5 155/21 157/25
158/12 162/15
before [40]  1/23 5/24 14/13 15/23 24/20
35/20 38/15 54/9 61/10 61/18 63/3 64/2
73/24 74/21 75/14 79/15 87/5 90/17
90/22 90/24 92/9 94/11 94/20 96/5
100/20 105/4 106/15 126/4 127/23
131/3 132/2 132/24 136/16 141/1 142/5
143/17 144/19 151/24 153/6 153/10
beginning [7]  11/13 81/25 84/4 94/11
116/8 144/5 145/7
behalf [18]  4/17 4/19 4/22 4/24 5/1 5/3
5/4 5/6 5/7 5/9 5/10 5/12 5/15 38/14
46/14 101/10 125/23 130/20
behaved [1]  78/18
behind [2]  85/1 129/9
being [18]  10/13 22/14 23/12 39/10
39/11 39/24 48/24 49/10 50/18 59/15
73/18 100/3 102/12 102/15 129/13
129/17 131/8 132/15
belief [1]  157/4
believe [27]  7/11 12/6 14/5 16/6 16/24
18/20 26/13 50/2 51/15 62/5 63/2 66/24
79/20 90/20 103/8 103/24 117/10
124/10 134/25 135/2 137/21 137/23
137/25 140/8 149/8 160/18 160/22
believer [1]  134/23
believes [1]  130/13
bell [1]  58/9
below [1]  122/11
bench [3]  89/24 123/9 123/11
benchbooks [3]  90/2 90/5 154/7
benches [1]  84/25
best [5]  127/2 127/5 131/10 131/18
164/20
bet [1]  152/13
better [13]  4/5 9/9 34/23 70/6 87/25 88/1
93/6 136/12 140/13 142/9 142/22
148/20 151/16
Betty [1]  86/18
between [21]  11/19 19/13 20/12 20/13
22/20 29/2 30/14 31/17 31/22 34/25
37/5 38/15 40/19 53/5 56/22 67/1 74/20
76/19 123/15 140/12 157/8
beyond [3]  83/17 130/9 139/11
Bhabha [5]  80/20 81/19 81/21 81/24

**B**

Bhabha... [1] 82/18
biased [1] 152/7
bifurcated [1] 49/24
big [5] 21/18 87/23 88/19 111/1 124/23
bigger [1] 130/14
binder [1] 106/18
binders [3] 106/21 118/1 118/9
Binion [1] 114/3
Binion's [1] 114/21
Birmingham [1] 3/4
bit [12] 10/17 10/18 13/10 43/10 72/16 85/16 94/6 114/23 129/23 133/13 142/6 145/10
Bless [1] 126/21
blithely [1] 13/13
board [4] 71/17 72/18 72/18 73/7
bodies [1] 68/10
body [3] 20/7 42/18 151/6
Bollman [3] 3/11 3/12 5/6
bonos [2] 23/8 41/16
book [2] 63/14 86/24
books [1] 89/24
borrow [3] 156/2 157/20 158/3
boss [1] 123/22
Boston [2] 2/21 148/4
both [13] 17/7 29/25 47/2 47/4 68/19 74/24 75/6 75/6 75/7 81/2 104/22 139/18 153/21
bothering [1] 132/4
bottom [2] 115/17 142/8
bound [2] 32/25 43/2
Box [1] 3/12
Boyslton [1] 2/20
BP [2] 84/24 122/18
breach [18] 19/3 19/14 19/22 19/24 20/25 29/10 29/14 29/16 30/23 33/2 36/11 36/20 102/24 103/14 103/17 158/19 158/20 158/21
breached [2] 36/19 36/23
breaches [1] 36/15
break [5] 75/18 75/18 107/14 121/5 123/20
BRIAN [3] 3/7 5/3 105/19
Bridge [1] 122/18
bridged [1] 130/14
brief [9] 37/24 37/24 37/25 38/3 39/4 46/6 61/25 62/1 62/14
briefed [3] 40/5 40/24 50/22
briefing [7] 38/2 50/3 51/23 52/19 52/22 53/4 58/5
briefly [2] 39/9 61/23
bright [1] 76/19
bring [8] 13/8 81/15 83/14 105/3 105/7 122/19 141/3 164/3
bringing [3] 48/10 104/16 127/20
brought [4] 63/1 69/5 92/24 125/14
bucket [2] 145/23 148/15
built [1] 48/6
Bullerman [2] 79/25 80/1
bump [1] 7/8
bunch [1] 134/19
burden [2] 55/4 122/17
Burnett [25] 3/17 4/25 19/1 19/2 19/3 19/10 26/14 31/25 32/19 33/7 33/9 33/11 33/13 33/21 35/2 35/9 38/11 44/12 53/13 55/6 55/21 55/25 90/13 106/23 107/11
Burser [1] 143/25
but [218]
buy [1] 158/9

**C**

c/w [1] 1/16
calculations [1] 14/14
calendar [3] 9/5 12/18 51/16
calendars [2] 9/18 12/23
call [38] 67/25 76/8 76/14 79/19 95/14 104/4 104/4 104/15 104/15 106/4 106/5 106/7 106/9 106/11 109/12 109/22 110/3 110/6 110/18 110/18 111/3 111/5 111/18 111/24 111/24 112/15 118/8 123/8 123/11 123/22 125/12 142/16 142/17 144/10 144/11 144/15 149/13 149/18
called [9] 44/1 54/14 99/5 108/18 110/11 119/11 122/25 132/3 137/16
calling [3] 44/13 106/10 109/10 109/24 110/5
came [7] 29/24 30/5 35/21 36/11 58/24 145/8 157/20
camp [4] 3/15 45/16 48/8 116/16
can [137] 9/4 9/13 10/23 13/6 18/9 20/1 20/19 20/19 20/20 20/20 21/3 25/7 28/12 28/25 29/7 34/23 43/1 49/15 51/8 51/10 51/18 54/19 54/20 56/21 57/10 57/12 57/19 57/21 61/23 64/18 65/4 65/19 65/21 67/21 70/13 71/3 72/2 72/15 77/23 79/5 81/1 81/3 82/3 82/7 82/9 82/15 82/16 82/22 82/24 83/14 85/13 86/10 86/11 86/13 86/14 86/14 86/21 87/7 87/13 87/22 87/25 87/25 88/4 88/17 89/1 89/1 89/14 89/20 90/7 90/9 90/10 91/16 91/18 92/6 92/7 92/14 92/15 92/18 93/3 93/25 94/6 94/20 95/2 95/3 95/7 95/18 95/24 96/4 97/16 97/22 100/6 100/16 104/14 105/24 110/6 110/6 112/20 114/15 114/16 115/15 117/11 118/9 120/12 122/14 123/16 125/7 129/20 132/20 132/25 137/9 137/10 137/23 137/24 137/25 139/15 140/3 141/5 144/1 144/5 144/11 144/14 145/8 145/14 147/5 147/13 148/14 149/24 150/20 151/11 151/12 152/13 155/23 159/1 161/18 162/1 164/2 164/14
can't [39] 9/11 9/14 11/9 23/1 44/16 45/19 57/19 80/24 81/12 82/8 85/6 86/3 89/17 89/22 95/7 97/6 105/3 111/8 113/15 117/20 118/19 120/19 122/11 126/21 127/10 128/22 131/7 133/3 133/9 140/2 141/3 141/12 143/23 147/8 148/5 149/11 154/12 162/23 163/4
Canada [1] 159/5
cannot [5] 42/8 89/21 99/10 137/22 162/2
caption [1] 108/24
captures [1] 131/5
capturing [1] 105/18
card [11] 30/15 30/24 31/5 31/9 32/21 36/8 43/17 44/14 44/15 45/18 158/7
cards [6] 33/14 35/11 42/18 42/23 43/14 45/19
care [7] 13/5 37/10 63/13 86/1 86/1 97/14 123/17
careful [1] 108/2
carried [1] 39/19
carry [1] 159/17
cart [1] 73/24
case [89] 1/8 1/13 6/9 8/4 8/5 8/10 8/24 10/14 13/16 14/3 14/20 16/5 17/11 18/13 18/20 22/5 22/14 23/13 23/25 32/15 38/10 46/4 47/2 50/16 50/22 52/2 52/8 52/14 52/15 54/20 55/3 55/9 57/17

58/20 63/2 63/3 63/7 64/1 64/5 69/20 75/19 75/22 93/8 94/1 94/9 94/11 94/13 94/23 94/23 95/7 96/5 97/3 97/5 102/16 109/23 110/1 110/4 110/7 110/12 111/20 111/23 111/25 112/6 118/19 118/21 118/25 119/6 119/16 120/1 122/1 122/10 122/21 122/23 122/25 126/16 126/19 127/4 127/5 138/25 144/2 145/13 145/14 150/11 151/2 154/14 155/22 156/2 157/9 162/19
case-by-case [1] 92/3
cases [31] 1/19 4/16 13/11 13/14 13/25 14/2 14/17 14/22 15/2 15/20 16/20 17/10 18/2 18/6 45/10 84/18 94/22 95/24 95/24 96/13 96/23 122/17 122/18 125/16 125/19 130/22 143/3 146/19 149/15 151/5 153/24
CASEY [2] 3/6 5/4
caught [1] 6/3
cause [6] 28/16 123/12 124/1 124/2 124/4 124/7
causes [1] 135/9
caution [2] 88/3 113/4
caveat [2] 51/25 82/5
CCR [3] 3/20 164/19 164/24
CDs [1] 88/15
Center [4] 2/6 2/9 4/11 4/14
central [2] 29/9 32/14
CEO [6] 110/17 111/22 131/7 141/7 142/23 143/1
Cerniglia [13] 3/17 3/17 4/24 20/4 54/21 54/23 55/1 89/9 95/10 116/12 117/20 152/21 159/3
certain [15] 18/18 21/22 22/1 28/4 55/15 61/24 62/3 64/25 72/17 91/18 97/19 97/20 100/2 112/5 123/10
certainly [13] 17/25 27/10 82/9 84/4 100/17 104/22 114/19 115/15 136/4 139/15 151/19 157/15 161/20
CERTIFICATE [1] 164/18
certification [4] 42/14 42/20 116/2 116/3
certified [2] 81/21 81/22
certify [1] 164/20
Cesyle [5] 83/10 83/11 86/20 118/13 123/15
CFO [6] 77/24 77/25 131/7 142/22 142/23 143/2
CFO's [1] 77/22
chairs [7] 83/5 85/5 85/5 85/10 85/17 85/22 86/6
Chakkiyattil [7] 2/19 4/18 12/16 15/2 15/13 15/15 141/21
challenge [1] 124/5
challenges [10] 123/12 123/16 123/19 123/24 124/7 124/12 124/18 124/24 132/19 133/1
challenging [1] 104/23
chance [3] 5/23 49/11 123/2
change [7] 6/20 59/21 60/5 60/8 96/3 142/5 163/25
changed [1] 63/10
changes [3] 6/3 146/2 164/8
charge [2] 19/20 20/22
charged [1] 44/16
charges [2] 21/7 21/14
charging [3] 20/24 21/9 94/24
Charles [3] 2/10 2/17 3/18
check [6] 62/6 62/7 86/15 107/8 160/15 160/16
checkbook [1] 142/22
Checklist [1] 114/5
chief [3] 111/25 112/7 119/1
choice [23] 16/19 16/25 17/3 17/9 17/18

C

choice... [18]  17/20 18/2 18/7 19/17
19/18 21/6 25/8 25/9 27/1 27/5 34/1
37/24 39/15 50/18 52/3 52/7 52/18
162/14
choose [3]  75/19 104/9 132/4
chose [1]  55/1
chosen [3]  11/7 123/21 123/21
Chris [5]  70/8 70/9 71/25 77/24 144/23
circle [1]  107/9
Circuit [9]  19/16 95/17 95/23 96/4 96/8
96/8 96/13 155/14 158/10
circulated [1]  95/6
circumstances [1]  131/11
cited [2]  22/6 22/14
citing [1]  96/23
Civil [7]  1/4 1/9 1/14 23/8 40/3 76/4
101/24
claim [21]  21/24 23/13 25/4 29/9 29/15
30/23 33/2 34/7 36/20 48/10 75/6 76/2
98/9 99/21 101/10 101/13 101/14
101/20 158/2 158/23 158/25
claimed [6]  32/22 43/21 74/10 74/10
75/4 75/5
claims [68]  14/10 16/2 18/18 20/23
25/10 25/13 25/15 25/18 26/11 26/12
26/22 28/4 34/6 34/24 35/4 36/25 43/13
46/18 47/12 47/16 47/22 48/3 48/15
48/17 48/21 48/22 48/23 49/10 49/13
51/20 55/6 77/2 91/14 92/17 97/12
97/13 97/16 97/20 98/2 98/3 98/4 99/16
99/24 99/24 100/5 100/24 100/25 101/9
102/8 102/13 102/14 102/18 102/19
102/22 103/4 103/7 103/11 103/15
103/17 103/19 119/12 124/14 124/15
132/4 145/17 147/9 148/25 149/4
clarification [6]  25/8 76/22 126/6 144/18
157/2 161/23
clarified [1]  29/13
clarify [8]  14/22 15/6 28/6 29/8 33/18
72/16 156/25 157/7
class [15]  42/13 42/19 115/19 115/23
116/1 116/2 116/18 117/15 147/9
148/19 153/9 153/16 153/17 153/22
160/6
clean [1]  102/9
clear [11]  15/19 17/10 23/6 33/15 64/3
70/9 72/12 74/14 75/9 78/5 113/6
cleared [1]  113/16
clearly [3]  17/5 73/12 110/19
clerk's [1]  86/19
client [14]  54/24 84/8 88/12 104/24
129/11 129/13 140/11 140/12 140/18
141/14 146/5 146/5 147/5 149/22
clients [9]  45/4 84/7 97/21 131/20
133/13 141/5 148/16 149/9 164/12
close [5]  51/12 64/17 69/12 88/1 129/14
closed [3]  64/9 64/15 135/23
closes [1]  79/12
co [2]  5/23 10/9
co-counsel [2]  5/23 10/9
coach [2]  44/12 45/16
coached [2]  45/8 45/12
codal [2]  17/9 20/6
Code [2]  23/8 40/3
COLBY [6]  2/20 4/17 132/11 133/5
141/4 141/21
colleagues [1]  147/8
collective [1]  138/21
come [27]  20/10 34/19 42/15 43/23
68/15 69/15 72/8 84/3 85/25 86/22 87/5
91/3 104/8 104/25 107/16 107/20

107/23 113/3 117/20 118/8 122/14
136/5 140/11 147/2 151/4 151/6 154/14
comer [1]  8/15
comes [5]  19/20 37/23 87/24 145/13
155/20
comfort [1]  104/12
comfortable [2]  82/18 149/8
coming [15]  5/22 10/20 44/2 85/18 86/3
87/18 102/10 121/10 126/9 126/9
134/11 143/12 143/13 144/3 147/25
commented [1]  109/8
comments [1]  39/16
commercial [2]  98/19 98/20
COMMISSION [2]  1/9 3/3
committee [3]  96/11 96/13 96/14
common [7]  23/13 25/15 28/2 29/9
100/24 102/13 152/14
communicate [5]  9/13 72/9 80/2 108/11
131/6
communication [3]  68/3 131/16 136/20
communications [1]  134/9
companies [1]  130/16
companies' [1]  114/14
company [2]  66/5 66/8
compared [1]  145/23
compel [6]  53/20 68/23 75/15 76/24
163/6 163/8
compilation [2]  112/12 116/1
complaint [3]  29/10 30/13 163/20
complete [7]  6/5 7/9 50/24 51/1 51/7
117/13 117/17
completely [3]  37/22 120/11 140/23
complex [1]  97/20
compliance [1]  54/2
complicate [1]  48/17
complicated [1]  94/16
complies [1]  79/10
comply [3]  54/3 54/5 76/3
comprehensive [1]  136/23
computer [1]  3/24
computer-aided [1]  3/24
concede [1]  38/20
concept [4]  17/24 144/16 145/11 149/20
concern [5]  21/15 72/20 86/2 109/19
130/18
concerned [11]  20/16 63/23 69/18 77/5
93/24 93/24 130/25 132/11 155/25
157/11 160/19
concerning [2]  17/11 24/17
concerns [2]  91/10 111/8
conclude [1]  52/1
conclusory [1]  75/22
conducive [1]  132/15
confer [1]  53/25
conference [34]  1/22 5/22 6/6 9/16
11/10 14/9 16/6 67/23 69/8 72/9 73/22
76/9 79/19 87/13 94/24 106/13 111/10
111/16 112/8 113/13 118/10 125/11
125/16 126/4 126/7 128/3 128/10
128/11 128/15 144/19 145/4 163/21
163/22 163/23
conferences [1]  94/14
conferring [2]  138/20 140/11
confidential [4]  113/5 113/12 113/15
113/18
confidentiality [1]  116/10
confidentially [1]  73/8
confirm [1]  159/24
conflict [1]  6/25
conflicting [1]  96/7
conflicts [3]  24/21 28/18 41/7
confused [1]  60/16
conjunction [2]  93/1 94/9

connected [1]  38/19
connected... [1]  189/3
consent [19]  107/24 108/1 108/5 134/17
135/8 135/11 136/5 136/9 136/15
136/17 137/1 137/2 137/12 137/13
137/14 137/18 142/6 143/5 146/2
consented [1]  7/4
consequence [1]  64/22
consider [3]  41/9 52/25 78/9
consideration [3]  70/14 97/19 127/22
considerations [1]  26/2
considered [2]  49/20 102/12
considering [3]  98/10 99/12 101/6
consolidated [4]  4/16 13/25 14/2 14/22
conspiracy [1]  55/22
constant [1]  86/3
consulate [9]  42/22 44/7 44/13 44/17
45/2 45/3 45/7 45/9 45/11
consult [1]  23/24
contact [9]  86/18 86/21 87/18 108/5
108/20 130/23 131/24 142/15 144/14
contacted [2]  67/17 108/12
contacts [1]  25/25
contained [1]  67/4
contemplating [3]  97/23 99/6 99/21
contempt [4]  66/15 69/22 77/1 77/6
content [1]  75/25
contention [1]  33/21
contents [1]  106/19
contesting [1]  78/4
context [3]  14/12 33/18 162/3
continue [2]  113/24 145/24
contra [2]  23/8 41/16
contract [88]  19/3 19/14 19/22 20/25
23/1 23/2 23/7 23/8 23/9 23/12 23/14
23/14 23/17 24/7 24/8 24/8 24/14 24/18
25/4 25/5 25/11 26/4 26/7 26/11 26/11
26/12 26/17 26/21 26/22 26/25 27/19
27/20 27/22 27/22 28/1 28/2 29/10
29/11 29/12 29/15 29/16 30/6 30/8
30/14 30/16 30/17 30/19 30/22 30/23
31/1 31/3 31/4 31/6 31/11 31/14 31/15
31/22 32/12 33/2 33/3 34/6 34/7 34/24
35/4 35/5 35/8 36/20 36/22 37/4 38/9
39/15 39/18 39/18 40/9 41/2 41/8 41/11
41/14 42/8 42/25 46/6 46/12 102/25
103/7 103/14 103/17 158/19 158/21
contracts [24]  24/4 26/1 26/13 26/16
26/19 26/23 27/5 27/13 27/14 27/16
29/20 29/22 29/23 31/8 34/4 35/9 35/13
38/11 38/14 39/17 39/25 41/1 42/3
46/11
contradicts [1]  78/1
contrary [1]  77/22
control [1]  115/3
controls [1]  25/1
convenience [1]  52/16
conversation [3]  14/12 56/25 67/21
conversations [1]  139/23
conversion [1]  90/6
copies [4]  86/25 114/13 118/3 154/7
copy [14]  15/4 54/17 93/21 114/16
115/21 116/5 116/6 117/4 117/6 117/13
117/17 117/18 117/19 150/7
corporate [1]  112/6
corporation [3]  40/1 78/14 78/15
corporations [1]  134/2
correct [35]  7/21 16/25 18/3 19/6 23/6
25/19 30/5 32/13 33/5 35/22 35/25
36/24 49/6 54/16 62/23 64/14 66/5 74/7
74/11 79/11 96/23 98/22 99/14 101/8
101/19 101/21 102/7 106/2 108/25
110/13 131/14 149/14 156/21 158/8

**C**

correct... [1] 164/20
corrected [1] 109/3
correction [1] 103/6
corrections [4] 6/8 6/9 6/15 15/17
correctly [4] 15/17 81/21 109/2 145/1
correlate [1] 153/11
correspondence [1] 54/12
corresponding [1] 115/3
cost [10] 89/15 104/1 104/10 105/14
128/24 129/3 145/23 145/23 145/24
150/11
costs [2] 89/5 141/25
could [47] 7/7 14/2 14/13 16/21 20/14
26/1 27/25 29/12 39/9 43/22 44/23
44/24 50/10 57/6 74/3 74/6 82/21 84/19
85/4 85/8 87/15 88/15 89/3 90/6 92/17
92/25 94/19 107/13 110/24 119/21
126/7 131/10 131/18 137/7 147/9
147/18 148/17 149/8 150/7 150/12
150/20 150/25 152/3 156/2 156/16
157/15 158/17
couldn't [11] 45/2 48/9 67/12 67/12
115/6 131/18 153/15 153/16 156/9
156/19 156/19
counsel [22] 5/23 7/4 10/9 46/19 66/23
76/23 83/22 84/2 84/6 84/10 84/12
84/16 85/11 85/20 108/1 123/14 125/22
125/24 130/24 130/25 131/24 138/21
counter [1] 129/12
counteroffer [1] 139/7
country [2] 44/6 143/18
County [2] 27/17 27/21
couple [5] 96/9 97/22 132/20 150/16
152/8
course [8] 21/16 37/17 40/2 54/1 86/2
90/20 114/22 135/25
court [49] 1/1 3/20 19/17 21/3 42/19
52/1 54/16 58/16 62/3 64/24 66/2 66/3
66/19 66/24 67/6 67/19 68/25 69/2 69/5
69/6 69/10 69/11 69/19 72/9 75/7 75/17
75/20 75/23 81/21 81/22 104/7 107/4
110/16 115/22 116/4 117/14 117/17
120/11 120/23 125/4 125/15 141/17
150/5 158/23 159/13 161/5 163/6
164/19 164/19 164/24
Court's [1] 13/8
court-certified [2] 81/21 81/22
Court-ordered [1] 125/15
courtroom [11] 4/4 83/4 83/5 84/15
84/18 84/19 84/25 85/6 86/21 113/7
113/16
courts [2] 106/8 138/4
cover [2] 66/11 92/17
covered [10] 20/18 109/9 113/1 118/16
152/22 154/15 155/5 162/25 163/18
164/5
crazy [1] 39/7
create [1] 108/21
created [4] 43/24 104/5 117/11 154/1
creditor [5] 70/1 70/2 71/9 71/19 71/20
criteria [1] 43/24
critically [1] 10/10
cross [18] 32/22 43/13 43/21 46/18
97/13 101/12 112/12 112/16 112/17
119/12 119/17 120/12 120/16 120/18
120/19 124/14 124/15 154/23
cross-claimed [2] 32/22 43/21
cross-examination [1] 119/17
cross-examined [1] 154/23
crossways [1] 76/13
crow [1] 111/1

Crowell [2] 2/2 4/8
culling [1] 154/1
culmination [1] 97/9
Cunningham [10] 70/8 71/25 77/24 78/3
142/1 142/21 142/24 143/1 144/23
146/21
Cunningham's [2] 70/9 77/22
curious [2] 91/15 162/22
current [2] 153/12 158/16
currently [1] 102/11
cycle [1] 132/7
Cyrus [1] 106/24

