UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KURIAN DAVID, et al.** | CIVIL ACTION |
|     **Plaintiffs** | No. 08-1220 |
| | SECTION "E" |
| **VERSUS** | |
| **SIGNAL INTERNATIONAL, LLC, et al.,** | |
|     **Defendants** | |

*Related Cases:*

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY** | CIVIL ACTION |
| **COMMISSION,** | No. 12-557 |
|     **Plaintiff** | SECTION "E |
| **VERSUS** | |
| **SIGNAL INTERNATIONAL, LLC, et al.,** | |
|     **Defendants** | |

| | |
|---|---|
| **LAKSHMANAN PONNAYAN ACHARI, et al.,** | CIVIL ACTION |
|     **Plaintiffs** | No. 13-6218 (c/w 13-6219, |
| **VERSUS** | 13-6220, 13-6221, 14-732, |
| **SIGNAL INTERNATIONAL, LLC, et al.,** | and 14-1818) |
|     **Defendants** | SECTION "E" |

**Applies To:   DAVID (08-1220) ONLY**

---

### FIFTH MEMORANDUM OF SIGNAL CONCERNING JURY INSTRUCTIONS/ THE ISSUE OF TRAFFICKING AND WHAT IT MEANS

I. **INTRODUCTION**

    Defendants, Signal International, LLC ("LLC"), Signal International, Inc. ("Inc."), Signal International Texas, G.P. ("GP"), and Signal International Texas, L.P. ("LP") (hereinafter

collectively "Signal"), respectfully submit this brief to the Court to expand on the reasons why Signal submits that the offense of trafficking requires that the claimant prove that the underlying violations actually occurred. "For the reasons explained in the § 1589 forced labor section above, the Court is persuaded that a human trafficking claim premised on a violation of the forced labor statute cannot be tried on a class-wide basis. Although a trafficking claim will focus to a great extent on the conduct of the defendant, it remains that a trafficking claim under § 1590 must be premised on a violation of one of the involuntary servitude statutes, even if indirectly so as the case with § 1592(a), pertaining to the claim that Dewan confiscated passports while Plaintiffs were still in India. Under the facts of this case, individual issues will play a significant part in any claim premised on a violation of the statutes prohibiting forced labor, slavery, and involuntary servitude." **David v. Signal Int'l, LLC**, 2012 U.S. Dist. LEXIS 114247, at *80-*81.

The Court has been informed by Signal that Signal's position as to what § 1590 meant is informed by the plain language of the text of the statute, which takes on added importance because the statute in question is a criminal statute; relatedly, the rule of lenity; and finally though very gingerly, the Legislative History of § 1590. *See* **Crandon**, *infra*, at 160 ("Because construction of a criminal statute must be guided by the need for fair warning, it is rare that legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text.").

## II.     ARGUMENT

### i.     *The Statute and Plain Language Construction*

As originally enacted in 2000 by the Trafficking Victims Protection Act, 18 U.S.C. § 1590 provided:

2

> Sec. 1590. Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor
>
> Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person *for labor or services in violation of this chapter* shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

18 U.S.C. § 1590 (Lexis 2014), History.

The Wilberforce amendments in December of 2008 amended the statute slightly by adding as subparagraph (b) this one sentence: "(b) Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be subject to the penalties under subsection (a)." *See id*.

Signal's fundamental position, the one the *David* Court adopted, is that the plain text of the statute indicates that one must first determine whether the underlying violation occurred in fact to determine whether the recruitment *knowingly* was "*for* labor or services in violation of this chapter . . ."

### ii. *The Role of the Rule of Lenity*

Supporting this interpretation of the statute is the rule of lenity. The rule of lenity requires interpreters to resolve ambiguity in criminal laws in favor of defendants. Deferring to prosecutors "would turn [the statute's] normal construction . . . upside-down, replacing the doctrine of lenity with a doctrine of severity." *Crandon v. United States*, 494 U.S. 152, 178, 110 S. Ct. 997, 108 L. Ed. 2d 132 (1990) (Scalia, J., concurring in judgment).

The Supreme Court specifically observed in ***Kozminski***, a case on point because it likewise concerned statutes in the area of involuntary servitude: "Sound principles of statutory construction lead us to reject the amorphous definitions of involuntary servitude proposed by the Government and by JUSTICES BRENNAN and STEVENS. By construing § 241 and § 1584 to prohibit only compulsion of services through physical or legal coercion, we adhere to the time-honored interpretive guideline that uncertainty concerning the ambit of criminal statutes should be resolved in favor of lenity. The purposes underlying the rule of lenity -- to promote fair notice to those subject to the criminal laws, to minimize the risk of selective or arbitrary enforcement, and to maintain the proper balance between Congress, prosecutors, and courts -- are certainly served by its application in this case." ***United States v. Kozminski***, 487 U.S. 931, 951-52 (1988).

