1         IN THE UNITED STATES DISTRICT COURT FOR

2         THE EASTERN DISTRICT OF LOUISIANA

3             AT NEW ORLEANS

4

KURIAN DAVID, et al.,         )

5                       )

            Plaintiffs,   )

6                       )

        v.          ) Case No. 08-1220;

7                       ) 12-557; 13-6218 "E"

SIGNAL INTERNATIONAL, LLC, et al.,  ) January 12, 2015

8                       ) Jury Trial

            Defendant.  ) Day One - PM

9 _____)

10

11          TRANSCRIPT OF PROCEEDINGS

12      BEFORE THE HONORABLE SUSIE MORGAN

13        UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20 SUSAN A. ZIELIE, RMR, FCRR
   Official Court Reporter
21 HB 406
   500 Poydras Street
22 New Orleans, Louisiana 70130
   susan_zielie@laed.uscourts.gov
23 laedcourtreporter@gmail.com
   504.589.7781

24

25 Proceedings Recorded by Computer-aided Stenography.

```
 1    APPEARANCES:

 2

 3    For the Plaintiffs:           ALAN HOWARD, ESQ.
                                    HUGH SANDLER, ESQ.
 4                                  MELIA AMAL BOUHABIB, ESQ.
                                    CHIENI SUZUKI, ESQ.
 5                                  Crowell & Moring, LLP
                                    590 Madison Avenue
 6                                  New York NY 10022
                                    212.803.4021
 7
                                    DANIEL WERNER, ESQ.
 8                                  NAOMI TSU, ESQ.
                                    KRISTI L. GRAUNKE, ESQ.        03:53PM
 9                                  MORRIS S. DEES, ESQ.           03:53PM
                                    Southern Poverty Law Center
10                                  Immigrant Justice Project
                                    1989 College Avenue NE
11                                  Atlanta GA 30317
                                    404.521.6700
12
                                    MEREDITH B. STEWART, ESQ.
13                                  Southern Poverty Law Center
                                    1055 St. Charles Avenue
14                                  Suite 505
                                    New Orleans LA 70130
15
                                    ANJALI J. NAIR, ESQ.
16                                  Southern Poverty Law Center
                                    400 Washington Avenue
17                                  Montgomery AL 36104

18                                  CHANDRA S. BHATNAGAR, ESQ.
                                    Human Rights Program
19                                  American Civil Liberties Union
                                    American Civil Liberties
20                                    Union Foundation
                                    125 Broad Street
21                                  18th Floor
                                    New York NY 10004
22
                                    IVY O. SURIYOPAS, ESQ.
23                                  DAHSONG KIM, ESQ.
                                    Asian American Legal Defense
24                                    and Education Fund
                                    99 Hudson Street
25                                  12th Floor
                                    New York NY 10013
```

```
1    APPEARANCE - 2

2                                  JOSEPH BJARNSON, ESQ.
                                   Sahn Ward Coschignano & Baker
3                                  333 Earle Ovington Blvd.
                                   Suite 601
4                                  Uniondale NY 11553

5                                  TRACIE L. WASHINGTON, ESQ.
                                   Louisiana Justice Institute
6                                  1631 Elysian Fields Avenue
                                   New Orleans LA 70117

7
     For Signal Defendants:       ERIN CASEY HANGARTNER, ESQ.
8                                  HAL D. UNGAR, ESQ.
                                   ELHAM RABBANI, ESQ.
9                                  BRIAN C. ROUX, ESQ.
                                   LANCE R. RYDBERG, ESQ.
10                                 ALAN WEINBERGER, ESQ.
                                   MITCHELL P. HASENKAMPF, ESQ.
11                                 LAUREN MASUR DAVIS, ESQ.
                                   Hangartner Rydberg
12                                    & Terrell, LLC
                                   One Shell Square
13                                 701 Poydras Street
                                   Suite 310
14                                 New Orleans LA 70139

15                                 PATRICIA A. BOLLMAN, APLC
                                   JAMES L. COMBLATT, ESQ.
16                                 3636 South I-10 Service Rd. W.
                                   Suite 200
17                                 Metairie LA 70001

18   For Dewan Defendants:        STEPHEN H. SHAPIRO, ESQ.
                                   700 Camp Street
19                                 New Orleans LA 70130

20   For Burnett Defendant:       TIMOTHY W. CERNIGLIA, ESQ.
                                   DANIEL BURAS, JR., ESQ.
21                                 Law Office of Timothy Cerniglia
                                   1521 St. Charles Avenue
22                                 New Orleans LA 70130

23

24

25
```

```
1              NEW ORLEANS, LOUISIANA; MONDAY, JANUARY 12, 2014      02:46PM

2                            2:07 P.M.                              02:46PM

3              (Chambers conference, on the record, jury not        02:46PM

4    present.)                                                       02:46PM

5              THE COURT:  So Cesyle has told you who the jurors are, 02:46PM

6    and I understand the plaintiffs have a motion.                 02:46PM

7              MR. HOWARD:  Yeah.  We do have a Batson vs. Kentucky  02:46PM

8    motion, Your Honor, to put on the record.                      02:46PM

9              The twenty-four-person pool from which preemptory     02:46PM

10   strikes were applied was I think one-third African-American.   02:46PM

11             Defendants collectively asserted two-thirds of       02:46PM

12   their strikes against African-Americans.  Signal's -- both of  02:46PM

13   their strikes were against African-Americans.                  02:46PM

14             Thus, it doesn't seem on its face when you look at    02:46PM

15   the information we have from these people to see clear other    02:46PM

16   reasons for strikes.                                           02:46PM

17             So I'll just put on the record, we're talking        02:46PM

18   about Juror No. 3, that's Peggy Blanchard --                   02:46PM

19             THE COURT:  Do it by defendant.  Signal struck which  02:46PM

20   ones?                                                          02:46PM

21             MR. HOWARD:  I would need the list from Cesyle.       02:46PM

22             THE COURT:  So Dewan?                                 02:46PM

23             MR. HOWARD:  So Dewan struck Peggy Blanchard, Juror No. 02:46PM

24   3, a black female, African-American female.                    02:46PM

25             THE COURT:  Let's get the list straight first, and then 02:46PM
```

