```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
2

3     KURIAN DAVID, et al.,                  CIVIL ACTION
              Plaintiffs
4
      versus                                 No. 08-1220
5

6     SIGNAL INTERNATIONAL, LLC., et al.,    Section "E"
              Defendants
7

8     Related Case:

9     EQUAL EMPLOYMENT OPPORTUNITY           CIVIL ACTION
      COMMISSION,
10            Plaintiffs

11    versus                                 No. 12-557

12
      SIGNAL INTERNATIONAL, LLC, et al.,     Section "E"
13            Defendants

14    Related Case:

15    LAKSHMANAN PONNAYAN ACHARI, et al.,    CIVIL ACTION
              Plaintiffs
16
      versus                                 No. 13-6218
17                                           (c/w 13-6219,
                                              13-6220,13-6221
18                                            14-1818)
      SIGNAL INTERNATIONAL, LLC, et al.,
19            Defenants                       Section "E"

20    Applies to:
      David 08-1220
21

22                          DAY 21
                     February 11, 2015
23

24          TRANSCRIPT OF THE TRIAL PROCEEDINGS
         BEFORE THE HONORABLE SUSIE MORGAN,
25           UNITED STATES DISTRICT JUDGE,
                   AND A JURY.


                    OFFICIAL TRANSCRIPT
```

1    **APPEARANCES:**

2

3    For Plaintiffs:                    ALAN HOWARD, ESQ.
                                        HUGH D. SANDLER, ESQ.
4                                       CHIEMI D. SUZUKI, ESQ.
                                        Crowell & Moring, LLP
5                                       590 Madison Avenue
                                        New York, NY 10022
6                                       212.803.4021

7                                       DANIEL WERNER, ESQ.
                                        NAOMI TSU, ESQ.
8                                       MELIA AMAL BOUHABIB, ESQ.
                                        MEREDITH STEWART, ESQ.
9                                       Southern Poverty Law Center
                                        Immigrant Justice Project
10                                      233 Peachtree Street NE
                                        Atlanta, GA 30303
11                                      404.521.6700

12                                      CHANDRA S. BHATNAGAR, ESQ.
                                        American Civil Liberties Union
13                                      Foundation (New York/Broad)
                                        125 Broad Street, 18th Floor
14                                      New York, NY  10004

15
     For Signal Entities:               ERIN CASEY HANGARTNER
16                                      ELHAM RABBANI, ESQ,
                                        HAL UNGAR, ESQ.
17                                      BRIAN ROUX, Ph.D., ESQ.
                                        LANCY RYDBERG, ESQ.
18                                      Hangartner Rydberg & Terrell
                                        One Shell Square
19                                      701 Poydras Street
                                        Suite 310
20                                      New Orleans, LA 70139

21                                      PATRICIA BOLLMAN, ESQ.
                                        Patricia Bollman, APLC
22                                      P.O. Box 13707
                                        New Orleans, LA 70185.
23
                                        ALAN WEINBERGER, ESQ.
24                                      Weinberger Law Firm
                                        201 St. Charles Avenue
25                                      New Orleans, LA  70170

**OFFICIAL TRANSCRIPT**

```
1    For Sachin Dewan:              STEPHEN SHAPIRO, ESQ.
                                    Law Office of Stephen Shapiro
2                                   700 Camp Street
                                    New Orleans, LA 70130
3

4    For Malvern Burnett:          TIM CERNIGLIA, ESQ.
                                    Law Office of Tim Cerniglia
5                                   1521 St. Charles Avenue
                                    New Orleans, LA 70130
6

7

8

9
     REPORTED BY:
10
     MARY V. THOMPSON, RMR, FCRR
11   Official Court Reporter
     HB 273
12   500 Poydras Street
     New Orleans, Louisiana 70130
13   (504)589-7783
     mary_v_thompson@laed.uscourts.gov
14

15

16      .

17

18

19

20

21

22

23

24

25


                              OFFICIAL TRANSCRIPT
```

1                              INDEX

2

3                                                 PAGE NO.

4

5

6

7    **JURY CHARGE**....................................   4991

8

9

10

11   **JURY QUESTION**..................................   5061

12

13

14

15   **JURY DISMISSAL**.................................   5069

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

THE COURT:  Give me a minute to get some of this stuff out of my way.

I have one thing to tell you all.

Juror No. 2, Braya Rodrigue, I believe is the right name, was in a minor automobile accident this morning, but she is going to the hospital to get checked out so she will not be here.

So I think we have nine so we'll have a nine-person jury.

We have copies of the jury instructions ready for them and, unless anybody has anything that we need to discuss --

(No response.)

THE COURT:  -- we're ready.

                              (Jury in at 8:23 a.m.)

                              (Call to order of the Court.)

THE COURT:  Good morning.  Be seated.

I think the ladies and gentlemen of the jury have been informed that Ms. Rodrigue had a minor automobile accident and that she will not be here this morning, so you are now our jury.

And what we're going to do this morning is go over the instructions that -- when I will give you the law that

**OFFICIAL TRANSCRIPT**

1    you are to consider as you deliberate.

2         You have a copy of the instructions in front of

3    you, and you can follow along as I read them -- or not, as

4    you see fit.

5         You have heard the evidence in this case.  I will

6    now instruct you on the law that you must apply.

7         In any jury trial, there are, in effect, two

8    judges.  I am one of the judges.  The other is you, the jury.

9    It is my duty to preside over the trial and to determine what

10   testimony and other evidence is admissible under the law for

11   your consideration.  It is also my duty at the end of the

12   trial to instruct you on the law applicable to this case.  It

13   is your duty to follow the law as I shall state it to you.

14   You must apply that law to the facts as you find them from

15   the evidence in this case.  You are not to single out one

16   instruction alone as stating the law, but you must consider

17   the instructions as a whole.

18        Do not consider any statement that I have made in

19   the course of trial or make in these instructions as an

20   indication that I have any opinion about the facts in this

21   case.

22        You have heard the closing arguments of the

23   attorneys.  Statements and arguments of the attorneys are not

24   evidence and are not instructions on the law.  They are

25   intended only to assist you in understanding the evidence and

**OFFICIAL TRANSCRIPT**

1    the parties' contentions.

2           Answer each question from the facts as you find

3    them.  Do not decide who you think should win and then answer

4    the questions accordingly.  Your answers and your verdict

5    must be unanimous.

6           The fact that a person has brought a lawsuit and is

7    in court seeking damages creates no inference or presumption

8    that such person is entitled to a judgment for any amount at

9    all.  Anyone may make a claim, and the fact of making the

10   claim by and in itself in no way tends to establish it.

11   Likewise, the fact that a defendant raises a defense creates

12   no inference or presumption that the defense has merit.

13          Do not let bias, prejudice or sympathy play any

14   part in your deliberations.  A corporation is considered a

15   person under the law.  A corporation and all other persons

16   are equal before the law and must be treated as equals in a

17   court of justice.

18          This case should be considered and decided by you

19   as an action between parties of equal standing in the

20   community, of equal worth, and holding the same or similar

21   situations in life.  A corporation or political entity has

22   the same right to a fair trial as does a private individual.

23   All persons, corporations, political subdivisions or other

24   entities stand equal before the law and must be treated as

25   equals in the court of justice.

**OFFICIAL TRANSCRIPT**

1        You must answer all questions using a preponderance
2   of the evidence standard unless I instruct you otherwise.
3   Proof by a preponderance of the evidence simply means
4   evidence that persuades you that the plaintiff's claim is
5   more likely true than not true.
6        In deciding whether any fact has been proven by a
7   preponderance of the evidence, you may, unless otherwise
8   instructed, consider the testimony of all witnesses,
9   regardless of who may have called them, and all exhibits
10  received in evidence, regardless of who may have produced
11  them.
12       If the proof fails to establish any element of the
13  plaintiff's claim by a preponderance of the evidence, you
14  should find for the defendant as to that claim.  The one
15  exception to this rule is with respect to proof of
16  entitlement to punitive damages.  I will instruct you on the
17  burden of proof when I address the individual claims under
18  which plaintiffs seek punitive damages.
19       In determining the weight to give to the testimony
20  of a witness, you should ask yourself whether there was
21  evidence tending to prove that the witness testified falsely
22  concerning some important fact or whether there was evidence
23  that at some other time the witness said or did something or
24  failed to say or do something that was different from the
25  testimony the witness gave before you during the trial.

1    You should keep in mind, of course, that a simple
2  mistake by a witness does not necessarily mean that the
3  witness was not telling the truth as he or she remembers it,
4  because people may forget some things or remember other
5  things inaccurately.  So if a witness has made a
6  misstatement, you need to consider whether that misstatement
7  was an intentional falsehood or simply an innocent lapse of
8  memory; and the significance of that may depend on whether it
9  has to do with an important fact or with only an unimportant
10  detail.

11    The interest of a witness in the outcome of a suit,
12  whether such interest is by reason of relationship, financial
13  or otherwise, may have the effect of lessening the value of
14  such witness's testimony.

15    If the plaintiff or other witness is found to be
16  untruthful or has been discredited, you have the right to
17  distrust and reject all of the testimony given by him in any
18  and all particulars.

19    While you should consider only the evidence in this
20  case, you are permitted to draw such reasonable inferences
21  from the testimony and exhibits as you feel are justified in
22  the light of common experience.  In other words, you may make
23  deductions and reach conclusions that reason and common sense
24  lead you to draw from the facts that have been established by
25  the testimony and evidence in the case.

**OFFICIAL TRANSCRIPT**

1     The testimony of a single witness may be sufficient

2  to prove any fact, even if a greater number of witnesses may

3  have testified to the contrary if, after considering all the

4  other evidence, you believe that single witness.

5     Certain testimony has been presented to you during

6  the course of the trial through a deposition.  A deposition

7  is the sworn recorded answers to questions asked a witness in

8  advance of the trial.  Under some circumstances, if a witness

9  cannot be present at trial to testify from the witness stand,

10  that witness's testimony may be presented under oath in the

11  form of a deposition.  Thus, sometime before this trial,

12  attorneys representing the parties in this case questioned

13  this witness under oath.  A court reporter was present and

14  recorded the testimony.  The questions and answers were read

15  or shown to you during the course of the trial.  This

16  deposition testimony is entitled to the same consideration,

17  is to be judged by you as to credibility, and is to be

18  weighed and otherwise considered by you in the same way,

19  insofar as that is possible, as if the witness had been

20  present in court and had testified from the witness stand.

21     During the course of the trial, you have heard

22  objections to the evidence.  Sometimes these have been argued

23  out of the hearing of the jury.  It is the duty of the

24  attorneys on each side of a case to object when the other

25  side offers testimony or other evidence that the attorney

**OFFICIAL TRANSCRIPT**

:31:04

:31:22

:31:41

:32:01

:32:16

1    believes is not properly admissible.  You should not draw any

2    inference against or show any prejudice against a lawyer or

3    his client because of the making of an objection.  Upon

4    allowing testimony or other evidence to be introduced over

:32:35    5    the objections of an attorney, the Court does not, unless

6    expressly stated, indicate any opinion as to the weight or

7    effect of such testimony.  As stated before, you, the jury,

8    are the sole judges of the credibility of all witnesses and

9    the weight and effect of all evidence.  When the Court has

:32:56    10    sustained an objection to a question addressed to a witness,

11    the jury must disregard the question entirely and may draw no

12    inference from the wording of it or speculate as to what the

13    witness would have said if permitted to answer.

14        Any notes that you have taken during this trial are

:33:17    15    only aids to memory.  If your memory should differ from your

16    notes, then you should rely on your memory and not on the

17    notes.  The notes are not evidence.  A juror who has not

18    taken notes should rely on his or her independent

19    recollection of the evidence and should not be unduly

:33:33    20    influenced by the notes of other jurors.  Notes are not

21    entitled to any greater weight than the recollection or

22    impression of each juror about the testimony.

23        There are two types of evidence that you may

24    consider in properly finding the truth as to the facts in

:33:50    25    this case.  One is direct evidence, such as testimony of an

**OFFICIAL TRANSCRIPT**

eyewitness.  The other is indirect or circumstantial

evidence -- the proof of a chain of circumstances that

indicates the existence or nonexistence of certain other

facts.  As a general rule, the law makes no distinction

between direct and circumstantial evidence, but simply

requires that you find the facts from a preponderance of all

the evidence, both direct and circumstantial.

        When knowledge of technical subject matter may be

helpful to the jury, a person who has special training or

experience in that technical field -- he is called an expert

witness -- is permitted to state his opinion on those

technical matters.  However, you are not required to accept

that opinion.  As with any other witness, it is up to you to

decide whether to rely upon it.

