1                UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF LOUISIANA
2

3    KURIAN DAVID, et al.,                 CIVIL ACTION
              Plaintiffs
4
     versus                                No. 08-1220
5

6    SIGNAL INTERNATIONAL, LLC., et al.,   Section "E"
              Defendants
7

8    **Related Case:**

9    EQUAL EMPLOYMENT OPPORTUNITY           CIVIL ACTION
     COMMISSION,
10            Plaintiffs

11   versus                                No. 12-557

12
     SIGNAL INTERNATIONAL, LLC, et al.,    Section "E"
13            Defendants

14   **Related Case:**

15   LAKSHMANAN PONNAYAN ACHARI, et al.,   CIVIL ACTION
              Plaintiffs
16
     versus                                No. 13-6218
17                                         (c/w 13-6219,
                                            13-6220,13-6221
18   SIGNAL INTERNATIONAL, LLC, et al.,     14-1818)
19            Defenants                    Section "E"

20   **Applies to:**
     **David 08-1220**

21

22                        **DAY 22**
                    **February 12, 2015**
23

24         TRANSCRIPT OF THE TRIAL PROCEEDINGS
         BEFORE THE HONORABLE SUSIE MORGAN,
25          UNITED STATES DISTRICT JUDGE,
                    AND A JURY.


                    **OFFICIAL TRANSCRIPT**

1    **APPEARANCES:**

2

3    For Plaintiffs:                    ALAN HOWARD, ESQ.
                                        HUGH D. SANDLER, ESQ.
4                                       CHIEMI D. SUZUKI, ESQ.
                                        Crowell & Moring, LLP
5                                       590 Madison Avenue
                                        New York, NY 10022
6                                       212.803.4021

7                                       DANIEL WERNER, ESQ.
                                        NAOMI TSU, ESQ.
8                                       MELIA AMAL BOUHABIB, ESQ.
                                        MEREDITH STEWART, ESQ.
9                                       Southern Poverty Law Center
                                        Immigrant Justice Project
10                                      233 Peachtree Street NE
                                        Atlanta, GA 30303
11                                      404.521.6700

12                                      CHANDRA S. BHATNAGAR, ESQ.
                                        American Civil Liberties Union
13                                      Foundation (New York/Broad)
                                        125 Broad Street, 18th Floor
14                                      New York, NY  10004

15

16   For Signal Entities:              ERIN CASEY HANGARTNER
                                       ELHAM RABBANI, ESQ,
17                                      HAL UNGAR, ESQ.
                                       BRIAN ROUX, Ph.D., ESQ.
18                                      LANCY RYDBERG, ESQ.
                                       Hangartner Rydberg & Terrell
19                                      One Shell Square
                                       701 Poydras Street
20                                      Suite 310
                                       New Orleans, LA 70139

21                                      PATRICIA BOLLMAN, ESQ.
                                       Patricia Bollman, APLC
22                                      P.O. Box 13707
                                       New Orleans, LA 70185.

23

24                                      ALAN WEINBERGER, ESQ.
                                       Weinberger Law Firm
25                                      201 St. Charles Avenue
                                       New Orleans, LA  70170

**OFFICIAL TRANSCRIPT**

```
1    For Sachin Dewan:              STEPHEN SHAPIRO, ESQ.
                                    Law Office of Stephen Shapiro
2                                   700 Camp Street
                                    New Orleans, LA 70130
3

4    For Malvern Burnett:           TIM CERNIGLIA, ESQ.
                                    Law Office of Tim Cerniglia
5                                   1521 St. Charles Avenue
                                    New Orleans, LA 70130
6

7

8

9
     REPORTED BY:
10
     MARY V. THOMPSON, RMR, FCRR
11   Official Court Reporter
     HB 273
12   500 Poydras Street
     New Orleans, Louisiana 70130
13   (504)589-7783
     mary_v_thompson@laed.uscourts.gov
14

15

16   .

17

18

19

20

21

22

23

24

25
```

**OFFICIAL TRANSCRIPT**

INDEX

                                                        PAGE NO.

JURY CHARGE CONFERENCE........................... 5076

HEARING ON SANCTIONS ISSUE...................... 5097

JURY VERDICT - STAGE 1.......................... 5118

JURY DISMISSAL.................................. 5184

OFFICIAL TRANSCRIPT

**P R O C E E D I N G S**

(Call to order of the court.)

THE COURT:  Have a seat.

All right.  The first thing I want to talk about is the jury charges for Stage 2.

We prepared a draft of the charges for Stage 2. But as you'll remember, we're going to have to tailor that to what the jury returns.  So there is some issues with it that we'll just have to resolve at that point.

And as I mentioned to you, what my plan is, at this point, I'm going to get the jury verdict form back on Stage 1.  I'm going to bring the jury in and we're going to read the verdict.  And y'all can keep -- make your notes about what the jury said on your copy of the jury verdict form.

Then I'm going to go into chambers and see if I can figure out if there are any claims on which the jury has awarded damages.  And if so, we're going to prepare Stage 2 just for those.  So it is going to take some tweaking.  But let me address the issues that you all have raised.

I think the first e-mails we got were about damages -- you know, were the damages caused by the action.

Well, I think we've covered that because in the -- I believe in the Stage 1 jury verdict form, you remember we added a final question about do you find that whatever was

**OFFICIAL TRANSCRIPT**

1    done by any of the defendants caused the damage.  So that's

2    where the causation comes in.

3         And the reason we did that is we didn't want to ask

4    causation in Stage 2 because what I'm going to tell them is,

:10:17   5    if you got a damages section back on a particular claim

6    against a particular defendant, it's because you answered

7    those questions in a way that would allow you to award

8    damages if you find any.

9         So I didn't want to imply to them that just because

:10:35   10   I gave it back to them -- well, I guess that's the

11   implication.

12        If I give them back a form for damages, they've

13   answered the questions in a way that would support an award

14   of damages.  So I had to ask the causation question first in

:10:57   15   Stage 1.  So I think we've done the best we can on that.

16        And then when I got the e-mails we had today about

17   the RICO damages, I think I understand what your point is,

18   but I'm not sure.

19        So if anyone would like to put your objections to

:11:21   20   either of these issues, or any others, and we'll have a

21   discussion -- but let's take it an issue at a time.

22        Let's talk about the causation issue.  Does anyone

23   want to put anything on the record?

24        MR. WEINBERGER:  Dan, is there anything you want to

:11:37   25   say?

**OFFICIAL TRANSCRIPT**

1        MR. WERNER:  With respect to the causation, we have

2   no objections to the Court's language in that respect.

3        MR. WEINBERGER:  As Your Honor knows, this is --

4   has sort of been my issue.

5        And I actually brought with me an example of

6   something that I did with the Court, Your Honor, in terms of

7   red-lining things the Court had done that I think illustrates

8   this issue in a way that does sort of underscore a difference

9   of opinion about how best to do this.

10        And the way I want to approach that, if Your Honor

11   please, is specifically with regard to the TVPA case and the

12   jury interrogatories that have been formulated with regard

13   thereto.

14        Your Honor, if I may direct your --

15        THE COURT:  In Stage 2 or Stage 1?

16        MR. WEINBERGER:  Stage 1, Your Honor.

17        Is this limited to Stage 2?

18        THE COURT:  Yeah, we're already past Stage 1.

19        MR. WEINBERGER:  I'm sorry.  Then I misunderstood

20   you, Your Honor.

21        THE COURT:  Is there something that -- if you

22   briefly want to just say you object to the way we did the

23   causation in Stage 1.

24        MR. WEINBERGER:  I will say one thing and sit down.

25        THE COURT:  Okay.


**OFFICIAL TRANSCRIPT**

1           MR. WEINBERGER:  What I tried to do in red-lining

2      the question, which was Question No. 4 in the instructions

3      concerning the TVPA -- at least the document I'm looking at,

4      it was Page 5, I think this is what I might have e-mailed --

:13:02      5           THE COURT:  Right.  And I thought you said it a

6      different way, but basically we had the same concept, that we

7      needed to put a causation question in Stage 1.

8           MR. WEINBERGER:  With one caveat.

9           What I tried to do very explicitly, because of

:13:16     10      Rule 49, is capture the exact issue raised by Section 1595.

11           So what I did was I massaged that a little bit by

12      saying, why not put the language in there, "is a victim of."

13      That's an example of what we're talking about.

14           Thank you, Your Honor.

:13:33     15           THE COURT:  All right.  Thank you.

16           Now in Stage 2, Mr. Weinberger, do you have any --

17           MR. WEINBERGER:  Yes.  If I may sort of reverse the

18      order of this, Your Honor, if Your Honor please.

19           Alan Weinberger on behalf of Signal.

:13:48     20           If I may reverse the order of this and stand for

21      Mitchell for one second, Your Honor, may I ask whether -- I

22      missed it.  I think Mitchell missed it, if it was there.

23           Is there a special interrogatory, a jury

24      interrogatory, on the cross-claim in Stage 2 with regard to

:14:07     25      indemnity?

**OFFICIAL TRANSCRIPT**

1        If there is a question like that, I missed it.

2        THE COURT:  You know, maybe it didn't get -- it's

3    not on my printed version.

4                    (A pause in the proceedings.)

:14:41  5        THE COURT:  All right.  I remember now.

6        The only amount of damages, I believe, that you

7    asked for was the amount of damages awarded against you in

8    favor of the plaintiffs.  And the jury won't know that

9    number.

:14:55  10       MR. WEINBERGER:  Yes.

11       THE COURT:  So I'm just assuming that that's

12   something the Court will do and that -- because what would

13   the question say?

14       Because they've already -- if they answered all the

:15:04  15   questions right in Stage 1, then at some point later I would

16   enter that amount in a judgment, I guess, because the jury

17   doesn't know what that amount is.

18       MR. WEINBERGER:  We wondered whether that was the

19   Court's reason and the Court has confirmed that it was.

:15:19  20       THE COURT:  Okay.

21       MR. WEINBERGER:  So thank you, Your Honor.

22       Your Honor, if I may address the issue, then,

23   jumping around a little bit, because I'm going to go through

24   a lot of these interrogatories.

:15:31  25       If I may first address the issue that Dan raised,

OFFICIAL TRANSCRIPT

1    as you know, his award, if he receives one, will be trebled.

2    And Dan, thankfully to his credit, has asked the Court to

3    focus on the importance of having a very, very precise answer

4    for this sort of punitive reason.

:15:51

5         So the question that is raised is concerning

6    damages awarded specifically with regard to the RICO

7    violation.  Dan raised the question.  To the best of my

8    knowledge, I'm not sure that he proposed a specific sort of

9    solution.

:16:05

10        THE COURT:  Well, let's get -- I'm not sure I

11   understand the concern.  So if we're going to start with

12   that, let's let him tell us what the concern is.

13        MR. WEINBERGER:  Thank you, Your Honor.

14        MR. WERNER:  Thank you, Your Honor.

:16:25

15        Daniel Werner for the plaintiffs.

16        Our only concern with the RICO is that because the

17   RICO damages are automatically trebled, what gets trebled is

18   not the damages that may be reduced by other damages that

19   have been allotted to other claims, but it's what gets

:16:51

20   trebled is the totality of the RICO damages.  So --

21        THE COURT:  Well, you said in your e-mail "because

22   the RICO damages, not just the damages that are unique to the

23   RICO claims."  I didn't understand what the difference was.

24        MR. WERNER:  Sure, sure.

:17:09

25        The -- and that may not have been phrased clearly.

**OFFICIAL TRANSCRIPT**

1    In fact, it wasn't.

2              The -- let's say using the example of the

3    recruitment fees.

4              If the recruitment fees are awarded, say, through

5    the Indian law fraud claims, and through RICO, and then there

6    are additional RICO damages, the entirety of the RICO damages

7    is what gets trebled, so would not be reduced by the amount

8    of the recruitment fees that were awarded through India law.

9              I don't know if that clarifies or confuses.

10             THE COURT:  Okay.  I thought that might be what

11   you're talking about.

12             This is my concern.  There -- the RICO damages,

13   which are all the money paid during the recruiting process

14   and the $35 a day deductions, those are also in Claims 1 and

15   2 and 5 and 6.

16             MR. WERNER:  That's correct.

17             THE COURT:  And so I guess I've been thinking the

18   way that we were handling that was the instruction we added

19   saying only put RICO damages.  And if we assume the jury

20   follows that, then whatever they put for RICO damages is what

21   would be trebled.

22             Now, that -- another way to address this -- well,

23   you respond to that and then I'll tell you one idea I have.

24             MR. WERNER:  I think it's a little bit different.

25             Our concern is that if it's phrased only the RICO

OFFICIAL TRANSCRIPT

1    damages, and the way it is written in the instructions --

2              THE COURT:  Under the RICO claim.

3              MR. WERNER:  Under the RICO claim, in the event you

4    award compensatory damages for this claim and also award

:19:19    5    compensatory damages under a different claim such as, please

6    indicate below only the compensatory damages you are awarding

7    for the claims under the RICO.

8              Then what the jury would put down would be had --

9    Your Honor's example is good.  Let's assume they award

:19:40    10   recruiting fees and the housing deductions for TVPA.

11             What the jury would write down here would be quite

12   possibly zero, because they had already awarded that under

13   the TVPA.  And therefore, we would not know --

14             THE COURT:  But we have that issue more than once.

:20:02    15             The only idea I have is if we put the RICO first --

16   we leave it as Claim 4, put a tab that said Claim 4, but put

17   it in front.

18             And then when I instruct the jury before they go in

19   the jury room for Stage 2, I would say:  I'm instructing you

:20:23    20   to answer these in the order that they are listed in this

21   verdict form.  You'll note that I put Claim 4 first.  You

22   know, if we had thought about this, we could have put it

23   first in the beginning.

24             But -- so they would answer RICO first and all we

:20:43    25   can do is assume that this is the first time they have

OFFICIAL TRANSCRIPT

1   awarded those damages, so they put them there.

2           MR. WERNER:  And one thing I think -- I think that

3   makes a lot of sense.

4           I think then, because it's the first claim and they

:20:55   5   won't have gone to any of the other claims yet, the paragraph

6   that -- the second paragraph that could actually be removed

7   then and all that the Court would need to ask on the first

8   claim is, please enter the amount of damages under the RICO,

9   because they won't have anything to compare it with yet.

:21:18   10          THE COURT:  Okay.  All right.

11          So, Mr. Weinberger?

12          MR. WEINBERGER:  This is going to take a minute.

13  This is really hard stuff.  There is a way --

14          THE COURT:  You realize where we are, so.

:21:38   15          MR. WEINBERGER:  Your Honor, but the point is --

16  the point that I'm trying to make, I now have rethought the

17  question that I wanted ask.

18          Your Honor, I think I know what the solution is,

19  but it is a complicated solution.

:21:51   20          And it's -- it's the complication that has to be

21  honored and observed and respected to comply with Rule 49.

22          Your Honor, it strikes me that the solution is to

23  make absolutely sure with the interrogatories that are used

24  that the jury recognizes that the RICO damages that are being

:22:13   25  awarded -- first of all, as for injury to property, Point 1.

**OFFICIAL TRANSCRIPT**

1              Point 2, what they must understand is that they are

2 being asked to answer a question concerning damages caused by

3 racketeering activity.

4              Your Honor, what I want to emphasize now as

:22:36     5 profoundly --

6              THE COURT:  Wasn't the place to do that in the jury

7 instructions --

8              MR. WEINBERGER:  Well, it is there.

9              THE COURT:  -- in phase -- in Stage 1?

:22:44    10              MR. WEINBERGER:  It is there, but I respectfully

11 submit to the Court -- Your Honor, the relevant law under

12 Rule 49, according to one of the two leading treatises, the

13 questions given to the juries should be clear and

14 unambiguous.

