```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


KURIAN DAVID, et al.,                     CIVIL ACTION
           Plaintiffs

versus                                    No. 08-1220


SIGNAL INTERNATIONAL, LLC., et al.,       Section "E"
           Defendants


Related Case:

EQUAL EMPLOYMENT OPPORTUNITY              CIVIL ACTION
COMMISSION,
           Plaintiffs

versus                                    No. 12-557


SIGNAL INTERNATIONAL, LLC, et al.,        Section "E"
           Defendants

Related Case:

LAKSHMANAN PONNAYAN ACHARI, et al.,       CIVIL ACTION
           Plaintiffs

versus                                    No. 13-6218
                                          (c/w 13-6219,
                                           13-6220,13-6221
                                           14-1818)
SIGNAL INTERNATIONAL, LLC, et al.,
           Defenants                      Section "E"

Applies to:
David 08-1220


                           DAY 23
                      February 13, 2015


               TRANSCRIPT OF THE TRIAL PROCEEDINGS
              BEFORE THE HONORABLE SUSIE MORGAN,
                  UNITED STATES DISTRICT JUDGE,
                        AND A JURY.


                      OFFICIAL TRANSCRIPT
```

1   **APPEARANCES:**

2

3   For Plaintiffs:                    ALAN HOWARD, ESQ.
                                       HUGH D. SANDLER, ESQ.
4                                      CHIEMI D. SUZUKI, ESQ.
                                       Crowell & Moring, LLP
5                                      590 Madison Avenue
                                       New York, NY 10022
6                                      212.803.4021

7                                      DANIEL WERNER, ESQ.
                                       NAOMI TSU, ESQ.
8                                      MELIA AMAL BOUHABIB, ESQ.
                                       MEREDITH STEWART, ESQ.
9                                      Southern Poverty Law Center
                                       Immigrant Justice Project
10                                     233 Peachtree Street NE
                                       Atlanta, GA 30303
11                                     404.521.6700

12                                     CHANDRA S. BHATNAGAR, ESQ.
                                       American Civil Liberties Union
13                                     Foundation (New York/Broad)
                                       125 Broad Street, 18th Floor
14                                     New York, NY  10004

15

16  For Signal Entities:               ERIN CASEY HANGARTNER
                                       ELHAM RABBANI, ESQ,
17                                     HAL UNGAR, ESQ.
                                       BRIAN ROUX, Ph.D., ESQ.
18                                     LANCY RYDBERG, ESQ.
                                       Hangartner Rydberg & Terrell
19                                     One Shell Square
                                       701 Poydras Street
20                                     Suite 310
                                       New Orleans, LA 70139

21                                     PATRICIA BOLLMAN, ESQ.
                                       Patricia Bollman, APLC
22                                     P.O. Box 13707
                                       New Orleans, LA 70185.
23
                                       ALAN WEINBERGER, ESQ.
24                                     Weinberger Law Firm
                                       201 St. Charles Avenue
25                                     New Orleans, LA  70170

**OFFICIAL TRANSCRIPT**

```
1    For Sachin Dewan:              STEPHEN SHAPIRO, ESQ.
                                    Law Office of Stephen Shapiro
2                                   700 Camp Street
                                    New Orleans, LA 70130
3

4    For Malvern Burnett:          TIM CERNIGLIA, ESQ.
                                    Law Office of Tim Cerniglia
5                                   1521 St. Charles Avenue
                                    New Orleans, LA 70130
6

7

8

9

10   REPORTED BY:

11   MARY V. THOMPSON, RMR, FCRR
     Official Court Reporter
     HB 273
12   500 Poydras Street
     New Orleans, Louisiana 70130
13   (504)589-7783
     mary_v_thompson@laed.uscourts.gov
14

15

16        .

17

18

19

20

21

22

23

24

25
```

**OFFICIAL TRANSCRIPT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

INDEX

**PAGE NO.**

**JURY CHARGE CONFERENCE**........................... 5192

**JURY CHARGED ON STAGE 2 VERDICT FORM**............. 5202

**JURY NOTE DISCUSSION.**  ......................... 5204

**JURY DISMISSAL**................................. 5226

**OFFICIAL TRANSCRIPT**

```
 1                    P R O C E E D I N G S
 2                              (Call to order of the court.)
 3          THE COURT:  Okay.  Have a seat.
 4          We don't open court without the jury.
 5          All right.  So we sent you our draft of the jury
 6   instructions for Stage 2, and then we got comments and
 7   suggestions from both of you.
 8          So let's start with Mr. Werner.
 9          MR. WERNER:  Good morning, Your Honor.
10          What we sent were two versions, and the purpose of
11   both was to remedy this issue in terms of establishing the
12   proportionality of punitive damages, ^ and therefor needing
13   to know what the total of the damages are for a particular
14   claim.  So we accomplished that by just sort of sort of
15   reinserting that first line.
16          THE COURT:  And I found -- I think that's just too
17   confusing for the jury.
18          To me it's like you said, tell us the compensatory
19   damages for violating TVPA, and below it you said, tell me
20   the compensatory damages for violating TVPA.
21          So, you know, I thought what you were going to
22   suggest is that the top paragraph would say, tell us all
23   your -- tell us the total of compensatory damages; and then
24   you would go to, now, of that amount, what is attributable
25   TVPA.
```

OFFICIAL TRANSCRIPT

1        I thought that was confusing too.  I'm not going to

2  do that, either.

3        You know, I think this is a result of your filing

4  all these claims against all these parties for the same

07:37:59      5  damages, and there's nothing we can really do to fix that in

6  a perfect way.  And so I think the choice you have is we can

7  move -- and I understand what your issue is.  We can move

8  RICO back to four, if you want to do that, or we can leave

9  RICO where it is.

07:38:24     10        And I think you all have to make that decision.

11        MR. WERNER:  If we moved RICO back to four -- and I

12  think it's okay to have it in the beginning.  I just think

13  it's a little bit more confusing.

14        If we moved RICO back to four, the way it reads

07:38:42     15  with that additional listing of -- with that initial listing

16  of the plaintiffs and their damages followed by, then, in the

17  event you award compensatory damages, then -- you know, for

18  this cause of action, and award compensatory damages under a

19  different claim, please indicate below the compensatory

07:39:09     20  damages you're awarding for this particular claim.

