# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 15-30464
_____

D.C. Docket No. 2:08-CV-1220

United States Court of Appeals
Fifth Circuit

**FILED**

May 5, 2016

Lyle W. Cayce
Clerk

KURIAN DAVID; ET AL,

        Plaintiffs

v.

WORLD MARINE, L.L.C.,

        Defendant-Cross Claimant - Appellant

v.

MALVERN C. BURNETT; LAW OFFICES OF MALVERN C. BURNETT,
A.P.C.; SACHIN
DEWAN; DEWAN CONSULTANTS PVT LTD, also known as Medtech
Consultants,

        Defendants-Cross Defendants - Appellees

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before KING, SOUTHWICK, and HAYNES, Circuit Judges.

## J U D G M E N T

      This cause was considered on the record on appeal and was argued by
counsel.

      It is ordered and adjudged that the judgment of the District Court is
affirmed.

IT IS FURTHER ORDERED that appellant pay to appellees the costs on appeal to be taxed by the Clerk of this Court.



**Certified as a true copy and issued
as the mandate on Jun 15, 2016**

**Attest:**

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————————

No. 15-30464

————————

United States Court of Appeals
Fifth Circuit

**FILED**

May 5, 2016

Lyle W. Cayce
Clerk

KURIAN DAVID; et al,

        Plaintiffs

v.

WORLD MARINE, L.L.C.,

        Defendant-Cross Claimant - Appellant

v.

MALVERN C. BURNETT; LAW OFFICES OF MALVERN C. BURNETT, A.P.C.; SACHIN DEWAN; DEWAN CONSULTANTS PVT LTD, also known as Medtech Consultants,

        Defendants-Cross Defendants - Appellees

————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-CV-1220

————————

Before KING, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

————————

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30464

Plaintiffs Kurian David, et al. filed suit against Defendants–Appellants Signal International, LLC, and Signal International, Inc.,[1] as well as Defendants–Appellees Malvern C. Burnett, the Law Offices of Malvern C. Burnett, A.P.C., Sachin Dewan, and Dewan Consultants Pvt Ltd., alleging a number of claims arising out of Plaintiffs' recruitment and treatment by Defendants as H2-B visa workers. Signal thereafter filed crossclaims against its co-defendants related to their recruitment of the H-2B visa workers on Signal's behalf. Signal asserted breach of fiduciary duty and legal malpractice claims against Burnett and asserted fraud and indemnity claims against Burnett and Dewan. The district court ultimately granted judgment as a matter of law against Signal on the breach of fiduciary duty, legal malpractice, and fraud claims, concluding that Signal failed to present sufficient evidence in support of these claims. The district court then submitted jury instructions on Signal's indemnity claims, and a jury subsequently found against Signal on these claims. Signal now appeals. We hold that the district court did not err in granting judgment as a matter of law and that it did not abuse its discretion in selecting the jury instructions. We therefore AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The instant appeal arises from a suit filed by H-2B visa workers formerly employed by Defendants–Appellants Signal International, LLC, and Signal International, Inc. (Signal), related to the recruitment and treatment of the

---

[1] On May 5, 2016, we granted the motion to substitute filed by World Marine, L.L.C., to pursue the crossclaims of Signal on appeal after World Marine alleged that there had been a transfer of interest of Signal's crossclaims to World Marine. However, given that Signal initially brought the crossclaims and that the proceedings below related to Signal's conduct, we refer to Defendants–Appellants as Signal, rather than World Marine, throughout this opinion.

No. 15-30464

workers by Signal, Defendants–Appellees Malvern C. Burnett and the Law
Offices of Malvern C. Burnett, A.P.C. (Burnett), and Defendants–Appellees
Sachin Dewan and Dewan Consultants Pvt Ltd. (Dewan).   In April 2006,
Signal, a marine services company, executed a contract with Global Resources,
Inc. (Global), under which Global would recruit skilled workers from India
coming into the United States on H-2B temporary work visas or, alternatively,
I-140 permanent residency visas for Signal.[2]   Pursuant to this arrangement,
Global provided the services of Burnett as an immigration attorney to file the
proper documents for the foreign workers and to assist in the process of
migrating the skilled foreign workers free of charge.   Signal then executed
several documents appointing Dewan as Signal's agent for the recruiting of
foreign workers in India.