**D**

D-I-M-A-R-C-O [1] 86/18
daily [2] 86/17 120/23
damage [1] 159/10
damages [13] 21/20 21/21 21/25 22/3
22/13 156/14 156/17 156/18 157/13
158/1 158/19 158/22 158/24
Dan [1] 83/21
DANIEL [2] 2/6 4/10
Danny [1] 143/25
Danziger [1] 122/18
data [1] 67/5
date [24] 6/5 6/11 6/14 8/25 9/12 9/12
9/17 9/20 59/14 59/22 60/1 60/3 60/5
60/15 60/17 61/2 61/10 61/17 61/19
61/20 62/15 109/4 142/11 142/14
dates [8] 10/1 10/4 11/12 51/11 60/3
60/12 61/13 61/13
Daubert [5] 53/7 60/12 106/22 106/23
107/7
DAVID [39] 1/4 2/2 2/6 2/9 2/12 4/9 4/11
4/14 5/12 5/15 5/17 6/9 10/18 11/15
11/16 11/16 13/12 14/3 14/20 16/19
17/5 17/8 18/13 18/14 18/20 18/20 29/7
29/10 50/19 53/19 64/9 154/17 159/25
160/5 160/14 160/17 160/20 161/1
163/21
day [18] 11/21 12/7 12/14 12/22 12/23
66/17 82/1 86/22 105/4 113/16 120/2
120/10 127/18 132/1 132/5 143/8 150/3
154/13
days [16] 6/24 7/2 10/19 58/8 91/1 91/4
92/15 96/9 119/18 121/4 127/10 131/16
132/20 132/23 147/23 150/16
DC [1] 2/24
de [1] 154/3
de-duplication [1] 154/3
deadline [13] 7/23 13/1 51/12 59/6 61/3
61/20 63/7 90/15 90/23 94/12 119/24
147/19 159/19
deadlines [1] 8/4
deal [9] 50/21 65/14 105/9 113/8 123/12
134/1 148/5 148/6 149/14
dealing [4] 17/2 46/10 69/14 69/14
deals [1] 41/8
dealt [1] 75/1
debate [1] 43/12
debt [1] 71/22
December [26] 7/8 7/9 7/16 7/18 10/12
11/1 51/3 51/5 87/13 87/18 88/7 90/16
128/12 141/23 143/19 144/4 144/6
146/15 146/17 146/18 147/19 147/19
147/21 148/6 152/22 164/4
December 1 [3] 88/7 143/19 144/4
December 10 [1] 7/9
December 12 [1] 90/16
December 17 [5] 87/13 87/18 128/12
163/22 164/4
December 3 [3] 7/18 147/19 147/21
December 31 [2] 10/12 11/1

December 5 [4] 146/17 146/18 147/19
147/6
December 7 [1] 7/16
December 9 [1] 51/5
decide [11] 11/25 16/16 50/17 53/3 56/7
65/5 95/2 95/2 96/3 106/4 148/14
decided [12] 4/5 10/23 10/24 16/8 49/15
50/10 50/13 63/12 123/8 129/3 155/13
155/15
decides [1] 132/12
decision [6] 16/4 19/18 25/9 42/14 42/20
43/7
declined [1] 104/11
decree [14] 134/17 135/8 135/11 136/9
136/15 136/17 137/2 137/2 137/12
137/13 137/14 137/18 143/6 146/2
deep [1] 130/13
deeper [1] 130/17
Deere [4] 17/11 17/16 52/2 52/8
defendant [4] 14/1 96/3 123/18 136/18
defendants [17] 3/15 3/17 4/23 4/25 5/2
5/8 26/14 38/10 53/13 90/14 106/23
107/11 119/1 119/2 120/14 124/21
155/23
defendants' [2] 94/5 118/22
defense [4] 119/6 119/10 124/13 141/25
defer [4] 35/7 93/22 111/24 112/13
deficient [2] 62/21 62/23
definitely [1] 140/22
defrauded [1] 159/8
degree [1] 92/4
delay [2] 64/23 120/19
delaying [1] 151/23
deliberate [2] 122/3 122/5
deliver [2] 76/14 76/17
delivered [1] 6/21
delivery [1] 107/5
demand [3] 130/6 139/6 140/1
denied [1] 91/14
deny [1] 137/8
depend [1] 26/1
depending [2] 90/2 120/25
depends [5] 25/5 65/9 91/9 95/1 97/17
depose [3] 104/8 104/17 104/19
deposed [6] 7/13 30/21 131/25 132/6
161/8 161/9
deposition [28] 7/6 7/15 7/17 55/24 57/1
80/18 81/9 81/11 104/11 105/8 105/12
109/10 109/13 109/14 109/25 110/17
111/7 111/8 114/21 115/18 115/19
116/25 117/15 130/24 132/2 132/3
132/5 153/21
depositions [23] 6/24 7/9 7/24 45/5
50/24 51/7 55/1 65/5 68/8 68/24 103/22
104/2 105/14 109/20 110/8 111/12
114/13 114/22 116/18 130/21 131/23
153/9 163/2
deps [4] 64/24 65/1 68/15 68/21
describe [1] 92/20
described [2] 16/14 132/12
describes [1] 78/23
description [1] 75/25
designated [1] 113/5
despite [2] 32/17 32/18
detail [1] 34/14
detailed [3] 91/1 91/9 139/4
details [1] 120/13
determination [2] 19/15 20/22
determine [2] 24/17 68/20
determined [2] 43/22 140/12
detrimental [2] 157/19 157/25
Devassy [5] 2/22 8/20 9/20 10/14
132/18

Case 2:08-cv-01220-SM-DEK Document 286-11 Filed 02/06/15 Page 171 of 188

device [1] 122/15
devote [2] 127/9 150/12
Dewan [21] 3/14 4/22 19/1 19/3 19/3
19/10 26/14 31/18 31/22 32/11 32/12
32/13 32/18 33/3 33/4 35/2 35/9 38/11
43/15 43/19 90/13
Dewan's [2] 44/12 125/12
did [60] 6/1 6/7 6/8 6/8 14/3 14/3 15/10
17/24 20/12 21/24 22/10 26/8 32/9 38/3
38/9 38/22 45/7 46/25 48/15 50/4 52/4
54/5 54/11 54/14 55/5 55/6 55/14 55/20
55/25 57/4 61/12 62/17 67/25 72/8
78/20 81/14 88/3 102/6 103/14 104/4
104/6 104/10 108/11 113/25 116/4
117/14 117/14 136/18 137/3 137/3
138/14 153/6 153/10 156/3 156/6
159/25 160/2 162/7 162/8 162/17
didn't [43] 6/10 17/12 21/17 25/17 37/24
37/24 37/25 38/21 40/11 45/10 47/15
47/22 48/9 49/19 51/23 52/2 52/4 56/1
56/2 60/2 61/12 62/10 67/5 77/4 81/6
98/11 108/19 110/22 114/1 115/5 124/4
129/3 130/3 135/13 139/1 139/14 145/4
154/1 155/10 158/7 159/20 161/5
161/21
difference [13] 9/6 19/13 19/19 21/15
21/18 23/1 25/10 25/24 26/6 26/7 26/12
26/25 148/13
differences [6] 22/20 22/24 28/12 28/15
46/7 50/20
different [36] 19/23 21/5 21/8 21/24
23/18 23/19 23/21 23/23 24/1 24/5
25/10 25/12 26/2 28/1 28/2 28/22 28/24
30/3 41/1 41/4 82/17 82/21 91/7 97/1
98/3 102/17 114/14 131/6 139/5 142/6
148/10 148/15 153/10 153/24 160/9
160/10
differentiation [1] 55/7
differently [1] 116/2
difficult [5] 82/4 131/16 133/23 140/25
147/6
DiMarco [1] 86/18
diplomacy [1] 141/16
dire [2] 123/3 125/1
direct [3] 110/7 112/11 112/16
directed [1] 36/3
directing [1] 54/22
direction [1] 104/7
disagree [9] 17/24 19/10 21/11 39/12
47/18 93/5 94/4 96/17 132/17
disagreed [1] 17/23
disagreement [2] 9/15 11/9
disclose [2] 13/21 67/6
disclosed [3] 14/9 42/16 42/21
discover [1] 156/19
discovered [2] 151/19 156/11
discovery [17] 7/3 48/20 64/8 64/9 64/15
64/19 65/12 68/14 79/12 154/14 155/21
156/10 156/24 157/8 163/3 163/4 163/7
discretionary [1] 14/11
discriminated [1] 136/7
discrimination [3] 101/9 102/2 102/3
discs [1] 154/12
discuss [4] 16/21 92/1 111/15 113/12
discussed [1] 14/8
discussing [1] 39/16
discussion [11] 14/10 34/20 40/22 47/25
48/2 53/23 66/20 104/12 125/18 129/2
145/6
discussions [5] 106/1 127/3 138/17
139/11 141/1

dismiss [4] 63/2 63/8 132/4 163/20
disproportionately [1] 53/13
disputable [2] 60/16 60/17 60/17
60/17 60/21 61/15 106/25
dispute [3] 40/17 91/17 92/4
disputed [1] 91/10
disputes [4] 50/5 50/7 50/9 50/11
distance [3] 87/25 110/25 121/9
distinction [2] 20/15 157/7
distinctions [1] 20/12
distinguish [2] 26/8 74/20
distracting [1] 86/4
distress [9] 21/21 22/3 48/4 101/1 101/2
101/3 101/5 102/24 103/4
DISTRICT [5] 1/1 1/2 1/23 164/19
164/19
do [222]
docket [1] 63/5
document [27] 29/8 30/12 31/20 56/9
58/19 78/13 87/3 88/10 88/16 92/9
96/21 97/3 98/25 99/2 99/4 99/5 107/12
114/5 114/16 114/24 115/2 115/2 115/5
137/7 153/15 153/24 154/23
Document 1827 [1] 107/12
documents [69] 16/2 16/7 16/8 16/14
21/19 34/17 55/5 55/9 55/11 55/15
64/20 64/22 65/2 65/11 65/15 65/22
65/23 66/10 66/11 66/21 67/9 67/10
67/18 67/18 68/6 68/9 68/11 68/13
68/17 68/18 68/19 68/19 68/23 69/9
73/17 73/20 74/5 74/19 77/9 77/10
77/16 77/17 78/22 79/7 79/16 88/10
88/19 89/1 89/17 90/7 92/8 113/15
114/2 114/12 114/14 114/14 114/23
114/25 115/8 153/3 153/4 153/10
153/12 153/12 153/17 153/22 154/6
163/1 163/11
does [21] 6/19 9/8 15/14 19/23 22/16
23/4 24/7 27/18 33/24 41/8 51/15 64/17
66/3 71/21 71/24 73/14 78/15 103/20
126/6 137/21 150/25
doesn't [20] 17/16 23/4 25/12 27/21 31/5
52/17 63/4 66/1 69/11 71/18 84/6 86/1
114/6 125/3 127/13 132/13 133/3 144/1
159/11 159/17
doing [13] 47/2 48/20 57/18 83/22 89/10
98/17 112/14 131/15 147/10 154/3
154/5 158/13 159/18
don't [153] 8/4 9/6 9/11 9/18 10/9 10/12
11/17 11/22 12/18 13/21 14/5 14/7
14/23 15/24 16/4 17/19 17/23 19/12
19/15 20/8 21/7 22/7 27/2 27/20 31/2
34/12 36/18 36/19 39/3 39/11 40/5
44/10 47/8 47/11 51/11 55/3 56/18
56/19 57/2 62/18 64/5 66/25 68/4 68/22
69/1 69/2 69/17 70/5 71/13 71/13 76/11
76/24 79/19 80/9 80/11 80/22 81/14
82/1 82/11 83/19 84/1 84/22 85/5 86/22
86/23 87/1 87/3 87/12 88/19 89/18
91/12 91/22 92/19 93/19 96/1 97/6 97/7
99/9 104/14 104/16 105/1 105/20 106/8
106/14 108/1 108/3 108/4 108/5 108/8
110/11 110/23 112/2 112/16 112/22
114/18 115/16 115/18 115/21 115/24
116/16 116/24 118/23 119/3 119/23
120/20 122/6 122/16 122/20 122/22
123/13 123/16 124/22 124/25 127/21
129/12 129/15 130/7 130/12 133/5
133/18 134/8 135/6 136/16 136/18
137/15 137/15 137/25 138/3 138/6
138/8 139/21 143/10 144/23 144/25
148/15 148/20 149/25 150/23 151/1
151/24 154/11 157/2 157/17 158/6
158/19 159/17 160/9 160/21 160/23

161/15 161/17 161/17 162/21
163/16 163/18 163/19 163/22
164/5 164/6 164/11 164/13
door [2] 4/6 162/13
double [1] 119/17
doubt [1] 39/8
down [13] 18/24 24/19 65/20 85/15
87/24 88/6 88/15 88/23 113/11 117/20
122/13 145/9 154/2
Doyle [4] 3/20 164/19 164/23 164/24
dozens [1] 54/25
drafted [3] 26/17 30/2 39/25
drafts [1] 95/6
drawn [1] 38/15
drill [1] 85/15
drive [1] 154/9
drives [1] 88/16
drop [5] 48/12 98/14 100/3 145/22
148/15
dropping [7] 99/6 99/12 99/22 101/6
103/11 148/24 149/4
due [10] 6/18 14/19 44/18 59/25 60/13
60/13 61/7 61/9 61/11 126/8
dumbest [1] 45/17
Duplantis [2] 2/15
duplicates [1] 153/24
duplication [1] 154/3
during [12] 45/5 54/1 72/25 94/13 94/23
106/4 111/19 118/12 123/6 153/16
153/17 153/21
dépeçage [1] 40/22

e-mail [21] 15/3 15/5 15/8 15/16 44/20
45/14 45/15 45/20 45/23 45/24 45/25
54/11 54/14 67/13 79/18 80/2 80/7
82/24 88/9 108/22 150/7
e-mails [6] 15/9 15/10 15/19 54/15
93/21 113/6
each [25] 9/14 15/7 25/10 25/21 25/23
25/23 28/16 31/19 32/1 36/5 46/7 55/3
65/12 83/5 88/16 90/24 116/3 118/1
120/10 124/18 124/21 145/4 147/4
148/9 151/1
Eagan [1] 2/16
earlier [1] 122/12
early [6] 51/2 93/1 94/18 136/23 138/15
164/3
earn [3] 156/6 158/17 159/9
earned [3] 155/21 157/24 159/5
earning [1] 159/7
earnings [1] 156/1
easier [2] 91/19 121/17
EASTERN [2] 1/2 164/19
eat [1] 120/20
eats [1] 120/24
EBEN [2] 2/20 4/17
economic [1] 158/1
EDLA [1] 138/2
EEOC [42] 3/2 4/11 4/19 5/13 6/15
57/23 58/2 58/4 58/20 64/15 65/9 65/11
65/24 66/1 66/3 67/7 67/8 67/17 72/17
73/11 73/24 74/13 75/3 75/11 108/16
125/17 125/20 129/18 129/19 134/5
135/10 136/13 137/3 137/9 143/3 146/1
146/22 147/2 151/4 151/8 162/25
163/23
EEOC's [4] 61/24 72/21 72/24 76/23
effect [2] 78/8 156/23
effective [7] 132/14 145/17 145/19

Case 2:08-cv-01220-SM-DEK   Document 2248   Filed 02/06/17   Page 172 of 188

**E**

effective... [4]  145/22 146/8 146/11 151/9
effort [1]  139/24
efforts [1]  93/5
eight [9]  83/5 85/13 121/19 121/21 121/25 122/4 123/19 123/24 124/5
eight-person [1]  121/19
either [24]  16/7 20/14 28/15 32/5 32/10 40/9 52/23 57/8 78/2 80/12 104/18 130/3 139/18 140/19 140/21 146/6 146/7 146/10 148/17 154/24 157/24 162/24
Election [2]  12/7 12/14
electronic [3]  88/10 115/3 153/23
element [1]  39/4
elements [10]  20/22 20/24 20/25 21/1 21/4 46/8 91/7 94/22 100/4 102/10
ELHAM [3]  3/8 5/9 46/13
eliminate [1]  92/13
else [13]  8/2 13/4 13/6 14/25 22/16 55/23 56/15 85/6 103/20 148/22 151/11 159/10 164/7
else's [2]  126/11 134/14
Elysian [1]  2/13
embark [1]  131/1
emotional [9]  21/21 22/2 22/14 48/4 101/1 101/1 101/3 101/4 102/24
employees [1]  135/17
employer [1]  44/3
employers [1]  135/17
employment [18]  1/9 3/3 26/17 26/17 29/22 29/23 30/4 30/6 30/7 31/1 34/8 35/18 36/13 36/14 36/16 39/18 39/19 39/21
encountered [1]  131/23
encourage [5]  134/3 144/7 146/9 146/12 164/12
end [18]  5/22 20/14 50/4 51/2 69/16 88/20 93/2 94/22 106/9 116/4 116/8 122/3 122/7 127/11 143/17 144/3 146/15 150/2
ended [1]  103/10
engage [1]  125/24
engaged [2]  32/17 32/19
English [5]  80/19 81/11 81/12 119/15 148/16
enough [12]  19/15 53/4 92/9 92/22 93/24 94/18 97/8 112/19 124/7 138/10 158/11 164/3
Enrique [1]  106/24
enter [2]  6/4 150/20
entertain [3]  58/25 59/10 120/3
enthusiasm [2]  135/4 135/7
entire [3]  25/4 69/15 110/7
entirely [2]  39/12 97/1
entitled [3]  54/23 95/16 164/21
entity [3]  72/6 72/10 75/8
entry [5]  15/11 15/19 64/3 147/16 164/10
enunciate [1]  65/19
envisioning [1]  96/15
equal [4]  1/9 3/2 119/21 124/22
equipped [1]  23/2
ERIN [11]  3/6 5/4 64/18 65/19 122/12 126/21 136/8 139/5 139/6 154/11 159/24
Erin's [1]  105/17
ESI [4]  16/2 73/1 153/10 153/14
especially [2]  155/20 157/8
ESQ [19]  2/3 2/3 2/6 2/7 2/10 2/13 2/16 2/20 2/23 3/3 3/6 3/7 3/7 3/8 3/8 3/9

3/12 3/14 3/17
essence [1]  58/22
established [1]  28/15
et [5]  1/4 1/6 1/11 1/14 1/18
even [37]  14/13 18/17 19/15 38/21 42/15 44/14 44/16 45/18 47/22 48/21 65/1 77/11 94/11 98/14 106/9 113/5 119/23 127/20 129/24 132/1 138/2 138/7 138/8 140/25 141/7 141/15 142/7 145/4 145/6 145/9 148/20 151/25 152/7 155/22 158/10 158/19 159/8
events [2]  48/7 49/8
eventually [1]  164/10
ever [6]  34/19 74/15 137/13 142/4 144/23 144/25
every [15]  5/21 23/3 23/5 31/8 32/24 43/16 43/16 57/1 67/14 88/14 92/9 92/17 106/19 108/21 113/7
everybody [27]  4/7 13/5 15/12 16/11 16/24 18/14 25/8 49/23 55/23 56/4 65/21 84/1 87/10 87/19 91/22 92/22 116/13 126/11 134/14 137/13 140/7 143/11 143/16 149/21 150/7 150/8 151/16
everybody's [3]  95/16 125/23 164/5
everyone [3]  84/5 109/14 151/11
everything [16]  6/4 10/23 11/18 18/10 47/4 67/7 67/8 77/2 83/16 89/24 92/12 109/2 109/4 135/18 137/13 151/19
everywhere [1]  87/23
evidence [7]  42/19 52/5 54/23 92/10 94/21 95/1 141/18
evidentiary [1]  159/23
evokes [1]  37/9
ex [2]  107/24 108/1
ex parte [2]  107/24 108/1
exactly [12]  26/20 29/21 46/18 54/18 55/18 88/22 93/9 126/2 145/16 151/3 158/8 158/13
examination [1]  119/17
examined [1]  154/23
example [9]  31/16 39/17 54/25 55/20 91/14 98/3 106/7 110/16 111/18
examples [1]  39/17
excellent [1]  94/8
Except [1]  100/1
excess [1]  106/17
exchange [3]  21/2 112/25 113/1
excluding [1]  14/21
exclusive [1]  140/16
exclusively [4]  80/19 99/17 127/10 149/16
excruciating [1]  34/14
Excuse [3]  66/7 117/23 137/5
executable [1]  70/11
execute [1]  70/13
execution [1]  38/14
exercise [2]  104/7 104/18
exhibit [13]  88/2 88/15 106/19 112/25 113/7 113/22 114/3 114/3 114/21 115/18 115/19 116/15 154/2
exhibits [24]  83/15 86/23 86/24 88/5 88/21 89/12 89/13 89/17 89/21 90/12 112/25 113/4 113/10 113/11 113/21 115/4 115/23 116/7 117/3 117/5 117/9 136/1 152/24 152/25
exist [2]  31/5 135/16
exists [1]  83/8
expect [4]  94/2 133/18 142/17 152/1
expected [3]  156/3 156/4 157/15
expects [1]  45/18
expensive [2]  92/16 118/8
experience [1]  152/12

expert [19]  6/17 6/20 13/9 14/1 14/1 14/9 17/20 20/1 21/3 22/11 22/16 27/10 27/18 28/6 61/5 64/12 95/15 163/16
expert's [3]  20/19 21/4 22/8
experts [5]  10/22 13/22 14/21 46/20 61/2
explain [6]  68/25 69/9 85/23 107/20 154/19 164/14
explained [5]  17/16 74/3 85/24 131/4 133/11
explaining [1]  28/22
explanation [1]  73/13
explored [1]  139/3
express [1]  32/23
extended [1]  58/6
extension [3]  58/19 154/14 163/15
extent [5]  36/9 55/15 78/8 95/2 103/4
extra [4]  59/1 59/16 122/17 124/1

**F**

facilitate [3]  89/3 90/6 90/10
facilitating [1]  74/7
facing [1]  69/4
fact [24]  19/19 26/20 27/22 32/18 39/16 40/9 41/11 41/20 46/6 46/12 64/9 64/15 66/17 66/21 72/8 79/12 91/10 120/5 131/5 131/25 132/5 135/10 155/22 157/23
factors [1]  94/16
facts [8]  26/1 43/10 91/18 91/25 92/7 92/14 92/20 127/4
factual [4]  50/4 50/7 50/9 50/11
failed [1]  54/3
fair [3]  138/10 155/24 157/10
fairer [1]  119/2
fairly [1]  139/4
fall [1]  100/3
falls [1]  37/18
false [8]  32/21 43/14 43/18 46/21 46/23 101/22 101/25 102/23
familiar [1]  74/25
family [2]  157/21 157/21
far [18]  13/5 20/16 26/25 35/4 53/6 63/23 69/18 77/5 97/12 110/25 126/25 126/25 127/20 128/1 129/11 129/15 129/20 133/2
far-flung [1]  133/2
farm [1]  157/21
farthest [1]  121/9
fault [1]  37/18
FCRR [3]  3/20 164/19 164/24
fear [1]  76/12
federal [7]  20/18 27/7 27/8 28/2 56/14 76/3 102/8
fee [2]  13/22 14/10
feel [6]  39/14 84/17 98/19 126/25 144/15 155/18
feels [3]  129/11 129/13 151/8
fees [4]  13/9 13/19 14/11 14/21
Ferens [1]  17/1
few [6]  64/24 84/12 93/23 119/18 124/1 138/21
fields [2]  2/13 46/20
fifth [12]  19/16 36/12 45/5 95/17 95/23 96/4 96/8 96/8 96/13 120/2 155/14 158/10
Fifth Circuit [4]  19/16 95/17 95/23 96/8 96/8 96/13 155/14 158/10
fight [1]  39/7
figure [10]  9/16 16/22 50/14 67/21 77/15 77/20 80/13 114/15 161/20 161/22
figuring [1]  154/3

Case 2:08-cv-01220-SM-DEK Document 172-48 Filed 03/06/15 Page 174 of 188

**F**

file [19]  51/6 54/9 58/17 59/10 59/11 61/25 62/2 62/8 62/10 62/12 62/13 62/16 62/17 63/15 69/3 115/12 122/24 156/25 159/14
filed [28]  16/5 16/19 17/8 17/15 18/6 38/5 38/6 43/6 52/13 52/15 53/1 53/13 53/24 57/25 58/2 59/2 59/19 59/20 62/5 62/11 62/15 63/2 66/18 73/23 101/16 106/22 106/25 108/22
filing [2]  45/19 63/7
filings [1]  106/17
fill [2]  10/4 44/2
final [6]  76/22 88/15 89/4 130/8 131/19 133/10
finally [1]  108/20
financial [2]  67/5 88/12
financially [1]  104/23
find [6]  47/1 61/4 115/10 151/2 155/23 157/9
finding [1]  33/19
fine [14]  11/5 34/18 51/17 59/5 68/2 78/21 81/20 108/9 112/1 112/11 141/12 150/2 156/4 157/6
finish [3]  65/1 94/3 95/25
finished [2]  16/17 61/24
firm [1]  134/23
firms [1]  129/4
first [40]  5/25 6/8 6/13 10/6 11/3 11/22 12/22 12/23 16/1 17/15 19/18 20/11 24/20 25/23 25/23 41/23 43/4 51/22 52/13 52/15 53/1 66/9 73/4 74/14 80/13 86/22 101/19 110/10 123/19 124/5 137/11 146/15 150/22 151/1 155/22 158/14 160/5 160/5 161/6 163/1
first-filed [3]  17/15 52/13 53/1
firsthand [1]  141/14
fit [1]  85/6
five [10]  39/22 50/18 55/21 57/18 80/14 84/10 102/20 119/14 120/13 121/4
fix [3]  54/8 62/24 63/16
fixed [1]  54/19
flash [2]  88/15 154/9
Fleming [1]  139/12
flew [1]  145/9
flexibility [1]  84/2
flies [1]  111/1
flip [2]  78/19 78/21
Flom [1]  2/19
Flores [1]  107/19
FLSA [5]  49/24 97/13 102/15 102/19 107/1
flung [1]  133/2
focused [3]  37/10 92/15 99/17
folks [1]  134/21
followed [1]  55/8
following [1]  56/17
follows [1]  25/12
followup [4]  48/7 49/17 123/9 123/10
foot [2]  91/19 91/19
footnote [1]  96/9
force [1]  128/22
forced [3]  48/6 98/4 98/5
Forcing [1]  135/1
foregoing [1]  164/20
forever [3]  92/11 157/22 158/4
forgot [3]  4/20 108/4 140/23
form [6]  42/3 42/8 42/25 88/16 96/25 97/9
format [2]  90/1 90/14
formation [6]  24/4 24/14 37/4 40/4 40/13 41/1

formats [1]  153/25
formed [12]  24/17 24/18 24/24 24/25 26/14 26/15 30/18 35/3 41/2 41/9 41/11
forming [1]  41/14
forth [7]  94/14 123/15 123/18 126/1 130/1 130/5 141/17
forward [1]  132/14
forwarded [1]  73/20
found [1]  162/20
four [1]  84/7
frankly [4]  47/22 63/12 104/2 119/10
fraud [20]  18/22 19/1 19/14 19/22 19/23 20/25 21/18 21/22 22/1 22/3 25/13 26/1 26/8 26/9 26/10 47/9 47/12 99/2 100/25 103/17
fraudulent [5]  19/2 47/9 158/11 158/22 158/24
fraudulent/negligent [1]  19/2
French [1]  40/22
Friday [4]  28/10 143/21 146/17 149/22
front [11]  53/14 53/20 54/4 55/18 56/6 58/3 85/17 85/22 142/4 154/21 156/13
fruitful [1]  126/15
fruitless [1]  140/13
frustrated [1]  145/10
fulfilled [1]  161/25
full [3]  6/2 82/23 84/10
fully [2]  18/10 59/2
fumbling [1]  86/22
fun [1]  15/23
fundamental [1]  22/25
further [2]  70/14 139/9
futile [2]  127/19 129/11
future [2]  13/5 158/11