This Court should accordingly reject an interpretation of § 1590 that relegates the fact-finder to speculation about the subjective state of mind of the alleged trafficker. Signal's interpretation imparts definiteness to the inquiry in accordance with the lenity rule. Signal's interpretation requires the "prosecutor" to show that the underlying violation occurred, which substantiates the inference, should the fact-finder be otherwise so persuaded, that the recruitment truly was for the purpose of securing forced or similar labor.

    *iii.*    <u>*The Legislative History*</u>

At the outset, Signal acknowledges the need to be judicious in the area of legislative history when a criminal statute is the subject of study. ***See Crandon v. United States***, 494 U.S. 152, 158, 160, 110 S. Ct. 997, 108 L. Ed. 2d 132 (1990):

> At the outset, we note that Congress has not created an express civil remedy for violations of § 209(a). . . . In determining the meaning of the statute, we look not only to the particular statutory

4

>language, but to the design of the statute as a whole and to its object and policy. Moreover, because the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage. To the extent that the language or history of § 209 is uncertain, this 'time-honored interpretive guideline' serves to ensure both that there is fair warning of the boundaries of criminal conduct and that legislatures, not courts, define criminal liability. . . . Because construction of a criminal statute must be guided by the need for fair warning, *it is rare that legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text*. (Emphasis added).

With these cautionary notes in mind, the Court may find the Legislative History surrounding the enactment of the TVPA, in 2000, which is evidenced in 22 U.S.C. § 7101, aptly titled "Purposes and Findings," illuminating.

The legislative history supports the contention that Congress was concerned with persons who violate these offenses in fact, like organized crime. *See id*., at (8) ("Trafficking in persons is increasingly perpetrated by organized, sophisticated criminal enterprises. Such trafficking is the fastest growing source of profits for organized criminal enterprises worldwide. Profits from the trafficking industry contribute to the expansion of organized crime in the United States and worldwide. Trafficking in persons is often aided by official corruption in countries of origin, transit, and destination, thereby threatening the rule of law.").

Signal will not quote the entirety of § 7101 in this brief. It is far too long. It nonetheless proves facially that Congress was "*predominantly*" concerned with women and children, not H-2B workers. *See id*., at § 7101 (a) (emphasis added).

The "many" persons with whom Congress was concerned were those poor souls who were being trafficked into the sex trade. *See id*., at § 7101(b)(2) ("Many of these persons are trafficked into the international sex trade, often by force, fraud, or coercion. . . . It involves

sexual exploitation of persons, predominantly women and girls, involving activities related to prostitution, pornography, sex tourism, and other commercial sexual services. The low status of women in many parts of the world has contributed to a burgeoning of the trafficking industry.").

Signal acknowledges that Congress also said, "(3) Trafficking in persons is not limited to the sex industry. This growing transnational crime also includes forced labor and involves significant violations of labor, public health, and human rights standards worldwide." *See id*., at § 7101(3). But in the very next sentence, Congress added:

> (4) Traffickers *primarily* target women and girls, who are disproportionately affected by poverty, the lack of access to education, chronic unemployment, discrimination, and the lack of economic opportunities in countries of origin. Traffickers lure women and girls into their networks through false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks, or models. Traffickers also buy children from poor families and sell them into prostitution or into various types of forced or bonded labor.
> (5) Traffickers often transport *victims* from their home communities to unfamiliar destinations, including foreign countries away from family and friends, religious institutions, and other sources of protection and support, leaving the victims defenseless and vulnerable.
> (6) *Victims* are often forced through physical violence to engage in sex acts or perform slavery-like labor. Such force includes rape and other forms of sexual abuse, torture, starvation, imprisonment, threats, psychological abuse, and coercion.
> (7) Traffickers often make representations to their *victims* that physical harm may occur to them or others should the *victim* escape or attempt to escape. Such representations can have the same coercive effects on *victims* as direct threats to inflict such harm.
> (8) Trafficking in persons is increasingly perpetrated by organized, sophisticated criminal enterprises. Such trafficking is the fastest growing source of profits for organized criminal enterprises worldwide. Profits from the trafficking industry contribute to the expansion of organized crime in the United States and worldwide. Trafficking in persons is often aided by official

> corruption in countries of origin, transit, and destination, thereby threatening the rule of law.
> (9) Trafficking includes all the elements of the crime of forcible rape when it involves the involuntary participation of another person in sex acts by means of fraud, force, or coercion.
> (10) Trafficking also involves violations of other laws, including labor and immigration codes and laws against kidnapping, slavery, false imprisonment, assault, battery, pandering, fraud, and extortion.
>
> ******
>
> (24) Trafficking in persons is a transnational crime with national implications. To deter international trafficking and bring its perpetrators to justice, nations including the United States must recognize that trafficking is a serious offense. This is done by prescribing appropriate punishment, giving priority to the prosecution of trafficking offenses, and protecting rather than punishing the victims of such offenses. The United States must work bilaterally and multilaterally to abolish the trafficking industry by taking steps to promote cooperation among countries linked together by international trafficking routes. The United States must also urge the international community to take strong action in multilateral fora to engage recalcitrant countries in serious and sustained efforts to eliminate trafficking and protect trafficking victims. (Emphasis added).