1    we'll talk about it.

2          MR. HOWARD:  No. 11 was Robert White, an

3    African-American struck by Signal, male.

4             No. 13 is Carla Jones, that was an

5    African-American woman, struck by Signal.

6             And, No. 17 Edna Delaney, that was an

7    African-American woman struck by Malvin Burnett.

8          THE COURT:  17?

9          MR. HOWARD:  Correct.

10         THE COURT:  So do you want to say anything about those

11   individuals, or do you just want Signal to respond?  Do you have

12   anything else to say?

13         MR. HOWARD:  No.  Just it looks on its face that was

14   the reason for their being struck.

15         MS. HANGARTNER:  Clearly, that's not the reason, Your

16   Honor.

17            No. 3, both she and her husband are social

18   workers.

19         MR. HOWARD:  No. 3, you didn't strike.

20         MS. HANGARTNER:  11 was the USPS driver, which is -- or

21   works for the USPS.

22         THE COURT:  Works for the post office.

23         MS. HANGARTNER:  Right.

24            To me, that's a little too close to unions for me.

25            Also, first wife, Special Ed.  Although, that

```
 1    wasn't as much.                                            02:46PM
 2            And previously worked at Avondale as a programer.  02:46PM
 3            THE COURT:  And what's the wife being in Special Ed 02:46PM
 4    have to do with it?                                        02:46PM
 5            MS. HANGARTNER:  I'm not -- I've had bad luck with 02:46PM
 6    teachers in the past on juries, especially Special Ed.  In 02:46PM
 7    criminal court, though.                                    02:46PM
 8            THE COURT:  And then what about Avondale?          02:46PM
 9            MS. HANGARTNER:  I am sympathetic.                 02:46PM
10            Previously worked at Avondale as a program         02:46PM
11    administrator.                                             02:46PM
12            THE COURT:  What about that caused you --          02:46PM
13            MS. HANGARTNER:  Years ago, Avondale had H-2B Indian 02:46PM
14    workers.  I'm not sure, but that is in the timeframe, I would 02:46PM
15    think.                                                     02:46PM
16            MR. HOWARD:  Your Honor, may I briefly respond?    02:46PM
17            THE COURT:  Yes.                                   02:46PM
18            MR. HOWARD:  The teacher point is clearly pretext  02:46PM
19    because Signal left on the panel I think four or five teachers. 02:46PM
20    The fact that his wife is a teacher is so far removed.     02:46PM
21            Secondly, the post office being tied with unions,  02:46PM
22    that defies credibility as well.                          02:46PM
23            And, finally, there is no clarity on the timeframe 02:46PM
24    at Avondale or whether they used H-2B workers in the timeframe. 02:46PM
25            So I would suggest these are kind of pretextual    02:46PM
```