        In deciding whether to accept or rely upon the

opinion of an expert witness, you may consider any bias of

the witness, including any bias you may infer from evidence

that the witness has been or will be paid for reviewing the

case and testifying or from evidence that he testifies

regularly as an expert witness and his income from such

testimony represents a significant portion of his income.

        The weight which is to be assigned to the testimony

of experts is to be ascertained by the qualifications and

experience of the witness, as well as the materials and

circumstances upon which his opinion is grounded.

**OFFICIAL TRANSCRIPT**

1       You may exclude the testimony of an expert if that

2   testimony lacks an adequate foundation or is not based on

3   data reasonably relied upon by experts in a particular field

4   of expertise.

5       If you find that a defendant is liable to a

6   plaintiff or plaintiffs, then you must determine an amount

7   that is fair compensation for all of that plaintiff's or

8   those plaintiffs' damages.  These damages are called

9   compensatory damages.  The purpose of compensatory damages is

10  to make a plaintiff whole.  That is, to compensate the

11  plaintiff for the damage that he has suffered.  Compensatory

12  damages are not limited to expenses that a plaintiff may have

13  incurred because of his injury.  If a plaintiff wins, he is

14  entitled to compensatory damages for the economic injury,

15  physical injury, and pain and suffering.  A plaintiff is also

16  entitled to compensatory damages for mental anguish that he

17  has suffered because of the defendant's wrongful conduct

18  unless I instruct you otherwise.

19      You may award compensatory damages only for

20  injuries that a plaintiff proves were proximately caused by a

21  defendant's allegedly wrongful conduct.  An injury is

22  proximately caused when the act played a substantial part in

23  bringing about or actually causing injury or damage, and the

24  injury or damage was either a direct result or a reasonably

25  probable consequence of the act.  The damages that you award

**OFFICIAL TRANSCRIPT**

1    must be fair compensation for all of a plaintiff's damages,

2    no more and no less.  You should not award compensatory

3    damages for speculative injuries, but only for those injuries

4    that a plaintiff has actually suffered or that a plaintiff is

5    reasonably likely to suffer in the future.

6         If you decide to award compensatory damages, you

7    should be guided by dispassionate common sense.  Computing

8    damages may be difficult, but you must not let that

9    difficulty lead you to engage in arbitrary guesswork.  On the

10   other hand, the law does not require that a plaintiff prove

11   the amount of his losses with mathematical precision, but

12   only with as much definiteness and accuracy as the

13   circumstances permit.

14        You must use sound discretion in fixing an award of

15   damages, drawing reasonable inferences where you find them

16   appropriate from the facts and circumstances in evidence.

17        If you find that a defendant or multiple defendants

18   did, in fact, violate more than one of a plaintiff's rights,

19   you must remember, in calculating the damages, that a

20   plaintiff is entitled to be compensated only for injuries he

21   actually suffered.  Thus, if a defendant violated more than

22   one of the plaintiff's rights, but the resulting injury was

23   no greater than it would have been had the defendant violated

24   only one of those rights, you should award an amount of

25   compensatory damages no greater than you would award if the

**OFFICIAL TRANSCRIPT**

defendant had violated only one of the plaintiff's rights.
If, on the other hand, the defendant violated more than one
of the plaintiff's rights and you identify separate injuries
resulting from the separate violations, you should award an
amount of compensatory damages equal to the total of the
damages you believe will fairly and justly compensate the
plaintiff for the separate injuries he has suffered.

You may award punitive damages for certain claims
in this case.  With respect to all claims, the plaintiffs
have the burden of proving that punitive damages should be
awarded.  The purpose of punitive damages is to punish and
deter, not to compensate.  Punitive damages serve to punish a
defendant, and, by doing so, to deter others from engaging in
similar conduct in the future.  You are not required to award
punitive damages.  If you do decide to award punitive
damages, you must use sound reason in setting the amount.
Your award of punitive damages must not reflect bias,
prejudice, or sympathy toward any party.  It should be
presumed that a plaintiff has been made whole by compensatory
damages so punitive damages should be awarded only if a
defendant's misconduct is so reprehensible as to warrant the
imposition of further sanctions to achieve punishment or
deterrence.

If you decide to award punitive damages under any
claim, the following factors should guide you in fixing the

OFFICIAL TRANSCRIPT

proper amount:

(1) The reprehensibility of a defendant's conduct, including, but not limited to, whether there was deceit, cover-up, insult, or intended or reckless injury.

(2) The duration of the conduct.

(3) Whether the defendant was aware of the harm being caused.

(4) Whether the defendant's conduct was motivated by desire to augment profit; and

(5) The ratio between the punitive damages you are considering awarding and the amount of harm that was suffered by the victim or with which the victim was threatened.

You may consider the financial resources of a defendant in fixing the amount of punitive damages.

You may impose punitive damages against one or more of the defendants and not others.  You may also award different amounts against different defendants.  Likewise, you may impose punitive damages in favor of one or more plaintiffs and not others.  You may also award such punitive damages in different amounts in favor of different plaintiffs depending on how you view the relationship between the award, if any, and the harm, if any, to the individual plaintiff.

Any contractual damages awarded must be fair compensation for a plaintiff's damages; no more and no less. Contractual damages are not allowed as a punishment and

**OFFICIAL TRANSCRIPT**

1    cannot be imposed or increased to penalize a defendant.

2            In making any damage award, you are not to consider

3    any attorneys' fees that may have been incurred by either

4    party in bringing or defending this lawsuit.  You should also

5    not consider whether any damages may be subject to income

6    tax.

7            I will now instruct you on plaintiffs' claims.

8            Claim One:  Forced labor and trafficking for forced

9    labor.

10           Plaintiffs assert claims against Signal, Burnett,

11   and Dewan for violations of the Trafficking Victims

12   Protection Act, specifically, forced labor and trafficking

13   for forced labor.  Signal, Burnett, and Dewan deny these

14   claims.  I will now instruct you on the law applicable to

15   these claims.

16           Forced labor.

17           In order to prevail on their claim for forced

18   labor, plaintiffs must prove by a preponderance of the

19   evidence that a defendant knowingly provided or obtained the

20   labor or services of plaintiffs:

21           (A) By means of threats of serious harm to, or

22   physical restraint against, that person or another person.

23           (B) By means of any scheme, plan or pattern

24   intended to cause the person to believe that, if the person

25   did not perform such labor or services, that person or

:41:48

:42:02

:42:20

:42:34

:42:53

**OFFICIAL TRANSCRIPT**

1    another person would suffer serious harm or physical

2    restraint; and

3            (C) by means of the abuse or threatened abuse of

4    law or the legal process.

5            In considering this instruction, I instruct you the

6    words "provide" and "obtain" are to be given their ordinary

7    meanings.  "Provide" means to supply something or make

8    something available.  "Obtain" means to gain, acquire, or

9    attain.

10           "Abuse or threatened abuse of law or legal process"

11   means the use or threatened use of a law or legal process,

12   whether administrative, civil or criminal, in any manner or

13   for any purpose for which the law was not designed, in order

14   to exert pressure on another person to cause that person to

15   take some action or refrain from taking some action.  This

16   may include, but is not limited to threat of deportation,

17   misrepresentation about the availability or lack of

18   availability of immigration or civil remedies, and/or

19   restricting access to immigration or civil remedies.

20           The term "serious harm" means any harm, whether

21   physical or non-physical, including psychological, financial

22   or reputational harm that is sufficiently serious under all

23   the surrounding circumstances to compel a reasonable person

24   of the same background, and in the same circumstances, to

25   perform or to continue performing labor or services in order

OFFICIAL TRANSCRIPT

:43:07

:43:21

:43:42

:44:03

:44:24

to avoid incurring that harm.  You must determine whether the
serious harm was sufficient to cause plaintiffs reasonably to
believe that they had no choice but to work or to remain
working for their employer defendant to avoid serious harm to
themselves or to another person.

     To determine whether plaintiffs reasonably believed
they had to perform or to continue performing labor or
services in order to avoid incurring that harm, you may
consider the cumulative effect of the conduct of the
defendant or defendants on plaintiffs.  You may also consider
plaintiff's background, physical and mental condition,
experience, education, socioeconomic status, age, any
inequalities between them and the defendants with respect to
these considerations, including their relative stations in
life, immigration status, cultural background, ethnicity,
ability to speak the language spoken in the region of the
country where he was performing the labor or services,
background, social isolation, and social status.

     The words "scheme," "plan," and "pattern" are to be
given their ordinary meanings.  A scheme, plan or pattern
intended to cause a person to believe that non-performance of
labor or services will result in serious harm need not
involve actual threats of serious harm, but may involve any
other means -- including deception or psychological
coercion -- used to cause the worker to reasonably believe

OFFICIAL TRANSCRIPT

1   that he, his family, or any other person would suffer serious

2   harm if he refused to continue providing labor or services.

3          The fact that plaintiffs may have had an

4   opportunity to freely come and go from the employer's

5   premises may be considered, but does not determine whether

6   they were subject to forced labor if the employer placed

7   plaintiffs in such fear or circumstances that they did not

8   reasonably believe they could leave their employment.

9   Plaintiffs need not prove physical restraint such as the use

10  of chains, barbed wire or locked doors, in order to establish

11  the offense of forced labor.

12         Whether Signal paid plaintiffs a salary or a wage

13  may be considered, but does not determine whether plaintiffs

14  were subjected to forced labor.

15         Whether a plaintiff may have initially agreed

16  voluntarily to render the service or perform the work may be

17  considered, but does not determine whether any of the

18  defendants subjected the plaintiffs to forced labor.

19         If Signal subjected a plaintiff to forced labor for

20  a period of time, but it improved conditions to the extent

21  that Signal was no longer subjecting a plaintiff to forced

22  labor, Signal still may be liable for forced labor for the

23  period of time when the forced labor occurred.

24         Trafficking for forced labor.

25         In order to prevail on their claim of trafficking

**OFFICIAL TRANSCRIPT**

for forced labor, plaintiffs must establish the following by
a preponderance of the evidence:

(1) A defendant recruited, transported, provided or
obtained by any means any person for labor or services.  And

(2) The defendant acted with the knowledge that the
person would be subjected to forced labor which I described
above.

As used in this instruction, the word "recruit"
means to engage in finding and attracting a person for
employment.  "Transport" means the act of processing or
moving a person from one place to another.  "Provide" means
to supply something or make something available.  "Obtain"
means to gain, acquire or attain.

If you find that plaintiffs proved each of the
requirements listed above with respect to forced labor and/or
trafficking for forced labor, you may award damages.
Plaintiffs seek compensatory and punitive damages for their
forced labor and trafficking for forced labor claims.

You may award compensation for any damages
proximately caused by a defendant's violation of the laws
against forced labor and/or trafficking for labor.  You may
consider the following elements of damage:

Mental anguish experienced during the recruitment
process up to the point at which each plaintiff's employment
at Signal ended.

**OFFICIAL TRANSCRIPT**

1      Monies paid during the recruitment process and in

2  order to come to the United States to work for Signal,

3  including, but not limited to, recruitment fees, travel

4  expenses, legal fees, medical testing, skills testing, and

:49:21      5  administrative fees; losses on any personal or real property

6  sold or pawned for the purposes of making payments in

7  connection with the recruitment; and fees and interest paid

8  on any loans incurred as a result of the recruitment process

9  up to the point at which each plaintiff's employment at

:49:41     10  Signal ended.

11      And deductions taken from plaintiffs' paychecks by

12  Signal for room and board.

13      You may award punitive damages if you find by a

14  preponderance of the evidence that a defendant acted with

:49:56     15  malice or reckless indifference to one or more of the

16  plaintiffs' rights to be free from forced labor or

17  trafficking for forced labor.

18      For purposes of this instruction, malice means that

19  a defendant acted with the intent to cause injury or that a

:50:13     20  defendant's conduct was despicable and was done with a

21  willful and knowing disregard of the rights or safety of

22  another.  A person acts with knowing disregard when he or she

23  is aware of the probable dangerous consequences of his or her

24  conduct and deliberately fails to avoid those sequences.

:50:33     25      ^ claim Two:  Discrimination.

**OFFICIAL TRANSCRIPT**

Plaintiffs assert claims against Signal for
discrimination under a federal civil rights statute.  Signal
denies this claim.  The statute prohibits discrimination
against an employee because of the person's race, ethnicity,
ancestry or status as an H-2B visa holder.  Being Indian
qualifies as part of a person's race, ethnicity or ancestry.

Plaintiffs claim that while working and living at
the Signal facilities, they were subject to two kinds of
discriminatory treatment because they were Indian and/or held
H-2B visas.

First, plaintiffs claim that their race, ethnicity,
ancestry or status as H-2B visa holders was a motivating
factor in Signal's decision to subject them to employment
terms and conditions to which Signal did not subject its
non-Indian or non-H-2B visa employees, specifically requiring
plaintiffs to live at the Signal man camp and/or deducting
fees from plaintiffs' pay for accommodations in the Signal
man camp.