:23:15    15              THE COURT:  Okay.  I'm not --

16              MR. WEINBERGER:  You don't need that.

17              Then I'll get right to it.

18              Your Honor, the surest way -- the surest way to

19 make sure that Mr. Werner's concerns, which I share and the

:23:29    20 Court shares, are being addressed, is to formulate a jury

21 question to the jury at this time with regard to RICO that

22 reminds them they are awarding damages for damage caused by

23 racketeering activity.  Not the activity --

24              THE COURT:  Well, what is it that you would say on

:23:46    25 Claim Four, RICO compensatory damages?  What would you add?

**OFFICIAL TRANSCRIPT**

1    MR. WEINBERGER:  Take the e-mail that I sent to

2    Philip at 10:54.  Modify it a little bit.

3         Please enter the amount of damages you award, if

4    any, solely to compensate a plaintiff for injury to

:24:12   5    plaintiff's property by reason of a RICO violation

6    involving -- and then there's a lot of different things, it

7    seems to me, the Court could do like involving racketeering

8    activity or involving racketeering activity in association

9    with one or more enterprises.

:24:30   10        There are a variety of things the Court could do by

11   populating that question with more information that is likely

12   to focus the jury's attention on the very particular nature

13   and specific nature of the inquiry in which they are

14   involved.

:24:43   15        THE COURT:  Okay.

16        MR. WEINBERGER:  The problem -- the problem is that

17   some of the predicate acts are the TVPA offenses.

18        So what I'm asking the Court to do is to help the

19   jury understand the difference between awarding damages for a

:25:01   20   TVPA violation and a RICO violation.

21        I think this is what Rule 49 wants.  Rule 49 seeks

22   clarity.

23        THE COURT:  Is there different language that you

24   want to some other instruction in Stage 2?

:25:19   25        MR. WEINBERGER:  Yes, Your Honor, I have a variety

OFFICIAL TRANSCRIPT

1    of questions or suggestions.

2              Actually, Rule 49 tells me -- and you'll forgive me

3    for using this word.  I would never use this word ordinarily,

4    but the Rule 49 word is demand.

:25:32    5              THE COURT:  Please don't tell me any more about

6    Rule 49.  Just go straight --

7              MR. WEINBERGER:  All right, Your Honor.

8              THE COURT:  The jury could come back anytime and I

9    need to get this ready.

:25:40    10             MR. WEINBERGER:  Yes, Your Honor.

11             Turning to Claim One, first question --

12             THE COURT:  Do you have pages?

13             MR. WEINBERGER:  I do.  Page 4, Your Honor.

14             THE COURT:  Okay.

:25:49    15             MR. WEINBERGER:  Before the word --

16             THE COURT:  I'm listening.

17             MR. WEINBERGER:  Before the word "violation," I ask

18    that you insert the word "knowing."  Knowing violation.

19             THE COURT:  This is under "compensatory"?

:26:02    20             MR. WEINBERGER:  It is.  Knowing violation.

21             THE COURT:  For Signal's knowing violation?

22             MR. WEINBERGER:  Correct.  It would be knowing

23    violation.

24             THE COURT:  Okay.

:26:13    25             MR. WEINBERGER:  With regard to punitive damages, I

**OFFICIAL TRANSCRIPT**

1    ask that with regard to Question 1, where it says "currently

2    when it."

3              THE COURT:  That acted with malice or reckless

4    indifference when it -- what do you want to add?

5              MR. WEINBERGER:  Knowingly subjected.  Just put the

6    word "knowingly."

7              THE COURT:  That Signal knowingly acted with

8    malice?

9              MR. WEINBERGER:  Correct.  Correct.  Since that is

10   the standard as a matter of law.

11             THE COURT:  Okay.

12             MR. WEINBERGER:  Same thing with regard to

13   Question 2 on Page 5, knowingly.

14             THE COURT:  So on all the --

15             MR. WEINBERGER:  Basically.

16             THE COURT:  -- claim lines, you want to add

17   "knowingly."

18             MR. WEINBERGER:  Yes.  Because of the *scienter*

19   element, Your Honor.

20             Turn to Page 14, this is the 1981 charge.

21             THE COURT:  Okay.

22             MR. WEINBERGER:  I ask that you insert the word

23   "purposefully" before the word "discriminatory" in

24   Question A -- or the first question.  The top of Page 14,

25   Your Honor.  Purposefully discriminatory.


                        **OFFICIAL TRANSCRIPT**

1          THE COURT:  For Signal's purposefully
2     discriminatory?
3          MR. WEINBERGER:  Exactly, Your Honor.
4          THE COURT:  And I assume you would want that
5     repeated throughout that claim, too?
6          MR. WEINBERGER:  Yes.  Or a similar thing.  And I'm
7     going to get to that in a minute.
8          Your Honor, just actually, I made a note to myself
9     to tie this in to the special verdict, the special
10    interrogatory that I asked for yesterday.
11         THE COURT:  On punitives on Page 14, would you want
12    it to be that Signal --
13         MR. WEINBERGER:  This is --
14         THE COURT:  -- knowingly acted?
15         MR. WEINBERGER:  I have a very different suggestion
16    there.
17         THE COURT:  Okay.
18         MR. WEINBERGER:  Your Honor, if we go down to B,
19    the way you start that interrogatory is, "do you find from a
20    preponderance of the evidence that."
21         If we can go to the that, I would like the Court to
22    insert, please, the following words, "With regard to terms
23    and conditions of employment, Signal engaged in
24    discriminatory practices with malice or with reckless
25    indifference --"

OFFICIAL TRANSCRIPT

1           THE COURT:  Wait.

2           Okay.

3           MR. WEINBERGER:  "-- to the federally-protected

4    rights of any of the following plaintiffs."

:29:00      5           That is the 1981(a) standard, Your Honor, verbatim.

6    And therefore, that's a good question to ask.

7           THE COURT:  Okay.

8           MR. WEINBERGER:  Now, Your Honor, turning to

9    Page 15.

:29:13      10          Your Honor, if you could look at Page 15 and

11   Page 19 together, I have essentially the same request with

12   regard to both of those questions.

13          THE COURT:  Okay.

14          MR. WEINBERGER:  Bear with me for one second,

:29:42      15   Your Honor.

16          THE COURT:  So you want me to put the same thing on

17   15 that you ask for on 19?

18          MR. WEINBERGER:  Yes.  What I'm -- yes.

19          Your Honor, what I'm -- I'm sorry, Your Honor.

:30:05      20   I've confused myself.

21          THE COURT:  I guess it would be a little different

22   because that's racketeering and this is something else.  It's

23   the same conduct.

24          MR. WEINBERGER:  That's a RICO thing.  I didn't

:30:20      25   mean to do that, Your Honor.  What I'm trying to get at with

**OFFICIAL TRANSCRIPT**

1    regard to -- 11.14.

2           Right.

3           Your Honor, Page 17, the question concerning

4    damages, the Fifth Circuit suggests that this language be

5    used in a discrimination case, Your Honor, compensatory --

6    no.  Punitive damages, excuse me, Your Honor.

7           This comes straight from Page 218 of the 2014

8    Fifth Circuit pattern jury instruction questions.

9           What sum of money -- I'm requesting that you do

10   this instead of what you're doing now.

11          What sum of money should be assessed against Signal

12   with respect to any of these plaintiffs as punitive damages

13   for racially-motivated harassing living conditions.

14          And what I meant to do was to suggest, if

15   Your Honor please, when you get to punitive damages to

16   retaliation with regard to Mr. Joseph, that is a model you

17   may want to use, that kind of language.

18          THE COURT:  Okay.

19          MR. WEINBERGER:  And it's also, Your Honor,

20   something that you could do on Page 15 for punitive damages

21   with regard to the man camp.

22          Remember, Your Honor, that you have two 1981

23   theories in this case.  One is hostile work environment.  One

24   is the man camp.  One is terms and conditions.  One is

25   hostile work.

**OFFICIAL TRANSCRIPT**

```
 1              They seek punitive damages with regard to both of
 2    those theories of recovery, so the same thing would make
 3    sense.
 4              We've covered RICO -- I believe we've covered RICO.
 5              THE COURT:  Yes.
 6              MR. WEINBERGER:  So going next, Your Honor, to
 7    fraud.
 8              Now, Your Honor, as I did with regard to the
 9    instructions, I'm asking the Court to separate these
10    questions so that questions are asked about very basic fact
11    questions.
12              One:  Do you want to award damages under this
13    Indian law for fraud practiced on you directly by Signal.
14    Not through an agent, but directly.
15              There should then be a second question, which does
16    not appear here, and is going to have to be added as a
17    manuscript thing.
18              The question would read:  Please enter -- and you
19    would use the language you have here there -- and then this
20    is where you would go in a different direction.  "-- for the
21    fraudulent conduct of a defendant, if any, you have found
22    engaged in fraud, causing damage to the plaintiff, with
23    Signal's apparent authority."
24              And that separates the two fundamental issues here
25    perfectly.  Without it, there is a problem.  And there is a
```

:32:57
:33:07
:33:40
:33:59
:34:23

**OFFICIAL TRANSCRIPT**

1  problem because there's not the kind of clarity there should

2  be.

3         Then you would do the very same thing with regard

4  to the negligence.  The very same thing.

:34:41     5         Was it negligence practiced on these people

6  directly by Signal?  Or is it something that allegedly

7  occurred through an agent?

8         Two questions tied to the damage issue.

9         My last issue, Your Honor, Page 34.  Claim Seven.

:34:57    10         Your Honor, the Rule 49 authorities say, as a rule,

11  disjunctive ors should not be used in jury interrogatories.

12         This should be separated.  And, once, again, there

13  should be appropriate questions to focus the attention of the

14  jury on the question of whether they are awarding damage for

:35:26    15  the behavior of Signal directly or the behavior of an alleged

16  agent of Signal.

17         Thank you, Your Honor.

18         MR. CERNIGLIA:  I just have a comment.

19         Under the RICO claims, compensatory damages.  And

:35:46    20  I'm on Page 20 of what should be as applies to Burnett that

21  would apply to everyone.

22         I agree that it would probably make sense to move

23  this forward so it is the first question asked.

24         THE COURT:  Say it again.

:36:02    25         MR. CERNIGLIA:  It would be appropriate to move the

**OFFICIAL TRANSCRIPT**

1    RICO questions of damages forward to make it be the first

2    set.  And I agree with Dan that then the second paragraph is

3    not necessary.

4            But I would like to have -- and this is in line a

:36:18

5    little bit with Mr. Weinberger's comments -- that please --

6    for the question to read along the lines of, please enter the

7    amount of -- and here is, I think -- I don't have the

8    original instructions, but I think you said pecuniary or some

9    such thing in the original instructions.  But to insert that

:36:41

10   word and put a parenthesis:  See instruction tab whatever, so

11   they know what they're doing.  And I think that would solve

12   the problem that they're not putting in emotional distress

13   and the like.

14           And then I would prefer it to read that -- to say:

:37:01

15   Please enter the amount of blank damages, see tab whatever,

16   that were caused by Burnett's RICO violations.  And it would

17   be the same for every defendant.

18           And the only other concern that I have -- and I

19   guess it came to me after I got a good night's sleep and

:37:22

20   maybe too late to do anything about it, but it seems like

21   from what the original instructions were given, that there is

22   a high potential for double recovery by listing both allowing

23   to recover all the recruitment and attorneys' fees and all

24   the money borrowed to pay those attorneys and recruitment

:37:42

25   fees and that's the same money.

**OFFICIAL TRANSCRIPT**

```
              1              THE COURT:  We're way passed that.

              2              MR. CERNIGLIA:  I know, but I don't think what to

              3     do about it, but that would be double damages.

              4              THE COURT:  There is nothing I can do about it at

 :37:55       5     this point, so.

              6              MR. CERNIGLIA:  Maybe nothing can be done about it

              7     at this point in time, but something may need to be done

              8     about it all the same.  I just bring it to the Court's

              9     attention.

 :38:05      10              THE COURT:  All right.  Mr. Shapiro.

             11              MR. SHAPIRO:  Thank you, Your Honor.

             12              To the extent -- I'm assuming that the language

             13     about knowingly will not just be in the instruction.

             14              THE COURT:  If we put it anywhere, we put it

 :38:22      15     everywhere.

             16              MR. SHAPIRO:  Right, uniformly.  I just wanted to

             17     make sure that was correct.

             18              The only thing I really have is this -- the

             19     reference to this -- this "otherwise known as Medtech."  It

 :38:39      20     was my understanding that that was going to be removed.  I

             21     don't know that there has been any --

             22              THE COURT:  Where?

             23              MR. SHAPIRO:  It will be everywhere where

             24     Dewan Consultants -- questions are asked about

 :38:57      25     Dewan Consultants in the --
```

**OFFICIAL TRANSCRIPT**

1        THE COURT:  Is that in the Phase 1 -- Stage 1 jury

2    verdict form?  I believe it is, so --

3        MR. SHAPIRO:  Oh, it is.

4        THE COURT:  So you didn't resolve that before --

5    it's too late to raise it now.

6        MR. SHAPIRO:  Okay.  Understood.  Thank you,

7    Your Honor.

8        THE COURT:  Okay.  All right.

9        Does anybody want to respond to any of the comments

10   made by other counsel?

11       MR. WERNER:  Briefly, Your Honor.  Just -- I'll

12   just kind of make a general comment.

13       What Signal's counsel is really proposing for the

14   Phase 2 jury instruction is kind of getting a second bite at

15   the apple.  Much of what they suggested be inserted is

16   already in the ---jury verdict form, is already in the

17   Stage 1 jury verdict form.

18       It doesn't need to be included here.  It's asking

19   the jury then to -- for example, think again about knowingly,

20   even though they already decided knowingly.  And that is -- I

21   don't need to go through each addition that counsel proposed.

22   That is just our general concern.

23       THE COURT:  Right.  Okay.  I understand that.

24       MR. WERNER:  Thank you.

25       THE COURT:  All right.

OFFICIAL TRANSCRIPT

1       The second reason we're here today is I wanted to

2   give Ms. Hangartner a chance to address some of the concerns

3   I have.  And I'll tell you up front, I'm going to bring up

4   three issues.

5       The first two areas we're going to have in open

6   court.  The third area of concern I'm going to seal the

7   courtroom because the testimony -- the matters that we'll be

8   talking about are matters that are subject to protective

9   orders and confidentiality orders.

10      So we're going to take the issues one at a time.

11  When we get to the third one, we're going to seal the

12  courtroom and anyone who is counsel or a party can stay in,

13  but anyone else will have to leave.

14      So let me make some remarks.

15      Ms. Hangartner, you can sit down for a minute.

16      MS. HANGARTNER:  I'm sorry.

17      THE COURT:  A district court has inherent power to

18  sanction conduct if it is in direct defiance of the

19  sanctioning court or constitutes disobedience to the orders

20  of the judiciary.  The threshold for exercising that power,

21  however, is high.

22      As a preliminary matter, the Court may not impose

23  sanctions without fair notice and an opportunity for a

24  hearing on the record.

25      Following that hearing, the sanctioning court must

**OFFICIAL TRANSCRIPT**

:40:32
:40:49
:41:03
:41:18
:41:31

1    make a specific finding that the party acted in bad faith.

2            And finally, when considering the appropriate

3    sanction, the Court must make sure the sanction is narrowly

4    tailored and proportionate to the degree of misconduct.

:41:48    5            So I'm not planning to rule on the record today.

6    Instead, what I want to do is give Ms. Hangartner and anyone

7    else of other counsel who want to comment -- a chance to

8    comment on the issues that were of concern to me.