21        And I understand that's not ideal.

22        But I think particularly for the RICO -- and

23  maybe -- maybe Your Honor's suggestion is the best way, and

24  the way you might just -- you put it in first, but I think it

07:39:26     25  gets a little bit --

**OFFICIAL TRANSCRIPT**

1          THE COURT:  I'm not sure what you're saying right

2     now.

3          If I take RICO out -- RICO starts out:  Please

4     enter the amount of damages for Signal's RICO violations.

07:39:42   5          And if we put it back in four, I'm going to add

6     that paragraph back in.

7          MR. WERNER:  Right.  But in order to add that

8     paragraph back in, then you would then need to add the

9     preliminary list of plaintiffs and amounts, which, if

07:39:58  10     Your Honor isn't prepared to do that, then it should probably

11     stay as the first claim -- the first --

12          THE COURT:  That's the way we had it.  I mean, all

13     I did on four was take it from four and put it to one.

14          We always had:  Please enter the amount of damages

07:40:15  15     you award for Signal's RICO violation and the five

16     plaintiffs' names.

17          And what are you proposing?  I don't understand.

18          MR. WERNER:  I apologize that I'm not being clear.

19          I think this only works -- and it's really not

07:40:31  20     worth going into it if Your Honor doesn't want to insert

21     the --

22          THE COURT:  The two damage paragraphs?

23          MR. WERNER:  Yeah.

24          Then it's not --

07:40:39  25          THE COURT:  When I read your proposal -- let me go

**OFFICIAL TRANSCRIPT**

1   to one where...

2          I'm looking at Page 11, Trafficking Victims

3   Protection Act - Burnett.

4          Please enter the amount of compensatory damages you

5   award, if any, for Burnett's violation of the Trafficking

6   Victims Protection Act.

7          Then the next sentence says -- the next

8   instruction:  If you aware compensatory damages for this

9   claim and also award under a different claim, indicate below

10  the compensatory damages you are awarding for the claims

11  under the TVPA.

12         That should be the same number as above, because

13  they are both damages for the TVPA.

14         But even if you said, okay, well, in the first one,

15  the top one, just put the total amount of compensatory

16  damages, I'm not going to do that either.  I think that's too

17  confusing for the jury.  And what you would be expecting them

18  to do is then make sure that all -- if you added up, I guess,

19  all the compensatory damages under the second question, you

20  should get the number that's in the first.

21         MR. WERNER:  That's right.

22         THE COURT:  And I just think that's very difficult

23  to do that.

24         MR. HOWARD:  If I may, Your Honor.

25         I understand, Your Honor, and I think you're right.

**OFFICIAL TRANSCRIPT**

1     I think the plaintiffs' preference would be to go

2  back to the original order with TVPA first, discrimination

3  second, and retaliation.

4        THE COURT:  And RICO.

07:42:15   5        MR. HOWARD:  Yeah.

6        When you get to RICO, though, the one consideration

7  might be, because of the trebling aspect of the RICO damages,

8  that there -- if you'd consider putting in a second paragraph

9  meaning give -- because it's also going to be the first time

07:42:36   10  with compensatory damages -- economic compensatory damages,

11  that there's a potential for added recovery.

12        So if you add language such as, what damages do you

13  find for RICO.  And then, if any of these damages are

14  duplicative of damages already awarded for another claim,

07:42:56   15  please indicate below, you know, the damages, if there are

16  any damages specific to RICO.

17        And that way they'll have the chance to put in like

18  the full economic amount.

19        And below they might put a zero, but at least we

07:43:11   20  know they're not giving any additional damages for RICO but

21  we know you can treble that full economic amount.

22        So that would be a consideration.

23        And then there's no need for a second paragraph.

24  You know, it would be too confusing for any of the other

07:43:26   25  claims.

**OFFICIAL TRANSCRIPT**

1        THE COURT:  So what is it exactly you're

2   suggesting?

3        For example, RICO - Signal, Compensatory Damages.

4   Please enter the amount of damages you award for Signal's

07:43:37   5   RICO violations.  Five plaintiffs.

6        MR. HOWARD:  Correct.

7        THE COURT:  And then what were you saying?

8        MR. HOWARD:  The second one would be:  If any of

9   these damages have already been awarded by you for another

07:43:47   10   claim, please indicate below any -- the damages, if any,

11   which are exclusively a result of the RICO violations, and

12   then list the fives plaintiffs below.

13        THE COURT:  Wouldn't you have that issue with every

14   one of these?

07:44:02   15        MR. HOWARD:  Well, you do.  And that's why I

16   originally suggested you could do it that way for each one,

17   but I understood the confusion when you're doing two

18   paragraphs for each claim.

19        But for RICO --

07:44:13   20        THE COURT:  Why is RICO different?

21        MR. HOWARD:  Because the damages get trebled.  So

22   the reason we discussed yesterday moving it to the front is

23   to avoid the situation where you ask a paragraph -- I mean,

24   if you want to leave that first paragraph like it is, that's

07:44:29   25   fine, but I thought it had been changed.

**OFFICIAL TRANSCRIPT**

1        THE COURT:  I don't see why the trebling changes

2   RICO so much from the others.

3        MR. HOWARD:  Well --

4        THE COURT:  You still -- in every one of them

5   you're going to have an issue of what were the compensatories

6   awarded under this claim.

7        MR. HOWARD:  We understand.

8        But the way the RICO was worded before we moved it

9   to the front --

10        THE COURT:  Oh, I don't know that we changed

11   anything.  I think we just moved it --

12        MR. HOWARD:  I thought the language did change a

13   little bit, because when it was back at four it would say:

14   Please give damages for RICO that you haven't already given.

15        THE COURT:  Well, that was that second paragraph

16   that we removed from the others -- you know, we removed it

17   from RICO when we put it at the front.

18        MR. HOWARD:  Maybe I was confused, Your Honor,

19   because I thought it had been reduced to just one paragraph

20   and avoided a double recovery issue.

21        (Conferring.)

22        THE COURT:  That's all we did was move it to the

23   front and get rid of the paragraph that's on the other claims

24   that says:  In the event you award compensatory damages for

25   this claim and also award under a different claim.