The recruited H-2B visa workers arrived at Signal's facilities in Orange,
Texas, and Pascagoula, Mississippi, in late 2006, but issues arose following
their arrival.   Among other problems, the workers discovered that they
received H-2B temporary visas rather than the permanent residency visas that
they had expected to receive and that the living and working conditions
provided by Signal were unsanitary and restrictive.   Thereafter, in late 2006,
Signal terminated its relationship with Global when Signal learned that the
H-2B visa workers had paid significantly more in fees to Global than Global
admitted to Signal.   Signal later severed its relationship with Burnett as well
after discovering that Burnett had filed immigration documents (in particular,
I-140 permanent residency visas) for Signal's competitor, J & M Associates,
Inc., on behalf of foreign workers who were or had been employed by Signal on

---

[2] The recruitment of Indian laborers was designed to address a skilled labor shortage
Signal had experienced in the aftermath of Hurricanes Rita and Katrina.

No. 15-30464

H-2B visas.  As a result of the problems related to Signal's recruitment of Indian workers, a number of workers left Signal by early 2008.

On March 7, 2008, several of the H-2B visa workers filed suit against Signal, Global, Burnett, Dewan, and others, alleging numerous claims arising out of their recruitment and treatment by these parties.[3]  As part of that litigation, Signal filed crossclaims against its co-defendants on May 9, 2008. Signal alleged that its co-defendants, Global, Burnett, and Dewan had deliberately concealed from Signal the false promises and representations made to prospective H-2B workers, particularly the promise that these workers would receive green cards.  Signal further alleged that, as a result of these misrepresentations, the H-2B workers recruited by the co-defendants left Signal's employ prior to the expiration of their H-2B visas with Signal.  As a result of the alleged acts, Signal claimed that it incurred damages from hiring other workers at a higher cost after the H-2B workers left and subcontracting additional legal work.  Signal also claimed that it suffered reputational harm. Based on these allegations, Signal brought a number of crossclaims against Burnett and Dewan under Mississippi law, including the crossclaims at issue in the present appeal: breach of fiduciary duty and legal malpractice claims against Burnett, and fraud and indemnity claims against Burnett and Dewan.[4]

---

[3] The H-2B visa workers brought claims based on violations of their rights under the Trafficking Victims Protection Act, Racketeer Influenced and Corrupt Organizations Act, the Civil Rights Act of 1866, and the Ku Klux Klan Act of 1871, as well as collective action claims under the Fair Labor Standards Act and claims for damages arising from fraud, negligent misrepresentation, and breach of contract.  Those claims are not before us on this appeal.

[4] Although Signal originally brought crossclaims against Global, Signal later dismissed its crossclaims after Global's owner filed for bankruptcy.  Global is not a party to the present appeal.  Signal also asserted crossclaims for breach of contract, unfair trade practices, detrimental reliance, and tortious interference with contractual relationship against its co-defendants that are not at issue before us on this appeal.

No. 15-30464

The matter proceeded to trial on January 12, 2015. On February 4, 2015, Signal, Burnett, and Dewan submitted joint proposed jury instructions. Consistent with the district court's instructions, the parties initially submitted jury instructions on the indemnity crossclaim that included alternative proposed instructions. Burnett and Dewan objected to Signal's proposed jury instructions, contending that the Mississippi Supreme Court had already established a standard for non-contractual indemnity and that Signal's proposed jury instructions did not adopt that standard. The parties then submitted a final iteration of the joint jury instructions on February 6, 2015, that included substantially the same language as proposed by Burnett and Dewan. Signal objected to these instructions, arguing that the language put forth by Dewan and Burnett instructed on tort-based indemnity whereas the instruction should have been based on principles of agency law. The final iteration of the joint jury instructions used different language but ultimately adopted the tort-based indemnity instructions put forth by Burnett and Dewan.[5]

---

[5] Signal's proposed jury instructions on indemnity would have stated:

An agent's conduct may generate legal consequences for the principal in the principal's relations with third parties even when the agent's conduct exceeds or otherwise diverges from the agent's actual authority. Such deviations by the agent breach the agent's duties to the principal. If the principal suffers loss as a consequence of the agent's acts, the agent is subject to liability to the principal for loss caused the principal.