**G**

game [4]  93/2 94/25 155/24 157/10
games [1]  74/16
gap [1]  130/12
gave [17]  14/11 15/4 17/10 32/13 43/19 55/8 59/6 61/13 67/8 78/2 78/25 79/1 95/11 104/7 104/9 104/12 164/6
general [2]  6/14 16/21
generalities [1]  55/23
George [1]  7/15
Georgia [1]  2/8
Gerald [1]  163/5
get [114]  4/6 5/18 9/3 10/19 14/13 15/24 21/9 21/9 23/23 24/20 29/12 33/13 34/13 35/11 38/2 40/6 41/23 42/23 43/1 44/10 44/14 44/15 45/3 45/18 46/1 47/3 51/12 57/21 59/16 63/20 66/21 67/24 68/3 68/12 68/20 68/23 71/4 73/25 76/13 79/3 82/3 84/9 84/17 85/13 86/11 90/24 91/16 91/22 92/3 93/3 93/3 93/14 94/4 94/19 95/12 95/25 96/22 98/8 100/20 104/16 104/19 109/23 111/19 112/15 112/16 113/9 118/3 119/5 119/21 119/25 120/10 120/21 121/1 121/7 121/13 121/18 123/4 124/4 126/5 127/25 128/2 130/12 131/9 131/17 132/22 132/23 133/12 133/15 133/21 133/21 134/14 139/14 139/24 140/25 143/6 143/7 144/15 146/1 148/18 151/18 155/10 158/7 158/19 159/8 161/5 161/17 162/10 162/16 162/17 163/11 163/12 164/9 164/9
gets [7]  37/11 41/18 46/8 70/14 86/6 121/16 122/10
getting [10]  38/23 43/25 60/16 65/3 85/16 96/1 114/24 117/2 136/16 142/9
gilding [1]  35/10
give [37]  10/18 28/11 29/8 55/6 55/14

57/19 57/19 67/7 68/12 69/8 74/6 75/3 75/5 75/25 77/12 78/8 78/21 79/9 84/2 87/3 94/12 95/20 106/18 113/17 119/23 123/2 124/17 124/18 124/19 124/24 124/24 125/9 138/11 148/7 154/9 159/25 163/11
given [9]  35/20 39/11 55/11 67/17 82/1 140/11 140/16 163/9 163/10
giving [7]  46/20 59/1 77/12 94/14 97/19 102/11 137/8
gladly [1]  54/15
glasses [1]  98/12
global [15]  34/10 34/11 34/25 35/2 35/5 35/6 35/8 125/15 125/19 126/6 127/19 128/22 129/17 130/19 131/1
go [63]  4/6 6/13 6/14 12/17 19/25 20/3 21/6 21/8 22/8 27/1 28/17 36/18 44/5 44/7 44/13 55/10 61/23 65/4 69/3 69/21 75/10 75/14 76/23 77/1 92/19 94/6 96/21 106/12 112/4 112/22 119/1 120/1 120/13 120/25 121/17 122/11 123/15 123/17 123/18 126/3 127/5 127/19 127/23 128/21 130/10 131/8 132/5 132/13 132/21 133/12 133/17 133/20 137/24 138/18 139/8 140/3 152/23 154/6 154/21 155/16 158/15 158/15 162/2
goes [4]  48/18 87/5 102/17 117/13
going [193]
gone [7]  58/23 107/9 157/22 158/4 159/4 159/4 159/4
goner [1]  45/18
Gonzalez [1]  106/24
good [19]  4/3 5/20 8/3 13/15 64/13 82/14 83/2 90/21 105/16 107/6 107/15 118/11 118/18 119/24 128/20 139/2 139/3 144/12 164/8
Gordan [2]  2/15
Gordon [1]  4/15
gosh [1]  128/17
gospel [1]  47/5
got [24]  7/20 9/10 42/3 62/21 67/10 74/18 74/18 103/18 107/4 108/17 112/17 114/13 120/5 125/23 131/17 148/7 149/5 149/7 155/9 160/6 160/11 160/16 162/10 163/14
gotten [8]  62/22 64/21 68/7 68/13 68/14 97/21 142/14 151/22
govern [3]  18/7 52/3 105/3
governed [1]  26/21
government [4]  41/22 42/16 44/4 160/21
governs [1]  18/1
graduation [1]  9/24
granted [6]  58/7 58/16 58/19 155/3 163/6 163/8
granular [2]  85/16 91/16
graphics [1]  83/17
great [4]  11/5 44/10 96/22 138/15
green [18]  30/15 30/24 31/5 31/9 32/21 33/12 33/13 35/11 36/8 42/18 42/23 43/14 43/17 44/14 44/15 45/18 45/19 158/7
Greg [3]  4/15 63/3 163/19
GREGORY [1]  2/16
GRIMSAL [2]  2/16 4/15
ground [3]  125/24 139/25 141/1
group [5]  13/2 82/12 85/19 103/13 138/21
grouping [2]  9/13 11/5
guarantee [2]  82/8 96/12
guess [23]  12/8 12/16 18/19 22/1 33/24 50/17 50/20 59/1 59/13 59/21 82/20 104/21 104/23 124/1 125/16 128/7

## G

guess... [7]  128/16 128/24 131/2 133/22 135/25 139/21 150/6
guest [3]  43/23 43/25 84/3
guidance [1]  154/16
guideline [1]  94/21
guilty [1]  136/13
gulf [3]  130/13 135/8 140/11
guy [2]  83/18 98/19
guys [5]  38/21 45/16 49/4 87/15 93/18

## H

H-2B [4]  43/23 43/25 45/3 158/14
had [80]  7/4 8/12 15/4 17/1 36/10 38/24 42/21 44/24 45/2 45/4 46/19 48/12 48/16 49/12 49/20 54/11 58/4 60/11 60/16 61/1 61/9 61/18 61/24 62/8 64/19 66/10 66/12 66/19 66/20 66/24 67/10 67/17 67/18 67/18 72/16 73/23 76/9 79/18 79/21 84/18 88/8 88/14 89/19 95/25 96/5 103/9 106/16 107/8 107/9 108/18 108/19 112/24 114/12 114/22 115/1 117/17 122/12 123/7 132/6 132/18 134/9 136/1 142/1 148/19 152/12 152/19 153/9 153/14 153/18 156/2 157/20 157/20 157/21 158/3 159/4 161/10 161/25 163/1 163/7 163/9
hadn't [2]  24/15 98/18
HAL [5]  3/8 5/7 30/10 34/13 34/19
half [6]  118/20 118/24 119/8 119/9 122/14 129/3
halfway [1]  104/24
hand [1]  65/20
handle [2]  53/4 111/21
handled [2]  102/16 127/3
handling [1]  124/11
hands [2]  20/1 67/2
hang [1]  112/22
Hangartner [3]  3/6 3/6 5/4
happen [6]  82/9 82/10 126/3 134/3 136/3 145/25
happened [6]  48/7 48/11 64/23 66/17 73/9 73/12
happens [1]  10/22 68/22
happy [4]  57/13 93/10 138/11 140/6
hard [6]  112/17 113/17 117/18 117/19 121/3 154/7
harpy [1]  114/23
has [74]  7/18 16/1 19/18 22/16 23/24 25/2 25/25 26/8 27/25 28/22 44/1 44/7 44/21 49/15 50/23 54/19 54/25 55/11 57/23 59/24 61/11 65/15 65/17 69/18 70/6 70/10 70/25 71/16 73/5 73/6 75/8 75/22 78/22 79/8 88/12 92/21 103/22 104/5 105/2 105/10 106/19 106/19 107/4 107/19 109/3 109/14 111/5 115/9 115/20 120/18 124/14 127/2 127/9 130/18 130/25 132/9 132/10 132/11 132/13 135/10 135/15 136/13 139/24 140/12 140/25 141/2 142/22 143/17 143/20 145/23 148/7 151/2 158/23
HASENKAMPF [2]  3/9 5/10
hate [1]  128/17
have [520]
haven't [20]  16/17 38/7 47/13 50/5 59/18 59/20 63/5 68/7 75/1 79/22 80/7 96/5 97/21 98/13 101/17 109/9 132/1 135/3 136/24 140/9
having [11]  7/7 82/5 94/14 94/23 127/4 135/23 136/6 139/1 139/3 147/11 151/20

Hawthorne [2]  132/6 149/17
he [207]  11/11 12/23 26/5 26/7 28/16 33/18 43/6 45/18 45/18 45/23 46/17 48/15 54/19 54/25 55/18 56/1 56/7 57/2 67/5 77/25 78/2 78/8 80/18 81/6 81/8 81/10 81/12 81/14 81/21 81/25 82/2 83/21 99/10 104/10 110/17 110/23 111/22 117/2 127/10 127/11 127/1 127/11 127/12 127/13 132/7 132/9 132/10 132/13 139/1 139/4 139/17 139/24 139/25 140/1 140/6 142/18 142/22 142/22 144/1 144/1 144/17 144/24 149/18 154/22 154/22 154/23 154/23 154/23 159/6 159/7
he's [2]  110/22 111/12
head [3]  34/14 82/3 98/20
heading [2]  103/16 147/20
hear [13]  56/18 84/19 86/13 99/10 126/21 135/13 141/14 141/19 141/20 141/20 141/21 141/22 148/11
heard [11]  66/12 74/15 74/21 77/5 79/15 79/20 79/23 83/9 96/7 136/25 137/19
hearing [5]  20/20 66/19 126/9 133/16 135/4
heart [1]  126/21
heavily [1]  39/19
HELD [1]  1/22
help [4]  5/18 29/13 151/10 154/5
helpful [4]  16/22 28/7 145/14 148/8
helps [2]  46/24 151/18
her [18]  22/12 72/19 74/6 77/15 77/16 79/6 79/9 80/25 81/15 86/20 86/21 87/7 87/12 87/17 87/18 107/20 107/23 108/22
here [44]  4/5 4/7 8/13 8/21 9/22 17/8 32/18 33/19 34/3 34/21 35/10 36/15 37/23 39/21 40/6 43/11 44/2 46/4 52/15 56/21 58/18 72/8 87/15 87/23 94/15 106/6 110/22 111/13 111/14 112/3 112/21 114/2 115/12 119/21 121/16 121/18 124/12 135/17 139/19 140/7 156/5 157/20 163/25
here's [2]  96/22 141/18
hesitation [1]  81/24
Hi [3]  8/8 8/9 8/16
high [2]  9/23 122/17
highly [1]  141/5
him [39]  43/21 48/18 54/12 55/3 56/10 79/20 79/22 80/2 80/2 81/11 82/1 82/1 82/20 99/9 110/17 110/22 111/13 111/23 111/24 112/15 112/15 112/17 112/22 117/4 139/2 139/17 142/15 142/16 142/16 144/10 144/11 144/12 144/15 144/16 144/16 144/25 146/13 149/18 149/25
Hindi [4]  80/18 81/5 81/6 81/12
his [202]  7/6 43/6 44/22 45/4 49/10 54/24 78/1 78/4 80/17 81/8 81/11 82/3 82/23 110/19 111/19 120/10 120/10 126/18 133/11 142/15 144/16 146/13 163/5
history [1]  66/2
hogging [1]  11/18
hold [4]  70/18 71/21 76/7 111/14
holding [4]  61/22 67/22 69/9 70/15
home [3]  44/5 112/22 121/13
Honor [126]  6/10 6/16 7/25 8/6 8/14 8/17 9/19 11/2 12/2 14/17 17/1 18/5 18/12 18/15 18/18 18/25 19/5 19/8 19/9 20/19 21/13 22/18 22/22 24/6 24/15 24/25 27/2 28/8 30/10 30/13 31/23 32/10 33/15 33/20 34/12 37/3 37/7 37/10 38/8 38/18 39/9 40/3 41/3 41/10 42/7 42/24 43/4 46/13 47/14 48/1 49/11

49/17 50/15 54/16 54/21 56/8 56/11 59/4 59/25 60/24 61/1 61/16 61/19 61/23 62/17 63/24 63/25 66/20 71/19 72/7 72/15 74/11 76/16 76/21 77/21 79/4 85/10 88/8 89/24 90/25 96/15 97/18 99/1 99/11 103/6 103/10 104/6 107/2 108/8 110/25 114/8 114/20 116/22 119/4 119/14 119/20 128/11 130/18 132/17 133/16 136/4 137/1 137/20 137/21 138/14 140/10 140/24 142/25 143/4 144/18 147/7 147/18 148/8 149/16 150/18 152/3 152/8 154/18 155/4 155/12 158/9 159/2 159/24 163/17
HONORABLE [1]  1/23
hope [8]  42/16 50/19 88/3 104/25 120/12 128/18 137/20 150/8
hoped [1]  62/8
Hopefully [1]  83/8
hoping [1]  40/25
horse [1]  73/24
Houma [1]  121/12
hour [4]  29/23 36/9 121/14 121/17
hour's [1]  132/19
hours [2]  120/23 133/3
how [42]  8/8 8/16 10/5 10/13 11/2 14/3 15/14 16/14 20/4 20/5 20/22 26/9 37/11 40/11 44/23 55/17 56/9 62/4 66/14 83/3 83/23 85/14 86/2 88/4 88/13 88/18 90/2 91/9 91/15 92/20 93/20 113/7 114/15 117/14 118/15 124/11 125/9 150/10 154/16 155/7 156/6 159/15
HOWARD [14]  2/3 4/8 35/15 44/18 44/24 46/15 88/23 92/12 95/9 103/25 104/20 109/8 128/20 148/10
however [5]  27/18 40/22 65/13 78/21 101/2
Huffman [1]  116/5
HUGH [2]  2/3 5/15
hypothetically [1]  140/15

## I

I'd [2]  118/6 144/7
I'll [11]  32/9 34/13 43/9 67/15 105/12 123/11 124/24 144/12 146/3 146/25 152/5
I'm [112]  4/5 10/10 11/13 11/18 11/25 14/20 15/18 16/3 16/15 17/24 22/15 23/2 25/16 26/20 27/3 27/9 27/10 27/12 33/17 34/13 35/7 36/14 46/2 46/4 50/17 50/17 53/17 56/20 57/13 57/14 57/14 58/12 59/13 60/16 61/10 62/2 63/23 64/2 64/25 65/18 69/18 70/5 70/23 75/10 77/5 78/5 78/7 78/12 78/22 80/21 83/4 83/14 83/19 84/8 84/17 88/25 90/6 91/15 92/6 93/22 93/23 96/3 96/15 97/7 108/9 108/22 110/8 110/19 111/4 114/2 114/10 117/1 117/12 119/4 119/22 120/14 124/23 126/1 126/14 126/22 127/17 127/18 129/9 133/7 133/16 134/23 135/4 137/9 137/20 141/21 141/22 143/2 143/18 144/10 144/15 145/10 145/21 147/15 147/20 148/1 149/25 150/18 151/22 152/15 152/25 153/1 153/2 152/17 157/11 164/14
I've [7]  16/20 96/7 138/4 144/23 152/4 152/7 157/4
IBM [1]  130/16
ID [1]  115/3
idea [13]  9/3 25/5 40/22 40/23 94/8 107/15 122/13 125/14 128/20 131/8 137/20 139/2 139/3

**I**

identified [1]  14/18
identify [3]  55/2 55/5 55/16
if [264]
imagine [1]  97/6 162/16
immediately [1]  105/9
immigrant [2]  44/1 44/25
immigration [2]  46/19 99/3
immoral [4]  41/17 41/19 42/2 42/8
impact [2]  52/18 148/12
impacted [1]  91/11
impeachment [1]  162/1
implicit [2]  31/6 32/24
implied [9]  23/14 25/5 26/20 29/11 29/12 30/17 37/1 46/6 46/12
important [6]  10/10 19/19 38/9 38/16 46/16 81/22
imposition [1]  150/14
imprisonment [3]  101/22 101/25 102/23
in [480]
inability [1]  127/24
incident [4]  47/17 48/16 102/23 103/7
incidents [1]  102/14
include [2]  28/19 129/19
included [8]  79/17 79/21 79/22 93/20 95/4 107/6 139/5 139/25
includes [2]  119/17 129/18
including [4]  67/4 125/17 125/19 139/6
incorrect [4]  66/6 70/4 70/4 70/5
incur [1]  89/5
indeed [2]  18/8 28/4
index [3]  117/8 117/10 117/12
India [40]  20/8 23/3 23/5 23/17 24/5 24/9 24/13 24/18 25/4 25/6 26/14 26/22 27/6 27/17 27/19 27/24 28/20 30/18 31/12 32/7 32/8 32/12 32/18 33/25 35/20 36/18 37/5 37/9 39/11 39/11 39/13 41/8 41/22 42/5 42/6 42/7 42/21 42/25 43/1 159/4
Indian [50]  18/17 18/21 19/13 20/5 20/6 20/7 20/12 20/13 20/17 21/3 21/20 22/2 22/3 22/16 22/20 23/1 23/2 23/7 23/17 23/24 23/25 24/2 24/3 24/7 24/9 24/17 24/23 25/1 25/3 25/11 26/13 27/5 27/18 27/19 28/6 31/15 32/6 37/7 40/10 40/14 40/25 41/2 41/5 41/6 41/9 41/12 41/13 42/9 80/22 103/22
indicate [1]  136/13
indicated [2]  37/5 58/23
indigenous [1]  24/9
individual [6]  27/20 45/22 48/15 147/8 147/12 148/21
individually [3]  36/4 36/5 36/6
individuals [5]  42/16 104/11 131/13 136/7 141/3
inflexible [1]  57/14
infliction [6]  48/4 100/25 101/1 101/4 102/24 103/3
inform [1]  135/16
information [9]  65/3 68/12 69/8 72/18 72/25 73/3 73/7 74/4 136/17
initial [3]  132/8 138/23 161/1
innately [2]  24/1 41/4
input [1]  11/7
inside [1]  98/20
instance [1]  20/11
instances [1]  97/22
instead [2]  6/18 17/19
Institute [1]  2/12
instructed [2]  20/9 94/22
instruction [3]  93/2 96/13 96/19
instructions [14]  93/4 93/5 94/2 94/3

intend [4]  61/25 90/7 109/12 133/17
intended [3]  41/24 42/3 45/8
intent [6]  44/1 44/8 44/14 44/24 44/25 120/9
intentional [2]  100/25 102/23
interchangeably [1]  153/23
interest [12]  39/24 66/8 69/16 70/10 70/18 71/11 71/12 74/1 130/10 130/11 134/12 134/16
interested [11]  39/20 133/25 134/13 134/18 134/18 134/23 134/24 134/25 135/2 137/12 147/11
interesting [1]  47/1
INTERNATIONAL [8]  1/6 1/11 1/18 3/6 3/12 5/5 77/25 114/4
interpret [1]  80/21
interpretation [1]  28/20
interpretations [1]  19/25
interpreter [8]  80/22 81/1 81/3 81/5 81/13 81/23 82/17 82/21
interpreters [1]  80/5
interpreting [2]  19/16 81/25
interrelated [1]  24/10
interrupt [2]  99/9 119/4
intervenors [2]  4/11 5/14
into [22]  13/5 14/7 14/15 40/6 41/18 44/7 44/13 73/25 92/10 104/1 109/23 112/15 115/6 117/13 118/1 120/17 120/17 131/8 133/17 155/16 158/9 162/16
introduce [3]  84/4 89/21 113/7
introduced [3]  115/1 115/4 116/19
invested [1]  71/2
inviting [1]  162/19
involuntary [1]  99/2
involve [1]  75/15
involved [4]  38/23 47/23 85/21 91/23
involvement [2]  38/16 38/16
iPads [2]  83/14 83/15
iPhone [1]  98/19
is [455]
ish [1]  11/4
isn't [8]  11/21 12/10 36/8 38/19 96/24 114/5 155/11 158/18
issue [46]  6/23 13/7 14/10 17/1 22/13 25/1 26/11 28/5 32/14 37/10 37/23 39/18 39/20 41/12 43/24 46/5 47/3 58/21 59/21 61/24 65/2 65/11 65/24 68/16 69/4 72/16 78/11 80/4 80/10 80/11 88/25 103/24 104/5 113/3 129/10 129/17 129/20 135/9 141/9 148/23 148/24 152/22 161/2 161/2 163/19
issued [2]  54/22 72/4
issues [18]  5/24 7/5 7/7 38/1 39/23 40/23 41/16 43/5 65/23 80/4 92/21 97/20 99/3 109/9 112/25 118/14 148/6 163/18
it [469]
it's [146]  5/22 8/6 9/22 9/23 10/10 12/11 15/12 17/13 17/13 17/14 17/25 18/11 19/7 19/12 19/15 23/11 23/18 23/23 24/11 24/22 25/9 27/20 28/22 30/9 36/24 37/12 39/2 40/5 40/24 40/24 41/3 41/4 41/4 41/16 41/16 45/15 45/20 46/12 47/5 47/6 47/13 48/2 50/23 51/24 53/15 54/3 54/4 55/19 56/9 56/9 56/17 56/21 57/18 58/7 58/9 58/11 58/11 58/12 58/13 58/14 59/21 63/16 63/22 71/1 71/2 71/7 71/14 71/16 74/6 74/20 75/7 81/22 82/3 85/7 86/3 91/19 92/11 92/16 94/8 94/17 96/11 96/12

**I**

94/9 94/13 94/19 95/12 95/15 95/17 95/23 96/9 96/16 97/8
intend [4]  61/25 90/7 109/12 133/17

97/3 97/5 97/7 101/20 103/8 107/11 107/15 108/4 111/23 112/17 112/19 113/13 115/17 115/19 118/1 119/2 120/4 120/6 120/9 121/3 121/14 121/25 122/1 126/12 126/15 126/24 127/1 127/18 127/19 129/11 131/16 131/21 132/14 132/14 135/6 136/13 137/16 138/16 139/22 141/16 141/18 142/12 145/18 145/23 146/7 146/14 146/25 147/9 148/10 148/15 150/14 151/5 154/20 156/13 156/22 156/23 156/23 157/22 158/4 160/7 161/4 163/21
its [9]  27/21 28/1 73/14 75/8 79/16 118/25 119/5 136/6 136/12
itself [6]  37/21 69/18 79/2 115/2 157/9 158/23