Signal emphasizes "victims" to illustrate the point that Congress was concerned with victims of true violations and not with more abstract concerns.

The definitions section, so titled, is 22 U.S.C. 7102 (Lexis 2014). The definitions are further illustrative of the fact that the focus was on victims, on persons who have actually been subjected to the underlying offenses. This validates and reinforces Signal's position.

The criminal offense of trafficking cannot be found in the absence of the underlying violation, these definitions suggest:

> (9) Severe forms of trafficking in persons. The term 'severe forms of trafficking in persons' means—

    (A) sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age; or
    (B) *the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery*.
  (10) Sex trafficking. The term 'sex trafficking' means the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act.
  (11) State. The term 'State' means each of the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, and territories and possessions of the United States.
  (12) Task Force. The term "Task Force" means the Interagency Task Force to Monitor and Combat Trafficking established under section 105.
  (13) United States. The term 'United States' means the fifty States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, American Samoa, Guam, the Commonwealth of the Northern Mariana Islands, and the territories and possessions of the United States.
  (14) Victim of a severe form of trafficking. The term 'victim of a severe form of trafficking' means a person subject to an act or practice described in paragraph (9).
  (15) Victim of trafficking. The term 'victim of trafficking' means a person subjected to an act or practice described in paragraph (9) or (10).

22 U.S.C. § 7102(9)-(15) (Lexis 2014).

    The highlighted language illustrates, for Signal, the fundamental point Signal is trying to advance. The definitions refer to the trafficker's "purpose of subjecti[ng] [the victim] to involuntary servitude, peonage, debt bondage, or slavery." In context, the discussion underscores concern with perpetrators who complete the offense. There is no evidence, in these materials, of a concern with those who struggle to subject. There is no evidence of a concern with the hapless

trafficker. The concern is for those who actually subject individuals to these degrading, exploitive and inhumane conditions.

In addition, it bears repeating that the Court confronts a criminal statute. It is counterintuitive, with regard to such a statute, to interpret the statute as one requiring the fact-finder to speculate about the perpetrator's subjective state of mind.

Whereas when the interpretation is one that demands proof of the completion of the underlying offense, the defendant's purpose is that much more certain and reliably apparent to the fact-finder.

To repeat, "because the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage. To the extent that the language or history of § 209 is uncertain, this 'time-honored interpretive guideline' serves to ensure both that there is fair warning of the boundaries of criminal conduct and that legislatures, not courts, define criminal liability." *Crandon*, *supra*, at 158.

### IV.   CONCLUSION

When all factors legitimately bearing on the interpretive question are taken into consideration, it becomes apparent, Signal argues, that Signal has the better of this argument. *Id*.

Therefore, this Court should employ a jury charge as to trafficking that requires the fact-finder to determine, as a condition precedent to a trafficking "conviction," that the underlying offense or offenses occurred in actual fact – that the trafficking truly was "for labor or services *in violation of* this chapter," i.e., labor that violated the chapter in actual fact.

9

Respectfully submitted this 6th day of February, 2015.

                */s/ Erin Casey Hangartner*_____
Erin Casey Hangartner, La. Bar No. 24768
Alan Dean Weinberger, La. Bar No. 13331
Hal D. Ungar, La. Bar No. 31344
Elham R. Rabbani, La. Bar No. 33322
Brian C. Roux, La. Bar No. 35298
Lance R. Rydberg, La. Bar No. 02089
Mitchell P. Hasenkampf, La. Bar No. 32870
Robert L. Keller III, La. Bar No. 35188
Kevin P. Maney, La. Bar No. 33956
Lauren Masur Davis, La. Bar No. 34669
HANGARTNER RYDBERG & TERRELL, LLC
701 Poydras Street, Suite 310
New Orleans, LA 70139
Telephone: (504) 522-5690
Facsimile:  (504) 522-5689
ehangartner@hanrylaw.com
aweinberger@hanrylaw.com
hungar@hanrylaw.com
erabbani@hanrylaw.com
broux@hanrylaw.com
lrydberg@hanrylaw.com
mhasenkampf@hanrylaw.com
rkeller@hanrylaw.com
kmaney@hanrylaw.com
lmasur@hanrylaw.com
       And
Patricia A. Bollman, La. Bar 17563
James L. Cornblatt, (Pro Hac Vice)
Patricia A. Bollman,
A Professional Law Corporation
Post Office Box 13707
New Orleans, LA 70185
Telephone: (504) 218-5887
Facsimile: (504) 304-0890
patricia@bollmanfirm.com
cornblatt25@gmail.com

*Counsel for Signal International, L.L.C.*
*Signal International, Inc.,*
*Signal International Texas, G.P., and*
*Signal International Texas, L.P.*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2015, I electronically filed the foregoing Memorandum with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to non-CM/ECF participants.

*/s/ Erin Casey Hangartner*
ERIN CASEY HANGARTNER