1   arguments.                                                    02:46PM

2          MR. ROUX:  Your Honor, at various points -- I'm sorry.  02:46PM

3          MS. HANGARTNER:  I absolutely disagree.  Avondale, we  02:46PM

4   do not know the timeframe.  That's too close of a call.        02:46PM

5          I'm sorry, but I have always cut postal workers.        02:46PM

6          And Special Ed, again, I had a very bad experience      02:46PM

7   with -- and I understand it's not him -- -but a special        02:46PM

8   education teacher on a jury in criminal court that was very    02:46PM

9   important to me, and I lost it.                                 02:46PM

10         That's it.                                              02:46PM

11         THE COURT:  Okay.                                       02:46PM

12         Then the other is No. 13.                               02:46PM

13         MS. HANGARTNER:  She is a previous plaintiff in a       02:46PM

14   matter.  Her two children, I believe, were injured.  Works at 02:46PM

15   Family Dollar.  She's a cashier.  She's only been there ten   02:46PM

16   months.                                                        02:46PM

17         I don't -- I got the feeling from her that she is       02:46PM

18   not going to be focused on this type of trial, this length of 02:46PM

19   trial, based on working in Family Dollar for only ten months. 02:46PM

20         I believe she was a sole provider as well.              02:46PM

21         MS. TSU:  Her kids were 23 and 28.  She wasn't a sole   02:46PM

22   provider.                                                      02:46PM

23         THE COURT:  Anything else?                              02:46PM

24         MS. HANGARTNER:  No, Your Honor.                        02:46PM

25         MR. HOWARD:  In response to that, for example, white    02:46PM

1    female, Juror No. 27, was a plaintiff in a lawsuit, and Signal

2    did not strike her.  It's Donna Autin.

3                THE COURT:  Anyone else?

4                MR. BHATNAGAR:  Your Honor, the lawsuit, she said, was

5    11 years ago.

6                MS. HANGARTNER:  When your children are gravely

7    injured, I don't think you forget that.

8                THE COURT:  Did we hear gravely injured?

9                MR. BHATNAGAR:  No.

10               MS. HANGARTNER:  That's what I got.

11               THE COURT:  Never heard that.

12                    Anything else on 13?

13                    (No response.)

14               THE COURT:  Mr. Shapiro, you had No. 3.

15               MR. SHAPIRO:  That's correct, Your Honor.

16                    This was where you have the social worker husband

17   and wife team.  She is a professor at SUNO.  Very well-educated.

18                    But what would bother me about that is having a

19   social work background to garner sympathy for the plaintiffs.

20   Actually was interested -- I was interested in No. 13, and I

21   actually decided not to go with that because my client is from

22   India and I wanted -- I didn't want to strike that.  But,

23   unfortunately, the codefendants decided they wanted to strike

24   it, so I didn't have any choice in the matter.