Second, plaintiffs claim that the conditions at the
man camp were severe or pervasive enough to rise to the level
of harassment, and that they were subjected to these
harassing conditions because they are Indian or because they
were H-2B visa holders.

Plaintiffs can prevail under their discrimination
claims if they prove either or both of the types of

**OFFICIAL TRANSCRIPT**

1    discrimination they allege.

2          Signal denies the plaintiffs were discriminated

3    against in any way.  Signal asserts that it would have made

4    the same decisions about housing plaintiffs in the man camp

5    and deducting man camp fees from plaintiffs' wages even if

6    plaintiffs were not Indian or H-2B visa holders.  Signal also

7    asserts that plaintiffs were not subject to harassing

8    conditions at the man camp.

9          I will now instruct you on the law related to the

10   two kinds of discrimination alleged by plaintiffs.

11         Plaintiffs allege that Signal required them to live

12   at the man camp and deducted fees for the Signal man camp

13   accommodations from their wages because they are Indian or

14   because they were H-2B visa holders.  To prevail on this

15   claim, plaintiffs must prove each of the following by a

16   preponderance of the evidence:

17         (1) Signal required plaintiffs to live at the

18   Signal man camp and/or deducted fees from plaintiffs' wages

19   for the man camp accommodations.  And

20         (2) Plaintiffs being Indian or plaintiffs' status

21   as H-2B workers was a motivating factor in Signal's decision

22   to house plaintiffs in the Signal man camp and/or deduct the

23   man camp fees.

24         Although plaintiffs must prove that Signal acted

25   with intent to discriminate, plaintiffs are not required to

**OFFICIAL TRANSCRIPT**

:52:20

:52:40

:53:02

:53:17

:53:35

1    prove that Signal acted with particular intent to violate

2    plaintiffs' federal civil rights.

3         In showing that plaintiffs being Indian or status

4    as H-2B visa holders was a motivating factor for Signal's

:53:53   5    actions, plaintiffs are not required to prove that their

6    being Indian or status as H-2B visa holders was the sole

7    motivation or even the primary motivation for Signal's

8    decision to house plaintiffs in the man camp or deduct the

9    man camp fees from plaintiffs' pay.  Plaintiffs need only

:54:12   10    prove that their being Indian or status as H-2B visa holders

11    played a motivating part in Signal's decision even though

12    other factors may have also motivated Signal.

13         For purposes of this instruction, a factor is a

14    motivating factor if it played a part in Signal's decision to

:54:31   15    house plaintiffs in the Signal man camp or deduct the

16    man camp fees from plaintiffs' pay.

17         If you find that plaintiffs proved each of the

18    requirements listed above, you must decide whether Signal has

19    shown that it would have made the same decisions with respect

:54:47   20    to housing plaintiffs in the Signal man camp or deducting the

21    man camp fees from plaintiffs' pay even if it had no

22    discriminatory motive.  Your verdict must be for Signal if

23    Signal proves by a preponderance of the evidence that Signal

24    would have treated plaintiffs the same, even if plaintiffs

:55:07   25    being Indian or being H-2B visa holders had played no role in

**OFFICIAL TRANSCRIPT**

1   Signal's decision.

2         Plaintiffs also claim that Signal subjected them to

3   harassing living conditions in the man camp based on their

4   race, ethnicity, ancestry or status as H-2B visa holders.

5         Signal is liable for the claimed harassment if

6   plaintiffs establish the following by a preponderance of the

7   evidence:

8         Plaintiffs or some of them were subject to

9   unwelcome harassment.  That's number one.

10        (2) The harassment complained of was based on their

11   race, ethnicity, ancestry or status as H-2B visa holders.

12   And

13        (3) The harassment complained of affected a term,

14   condition or privilege of employment.

15        To determine whether any alleged harassment rises

16   to a level that affected the terms or conditions of any

17   plaintiff's employment, you consider -- you should consider

18   all of the circumstances, including the frequency of the

19   conduct, its severity, whether it is physically threatening

20   or humiliating, and whether it unreasonably interferes with

21   the plaintiff's work performance.  There is no requirement

22   that the conduct be psychologically injurious.

23        Harassment may include extremely insensitive

24   conduct because of the plaintiff's ethnicity, ancestry, race

25   or status as H-2B visa holders.  Simple teasing, offhand

**OFFICIAL TRANSCRIPT**

1    comments, sporadic use of offensive language, occasional

2    jokes related to race, ethnicity, ancestry and/or status as

3    H-2B visa holders, and isolated incidents, unless extremely

4    serious, will generally not amount to discriminatory changes

:56:56    5    in the terms and conditions of employment.  But

6    discriminatory intimidation, ridicule or other verbal or

7    physical conduct may be sufficiently extreme to alter the

8    terms and conditions of employment.

9         You must consider the evidence from both the

:57:12    10    plaintiffs' perspective and the perspective of a reasonable

11    person.  First, plaintiffs must actually find the situation

12    offensive.  Next, you must look at the evidence from the

13    perspective of a reasonable person's reaction to a similar

14    environment under similar circumstances.  You cannot view the

:57:31    15    evidence from the perspective of an overly sensitive person,

16    nor can you view the evidence from the perspective of someone

17    who is never offended.  Rather, the alleged harassing

18    behavior must be such that a reasonable person in the same or

19    similar circumstances as plaintiffs would find the conduct

:57:53    20    offensive.

21         If you find that plaintiffs proved each of the

22    requirements listed above with respect to discriminatory

23    terms and conditions of employment or harassing living

24    conditions, you may award damages.  Plaintiffs seek

:58:09    25    compensatory damages and punitive damages for their

**OFFICIAL TRANSCRIPT**

1   discriminatory claims.

2           You may award compensation for any damages

3   proximately caused by Signal's unlawful discrimination.  You

4   may consider the following elements of damage:

5           (1) Mental anguish suffered while working for

6   Signal.  And

7           (2) Deductions taken from plaintiffs' paychecks by

8   Signal for room and board.

9           You may award punitive damages if you find by a

10  preponderance of the evidence that Signal acted with malice

11  or reckless indifference to one or more plaintiffs' rights to

12  be free from discrimination.

13          For purposes of this instruction, malice means that

14  a defendant acted with intent to cause injury or that a

15  defendant's conduct was despicable and was done with a

16  willful and knowing disregard of the rights or safety of

17  another.  A person acts with knowing disregard when he or she

18  is aware of the probable dangerous consequences of his or her

19  conduct and deliberately fails to avoid those consequences.

20          ^ claim Three:  Retaliation.

21          Plaintiff Jacob Joseph Kadakkarappally, who I will

22  now refer to as Mr. Jacob, asserts Signal retaliated against

23  him by firing him in violation of a federal civil rights

24  statute.  Signal denies this claim.

25          It is unlawful for an employer to terminate an

**OFFICIAL TRANSCRIPT**

employee for communicating with civil rights lawyers,
attempting to learn about workplace rights, informing other
workers of their rights, and/or complaining about the working
and living conditions for Indian workers at Signal.  The law
refers to these activities as protected activity.

To prove unlawful retaliation, Mr. Jacob must
establish the following by a preponderance of the evidence:

Mr. Jacob engaged in protected activity.

Signal terminated Mr. Jacob's employment.

And Signal would not have terminated Mr. Jacob but
for his engaging in protected activity.

Mr. Jacob does not have to prove that unlawful
retaliation was the sole reason defendant terminated him, but
must show that Signal would not have terminated him in the
absence of -- but for -- his engaging in the protected
activity.

If you disbelieve the reasons Signal has given for
its decision to terminate Mr. Jacob's employment, you may,
but are not required to infer that Signal would not have
terminated Mr. Jacob but for his engaging in the protecting
activity.

If you find that Mr. Jacob has proved each of the
requirements listed above with respect to retaliation, you
may award damages.  Mr. Jacob seeks compensatory damages and
punitive damages for his retaliation claim.

**OFFICIAL TRANSCRIPT**

1          You may award compensation for any damages

2     proximately caused by Signal's unlawful retaliation.

3     Specifically, you may award compensation for any mental

4     anguish Mr. Jacob suffered.

5          You may award punitive damages if you find by a

6     preponderance of the evidence that Signal acted with malice

7     or reckless indifference to Mr. Jacob's right to be free from

8     unlawful retaliation.

9          For purposes of this instruction, malice means that

10    a defendant acted with intent to cause injury or that a

11    defendant's conduct was despicable and was done with a

12    willful and knowing disregard of the rights or safety of

13    another.

14         A person acts with knowing disregard when he or she

15    is aware of the probable dangerous consequences of his or her

16    conduct and deliberately fails to avoid those consequences.

17         ^ claim Four:  RICO.

18         Plaintiffs assert claims against Signal, Burnett

19    and Dewan for violations of the Racketeer Influenced and

20    Corrupt Organizations Act, which is called RICO.  Signal,

21    Burnett and Dewan deny these claims.

22         There are two sections of the RICO statute that

23    plaintiffs are suing under, which I will describe in turn.

24         Under the first section, it is unlawful for anyone

25    associated with an enterprise to conduct or to participate,

:01:26
:01:44
:01:59
:02:21
:02:40

**OFFICIAL TRANSCRIPT**

1    directly or indirectly, in conduct of the enterprise's

2    affairs through a pattern of racketeering activity.  I will

3    call this the RICO general claim.

4            Under the second section, it is unlawful for anyone

5    to conspire to violate the RICO general claim.  I will call

6    this the RICO conspiracy claim.

7            The RICO general claim.

8            In order to prevail on their RICO general claim,

9    plaintiffs must establish the following by a preponderance of

10   the evidence:

11           (1) The existence of an enterprise.

12           (2) The enterprise engaged in or had some effect on

13   interstate or foreign commerce.

14           (3) The defendants were employed by or associated

15   with the alleged enterprise.

16           (4) Defendants participated, either directly or

17   indirectly, in the conduct of the affairs of the enterprise.

18   And

19           (5) Defendants participated through a pattern of

20   racketeering activity.

21           Now I will provide you with some additional

22   instructions to apply as you consider the facts that the

23   plaintiffs must prove.

24           For the first element, an enterprise does not have

25   to be a legal entity.  It can be an association of persons or

OFFICIAL TRANSCRIPT

1    entities which the law refers to as an association-in-fact

2    enterprise.

3            Plaintiffs have alleged three such enterprises in

4    this case.

5            RICO Enterprise I:  An ongoing business

6    relationship between Dewan, Burnett, Signal and the

7    United States consular officers in India.

8            RICO Enterprise II:  An ongoing business

9    relationship between Dewan, Michael Pol, Burnett and Signal.

10           RICO Enterprise III:  An ongoing business

11   relationship between Dewan, Michael Pol, Burnett, Signal,

12   Swetman Security and M & M Bank.

13           The association between the enterprises' members

14   might be loose or informal, but the enterprise must have at

15   least a purpose, relationships among those associated with

16   the enterprise, and a duration sufficient to permit those

17   associations to pursue the enterprise's purpose.

18           Not all members of an enterprise have to violate

19   RICO to be part of an enterprise.  Innocent parties can be

20   enterprise members.

21           For the second element, plaintiffs must show that

22   one or more of the enterprises engaged in or had an effect on

23   interstate or foreign commerce.

24           Engaged in or had an effect on interstate or

25   foreign commerce means that the enterprise either engaged in

**OFFICIAL TRANSCRIPT**

:04:13

:04:32

:04:52

:05:14

:05:29

1    or had an effect on commerce between two or more states or

2    commerce between a state and a foreign country.

3         For the third element, plaintiffs must prove that

4    defendants were employed or associated with one or more of

5    the alleged enterprises.  The requirement that defendants be

6    employed by or associated with one or more of the enterprises

7    means that they must have some minimal association with one

8    or more of the alleged enterprises.  Defendants must know

9    something about the activities of one or more of the alleged

10   enterprises as they relate to the racketeering activities.

11        For the fourth element, plaintiffs must prove that

12   defendants participated, directly or indirectly, in the

13   conduct of the affairs of one or more of the alleged

14   enterprises.  To prove this, plaintiffs must show that

15   defendants actively conducted or participated in conducting

16   the affairs of the alleged enterprise through a pattern of

17   racketeering activity.  Defendants do not need to participate

18   in or be aware of the activities of all of the enterprises.

19        For the fifth element, plaintiffs must prove that

20   defendants participated in the conduct of the affairs of one

21   or more of the enterprises through a pattern of racketeering

22   activity.

23        I will first instruct you on what constitutes

24   racketeering activity.  I will then instruct you on what

25   constitutes a pattern of racketeering activity.