9            So the first thing I want to talk about is on

:42:10    10    Page 72 of the transcript for February 10, 2015, and this

11    was, you know, during closing argument, obviously.

12            Ms. Hangartner said that the Department of Labor

13    came to Signal and inspected.  They looked at all of Signal's

14    books to figure out how it was paying its direct labor.  How

:42:37    15    it was paying its contract labor.  How it was paying its H-2B

16    workers.

17            Then she said the DOL wanted to see the housing

18    facility.  The man camp.  And the DOL said:  You are good.

19    Everything is in order.  We talked to some of the workers.

:42:54    20    Everything seems fine.

21            So I looked back at the testimony and I did see

22    that during the direct examination of Ron Schnoor by Signal,

23    the Signal attorney did ask Mr. Schnoor about the DOL

24    investigation and I -- and there is an objection by

:43:18    25    Mr. Howard and I overruled the objection.

**OFFICIAL TRANSCRIPT**

1       But in hindsight, I probably shouldn't have.  I
2   didn't realize where counsel was going.  I thought they were
3   talking about the investigation about payment, hours, and
4   payroll records.  And instead, Mr. Schnoor did say some
5   things about DOL looking at the man camp and talking to the
6   workers.
7       So, you know, that was -- that was during the
8   trial.  I believe that was -- maybe that was February 2nd.
9   I'm not sure.  I think that's the date that was.
10      Then my recollection is the issue came up later
11  during the trial.  I can't remember whose testimony it was.
12  Mr. Ungar -- I talked to Mr. Ungar and Mr. Howard about it.
13      Mr. Ungar wanted to use some exhibits and I said,
14  well, if you use those exhibits, then that's going to open
15  the door for the plaintiffs to talk about the EEOC suit,
16  investigation and suit.
17      Mr. Ungar, do you remember whose testimony was
18  that?
19      MR. UNGAR:  Thank you, Your Honor.  Hal Ungar for
20  Signal.
21      I think I was talking about an exhibit we wanted to
22  use with Mr. Marler and I believe that that was a Department
23  of Justice letter.
24      THE COURT:  That's correct.
25      MR. UNGAR:  A Department of Justice letter.  And we

OFFICIAL TRANSCRIPT

1    wanted to use it.  And Your Honor, the response from
2    plaintiffs' counsel was:  If you use it, then we're going to
3    go into the EEOC thing in response to the DOJ letter.
4         And then you asked if we wanted to consider again
5    whether we wanted to use the DOJ letter and we withdrew our
6    request to do that.  That's my understanding.
7         THE COURT:  And my recollection is there was a
8    broader discussion of if there were -- if you were going to
9    go into any government investigations, then the plaintiffs
10   would be able to use the EEOC investigation -- but just a
11   minute, Ms. Hangartner, you are going to get a chance.
12        MR. UNGAR:  That's not my recollection.  But I do
13   specifically remember discussion about DOJ.
14        THE COURT:  Right.  And now that you mention it, I
15   remember the DOJ letter.  And I can go back and look at the
16   record about the bench conference.
17        But Mr. Howard, do you recall that?
18        MR. UNGAR:  Thank you, Your Honor.
19        THE COURT:  Thank you.
20        MR. HOWARD:  My recollection is consistent with the
21   issue arose subsequent to Mr. Schnoor's testimony and it was
22   over the question of whether Signal would use the DOJ letter.
23   And my reaction was that I should be expressly permitted to
24   use the EEOC charge if they open that door.
25        That said, I think I also mentioned that, you know,

:45:01
:45:15
:45:31
:45:40
:45:57

**OFFICIAL TRANSCRIPT**

1    there is no motion *in limine* about the EEOC charge.  There

2    has been no prohibition against using it, but I, in my

3    conservative nature, thought that it would be potentially

4    inappropriate to just bring it up on my own.

5            But I think also in that discussion I mentioned

6    that I was alarmed by the testimony that was elicited with

7    respect to the Department of Labor, and that that could, even

8    in and of itself, have given me the opportunity to talk about

9    the EEOC, because to the extent they were suggesting the

10   Department of Labor had somehow given the clean bill of

11   health on the man camp and discrimination issues, the EEOC

12   charge directly rebuts that.

13           But the way the issue finally got resolved was in

14   the context of the question of the DOJ letter.  And the Court

15   and plaintiffs gave Signal the opportunity to decide whether

16   they wanted to use the DOJ letter.  They chose not to use the

17   letter.  And I opted not to go into the EEOC charge.

18           THE COURT:  Okay.  All right.

19           So my -- well, you know, I guess the way I saw it

20   at the time was that there was an agreement reached between

21   the parties not to go into these governmental investigations

22   and that's why the plaintiffs did not bring up the EEOC and

23   Mr. Ungar did not use his DOJ exhibit.

24           And the parties abided by that agreement.  After

25   that, I don't believe there was any further testimony about

OFFICIAL TRANSCRIPT

1    any governmental investigations from either side.

2              So I was surprised when Ms. Hangartner mentioned

3    the DOL investigation during closing.

4              Now, I did, in an attempt to cure the problem, I

5    allowed Mr. Howard to reference that the EEOC had sued Signal

6    in its closing.

7              So Ms. Hangartner, now can you please respond to

8    that?

9              MS. HANGARTNER:  Yes, Your Honor.  Thank you.

10             Actually, I think there is some confusion,

11   Your Honor.

12             THE COURT:  Come to the podium.

13             MS. HANGARTNER:  The letter from the Department of

14   Justice is what kind of triggered all of this.

15             The Department of Justice -- and I think it was the

16   counsel of Immigration Affairs or Immigrant Affairs, came out

17   to Signal, conducted an investigation, and then cut a letter

18   to Signal saying that they found no just cause to move

19   forward with the investigation.

20             And it had been Signal's position that based on the

21   fact that DOJ had come out, conducted a thorough

22   investigation and found no cause to move forward, then that

23   should have negated the EEOC finding.

24             In other words, because they were both looking at

25   immigrant rights and discrimination particular to immigrant

OFFICIAL TRANSCRIPT

1  rights.

2         The Department of Labor is completely different.

3  The Department of Labor came out, Wage and Hour, and what I

4  specifically said in my closing argument tracks exactly what

:49:10   5  Mr. Schnoor said during his direct testimony, as well as his

6  cross with Alan Howard.

7         And I think the pivotal part is the DOL

8  investigation was part and parcel and intertwined into the

9  fabric of Signal's decision regarding the March 9th

:49:30   10  terminations, because they told Mr. Schnoor that they did not

11  see an issue with the way that Signal's direct employees were

12  paid, nor the H-2B workers, nor their contract labor.

13         THE COURT:  But, you know, if you had stuck with

14  just how they were paid, we would not be having this

:49:46   15  discussion.

16         It was that you went into the housing facility and

17  the man camp and how they said we talked to the workers,

18  everything is in order, which made it sound like you were

19  talking about the immigration rights issues.

:50:02   20         MS. HANGARTNER:  But I was not, Your Honor.  I was

21  tracking exactly what Mr. Schnoor said.

22         THE COURT:  And I guess my point is that that was

23  said.  I looked back at the testimony.  I did allow

24  Ms. Bollman to go into that.  Probably should not have.  I

:50:17   25  didn't know she was going there.  And it was over

**OFFICIAL TRANSCRIPT**

1    Mr. Howard's objection.  But then I thought the parties had

2    an agreement after that not to bring up governmental

3    investigations.

4             I have not looked back at the exact language.  I

5    believe it was in a bench conference, but I will to see if my

6    recollection is correct.

7             But are you saying your understanding was not the

8    same as mine?

9             MS. HANGARTNER:  My understanding was based on --

10   and I think -- because the day that I came back was the day

11   that I took Dick Marler.

12            So Mr. Ungar had that initial conversation

13   regarding the DOJ letter.  And then what I recall is prior to

14   Mr. Marler testifying, having the conversation with the

15   Court -- I believe it was sidebar -- and asking, I understand

16   that the DOJ letter is out and that -- and I asked you, can I

17   ask about the Indian consulate coming to visit.  And you

18   said, no, you're not getting into all of that.

19            THE COURT:  Right.

20            MS. HANGARTNER:  So I separated the two in my mind,

21   DOJ and Indian consulate and DOL that Mr. Schnoor testified

22   to, again factoring into March 9th.

23            THE COURT:  Okay.  I understand your -- what you

24   are saying.

25            Mr. Howard.


                        OFFICIAL TRANSCRIPT

1              MR. HOWARD:  Your Honor, if I may just direct the

2      Court's attention to the transcript.  I'm not sure of the

3      day, but it is -- Page 3993.

4              There was some -- out of the presence of the jury,

:51:44

5      Ms. Hangartner asked, because it was before Mr. Marler's

6      testimony, she says (as read:)  I understand while I was out,

7      there was a ruling by the Court that any mention of the

8      Department of Labor, Department of Justice, or any of those

9      federal agencies would then open the door for plaintiffs to

:52:01

10     bring in the EEOC suit.

11             And my question is -- and the Court says:  Wait,

12     wait, stop.  Do you have the page of the transcript where it

13     says?

14             Ms. Hangartner:  I don't.  I was only told by my

:52:14

15     team.

16             It goes on, so -- and she says (as read:)  So I

17     guess the question is --

18             By Ms. Hangartner on Page 3994:

19             -- is it just the Department of Justice?  Because

:52:22

20     when the Department of Labor came out, there was no letter

21     from the Department of Labor.

22             The Court's response was:  If you -- any federal

23     agencies.  If you get into their investigations, then the

24     plaintiffs are going to be able to go into the EEOC.

:52:36

25             And Ms. Hangartner said:  Okay.


                            **OFFICIAL TRANSCRIPT**

1        So, I mean, that's directly on point.

2        THE COURT:  That's what I remembered.

3        And then I thought the parties abided by that

4   agreement the rest of the trial.

:52:48   5        MS. HANGARTNER:  May I?

6        THE COURT:  Yes.

7        MS. HANGARTNER:  I guess I'm a little confused.

8        It's -- I understood about the Department of

9   Justice and Indian Affairs and all of that, but I don't

:53:01  10   understand how Mr. Howard, in his closing remarks, and the

11   evidence, the e-mail, 940 -- Exhibit 940 that was

12   continuously shown, talks about "like the DOL folks learned

13   were almost perfect."

14        I did not violate what I believed was a direct

:53:20  15   order of the Court.

16        I knew that the DOJ letter was out.  I knew the

17   Indian Affairs was out -- Council of Indian Affairs was out.

18        But I believe -- and I still believe -- that I have

19   the right and the duty to discuss that DOL investigation when

:53:39  20   Mr. Howard has made an issue of this e-mail with numerous

21   witnesses and showed it in his closing argument.

22        THE COURT:  And the e-mail you are talking about is

23   Exhibit 940?

24        MS. HANGARTNER:  Exhibit 940, Your Honor.

:53:53  25        THE COURT:  What's that got to do with the DOJ

OFFICIAL TRANSCRIPT

1    letter?  I don't have it in front of me.

2                MS. HANGARTNER:  I'm sorry, DOL, not DOJ.  We're

3    talking about DOL.

4                THE COURT:  Okay.

:54:00   5                MS. HANGARTNER:  It's an e-mail to Tracey Binion

6    from Ron Schnoor.  And it says, "like the DOL folks learned

7    were almost perfect."

8                And he put that up there on a slide.

9                THE COURT:  But that wasn't anything bad, you know,

:54:13  10    that he put.  He's talking about -- that's what your point

11    is, DOL said you are almost perfect, so --

12                MS. HANGARTNER:  Correct.

13                THE COURT:  It wasn't like he needed to cure that.

14                MS. HANGARTNER:  He was painting it in a very

:54:29  15    negative light to the jury.

16                THE COURT:  Okay.  I understand that one.

17                So have a seat and let me talk about the next one.

18                MS. HANGARTNER:  Thank you, Judge.

19                THE COURT:  Thank you.

:54:35  20                The second issue, on Page 98 (4924)of the

21    transcript in closing argument Ms. Hangartner made the

22    statement (as read:)  Sabulal Vijayan, he testified to you.

23    Mr. Marler made the comment that it was a suicide gesture.

24                His medical records show that it was a suicide

:54:53  25    gesture.

**OFFICIAL TRANSCRIPT**

1      And I had previously ruled, when Signal asked to

2    supplement its exhibit list with one page of medical records

3    for Mr. Sabulal, my recollection is that that one page was

4    not listed in the exhibits in the pretrial order and that I

:55:13   5    said that Signal could not use that one page.

6      And I said, you know, no subpoena had been issued

7    to the medical services provider; the page wasn't a certified

8    record; the doctor hadn't been deposed; and, you know, it

9    wasn't listed on the exhibit list.

:55:30   10      So I said that the exhibit could not be used.  And

11    I believe it was clear to me and all counsel that no

12    witnesses were to be questioned about the statement made in

13    the uncertified medical records, because there was nobody --

14    the doctor wasn't here, the nurse wasn't here.  Nobody was

:55:50   15    here to testify about that.

16      So I wasn't expecting to hear any testimony about

17    that one page of medical records.  And I was correct, no

18    party was questioned about that medical record.  There --

19    nobody said anything about, you know, the doctor saying he

:56:07   20    thought it was a suicide gesture.

21      So I thought, you know, that was not a problem.  We

22    had made it through the trial without a problem about that

23    exhibit.

24      And so, you know, closing argument is supposed to

:56:24   25    be a summary of the evidence, not creating new evidence.

**OFFICIAL TRANSCRIPT**

1    So I was surprised and concerned when

2  Ms. Hangartner said, in her closing arguments, his medical

3  records show that it was a suicide gesture.

4    So I wanted to give you a chance to respond.

5    MS. HANGARTNER:  Thank you, Your Honor.

6    I think what this stems from is in Mr. Marler's

7  testimony, Mr. Howard crossed him (as read:)  Are you going

8  to tell this jury, too, who have heard from Mr. Sabual --

9  who saw him in this courtroom and heard his testimony -- that

10  his suicide attempt was theatrics and a bunch of nonsense?

11    Dick Marler's response was (as read:)  I don't know

12  what this Court has allowed to be said about his evaluation

13  in the hospital.  I do not know whether or not it's been

14  discussed that he cut himself with a safety razor in a

15  nonvital portion of his wrist.  I don't know what this Court

16  has allowed.

17    And in my close I said (as read:)  Sabual Vijayan,

18  he testified to you.  Mr. Marler made the comment that it was

19  a suicide gesture.  His medical records show that it was a

20  suicide gesture.

21    That comment by me was inappropriate.  It was

22  inadvertent.  It was a mistake.  After 21 long days, it came

23  out of my mouth, and I certainly did not mean to defy a court

24  order but I have to accept responsibility for that.

25    THE COURT:  All right.  I appreciate that.  Thank

**OFFICIAL TRANSCRIPT**

:56:41 :56:56 :57:11 :57:25 :57:46

1   you.

2           MS. HANGARTNER:  Thank you, Your Honor.

3           THE COURT:  All right.  Now we are going to close

4   the courtroom, and I would ask that anyone who is not a party

5   or an attorney in the case to leave.

6           MR. HOWARD:  Your Honor, for clarification, can our

7   paralegal staff stay?

8           THE COURT:  No, they can stay.

9           And, Mr. Kolby (phonetic), you're counsel in one of

10  the other cases where this information is known.

11          Does anyone have any objection to the Signal

12  employees being in the courtroom?

13          MR. HOWARD:  None, Your Honor.

14          MR. SHAPIRO:  No, Your Honor.

15          MR. CERNIGLIA:  No, Your Honor.

16          THE COURT:  All right.  So this is my third and my

17  most serious area of concern.