                        **OFFICIAL TRANSCRIPT**

07:44:40

07:44:50

07:45:01

07:45:17

07:45:41

1      We got rid of that because it was first.

2           MR. HOWARD:  Right.

3           THE COURT:  And we thought that's what you wanted

4      us to do.

5           But if it goes back to four, I'm going to put that

6      paragraph back in.

7           MR. HOWARD:  The second paragraph.

8           THE COURT:  Yeah.

9           MR. HOWARD:  But there's still a preliminary

10     paragraph that says, what do you award under the RICO?

11          THE COURT:  Please enter the amount of damages you

12     award, if any, for Signal's RICO violation.

13          I could put "only" in there.

14          MR. HOWARD:  There is --

15          THE COURT:  Just a second.

16          (Conferring.)

17          THE COURT:  So I tell you what I'm going to do is

18     move this RICO back where it was and add that paragraph, and

19     that's what we're going to do.

20          MR. HOWARD:  Is that first paragraph, now moved

21     back, going to have each of the five plaintiffs?

22          THE COURT:  But it always did.

23          MR. HOWARD:  See -- okay.  I was hearing something

24     different.  I apologize.

25          THE COURT:  It had to happen.


                        **OFFICIAL TRANSCRIPT**

1          Look, have you got a copy you can show him?

2          Don't you have Philip's draft from yesterday?

3          MR. HOWARD:  If I may approach, Your Honor?

4          THE COURT:  Yeah.

07:47:53    5          MR. HOWARD:  We may have been looking at the wrong

6   version.  If this is what it looked like when it was on

7   number four, that's fine.

8          THE LAW CLERK:  That's how it was.

9          MR. HOWARD:  And this came from --

07:48:06   10          MR. WEINBERGER:  Then I made -- sorry.

11          MR. WERNER:  So it does have the initial amounts.

12          THE LAW CLERK:  That's how it looked before we

13   moved it to the front.  It had that second paragraph.

14          MR. HOWARD:  Then with great apologies for creating

07:48:19   15   that work.  I think it should go back just the way that was.

16          THE COURT:  Okay.  So I got that.

17          Now, Mr. Weinberger --

18          MR. WEINBERGER:  Yes, Your Honor.

19          THE COURT:  -- do you have any comments?

07:48:27   20          MR. WEINBERGER:  I do, Your Honor.

21          My first comment is I wonder if the Court would

22   consider rereading a portion of the instructions to the jury

23   before they retire to deliberate?

24          THE COURT:  No.

07:48:36   25          MR. WEINBERGER:  All right.  Can they be directed

**OFFICIAL TRANSCRIPT**

1   to reread, perhaps, a part of the --

2        THE COURT:  No.  You can't emphasize one thing over

3   another, and that's what that would be doing.

4        MR. WEINBERGER:  Your Honor, the only thing I'm

07:48:47   5   trying to do -- and obviously the Court is concerned about

6   the issue -- is think of things to do to try to avoid a

7   double-recovery problem.

8        THE COURT:  Well, you know, I think they have the

9   instructions and there's -- I'm not going to reread part

07:49:04  10   and --

11        MR. WEINBERGER:  All right, Your Honor.

12        And the last thing that I want to suggest, as I did

13   before, is just liberally using the word "solely" throughout.

14        THE COURT:  No.

07:49:14  15        MR. WEINBERGER:  Thank you, Your Honor.

16        THE COURT:  We're going to go back and get the

17   verdict form ready, and we'll start at 8:00.

18        MR. HOWARD:  Thank you, Your Honor.

19                    (A recess was taken.)

07:49:32  20                 **AFTER THE RECESS**

21                    (Call to order of the court.)

22        THE COURT:  All right.  Don't sit down.

23        Does anyone have anything they want to put on the

24   record about the jury verdict form Stage 2?

10:21:02  25        MR. WERNER:  Nothing from the plaintiffs,

**OFFICIAL TRANSCRIPT**

1    Your Honor.

2              MR. WEINBERGER:  No, Your Honor.

3              MR. CERNIGLIA:  No, Your Honor.

4              MR. SHAPIRO:  No, Your Honor.

10:21:09    5              THE COURT:  Now we can bring the jury in.

6                                   (Jury in at 10:21 a.m.)

7                                   (Court opened.)

8              THE COURT:  All right.  Be seated.

9              Good morning to everyone.

10:21:50    10              And to the ladies and gentlemen of the jury, I want

11    to apologize for the delay.  As I'm sure you have seen by

12    now, a lot of preparation goes into what we do before

13    something gets to you, and it just took a little longer than

14    we thought it would to make everything -- to get everything

10:22:11    15    ready.

16              But you have now completed your deliberations and

17    returned a verdict on Stage 1 of this trial.  Now it is your

18    sworn duty as jurors to discuss Stage 2 of the case with one

19    another in an effort to reach agreement, if you can do so.

10:22:29    20              As you continue your deliberations, you must not

21    communicate with, or provide any information to, anyone by

22    any means about this case.  You may not use any electronic

23    device or media such as a cell phone, iPad or computer, the

24    Internet or any Internet service, or any text or instant

10:22:49    25    messaging service, or any Internet chatroom, blog or website

**OFFICIAL TRANSCRIPT**

1    such as Facebook, MySpace, LinkedIn, YouTube or Twitter, to

2    communicate to anyone any information about this case or to

3    conduct any research about this case until I accept your

4    verdict on Stage 2.

10:23:07    5        If you recess during your deliberations, follow all

6    instructions that the Court has given you about your conduct

7    during the trial.

8        If you want to communicate with me at any time,

9    please give a written message to the bailiff who will bring

10:23:23    10    it to me.  I will then respond as promptly as possible,

11    either in writing or by meeting with you in the courtroom.  I

12    will always first show the attorneys your question and my

13    response before I answer the question.

14        After you have reached a verdict, you are not

10:23:39    15    required to talk to anyone about the case.

16        I have prepared Jury Verdict Form Stage 2 for your

17    convenience and to aid you in reaching a unanimous decision.