By contrast, the jury instructions ultimately adopted by the district court stated:

In order to prevail on its claim for indemnity, Signal must prove the following by a preponderance of the evidence:
    1. Signal owes a legal obligation to plaintiffs in the main action;
    2. Signal was not at fault in incurring the legal obligation to Plaintiffs; and

No. 15-30464

At a hearing on February 10, 2015, the district court heard a number of motions, including motions for judgment as a matter of law against Signal's crossclaims.   At the hearing, Burnett argued that Signal failed to show sufficient evidence of damages from the H-2B visa workers that left Signal and that Signal failed to show, with specificity, the costs it had to spend on a new immigration attorney as a result of Burnett's alleged malpractice.   The district court ultimately granted judgment as a matter of law against Signal's crossclaims for breach of fiduciary duty and legal malpractice against Burnett and the crossclaims for fraud against Burnett and Dewan.   In particular, the district court found that there was not legally sufficient evidence for a reasonable juror to find in Signal's favor on damages relating to the breach of fiduciary duty claim.   As to the legal malpractice claim, the district court found that Signal could not establish damages for a specific amount of attorney's fees because of conflicting testimony at trial and because the evidence produced by Signal did not demonstrate how much Signal had to pay another immigration attorney as a result of Burnett's alleged legal malpractice.[6]   As to the fraud claims, the district court found that the damages for these claims were the same as the damages for the breach of fiduciary duty claim and that Signal failed to adduce legally sufficient evidence on these claims.

---

3. In all fairness, Dewan and/or Burnett should indemnify Signal for the obligation owed to Plaintiffs.

[6] Signal's primary evidence of the legal expenses incurred to pay a replacement attorney for the immigration work that Burnett should have performed was a line item of $280,219 marked as "Legal & Professional Services" in its own accounting documents. However, testimony from Signal's chief financial officer and its human resources director at trial conflicted as to whether the line item included litigation costs and not just expenses related to the work of the replacement attorney.

No. 15-30464

On February 12, 2015, the jury returned a verdict for the H-2B visa worker plaintiffs on several of their claims and found against Signal on its indemnity claim.  The jury ultimately awarded Plaintiffs over $14 million in damages against Signal, Burnett, and Dewan.  On April 27, 2015, the district court entered final judgment in favor of Burnett and Dewan, dismissing Signal's crossclaims with prejudice.  Signal timely appealed, challenging the jury instructions on its indemnity crossclaim and the dismissal of its other crossclaims.

## II. STANDARD OF REVIEW

"We review *de novo* a trial court's decision on a Rule 50(a) motion for judgment as a matter of law." *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 365 (5th Cir. 2010).  A judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a).  "In entertaining a Rule 50 motion for judgment as a matter of law the court must review all of the evidence in the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence." *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 326 (5th Cir. 2014).  "The court must review the record as a whole, but must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.*

By contrast, "[w]e review challenges to jury instructions for abuse of discretion and afford the trial court great latitude in the framing and structure of jury instructions." *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 240 (5th Cir. 2014).  However, any legal conclusions "as to the content of state law," contained in those jury instructions, are reviewed *de novo*.  *Northrop*

No. 15-30464

*Grumman Ship Sys., Inc. v. Ministry of Def. of Republic of Venez.*, 575 F.3d
491, 499 (5th Cir. 2009).

## III. BREACH OF FIDUCIARY DUTY AND FRAUD CLAIMS

The district court did not err when it granted judgment as a matter of
law against Signal's crossclaims for breach of fiduciary duty and fraud because
there was not legally sufficient evidence under Mississippi law for a reasonable
juror to find in Signal's favor on the damages relating to these claims.  "We
apply federal standards of review to assess the *sufficiency or insufficiency* of
the evidence in relation to the verdict, but in doing so we refer to state law for
the *kind of evidence* that must be produced to support a verdict [based on state
law claims]." *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 482 (5th
Cir. 2015) (quoting *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875,
884 (5th Cir. 2004)).  As a result, in the instant case, "state law governs what
the plaintiff must prove and how it may be proved." *Id.*