**J**

Jackson [2]  27/17 27/21
Jacob [6]  48/14 49/2 49/3 55/25 101/21 101/23
January [14]  12/4 12/17 12/18 12/21 12/24 47/22 48/24 50/19 51/8 51/15 51/19 101/11 102/19 141/23
January 10 [1]  12/18
January 15 [1]  51/15
January 31 [3]  12/4 51/8 51/19
January 9 [2]  12/21 12/24
jewelry [1]  157/25
jewels [1]  157/21
job [2]  8/3 47/2
John [9]  17/11 17/16 52/2 52/8 131/4 133/11 138/24 139/12 139/23
John Deere [1]  52/8
John's [1]  141/6
joint [4]  94/3 94/12 96/16 145/6
Jomon [1]  7/15
Joseph [6]  48/15 49/2 49/3 55/25 101/21 101/23
joys [1]  8/17
judge [77]  1/23 7/14 8/1 13/7 14/24 17/6 17/11 17/21 23/23 25/6 37/16 37/23 40/16 40/24 42/14 43/3 43/6 49/24 50/25 51/2 51/5 51/9 51/17 51/25 53/14 53/15 53/18 53/20 54/4 54/19 54/22 55/18 56/7 56/15 57/12 63/12 63/17 63/20 65/10 76/10 77/8 85/16 85/17 95/14 100/8 100/14 105/13 106/2 125/25 126/16 127/12 127/6 127/9 127/13 138/4 138/18 138/24 139/2 139/15 139/16 139/19 140/5 140/20 140/22 142/5 142/12 144/9 144/14 144/19 145/8 145/12 145/19 145/24 145/12 145/12 146/7 146/8 149/13 149/14 150/14
Judge Knowles [22]  53/14 53/15 53/18 53/20 54/19 54/22 55/18 56/7 126/16 127/2 127/6 127/9 140/5 142/5 142/12 144/9 144/14 144/19 145/8 145/12 146/7 150/14
judges [2]  11/18 125/20
judgment [20]  16/18 31/10 32/15 34/2 34/15 38/4 39/2 46/9 48/22 50/2 50/10 58/22 73/25 91/11 97/14 97/17 100/7 100/9 101/13 102/17
judicial [1]  107/19
JULIE [4]  3/3 4/19 137/5 137/10
July [7]  8/23 9/25 10/1 10/2 10/3 10/25 141/23
July 12 [2]  10/3 10/25
July 4 [1]  10/2
July of [1]  10/1
jumps [1]  144/17

**J**

juncture [1] 10/10
June [3] 9/19 9/24 141/23
June 1 [1] 9/19
juries [1] 121/1
jurisdiction [1] 69/19
jurisprudence [2] 20/7 27/8
jurisprudential [2] 19/25 28/19
juror [2] 121/9 123/10
jurors [1] 87/24
jury [43] 19/20 20/9 20/22 21/7 21/9
21/13 84/5 84/5 86/1 86/4 87/20 93/1
93/4 93/5 93/11 94/2 94/3 94/9 94/12
94/19 95/12 95/15 95/17 95/24 96/13
96/16 96/25 97/8 97/8 120/24 121/16
121/19 121/22 122/13 122/18 122/19
122/23 123/20 124/5 124/10 145/15
156/13 162/10
jury's [1] 162/18
just [154] 6/10 6/14 8/25 9/4 10/1 10/21
12/14 13/1 14/4 14/8 14/18 15/5 16/21
18/19 19/22 21/7 21/15 23/20 25/7 25/8
25/11 25/14 26/5 27/10 27/20 27/25
29/6 33/13 33/17 34/20 37/5 38/5 38/6
38/8 38/18 46/2 46/10 47/1 47/6 48/10
51/4 51/11 54/8 54/19 55/14 55/20
55/22 56/4 56/10 56/13 56/17 56/20
57/11 57/18 59/16 60/3 61/10 61/13
61/19 61/23 62/9 62/10 63/22 64/20
67/2 67/7 67/16 68/24 70/19 76/12
76/14 76/22 77/16 77/19 79/15 81/18
82/2 82/2 82/14 85/12 86/6 87/4 88/3
89/17 89/21 91/15 93/21 93/22 94/4
94/6 95/18 95/19 96/4 96/5 97/3 101/3
101/18 101/21 102/10 104/14 104/21
105/1 107/21 108/4 112/9 112/20
113/15 113/19 115/14 116/13 116/19
117/6 117/6 118/8 120/6 121/1 121/18
122/3 123/18 124/5 125/5 126/5 128/3
128/23 131/5 131/14 132/7 133/1 133/4
133/23 134/1 134/2 135/1 136/24
137/20 138/3 138/6 138/25 140/10
141/16 141/20 142/1 143/10 144/18
144/20 145/15 148/23 150/5 151/8
151/23 155/25 156/12 161/23 163/11
Justice [1] 2/12
justify [1] 122/24

**K**

K-A-D-D-A-K-K-A-R-A-P-P-A-L-L-Y [1]
101/12
Kaddakkarappally [3] 101/11 101/21
101/23
Kaye [2] 10/8 79/25
keep [4] 4/20 12/21 87/12 120/7
kept [3] 116/3 116/5 117/15
key [3] 85/19 112/5 142/20
kind [21] 9/1 9/12 32/24 35/3 36/17
40/18 74/2 81/13 85/15 90/1 93/17
93/18 96/1 99/2 102/11 111/1 125/25
129/9 140/12 141/17 155/4
kinds [1] 87/4
Klan [1] 102/5
Klux [1] 102/5
knew [5] 41/20 44/22 45/1 158/13
158/13
know [118] 5/20 5/21 8/21 9/6 9/14 9/15
12/21 12/23 13/16 19/15 20/1 20/5 20/8
21/7 21/17 22/7 23/20 25/17 29/2 31/2
32/16 34/4 34/13 38/21 46/5 47/6 47/8
48/11 49/19 50/22 51/16 53/25 56/3
56/4 57/5 58/9 61/25 63/22 64/22 65/16

66/2 66/25 68/3 69/1 70/5 71/1 71/14
72/20 75/17 79/23 81/11 81/21 83/18
83/19 84/6 84/22 86/6 88/19 90/20
93/18 93/19 97/6 97/16 98/1 98/18
100/16 100/19 105/1 105/2 106/15
107/21 108/4 108/6 109/23 109/24
110/2 110/11 110/23 112/9 112/10
113/16 113/18 114/18 115/14 115/18
116/15 116/16 118/9 118/18 121/15
122/1 124/22 129/1 135/19 136/16
136/18 138/15 139/16 143/16 144/1
144/25 146/16 147/14 147/15 149/21
150/3 150/8 151/2 151/15 151/15
151/20 152/4 157/2 159/5 159/17
161/14 164/11
knowing [3] 126/16 126/18 145/13
knowledge [2] 44/12 151/20
Knowles [25] 53/14 53/15 53/18 53/20
54/19 54/22 55/18 56/7 57/12 126/4
126/16 127/2 127/6 127/9 140/5 141/2
142/5 142/12 144/9 144/14 144/19
145/8 145/12 146/7 150/14
knows [7] 25/1 55/18 107/22 122/23
126/23 127/3 145/16
Ku [1] 102/5
KURIAN [1] 1/4

**L**

labor [4] 11/21 48/6 98/4 98/5
lack [2] 136/12 136/20
laid [3] 34/14 34/17 39/2
LAKSHMANAN [1] 1/14
language [4] 35/9 67/15 82/3 96/17
languages [2] 82/1 82/4
last [12] 14/8 62/5 69/7 72/8 109/19
129/12 130/8 131/19 133/10 142/24
144/19 152/20
late [5] 8/15 59/16 94/24 127/18 163/2
late-comer [1] 8/15
later [3] 92/23 95/13 132/22
latest [1] 129/2
latter [2] 41/10 71/7
law [96] 2/6 2/9 3/17 4/11 4/13 16/19
16/25 17/3 17/9 17/18 17/19 17/20 18/1
18/2 18/7 18/17 18/21 19/13 19/13
19/17 19/18 20/5 20/6 20/7 20/13 20/17
20/17 20/24 21/3 21/6 21/20 22/2 22/3
22/16 22/20 23/13 23/16 23/17 23/20
24/2 24/3 24/9 24/16 24/16 24/21 24/22
24/23 25/1 25/9 25/9 25/15 26/7 26/13
26/18 27/1 27/5 27/8 27/18 27/20 27/22
27/22 27/25 28/3 28/6 29/9 29/16 33/25
34/1 37/6 37/7 37/25 39/15 40/10 40/10
40/13 40/14 40/25 41/1 41/2 41/6 41/9
41/12 42/18 47/10 47/18 50/18 52/3
52/7 52/18 53/2 92/17 92/21 93/23
100/24 102/13 103/17
lawfully [1] 43/2
laws [4] 21/8 24/4 27/7 28/1 28/2 28/23
37/24 47/3
lawsuit [1] 43/5
lawyer [4] 73/14 75/8 76/9 85/23
lawyers [14] 16/9 72/11 83/23 83/24
84/12 85/14 85/21 85/25 90/21 97/7
132/1 133/22 141/2 149/7
lays [1] 21/4
learn [1] 150/4
least [16] 11/19 16/21 29/2 46/24 74/6
75/24 78/9 97/22 110/2 118/7 119/19
139/3 139/18 139/20 147/4 154/5
leave [13] 42/21 53/17 59/10 62/14
62/15 68/25 69/2 77/15 87/22 95/18
104/15 123/12 123/21

leaves [1] 119/8
led [2] 20/14 37/4
leery [1] 75/10
left [6] 11/25 42/23 122/2 122/4 157/23
159/3
legal [1] 145/17
length [1] 71/9
less [4] 97/20 119/5 119/10 163/10
let [37] 5/20 5/23 9/14 9/15 16/1 18/23
29/1 29/14 34/3 54/21 56/10 61/4 64/22
64/24 67/24 68/6 69/1 71/10 74/14 79/2
94/1 100/8 100/16 100/19 111/24 112/9
112/10 113/18 123/20 126/23 130/14
147/13 147/15 149/21 150/3 152/17
164/11
let's [31] 4/6 6/13 10/2 10/2 10/5 11/23
12/4 12/14 12/18 13/1 13/24 14/3 15/22
18/13 51/6 51/11 51/15 60/5 67/20
67/23 76/11 77/12 77/19 80/4 92/5
93/14 100/14 113/12 115/13 150/2
159/2
letter [15] 16/13 30/11 35/16 35/19
35/19 37/2 37/4 37/8 37/20 39/10 42/24
133/11 139/5 139/25 141/7
letters [2] 39/21 139/11
level [4] 91/19 91/19 93/19 95/10
Lexis [2] 108/13 108/23
liability [2] 49/19 137/8
lie [3] 42/3 42/11 45/3
lieu [1] 125/15
life [3] 151/25 152/1 152/1
like [78] 4/5 10/17 10/19 10/20 11/4 21/5
21/20 23/10 24/19 27/1 27/21 27/25
28/9 29/23 38/2 39/7 51/14 56/20 57/8
65/6 66/7 67/15 67/16 67/19 75/22 76/5
77/8 78/9 82/10 82/20 84/20 84/21 85/5
85/7 87/1 88/23 89/13 92/8 93/3 95/4
96/6 97/15 98/19 106/12 110/3 110/15
111/9 111/18 112/16 114/1 114/2
114/20 115/17 116/14 122/14 122/17
124/19 125/5 129/4 130/16 134/2 136/2
136/2 136/16 137/15 137/15 141/18
144/16 145/15 145/17 147/9 149/4
150/11 151/3 155/18 157/8 159/24
161/8
likely [4] 93/22 113/13 145/19 150/13
lily [1] 35/10
limine [6] 61/5 61/14 157/1 159/15
159/18 159/23
limitations [1] 118/17
limited [3] 92/18 159/16 159/16
line [8] 38/15 55/2 55/19 57/1 57/4
76/19 109/2 142/8
link [1] 83/15
list [45] 8/13 8/21 9/22 15/10 15/18
53/23 88/2 88/2 88/15 89/4 89/12 90/12
93/17 102/22 103/14 103/21 104/4
104/15 104/18 106/4 106/7 106/7 106/9
106/16 109/12 109/22 110/18 111/5
111/7 113/20 113/23 114/9 115/9 117/4
117/6 117/24 117/24 123/7 124/4
125/12 150/21 151/11 152/13 152/14
154/3
listed [5] 88/19 113/10 113/23 114/20
115/8
listen [1] 148/17
literally [2] 83/14 123/23
litigation [5] 67/15 67/16 73/8 75/23
136/1
little [16] 10/17 10/18 13/10 19/21 34/18
43/10 72/16 85/16 87/21 94/6 94/15
129/23 133/13 142/6 145/10 145/13

Document 72-24 Filed 02/06/13 Page 176 of 188

**L**

live [6]  109/10 109/21 109/24 110/5
110/6 110/12
lives [1]  104/24
LLC [6]  1/6 1/11 1/18 3/6 3/6 3/12
LLP [3]  2/2 2/19 2/22
loan [4]  71/3 71/4 72/3 72/4
loans [1]  157/14
local [4]  41/4 41/4 127/15 138/8
log [11]  65/2 74/13 74/18 74/25 75/4
75/5 76/4 77/12 78/23 79/6 79/8
logistical [2]  87/4 104/21
logistics [1]  118/14
logs [1]  75/7
long [15]  10/5 10/10 57/20 62/4 90/24
92/8 112/19 122/2 125/1 125/3 125/5
125/10 133/3 143/14 163/24
longer [6]  10/17 10/18 91/4 94/15
118/20 121/1
look [40]  6/2 22/8 24/13 24/16 24/20
25/21 27/2 28/6 29/4 56/25 62/19 66/14
66/16 67/20 74/4 76/9 78/24 82/15
84/25 86/25 87/25 88/1 88/17 90/19
91/25 94/1 95/23 95/24 96/4 96/5
113/11 113/17 115/11 117/21 118/5
140/5 143/5 152/23 153/2 154/6
looked [6]  21/19 50/5 67/11 104/1
113/22 114/1
looking [12]  8/23 11/25 16/17 16/20
34/13 50/17 55/18 68/14 84/10 91/6
151/13 157/12
looks [3]  10/19 51/14 114/20
lost [3]  156/18 157/14 158/24
lot [23]  45/14 46/8 52/1 52/4 54/1 54/19
55/23 57/19 91/4 91/19 94/16 115/17
122/21 127/9 127/23 127/25 130/3
130/14 139/5 146/8 153/7 158/12
164/14
lots [1]  121/11
LOUISIANA [36]  1/2 2/11 2/12 2/14 2/17
3/10 3/13 3/15 3/18 3/21 16/24 17/3
17/9 17/18 17/20 19/13 19/17 19/17
19/24 20/12 22/20 23/7 23/25 24/5
24/12 24/12 25/9 27/25 33/25 39/15
40/3 41/1 41/15 52/3 146/20 164/20
Louisiana's [1]  19/24
love [1]  144/8
Lovely [1]  148/4
low [1]  63/20
lunch [2]  121/6 164/3

**M**

ma'am [3]  8/11 16/12 64/10
made [21]  14/7 14/15 15/18 19/18 38/24
40/12 44/15 48/13 50/23 75/21 101/15
105/7 108/20 110/5 125/24 139/24
140/25 141/10 152/8 156/1 162/4
Madison [1]  2/4
magistrate [13]  125/21 126/4 132/6
137/25 139/16 139/19 140/4 140/20
141/2 149/14 149/17 163/8 163/10
Magistrate Hawthorne [1]  132/6
Magistrate Knowles [2]  126/4 141/2
magistrates [1]  139/19
Maharashtra [1]  27/17
mail [22]  15/3 15/5 15/8 15/16 44/20
45/14 45/15 45/20 45/23 45/24 45/25
54/11 54/14 67/13 79/18 80/2 80/7
82/24 88/9 107/3 108/22 150/7
mails [6]  15/9 15/10 15/19 54/15 93/21
113/6
main [3]  111/22 112/5 119/18

mainly [1]  26/14
majority [1]  27/7
majority [3]  69/24 141/8 153/9
make [54]  9/13 12/14 15/10 19/15 20/21
26/8 29/1 31/13 32/20 37/6 40/3 41/21
43/20 64/3 67/12 71/10 72/7 75/24
78/15 82/10 84/3 84/5 87/4 87/7 87/13
88/15 90/13 91/21 92/18 97/3 97/20
98/16 99/15 102/20 104/11 106/10
108/24 111/13 114/16 130/3 131/19
136/11 141/12 142/4 145/21 149/2
149/5 149/8 149/11 150/13 159/11
161/18 162/23 164/8
makes [7]  9/6 40/16 40/20 81/25 82/4
86/10 119/1
making [3]  45/14 76/10 99/7
Malayalam [7]  80/14 80/21 81/4 81/18
82/2 82/11 82/21
Malvern [2]  31/25 32/19
man [2]  45/16 116/16
manage [1]  119/2
management [1]  120/8
manager [1]  45/15
Manatt [1]  2/22
manner [1]  66/23
many [16]  10/13 11/2 27/16 83/3 83/23
84/23 85/14 88/4 90/2 92/7 92/14
122/22 124/25 131/6 131/25 139/11
March [11]  13/1 47/16 48/7 48/15
101/20 102/14 102/23 103/7 103/12
103/18 141/22
March 31 [1]  13/1
March 9 [9]  47/16 48/7 48/15 101/20
102/14 102/23 103/7 103/12 103/18
marching [1]  151/17
marked [2]  62/21 62/22
Marler [7]  110/17 110/19 141/7 141/25
142/20 143/1 146/20
Massachusetts [1]  2/21
match [3]  153/2 153/15 153/19
matching [1]  65/12
material [2]  50/11 67/5
materials [1]  136/12
matter [7]  24/11 32/23 53/1 127/25
131/15 159/3 164/21
matters [1]  19/24
may [47]  9/21 9/22 9/23 23/3 25/11
25/11 28/4 38/1 38/1 38/8 45/14 45/20
46/13 62/2 62/23 68/11 68/12 68/15
72/15 73/7 77/1 84/15 84/16 86/9 97/14
97/14 97/17 100/10 104/4 104/15
105/17 105/17 109/22 110/18 111/5
111/6 111/17 111/24 112/10 114/25
115/3 121/17 125/12 126/10 154/17
154/14 155/14
May 2 [2]  9/22 9/23
may-call [6]  104/4 104/15 109/22 110/18
111/5 125/12
maybe [26]  13/24 15/20 16/22 50/10
50/13 65/5 72/1 72/11 85/4 85/22 87/13
97/5 105/11 122/14 124/18 127/18
129/24 134/4 136/20 136/22 142/7
144/5 148/25 149/22 152/8 163/24
McAlear [2]  106/23 107/7
McCollam [1]  2/15
me [87]  5/18 5/20 5/23 8/12 8/19 9/14
9/15 10/6 11/9 12/5 13/2 15/3 16/1 16/3
16/13 16/22 18/23 24/20 28/11 28/17
28/23 29/1 29/14 30/23 34/3 34/13
46/24 49/16 54/14 55/10 56/22 57/11
57/18 58/3 60/25 61/4 64/18 66/7 66/24
67/24 68/6 69/1 71/10 72/7 73/20 74/14
82/4 85/18 90/2 90/3 90/4 93/21 94/1

94/12 95/20 97/15 97/25 100/16 110/8
111/1 114/8 117/19 117/21 117/23
122/21 123/2 123/4 124/15 125/6
130/12 130/15 134/11 137/5 141/10
141/20 142/8 146/23 147/15 149/21
150/3 152/7 152/17 154/11 154/19
155/15 158/7 159/24
Meagher [2]  2/19
mean [14]  11/16 25/12 35/19 40/16 48/9
70/17 71/12 99/16 125/16 131/12 133/3
143/10 153/7 154/19
meaningful [1]  128/2
means [3]  76/8 108/5 161/16
mechanical [1]  3/23
mediates [1]  126/17
mediation [49]  125/15 125/21 125/25
126/3 126/6 126/14 127/1 127/14 128/2
128/20 128/21 130/1 130/4 130/5 130/9
130/15 131/3 131/8 131/15 131/18
132/22 133/8 133/17 134/6 134/8
137/22 137/23 138/1 138/14 138/16
138/18 139/1 139/18 139/23 140/3
140/13 140/15 140/19 140/19 141/6
141/6 141/16 146/6 146/6 146/14
149/23 150/6 150/19 164/13
mediations [1]  152/4
mediator [11]  126/9 127/21 129/3 140/1
145/12 146/9 146/12 150/20 151/9
152/4 152/8
mediators [4]  151/6 151/12 152/5 152/9
meet [1]  53/25
meet-and-confer [1]  53/25
meeting [3]  48/7 57/9 145/2
Mehta [1]  106/24
meld [1]  97/2
member [1]  73/7
members [1]  72/17
members' [1]  72/19
memo [1]  28/11
memorandum [1]  51/7
mental [1]  103/4
mention [6]  39/24 83/12 97/22 102/6
113/20 119/13
mentioned [6]  35/17 52/20 61/9 64/2
103/16 122/12
mercy [1]  119/24
MEREDITH [4]  2/10 5/12 8/6 8/8
merits [2]  116/2 116/18
message [3]  76/15 76/17 151/22
met [6]  86/20 132/1 144/23 144/25
145/9 152/8
Mexico [1]  159/4
Michael [6]  32/18 45/15 79/25 80/1
149/1 149/4
middle [1]  120/25
might [28]  9/20 28/6 29/13 35/10 36/21
37/23 62/21 62/22 65/3 68/7 83/21
83/21 84/8 86/25 105/13 115/6 121/10
122/1 122/15 123/21 125/21 127/11
138/25 145/21 150/16 155/14 156/25
158/15
miles [1]  110/15
Miller [1]  163/5
million [3]  126/13 130/12 141/24
mind [1]  115/16
mine [2]  9/19 114/19
minimally [1]  69/19
minor [2]  6/3 112/2
minute [6]  15/11 15/19 64/3 107/13
147/16 164/9
minutes [1]  127/22
misrepresentation [7]  19/2 33/16 47/9
103/18 158/11 158/22 158/24

# M

miss [3] 34/12 98/1 132/4
missed [2] 99/18 144/22
missing [4] 54/6 101/22 109/3 127/18
mission [1] 33/19
Mississippi [42] 18/1 18/2 18/7 18/7
20/13 20/24 22/21 23/24 24/5 24/12
24/12 24/16 26/17 26/18 26/18 26/23
27/17 27/21 27/23 28/2 29/16 29/19
30/1 30/2 32/6 33/25 39/22 39/23 39/25
40/1 40/7 40/10 40/15 40/17 40/19
40/20 47/10 47/17 48/14 52/7 52/11
63/3
Mississippi's [1] 17/19
Mississippi-based [1] 48/14
misspoken [1] 36/21
misstatements [1] 41/21
mistakes [1] 81/25
Mitch [1] 5/10
MITCHELL [1] 3/9
mitigates [1] 159/10
Mobile [1] 75/14
model [1] 120/5
moment [2] 38/8 133/9
Monday [16] 6/18 11/22 12/10 12/13
12/20 12/23 12/24 54/13 59/2 59/8 59/9
60/18 149/22 149/24 150/3 163/15
money [13] 71/3 71/5 129/10 129/14
135/8 137/8 137/15 140/12 157/14
157/24 158/4 158/7 158/17
monitors [1] 87/23
monster [1] 154/1
month [9] 9/4 10/4 10/16 64/19 84/10
85/7 90/17 92/14 118/19
months [3] 33/14 130/4 156/3
moot [1] 100/7
mooted [1] 103/10
more [41] 12/16 15/23 25/7 55/14 56/18
57/13 58/5 65/3 65/5 68/8 72/1 73/12
82/18 85/4 91/2 95/11 98/24 107/22
112/2 121/1 121/14 121/23 122/1 122/9
124/25 125/1 127/9 127/14 131/21
132/21 142/18 145/19 145/19 146/8
146/11 150/13 151/9 151/18 151/25
154/12 160/13
mores [2] 23/8 41/16
MORGAN [1] 1/23
Moring [2] 2/2 4/8
morning [5] 86/4 87/14 121/6 125/6
142/16
most [22] 6/2 23/10 23/15 25/25 39/12
39/20 39/24 64/19 64/21 79/20 85/13
91/8 111/1 113/5 113/23 115/24 119/23
145/22 148/16 149/10 149/14 151/10
mostly [2] 95/17 155/25
motion [41] 13/19 15/25 16/5 31/11 34/2
34/15 38/4 46/9 53/12 53/19 53/24 54/9
57/23 58/1 58/2 58/5 59/10 59/11 61/24
62/1 63/1 63/6 66/19 68/23 68/25 69/3
73/23 76/24 101/15 101/16 106/23
107/7 107/25 108/2 122/24 157/1
159/14 159/18 163/6 163/8 163/20
motions [37] 10/20 15/22 16/18 48/22
50/1 51/13 53/6 53/7 53/11 57/16 58/22
58/25 59/7 59/15 59/25 60/9 60/12
60/13 60/17 60/21 60/23 61/2 61/5 61/8
61/14 61/15 63/7 67/4 91/12 97/13
101/12 102/17 106/20 106/22 106/25
107/24 159/23
move [11] 65/9 69/22 75/15 77/1 77/12
77/19 89/2 104/14 121/7 130/9 149/12
moved [1] 100/13
moving [2] 29/4 94/23