25                    So I struck 3, and there is absolutely no pretext.

1    I would never do anything that would be racially biased.    02:46PM

2         THE COURT:  But your stated reason is because she and    02:46PM

3    her husband were both social workers and you thought they would    02:46PM

4    have sympathy for the plaintiff.    02:46PM

5         MR. SHAPIRO:  I think so, yeah.    02:46PM

6         THE COURT:  Anyone else?    02:46PM

7         MR. SHAPIRO:  No.    02:46PM

8         MR. HOWARD:  The point Collin is making is Juror No.    02:46PM

9    10, which was not stricken, he is a white male, is a former    02:46PM

10   guidance counselor.  There are well-educated white females on    02:46PM

11   the jury that were not stricken.    02:46PM

12        THE COURT:  Any response?    02:46PM

13        MR. SHAPIRO:  Not really.  I mean, this is a very    02:46PM

14   imperfect science.  We have to do the very best we can with all    02:46PM

15   of our intelligence and emotions.  And I don't know how that    02:46PM

16   really makes a difference, guidance counselor, social worker.    02:46PM

17            That kind of just proves my point, Your Honor.    02:46PM

18   When the first four strikes that come back here are all    02:46PM

19   African-American, it raises a red flag for us.    02:46PM

20        THE COURT:  Then Burnett had Juror No. 17.    02:46PM

21        MR. CERNIGLIA:  Yes, Your Honor.    02:46PM

22            But I'd also note, that was struck as well, Juror    02:46PM

23   No. 25, who was a white female, high school assistant principal.    02:46PM

24            And with only two.  But as far as -- out of the    02:46PM

25   two, one could be white, one could be black, I don't see how    02:46PM

1    that shows anything.                                           02:46PM

2               But No. 17 worked for Avondale, and my client      02:46PM

3    is -- there is likely to be testimony, a lot of testimony,    02:46PM

4    coming out about his work for Avondale, and I don't have a clue 02:46PM

5    what sort of --                                               02:46PM

6          THE COURT:  About Burnett doing work of this type for   02:46PM

7    Avondale?                                                     02:46PM

8          MR. CERNIGLIA:  Of this type for Avondale.              02:46PM

9               I don't know what Avondale's thoughts on that or   02:46PM

10   anybody that worked there, and I'm not going to take a chance on 02:46PM

11   a fellow what was in an automobile accident who I believe had a 02:46PM

12   lawsuit.                                                      02:46PM

13         MR. HOWARD:  Your Honor, the record is actually the     02:46PM

14   sister-in-law, Juror No. 40.                                  02:46PM

15         MS. CORRANE:  Actually, I think it was the brother.     02:46PM

16         MR. HOWARD:  So she did not herself work for Avondale.  02:46PM

17         MR. CERNIGLIA:  Still close enough.                     02:46PM

18         THE COURT:  Anything else about 17?                     02:46PM

19         MR. HOWARD:  No, Your Honor.                            02:46PM

20         THE COURT:  Any response?                               02:46PM

21         MR. CERNIGLIA:  No.                                     02:46PM

22         THE COURT:  Okay.  All right.                           02:46PM

23              So I need to go look at this, and I'll let you all 02:46PM

24   know what my decision is.                                     02:46PM

25         MR. HOWARD:  The other issue that came up, Your Honor,  02:46PM

1   the concern now with starting opening statements is that we                          02:46PM

2   clearly will not get all the opening statements in.                                  02:46PM

3            Also, I'm a bit concerned there are going to be                             02:46PM

4   some people that you're going to be impaneling who have                              02:46PM

5   expressed hardships, and I'm just worried they are not going to                      02:46PM

6   be concentrating on my opening, I'm worried they're going to be                      02:46PM

7   worried about how they're spending the next five weeks, how                          02:46PM

8   they're going to take care of things.                                               02:46PM

9            My suggestion would be to start opening tomorrow                            02:46PM

10  morning, they'll have all their ducks in a row.                                      02:46PM

11       MS. HANGARTNER:  And we have five jurors who are from                           02:46PM

12  eighty or more miles away.                                                           02:46PM

13       THE COURT:  If I do that, then I have to take some time                         02:46PM

14  off.  Because I literally have scheduled every part of this.                         02:46PM

15       MR. HOWARD:  That's fine with us.  Because of the                               02:46PM

16  experts you have excluded, we're not going to take all the time.                     02:46PM

17       THE COURT:  Does anybody have any objection?                                    02:46PM

18       MR. CERNIGLIA:  No.  I have no objection to that.                               02:46PM

19       MR. SHAPIRO:  I have no objection with Dewan.                                   02:46PM

20       THE COURT:  So I'm going to exclude some time from you,                         02:46PM

21  and we'll start tomorrow morning.  We can't start at 8:30, we'll                     02:46PM

22  have to start at 9.                                                                  02:46PM

23            So I'll go in, I'm going to have Cesyle read the                           02:46PM

24  names of the jurors who have been picked, let the others leave.                      02:46PM

25  Then I'll give them my opening instructions and I'll tell them                       02:46PM

```
1    we'll come back tomorrow for opening statement.                02:46PM

2            MS. HANGARTNER:  Thank you, Your Honor.                 02:46PM

3            THE COURT:  As far as how far away they're from, I      02:46PM

4    guess it really highlights the fact that we all need to be as   02:46PM

5    efficient as you can.                                           02:46PM

6            MR. HOWARD:  That's certainly our plan.                 02:46PM

7            THE COURT:  Because it is going to be a hardship on     02:46PM

8    them to come that distance.  And we've got to keep that in mind. 02:46PM

9            MR. HOWARD:  Okay, Your Honor.                          02:46PM

10           MS. HANGARTNER:  Your Honor, just for the record, I'm   02:47PM

11   not going to lodge an official reverse *Batson* challenge, but I 02:47PM

12   do want to point out for the record that all of the plaintiffs' 02:47PM

13   strikes were Caucasian.                                         02:47PM

14           THE COURT:  Okay.  So let me look at the Batson         02:47PM

15   challenges.  Let's not go back in the courtroom.  I'll do it on 02:47PM

16   the record in here, my ruling.                                  02:47PM

17                (Pause in proceedings.)                            02:47PM

18           THE COURT:  The plaintiffs raised a *Batson* challenge  02:47PM

19   after jury selection based on race, and their argument was that 02:47PM

20   the defendants asserted two-thirds of their *Batson* challenges to 02:47PM

21   strike African-Americans.                                      02:47PM

22                Signal struck Juror No. 11, who is an             02:47PM

23   African-American male, and Juror No. 13, an African-American    02:47PM

24   female.  I think that's right.                                  02:47PM

25           MR. HOWARD:  I think that's right, Your Honor, yes.     02:47PM
```

1          THE COURT:  And Dewan struck Juror No. 3, who is an

2     African-American female.

3                And Burnett struck Juror No. 17, who is an

4     African-American female.

5                I've consulted with Fifth Circuit cases about

6     *Batson* challenges, and they have a three-step process.  I'm sure

7     you're all familiar with.