**OFFICIAL TRANSCRIPT**

:05:46

:06:09

:06:25

:06:46

:07:01

1          Racketeering activity, also known as a predicate

2     act, is an act that violates the laws against forced labor,

3     trafficking for forced labor, mail fraud, wire fraud, or

4     immigration document fraud.  I have already instructed you on

5     the elements of forced labor and trafficking for forced

6     labor.  I will now instruct you on the elements of the

7     remaining predicate acts -- mail fraud, wire fraud, and

8     immigration document fraud.

9          In order to establish the predicate act of mail

10    fraud, plaintiffs must prove the following by a preponderance

11    of the evidence:

12          (1) Defendants knowingly devised or intended to

13    devise a scheme to defraud the plaintiffs.

14          (2) The scheme to defraud employed false material

15    promises.

16          (3) Defendants mailed something or caused something

17    to be sent or delivered through the United States Postal

18    Service or a private or commercial interstate carrier for the

19    purpose of executing such scheme or attempting so to do.  And

20          (4) Defendants acted with a specific intent to

21    defraud.

22          A scheme to defraud means any plan, pattern or

23    course of action intended to deprive another of money or

24    property.

25          A specific intent to defraud means a conscious,

**OFFICIAL TRANSCRIPT**

knowing intent to deceive or cheat someone.

A promise is false if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A promise would also be false if it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with the intent to defraud.

A promise is material if it has a natural tendency to influence or is capable of influencing the decision of the person or entity to which it is addressed.

It is not necessary that plaintiffs prove every detail of the nature and purpose of the scheme. What must be proved is that defendants knowingly devised or intended to device a scheme to defraud by means of false promises.

It is also not necessary that the plaintiffs prove that the mailed material or sent material by private or commercial interstate carrier was itself false or fraudulent or that the use of the mail or a private or commercial interstate carrier was intended as the specific or exclusive means of accomplishing the alleged fraud.

Plaintiffs must prove that the use of the mails or private or commercial interstate carrier was closely related to the scheme because defendants either mailed something or caused it to be mailed or either sent or delivered something or caused it to be sent or delivered by a private or commercial interstate carrier in an attempt to execute or

**OFFICIAL TRANSCRIPT**

1      carry out the scheme.

2             The alleged scheme need not actually succeed in

3      defrauding anyone.

4             Also a plaintiff does not have to show he relied

5      upon the fraud.  In other words, a plaintiff may be injured

6      by fraud directed at another person.

7             To cause the mails or private or commercial

8      interstate carrier to be used is to do an act with knowledge

9      that the use of the mails or private or commercial interstate

10     carrier will follow in the ordinary course of business or

11     where such use can reasonably be foreseen even though the

12     defendant did not intend or request the mails or private or

13     commercial interstate carrier to be used.

14             Each separate use of the mails or a private or

15     commercial interstate carrier in furtherance of a scheme to

16     defraud by means of false promises constitutes a separate

17     predicate act.

18             I have just described the elements of mail fraud.

19     The elements of the predicate act of wire fraud are identical

20     except for one key difference.  Whereas mail fraud involves

21     use of the mails, wire fraud requires that defendants

22     transmitted, or caused to be transmitted, by way of wire such

23     as Internet, e-mail, telephone calls, faxes or other similar

24     communications in interstate or foreign commerce, any

25     writing, sign, signal, picture or sound for the purpose of

**OFFICIAL TRANSCRIPT**

1    executing a scheme as I have defined for you above.

2         In order to establish the predicate act of

3    immigration document fraud, plaintiffs must prove the

4    following by a preponderance of the evidence:

:11:59    5         Defendants made a false statement; the false

6    statement was made knowingly; the false statement was made

7    under oath; and the false statement was made in a document

8    required by the immigration laws.

9         I have just described what constitutes racketeering

:12:17    10    activity.  In order to establish the fifth element of their

11    RICO general claim, however, plaintiffs must prove a pattern

12    of racketeering activity.  A pattern of racketeering activity

13    means that defendants conducted [sic] at least two distinct

14    predicate acts.  Distinct does not have to mean different

:12:38    15    types.  But, by itself, proof of two or more predicate acts

16    doesn't establish a pattern under RICO.

17         To prove a pattern of predicate acts, plaintiffs

18    must show that the acts were related to one another and to

19    the enterprise.  Two or more acts of racketeering activity

:12:57    20    that aren't related don't establish a pattern of racketeering

21    activity under RICO.  Predicate acts are related to one

22    another if they have the same or similar purposes, results,

23    participants, victims, or methods.  Predicate acts are also

24    related if they have common distinguishing characteristics

:13:19    25    and aren't isolated events.

**OFFICIAL TRANSCRIPT**

1           To be related, the predicate acts don't have to be

2    the same kind of acts.  For example, the acts may comprise

3    one act of wire fraud and one act of mail fraud.

4           To make up a pattern of racketeering activity,

:13:35    5    predicate acts must demonstrate continuity.  Continuity can

6    be demonstrated in two basic ways.  The first is to

7    demonstrate related predicate acts extending over a

8    substantial period of time.  The second is to show conduct

9    that doesn't occur over a substantial period of time, but by

:13:55   10    its nature is likely to be repeated into the future.

11           Again, racketeering activity means an act that

12    violates the statutes at issue.  But you can't consider just

13    any racketeering act of defendants allegedly committed in

14    violation of one of these status as bearing on whether

:14:16   15    defendants committed two or more predicate acts as a pattern

16    of racketeering activity.  To determine if there is a pattern

17    of racketeering activity, you must consider only those

18    specific racketeering acts plaintiffs allege against

19    defendants.  And you can't find the defendants engaged in at

:14:35   20    pattern of racketeering activity unless you unanimously agree

21    on which of the alleged predicate acts, if any, make up the

22    pattern.

23           Finally, you cannot find a defendant liable just

24    for associating with or being employed by an otherwise lawful

:14:54   25    enterprise if others conduct the enterprise's affairs through

**OFFICIAL TRANSCRIPT**

1    a pattern of racketeering activity in which the defendant

2    isn't personally engaged.

3          In addition to the RICO general claim I have just

4    described, plaintiffs also assert claims against Signal,

:15:11    5    Burnett and Dewan for conspiring to violate RICO, what I

6    mentioned earlier as the RICO conspiracy claim.

7          I've already given you instructions on the elements

8    of a violation of the general RICO statute.  Now you must

9    decide if plaintiffs have proved by a preponderance of the

:15:31    10   evidence whether two or more of the defendants engaged in a

11   conspiracy to violate the general RICO statute.

12         Generally, a RICO conspiracy is an agreement by two

13   or more people to commit an unlawful act.  Put another way,

14   it's a kind of partnership for illegal purposes.  Every

:15:52    15   member of the conspiracy becomes the agent or partner of

16   every other member.  Plaintiffs don't have to prove that all

17   the people named in the complaint were members of the

18   conspiracy or that those who were members made any kind of

19   formal agreement.  The heart of the conspiracy is the making

:16:10    20   of the unlawful plan itself.  And plaintiffs don't have to

21   prove that the conspirators were successful in carrying out

22   the plan.

23         In order to prevail on their RICO conspiracy claim,

24   plaintiffs must establish the following by a preponderance of

:16:26    25   the evidence:

**OFFICIAL TRANSCRIPT**

1         (1) Two or more persons or entities agreed to try

2    to accomplish an unlawful plan to engage in a pattern of

3    racketeering activity.  And

4         (2) A defendant agreed to the overall objective of

:16:41    5    the conspiracy or agreed with at least one other defendant to

6    commit two predicate acts as part of the conspiracy.

7         Plaintiffs may show an agreement to the overall

8    objective of the conspiracy by circumstantial evidence that a

9    defendant must have known that others were also conspiring to

:17:01   10    participate in the same enterprise through a pattern of

11    racketeering activity.  If plaintiffs prove agreement on an

12    overall objective, then it isn't necessary the defendant

13    agree to personally commit two predicate acts.

14         A defendant can also engage in a RICO conspiracy

:17:21   15    even if that defendant didn't agree to the conspiracy's

16    overall objective.  It's enough that a defendant engaged in a

17    part of the conspiracy with at least one other defendant by

18    committing at least two predicate acts alone or with someone

19    else.

:17:35   20         While the essence of a RICO conspiracy is an

21    agreement to further an endeavor that, if completed, would

22    satisfy all the elements of a substantive RICO violation,

23    plaintiffs don't have to offer direct evidence of an

24    agreement.  The conspiracy's existence can be inferred from

:17:55   25    the participant's conduct.  But a defendant must objectively

**OFFICIAL TRANSCRIPT**

1   manifest, through words or actions, an agreement to

2   participate in the enterprise's affairs.

3           Plaintiffs don't have to show that all the alleged

4   members of the conspiracy entered into any express or formal

5   agreement or that they directly stated the details of the

6   scheme, its object or purpose, or the precise means by which

7   the object or purpose was to be accomplished.  Plaintiffs

8   also don't have to establish that all the means or methods

9   alleged to carry out the alleged conspiracy were, in fact,

10  agreed on or that all the means or methods that were agreed

11  on were actually used or put into operation.  Plaintiffs

12  don't have to prove that all persons or entities alleged to

13  be conspiracy members were actually members or that alleged

14  conspirators succeeded in accomplishing their unlawful

15  objectives.

16          It isn't enough if the evidence shows only that the

17  alleged conspirators agree to commit the acts of racketeering

18  plaintiffs allege without more or that they agreed to

19  participate in the affairs of the same alleged enterprise.

20  It doesn't matter that the alleged conspirators participated

21  in the conduct of the affairs of the alleged enterprise

22  through different or dissimilar acts of racketeering activity

23  so long as the alleged racketeering acts would, if actually

24  committed, create a pattern of racketeering activity as I've

25  defined it.

**OFFICIAL TRANSCRIPT**

1          A defendant can become a member of a conspiracy

2     without knowing all the unlawful scheme's details or without

3     knowing the names and identities of all the other alleged

4     conspirators.  If plaintiffs prove by a preponderance of the

:19:43   5     evidence that a particular defendant has knowingly joined the

6     alleged conspiracy, it doesn't matter that the defendant may

7     not have participated in the alleged conspiracy or scheme's

8     earlier stages.  Mere presence at the scene of some

9     transaction or event or mere similarity of conduct among

:20:04   10    various persons, and the fact that they may have associated

11    with each other and may have assembled together and discussed

12    common aims and interests, doesn't necessarily prove the

13    existence of a conspiracy.  A person who doesn't have

14    knowledge of a conspiracy, but who happens to act in a way

:20:21   15    that advances some object or purpose of conspiracy, doesn't

16    become a conspirator.

17          Plaintiffs don't have to prove that a defendant

18    actually committed any of the acts that the defendant may

19    have agreed to commit to establish his membership in the

:20:39   20    conspiracy.

21          To determine whether there was a conspiracy, you

22    must consider all the evidence in the case.  If you find that

23    there was a conspiracy, then you can attribute the statements

24    or acts of the coconspirators to the defendant.  If you find

:20:55   25    that there was not a conspiracy, then you can't attribute the

OFFICIAL TRANSCRIPT

1  statements or acts of any of the defendants to one another.

2         If you find the conspiracy did not exist, then you

3  must find for the defendants on the RICO conspiracy claim.

4  But if you are satisfied that the conspiracy existed, you

:21:14    5  must determine who the members of the conspiracy were.

6         If you find that a particular defendant is a member

7  of another conspiracy, but not the one plaintiffs have

8  alleged, then you can't find that defendant liable in this

9  case.  Put another way, you can't find that a defendant

:21:33   10  violated the RICO conspiracy statute unless you find that

11  defendant was a member of the conspiracy charged, not some

12  other separate conspiracy.

13         If you find the defendants have established their

14  RICO general claim and/or their RICO conspiracy claim, you

:21:52   15  may award compensatory damages.

16         With respect to the RICO general claim, the damages

17  that plaintiffs may recover are those caused by the predicate

18  acts constituting the pattern of racketeering activity if

19  they injured plaintiffs in their business or property.  It

:22:11   20  isn't necessary that every predicate act caused damage to

21  plaintiffs, but plaintiffs can only recover damages caused by

22  predicate acts that are part of the pattern of racketeering

23  activity.

24         With respect to the RICO conspiracy claim, a

:22:26   25  defendant is responsible for all damages caused by predicate

**OFFICIAL TRANSCRIPT**

1    acts committed by members of the conspiracy that caused

2    injury to plaintiffs.  It isn't necessary that every

3    predicate act caused damage to plaintiffs, but they can only

4    recover for damages caused by a predicate act committed by a

:22:45   5    conspiracy member.