18          On Page 106 (4932) during closing argument,

19  Ms. Hangartner referred to Exhibit 1013 [sic], and quoted the

20  exhibit as saying in the third full paragraph on the fourth

21  page of the exhibit -- and this is the quote (as read:)  If

22  the workers -- and this is her quote from the e-mail.

23          (As read:)  If the workers will file a formal

24  complaint, they will be issued a work permit by the

25  government that will allow them to work wherever they want in

OFFICIAL TRANSCRIPT

1   the United States for up to three years while this lawsuit

2   makes its way through the courts, period.

3          And that's the end of -- wait, the

4   quote continues -- that's the end of the quote from the

5   e-mail.

6          Then she said (as read:)  Sometimes lawsuits take a

7   little longer than three years, but they are still here, end

8   quote.

9          So Exhibit 1013 was admitted into evidence, and

10  various witnesses testified with respect to certain

11  paragraphs in the e-mail.  The witnesses who testified, to my

12  knowledge and recollection, are Mr. Jacob on direct and

13  Mr. Bingle, Mr. Schnoor, and Mr. Snyder on cross.  But none

14  of them testified with respect to the bullet point language

15  quoted by Ms. Hangartner.  And to my recollection no

16  witnesses testified about that paragraph.  And certainly no

17  witnesses testified about the current immigration status or

18  where the plaintiffs resided.

19         And I know that Ms. Hangartner is aware of the

20  protective orders and other orders that I have signed and

21  Judge Knowles has signed regarding this issue.

22         And if you want a history of it and a reference to

23  all of them, you can look at the -- Signal's Petition for a

24  Writ of Mandamus to the Fifth Circuit filed on December 19,

25  2014.  That gives you a complete -- it looks like to me a

OFFICIAL TRANSCRIPT

1    pretty complete history of that -- the rulings with respect
2    to that issue.  And there have been many.
3           There have also been many conversations about that
4    issue before the trial and then during the trial.
5           And you'll remember we had some -- there were some
6    witnesses who we were concerned that the testimony was going
7    to get close, and -- but we needed -- they had to testify
8    because it was with respect to the cross-claims.  And I
9    specifically asked you all to talk about it, try to work it
10   out, make sure that it wouldn't be an issue.  And you did
11   that.
12          And so I -- I also breathed a sigh of relief when
13   the testimony was over and we had avoided this issue.  I
14   think we were successful in preventing any testimony of that
15   nature from being presented during the trial.
16          And then during closing, Ms. Hangartner referenced
17   the e-mail and its suggestion that the plaintiffs file a
18   lawsuit so that they could stay in the U.S.
19          And followed that up with her closing sentence:
20   They are still here.
21          And this appeared to me to be directly contrary to
22   my orders on the topic, and especially troubling because of
23   the nature of the testimony and the reasons that I had issued
24   those orders.
25          So, Ms. Hangartner, would you like to respond?

**OFFICIAL TRANSCRIPT**

```
1            MS. HANGARTNER:  Thank you, Your Honor.
2            Your Honor, when I made that statement I was not
3    discussing their current location.  I was not discussing
4    post-Signal employment, their mental well-being, or their
5    immigration status.
6            This is what I was rebutting and referring to.
7            On transcript Page 4893, Mr. Howard's closing
8    argument, very last paragraph.
9            (As read:)  Well, now you have an opportunity to do
10   what Signal never expected would happen.  They did everything
11   in their power to keep this case from ever getting to court,
12   from ever getting before a jury or to you.
13           So when I made my closing argument, those last two
14   sentences, "sometimes lawsuits take a little longer than
15   three years, but they're still here," that had nothing to do
16   with their location other than in this court.
17           It was --
18           THE COURT:  I find that lacks credibility.  I think
19   you wanted to tell the jury that the plaintiffs are in the
20   United States.
21           MS. HANGARTNER:  Your Honor, with all due respect,
22   I --
23           THE COURT:  I don't like that phrase, either.  I
24   assume you respect the Court, so just get to it.
25           MS. HANGARTNER:  I've talked to people who took it
```

OFFICIAL TRANSCRIPT

1   exactly the way that I meant to say it.

2              THE COURT:  Well, that's nice, but...

3              All right.  Does anybody else want to respond?

4              MR. HOWARD:  Yes, Your Honor.

5              I note first that if Ms. Hangartner really just

6   wanted to respond to the perseverance quote in my closing,

7   she did not need to put up Exhibit 1015 and show that portion

8   of the e-mail.

9              THE COURT:  I think it -- was it 1015?

10             MR. HOWARD:  It was 1015, Your Honor.

11             THE COURT:  Oh, I had the number wrong.  Okay.

12             MR. HOWARD:  Your Honor, the violation of this

13  Court's multiple orders was flagrant and premeditated.  There

14  was a slide prepared for Ms. Hangartner's closing with that

15  portion of Exhibit 1015, which Your Honor is correct, was not

16  the subject of any testimony during the entire trial.

17             Counsel waited until the very end of her closing to

18  make that statement in order to avoid objection and

19  interruption.

20             Counsel not only read the language in the e-mail,

21  which referred to the precluded topic of T visas, but counsel

22  added her own testimony in violation of the Court order and

23  without any evidentiary basis in the record that plaintiffs

24  are still here.  And she meant "still here in the U.S."

25             Sanctions are warranted, but it is plaintiffs' view

                        OFFICIAL TRANSCRIPT

1     that the sanctions should be even more directed to Signal.

2     It's inconceivable that counsel prepared and delivered, at

3     the very end, an exclamation point on Signal's case in this

4     argument without Signal's knowledge and approval.

5            Even more likely -- giving Ms. Hangartner the

6     benefit of the doubt -- she did this at Signal's urging.

7            Indeed you will recall, Your Honor, there were

8     times during the testimony in the case, such as during my

9     examination the first time of Mr. Schnoor that he

10    gratuitously mentioned at Page 216, Lines 1 to 2 (as read:)

11    I know they are working all over the country for others.

12           That was unsolicited, and you cautioned the witness

13    and counsel from eliciting any such gratuitous comments.

14           So even after all the evidence induced in this

15    litigation, and all the evidence and testimony proffered in

16    this trial, Signal is still advancing its theory that

17    plaintiffs' pains were fabricated in order to advance some

18    nefarious plot to remove the U.S. government's H-2B system.

19           And it shows that Signal is still in denial of any

20    wrongdoing, refuses to accept responsibility or

21    accountability, and would engage in the conduct again.

22           And its conduct in the course of the trial and

23    pretrial has consistently been a pattern of failing to follow

24    the rules and regulations and the orders of this Court.  And

25    now, after more than a dozen failed attempts to overturn the

OFFICIAL TRANSCRIPT

 1    orders of this Court -- including, as Your Honor noted, even

 2    a failed mandamus petition to the Fifth Circuit -- Signal

 3    just decided to ignore all those court orders and take it in

 4    its own hands at the 11th hour and 59th minute of this trial

 5    to present its theory of motive to the jury -- even risking a

 6    mistrial after almost five weeks of everyone being here.

 7         Our proposed sanctions on Signal would be that

 8    Signal should be required to pay plaintiffs' counsel its

 9    attorneys' fees and costs associated with all of the briefing

10    that we've been required to do on this issue throughout the

11    course of this litigation.

12         Thank you, Your Honor.

13         THE COURT:  All right.  Any response,

14    Ms. Hangartner?

15         MS. HANGARTNER:  Your Honor, I'm a little confused.

16         I mean, 1015 was entered into evidence.  It was

17    shown to the jury on multiple occasions, including the

18    paragraph that I put up there.  It was not on a slide.

19         What I did -- Scott, who was sitting back there,

20    put the exhibit up.  I did not put it on a slide.  It was the

21    exhibit itself.

22         The other paragraphs were discussed.

23         It wasn't redacted.  They didn't ask that it be

24    redacted.  It is in evidence -- the entire document is in

25    evidence.

**OFFICIAL TRANSCRIPT**

```
 1              And I want to say -- I want make this abundantly
 2     clear.  My client had nothing do with this.  This is not
 3     Signal, this is me, Erin Casey Hangartner.
 4              And again, Your Honor, what I said was not what
 5     Mr. Howard thinks, and obviously what this Court believes.  I
 6     apologize, but that was not my intent.  My intent was to
 7     rebut what Mr. Howard said about Signal.
 8              THE COURT:  Okay.  All right.  Does anyone else
 9     have anything else we need to discuss?
10              (No response.)
11              THE COURT:  All right.  So we'll -- I'll let you
12     know if we have any questions from the jury or hear from them
13     otherwise.
14              I let them go yesterday at 4:00.  We'll do the same
15     today.
16              I'm going to bring them back in the courtroom and
17     give them instructions just the same as I've done during the
18     trial.  You know, don't talk to anybody else about the case,
19     don't use the Internet.  So if anyone wants to be here,
20     you're welcome, but you don't have to be.
21              MR. CERNIGLIA:  I just have one -- I guess it's
22     more of a statement or request.
23              Mr. Burnett's friend's that committed suicide
24     funeral is tomorrow, and if the jury comes back, he won't be
25     able to be here.  I can waive his presence?
```

**OFFICIAL TRANSCRIPT**

```
                 1          THE COURT:  Yes.
                 2          MR. CERNIGLIA:  Thank you.
                 3          THE COURT:  Okay.  Thank you all.
                 4                         (A recess was taken.)
      :09:26     5                       AFTER THE RECESS
                 6                         (Call to order of the court.)
                 7          THE COURT:  Okay.  Go get them.
                 8                         (Jury in at 2:38 p.m.)
                 9          THE COURT:  All right.  Be seated.
      :38:56    10          Good afternoon, ladies and gentlemen of the jury.
                11   Have you elected a foreperson?
                12          THE FOREPERSON:  Yes.
                13          THE COURT:  Would that person please stand up and
                14   give us your name and your juror number.
      :39:08    15          THE FOREPERSON:  Trenease Knox, Juror No. 10.
                16          THE COURT:  Has the jury reached a verdict?
                17          THE FOREPERSON:  Yes, ma'am.
                18          THE COURT:  Would you please give the verdict form
                19   to the courtroom deputy.
      :39:20    20          THE FOREPERSON:  (Complies.)
                21          THE COURT:  All right.  Would you please read the
                22   verdict.
                23          THE CASE MANAGER:  Jury verdict form, Stage 1.
                24          Plaintiffs' claims.
      :40:32    25          Claim One, all plaintiffs against Signal, Burnett
```

**OFFICIAL TRANSCRIPT**

1    and Dewan.

2              Trafficking Victims Protection Act, Signal.

3              A.   Forced Labor.

4              Question 1:  Do you find from a preponderance of

5    the evidence that Signal knowingly obtained any plaintiff's

6    labor by threatening serious harm to him or another person?

7              Sony Sulekha, Plaintiff One, yes.

8              Jacob Joseph Kadakkarappally, yes.  Plaintiff Two.

9              Plaintiff Three, Palanyandi Thangamani, yes.

10             Plaintiff Four, Andrews Padavettiyil, yes.

11             Plaintiff Five, Hemant Khuttan, yes.

12             Question 2:  Do you find from a preponderance of

13   the evidence that Signal knowingly obtained any plaintiff's

14   labor by means of a scheme, plan or pattern intended to cause

15   him to believe that, if he did not perform work at Signal,

16   then he or another person would suffer serious harm?

17             One, yes.

18             Two, yes.

19             Three, yes.

20             Four, yes.

21             Five, yes.

22             Question 3:  Do you find from a preponderance of

23   the evidence that Signal knowingly obtained any plaintiff's

24   labor by means of the abuse or threatened abuse of law or the

25   legal process?

**OFFICIAL TRANSCRIPT**

1          One, yes.

2          Two, yes.

3          Three, yes.

4          Four, yes.

:42:05    5          Five, yes.

6          Question 4:  Do you find from a preponderance of

7    the evidence that any plaintiffs for whom you answered "yes"

8    for Questions 1, 2 or 3 was damaged by Signal as a result of

9    forced labor?

:42:22   10          One, yes.

11          Two, yes.

12          Three, yes.

13          Four, yes.

14          Five, yes.

:42:29   15

16          B:   Trafficking For Forced Labor.

17          Question 1:  Do you find from a preponderance of

18    the evidence that Signal recruited, transported, provided, or

19    obtained by any means any plaintiff for labor or services?

:42:46   20          One, yes.

21          Two, yes.

22          Three, yes.

23          Four, yes.

24          Five, yes.

:42:57   25          Question 2:  Do you find from a preponderance of

**OFFICIAL TRANSCRIPT**

```
 1   the evidence that Signal acted with the knowledge that any of
 2   the plaintiffs would be subjected to forced labor?
 3              One, yes.
 4              Two, yes.
 5              Three, yes.
 6              Four, yes.
 7              Five, yes.
 8              Question 3:  Do you find from a preponderance of
 9   the evidence that any plaintiff was damaged by Signal as a
10   result of trafficking for forced labor?
11              One, yes.
12              Two, yes.
13              Three, yes.
14              Four, yes.
15              Five, yes.
16              Trafficking Victims Protection Act - Malvern C.
17   Burnett (Burnett).
18              A.   Forced Labor.
19              Question 1:  Do you find from a preponderance of
20   the evidence that Burnett knowingly obtained any plaintiff's
21   labor by threatening serious harm to him or another person?
22              One, yes.
23              Two, yes.
24              Three, yes.
25              Four, yes.
```

**OFFICIAL TRANSCRIPT**

1        Five, yes.

2        Question 2:  Do you find from a preponderance of

3   the evidence that Burnett knowingly obtained any plaintiff's

4   labor by means of a scheme, plan, or pattern intended to

:44:15    5   cause him to believe that, if he did not perform work at

6   Signal, then he or another person would suffer serious harm?

7        One, yes.

8        Two, yes.

9        Three, yes.

:44:26   10        Four, yes.

11        Five, yes.

12        Question 3:  Do you find from a preponderance of

13   the evidence that Burnett knowingly obtained any plaintiff's

14   labor by means of the abuse or threatened abuse of law or the

:44:42   15   legal process?

16        One, yes.

17        Two, yes.

18        Three, yes.

19        Four, yes.

:44:49   20        Five, yes.

21        Question 4:  Do you find from a preponderance of

22   the evidence that any plaintiff for whom you answered "yes"

23   for Questions 1, 2 or 3 was damaged by Burnett as a result of

24   forced labor.

:45:06   25        One, yes.


**OFFICIAL TRANSCRIPT**

1        Two, yes.

2        Three, yes.

3        Four, yes.

4        Five, yes.

:45:10    5        B.   Trafficking For Forced Labor.

6        Question 1:  Do you find from a preponderance of

7   the evidence that Burnett recruited, transported, provided or

8   obtained by any means any plaintiff for labor or services?

9        One, yes.

:45:28   10        Two, yes.

11        Three, yes.

12        Four, yes.

13        Five, yes.

14        Question 2:  Do you find from a preponderance of

:45:38   15   the evidence that Burnett acted with the knowledge that any

16   of the plaintiffs would be subjected to forced labor?

17        One, yes.

18        Two, yes.

19        Three, yes.

:45:48   20        Four, yes.

21        Five, yes.

22        Question 3:  Do you find from a preponderance of

23   the evidence that any plaintiff was damaged by Burnett as a

24   result of trafficking for forced labor?

:46:01   25        One, yes.


**OFFICIAL TRANSCRIPT**

1           Two, yes.

2           Three, yes.

3           Four, yes.

4           Five, yes.

:46:07    5           Trafficking Victims Protection Act - Law Offices of

6     Malvern C. Burnett, APC (Burnett Law Offices).

7           A.   Forced Labor.

8           Do you find from a preponderance of the evidence

9     that Burnett Law Offices knowingly obtained any plaintiff's

:46:26   10    labor by threatening serious harm to him or another person?