18        During Stage 2 you will decide whether, and in what

19    amount, the plaintiffs will be awarded damages against any of

10:23:57    20    the defendants in Jury Verdict Form Stage 2.

21        You will note that the tabs for the various claims

22    in Jury Verdict Form Stage 2 correlate to the tabs in the

23    jury instructions and in Jury Verdict Form Stage 1.

24        There is no tab for Claim Six in Jury Verdict Form

10:24:23    25    Stage 2, so don't be concerned if you see one number is

**OFFICIAL TRANSCRIPT**

1   missing.

2          Please answer the questions in Jury Verdict Form

3   Stage 2 in the order in which they are posed.

4          After you have reached your unanimous verdict on

5   Jury Verdict Form Stage 2, your foreperson must fill in your

6   answers to the written questions and sign and date the form.

7   You will then return Jury Verdict Form Stage 2 to me.

8          Your verdict in Stage 2 must represent the

9   considered judgment of each juror.  Your verdict in Stage 2

10  must be unanimous on each and every question you are called

11  to decide.

12          You may now retire to the jury room to conduct your

13  deliberations and answer the questions on Jury Verdict Form

14  Stage 2.

15                          (Jury out at 10:25 a.m.)

16          THE COURT:  All right.  So we'll contact you if we

17  have any questions or we have a verdict.

18          Mr. Shapiro, I don't want to get voicemail and I

19  don't want to wait for you when the jury comes back.  So I

20  want you to be close and available, and I want you to answer

21  my calls.

22          MR. HOWARD:  Your Honor, I did talk with counsel

23  for Signal, and we just thought we'd ask whether you would

24  entertain a joint motion concerning contact with the jurors

25  after the verdict?


                        **OFFICIAL TRANSCRIPT**

1       THE COURT:  Well --

2       MR. HOWARD:  That's my understanding on the local

3   rule, that we have to move to have contact.

4       THE COURT:  Right.  And any contact has to be in

5   the courtroom in my presence unless I direct otherwise.

6       So if you -- do y'all have -- what is it that you

7   wanted?

8       MR. HOWARD:  What I think I would want is --

9   certainly I don't want to be reaching out and making contact

10  if people don't want to hear from us, but if the jurors want

11  to reach out to us, then I would like to communicate to them

12  that we are available and make contact information available.

13      THE COURT:  We have very restrictive rules in this

14  district about jury contact, and I'm -- I'm --

15      MR. HOWARD:  If that's the case, I want to abide by

16  the rules.

17      THE COURT:  No, I don't believe you'll have any

18  jurors reaching out to you.  And I -- and if you want to talk

19  to jurors, then you have to make a motion to me, and you have

20  to tell me why, and we'll have to figure out -- everybody

21  would have to be here, and it would all have to -- you know,

22  there -- we would have to figure out under what

23  circumstances.

24      But I tell you, it's -- it would be pretty

25  restrictive.


**OFFICIAL TRANSCRIPT**

1      MS. HANGARTNER:  That's what I was thinking, if we

2  could make a motion that either at some point in the

3  future -- obviously we'd all come back here.

4      Or if you could -- if you grant it -- explain to

10:27:32   5  them, at the end of the day, the attorneys would like to

6  potentially discuss --

7      THE COURT:  You would have to file a motion -- read

8  the local rule first.

9      File a motion and explain to me why, and then we

10:27:45   10  would probably have a hearing about whether or not you could

11  do it.

12      So I'm just telling you it's going to be very

13  restrictive and --

14      MS. HANGARTNER:  Understood.

10:27:54   15      THE COURT:  And they're not going to be contacting

16  you, so do not -- I want to be clear to every lawyer in the

17  room, do not have any contact with any juror until -- unless

18  I have authorized it, and then that contact has to be in

19  accordance with whatever I authorize.

10:28:09   20      So this is no "after this is over you start calling

21  the jurors."  Do not do that.

22      MR. HOWARD:  Oh, no.

23      MS. HANGARTNER:  No.

24      MR. HOWARD:  Understood, Your Honor.  Thank you.

10:28:19   25      MR. UNGAR:  Thank you, Your Honor.


**OFFICIAL TRANSCRIPT**

|   |   |
|---|---|
| 1 | THE COURT:  Thank you. |
| 2 | (A recess was taken.) |
| 3 | **AFTER THE RECESS** |
| 4 | (The following proceedings |
| 5 | were held in chambers with some attorneys appearing via |
| 6 | phone, to wit:) |
| 7 | THE COURT:  All right.  Have a seat. |
| 8 | Who is on the phone? |
| 9 | Hello.  Let see, we have, Tim Cerniglia? |
| 10 | MR. CERNIGLIA:  Yes, Your Honor. |
| 11 | THE COURT:  And Steve Shapiro? |
| 12 | MR. SHAPIRO:  Yes.  Here, Your Honor. |
| 13 | THE COURT:  Anybody else? |
| 14 | MR. HOWARD:  Yes, Your Honor.  Alan here. |
| 15 | THE COURT:  Oh, I see he's not in the room. |
| 16 | So we got a note from the jury. |
| 17 | This is Question 1:  Is it possible for us to |
| 18 | receive the slide of requested compensatory damages from |
| 19 | Mr. Howard presented in his closing argument. |
| 20 | MR. CERNIGLIA:  Well, I object to that.  That's |
| 21 | argument. |
| 22 | THE COURT:  Well, I -- you know, I think the slide |
| 23 | that they're talking about had compensatory damages, but it |
| 24 | also had what you were asking for on punitives and -- |
| 25 | MR. HOWARD:  Right. |

11:28:36 (line 10)
11:28:47 (line 15)
11:29:08 (line 20)
11:29:29 (line 25)

**OFFICIAL TRANSCRIPT**

1        MS. HANGARTNER:  Correct.

2        THE COURT:  Yeah.  Maybe if we could see it, it

3  would be --

4        MR. HOWARD:  I have a copy of that slide in the

L1:29:37  5  courtroom, Your Honor.  It's in a Redwell folder sitting with

6  my computer in front of the chair that I usually sit in.

7        THE COURT:  Okay.  So Ms. Graunke is going to go

8  look for that.

9        Question 2:  Is there a range for compensatory and

L1:30:00  10  punitive awards.