"Under established Mississippi caselaw, evidence of every element of
damages which one seeks is a prerequisite to recovery."  4 *Encyclopedia of
Mississippi Law* § 25:47 (2015).  "In order to prove its *prima facie* case of
damages, 'the plaintiff must show (1) a loss, and (2) that defendant's conduct
caused the loss.'" *MBF Corp. v. Century Bus. Commc'ns, Inc.*, 663 So. 2d 595,
598 (Miss. 1995) (quoting *Cenac v. Murry*, 609 So. 2d 1257, 1271 (Miss. 1992)).
Moreover, in order to establish a *prima facie* case of damages a party must
show "a reasonable basis for computation and the best evidence which is
obtainable under the circumstances of the case, and which will enable the trier
to arrive at a fair approximate estimate of loss is sufficient proof." *Id.* at 599
(quoting *Koehring Co. v. Hyde Constr. Co.*, 178 So. 2d 838, 853 (Miss. 1965));
*see also Mississippi Law of Torts* § 18:1 (2d ed. 2015) ("Where it is certain that
the plaintiff has sustained damage but the exact loss is uncertain, he may

8

No. 15-30464

recover if the proof is sufficient to afford a reasonable basis to estimate the amount of his loss."). That is, "[t]he evidence need only lay a foundation upon which the trier of fact can form a fair and reasonable assessment of the amount of . . . damages." *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 462 (5th Cir. 1995). However, "a damage award cannot be based on mere speculation." *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 50 (Miss. 1998). And "while the measure of damages need not be perfect, the most accurate and reliable evidence available should be required." *Puckett Mach. Co. v. Edwards*, 641 So. 2d 29, 36 (Miss. 1994) (quoting *City of New Albany v. Barkley*, 510 So. 2d 805, 807 (Miss. 1987)).

While Signal alleged that it incurred additional costs in employing replacement H-2B visa workers as a result of Burnett and Dewan's alleged breach of fiduciary duty and fraud, Signal failed to demonstrate sufficient evidence of damages from the alleged conduct under Mississippi law. On appeal, Signal points to four pieces of information that it provided as a reasonable basis for the jury to determine damages: (1) estimates of the number of H-2B visa workers that left Signal; (2) estimates of the increased wage costs for contract workers compared to H-2B visa workers; (3) the average workweek for an H-2B visa worker; and (4) the length of time H-2B workers were expected to continue working for Signal. However, while some of this evidence could be support for a damages calculation, Signal failed to provide the best evidence regarding the length of time for which the H-2B visa workers had to be replaced by contract workers. In particular, Signal only points to testimony by its CEO, Richard Marler, speculating that H-2B visa workers

No. 15-30464

could work for 30 months.[7]  Moreover, Signal fails to reference any records showing how long their H-2B visa workers were employed by Signal before leaving the company.  *See Cenac*, 609 So. 2d at 1272 (concluding that relying on the testimony of one witness without any substantiating documentation did not constitute proof of damages).

Even accepting Signal's argument that H-2B visa workers could have worked for Signal for up to 30 months, Signal has not pointed to any evidence for how many of those 30 months it hired contract workers to replace H-2B visa workers.  *Cf. Adams v. U.S. Homecrafters, Inc.*, 744 So. 2d 736, 741–42 (Miss. 1999) (holding that the plaintiff "failed to present sufficient evidence of the reasonable value of [the plaintiff's] mitigation efforts").  Thus, Signal has failed to provide a "reasonable basis for computation," *MBF Corp.*, 663 So. 2d at 599, of damages stemming from the replacement of H-2B visa workers by contract workers because it is uncertain what damages Signal actually sustained.  *See Adams*, 744 So. 2d at 740 ("The rule that damages, if uncertain, cannot be recovered, applies to their nature, and not to their extent.  If the damage is certain, the fact that its extent is uncertain does not prevent a recovery." (quoting *Billups Petroleum Co. v. Hardin's Bakeries Corp.*, 63 So. 2d 543, 549 (Miss. 1953)).

---

[7] At trial Marler speculated as to the duration of the H-2B visa workers' employment, stating:

> The government will grant a visa if you certify you are going to have a job for these people and you are going to pay them as if they were hired locally in a classification. You would get them for ten months, and it was a measured program. At the end of the ten months, it would be reevaluated, and there was a possible extension for another ten months. And it could last 30 months.

Marler's remarks indicate, in fact, that it is not clear whether Signal's H-2B visa workers would actually work up to 30 months at the company.