# Mr.

Mr. [56] 20/3 20/4 20/16 26/21 32/18
35/15 39/10 43/15 43/19 44/12 44/12
44/17 44/18 44/24 46/15 48/8 54/21
54/23 55/1 55/6 55/21 55/25 63/19 78/3
83/12 88/23 89/9 92/12 95/9 95/10
99/20 101/11 103/25 104/9 104/20
110/19 116/12 117/20 128/20 132/11
133/5 141/4 141/7 141/21 141/22
141/25 142/1 142/20 142/21 142/24
146/20 146/21 148/10 152/21 159/3
162/3
Mr. Burnett [4] 44/12 55/6 55/21 55/25
Mr. Cerniglia [10] 20/4 54/21 54/23 55/1
89/9 95/10 116/12 117/20 152/21 159/3
Mr. Colby [4] 132/11 133/5 141/4 141/21
Mr. Cunningham [5] 78/3 142/1 142/21
142/24 146/21
Mr. Dewan [3] 32/18 43/15 43/19
Mr. Dewan's [1] 44/12
Mr. Howard [11] 35/15 44/18 44/24
46/15 88/23 92/12 95/9 103/25 104/20
128/20 148/10
Mr. Kaddakkarappally [1] 101/11
Mr. Marler [5] 110/19 141/7 141/25
142/20 146/20
Mr. Raptis [1] 141/22
Mr. Schnorr [1] 48/8
Mr. Shapiro [2] 20/3 104/9
Mr. Shapiro's [1] 20/16
Mr. Weinberger [6] 26/21 44/17 63/19
83/12 99/20 162/3
Mr. Weinberger's [1] 39/10
Ms. [6] 65/14 73/12 73/21 74/5 75/13
77/14
Ms. Bean [5] 65/14 73/21 74/5 75/13
77/14
Ms. Bean's [1] 73/12
much [20] 9/6 20/15 27/6 44/23 51/23
52/5 57/19 85/3 85/12 86/2 90/21
108/14 109/5 118/15 120/16 120/17
120/19 135/4 146/11 156/6
multiple [2] 124/12 135/7
must [5] 31/5 52/25 57/16 114/10
144/22
mutual [1] 130/10 130/11
mutually [1] 140/16
my [50] 4/20 5/25 15/10 20/2 21/15
24/25 25/22 34/14 56/3 57/18 63/4 63/5
63/14 64/3 71/8 71/15 72/21 76/12 84/6
84/25 86/2 88/12 93/13 94/18 98/12
98/20 102/22 104/25 105/2 106/16
107/19 109/25 110/7 111/20 115/12
118/8 118/9 118/23 123/7 125/20 128/1
139/23 142/5 142/8 146/11 151/25
152/1 156/17 157/4 164/20
myself [3] 8/6 18/12 54/17

# N

name [8] 22/12 79/21 80/22 80/25 82/23
82/25 83/1 124/5
names [10] 7/12 7/14 11/1 79/16 79/20
79/21 104/3 150/21 152/13 152/14
Nanoo [1] 7/17
NAOMI [3] 2/7 4/13 35/7
narrow [1] 97/20
narrowed [1] 113/10
nation [1] 27/19
national [2] 20/8 136/7
native [4] 80/17 89/1 153/14 153/15
natives [1] 153/19
nature [2] 14/25 24/10

nearly [1] 130/23
necessarily [5] 117/9 117/9 117/9 125/19
126/14 133/9
necessary [2] 92/4 139/22
need [79] 5/19 6/24 7/8 10/8 11/12
11/25 13/4 13/6 15/8 18/19 20/10 21/7
21/13 28/23 43/9 44/2 44/4 51/14 55/1
55/4 56/24 56/25 57/2 57/15 62/24 65/5
65/20 68/7 68/15 75/16 75/17 76/18
81/15 81/18 82/16 84/1 84/18 86/2 86/9
86/15 86/18 86/24 86/25 90/3 91/4
91/16 92/1 94/21 95/6 95/12 97/10
106/14 106/21 107/18 108/8 109/25
111/5 113/21 113/22 118/15 119/25
121/7 121/23 123/10 123/21 124/22
129/18 132/24 142/15 143/16 143/16
146/10 148/22 152/18 157/2 157/6
159/14 162/16 164/7
needed [2] 82/21 96/24
needs [10] 65/14 75/8 75/13 76/19
77/20 86/24 120/10 135/12 143/5
143/12
negligence [1] 18/22
negligent [7] 19/2 48/4 101/1 101/4
101/7 102/24 103/18
negotiable [1] 137/19
negotiate [1] 136/24
negotiated [3] 137/6 163/8 163/9
negotiation [1] 137/16
neither [1] 88/12
Nelson [1] 123/15
neutral [2] 126/9 127/21
never [22] 14/15 15/5 42/23 45/23 66/12
74/21 77/2 77/5 78/25 81/8 88/13 92/23
92/23 127/21 136/15 136/17 137/16
137/19 145/6 145/9 152/8 160/13
new [14] 2/4 2/4 2/11 2/14 2/17 3/10
3/13 3/15 3/18 3/21 6/11 6/12 49/12
126/8
news [1] 123/22
next [16] 9/5 9/16 11/10 21/8 28/10 33/6
46/7 62/8 62/12 68/3 106/16 115/13
128/9 154/25 162/2 163/21
nice [3] 47/2 112/20 122/15
no [86] 1/5 1/10 1/15 10/1 10/12 12/11
12/25 21/13 23/8 23/14 24/11 27/12
30/9 30/19 31/2 34/22 39/8 41/2 42/5
43/12 44/9 46/11 47/1 48/11 49/14
49/21 50/4 50/11 55/12 55/13 56/13
57/22 61/16 65/17 65/17 68/18 70/14
70/21 73/25 75/16 88/4 88/9 95/20
96/12 97/2 100/9 100/21 105/5 114/11
114/15 114/15 114/19 115/24 117/1
117/10 117/25 117/25 122/8 124/6
125/5 125/5 130/23 137/4 137/4 137/11
150/19 152/10 152/19 153/6 153/13
153/19 156/12 157/25 158/13 158/19
158/20 158/24 158/25 159/9 159/21
159/22 160/12 160/22 162/11 162/13
162/14
nobody [5] 54/14 55/9 76/7 92/23 156/2
nonclass [3] 160/5 160/5 161/1
nonnegotiable [1] 137/17
nonresponsive [1] 134/10
noon [3] 118/25 163/25 164/4
normal [2] 23/15 95/15
North [1] 121/12
North Shore [1] 121/12
not [234]
note [3] 37/23 58/18 157/24
noted [2] 99/20 109/19
nothing [3] 47/19 134/11 145/8
notice [9] 20/19 57/24 62/1 90/20 90/25

**N**

notice... [4] 94/2 106/17 107/4 132/19
notified [1] 108/21
November [33] 6/21 7/11 11/25 12/2
12/4 12/6 12/12 28/11 51/2 53/9
53/10 53/12 58/1 58/2 58/19 59/25
60/14 60/15 60/19 60/22 60/24 61/9
61/10 79/13 126/5 142/12 142/13
143/17 143/18 143/20 143/23 144/3
November 11 [3] 58/19 59/25 60/22
November 12 [3] 143/18 143/20 143/23
November 17 [1] 142/12
November 19 [1] 53/12
November 28 [2] 7/11 79/13
November 30 [1] 142/13
November 5 [4] 53/10 58/1 58/2 61/10
November 7 [3] 12/12 28/11 61/9
November 8 [2] 12/4 12/6
November 9 [1] 12/8
now [52] 4/5 7/15 11/13 18/20 19/10
39/3 47/2 49/23 53/5 54/4 54/19 55/6
56/22 57/2 57/13 57/16 59/15 60/16
65/11 70/3 70/10 70/17 72/13 74/9
75/11 75/11 77/22 78/1 78/6 78/19
80/25 95/12 98/2 101/22 106/21 107/3
108/11 109/4 122/3 126/2 134/5 140/22
141/3 141/9 142/3 142/5 142/15 151/19
156/25 157/22 158/2 158/4
nuances [1] 20/10
number [22] 45/4 55/2 55/19 83/24
88/19 88/22 98/3 113/14 114/6 114/7
114/11 114/15 114/22 115/10 115/11
115/13 115/13 116/19 116/20 123/24
124/22 156/22
numbered [1] 116/16
numbers [16] 14/14 88/20 113/22
113/24 114/1 114/24 115/1 115/14
115/15 116/3 117/16 126/25 153/2
153/4 153/7 163/12
numerous [1] 127/24
NW [1] 2/23

**O**

oath [1] 45/23
object [2] 109/15 109/15
objection [3] 6/19 7/22 13/23
objections [6] 66/16 96/16 109/16
objective [1] 145/12
obligation [1] 161/25
observations [1] 141/14
obstacles [1] 135/7
obtain [1] 42/18
obvious [1] 23/12
obviously [15] 23/13 25/15 47/4 54/24
76/2 84/5 85/17 91/11 95/7 100/3 100/5
114/21 129/22 137/22 141/3
occur [1] 126/6
occurred [1] 114/25
occurs [1] 90/4
OCTOBER [7] 1/22 4/2 12/13 12/15
53/8 61/6 64/19
October 17 [1] 61/6
October 31 [2] 12/13 12/15
October 5 [1] 53/8
off [12] 12/14 34/13 34/18 46/1 83/15
125/23 132/23 133/12 139/25 140/25
143/14 157/24
offend [1] 24/23
offense [1] 150/19
offer [18] 26/16 29/23 30/4 30/7 30/9
30/11 34/8 35/16 35/19 37/2 37/20
37/10 39/21 42/24 56/20 129/12 130/6

149/19
offering [1] 98/10
offhand [1] 22/7
office [8] 3/12 3/17 4/21 86/19 105/17
117/21 118/8 142/15
Official [3] 3/20 164/19 164/24
offline [1] 105/23
often [1] 94/24
oh [10] 34/11 58/18 59/18 85/2 92/23
96/21 111/12 120/20 129/7 135/15
okay [33] 6/13 24/22 25/20 36/12 36/22
38/25 49/22 54/8 61/22 62/19 63/9 64/1
67/23 68/22 70/25 76/12 83/2 85/2
95/22 97/24 99/23 100/23 101/20
105/16 106/14 117/17 117/10 129/5
146/18 152/11 155/17 160/25 162/12
old [1] 113/14
on [252]
once [1] 65/4
one [160] 6/16 6/16 7/6 8/24 9/6 9/9
10/3 12/16 13/7 15/7 15/8 15/8 20/14
21/19 23/23 24/19 24/25 25/1 25/7
25/21 25/23 25/23 26/8 29/8 30/3 30/12
31/8 31/12 31/16 31/24 31/25 32/5
32/10 33/3 33/7 33/13 34/5 34/11 35/5
36/6 36/12 39/7 39/23 43/16 43/24
44/20 45/14 45/20 46/10 47/23 48/12
48/22 49/1 49/17 51/25 53/12 58/21
65/5 65/17 65/18 66/14 66/16 69/1 69/4
71/3 75/12 76/22 77/18 78/14 79/9 80/4
80/14 80/16 80/17 81/1 81/3 81/24 82/5
82/5 82/12 83/17 83/19 83/20 84/7 85/7
86/10 87/3 88/1 90/17 91/7 92/25 94/4
95/11 96/2 96/2 96/3 96/17 96/20 97/3
97/12 98/1 98/17 101/6 101/10 101/15
101/17 101/18 103/12 103/12 110/2
110/10 112/4 112/25 113/3 113/14
114/17 114/18 114/19 115/11 116/15
116/21 117/15 118/2 119/15 119/15
121/6 121/6 122/14 122/25 124/3
125/20 129/1 131/15 132/6 132/12
135/7 137/21 140/21 140/24 142/24
144/13 145/3 147/4 148/14 150/18
151/17 151/24 151/24 152/3 153/13
155/21 156/23 157/15 158/3 158/10
160/11 160/13 161/11 161/16 164/6
one-and-a-half [1] 122/14
onerous [1] 91/8
ones [30] 6/8 14/11 35/15 45/6 67/25
68/7 86/25 87/24 88/1 91/8 94/3 96/5
103/12 108/19 108/19 109/8 115/15
115/16 118/21 122/6 123/7 123/21
124/2 130/14 153/1 153/18 160/7
160/10 161/15 162/17
only [30] 6/12 6/23 7/7 10/18 13/15 15/7
26/3 26/13 43/22 44/4 49/1 49/2 49/9
53/22 65/18 75/20 84/25 85/8 101/6
103/4 112/24 118/11 121/22 131/23
141/2 147/19 147/23 157/11 160/11
161/10
Oops [1] 69/17
open [8] 4/6 89/14 104/15 136/24
137/14 141/17 154/12 162/13
opened [1] 45/23
opening [8] 88/9 94/20 94/20 125/7
125/10 130/6 130/6 141/18
opens [1] 85/23
opinion [2] 108/21 146/11
opinions [2] 107/18 108/14
opportunity [9] 1/9 3/2 39/4 54/7 104/8
104/9 104/16 104/19 106/6
oppose [4] 51/10 100/18 100/18 108/1
opposed [1] 94/23

opposes [1] 31/4
opposing [1] 48/19
opposition [4] 58/17 59/19 61/3 100/20
oppositions [6] 59/16 59/20 59/25 60/12
60/22 61/7
opted [1] 104/3
option [1] 85/11
options [1] 140/16
or [138] 6/7 6/9 6/15 8/13 9/7 9/8 9/9
11/18 14/4 15/17 16/16 19/5 19/10
19/14 19/23 22/5 22/20 23/4 24/12
25/10 25/13 27/17 28/15 29/12 30/1
30/24 32/6 33/25 35/20 36/18 37/18
37/19 38/1 38/20 39/11 40/10 40/22
41/8 42/12 48/17 52/8 52/14 52/20
56/15 57/9 57/18 57/24 58/10 58/12
58/24 60/22 61/25 62/5 65/5 67/1 68/8
71/5 71/13 74/7 74/13 74/20 78/2 78/9
82/2 82/12 83/21 84/7 85/11 86/17
86/24 88/11 88/15 91/19 93/20 96/24
102/20 104/10 104/19 105/6 105/10
108/1 108/4 109/24 110/24 111/6 112/6
112/13 113/16 114/2 114/13 114/14
115/11 115/13 116/12 118/8 120/2
120/25 121/14 122/4 122/18 123/19
123/24 124/1 124/4 124/19 125/20
126/3 127/10 127/15 130/4 130/4 131/7
131/15 131/15 133/3 138/16 138/19
139/3 139/15 139/19 140/19 142/1
144/17 146/6 148/25 149/4 149/19
149/20 150/5 150/20 151/24 153/3
154/9 154/23 158/21 161/2 162/4 164/3
order [73] 6/22 9/1 9/6 13/24 14/2 14/4
14/6 14/8 14/16 15/21 15/25 20/21
23/23 41/23 42/9 42/22 42/25 45/3
49/18 52/20 54/4 54/6 54/22 58/23
59/24 60/14 61/3 61/8 61/9 61/20 74/8
75/24 82/9 89/10 90/12 90/18 90/23
91/1 91/7 92/15 93/14 94/10 109/11
111/15 113/10 113/21 113/24 115/9
117/16 118/2 126/4 127/14 132/6
137/22 137/23 137/24 137/25 138/12
138/14 138/24 139/17 139/22 140/2
140/3 142/6 143/2 149/19 150/21 157/8
159/25 161/6 163/4 164/2
ordered [2] 125/15 163/10
orders [10] 6/1 6/4 16/10 64/2 64/4
108/14 108/18 109/3 155/8 164/9
ordinarily [3] 121/24 122/16 123/1
ordinary [1] 137/7
organize [1] 147/6
Orientation [1] 114/5
origin [1] 136/7
original [5] 59/14 160/1 160/7 160/23
161/5
originally [2] 47/25 50/9
originals [1] 161/14
Orleans [8] 2/11 2/14 2/17 3/10 3/13
3/15 3/18 3/21
other [78] 6/3 6/11 9/7 9/14 13/7 13/17
16/8 21/2 21/17 25/11 25/13 29/4 32/24
34/6 35/13 35/15 36/25 37/20 48/3
48/14 49/4 50/19 51/11 52/8 53/6 54/10
60/25 62/14 68/8 72/3 73/24 74/16 80/16
84/15 84/16 84/16 85/20 86/14 89/18
89/22 89/22 90/24 95/24 96/20 97/16
98/14 98/17 99/24 103/3 103/21 106/5
106/10 109/8 112/2 112/14 112/24
113/3 114/2 117/16 118/14 118/14
119/13 120/18 120/21 127/7 128/24
129/17 138/4 142/20 145/4 148/11
149/7 151/1 152/5 152/17 156/11
157/19 159/17 161/12

# O

others [3]  10/3 37/12 98/7
otherwise [1]  45/17 113/19
ought [2]  54/10 111/6
our [91]  6/17 7/5 9/1 11/10 13/14 14/8
  14/9 17/21 20/1 20/14 22/8 23/10 26/13
  27/18 28/6 31/10 32/1 32/14 32/23 34/2
  34/15 34/15 34/17 36/15 36/17 36/24
  38/3 39/2 46/6 46/19 48/17 51/11 52/17
  53/23 55/6 56/12 59/16 61/12 62/11
  65/4 66/15 66/18 69/7 69/22 72/8 72/19
  72/24 72/25 74/3 76/25 77/3 80/24
  81/20 82/5 84/7 96/14 96/18 97/21
  102/14 104/9 104/12 104/18 110/4
  111/22 111/23 114/8 119/16 119/19
  120/9 120/22 123/19 126/15 129/11
  129/12 129/21 129/22 129/25 130/2
  131/9 131/20 132/13 132/22 132/23
  133/12 140/11 141/5 141/6 148/16
  149/2 157/21 163/6
ourselves [1]  134/9
out [74]  6/1 7/6 9/5 9/16 16/23 20/10
  20/12 21/4 25/7 34/14 34/17 39/2 39/19
  40/2 43/1 47/16 48/12 50/14 56/21 57/7
  57/12 57/21 58/24 61/10 61/19 64/24
  67/21 68/15 69/13 72/12 75/18 75/18
  77/15 77/20 79/3 82/22 85/18 86/3 88/3
  88/13 90/5 92/6 93/14 100/3 100/6
  102/10 102/22 106/8 107/9 114/15
  115/10 118/7 119/22 124/4 132/7 133/2
  134/25 135/2 136/5 143/18 144/17
  147/7 147/20 148/18 152/5 154/3
  155/23 157/9 157/14 161/20 161/22
  162/15 164/9 164/10
out-of-town [1]  147/20
outreach [1]  138/23
outside [1]  111/2
outstanding [3]  64/19 72/3 163/4
over [13]  39/11 65/10 65/15 70/15 73/10
  73/11 106/12 111/11 131/15 138/19
  147/7 153/19 158/14
overboard [1]  92/19
overflow [4]  84/20 84/21 85/8 86/9
oversimplification [1]  44/19
overstepped [1]  46/17
overstepping [1]  137/21
overture [1]  125/24
own [18]  20/20 27/20 27/21 27/25 57/18
  70/3 71/6 71/11 71/13 71/13 71/13
  71/18 71/24 73/14 75/8 76/18 96/14
  128/1
owner [1]  71/17
owns [2]  71/23 78/14

# P

p.m [1]  128/12
page [8]  55/2 55/19 57/1 57/4 96/21
  114/3 161/24 162/23
page 7 [1]  114/3
pager [1]  122/14
pages [1]  106/17
paid [1]  44/23
panel [2]  123/23 124/6
papers [3]  27/2 56/25 78/8
paragraphs [1]  34/16
pare [1]  88/14
parent [1]  66/5
paring [1]  88/23
part [27]  22/1 24/23 25/2 31/7 31/10
  36/20 39/12 41/7 42/13 48/5 48/6 68/10
  79/21 103/7 109/25 110/3 110/7 111/1
  128/24 136/10 136/23 141/12 149/10

154/2 157/12 158/9 158/22
partial [1]  16/18
participate [17]  95/8 105/25 125/23
  134/3 134/5 134/7 137/22 137/25
  139/18 139/22 140/4 140/7 146/6
  149/19 150/9 164/13 164/13
participating [2]  83/25 86/13
participation [2]  93/19 95/10
particular [4]  21/10 56/9 65/12 109/18
particularity [1]  54/7
particularly [1]  26/11
parties [20]  7/16 7/18 11/6 21/2 48/23
  49/1 52/16 89/22 90/11 91/16 103/22
  106/3 106/5 106/11 124/12 125/22
  126/10 128/3 140/5 150/4
partnership [2]  35/3 38/23
parts [1]  56/16
party [6]  88/14 89/18 109/20 126/9
  140/1 145/12
pass [4]  15/8 45/3 74/5 159/20
passed [1]  73/20
past [8]  58/23 127/3 129/6 129/7 129/8
  141/2 152/5 157/12
Patricia [7]  3/11 3/12 5/6 7/1 7/20 65/16
  126/23
pay [12]  71/5 88/12 97/10 118/4 118/6
  121/3 129/3 156/3 156/5 157/15 157/24
  159/6
paying [2]  116/24 127/8
PDF [3]  88/16 89/2 89/13
Peachtree [1]  2/7
pending [8]  15/22 50/2 62/2 63/5 63/14
  63/23 106/20 163/20
people [41]  5/23 7/13 41/20 44/12 46/20
  55/21 62/13 64/4 71/16 83/7 84/14
  84/23 85/13 85/18 85/19 86/3 86/12
  91/3 97/1 102/18 102/19 102/20 106/7
  109/8 109/15 110/11 111/4 115/4
  121/11 121/12 121/21 122/4 122/19
  123/13 123/20 124/3 124/9 125/1 138/6
  139/17 151/18
people's [1]  114/2
per [6]  29/23 60/13 61/8 61/9 71/17 74/7
per se [1]  71/17
percent [11]  66/7 70/3 70/10 70/11
  70/15 70/16 70/18 71/25 72/1 72/5
  149/12
peremptories [1]  124/8
peremptory [3]  123/16 124/11 124/18
performance [2]  40/14 40/18
perhaps [2]  119/21 120/3
period [5]  109/13 120/1 132/16 137/19
  154/14
periods [1]  9/2
permanent [1]  30/24
permanently [1]  44/8
permission [1]  85/24
person [17]  44/1 67/24 81/4 82/5 83/19
  86/23 106/5 107/19 110/5 110/6 111/18
  112/21 116/3 121/19 126/16 142/22
  148/14
personal [2]  128/1 148/5
personally [1]  126/8
perspective [8]  38/17 78/13 79/7 126/15
  129/21 129/22 129/25 145/18
phase [1]  153/22
Phelps [1]  2/22
Philip [3]  8/3 62/22 150/7
Philip's [1]  151/25
Phillips [1]  2/22
phone [1]  131/7
phonetic [1]  143/25

physical [1]  115/2
physically [1]  104/6 118/8
pick [9]  8/25 9/4 9/11 12/25 24/22
  121/21 121/25 122/9 131/7
picture [1]  25/2
pizza [1]  164/2
place [9]  13/1 16/10 39/18 41/23 126/7
  130/2 136/11 146/15 161/6
placed [1]  154/21
plaintiff [19]  5/13 6/20 13/9 36/3 36/5
  43/16 48/13 48/14 50/24 81/6 96/2
  101/10 101/18 118/25 119/23 120/10
  123/17 133/21 148/9
plaintiff-specific [1]  13/9
plaintiffs [130]  2/2 2/6 2/9 2/12 2/15 2/19
  2/23 4/9 4/11 4/12 4/14 4/16 4/18 5/13
  5/13 5/16 5/17 6/12 6/25 7/3 7/6 8/10
  8/20 9/10 9/11 10/6 10/13 11/1 11/2
  11/7 11/13 11/14 11/24 12/1 12/5 12/25
  13/2 13/10 15/1 15/2 15/3 15/20 18/1
  18/21 29/3 29/7 29/15 30/12 30/14
  30/15 30/21 31/19 31/23 32/1 33/4 33/7
  33/11 34/25 35/6 35/12 35/20 36/2 37/5
  38/11 38/13 39/22 40/19 41/25 42/2
  42/11 44/22 47/9 47/17 47/23 48/12
  50/18 50/19 51/21 52/5 52/6 52/25 53/13
  53/19 79/16 79/17 80/13 82/12 89/6
  90/7 103/12 104/5 106/22 106/25 119/6
  119/7 119/15 124/12 125/14 129/12
  129/22 129/25 130/19 130/21 130/23
  131/6 131/10 131/12 131/17 131/24
  132/12 132/18 132/19 132/20 132/23
  133/2 133/21 134/20 137/7 138/21
  139/22 147/3 147/12 148/21 148/24
  149/2 151/6 159/25 160/14 160/20
  161/1 161/8
plaintiffs' [9]  7/4 14/1 32/11 48/3 94/5
  118/19 118/21 129/4 133/22
plan [8]  15/10 42/9 62/11 82/9 86/23
  88/23 119/25 125/7
planning [4]  42/12 81/11 82/11 121/19
play [2]  79/2 110/19
players [2]  139/20 142/20
playing [1]  74/16
plead [1]  45/4
pleadings [2]  56/12 56/16
please [2]  108/2 130/11
pled [1]  30/13
plus [5]  118/24 119/15 121/20 123/24
  124/1
point [40]  20/12 25/22 29/9 38/9 39/10
  39/15 40/3 40/8 46/6 46/16 48/13 56/3
  60/25 61/19 63/11 63/15 65/14 73/18
  87/19 88/8 89/25 93/6 100/6 100/15
  108/24 111/4 113/1 113/11 121/13
  126/13 126/25 127/2 128/16 129/13
  130/24 131/24 133/8 155/11 155/13
  158/17
pointed [1]  40/2
pointing [1]  61/10
points [4]  26/9 92/10 114/25 115/5
Pol [5]  32/18 38/11 45/15 149/1 149/4
policy [15]  23/24 23/25 23/25 23/25 24/9
  24/13 24/17 25/3 37/9 41/5 41/8 41/13
  41/17 42/9 46/5
PONNAYAN [1]  1/14
portion [2]  56/14 109/14
portions [1]  110/19
position [40]  17/25 18/4 20/2 22/19
  22/23 23/11 23/15 27/4 32/16 42/7
  47/12 52/17 52/24 65/23 67/3 74/3
  76/20 77/21 78/1 80/20 80/23 80/24
  81/20 87/1 88/18 89/6 94/5 94/5 94/6