8                First, the complaining party has to make a prima

9     facie showing that opposing counsel has exercised a peremptory

10    challenge on the basis of race.

11               Once a showing has been made, the burden shifts

12    back to the striking party to articulate a race-neutral

13    explanation for the strike.

14               Thereafter, the Court must determine whether the

15    *Batson* claimant has proven purposeful discrimination.

16               So, to establish the prima facie case, the

17    plaintiffs had to show that the circumstances surrounding the

18    peremptory challenges raised an inference of purposeful

19    discrimination, and the Court has to consider all relevant

20    circumstances.  It is not enough to come forward just with

21    numbers; you have to have facts.

22               So, when thinking about this, I thought there are

23    three different defendants, they had a total of six peremptory

24    challenges.  But there were two each, and they did not exercise

25    them as one.  And, in fact, apparently they had disagreed about

1    some of the peremptory challenges.                                    02:47PM

2              So I think you have to look at it individually,              02:47PM

3    and not as the defendants as a group.                                 02:47PM

4              So, for Burnett and Dewan, they each struck one            02:47PM

5    Caucasian and one African-American.  And then Signal then struck      02:47PM

6    two African-Americans.                                                02:47PM

7              So I did not see that the plaintiffs had even met           02:47PM

8    their prima facie showing that they exercised them on the basis       02:47PM

9    of race.  But, even if they had, I think that all three               02:47PM

10   defendants articulated a race-neutral explanation, and I don't        02:47PM

11   find that the plaintiffs have proven purposeful discrimination.       02:47PM

12             So the *Batson* challenge is denied.                        02:47PM

13             So we'll go back in the courtroom.                          02:47PM

14             (Chambers conference concluded.)                            02:47PM

15             (Jury now present.)                                         02:47PM

16         THE COURT:  All right, be seated.                               02:47PM

17             I'd like the courtroom deputy to read the names of          02:47PM

18   the persons who will serve on the jury.                               02:47PM

19         CASE MANAGER:  Tracey Griffin-Robertson.  Braya                 02:47PM

20   Rodrigue.  Meghann Roper.  Michael Toups.  Yolande Epps.              02:47PM

21             Please forgive me if I'm mispronouncing your                02:47PM

22   names.                                                                02:47PM

23             Penny Damico.  Gina Egan.  Donna Autin.  Trenease           02:47PM

24   Knox.  Katie Laughlin.  Brandon Harris.                               02:47PM

25         THE COURT:  All right.  To those of you who are in the          02:47PM

1    courtroom who were not selected, I want to tell you how much I       02:47PM

2    appreciate your being here today.  And I know it has taken some      02:47PM

3    time out of your lives, but it's very important to the system        02:47PM

4    that you all participate.                                            02:47PM

5              If you weren't selected, your being here was very          02:47PM

6    important, and we all appreciate it very much.                       02:47PM

7              So we're going to release you and let you all go           02:47PM

8    back down to the jury room on the first floor.                       02:47PM

9              If you were selected, as others leave, if you will         02:47PM

10   all come sit in the jury box in the front, we'll -- I'm sorry.       02:47PM

11        PROSPECTIVE JUROR:  Do you have a few minutes just to           02:47PM

12   call my principal and let him know?                                  02:47PM

13        THE COURT:  Oh, yeah.  When you come back, I'll talk to         02:47PM

14   you about that.                                                      02:47PM

15             All right.  Everybody else can be seated, and then         02:47PM

16   the courtroom deputy can swear in the jurors.                        02:47PM

17             Does it look like we have twelve people?                   02:47PM

18             So everyone but the jurors can be seated.                  02:47PM

19             Jurors, would you stand up for a second while we           02:47PM

20   get you organized?                                                   02:47PM

21             You all can have a seat while we get all the               02:47PM

22   jurors.                                                              02:48PM