6         You may award only the following items of

7    compensatory damages:

8         Compensation for all monies paid during the

9    recruitment process and in order to come to the United States

:22:59   10   to work for Signal, including, but not limited to,

11   recruitment fees, travel expenses, legal fees, medical

12   testing, skills testing, and administrative fees; losses on

13   any personal or real property sold or pawned for the purposes

14   of making payments in connection with the recruitment

:23:20   15   described herein; and fees and interest paid on any loans

16   incurred as a result of the recruitment process and up to the

17   point at which each plaintiff's employment at Signal was

18   terminated.

19        And compensation of deductions taken from

:23:37   20   plaintiffs' paychecks by Signal for room and board.

21        You may not award compensation for any other losses

22   such as personal injury or emotional harm.

23        I now have some preliminary instruction for

24   Claims Five, Six and Seven regarding agency.

:23:59   25        With respect to Claims Five, Six and Seven, in

**OFFICIAL TRANSCRIPT**

1    determining the liability of the defendants, you may consider

2    that a defendant can be held liable for the acts of its

3    agents, including agents who are not parties to this suit.

4              An agent is a person who is authorized to act on

5    behalf of another person or business.  The other person or

6    business is called a principal.

7              A company is legally responsible for damages caused

8    by the wrongful conduct of its agents while those agents are

9    acting within the scope of their authority.

10              If the agent was acting within the scope of his

11   authority when he harmed or injured plaintiffs, then the

12   principal and the agent are both legally responsible to any

13   of the plaintiffs who you believe were injured by the

14   conduct.

15              However, an agent for a disclosed principal is not

16   liable for the torts of the principal or the principal's

17   breach of conduct.  To be liable, the agent must commit

18   individual wrongdoing.  In other words, the agent incurs no

19   personal liability absent fraud or equivalent misconduct.

20              Your first step is to determine whether an agency

21   relationship exists.  There are two ways that an agency

22   relationship can be formed:  Actual authority, which includes

23   both express and implied authority, and apparent authority.

24   I will describe each of those to you now.

25              Actual authority:  An agent acts with actual

**OFFICIAL TRANSCRIPT**

authority when the agent reasonably believes, based on the written or spoken words of the principal or the principal's conduct, that the principal wishes the agent to so act. Actual authority can be expressed or implied.

An agent's express authority is what the principal tells the agent or shows the agent about what his work is and/or how to do his work.

Implied authority is actual authority, either, one, to do what is necessary, usual and proper to accomplish or perform an agent's express responsibilities; or, two, to act in a manner in which an agent reasonably believes the principal wishes the agent to act.

The presence of actual authority requires that an agent's belief must be reasonable at the time the agent acts. It is also necessary that the agent in fact believes that the principal desires the action taken by the agent.

The determination of reasonableness is a question for you. The agent's interpretation of the principal's description of authority is reasonable if it reflects any meaning known by the agent to have been included in that description by the principal. The question is whether a reasonable person in the agent's position would interpret the description as an expression of the actual authority the principal intended to convey in light of the overall context, including circumstances of which the agent has notice and the

OFFICIAL TRANSCRIPT

agent's fiduciary duty to the principal.  An agent's
understanding of his actual authority is only reasonable if
it accords with the principal's expressions and
communications with the agent, and the inferences a
reasonable person in the agent's position would draw from
those expressions and communications which created the
agency.

Apparent authority exists when a third party
reasonably believes that an agent or other actor has
authority to act on behalf of the principal.  The third
party's belief must be reasonable and based on the
principal's written or spoken words or other conduct that
indicates the principal has conferred authority on the agent
or other actor.

If a person reasonably believes that an agent has
authority to act on behalf of his principal and suffers
damages as a result of the agent's conduct while the agent is
working for the principal, then the principal will be legally
responsible for the person's harm or injury.

Though a principal is bound by the actions of its
agents within the scope of that agent's actual apparent
authority -- actual or apparent authority, to recover under
the theory of apparent authority, a plaintiff must satisfy a
three-prong test.  Specifically, plaintiffs must show by a
preponderance of the evidence, one, acts or conduct on the

part of the principal indicating the agent's authority; two,
reasonable reliance on those acts; and, three, a detrimental
change in position as a result of such reliance.  The
determination of apparent authority is a factual issue for
you to decide.

      For plaintiffs to establish liability of the
principal under the theory of apparent authority, plaintiffs
must show, one, acts or conduct of the principal indicating
the agent's authority; two, that persons of reasonable
prudence, ordinarily familiar with business practices,
dealing with the agent might rightfully believe the agent to
have the power he assumes to have; and, three, a detrimental
change in position by the third person as a result of that
reliance.

      If you determine that express, implied or apparent
authority exists, you must next determine whether the agent
acted within the scope of his authority.

      An agent's conduct is within the scope of his
authority if he is carrying out the work he was hired to do
or if he is doing something that is necessary or usually done
in order to carry out the work he was hired to do.  You
should consider whether the agent's conduct was in fact done
in order to carry out the principal's work or whether such
conduct is expected to carry out the principal's work.

      A principal does not have to specifically authorize

**OFFICIAL TRANSCRIPT**

1    an agent's conduct for it to be within the scope of his

2    employment.  An agent's conduct which is connected or

3    necessary to carry out his employment is within the scope of

4    his employment as an agent.

:30:19   5        If an agent does something that is contrary to what

6    the principal has told him to do, the principal may still be

7    legally responsible for the agent's conduct if the conduct

8    was done within the scope of the agent's employment.

9        If an agent does something that goes beyond his

:30:36  10    scope of authority, the principal is not legally responsible

11    for the agent's conduct.

12        However, a principal may still be liable for acts

13    of the agent that go beyond the scope of his authority if

14    apparent authority exists.  That is, if an agent does

:30:56  15    something that goes beyond his scope of authority, but a

16    third person reasonably believes that the principal had

17    authorized the agent to do such an act, and then that person

18    relies on the agent's conduct in a way that causes him harm,

19    then the principal is legally responsible for the agent's

:31:13  20    conduct.

21        Finally, a principal may be liable for the acts of

22    its agent that went beyond the scope of the agent's authority

23    if the principal ratifies the act.  Ratification occurs when

24    a principal indicates assent to be bound by the prior

:31:31  25    unauthorized act of the agent so that the act is given effect

1    as if the agent had been acting with actual authority.

2         A person indicates his acceptance of the prior act

3    through his conduct or words or by his failure to object to

4    the act within a reasonable time of learning of the act.  A

5    person may also ratify an agent's act by accepting the

6    benefits of the agent's unauthorized conduct.

7         A person is not bound by a ratification made

8    without knowledge of material facts about the agent's act

9    unless the principal chose to ratify with awareness that such

10   knowledge was lacking.

11        A person who is ratified is not bound by the

12   ratification if it was made without knowledge of material

13   facts about the act of the agent or other actor.  The burden

14   of establishing that a ratification was made with knowledge

15   is on the party attempting to establish that ratification

16   occurred.

17        In plaintiffs' Claims Five, Six and Seven, which I

18   will explain to you shortly, plaintiffs assert that Signal is

19   responsible for the act of its agents.  In order to find for

20   the plaintiffs, you must determine the following:

21        (1) That Burnett and/or Dewan was Signal's agent.

22        (2) That the agent had actual or apparent

23   authority.  And

24        (3) that the agent acted within the scope of his

25   authority or the plaintiffs' reasonably believed the agent

OFFICIAL TRANSCRIPT

1    was authorized and relied on the agent's conduct in a way

2    that caused them harm.  You may also find for plaintiffs even

3    though their agent went beyond the scope of his authority if

4    Signal ratified the act of the agent.

:33:16    5            Now that I have explained the concept of agency, I

6    will instruct you on Claims Five, Six and Seven.

7            Claim Five:  Fraud.

8            Plaintiffs assert that Signal, Burnett and Dewan

9    committed fraud against them by making intentionally

:33:32    10    fraudulent statements to them and/or concealing material

11    facts from them regarding the following:  Long-term

12    employment in the United States with the U.S. employer;

13    plaintiffs' ability to receive a green card or permanent

14    residency within two years; plaintiffs' ability to receive a

:33:51    15    green card or permanent residency while remaining in the

16    U.S.; Signal's intent to sponsor the plaintiffs for

17    green cards; and the reasonableness of housing and living

18    conditions to be provided by Signal to plaintiffs.  Signal,

19    Burnett and Dewan deny these claims.

:34:11    20            I've earlier instructed you on the law of agency.

21    If you decide that plaintiffs were defrauded, that the

22    persons who defrauded them were agents of Signal, Burnett

23    and/or Dewan, and that those agents committed fraud within

24    the scope of their agency, then you must also find Signal,

:34:31    25    Burnett and/or Dewan liable for the fraud committed by their

**OFFICIAL TRANSCRIPT**

1    agents.

2         In order to prevail on their fraud claim,

3    plaintiffs must prove the following by a preponderance of the

4    evidence:

:34:41    5         (1) A party to a contract or with the party's

6    participation or the party's agent committed any of the

7    following acts:

8         The suggestion, as a fact, of something that is not

9    true by one who does not believe it to be true; the active

:34:59    10    concealment of a fact by one having knowledge or belief of

11    the fact; a promise made without any intention of performing

12    it; any other act designed to deceive; or any such act or

13    omission as the law specifically declares to be fraudulent.

14         (2) The acts were committed with intent to deceive

:35:22    15    another party or intent to convince another party to enter

16    into the contract.

17         (3) Plaintiffs relied on the fraudulent

18    representations made by the party or by the party's agents.

19    And

:35:34    20         (4) Plaintiffs were deceived by the fraudulent

21    representations made by the party or the party's agents.

22         In considering whether an act is fraudulent, you

23    may note that mere silence as to facts likely to effect the

24    willingness of a person to enter into a contract is not fraud

:35:53    25    unless the circumstances of the case are such that it is the

**OFFICIAL TRANSCRIPT**

1    duty of the person keeping silent to speak or unless his

2    silence is equivalent to speech.

3           Malvern Burnett, as the plaintiffs' attorney, had a

4    fiduciary relationship with them.  A person has a duty to

:36:12  5    speak with candor and completeness and to disclose all

6    relevant facts when he is a fiduciary in relation to another

7    person.  When a person is a fiduciary, failure to disclose

8    all facts fully and honestly will constitute fraud.

9           If you find that the sole fraud committed by Signal

:36:30  10    or its agents or Dewan or his agents was fraud as a result of

11    remaining silent, you should consider whether the plaintiffs

12    defrauded by the silence of Signal or its agents, or Dewan or

13    its agents, failed to exercise ordinary diligence to discover

14    the truth before entering into agreements with the defendant

:36:52  15    or its agents.  Ordinary diligence is diligence that a

16    reasonable person in the plaintiffs' situation would exercise

17    under the circumstances.  If a defendant committed fraud only

18    by silence and was not in a fiduciary relationship with the

19    plaintiffs, then the plaintiffs' failure to exercise ordinary

:37:11  20    diligence is evidence that the plaintiffs were not deceived

21    by that defendant.

22           If you find that plaintiffs proved each of the

23    requirements listed above, you may award compensation for

24    damages proximately caused by a defendant or its agent's

:37:29  25    fraud.  Plaintiffs seek damages they incurred from the time

**OFFICIAL TRANSCRIPT**

of their recruitment until the end of their employment at Signal.  You may consider the following elements of damages: Fees and expenses paid by plaintiffs related to recruitment, travel, and loans; any difference between wages promised to plaintiffs and wages they actually received; and fees deducted from plaintiffs' wages by Signal for room and board at the man camp.

Claim Six:   Negligent misrepresentation.

Plaintiffs claim that Signal, Burnett and Dewan made misrepresentations to them regarding the following: Long-term employment in the United States with the U.S. employer; plaintiffs' ability to receive a green card or permanent residency within two years; plaintiffs' ability to receive a green card or permanent residency while remaining in the U.S.; Signal's intent to sponsor the plaintiffs for green cards; and the reasonableness of housing and living conditions to be provided by Signal to plaintiffs.  Signal, Burnett and Dewan deny these claims.

I have earlier instructed you on the law of agency. If you decide that misrepresentations were made to the plaintiffs, the person who made -- persons who made the misrepresentations were agents of Signal, Burnett and/or Dewan, and the misrepresentations were made within the scope of their agency, then you must find Signal, Burnett and/or Dewan liable for the misrepresentations made by their agents.

**OFFICIAL TRANSCRIPT**

1          In order to prevail, plaintiffs must prove by a

2     preponderance of the evidence that a defendant or defendant's

3     agents committed any of the following acts:

4          Made an untrue assertion believing it to be true in

5     a manner not warranted by the information of the person

6     making the assertion; committed a breach of duty, which,

7     without an intent to deceive, allowed the person to gain an

8     advantage by misleading another person to his disadvantage;

9     or caused, however innocently, a party to an agreement to

10    make a mistake as to the substance of the thing which is the

11    subject of the agreement.