11          One, yes.

12          Two, yes.

13          Three, yes.

14          Four, yes.

:46:35   15          Five, yes.

16          Question 2:  Do you find from a preponderance of

17    the evidence that Burnett Law Offices knowingly obtained any

18    plaintiff's labor by means of a scheme, plan or pattern

19    intended to cause him to believe that, if he did not perform

:46:52   20    work at Signal, then he or another person would suffer

21    serious harm?

22          One, yes.

23          Two, yes.

24          Three, yes.

:47:01   25          Four, yes.


**OFFICIAL TRANSCRIPT**

1        Five, yes.

2        Question 3:  Do you find from a preponderance of

3   the evidence that Burnett Law Offices knowingly obtained any

4   plaintiff's labor by means of the abuse or threatened abuse

5   of law or the legal process?

6        One, yes.

7        Two, yes.

8        Three, yes.

9        Four, yes.

10       Five, yes.

11       Question 4:  Do you find from a preponderance of

12   the evidence that any plaintiff for whom you answered "yes"

13   for Questions 1, 2 or 3 was damaged by Burnett Law Offices as

14   a result of forced labor?

15       One, yes.

16       Two, yes.

17       Three, yes.

18       Four, yes.

19       Five, yes.

20       B.   Trafficking For Forced Labor.

21       Question 1:  Do you find from a preponderance of

22   the evidence that Burnett Law Offices recruited, transported,

23   provided or obtained by any means any plaintiff for labor or

24   services?

25       One, yes.


**OFFICIAL TRANSCRIPT**

1             Two, yes.

2             Three, yes.

3             Four, yes.

4             Five, yes.

:48:08      5             Question 2:  Do you find from a preponderance of

6    the evidence that Burnett Law Offices acted with the

7    knowledge that any of the plaintiffs would be subjected

8    forced labor?

9             One, yes.

:48:23     10             Two, yes.

11             Three, yes.

12             Four, yes.

13             Five, yes.

14             Question 3:  Do you find from a preponderance of

:48:32     15    the evidence that any plaintiff was damaged by Burnett Law

16    Offices as a result of trafficking for forced labor?

17             One, yes.

18             Two, yes.

19             Three, yes.

:48:42     20             Four, yes.

21             Five, yes.

22             Trafficking Victim Protections Act -Sachin Dewan

23    (Dewan).

24             A.   Forced Labor.

:48:55     25             Do you find from a preponderance of the evidence

OFFICIAL TRANSCRIPT

1    that Dewan knowingly obtained any plaintiff's labor by

2    threatening serious harm to him or another person?

3                One, yes.

4                Two, yes.

5                Three, yes.

6                Four, yes.

7                Five, yes.

8                Do you find from a preponderance of the evidence

9    that Dewan knowingly obtained any plaintiff's labor by means

10   of a scheme, plan or pattern intended to cause him to believe

11   that, if he did not perform work at Signal, that he or

12   another person would suffer serious harm?

13               One, yes.

14               Two, yes.

15               Three, yes.

16               Four, yes.

17               Five, yes.

18               Question 3:  Do you find from a preponderance of

19   the evidence that Dewan knowingly obtained any plaintiff's

20   labor by means of the abuse or threatened abuse of law or the

21   legal process?

22               One, yes.

23               Two, yes.

24               Three, yes.

25               Four, yes.


                        **OFFICIAL TRANSCRIPT**

1           Five, yes.

2           Question 4:  Do you find from a preponderance of

3   the evidence that any plaintiff for whom you answered "yes"

4   for Questions 1, 2 or 3 was damaged by Dewan as a result of

:50:06   5   forced labor?

6           One, yes.

7           Two, yes.

8           Three, yes.

9           Four, yes.

:50:12   10          Five, yes.

11          B.   Trafficking For Forced Labor.

12          Do you find from a preponderance of the evidence

13   that Dewan recruited, transported, provided, or obtained by

14   any means any plaintiff for labor or services?

:50:28   15          One, yes.

16          Two, yes.

17          Three, yes.

18          Four, yes.

19          Five, yes.

:50:32   20          Question 2:  Do you find from a preponderance of

21   the evidence that Dewan acted with the knowledge that any of

22   the plaintiffs would be subjected to forced labor?

23          One, yes.

24          Two, yes.

:50:46   25          Three, yes.

OFFICIAL TRANSCRIPT

```
 1              Four, yes.
 2              Five, yes.
 3              Question 3:  Do you find from a preponderance of
 4    the evidence that any plaintiff was damaged by Dewan as a
 5    result of trafficking for forced labor?
 6              One, yes.
 7              Two, yes.
 8              Three, yes.
 9              Four, yes.
10              Five, yes.
11              Trafficking Victims Protection Act - Dewan
12    Consultants, Pvt., Ltd., a/k/a Medtech Consultants
13    (Dewan Consultants).
14              A.   Forced Labor.
15              Question 1:  Do you find from a preponderance of
16    the evidence that Dewan Consultants knowingly obtained any
17    plaintiff's labor by threatening serious harm to him or
18    another person?
19              One, yes.
20              Two, yes.
21              Three, yes.
22              Four, yes.
23              Five, yes.
24              Question 2:  Do you find from a preponderance of
25    the evidence that Dewan Consultants knowingly obtained any
```

:50:59
:51:06
:51:23
:51:36
:51:44

**OFFICIAL TRANSCRIPT**

1    plaintiff's labor by means of a scheme, plan or pattern

2    intended to cause him to believe that, if he did to the

3    perform work at Signal, then he or another person would

4    suffer serious harm?

5            One, yes.

6            Two, yes.

7            Three, yes.

8            Four, yes.

9            Five, yes.

10           Question 3:  Do you find from a preponderance of

11   the evidence that Dewan Consultants knowingly obtained any

12   plaintiff's labor by means of the abuse or threatened abuse

13   of law or the legal process?

14           One, yes.

15           Two, yes.

16           Three, yes.

17           Four, yes.

18           Five, yes.

19           Question 4:  Do you find from a preponderance of

20   the evidence that any plaintiff for whom you answered "yes"

21   for Questions 1, 2 or 3 was damaged by Dewan Consultants as a

22   result of forced labor?

23           One, yes.

24           Two, yes.

25           Three, yes.


                        **OFFICIAL TRANSCRIPT**

```
 1                  Four, yes.
 2                  Five, yes.
 3                  B. Trafficking For Forced Labor.
 4                  Question 1:  Do you find from a preponderance of
 5      the evidence that Dewan Consultants recruited, transported,
 6      provided or obtained by any means any plaintiff for labor or
 7      services?
 8                  One, yes.
 9                  Two, yes.
10                  Three, yes.
11                  Four, yes.
12                  Five, yes.
13                  Question 2:  Do you find from a preponderance of
14      the evidence that Dewan Consultants acted with the knowledge
15      that any of the plaintiffs would be subjected to forced
16      labor?
17                  One, yes.
18                  Two, yes.
19                  Three, yes.
20                  Four, yes.
21                  Five, yes.
22                  Question 3:  Do you find from a preponderance of
23      the evidence that any plaintiff was damaged by
24      Dewan Consultants as a result of trafficking for forced
25      labor?
```

:52:54 (line 5)
:53:06 (line 10)
:53:18 (line 15)
:53:26 (line 20)
:53:39 (line 25)

**OFFICIAL TRANSCRIPT**

1          One, yes.

2          Two, yes.

3          Three, yes.

4          Four, yes.

:53:44   5          Five, yes.

6

7          Claim Two:  All Plaintiffs Against Signal.

8          A.  Discriminatory Terms and Conditions of

9     Employment.

:53:57   10         Question 1:  Have Plaintiff(s) proven by a

11     preponderance of the evidence that Signal required them to

12     live in the man camp and/or deducted fees from plaintiffs'

13     wages for the man camp accommodations?

14         One, yes.

:54:10   15         Two, yes.

16         Three, yes.

17         Four, yes.

18         Five, yes.

19         Question 2:  Have Plaintiff(s) proven by a

:54:20   20     preponderance of the evidence that their being Indian or H-2B

21     visa holders was a motivating factor in Signal's decision to

22     require them to live in the man camp and/or deduct fees from

23     plaintiffs' wages for the man camp accommodations?

24         One, yes.

:54:36   25         Two, yes.

OFFICIAL TRANSCRIPT

1          Three, yes.

2          Four, yes.

3          Five, yes.

4          Question 3:  Has Signal proven by a preponderance

5    of the evidence that it would have made the same decision to

6    require plaintiffs to live in the Signal man camp or deduct

7    fees for man camp accommodations from plaintiffs' pay even if

8    it had not considered the fact that plaintiffs are Indian or

9    H-2B visa holders?

10          One, no.

11          Two, no.

12          Three, no.

13          Four, no.

14          Five, no.

15          Question 4:  Have Plaintiff(s) proven by a

16    preponderance of the evidence that they were damaged by

17    Signal's discriminatory terms and conditions of employment?

18          One, yes.

19          Two, yes.

20          Three, yes.

21          Four, yes.

22          Five, yes.

23          B.  Harassing Living Conditions.

24          Question 1:  Have Plaintiff(s) proven by a

25    preponderance of the evidence that all or some of them were

OFFICIAL TRANSCRIPT

```
 1    subject to unwelcome harassment?
 2            One, yes.
 3            Two, yes.
 4            Three, yes.
 5            Four, yes.
 6            Five, yes.
 7            Question 2:  Have Plaintiff(s) proven by a
 8    preponderance of the evidence that the harassment complained
 9    of was based on their race, ethnicity, ancestry or status as
10    H-2B visa holders?
11            One, yes.
12            Two, yes.
13            Three, yes.
14            Four, yes.
15            Five, yes.
16            Question 3:  Have Plaintiff(s) proven by a
17    preponderance of the evidence that the harassment complained
18    of affected a term, condition, or privilege of employment?
19            One, yes.
20            Two, yes.
21            Three, yes.
22            Four, yes.
23            Five, yes.
24            Question 4:  Have Plaintiff(s) proven by a
25    preponderance of the evidence that they were damaged by the
```

:55:50
:56:08
:56:12
:56:27
:56:35

**OFFICIAL TRANSCRIPT**

harassing living conditions at the Signal man camp?

One, yes.

Two, yes.

Three, yes.

Four, yes.

Five, yes.

Claim Three:  Plaintiff, Jacob Joseph Kadakkarappally (Mr. Jacob), against Signal.

Retaliation.

Question 1:  Do you find from a preponderance of the evidence that Mr. Jacob engaged in protected activity?

Yes.

Question 2:  Do you find from a preponderance of the evidence that Signal terminated the employment of Mr. Jacob?

Yes.

Question 3:  Do you find from a preponderance of the evidence that Signal would not have terminated Mr. Jacob but for his engaging in protected activity?

Yes.

Question 4:  Do you find from a preponderance of the evidence that Mr. Jacob was damaged by Signal's unlawful retaliation?

Yes.

Claim Four:  All Plaintiffs Against Signal, Burnett

**OFFICIAL TRANSCRIPT**

1    and Dewan.

2             RICO - All Defendants.

3             Question 1:  Do you find from a preponderance of

4    the evidence that the following enterprises existed?

:58:03    5             RICO Enterprise I:  Yes.

6             RICO Enterprise II:  Yes.

7             RICO Enterprise III:  Yes.

8             Question 2:  Do you find from a preponderance of

9    the evidence that the following enterprises engaged in, or

:58:23    10   had some effect on, interstate or foreign commerce?

11            RICO Enterprise I.  Yes.

12            RICO Enterprise II:  Yes.

13            RICO Enterprise III:  Yes.

14            A.   RICO General Claim - Signal.

:58:39    15            Question 3:  Do you find from a preponderance of

16   the evidence that Signal was employed by or associated with

17   any of the enterprises for which you answered "yes" in

18   response to Question 2.

19            Yes.

:58:54    20            Question 4:  Do you find from a preponderance of

21   the evidence that Signal participated, either directly or

22   indirectly, in the conduct of the affairs of any of the

23   enterprises for which you answered yes?

24            Yes.

:59:10    25            Question 5:  Do you find from a preponderance of

**OFFICIAL TRANSCRIPT**

the evidence that Signal participated through a pattern of
racketeering activity?  To answer this question, please
answer the following two subquestions:

       5(i):  Predicate Acts.

       a.  Forced Labor.

       1:  Did Signal commit at least one act of forced
labor?

       Yes.

       Question 2:  Did Signal commit more than one act of
forced labor?

       Yes.

       b.  Trafficking For Forced Labor.

       Question 1:  Did Signal commit at least one act of
trafficking for forced labor?

       Yes.

       Question 2:  Did Signal commit more than one act of
trafficking for forced labor?

       Yes.

       c.  Mail Fraud.

       Question 1:  Did Signal commit at least one act of
mail fraud?

       Yes.

       Question 2:  Did Signal commit more than one act of
mail fraud?

       Yes.

OFFICIAL TRANSCRIPT

                    d.  Wire Fraud.

                    Question 1:  Did Signal commit at least one act of

        the wire fraud?

                    Yes.

                    Question 2:  Did Signal commit more than one act of

        wire fraud?

                    Yes.

                    c -- excuse me, e.  Immigration Document Fraud.

                    Question 1:  Did Signal commit at least one act of

        immigration document fraud?

                    Yes.

                    Question 2:  Did Signal commit more than one act of

        immigration document fraud?

                    Yes.

                    5(ii):  Predicate Acts Committed As Part of a

        Pattern.

                    Did the predicate acts committed by Signal form a

        pattern by having the same or similar purposes, results,

        participants, victims, or methods of commission, or were

        otherwise interrelated?

                    Yes.

                    Question 6:  Do you find from a preponderance of

        the evidence that any plaintiff was injured by Signal's

        general RICO violation?

                    One, yes.


                              **OFFICIAL TRANSCRIPT**

| | |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| :01:17 | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| :01:38 | 10 |
| | 11 |
| | 12 |
| | 13 |
| | 14 |
| :01:57 | 15 |
| | 16 |
| | 17 |
| | 18 |
| | 19 |
| :02:10 | 20 |
| | 21 |
| | 22 |
| | 23 |
| | 24 |
| :02:16 | 25 |

Two, yes.

Three, yes.

Four, yes.

Five, yes.

B.  RICO Conspiracy Claim - Signal.

Question 1:  Do you find from a preponderance of the evidence that two or more persons or entities, one of whom was Signal, agreed to try to accomplish an unlawful plan to engage in a pattern of racketeering activity associated with any of the enterprises for which you answered "yes"?

Yes.

Question 2:  Do you find from a preponderance of the evidence that Signal agreed to the overall objective of the conspiracy or agreed with at least one other defendant to commit two predicate acts as part of the conspiracy?

Yes.

Question 3:  Do you find from a preponderance of the evidence that any plaintiff was injured by Signal's RICO conspiracy violation?

One, yes.

Two, yes.

Three, yes.

Four, yes.

Five, yes.

A.  RICO General Claim - Malvern C. Burnett

**OFFICIAL TRANSCRIPT**

1   (Burnett).

2           Question 3.  Do you find from a preponderance of

3   the evidence that Burnett was employed by or associated with

4   any of the enterprises for which you answered "yes"?

5           Yes.

6           Question 4:  Do you find from a preponderance of

7   the evidence that Burnett participated, either directly or

8   indirectly, in the conduct of the affairs of any of the

9   enterprises for which you answered "yes"?

10          Yes.

11          Question 5:  Do you find from a preponderance of

12  the evidence that Burnett participated through a pattern of

13  racketeering activity?  To answer this question, please

14  answer the following two subquestions:

15          5(i).  Predicate Acts.

16          a. Forced Labor.

17          Did Burnett commit at least one act of forced

18  labor?