11        Is there a range.

12        The only thing I thought I could do for punitives

13  is tell them they could look starting at the bottom of

14  Page 13 of the jury instruction.  It says:  If you decide to

L1:30:19  15  award punitives, these are the factors.

16        And I don't think there's anything I can tell them

17  about a range for compensatory awards.

18        MR. WERNER:  That's right.

19        MR. HOWARD:  That's correct.

L1:30:33  20        MR. SHAPIRO:  I would tend to agree.

21        MS. HANGARTNER:  I agree.

22        THE COURT:  Is that satisfactory to everybody?

23        MR. WERNER:  Yes.

24        MR. CERNIGLIA:  Yes, that's acceptable with

L1:30:37  25  Burnett.

**OFFICIAL TRANSCRIPT**

1       MR. SHAPIRO:  Yes.

2       MS. HANGARTNER:  That makes sense.

3       THE COURT:  And then Question 3:  We would also

4   like to have the W-2 forms of the plaintiffs.

5       I believe --

6       MR. HOWARD:  The what forms?

7       MR. CERNIGLIA:  What forms?

8       THE COURT:  The W-2 forms.

9       So I think that Signal introduced those as

10  exhibits.

11      MS. HANGARTNER:  We did, Your Honor.

12      MR. HOWARD:  Yes.

13      THE COURT:  Can we get the number so everybody can

14  check to see if you agree?

15      Did you do just one for each plaintiff or was there

16  more than one?

17      MS. HANGARTNER:  For some of the plaintiffs there

18  were more than one.

19      THE COURT:  And is it for different years?

20      MS. HANGARTNER:  Right.  Like '06, '07.

21      MR. CERNIGLIA:  But it's all one exhibit as I

22  understand it.

23      THE COURT:  Well, Dan is looking for the exhibit

24  number.

25      MR. HOWARD:  Your Honor, I'm coming in through

OFFICIAL TRANSCRIPT

 1   security so I can come up there and get that slide in a

 2   moment.

 3            THE COURT:  It looks like we found it, I believe.

 4   We found the Redwell.

11:31:39    5            MS. GRAUNKE:  Yes.

 6            MR. HOWARD:  There is also one of the slides from

 7   Signal in there.

 8            MS. TSU:  There is one from Signal.  And then there

 9   is one from -- they seem to be duplicative.

11:31:50   10            MR. HOWARD:  I'm trying to get through security

11   here.

12            MS. TSU:  We'll take out the duplicates.

13            MR. CERNIGLIA:  I still want to maintain an

14   objection about it, because my understanding, from looking at

11:32:01   15   those numbers, it was higher than -- I mean, that was

16   argument as to how much it was.

17            MR. HOWARD:  I'm just putting my phone down to go

18   through security, and then I'll come and pick it up and come

19   right up.

11:32:25   20            THE COURT:  Show me, were these both used?

21            MS. TSU:  They were, because one is about Signal

22   and one is about Dewan and Burnett.

23            And the numbers for actual damages for fraud,

24   racketeering, misrepresentation, and breach of contract are

11:32:40   25   the same as to all the defendants, because those are the

                         OFFICIAL TRANSCRIPT

1    amount of recruitment fees, the amount of man camp fees, and

2    the interest paid on debts.

3            THE COURT:  These are not the only claims where you

4    asked for compensatory damages, so why does it only list

1:33:02    5    these?

6            MR. HOWARD:  Right.

7            THE COURT:  Alan, do you know?

8            MR. HOWARD:  If you'll wait one moment, Your Honor,

9    I'm getting in the elevator and I can come and explain the

1:33:14   10    reply.

11           THE COURT:  Okay.  We'll talk about that.

12           MR. HOWARD:  I'll be right up.

13           MS. HANGARTNER:  Did the W-2s go into evidence?

14           MR. WERNER:  Yes, they did.

1:33:20   15           THE COURT:  That's what I thought.

16           MS. BOLLMAN:  Yes.

17           MR. WERNER:  They did.  I'm just finding exhibit

18    numbers.  For some reason I thought they were one exhibit,

19    but it looks like there are separate exhibits for the

1:33:32   20    different plaintiffs so I'm just going through and finding

21    those.  Bear with me here.  I apologize this is taking longer

22    than it has to.

23           MR. HOWARD:  (Enters room.)

24           THE COURT:  These are the two slides?

1:34:41   25           MR. HOWARD:  Right.  These obviously include the

**OFFICIAL TRANSCRIPT**

1    ones for discrimination and forced labor more than

2    compensatory -- I mean more than economic.

3         The claims where we only are entitled to economic,

4    and these are examples of those claims, these are the figures

5    that we calculated.

6         And I showed this -- the back-up to Ms. Hangartner

7    to resolve any possible objections to it concerning the

8    man camp fees that were deducted for each of the five

9    plaintiffs, their recruiting fees, and interest that we had

10   in evidence on the debt.

11        MR. CERNIGLIA:  Once again, Your Honor, that is not

12   evidence.  You will then be giving the jury something that is

13   not evidence.

14        For example, what I used -- I did the same thing

15   for the recruitment fees and the attorney fees.  I took it

16   from its actual checks.

17        But the only thing that should go to the jury is

18   they should just be told the exhibit numbers that would have

19   the fees of what were actually paid.  They have the checks

20   entered.

21        Also remember there are a lot from Michael Pol.

22   Your numbers don't segregate that, and I don't think that's

23   necessarily fair.