10

No. 15-30464

Alternatively, Signal argues that it demonstrated damages based on reputational harm and attorney's fees that it incurred in defense of the H-2B visa workers' claims as a result of Burnett and Dewan's alleged fraud. Both arguments are unpersuasive. Signal's argument for damages on the basis of the reputational harm rests on a Restatement comment noting that liability "may be found in a threat of harm to the business reputation," Restatement (Third) of Unfair Competition § 3 cmt. f (Am. Law Inst. 1995), and the principle that that "the [Mississippi Supreme] Court often looks to other jurisdictions for guidance" when there is no applicable Mississippi caselaw. *Harrington v. Office of the Miss. Sec'y of State*, 129 So. 3d 153, 159 n.3 (Miss. 2013). However, we are unaware of, and Signal does not mention, any Mississippi caselaw recognizing or discussing damages based on reputational harm. Given this lack of caselaw, we decline Signal's invitation to read Mississippi law as recognizing reputational harm as a basis for damages. *See SMI Owen Steel Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 442 (5th Cir. 2008) (per curiam) ("When making an *Erie* guess, '[o]ur task is to attempt to predict state law not to create or modify it.'" (quoting *Hermann Holdings, Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)).

Signal's argument for damages based on attorney's fees similarly fails. The Mississippi Supreme Court has reiterated that "unless a statute or contract provides for imposition of attorney fees, they are not recoverable." *Coleman & Coleman Enters., Inc. v. Waller Funeral Home,* 106 So. 3d 309, 318 (Miss. 2012) (quoting *Stokes v. Bd. of Dirs. of La Cav Im. Co.*, 654 So. 2d 524, 529 (Miss. 1995)). Signal does not point to a statute or contract that would fall under this narrow exception recognized by the Mississippi Supreme Court. *Id.* ("Absent a 'contractual provision or statutory authority providing for attorney fees, they may not be awarded as damages unless punitive damages are also

No. 15-30464

proper.'" (quoting *Stokes*, 654 So. 2d at 529)). We conclude then that judgment as a matter of law was appropriate as to Signal's fraud and breach of fiduciary duty claims.

## IV. LEGAL MALPRACTICE CLAIMS

The district court also did not err in granting judgment as a matter of law on Signal's legal malpractice claim against Burnett. Much as with Signal's other crossclaims, Signal failed to demonstrate sufficient evidence of damages as a result of the alleged legal malpractice. On appeal, Signal argues that it provided sufficient evidence of legal expenses it had to pay a replacement attorney to undertake legal work that should have been performed by Burnett. However, Signal's primary evidence of damage on this point involved a line item in its own accounting report for "Legal & Professional Services"—a line item that may or may not have included litigation costs based on conflicting testimony heard by the district court. This is insufficient evidence under Mississippi law. In a case involving the recovery of attorney's fees, the Mississippi Supreme Court previously held that a plaintiff's proof of attorney's fees was inadequate as a matter of law when the plaintiff failed to introduce time sheets or "any other evidence indicating the amount of time expended by counsel." *Lovett v. E.L. Garner, Inc.*, 511 So. 2d 1346, 1354 (Miss. 1987). And a lower Mississippi court similarly found that a party could not recover attorney's fees when that party provided "billing summaries but [where the billing summaries] did not identify the time and charges that were reimbursable." *A & F Props., LLC v. Lake Caroline, Inc.*, 775 So. 2d 1276, 1283 (Miss. Ct. App. 2000). Signal's evidence of the expenses gives no indication of the time and charges billed by its replacement attorney.

Signal attempts to distinguish these cases by arguing that attorney's fees that arise as part of compensatory damages—rather than attorney's fees

No. 15-30464

recovered from an opposing party in a litigation—need only allow a trier of fact
to be able to arrive at a "fair approximate estimate of loss." *MBF Corp.*, 663
So. 2d at 599.  However, that standard still requires Signal to prove damages
based on "the most accurate and reliable evidence available." *Puckett Mach.*,
641 So. 2d at 36 (quoting *Barkley*, 510 So. 2d at 807).  And Signal failed to
provide the most logical evidence available of any costs related to the work of
the replacement attorney: the attorney's legal fee invoices.  *Cf. Coleman &
Coleman Enters.*, 106 So. 3d at 319 (Miss. 2012) (holding that sufficient
evidence was introduced through "a detailed, itemized statement of fees
incurred" during the time period).  Indeed, one of the witnesses testified as to
the existence of such invoices, but Signal never produced these invoices.  We
conclude then that judgment as a matter of law was also appropriate as to
Signal's legal malpractice claims.