# P

position... [11] 96/18 105/2 110/9 119/14
126/12 126/24 127/2 139/1 140/11
141/11 162/9
positions [1] 130/8
possession [1] 72/19
possibility [2] 78/10 105/18
possible [9] 57/11 64/23 66/16 87/6 88/9
94/17 147/1 151/19 163/2
possibly [2] 10/24 130/16
post [5] 3/12 155/20 156/18 156/19
161/1
posture [1] 134/14
postured [1] 162/3
potential [3] 104/15 125/15 135/18
potentially [5] 74/3 91/8 91/17
Poverty [4] 2/6 2/9 4/10 4/13
power [4] 32/13 43/19 110/14 111/2
powerhouses [1] 93/23
Poydras [2] 3/9 3/20
practical [2] 131/14 159/2
practice [6] 49/18 55/8 55/9 91/15 100/7
100/9
preceded [1] 161/17
precedent [1] 19/16
preclude [1] 17/2
predicate [2] 100/2 100/4
preferrable [1] 140/16
prefers [1] 140/17
premature [3] 14/13 50/23 51/24
prenegotiate [1] 130/3
preparation [2] 16/20 140/14
prepare [1] 140/17
prepared [3] 87/5 109/20 141/15
preparing [1] 94/10
present [3] 54/15 82/10 118/25
presentation [3] 119/19 141/17 148/11
presented [1] 114/13
presents [1] 73/2
presidential [1] 12/7
presumably [1] 109/23
pretends [1] 130/8
pretrial [27] 49/18 61/14 87/13 89/10
90/12 90/18 90/19 90/23 91/7 92/15
94/1 94/10 106/13 106/17 109/11
111/10 111/15 111/16 112/8 113/10
113/13 113/21 113/24 115/9 125/11
128/11 163/22
pretty [5] 27/6 45/21 85/16 131/5 149/1
prevail [3] 13/17 14/15 46/8
prevails [1] 135/21
previous [1] 12/13
previously [1] 75/21
principles [1] 52/3
printed [1] 90/5
printed-out [1] 90/5
printout [1] 117/25
prior [2] 91/1 162/1
private [16] 70/22 70/24 125/19 138/1
140/3 140/19 146/6 146/9 146/12
149/23 150/6 151/6 151/9 151/12 152/9
164/13
privilege [30] 65/2 67/12 67/14 69/9 73/5
73/6 73/10 73/11 74/5 74/13 74/15
74/18 74/19 74/21 74/24 74/25 75/4
75/4 75/5 75/6 75/7 75/21 75/24 76/4
77/12 78/23 79/6 79/8 153/17 153/18
privileged [9] 16/2 16/16 67/5 67/7 67/9
72/18 72/25 74/4 76/3
privileges [2] 74/9 74/10
probably [15] 10/17 60/2 62/6 78/9
81/17 83/17 93/6 112/21 122/9 127/12

128/5 136/22 142/21 143/5 163/10
probably... [2] 27/24 65/9
problem... [5] 27/3 63/21 131/14
112/14 128/7 128/8 131/22
problematic [1] 162/19
problems [4] 80/7 82/16 104/22 153/13
Procedure [2] 56/17 76/4
proceedings [4] 3/23 4/1 164/16 164/21
process [11] 43/16 48/5 72/13 73/9 85/21
93/1 93/2 93/20 95/5 145/11 154/4
processing [1] 44/23
produce [2] 64/4 64/5
produced [9] 65/22 67/10 68/11 77/9
77/11 77/17 153/16 153/18 160/1
producing [1] 64/20
production [9] 95/7 55/12 73/1 77/2
88/11 113/5 153/14 160/4 161/1
Professor [1] 40/21
profile [1] 122/17
program [1] 88/12
progress [1] 142/4
prohibitive [2] 104/2 150/17
promise [15] 30/15 30/24 30/24 31/4
32/21 36/8 36/9 43/14 43/18 43/18
43/20 44/15 46/12 149/12 151/21
promised [2] 43/13 158/6
promises [4] 32/20 35/11 43/15 158/11
prompted [1] 138/23
pronounce [1] 40/23
property [1] 57/25
proposal [1] 94/18
propose [2] 89/21 143/6
protection [2] 98/2 136/2
protective [5] 15/25 16/9 64/2 64/4
155/8
provide [4] 21/3 56/15 57/1 74/12
89/18 90/4 116/10 116/12 117/4 161/25
provided [3] 16/3 16/7 21/2
provides [1] 61/3
proving [1] 21/23
provisions [4] 17/9 20/6 36/19 96/17
public [27] 23/24 23/24 23/25 23/25 24/8
24/13 24/17 24/24 25/3 37/9 41/5 41/8
41/13 41/16 42/9 46/5 113/19 134/16
135/12 135/14 135/15 135/16 135/18
135/20 135/22 136/11 136/11
publicity [1] 122/22
publicize [1] 135/17
Publishing [1] 107/20
pull [2] 108/18 118/9
punitive [3] 21/20 21/25 22/13
purposes [3] 7/3 106/3 162/2
pursuant [4] 7/15 7/17 73/6 126/4
pursue [1] 127/1
pursuing [1] 30/23
pushing [1] 75/12
put [54] 5/18 9/4 9/20 9/21 12/18 13/1
14/3 14/4 14/14 14/20 14/21 15/5 20/1
20/17 29/6 46/6 48/18 48/21 53/23 78/8
82/11 84/1 85/4 87/1 89/23 90/12 92/5
94/4 94/5 96/18 104/4 106/9 109/25
110/3 111/6 111/14 111/19 111/23
112/15 115/8 115/13 115/15 119/5
119/6 120/1 120/21 122/12 123/23
136/6 139/4 140/9 147/15 160/20 163/5
puts [3] 96/11 110/8 147/22
putting [2] 73/24 156/1

# Q

quantum [1] 49/19
quash [2] 66/19 73/23
question [29] 12/22 17/5 17/11 20/16
23/16 23/23 24/6 24/9 24/17 25/3 29/7
33/24 37/3 37/7 37/25 40/4 41/5 41/11

42/14 49/17 49/18 85/18 111/2 118/18
question... [4] 50/14 96/14 98/1 151/13
questioned [1] 95/9
questionnaire [3] 93/12 122/13 122/24
questionnaires [1] 122/19
questions [10] 6/7 103/20 103/21 123/3
123/4 123/5 123/7 123/11 162/2 162/24
quickly [4] 10/11 149/1 150/24 152/4
quite [2] 64/23 82/3

# R

RABBANI [3] 3/8 5/9 46/14
raging [1] 50/6
raise [2] 33/24 152/3
raised [4] 109/7 113/1 129/2 163/20
Ralph [1] 114/14
RAPTIS [4] 2/23 8/15 132/18 141/22
rare [1] 147/20
rather [10] 52/15 59/14 73/12 95/13
112/3 127/4 128/3 132/4 132/22 134/21
ratification [2] 39/4 46/18
ratified [2] 38/22 38/23
reach [5] 100/11 111/17 132/20 134/24
135/2
reached [1] 133/8
reaching [2] 132/19 133/1
read [11] 18/9 18/11 19/7 21/16 21/16
65/21 75/22 100/20 101/17 108/3 115/6
readable [1] 90/14
reading [1] 109/1
reads [1] 30/13
ready [3] 10/19 127/25 142/9
real [3] 85/18 86/17 131/16
real-time [1] 131/16
reality [1] 134/1
realized [1] 15/4
really [36] 14/18 18/19 20/20 21/7
24/15 44/19 47/24 48/6 48/17 56/19
61/12 63/12 69/5 80/6 81/7 84/10 87/2
91/9 91/16 91/22 92/2 93/19 102/20
102/20 112/17 113/18 119/15 119/24
127/8 132/14 132/14 132/15 148/15
150/13 152/4 164/12
reason [11] 23/17 23/22 52/1 52/8
104/17 132/21 133/4 148/10 151/17
152/7 156/22
reasonable [4] 92/20 100/22 120/19
120/21
reasons [6] 9/8 17/15 25/1 104/10
128/23 164/14
rebuttal [1] 119/9
recall [5] 22/14 52/19 55/24 78/3 145/1
receive [1] 22/10
received [3] 22/9 36/6 160/13
recent [1] 6/2
recently [1] 21/19
Recess [1] 107/17
reclaim [1] 157/24
recognized [1] 43/6
recognizes [1] 154/22
recollection [1] 156/17
recommend [3] 131/9 141/5 151/1
recommendation [3] 131/20 149/2 149/5
recommendations [1] 149/8
record [15] 15/5 43/10 44/11 45/12
45/13 63/18 76/23 76/24 77/4 109/2
114/24 115/6 151/8 157/7 164/21
recorded [1] 3/23
recording [2] 105/19 105/20
records [2] 108/13 108/18
recruited [1] 39/1
recruiters [1] 32/17
rectify [1] 72/13

**R**

redact [1]  74/5
redaction [1]  163/1
redactions [1]  68/1
reduced [2]  30/6 36/10
refer [2]  15/20 31/20
referenced [1]  35/16
referred [2]  40/21 162/5
referring [2]  30/11 44/17
refers [1]  30/16
refile [1]  59/7
refiled [1]  63/6
refused [1]  132/7
regard [5]  37/23 39/22 72/19 72/24 91/6
regarded [1]  13/8
regarding [3]  14/21 58/1 61/5
regional [1]  147/1
regular [2]  9/1 61/13
reject [1]  152/6
related [7]  1/8 1/13 68/16 69/8 73/3
 103/4 155/2
relationship [4]  37/19 66/25 67/1 78/6
relatively [1]  150/24
relevance [1]  157/17
relevant [4]  36/24 48/3 156/14 156/23
reliance [2]  157/19 157/25
relied [1]  46/21
relieve [2]  100/14 128/14
rely [4]  42/24 55/21 55/22 106/7
remaining [3]  6/11 11/14 49/4
remedy [3]  76/23 77/15 135/18
remember [13]  15/9 19/8 21/25 22/13
 47/23 49/15 57/16 79/24 80/22 81/12
 81/21 141/10 163/5
remembered [2]  47/21 47/24
remind [2]  8/19 49/16
removed [1]  104/3
rep [2]  160/5 161/1
repetitive [1]  120/11
replace [1]  124/2
replies [4]  60/13 61/8 61/11 61/21
reply [5]  61/3 61/25 62/1 62/2 62/18
report [7]  20/17 20/19 21/3 21/4 22/8
 28/8 28/13
reporter [6]  3/20 116/4 117/14 117/17
 164/19 164/24
reporters [1]  115/22
reports [8]  6/17 6/21 13/9 14/1 14/1
 14/19 96/7 163/16
represent [4]  4/7 8/19 107/25 108/3
representation [2]  31/13 76/18
representations [3]  33/1 38/24 69/7
representative [8]  69/20 79/18 112/6
 141/7 141/13 144/20 147/5 148/9
representatives [1]  148/20
represented [5]  15/17 40/8 66/23 67/19
 149/21
representing [2]  4/9 111/13
represents [1]  8/5
reproduced [1]  153/22
reps [2]  147/9 160/6
request [8]  55/7 55/12 62/2 62/14 65/12
 94/18 110/5 121/24
requested [1]  73/18
requesting [3]  62/15 62/15 128/13
requests [1]  78/13
require [4]  70/14 91/2 106/9 136/10
required [1]  55/16
requirement [1]  128/14
requirements [1]  21/23
research [2]  20/20 93/25
reserve [1]  86/10

reserved [1]  142/1
reset [1]  62/22
residency [1]  30/24
resistance [1]  149/3
resolution [2]  91/12 94/19
resolve [6]  11/10 54/20 65/4 131/2
 140/6 151/16
resolved [3]  21/3 37/11 63/21 79/3
 103/23 132/15 134/14
resolving [2]  38/1 133/25
resources [1]  127/1
respect [15]  37/2 40/14 44/18 50/16
 53/22 58/22 60/23 79/14 100/1 101/13
 106/22 106/24 113/3 126/8 127/23
Respectfully [1]  116/23
respond [14]  28/14 38/18 39/9 43/8 43/9
 51/18 55/17 57/17 59/1 59/11 66/18
 75/17 80/2 159/1
responded [3]  38/7 77/3 139/6
responding [1]  46/5
response [8]  24/25 55/12 55/13 59/10
 59/14 64/21 69/7 129/2
responses [2]  60/21 68/14
responsive [1]  65/23
rest [1]  48/16
restate [1]  140/10
resubmitted [3]  58/25 59/15 60/23
resubmitting [1]  60/17
result [1]  65/3
results [1]  162/4
retaliation [3]  48/22 101/10 106/25
reteach [2]  126/20 127/4
retired [1]  145/17
returning [1]  148/1
reverse [1]  155/15
review [1]  153/18
reviewed [5]  73/4 73/5 73/9 73/10 137/1
reviewing [3]  16/4 16/15 65/2
revising [1]  94/14
revisiting [2]  49/14 101/2
Richard [1]  110/17
RICO [4]  99/8 99/24 100/5 102/8
rid [1]  98/8
ridiculous [1]  97/7
right [73]  6/20 7/20 12/12 13/18 13/23
 17/12 17/14 18/16 18/20 26/24 27/9
 27/12 29/16 29/18 29/20 30/7 33/9
 33/19 35/1 35/23 36/1 37/15 47/2 48/25
 50/25 51/22 52/6 52/17 53/6 57/16 59/3
 59/18 59/23 60/4 60/10 61/7 62/25
 65/11 70/16 71/7 71/10 74/9 74/9 74/12
 78/3 78/6 80/1 80/25 85/22 91/3 91/24
 93/6 96/17 96/20 99/19 100/12 100/15
 105/19 106/21 107/2 107/6 108/7
 108/11 117/8 120/15 121/14 124/21
 147/17 150/17 156/12 160/17 161/7
 162/5
Rights [1]  101/24
rings [1]  58/9
ripe [1]  52/5
rise [2]  14/11 17/10
rises [1]  37/18
risk [1]  44/10
Rivera [2]  155/22 157/9
road [1]  24/19
Robinson [1]  116/5
role [1]  95/11
Ron [2]  106/23 107/7
room [9]  3/20 85/12 86/2 86/14 118/10
 118/15 142/7 145/7 148/11
rotate [1]  84/8
routine [1]  113/6
ROUX [2]  3/7 5/3

row [1]  85/5
rows [1]  80/6
RSA [63]  65/13 65/14 65/24 65/24 66/4
 66/4 66/12 66/13 66/15 66/18 66/22
 66/25 67/1 67/2 67/9 67/10 67/19 67/24
 68/17 68/18 69/14 69/18 69/22 69/24
 70/10 71/9 71/15 71/16 71/16 71/17
 72/9 72/17 73/1 73/3 73/4 73/4 73/9
 73/14 73/18 73/20 74/10 74/12 74/16
 74/20 74/22 75/2 75/7 75/15 76/5 76/8
 77/2 77/4 77/6 77/17 78/12 78/12 78/25
 79/1 141/8 141/11 143/12 143/13 163/1
RSA's [5]  67/3 72/10 74/1 77/23 78/6
rubric [1]  132/12
rude [1]  143/10
ruin [1]  152/1
ruins [1]  151/25
rule [12]  13/14 17/15 17/16 20/18 34/15
 41/7 52/13 56/14 109/16 127/15 138/8
 157/8
Rule 26 [1]  157/8
ruled [6]  27/22 62/3 156/8 156/15
 156/18 157/4
rules [12]  16/25 17/3 17/18 17/20 20/18
 24/21 39/15 52/7 56/15 56/17 76/4
 79/10
ruling [1]  156/10
rulings [2]  64/3 155/6
run [1]  87/8
running [4]  115/22 116/1 117/16 117/24
rush [1]  12/25
Rydberg [1]  3/6

**S**

Sabulal [2]  49/7 49/8
said [62]  12/9 17/12 17/14 17/17 21/20
 30/23 31/3 33/11 34/19 40/7 42/25 43/2
 45/7 45/7 45/11 45/24 45/25 47/8 48/1
 50/25 51/24 55/11 55/22 56/1 57/5 59/9
 61/17 61/18 62/22 66/10 67/15 67/20
 68/2 75/14 75/17 87/11 92/23 93/15
 98/14 98/18 102/9 110/10 117/23 119/7
 129/5 129/9 136/2 137/18 140/5 142/9
 145/8 146/8 148/10 155/18 155/22
 156/16 157/3 157/8 157/9 158/10
 158/23 162/14
sailed [1]  105/10
sale [1]  57/24
same [28]  13/14 27/6 33/8 33/10 52/23
 55/8 56/5 67/15 73/19 75/12 76/8 77/18
 78/15 81/4 89/6 89/7 89/7 90/7 90/9
 97/1 108/23 120/12 124/13 139/19
 148/10 153/24 161/24 162/23
sanction [2]  56/11 56/13
sanctions [6]  53/12 53/24 54/10 58/1
 58/5 77/1
SANDLER [2]  2/3 5/15
sat [1]  145/9
satisfied [1]  28/23
satisfy [1]  28/12
saw [2]  21/17 96/9
say [83]  4/7 10/12 15/14 16/1 17/13
 18/23 24/21 24/22 25/4 27/13 27/14
 27/16 28/10 29/15 30/14 30/25 31/2
 31/2 31/13 32/9 32/20 34/9 36/19 40/11
 44/9 44/10 44/23 44/24 45/7 45/16
 45/17 45/20 46/25 47/5 47/9 51/6 51/15
 52/6 57/4 57/23 66/5 67/16 68/7 69/16
 71/10 76/7 76/9 77/8 77/19 81/17 94/1
 96/16 97/17 97/18 98/11 98/13 107/25
 108/4 109/14 111/12 111/22 112/11
 115/11 115/24 118/23 120/20 123/9
 124/3 127/12 140/23 141/10 141/18

say... [11]  142/5 143/4 143/11 148/22
149/11 150/2 156/4 157/11 158/6 159/6
161/15
saying [35]  24/11 25/17 25/18 26/3
26/18 36/15 38/25 44/21 45/16 57/2
61/17 73/23 78/5 78/7 78/12 78/22
81/10 92/13 98/14 98/15 99/10 104/20
107/4 117/12 119/5 120/14 131/21
133/6 133/23 136/9 136/19 139/21
158/3 158/18 159/3 159/7 159/15
says [24]  10/1 30/20 32/5 33/13 39/17
40/10 43/14 43/18 44/25 45/18 56/25
68/4 70/3 75/7 77/4 78/7 90/25 106/18
114/4 137/3 137/8 137/10 137/13 138/9
scanned [1]  90/1
schedule [4]  7/5 8/23 61/11 144/16
scheduled [3]  7/15 7/18 8/13
scheduling [18]  6/1 6/4 6/22 7/5 9/1 9/6
13/24 14/4 14/6 14/8 14/15 15/21 59/24
60/14 61/3 61/8 61/9 164/9
scheme [1]  153/10
Schnorr [1]  48/8
Scholer [2]  10/8 79/25
school [1]  9/23
scope [1]  66/11
scream [1]  34/19
screams [2]  92/23 144/17
screen [4]  87/20 87/24 105/20 122/20
screening [1]  122/15
screens [2]  83/15 87/21
se [1]  71/17
seal [1]  57/25
sealed [1]  136/1
searched [1]  79/16
searching [1]  108/13
seat [1]  4/3
seating [2]  85/17 85/22
second [3]  7/17 34/5 146/4
secondary [1]  73/2
Section [3]  1/6 1/11 1/18
security [5]  70/19 71/2 71/4 71/21 72/2
see [40]  6/2 6/10 10/2 10/5 10/22 13/6
13/24 14/3 15/22 18/9 21/24 24/13 50/8
51/11 68/15 73/4 73/6 76/11 87/2 87/25
88/1 88/17 89/20 89/22 105/23 108/19
113/11 113/23 121/15 126/18 134/4
134/12 137/14 137/15 144/17 145/4
149/18 150/19 152/17 154/8
seek [1]  157/13
seeks [1]  154/16
seem [2]  19/23 22/14
seemed [6]  6/12 21/16 91/8
seems [10]  10/17 21/5 23/10 23/14
63/11 73/3 77/16 85/18 125/5 142/2
seen [4]  19/21 83/5 136/15 136/17
sees [1]  87/21
segue [1]  93/3
selected [1]  16/14
sell [2]  157/21 157/21
semicolon [1]  103/9
send [14]  8/12 9/1 9/5 56/22 82/25 83/1
106/8 118/7 137/13 146/3 150/7 150/7
151/11 154/11
senior [1]  141/13
sense [15]  9/13 23/3 40/16 40/20 67/12
70/6 72/7 82/4 83/25 86/10 92/16 98/16
102/20 130/3 159/11
sensible [2]  23/11 23/15
sent [6]  6/1 16/14 88/8 108/15 136/22
136/23 137/12 137/18 138/5 143/6
separate [11]  6/8 37/22 61/20 72/6

72/10 75/8 75/13 81/5 103/11 145/2
147/20
separately [5]  25/10 25/21 25/22 32/19
102/16
September [3]  11/17 11/22 11/23
September 12 [1]  11/23
September 5 [1]  11/22
sequential [2]  117/16 118/2
serious [3]  97/19 134/21 151/18
serve [3]  6/17 66/11 163/15
served [5]  64/21 66/3 66/8 66/12 93/6
services [3]  32/3 32/4 33/11
servitude [4]  98/25 99/2 99/4 99/5
sessions [1]  141/16
set [24]  4/4 9/12 10/21 11/3 11/12 35/11
43/10 46/10 53/15 60/1 60/3 68/8 68/19
93/17 95/14 96/16 118/19 118/24
125/10 132/8 132/8 153/14 163/22
163/23
sets [1]  68/19
setting [1]  6/11
settle [5]  127/24 130/20 134/16 144/20
151/24
settlement [25]  125/16 126/3 126/7
127/3 127/20 128/3 128/14 129/18
130/19 130/25 131/1 131/9 132/13
133/17 133/18 137/6 137/7 139/6
139/25 141/1 144/19 145/3 146/25
147/2 151/18
settling [3]  134/12 134/24 135/1
seven [6]  6/12 11/14 49/4
sever [1]  49/13
several [2]  109/22
severing [1]  49/19
Shaji [1]  7/17
shall [1]  43/16
SHAPIRO [5]  3/14 4/22 20/3 46/25
104/9
Shapiro's [1]  20/16
share [4]  105/13 150/11 152/13 164/4
shared [1]  134/17
shareholder [4]  69/25 70/16 70/20 141/8
shareholders [1]  70/25
shares [2]  71/6 78/14
Sharma [2]  22/12 22/12
she [15]  70/3 75/14 76/10 77/20 79/8
81/13 87/11 87/11 100/10 107/21
108/21 123/17 126/23 136/9 140/24
she'll [1]  77/20
ship [1]  105/10
Shore [1]  121/12
short [1]  132/15
shortly [1]  66/20
shot [1]  138/11
should [34]  6/5 7/1 11/2 16/16 22/8
40/14 40/18 52/1 62/6 63/6 69/8 72/12
75/7 92/10 93/15 93/17 96/3 105/11
112/7 114/7 122/9 123/5 126/16 130/3
137/11 139/16 142/14 142/19 147/4
156/6 158/4 159/16 163/24 164/5
shouldn't [4]  57/22 72/11 133/3 141/12
show [12]  28/23 42/19 63/4 94/21
110/21 132/7 133/18 134/13 134/21
134/22 135/1 142/10
showed [1]  131/3
showing [4]  12/22 12/23 104/13 135/1
shown [3]  19/12 132/9 132/10
shows [2]  42/20 138/15
shuttle [1]  141/16
sick [1]  122/10
side [6]  83/6 127/7 127/7 135/5 148/11
152/6
sides [3]  47/2 47/4 140/12