23        CASE MANAGER:  We're missing a juror, Judge.                    02:48PM

24        THE COURT:  Call the jurors.                                    02:48PM

25        CASE MANAGER:  Tracey Robinson.  Meghann Rodrigue --           02:48PM

1    Meghann Roper.  Michael Toups.  Yolande Epps.  Penny Damico.    02:48PM

2    Tyler Toups.    02:48PM

3              Okay.  I have to go back down and get him.    02:48PM

4              Gina Egan.  Donna Autin.  Trenease Knox.  Katie    02:48PM

5    Laughlin.  And Brandon Harris.    02:48PM

6         THE COURT:  What number was Tyler Toups?    02:48PM

7         CASE MANAGER:  Tyler Toups, 22.    02:48PM

8         THE COURT:  So we're going to have to get Mr. Toups.    02:49PM

9              So I'm going to go back to my office for a few    02:49PM

10   minutes, and the lawyers can stand at ease.  You all can just    02:49PM

11   sit there for a few minutes and we'll locate Mr. Toups and then    02:49PM

12   we'll swear you in and continue.    02:49PM

13             I'll tell you that I've decided that we'll do    02:49PM

14   opening argument in the morning.  So, when I come back, I'm    02:49PM

15   going to give you some preliminary instructions and then you'll    02:49PM

16   be allowed to leave.  So you'll have an opportunity to call home    02:49PM

17   and make whatever arrangements you need to.    02:49PM

18        CASE MANAGER:  He's coming back up.  I'm going to wait    02:49PM

19   for him.    02:49PM

20        THE COURT:  So apparently he's on his way up, so we'll    02:49PM

21   just stay in place.    02:49PM

22             (Pause in proceedings.)    02:49PM

23        THE COURT:  Welcome back, Mr. Toups.    02:52PM

24             Now, would the jury please stand and be sworn in?    02:52PM

25             (Jury panel sworn.)    02:52PM

1        CASE MANAGER:  You may be seated.                02:53PM

2        THE COURT:  I have no doubt that you as jurors are   02:53PM

3  mindful of the great responsibilities and certainly you're aware   02:53PM

4  that your conduct during this trial will be observed by the   02:53PM

5  Court, your fellow jurors, the parties, and the attorneys for   02:53PM

6  the parties, and other persons both inside and outside this   02:53PM

7  courtroom.                                           02:53PM

8        Cesyle, I would like for this juror right here in   02:53PM

9  this corner to move so I can see her.  If you all would scoot   02:53PM

10  down one.  She's hidden behind the court reporter.  I would just   02:53PM

11  rather see you all while I'm talking to you.          02:53PM

12        I expect, and your responsibility demands, that   02:53PM

13  you'll be extremely careful in the manner that you conduct   02:53PM

14  yourselves in order that no one has any doubt that this case is   02:53PM

15  being fairly and impartially tried and that in the end justice   02:53PM

16  has been done.                                       02:54PM

17        For the same reasons, the attorneys in this case,   02:54PM

18  the parties, the witnesses and all others identified with or   02:54PM

19  connected with this trial or its participants should be equally   02:54PM

20  careful in their conduct.                            02:54PM

21        During the course of the trial, jurors shall not   02:54PM

22  engage or attempt to engage or have any conversation of any kind   02:54PM

23  whatsoever with any of the persons connected with this trial,   02:54PM

24  including the parties, their relatives or family, the attorneys   02:54PM

25  for the parties, witnesses or any other person identified with   02:54PM

1    this trial.                                                      02:54PM

2            And, likewise, any person identified with this          02:54PM

3    trial shall not engage or attempt to engage in any conversation 02:54PM

4    whatsoever with any juror.  If this happens, I ask that you      02:54PM

5    report it immediately to me.                                     02:54PM

6            You as jurors should avoid allowing yourselves to        02:54PM

7    be placed in a position where you are outside the courtroom      02:54PM

8    where discussions of the case are or may be conducted by any of  02:54PM

9    the parties to the trial.                                        02:54PM

10           Furthermore, the attorneys, the parties, the             02:54PM

11   witnesses and other persons who may be observing the trial or    02:55PM

12   are connected with it in any way must be particularly careful    02:55PM

13   not to discuss the case where there is a possibility that you,   02:55PM

14   the jurors, may hear their remarks.  If that occurs, please      02:55PM

15   notify me immediately.                                           02:55PM

16           All of us were trained to extend to acquaintances,       02:55PM

17   perhaps even strangers, a good morning, a hello or other         02:55PM

18   neighborly greeting.  You should not engage in such exchanges    02:55PM

19   with the parties, their counsel or any other persons connected   02:55PM

20   with this trial, and you should not take offense to the fact     02:55PM

21   that such persons do not extend such a greeting to you.          02:55PM

22           The reason that such exchanges are not indulged in       02:55PM

23   is because, although they seem innocent, this could nonetheless  02:55PM

24   give the impression of a lack of impartiality.  And, in creating 02:55PM

25   an impression of being partial is almost as bad as being biased, 02:55PM