12         Regarding the duty owed to plaintiffs, you should

13    consider whether defendants Signal, Burnett and/or Dewan, and

14    their respective employees and agents, owed a duty of care to

15    the plaintiffs not to make a misstatement of material facts

16    regarding the opportunities for immigration and employment

17    being offered to plaintiffs.  Burnett, as the attorney for

18    the plaintiffs, had a fiduciary duty to the plaintiffs,

19    including a duty to speak with candor and completeness and to

20    disclose all relevant facts.

21         In considering whether any defendant is liable for

22    misrepresentations as to any plaintiff, you should also

23    consider foreseeability of harm, the nature of the

24    relationships that existed between plaintiffs and defendants,

25    and whether it would be just and reasonable to impose the

**OFFICIAL TRANSCRIPT**

liability.  Additionally, with respect to Signal and its
agents, and Dewan and his agents, you must consider whether
the plaintiffs exercised ordinary diligence to discover the
truth before entering into agreements with them.  Ordinary
diligence is diligence that a reasonable person in the
plaintiffs' situation would exercise under the circumstances.

If you find that plaintiffs proved each of the
requirements listed above, you may award compensation for
damages proximately caused by a defendant or its agent's
negligent misrepresentation.  Plaintiffs seek damages they
incurred from the time of their recruitment until the end of
their employment at Signal.  You may consider the following
elements of damage:  Fees and expenses paid by the plaintiffs
related to recruitment, travel and loans; any difference
between wages promised to plaintiffs and wages they actually
received; and fees deducted from plaintiffs' wages by Signal
for room and board at the man camp.

If you find by a preponderance of the evidence that
any plaintiff was contributorily negligent in relying on any
defendant or its agent's misrepresentations, you may decide
to reduce that plaintiff's damages to the extent of the
plaintiff's share in the responsibility for the damage.  In
deciding whether to reduce a plaintiff's damages on the basis
of contributory negligence, you should determine the
percentage of the reduction by considering what is just and

1    equitable considering the plaintiff's share of responsibility

2    for his damages.

3         Claim Seven:  Breach of contract or promissory

4    estoppel.

5         Plaintiffs assert claims against Signal, Burnett

6    and Dewan for breach of contract and promissory estoppel.

7    Signal, Burnett and Dewan deny these claims.

8         To prevail on the breach of contract claim,

9    plaintiffs must establish the following by a preponderance of

10   the evidence:  The existence of a valid and binding contract;

11   a defendant has broken or breached the contract; and

12   plaintiffs lost money as a result of the broken or breached

13   contract.

14        A contract is an agreement between two or more

15   people or parties.  A contract consists of an offer and

16   acceptance of that offer and consideration.  If one of these

17   three items is missing, there is no contract.

18        An offer is a proposal to enter into a contract and

19   has conditions or terms stated in the offer.  An acceptance

20   of that offer is an agreement to the conditions or terms

21   stated in the offer.

22        Consideration is a benefit received or something

23   that is given up in order to form the contract.

24   Consideration does not have to be money, but it must be

25   something of value.  Consideration is required in order for

:42:28

:42:47

:43:05

:43:25

:43:39

**OFFICIAL TRANSCRIPT**

1  the contract to be enforced.

2          A contract may be verbal or in writing.

3          Changes to a contract are not valid unless there is

4  additional consideration supporting the changes.

5          If you decide there was no valid contract,

6  plaintiffs may establish their claim for promissory estoppel

7  if they prove the following by a preponderance of the

8  evidence:  Promises were made to plaintiffs; plaintiffs made

9  payments and incurred expenses in reliance on those promises;

10  the promises on which plaintiffs relied were broken; and in

11  good conscience and justice, the money paid by plaintiffs in

12  relying on the promises should be returned to plaintiffs.

13          In connection with the elements of promissory

14  estoppel, plaintiffs must show that the promises made to them

15  and upon which they relied relate to a present intention or

16  purpose of the defendants.  That is because a defendant

17  cannot be precluded from changing his intention in the

18  future.

19          If you find that plaintiffs proved each of the

20  requirements listed above to breach of contract or a

21  promissory estoppel, you may award damages.  Plaintiffs seek

22  compensatory and punitive damages for their breach of

23  contract and promissory estoppel claims.

24          You may award compensation for any damages

25  proximately caused by a defendant's breach of contract or

OFFICIAL TRANSCRIPT

broken promises.  You may award the following elements of

compensatory damages:

(1) Compensation for all monies paid during the

recruitment process and in order to come to the United States

to work for Signal, including, but not limited to recruitment

fees, travel expenses, legal fees, medical testing, skills

testing and administrative fees; losses on any personal or

real property sold or pawned for the purposes of making

payments in connection with the recruitment; and fees and

interest paid on any loans incurred as a result of the

recruitment process up to the point at which each plaintiff's

employment at Signal ended.

(2) Refunds of recruitment fees, legal services

fees, and other fees and costs that the defendants promised

to pay plaintiffs if defendants failed to secure for

plaintiffs the promised visa extensions and green cards.

(3)  Compensation for deductions taken from

plaintiffs' paychecks by Signal for room and board, and any

difference between wages promised to plaintiffs and wages

they actually received.  And

(4) Disgorgement of profits received by advantage

of defendants' agreements with plaintiffs.

You should subtract from any compensatory damage

award expenses that plaintiffs would have had to pay if

Signal had not breached the contract or broken any promises

**OFFICIAL TRANSCRIPT**

1   and any losses or damages that Signal should have known would

2   occur and could have avoided.

3           You may also award punitive damages if plaintiffs

4   proved by clear and convincing evidence that, in breaching

:47:04   5   its contracts or breaking its promises, Signal acted with

6   malice or with a willful, wanton or reckless disregard for

7   the safety of others.

8           Clear and convincing evidence means that the

9   evidence is so strong that it leads you to a firm belief or

:47:19   10   conclusion, without hesitating, as to what the facts are and

11   that plaintiffs' claims are true.

12           For purposes of this instruction, malice is when a

13   person or corporation intentionally does something wrong

14   without having a valid reason or excuse.  Reckless disregard

:47:38   15   means when a person knows that a risk of emotional distress

16   would probably result from his conduct and then disregards

17   that risk and the harm that may occur as a result.

18           Claim Eight:  False imprisonment.

19           Plaintiff Jacob Joseph Kadakkarappally, who I will

:47:59   20   call Mr. Jacob, asserts a claim against Signal for false

21   imprisonment alleging that on March 9, 2007, Signal or its

22   hired guards falsely imprisoned him for several hours in

23   Signal's TV trailer despite his request to leave.  Signal

24   denies this claim.

:48:19   25           In order to prevail, Mr. Jacob must establish the

**OFFICIAL TRANSCRIPT**

following by a preponderance of the evidence:

(1) On March 9, 2007, Signal or its hired guards held or detained Mr. Jacob for several hours in Signal's TV trailer despite his request to leave.  And

(2) Mr. Jacob's holding or detention was unlawful because, looking at the totality of the circumstances, the actions of Signal or its guards with regard to the holding or detention were not objectively reasonable in their nature, purpose, extent and duration.

A defendant's action is objectively reasonable if, in light of all the circumstances, the action was reasonable in its nature, purpose, extent and duration.  It is the reasonableness of the defendant's actions, not the defendant's intent that matters.

If you find that Mr. Jacob has proved each of the requirements listed above you may award damages.  Mr. Jacob seeks compensatory damages and punitive damages for his false imprisonment claim.

You may award compensation for any damages proximately caused by Signal's false imprisonment. Specifically, you may award compensation for any mental anguish Mr. Jacob suffered.

You may also award punitive damages if Mr. Jacob proved by clear and convincing evidence that in subjecting him to false imprisonment, Signal or its hired guards acted

**OFFICIAL TRANSCRIPT**

1    with malice or with a willful, wanton or reckless disregard

2    for the safety of Mr. Jacob.

3           Clear and convincing evidence means that the

4    evidence is so strong that it leads you to a firm belief or

5    conclusion without hesitating as to what the facts are and

6    that Mr. Jacob's claims are true.

7           For purposes of this instruction, malice is when a

8    corporation intentionally does something wrong without having

9    a valid reason or excuse.  Reckless disregard means when a

10   person knows that a risk of emotional distress would probably

11   result from his conduct and then disregards that risk and the

12   harm that may occur as a result.

13          Claim Nine:  Intentional infliction of emotional

14   distress.

15          Mr. Jacob asserts a claim against Signal for

16   intentional infliction of emotional distress.  Signal denies

17   this claim.

18          In order to prevail on his claim for intentional

19   infliction of emotional distress, Mr. Joseph must establish

20   the following by a preponderance of the evidence:

21          (1) Signal or its hired guards publically confined

22   Mr. Jacob to the TV trailer under guard for several hours.

23          (2) The conduct of Signal or its hired guards was

24   outrageous.

25          (3) Signal or its hired guards intended to cause

**OFFICIAL TRANSCRIPT**

1   Mr. Jacob emotional distress or acted with reckless disregard

2   of the probability that Mr. Jacob would suffer emotional

3   distress.

4            (4) Mr. Jacob suffered emotional distress.

5            (5) The conduct of Signal or its hired guards, as

6   described above, was a substantial factor in causing

7   Mr. Jacob emotional distress.  And

8            (6) It was foreseeable that the conduct of Signal

9   or its hired guards would cause Mr. Jacob emotional distress.

10           For the second element, conduct is outrageous when

11  it is so extreme that it goes beyond all possible bounds of

12  decency.  Conduct is also outrageous if a reasonable person

13  would consider the conduct shocking and completely

14  unacceptable in a civilized community.

15           If you find that Mr. Jacob has proved each of the

16  requirements listed above, you may award damages.  Mr. Jacob

17  seeks compensatory damages and punitive damages for his

18  intentional infliction of emotional distress claim.

19           You may award compensation for any damages

20  proximately caused by Signal's intentional infliction of

21  emotional distress.  Specifically, you may award compensation

22  for any mental anguish Mr. Jacob suffered.

23           You may also award punitive damages if Mr. Jacob

24  proved by clear and convincing evidence that Signal or its

25  hired guards acted with malice or with a willful, wanton or

:51:34

:51:50

:52:11

:52:31

:52:49

OFFICIAL TRANSCRIPT

1  reckless disregard for the safety of Mr. Jacob.

2       Clear and convincing evidence means that the

3  evidence is so strong that it leads you to a firm belief or

4  conclusion, without hesitating, as to what the facts are and

5  that Mr. Jacob's claims are true.

6       For purposes of this claim, malice is when a

7  corporation intentionally does something wrong without having

8  a valid reason or excuse.  Reckless disregard means when a

9  person knows that a risk of emotional distress will probably

10  result from his conduct and then disregards that risk and the

11  harm that may occur as a result.

12       I will now instruct you on Signal's cross-claim.

13       Certain witnesses have testified about immigration

14  filings Mr. Burnett made for a number of Signal H-2B workers

15  in June of 2007.  Signal's cross-claim against Burnett is as

16  a result of some of those filings and subsequent actions by

17  unidentified workers as a result of those filings.  You may

18  consider such testimony in Signal's cross-claim against

19  Burnett and in Burnett's defense against the cross-claim.

20  You should not, however, consider those particular filings in

21  deciding the plaintiffs' claims against all defendants.

22       Signal's Cross-Claim One:  Indemnity.

23       Signal asserts claims against Burnett and Dewan for

24  indemnity.  Burnett and Signal [sic] deny these claims.

25       Indemnity allows the party who has been held

:53:08
:53:29
:53:58
:54:22
:54:43

OFFICIAL TRANSCRIPT

legally responsible for injuries to a person to shift the loss to another party or parties.

In order to prevail on its claim for indemnity, Signal must prove the following by a preponderance of the evidence:

(1) Signal owes a legal obligation to plaintiffs in the main action.

(2) Signal was not at fault in incurring the legal obligation to plaintiffs.  And

(3) In all fairness, Dewan and/or Burnett should indemnify Signal for the obligation owed to plaintiffs.

If Signal has proved the requirements listed above, Signal is entitled to damages in the amount of the legal obligation owed to plaintiffs.

I'll now give you closing instructions.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to reexamine your own opinions and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the others think differently or merely to finish the case.

Remember that in a very real way you are the

OFFICIAL TRANSCRIPT

1    judges, judges of the facts.  Your only interest is to seek

2    the truth from the evidence in the case.