19          Yes.

20          Did Burnett commit more than one act of forced

21  labor?

22          Yes.

23          b.  Trafficking For Forced Labor.

24          Did Burnett commit at least one act of trafficking

25  for forced labor?

**OFFICIAL TRANSCRIPT**

1           Yes.

2           did Burnett commit more than one act of trafficking

3    for forced labor?

4           Yes.

:03:30    5           c.  Mail Fraud

6           Did Burnett commit at least one act of mail fraud?

7           Yes.

8           Did Burnett commit more than one act of the mail

9    fraud?

:03:39   10           Yes.

11           d.  Wire Fraud.

12           Did Burnett commit at least one act of the wire

13    fraud?

14           Yes.

:03:45   15           Did Burnett commit more than one act of wire fraud?

16           Yes.

17           e.  Immigration Document Fraud.

18           Did Burnett commit at least one act of immigration

19    document fraud?

:03:56   20           Yes.

21           Did you Burnett commit more than one act of the

22    immigration document fraud?

23           Yes.

24           5(ii).  Predicate Acts Committed As Part of a

:04:10   25    Pattern.


                        **OFFICIAL TRANSCRIPT**

1        Did the predicate acts committed by Burnett form a

2    pattern by having the same or similar purposes, results,

3    participants, victims, or methods of commission, or were

4    otherwise interrelated?

:04:22    5        Yes.

6        Question 6:  Do you find from a preponderance of

7    the evidence that any plaintiff was injured by Burnett's

8    general RICO violation?

9        One, yes.

:04:33   10        Two, yes.

11        Three, yes.

12        Four, yes.

13        Five, yes.

14        B.   RICO Conspiracy Claim - Malvern C. Burnett

:04:45   15    (Burnett).

16        Question 1:  Do you find from a preponderance of

17    the evidence that two or more persons or entities, one of

18    whom was Burnett, agreed to try to accomplish an unlawful

19    plan to engage in a pattern of racketeering activity

:04:59   20    associated with any of the enterprises for which you answered

21    yes?

22        Yes.

23        2:  Do you find from a preponderance of the

24    evidence that Burnett agreed to the overall objective of the

:05:11   25    conspiracy or agreed with at least one other defendant to

**OFFICIAL TRANSCRIPT**

1    commit two predicate acts as part of the conspiracy?

2            Yes.

3            3:  Do you find from a preponderance of the

4    evidence that any Plaintiff was injured by Burnett's RICO

5    conspiracy violation?

6            One, yes.

7            Two, yes.

8            Three, yes.

9            Four, yes.

10           Five, yes.

11           A.  RICO General Claim - Law Offices of Malvern C.

12   Burnett, APC (Burnett Law Offices).

13           3:  Do you find from a preponderance of the

14   evidence that Burnett Law Offices was employed by or

15   associated with any of the enterprises for which you answered

16   "yes"?

17           Yes.

18           4:  Do you find from a preponderance of the

19   evidence that Burnett Law Offices participated, either

20   directly or indirectly, in the conduct of the affairs of any

21   of the enterprises for which you answered "yes"?

22           Yes.

23           5:  Do you find from a preponderance of the

24   evidence that Burnett Law Offices participated through a

25   pattern of racketeering activity?  To answer this question,

OFFICIAL TRANSCRIPT

1    please answer the following two subquestions:

2             5(i).  Predicate Acts.

3             a.  Forced Labor.

4             Did Burnett Law Offices commit at least one act of

5    forced labor?

6             Yes.

7             Did Burnett Law Offices commit more than one act of

8    forced labor?

9             Yes.

10            b.  Trafficking For Forced Labor.

11            1:  Did Burnett Law Offices commit at least one act

12   of trafficking for forced labor?

13            Yes.

14            2:  Did Burnett Law Offices commit more than one

15   act of trafficking for forced labor?

16            Yes.

17            c.  Mail Fraud.

18            Did Burnett Law Offices commit at least one act of

19   mail fraud?

20            Yes.

21            Did Burnett Law Offices commit more than one act of

22   mail fraud?

23            Yes.

24            d.  Wire Fraud.

25            Did Burnett Law Offices commit at least one act of

**OFFICIAL TRANSCRIPT**

wire fraud?

Yes.

Did Burnett Law Offices commit more than one act of wire fraud?

:07:17

Yes.

e.  Immigration Document Fraud.

Did Burnett Law Offices commit at least one act of immigration document fraud?

Yes.

:07:27

Did Burnett Law Offices commit more than one act of immigration document fraud?

Yes.

5(ii):  Predicate Acts Committed As Part of a Pattern.

:07:41

Did the predicate acts committed by Burnett Law Offices form a pattern by having the same or similar purposes, results, participants, victims, or methods of commission, or were otherwise interrelated?

Yes.

:07:55

6:  Do you find from a preponderance of the evidence that any plaintiff was injured by Burnett Law Offices' general RICO violation?

One, yes.

Two, yes.

:08:08

Three, yes.

**OFFICIAL TRANSCRIPT**

1          Four, yes.

2          Five, yes.

3          B.   RICO Conspiracy Claim - Law Offices of

4    Malvern C. Burnett, APC (Burnett Law Offices).

5          1:  Do you find from a preponderance of the

6    evidence that two or more persons or entities, one of whom

7    was Burnett Law Offices, agreed to try to accomplish an

8    unlawful plan to engage in a pattern of racketeering activity

9    associated with any of the enterprises for which you answered

10   yes?

11         Yes.

12         2:  Do you find from a preponderance of the

13   evidence that Burnett Law Offices agreed to the overall

14   objective of the conspiracy or agreed with at least one other

15   defendant to commit two predicate acts as part of the

16   conspiracy?

17         Yes.

18         3:  Do you find from a preponderance of the

19   evidence that any plaintiff was injured by Burnett Law

20   Offices' RICO conspiracy violation?

21         One, yes.

22         Two, yes.

23         Three, yes.

24         Four, yes.

25         Five, yes.


                    OFFICIAL TRANSCRIPT

```
 1              A.  RICO General Claim - Sachin Dewan (Dewan).
 2              3:  Do you find from a preponderance of the
 3      evidence that Dewan was employed by or associated with any of
 4      the enterprises for which you answered "yes"?
 5              Yes.
 6              4:  Do you find from a preponderance of the
 7      evidence that Dewan participated, either directly or
 8      indirectly, in the conduct of the affairs of any of the
 9      enterprises for which you answered "yes"?
10              Yes.
11              5:  Do you find from a preponderance of the
12      evidence that Dewan participated through a pattern of
13      racketeering activity?
14              5(i) Predicate Acts.
15              a.  Forced Labor.
16              Did Dewan commit at least one act of forced labor?
17              Yes.
18              Did Dewan commit more than one act of forced labor?
19              Yes.
20              b.  Trafficking For Forced Labor.
21              Did Dewan commit at least one act of trafficking
22      for forced labor?
23              Yes.
24              Did Dewan commit more than one act of trafficking
25      for forced labor?
```

:09:28

:09:42

:09:56

:10:06

:10:16

**OFFICIAL TRANSCRIPT**

1          Yes.

2          c.  Mail Fraud.

3          Did Dewan commit at least one act of mail fraud?

4          Yes.

5          Did Dewan commit more than one act of mail fraud?

6          Yes.

7          d.  Wire Fraud.

8          Did Dewan commit at least one act of wire fraud?

9          Yes.

10          Did Dewan commit more than one act of wire fraud?

11          Yes.

12          e. Immigration Document Fraud.

13          Did Dewan commit at least one act of immigration

14  document fraud?

15          No.

16          Did Dewan commit more than one act of immigration

17  document fraud?

18          No.

19          5(ii):  Predicate Acts Committed As Part of a

20  Pattern.

21          Did the predicate acts committed by Dewan form a

22  pattern by having the same or similar purposes, results,

23  participants, victims, or methods of commission, or were

24  otherwise interrelated?

25          Yes.


                    **OFFICIAL TRANSCRIPT**

1                6:   Do you find from a preponderance of the

2       evidence that any plaintiff was injured by Dewan's general

3       RICO violation?

4                One, yes.

:11:22      5                Two, yes.

6                Three, yes.

7                Four, yes.

8                Five, yes.

9                B.   RICO Conspiracy Claim - Sachin Dewan (Dewan).

:11:33     10           Do you find from a preponderance of the evidence

11      that two or more persons or entities, one of whom was Dewan,

12      agreed to try to accomplish an unlawful plan to engage in a

13      pattern of racketeering activity associated with any of the

14      enterprises for which you answered "yes"?

:11:51     15                Yes.

16           Do you find from a preponderance of the evidence

17      that Dewan agreed to the overall objective of the conspiracy

18      or agreed with at least one other defendant to commit two

19      predicate acts as part of the conspiracy?

:12:06     20                Yes.

21                3:   Do you find from a preponderance of the

22      evidence that any plaintiff was injured by Dewan's RICO

23      conspiracy violation?

24                One, yes.

:12:20     25                Two, yes.

**OFFICIAL TRANSCRIPT**

1          Three, yes.

2          Four, yes.

3          Five, yes.

4          A.   RICO General Claim - Dewan Consultants's Pvt.,

:12:33    5    Ltd., a/k/a Medtech Consultants (Dewan Consultants).

6          3:   Do you find from a preponderance of the

7    evidence that Dewan Consultants was employed by or associated

8    with any of the enterprises for which you answered "yes"?

9          Yes.

:12:48    10         4:   Do you find from a preponderance of the

11    evidence that Dewan Consultants participated, either directly

12    or indirectly, in the conduct of the affairs of any of the

13    enterprises for which you answered "yes"?

14         Yes.

:13:02    15         Do you find from a preponderance of the evidence

16    that Dewan Consultants participated through a pattern of

17    racketeering activity?

18         5(i).   Predicate Acts.

19         a.   Forced Labor.

:13:15    20         Did Dewan Consultants commit at least one act of

21    forced labor?

22         Yes.

23         Did Dewan Consultants commit more than one act of

24    forced labor?

:13:25    25         Yes.

OFFICIAL TRANSCRIPT

|       |                                                              |
|-------|--------------------------------------------------------------|
| 1     | b. Trafficking For Forced Labor.                             |
| 2     | Did Dewan Consultants commit at least one act of             |
| 3     | the trafficking for forced labor?                            |
| 4     | Yes.                                                         |

:13:33

|    |                                                              |
|----|--------------------------------------------------------------|
| 5  | Did Dewan Consultants commit more than one act of            |
| 6  | trafficking for forced labor?                                |
| 7  | Yes.                                                         |
| 8  | c.  Mail Fraud.                                              |
| 9  | Did Dewan Consultants commit at least one act of             |

:13:45

|    |                                                              |
|----|--------------------------------------------------------------|
| 10 | mail fraud?                                                  |
| 11 | Yes.                                                        |
| 12 | Did Dewan Consultants commit more than one act of           |
| 13 | mail fraud?                                                  |
| 14 | Yes.                                                        |

:13:52

|    |                                                              |
|----|--------------------------------------------------------------|
| 15 | d.  Wire Fraud.                                             |
| 16 | Did Dewan Consultants commit at least one act of            |
| 17 | wire fraud?                                                  |
| 18 | Yes.                                                        |
| 19 | Did Dewan Consultants commit more than one act of           |

:14:01

|    |                                                              |
|----|--------------------------------------------------------------|
| 20 | wire fraud?                                                  |
| 21 | Yes.                                                        |
| 22 | Did Dewan Consultants commit at least one act of            |
| 23 | immigration document fraud?                                  |
| 24 | No.                                                         |

:14:09

|    |                                                              |
|----|--------------------------------------------------------------|
| 25 | Did Dewan Consultants commit more than one act of           |

**OFFICIAL TRANSCRIPT**

1    immigration document fraud?

2            No.

3            5(ii)  Predicate Acts Committed As Part of a

4    Pattern.

:14:21    5            Did the predicate acts committed by

6    Dewan Consultants form a pattern by having the same or

7    similar purposes, results, participants, victims, or methods

8    of commission, or were otherwise interrelated?

9            Yes.

:14:35    10            Do you find from a preponderance of the evidence

11    that any plaintiff was injured by Dewan Consultants' general

12    RICO violation?

13            One, yes.

14            Two, yes.

:14:46    15            Three, yes.

16            Four, yes.

17            Five, yes.

18            B.  RICO Conspiracy Claim - Sachin Dewan and

19    Dewan Consultants, Pvt., Ltd., a/k/a Medtech Consultants

:15:02    20    (Dewan Consultants).

21            Do you find from a preponderance of the evidence

22    that two or more persons or entities, one of whom was

23    Dewan Consultants, agreed to try to accomplish an unlawful

24    plan to engage in a pattern of racketeering activity

:15:18    25    associated with any of the enterprises for which you answered

**OFFICIAL TRANSCRIPT**

```
 1   "yes"?

 2           Yes.

 3           Do you find from a preponderance of the evidence

 4   that Dewan Consultants agreed to the overall objective of the

 5   conspiracy or agreed with at least one other defendant to

 6   commit two predicate acts as part of the conspiracy?

 7           Yes.

 8           Do you find from a preponderance of the evidence

 9   that any plaintiff was injured by Dewan Consultants' RICO

10   conspiracy violation?

11           One, yes.

12           Two, yes.

13           Three, yes.

14           Four, yes.

15           Five, yes.

16           Claim Five:  All Plaintiffs Against Signal, Burnett

17   and Dewan.

18           Fraud - Signal.

19           Do you find from a preponderance of the evidence

20   that as a party to a contract(s), Signal (or with Signal's

21   participation) or Signal's agents committed any of following

22   acts:  (a) the suggestion as a fact of something that is not

23   true by one who does not believe it to be true; (b) the act

24   of concealment of a fact by one having knowledge or belief of

25   the fact; (c) a promise made without any intention of
```

1      performing it; (d) any other act designated to deceive --

2      excuse me, designed to deceive; or (e) any such act or

3      omission the law specifically declares to be fraudulent?

4                One, yes.

:16:48    5                Two, yes.

6                Three, yes.

7                Four, yes.

8                Five, yes.

9                2:  Do you find from a preponderance of the

:16:57    10     evidence that the acts identified above were committed with

11     intent to deceive any plaintiff or intent to convince any

12     plaintiff to enter into the contracts?

13               One, yes.

14               Two, yes.

:17:11    15               Three, yes.

16               Four, yes.

17               Five, yes.

18               Do you find from a preponderance of the evidence

19     that plaintiffs relied on the fraudulent representations made

:17:23    20     by Signal or its agents?

21               One, yes.

22               Two, yes.

23               Three, yes.

24               Four, yes.

:17:31    25               Five, yes.


                            **OFFICIAL TRANSCRIPT**

1          Do you find from a preponderance of the evidence

2    that plaintiffs were deceived by the fraudulent

3    representations made by Signal or its agents?

4          One, yes.

:17:42    5          Two, yes.

6          Three, yes.

7          Four, yes.

8          Five, yes.

9          Do you find from a preponderance of the evidence

:17:50    10   that plaintiffs were damaged as a result of the fraudulent

11   representations made by Signal or its agents?

12         One, yes.

13         Two, yes.

14         Three, yes.

:18:00    15         Four, yes.

16         Five, yes.

17         Fraud - Malvern C. Burnett (Burnett).

18         Do you find from a preponderance of the evidence

19   that as a party to a contract(s), Burnett (or with Burnett's

20   participation) or Burnett's agents committed any of following

21   acts:  (a) the suggestion as a fact of something that is not

22   true by one who does not believe it to be true; (b) the act

23   of concealment of a fact by one having knowledge or belief of

24   the fact; (c) a promise made without any intention of

25   performing it; (d) any other act designed to deceive; or (e)

OFFICIAL TRANSCRIPT

1    any such act or omission the law specifically declares to be

2    fraudulent?