24        THE COURT:  And the slide just has fraud,

25   racketeering, misrepresentation, and breach of contract, but

OFFICIAL TRANSCRIPT

1  there are other claims where you also ask for compensatory
2  damages.  I just wondered why this slide just had those --
3  why it just had those claims?
4          MR. HOWARD:  I think -- I'm trying to think if
5  there was any other claim that has purely economic damages
6  other than those.
7          THE COURT:  Well, TVPA has compensatory damages.
8          MR. HOWARD:  Right.  So that would be included
9  within the amount that -- you know, on the left-hand column,
10  those are higher because you can also get non-economic.
11          So that's what we were asking for.
12          THE COURT:  So, for example, under forced labor --
13          MR. HOWARD:  Correct.
14          THE COURT:  -- you would say, well, for Mr. Jacob,
15  he had -- I mean -- Mr. Jacob, yeah, he had $17,000 in
16  economic, and the difference between $17,000 and $100,000 is
17  emotional distress?
18          MR. HOWARD:  Correct.
19          THE COURT:  Or do you take this plus this?
20          I don't remember what you argued.
21          MR. HOWARD:  Well, you can do that plus that.
22          I was looking for -- again, this is our suggestion,
23  you know, when it gets to non-economic for a dollar value for
24  each of the defendants.
25          THE COURT:  Well -- so the point that Mr. Cerniglia

OFFICIAL TRANSCRIPT

1    brings up about the proof of this amount, are there exhibits

2    that --

3        MR. HOWARD:  Well, there is, for example -- I think

4    it's 1155B.  It is just the summary of the man camp fees paid

5    by everybody -- it's 1155A.  So that would be one place the

6    jury can look for the man camp fees.

7        For the recruiting fees, they don't have the

8    testimony.

9        And I don't think there -- you know, for some of

10   them they had receipts, like for Mr. Jacob, that showed the

11   total amount; but for some of them you just have the

12   testimony as to how much they paid, because they didn't get

13   receipts for any amounts.

14       So they would not be able to recreate that from the

15   exhibits.  What we recreated it from was specific --

16       MR. SHAPIRO:  I'm having trouble hearing

17   Mr. Howard.  I'm sorry.

18       MR. HOWARD:  I'm sorry, Steve.

19       There were three elements to the economic damage

20   column that we put on the slide.

21       One was the man camp fees.  That is in an exhibit,

22   1155A.

23       The second element is the recruiting fees, and that

24   came from some exhibits for some of the plaintiffs, but also

25   had to be filled in based on testimony of the plaintiffs as

                    **OFFICIAL TRANSCRIPT**

1    to how much they paid in recruiting fees.

2            Then the third element was interest on debt, and

3    there is documentation of that.  For example, Hemant's

4    mortgage, we took the 12.5 percent interest rate from the

5    time it was taken out until he left Signal and included that.

6            But -- so there is that exhibit.

7            But for some of them, it was also testimony about

8    what the interest rates were on the debt -- on the loans they

9    took out.

10           I think the interest on debt, we only had

11   mathematically quantifiable interest for three of them.  So,

12   you know, some of them -- they obviously paid interest, but

13   there wasn't evidence in the record so we didn't include

14   that.

15           But I don't believe that the jury would really,

16   without all the testimony -- going through all the testimony,

17   be able to recreate those numbers.

18           MR. CERNIGLIA:  Well, still, that's their job.

19           And my point is, is what you're doing here is you

20   have made argument.  That's what you say the testimony was.

21           And besides that, when you start talking about

22   recruitment fees, if it's not in evidence and they can't look

23   at it, how do you distinguish something for Joseph Jacob that

24   was different --

25           THE COURT:  Well, it could be by testimony.  I

OFFICIAL TRANSCRIPT

1  mean, it didn't have --

2      MR. CERNIGLIA:  Yes.  I'm talking about that

3  exhibit that they made up, that is not an exhibit.  That

4  demonstrative can't go back to the jury, because now you are

5  giving them something they will consider as though it's a

6  piece of evidence.  And that's not their function.

7      You can -- I don't mind giving them a list of all

8  the different places where -- checks, as I recall, were

9  introduced for just about everybody.  Checks to Michael Pol,

10  checks to Malvern Burnett, to Mr. Sachin Dewan -- all of

11  that, that stuff of the recruiting fees.

12      But for you to say what they are and they vary and

13  they are different for each one, that's not proper.  That's

14  not evidence.

15      MR. SHAPIRO:  Yes.  And just if I may be heard, I

16  join in what Mr. Cerniglia is saying on behalf of Dewan.

17      THE COURT:  What about the 1155A, the summary of

18  the man camp deductions?

19      MR. CERNIGLIA:  Well, I don't have any problem with

20  that if Erin says that is the correct summary.

21      If it's in evidence, it's in evidence.  That's the

22  thing.  If it's in evidence, that's something they have a

23  right to see.

24      Like any checks, just in the exhibit numbers they

25  are in evidence.


OFFICIAL TRANSCRIPT

1          THE COURT:  1155A was admitted?

2          MR. HOWARD:  Yes.

3          THE COURT:  Well, I mean, I think Tim has a point.

4  You know, this -- so I guess one thing we could do is point

5  them to 1155A.

6          And then if you have some exhibit numbers on

7  recruiting fees and interest on the debt, we could point them

8  to that.

9          But we can't -- I don't think if there's -- if this

10  is disputed, I don't think I can give it to them as -- since

11  it was just closing arguments.

12          MR. HOWARD:  I understand that.

13          MR. CERNIGLIA:  Do we have an exhibit number for

14  the W-2s?

15          MS. HANGARTNER:  We're looking for that right now.

16          MR. CERNIGLIA:  Hal entered that in evidence.  It's

17  one global number.

18          THE COURT:  Who did?

19          MR. CERNIGLIA:  Hal Ungar did after the testimony,

20  I believe, of the first witness, because I tried to use

21  separate ones that were listed in the bench book, but Hal

22  said he wanted to use the one because they had all of them in

23  there, so I said fine.

24          MS. HANGARTNER:  There is one exhibit that is all

25  of the W-2s, Tim?

OFFICIAL TRANSCRIPT

1          MR. CERNIGLIA:  That's what he told me.

2          That's why -- I was trying to use separate ones but

3   he said they're all in one.

4          THE COURT:  Could you maybe call him --

5          MS. HANGARTNER:  Yeah.  Let me grab my cell phone.

6          MR. CERNIGLIA:  Excuse me?

7          THE COURT:  We're seeing if -- oh, you know?

8          MS. BOLLMAN:  Yes.  They are all together, and it

9   is Exhibit 2098.

10          MS. TSU:  Is that the 400-page one?

11          MS. BOLLMAN:  It just says (reading from phone:)

12   All W-2s are Exhibit 2098.  They are all there together.

13          THE COURT:  All right.  So do you hear that?

14          It is Exhibit 2098, but Dan is looking to see if

15   it's the 400-page exhibit.  But then --

16          MR. CERNIGLIA:  It shouldn't be.

17          THE COURT:  Maybe if we took certain pages out of

18   it, if it is.