## V. JURY INSTRUCTION ON INDEMNITY

Finally, the district court did not abuse its discretion in selecting the jury
instructions on Signal's indemnity claim.  We have previously stated three
requirements for an appellant to successfully challenge jury instructions:

> First, the appellant must show that viewing the charge as a whole,
> the charge creates "substantial and ineradicable doubt whether
> the jury has been properly guided in its deliberations."  Second,
> even if erroneous, the appellate court will not reverse if the error
> "could not have affected the outcome of the case."  Third, the
> appellant must show that the proposed instruction offered to the
> district court correctly stated the law.  Perfection is not required
> as long as the instructions were generally correct and any error
> was harmless.

*Taita Chem. Co., Ltd. v. Westlake Styrene, LP*, 351 F.3d 663, 667 (5th Cir. 2003)
(footnotes omitted) (quoting *FDIC. v. Mijalis*, 15 F.3d 1314, 1318 (5th Cir.
1994)).  Accordingly, "[t]he instructions need not be perfect in every respect

13

No. 15-30464

provided that the charge in general correctly instructs the jury, and any injury resulting from the erroneous instruction is harmless." *Eastman Chem.*, 775 F.3d at 240 (quoting *Rogers v. Eagle Offshore Drilling Servs., Inc.*, 764 F.2d 300, 303 (5th Cir. 1985)).

On appeal, Signal contends that the district court should have instructed the jury on an agency-based theory of indemnity under Mississippi law rather than the tort-based theory of indemnity on which it ultimately instructed the jury.[8] Signal argues that on its agency-based theory of indemnity, the inquiry would have been whether Dewan and Burnett, as the agents of the principal, Signal, exceeded their authority. While Signal is correct that the Mississippi Supreme Court has not expressly addressed the specific issue of whether an agent has a duty to indemnify its principal for actions exceeding its authority, we find that Mississippi caselaw is instructive on this issue. *See Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 392 (5th Cir. 2009) ("If there is no apposite decision, this court must forecast how the Mississippi Supreme Court would rule . . . based on Mississippi case law, dicta, general rules on the issue, decisions of other states, and secondary sources.").

In describing indemnity claims under Mississippi law, the Mississippi Supreme Court has stated:

> An obligation to indemnify may arise from a contractual relation, from an implied contractual relation, or out of liability imposed by law. When one person is required to pay money which another person in all fairness should pay, then the former may recover

---

[8] Signal also contends that the district court abused its discretion when it denied Signal's motion to supplement the record on appeal with an email relevant to the jury instruction argument it now raises before us. We hold that the district court did not abuse its discretion in denying the motion to supplement because the email reiterated objections to the jury instructions that Signal had previously made. *See Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 854 (5th Cir. 2003) (holding that denial of a motion to supplement the record is reviewed for an abuse of discretion).

No. 15-30464

indemnity from the latter in the amount which he paid, provided
the person making the payment has not conducted himself in a
wrongful manner so as to bar his recovery.

*Bush v. City of Laurel*, 215 So. 2d 256, 259 (Miss. 1968).  And in dealing with

non-contractual indemnity, the Mississippi Supreme Court has noted:

Two critical prerequisites are generally necessary for the
invocation of noncontractual implied indemnity in Mississippi:
(1) The damages which the claimant seeks to shift are imposed
upon him as a result of some legal obligation to the injured person;
and (2) *it must appear that the claimant did not actively or
affirmatively participate in the wrong.*

*J.B. Hunt Transp., Inc. v. Forrest Gen. Hosp.*, 34 So. 3d 1171, 1173–74 (Miss.

2010) (quoting *Home Ins. Co. v. Atlas Tank Mfg. Co.*, 230 So. 2d 549, 551 (Miss.