SIG [4]  153/14 153/19 153/21 153/22
SIG-E [2]  153/8 153/9
SIG-P [1]  153/21
sight [1]  127/11
sign [7]  32/9 36/18 132/23 133/12 137/7
162/8 163/12
sign-off [2]  132/23 133/12
SIGNAL [223]
Signal's [28]  31/9 31/12 31/18 37/12
38/15 38/16 38/17 44/11 57/24 58/1
58/24 62/1 65/22 66/4 69/7 69/16 71/8
71/17 72/17 73/11 79/7 88/18 110/12
125/24 126/12 126/24 134/23 140/10
Signal/RSA [1]  163/1
signals [2]  65/20 142/8
signature [1]  38/20
signed [20]  29/24 30/1 30/12 31/1 31/18
31/25 32/7 32/8 32/12 33/3 33/11 35/5
35/24 38/11 39/10 39/13 39/25 62/7
68/13 107/5
significant [2]  22/4 42/18
silly [1]  142/2
similar [6]  20/23 20/25 21/1 31/24 35/8
102/18
similarities [1]  20/13
simplified [2]  46/8 97/6
simply [2]  20/6 78/22
since [13]  18/11 19/7 23/11 24/22 43/5
48/16 59/15 90/1 110/7 124/25 126/3
163/24 164/5
Singh [3]  63/2 63/7 163/20
sit [11]  36/15 67/24 71/16 72/17 86/13
108/7 108/9 117/20 118/9 123/14
148/17
sitting [6]  56/21 84/6 85/21 130/7 133/7
145/7
situation [8]  36/18 44/11 69/24 71/5
72/14 85/24 107/21 133/24
six [9]  57/18 58/8 102/19 119/15 119/18
121/22 122/3 122/11 124/19
Skadden [2]  2/19 4/17
Slate [1]  2/19
slavery [1]  99/2
slipping [1]  108/2
small [2]  6/16 88/1
smoothly [1]  87/5
snacks [1]  118/11
so [249]
software [2]  3/24 83/13
Solimon [1]  105/12
some [117]  7/7 11/6 11/12 11/19 12/23
12/24 14/10 20/13 21/23 26/8 28/15
29/2 31/2 31/2 33/15 34/12 36/10 36/24
38/2 40/12 41/21 47/25 50/20 52/8
52/22 53/4 64/19 64/20 65/3 66/10
66/25 67/11 67/13 68/8 68/12 74/6 74/9
74/10 74/22 74/23 75/23 76/2 79/21
80/4 80/7 84/16 85/4 85/25 86/5 87/19
88/11 88/11 89/4 91/3 92/2 94/19 94/19
96/11 96/17 97/17 97/19 100/3 100/7
100/9 100/10 100/14 102/9 104/21
105/14 106/20 109/7 113/25 114/12
114/25 114/25 115/4 116/11 116/17
118/1 118/21 119/10 121/13 122/15
124/7 124/8 124/18 125/9 125/12
125/18 126/1 126/8 126/10 130/21
131/23 132/3 134/9 134/20 136/2
137/15 138/6 139/10 141/14 141/15
145/25 148/24 149/3 150/15 151/25
153/23 155/6 156/11 160/20 160/24
161/14 161/15 163/11 164/10
somebody [15]  49/15 51/15 71/3 75/21
76/5 78/22 97/15 106/3 108/20 112/11

**S**

somebody... [5]  122/10 127/8 148/7
148/13 150/12
somebody's [1]  115/18
somehow [5]  38/13 38/19 38/19 159/7
159/10
someone [7]  63/1 84/3 110/4 126/8
127/4 127/23 145/13
something [38]  4/20 20/1 23/19 27/15
34/16 34/20 38/2 39/6 46/25 54/6 54/18
56/21 57/6 62/8 62/15 62/17 62/23
67/15 87/2 93/7 113/18 120/2 120/7
124/19 124/24 127/15 127/19 131/18
134/12 137/14 139/2 141/4 143/6
145/16 147/16 149/4 154/10 162/17
something's [1]  148/7
sometime [2]  94/24 106/4
sometimes [7]  74/16 87/25 92/1 95/1
97/1 121/15 145/14
somewhat [1]  35/10
somewhere [3]  8/21 128/2 159/10
sooner [2]  132/22 132/25
sorry [8]  8/17 18/25 65/10 70/23 80/21
99/11 119/4 126/22
sort [7]  24/9 49/12 67/2 69/5 75/22
130/7 154/3
sought [2]  61/25 73/1
sounds [1]  67/19
source [1]  115/6
South [1]  3/4
Southern [4]  2/6 2/9 4/10 4/13
space [2]  83/4 85/4
speak [8]  54/22 80/14 84/3 126/23
129/23 131/7 138/22 147/8
speakers [1]  148/17
speaking [3]  34/13 129/21 129/24
speaks [2]  80/14 81/6
special [1]  7/23
specific [14]  13/9 23/22 26/22 37/8
52/24 53/2 54/2 56/10 102/14 103/12
109/9 113/21 138/24 140/9
specifically [6]  42/25 55/24 99/1 107/24
108/3 130/21
specifics [1]  74/25
specifies [1]  40/9
specify [1]  27/5
speculate [1]  27/2
speed [1]  51/14
spend [4]  97/8 130/4 140/20 145/20
spending [1]  141/24
spent [2]  140/14 142/9
sponsor [3]  31/8 33/12 43/16
sponsorship [1]  158/16
spots [1]  36/17
spread [1]  147/7
St [3]  2/10 2/17 3/9
stage [3]  21/8 21/13 113/9
stages [1]  21/6
stake [1]  77/23
stamp [2]  67/10 77/10
stamped [2]  68/12 114/4
stand [3]  86/24 112/4 156/13
standard [2]  95/15 96/1
standpoint [1]  156/14
stands [1]  126/2
start [17]  5/22 10/2 11/23 12/20 12/24
12/24 85/20 93/1 93/10 94/3 94/9 95/25
120/24 124/3 151/12 163/25 164/4
started [6]  4/4 12/13 12/13 52/9 72/12
102/15
starting [1]  125/8
starts [2]  94/11 105/4

state [20]  23/3 23/5 25/14 27/5 27/6
27/7 27/11 27/22 27/23 27/24 32/5
32/6 32/9 39/20 39/24 69/21 103/17
125/13 139/7
stated [1]  128/24
statement [6]  21/11 21/12 34/16 53/25
141/19 162/23
statements [9]  55/20 55/22 75/22 91/10
94/20 125/7 125/10 136/11 162/1
states [2]  1/1 1/23 20/8 27/20 27/24
31/1 35/21 41/22 41/23 42/4 42/15
42/17 42/22 43/1 44/9 45/8 46/17 73/12
148/3 158/23 159/12 164/19
stating [1]  137/2
status [1]  1/22 6/5 9/16 11/10 16/6
64/8 69/7 72/9 73/22 76/9 108/10 128/9
138/17 163/21 163/23
statute [2]  19/23 19/24
statutory [1]  22/5
stay [4]  34/3 44/24 45/8 121/1
stayed [1]  156/5
staying [4]  98/6 99/25 101/9 103/19
stays [3]  101/25 102/7 162/14
stenography [1]  3/23
step [2]  24/19 28/12
STEPHEN [2]  2/23 3/14
steps [1]  139/9
STEPTOE [1]  3/3
Steve [6]  4/22 88/9 93/18 105/11 124/16
132/18
Steven [2]  8/15 8/19
STEWART [3]  2/10 5/12 8/7
stick [1]  18/13
sticker [1]  115/17
still [11]  39/1 48/2 62/2 63/4 70/25
101/14 105/9 106/10 138/19 152/18
158/10
stipulate [2]  91/18 92/7
stipulated [1]  92/11
stipulations [1]  92/2
stock [8]  71/4 71/6 71/13 71/13 71/18
71/21 71/23 71/24
stop [1]  46/1
story [1]  120/10
straight [3]  29/1 43/10 94/7
streamline [1]  159/1
Street [7]  2/7 2/20 2/23 3/4 3/9 3/15
3/20
stress [1]  63/20
stretched [1]  93/19
stretching [1]  94/14
strike [4]  56/12 61/2 92/21 123/16
strike-backs [1]  123/16
strongly [2]  129/13 151/9
struck [1]  56/17
stuff [7]  10/20 63/12 67/15 67/16 67/21
75/23 93/13
subdivide [1]  40/23
subject [3]  16/9 102/10 110/14
subjected [1]  69/18
submission [9]  59/22 60/2 60/12 60/15
61/2 61/10 61/13 61/18 91/11
submit [5]  13/11 28/7 90/22 150/21
162/7
submitted [9]  13/13 19/14 19/22 50/2
53/7 53/12 57/25 58/2 123/7
subpoena [25]  64/21 65/13 65/24 66/3
66/9 66/9 66/11 66/12 66/15 66/18
66/22 69/23 72/16 72/19 72/21 72/22
72/24 73/1 73/4 77/3 110/14 110/22
111/2 111/8 163/1
subpoenas [1]  106/8
subsequent [2]  72/4 139/10

subsequently [1]  73/5
substantial [1]  114/22
Substantially [1]  88/24
substituting [1]  48/13
succeed [1]  145/20
success [1]  126/10
successful [1]  150/13
such [6]  80/7 88/11 109/9 115/25
116/20 116/20
such-and-such [1]  116/20
suffered [1]  158/1
sufficient [4]  75/25 78/24 79/22 157/24
suggest [4]  76/25 138/13 139/2 139/17
suggested [7]  66/24 88/14 125/21
125/25 140/1 141/4 141/6
suggesting [2]  133/7 138/18
suggestion [2]  94/18 138/25
suggestion/request [1]  94/18
suggestions [2]  146/1 152/9
suggests [2]  76/23 134/11
suing [1]  35/14
suit [1]  147/4
Suite [5]  2/7 2/10 2/17 3/4 3/9
summary [19]  16/18 31/10 32/15 34/2
34/15 38/3 39/2 46/9 48/21 50/1 50/10
58/22 91/11 97/14 97/17 100/7 100/9
101/13 102/17
Sunday [3]  10/2 12/22 12/24
supplemental [8]  28/11 51/7 160/1 160/4
160/12 160/20 160/22 161/16
supplementals [1]  161/13
support [1]  55/6
supports [1]  55/3 119/14
supposed [4]  66/18 91/9 106/18 142/12
supposedly [1]  46/20
Supreme [3]  19/17 158/23 159/13
Supreme Court [3]  19/17 158/23 159/13
sure [35]  4/5 10/10 15/12 22/15 26/20
27/9 27/12 29/1 33/17 36/15 58/12
71/10 79/15 84/5 84/8 86/8 86/11 87/4
88/22 89/1 90/6 91/21 93/23 97/16
107/15 108/24 114/10 126/2 126/14
138/7 152/15 155/19 160/16 161/18
164/14
surprised [2]  127/16 162/15
SUSIE [1]  1/23
suspect [1]  161/12
switch [1]  82/4
switching [1]  82/1
sworn [1]  162/1
Symeonides' [1]  40/21
sympathetic [1]  120/5
system [2]  89/7 89/7

**T**

T-A-M-I-L [1]  80/17
tab [1]  106/19
tabbed [1]  106/18
table [20]  4/7 29/6 83/5 83/6 83/22 84/2
84/6 84/11 84/13 85/11 85/20 101/15
106/19 123/14 130/7 133/8 139/20
143/12 143/13 143/14
take [59]  6/2 6/24 7/6 10/5 10/9 10/17
12/14 13/5 15/7 15/8 20/19 23/11 23/15
39/1 57/20 63/13 64/24 65/1 65/5 65/6
65/10 68/15 68/20 68/24 74/4 78/1
87/20 89/1 89/4 92/11 97/1 103/25
105/14 105/20 105/20 107/13 112/4
112/11 118/20 120/16 120/17 121/5
121/6 121/6 123/20 125/3 125/6 126/7
127/10 133/12 136/6 146/7 146/15
150/14 150/16 153/1 157/14 159/2

take... [1] 163/24
taken [5] 22/19 47/11 97/14 130/22 143/14
takes [9] 10/16 32/16 77/21 118/20 119/10 120/6 121/18 125/1 133/13
taking [4] 7/3 84/1 104/1 115/16
talk [51] 5/19 5/24 9/12 10/8 11/10 13/6 15/23 18/19 23/2 48/9 49/19 52/4 52/4 54/10 54/13 56/1 56/2 57/9 57/10 57/14 77/7 80/4 82/16 82/21 90/3 93/16 94/14 95/3 105/12 105/23 107/18 112/7 112/8 118/13 123/11 137/11 137/14 139/15 139/17 144/9 144/12 146/5 146/13 149/2 149/25 151/1 152/18 160/24 161/18 162/21 164/7
talked [22] 14/4 26/3 51/25 60/11 61/1 66/9 67/18 74/2 80/8 86/20 97/13 107/20 107/25 118/12 118/15 125/13 150/10 163/2 163/3 163/13 163/15 163/19
talking [27] 9/25 14/18 20/5 20/6 23/19 25/14 25/16 26/5 26/21 29/20 30/22 30/25 32/2 33/18 34/4 41/7 43/11 46/15 48/12 55/10 68/8 68/10 83/19 92/22 110/16 160/8 163/7
talks [2] 30/16 46/17
Tamil [8] 80/15 80/17 80/21 81/4 81/18 82/2 82/17 82/18
target [1] 94/23
team [2] 83/18 97/25
Technically [1] 113/6
technology [4] 83/8 85/9 86/21 118/12
tedious [1] 120/6
teed [1] 32/15
telephone [3] 67/20 67/25 73/22
tell [35] 10/6 11/9 12/5 13/2 42/12 44/16 45/2 45/9 55/25 60/25 64/18 67/12 69/6 69/10 69/11 75/2 76/5 87/17 97/15 108/10 120/10 122/6 123/2 123/4 123/13 123/22 130/15 140/18 142/8 142/16 144/16 146/5 146/10 153/16 154/22
telling [3] 42/12 119/23 119/25
tells [1] 111/10
temporary [3] 43/23 44/2 44/4
ten [4] 122/4 122/4 123/19 123/24
tend [1] 148/19
term [1] 136/12
termination [1] 36/17
terms [8] 9/17 28/5 35/16 39/20 42/10 88/20 120/7 141/1
Terrell [1] 3/6
terrorem [1] 156/23
test [1] 87/8
testified [7] 45/6 45/22 70/8 72/1 80/18 81/10 132/1
testify [4] 45/11 81/12 105/7 112/22
testifying [1] 116/20
testimony [15] 44/21 55/2 61/5 70/9 77/22 78/2 78/2 78/4 78/7 109/25 110/20 111/19 141/25 158/12 159/15
Texas [25] 8/13 11/18 50/21 57/18 114/4 125/20 125/21 125/22 125/25 127/13 127/16 130/22 130/23 131/23 137/22 138/15 138/18 138/20 138/24 139/16 139/17 139/22 140/5 149/13 149/15
than [28] 6/11 10/17 10/19 15/23 23/20 52/15 55/14 57/13 59/14 70/6 73/12 91/5 91/20 95/13 107/22 116/2 119/6 122/9 124/25 127/4 127/14 131/21

132/4 132/22 132/25 142/18 160/13 167/20
thank [17] 7/25 8/1 14/24 33/20 47/7 50/15 51/9 61/21 62/20 63/24 86/16 100/23 108/14 109/5 141/9 163/17 164/14
thanks [1] 159/9
that [941]
that's [182]
their [52] 18/4 27/20 27/25 32/17 32/19 33/1 36/10 38/14 40/9 42/16 43/13 44/5 45/5 46/17 59/11 66/16 69/19 76/18 77/22 79/21 85/6 88/15 90/8 96/24 108/18 109/12 109/23 109/25 110/7 111/5 111/24 113/5 119/6 119/24 119/25 120/15 120/17 120/20 123/22 130/8 130/23 131/24 132/1 132/4 132/23 133/20 146/1 146/5 147/8 156/19 157/13 158/16
theirs [2] 89/6 96/24
them [126] 5/24 6/13 15/4 16/21 18/11 19/7 30/22 32/22 33/3 38/23 39/1 39/3 45/19 45/20 48/16 55/6 58/8 66/9 67/10 67/11 67/13 68/12 70/14 74/19 75/3 75/3 75/11 76/5 76/19 77/8 77/10 78/15 79/23 80/14 82/10 82/12 84/6 87/2 87/3 88/17 89/19 89/20 89/23 90/1 93/10 94/14 94/15 95/15 96/11 97/2 100/20 104/4 104/8 104/14 104/16 104/17 104/19 105/4 105/7 105/7 105/9 105/15 106/10 106/10 108/5 108/18 109/24 110/7 111/1 111/3 111/7 111/8 111/14 111/24 111/24 112/3 112/4 112/10 112/11 113/23 114/13 115/17 117/15 119/25 122/6 122/20 123/13 123/22 124/17 124/18 128/22 131/25 132/3 132/6 133/20 136/11 136/22 136/23 136/24 136/25 140/9 140/19 141/13 141/24 146/9 146/12 149/19 149/20 151/6 151/13 152/6 153/5 153/7 153/20 154/10 154/12 156/13 156/19 158/5 159/8 159/8 160/3 160/24 161/6 163/12 164/14
themselves [2] 155/23 157/9
then [152] 6/2 6/14 6/22 7/5 8/25 9/12 9/14 9/15 10/23 11/9 11/23 11/24 12/14 12/16 21/9 24/21 24/22 25/24 28/13 28/14 28/22 30/5 30/5 30/25 31/24 34/8 35/13 35/17 36/10 36/12 38/16 38/21 40/4 40/13 40/21 41/6 46/10 47/16 48/1 48/2 48/7 48/11 48/12 50/8 50/21 53/5 53/19 56/5 56/15 56/16 56/16 56/22 57/12 57/23 58/1 59/9 62/23 65/2 67/11 67/23 68/24 69/1 69/2 70/10 72/3 73/10 73/11 73/20 74/5 75/4 75/6 75/8 76/11 77/12 77/14 77/20 77/23 78/3 78/8 80/21 81/4 84/12 87/3 87/21 90/22 94/13 96/22 96/25 97/3 98/25 101/20 102/13 103/3 103/17 103/18 104/9 106/6 106/15 108/18 109/13 109/15 109/16 110/6 111/13 111/15 112/4 112/7 112/15 112/15 113/12 116/5 117/16 118/6 119/1 119/24 120/17 120/20 121/17 122/4 123/8 123/10 123/11 123/14 123/19 123/20 124/7 124/22 127/21 130/1 130/5 132/13 133/12 133/25 135/8 137/7 138/15 144/22 145/21 146/14 146/14 150/8 150/23 151/24 152/21 155/2 156/4 157/25 160/11 162/2 162/13 163/23
theory [3] 25/6 29/10 154/20
there [192]
there's [66] 11/4 11/4 15/7 15/22 22/25

27/3 30/19 31/24 35/1 35/15 36/18 39/24 43/24 46/14 48/5 49/6 53/12 54/1 54/6 57/9 65/11 65/23 71/4 75/11 77/3 80/7 81/1 81/3 81/4 83/13 85/3 85/12 87/20 87/21 88/4 90/20 90/21 97/2 98/25 99/20 100/12 108/23 109/13 112/5 113/17 115/11 116/21 117/10 117/12 122/21 126/1 126/18 127/22 128/18 130/10 133/9 136/2 136/20 142/7 149/3 152/13 157/25 158/12 158/20 161/16 163/4
thereafter [1] 66/20
therefore [1] 52/2
thereof [1] 162/4
these [54] 10/21 12/25 15/9 20/10 31/9 32/25 35/11 38/1 38/25 39/22 40/23 41/20 42/3 42/16 43/2 43/4 44/4 44/13 45/16 46/16 46/20 48/15 48/21 48/23 49/13 55/11 55/12 55/20 61/13 66/21 68/6 68/20 69/9 76/3 79/7 93/3 94/21 95/12 96/9 102/18 104/2 104/11 104/22 105/25 110/9 113/14 123/5 133/2 142/18 148/21 151/4 151/5 157/14 163/24
they [320]
they'll [1] 152/6
they're [7] 48/24 98/21 110/16 129/15 131/25 147/8 152/7
thin [1] 93/19
thing [43] 5/21 5/25 13/15 23/11 23/15 25/7 25/23 26/8 33/8 33/10 53/22 56/5 68/3 69/2 69/13 69/15 71/3 75/20 76/8 87/1 95/21 96/4 97/1 106/16 108/23 112/24 115/25 119/13 119/25 127/5 140/25 146/4 148/18 150/18 152/3 152/20 155/4 155/21 157/11 158/3 158/9 158/10 158/12
things [41] 5/19 5/22 10/19 20/10 21/17 21/20 21/22 29/4 30/3 34/12 45/17 54/20 56/4 63/10 65/3 66/14 86/7 87/4 92/7 93/24 96/1 97/12 100/10 106/12 106/21 108/2 110/9 113/23 113/25 120/11 129/1 136/1 136/13 137/3 139/5 142/5 145/25 152/17 154/5 157/5 164/10
think [165]
thinking [14] 11/17 12/22 24/20 47/4 59/4 84/7 109/17 118/17 122/14 124/23 126/5 140/24 147/3 150/24
third [3] 126/9 140/1 145/12
third-party [2] 140/1 145/12
Thirteen [1] 10/15
this [157] 7/4 8/25 10/10 10/23 12/2 12/17 14/23 15/11 15/17 16/1 16/7 20/17 21/6 21/13 21/14 23/13 25/1 25/3 28/5 30/10 32/14 32/14 33/3 33/13 33/18 34/14 37/11 37/19 38/10 39/14 39/20 40/8 41/14 42/13 42/19 43/4 43/5 43/13 43/13 44/11 46/5 46/8 46/13 47/8 48/14 48/18 50/17 51/14 52/13 52/14 53/23 54/20 55/14 55/15 55/17 56/6 56/24 57/9 57/17 63/11 63/14 64/3 65/14 66/19 66/24 67/19 67/21 68/5 69/5 69/6 69/12 69/15 69/17 69/19 69/20 71/10 72/13 73/8 73/18 74/14 75/22 76/9 76/10 78/2 79/2 79/15 85/15 88/9 90/22 91/1 92/23 92/24 93/3 93/13 94/1 96/6 97/5 97/9 97/20 100/6 100/14 102/11 103/24 105/1 105/10 106/3 111/4 113/8 114/8 114/20 115/7 115/12 115/12 118/23 119/24 120/4 120/15 121/4 122/12 122/13 122/21 122/25 125/25 126/6 126/13 126/25 127/1

this... [30]  128/16 129/14 132/17 133/23
141/19 141/20 141/21 141/21 141/22
142/1 143/4 143/5 143/11 143/17
145/13 145/22 146/19 148/14 149/19
150/12 150/16 151/3 153/7 156/17
158/3 159/16 161/18 161/24 162/16
163/5
Thomas [14]  4/12 5/13 8/4 8/5 8/24
10/25 16/5 16/7 16/8 64/1 64/5 79/14
79/16 79/19
thoroughly [1]  108/13
those [81]  7/9 7/23 9/11 12/1 13/11 15/3
15/20 16/3 16/20 16/20 21/4 26/15
29/25 30/1 37/5 38/14 38/21 42/10
43/15 46/23 47/22 48/22 50/5 51/1
54/15 56/16 58/23 59/15 59/17 60/9
60/13 61/8 61/15 65/4 67/4 77/8 77/10
81/2 87/4 89/13 91/13 92/1 94/7 94/20
95/18 96/8 98/4 98/6 98/11 98/14 99/6
99/25 101/9 102/19 102/19 103/19
105/14 107/2 107/3 107/5 108/2 109/16
113/13 123/10 130/8 131/17 139/11
152/25 153/4 153/11 154/6 154/7
154/12 156/6 157/4 159/6 160/21
161/25 162/3 162/23 164/9
though [16]  17/4 38/6 44/14 44/16 45/19
47/20 54/25 56/11 65/13 68/16 77/11
80/10 133/14 159/8 162/9 164/12
thought [23]  8/24 13/14 24/15 47/21
47/24 48/10 50/9 52/5 58/4 59/14 63/4
107/9 112/7 114/11 118/23 125/9
126/11 127/11 130/9 137/21 145/11
161/25 163/24
thoughts [3]  9/3 9/8 49/12
thousand [4]  21/17 88/5 116/11 118/1
thousands [1]  117/14
three [16]  80/14 82/10 84/7 85/19 98/15
99/6 118/20 124/18 124/20 124/21
124/21 127/10 131/15 156/5 156/5
156/7
through [31]  5/19 6/13 21/6 21/16 28/17
31/7 31/10 45/3 66/21 68/20 69/15 73/1
73/3 91/6 96/21 104/6 104/17 108/17
108/20 114/21 116/8 117/13 118/1
119/8 120/13 120/22 135/25 145/11
147/21 153/2 159/17
throughout [2]  161/3 161/4
throw [2]  25/7 152/5
tie [1]  61/15
TIFF [1]  153/15
tight [1]  86/6
Tim [5]  4/24 93/18 113/1 116/23 116/24
Tim's [1]  152/22
time [75]  5/21 9/1 11/19 14/23 19/20
21/14 41/21 43/4 56/15 57/9 57/19 58/5
58/16 64/24 67/6 82/12 85/20 85/25
86/18 87/13 87/15 89/4 91/2 94/15 97/8
100/17 105/1 108/21 109/13 109/19
112/5 113/7 113/16 115/24 118/17
119/2 119/5 119/10 119/10 119/17
119/21 119/23 120/1 120/6 120/7
120/16 120/17 120/18 120/20 121/18
125/5 127/1 127/9 128/9 128/25 129/14
131/16 132/15 133/13 134/19 139/19
140/13 140/17 140/20 142/9 142/18
143/14 145/18 145/20 146/7 150/5
150/12 155/15 163/25 164/6
timely [1]  78/25
times [6]  74/17 95/5 113/16 120/13
127/24 149/3
timing [1]  58/21