1    and should be avoided.    02:55PM

2    All of you should realize that, if it is called to    02:55PM

3    my attention that these instructions have been violated, I will    02:56PM

4    have no alternative but to take appropriate action.  And I'm    02:56PM

5    confident that, in view of the instructions I've given you, that    02:56PM

6    this will not be required.    02:56PM

7    I would like at this time to give you the    02:56PM

8    following specific instructions.    02:56PM

9    You are not to discuss the case with anyone during    02:56PM

10    the course of this trial.  This includes your wife, your    02:56PM

11    husband, your child, your relatives, friends and strangers.    02:56PM

12    Further, you must not communicate with or provide    02:56PM

13    any information to anyone by any means about this case.  You may    02:56PM

14    not use any electronic device or media, such as a telephone or    02:56PM

15    cellphone, an iPad or computer, the Internet or any Internet    02:56PM

16    service, or any websites, such as Facebook, to communicate to    02:56PM

17    anyone any information about this case, or to conduct any    02:56PM

18    research about this case until after I accept your verdict.    02:56PM

19    You shall not discuss this case even among    02:57PM

20    yourselves until it's concluded and you are instructed to begin    02:57PM

21    your deliberations.    02:57PM

22    If any publicity about this case has come to your    02:57PM

23    attention before this moment, you must strike it from your minds    02:57PM

24    and completely disregard anything that has come to your    02:57PM

25    attention outside this courtroom.    02:57PM

1      From this moment on, you are not to read any

2  newspapers or other accounts of this trial, nor are you to view

3  or listen to any television news reports, radio reports or other

4  accounts of this trial.

5      You should not check the Internet, any websites or

6  blogs to find out information about this case.  You should also

7  not check Facebook or any other social networking site to find

8  out information about this case.

9      This is necessary because your verdict must be

10  based solely on the evidence presented in this trial in

11  accordance with what you hear and see in this courtroom and in

12  accordance with the Court's instructions on the law applicable

13  to this case.

14      Pay close attention to the testimony and evidence.

15  If you would like to take notes during the trial, you may do so.

16  If you do take notes, be careful not to get so involved in

17  note-taking that you become distracted and miss part of the

18  testimony.

19      Your notes are to be used only as aids to your

20  memory; and, if your memory should later be different from your

21  notes, you should rely on your memory and not on your notes.

22      If you do not take notes, rely on your own

23  independent memory of the testimony.

24      Do not be unduly influenced by the notes of other

25  jurors.  A juror's notes are not entitled to any greater weight

1   than the recollection of each juror concerning the testimony.   02:58PM

2            Even though the court reporter is making   02:58PM

3   stenographic notes of everything that is said, a typewritten   02:58PM

4   copy of the testimony will not be available for your use during   02:58PM

5   the deliberations.   02:59PM

6            On the other hand, all exhibits will be available   02:59PM

7   to you during your deliberations.   02:59PM

8            Finally, you are not to reach any conclusions in   02:59PM

9   this case until all the evidence has been presented, the Court   02:59PM

10   has instructed you on the law applicable to this case and it is   02:59PM

11   given to you for deliberation and decision.   02:59PM

12            In the morning when you arrive and during the day   02:59PM

13   when you are in the building and the court is in recess or when   02:59PM

14   for any other reason the jury is not required to be in the   02:59PM

15   courtroom, I ask that you go to and remain in the jury room or   02:59PM

16   remain under the direct supervision of the United States Marshal   02:59PM

17   until the marshal advises you to enter the courtroom.  Please do   02:59PM

18   not stand around in the halls.   02:59PM

19            This case will proceed in the following order:   02:59PM

20            First, counsel for the plaintiffs and counsel for   02:59PM

21   the defendants will have the opportunity to make opening   02:59PM

22   statements.  Plaintiffs' counsel will make an opening statement   02:59PM

23   at the beginning of the case.   03:00PM

24            The statement is nothing more than an explanation   03:00PM

25   of the plaintiffs' theory of the case and serves merely as an   03:00PM

1    introduction to the evidence which the plaintiffs intend to

2    produce during the course of the trial.

3              The defendants may make opening statements

4    following the opening statement of the plaintiffs.  Like the

5    plaintiffs' opening statement, any defense opening statement, if

6    made, would be nothing more than an explanation of the

7    defendant's theory of the case.

8              Neither side is required to make an opening

9    statement, but may do so if they chose.

10             Second, the plaintiffs will introduce evidence in

11   support of their allegations.

12             At the conclusion of the plaintiffs' evidence,

13   counsel for the defendant may introduce evidence.