3           When you retire to the jury room to deliberate, you

4    may take with you these instructions and the exhibits that

5    the Court has admitted into evidence.  Select your foreperson

6    and conduct your deliberations.  You must not communicate

7    with or provide any information to anyone by any means about

8    this case.  You may not use any electronic device or media

9    such as cell phone; iPad or computer; the Internet or any

10   Internet service, or any text or instant messaging service;

11   or any Internet chatroom, blog or website such as Facebook,

12   Myspace, LinkedIn, YouTube or Twitter to communicate to

13   anyone any information about this cas, or to conduct any

14   research about this case, until after I accept your verdict.

15          If you recess during your deliberations, follow all

16   instructions that the Court has given you about your conduct

17   during the trial.

18          If you want to communicate with me at any time,

19   please give a written message to the bailiff who will bring

20   it to me.  I will then respond as promptly as possible either

21   in writing or by meeting with you in the courtroom.  I will

22   always first show the attorneys your question and my response

23   before I answer your question.

24          After you have reached a verdict, you are not

25   required to talk with anyone about the case.

**OFFICIAL TRANSCRIPT**

1    I have prepared two verdict forms for your
2  convenience and to aid you in reaching a unanimous decision.
3  You will complete these verdict forms in two stages.  Thus, I
4  have captioned them Jury Verdict Form Stage One and
5  Jury Verdict Form Stage Two.
6    When you retire to the jury room in just a few
7  minutes, you will take with you Jury Verdict Form Stage One.
8  During Stage One, you will decide whether the plaintiffs or
9  the plaintiffs in cross-claim -- which is Signal -- have
10  proven their case against any of the defendants, and then you
11  will complete Jury Verdict Form Stage One.
12    After you have reached your unanimous verdict on
13  Jury Verdict Form Stage One, your foreperson must fill in
14  your answers to the written questions on Jury Verdict Form
15  Stage One and sign and date the form.  You will then return
16  Jury Verdict Form Stage One to me.
17    If your answers to Jury Verdict Form Stage One show
18  that you have found the plaintiffs or the cross-claimants
19  have proven their case, I will provide to you
20  Jury Verdict Form Stage Two and you will, at that time,
21  determine the damages to be awarded.  You will then return
22  Jury Verdict Form Stage Two to me.
23    Your verdict in Stage One and Stage Two must
24  represent the considered judgment of each juror.
25    Your verdict in Stage One and Stage Two must be

:58:14
:58:31
:58:52
:59:10
:59:29

**OFFICIAL TRANSCRIPT**

1   unanimous on each and every question you were called on to

2   decide.

3           You may now retire to the jury room to conduct your

4   deliberations and answer the questions on Jury Verdict Form

5   Stage One.

6           Before y'all retire, I want to ask you to return

7   back to Page 44 of the instructions.

8           And in the first line it says:  If you find the

9   defendants have established their RICO general claim, that

10  should say "plaintiffs."  The plaintiffs have established.

11          And we'll give you a page with this corrected, but

12  I wanted to tell you about that.

13          Hold on just a second.

14                              (A pause in the proceedings.)

15          THE COURT:  Can I see one counsel from each group

16  at the bench.

17                  **SIDEBAR ON THE RECORD**

18          THE COURT:  Look at Claim Seven, breach of

19  contract, promissory estoppel.  It is against Signal, Burnett

20  and Dewan.  And then I noticed that on Page 63, punitive

21  damages says you may also award punitive damages if they

22  prove that "Signal" acted with malice.  Shouldn't that be

23  "Signal, Burnett and Dewan"?

24          MR. WERNER:  Yes.

25          THE COURT:  I'm going to correct that also and give

:59:50

:00:36

:01:35

:02:01

:02:21

1   them this and make sure that everybody agrees.

2            MS. HANGARTNER:  Thank you, Your Honor.

3            MR. WERNER:  Thank you.

4                **AFTER THE SIDEBAR IN OPEN COURT**

5            THE COURT:  There is one other page I would like

6   for you to look at.  It's Page 63.

7            And in the first paragraph -- I'll let you get

8   there first.

9            The first paragraph after Section II, punitive

10  damages.

11           It says:  You may also award punitive damages if

12  plaintiffs prove by clear and convincing evidence that in

13  breaching its contracts or breaking its promises -- it has

14  "Signal."  That should say "Signal, Burnett or Dewan."

15           And we'll also give you a corrected Page 63.

16           All right.  One other thing I wanted to mention to

17  you.  When you get the jury verdict form, it will also have

18  tabs, the same as the set that you have.  So Tab 1 in the

19  jury instructions is Claim One, and Tab 1 is the verdict form

20  for Claim One, so you can always go between the instructions

21  and the verdict form on each claim.

22           I thought that -- since there were a number of

23  claims, I thought that might be helpful to you.

24           So I will now allow you to retire to the jury room

25  to begin your deliberations.


                    **OFFICIAL TRANSCRIPT**

1          (Jury out at 10:04 a.m.)

2          THE COURT:  We're going to redo those two pages

3     that I mentioned to them and we'll send those in.

4          We're going to check the jury verdict form to be

5     sure we didn't -- that that didn't translate somehow into the

6     jury verdict form.  I don't think it did, but we'll check

7     just to be sure.

8          Then as I mentioned to you, I'm going to give a

9     verdict form to each juror, but it has a number on it -- a

10    name and number -- and we're going to collect those back when

11    they finish deliberating.

12         We have cell numbers for everyone, correct?  If I

13    get a question from the jury, I'll -- we'll contact all of

14    you and we'll come back in court and I'll tell you what it is

15    and discuss how to respond.

16         So make sure you're available.  Don't go too far.

17         THE CASE MANAGER:  Just if everyone --

18         THE COURT:  Whoever is going to be your contact

19    person, just write a cell number so we'll know.

20         Anything else we need to talk about?

21         (No response.)

22         THE COURT:  Has everyone looked at the exhibits and

23    certified that they are correct?

24         MR. UNGAR:  There is one thing to say for the

25    record, but I think the exhibits are in good shape.


**OFFICIAL TRANSCRIPT**

1      THE COURT:  Okay.  You can have a seat while we --

2      MS. HANGARTNER:  Can we put two people in an

3  abundance of caution?

4      THE COURT:  Sure.

5                    (A pause in the proceedings.)

6      MR. WERNER:  Your Honor, with the consent of

7  defendants, plaintiffs have withdrawn Exhibits 1194 --

8      THE COURT:  Speak up.

9      MR. WERNER:  Sure.

10      With the consent of the defendants, plaintiffs have

11  withdrawn Exhibits 1194, 1197 and 1198.

12      MR. UNGAR:  Do we need to -- so a couple of the

13  exhibits that were offered into evidence, there was only a

14  couple of pages that were actually introduced to the Court.

15  And so there were some changes to a couple of the exhibits --

16  maybe there was like a 400-page exhibit, and now there are

17  only three pages in the binder.

18      Is that something we need to clarify for the

19  record?

20      THE COURT:  Well, did everyone agree to that?

21      MR. UNGAR:  Yes.

22      THE COURT:  Does anyone have any objection?

23      MR. CERNIGLIA:  The exhibits that I introduced

24  during the testimony of Kathy Moser or Malvern Burnett or

25  Marie Lau, some of those were several hundred pages and I

:07:09

:08:23

:08:40

:08:50

:09:08

OFFICIAL TRANSCRIPT

1    only showed one or two, but I want them all in.

2            MR. WERNER:  They are all in.  The only exhibit I

3    believe this impacts was the entire plaintiffs' class

4    certification -- initial class certification motion.  All the

:09:22    5    motion papers were an exhibit, and --

6            THE COURT:  And that was introduced into evidence?

7            MR. WERNER:  Well, there was one declaration that

8    Signal used from that, so only the declaration is going back,

9    not the entire motion.

:09:35    10            THE COURT:  I understand.  That's certainly what I

11    intended.

12            MR. UNGAR:  Absolutely.  That's why we all agree.

13            Is there a need to read those things --

14            THE COURT:  Is that the only one?

:09:44    15            (Conferring.)

16            MR. WERNER:  1201 was also partially redacted.

17            MR. CERNIGLIA:  Which one of them, do you say?

18            MR. WERNER:  These were -- we first circulated this

19    e-mail I believe -- was it four days ago?

:10:12    20            MR. SANDLER:  What is the issue?

21            MR. CERNIGLIA:  There were exhibits that he just

22    read off, 1194, 1197 --

23            THE COURT:  Look, y'all -- we're going off the

24    record for a second for y'all to talk so the court reporter

:10:26    25    is not trying to...

OFFICIAL TRANSCRIPT

                                      (Discussion off the record.)
 1
 2              MR. SANDLER:  We're agreed.
 3              THE COURT:  Wait, wait, wait.  I want someone to
 4    say clearly on the record which ones were redacted, and, Dan,
:11:44   5    are you the person who has that?
 6              (Conferring.)
 7              THE COURT:  So let's take it from the top.  Which
 8    ones were redacted?
 9              MR. WERNER:  1201 was redacted.
:12:05  10              THE COURT:  And is that the class complaint?
 11              MR. WERNER:  No.  That was just a bank record that
 12    included some information from after the time the plaintiffs
 13    left.
 14              THE COURT:  Speak loudly.
:12:16  15              MR. WERNER:  Sorry.
 16              It was some bank records that had some information
 17    from the time after the plaintiffs left.
 18              THE COURT:  Okay.  So does everyone know how -- in
 19    what manner that was redacted?
:12:25  20              MR. CERNIGLIA:  Yes, Your Honor, and I have no
 21    objection to redaction.
 22              THE COURT:  Mr. Shapiro?
 23              MR. SHAPIRO:  I still want to know what the
 24    exhibits are and what happened to them.  And I don't think
:12:33  25    it's -- I don't think it's --

                          **OFFICIAL TRANSCRIPT**

1        THE COURT:  You know what?  Yesterday afternoon
2   when I said stay here to look at the exhibits, you were not
3   here to participate in this, which is now causing a problem.
4        So I want you to -- let's take a ten-minute break.
:12:49   5   You look at the exhibits and let them go through which ones.
6   They are sitting right there on the table right there in
7   front of you.
8        So we're going to take a ten-minute break.  We're
9   going to come back at 10:20 and put this on the record.
:13:15   10                     (A recess was taken.)
11                     **AFTER THE RECESS**
12                          (Call to order of the court.)
13        THE COURT:  Have a seat.
14        MR. WERNER:  Thank you, Your Honor.
:26:59   15        With the consent of counsel, plaintiffs have
16   withdrawn Exhibits 1194, 1197, and 1198.  Exhibit 1201 has
17   been partially redacted to remove some material that is
18   covered by --
19        THE COURT:  Speak up.
:27:21   20        MR. WERNER:  -- to remove some material that's
21   covered by a motion *in limine*.
22        And Exhibit 1892, as I mentioned earlier, was the
23   plaintiffs' entire initial class certification motion
24   submission from October 2008.
:27:41   25        Signal only used the declaration of

**OFFICIAL TRANSCRIPT**

1  Palanyandi Thangamani in their examination; and, therefore,

2  the remainder of that exhibit has been removed with the

3  exception of Mr. Palanyandi's affidavit.

4          And finally, with respect to Exhibit 2061, which

:28:00  5  were Hemant Khuttan's welding photos, we removed the photos

6  that had not been authenticated.  So what remains in the

7  exhibit are SIGE0558540, 43, and 45.

8          THE COURT:  Do all counsel agree?

9          MR. UNGAR:  No objection.

:28:24  10         MR. SHAPIRO:  No objection from Dewan.

11         MR. CERNIGLIA:  No objection.

12         THE COURT:  All right.  Thank you.

13         And do the books, as they sit right now on the

14  table, reflect these redactions and the removal of the

:28:34  15  exhibits?

16         MR. WERNER:  Yes, they do, Your Honor.

17         THE COURT:  Okay.  So now, Mr. Werner, if you will

18  sign the certification, we'll have that from everyone.

19         And the jury, when the deputy clerk took back the

:28:58  20  jury verdict form, indicated that they might already have a

21  question so that's why I thought maybe y'all could stay for a

22  minute so we don't have to call you back.

23         Is Mr. Howard coming back or --

24         If he doesn't and y'all waive his presence, that's

:29:15  25  fine with me, too.  I just want to give him the opportunity.

**OFFICIAL TRANSCRIPT**

1    So give us a minute and we'll see if we get a

2  question.  If so, we'll go back on the record.

3                      (A recess was taken.)

4                    **AFTER THE RECESS**

5                        (In open court with attorneys.

6                         appearing by phone.)

7         THE CASE MANAGER:  Counsel.  Okay, Judge Morgan is

8  here now and so is the court reporter.