3                One, yes.

4                Two, yes.

:18:50    5            Three, yes.

6                Four, yes.

7                Five, yes.

8                Do you find from a preponderance of the evidence

9    the acts identified above were committed with intent to

:19:01   10    deceive another party or intent to convince another party to

11    enter into the contract?

12                One, yes.

13                Two, yes.

14                Three, yes.

:19:09   15            Four, yes.

16                Five, yes.

17                Do you find from a preponderance of the evidence

18    that plaintiffs relied on the fraudulent representations made

19    by Burnett or his agents?

:19:21   20            One, yes.

21                Two, yes.

22                Three, yes.

23                Four, yes.

24                Five, yes.

:19:26   25            Do you find from a preponderance of the evidence

**OFFICIAL TRANSCRIPT**

1    that plaintiffs were deceived by the fraudulent

2    representations made by Burnett or his agents?

3              One, yes.

4              Two, yes.

:19:38    5              Three, yes.

6              Four, yes.

7              Five, yes.

8              Do you find from a preponderance of the evidence

9    that plaintiffs were damaged as a result of the fraudulent

:19:48    10   representations made by Burnett or his agents?

11             One, yes.

12             Two, yes.

13             Three, yes.

14             Four, yes.

:19:56    15             Five, yes.

16             Fraud - Law Offices of Malvern C. Burnett, APC,

17   (Burnett Law Offices).

18             Do you find from a preponderance of the evidence

19   that as a party to a contract(s), Burnett Law Offices (or

20   with Burnett Law Offices' participation) or Burnett Law

21   Office's agents committed any of following acts:  (a) the

22   suggestion as a fact of something that is not true by one who

23   does not believe it to be true; (b) the act of concealment of

24   a fact by one having knowledge or belief of the fact; (c) a

25   promise made without any intention of performing it; (d) any

OFFICIAL TRANSCRIPT

1   other act designed to deceive; or (e) any such act or
2   omission the law specifically declares to be fraudulent?
3           One, yes.
4           Two, yes.
5           Three, yes.
6           Four, yes.
7           Five, yes.
8           Do you find from a preponderance of the evidence
9   that the acts identified above were committed with intent to
10  deceive any plaintiff or intent to convince any plaintiff to
11  enter into the contract?
12          One, yes.
13          Two, yes.
14          Three, yes.
15          Four, yes.
16          Five, yes.
17          Do you find from a preponderance of the evidence
18  that plaintiffs relied on the fraudulent representations made
19  by Burnett Law Offices or its agents?
20          One, yes.
21          Two, yes.
22          Three, yes.
23          Four, yes.
24          Five, yes.
25          Do you find from a preponderance of the evidence

:20:47
:20:58
:21:07
:21:20
:21:24

**OFFICIAL TRANSCRIPT**

that plaintiffs were deceived by the fraudulent

representations made by Burnett Law Offices or its agents?

One, yes.

Two, yes.

Three, yes.

Four, yes.

Five, yes.

Do you find from a preponderance of the evidence

that plaintiffs were damaged as a result of the fraudulent

representations made by Burnett Law Offices or its agents?

One, yes.

Two, yes.

Three, yes.

Four, yes.

Five, yes.

Fraud - Sachin Dewan (Dewan).

Do you find from a preponderance of the evidence

that as a party to a contract(s), Dewan (or with Dewan's

participation) or Dewan's agents committed any of following

acts:  (a) the suggestion as a fact of something that is not

true by one who does not believe it to be true; (b) the act

of concealment of a fact by one having knowledge or belief of

the fact; (c) a promise made without any intention of

performing it; (d) any other act designed to deceive; or (e)

any such act or omission the law specifically declares to be

**OFFICIAL TRANSCRIPT**

1    fraudulent?

2            One, yes.

3            Two, yes.

4            Three, yes.

:22:44    5            Four, yes.

6            Five, yes.

7            Do you find from a preponderance of the evidence

8    that the acts identified above were committed with intent to

9    deceive another party or intent to convince another party to

:22:56   10    enter into the contract?

11            One, yes.

12            Two, yes.

13            Three, yes.

14            Four, yes.

:23:02   15            Five, yes.

16            Do you find from a preponderance of the evidence

17    that plaintiffs relied on the fraudulent representations made

18    by Dewan or his agents?

19            One, yes.

:23:13   20            Two, yes.

21            Three, yes.

22            Four, yes.

23            Five, yes.

24            Do you find from a preponderance of the evidence

:23:21   25    that plaintiffs were deceived by the fraudulent


                        **OFFICIAL TRANSCRIPT**

1    representations made by Dewan or his agents?

2              One, yes.

3              Two, yes.

4              Three, yes.

:23:30    5              Four, yes.

6              Five, yes.

7              Do you find from a preponderance of the evidence

8    that plaintiffs were damaged as a result of the fraudulent

9    representations made by Dewan or his agents?

:23:44    10              One, yes.

11              Two, yes.

12              Three, yes.

13              Four, yes.  Five, yes.

14              Fraud - Dewan Consultants Pvt., Ltd., a/k/a Medtech

:23:58    15    Consultants (Dewan Consultants).

16              Do you find from a preponderance of the evidence

17    that as a party to a contract(s), Dewan Consultants (or with

18    Dewan Consultant's participation) or Dewan Consultant's

19    agents committed any of following acts:  (a) the suggestion

20    as a fact of something that is not true by one who does not

21    believe it to be true; (b) the act of concealment of a fact

22    by one having knowledge or belief of the fact; (c) a promise

23    made without any intention of performing it; (d) any other

24    act designed to deceive; or (e) any such act or omission the

:23:58    25    law specifically declares to be fraudulent?


                        **OFFICIAL TRANSCRIPT**

1          One, yes.

2          Two, yes.

3          Three, yes.

4          Four, yes.

:24:43    5          Five, yes.

6          Do you find from a preponderance of the evidence

7    that the acts identified above were committed with intent to

8    deceive any plaintiff or intent to convince any plaintiff to

9    enter into the contracts?

:24:57   10          One, yes.

11          Two, yes.

12          Three, yes.

13          Four, yes.

14          Five, yes.

:25:02   15          Do you find from a preponderance of the evidence

16    that plaintiffs relied on the fraudulent representations made

17    by Dewan Consultants or its agents?

18          One, yes.

19          Two, yes.

:25:16   20          Three, yes.

21          Four, yes.

22          Five, yes.

23          Do you find from a preponderance of the evidence

24    that plaintiffs were deceived by the fraudulent

:25:25   25    representations made by Dewan Consultants or its agents?


                          OFFICIAL TRANSCRIPT

1           One, yes.

2           Two, yes.

3           Three, yes.

4           Four, yes.

:25:33  5           Five, yes.

6           Do you find from a preponderance of the evidence

7   that plaintiffs were damaged as a result of the fraudulent

8   representations made by Dewan Consultants or its agents?

9           One, yes.

:25:46  10          Two, yes.

11          Three, yes.

12          Four, yes.

13          Five, yes.

14          Claim Six:  All Plaintiffs Against Signal, Burnett

:25:57  15  and Dewan.

16          Negligent Misrepresentation - Signal.

17          Do you find from a preponderance of the evidence

18   that Signal or its agents committed any of the following

19   acts:  (a) made an untrue assertion believing it to be true

:26:13  20   in a manner not warranted by the information of the person

21   making the assertion; (b) committed a breach of duty, which,

22   without an intent to deceive, allowed the person to gain an

23   advantage by misleading another person to his disadvantage;

24   or (c) caused, however innocently, a party to an agreement to

:26:36  25   make a mistake as to the substance of the thing which is the

OFFICIAL TRANSCRIPT

1   subject of the agreement?

2          One, yes.

3          Two, yes.

4          Three, yes.

5          Four, yes.

6          Five, yes.

7          Do you find from a preponderance of the evidence

8   that plaintiffs were damaged as a result of the negligent

9   misrepresentations made by Signal or its agents?

10         One, yes.

11         Two, yes.

12         Three, yes.

13         Four, yes.

14         Five, yes.

15         Negligent Misrepresentation - Malvern C. Burnett

16  (Burnett).

17         Do you find from a preponderance of the evidence

18  that Burnett or its agents committed any of the following

19  acts:  (a) made an untrue assertion believing it to be true

20  in a manner not warranted by the information of the person

21  making the assertion; (b) committed a breach of duty, which,

22  without an intent to deceive, allowed the person to gain an

23  advantage by misleading another person to his disadvantage;

24  or (c) caused, however innocently, a party to an agreement to

25  make a mistake as to the substance of the thing which is the

:26:45

:26:59

:27:03

**OFFICIAL TRANSCRIPT**

1    subject of the agreement?

2             One, yes.

3             Two, yes.

4             Three, yes.

:27:53    5             Four, yes.

6             Five, yes.

7             Excuse me.

8                          (A pause in the proceedings.)

9             THE CASE MANAGER:  I'm going to read Negligent

:28:35   10   misrepresentation - Signal one more time.  I think I left out

11   a part.

12             On Page 55.

13             Question 1:  Do you find from a preponderance of

14   the evidence that Signal or its agents committed any of the

15   following acts: (a) made an untrue assertion believing it to

16   be true in a manner not warranted by the information of the

17   person making the assertion; (b) committed a breach of duty,

18   which, without an intent to deceive, allowed the person to

19   gain an advantage by misleading another person to his

20   disadvantage; or (c) caused, however innocently, a party to

21   an agreement to make a mistake as to the substance of the

22   thing which is the subject of the agreement?

23             One, yes.

24             Two, yes.

:29:25   25             Three, yes.

**OFFICIAL TRANSCRIPT**

1        Four, yes.

2        Five, yes.

3        I'm going to proceed now on Page 56 with

4    Question 2.

:29:38    5        Do you find from a preponderance of the evidence

6    that plaintiffs were damaged as a result of the negligent

7    misrepresentations made by Burnett or his agent?

8        One, yes.

9        Two, yes.

:29:51   10        Three, yes.

11        Four, yes.

12        Five, yes.

13        Negligent Misrepresentation - Law Offices of

14    Malvern C. Burnett, APC (Burnett Law Offices).

15        Do you find from a preponderance of the evidence

16    that Burnett Law Offices or its agents committed any of the

17    following acts:   (a) made an untrue assertion believing it to

18    be true in a manner not warranted by the information of the

19    person making the assertion; (b) committed a breach of duty,

20    which, without an intent to deceive, allowed the person to

21    gain an advantage by misleading another person to his

22    disadvantage; or (c) caused, however innocently, a party to

23    an agreement to make a mistake as to the substance of the

24    thing which is the subject of the agreement?

:30:43   25        One, yes.

**OFFICIAL TRANSCRIPT**

1          Two, yes.

2          Three, yes.

3          Four, yes.

4          Five, yes.

:30:47

5          Do you find from a preponderance of the evidence

6     that plaintiffs were damaged as a result of the negligent

7     misrepresentations made by Burnett Law Offices or its agents?

8          One, yes.

9          Two, yes.

:31:02

10         Three, yes.

11         Four, yes.

12         Five, yes.

13         Negligent Misrepresentation - Sachin Dewan (Dewan).

14         Do you find from a preponderance of the evidence

15    that Dewan or its agents committed any of the following acts:

16    (a) made an untrue assertion believing it to be true in a

17    manner not warranted by the information of the person making

18    the assertion; (b) committed a breach of duty, which, without

19    an intent to deceive, allowed the person to gain an advantage

20    by misleading another person to his disadvantage; or (c)

21    caused, however innocently, a party to an agreement to make a

22    mistake as to the substance of the thing which is the subject

23    of the agreement?

24         One, yes.

:31:48

25         Two, yes.

**OFFICIAL TRANSCRIPT**

```
 1              Three, yes.
 2              Four, yes.
 3              Five, yes.
 4              Do you find from a preponderance of the evidence
 5    that plaintiffs were damaged as a result of the negligent
 6    misrepresentations made by Dewan or his agents?
 7              One, yes.
 8              Two, yes.
 9              Three, yes.
10              Four, yes.
11              Five, yes.
12              Negligent Misrepresentation - Dewan Consultants,
13    Pvt., Ltd., a/k/a/ Medtech Consultants (Dewan Consultants).
14              Do you find from a preponderance of the evidence
15    that Dewan Consultants or its agents committed any of the
16    following acts:  (a) made an untrue assertion believing it to
17    be true in a manner not warranted by the information of the
18    person making the assertion; (b) committed a breach of duty,
19    which, without an intent to deceive, allowed the person to
20    gain an advantage by misleading another person to his
21    disadvantage; or (c) caused, however innocently, a party to
22    an agreement to make a mistake as to the substance of the
23    thing which is the subject of the agreement?
24              One, yes.
25              Two, yes.
```

:31:55 (line 5)
:32:06 (line 10)
:32:57 (line 25)

**OFFICIAL TRANSCRIPT**

1          Three, yes.

2          Four, yes.

3          Five, yes.

4          Do you find from a preponderance of the evidence

:33:05   5    that plaintiffs were damaged as a result of the negligent

6    misrepresentations made by Dewan Consultants or its agents?

7          One, yes.

8          Two, yes.

9          Three, yes.

:33:16   10         Four, yes.

11         Five, yes.

12         Claim Seven.

13         All Plaintiffs Against Signal, Burnett and Dewan.

14         Breach of Contract Or Promissory Estoppel -Signal.

:33:30   15         A.  Breach of Contract.

16         Do you find from a preponderance of the evidence

17    that one or more plaintiffs entered into a valid and binding

18    contract, either orally or written, with agents of Signal?

19         One, yes.

:33:45   20         Two, yes.

21         Three, yes.

22         Four, yes.

23         Five, yes.

24         Do you find from a preponderance of the evidence

:33:52   25    that agents of Signal breached a contract with any of the

**OFFICIAL TRANSCRIPT**

1    plaintiffs?

2           One, yes.

3           Two, yes.

4           Three, yes.

:34:00   5           Four, yes.

6           Five, yes.

7           Do you find from a preponderance of the evidence

8    that plaintiffs lost money as a result of the breached

9    contract?

:34:10   10          One, yes.

11          Two, yes.

12          Three, yes.

13          Four, yes.

14          Five, yes.

:34:13   15          Promissory Estoppel.

16          Do you find from a preponderance of the evidence

17   that agents of Signal made promises to plaintiffs?

18          No response is provided.

19          2:   Do you find from a preponderance of the

:34:31   20   evidence that plaintiffs made payments and incurred expenses

21   in reliance on those promises?

22          No response is provided.

23          Do you find from a preponderance of the evidence

24   that the promises on which plaintiffs relied were broken?

:34:48   25          No response is provided.


**OFFICIAL TRANSCRIPT**

1            Do you find from a preponderance of the evidence

2    that in good conscience and justice, the money paid by

3    plaintiffs in relying on the promises should be returned to

4    plaintiffs?

:35:00    5            No response is provided.

6            Breach of Contract Or Promissory Estoppel -

7    Malvern C. Burnett (Burnett).

8            Do you find from a preponderance of the evidence

9    that one or more plaintiffs entered into a valid and binding

:35:15   10   contract, either orally or written, with Burnett or his

11   agents?

12           One, yes.

13           Two, yes.

14           Three, yes.

:35:22   15           Four, yes.

16           Five, yes.

17           Do you find from a preponderance of the evidence

18   that Burnett or his agents breached a contract with any of

19   the plaintiffs?

:35:34   20           One, no.