19          MS. HANGARTNER:  I thought that was just W-2s, but

20   I could be wrong.

21          Dan?

22          MS. BOLLMAN:  If it is, we could just tell them the

23   pages that the W-2s are on.

24          THE COURT:  But I thought we didn't do that.  I

25   thought if there were any big exhibits --


OFFICIAL TRANSCRIPT

1        MR. WERNER:  I'll find out.

2        MR. HOWARD:  With respect to the evidence to point

3   the jury to with respect to recreating the economic

4   damages --

5        THE COURT:  Speak up.

6        MR. HOWARD:  With respect to the exhibits to refer

7   the jury to, if we're not going to give them the chart, I

8   think it would still be appropriate to say that 1155A has the

9   man camp fees.

10       With respect to interest on debt, there are certain

11  exhibits such as, I believe -- check this, but I think 847 is

12  Mr. Hemant's mortgage note.

13       But for purposes of the interest on debt and the

14  recruitment fees together, they are going to have to rely on

15  their memory of the testimony.

16       THE COURT:  Well, I think that's what Mr. Cerniglia

17  is saying.

18       MR. HOWARD:  I know.  But I just think that -- you

19  know, we don't want to give the jury a partial list of some

20  exhibits to go to for purposes of the fees, because it would

21  be incomplete and not accurately reflected.  I would not want

22  them to not take into account the testimony.

23       THE COURT:  All right.  So does everybody agree

24  that we could give the -- I could respond to them:  See

25  Exhibit 1155A for summary of the man camp deductions.


**OFFICIAL TRANSCRIPT**

1          For -- would it be for other compensatory

2   damages --

3          MR. HOWARD:  For other economic damages, I would

4   clarify.

5          THE COURT:  For compensatory economic damages --

6          MR. HOWARD:  Correct.

7          THE COURT:  -- you must rely on your memory --

8          MR. HOWARD:  Of the testimony.

9          THE COURT:  -- of the testimony and exhibits.

10          MS. HANGARTNER:  I mean, just to say, I think that

11   they should be directed to the exhibits, and then -- but it

12   should be, like the Judge said, joint.

13          I mean, I would like for them to go back and look

14   specifically at the receipts that are in the record.

15          THE COURT:  Well, to do that I would have to have a

16   list of everything you all agree relates to this.

17          MS. HANGARTNER:  It shouldn't be that long,

18   because, I mean, you only had Pol and Burnett.

19          MR. WERNER:  And receipts from Dewan.

20          MR. CERNIGLIA:  And Dewan.

21          THE COURT:  All right.  Do we have the W-2s?  Do we

22   have that resolved?

23          MR. WERNER:  We do.

24          Your Honor, it is in fact just a 15-page exhibit.

25   It is 2098.

OFFICIAL TRANSCRIPT

1          And as I understand it, Mr. Ungar did swap out some

2    of the originals with redacted versions which we've looked at

3    and accepted.

4          THE COURT:  So while we get -- I was thinking maybe

5    I could get part of this to them in case they are sitting

6    waiting.

7          Don't we have a flash drive with the exhibits and

8    we could print 2098?

9          THE LAW CLERK:  Yeah.

10          THE COURT:  So that we can -- well, they have it.

11          MR. HOWARD:  They have it in there.

12          THE COURT:  They have -- yeah.

13          So I could tell them:  Look at Exhibit 2098A [sic].

14          I could tell them:  Look at general --

15          MS. HANGARTNER:  Is there a 2098A?

16          MR. WERNER:  2098 is just the W-2s.

17          THE COURT:  No "A"?

18          MS. HANGARTNER:  And then 1155A.

19          THE COURT:  But I want to -- I'm not going to do

20    that until I have the whole answer about the -- the

21    compensatory damages.

22          So what I want is for -- this is the issue:  Do we

23    give them 1155A and say for the rest you just have to rely on

24    your memory of the testimony and the exhibits?  Or do we give

25    them 1155A plus --

**OFFICIAL TRANSCRIPT**

1          MS. HANGARTNER:   The receipts?

2          THE COURT:   -- whatever documents can be

3    identified -- or give them the numbers?

4          MR. CERNIGLIA:   Didn't they ask for a list of

5    exhibits?

6          THE COURT:   They have an index.   And they have the

7    exhibits.

8          MR. CERNIGLIA:   I think it says on that -- if they

9    used the same description that was on the bench book

10   exhibits, that has on it that it is receipts, drafts, and

11   things like that.

12         THE COURT:   So Signal wants to identify the other

13   exhibits?   What is the plaintiffs' position?

14         MR. HOWARD:   I think that it would be sufficient,

15   but it needs to be a little bit descriptive in the response

16   to say for purposes of "economic compensatory damages."   I

17   definitely want to make that distinction, that we're

18   responding to this in terms of economic compensatory, because

19   the emotional distress -- all of that is separate.

20         In terms of economic --

21         MR. CERNIGLIA:   I have no objection to that.   I

22   think that's proper.

23         MS. HANGARTNER:   Agree.

24         MR. HOWARD:   And in terms of economic compensatory

25   damages, there's -- one element is the man camp fees, and

**OFFICIAL TRANSCRIPT**

1   that is collected in one spot, which is one exhibit, 1155A.

2            With respect to the other elements that plaintiffs

3   are seeking, including recruitment fees and interest on debt,

4   that there is no one exhibit or set of exhibits.  That there

5   are some receipts for some of the payments.  There are

6   some -- there are exhibits concerning some of the debt and

7   the interest rates, but otherwise you need to really rely on

8   your memory of the plaintiffs' testimony.

9            THE COURT:  Well, the issue is when I say there are

10  some, do I say see exhibits --

11           MR. HOWARD:  You know, I don't know that -- if we

12  can pull together a list, we could do that.  But I think

13  probably just saying this is sufficient.

14           MR. SHAPIRO:  I would add that they not just need

15  to consider the plaintiffs' testimony, but they need to

16  consider all of the testimony.