1970)).   As a result, Mississippi does not allow for indemnity between

tortfeasors unless "one party is liable merely 'because of passive negligence in

failing to remedy the defect or because of a non-delegable statutory duty.'"  *Id.*

at 1174 (quoting *Bush*, 215 So. 2d at 260).  In adopting the jury instructions on

indemnity, the district court instructed on the aforementioned requirements

for non-contractual indemnity under Mississippi law.   Signal contends that

these requirements relate to non-contractual, tort-based indemnity whereas

Signal's relationship with Dewan and Burnett, while not contractual,[9] was

similar to a contractual relationship and based in agency rather than in tort.

However, Signal's argument is undermined by the Mississippi Supreme

Court's decision in *Baker & McKenzie, LLP v. Evans*, 123 So. 3d 387 (Miss.

2013), the facts of which are similar to the appeal before us.

There, S. Lavon Evans Jr., an oil and gas drilling contractor, had an

ongoing business relationship with Reed Cagle, and the two entered into a joint

---

[9] Signal's original contract for the recruitment of the H-2B visa workers was with
Global, not Dewan and Burnett.

15

No. 15-30464

venture, Laredo Energy Holdings, LLC (Laredo). *Id.* at 394–96. Throughout the business relationship, the law firm of Baker & McKenzie, LLP, and one of its partners (Baker) represented Cagle and his businesses. *Id.* at 394–400. Evans ultimately sued Laredo, its subsidiaries, and Baker, asserting that "he lost access to his companies' two largest assets . . . and was sued in Texas by [Baker] on behalf of [Cagle], who was acting on behalf of [Laredo]." *Id.* at 392–93. In particular, Evans sued Baker because he allegedly made decisions and entered agreements "based on advice and recommendations from [Baker], who Evans believed to be his lawyer," and Evans alleged that his businesses had gone into significant debt "as a result of the conduct by [Baker]." *Id.* at 393. Similar to the present matter, Laredo and its subsidiaries asserted crossclaims against Baker, including claims of legal malpractice and breach of fiduciary duty. *Id.* at 401. The jury in the case ultimately awarded Laredo and its subsidiaries $22.4 million against Baker. *Id.* at 401.

On appeal, Baker asserted that the cross-plaintiffs' jury instructions for Laredo against Baker were improper because they granted Laredo damages if the jury found against Baker. *Id.* at 412. The Mississippi Supreme Court focused on a specific jury instruction and agreed that the instruction "constitute[d] an indemnity instruction." *Id.* However, the court found that Laredo was not entitled to an indemnity instruction based on the facts of the case, as Laredo was also a tortfeasor, whose actions did not fall within the narrow exception for passive negligence. *Id.* at 412–13. The court concluded that it "kn[e]w of no authority in [Mississippi] which would provide rights of indemnity in favor of an actively or intentional tortious LLC, based upon the conduct of one of its minority members." *Id.* at 413. Although *Baker & McKenzie* did not address whether an agency relationship existed between Baker and Laredo or the implications of such a relationship for indemnity, the

16

No. 15-30464

relationship of Baker and Laredo was similar to the relationship of Signal to Dewan and Burnett in the instant case. Yet the relation of the parties to one another did not change the principle under Mississippi law that tortfeasors could not recover under non-contractual indemnity.

Discounting *Baker & McKenzie*, Signal relies on a Restatement provision in support of its proposed agency-based indemnity jury instruction. However, in "making an *Erie*-guess in the absence of explicit guidance from the state courts, we must attempt to predict state law, not to create or modify it." *United Parcel Serv., Inc. v. Weben Indus., Inc.*, 794 F.2d 1005, 1008 (5th Cir. 1986). And here, Signal points to no Mississippi caselaw that supports using the agency-based indemnity instruction that it requested. Moreover, the Restatement (Third) of Agency does not support Signal's argument. That treatise does not contain a section clearly describing when an agent should generally indemnify a principal. Indeed, Signal relies on a comment to Restatement (Third) of Agency § 8.09, which states that an agent is subject to liability to the principal for loss caused to the principal "[i]f an agent takes action beyond the scope of the agent's actual authority." Restatement (Third) of Agency § 8.09 cmt. b. But that comment later explains that "the principal's right to be indemnified against subsequent losses by the agent does not extend to the loss that the principal could have avoided," *id.*, and does not address situations in which the principal may also be liable to a third party. In light of established Mississippi caselaw on non-contractual indemnity, we find that the district court did not abuse its discretion when it instructed the jury on indemnity.