Timothy [2]  3/17 3/17
tina... [1]  97/19
tired [1]  121/2
today [13]  5/19 8/25 15/11 16/21 53/23
57/9 58/24 60/13 61/7 64/16 64/17
87/11 103/25
today's [1]  6/5
together [12]  5/18 43/2 57/21 61/15 82/7
82/13 92/13 92/18 96/12 109/19 139/4
161/18
told [15]  15/3 16/6 27/11 38/25 54/12
56/4 65/17 67/6 67/23 69/6 83/14 128/7
136/24 137/17 158/14
tomorrow [11]  6/18 6/18 28/10 57/9
57/10 142/15 144/10 146/13 149/22
150/1 160/15
tongue [1]  80/18
Toni [4]  3/20 164/19 164/23 164/24
too [25]  4/6 11/5 31/10 34/11 46/23
51/12 76/6 89/24 92/25 101/18 112/8
116/18 117/14 119/12 120/16 120/17
125/1 127/20 128/1 129/20 130/13
135/20 140/6 142/7 156/15
took [3]  116/3 120/16 141/11
top [2]  34/14 161/16
topic [2]  29/5
topics [3]  109/7 154/13 164/5
tort [1]  100/25
total [1]  124/6
totally [2]  48/23 56/13
touch [1]  132/23
toward [2]  151/17 152/7
towards [1]  39/23
town [2]  7/7 147/20
Tracey [2]  114/3 114/21
TRACIE [2]  2/13 5/17
track [3]  34/3 46/2 120/7
traditional [1]  98/24
trafficking [4]  98/1 98/5 98/6 98/24
transcript [1]  1/22 164/20
transcription [1]  3/24
transcripts [2]  86/17 116/24
transfer [3]  17/15 53/1 57/24
transferred [4]  17/10 18/1 52/15 63/3
translated [1]  119/16
translator [3]  62/5 81/7 81/8
translator's [1]  7/5
translators [1]  120/6
travel [1]  8/18
trial [59]  6/11 6/14 8/24 8/25 9/4 9/11
9/17 9/20 10/7 11/3 11/12 13/13 13/22
14/14 15/1 39/22 51/22 55/21 80/4
80/13 80/13 81/16 85/20 90/17 92/16
101/11 101/19 102/18 104/8 104/13
104/16 105/1 105/4 106/3 106/4 109/9
109/9 118/12 122/2 122/20 123/6
127/25 129/14 132/8 132/24 135/19
135/23 136/3 136/5 140/14 142/1 142/9
151/17 151/21 151/23 152/2 154/17
156/24 159/17
trial-specific [1]  109/9
trials [3]  8/13 11/20 148/9
tried [7]  10/13 16/22 48/24 49/5 49/10
50/18 54/11
trip [1]  147/20
true [7]  29/9 39/11 44/25 69/18 105/22
147/24 164/20
TrueCrypt [1]  88/11
truly [3]  44/1 113/12 137/12
truth [1]  33/19 45/2
truth-finding [1]  33/19
try [19]  10/19 11/8 11/18 48/2 57/21
79/3 82/10 82/12 93/21 96/12 102/19

105/6 105/6 120/7 127/19 149/20
159/12
trying [15]  16/16 33/17 34/20 46/2 47/3
47/22 47/24 61/15 66/21 68/20 72/13
73/25 84/17 91/21 96/3
TSU [2]  2/7 4/13
Tuesday [4]  12/8 12/11 12/19 58/15
turn [2]  69/21 149/1
turned [4]  65/10 65/15 73/10 73/11
turns [4]  24/7 39/14 41/5 41/12
Tusa [4]  3/20 164/19 164/23 164/24
TVPR [1]  99/16
TVPRA [4]  98/1 98/2 100/4 102/8
twice [2]  112/3 112/17
two [40]  7/3 7/9 7/13 7/14 7/23 21/5
30/3 30/12 48/19 58/24 60/9 60/17
60/23 65/5 68/10 71/16 75/3 76/6 79/6
84/25 85/19 93/22 103/11 112/23
118/24 118/24 119/8 119/8 121/23
121/25 122/9 131/15 132/23 134/2
139/9 139/11 140/12 140/16 147/23
160/9
type [1]  100/24
types [1]  151/5
typical [1]  133/24
typically [1]  106/8
typing [1]  57/18

U

U.S [4]  3/2 36/11 159/8 159/9
U.S.C [2]  99/21 107/1
ultimate [1]  93/2
unanimous [1]  121/25
under [19]  19/16 20/24 22/2 22/3 23/7
24/7 39/14 41/2 45/22 52/23 53/1 57/25
64/6 88/11 98/2 103/16 106/25 131/10
132/12
underneath [1]  96/18
understand [27]  25/18 27/6 34/22 34/23
36/16 38/25 46/2 46/24 48/23 54/23
82/3 91/17 94/24 101/25 104/20 105/5
117/23 124/6 127/7 127/21 128/19
133/22 136/4 143/12 155/17 157/17
161/24
understandably [2]  113/4 133/2
understanding [6]  71/8 71/15 104/10
125/20 142/6 164/20
understands [3]  49/23 91/22 92/22
understood [3]  13/12 27/24 161/21
undisputed [5]  91/10 91/25 92/7 92/14
92/20
unequivocally [1]  75/13
unfair [1]  5/22
unfortunately [1]  126/13
UNGAR [3]  3/8 5/7 30/10
UNITED [17]  1/1 1/23 31/1 35/21 41/22
41/23 42/4 42/15 42/17 42/22 43/1 44/9
45/8 148/3 158/23 159/12 164/19
United States [14]  31/1 35/21 41/22
41/23 42/4 42/15 42/17 42/22 43/1 44/9
45/8 148/3 158/23 159/12
universe [1]  73/19
unless [7]  11/4 14/14 85/7 121/23
121/24 127/14 137/9
unpalatable [1]  136/10
unsure [2]  13/10 130/19
until [16]  7/8 9/5 13/22 14/15 16/7 38/10
58/19 59/2 109/23 122/7 123/18 130/24
131/24 132/1 149/24 164/1
unusual [1]  151/5
up [54]  4/4 5/22 6/5 10/20 20/14 32/15
37/23 43/2 45/1 50/4 51/15 63/1 63/4
65/12 70/14 77/15 83/14 87/25 88/1

**U**

up... [35]  88/20 92/24 97/25 102/9
103/11 103/25 104/13 106/9 108/18
109/4 112/3 113/3 120/20 121/7 123/8
125/14 129/23 130/24 131/3 131/7
131/24 132/7 132/9 132/10 133/18
134/13 134/21 134/22 135/1 135/1
138/15 138/22 141/4 142/10 153/2
up-to-date [2]  6/5 109/4
upon [1]  91/9
UPS [1]  107/5
us [61]  5/21 6/17 10/18 13/15 28/7 37/9
41/3 41/18 46/20 48/18 49/18 55/8
58/16 59/1 59/5 64/24 65/3 65/11 65/17
66/3 66/10 66/10 67/23 68/12 69/8
75/25 75/25 76/10 78/22 78/24 78/25
79/1 81/22 82/25 83/17 83/22 84/2 90/4
91/16 96/10 104/12 106/18 108/10
108/15 120/7 125/6 125/22 127/3 135/1
137/17 143/7 143/7 150/20 151/5
151/10 154/22 159/9 163/9 163/10
163/11 164/11
use [23]  60/2 61/12 81/7 85/7 85/8 88/4
88/13 88/16 89/7 89/17 90/8 93/8 94/20
96/12 105/9 109/12 109/15 109/20
110/8 111/7 111/9 140/17 159/6
used [11]  23/12 67/14 81/8 81/12
116/18 123/18 153/23 154/17 161/10
162/1 162/2
useless [1]  143/24
using [1]  3/23
usual [1]  124/25
usually [12]  62/13 91/22 94/10 106/12
111/21 118/20 119/10 120/24 123/5
123/20 124/9 142/18
utterly [1]  66/6

**V**

value [1]  147/12
variety [1]  17/15
various [1]  115/5
vehicle [1]  159/18
vendor [2]  90/8 118/7
venire [3]  123/13 124/10 124/23
verdict [3]  96/25 97/8 135/20
verified [1]  68/13
version [9]  6/2 66/14 96/2 96/22 96/22
96/23 96/24 115/3 153/16
versions [1]  153/23
versus [5]  1/5 1/10 1/16 65/24 109/10
very [29]  10/9 20/9 20/9 20/23 20/25
21/1 21/9 22/25 23/22 35/8 52/5 52/24
63/20 75/9 77/1 93/23 100/22 104/23
108/14 109/5 126/24 128/23 131/16
133/23 136/23 145/13 145/17 147/6
151/8
victim [1]  102/14
Victims [1]  98/2
video [6]  103/22 105/18 105/20 110/17
110/20 116/16
view [14]  17/22 20/14 26/12 26/13 32/14
32/23 34/17 36/16 36/17 54/2 76/25
104/18 128/1 130/2
violate [1]  25/3
violated [1]  24/13
violates [2]  24/8 42/9
violations [1]  107/1
virtue [2]  41/11 131/5
visa [8]  43/24 43/25 44/10 45/4 155/1
161/10 162/6 162/10
visas [3]  56/1 155/16 162/17
visit [1]  105/11

voir [2]  123/3 125/1
volume [1]  1/17
voting [1]  12/7

**W**

wage [1]  36/9
wages [8]  36/10 155/20 156/18 156/20
157/12 159/5 159/7 159/9
wait [6]  9/5 53/3 60/16 99/9 99/9 121/15
waited [1]  158/16
waiting [1]  107/23
waived [1]  107/23
walk [2]  87/22 143/7
wall [2]  86/6 87/24
wallet [1]  130/17
want [114]  6/4 11/8 11/17 11/22 12/19
15/11 15/11 15/23 20/21 23/20 27/2
28/17 29/4 34/3 34/12 39/3 39/3 43/8
46/25 49/12 51/6 51/12 51/18 54/8
55/19 56/3 56/18 57/5 57/14 59/11
63/15 63/22 67/6 68/24 75/3 75/4 75/18
76/1 76/5 76/24 77/7 78/9 78/19 78/21
79/15 80/20 82/1 82/1 86/5 86/13 86/17
86/21 86/25 87/2 87/9 87/10 87/12
90/19 92/13 93/20 93/20 95/10 95/11
95/20 96/1 96/18 97/18 105/9 105/14
105/20 105/25 109/14 109/15 110/19
111/7 111/23 112/2 112/6 112/13
112/22 113/7 115/9 118/4 118/5 118/6
118/8 121/13 121/23 122/21 123/3
124/25 125/10 129/3 129/12 129/15
132/13 132/21 133/20 134/2 134/8
139/1 140/5 140/19 142/19 142/23
143/6 143/11 144/8 145/25 146/1 146/4
156/25 159/5 164/12
wanted [15]  13/8 13/10 15/6 29/6 54/7
54/24 61/19 62/9 66/10 103/25 113/20
119/7 122/23 123/8 132/7
wants [5]  28/13 51/10 76/10 87/19
149/18
warm [1]  4/6
warn [1]  122/25
warning [1]  164/6
warrant [1]  72/2
warrants [2]  70/11 70/13
was [188]
WASHINGTON [3]  2/13 2/24 5/17
wasn't [10]  22/1 30/11 43/19 52/5 52/21
52/22 72/21 141/11 142/7 155/19
waste [2]  127/1 129/14
wasteful [1]  134/8
wasting [1]  134/18
way [44]  7/7 8/24 9/7 9/9 18/23 20/21
28/21 43/22 50/17 65/4 69/6 75/18
78/18 86/12 88/4 88/9 89/20 92/5 96/1
96/19 97/2 107/2 108/22 111/21 112/14
114/15 116/4 118/8 119/1 119/20
120/22 121/22 128/21 130/9 131/4
146/7 146/11 147/10 150/23 153/11
154/20 154/24 156/11 159/16
we [699]
we'll [8]  10/3 10/4 53/3 54/5 100/19
123/12 134/22 161/22
we're [5]  76/13 93/10 129/7 129/14
160/7
We've [2]  84/24 113/2
website [2]  136/6 136/12
Wednesday [3]  58/11 118/25 143/22
week [15]  28/10 28/14 46/7 59/1 59/11
59/15 59/16 62/5 62/8 62/12 80/3 120/2
121/4 145/25 146/15
weekday [1]  51/16
weeks [10]  75/3 76/6 79/6 112/23

118/20 118/24 118/24 119/8 119/9
119/9
weigh [1]  39/19
weighs [1]  39/23
WEINBERGER [8]  3/7 5/1 26/21 44/17
63/19 83/12 99/20 162/3
Weinberger's [1]  39/10
weird [1]  63/11
welcome [1]  109/6
well [107]  8/3 9/25 12/18 13/15 15/9
16/1 16/20 17/3 17/7 17/8 26/5 28/9
28/21 29/14 30/9 30/25 31/7 35/1 41/6
45/10 48/2 50/1 50/8 50/20 51/23 52/3
54/9 54/17 55/25 56/4 56/22 56/24 57/2
57/6 57/20 59/13 61/12 62/13 67/7
69/24 70/3 73/14 75/16 76/2 77/1 82/6
82/14 83/2 83/24 84/8 84/17 84/24
85/12 89/5 89/19 94/11 95/20 96/11
98/9 98/16 99/8 99/22 100/2 100/7
100/14 100/17 101/23 102/1 105/16
111/13 111/22 111/23 112/15 112/25
114/5 116/12 118/18 119/17 120/12
122/13 123/9 124/7 125/18 127/13
128/17 129/18 129/19 131/5 134/15
135/19 140/18 142/16 142/25 143/3
143/21 145/22 151/11 153/22 154/20
155/5 156/2 156/4 157/6 157/23 159/3
159/6 161/14
went [4]  104/6 104/17 108/17 108/19
were [87]  13/9 13/12 14/11 15/3 16/9
16/19 16/23 17/2 17/10 18/6 20/13
20/24 21/23 21/24 25/17 26/14 26/15
29/24 30/1 32/20 32/25 36/19 37/19
38/10 39/12 39/25 41/21 41/22 42/11
42/15 42/22 43/13 44/12 44/22 45/1
45/8 45/12 46/20 48/12 56/4 66/21 67/9
67/11 69/14 72/4 73/25 74/9 74/10
74/22 74/23 77/9 77/11 79/17 79/20
102/23 104/13 109/3 109/7 109/19
109/20 114/1 114/12 114/13 114/24
115/1 115/16 117/9 118/17 123/21
132/8 136/24 145/7 148/24 151/16
153/6 153/17 153/18 153/23 158/13
158/14 158/14 159/7 159/9 161/12
161/14 162/4 162/18
weren't [9]  47/21 47/24 48/1 48/10 50/9
69/14 105/7 123/21 155/9
WERNER [2]  2/6 4/10
West [1]  107/20
WestClip [1]  108/21
Westlaw [3]  108/12 108/18 108/25
what [202]
what's [11]  20/18 33/6 33/15 44/1 51/12
82/23 88/18 121/9 126/11 138/17
145/22
whatever [15]  9/10 28/10 28/22 63/7
69/16 86/4 86/14 102/16 104/10 112/6
116/9 123/19 123/22 127/10 152/7
when [63]  13/10 14/18 19/19 21/9 21/16
24/22 29/24 30/16 30/21 30/22 36/10
40/4 40/16 41/22 42/3 42/17 43/6 43/22
44/8 44/22 45/1 46/17 47/3 51/1 53/3
55/8 72/12 76/23 77/7 79/15 87/22
88/14 89/9 89/16 94/17 97/25 98/13
100/16 104/10 104/24 105/7 106/16
107/23 108/3 109/11 111/11 113/9
113/20 115/1 115/8 122/21 123/20
128/9 129/14 132/3 134/25 138/7
146/16 147/25 154/7 155/20 161/8
161/8
whenever [1]  56/23
where [29]  15/3 16/23 29/1 39/18 45/10
48/8 68/4 71/5 77/4 84/18 84/19 91/18

**W**

where... [17] 93/5 97/5 97/22 102/17
104/7 104/23 110/23 113/9 116/18
126/2 133/8 136/16 136/18 141/16
145/4 148/24 151/20
whether [45] 13/16 16/16 22/1 22/19
23/2 23/4 23/16 24/7 24/8 24/11 24/13
24/16 24/18 24/20 25/3 25/9 37/4 37/18
40/18 41/8 41/11 42/14 44/14 49/12
52/14 52/19 74/20 80/5 81/12 84/18
92/1 96/8 109/23 109/24 110/11 111/3
111/6 126/2 138/16 139/3 147/4 149/19
149/22 154/22 155/1
which [62] 11/7 11/22 14/10 14/11 20/14
21/4 22/11 24/21 25/25 28/1 30/5 30/16
31/3 31/5 31/14 31/25 33/25 37/9 37/24
38/5 39/6 39/20 40/20 41/17 41/19
44/24 44/25 46/9 55/7 60/19 62/15 65/6
70/13 70/14 70/14 71/6 82/9 83/15 98/4
98/7 98/23 99/21 107/5 108/19 108/19
109/13 110/22 113/1 116/5 116/15
118/7 122/6 130/12 130/22 132/20
135/7 145/21 153/16 153/17 161/16
162/3 164/14
while [6] 18/11 19/7 107/23 140/15
140/24 158/15
whittling [1] 88/6
who [78] 4/7 4/7 8/5 8/19 9/25 10/6 12/1
12/5 14/9 15/3 15/19 22/16 28/13 31/17
31/17 40/19 45/6 48/14 51/10 56/3 57/5
65/9 65/18 67/17 67/18 67/18 67/25
70/6 71/16 73/10 78/18 79/24 81/1 81/3
81/6 83/25 84/9 85/19 85/21 85/23
86/12 87/18 87/25 88/1 102/18 104/24
107/19 108/11 108/14 108/20 109/12
109/21 110/11 111/4 111/11 111/11
112/10 116/4 121/16 123/20 123/21
124/14 126/16 130/16 133/2 142/19
143/1 143/2 144/9 145/13 146/22
148/14 148/14 149/14 150/12 150/25
151/2 151/7
who'll [1] 7/13
who's [1] 107/19
whoever [8] 71/5 86/5 114/10 115/8
116/19 122/2 124/4 146/14
whole [13] 20/7 25/2 27/19 68/18 83/18
87/1 87/3 95/21 96/4 103/13 104/12
104/17 148/17
whom [3] 43/19 127/23 127/23
whose [5] 7/15 7/17 111/7 114/8 115/18
why [47] 5/20 9/8 9/11 10/12 20/17
23/17 23/22 28/22 32/15 32/21 37/10
43/21 45/4 45/7 46/18 48/21 49/15 52/1
52/14 56/24 63/5 68/25 69/5 69/9 75/10
77/19 96/18 96/23 96/24 97/7 100/8
110/22 114/1 114/6 117/2 118/23
122/24 127/21 129/9 132/21 135/16
145/10 145/11 161/5 161/17 162/15
162/19
will [174]
will-call [5] 104/4 104/15 106/4 106/7
106/9
willing [7] 54/13 111/19 129/15 134/5
134/7 139/24 140/8
window [2] 144/17 147/22
wireless [1] 83/13
withdraw [1] 100/19
withdrawing [1] 97/19
withheld [2] 72/25 153/17
withholding [1] 78/23
within [10] 25/2 28/10 33/14 59/10 75/3
76/6 80/3 89/7 120/1 145/25

without [7] 20/15 53/24 53/25 55/7 98/17
133/10 155/21
witness [15] 6/17 7/17 49/8 49/9 87/1
88/2 104/18 106/4 110/2 110/18 111/5
111/23 119/15 121/1 154/22
witnesses [22] 7/14 84/1 95/15 95/16
104/3 104/22 104/25 109/10 109/11
109/12 109/21 109/22 111/11 112/2
112/5 112/20 118/21 119/11 119/16
119/18 120/21 125/12
won't [16] 13/5 28/15 53/1 57/20 59/1
77/14 77/20 85/6 97/5 97/6 105/8
109/22 109/24 134/4 143/7 154/23
wonder [4] 11/21 28/25 29/7 107/13
wondered [1] 113/25
wondering [1] 59/13
word [3] 40/23 96/3 133/10
words [8] 13/17 25/11 62/14 73/24
96/20 120/18 149/7 157/20
work [28] 14/13 43/23 44/2 54/7 56/21
57/7 57/12 57/21 66/1 82/6 82/7 82/22
86/14 92/6 92/13 92/14 92/18 97/9
106/14 119/22 120/22 127/21 127/25
132/5 132/24 133/2 134/4 138/16
worked [2] 129/6 129/8
worker [3] 43/24 43/25 44/7
workers [8] 31/9 36/10 38/25 43/12
43/22 44/5 44/13 84/15
working [4] 90/22 90/24 93/17 120/5
works [1] 130/15
world [5] 23/11 23/15 104/24 137/9
151/19
worried [1] 83/4
worry [1] 72/24
worth [1] 127/22
would [194]
wouldn't [11] 16/7 48/17 65/8 78/17 85/7
85/8 98/16 100/4 102/20 127/16 159/6
Write [1] 65/20
writing [3] 31/5 31/8 43/15
written [13] 18/23 19/23 23/14 27/4
29/11 30/8 30/9 30/19 31/11 32/11
45/12 46/11 46/12
wrong [11] 9/20 9/21 34/14 34/20 61/17
96/24 130/12 136/18 137/9 155/14
156/16
wrote [3] 16/13 43/6 139/25

**Y**

y'all [2] 4/3 142/15
yeah [20] 25/22 66/1 70/18 71/1 71/1
74/14 84/14 103/9 123/25 124/9 124/9
125/9 134/17 134/22 135/15 138/6
145/3 148/4 152/25 161/22
year [5] 9/5 78/2 136/23 141/25 157/16
years [5] 48/19 122/22 156/5 156/6
156/7
yes [54] 8/11 11/8 12/3 12/21 16/12
19/9 22/22 22/25 25/16 28/17 35/1 36/5
36/7 37/3 37/16 42/1 44/10 49/25 52/10
52/12 53/21 60/4 60/7 61/1 63/24 64/6
64/10 72/3 73/15 73/16 76/16 76/21
79/4 80/24 83/1 83/11 89/11 90/25
100/13 100/16 103/5 117/19 117/22
121/5 127/12 128/16 139/13 144/12
149/10 149/11 151/14 154/18 160/18
163/17
yesterday [1] 58/24
yet [11] 16/4 16/17 22/18 59/20 62/11
68/7 80/6 98/14 98/18 101/17 109/9
Yippy [1] 64/11
York [2] 2/4 2/4
you [640]

you'll [2] 108/10 150/3
you're [42] 12/18 23/10 23/11 24/19
25/14 26/3 29/20 32/2 35/14 40/25
44/19 69/9 89/9 90/13 90/23 98/14
98/15 99/12 109/6 111/13 111/13
118/13 128/13 131/21 136/16 141/21
141/24 142/17 144/3 146/13 152/23
158/18
you've [1] 113/10
your [202]
your Honor [87] 6/10 6/16 7/25 8/6 8/17
11/2 12/2 14/17 17/1 18/5 18/15 18/16
19/5 19/8 19/9 20/19 21/13 22/18 22/22
24/6 24/15 24/25 27/2 28/8 30/10 30/13
31/23 33/20 34/12 37/3 37/7 38/8 38/18
39/9 41/3 41/10 42/24 43/4 47/14 48/1
49/11 50/15 54/21 58/21 60/11 61/1
61/19 61/23 62/17 63/24 63/25 66/20
72/7 72/15 74/11 76/21 77/21 79/4 88/8
89/24 90/25 96/15 97/18 99/1 99/11
103/10 104/6 116/22 119/14
119/20 136/4 137/21 138/14 140/24
143/4 147/7 147/18 148/8 152/3 152/8
154/18 155/4 155/12 158/9 159/2
163/17
yours [3] 97/4 97/4 97/4
yourself [1] 105/3

**Z**

Zainey [1] 43/6