14             Third, rebuttal evidence may be introduced.

15             Fourth, at the conclusion of the evidence, the

16   parties will have an opportunity to present a closing argument

17   in support of their respective cases.  What is said in closing

18   arguments is not evidence, just as what is said in any opening

19   statement is not evidence.

20             The arguments are intended to present to you the

21   contentions of the respective parties as to what the evidence

22   has shown and what inferences may be drawn from the evidence.

23             Counsel for the plaintiffs has the right to open

24   and close the arguments.

25             Finally, I will instruct you on the applicable

```
 1    law, and you will then retire to consider your verdict.  The law     03:01PM
 2    applicable to this case will be contained in the instructions        03:01PM
 3    which I give you during the course of the trial, and it is your       03:01PM
 4    duty to follow such instructions.                                     03:01PM
 5              It is your duty to determine the facts and to               03:01PM
 6    determine them from the evidence.  In so doing, you must not          03:01PM
 7    indulge in guesswork or speculation.                                  03:01PM
 8              The evidence that you are to consider consists of           03:01PM
 9    the testimony of witnesses and the exhibits admitted into            03:01PM
10    evidence.  In considering the weight and value of the testimony      03:01PM
11    of any witness, you may take into consideration the attitude and     03:02PM
12    behavior of the witness, the interest of the witness in the         03:02PM
13    outcome of the suit, the relation of the witness to the parties,    03:02PM
14    the inclination of the witness to speak truthfully or not, the      03:02PM
15    probability or improbability of the witness's statements and all    03:02PM
16    other facts and circumstances in evidence.  Thus, you may give      03:02PM
17    the testimony of any witness just such weight and value as you      03:02PM
18    believe the testimony of such witness is entitled to receive.       03:02PM
19              The admission of evidence in court is governed by          03:02PM
20    rules of law.  From time to time, it may be the duty of the         03:02PM
21    attorneys to make objections to the admissibility of evidence.      03:02PM
22              It is my duty as judge to rule on those                    03:02PM
23    objections.  My rulings may affect whether you may consider         03:02PM
24    certain evidence.  You must not concern yourselves with the         03:02PM
25    objections or the Court's reasons for its rulings on them.          03:02PM
```

1        You must not consider testimony or exhibits to

2   which an objection was sustained or which has been ordered

3   stricken.  If I instruct you not to consider testimony or

4   evidence to which an objection is sustained or which has been

5   ordered stricken, you must completely ignore such testimony or

6   evidence or not take it into consideration when deciding the

7   case.

8        You must not be influenced in any degree by any

9   personal feelings of sympathy for or prejudice against any party

10  or their counsel.

11       No statement or ruling or remark which I may make

12  during the presentation of testimony or evidence is intended to

13  indicate my opinion as to what the facts are.  You are to

14  determine the facts.  In this determination, you alone must

15  decide upon the believability of the evidence and its weight and

16  value.

17       Now, as I mentioned to you, we're going to do

18  opening statements tomorrow morning at 9 o'clock, so I'm going

19  to release you this afternoon to make any calls or make any

20  arrangements you need to make.

21       Tomorrow morning, we'll start at 9 o'clock.  My

22  courtroom is on the third floor.  It's in the same position as

23  this courtroom, but just one floor down.  And my name is Judge

24  Morgan.  So you'll see my name outside the courtroom on the

25  door.

1    So you're to report there tomorrow morning and 03:04PM

2  then we'll get started then. 03:04PM

3    So thank you all very much.  I'll see you 03:04PM

4  tomorrow. 03:04PM

5    CASE MANAGER:  Everyone rise, please. 03:04PM

6    THE COURT:  You know what, I think I said that 03:04PM

7  incorrectly.  I was thinking I was going back to my courtroom, 03:04PM

8  but we're going to have opening remarks in this courtroom. 03:04PM

9    So come back here tomorrow morning at 9.  Maybe 03:04PM

10  the next day we'll switch back to my courtroom.  So I'll see you 03:04PM

11  here in the morning. 03:05PM

12    (Jury exits.) 03:05PM

13    THE COURT:  I'm going to meet with counsel in the 03:05PM

14  conference room, off the record.  We're going to talk about 03:05PM

15  housekeeping matters. 03:06PM

16    (3:04 p.m., proceedings concluded.) 03:06PM

17

18

19    CERTIFICATE

20

21

22    I, Susan A. Zielie, Official Court Reporter, do hereby
   certify that the foregoing transcript is correct.

23

24

25    /S/ SUSAN A. ZIELIE, FCRR
   _____
   Susan A. Zielie, FCRR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25