9         THE COURT:  Do a roll call.

10         THE CASE MANAGER:  Mr. Howard?

11         MR. HOWARD:  Yes, here.

12         THE CASE MANAGER:  Mr. Shapiro?

13         MR. SHAPIRO:  Yes, ma'am, I'm here.

14         THE CASE MANAGER:  Ms. Hangartner?

15         MS. HANGARTNER:  I'm here.

16         THE CASE MANAGER:  Mr. Cerniglia?

17         MR. CERNIGLIA:  Present.

18         THE CASE MANAGER:  And I think Mr. Werner is with

19  you, Mr. Howard, correct?

20         MR. HOWARD:  Yes, he is.

21         THE COURT:  All right.  Can y'all hear me?

22         MS. HANGARTNER:  Yes, Your Honor.

23         MR. HOWARD:  Yes, Your Honor.

24         THE COURT:  The first question is:  The jurors are

25  concerned.  Can we get a list of start and end dates of all

**OFFICIAL TRANSCRIPT**

1    the plaintiffs?

2              MR. CERNIGLIA:  Start and end dates of the what?

3              THE COURT:  Of the plaintiffs.

4              I think they mean the start and end dates of their

5    work at Signal.

6              I would propose that we give them that list.  Does

7    anyone want to comment or object?

8              MS. HANGARTNER:  I have no objection.

9              THE COURT:  Wait.  That was Erin.

10             MS. HANGARTNER:  No objection.

11             THE COURT:  Mr. Howard?

12             MR. HOWARD:  No objection.

13             I think that the start and end dates for each of

14   the plaintiffs are in with stipulated facts in the pretrial

15   order.

16             THE COURT:  Say that again.

17             MR. HOWARD:  I believe that each start and end date

18   are among the stipulated facts in the pretrial order, but I

19   also had a slide for that in my opening statement.

20             THE COURT:  Why don't you send -- left me first --

21   Mr. Cerniglia, do you have any objection?

22             MR. CERNIGLIA:  No objection, Your Honor.  No

23   objection.

24             THE COURT:  And Mr. Shapiro?

25             MR. SHAPIRO:  No objections, Your Honor.


                        OFFICIAL TRANSCRIPT

:48:13

:48:30

:48:40

:48:53

:49:01

1    THE COURT:  All right.  So, Mr. Howard, could you

2 repeat --

3    Do we have the slide already from opening?

4    THE LAW CLERK:  No.

5    THE COURT:  Maybe you could send that to Philip.

6    MR. HOWARD:  I think the slide would have the start

7 date.  I don't believe it would have the end date.

8    MS. HANGARTNER:  I have a slide with the start and

9 end date, but it has additional information.  I just need to

10 pull it off.

11    THE COURT:  Why don't you send that to us and we'll

12 give that to them.

13    MS. HANGARTNER:  Sure.

14    THE COURT:  The second question:  What is the

15 designated end time for today, tomorrow, et cetera?  Is it

16 5:00, 6:00 or 6:30?

17    And my plan was to let them go at 4:00, so any

18 comment or concern about that?

19    MS. HANGARTNER:  No, Your Honor.  This is Erin.

20 No, Your Honor.

21    MR. HOWARD:  No, Your Honor.

22    THE COURT:  How about Mr. Shapiro and

23 Mr. Cerniglia?

24    MR. CERNIGLIA:  Yeah.  No objection, Your Honor.  I

25 agree.

:49:12
:49:25
:49:32
:49:55
:50:04

**OFFICIAL TRANSCRIPT**

1        MR. SHAPIRO:  No objection on behalf of Dewan.

2        THE COURT:  I would love to be able to keep them

3   longer but I'm afraid about the traffic downtown.

4        Okay.  So that's all I need.  If y'all send that --

5   so is it Erin that is going to send us the start and end

6   dates?

7        MS. HANGARTNER:  Yes, Your Honor.  And I'll send

8   that copy to everybody.

9        And then you said 4:00 you are going to let them

10  go?

11       THE COURT:  Yes.

12       MR. CERNIGLIA:  And start back at 8:00?

13       THE COURT:  They'll start at 8:00 tomorrow.

14       MR. CERNIGLIA:  Okay.

15       THE COURT:  Okay.  Thank you.

16       MR. CERNIGLIA:  Do we need to be present when they

17  start or just be on call?

18       THE COURT:  Just be on call.

19       MR. CERNIGLIA:  Thank you.

20       THE COURT:  Thank you.

21       MS. HANGARTNER:  Thank you, Your Honor.

22       MR. HOWARD:  Thank you, Your Honor.

23       THE COURT:  Bye-bye.

24                    (A recess was taken.)

25                    **AFTER THE RECESS**


                    **OFFICIAL TRANSCRIPT**

```
                                      (Call to order of the court.)
 1
 2              THE COURT:  All right.  Be seated.
 3              All right.  As we discussed in our telephone
 4     conversation, the jury sent out a question asking for a list
 5     of the start and end dates of the plaintiffs.  And we
 6     received some communications from Signal, and I understand
 7     there may be some disagreement about those dates.
 8              So, Mr. Werner, can you address that -- or
 9     Mr. Howard, whoever?
10              I've got a copy of what Signal sent us if you want
11     it.
12              MS. HANGARTNER:  Did you get the second one,
13     Your Honor?
14              THE COURT:  (Nods head.)
15              MR. WERNER:  Your Honor, what we have -- and this
16     is taken, with one exception that I'll note, from the
17     stipulated facts that were submitted with the pretrial order.
18              We have Mr. Andrews -- and these are work dates so
19     I don't know if Signal -- if the jury wants the arrival dates
20     or work dates.
21              THE COURT:  I think they wanted work dates.  The
22     arrival date would be the day they arrived at Signal.
23              MS. HANGARTNER:  That's the day they arrived and
24     filled out the paperwork.
25              THE COURT:  That would be the day before they
```

**OFFICIAL TRANSCRIPT**

1    started?

2              MS. HANGARTNER:  A day, maybe two days.

3              THE COURT:  So that is not really relevant.

4              MR. WERNER:  As far as work dates, we have for

5    Mr. Andrews, November 2, 2006, through January 25, 2008.

6              For Mr. Palanyandi, we have November 22, 2006 --

7              THE COURT:  Okay.  Starting -- say that again.

8              MR. WERNER:  For Mr. Palanyandi, we have him

9    starting November 22, 2006, through March 4, 2008.

10             For Mr. Sony, we have him starting November 22,

11   2006, through March 9, 2007.

12             THE COURT:  Okay.

13             MR. WERNER:  For Mr. Jacob, we have December 8,

14   2006, through March 9, 2007.

15             THE COURT:  12-8-06 through March 9th, which is

16   what Signal had, so we agree on that one.

17             MR. WERNER:  For Mr. Hemant, we have January 26,

18   2007, through March 4, 2008.

19             THE COURT:  Okay.  So it looks like you agree

20   completely on Mr. Hemant, and you agree on the end date for

21   Mr. Jacob, and the end date for Mr. Andrews.

22             Okay.

23             MR. WERNER:  The only -- in the pretrial -- in the

24   stipulated facts for Mr. Palanyandi, it just says he finished

25   in March of 2008, but we've looked at our records.  He left

:36:09

:36:37

:37:08

:37:26

:37:49

OFFICIAL TRANSCRIPT

1    on the same day as Mr. Hemant, so that would be March 4th.

2         THE COURT:  All right.

3         MR. HOWARD:  Your Honor, if there is an

4    agreement -- I circulated the slide that Mr. Werner is

5    looking at to Philip as well, so if there is agreement on it,

6    it can be printed out and given to the jurors.

7         MS. HANGARTNER:  Let me pull it up.

8         THE COURT:  Have you got a copy, anybody?

9         MR. HOWARD:  I didn't copy them.

10        You can look at it on my computer, too, Erin.

11                      (A pause in the proceedings.)

12        THE COURT:  Either of you have any comments?

13        MR. SHAPIRO:  None.

14        MR. CERNIGLIA:  No comments.  And I believe the

15   dates all sound about right.

16        THE COURT:  It's not like there is any date that

17   is -- it's a day or two off that is really an issue.

18        The date that the slide that we got from you just

19   as four people on it.

20        MR. WERNER:  It should have five.  We may need to

21   scroll down.

22        THE COURT:  I'm trying to scroll.  Nothing is

23   happening.

24                      (A pause in the proceedings.)

25        THE COURT:  The issue is do we have agreement on

**OFFICIAL TRANSCRIPT**

1   the dates.

2           So has -- does Signal -- have y'all seen this?

3           MS. HANGARTNER:  I'm having computer issues.

4           Thanks, Dan.

:39:52   5           THE COURT:  Could you just re-send it to -- or

6   maybe if Philip opens up in his office, we'll have the whole

7   thing.

8           MS. HANGARTNER:  So these are the actual work

9   dates?

:40:12   10          MR. WERNER:  Yes.

11          MS. HANGARTNER:  Yes.

12          THE COURT:  Is that consistent?

13          MS. HANGARTNER:  Yes.

14          THE COURT:  Is that acceptable to Signal?

:40:18   15          MS. HANGARTNER:  Yes, Your Honor.

16          THE COURT:  Okay.  So I will -- we'll stay and

17  let's be sure we can print it off, and then we'll give that

18  to the jurors.

19          I apologize for you having to come back, but I

:40:34   20  thought if we're going to have a lot of discussion and you're

21  going to have to look at exhibits, I want you to be here.

22          MS. HANGARTNER:  I totally understand.  And I

23  apologize for the initial snafu.

24          MR. SHAPIRO:  Not a problem here.  I'm down the

:40:51   25  street.


OFFICIAL TRANSCRIPT

1          THE COURT:  I'll tell you, so you can be thinking

2     about it, Ms. Hangartner, I'm going to hold a hearing on rule

3     to show cause why you shouldn't be sanctioned, and I'm just

4     thinking about whether it's just you or Signal and you, for

5     the issues that we discussed during closing arguments.  So

6     I'm thinking of doing it tomorrow so -- while everybody is

7     here and focused on this.

8          So I haven't decided on the time, but I wanted to

9     let you know so you could get ready.

10          So we've got that, and we'll now give that to the

11     jury and we'll be in touch.

12          MS. HANGARTNER:  Thank you, Judge.

13          MR. SHAPIRO:  Thank you, Your Honor.

14          THE COURT:  Y'all can leave.  I'm just fixing my

15     note for the jury.

16                         (A recess was taken.)

17                    **AFTER THE RECESS**

18                              (Call to order of the court.)

19          THE COURT:  I want this on the record.

20          I notified counsel this afternoon that I was going

21     to bring the jury back in at 4:00 and just give them some

22     instructions just as I've given during the trial.

23          The record should reflect that counsel for the

24     plaintiffs is here.  We also called counsel for Signal,

25     Dewan, and Burnett, and they confirmed that they had gotten

**OFFICIAL TRANSCRIPT**

1    the e-mail but they would not be able to be here this

2    afternoon.  And I informed them that counsel for plaintiff

3    are here.

4            So I just wanted to put that on the record.

5            So now we can bring them in.

6                              (Jury in at 4:11 p.m.)

7            THE COURT:  All right.  Have a seat.

8            All right.  I just wanted to remind you before you

9    went home for the day about the instructions that I've given

10   you throughout out the trial.  Those instructions still apply

11   as you deliberate from day-to-day.

12           You're not to discuss the case with anyone --

13   members of your family, people involved in the trial or

14   anyone else.  If anyone approaches you and tries to talks

15   about the case, do not tell your fellow jurors but advise me

16   about it immediately.

17           You must not communicate with or provide any

18   information to anyone by any means about this case.  The only

19   people that you are supposed to talk to about the case now

20   are your fellow jurors.

21           Also remember you can't use any electronic device

22   or media such as a telephone, cell phone, smart phone,

23   iPhone, Black Berry, or computer or the Internet to

24   communicate to anyone any information about the case or to

25   attempt to research and find any information about the case.

**OFFICIAL TRANSCRIPT**

1          So at this point you can go home for the evening,

2     and we'll see you at 8:00 in the morning at which time just

3     report to the jury room and you'll resume your deliberations.

4          And I would ask that you all leave the jury

5     instructions and the jury verdict forms on the table, and

6     they'll be there for you in the morning.

7          So I hope y'all have a good evening.

8                              (Jury out at 4:13 p.m.)

9          THE COURT:  All right.  So we'll do this again

10    tomorrow if need be.  Thank you.

11         MR. HOWARD:  Thank you, Your Honor.

12                              (Proceedings adjourned.)

13

14                    * * * *

15                    CERTIFICATE

16

17    I hereby certify this 11th day of February, 2015, that

18    the foregoing is, to the best of my ability and

19    understanding, a true and correct transcript of the

20    proceedings in the above-entitled matter.

21

22                              /s/ Mary V. Thompson

23                              Official Court Reporter

24

25

                         OFFICIAL TRANSCRIPT