21           Two, no.

22           Three, yes.

23           Four, yes.

24           Five, yes.

:35:40   25           Do you find from a preponderance of the evidence


**OFFICIAL TRANSCRIPT**

1   that plaintiffs lost money as a result of the breached
2   contract?
3           One, no.
4           Two, no.
5           Three, yes.
6           Four, yes.
7           Five, yes.
8           B.  Promissory Estoppel.
9           Do you find from a preponderance of the evidence
10  that Burnett or his agents made promises to plaintiffs?
11          One, yes.
12          Two, yes.
13          No response provided for three, four and five.
14          Do you find from a preponderance of the evidence
15  that plaintiffs made payments and incurred expenses in
16  reliance on those promises?
17          One, yes.
18          Two, yes.
19          No response is provided for plaintiffs three, four
20  and five.
21          Do you find from a preponderance of the evidence
22  that the promises on which plaintiffs relied were broken?
23          One, yes.
24          Two, yes.
25          No response provided for plaintiffs three, four and

**OFFICIAL TRANSCRIPT**

1    five.

2              Do you find from a preponderance of the evidence

3    that in good conscience and justice, the money paid by

4    plaintiffs in relying on the promises should be returned to

:36:53   5    plaintiffs?

6              One, yes.

7              Two, yes.

8              No response provide for three, four and five.

9              Breach of Contract Or Promissory Estoppel - Law

:37:07   10   Offices of Malvern C. Burnett, APC (Burnett Law Offices).

11             A.   Breach of Contract.

12             Do you find from a preponderance of the evidence

13   that one or more plaintiffs entered into a valid and binding

14   contract, either orally or written, with Burnett Law Offices

:37:22   15   or its agents?

16             One, yes.

17             Two, yes.

18             Three, yes.

19             Four, yes.

:37:27   20   Five, yes.

21             Do you find from a preponderance of the evidence

22   that Burnett Law Offices or its agents breached a contract

23   with any of the plaintiffs?

24             One, no.

:37:38   25   Two, no.


OFFICIAL TRANSCRIPT

1          Three, yes.

2          Four, yes.

3          Five, yes.

4          Do you find from a preponderance of the evidence

:37:47     5  that plaintiffs lost money as a result of the breached

6     contract?

7          One, no.

8          Two, no.

9          Three, yes.

:37:56    10          Four, yes.

11          Five, yes.

12          B.   Promissory Estoppel.

13          Do you find from a preponderance of the evidence

14     that Burnett Law Offices or its agents made promises to

:38:08    15     plaintiffs?

16          One, yes.

17          Two, yes.

18          No response provided for plaintiffs three, four and

19     five.

:38:16    20          Do you find from a preponderance of the evidence

21     that plaintiffs made payments and incurred expenses in

22     reliance on those promises?

23          One, yes.

24          Two, yes.

:38:28    25          No response provided for plaintiffs three, four,

**OFFICIAL TRANSCRIPT**

```
 1   and five.
 2              Do you find from a preponderance of the evidence
 3   that the promises on which plaintiffs relied were broken?
 4              One, yes.
 5              Two, yes.
 6              No responses provided for plaintiffs three, four
 7   and five.
 8              Do you find from a preponderance of the evidence
 9   that in good conscience and justice, the many paid by
10   plaintiffs in relying on the promises should be returned to
11   plaintiffs?
12              One yes.
13              Two, yes.
14              No responses provided for plaintiffs three, four
15   and five.
16              Breach of Contract Or Promissory Estoppel - Sachin
17   Dewan (Dewan).
18              A.  Breach of Contract.
19              Do you find from a preponderance of the evidence
20   that one or more plaintiffs entered into valid and binding
21   contract, either orally or written, with Dewan or his agents?
22              One, yes.
23              Two, yes.
24              Three, yes.
25              Four, yes.
```

                          OFFICIAL TRANSCRIPT

```
 1              Five, yes.
 2              2:  Do you find from a preponderance of the
 3      evidence that Dewan or his agents breached a contract with
 4      any of the plaintiffs?
 5              One, no.
 6              Two, no.
 7              Three, no.
 8              Four, no.
 9              Five, no.
10              Do you find from a preponderance of the evidence
11      that plaintiffs lost money as a result of the breached
12      contract?
13              No response provided.
14              B.   Promissory Estoppel.
15              Do you find from a preponderance of the evidence
16      that Dewan or his agents made promises to plaintiffs?
17              One, yes.
18              Two, yes.
19              Three, yes.
20              Four, yes.
21              Five, yes.
22              Do you find from a preponderance of the evidence
23      that plaintiffs made payments and incurred expenses in
24      reliance on those promises?
25              One, yes.
```

**OFFICIAL TRANSCRIPT**

1          Two, yes.

2          Three, yes.

3          Four, yes.

4          Five, yes.

:40:23   5          Do you find from a preponderance of the evidence

6   that the promises on which plaintiffs relied were broken?

7          One, yes.

8          Two, yes.

9          Three, yes.

:40:34   10         Four, yes.

11         Five, yes.

12         Do you find from a preponderance of the evidence

13   that in good conscience and justice, the money paid by

14   plaintiffs in relying on the promises should be returned to

:40:47   15   plaintiffs?

16         One, yes.

17         Two, yes.

18         Three, yes.

19         Four, yes.

:40:53   20         Five, yes.

21         Breach of Contract Or Promissory Estoppel -

22   Dewan Consultants, Pvt., Ltd., a/k/a Medtech Consultants

23   (Dewan Consultants).

24         A.   Breach of Contract.

:41:08   25         Do you find from a preponderance of the evidence

**OFFICIAL TRANSCRIPT**

1    that one or more plaintiffs entered into a valid and binding
2    contract, either orally or written, with Dewan Consultants or
3    its agents?
4              One, yes.
5              Two, yes.
6              Three, yes.
7              Four, yes.
8              Five, yes.
9              Do you find from a preponderance of the evidence
10   that Dewan Consultants or its agents breached a contract with
11   any of the plaintiffs?
12             One, no.
13             Two, no.
14             Three, no.
15             Four, no.
16             Five, no.
17             Do you find from a preponderance of the evidence
18   that plaintiffs lost money as a result of the breached
19   contract?
20             No response provided.
21             B.   Promissory Estoppel.
22             Do you find from a preponderance of the evidence
23   that Dewan Consultants or its agents made promises to
24   plaintiffs?
25             One, yes.


                         **OFFICIAL TRANSCRIPT**

1          Two, yes.

2          Three, yes.

3          Four, yes.

4          Five, yes.

:42:06      5          Do you find from a preponderance of the evidence

6     that plaintiffs made payments and incurred expenses in

7     reliance on those promises?

8          One, yes.

9          Two, yes.

:42:18     10          Three, yes.

11          Four, yes.

12          Five, yes.

13          Do you find from a preponderance of the evidence

14     that the promises on which plaintiffs relied were broken?

:42:30     15          One, yes.

16          Two, yes.

17          Three, yes.

18          Four, yes.

19          Five, yes.

:42:34     20          Do you find from a preponderance of the evidence

21     that in good conscience and justice, the money paid by

22     plaintiffs in relying on the promises should be returned to

23     the plaintiffs?

24          One, yes.

:42:48     25          Two, yes.


                           **OFFICIAL TRANSCRIPT**

1              Three, yes.

2              Four, yes.

3              Five, yes.

4              Claim Eight:  Plaintiff Jacob Joseph

:43:00    5   Kadakkarappally (Mr. Jacob) against Signal.

6              False Imprisonment.

7              Do you find from a preponderance of the evidence

8    that on March 9, 2007, Signal or its hired guards held or

9    detained Mr. Jacob?

:43:13   10            Yes.

11             Do you find from a preponderance of the evidence

12   that Mr. Jacob's holding or detention was unlawful?

13             Yes.

14             Do you find from a preponderance of the evidence

:43:24   15   that Mr. Jacob was damaged as a result of his unlawful

16   holding or detention?

17             Yes.

18             Claim Nine:  Plaintiff Jacob Joseph

19   Kadakkarappally (Mr. Jacob) against Signal.

:43:40   20            Intentional Infliction of Emotional Distress.

21             Do you find from a preponderance of the evidence

22   that on March 9, 2007, Signal or its hired guards confined

23   Mr. Jacob to a trailer under guard for several hours?

24             Yes.

:43:56   25            Do you find from a preponderance of the evidence

**OFFICIAL TRANSCRIPT**

1   that the conduct of Signal or its hired guards was

2   outrageous?

3            Yes.

4            Do you find from a preponderance of the evidence

:44:06

5   that Signal or its hired guards intended to cause Mr. Jacob

6   emotional distress or acted with reckless disregard of the

7   probability that Mr. Jacob would suffer emotional distress?

8            Yes.

9            Do you find from a preponderance of the evidence

:44:22

10  that Mr. Jacob suffered emotional distress?

11           Yes.

12           Do you find from a preponderance of the evidence

13  that the conduct of Signal or its hired guards was a

14  substantial factor in causing Mr. Jacob's emotional distress?

:44:37

15           Yes.

16           Do you find from a preponderance of the evidence

17  that it was foreseeable that the conduct of Signal or its

18  hired guards would cause Mr. Jacob emotional distress?

19           Yes.

:44:51

20           Cross-Claims:

21           Cross-Claim One:  Signal against Burnett and Dewan.

22           Indemnity - All Defendants.

23           Do you find by a preponderance of the evidence that

24  Signal owes a legal obligation to plaintiffs in the main

:45:11

25  action?

**OFFICIAL TRANSCRIPT**

1        Yes.

2        Do you find by a preponderance of the evidence that

3   Signal was not at fault in incurring the legal obligation to

4   plaintiffs?

:45:21    5        No.

6        Indemnity - Malvern C. Burnett (Burnett).

7        Do you find by a preponderance of the evidence

8   that, in all fairness, Burnett should indemnify Signal for

9   the legal obligation owed to plaintiffs?

:45:36   10        No response provided.

11        Indemnity - Law Offices of Malvern C. Burnett, APC

12   (Burnett Law Offices).

13        Do you find by a preponderance of the evidence

14   that, in all fairness, Burnett Law Offices should indemnify

:45:56   15   Signal for the legal obligation owed to plaintiffs?

16        No response provided.

17        Indemnity - Sachin Dewan (Dewan).

18        Do you find by a preponderance of the evidence

19   that, in all fairness, Dewan should indemnify Signal for the

:46:13   20   legal obligation owed to plaintiffs?

21        No response provided.

22        Indemnity -Dewan Consultants, Pvt., Ltd., a/k/a

23   Medtech Consultants (Dewan Consultants).

24        Do you find by a preponderance of the evidence

:46:29   25   that, in all fairness, Dewan Consultants should indemnify

OFFICIAL TRANSCRIPT

1    Signal for the legal obligation owed to plaintiffs?

2              No response provided.

3              It is dated New Orleans Louisiana, this 12th day of

4    February, 2015.

5              Signed by Trenease Knox, jury foreperson.

6              Members of jury, is this your verdict?

7              THE JURORS:  (Nod heads.)

8              THE COURT:  Does any party wish to poll the jury?

9              (No response.)

10             THE COURT:  All right.

11             MS. HANGARTNER:  Yes, Your Honor, I would like to

12   poll the jury, if you don't mind.

13             THE COURT:  All right.

14             Would you please poll the jury.

15             THE CASE MANAGER:  Ms. Knox, is this your verdict?

16             THE FOREPERSON:  Yes, Your Honor.

17             THE CASE MANAGER:  Ms. Roper, is this your verdict?

18             THE JUROR:  Yes.

19             THE CASE MANAGER:  Mr. Michael Toups, is this your

20   verdict?

21             THE JUROR:  Yes.

22             THE CASE MANAGER:  Ms. Epps, is this your verdict?

23             THE JUROR:  Yes.

24             THE CASE MANAGER:  Ms. Damico, is this your

25   verdict?

OFFICIAL TRANSCRIPT

5184

```
 1              THE JUROR:  Yes.
 2              THE CASE MANAGER:  Mr. Harris, is this your
 3    verdict?
 4              THE JUROR:  Yes.
 5              THE CASE MANAGER:  Ms. Robertson, is this your
 6    verdict?
 7              THE JUROR:  Yes.
 8              THE CASE MANAGER:  Ms. Autin, is this your verdict?
 9              THE JUROR:  Yes.
10              THE CASE MANAGER:  Mr. Tyler Toups, is this your
11    verdict?
12              THE JUROR:  Yes.
13              THE COURT:  All right.  Ladies and gentlemen of the
14    jury, as you know, the next step of this proceeding will be
15    for you-all to look at the jury verdict form for Stage 2, and
16    I'll explain that further to you when I hadn't it out to you.
17              It's almost 4:00 so we'll recess for the afternoon.
18              The -- the jury verdict forms and jury instructions
19    that you have already, please leave in the jury room.  Those
20    will be there for you in the morning.
21              I want you to remember the instructions that I've
22    given you throughout the trial.
23              You are still not allowed to talk to anyone about
24    the case, including members of your family, people involved
25    in the trial, or anyone else.
```

:47:47

:47:55

:48:07

:48:31

:48:48

**OFFICIAL TRANSCRIPT**

1        If anyone tries to talk to you about the case,

2    please don't tell your fellow jurors.  Let me know about it

3    immediately.

4        We'll -- and remember, of course, that you are not

5    to communicate with anyone by any means, including cell

6    phones, iPads, or any kind of Internet, about the case or to

7    attempt to gain any information about the case.

8        So we'll come back at 8:00 in the morning, and

9    we'll have the jury verdict form for Stage 2 ready for you

10   and give you your instructions at that time.

11       So I hope y'all have a good evening.

12                              (Jury out at 3:49 p.m.)

13       THE COURT:  All right.  Have a seat.

14       So what we will do is go prepare the jury verdict

15   form for Stage 2, and we'll send it to all of you because we

16   want you to check to be sure that you agree with what we have

17   prepared.

18       The things I know that we'll do, we are going to

19   move the RICO claim to the beginning.  I'm still going to

20   call it Claim Four and put a tab for Claim Four, but they're

21   going to consider that first.

22       And we're going to delete that paragraph about "if

23   you have decided damages somewhere else."

24       We'll have to figure out the negligent -- the

25   breach of contract and negligent misrepresentation, and

OFFICIAL TRANSCRIPT

1    that's why I want you all to look at that one carefully to be

2    sure we've done that correctly.

3         And then we'll look at -- to see if there's

4    anything else we need to do.

5         So if you all could look at it tonight, and please

6    e-mail us tonight with any concerns you have.

7         And if you -- if you want to come in the morning a

8    little bit 8:00, and discuss it with me, you're welcome to do

9    that.  We'll be here.  Just let us know tonight if you --

10   and, you know, let everybody know that you want to talk about

11   it.  And then maybe we'll all come in -- you can all come at

12   7:45.  We can talk about it, fix anything if we need to, and

13   be ready to go at 8:00.

14        So anything else we need to discuss?

15        (No response.)

16        THE COURT:  I think it would be a good idea if the

17   parties did not issue any statements to the press, talk to

18   the press.  I would like to keep -- not have -- you know, I

19   don't want anything to call attention to the jury at this

20   point.  So I would -- I would ask that you all observe that

21   and not make any contact with the press or make statements to

22   the press, and let's the jury come in tomorrow or whenever

23   they finish their work.

24        Anything else?

25        (No response.)

**OFFICIAL TRANSCRIPT**

```
 1              THE COURT:  All right.  Thank you all.  See you
 2   tomorrow.
 3                              (Proceedings adjourned.)
 4
 5                         *  *  *  *
 6                       CERTIFICATE
 7
 8      I hereby certify this 12th day of February, 2015, that
 9   the foregoing is, to the best of my ability and
10   understanding, a true and correct transcript of the
11   proceedings in the above-entitled matter.
12
13                              /s/ Mary V. Thompson
14                              Official Court Reporter
15
16
17
18
19
20
21
22
23
24
25
```

OFFICIAL TRANSCRIPT