17           MR. HOWARD:  That's fine.

18           MR. CERNIGLIA:  Yeah.

19           And I think you can refer them to the list.  That's

20  why they have a list of the exhibits, so you don't -- because

21  it probably would not be either time -- it would be time

22  consuming, and likely to be incomplete if each of us try to

23  figure out which constitute all of the exhibits.

24           And they would be the jurors, so they should find

25  it.


                        OFFICIAL TRANSCRIPT

1          MR. HOWARD:  We have the back-up to this, which may

2     have the list of exhibits we used, but it also has the pages

3     of testimony that we used to compile that column.

4          I don't have it in that book.  It's back in my

5     hotel room.

6          MR. WERNER:  Is it handwritten or is it something

7     that was --

8          MR. HOWARD:  No, it was a chart Jim -- actually, if

9     you e-mail Jim --

10          MS. TSU:  We doesn't have access to him right now.

11     He is --

12          MR. HOWARD:  Not even on his computer.  Okay.

13          I could go back to my hotel and get that, but...

14          But, again, my memory of it is that it's partially

15     from exhibits but partially from testimony as well.

16          THE COURT:  Okay.

17          MR. HOWARD:  Erin, you'll recall when we sat and

18     resolved each other's objections to closing demonstratives, I

19     reviewed that with you?

20          MS. HANGARTNER:  Yes.

21          THE COURT:  Well, I think that we'll just do the --

22     tell them about 1155A.

23          And say:  With respect to the other damages, such

24     as recruiting fees and interest on debt, you must rely on

25     your memory of the testimony and the information contained in

OFFICIAL TRANSCRIPT

1    the exhibits, an index of which has been provided to you.

2           MR. HOWARD:  That's fine.  I would only add "for

3    purposes of the economic compensatory damages."

4           THE COURT:  Okay.  So I think that's it.

5           MR. WERNER:  Then, as far as the emotional distress

6    damages, then -- I -- they had asked what plaintiffs' counsel

7    had asked for, and there is no way to --

8           THE COURT:  They just said:  Is it possible for us

9    to receive the slide of requested compensatory damages.

10          So with respect to the emotional distress, there is

11   nothing I can give them about that.

12          So the issue is do I say:  With respect to

13   compensatory damages for mental anguish, you will have to

14   rely on your memory?

15          MS. HANGARTNER:  Yes, Your Honor, I agree.

16          MR. CERNIGLIA:  And the W-2 forms, they are going

17   to be directed to that as well?

18          THE COURT:  I'm going to direct them to that one.

19          MR. CERNIGLIA:  Okay.

20          THE COURT:  Okay.  All right.  So that's what I

21   will do.

22          MS. HANGARTNER:  Thank you.

23          MR. HOWARD:  Thank you.

24          MR. CERNIGLIA:  Thank you.

25          MR. SHAPIRO:  Thank you, Judge.


                        **OFFICIAL TRANSCRIPT**

1       THE COURT:  Bye-bye.

2                       (A recess was taken.)

3                   **AFTER THE RECESS**

4                       (Call to order of the court.)

5       THE COURT:  Before the jury comes in, you can have

6  a seat for a second.

7       They sent a note out:  The jury's decision is still

8  under progress.  We have made great strides.  However,

9  feeling the pulse of each other, and considering the

10 sensitivity in this case, we would like to recess for the day

11 and resume Wednesday at 8:00 a.m.

12      You know, it is also 3:20, and I decided that I

13 would let them do that, because, you know, they have -- they

14 must have the sense that they would not be able to finish

15 today, and that they are going to have to come back Wednesday

16 anyway.  And so I thought, well, that's fine.  That's what

17 we'll do.

18      So I wanted to bring them in the courtroom and give

19 them the general instructions and then let them go.

20      So let's see if I can -- are they lined up already?

21 You can bring them in.

22      Cesyle, put that in the record.

23                       (Jury in at 3:23 p.m.)

24      THE COURT:  Have a seat.

25      All right.  I received your note about -- that you

**OFFICIAL TRANSCRIPT**

1  believe that it would be best for you to come back Wednesday

2  at 8:00 a.m. and resume your deliberations, and that's fine.

3         I'm glad that you all will be getting out as early

4  as possible.  I hope you don't have any trouble with the

5  traffic as you get out of downtown, and I hope you all have a

6  good and fun long weekend, but that we'll see you all back

7  here Wednesday morning at 8:00 a.m.

8         I want to remind you of the instructions I've given

9  you.  You are not to discuss the case with anyone, including

10 your fellow jurors, and that includes members of your family,

11 people involved in the trial, or anyone else.

12         If anyone approaches you and tries to talk about

13 the case, do not tell your fellow jurors, but advise me about

14 it immediately.

15         And also, to be clear, you are only to talk about

16 it with your fellow jurors in the jury room so there

17 shouldn't be any communications between any jurors over

18 the -- over the weekend.

19         You must not communicate with, or provide any

20 information to, anyone by any means about this case.

21         Of course you can't use any electronic device or

22 media, such as a cell phone or computer, to send anyone any

23 information about the case or to attempt to get any

24 information about the case.

25         So we'll see you Wednesday morning at 8:00 a.m.


**OFFICIAL TRANSCRIPT**

1                                    (Jury out at 3:24 p.m.)

2                   THE COURT:  Anything else we need to talk about?

3                   (No response.)

4                   THE COURT:  I guess some of you wished that you

5     were not going to have to come back to the courtroom.  I'm

6     sorry about that, but I decided that probably that was the

7     best thing to do.  And since we couldn't keep them late -- if

8     we could have kept them until midnight tonight to finish, I

9     would have, but of course we can't do that.

10                   I'll see you all Wednesday at 8:00.

11                   MS. HANGARTNER:  Have a nice weekend, Your Honor.

12                   THE COURT:  Thank you.

13                                    (Proceedings adjourned.)

14

15                              *  *  *  *

16                              **CERTIFICATE**

17

18        **I hereby certify this 13th day of February, 2015, that**

19     **the foregoing is, to the best of my ability and**

20     **understanding, a true and correct transcript of the**

21     **proceedings in the above-entitled matter.**

22

23                              */s/ Mary V. Thompson*

24                              **Official Court Reporter**

25


                              **OFFICIAL TRANSCRIPT**