## VI. CONCLUSION

For the reasons herein, we AFFIRM the district court's judgment dismissing Signal's crossclaims with prejudice.

17

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

## BILL OF COSTS

**NOTE: The Bill of Costs is due in this office *within 14 days from the date of the opinion, See* FED. R. APP. P. & 5TH CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.**

Kurian David, et al _____ v. Signal International, LLC, et al _____ No. | 15-30464 |

The Clerk is requested to tax the following costs against: ____ Marine World, LLC (formerly Signal International,LLC) ____

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee ($500.00) | | | | | | | | |
| Appendix or Record Excerpts | | | | | | | | |
| Appellant's Brief | | | | | | | | |
| Appellee's Brief   See Exh A - attached invoice for copies and binding | | | 126.44 | 10 | 76 | .10 | 76.00 |
| Appellant's Reply Brief | | | | | | | | |
| Other: | | | | | Bindg Tab (3x) | 10 | 1.50 | 15.00 Bndg |

Total $ | 126.44 |     Costs are taxed in the amount of $ | 99.19 |

Costs are hereby taxed in the amount of $ ___99.19___ this ___15th___ day of ___June___, 2016 .

State of Louisiana
County of Orleans _____

LYLE W. CAYCE, CLERK

By _Jennifer C. French_
**Deputy Clerk**

I ___Timothy W. Cerniglia___, do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This ___16th___ day of ___May___, 2016 .

| s/ Timothy W. Cerniglia |
| **(Signature)** |

*SEE REVERSE SIDE FOR RULES GOVERNING TAXATION OF COSTS

Attorney for _Malvern C. Burnett & Law Offices of Malvern C. Burnett, LLC_

Bill of Cost



## Alliance Overnight Document Service

| INVOICE | DUE DATE | BALANCE DUE |
|---------|----------|-------------|
| **27003** | **October 29, 2015** | **$126.44** |

---

Alliance
Overnight Document Service, L.L.C.

Invoice #  27003

| BILL TO | SHIP TO | DATE 09/29/2015 | PLEASE PAY $126.44 | DUE DATE 10/29/2015 |
|---------|---------|-----------------|--------------------|---------------------|
| Tim Cerniglia<br>Cerniglia Law firm<br>1521 St. Charles Ave.<br>New Orleans, LA  70130 | Tim Cerniglia<br>Cerniglia Law firm<br>1521 St. Charles Ave.<br>New Orleans, LA  70130 | | | |

| SHIP DATE | SALES REP | FILE# |
|-----------|-----------|-------|
| 09/29/2015 | Bryan | Burnett Brief |

| ACTIVITY | QTY | RATE | AMOUNT |
|----------|-----|------|--------|
| **Blowbacks**<br>Prints to paper | 760 | 0.10 | 76.00T |
| **GBC Binding Small**<br>GBC Binding Small<br>Burnett Brief | 10 | 4.00 | 40.00T |

*Please Send Payment To:*
*Alliance Overnight Document Service*
*400 Lafayette Street, Suite 201*
*New Orleans, LA 70130*
*504-586-1000*

| | |
|---|---|
| SUBTOTAL | 116.00 |
| TAX (9%) | 10.44 |
| TOTAL | 126.44 |
| TOTAL DUE | **$126.44** |

THANK YOU.

# *United States Court of Appeals*
## FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

June 15, 2016

Mr. William W. Blevins
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

      No. 15-30464   Kurian David, et al v. Signal International,
L.L.C., et al
            USDC No. 2:08-CV-1220

Dear Mr. Blevins,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

Record/original papers/exhibits to be returned.

Enclosed for the district court and counsel is the approved bill
of costs.

                              Sincerely,

                              LYLE W. CAYCE, Clerk

                              By:
                              Dawn D. LeBlanc, Deputy Clerk
                              504-310-7717

cc w/encl:
      Ms. Patricia Anne Bollman
      Mr. Timothy Williams Cerniglia
      Ms. Erin Casey Hangartner
      Mr. Mitchell P. Hasenkampf
      Mr. Elham R. Rabbani
      Mr. Brian Christopher Roux
      Mr. Stephen H. Shapiro
      Mr. Alan Dean Weinberger